James M. Wagstaffe (#95535)
Frank Busch (#258288)
**WAGSTAFFE, VON LOEWENFELDT,**
**BUSCH & RADWICK LLP**
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone: (415) 357-8900
Facsimile: (415) 357-8910
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Proposed Liaison Counsel for the Class*

[Additional counsel appear on signature page.]

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE INC., TIMOTHY D. COOK and LUCA MAESTRI,<br><br>Defendants. | Case No. 4:19-cv-02033-YGR<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION OF THE EMPLOYEES' RETIREMENT SYSTEM OF THE STATE OF RHODE ISLAND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Date: August 13, 2019<br>Time: 2:00 PM<br>Courtroom: 1, 4th Floor<br>Judge:  Yvonne Gonzales Rogers |
| PRIYAM REDDY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE INC., TIMOTHY D. COOK and LUCA MAESTRI,<br><br>Defendants. | Case No. 5:19-cv-02615-YGR<br><br>Judge Yvonne Gonzales Rogers |

*(Caption continues on next page…)*

STEAMFITTERS LOCAL 449 PENSION
PLAN, Individually and on Behalf of All Others
Similarly Situated,

                              Plaintiff,

            vs.

APPLE INC., TIMOTHY D. COOK and LUCA
MAESTRI,

                              Defendants.

Case No. 3:19-cv-02891-JD

Judge James Donato

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

NOTICE OF MOTION AND MOTION ............................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 2

I.     STATEMENT OF THE ISSUES TO BE DECIDED........................................... 2

II.    PRELIMINARY STATEMENT ........................................................................... 2

III.   OVERVIEW OF THE PENDING ACTIONS ...................................................... 4

     A.    Procedural Overview ................................................................................4

     B.    Substantive Overview ..............................................................................6

IV.   ARGUMENT ........................................................................................................ 8

     A.    The Actions Should Be Consolidated ....................................................8

     B.    The Statutory Framework of the Private Securities Litigation Reform Act ...........9

           1.    The Aim of the PSLRA.......................................................... 9

           2.    "Selection" of Lead Counsel as the Cornerstone of the PSLRA ............. 10

           3.    The PSLRA's Statutory Mechanism................................... 16

     C.    Rhode Island Should Be Appointed Lead Plaintiff...............................18

           1.    The Fund Timely Moved for Appointment as Lead Plaintiff .................. 18

           2.    The Fund Has the Largest Financial Interest in the Outcome of the Action........................................................................................ 18

           3.    The Fund Otherwise Satisfies Rule 23's Typicality and Adequacy Requirements ............................................................ 19

     D.    The Fund's Choice of Lead Counsel Is Well-Qualified to Represent the Class...................................................................................................22

CONCLUSION.................................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Intel Corp.*,
  No. 18-cv-00507-YGR, 2018 WL 2412111 (N.D. Cal. May 29, 2018) ................................15

*Armour v. Network Assocs., Inc.*,
  171 F. Supp. 2d 1044, 1052 (N.D. Cal. 2001) .......................................................................22

*Astoria Fed. Savings & Loan Ass'n v. Solimino*,
  501 U.S. 104 (1991) ................................................................................................................12

*Bailey v. United States*,
  516 U.S. 137 (1995) ................................................................................................................12

*Bodner v. Oreck Direct, LLC*,
  No. C064756, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) ................................................15

*Bodri v. Gopro, Inc.*,
  No. 16-cv-00232-JST, 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ...................................14

*Bowman v. Legato Sys., Inc.*,
  195 F.R.D. 655 (N.D. Cal. 2000).............................................................................................14

*In re Calpine Corp. Sec. Litig.*,
  No. C021200 SBA, 2004 WL 3316309 (N.D. Cal. Feb. 5, 2004) ...........................................1

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ........................................................................................ *passim*

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005)...........................................................................................9, 10, 11

*Cohen v. United States District Court*,
  586 F.3d 703 (9th Cir. 2009) ....................................................................................12, 22, 23

*Crihfield v. CytRx Corp.*,
  No. CV 16-05519 SJO (SKx), 2016 WL 10587938 (C.D. Cal. Oct. 26, 2016) ......................8

*In re Critical Path, Inc. Sec. Litig.*,
  156 F. Supp. 2d 1102 (N.D. Cal. 2001) ...........................................................................10, 21

*In re Enron Corp. Sec. Litig.*,
  206 F.R.D 427 (S.D. Tex. 2002)..............................................................................................22

*In re Extreme Networks Inc. Sec. Litig.*,
  No. 15-cv-04883, 2016 WL 3519283 (N.D. Cal. June 28, 2016)...........................9, 19, 20, 21

*Felix v. Symantec Corp.*,
  No. C 18-02902 WHA, 2018 WL 4029053 (N.D. Cal. Aug. 23, 2018) .................................21

*Ferrari v. Gisch*,
   225 F.R.D. 599 (C.D. Cal. 2004) ................................................................. 17

*In re Gemstar–TV Guide Int'l, Inc. Sec. Litig.*,
   209 F.R.D. 447 (C.D. Cal. 2002) ............................................................. 15, 21

*Hessefort v. Super Micro Comp., Inc.*,
   317 F. Supp. 3d 1056 (N.D. Cal. 2018) ....................................................... 12

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
   No. 08-CV-7281, 2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008) ..................... 13

*Hibbs v. Winn*,
   542 U.S. 88 (2004) ....................................................................................... 12

*Mohanty v. BigBand Networks, Inc.*,
   No. C075101SBA, 2008 WL 426250 (N.D. Cal. Feb. 14, 2008) ............... 17, 18

*In re Network Assocs., Inc. Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) ..................................................... 10, 15

*Perlmutter v. Intuitive Surgical, Inc.*,
   No. 10-CV-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011) .......... 10, 21

*In re Petrobras Sec. Litig.*,
   104 F. Supp. 3d 618 (S.D.N.Y. 2015) ........................................................... 14

*Piven v. Skyes Enters.*,
   137 F. Supp. 2d 1295 (M.D. Fla. 2000) ......................................................... 15

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   219 F.R.D. 343 (D. Md. 2003) ...................................................................... 13

*Rubke v. Capitol Bancorp*,
   No. C054800 PJH, 2006 WL 734390 (N.D. Cal. Mar. 21, 2006) ................. 13

*Sprietsma v. Mercury Marine*,
   537 U.S. 51 (2003) ....................................................................................... 12

*In re Tarragon Corp. Sec. Litig.*,
   No. 07 CIV 7972 (PKC), 2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007) ......... 14

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
   No. 07177 (FLW), 2007 WL 2683636 (D.N.J. Sept. 7, 2007) ..................... 15

*Westley v. Oclaro, Inc.*,
   No. C-11-2448-EMC, 2011 WL 4079178 (N.D. Cal. Sept. 12, 2011) ......... 19, 20

**Rules & Statutes**

Fed. R. Civ. P. 23 .............................................................................. *passim*

Fed. R. Civ. P. 42(a) ........................................................................... 2, 3, 8

15 U.S.C. § 78u-4 *et seq.* ...................................................................................... *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
 No. 04-cv-8141 (S.D.N.Y.) ...............................................................................23

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.,*
 No. 08-md-1963 (S.D.N.Y.) ...............................................................................23

*In re Broadcom Corp. Class Action Litig.,*
 No. 06-cv-5036 (C.D. Cal.) ................................................................................23

*In re Coinstar, Inc. Sec. Litig.,*
 No. 11-cv-133 (W.D. Wash.) ......................................................................21, 22

*In re Countrywide Fin. Corp. Sec. Litig.,*
 No. 07-cv-5295 (C.D. Cal.) ................................................................................23

*Desilvio v. Lion Biotech Indus.,*
 No. 17-cv-02086-SI (N.D. Cal.) ....................................................................14, 15

*In re Goldman Sachs Grp., Inc. Sec. Litig.,*
 No. 10-cv-3461 (S.D.N.Y.) ...............................................................................23

*In re Mercury Interactive Corp. Sec. Litig.,*
 No. 05-cv-3395 (N.D. Cal.) ...............................................................................23

**Other Authorities**

H.R. Conf. Rep. No. 104-369, *reprinted in* 1995 U.S.C.C.A.N. 730 ................................... *passim*

S. Rep. 104-98, *reprinted in* 1995 U.S.C.C.A.N. 679 ..........................................................11, 13

1

**NOTICE OF MOTION AND MOTION**

2

TO:     ALL PARTIES AND THEIR COUNSEL OF RECORD

3

PLEASE TAKE NOTICE that Lead Plaintiff movant the Employees' Retirement System

4  of the State Of Rhode Island ("Rhode Island" or the "Fund") through its counsel, hereby moves

5  this Court in Courtroom 1 – 4th Floor of the Honorable Yvonne Gonzales Rogers at the Oakland

6  Federal District Courthouse, 1301 Clay Street, Oakland, California 94612, on August 13, 2019 at

7  2:00 p.m., or as soon thereafter as the matter may be heard, for the entry of an Order: (1)

8  consolidating the above-captioned actions pursuant to Rule 42(a) of the Federal Rules of Civil

9  Procedure; (2) appointing Rhode Island as Lead Plaintiff pursuant to the Private Securities

10  Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), *et seq*.; (3) approving

11  Rhode Island's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for

12  the Class and Wagstaffe, Von Loewenfeldt, Busch & Radwick LLP ("WVBR LLP") as Liaison

13  Counsel for the Class (the "Motion"); and (4) granting such other and further relief as the Court

14  may deem just and proper.

15

This Motion is made on the grounds that Rhode Island believes it is the "most adequate

16  plaintiff" under the PSLRA, and should therefore be appointed Lead Plaintiff.  Specifically, the

17  Fund believes it has the "largest financial interest" in the relief sought by the Class in this

18  litigation by virtue of, among other things, the significant losses that it suffered on its

19  investments in Apple Inc. ("Apple" or the "Company") securities.  Rhode Island is the

20  paradigmatic Lead Plaintiff envisioned by Congress in enacting the PSLRA because it is a

21  sophisticated institutional investor with a substantial financial stake in the litigation that has,

22  after rigorous consideration, selected and retained competent counsel that it will effectively

23  supervise as the litigation progresses.  The Fund also otherwise satisfies the requirements of Rule

24  23 of the Federal Rules of Civil Procedure ("Rule 23") because its claims are typical of other

25  Class members' claims and because it will fairly and adequately represent the Class.

26

This Motion is based upon this Notice of Motion, the accompanying Memorandum of

27  Points and Authorities in support thereof, the Declaration of James M. Wagstaffe ("Wagstaffe

28

Decl.") filed herewith, the pleadings and other filings herein, and such written or oral argument and discovery as may be permitted by the Court.

WHEREFORE, Rhode Island respectfully requests that the Court: (1) consolidate the above-captioned actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; (2) appoint it as Lead Plaintiff in the above-captioned actions pursuant to the PSLRA; (3) approve its selection of Labaton Sucharow as Lead Counsel and WVBR LLP as Liaison Counsel for the Class; and (4) grant such further relief as the Court may deem just and proper.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   STATEMENT OF THE ISSUES TO BE DECIDED

1.      Whether the Court should consolidate the above-captioned actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure;

2.      Whether the Court should appoint Rhode Island as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and

3.      Whether the Court should approve of Rhode Island's selection of Labaton Sucharow as Lead Counsel for the Class and of WVBR LLP as Liaison Counsel for the Class, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

## II.   PRELIMINARY STATEMENT

Presently pending before this Court are three federal securities class actions[1] brought on behalf of a class consisting of all purchasers other than Defendants (defined herein) who purchased Apple, Inc.'s publicly traded securities during the period from August 1, 2017, through January 2, 2019, inclusive (the "Class Period"), and who were damaged thereby (the "Class").  The Action charges Apple and certain of its officers and/or directors (collectively,

---

[1] The actions are *City of Roseville Emps.' Ret. Sys. v. Apple Inc.*, No. 19-cv-02033-YGR (N.D. Cal. Apr. 16, 2019) (the "*Roseville* Action"); *Reddy v. Apple*, No. 19-cv-02615 (N.D. Cal., May 14, 2019) (the "*Reddy* Action"); and *Steamfitters Local 449 Pension Plan v. Apple, Inc.*, No. 19-cv-02891-JD (N.D. Cal., May 24, 2019) (the "*Steamfitters* Action") (together, the "Action").

"Defendants") with violations of the Securities Exchange Act of 1934 (the "Exchange Act").[2]

In securities class actions, the PSLRA requires district courts to resolve consolidation before appointing a lead plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).  Here, the actions should be consolidated because they each involve identical legal and factual questions.  *See* Fed. R. Civ. P. 42(a); § IV.A., *infra*.

As soon as practicable after its decision on consolidation pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought in this litigation, and also whether that movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Rhode Island respectfully submits that it should be appointed Lead Plaintiff because it has the "largest financial interest" in this litigation and has made the requisite showing of typicality and adequacy required by the standards of the PSLRA.  As set forth in detail below, the Fund incurred $4,101,951 in losses on a last-in-first-out ("LIFO") basis as a result of its transactions in Apple securities during the Class Period.[3]  In light of this significant loss, Rhode Island has a substantial financial interest in the relief sought by this litigation—an interest believed to be greater than that of any competing movant.

In addition to asserting the largest financial interest in this litigation, Rhode Island also meets the typicality and adequacy requirements of Rule 23 as required by the PSLRA, because its claims are typical of those of absent Class members, and because it will fairly and adequately represent the interests of the Class.  The Fund is a sophisticated institutional investor and

---

[2] In addition to the Company, the Action names the following individuals as defendants: (1) Timothy D. Cook, the Company's Chief Executive Officer ("CEO"); and (2) Luca Maestri, the Company's Senior Vice President and Chief Financial Officer ("CFO").

[3] A copy of the PSLRA-required Certification is attached as Exhibit A to the accompanying Wagstaffe Decl., which sets forth all transactions of Rhode Island in Apple securities during the Class Period.  In addition, a chart reflecting the calculation of the Fund's losses as a result of its Class Period transactions in Apple securities is attached as Exhibit B to the Wagstaffe Decl.

consumer of legal resources with a substantial financial stake in the litigation and has the ability, resources, and experience to direct the litigation separate and apart from its selected counsel.

Indeed, the Fund is precisely the type of sophisticated institutional investor that Congress intended to empower to lead securities class actions.  As set forth below, the Fund fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and has already dutifully executed its core statutory responsibility to select and retain counsel, and is willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the continued vigorous prosecution of this Action.  The Fund's adequacy is also demonstrated through its retention of Labaton Sucharow as proposed Lead Counsel on behalf of the Class.  Labaton Sucharow is a nationally recognized securities class action law firm with an established track record of achieving substantial recoveries for the benefit of injured investors and has the expertise and resources necessary to handle litigation of this complexity and scale.  Moreover, WVBR LLP, a San Francisco-based firm, also has a distinguished record representing plaintiffs in securities class actions such as the instant case.

Accordingly, based on Rhode Island's significant financial interest and its demonstrated commitment and ability to oversee the conduct of this action, it respectfully requests that the Court appoint it Lead Plaintiff and otherwise grant its Motion.

## III.     OVERVIEW OF THE PENDING ACTIONS

### A.     Procedural Overview

On April 16, 2019, the City of Roseville Employees' Retirement System filed an action against Defendants on behalf of purchasers of Apple common stock between November 2, 2018, and January 2, 2019, inclusive.  *See City of Roseville Emps.' Ret. Sys. v. Apple Inc.*, No. 19-cv-02033-YGR, ECF No. 1 (N.D. Cal. Apr. 16, 2019).  The *Roseville* Action alleged principally that Apple made materially false and misleading statements and/or failed to disclose material information to investors regarding iPhone sales.  Specifically, that the U.S.-China trade war had negatively impacted demand for iPhones and Apple's pricing power in greater China and that the rate at which Apple customers were replacing their batteries in older iPhones rather than

purchasing new iPhones was negatively impacting Apple's iPhone sales growth and that, as a result, the Company's common stock traded at artificially inflated prices during the class period. The *Roseville* Action acknowledged that "the battery 'throttling' had surreptitiously created artificial demand for new premium priced iPhones from consumers who believed their poorly performing iPhones were outdated and thus needed to be replaced." *See, id.*, ¶ 8. Notwithstanding this allegation, the *Roseville* Action failed to plead a class period sufficient to encompass Defendants' alleged false and misleading statements concerning iPhone demand traceable to the "batterygate" scandal and the artificially inflated customer demand for new iPhones created as a result thereof.

On May 14, 2019, Priyam Reddy filed an action against Defendants on behalf of purchasers of Apple common stock between November 2, 2018, and January 2, 2019, inclusive, making substantially the same allegation as those in the *Roseville* Action.  *See Reddy v. Apple Inc.*, No. 5:19-cv-02615, ECF No. 1 (N.D. Cal., May 14, 2019).  The *Reddy* Action was assigned to the Honorable Lucy H. Koh.   On June 11, 2019, this Court granted the administrative motion of the filing plaintiff in the *Reddy* Action to relate the *Reddy* Action to the *Roseville* action, and ordered the case reassigned.  ECF No. 19.

The *Steamfitters* action was filed on May 24, 2019, and assigned to the Honorable James Donato.  *See Steamfitters Local 449 Pension Plan v. Apple, Inc.*, No. 3:19-cv-02891-JD, ECF No. 1 (N.D. Cal., May 24, 2019).  The *Steamfitters* Action, as described in more detail below, expands on the class period advanced in the *Roseville* and *Reddy* Actions and alleges a Class Period designed to fully encompass the alleged fraud, thereby including all potential class members and maximizing the potential recovery for the putative class.  The *Steamfitters* Action's Class Period starts on August 1, 2017, when Apple began to report a record number of iPhone upgrades but failed to disclose that the strength of the upgrade cycle was founded on artificial demand traceable to "batterygate."

### B.      Substantive Overview

Apple is a multinational technology company headquartered in Cupertino, California that designs, develops, and sells consumer electronics, computer software, and online services.  The Company's most profitable product is the iPhone smartphone, which since 2012 has represented more than 40 percent of the Company's revenue.  China is the Company's third-largest market, and most important growth market, yet is susceptible to geopolitical and macroeconomic uncertainty and increased competition from emerging Chinese smartphone manufacturers.

The Action alleges that in late 2016 reports surfaced of older model iPhones experiencing sudden shutdown issues.  Unknown to the market at the time was that the shutdowns were caused by aging iPhone batteries, as opposed to the age of the iPhone itself.  In order to remediate this problem, on January 23, 2017, Apple published iOS update 10.2.1 to secretly "fix" the shutdown issues by intentionally slowing down the performance of older model iPhones with afflicted batteries.  The update disclosed only that it included "bug fixes and improves the security of your iPhone or iPad."

Defendants' undisclosed practice of slowing down iPhones came with an undisclosed "benefit" for the Company.  Frustrated with iPhones operating at diminished capacity and falsely believing their devices to be obsolete, consumers opted to purchase brand new iPhones on accelerated timetables.  These premature upgrades artificially inflated iPhone sales, provided the appearance of consistent iPhone sales growth, and resulted in record iPhones sales throughout 2017, artificially inflating the value of Apple securities.  The Class Period thus begins on August 1, 2017, when the Company began seeing enhanced iPhone upgrade cycles due, in no small part, to the undisclosed throttling of older model iPhones.  Over the next several months, Defendants repeatedly touted the demand for newer model iPhones, as well as the rate at which consumers were upgrading their iPhones.

In December 2017, Apple revealed it had been intentionally slowing down certain iPhones and disclosed that the problem was battery-related, as opposed to device-related.  Following this revelation, Apple offered discounted replacement batteries throughout 2018 in

light of public outrage.  Shortly thereafter, regulators in Brazil, China, Italy, France, and South Korea announced they had launched independent investigations into whether Apple's conduct was fraudulent and, on January 31, 2018, *Bloomberg* reported that Apple was facing probes from the U.S. Justice Department and the Securities and Exchange Commission regarding whether the Company violated the federal securities laws over the intentional iPhone slowdowns.  These probes are ongoing.

On November 1, 2018, after the close of trading, Apple issued a release reporting its fiscal fourth quarter 2018 and full fiscal year 2018 results for the period that had ended September 29, 2018—more than one month earlier.  During the conference call held after close of market, Defendants touted that the Company was poised for the holiday season with its "strongest lineup of products and services ever."  Additionally, when questioned as to ongoing demand for the Company's newest iPhone model, the XS and XS Max, Defendants stated they "got off to a really great start."  Finally, Defendants made the surprise announcement that they would no longer report unit sales of the Company's products.[4]

When questioned about any "macroeconomic uncertainty" in "emerging markets," Defendant Cook maintained that those concerns did not include Apple's Greater China sales growth and that its Greater China sales growth was strong, stating in pertinent part that, "[i]n relation to China specifically, I would not put China in that category.  Our business in China was very strong last quarter.  We grew 16%, which we're very happy with.  iPhone, in particular, was very strong double-digit growth there."

The Action alleges that during the Class Period, Defendants misled investors by making materially false and misleading statements as each of the Defendants knew and failed to disclose or deliberately disregarded that: (1) the intentional slowdown of certain model iPhones unsustainably boosted iPhone sales during 2017 and cannibalized future sales; (2) the Company's replacement battery program during 2018 (enacted as a direct and primary response

---

[4] Unit sales represent total sales earned on a per-unit basis, *e.g.*, specific iPhone models. Therefore, unit sales are an important metric used to determine the average selling price over a period of time to analyze sales performance.

1   to the Company's intentional phone throttling during 2017) was negatively impacting iPhone

2   sales; and (3) the U.S.-China trade war, declining Chinese economy, and strength of the U.S.

3   dollar had negatively impacted demand for iPhones in Greater China.

4        On January 2, 2019, after the close of trading, for the first time in fifteen years, Apple

5   slashed its prior quarterly revenue forecast for its already complete first fiscal quarter 2019.  On

6   this date, Defendants disclosed that the Company's revenues for its first fiscal quarter 2019 were

7   only $84 billion, substantially below the expected range of $89 billion to $93 billion the

8   Company had announced eight weeks earlier.  Defendants attributed these results to declining

9   iPhone sales, in part, due to more consumers purchasing discounted replacement batteries in lieu

10   of upgrading their iPhones, and the decelerating Chinese economy and U.S.-China trade war

11   impacting iPhone demand in Greater China.  On this news, Apple common stock fell

12   precipitously by more than $15 per share, or more than 9 percent, to close at $142.19 per share

13   on January 3, 2019.

14   **IV.   ARGUMENT**

15       **A.   The Actions Should Be Consolidated**

16        Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)") states that "'[i]f actions

17   before the court involve a common question of law or fact, the court may: (1) join for hearing or

18   trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other

19   orders to avoid unnecessary cost or delay.'"  *Crihfield v. CytRx Corp.*, No. CV 16-05519 SJO

20   (SKx), 2016 WL 10587938, at *2 (C.D. Cal. Oct. 26, 2016).  The PSLRA contemplates

21   consolidation where "more than one action on behalf of a class asserting substantially the same

22   claim or claims arising under this chapter has been filed."  15 U.S.C 78u-4(a)(3)(B)(ii). As such,

23   the PSLRA does not displace the traditional legal standards for consolidation under Rule 42(a).

24        Consolidation of the above-captioned actions is proper where, as here, the actions involve

25   common questions of law and fact such that consolidation would prevent unnecessary cost or

26   delay in adjudication.  Each of the actions has been filed in this District alleging similar factual

27   and legal grounds to support allegations of violations of Sections 10(b) and 20(a) of the

28

Exchange Act arising from the public dissemination of false and misleading information to investors. Accordingly, the actions should be consolidated pursuant to Rule 42(a) for all purposes.

**B.      The Statutory Framework of the Private Securities Litigation Reform Act**

        **1.      The Aim of the PSLRA**

The statutory purpose animating the passage of the PSLRA was to reduce lawyer driven litigation by encouraging institutional investor involvement in securities class actions. As the Third Circuit has explained, the PSLRA began from the premise that "attorneys operating on a contingent fee basis initiate most [securities] suits in the names of 'figurehead' plaintiffs with little at stake." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 191 (3d Cir. 2005) (alteration in original) citing Elliott J. Weiss & John S. Beckerman, *Let the Money Do the Monitoring: How Institutional Investors Can Reduce Agency Costs in Securities Class Actions,* 104 Yale L.J. 2054 (1995). Such figurehead plaintiffs were viewed as unlikely to monitor attorneys to ensure faithful service to the class. *Id.* To ensure that both plaintiffs and their attorneys would act as fiduciaries to the class, Congress enacted the PSLRA, through which it aimed to "encourage institutional investors to take a more active role in securities class action lawsuits." H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); *see also In re Extreme Networks Inc. Sec. Litig.*, No. 15-cv-04883, 2016 WL 3519283, at *6 (N.D. Cal. June 28, 2016) (same).

Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation and to select and direct counsel capable of maximizing the classes' recovery. *See* H.R. Conf. Rep. No. 104-369, at 34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34. To this end, many courts, including courts in this District, have recognized that the legislative history reflects a

1    clear preference for institutional investors to be appointed as lead plaintiff in securities class

2    actions. *See Perlmutter v. Intuitive Surgical, Inc*., No. 10-CV-03451-LHK, 2011 WL 566814, at

3    *13 (N.D. Cal. Feb. 15, 2011) ("appoint[ing] an institutional investor . . . comports with the

4    PSLRA's goal to increase the likelihood that institutional investors would serve as lead

5    plaintiffs"); *In re Critical Path Sec. Litig.*, 156 F. Supp. 2d 1102, 1112 (N.D. Cal. 2001)

6    (appointing single institutional investor instead of aggregating losses with proposed co-lead

7    plaintiff individual, noting Congressional preference for institutional investors); *In re Network

8    Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020, 1025 (N.D. Cal. 1999) (courts notes that

9    "Congress expected that the lead plaintiff would normally be an institutional investor with a

10    large stake in the outcome," and that "[i]t seems clear that Congress intended a single, strong

11    lead plaintiff to control counsel and the litigation").

12         By raising the bar for who was intended to serve as Lead Plaintiff, the PSLRA has

13    succeeded.  Numerous studies have demonstrated that the presence of an institutional lead

14    plaintiff improves the settlement size and reduces attorneys' fees after controlling for relevant

15    variables, suggesting that using institutional investors as lead plaintiffs has a positive effect on

16    recoveries in securities fraud cases when compared to individual investors. *See, e.g.*, James D.

17    Cox *et al.*, *Does the Plaintiff Matter? An Empirical Analysis of Lead Plaintiffs in Securities

18    Class Actions*, 106 Colum. L. Rev. 1587, 1592 (2006); Adam C. Prichard and Stephen Choi,

19    *Lead Plaintiffs and Their Lawyers: Mission Accomplished, or More to Be Done?*, Univ. of Mich.

20    Law School Scholarship Repository, Law & Economics Working Papers (May 3, 2017)

21    (collecting academic research and noting that "institutional investor lead plaintiffs, in particular

22    public pension funds and labor unions, are positively related to larger settlement amounts even

23    when controlling for a measure of provable losses, market capitalization, class period length, and

24    the presence of an SEC enforcement action."); *id.* at 8 (citing study finding that "cases with

25    public pension lead plaintiffs have larger recoveries and lower fee requests and fee awards than

26    cases with other lead plaintiff types.").

27                    **2.    "Selection" of Lead Counsel as the Cornerstone of the PSLRA**

28

1    The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of

2   the court, select and retain counsel to represent the class."  15 U.S.C.A. § 78u-4.  Congress

3   meant to give the lead plaintiff significant responsibility in controlling the litigation, but chose to

4   manifest this responsibility formally in only one area: 'The only powers expressly given to the

5   lead plaintiff . . . are to '*select and retain*' counsel," subject to the approval of the court.  *In re*

6   *Cendant Corp. Sec. Litig.*, 404 F.3d at 192 (citing 15 U.S.C. § 78u–4(a)(3)(B)(v)); *In re*

7   *Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002) ("[L]ead plaintiff's authority and responsibility

8   [is] *to select counsel who he believes will best serve his own interests and the interests of the*

9   *class*.") (emphasis added); H.R. Conf. Rep. 104-369, at 32, reprinted in 1995 U.S.C.C.A.N. 730,

10   731 ("These provisions are intended to increase the likelihood that parties with significant

11   holdings in issuers . . . *exercise control over the selection and actions of plaintiff's counsel*.")

12   (emphasis added).  The PSLRA thus leaves the selection of counsel in the hands of a unitary,

13   experienced, and sophisticated investor who, as a sophisticated consumer of legal services, can

14   evaluate prospective counsel based both on skill and cost while providing counsel with

15   incentives to perform excellent work.  *See In re Cendant Corp. Sec. Litig.*, 404 F.3d at 193.

16   Indeed, the provision was enacted "to empower investors so that they–not their lawyers–exercise

17   primary control over private securities litigation."  S. Rep. 104-98, at 4, *reprinted in* 1995

18   U.S.C.C.A.N. 679, 683; *id.* at 11-12 ("Finally, the Committee permits the lead plaintiff to choose

19   the class counsel.  *This provision is intended to permit the plaintiff to choose counsel rather*

20   *than have counsel choose the plaintiff*." (emphasis added)).

21    While the statutory intent behind the enactment of the PSLRA is clear, the Ninth Circuit

22   has nevertheless cautioned that "Congress enacts statutes, not purposes, and courts may not

23   depart from the statutory text because they believe some other arrangement would better serve

24   the legislative goals."  *In re Cavanaugh*, 306 F.3d at 731–32.  Thus, "[w]e start, as always, with

25   the language of the applicable statute," *id.* at 729*,* and the PSLRA specifies that the presumptive

26   lead plaintiff shall "select and retain" counsel.  "Select" means to "[c]arefully choose as being

27

28

the best or most suitable."[5] *Select*, *Oxford English Dictionary,*

https://en.oxforddictionaries.com/definition/us/select (*accessed* June 6, 2019).  "Retain" means

"[t]o hire; to engage for the provision of services (as by a lawyer, an accountant, an employee,

etc.)."  *Retain*, *Black's Law Dictionary* (11th ed. 2019).  Both the text of the PSLRA and

Congress' intent therefore make clear that the presumptive lead plaintiff must engage in some

selection process to "carefully choose" based on some criteria, lead counsel that is the "best or

most suitable."

      This reading of the statute is supported by the fact that the PSLRA specifies that the

presumptive lead plaintiff shall "select ***and*** retain" lead counsel.  Were the "selection" of counsel

not an affirmative act requiring a considered choice between competing alternatives, Congress

would have simply empowered the presumptive lead plaintiff to "retain" counsel of its choosing,

unconstrained by any "selection" process.  *See also Bailey v. United States*, 516 U.S. 137, 146

(1995) ("We assume that Congress used two terms because it intended each term to have a

particular, nonsuperfluous meaning."); *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (quoted in *Corley

v. United States*, 556 U.S. 303, 314 (2009)); *Astoria Fed. Savings & Loan Ass'n v. Solimino*, 501

U.S. 104, 112 (1991); *Sprietsma v. Mercury Marine*, 537 U.S. 51, 63 (2003).

      Echoing this reading of Lead Plaintiff's responsibilities in *Cohen v. United States District

Court*, the Ninth Circuit expressly held that "***the process through which the lead plaintiff

selected its candidates for and final choice of lead counsel***" are relevant factors in approving

the choice of lead counsel.  586 F.3d 703, 712 (9th Cir. 2009) (citing *In re Cendant Corp.

Litig.*, 264 F.3d 201,  276 (3d Cir. 2001)); *id.* at 709 (citing *Cendant* approvingly for the

proposition that a Court may "direct the lead plaintiff to undertake an ***acceptable selection

process***" where counsel is inadequate) (emphasis added). Once an adequate selection process has

resulted in the retention of counsel, courts are required to grant significant deference to that

choice.  *See, e.g.*, *Hessefort v. Super Micro Comp., Inc.*, 317 F. Supp. 3d 1056, 1059 (N.D. Cal.

2018) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should

---

    [5] *See also*, *Select*, *Webster's Third New Int'l Dictionary* (2002 Ed.) ("to choose from a number or group usu. by fitness, excellence, or other distinguishing feature").

generally defer to that choice," and "should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently") (quoting *Cohen* at 711-12); *Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 08-CV-7281, 2008 WL 4974839, at *9 (S.D.N.Y. Nov. 24, 2008) ("The PSLRA . . . evidences a strong presumption in favor of approving *a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention*.") (quotations omitted) (emphasis added).

Thus, because the selection of lead counsel is the only power given by Congress to the lead plaintiff and the cornerstone of the PSLRA's statutory mechanism implementing Congress' intent, lead plaintiff movants must be required to present some *prima facie* evidence that they are adequate to accomplish their core statutory responsibility and have engaged in the "selection" of lead counsel, as opposed to being selected by counsel.  *See, e.g., Rubke v. Capitol Bancorp*, No. C054800 PJH, 2006 WL 734390, at *5 (N.D. Cal. Mar. 21, 2006) ("However, neither plaintiffs nor Trevor submitted any information about *the process the plaintiffs used to select counsel* . . . .  At the hearing, the court noted that this information was required to ensure that Rubke's and Ferguson's choices were objectively adequate.  The court advised plaintiffs that it would approve their choice of counsel *after they demonstrated that their choice resulted from good faith selection and negotiation*.") (emphasis added) (internal citation omitted); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 350 (D. Md. 2003) ("In making the adequacy determination the court also should consider . . . 'whether the movant has *demonstrated a willingness and ability to select competent class counsel*.'") (citation omitted).

Courts within the Ninth Circuit and elsewhere, including this Court, have consistently rejected as inadequate lead plaintiff movants whose *prima facie* evidence shows telltales that they have abdicated their core statutory responsibility to "select" lead counsel and where it appears, instead, that the proposed lead counsel has selected the lead plaintiff based solely on their financial interest in the action.  S. Rep. 104-98, at 11-12, *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("This provision is intended to permit the plaintiff to choose counsel rather than have counsel choose the plaintiff.").

1    These telltales of lawyer-driven litigation are evident where unrelated lead plaintiff

2  movants are banded together without justification as part of a group.  *See, e.g*, *In re Petrobras*

3  *Sec. Litig.*, 104 F. Supp. 3d 618, 621-22 & n.2 (S.D.N.Y. 2015) (collecting cases and noting that

4  "[a]llowing unrelated plaintiffs to band together in order to manufacture a larger financial

5  interest . . . ensures that the lawyers, who are invariably the matchmakers behind such marriages

6  of convenience, are the true drivers of the litigation."); *See also In re Tarragon Corp. Sec. Litig.*,

7  No. 07 CIV 7972 (PKC), 2007 WL 4302732, at *1-2 (S.D.N.Y. Dec. 6, 2007) (collecting cases

8  and noting that "to enjoy the rebuttable presumption that the statute confers, there must be some

9  evidence that the members of the group will act collectively and separately from their lawyers.");

10  *Bowman v. Legato Sys.*, *Inc.*, 195 F.R.D. 655, 658 (N.D. Cal. 2000) (collecting cases and noting

11  that "many district courts have rejected lead plaintiff applications from large, lawyer-solicited

12  aggregations of shareholders"); *Bodri v. Gopro, Inc.*, No. 16-cv-00232-JST, 2016 WL 1718217,

13  at *4 (N.D. Cal. Apr. 28, 2016) ("Northern District of California courts have generally found that

14  appointing a group of unrelated investors undercuts the primary purpose of the PSLRA: to

15  eliminate lawyer-driven litigation.") (internal quotation marks and citation omitted).  These

16  telltales of lawyer-driven litigation are also apparent where multiple firms seek to represent an

17  individual movant.  *See In re Calpine Corp. Sec. Litig.*, No. C021200 SBA, 2004 WL 3316309,

18  at *3–4 (N.D. Cal. Feb. 5, 2004) ("The motion to appoint no less than four firms strongly hints

19  that it is the law firms, and not Mr. Ser, who is running this litigation.  This, of course, then begs

20  the question of whether Mr. Ser is even capable of serving as Lead Plaintiff.").

21    The abdication of the core statutory responsibility to "select" lead counsel and lead

22  plaintiff movants' resulting inadequacy is also evident in cases where courts, as part of emerging

23  best practices, have requested declarations or testimony from lead plaintiff movants concerning

24  their selection of counsel and where, in turn, those movants have quietly withdrawn themselves

25  from consideration.  *See, e.g.*, *Desilvio v. Lion Biotech Indus.*, No. 17-cv-02086-SI, ECF Nos.

26  35, 37 (N.D. Cal., July 7, 2017) (lead plaintiff movants withdrew after court order identifying

27  information provided by movants as "skeletal" and ordering movants to set forth "how each

28

1   individual came to retain his/her respective lawyer(s).”); *In re Gemstar-TV Guide Int'l, Inc. Sec.*

2   *Litig.*, 209 F.R.D. 447, 452 & n.8 (C.D. Cal. 2002) (disqualification for lack of transparency);

3   *Piven v. Skyes Enters.*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000) (same).

4          This Court and others within the Northern District have similarly criticized movants who

5   have provided declarations "replete with generalities" that say nothing about whether "the

6   investors are the true movants as opposed to their counsel." *See Ali v. Intel Corp.*, No. 18-cv-

7   00507-YGR, 2018 WL 2412111, at *3 & n.8 (N.D. Cal. May 29, 2018) (citing *Markette v.*

8   *XOMA Corp.*, No. 15-cv-03425-HSG, 2016 WL 2902286, at *9 (N.D. Cal. May 13, 2016)). This

9   Court has called out as "troubling" a movants' declaration that failed to describe how they

10  became aware of each other, "which suggests that each was recruited by counsel." *Id.* (citing

11  *CytRx Corp.*, 2016 WL 10587938, at *4 ("Perhaps the most troubling aspect of the Joint

12  Declaration . . . is its failure to describe how the six members of the CytRx Investor Group . . .

13  came to know of each others' existence, strengthening the inference that each was recruited by

14  counsel.") (alteration in original)).

15         The "recruitment by counsel" observed by this Court is also evident in the numerous

16  solicitations which have taken place in this Action.  To date, there have been more than 150

17  press releases published by at least a dozen law firms soliciting clients.  Where a lead plaintiff

18  movant has responded to a solicitation and selected counsel on that basis, that movant should be

19  required to make a *prima facie* showing that they have, in fact, **selected** proposed lead counsel

20  and have not been "recruited by counsel" in abdication of their core statutory responsibility

21  under the PSLRA.  *See, e.g.*, *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d at 1020-21

22  (rejecting lead plaintiff group assembled through solicitations and lamenting that the PSLRA was

23  not intended to replace the "race to the courthouse" with the race to the "publisher"); *In re*

24  *Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. 07177 (FLW), 2007 WL 2683636, at *7

25  (D.N.J. Sept. 7, 2007) (finding movant failed to surmount the threshold adequacy inquiry where

26  movant was solicited by counsel through mailing and noting that "the Court's inquiry of whether

27  Mr. Guzhagin is adequate hinges upon **his willingness and ability to select competent class**

28

1  **counsel**"); *Bodner v. Oreck Direct, LLC*, No. C064756, 2007 WL 1223777, at *2 (N.D. Cal.

2  Apr. 25, 2007) (quoting *Meachum v. Outdoor World Corp.,* 171 Misc. 2d 354, 654 N.Y.S. 2d

3  240, 369 (1996) (noting that plaintiff had failed to meet "the threshold typicality or adequacy

4  requirements of Rule 23(a)" based in part on counsel's "[s]olicitation of clients for the

5  commencement or continuation" of the action)).

6      ### 3.      The PSLRA's Statutory Mechanism

7          The PSLRA provides a sequential procedure for selecting lead plaintiff for "each private

8  action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the

9  Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-

10  4(a)(3)(B). The Ninth Circuit has described this mechanism as "provid[ing] a simple three-step

11  process for identifying the lead plaintiff" in a securities fraud case. *In re Cavanaugh,* 306 F.3d

12  726, 729 (9th Cir.2002).

13          *First*, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies

14  that:

15              Not later than 20 days after the date on which the complaint is
                filed, the plaintiff or plaintiffs shall cause to be published, in a
16              widely circulated national business-oriented publication or wire
                service, a notice advising members of the purported plaintiff
17              class --

18              (I)      of the pendency of the action, the claims asserted therein,
19              and the purported class period; and

20              (II)      that, not later than 60 days after the date on which the
                notice is published, any member of the purported class may move
21              the court to serve as lead plaintiff of the purported class.

22  15 U.S.C. § 78u-4(a)(3)(A)(i).

23          *Second*, "the district court must consider the losses allegedly suffered by the various

24  plaintiffs before selecting as the 'presumptively most adequate plaintiff'-and hence the

25  presumptive lead plaintiff-the one who 'has the largest financial interest in the relief sought by

26  the class' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil

27  Procedure.'" *In re Cavanaugh*, 306 F.3d 726, 729–30 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-

28

1   4(a)(3)(B)(iii)(I)).  In other words, the district court must compare the financial stakes of the

2   various plaintiffs and determine which one has the most to gain from the lawsuit.  *Id.*  "It must

3   then focus its attention on *that* plaintiff and determine, based on the information he has provided

4   in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in

5   particular those of 'typicality' and 'adequacy.'"  *Id.*

6          While a searching inquiry under Rule 23 is not required at this stage of the litigation, that

7   "does not mean that the Court must pay mere lip service to the requirement of the statute that a

8   prospective lead plaintiff satisf[y] the requirements of Rule 23."  *Mohanty v. BigBand Networks,*

9   *Inc.*, No. C075101SBA, 2008 WL 426250, at *9 (N.D. Cal. Feb. 14, 2008) (internal citation

10  omitted) (alteration in original).  It is at this stage that courts may probe the "selection" of

11  counsel.  *See, e.g., Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004) (quoting *Cendant*,

12  264 F.3d at 265) ("In *Cendant*, the Third Circuit noted that 'one of the best ways for a court to

13  ensure that it will fairly and adequately represent the interests of the class is to inquire whether

14  the movant has demonstrated a willingness and ability to select competent class counsel.'").

15         If the plaintiff with the largest financial stake in the controversy meets its *prima facie*

16  burden of providing information that satisfies the court that it is adequate and typical, they

17  become the presumptively most adequate plaintiff.  If the plaintiff with the greatest financial

18  stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time

19  considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both

20  willing to serve and satisfies the requirements of Rule 23.  *In re Cavanaugh*, 306 F.3d at 730–31.

21         *Third*, once the presumption is established, it "may be rebutted only upon proof . . . that

22  the presumptively most adequate plaintiff [] will not fairly and adequately protect the interests of

23  the class" or "is subject to unique defenses that render such plaintiff incapable of adequately

24  representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  At the third stage, the process turns

25  adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's *prima facie*

26  showing of typicality and adequacy.  The district court may need to hold an evidentiary hearing,

27  and to make a renewed determination of typicality and adequacy.  *In re Cavanaugh*, 306 F.3d at

28

730–31.

### C.    Rhode Island Should Be Appointed Lead Plaintiff

Rhode Island respectfully submits that it is the presumptively "most adequate plaintiff" because it has complied with the PSLRA procedural requirements, holds the largest financial interest of any qualified movant, and otherwise satisfies Rule 23's typicality and adequacy requirements.

#### 1.    The Fund Timely Moved for Appointment as Lead Plaintiff

The Fund filed its motion to serve as Lead Plaintiff in a timely manner.  Counsel in the *Roseville* Action caused notice regarding the lead plaintiff process to be published on *Business Wire*, a widely circulated, national, business-oriented news reporting service.  *See* Wagstaffe Decl., Ex. C, Notice.  Thus, as permitted by the PSLRA, any person or group of persons may apply to be appointed Lead Plaintiff within sixty (60) days after publication of the notice, *i.e.*, on or before June 17, 2019.  The Fund filed its motion within the required period.

On May 24, 2019, Plaintiff Steamfitters Local 449 Pension Plan filed the *Steamfitters* Action against Defendants, asserting a broader class period of August 1, 2017 through January 2, 2019.  That same day, counsel for the Steamfitters Local 449 Pension Plan published a notice on *Globe Newswire*, a widely circulated, national, business-oriented news reporting service, which alerted investors to the expanded Class Period and reiterated the June 17, 2019, deadline to seek Lead Plaintiff appointment.  *See* Wagstaffe Decl., Ex. D.  Accordingly, Rhode Island has timely moved for appointment as Lead Plaintiff through the filing of this motion.

#### 2.    The Fund Has the Largest Financial Interest in the Outcome of the Action

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with "the largest financial interest in the relief sought by the class," so long as the movant "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

During the Class Period, Rhode Island suffered substantial losses of $4,101,951 on a LIFO basis as a result of its transactions in Apple securities during the Class Period.  *See*

1   Wagstaffe Decl., Ex. B, Loss Analysis.  The Fund is presently unaware of any other movant with

2   a larger financial interest in the outcome of the Action.  Consequently, and because it also

3   satisfies Rule 23's typicality and adequacy requirements, the Fund is entitled to the legal

4   presumption that it is the most adequate plaintiff.  15 U.S.C. § 78u4(a)(3)(B)(iii)(I).

### 3.   The Fund Otherwise Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation,

Rhode Island satisfies the applicable requirements of Rule 23.  *See* 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I)(cc).  With respect to class certification, Rule 23(a) requires that: (1) the class is

so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

common to the class; (3) such claims are typical of those of the class; and (4) the representative

will fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a).  However,

at the lead-plaintiff-selection stage, all that is required is a preliminary showing that the lead

plaintiff's claims are typical and adequate.  *See, e.g.*, *Westley v. Oclaro, Inc.*, No. C-11-2448-

EMC, 2011 WL 4079178, at *2 (N.D. Cal. Sept. 12, 2011) (noting that only a "preliminary

showing" of typicality and adequacy satisfies Rule 23 at the lead plaintiff stage).

### (a)   The Fund's Claims Are Typical of Those of the Class

The Fund's claims are typical of the claims of other purchasers of Apple securities.  "The

putative lead plaintiff satisfies the typicality requirement when it has suffered the same injuries

as absent class members, as a result of the same conduct by the defendants."  *In re Extreme*

*Networks*, 2016 WL 3519283, at *3.  Here, the claims of Rhode Island and all other Class

members arise from the same course of events, and the legal arguments to prove Defendants'

liability are identical.  Like all other Class members, Rhode Island (1) purchased Apple securities

during the Class Period (2) at prices artificially inflated by Defendants' materially false and

misleading statements and omissions and (3) was damaged when the truth was revealed.  *See id.*

(finding typicality requirement met when proposed lead plaintiff "purchased shares of [defendant

company] during the specified class period, when the company's share prices were alleged to

have been artificially inflated by Defendants' misrepresentations . . . [and] suffered damages

1   when those misrepresentations came to light.").  Thus, the Fund satisfies the typicality

2   requirement.

> **(b)   The Fund Will Fairly and Adequately Protect the Interests of the Class and Is Precisely the Type of Lead Plaintiff Congress Intended**

5   Under Rule 23(a)(4), a representative party must "fairly and adequately protect the

6   interests of the Class."  Fed. R. Civ. P. 23(a)(4).  With respect to adequacy, a movant is an

7   adequate class representative when it possesses common interests and an absence of conflict with

8   fellow class members, and the movant's attorneys are qualified, experienced, and vigorously able

9   to conduct the litigation.  *See Westley*, 2011 WL 4079178, at *2 (explaining that, with regard to

10  the adequacy requirement, a court must evaluate whether "(1) the lead plaintiff's claims conflict

11  with those of the class; and (2) class counsel is qualified, experienced, and generally able to

12  conduct the litigation") (citation omitted).  Here, no antagonism exists between the Rhode

13  Island's interests and those of the absent Class members; rather, the interests of the Fund and

14  Class members are squarely aligned.  Indeed, there are no facts to suggest any actual or potential

15  conflict of interest or other antagonism between the Fund and other Class members.  Moreover,

16  because of its substantial financial stake in the litigation, Class members can be assured that the

17  Fund has the incentive to vigorously represent the Class' interests.

18  In addition to satisfying the requirements of Rule 23, Rhode Island—as a large,

19  sophisticated institutional investor with more than $8 billion under management—is precisely

20  the type of investor Congress sought, through the enactment of the PSLRA, to empower to

21  assume a more prominent role in securities litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34

22  (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733; *see* § IV.B.1, *supra*.  Congress reasoned that

23  increasing the role of institutional investors, which typically have a large financial stake in the

24  outcome of the litigation, would be beneficial because institutional investors with a large

25  financial stake are more apt to effectively manage complex securities litigation.  *Id.*  To this end,

26  many courts, including courts in this District, have recognized that the legislative history reflects

27  a clear preference for institutional investors to be appointed as lead plaintiff in securities class

28

1    actions.  *See Perlmutter v. Intuitive Surgical, Inc*., 2011 WL 566814, at *13 ("appoint[ing] an

2    institutional investor . . . comports with the PSLRA's goal to increase the likelihood that

3    institutional investors would serve as lead plaintiffs"); *In re Critical Path, Inc. Sec. Litig.,* 156 F.

4    Supp. 2d 1102, 1109 (N.D. Cal. 2001) ("[W]hile it may be true that losing a high percentage of

5    one's net worth due to an alleged fraud contributes to one's desire to prosecute a lawsuit against

6    the wrongdoer, that desire is no substitute for the experience and resources of an institutional

7    investor with, presumably, an in-house legal team and experience in the securities business.").

8    Here, the Fund is well suited to fulfill this Congressional intent.

9         "A lead plaintiff is a fiduciary for the investor class," and therefore the interests of the

10   absent class members are entrusted to the lead plaintiff's due diligence.  *Felix v. Symantec Corp.*,

11   No. C 18-02902 WHA, 2018 WL 4029053, at *4 (N.D. Cal. Aug. 23, 2018). The Fund is a well-

12   practiced fiduciary whose interest are aligned with those of the class by virtue of its "fiduciary

13   duties as a combination contributory/non-contributory retirement system fund governed by state

14   law." *In re Extreme Networks*, 2016 WL 3519283, at *3-4.

15        The Fund's adequacy is further supported by its past experience serving as Lead Plaintiff.

16   Rhode Island is well-aware of the Lead Plaintiff's obligations under the PSLRA to oversee and

17   supervise the litigation separate and apart from counsel and has submitted a sworn certification

18   as to its willingness and ability to fulfill those duties here.  *See* Wagstaffe Decl., Ex. A.  Rhode

19   Island also has the benefit of the resources and dedicated personnel of the Office of the Rhode

20   Island Treasurer who are highly experienced in conducting and supervising complex litigation,

21   and will bring those resources and that experience to bear in overseeing the prosecution of the

22   Action.  Indeed, Rhode Island recovered $6 million for investors as Lead Plaintiff in *In re*

23   *Coinstar, Inc. Securities Litigation*, No. 11-cv-133 (W.D. Wash.).  *See In re Gemstar–TV Guide*

24   *Int'l, Inc. Sec. Litig.,* 209 F.R.D. 447, 455 (C.D. Cal. 2002) (noting that institutional investor

25   movants "whose representatives [often in-house counsel] possess PSLRA experience—would

26   supervise a single law firm suggests that the pension funds, rather than [the lead counsel], would

27   control this litigation."). Thus, there can be no doubt that Rhode Island has the resources and

28

1  institutional sophistication required to effectively manage and supervise an action against the

2  largest publically traded Company in the world by market capitalization with a reputation for

3  taking cases to trial.  *See In re Enron Corp. Sec. Litig.*, 206 F.R.D 427, 457 (S.D. Tex. 2002)

4  (rejecting a motion to be appointed as lead plaintiff filed by an investor with "fractured attention

5  and resources" because the *Enron* "litigation [was] probably the largest and most complex of its

6  kind in the history of this country and . . . will demand the full focus of Lead Plaintiff(s) and

7  Lead Counsel").

8         Finally, Rhode Island has fulfilled its core statutory responsibility under the PSLRA and

9  has demonstrated its adequacy through its selection and retention, subject to Court approval, of

10  Labaton Sucharow as Lead Counsel to represent the class in this Action.  *See Armour v. Network*

11  *Assocs., Inc.*, 171 F. Supp. 2d 1044, 1052 (N.D. Cal. 2001) ("adequacy requires the absence of

12  antagonistic interests between class representatives and absent class members" and the

13  "willingness and ability to assume the duties of lead plaintiff, including *the crucial duties of*

14  *choosing adequate counsel . . . and monitoring that counsel's conduct throughout the*

15  *litigation*." (emphasis added)).  The Fund, as a sophisticated consumer of legal services,

16  ultimately selected and retained Labaton Sucharow, a firm with deep experience in prosecuting

17  securities class actions who has achieved success representing the Fund in the past.  *See In re*

18  *Coinstar, Inc. Securities Litigation*, No 11-cv-133 (W.D. Wash.) ($6 million settlement).  As

19  discussed more fully below, Labaton Sucharow is highly qualified and experienced in

20  prosecuting securities class actions, and has repeatedly demonstrated its ability to conduct

21  complex securities class action litigation effectively.  Accordingly, Rhode Island satisfies the

22  adequacy requirement.

23         **D.**      **The Fund's Choice of Lead Counsel Is Well-Qualified to Represent the Class**

24         The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the

25  class, subject to the court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  As such, this Court

26  should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests

27  of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Cohen*, 586 F.3d at 712 ("[I]f the

28

1   lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to

2   that choice.") (citing *Cendant*, 264 F.3d at 276); *Cavanaugh*, 306 F.3d at 733.  Courts should not

3   disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the

4   plaintiff class."  H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. at

5   734; *see also Cavanaugh*, 306 F.3d at 734 ("Selecting a lawyer in whom a litigant has

6   confidence is an important client prerogative and we will not lightly infer that Congress meant to

7   take away this prerogative from securities plaintiffs.").

8        Here, Rhode Island has selected Labaton Sucharow, a highly-qualified counsel, to serve

9   as Lead Counsel for the proposed Class.  Labaton Sucharow is among the preeminent securities

10   class action law firms in the country and has a proven track record of litigating actions resulting

11   in significant recoveries for investors.  For example, Labaton Sucharow has significant

12   experience in prosecuting securities class actions and has excelled as lead counsel in numerous

13   landmark securities class actions throughout the United States on behalf of defrauded investors.

14   Labaton Sucharow served as a lead counsel in *In re American International Group, Inc.*

15   *Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more

16   than $1 billion for injured investors, and separately secured a $294.9 million recovery in *In re*

17   *Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.),

18   in which it served as co-lead counsel.  In addition, Labaton Sucharow was a lead counsel in *In re*

19   *Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal.), which achieved

20   a settlement of $624 million—one of the largest securities fraud settlements arising from the

21   financial crisis of 2007 and 2008.  Other significant examples in which courts in this Circuit have

22   recognized Labaton Sucharow as adequate and qualified class counsel in securities class actions

23   include: *In re Broadcom Corp. Class Action Litigation*, No. 06-cv-5036 (C.D. Cal.) (recovering

24   $173 million for investors); and *In re Mercury Interactive Corp. Securities Litigation*, No. 05-cv-

25   3395 (N.D. Cal.) (recovering $117.5 million for investors).  Labaton Sucharow also presently

26   serves as lead or co-lead counsel in numerous significant investor class actions, including *In re*

27   *Goldman Sachs Group, Inc. Securities Litigation*, No. 10-cv-3461 (S.D.N.Y.), among others.

28

1   *See* Wagstaffe Decl., Ex. E, firm resume of Labaton Sucharow.

2        Likewise, WVBR LLP is well qualified to represent the Class as Liaison Counsel.

3 WVBR LLP maintains an office in San Francisco, California, and James M. Wagstaffe has

4 substantial litigation experience in this court. *See* Wagstaffe Decl., Ex. F. Thus, the firm is well

5 qualified to represent the Class as Liaison Counsel. *See* Manual for Complex Litigation (Fourth)

6 § 10.221 (2004) (discussing role of liaison counsel and noting that "[l]iaison counsel will usually

7 have offices in the same locality as the court").

8        Accordingly, the Court may be assured that by granting this Motion and approving the

9 Fund's selection of Labaton Sucharow as Lead Counsel and WVBR LLP as Liaison Counsel, the

10 Class will receive the highest caliber of legal representation.

11 **CONCLUSION**

12        For the foregoing reasons, the Fund respectfully requests that the Court: (1) consolidate

13 the above-captioned actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; (2)

14 appoint Rhode Island as Lead Plaintiff; (3) approve its selection of Labaton Sucharow as Lead

15 Counsel and WVBR LLP as Liaison Counsel for the Class; and (4) grant such further relief as

16 the Court may deem just and proper.

17

18 DATED: June 17, 2019                Respectfully submitted,

19                                     */s/ James M. Wagstaffe*

20                                     James M. Wagstaffe (#95535)

21                                     Frank Busch (#258288)
                                    **WAGSTAFFE, VON LOEWENFELDT,**

22                                     **BUSCH & RADWICK, LLP**
                                    100 Pine Street, Suite 725

23                                     San Francisco, California 94111

24                                     Telephone: (415) 357-8900
                                    Facsimile: (415) 357-8910

25                                     wagstaffe@wvbrlaw.com
                                    busch@wvbrlaw.com

26

27                                     *Proposed Liaison Counsel for the Class*

28                                     **LABATON SUCHAROW LLP**
                                    Christopher J. Keller (*pro hac vice* forthcoming)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Eric J. Belfi (*pro hac vice* forthcoming)
Carol C. Villegas (*pro hac vice* forthcoming)
Francis P. McConville (*pro hac vice* forthcoming)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
cvillegas@labaton.com
fmcconville@labaton.com

*Counsel for Proposed Lead Plaintiff Employees'*
*Retirement System of the State Of Rhode Island*
*and Proposed Lead Counsel for the Class*

1

**CERTIFICATE OF SERVICE**

2

    I HEREBY CERTIFY that on June 17, 2019, I was authorized to electronically file the

3

foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of

4

Electronic Filing to all counsel of record.

5

                               */s/ James M. Wagstaffe*

6

                               James M. Wagstaffe

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28