ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
        – and –
DANIELLE S. MYERS (259916)
JUAN CARLOS SANCHEZ (301834)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
jsanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> APPLE INC., et al., <br><br> Defendants. | Case No. 4:19-cv-02033-YGR <br><br> CLASS ACTION <br><br> NOTICE OF MOTION AND MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL; MEMORANDUM OF LAW IN SUPPORT THEREOF <br><br> DATE: August 13, 2019 <br> TIME: 2:00 p.m. <br> CTRM: 1, 4th Floor |

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | STATEMENT OF ISSUES TO BE DECIDED | | 2 |
| III. | STATEMENT OF FACTS | | 2 |
| IV. | ARGUMENT | | 3 |
| | A. | Certain of the Actions Should Be Consolidated | 3 |
| | B. | The Norfolk Pension Fund Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff | 9 |
| | | 1. This Motion Is Timely | 9 |
| | | 2. The Norfolk Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class | 10 |
| | | 3. The Norfolk Pension Fund Is Typical and Adequate of the Putative Class | 10 |
| | C. | The Court Should Approve the Norfolk Pension Fund's Selection of Counsel | 12 |
| V. | CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

Page

**CASES**

*Bodri v. Gopro, Inc.*,
    2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ................................................................. 3, 8, 10

*Conn. Ret. Plans and Tr. Funds v. Amgen Inc.*,
    660 F.3d 1170 (9th Cir. 2011), *aff'd*, 568 U.S. 455 (2013) ...................................................... 6

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ............................................................................................... 10

*Hardy v. MabVax Therapeutics Holdings*,
    2018 WL 4252345 (S.D. Cal. Sept. 6, 2018) ......................................................................... 7

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
    No. 8:15-cv-00865-AG (C.D. Cal.) ................................................................................ 11, 12

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) .................................................................................... 9, 10, 12

*In re Centerline Holding Co. Sec. Litig.*,
    2008 WL 1959799 (S.D.N.Y. May 5, 2008) ........................................................................ 10

*In re Cohen*,
    586 F.3d 703 (9th Cir. 2009) ............................................................................................... 12

*In re LendingClub Securities Litigation*,
    No. 3:16-cv-02627-WHA (N.D. Cal.) .................................................................................. 12

*Lloyd v. CVB Fin. Corp.*,
    811 F.3d 1200 (9th Cir. 2016) ............................................................................................... 7

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) ................................................................................................................. 5

*Mineworkers' Pension Scheme v. First Solar Inc.*,
    881 F.3d 750 (9th Cir. 2018) ................................................................................................. 7

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
    730 F.3d 1111 (9th Cir. 2013) ............................................................................................... 7

*Perlmutter v. Intuitive Surgical, Inc.*,
    2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ......................................................................... 8

*Union Asset Mgmt. Holding AG v. Sandisk Corp.*,
    2016 WL 406283 (N.D. Cal. Jan. 22, 2016) .......................................................................... 7

Page

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(1) .................................................................................................................................9
    §78u-4(a)(3)(A)(i) .......................................................................................................................9
    §78u-4(a)(3)(B)(i) ........................................................................................................................1
    §78u-4(a)(3)(B)(ii) .......................................................................................................................1
    §78u-4(a)(3)(B)(iii) ...................................................................................................................2, 9
    §78u-4(a)(3)(B)(iii)(I)(cc) ...........................................................................................................10
    §78u-4(a)(3)(B)(v) ..................................................................................................................2, 12

Federal Rules of Civil Procedure
    Rule 23 .....................................................................................................................................9, 10
    Rule 42(a) ...............................................................................................................................1, 2, 3

**NOTICE OF MOTION AND MOTION**

TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that on Tuesday, August 13, 2019, at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 1 on the 4th Floor of the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA, 94612 before the Honorable Yvonne Gonzalez Rogers, Norfolk County Council as Administering Authority of the Norfolk Pension Fund will and hereby does move this Court pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B), for an order consolidating certain two of the three actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, appointing the Norfolk Pension Fund as Lead Plaintiff and approving its selection of Robbins Geller Rudman & Dowd LLP as Lead Counsel.  This Motion is made on the grounds that the Norfolk Pension Fund is the most adequate plaintiff to serve as lead plaintiff pursuant to the PSLRA.

**MEMORANDUM OF LAW**

**I.    INTRODUCTION**

Presently pending in this District are three securities class action lawsuits (the "Actions") on behalf of purchasers of Apple Inc. ("Apple" or the "Company") securities alleging two disparate yet overlapping class periods.[1]  In securities class actions, the PSLRA requires district courts to resolve consolidation before appointing a lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  Here, certain of the Actions should be consolidated because they involve identical factual and legal issues. *See* Fed. R. Civ. P. 42(a); §IV.A., *infra*.

As soon as practicable after its decision on consolidation, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  The lead plaintiff is the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i).  Norfolk Pension Fund should be appointed as lead plaintiff because it: (1) timely

---

[1]    The Actions are *City of Roseville Emps.' Ret. Sys. v. Apple Inc.*, No. 19-cv-02033 (filed Apr. 16, 2019); *Reddy v. Apple Inc.*, No. 19-cv-02615 (filed May 14, 2019); and *Steamfitters Local 449 Pension Plan v. Apple Inc.*, No. 19-cv-02891 (filed May 24, 2019).  The Court issued a Related Case Order relating *City of Roseville* and *Reddy* on June 11, 2019.  *See* ECF No. 19.

NTC OF MOTION AND MOTION FOR CONSOL., APPT AS LEAD PLAINTIFF, AND APPROVAL
OF LEAD COUSNSEL - 4:19-cv-02033-YGR                                                                                            - 1 -
4824-7165-3786.v1

1  filed this Motion; (2) has the largest financial interest in the outcome of this litigation; and (3) will
2  typically and adequately represent the class's interests.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).
3  In addition, the Norfolk Pension Fund's selection of Robbins Geller to serve as lead counsel
4  should be approved because the firm possesses extensive experience prosecuting securities class
5  actions and will adequately represent the interests of all class members.

6  **II.     STATEMENT OF ISSUES TO BE DECIDED**

7  1.     Whether the Court should consolidate certain of the Actions pursuant to Rule 42(a) of
8  the Federal Rules of Civil Procedure;
9  2.     Whether the Court should appoint the Norfolk Pension Fund as lead plaintiff pursuant
10 to 15 U.S.C. §78u-4(a)(3)(B); and
11 3.     Whether the Court should approve the Norfolk Pension Fund's selection of Robbins
12 Geller as lead counsel pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v).

13 **III.    STATEMENT OF FACTS**

14 Apple is a multinational technology company headquartered in Cupertino, California that
15 designs, develops, and sells consumer electronics, computer software, and online services.  The
16 Company's most well-known products include its iconic iPhone smartphones, the iPad tablet
17 computer, the Mac personal computer, the Apple Watch smartwatch, the Apple TV digital media
18 player, and the HomePod smart speaker.  The Company's common stock trades on the NASDAQ
19 under the ticker symbol AAPL.

20 The *City of Roseville* and *Reddy* Complaints allege that, during the November 2, 2018 to
21 January 2, 2019 Class Period, defendants issued false and misleading statements about the financial
22 impact on iPhone sales of escalating trade tensions between the United States and China which
23 caused Apple stock to trade at artificially inflated prices during the Class Period.  While China
24 represents Apple's highest growth market, China is also among the Company's most competitive
25 markets.  Chinese upstart brands such as Huawei, Xiaomi, and Oppo offer similar looking all-screen
26 phones for much lower prices.  At the same time that Apple iPhone sales revenue was growing in
27 China due in part to Apple's price increases, Chinese smartphone manufacturers were launching
28 scores of much lower priced smartphones with greater advancements throughout the Chinese market

which were competing with Apple's iPhone and diminishing the Company's pricing power. In addition, Apple's sales in China are subject to geopolitical trade issues between the United States and China, including tariffs such as those recently imposed by the United States. Despite these facts, between November 2, 2018 and January 2, 2019, defendants falsely assured investors that China was not among the geographic regions where Apple was experiencing weakness and/or vulnerability, but that the Company's business in China was strong and experiencing 16% growth.

After the market closed on January 2, 2019, Apple disclosed the true state of its first quarter 2019 iPhone sales, particularly in China. For the first time during defendant Timothy D. Cook's tenure as Chief Executive Officer, Apple missed its public revenue projections by up to $9 billion largely due to weakness in the Chinese market. As a result of this news, the price of Apple common stock declined more than 9% to close at $142.19 on January 3, 2019.

As discussed below, unlike the *City of Roseville* and *Reddy* Complaints, the *Steamfitters* Complaint appends an additional unrelated theory of fraud during a far more expansive period beginning on August 1, 2017 through January 9, 2019. That theory involves not only misstatements concerning Apple's Chinese market as alleged in the *City of Roseville* and *Reddy* Complaints, but adds allegations regarding a previously disclosed scandal concerning Apple's intentional throttling of iPhone batteries to induce iPhone upgrades, widely referred to as "batterygate." When revealed in December 2017, Apple's stock price ***increased***, a fact that is omitted from the *Steamfitters* Complaint.

## IV.  ARGUMENT

### A.  Certain of the Actions Should Be Consolidated

The Court may consolidate actions if they "involve a common question of law or fact." Fed. R. Civ. P. 42(a). "'In determining whether or not to consolidate cases, the Court should "weigh the interest of judicial convenience against the potential for delay, confusion and prejudice."'" *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *1 (N.D. Cal. Apr. 28, 2016) (citation omitted).

Here, two of the three Actions assert identical claims on behalf of purchasers of Apple securities during the same Class Period against the same defendants for the same alleged violations of the Securities Exchange Act of 1934 (the "1934 Act"):

| Case: | Class Period: | Claims: | Defendants: |
|---|---|---|---|
| *City of Roseville Emps.' Ret. Sys. v. Apple Inc.*, No. 19-cv-02033 | 11/02/18-01/02/19 | §10(b) and §20(a) 1934 Act | Apple Inc., Timothy D. Cook, and Luca Maestri |
| *Reddy v. Apple Inc.*, No. 19-cv-02615 | same | same | same |

The claims, Class Periods, defendants, and factual allegations in these two cases are identical.

Approximately three weeks before the PSLRA statutory deadline to seek appointment as lead plaintiff expired, a third complaint was filed, *Steamfitters Local 449 Pension Plan v. Apple Inc.*, No. 19-cv-02891 (filed May 24, 2019), asserting a distinct legal theory for the period between August 1, 2017 and January 2, 2019 involving Apple's highly publicized practice of pushing software updates to older iPhones which dramatically shortened the older iPhones' battery life, causing users to prematurely purchase new iPhones, which practice inflated demand for, and sales of, newer model iPhones. The new "batterygate" theory is awkwardly bootstrapped to the distinct China-related misrepresentations that were alleged to have occurred during the original Class Period in the *City of Roseville* and *Reddy* Complaints. *See Steamfitters* ECF No. 1 at ¶¶3-13, 28-46.

The Steamfitters' "batterygate" theory asserts that defendants made two misleading statements about iPhone sales growth on August 1, 2017 and November 2, 2017 (¶¶36-38, 41), and that the market learned that Apple was intentionally slowing down iPhones with older batteries on December 9, 2017, a fact that Apple expressly admitted on December 20, 2017 (¶¶32-33). Following these disclosures, Apple's stock price *increased* from December 8 to December 11 (the next trading day) by $3.23 per share, and again *increased* from December 20 to December 21 by $0.65 – facts omitted from the *Steamfitters* Complaint. *See* Declaration of Danielle S. Myers in Support of Notice of Motion and Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Lead Counsel ("Myers Decl."), Ex. A. Stated differently, no Apple investor suffered an economic loss tied to these events or their disclosure, and therefore are not in a position to allege (let alone prove) at least one of the essential elements of a §10(b) claim.[2]

---

[2] *See generally Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011) (§10(b) plaintiffs "must prove '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4)

After Apple admitted in December 2017 that it had intentionally slowed down iPhones with older batteries, over 45 consumer class action lawsuits were consolidated into a multi-district class action alleging that customers were duped into prematurely upgrading their iPhones, representatives in the U.S. House and Senate questioned Apple, and the Department of Justice and Securities and Exchange Commission opened investigations regarding the iPhone slowdowns, as did other foreign regulators and governments. *Steamfitters* ECF No. at ¶¶32 n.2 and 34.[3]  Apple also announced in December 2017 that it would offer $79 battery replacements, which offer was subsequently reduced to $29, which replacements would be available throughout 2018.

In light of these developments, the *Steamfitters* Complaint alleges that investors who purchased Apple stock from February 2018 through January 2019, were misled for a slightly different reason: Apple failed to disclose "that the Company's replacement battery program during 2018 . . . was negatively impacting iPhone sales." ¶¶46(a), 58(a).  Yet, "batterygate" simply was not a scandal whose impact on iPhone sales was concealed for years after its disclosure, as the *Steamfitters* Complaint alleges.

It was widely reported in January 2018 that "***Apple's battery controversy could cost the company $10 billion in lost iPhone sales***." *See* Myers Decl., Ex. C (emphasis added).  These reports were based on Barclays analyst Mark Moskowitz's warning in early January 2018 that Apple's $29 battery replacement offer was a "good PR move," but "might not be so good for units." *See* Myers Decl., Ex. D.  That report stated that "[o]ur base case scenario analysis suggests that ***around 16M iPhone units could be at risk in C2018*** due to the battery replacement offer" and that "even a small percentage opting for battery replacement over upgrade ***could have meaningful impact on iPhone sales***." *Id.* (emphasis added).  Not only does the *Steamfitters* Complaint omit these significant facts, it also does not allege any January 2018 price declines – both of which are

---

reliance upon the misrepresentation or omission; (5) ***economic loss***; and (6) loss causation.'") (emphasis added) (citation omitted).

[3]  In response to the DOJ and SEC investigations, Apple stated "[a]s we told our customers in December, we have never – and would never – do anything to intentionally shorten the life of any Apple product, or degrade the user experience to drive customer upgrades." *See* Myers Decl., Ex. B. The *Steamfitters* Complaint tellingly does not reference this statement, nor does it allege it was false or misleading.

potentially fatal to its allegations. *See Conn. Ret. Plans and Tr. Funds v. Amgen Inc.*, 660 F.3d 1170, 1174 (9th Cir. 2011) (noting that a defendants' truth-on-the-market" defense can show "that the market was already aware of the truth behind the defendant's supposed falsehoods and thus that those falsehoods did not affect the market price"), *aff'd*, 568 U.S. 455 (2013). Regardless, any investors who purchased Apple stock after January 3, 2018, did so after the market had been apprised that iPhone sales would materially decrease throughout 2018 as a result of battery replacements.

Perhaps most problematically, the *Steamfitters* Complaint itself alleges that Apple accurately reported iPhone sales growth declines on May 1, 2018 and July 31, 2018. *See* ¶44 (alleging Apple admitted iPhone sequential sales growth was down 32% on May 1, 2018; stock price increased after quarterly announcement (¶73)); ¶47 (alleging Apple admitted iPhone sequential sales growth was down 21% on July 31, 2018; stock price increased after quarterly announcement (¶75)); ¶¶55-56 (alleging Apple announced on November 1, 2018 that it would not report iPhone sales going forward because "iPhone units are going to start going negative"). Because, as the *Steamfitters* Complaint alleges, Apple investors were informed by Apple that iPhone sales were declining, and Apple's stock price nonetheless increased after each quarterly announcement, there is a truth-on-the-market defense built into Steamfitters' claims, as well as falsity and loss challenges.

Finally, the *Steamfitters* Complaint alleges, in bold, that on January 2, 2019, "the truth [wa]s revealed" about the fact that "iPhone upgrades also were not as strong as we thought they would be," in minor part because "some customers [were] taking advantage of significantly reduced pricing for iPhone battery replacements." ¶59-¶62. Yet, the analyst reports issued on January 2-3, 2019, including by RBC Capital Markets, Wells Fargo Securities, BMO Capital Markets, Canaccord Genuity Capital Markets, Jefferies, Wedbush, Piper Jaffray, and Morgan Stanley, *all* focused on the "bombshell" that Apple pre-announced regarding the "magnitude of the top-line miss (~8%) with China demand [being] the culprit" – which is the focus of the *City of Roseville* and *Reddy* Complaints. *See* Myers Decl., Ex. E. Consistent with the fact that the "batterygate" fraud and its impact had been revealed and digested between December 2017-January 2018, it is not surprising that these January 2019 analyst reports either do not mention Apple's battery replacement program

at all, or do not ascribe the shocking earnings pre-announcement to the battery replacement program. *Id.* This too is problematic, as under the PSLRA, a plaintiff must show a "'causal connection'" between the fraud and the loss "by tracing the loss back to 'the very facts about which the defendant lied.'" *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (quoting *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1119 (9th Cir. 2013)); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016) (holding that plaintiffs "adequately pleaded 'a causal connection between the material misrepresentation and the loss'") (citation omitted). Because the market seemingly did not care about batterygate in January 2019 (which Apple had admitted over a year before in December 2017, the market expected would impact iPhone sales in January 2018, and Apple publicly reported declining iPhone sales thereafter), but was deeply concerned about the implications of the China trade war, it will be exceedingly difficult to plausibly allege that the batterygate allegations caused any investor's loss in 2019.

Even assuming the *Steamfitters* Complaint alleged a plausible §10(b) claim as to the "batterygate" scandal, there would still be a final, insurmountable hurdle. The Steamfitters' Certification plainly evidences the fact that it is a net seller of Apple stock during the longer class period, having sold 2,300 more shares than it purchased. *See Steamfitters* ECF No. 1-1. The Certification also evidences that Steamfitters received $741,480 from selling Apple stock at artificially inflated prices, while it expended only $366,413 purchasing Apple stock at artificially inflated prices, meaning Steamfitters actually ***benefitted*** from the alleged fraud by reaping $375,067 more in proceeds from the sale of artificially inflated Apple stock than it expended buying Apple stock. *Id.*[4] Consequently, Steamfitters – unlike the other plaintiffs, and unlike the putative class –

---

[4] Even more concerning, Steamfitters is neither a net seller nor net gainer in the original Class Period, having suffered approximately $36,000 in losses. It is curious that Steamfitters would forfeit its $36,000 loss to allege a dramatically longer class period and implausible theory of wrongdoing in which Steamfitters benefitted from the alleged fraud and is subject to unique defenses. *See generally Union Asset Mgmt. Holding AG v. Sandisk Corp.*, 2016 WL 406283, at *5 (N.D. Cal. Jan. 22, 2016) ("it appears that securities plaintiffs sometimes manipulate their proposed class period in an effort to establish themselves as the presumptive lead plaintiff, where they would not be the largest stakeholder if a shorter, more realistic class period were used"); *Hardy v. MabVax Therapeutics Holdings*, 2018 WL 4252345, at *6 (S.D. Cal. Sept. 6, 2018) (recognizing that "'unusually long class periods' may weaken claims of securities fraud, thus raising the potential risks of purported gamesmanship in the selection of a longer class period") (citation omitted).

was not harmed by the alleged artificial inflation in Apple's stock price. *See Steamfitters* ECF No. 1 at ¶1 (limiting class to purchasers of Apple stock "who were damaged thereby").[5]

Steamfitters conflates two distinct liability theories in a single complaint. The first theory, on behalf of purchasers of Apple stock between August 1, 2017 and January 2, 2019 who were supposedly harmed by the "batterygate" fiasco, is not maintainable as part of an action consolidated with the *City of Roseville* and *Reddy* Complaints because it involves distinct legal and factual issues including implausible allegations that defendants failed to disclose the very facts defendants actually disclosed. Moreover, these alleged "omissions" actually caused Apple's stock price to increase (rather than decrease) when disclosed. The named plaintiff's own sworn transactions demonstrates it benefitted from the inflation by more than $375,000. The second (original) theory, on behalf of purchasers of Apple stock between November 2, 2018 and January 2, 2019 who were allegedly misled by defendants' misstatements about the Chinese market, is similar to the *City of Roseville* and *Reddy* Complaints.[6] To the extent Steamfitters (or any other movant) wishes to pursue the separate "batterygate" theory between August 2017-January 2019, those claims should be severed from the consolidated actions so the putative class is not burdened with or distracted by its defects. *See Bodri*, 2016 WL 1718217, at *2 n.2 (consolidating certain related securities cases but severing claims alleged in distinct action related to unique theory unalleged in other related cases, and recognizing risk to "'blindly accepting the longest class period without further inquiry'") (citation omitted).[7]

Accordingly, only the *City of Roseville* and *Reddy* actions should be consolidated.

---

[5] *See Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *9 (N.D. Cal. Feb. 15, 2011) ("[I]nstead of being injured by the fraud on these sales, Marcus actually benefitted from the fraud. Furthermore, the fact that Marcus received more money from selling stock at fraudulently inflated prices than he spent purchasing stock at inflated prices makes it more likely that Marcus benefitted from Defendants' alleged fraud. Even if Marcus lost money in all of his Intuitive stock transactions, this amount was reduced by his Class Period sales when the stock prices were inflated.").

[6] Notably, at least seven separate law firms (excluding Robbins Geller, which published the statutory notice) issued press releases informing Apple investors of the ability to seek to serve as lead plaintiff specifically for the November 2018-January 2019 time period involving the Chinese market allegations, with two releases dated as recent as June 16, 2019. *See* Myers Decl., Ex. F.

[7] The Norfolk Pension Fund recognizes that any securities case against the defendants will undoubtedly face a vigorous defense. Nonetheless, the *Steamfitters* Complaint's "batterygate" theory is objectively untenable.

### B. The Norfolk Pension Fund Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). First, "[n]ot later than 20 days" after the complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. §78u-4(a)(3)(A)(i). The statutory notice in this case was published on April 16, 2019, via *Business Wire*. *See* Myers Decl., Ex. G.

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that –

(aa) has either filed the complaint or made a motion in response to a notice . . . ;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii); *see also In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002). The Norfolk Pension Fund meets each of these requirements and should be appointed Lead Plaintiff.

#### 1. This Motion Is Timely

The statutory notice published on April 16, 2019, in connection with the filing of the first-filed *City of Roseville* action advised class members of the pendency of the action, the claims asserted therein, the proposed Class Period, and the right to move the Court to be appointed as lead plaintiff within 60 days, or by June 17, 2019. *See* Myers Decl., Ex. G. Because this Motion is being filed on June 17th, it is timely and the Norfolk Pension Fund is entitled to be considered for appointment as lead plaintiff.

### 2. The Norfolk Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class

While courts often use the longest alleged class period to assess financial interest at the lead plaintiff stage, as noted above, the period alleged in the *Steamfitters* Complaint is untenable and therefore "not plausible." *In re Centerline Holding Co. Sec. Litig.*, 2008 WL 1959799, at *3 (S.D.N.Y. May 5, 2008) (emphasis omitted) (declining to use longest class period at lead plaintiff stage); *Bodri*, 2016 WL 1718217, at *2 (using original period to assess financial interest and severing longer period from consolidated actions); *see supra* §IV.A. Consequently, the longer period alleged in the *Steamfitters* Complaint should not be used to assess financial interest.

During the November 2, 2018 through January 2, 2019 Class Period alleged in the *City of Roseville* and *Reddy* Complaints, Norfolk Pension Fund purchased 39,617 shares of Apple stock and suffered approximately $1.1 million in losses as the price of Apple stock declined. *See* Myers Decl., Exs. H-I.[8] To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest during this Class Period. Therefore, the Norfolk Pension Fund satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. The Norfolk Pension Fund Is Typical and Adequate of the Putative Class

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4); *Cavanaugh*, 306 F.3d at 730 (focusing "in particular" on typicality and adequacy at the lead plaintiff stage).

The test of typicality is "'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976

---

[8] While the *Steamfitters* Complaint's class period is inappropriate, the Norfolk Pension Fund's loss is the same in that period. *See* Myers Decl., Ex. I. The Norfolk Pension Fund's loss is also the same regardless of whether the last in, first out accounting method or first in, first out accounting method is applied.

F.2d 497, 508 (9th Cir. 1992) (citation omitted).  The adequacy requirement is met if no conflicts exist between the representative and class interests and the representative's attorneys are qualified, experienced, and able to vigorously prosecute the action on behalf of the class.  *See* Fed. R. Civ. P. 23(a)(4).

Like all putative class members, the Norfolk Pension Fund purchased Apple stock during the Class Period and suffered harm as a result of defendants' alleged misconduct.  As such, the Norfolk Pension Fund suffered the same injuries as the other putative class members as a result of the same alleged conduct by defendants and has claims based on the same legal issues.  The Norfolk Pension Fund has submitted a Certification confirming its willingness and ability to serve as lead plaintiff. *See* Myers Decl., Ex. H; Civil L.R. 3-7(b).  In addition, the Norfolk Pension Fund has prior experience serving as a lead plaintiff in a securities class action case, based on its current service as lead plaintiff and class representative in *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-AG (C.D. Cal.), where the jury recently returned a verdict for plaintiff finding that defendants Puma Biotechnology, Inc. and its CEO committed securities fraud.  Moreover, the Norfolk Pension Fund is not subject to unique defenses and is not aware of any conflicts between its claims and those asserted by the class.

If appointed lead plaintiff, the Norfolk Pension Fund will actively work with its selected counsel to review all significant Court filings, to participate in the strategy and prosecution of the claims, attend hearings when appropriate to do so, participate in mediation, provide documents and deposition testimony and ultimately make the final decision regarding whether any potential pre-trial settlement is appropriate or the case should proceed to trial.  In fact, the Norfolk Pension Fund's commitment is best exemplified by its recent experience in *Puma* in which a fund representative attended the entire trial.  As an institutional investor with prior experience serving as lead plaintiff and class representative in a securities class action all the way through trial, the Norfolk Pension Fund will leverage its resources and experience to ensure vigorous and competent advocacy for the benefit of all putative class members.

Accordingly, the Court should find that the Norfolk Pension Fund has made a *prima facie* showing of typicality and adequacy.

### C. The Court Should Approve the Norfolk Pension Fund's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). The Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to protect the interests of the class. *See In re Cohen*, 586 F.3d 703, 711-12 (9th Cir. 2009) ("if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice"); *Cavanaugh*, 306 F.3d at 732-35. The Norfolk Pension Fund has selected Robbins Geller as lead counsel in this case.

Robbins Geller, a nationwide firm with offices in this District, regularly practices complex securities litigation, and has recovered tens of billions of dollars on behalf of injured investors in securities class actions like this. *See* Myers Decl., Ex. J. For example, on September 24, 2018, Judge Alsup entered a judgment in *In re LendingClub Securities Litigation*, No. 3:16-cv-02627-WHA, ECF No. 383 (N.D. Cal.), finalizing the $125 million settlement Robbins Geller achieved – a settlement that ranks among the top ten largest securities recoveries ever in the Northern District of California. In approving the settlement, Judge Alsup noted Robbins Geller's experience in securities and other complex class action and concluded that the $125 million settlement was "an excellent settlement for the class." *Id.*

Robbins Geller's securities department also includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues. And, while trials in shareholder class actions are rare, Robbins Geller has tried nine cases to verdict, including a February 2019 trial in the Central District of California in *Puma*, where the jury returned a verdict for plaintiff, finding that defendants Puma Biotechnology, Inc. and its CEO, Alan H. Auerbach, committed securities fraud.

Based upon Robbins Geller's extensive experience and proven track record as counsel in securities class actions, the Norfolk Pension Fund's selection of Robbins Geller as lead counsel is reasonable and should be approved.

## V. CONCLUSION

The Court should consolidate the *City of Roseville* and *Reddy* actions because they are virtually identical and share overlapping questions of law and fact. In addition, the Norfolk Pension Fund has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. As such, the Norfolk Pension Fund respectfully requests that the Court appoint it as Lead Plaintiff and approve its selection of counsel.

DATED: June 17, 2019                         Respectfully submitted,

                                                          ROBBINS GELLER RUDMAN
                                                              &DOWD LLP
                                                              DANIELLE S. MYERS
                                                              JUAN CARLOS SANCHEZ

                                                                     s/ Danielle S. Myers
                                                                  DANIELLE S. MYERS

                                                            655 West Broadway, Suite 1900
                                                            San Diego, CA 92101
                                                            Telephone: 619/231-1058
                                                            619/231-7423 (fax)
                                                            dmyers@rgrdlaw.com
                                                            jsanchez@rgrdlaw.com

                                                            ROBBINS GELLER RUDMAN
                                                              &DOWD LLP
                                                            SHAWN A. WILLIAMS
                                                            Post Montgomery Center
                                                            One Montgomery Street, Suite 1800
                                                            San Francisco, CA 94104
                                                            Telephone: 415/288-4545
                                                            415/288-4534 (fax)
                                                            shawnw@rgrdlaw.com

                                                            [Proposed] Lead Counsel for [Proposed] Lead Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on June 17, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

    s/ Danielle S. Myers
DANIELLE S. MYERS

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  dmyers@rgrdlaw.com

4824-7165-3786.v1

# Mailing Information for a Case 4:19-cv-02033-YGR City of Roseville Employees' Retirement System v. Apple Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Adam Marc Apton**
  aapton@zlk.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com

- **Melinda Haag**
  mhaag@orrick.com

- **James Neil Kramer**
  jkramer@orrick.com,lpatts@orrick.com,mwatkins@orrick.com,vmorse@orrick.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,disaacson@pomlaw.com,cgarcia@pomlaw.com,abarbosa@pomlaw.com

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **Alexander K. Talarides**
  atalarides@orrick.com,lpatts@orrick.com

- **James Matthew Wagstaffe**
  wagstaffe@wvbrlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,smorris@rgrdlaw.com,e_file_sd@rgrdlaw.com,1101510420@filings.docketbird.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`