1   James M. Wagstaffe (#95535)
    Frank Busch (#258288)

2   **WAGSTAFFE, VON LOEWENFELDT,**
    **BUSCH & RADWICK LLP**

3   100 Pine Street, Suite 725
    San Francisco, California 94111

4   Telephone: (415) 357-8900
    Facsimile: (415) 357-8910

5   wagstaffe@wvbrlaw.com
    busch@wvbrlaw.com

6

7   *Proposed Liaison Counsel for the Class*

8   [Additional counsel appear on signature page.]

9           **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Case No. 4:19-cv-02033-YGR |
| 12 | **CLASS ACTION** |
| 13          Plaintiff, | **CORRECTED MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE EMPLOYEES' RETIREMENT SYSTEM OF THE STATE OF RHODE ISLAND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL; AND IN OPPOSITION TO COMPETING MOVANTS** |
| 14   vs. | |
| 15  APPLE INC., TIMOTHY D. COOK and LUCA MAESTRI, | |
| 16 | |
| 17          Defendants. | |
| 18 | Date: August 13, 2019 |
| 19 | Time: 2:00 PM |
| 20 | Courtroom: 1, 4th Floor |
| | Judge:  Yvonne Gonzales Rogers |
| 21  PRIYAM REDDY, Individually and on Behalf of All Others Similarly Situated, | Case No. 4:19-cv-02615-YGR |
| 22 | |
| 23          Plaintiff, | Judge Yvonne Gonzales Rogers |
| 24   vs. | |
| 25  APPLE INC., TIMOTHY D. COOK and LUCA MAESTRI, | |
| 26 | |
| 27          Defendants. | |

27  *(Caption continues on next page…)*

28

STEAMFITTERS LOCAL 449 PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

APPLE INC., TIMOTHY D. COOK and LUCA MAESTRI,

Defendants.

Case No. 4:19-cv-02891-YGR

Judge Yvonne Gonzales Rogers

1

# TABLE OF CONTENTS

2   PRELIMINARY STATEMENT ................................................................................. 1

3   ARGUMENT ......................................................................................................... 3

4   I.      THE ACTIONS SHOULD BE CONSOLIDATED ........................................ 3

5           A.      All Actions Present Common Questions of Law and Fact ....................5

6           B.      The Case Law Cited by Norfolk to Oppose Consolidation Is Inapplicable............7

7   II.     THE PERIOD ADVANCED IN THE *STEAMFITTERS* ACTION IS THE
            CONTROLLING PERIOD AT THIS STAGE IN THE LITIGATION............................ 8
8
            A.      The Longest and Most Inclusive Class Period Advanced in the
9                   *Steamfitters* Action Meets Any Standard of Review at this Stage in the
                    Ligation ...............................................................................................9
10
            B.      Aside From Norfolk, All Parties Support Consolidation and Utilize the
11                  Inclusive Class Period.........................................................................13

12  III.    RHODE ISLAND IS THE PRESUMPTIVE LEAD PLAINTIFF................................... 13

13          A.      Rhode Island Has the Largest Financial Interest ................................14

14          B.      Rhode Island Satisfies the Adequacy and Typicality Requirements of Rule
                    23..........................................................................................................15
15
            C.      Rhode Island's Choice of Lead Counsel Is Well-Qualified to Represent the
16                  Class ......................................................................................................16

17  IV.     NORFOLK IS NOT ADEQUATE ........................................................................ 16

18          A.      Attacks on the Scope of the Class Render Norfolk Inadequate ............17

19          B.      Norfolk Is Inadequate for Selecting Potentially Conflicted Counsel....................18

20  V.      THE REMAINING COMPETING MOTIONS SHOULD BE DENIED ....................... 20

21  CONCLUSION........................................................................................................ 22

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ali v. Intel Corp.*,
    No. 18-cv-00507-YGR, 2018 WL 2412111 (N.D. Cal. May 29, 2018) .....................2, 4, 8, 21

5

6

*Andrada v. Atherogenics, Inc.*,
    No. 05CV61(RJH), 2005 WL 912359 (S.D.N.Y. Apr. 19, 2005) .........................................22

7

8

*In re Apollo Grp., Inc. Sec. Litig.*,
    No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010) ...................................................11

9

10

*In re Aqua Metals Sec. Litig.*,
    No. 17-cv-07142-HSG, 2018 WL 4860188 (N.D. Cal. May 23, 2018) .............................2, 13

11

*Armour v. Network Assocs., Inc.*,
    171 F. Supp. 2d 1044 (N.D. Cal. 2001) ................................................................................17

12

13

*Bacon v. Honda of Am. Mfg., Inc.*,
    205 F.R.D. 466 (S.D. Ohio 2001) .........................................................................................19

14

15

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    763 F. Supp. 2d 423 (S.D.N.Y. 2011)....................................................................................12

16

*Bodri v. GoPro, Inc.*,
    No. 16-cv-00232-JST, 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ..........................7, 8, 21

17

18

*In re BP, PLC Sec. Litig.*,
    758 F. Supp. 2d 428 (S.D. Tex. 2010) ....................................................................................9

19

20

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ...........................................................................................14, 15

21

*In re Cell Pathways, Inc. Sec. Litig. II*,
    203 F.R.D. 189 (E.D. Pa. 2001)............................................................................................17

22

23

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)..................................................................................................19

24

*In re Centerline Holding Co. Sec. Litig.*,
    No. 08 Civ. 1026 (SAS), 2008 WL 1959799 (S.D.N.Y. May 5, 2008)....................................7

25

26

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    No. 12-CV-06039-LHK, 2013 WL 2368059 (N.D. Cal. May 29, 2013) ...............................15

27

28

*City of Oak Ret. Sys. v. Juniper Networks, Inc.*
    No. 5:11-CV-04003-LHK, 2012 WL 78780 (N.D. Cal. Jan. 9, 2012) ...................................14

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

ii

*In re Cohen v. U.S. District Court*,
    586 F.3d 703 (9th Cir. 2009) ........................................................................16

*In re Critical Path Sec. Litig.*,
    156 F. Supp. 2d 1102 (N.D. Cal. 2001) .........................................................21

*Deering v. Galena Biopharma, Inc.*,
    No. 14-cv-00367, 2014 WL 4954398 (D. Or. Oct. 3, 2014) ..........................18

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005) ......................................................................12

*Eichenholtz v. Verifone Holding, Inc.*,
    No. C07-06140MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) .......17, 18, 21

*In re Extreme Networks Inc. Sec. Litig.*,
    No. 15-CV-04883-BLF, 2016 WL 3519283 (N.D. Cal. June 28, 2016) ...........14

*Felix v. Symantec Corp.*,
    No. C 18-02902 WHA, 2018 WL 4029053 (N.D. Cal. Aug. 23, 2018) ...........18

*In re Finisar Corp. Sec. Litig.*,
    No. 5:11-cv-01252-EJD, 2017 WL 1549485 (N.D. Cal. May 1, 2017) ...........10

*GGCC, LLC v. Dynamic Ledger Sols., Inc.*,
    No. 17-cv-06779-RS, 2018 WL 1388488 (N.D. Cal. Mar. 16, 2018) .................4

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ......................................................................10

*Hardy v. MabVax Therapeutics Holdings*,
    No. 18-cv-01160-BAS-NLS, 2018 WL 4252345 (S.D. Cal. Sept. 6, 2018) ............ *passim*

*Hernandez v. Cty. of Monterey*,
    305 F.R.D. 132 (N.D. Cal. 2015).....................................................................19

*Hessefort v. Super Micro Computer, Inc.*,
    317 F. Supp. 3d 1056 (N.D. Cal. 2018) ...........................................................4

*Inv'rs Research Co. v. U.S. District Court*,
    877 F.2d 777 (9th Cir. 1989) .......................................................................3, 4

*Krieger v. Atheros Commc'ns, Inc.*,
    No. 11-CV-00640-LHK, 2011 WL 6153154 (N.D. Cal. Dec. 12, 2011) ...........15

*Lloyd v. CVB Fin. Corp.*,
    811 F.3d 1200 (9th Cir. 2016) ......................................................................11

*Markette v. XOMA Corp.*,
    15-cv-03425-HSG, 2016 WL 2902286 (N.D. Cal. May 13, 2016) ..................21

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-cv-02033-YGR

iii

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
  No. 13-CV-05368-LHK, 2014 WL 2604991 (N.D. Cal. June 10, 2014) ................................8

*In re Network Assocs., Inc. Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...................................................................21

*In re Nuvelo, Inc., Sec. Litig.*,
  668 F. Supp. 2d 1217 (N.D. Cal. 2009) ................................................................10

*In re Olsten Corp Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) .......................................................................5

*Perlmutter v. Intuitive Surgical, Inc.*,
  No. 10-CV-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011)................................21

*Pierce v. Cty. of Orange*,
  526 F.3d 1190 (9th Cir. 2008) ..............................................................................3

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
  256 F.R.D. 620 (E.D. Wis. 2009) ...........................................................................9

*Provenz v Miller*,
  102 F.3d 1478 (9th Cir. 1996) ..............................................................................12

*Rauch v. Vale S.A.*,
  No. 19-cv-526-RJD-SJB, 2019 WL 2083294 (E.D.N.Y. May 13, 2019)................................7

*S.E.C. v. Mozilo*,
  No. CV 09-3994-JFW, 2010 WL 3656068 (C.D. Cal. Sept. 16, 2010)................................12

*In re Safeguard Scientifics*,
  216 F.R.D. 577 (E.D. Pa. 2003).............................................................................17

*Smilovits v. First Solar Inc.*,
  119 F. Supp. 3d 978 (D. Ariz. 2015), *aff'd sub nom. Mineworkers' Pension
  Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018)........................................11

*Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*,
  720 F. Supp. 805 (N.D. Cal. 1989) .........................................................................4

**Rules & Statutes**

Fed. R. Civ. P. 23 ....................................................................................... *passim*

Fed. R. Civ. P. 42 .........................................................................................3, 4, 5

15 U.S.C. § 78u-4 et seq. ............................................................................... *passim*

**Docketed Cases**

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

iv

*In re Apple Inc. Device Performance Litig.*,
No. 18-md-02827 (N.D. Cal.) ............................................................................... *passim*

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

v

The Employees' Retirement System of the State of Rhode Island ("Rhode Island") respectfully submits this memorandum in further support of its motion for consolidation of the above-captioned related actions, appointment as Lead Plaintiff, and approval of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel and Wagstaffe, Von Loewenfeldt, Busch & Radwick, LLP ("WVBR") as Liaison Counsel for the Class[1] (ECF No. 26) and in opposition to all competing lead plaintiff movants.[2]

## PRELIMINARY STATEMENT

Rhode Island is the presumptive Lead Plaintiff in the controlling class period advanced in the *Steamfitters* Action. Norfolk's advocacy for the truncated class period of November 2, 2018 through January 2, 2019 should be seen for what it is: a desperate attempt to avoid Rhode Island's mandatory Lead Plaintiff appointment under the sequential lead plaintiff review process set forth by the Ninth Circuit and the PSLRA. Norfolk's arguments against consolidation must be rejected.

The above-captioned actions are undeniably related and should be consolidated as they all uniformly plead that Defendants made false and misleading statements and/or omissions related to declining demand for iPhones. All three of the above-captioned actions present substantially the same questions of fact and law. All three of the above-captioned actions are brought pursuant to the same causes of action, against identical defendants, for the same pattern of alleged misconduct during overlapping periods, and rely on many of the same misstatements.

Specifically, the *Roseville* and *Reddy* Actions accuse Apple of missing its iPhone sales targets because of an undisclosed drop in demand in China and the undisclosed impact of the

---

[1] The Class is defined herein as all those who purchased or otherwise acquired Apple securities during the period from August 1, 2017, through January 2, 2019, as alleged in the *Steamfitters* Action. All definitions used herein remain unchanged from Rhode Island's previous submissions in the above-captioned actions. *See* ECF No 26. Unless otherwise noted, all emphasis has been added and citations omitted.

[2] Pending before this Court are four competing motions for appointment as Lead Plaintiff. In addition to the motion filed by Rhode Island, the competing motions include: Norfolk County Council as Administering Authority of the Norfolk Pension ("Norfolk") (ECF No. 36); Shaikh M. Ahmad, Shahtaj M. Ahmad, and Michael Grecco ("Investor Group") (ECF No. 42); and Richard Rodriguez ("Rodriguez") (ECF No. 20).

1   Company's battery replacement program.  The *Steamfitters* Action, which includes the above-

2   allegations, logically expands the class period alleged in these actions to cover both the tortious

3   conduct which proximately caused Defendants to implement the battery replacement program,

4   and Defendants' own statements concerning the impact of the battery replacement program.

5   Courts routinely grant consolidation under such circumstances. *See Ali v. Intel Corp.*, No. 18-cv-

6   00507-YGR, 2018 WL 2412111, at *2 (N.D. Cal. May 29, 2018) (Rogers, J.) (consolidation of

7   actions with differing start dates warranted as same defendants were named, same causes of

8   action brought, based on similar misstatements concerning one of defendant company's

9   products).  Aside from Norfolk, every other movant supports consolidation of the above-

10  captioned actions, which have already been judicially related.

11       Upon consolidation, the longest and most inclusive class period advanced in the

12  *Steamfitters* Action governs, as it is well-settled law in this District that the most inclusive class

13  period is the proper period at the lead plaintiff stage.  *See, e.g.*, *In re Aqua Metals Sec. Litig.*, No.

14  17-cv-07142-HSG, 2018 WL 4860188, at *1 n.1 (N.D. Cal. May 23, 2018).  On this point, the

15  merits of the inclusive class period advanced in the *Steamfitters* Action readily satisfy all

16  judicially-crafted tests to ensure propriety of an expanded period.  Notwithstanding, Norfolk's

17  aggressive attack on the merits of the *Steamfitters* Action, namely on loss causation grounds,

18  ignores well-settled Ninth Circuit law and should also be rejected.

19       Based on the foregoing, Rhode Island is the presumptive Lead Plaintiff.  Rhode Island, a

20  sophisticated institutional investor, has by far the largest loss of $4,101,951.46, nearly four times

21  that of the next movant Norfolk.  In addition, Rhode Island readily satisfies the requirements of

22  Rule 23.  Therefore, under the sequential lead plaintiff review process set forth by the Ninth

23  Circuit, the inquiry begins and ends with Rhode Island.  Rhode Island is undoubtedly the most

24  adequate plaintiff, and is thus entitled to Lead Plaintiff appointment.

25       Apart from Rhode Island's mandatory Lead Plaintiff appointment under PSLRA and

26  Ninth Circuit jurisprudence, Norfolk's motion should be denied on independent grounds.  First

27  and foremost, Norfolk's insistence on an artificially truncated period demonstrates unnecessary

28  antagonism to the Class and is directly at odds with a substantial portion of putative Class

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

2

members.  By advocating for the truncated class period, Norfolk seeks to eviscerate claims of potentially thousands of Class members and drastically reduce the potential available recovery in this litigation.  Norfolk's position therefore raises serious questions concerning the fund's willingness to act as an effective advocate for ***all*** Class members.  For this reason, Norfolk's motion should be denied.

Norfolk has further demonstrated its inadequacy by selecting potentially-conflicted counsel.  Specifically, Norfolk's counsel is concurrently serving in a leadership position in the consumer class action pending in this District against Apple, which accuses the Company of intentionally throttling the performance of iPhones.[3]  Perplexingly, Norfolk's arguments against the merits of the inclusive class period in this case directly contradict the allegations brought in the Consumer Class Action.  Further, Norfolk's counsel may not be able to vigorously represent the Class by virtue of its leadership role in the Consumer Class Action since counsel likely is in possession of confidential information produced in that litigation.[4]  Because Norfolk has selected counsel who cannot simultaneously advocate for the Class here as well as the class in the Consumer Class Action, without stepping into potential conflict, Norfolk is not adequate to represent the Class.

Accordingly, Rhode Island should be appointed Lead Plaintiff and its motion otherwise granted.

## <u>ARGUMENT</u>

## I.   THE ACTIONS SHOULD BE CONSOLIDATED

In the Ninth Circuit, district courts have "broad" discretion under Rule 42 in deciding whether "to consolidate matters involving common questions of law and fact."  *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1203 (9th Cir. 2008); *see also Inv'rs Research Co. v. U.S. District*

---

[3] *See In re Apple Inc. Device Performance Litig.*, No. 18-md-02827 (N.D. Cal.) ("Consumer Class Action").

[4] This confidential information is subject to a protective order, preventing its use "for any other purpose, including, without limitation, ***any other litigation*** or any business or competitive function."  Consumer Class Action, ECF No. 224, ¶ 8.1 (Stipulated Protective Order dated Oct. 15, 2018).

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

3

1  *Court*, 877 F.2d 777, 777 (9th Cir. 1989) ("The district court has broad discretion under [Rule

2  42] to consolidate cases pending in the same district.").  As part of this analysis, courts "weigh[]

3  the interest of judicial convenience against the potential for delay, confusion and prejudice

4  caused by consolidation."  *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 807

5  (N.D. Cal. 1989).  The decision on consolidation is also integral to the advancement of actions

6  brought under the PSLRA, as courts "shall not make a determination" as to the appointment of

7  lead plaintiff "until after the decision on the motion to consolidate is rendered."  *See* 15 U.S.C.

8  § 78u-4.

9      "Courts have recognized that class action shareholder suits are particularly well suited to

10  consolidation pursuant to Rule 42(a) because unification expedites pretrial proceedings, reduces

11  case duplication, avoids the need to contact parties and witnesses for multiple proceedings, and

12  minimizes the expenditure of time and money for all parties involved."  *Hessefort v. Super Micro*

13  *Computer, Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018).  In this context, courts in this

14  District have held that "[c]onsolidation of private securities fraud class actions arising from the

15  same alleged misconduct is generally appropriate."  *GGCC, LLC v. Dynamic Ledger Sols., Inc.*,

16  No. 17-cv-06779-RS, 2018 WL 1388488, at *2 (N.D. Cal. Mar. 16, 2018) (alteration in original);

17  *see also Intel Corp.*, 2018 WL 2412111, at *1 (Rogers, J.) ("PSLRA contemplates consolidation

18  where 'more than one action on behalf of a class asserting substantially the same claim or claims

19  . . . has been filed'").  "Differences in causes of action, defendants, or the class period do not

20  render consolidation inappropriate if the cases present sufficiently common questions of fact and

21  law, and the differences do not outweigh the interests of judicial economy served by

22  consolidation."  *Hardy v. MabVax Therapeutics Holding*s, No. 18-cv-01160-BAS-NLS, 2018

23  WL 4252345, at *2 (S.D. Cal. Sept. 6, 2018).

24      The above-captioned actions all present common questions of law and fact and advance

25  substantially the same claims, *i.e.*, Defendants' alleged misstatements regarding battery and

26  China-related iPhone demand issues.  Tellingly, the above-captioned actions have already been

27

28

1    judicially related by Order of this Court under a standard virtually identical to Rule 42.[5]  *See*

2    ECF Nos. 19, 46.  Further, as no movant has, or will be able to, set forth evidence that

3    Defendants or the Class will be prejudiced, consolidation is warranted in the interest of judicial

4    efficiency.  For these reasons, Norfolk's inappropriate arguments against consolidation merit

5    denial.

6          **A.**     **All Actions Present Common Questions of Law and Fact**

7          All of the above judicially-related actions should be consolidated as they: (1) name the

8    same defendants; (2) are brought pursuant to the same causes of action; (3) plead overlapping

9    class periods; (5) rely on overlapping statements and disclosures; and (5) allege the same pattern

10   of misconduct, *i.e.*, Defendants' false and misleading statements and omissions related to the

11   demand for iPhones, specifically those concerning China as well as the battery-replacement

12   program (which was a direct result of the undisclosed throttling painting an artificial picture of

13   demand).  *See, e.g.*, *MabVax Therapeutics Holdings*, 2018 WL 4252345, at *1–2 (finding

14   consolidation appropriate even though one class period was nearly two years longer because

15   "[b]oth complaints allege[d] claims against the same three defendants pursuant to Sections 10(b)

16   and 20(a) of the Securities Exchange Act of 1934 based on" the same pattern of reporting

17   violations); *In re Olsten Corp Sec. Litig.*, 3 F. Supp. 2d 286, 292–93 (E.D.N.Y. 1998) (finding

18   consolidation appropriate even in light of differing class periods as all actions were "based upon

19   disclosures that concern[ed] facts common to all four actions.").

20         Norfolk's opposition to consolidation is based on the misguided premise that the

21   *Steamfitters* Action "conflates two distinct liability theories in a single complaint."  ECF No. 36,

22   at 8.  Norfolk acts as if both the *Roseville* and *Reddy* Actions solely allege theories related to

23   Defendants' China statements, thereby attempting to mislead the Court that the battery-related

24   allegations are unique to the *Steamfitters* Action.  *See id.* at 2.  This is not the case.  Both the

25

26         [5] Under Civil Local Rule 3-12(a), cases are related when they (1) "concern substantially

27   the same parties, property, transaction or event"; and (2) "[i]t appears likely that there will be an
     unduly burdensome duplication of labor and expense or conflicting results if the cases are

28   conducted before different Judges."

Memorandum in Further Support of Motion for Consolidation, Appointment as Lead Plaintiff and Approval of
Selection of Lead Counsel; And in Opposition to All Competing Motions
Case No. 4:19-cv-02033-YGR

5

1   *Roseville* Action (filed by Norfolk's counsel) as well as the *Reddy* Action, explicitly include

2   allegations that Defendants failed to disclose that the Company's discounted battery replacement

3   program had materially impacted iPhone sales in 2018—which was a direct result of the

4   undisclosed throttling of older iPhones throughout 2017.  Indeed, both the *Roseville* and *Reddy*

5   Actions are littered with arguments and references to not only Apple's battery replacement

6   program, but also the preceding throttling of older iPhones.  *See  Roseville* Action, ECF No. 1,

7   ¶¶ 8, 12, 14, 31, 35, 37, 40; *Reddy* Action, ECF No. 1, ¶¶ 8, 12, 14, 32, 40, 44, 46, 49.[6]

8       Defendants' practice of iPhone throttling, and the resulting battery-related sales issues,

9   are inexorably tied to the narrative set forth in the *Roseville* Action.  The introduction to the

10  *Roseville* Action opens with the discussion of how Defendants' planned obsolesce of older

11  model iPhones "created artificial demand for new premium priced iPhones from consumers who

12  believed their poorly performing iPhones were outdated and thus needed to be replaced."  *See*

13  ECF No. 1, ¶ 8.  The *Roseville* Action then goes on to discuss how the resulting battery

14  replacement program, instituted to "stymie customer outrage" upon revelation of Defendants'

15  throttling, was put in place "right as Apple would be debuting its three new iPhones."  *Id.*

16  Closing the loop, the *Roseville* Action states that Apple "shocked the market" on January 2,

17  2019, "when it disclosed the true state of its actual 1Q19 iPhone sales," alleging "that in addition

18  to macroeconomics in the Chinese market, the price cuts to battery replacements a year earlier to

19  fix the Company's prior surreptitious conduct had hurt iPhone sales."  *Id.* ¶ 14.

20      The complaint in the *Roseville* Action thus unequivocally alleges that Defendants knew

21  and failed to disclose "that the rate at which Apple customers were replacing their batteries in

22  older iPhones rather than purchasing new iPhones was negatively impacting Apple's iPhone

23  sales growth," which was revealed on the final disclosure shared by all class periods.  *Id.* ¶¶ 12,

24

25      [6] Norfolk's counsel also published notice of the *Roseville* Action which explicitly included
    allegations related to "batterygate."  *See* ECF No. 27-3 ("[D]efendants failed to disclose that . . .

26  due to Apple discounting the cost of replacement batteries ***to make up for the Company's prior***

27  ***conduct of intentionally degrading the performance of the batteries in older iPhones***, the rate
    at which Apple customers were replacing their batteries in older iPhones, rather than purchasing

28  new iPhones, was negatively impacting Apple's iPhone sales growth.").

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

6

35.  This is the *same* theory advanced in the *Steamfitters* Action, alongside identical arguments that Defendants misled investors as to demand issues in China—the only difference being that the *Steamfitters* Action expands the class period back to capture the artificial inflation caused by the undisclosed throttling.  *See, e.g.*, *Rauch v. Vale S.A.*, No. 19-cv-526-RJD-SJB, 2019 WL 2083294, at *4 (E.D.N.Y. May 13, 2019) (finding class period which was two years longer and relied on different statements "d[id] not weigh against consolidation, since the allegations about misstatements are similar, although couched in different filings, and the same pattern of alleged misconduct is present over both class periods").

Incredulously, Norfolk now contends that "*[t]he new 'batterygate' theory* is awkwardly bootstrapped to the distinct China-related misrepresentations that were alleged to have occurred during the original class period in the *Roseville* and *Reddy* Complaints." ECF No. 36, at 4.  But as the *Roseville* and *Reddy* Action's own battery-related allegations clearly show, there is nothing awkward about logically extending the class period to cover Defendants' tortious conduct and false and misleading statements related to "batterygate" and the undisclosed impact of the battery replacement program.  Indeed, Defendants' iPhone throttling, planned obsolescence, and the resulting battery replacement program are the proximate cause of the missed sales forecasts at issue in this litigation.   Accordingly, as all of the above-captioned actions present common questions of law and fact, consolidation is appropriate.

**B.**     **The Case Law Cited by Norfolk to Oppose Consolidation Is Inapplicable**

Norfolk's reliance on *Bodri v. GoPro, Inc.*, No. 16-cv-00232-JST, 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) to defeat consolidation is misplaced.[7]  *See* ECF No. 36, at 10.  In *GoPro*, Judge Tigar was faced with three securities class actions alleging that defendants failed

---

[7] The only other case relied upon by Norfolk: *In re Centerline Holding Co. Sec. Litig.*, No. 08 Civ. 1026 (SAS), 2008 WL 1959799 (S.D.N.Y. May 5, 2008)—an eleven-year-old out-of-circuit case—further highlights that the overwhelming weight of case law favors consolidation, as there is not one case from this District, let alone a recent case, to support utilization of a shorter period.  Additionally, the court in *Centerline Holding* chose not to utilize the longest class period because the complaint alleging the longer period "fail[ed] to allege any facts whatsoever that would support an inference that [the] statements were false when made."  *Id.* at *3.  That is not the case here.  *See infra* Section II.

Memorandum in Further Support of Motion for Consolidation, Appointment as Lead Plaintiff and Approval of
Selection of Lead Counsel; And in Opposition to All Competing Motions
Case No. 4:19-cv-02033-YGR

7

"to disclose information relating to [GoPro's] HERO line of cameras." *GoPro*, 2016 WL 1718217, at *1. Another action was later filed, adding an additional theory "related to disclosures of camera-equipped drones," which had allegedly taken place a year prior to the first-filed theory. *Id.* While Judge Tigar ultimately determined that the severance of the two claims was appropriate, the facts of the current motion are wholly distinguishable. *Id.* at *2.

First, and most importantly, none of the preceding three actions in *GoPro* made any allegations related to the additional drone theory, unlike here, where **every filed action** has brought allegations related to Apple's battery replacement program—the logical extension of which begins with Defendants' undisclosed planned obsolescence of older iPhones. *See supra* Section I.A. *Second*, the two claims advanced in *GoPro* occurred during entirely distinct and separate periods, unlike here where the timing of all theories overlaps extensively. *Id.* Finally, the additional drone-related claims involved completely separate products, unlike here where all claims pertain to demand issues concerning a single product—the iPhone. In the present motion, unlike in *GoPro*, "[t]he Actions thus present questions of law and fact that overlap almost completely," warranting consolidation. *Intel Corp.*, 2018 WL 2412111, at *2.

## II.      THE PERIOD ADVANCED IN THE *STEAMFITTERS* ACTION IS THE CONTROLLING PERIOD AT THIS STAGE IN THE LITIGATION

Upon consolidation, the longest and most inclusive class period advanced in the *Steamfitters* Action is the appropriate period at this stage in the litigation. It is well-settled law in this District, as explained by this Court, that following consolidation the "most inclusive class period" should be used "as it encompasses more potential class members." *See Intel Corp.*, 2018 WL 2412111, at *2 n.6 (Rogers, J.) (collecting cases); *see also Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368-LHK, 2014 WL 2604991, at *1 n.3 (N.D. Cal. June 10, 2014) (Koh, J.) ("For the purposes of appointing a lead plaintiff, the longest class period governs."). The reasoning is based on the logical conclusion that at this preliminary stage in the litigation, the universe of potential class members—as well as the potential recovery—should be maximized. Therefore, upon consolidation of the actions, for the "purposes of assessing which proposed lead plaintiff has the largest financial interest, the most sensible way to harmonize the

8

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

1  different class periods is to adopt the longest class period." *MabVax Therapeutics Holdings*,

2  2018 WL 4252345, at *5.

3       Of the limited number of courts—all out of Circuit—to apply a "safeguard" in

4  determining the propriety of an expanded class period, the standard adopted is whether "the

5  allegations supporting the longer class period are obviously not frivolous." *See id.* at *5–6

6  (collecting cases yet finding these "judicially-fashioned 'safeguards'" unnecessary at the lead

7  plaintiff stage). Under this standard, as long as the facts pled in the complaint merely "raise an

8  inference" that allegations set forth therein are true, the longer class period is proper. *Plumbers

9  & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis.

10  2009). Therefore, assuming allegations contained within a longer class period "are not obviously

11  frivolous, . . . that period ***should be applied*** for the purposes of the lead plaintiff motions." *In re

12  BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 437 (S.D. Tex. 2010).

13       The longest and most inclusive class period advanced in the *Steamfitters* Action easily

14  meets the "frivolity" standard. Indeed, the inclusive class period only serves to logically extend

15  the initial class period to capture Defendants' false and misleading statements related to the

16  previously undisclosed iPhone throttling, which unsustainably boosted sales and ultimately led to

17  the battery replacement program. Accordingly, the period utilized in the *Steamfitters* Action is

18  the appropriate period at this stage in the litigation.

19      A.    **The Longest and Most Inclusive Class Period Advanced in the *Steamfitters***
20            **Action Meets Any Standard of Review at this Stage in the Ligation**

21       The merits of the inclusive class period advanced in the *Steamfitters* Action readily

22  surpass the "not frivolous" standard. Norfolk's attack on the merits of the inclusive class period

23  conflate the "frivolity" standard with the standard used on a Rule 12(b)(6) motion to dismiss.

24  *See, e.g.*, *MabVax Therapeutics Holdings*, 2018 WL 4252345, at *5 ("Beyond the limited inquiry

25  regarding which plaintiff has the largest financial stake, the PSLRA does not task a court with

26  delving into the sufficiency of the pleadings of any complaint that comprises a consolidated

27  private securities litigation at the lead plaintiff stage.").

28       Notwithstanding Norfolk's inappropriate attack on the merits of the *Steamfitters* Action,

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

9

1   the inclusive class period advanced therein also withstands the scrutiny advanced by Norfolk.

2   Specifically, Norfolk attempts to use raw stock price movements following the disclosure that

3   Apple was throttling iPhones as a proxy to argue that investors were not injured by "batterygate."

4   ECF No. 36, at 4.  This argument, which implicitly requires an immediate "mirror-image"

5   corrective disclosure and stock price decline, ignores basic causation principles articulated by the

6   Ninth Circuit as well as the actual disclosures alleged in the *Steamfitters* Action.  Norfolk's

7   argument lacks merit and should be rejected.

8        *First*, "[a] corrective disclosure need not be a 'mirror-image' disclosure . . . it must

9   simply relate to the same subject matter as the alleged misrepresentation."  *In re Finisar Corp.*

10  *Sec. Litig.*, No. 5:11-cv-01252-EJD, 2017 WL 1549485, at *8 (N.D. Cal. May 1, 2017).  Here,

11  the *Steamfitters* Action has plausibly pled a causal connection between Defendants' failure to

12  disclose that iPhones sales were unsustainably inflated due to the throttling, and that the resulting

13  battery-replacement program would adversely impact the demand for newer iPhones, to the

14  ultimate stock drop at issue.  *See, e.g.*, *id.* (finding loss causation established where

15  "[d]efendants' disclosure of below anticipated revenue that is, in part, the result of an inventory

16  build-up is sufficiently 'relate[d] to the same subject matter' as Defendants' statement denying

17  the existence of such a build-up.").

18       *Second*, there is no "bright-line rule requiring an immediate market reaction" and a

19  "limited temporal gap" between public revelation "and the subsequent decline in stock value" is

20  permissible under Ninth Circuit precedent.  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057–

21  58 (9th Cir. 2008) (three-month delay between disclosure and price drop did not break the causal

22  chain where disclosures clarifying the impact of the previously disclosed information were

23  made); *In re Nuvelo, Inc., Sec. Litig.,* 668 F. Supp. 2d 1217, 1226-27 (N.D. Cal. 2009) (public

24  information could plausibly "affect[] the stock price" . . . "after subsequent events . . . made [its]

25  significance more apparent to the public").  Here, the *Steamfitters* Action alleges that Apple

26  disclosed it was "smoothing" iPhone performance on December 20, 2017, and that on December

27  28, 2017, the Company announced it would offer discounts for its replacement batteries.

28  *Steamfitters* Action, ECF No. 1, ¶ 33.  Shortly thereafter on February 1, 2018, Defendants

Memorandum in Further Support of Motion for Consolidation, Appointment as Lead Plaintiff and Approval of
selection of Lead Counsel; And in Opposition to All Competing Motions
Case No. 4:19-cv-02033-YGR

10

1  unexpectedly announced relatively flat iPhone sales guidance which analysts linked, in part, to

2  batterygate, causing Apple stock to fall approximately 7 percent over the next two trading days.[8]

3  *Id.* ¶ 70.  This would be the first of many partial revelations which slowly removed the artificial

4  inflation from the price of Apple stock—ultimately coming to a head on January 2, 2019, when

5  Defendants revealed the true depth of the iPhone demand issues.  *See Steamfitters* Action, ECF

6  No. 1, ¶¶ 24–27 (listing all disclosures).

7        *Third*, to establish loss causation, plaintiffs may allege that the company's stock price fell

8  after defendants began to reveal figures showing the "company's true financial condition," so

9  long as the true financial condition was *caused* in substantial part by the alleged fraudulent

10  practices.[9]  *Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 988 (D. Ariz. 2015), *aff'd sub nom.*

11  *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018).  If "*the eventual*

12  *effect* of the misrepresented facts" is what caused the stock drop, loss causation is established."

13  *Id.* at 989.  That is precisely the case here.  The *Steamfitters* Action alleges that the undisclosed

14  throttling of iPhones artificially inflated revenues, the reversal of which came to light through a

15  series of corrective disclosures with Apple reporting poor sales and guidance.  *See Steamfitters*

16  Action, ECF No. 1, ¶¶ 70, 71, 75, 77–81.  These disclosures culminated on January 2, 2019,

17  when Apple admitted that iPhone sales were negatively impacted by the battery replacement

18  program, which analysts attributed to Apple's "reli[ance] on premature obsolescence to drive

19  sales," "essentially confirming that this [was] indeed part of the business model." *Roseville*

20  Action, ECF No. 1, ¶ 40.

21        *Fourth*, Norfolk argues that the full truth concerning the **impact** of the battery

22  replacement program on iPhone sales was known as early as January of 2018.  ECF No. 36, at 5.

23

24        [8] *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, No. 08-16971, 2010 WL 5927988, at *1 (9th
    Cir. June 23, 2010) (the "later disclosure" of already-public information was "corrective when
25  public initially failed to appreciate" the significance of that information).

26        [9] This analysis comports with the well-accepted view within the Ninth Circuit that "there are
    an infinite variety of ways for a tort to cause a loss" and that "[*b*]*ecause loss causation is simply*
27  *a variant of proximate cause, the ultimate issue is whether the defendants' misstatements, as*
    *opposed to some other fact, foreseeably caused the plaintiff's loss*." *Lloyd v. CVB Fin. Corp.*,
28  811 F.3d 1200, 1210 (9th Cir. 2016).

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

11

1   But this "truth-on-the-market" defense is rarely appropriate for resolution at summary judgment,

2   let alone during the lead plaintiff stage before a motion to dismiss.[10]  The Ninth Circuit has

3   explained that "before the 'truth-on-the-market' doctrine can be applied, the defendants must

4   prove that the information that was withheld or misrepresented was transmitted to the public with

5   a degree of intensity and credibility sufficient to effectively counterbalance any misleading

6   impression created by insiders' one-sided representations." *Provenz v Miller*, 102 F.3d  1478,

7   1492–93 (9th Cir. 1996).  Therefore, "[c]ourts will rarely be able to decide these [truth-on-the-

8   market] issues on a motion for summary judgment," let alone at the lead plaintiff stage.  *See, e.g*,

9   *S.E.C. v. Mozilo*, No. CV 09-3994-JFW, 2010 WL 3656068, at *9 (C.D. Cal. Sept. 16, 2010).

10       *Finally*, conceding the price decline associated with the battery-related allegations on the

11   final day of the Class Period, Norfolk argues that the ***impact*** of the battery-related allegations

12   was less than that attributable to the distinct China-related allegations.  *See* ECF No. 36, at 6.

13   Simply because the material impact of one alleged theory of fraud might be less than the material

14   impact of another, however, does not militate in favor of abandonment of the lesser impactful

15   theory at the motion to dismiss stage—let alone the lead plaintiff stage.[11]  *See, e.g., In re Bear*

16   *Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 507 (S.D.N.Y. 2011)

17   ("[A]t the motion to dismiss stage, the [complaint] need not rule out all competing theories for

18   the drop in . . .  stock price; that is an issue to be determined by the trier of fact on a fully

19   developed record.").  Such a requirement even imposes a higher standard than that applicable at

20   summary judgement, where a plaintiff is not "required to show 'that a misrepresentation was the

21   *sole* reason for the investment's decline in value' in order to establish loss causation." *In re Daou*

22

23          [10] More troubling is that Norfolk's "truth on the market" attack ***directly contradicts***

24   arguments made in the Consumer Class Action, also led by counsel for Norfolk, where they
     argue that "following the December 20[, 2017] Admission, Apple's statements and conduct

25   reveal a carefully orchestrated public relations maneuver ***to continue to conceal and***

26   ***misrepresent the true extent of Apple's misconduct with regard to the Devices and the Defect***."
     Consumer Class Action, ECF No. 318-1, ¶ 21.

27          [11] Even at trial, a plaintiff is only required to "prove that the alleged misrepresentation[s] or
     omission[s] played a substantial part in causing the injury or loss the plaintiff suffered." Ninth

28   Circuit Manual Of Model Civil Jury Instruction § 18.8 (2017).

Memorandum in Further Support of Motion for Consolidation, Appointment as Lead Plaintiff and Approval of selection of Lead Counsel; And in Opposition to All Competing Motions
Case No. 4:19-cv-02033-YGR

12

1    *Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005) (Plaintiffs' burden here is to demonstrate "*some*

2    causal connection between the fraud and the securities transaction in question.").

3          **B.**    **Aside From Norfolk, All Parties Support Consolidation and Utilize the
                 Inclusive Class Period**

4

5          All parties aside from Norfolk have not only supported consolidation, but have adopted

6    the longest and most inclusive class period advanced in the *Steamfitters* Action in their motions.

7    The Investor Group in its motion moved for the consolidation of all actions, arguing that "[t]he

8    Related Actions at issue here clearly involve common questions of law and fact."  ECF No. 42,

9    at 6–7.  Rodriguez in his motion argued that consolidation was appropriate for all actions

10   because the above-captioned actions "present similar factual and legal issues, as they each

11   involve the same subject matter and are based on the same wrongful course of conduct."  ECF

12   No. 20, at 6–7.  Finally, all movants besides Norfolk have utilized the inclusive class period

13   advanced in the *Steamfitters* Action.

14         The Class should not be hamstrung by an artificially truncated period simply because the

15   *Roseville* Action was filed first.  Potential class recoveries could otherwise be reduced by an

16   erroneously shortened period in the first-filed action.  Thus, Rhode Island respectfully requests

17   this Court find that "[f]or purposes of appointing a lead plaintiff, the longest class period

18   governs."  *In re Aqua Metals Sec. Litig.*, 2018 WL 4860188, at *1 n.1 (Gilliam, J.).

19   **III.    RHODE ISLAND IS THE PRESUMPTIVE LEAD PLAINTIFF**

20         Rhode Island, as the only movant with the largest financial interest who also satisfies the

21   requirements of Rule 23, is the presumptive Lead Plaintiff.  Pursuant to the PSLRA, courts are

22   instructed to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff

23   purposes is the movant with "the largest financial interest in the relief sought by the class," so

24   long as the movant "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-

25   4(a)(3)(B)(iii)(I).  Therefore, as no movant has, or will be able to, submit "proof" to rebut this

26   presumption, under the sequential lead plaintiff process set forth by the Ninth Circuit, Rhode

27   Island is entitled to appointment.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *In re Extreme*

28   *Networks Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2016 WL 3519283, at *3 (N.D. Cal. June 28,

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

13

2016) (citing *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)) ("once the Court determines which plaintiff has the largest financial interest, '[it] must appoint that plaintiff as lead, unless it finds that [that plaintiff] does not satisfy the typicality or adequacy requirements'" of Rule 23).

**A.      Rhode Island Has the Largest Financial Interest**

Rhode Island has, without a doubt, the largest financial interest of all competing movants in the relief sought by the Class in this action.[12]  Consistent with Ninth Circuit precedent, courts in this District equate a movant's financial interest with its financial loss.  *See, e.g.*, *Cavanaugh*, 306 F.3d at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, [it] is entitled to lead plaintiff status[.]"); *City of Oak Ret. Sys. v. Juniper Networks, Inc.* No. 5:11-CV-04003-LHK, 2012 WL 78780, at *4 (N.D. Cal. Jan. 9, 2012) (noting that courts "generally place the greatest emphasis on [loss]").

| Movant | Claimed Losses |
|---|---|
| Rhode Island | $4,101,951.46 |
| Norfolk | $1,166,648.47 |
| Investor Group | $561,649 |
| Rodriguez | $384,348.07 |

As illustrated in the chart above, during the Class Period Rhode Island incurred substantial losses of over ***$4.1 million*** on its purchases of over 240,000 shares of Apple stock. *See* ECF No. 27-2.  Indeed, Rhode Island's losses are nearly ***four times*** the size of the losses claimed by Norfolk.  *See* ECF No. 37-9.  Consequently, and because Rhode Island also satisfies Rule 23's typicality and adequacy requirements (discussed below), it is entitled to the legal presumption as the most adequate plaintiff.

---

[12] As discussed at *supra* Section II, upon consolidation courts in this District utilize the most inclusive class period at the lead plaintiff stage.  Therefore, the financial interest of all competing movants should be reviewed under the period set forth in the *Steamfitters* Action.

Memorandum in Further Support of Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel; And in Opposition to All Competing Motions
Case No. 4:19-cv-02033-YGR

14

**B.      Rhode Island Satisfies the Adequacy and Typicality Requirements of Rule 23**

In addition to possessing the largest financial interest in the outcome of the litigation, Rhode Island readily satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  To satisfy Rule 23's typicality and adequacy requirements at this stage in the litigation, the presumptive lead plaintiff need only make a preliminary showing.  *See Cavanaugh*, 306 F.3d at 732; *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 6153154, at *3 (N.D. Cal. Dec. 12, 2011).  Furthermore, once the presumptive lead plaintiff has been determined, the presumption can only be rebutted upon "proof" that the presumptive lead plaintiff will not fairly represent the interests of the class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  No such proof exists in this case and there can be no credible arguments to the contrary.

As demonstrated in its opening motion, Rhode Island is a typical Class representative.  *See* ECF No. 26, at 19–22.  Here, like all other Class members, Rhode Island: (1) purchased Apple stock during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and omissions; and (3) was damaged once the truth was revealed.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,* No. 12-CV-06039-LHK, 2013 WL 2368059, at *2 (N.D. Cal. May 29, 2013).  As such, Rhode Island is a typical class representatives.  Rhode Island also satisfies Rule 23's adequacy requirement because it is capable of "fairly and adequately protect[ing] the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  As demonstrated in its opening brief, Rhode Island, a sophisticated institutional investor—the paradigmatic lead plaintiff as envisioned by the PSLRA—understands and accepts the duties and responsibilities owed to other Class members to monitor the prosecution of this action in the best interests of the Class.  *See* ECF No. 26.

Further, there is no conflict of interest between Rhode Island's interests and those of the other Class members.  To the contrary, the interests of Rhode Island and other Class members are directly aligned because all suffered damages from their purchases of Apple stock when artificially inflated by Defendants' misconduct.  In addition, by staunchly advocating for the most inclusive class period (unlike Norfolk), Rhode Island has already demonstrated its intent to

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

15

zealously represent the ***entirety*** of the Class in order to maximize the potential recovery.  Finally, as discussed more fully above, Rhode Island clearly has a sufficient financial interest to ensure the vigorous prosecution of this litigation, and has demonstrated its commitment to prosecuting this action efficiently and in the best interests of the Class.  Rhode Island has also demonstrated its adequacy through its selection of Labaton Sucharow as counsel and WVBR as liaison counsel.  Rhode Island—an experienced lead plaintiff—is fully committed to oversee counsel in order to ensure high caliber and cost-effective representation for the Class.

Accordingly, there can be no question that Rhode Island has established its commitment to zealously and efficiently represent the interests of the Class.

### C.     Rhode Island's Choice of Lead Counsel Is Well-Qualified to Represent the Class

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  As such, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Cohen v. U.S. District Court*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice.") (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001)).  Here, Rhode Island has selected Labaton Sucharow, highly-qualified counsel, to serve as Lead Counsel for the Class.  Labaton Sucharow is among the preeminent securities class action law firms in the Country *See* ECF No. 27-5 (firm resume).  Accordingly, the Court may be assured that by granting this Motion and approving Rhode Island's selection of Labaton Sucharow as Lead Counsel, the Class will receive the highest quality of legal representation.

## IV.    NORFOLK IS NOT ADEQUATE

Any PSLRA lead plaintiff must serve as a fiduciary for the class, and as such, class members deserve an advocate who will not only select appropriate counsel, but will fight for the entirety of the class to secure the largest possible recovery.  For the reasons discussed below,

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

16

1    Norfolk is not this advocate.

2        **A.      Attacks on the Scope of the Class Render Norfolk Inadequate**

3        Based on Norfolk's position to eliminate the vast majority of the Class, it is inadequate to

4    serve as Lead Plaintiff.  Under Rule 23, "adequacy requires the absence of antagonistic interests

5    between class representatives and absent members." *Armour v. Network Assocs., Inc.*, 171 F.

6    Supp. 2d 1044, 1052 (N.D. Cal. 2001).  Norfolk's disregard for all members of the Class who

7    purchased Apple securities before November 1, 2018, casts serious doubt on its suitability to act

8    as Lead Plaintiff.  Even worse, Norfolk now not only seeks to abandon battery-related claims

9    (brought in the complaint drafted by its counsel), but actively argues against them—seemingly

10   only to the benefit of Defendants.  *See, e.g.*, *MabVax Therapeutics Holdings*, 2018 WL 4252345,

11   at *5–6 (dismissing lead plaintiff movant's argument against longer class period finding that

12   "defects in a longer class period are capable of correction through the normal operation of the

13   adversarial process").

14       Simply put, Norfolk has taken a blatantly antagonistic position to the majority of absent

15   Class members, and for that reason alone should be disqualified as inadequate.  *See, e.g.*, *In re*

16   *Cell Pathways, Inc. Sec. Litig. II*, 203 F.R.D. 189, 192 n.2 (E.D. Pa. 2001) (concluding that lead

17   plaintiff movants who "questioned the facts and conclusions of the complaint and expressed a

18   concern of the case on the company defendant" would not adequately represent the interests of

19   the class); *In re Safeguard Scientifics*, 216 F.R.D. 577, 583 (E.D. Pa. 2003) (class

20   representative's stated indifference to fraudulent statements placed him in a position antagonistic

21   to the class).

22       Importantly, courts generally find similar requests to utilize a shorter class period as self-

23   serving, illogical, and harmful to the class as a whole.  For example, in *Eichenholtz v. Verifone*

24   *Holding, Inc.*, Judge Patel denied requests to utilize a shorter class period, stating in pertinent

25   part:

26       Though a shorter class period may simplify the litigation, no
         benefits accrue by shortening the class period at this stage in the
27       litigation. ***Indeed, it is unclear why a plaintiff would argue for a***
         ***shorter class period at this stage, which would have the effect of***
28       ***reducing the class size and limiting the potential amount of***

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

17

1

2

3

> ***damages, unless it was in the best interest of that particular plaintiff only***. Consequently, at this stage, the court is wary of arguments advocating a shorter class period instead of the longest potential class period.

4   No. C07-06140MHP, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008).  Based on Norfolk's

5   self-interested argument to truncate the Class Period, Norfolk is "susceptible to accusations of

6   gamesmanship" for the sole purpose of being appointed as lead plaintiff.  *MabVax Therapeutics*

7   *Holdings*, 2018 WL 4252345, at *5.

8          *Deering v. Galena Biopharma, Inc.*, is instructive. No. 14-cv-00367, 2014 WL 4954398

9   (D. Or. Oct. 3, 2014).  In *Galena Biopharma*, a group of lead plaintiff movants were disqualified

10   on adequacy grounds for opposing the longest, most inclusive class period.  *Id.* at *11.

11   Specifically, the court found that because the movants sought to "excise more than two thirds of

12   the class period," that the group was "directly at odds with the interests of the majority of the

13   proposed class members based on a longer period."  *Id.*  According to the court, this raised

14   terminal questions of whether the movants would "act as effective advocates for all class

15   members (under a longer class period)."  *Id.*  The situation here is analogous.  Accordingly,

16   based on Norfolk's expressly antagonistic position to a vast number of putative Class members,

17   as well as its perplexing attack on the merits of the inclusive class period, Norfolk is inadequate

18   to represent the Class.

19          **B.      Norfolk Is Inadequate for Selecting Potentially Conflicted Counsel**

20          One of the most important fiduciary duties the PSLRA imposes on a lead plaintiff is to

21   select and retain counsel to faithfully represent the class.  15 U.S.C. § 78u-4(a)(3)(B)(v); *see also*

22   *Felix v. Symantec Corp.*, No. C 18-02902 WHA, 2018 WL 4029053, at *4 (N.D. Cal. Aug. 23,

23   2018) (Alsup, J.)   ("A lead plaintiff is a fiduciary for the investor class. No decision by the lead

24   plaintiff is more important than the selection of class counsel. Consequently, the lead plaintiff

25   should precede its choice with due diligence.").  When a movant selects counsel with a potential

26   conflict of interest, that conflict indicates the movant is not capable of adequately representing

27   the class it seeks to represent.  *See In re Cendant Corp.*, 264 F.3d at 265 (a court might conclude

28   that a movant "could not surmount the threshold adequacy inquiry if it . . . intended to select as

18

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

1    lead counsel a firm that was plainly incapable of undertaking the representation"). For the

2    reasons discussed herein, Norfolk has demonstrated its inadequacy by selecting potentially-

3    conflicted counsel based on their concurrent leadership role in the Consumer Class Action.

4         Norfolk's counsel serves on the Plaintiffs' Executive Committee in the consumer

5    litigation against Apple pending before Judge Davila in this District concerning Apple's

6    intentional throttling of iPhones to inflate demand. *See* Consumer Class Action, ECF No. 100, at

7    13 (Order appointing Norfolk's counsel to Plaintiff's Executive Committee dated May 15, 2018).

8    Plaintiffs in the Consumer Class Action have filed a partially redacted complaint containing

9    confidential information subject to a protective order in that action.[13] *Id.* at ECF No. 318-1 (Apr.

10   24, 2019). By virtue of its access to Apple's confidential information in the battery-related

11   Consumer Class Action governed by the protective order, Norfolk has selected counsel who

12   cannot simultaneously advocate for the Class here as well as the class in the Consumer Class

13   Action, without stepping into potential conflicting loyalties. Courts do not "permit ***even the***

14   ***appearance of divided loyalties***," which encompasses "both differing and potentially conflicting

15   interests, not merely instances actually manifesting such conflict." *Bacon v. Honda of Am. Mfg.,*

16   *Inc.*, 205 F.R.D. 466, 482 (S.D. Ohio 2001) (quoting *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449,

17   1465 (9th Cir. 1995)); *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 160 (N.D. Cal. 2015)

18   (assessing adequacy of representation in a class action in terms of the risk that a conflict would

19   materialize).

20        Similarly, Norfolk's counsel has demonstrated its conflicting loyalties by attacking the

21   merits of the *Steamfitters* Action, while simultaneously advancing contradictory arguments in the

22   Consumer Class Action. Namely, the Consumer Class Action alleges that:

23            "Following the December 20 Admission, Apple's statements and
             conduct reveal a carefully orchestrated public relations maneuver
24            t***o continue to conceal and misrepresent the true extent of***
             ***Apple's misconduct*** with regard to the Devices and the Defect.
25            Apple has failed, ***even today***, to affirmatively tell consumers that

26   ───────────────────

27            [13] The protective order provides that "[a] Receiving Party may not use Protected Material for
     any other purpose, including, without limitation, ***any other litigation*** . . . ." *Id.* at ECF No. 224
28   ¶ 8 (Oct. 15, 2018).

Memorandum in Further Support of Motion for Consolidation, Appointment as Lead Plaintiff and Approval of
selection of Lead Counsel; And in Opposition to All Competing Motions
Case No. 4:19-cv-02033-YGR                                                                          19

> the Company sold them Devices that suffered from the Defect,
> which impairs the Device's central functioning and purpose."

Consumer Class Action, ECF No. 318-1, ¶ 21.  These specific allegations of continued concealment are directly at odds with truth-on-the-market attack advanced by Norfolk in its briefing. *See supra* Section II.B.

Even further, the Consumer Class Action advances a theory of Defendants' conduct which *prima facie* spells out a case of securities fraud.  Specifically, summarizing the "scheme," the Consumer Class Action alleges that:

> While Plaintiffs and the Class need not attribute any motive behind Apple's intentional degradation of the Devices, it is evident that Apple did so for the simple reason most frauds are committed: money. ***Although technically complex in part, the scheme was logical and simple: Devices were designed defectively, and Apple released Updates to conceal the Defect, all the while exacerbating the Defect's effects—principally decreased performance—so that Device users had no choice but to purchase new batteries or upgrade their Devices, resulting in additional payments to Apple and a sustained (albeit forced) customer base***.

Consumer Class Action, ECF No. 318-1, ¶ 18.  In an about-face, Norfolk now argues against this position, to the benefit of Defendants and to detriment of the Class.

As such, Norfolk is not adequate to represent the Class.  *See* ECF No. 26 § IV.B.2. (discussing core statutory responsibility to select and retain lead counsel).

## V.   THE REMAINING COMPETING MOTIONS SHOULD BE DENIED

The remaining movants, Rodriguez and the Investor Group, should be denied by virtue of their losses alone.  Indeed, the claimed losses of the Investor Group and Rodriguez are unquestionably dwarfed by those of Rhode Island.  Therefore, as Rhode Island has the greatest financial interest in this litigation and also satisfies Rule 23, this Court need not even consider the competing motions of the remaining movants. *See supra* Section III.  For the reasons discussed below, however, both the Investor Group and Rodriguez are improper for the role of lead plaintiff on independent grounds.

*First*, unlike Rhode Island, neither the Investor Group nor Rodriguez are institutional

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

20

1   investors.  It is well-noted in this District that when enacting the PSLRA Congress intended to

2   increase the participation of institutional investors in securities class actions.  *See Perlmutter v.*

3   *Intuitive Surgical, Inc*., No. 10-CV-03451-LHK, 2011 WL 566814, at *13 (N.D. Cal. Feb. 15,

4   2011) ("appoint[ing] an institutional investor . . . comports with the PSLRA's goal to increase

5   the likelihood that institutional investors would serve as lead plaintiffs"); *In re Network Assocs.,*

6   *Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020, 1025 (N.D. Cal. 1999) (same).  Based on this

7   Congressional intent, courts in this District have shown a clear preference for institutional

8   investors—even going so far as to appoint a single institution in lieu of aggregating the losses of

9   multiple individual investors.  *See In re Critical Path Sec. Litig.*, 156 F. Supp. 2d 1102, 1112

10  (N.D. Cal. 2001).

11          *Second*, the Investor Group is an improper lead plaintiff group brought together solely for

12  the purpose of claiming a larger loss.  Therefore, the investor group is precisely the type of

13  lawyer-driven amalgamation the PSLRA was enacted to deter.  *See GoPro, Inc.*, 2016 WL

14  1718217, at *4 ("Northern District of California courts have generally found that appointing a

15  group of unrelated investors undercuts the primary purpose of the PSLRA: to eliminate lawyer-

16  driven litigation."); *Verifone Holdings*, 2008 WL 3925289, at *8 (stating that "ignoring the basis

17  of the group formation and appointing a group of unrelated investors undercuts the primary

18  purpose of the PSLRA: to eliminate lawyer-driven litigation").  The Investor Group attempts to

19  ameliorate its obvious deficiency with a boilerplate joint declaration.  Courts in this District,

20  including this Court, however, readily dismiss such declarations for being "replete with

21  generalities." *Intel Corp.*, 2018 WL 2412111, at *3 n.8; *see also Markette v. XOMA Corp.*, 15-

22  cv-03425-HSG, 2016 WL 2902286, at *9 (N.D. Cal. May 13, 2016).  Therefore, the Investor

23  Group's motion should be denied on the independent ground that it is lawyer-driven, and

24  therefore inadequate.

25          *Finally*, Rodriguez is even further disqualified from serving as lead plaintiff as he only

26  purchased Apple options during the Class Period.  Options traders have been found inadequate

27  lead plaintiffs for classes that include purchasers of equity.  *See, e.g., Andrada v. Atherogenics*,

28  Inc., No. 05CV61(RJH), 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005). That is so because

1   options trade not only based on the underlying value of the reference security, but also based on

2   interest rates, time to expiration, and anticipated volatility.  *Id.*  That renders options traders

3   subject to unique damages defense that do not apply for stockholders.  Thus, as Rodriguez traded

4   in options only throughout the Class Period, he is both inadequate and atypical to the Class as a

5   whole, and his motion should be denied.

6                                    **CONCLUSION**

7           For the foregoing reasons, Rhode Island respectfully requests that the Court: (1)

8   consolidate *all* of the above-captioned actions pursuant to Rule 42(a) of the Federal Rules of

9   Civil Procedure; (2) appoint Rhode Island as Lead Plaintiff; (3) approve its selection of Labaton

10  Sucharow as Lead Counsel and WVBR LLP as Liaison Counsel for the Class; and (4) grant such

11  further relief as the Court may deem just and proper.

12  DATED:  July 1, 2019                              Respectfully submitted,

13                                          */s/ James M. Wagstaffe*

14                                          James M. Wagstaffe (#95535)
15                                          Frank Busch (#258288)
                                            **WAGSTAFFE, VON LOEWENFELDT,**
16                                          **BUSCH & RADWICK, LLP**
                                            100 Pine Street, Suite 725
17                                          San Francisco, California 94111
                                            Telephone: (415) 357-8900
18                                          Facsimile: (415) 357-8910
                                            wagstaffe@wvbrlaw.com
19                                          busch@wvbrlaw.com

20                                          *Proposed Liaison Counsel for the Class*
21
                                            **LABATON SUCHAROW LLP**
22                                          Christopher J. Keller (*pro hac vice* forthcoming)
                                            Eric J. Belfi (*pro hac vice* forthcoming)
23                                          Carol C. Villegas (*pro hac vice* forthcoming)
                                            Francis P. McConville (*pro hac vice* forthcoming)
24                                          140 Broadway
25                                          New York, New York 10005
                                            Telephone: (212) 907-0700
26                                          Facsimile: (212) 818-0477
                                            ckeller@labaton.com
27                                          ebelfi@labaton.com
28                                          cvillegas@labaton.com
                                            fmcconville@labaton.com

1

2          *Counsel for Proposed Lead Plaintiff Employees'*
           *Retirement System of the State Of Rhode Island*
3          *and Proposed Lead Counsel for the Class*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 1, 2019, I was authorized to electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ James M. Wagstaffe

James M. Wagstaffe