ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
         – and –
MARK SOLOMON (151949)
DANIELLE S. MYERS (259916)
JUAN CARLOS SANCHEZ (301834)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
dmyers@rgrdlaw.com
jsanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Case No. 4:19-cv-02033-YGR |
| Plaintiff, | ) ) ) | CLASS ACTION |
| vs. | ) ) ) ) | NORFOLK PENSION FUND'S REPLY IN FURTHER SUPPORT OF ITS LEAD PLAINTIFF MOTION |
| APPLE INC., et al., | ) ) ) | DATE:      August 13, 2019 |
| Defendants. | ) ) ) | TIME:      2:00 p.m. CTRM:     1, 4th Floor |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...............................................................................................................1

II.     ARGUMENT ....................................................................................................................2

        A.      Norfolk Pension Fund Is Typical and Adequate of the *City of
                Roseville/Reddy* Class It Seeks to Represent as Lead Plaintiff .............................2

                1.      Rhode Island ERS' Counsel Makes No Attempt to Defend the
                        Merits of the *Steamfitters* Class Period, or Dispel Its Obvious
                        Flaws ................................................................................................................3

                2.      Norfolk Pension Fund Has No Incentive to Truncate the Class
                        Period ...............................................................................................................7

        B.      Norfolk Pension Fund's Selection of Counsel Should Be Approved .....................8

        C.      There Is No Need for a "Niche" Options Subclass ...............................................12

III.    CONCLUSION ................................................................................................................14

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Aronson v. McKesson HBOC, Inc.*,
   79 F. Supp. 2d 1146 (N.D. Cal. 1999) ......................................................................13

5

6

*Baughman v. Pall Corp.*,
   250 F.R.D. 121 (E.D.N.Y. 2008) ................................................................................3

7

*Bodri v. Gopro, Inc.*,
   2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ...........................................7, 8, 13, 14

8

9

*Chahal v. Credit Suisse Grp. AG*,
   2018 WL 3093965 (S.D.N.Y. June 21, 2018) .......................................................9, 11

10

*Church v. Glencore PLC*,
   2018 WL 6567704 (D.N.J. Dec. 13, 2018) ...............................................................12

11

12

*Durgin v. Tousa, Inc.*,
   2008 WL 2761301 (S.D. Fla. July 15, 2008) ..............................................................3

13

*Fishbury, Ltd. v. Connetics Corp.*,
   2006 WL 3711566 (S.D.N.Y. Dec. 14, 2006) ...........................................................14

14

15

*In re: Apple Inc. Device Performance Litig.*,
   No. 5:18-md-02827 (N.D. Cal. May 15, 2018) ....................................................10, 11

16

17

*In re BP, PLC Sec. Litig.*,
   758 F. Supp. 2d 428 (S.D. Tex. 2010) .....................................................................7, 8

18

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) .............................................................................2, 9, 13

19

20

*In re Cendant Corp. Litig.*,
   182 F.R.D. 144 (D.N.J. 1998) ...................................................................................13

21

*In re Centerline Holding Co. Sec. Litig.*,
   2008 WL 1959799 (S.D.N.Y. May 5, 2008) ............................................................7, 8

22

23

*In re Fannie Mae Sec. Litig.*,
   355 F. Supp. 2d 261 (D.D.C. 2005) ............................................................................9

24

25

*In re Intel Corp. Sec. Litig.*,
   2019 WL 1427660 (N.D. Cal. Mar. 29, 2019).............................................................4

26

*In re MicroStrategy Inc. Sec. Litig.*,
   110 F. Supp. 2d 427 (E.D. Va. 2000) ........................................................................14

27

28

*In re Waste Mgmt., Inc. Sec. Litig.*,
128 F. Supp. 2d 401 (S.D. Tex. 2000) ....................................................................14

*In re XM Satellite Radio Holdings Sec. Litig.*,
237 F.R.D. 13 (D.D.C. 2006) ....................................................................................14

*Kayes v. Pac. Lumber Co.*,
51 F.3d 1449 (9th Cir. 1995) ......................................................................................9

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) ....................................................................14

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ..................................................................................10

*Richman v. Goldman Sachs Grp., Inc.*,
274 F.R.D. 473 (S.D.N.Y. 2011) ......................................................................8, 9, 14

*Sandoval v. M1 Auto Collisions Ctrs.*,
309 F.R.D. 549 (N.D. Cal. 2015) ..........................................................................9, 10

*Schueneman v. Arena Pharm., Inc.*,
2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ............................................................13

*Tanne v. Autobytel, Inc.*,
226 F.R.D. 659 (C.D. Cal. 2005) ..............................................................................13

*Union Asset Mgmt. Holding AG v. Sandisk Corp.*,
2016 WL 406283 (N.D. Cal. Jan. 22, 2016) ..............................................................6

*United States v. Griffin*,
84 F.3d 912, 927 (7th Cir. 1996) ................................................................................3

*Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*,
231 F.3d 1215 (9th Cir. 2000) ....................................................................................6

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§ 78u-4(a)(3)(B)(iii)(II) ..............................................................................................3

Federal Rules of Civil Procedure
Rule 23 ..........................................................................................................10, 12, 14

**SECONDARY AUTHORITIES**

1 NEWBERG ON CLASS ACTIONS (5th ed. 2018) ..........................................................9, 10

I.       INTRODUCTION

The movants agree that, in the original class period alleged by two of the three plaintiffs, the Norfolk Pension Fund suffered the greatest loss:

| Movant | Losses Suffered in 11/02/18-01/02/18 Period |
|---|---|
| **Norfolk Pension Fund** | **($1.2 million)** |
| Apple Investor Group | ($406,104) |
| Rhode Island ERS | ($31,927) |
| Richard Rodriguez | no loss |

*See* ECF No. 52 at 2.  The movants also agree that in the longer *Steamfitters* class period – filed by counsel to both Steamfitters and Rhode Island ERS – Rhode Island ERS appears to have suffered the greatest loss:

| Movant | Losses Suffered in Steamfitters Class Period |
|---|---|
| Rhode Island ERS | ($4 million) |
| **Norfolk Pension Fund** | **($1.1 million)** |
| Apple Investor Group | ($568,882) |
| Richard Rodriguez | ($152,433) |

*Id.*  The only disagreement is whether the Court should: (a) consolidate the *City of Roseville* and *Reddy* actions, sever the original China-related allegations from the *Steamfitters* Complaint, and (i) permit the Court-appointed Lead Plaintiff in the consolidated case to file a consolidated complaint asserting allegations related to Apple's diminished iPhone demand primarily in the Chinese market on behalf of purchasers of Apple stock between November 2018 and January 2019, and (ii) permit the Court-appointed Lead Plaintiff in the *Steamfitters* action to file an amended complaint asserting allegations related to Apple's batterygate scandal on behalf of purchasers of Apple stock between August 2017 and January 2019; or (b) determine that the *Steamfitters* Complaint's batterygate theory and class period are implausible, and only consider the *City of Roseville*/*Reddy* Complaints' theory and class period.  Regardless of the path taken, Norfolk Pension Fund should be appointed Lead Plaintiff for the *City of Roseville/Reddy* consolidated case.

Hoping to avoid either rational outcome, Rhode Island ERS' counsel insists that Rhode Island ERS alone should be appointed lead plaintiff for an all-encompassing super case combining

1   both theories and class periods, ignoring the significant roadblocks the *Steamfitters* Complaint's

2   theory and period face, even at this preliminary stage of the litigation.  Perhaps recognizing the

3   uphill nature of that position, Rhode Island ERS' counsel also portrays the Norfolk Pension Fund as

4   somehow inadequate for pointing out the obvious flaws with the *Steamfitters* batterygate theory, and

5   further suggests Norfolk Pension Fund's selection of counsel is tainted by a "potential" conflict of

6   interest.  *See* ECF No. 57 at 16-20.  In so arguing, Rhode Island ERS' counsel ignores that neither

7   the facts nor the law support its position.  *See infra* §II.A-B.  Moreover, merely opposing Rhode

8   Island ERS' motion and identifying the obvious challenges plaguing the *Steamfitters* batterygate

9   theory and class period does not render Norfolk Pension Fund inadequate.  Nor is Norfolk Pension

10  Fund's selected counsel conflicted simply because a Robbins Geller partner serves as one of thirty-

11  nine other court-appointed lawyers leading a different case against Apple on behalf of a different

12  putative class asserting different claims, particularly where Rhode Island ERS' counsel concedes

13  there is only the "potential" for a future conflict (albeit an extremely remote and implausible one).

14       Regardless of the path taken, the Court should appoint Norfolk Pension Fund as Lead

15  Plaintiff for the *City of Roseville/Reddy* consolidated case.

16  **II.     ARGUMENT**

17       **A.     Norfolk Pension Fund Is Typical and Adequate of the *City of***
          ***Roseville/Reddy* Class It Seeks to Represent as Lead Plaintiff**

18

19       Deflecting attention away from the serious impediments plaguing the *Steamfitters*

20  Complaint's class period and "batterygate" allegations, Rhode Island ERS' counsel portrays the

     Norfolk Pension Fund as "blatantly antagonistic" to the class – albeit the very class Rhode Island

21

22  ERS' counsel strategically altered to conform to Rhode Island ERS' trading – simply because the

     Norfolk Pension Fund brought obvious legal defects to the Court's attention.  *See* ECF No. 57 at 17-

23

24  18.  Yet, the PSLRA's lead plaintiff provision expressly requires this very process.  *See In re*

     *Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("At the third stage, ***the process turns adversarial***

25

26  and other plaintiffs may present evidence that disputes the lead plaintiff's prima facie showing of

     typicality and adequacy."); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).[1]  A lead plaintiff movant committed

27

---

28  [1]   All emphasis is added and all citations are omitted unless otherwise noted.

1    to protecting a properly defined class – like Norfolk Pension Fund is – will ensure that patent risks

2    are timely identified so the putative class is not left with inadequate representation or hobbled by

3    untenable theories and distracting defenses.  Branding the Norfolk Pension Fund as indifferent or

4    hostile to the putative class is empty rhetoric.  *See Durgin v. Tousa, Inc.*, 2008 WL 2761301, at *1-

5    *2 (S.D. Fla. July 15, 2008) (rejecting competitor's accusation that movant's arguments for different

6    class period "reflects a betrayal of certain class members" and finding "nothing untoward about"

7    referencing both periods and noting loss causation pleading requirements in considering loss

8    calculations at lead plaintiff stage); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 126-27 (E.D.N.Y.

9    2008) (rejecting competitor's charge that, by pointing out its obvious defects, another movant was

10   itself inadequate).  Rhode Island's counsel's arguments recall an oft-quoted adage: "If the law is

11   against you, argue the facts; if the facts are against you, argue the law; and if they both are against

12   you, pound the table and attack your opponent."  *United States v. Griffin*, 84 F.3d 912, 927 (7th Cir.

13   1996).

14          On the merits, it is plain that Norfolk Pension Fund's concerns about the *Steamfitters*

15   batterygate theory and class period are valid.

16                  **1.    Rhode Island ERS' Counsel Makes No Attempt to Defend the Merits
                           of the *Steamfitters* Class Period, or Dispel Its Obvious Flaws**
17

18          Rhode Island ERS' opposition maintains (incorrectly) that losses it suffered in connection

19   with purchases of Apple common stock in 2018 were caused by Apple's "undisclosed throttling" of

20   iPhone batteries.  ECF No. 57 at 7.  In doing so, Rhode Island ERS continues to ask the Court to

21   simply ignore that the *Steamfitters* Complaint itself alleges that Apple's throttling of iPhones was

22   disclosed, in detail, between December 2017 and January 2018:

23          •    "[O]n or about December 20, 2017, Apple publically admitted that it had been
                 intentionally slowing down iPhones with older batteries." *Steamfitters* ECF No. 1 at
24               ¶33.

25          •    "[O]n or about December 28, 2017, in an effort to retain customer goodwill, Apple
                 announced that throughout calendar year 2018, it would offer discounts for its
26               replacement iPhone batteries, charging $29 down from $79." *Id.*

27          •    "Shortly after Apple's December 2017 disclosure that it had intentionally throttled
                 iPhones, regulators in Brazil, China, Italy, France, and South Korea, announced they
28

had launched independent investigations into whether Apple's conduct was fraudulent.  Additionally, on January 31, 2018, *Bloomberg* reported that Apple was now facing proves from the Justice Department and the SEC regarding whether the Company violated the federal securities laws over intentional iPhone slowdowns." *Id.* at ¶34.

Rhode Island ERS' opposition fails to reconcile these uncontested and widely known public facts with the *Steamfitters* Complaint's untenable theory that Apple's battery throttling nonetheless remained concealed.

Nor does Rhode Island ERS attempt to reconcile that theory with the fact that it was widely reported in January 2018 that "'Apple's battery controversy could cost the company $10 billion in lost iPhone sales'" and that "'around 16M iPhone units could be at risk in C2018.'"  ECF No. 36 at 5 (quoting Myers Decl., Exs. C, D).  In fact, the *Steamfitters* Complaint itself alleges that Apple thereafter accurately reported iPhone sales growth declines.  *Id.* at 6.  To maintain, as Rhode Island ERS' counsel does, that these facts were nonetheless undisclosed to investors is simply counterfactual.  It also ignores the substantial falsity and truth-on-the-market hurdles these demonstrable facts pose to this theory – a reality that is not disputed.

Were these falsity and truth-on-the-market realities not dispositive (and they are), Rhode Island ERS' counsel also ignores that the *Steamfitters* Complaint itself pleads that defendants did ***not*** intend to mislead investors about the financial impact or the corrective nature of  battery discounts, specifically quoting defendant Cook on February 1, 2018, as saying "[o]n the battery, Toni, we did not consider in any way, shape, or form, what it would do to upgrade rates.  We did it because we thought it was the right thing to do for our customers."  *Steamfitters* ECF No. 1 at ¶43 (emphasis omitted).  In short, Rhode Island ERS' counsel ignores the uncomfortable fact that the *Steamfitters* Complaint expressly – yet counterintuitively – pleads disclosure via truth on the market and an absence of scienter.  Without these basic elements of a securities fraud claim, batterygate cannot be a fraud on the market.  *See In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *7 (N.D. Cal. Mar. 29, 2019) ("Under the PSLRA's heightened pleading requirement, to state a Section 10(b) claim, plaintiffs must allege facts sufficient to establish: (i) that the defendant made a material misrepresentation or omission of fact, (ii) with scienter; (iii) a connection between the

1  misrepresentation or omission and the purchase or sale of a security; (iv) reliance on the

2  misrepresentation or omission; (v) loss causation; and (vi) economic loss.").

3        Rhode Island ERS' counsel attempts to deflect the *Steamfitters* Complaint's irremediable

4  defects by emphasizing the *City of Roseville* Complaint's isolated reference to batterygate (in the

5  "background" section) and defendants' misrepresentations – made a month into the first fiscal

6  quarter of 2019 – concerning iPhone demand, and self-servingly casting those misstatements on a

7  single day as part and parcel of the expansive *Steamfitters'* batterygate allegations that spanned

8  seventeen months.  *See* ECF No. 57 at 1-2, 5-6 (contending that the *Steamfitters* Complaint simply

9  "expands the class period alleged in these actions to cover both the tortious conduct") (citing *City of*

10  *Roseville* Complaint at ¶¶8, 12, 14, 31, 35, 37, 40).  That obfuscation, however, does not resuscitate

11  the untenable batterygate theory of securities fraud.

12        Indeed, as the Complaints all allege, defendants shocked the market by admitting at the

13  beginning of the stunning January 2, 2019 press release that "most of our revenue shortfall to our

14  guidance, and over 100 percent of our year-over-year worldwide revenue decline, occurred in

15  Greater China," that "[l]ower than anticipated iPhone revenue, primarily in Greater China, accounts

16  for **all** of our revenue shortfall to our guidance and for much more than our entire year-over-year

17  revenue decline" and that "Greater China and other emerging markets accounted for the **vast**

18  **majority** of the year-over-year iPhone revenue decline."  *See* ECF No. 1 at ¶35; *Reddy* ECF No. 1 at

19  ¶44 (same); *Steamfitters* ECF No. 1 at 59 (same).  Last in a laundry list of other contributing causes,

20  defendants apportioned some lingering blame to "macroeconomic challenges in some markets" as

21  well as "other factors broadly impacting our iPhone performance, including consumers adapting to a

22  world with fewer carrier subsidies, US dollar strength-related price increases, and some customers

23  taking advantage of significantly reduced pricing for iPhone battery replacements."  ECF No. 1 at

24  ¶35; *Reddy* ECF No. 1 at ¶44 (same); *Steamfitters* ECF No. 1 at 59 (same).  Rhode Island ERS

25  tellingly does not dispute the fact that the analyst reports issued on January 2-3, 2019, including

26  reports issued by RBC Capital Markets, Wells Fargo Securities, BMO Capital Markets, Canaccord

27  Genuity Capital Markets, Jefferies, Wedbush, Piper Jaffray, and Morgan Stanley, all focused on the

28  "bombshell" that Apple pre-announced regarding the "'magnitude of the top-line miss (~8%) with

1  China demand [being] the culprit.'"  *See* ECF No. 36 at 6 and Myers Decl., Ex. E.  The analysts'

2  nearly universal focus on China, and failure to even mention any of the other contributing causes like

3  the battery replacement program, is understandable as it reflects the fact that batterygate and its

4  impact had been revealed and digested between December 2017 and January 2018, as Norfolk

5  Pension Fund has consistently noted.  *See* ECF Nos. 36 at 4-8 and 52 at 4-8 (noting that Rhode

6  Island ERS' contention that *City of Roseville* failed to plead a class period encompassing batterygate

7  was a red herring because of the nearly insurmountable falsity and loss causation challenges, as well

8  as a truth-on-the-market defense).  Thus, while all three complaints address defendants' express

9  admission that the U.S.-China trade war and the battery replacement program was already negatively

10  impacting demand, it is for good reason that the *City of Roseville* and *Reddy* Complaints do not plead

11  a broad batterygate theory of securities fraud, or a class period associated with that theory.

12     It is notable that Rhode Island ERS' counsel focuses solely on the loss causation element in

13  its opposition while simultaneously ignoring the fact that ***none*** of the analyst reports issued on

14  January 2-3, 2019 ascribed the shocking earnings pre-announcement to the battery replacement

15  program, if they mentioned Apple's battery replacement program at all.  *Id.* at 6-7.  Instead, Rhode

16  Island ERS' counsel essentially contends that "well, yes, there may be some loss causation

17  challenges, but the Court doesn't need to worry itself about those just yet."  *See* ECF No. 57 at 9-13.

18  Counsel's adoption of the ostrich approach – particularly as to the other falsity, scienter and truth-

19  on-the-market problems the *Steamfitters* Complaint's batterygate theory faces – is short-sighted, and

20  will be detrimental to the putative class and the Court.  *See Union Asset Mgmt. Holding AG v.*

21  *Sandisk Corp.*, 2016 WL 406283, at *5 (N.D. Cal. Jan. 22, 2016) (inviting "motion[s] asking the

22  Court to reconsider its prior order appointing the current lead plaintiffs" in light of court's motion to

23  dismiss decision and determination the shorter class period was "far more realistic"); *Z-Seven Fund,*

24  *Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218 (9th Cir. 2000) (recognizing that "the

25  district court's order designating a lead plaintiff . . . can be revisited if circumstances warrant").

26     While the *Steamfitters* Complaint's sprawling batterygate theory and class period are

27  undeniably problematic, the Norfolk Pension Fund is pointedly "not asking the Court to make a

28  binding determination regarding the proper class period at this point."  *See* ECF No. 52 at 4 n.4.

1    Rather, Norfolk Pension Fund is simply asking the Court to decline to reward one of the movants'

2    counsel for strategically altering the class period and appending implausible allegations to an

3    existing case to benefit itself at the expense of the putative class.  Instead, the Court should either

4    consider the original period when appointing a lead plaintiff, or separate the theories and appoint a

5    lead plaintiff for each.  *Id.*; *compare In re Centerline Holding Co. Sec. Litig.*, 2008 WL 1959799, at

6    *3 (S.D.N.Y. May 5, 2008) (assessing original period only) *with Bodri v. Gopro, Inc*., 2016 WL

7    1718217, at *2 n.2 (N.D. Cal. Apr. 28, 2016) (recognizing "it is appropriate to sever" distinct claims)

8    *and In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428,  442 (S.D. Tex. 2010) (appointing lead plaintiff

9    for both class periods/theories).[2]  In either case, the Norfolk Pension Fund is typical and adequate of

10   the putative class and should be appointed Lead Plaintiff.

11                  **2.      Norfolk Pension Fund Has No Incentive to Truncate the Class Period**

12           Notably, Norfolk Pension Fund's financial interest is ***identical*** regardless of the class period

13   alleged.  *See* ECF No. 36 at 10 n.8.[3]  Consequently, the Norfolk Pension Fund has no economic

14   motive to argue for or against either period.  Stated differently, Norfolk Pension Fund's contentions

15   regarding the implausibility of the *Steamfitters* Complaint's batterygate allegations and class period

16   are predicated on patent factual and legal challenges any investor will face presenting that theory –

17   not on increasing or decreasing the Norfolk Pension Fund's financial interest.

18           By contrast, Rhode Island ERS' motion entirely hinges on the Court finding that the

19   *Steamfitters* Complaint's batterygate theory is without obvious and debilitating defects – which

---

20   [2]    Rhode Island ERS' attempt to distinguish *Bodri* on the basis that one complaint contained
21   distinct allegations for a non-contiguous class period not asserted in the other complaints is not
     persuasive.  *See* ECF No. 57 at 8.  The undersigned counsel briefed, argued, and prevailed in
22   obtaining a severance of the distinct and similarly untenable claims in *Bodri* because "'*Majesty
     Palms* appears to combine two distinct cases,' each involving allegations regarding disclosures
23   related to two distinct product lines during two distinct time periods, 'into one.'"  2016 WL
     1718217, at *2 n. 2; *see also Bodri* ECF Nos. 32 at 4-6 and 62 at 8-9 (contending that the *Majesty
24   Palms* complaint's theory was contrary to Supreme Court authority).  Combining two theories into
     one – one of which is untenable – is precisely what the *Steamfitters* Complaint has done here.  For
25   the same reasons Judge Tigar did in *Bodri*, this Court should "conclude[] that it is appropriate to
     sever" the China-related claims and period from *Steamfitters*.  2016 WL 1718217, at *2 n.2.

26   [3]    In its original opposition brief, Rhode Island ERS falsely asserted that Norfolk Pension Fund
27   "has not even provided its losses for the most inclusive class period."  ECF No. 55 at 14-15.  After
     Norfolk Pension Fund's counsel brought the factual error to its counsel's attention, Rhode Island
28   ERS corrected its opposition brief, deleting that erroneous representation.  *See* ECF No. 57 at 14.

1   Rhode Island ERS tellingly does not contest – such that both theories and periods should be

2   collapsed into one consolidated case with a single lead plaintiff.  The Court can and should decline

3   to do so to avoid subjecting the putative class to unnecessary risks, as well as the need to reopen the

4   lead plaintiff process when the *Steamfitters* batterygate theory proves untenable once defendants

5   have their bite at the proverbial apple.  *See* ECF Nos. 36 at 3-8, 52 at 4-8; *see also Bodri*, 2016 WL

6   1718217, at *2, *7 (severing claims in case alleging distinct theory over longer class period from

7   other related actions alleging separate theory over shorter class period, and consolidating other

8   related actions); *BP*, 758 F. Supp. 2d at 434 (appoint a lead plaintiff for each period/theory);

9   *Centerline*, 2008 WL 1959799, at *3 (assessing "plausibility" of two class periods at lead plaintiff

10   stage and finding longer period "not plausible" because the complaint "pleads no facts that make

11   th[e] allegation[s] plausible") (emphasis omitted).

12   Moreover, Rhode Island ERS does not dispute that it suffered the smallest loss in the

13   originally filed class period:

| Movant | Losses Suffered in 11/02/18-01/02/18 Period |
|---|---|
| **Norfolk Pension Fund** | **($1.2 million)** |
| Apple Investor Group | ($406,104) |
| Rhode Island ERS | ($31,927) |
| Richard Rodriguez | no loss |

18   Rhode Island ERS is also a net seller and net gainer during that period.  *See* ECF No. 52 at 6.

19   Consequently, it is only Rhode Island ERS – not the Norfolk Pension Fund – whose interests

20   materially change depending on the class period alleged.

21   The Norfolk Pension Fund is typical and adequate of the putative class it seeks to represent

22   as lead plaintiff.  Its motion should be granted.

23   **B.     Norfolk Pension Fund's Selection of Counsel Should Be Approved**

24   Rhode Island ERS also contends that Norfolk Pension Fund "is inadequate for selecting

25   ***potentially*** conflicted counsel" because "Norfolk's counsel serves on the Plaintiffs' Executive

26   Committee in the consumer litigation against Apple." ECF No. 57 at 18-19.  There are several flaws

27   with this argument, not the least of which include the fact that defendants have not levied this

28   challenge to Norfolk Pension Fund or Robbins Geller.  *See Richman v. Goldman Sachs Grp., Inc.*,

274 F.R.D. 473, 478 (S.D.N.Y. 2011) (rejecting the argument that a movant's counsel's "prior representation in an unrelated derivative action involving Goldman Sachs & Co. is disqualifying," because "[c]ertainly, Goldman Sachs & Co. does not make that argument" and "the [competing movant's] motive in raising this remote issue is obvious").

First, potential – *i.e.*, speculative and remote – conflicts do not suffice to undermine a movant's adequacy. *See Chahal v. Credit Suisse Grp. AG*, 2018 WL 3093965, at *7 (S.D.N.Y. June 21, 2018) (rejecting hypothetical conflict as to proposed lead counsel). Moreover, "such information is relevant only to determine whether the presumptive lead plaintiff's choice of counsel is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff." *Cavanaugh*, 306 F.3d at 733 (noting that "the choice of counsel is only an indicator – and a relatively weak one at that – of plaintiff's fitness").[4] A "potential" conflict hardly rises to that level. *See In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 263 (D.D.C. 2005) (rejecting challenge to presumptive lead plaintiff because movant "offer[ed] no proof" of how potential conflicts would become actual conflicts and arguments were "too speculative and hypothetical to rebut the presumption").

Second, it is widely recognized that the simultaneous representation of two different classes against a common defendant does not, in and of itself, yield a conflict of interest. *See Sandoval v. M1 Auto Collisions Ctrs.*, 309 F.R.D. 549, 570 (N.D. Cal. 2015) (rejecting "[d]efendants' suggestion that the mere fact that Plaintiffs' counsel are maintaining a second class action against them renders counsel inadequate"). Indeed, "[t]he few courts that have denied a finding of adequacy due to simultaneous representation of multiple sets of litigants, or simultaneous actions in multiple forums, have done so *only* when the recovery of one group or in one forum inherently conflicts with the recovery of the other." 1 NEWBERG ON CLASS ACTIONS §3:75 (5th ed. 2018). "For instance, courts

---

[4]  Rhode Island ERS' reliance on *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) for the proposition that "Courts do not 'permit even the appearance of divided loyalties'" is inapposite. ECF No. 57 at 19 (emphasis omitted). The district court in *Kayes* concluded that class counsel had a potential conflict of interest because counsel concurrently represented a client against the same defendant who had "a broader mission than did the class." 51 F.3d at 1465. Here, by contrast, Rhode Island ERS has not identified any Robbins Geller client with a personal agenda that is "broader" than the class's interest.

1  have found that class counsel cannot adequately represent two sets of claimants if, in limited fund

2  situations, the recovery of one set will cut directly into those of another, if the substantive law will

3  permit recovery only by one or the other set of litigants, or if one client is litigating an appeal to a

4  class action settlement in which another claimed recovery." *Id.* (footnotes omitted).  Tellingly,

5  Rhode Island ERS' counsel does not suggest that a limited fund situation exists, nor could it

6  considering Apple's $932 ***billion*** market capitalization or the $37.9 ***billion*** in cash and cash

7  equivalents Apple had on hand as of March 30, 2019.[5]

8       Third, Rhode Island ERS' purported concern about a potential conflict entirely ignores the

9  fact that while Judge Davila did appoint Robbins Geller partner Mark Dearman to Plaintiff's

10  Executive Committee in *In re: Apple Inc. Device Performance Litig.*, No. 5:18-md-02827, ECF No.

11  99 (N.D. Cal. May 15, 2018) (the "Consumer Class Action"), Mr. Dearman is ***one of twenty-three***

12  ***lawyers*** appointed to the Plaintiffs' Executive Committee, which is supplemented by an ***additional***

13  ***fourteen lawyers*** comprising the Steering Committee.  Even more relevant, all thirty-seven lawyers

14  on the Executive and Steering Committees serve at the direction of two co-lead counsel (neither of

15  whom is Mr. Dearman, or any other Robbins Geller partner).  *Id.* at 4-8.  The presence of additional

16  counsel – and the Rule 23 requirement that a settlement in either case must receive Court approval –

17  all but eliminates the possibility that even the most far-fetched conflict of interest scenario could

18  ever materialize.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("[T]he

19  addition of new and impartial counsel can cure a conflict of interest even where previous counsel

20  continues to be involved in the case."); *Sandoval*, 309 F.R.D. at 569 (recognizing that "class counsel

21  will not necessarily be disqualified merely for representing another class against the same defendants

22  when, for instance, the purported conflicts are illusory and speculative, the class has co-counsel

23  untainted by the conflict, and there are procedural safeguards protecting the class's interests, such as

24  requiring disclosure of the potential conflict to class members and requiring court approval for

25  settlements").

26

27  ⁵  *See*  https://www.sec.gov/ix?doc=/Archives/edgar/data/320193/000032019319000066/a10-

28  qq220193302019.htm (last visited July 5, 2019).

1      Finally, Rhode Island ERS' contention that Norfolk Pension Fund's counsel has

2  "demonstrated its conflicting loyalties by attacking the merits of the *Steamfitters* Action, while

3  simultaneously advancing contradictory arguments in the Consumer Class Action" is just wrong.

4  *See* ECF No. 57 at 19.  Nowhere in the 312-page Second Consolidated Amended Complaint in the

5  Consumer Class Action are there ***any*** factual allegations regarding Apple's conduct in 2018 or 2019

6  tied to batterygate.  *See* Consumer Class Action ECF No. 318-1.  Tellingly, and contrary to the

7  "continued concealment" of the batterygate scandal after December 20, 2017 that Rhode Island

8  ERS' counsel insists the Consumer Class Action is predicated on (ECF No. 57 at 20 extensively

9  quoting ¶21), the very next paragraph of that complaint contains an allegation regarding Apple's

10  apology on December 28, 2017 – a mere eight days later – that is entirely consistent with Norfolk

11  Pension Fund's accurate statement here that "Apple admitted in December 2017 that it had

12  intentionally slowed down iPhones with older batteries."  *Compare* Consumer Class Action ECF No.

13  318-1 ¶¶21-22 *with* ECF No. 36 at 5.  There simply is no tension between the positions.  And,

14  because Apple admitted to and apologized for batterygate, the market appreciated the risk that the

15  battery replacement program could impact billions of dollars' worth of iPhone sales, and the stock

16  price did not decline in response thereto, the simple fact remains that any investor attempting to

17  allege a batterygate securities fraud theory against defendants during an August 2017-January 2019

18  time period faces nearly insurmountable falsity, scienter, and loss causation challenges, as well as a

19  truth-on-the-market defense.  *See* ECF Nos. 36 at 4-8, 52 at 4-7.  That reality in no way conflicts

20  with the Consumer Class Action allegation that consumers were harmed by Apple's batterygate

21  scandal which Apple admitted and apologized for in December 2017.

22      In sum, Rhode Island ERS' counsel's "improbable if-you-give-a-mouse-a-cookie

23  hypothetical about a future series of events is far too attenuated to rebut the statutory presumption."

24  *Chahal*, 2018 WL 3093965, at *7.  This is particularly so considering that "when the [relevant

25  PSLRA] case law mentions conflicts of interest, they typically refer to defenses unique to or

26  collusion with the presumptive plaintiff, not potential ethical conflicts of interest."  *Id.* (citing cases).

27  "Accordingly, speculation about whether [Robbins Geller] ***may*** represent a lead plaintiff who ***may***

28

1    have adverse interests is insufficient to rebut the presumption that the [Norfolk Pension Fund] is lead

2    plaintiff." *Id.* (emphasis in original).

3           If the Court appoints Norfolk Pension Fund as Lead Plaintiff, it should likewise approve its

4    selection of Robbins Geller as Lead Counsel.

5    **C.     There Is No Need for a "Niche" Options Subclass**

6           For the first time in his opposition brief, Mr. Rodriguez asks the Court to appoint him as

7    "lead plaintiff for a Sub-Class, representing all shareholders who traded Apple options" in the longer

8    *Steamfitters* class period. ECF No. 51 at 3.[6]  In support of this new request, Mr. Rodriguez avers

9    that "[s]ub-classes are necessary where differences between the primary class and sub-class are

10   likely to give rise to conflicting litigation strategies."   ECF No. 51 at 4.   But if that were his

11   genuinely-held position, one would have expected Mr. Rodriguez to identify the potential

12   differences and conflicting strategies – as Norfolk Pension Fund did – in his motion.  He did not.

13   *See* ECF No. 20 at 10-12.  In fact, Mr. Rodriguez's motion expressly recognized that "Rule 23 does

14   not require that the named plaintiff be identically situated with all class members" and affirmatively

15   acknowledged that "Movant's claims ***are identical to, and neither compete nor conflict with the***

16   ***claims of the other Class members***" and that "Movant's interests are ***clearly aligned with those of***

17   ***the other members of the Class***."  *Id.* at 10-11.  The Court should decline to allow him to abandon

18   his initial position simply because it now suits him to do so.  *See Church v. Glencore PLC*, 2018 WL

19   6567704, at *3 (D.N.J. Dec. 13, 2018) ("This Court notes that Movant Pera did not raise this issue

20   initially, and he did not take any action to separate these classes of securities prior to the time

21   Movant Seymour filed a competing motion for appointment as lead plaintiff.  Importantly and to the

22   contrary, Movant Pera previously represented to this Court that he "'is not aware of any conflict that

23   exists between his claims and those asserted on behalf of the Class.'").

24          Mr. Rodriguez further speculates that "absent separate representation, it is ***quite possible*** that

25   thousands of aggrieved investors ***might not*** be represented in this action." ECF No. 51 at 4.  He also

26   contends that "[s]eparate representation for the Sub-Class is warranted in this matter due to the

---

27   ⁶    Mr. Rodriguez suffered no loss during the original *City of Roseville/Reddy* class period and is
28   thus ineligible for appointment in that case, even for a subclass.  *See* ECF No. 52 at 9.

differences in litigation strategy, which will include conflicting focus over price impact, market volatility, and trading volume, among other [unspecified] issues." *Id.* There are several problems with these contentions.

First, all of Mr. Rodriguez's authorities either pre-date *Cavanaugh* or are from jurisdictions outside the Ninth Circuit. *See id.* As such, the "rationales they offer for the appointment of co-lead plaintiffs . . . appear to be fundamentally at odds with *Cavanaugh*'s interpretation of the PSLRA and its outlining of the process to be used in identifying a lead plaintiff." *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 673  (C.D. Cal. 2005).

Second, "'the fact that plaintiffs might have different types of securities also does not require a separate class or co-lead plaintiffs.'" *Bodri*, 2016 WL 1718217, at *6 (quoting *In re Cendant Corp. Litig.*, 182 F.R.D. 144, 148 (D.N.J. 1998)).  As the *Cendant* court put it:

> More likely than not, the putative class in any large shareholder action will be composed of plaintiffs whose portfolios differ in composition from one another. This, however, does not justify the appointment of potentially innumerable co-lead plaintiffs to ensure that each individual interest is represented. Competing movants may be correct that the resolution of this case could ultimately favor holders of one type of security over the others. On the other hand, representation by a disparate group of plaintiffs, each seeking only a protection of its own interests, could well hamper the force and focus of the litigation. A balance must be struck.

182 F.R.D. at 148.

Judge Whyte's opinion in *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146 (N.D. Cal. 1999) is instructive.  There, certain movants sought "to be appointed lead plaintiffs for their 'niche' actions, claiming that their causes of action [were] so distinct as to justify appointment of multiple lead plaintiffs." *Id.* at 1150-51.  Judge Whyte recognized that "[a]lthough each plaintiff undoubtedly has an interest in securing an outcome most favorable to its position, 'every warrior in this battle cannot be a general.'"  *Id.* at 1151 (quoting *Cendant*, 182 F.R.D. at 148).  Indeed, "[b]eing a lead plaintiff is not the same thing as being a class representative, and additional named plaintiffs may be added later to represent subclasses of plaintiffs with distinct interests or claims." *Schueneman v. Arena Pharm., Inc.*, 2011 WL 3475380, at *5 (S.D. Cal. Aug. 8, 2011) (rejecting request to appoint lead plaintiff for subclass of option traders).

1   "Especially in light of [Mr. Rodriguez's] relatively small financial interest in this litigation,

2   [his] 'speculation about potential class standing problems should not be resolved by the appointment

3   of multiple lead plaintiffs . . . , but by the appointment, if necessary and desirable, of additional class

4   representatives as the litigation proceeds.'" *Bodri*, 2016 WL 1718217, at *6; *Richman*, 274 F.R.D.

5   at 476-77 ("Of course, [the option trader's] argument skips over the facts that the dollar amount and

6   her 'financial interest' are minimal to the point of being *de minimis*.  Her proposed relief would

7   result in a very tiny tail wagging a very large dog. Finally, the option claims raised by Ms. Bochner

8   can be handled in other ways which fully protect the interests of her proposed class.").[7]

9       The Court should deny Mr. Rodriguez's motion for appointment as co-lead plaintiff for

10  options traders in the longer class period.

11  **III.   CONCLUSION**

12      Norfolk Pension Fund has dutifully complied with the PSLRA.  It suffered the greatest loss

13  during the original period alleged by both the *City of Roseville* and *Reddy* Complaints, before the

14  Steamfitters' counsel reconstituted the class period to fit Rhode Island ERS' trading.  Norfolk

15  Pension Fund selected battle-tested trial lawyers with an office in this District as proposed lead

16  _____

[7]   *See also Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 541 (S.D.N.Y. 2015) (recognizing the "'fact that plaintiffs might have different types of securities does not require a separate class or co-lead plaintiffs because lead plaintiffs need not satisfy all elements of standing with respect to the entire lawsuit under the PSLRA'" and declining to appoint lead plaintiff for subclass of options traders); *Fishbury, Ltd. v. Connetics Corp.*, 2006 WL 3711566, at *4 (S.D.N.Y. Dec. 14, 2006) (declining to appoint lead plaintiff for subclass of option traders because movant "failed to make any concrete showing of a conflict of interest between [stock] and stock-option purchasers, relying instead on mere speculation about future standing or class-certification issues"); *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 20 (D.D.C. 2006) (declining to appoint lead plaintiff for subclass of option traders because option traders' "interests may be inimical to those of stockholders" and recognizing that "[s]tanding for options purchasers is not at issue here, however, since under PSLRA, '[t]he fact that plaintiffs might have different types of securities does not require a separate class or co-lead plaintiffs because lead plaintiffs need not satisfy all elements of standing with respect to the entire lawsuit under the PSLRA,'" particularly where option trader's financial interest "is so dwarfed by that of the stockholders"); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 440 (E.D. Va. 2000) (denying option trader's request to be appointed lead plaintiff for options subclass and recognizing that "[t]o the extent a subclass or -classes represented by separate counsel are required for the proper administration of this litigation and representation of the members of the class, that issue may be addressed at a later stage pursuant to Rule 23"); *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (denying request for appointment as lead plaintiff of an options subclass which "does not appear necessary" considering that "[s]hould conflicts arise subsequently, the Court will entertain another motion from Korsinsky or other class members who have purchased or sold Waste Management options during the class period that specifically addresses the issue").

1  counsel.  Norfolk Pension Fund should be appointed Lead Plaintiff in the *City of Roseville/Reddy*

2  China-related case.

3  DATED:  July 8, 2019                          Respectfully submitted,

4                                                ROBBINS GELLER RUDMAN & DOWD LLP

5                                                      s/ Danielle S. Myers
6                                                    DANIELLE S. MYERS

7                                                MARK SOLOMON
                                                 DANIELLE S. MYERS
8                                                JUAN CARLOS SANCHEZ
                                                 655 West Broadway, Suite 1900
9                                                San Diego, CA  92101
                                                 Telephone:  619/231-1058
10                                               619/231-7423 (fax)
                                                 marks@rgrdlaw.com
11                                               dmyers@rgrdlaw.com
                                                 jsanchez@rgrdlaw.com
12
                                                 ROBBINS GELLER RUDMAN
13                                                 & DOWD LLP
                                                 SHAWN A. WILLIAMS
14                                               Post Montgomery Center
                                                 One Montgomery Street, Suite 1800
15                                               San Francisco, CA  94104
                                                 Telephone:  415/288-4545
16                                               415/288-4534 (fax)
                                                 shawnw@rgrdlaw.com
17
                                                 [Proposed] Lead Counsel for [Proposed] Lead
18                                               Plaintiff

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on July 8, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

<u>  s/ Danielle S. Myers  </u>
DANIELLE S. MYERS

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  dmyers@rgrdlaw.com

4845-5294-6332.v1

## Mailing Information for a Case 4:19-cv-02033-YGR City of Roseville Employees' Retirement System v. Apple Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Adam Marc Apton**
  aapton@zlk.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com

- **Melinda Haag**
  mhaag@orrick.com

- **James Neil Kramer**
  jkramer@orrick.com,lpatts@orrick.com,mwatkins@orrick.com,vmorse@orrick.com

- **Francis P McConville**
  fmcconville@labaton.com,HChang@labaton.com,kgutierrez@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,disaacson@pomlaw.com,cgarcia@pomlaw.com,abarbosa@pomlaw.com

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Mark Solomon**
  marks@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Alexander K. Talarides**
  atalarides@orrick.com,lpatts@orrick.com

- **James Matthew Wagstaffe**
  wagstaffe@wvbrlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,smorris@rgrdlaw.com,e_file_sd@rgrdlaw.com,1101510420@filings.docketbird.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`