1  James M. Wagstaffe (#95535)
   Frank Busch (#258288)
2  **WAGSTAFFE, VON LOEWENFELDT,**
   **BUSCH & RADWICK LLP**
3  100 Pine Street, Suite 725
   San Francisco, California 94111
4  Telephone: (415) 357-8900
   Facsimile: (415) 357-8910
5  wagstaffe@wvbrlaw.com
   busch@wvbrlaw.com
6
   *Proposed Liaison Counsel for the Class*
7
   [Additional counsel appear on signature page.]
8

9              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
10

11 CITY OF ROSEVILLE EMPLOYEES'          Case No. 4:19-cv-02033-YGR
   RETIREMENT SYSTEM, Individually and on
12 Behalf of All Others Similarly Situated,   **CLASS ACTION**

13                           Plaintiff,      **REPLY MEMORANDUM OF LAW IN**
                                             **FURTHER SUPPORT OF THE**
14         vs.                               **MOTION OF THE EMPLOYEES'**
                                             **RETIREMENT SYSTEM OF THE**
15 APPLE INC., TIMOTHY D. COOK and LUCA      **STATE OF RHODE ISLAND FOR**
   MAESTRI,                                  **CONSOLIDATION, APPOINTMENT**
16                                           **AS LEAD PLAINTIFF, AND**
                             Defendants.     **APPROVAL OF SELECTION OF**
17                                           **COUNSEL; AND IN OPPOSITION TO**
                                             **COMPETING MOVANTS**
18
                                             Date: August 13, 2019
19                                           Time: 2:00 PM
                                             Courtroom: 1, 4th Floor
20                                           Judge:  Yvonne Gonzales Rogers

21 PRIYAM REDDY, Individually and on Behalf  Case No. 4:19-cv-02615-YGR
   of All Others Similarly Situated,
22                                           Judge Yvonne Gonzales Rogers
                             Plaintiff,
23
           vs.
24
   APPLE INC., TIMOTHY D. COOK and LUCA
25 MAESTRI,

26                           Defendants.

27 *(Caption continues on next page...)*

28

| | |
|---|---|
| STEAMFITTERS LOCAL 449 PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>        vs.<br><br>APPLE INC., TIMOTHY D. COOK and LUCA MAESTRI,<br><br>                    Defendants. | Case No. 4:19-cv-02891-YGR<br><br>Judge Yvonne Gonzales Rogers |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ........................................................................................................................2

I.      RHODE ISLAND IS THE PRESUMPTIVE LEAD PLAINTIFF.................................2

        A.      Consolidation of All Claims is Appropriate ........................................3

        B.      The Inclusive Class Period Advanced in the *Steamfitters* Action is the
                Operative and Controlling Period at This Stage in the Litigation .........................4

                1.      The *Steamfitters* Action Was Timely Filed ...............................4

                2.      The *Steamfitters* Action Sets Forth the Most Comprehensive
                        Allegations of Fraud ...................................................... 6

        C.      Rhode Island is Adequate and Typical in All Class Periods, and Norfolk's
                Arguments Should be Disregarded ...........................................................9

II.     NORFOLK REMAINS UNFIT TO SERVE AS LEAD PLAINTIFF FOR ANY GROUP
        OF APPLE INVESTORS ................................................................................ 11

III.    REQUESTS FOR SUBCLASSES SHOULD BE REJECTED........................................ 13

CONCLUSION.................................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re Adobe Sys., Inc. Sec. Litig.,*
5
    139 F.R.D. 150 (N.D. Cal. 1991)........................................................................................15

6

*Aronson v. McKesson HBOC, Inc.,*
    79 F. Supp. 2d 1146 (N.D. Cal. 1999) ........................................................................13, 15
7

*Averdick v. Hutchinson Tech. Inc.,*
8
    2006 U.S. Dist. LEXIS 47445 (D. Minn. Feb. 9, 2006) ...................................................15

9

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976)................................11, 15
10

*Bodri v. GoPro, Inc.*
11
    No. 16-cv-00232-JST, 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ...........................3,4, 15

12

*In re BP, PLC Sec. Litig.*
13
    758 F. Supp. 2d 428 (S.D. Tex.) ........................................................................................4

14

*In re Cavanaugh,*
    306 F.3d 726 (9th Cir. 2002) .....................................................................................1, 9, 13
15

*In re Cendant Corp.,*
16
    264 F.3d 201 (3d Cir. 2001)...............................................................................................13

17

*In re Cendant Corp. Litig.,*
18
    182 F.R.D. 476 (D.N.J. 1998)........................................................................................13,15

19

*In re Centerline Holding Co. Sec. Litig.*
    No. 08-cv-505, 2008 WL 1959799 (S.D.N.Y. May 5, 2008) ............................................7
20

*City of Royal Oak Ret. Sys. v. Juniper Networks,*
21
    No. 11-cv-04003, 2012 WL 78780 (N.D. Cal. Jan. 9, 2012)..............................................9

22

*Deering v. Galena Biopharma, Inc.,*
23
    No. 14-cv-00367, 2014 WL 4954398 (D. Or. Oct. 3, 2014) .............................................12

24

*In re Diamond Foods, Inc., Sec. Litig.,*
    295 F.R.D. 240 (N.D. Cal. 2013)......................................................................................13
25

*Eichenholtz v. Verifone Holding, Inc.,*
26
    No. C07-06140MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008).................................11

27

*Fishbury, Ltd. v. Connetics Corp.,*
28
    No. 06-cv-11496, 2006 WL 3711566 (S.D.N.Y. Dec. 14, 2006) ......................................15

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

ii

*Glauser v. EVCI Career Colls. Holding Corp.*,
   236 F.R.D. 184 (S.D.N.Y. 2006) ................................................................10

*Gluck v. CellStar Corp.*,
   976 F. Supp. 542 (N.D. Tex. 1997) ...........................................................9, 10

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) .....................................................................12

*Hardy v. MabVax Therapeutics Holdings*,
   No. 18-CV-01160-BAS-NLS, 2018 WL 4252345 (S.D. Cal. Sept. 6, 2018)...........................7

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)..................................11

*Hom v. Vale, S.A.*,
   No. 15-cv-9539-GHW, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016)....................................5

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015)..........................................................13

*In re Leapfrog Enters., Inc. Sec. Litig.*,
   No. C-03-05421 RMW, 2005 WL 3801587 (C.D. Cal. Nov. 23, 2005) ...........................10

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
   No. 13-CV-05368-LHK, 2014 WL 2604991 (N.D. Cal. June 10, 2014) ...............................7

*In re MicroStrategy Inc. Sec. Litig.*,
   110 F. Supp. 2d 427 (E.D. Va. 2000) ..........................................................13

*Nicolow v. Hewlett Packard Co.*,
   No. 12-05980 CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) .............................2

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
   256 F.R.D. 620 (E.D. Wis. 2009) ............................................................5, 8

*Porzio v. Overseas Shipholding Grp.*,
   No. 12 CIV. 7948, 2013 WL 407678 (S.D.N.Y. Feb. 1, 2013)..............................15

*Richardson v. TVIA, Inc.*,
   No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007)..............................2, 3

*Russo v. Finisar Corp.*,
   No. 5:CV 11-01252-EJD, 2011 WL 5117560 (N.D. Cal. Oct. 27, 2011) ...........................3, 4

*Schueneman v. Arena Pharm., Inc.*,
   No. 10-cv-1959, 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011)..............................15

*Sullivan v. Chase Inv. Servs. of Bos., Inc.*,
   79 F.R.D. 246 (N.D. Cal. 1978).................................................................12

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

iii

*Tanne v. Autobytel, Inc.*,
   226 F.R.D. 659 (C.D. Cal. 2005) ................................................................................10

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   892 F.3d 968 (8th Cir. 2018) ....................................................................................13

*In re Thornburg Mortg., Inc. Sec. Litig.*,
   629 F. Supp. 2d 1233 (D.N.M. 2009) ........................................................................5

*Turner v. ShengdaTech, Inc.*,
   No. 11 Civ. 1918 (TPG), 2011 WL 6110438, 3 (S.D.N.Y. Dec. 6, 2011) ..........................4, 5

*In re Twitter Inc. Sec. Litig.*,
   326 F.R.D. 619 (N.D. Cal. 2018) ..............................................................................10

*Westley v. Oclaro*,
   No. C-11-2448-EMC, 2011 WL 4079178 (N.D. Cal. Sept. 12, 2011) ...............................3

*Weisz v. Calpine Corp.*,
   No. 4:02-CV-1200, 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) .................................13

*In re XM Satellite Radio Holdings Sec. Litig.*,
   237 F.R.D. 13 (D.D.C. 2006) ...................................................................................15

**Statutes**

15 U.S.C. § 78u–4(a)(3)(A)(ii) ...................................................................................5

15 U.S.C. § 78u-4(a)(3)(a)(i)(II) .................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ...............................................................................9

Reply Memorandum in Further Support of Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel; And in Opposition to All Competing Motions
Case No. 4:19-cv-02033-YGR

iv

**PRELIMINARY STATEMENT**

Rhode Island is the presumptive Lead Plaintiff under the controlling class period advanced in the *Steamfitters* Action.[1]  Rhode Island has the largest financial interest in the outcome of the litigation and additionally more than satisfies the adequacy and typicality requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The sequential lead plaintiff review process set forth by the Ninth Circuit and the PSLRA requires Rhode Island's appointment.  *See In re Cavanaugh*, 306 F.3d 726, 729–30 (9th Cir. 2002) (discussing three-step competitive process for selecting a lead plaintiff).  Therefore, upon consolidation of the above-captioned, judicially-related actions, and the adoption of the longest-noticed class period in accord with well-settled law in this District, Rhode Island is unequivocally the most adequate Lead Plaintiff.  In its role as Lead Plaintiff, Rhode Island is committed to vigorously pursuing recovery for ***every*** Class member in ***any*** period.[2]

Norfolk's advocacy for an artificially truncated class period is nothing more than a shameless effort to avoid Rhode Island's mandatory appointment.  Norfolk goes to great lengths to justify severance of "battery gate" allegations, but in the process, (i) inappropriately attacks the merits of the *Steamfitters* Action and the inclusive class period, in an expressly antagonistic position to the vast majority of the Class; (ii) drastically reduces the potential recovery for the Class in the Action; and (iii) spends more time advocating for Defendants as opposed to the Class.  Norfolk's antagonism and disloyalty to the entire Class stands in ***clear violation*** of Rule 23's adequacy requirement.  Simply put, Norfolk's request to sever the Class, as well as its express attack on the merits of the *Steamfitters* Action, is based on self-interest, not the best interests of the Class.

---

[1] All Definitions herein remained unchanged from Rhode Island's previous submissions. *See* ECF Nos. 42, 57.  Unless otherwise noted, all emphases had been added and all citations and quotations omitted throughout this Reply.

[2] The *Roseville* and *Reddy* Actions set forth a class period of November 2, 2018 through January 2, 2018.  The *Steamfitters* Action logically expands this period to August 1, 2017 through January 2, 2018.  The current competing motions are: Rhode Island (ECF No. 26); Norfolk (ECF No. 36); and Rodriguez (ECF No. 20).  The Investor Group has filed a notice of non-opposition to competing movants.  *See* ECF No. 50.

1    Norfolk has further demonstrated its inadequacy by selecting potentially conflicted

2    counsel.  Norfolk's counsel, which currently serves in a leadership role in the Consumer Class

3    Action, has now taken a contrary position in this case by attacking the merits of the *Steamfitters*

4    Action.  By virtue of the Protective Order in the Consumer Class Action, as well as the PSLRA

5    discovery stay at issue in the current litigation, there is also a substantial risk that Norfolk,

6    through its choice of counsel, will be subject to unique defenses related to these potential

7    conflicts, thus jeopardizing the Class as a whole.  Norfolk's motion should be denied.

8    Finally, Rodriguez's request that the Court fragment Class leadership by appointing a

9    separate Lead Plaintiff for a subclass of option holders is premature and inappropriate.  At this

10   point in the litigation, the Class deserves unified leadership.  Courts routinely reject requests for

11   subclasses at the lead plaintiff stage—including options subclasses—instead dealing with the

12   issue, where necessary and appropriate, at class certification.  Notwithstanding the untimely

13   nature of Rodriguez's request, the facts of the present matter do not warrant subclasses.

14   Accordingly, Rodriguez's request for an options subclass should be denied.

15                                          **ARGUMENT**

16   **I.      RHODE ISLAND IS THE PRESUMPTIVE LEAD PLAINTIFF**

17   Rhode Island is, without a doubt, the presumptive Lead Plaintiff under the controlling

18   class period advanced in the *Steamfitters* Action.  With losses of **$4,101,951.46**—nearly four

19   times those claimed by Norfolk—Rhode Island has by far the largest financial interest in the

20   outcome of the litigation and is therefore, entitled to the presumption that it is the most adequate

21   plaintiff to serve the interests of the Class.  *See Nicolow v. Hewlett Packard Co.*, No. 12-05980

22   CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (collecting cases for the proposition that

23   the most important factor in appointing lead plaintiff is plaintiff's "estimated losses, using a last

24   in, first out '(LIFO)' methodology"), *id.*, at *5 (holding that the "[movant's] status as the single

25   entity with the greatest loss" entitled them to presumptive lead plaintiff status); *Richardson v.*

26   *TVIA, Inc.*, No. C -06- 06304 RMW, 2007 WL 1129344, at *3–4 (N.D. Cal. Apr. 16, 2007)

27   (discussing the PSLRA's lead plaintiff appointment process, and describing "approximate losses

28   suffered, as most determinative in identifying the plaintiff with the largest financial loss").

1    Rhode Island also satisfies Rule 23, as it has made the required "preliminary showing"

2    that it is both adequate and typical. *Westley v. Oclaro*, Inc., No. C-11-2448-EMC, 2011 WL

3    4079178, at *2 (N.D. Cal. Sept. 12, 2011).  Rhode Island is typical to the Class as it "has

4    suffered the same injuries as other class members as a result of the same conduct by defendants

5    and has claims based on the same legal issues." *Id.*, at *2; *see also Russo v. Finisar Corp.*, No.

6    5-CV- 11-01252-EJD, 2011 WL 5117560, at *4 (N.D. Cal. Oct. 27, 2011) (discussing ways in

7    which a lead plaintiff movant can meet the typicality requirement).  Rhode Island has also

8    demonstrated its adequacy as it lacks any antagonism to the Class—illustrated by its advocacy

9    for the *entirety* of putative Class members—and it has selected qualified counsel, who are

10   experienced, lacking any semblance of a conflict, and prepared to vigorously litigate the action.

11   *See Westley*, 2011 WL 4079178, at *2 (explaining that, with regard to the adequacy requirement,

12   a court must evaluate whether "(1) the lead plaintiff's claims conflict with those of the class; and

13   (2) class counsel is qualified, experienced, and generally able to conduct the litigation").

14   ### A.    Consolidation of All Claims is Appropriate

15   All of the above actions, which have already been related by this Court pursuant to a

16   standard nearly identical to Rule 42, warrant consolidation.  Indeed, all actions: (1) name the

17   same defendants; (2) are brought pursuant to the same causes of action; (3) rely on many of the

18   same misstatements; (4) rely on the same final disclosure; and (5) allege claims regarding

19   iPhone-related sales issues.  *See* ECF No. 57, at 4–7 (detailing that the above-captioned actions

20   present common questions of law and fact and citing relevant authority).  It would only serve to

21   drain judicial resources and overly complicate the litigation for these intertwined theories, which

22   have been substantially pled in *every* action, to proceed on separate tracks.[3]

23   The minimal authority put forth by Norfolk to support its request to sever the two

24   theories is entirely distinguishable—thus further underscoring that consolidation of the above-

25   captioned actions is proper.  Indeed, *Bodri v. GoPro, Inc.* involved two separate theories relating

26

27   _____

28   [3] Norfolk admits as much in its opposition by stating that "[a]ll cases should be related and
     coordinated to reduce the risk of duplication."  ECF No. 52, at 1.

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

3

1   to two different products, which relied on entirely separate statements, time periods, and

2   disclosures.  No. 16-cv-00232-JST, 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016).  Specifically,

3   the original theory in *GoPro* alleged that the defendants failed to disclose sales issues regarding

4   the company's HERO line of cameras during the period July 21, 2015 through January 13, 2016.

5   *Id.* at * 3.  The fourth-filed complaint in *GoPro* added an additional theory regarding the

6   company's anticipated line of consumer drones during the period November 26, 2014 through

7   July 20, 2015 (with the stock drop at issue on January 7, 2015).  *Id.*  Therefore, in *GoPro* the two

8   theories were ***entirely separate***.[4]  Thus, if the proper standard for severance of claims in this

9   District is whether the theories at issue fail to present ***any*** overlapping factual and legal

10  questions, that standard clearly does not apply here.[5]

    Accordingly, as ***all*** of the above judicially-related actions present common questions of

12  law and fact, Rhode Island's motion for consolidation should be granted.

### B.    The Inclusive Class Period Advanced in the *Steamfitters* Action is the Operative and Controlling Period at This Stage in the Litigation

#### 1.    The *Steamfitters* Action Was Timely Filed

    Pursuant to the PSLRA, courts are required to credit any and all allegations filed within

the sixty-day notice period.  Ignoring this well-settled standard, Norfolk insinuates that the

*Steamfitters* Action was purposely filed "with just a few weeks remaining" during the notice

period to wrongfully deprive potential Class members notice of the expansion of the claims pled

in the preceding actions.  ECF No. 52, at 3.  This is nothing more than a baseless attack on the

filing plaintiff in the *Steamfitters* Action and Counsel and purposefully disregards the law.

    The PSLRA details the form and timing of notice for securities class actions.  *See Turner*

*v. ShengdaTech, Inc.*, No. 11 Civ. 1918 (TPG), 2011 WL 6110438, at *2–3 (S.D.N.Y. Dec. 6,

---

[4] In *GoPro*, the court determined that the fourth-filed complaint "'appear[ed] to combine ***two distinct cases***,' each involving allegations regarding disclosures related to ***two distinct product lines*** during ***two distinct time periods***, 'into one.'"  *Id.* at *2, n.2.

[5] In addition, while Norfolk heavily relies on *In re BP, PLC Sec. Litig.* in its opposition brief, that case in fact supports utilizing the longest noticed class period where the allegations set forth therein are "obviously not frivolous."  758 F. Supp. 2d 428, 436–37 (S.D. Tex.).

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

4

1   2011) (citing 15 U.S.C. § 78u–4(a)(3)(A)).  Among other requirements, the PSLRA notice must

2   inform potential class members that "not later than 60 days after the date on which the notice is

3   published, any member of the purported class may move the court to serve as lead plaintiff of the

4   purported class." 15 U.S.C. § 78u-4(a)(3)(a)(i)(II).  This statutory scheme contemplates a single

5   notice period as the general rule.  *See In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F. Supp. 2d

6   1233, 1239 (D.N.M. 2009) (finding that "the PSLRA seems to view the notice as being a

7   threshold issue that comes up at the beginning of the filing of a lawsuit").  With regard to the

8   filing of other related actions during the sixty-day notice period, the plain text of the PSLRA

9   provides that, where a subsequent action asserts "substantially the same claim or claims . . . only

10  the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published."

11  15 U.S.C. § 78u–4(a)(3)(A)(ii).

12      The law is clear: "nothing in the PSLRA limits the class period to the period identified in

13  the first notice."  *See Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256

14  F.R.D. 620, 624 n.6 (E.D. Wis. 2009).  Courts uniformly recognize new class periods and new

15  allegations in complaints filed during the sixty-day "notice period" (like the *Steamfitters* Action).

16  *See, e.g.*, *Hom v. Vale, S.A.*, No. 15-cv-9539-GHW, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7,

17  2016) (finding original notice adequate despite subsequent actions filed one week before lead

18  plaintiff deadline expanding class period more than sixteen months); *ShengdaTech, Inc.*, 2011

19  WL 6110438, at *2 (notice adequate despite new complaint filed the same date as the lead

20  plaintiff deadline, which expanded the class period by nearly two years, as it named same

21  defendants, legal theories, and securities).

22      Upon the filing of the *Roseville* Action, Norfolk's counsel issued notice alerting potential

23  class members as to the allegations therein and the upcoming lead plaintiff deadline.  ECF No.

24  27-3.  This notice unequivocally alerted potential class members as to the China ***and battery-***

25  ***related*** claims levied against Defendants.[6]   Going above and beyond the notice requirements set

26

27      [6] The notice stated, in pertinent part: "defendants failed to disclose that . . . Apple
    discounting the cost of replacement batteries ***to make up for the Company's prior conduct of***

28  ***intentionally degrading the performance of the batteries in older iPhones***, the rate at which

forth in the PSLRA, however, additional notice was issued upon filing of the *Steamfitters* Action, which alerted potential Class members as to the expansion of the claims advanced against Defendants, and reiterated the lead plaintiff deadline (which was nearly a month away at the time of issuance).  *See* ECF No. 27-4.  As such, Norfolk's insinuation of wrongdoing during the notice period is incorrect and should be disregarded.

### 2. The *Steamfitters* Action Sets Forth the Most Comprehensive Allegations of Fraud

The inclusive class period in the *Steamfitters* Action sets forth the most comprehensive allegations of fraud by capturing the artificial inflation caused by the previously undisclosed throttling of iPhones,[7] as well as Defendants' failure to inform investors that the battery-replacement program would materially impact sales.  Accordingly, the inclusive class period advanced in the *Steamfitters* Action satisfies any standard of review and is the controlling period at this stage in the litigation.

As a preliminary matter, it is well established by courts in this District and others that "[f]or purposes of appointing a lead plaintiff, the longest class period governs." *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368-LHK, 2014 WL 2604991, at *1 n.3 (N.D. Cal. June 10, 2014); *see also* ECF No. 57, at 8–9, 13.  Furthermore, while some courts have chosen to apply certain "safeguards" in analyzing the longest noticed period, it does not appear that ***any*** of these safeguards have been adopted in this District.  *See* ECF No. 57, at 8–9, 13 (citing cases from this District, including from this Court, which adopted the longest class period on its face).  For example, in *Hardy v. MabVax Therapeutics Holdings*, the court rejected contentions that a longer class period was improper.  No. 18-CV-01160-BAS-NLS, 2018 WL 4252345, at *4–5 (S.D. Cal. Sept. 6, 2018).  In its analysis, the court noted that other courts—all

---

Apple customers were replacing their batteries in older iPhones, rather than purchasing new iPhones, was negatively impacting Apple's iPhone sales growth" *See* ECF No. 27-3.

[7] Which, contrary to Norfolk's speculative assertion otherwise, properly begins when the price of Apple stock became artificially inflated due to the sharp uptick in iPhones upgrades, as opposed to the start of the throttling itself.  ECF No. 52, at 7 n.6 (questioning why inclusive class period fails to begin in January 2017); *Steamfitters* Action, ECF No. 1, ¶ 36 (beginning inclusive class period in August 2017 when Defendants reported a record number of iPhone upgrades).

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

6

1  out of Circuit—have applied certain "safeguards" in analyzing whether the longest-noticed class

2  period was appropriate.  *Id.* at *5.  The court in *MabVax*, however, declined to use ***any***

3  safeguards in analyzing the longest-noticed period, finding that those issues should be addressed

4  through the normal course of the adversarial process—not by competing lead plaintiff movants.

5  *Id.* at *5–6.  Therefore, under *MabVax*, the most inclusive class period is the operative period at

6  the lead plaintiff stage.

7      Of the courts that have determined that certain safeguards are necessary in evaluating

8  whether a longer class period is appropriate, the near-universal test is whether the period is

9  "obviously not frivolous."  *Id.* (collecting cases).  The *Steamfitters* Action easily meets this

10  frivolity standard.  *First*, the *Steamfitters* Action pleads multiple statements by Defendants

11  touting the increased upgrade rate for iPhones during the period in which they were secretly

12  throttling older model phones.[8]  *Second*, the *Steamfitters* Action pleads that Defendants were

13  aware, yet failed to alert investors that the subsequent battery-replacement program would

14  adversely impact sales.  *Third*, the *Steamfitters* Action then logically ties this course of conduct

15  to the ultimate drop in the price of Apple stock, which Defendants attributed, in part, to the

16  battery-replacement program.  *Finally*, the *Steamfitters* Action also pleads that during this

17  period, Defendants made false and misleading statements concerning demand issues in China.

18  Therefore, the *Steamfitters* Action readily surpasses the "obviously not frivolous" standard, thus

19  further cementing it as the operative class period at this stage in the litigation.

20      Finding no other alternative, Norfolk clings to the extreme outlier case of *In re Centerline

21  Holding Co. Sec. Litig.*, which adopted a motion to dismiss standard in evaluating the longest

22  noticed period.[9]  No. 08 CIV. 1026 (SAS), 2008 WL 1959799 (S.D.N.Y. May 5, 2008); *see* ECF

23  No. 52, at 5.  *Centerline*, an eleven-year-old, out-of-Circuit case, does not appear to have been

24

25      [8] This conduct is also currently the subject of an ***SEC investigation into whether Apple violated the federal securities laws***.  *See Steamfitters* Action, ECF No. 1, ¶ 34.

26      [9] Even if this standard were applied, Rhode Island respectfully submits that the expanded
27  allegations advanced in the *Steamfitters* Action would successfully satisfy the standard.  *See* ECF
    No. 57, at 9–13 (explaining how the allegations withstand heightened scrutiny under 12(b)(6)
28  motion to dismiss standard).

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

7

adopted by *any* court, let alone those in this District.  *See, e.g.*, *MGIC Inv. Corp.*, 256 F.R.D. at

625 n.7 (rejecting argument to use *Centerline* at lead plaintiff stage as "superficial" based on

"poor record for making an informed finding concerning plausibility").  Norfolk seemingly uses

*Centerline* to request that the Court dismiss the battery-related claims, which request would be

premature and is an inappropriate position for a lead plaintiff movant to take.  Indeed, this is not

the motion to dismiss stage, and Norfolk is not a defendant in this litigation.  *Id.* ("Unlike a

defendant, competing potential lead plaintiffs will not want to limit the class's eventual recovery

by showing at the beginning of a case that a broader class period is implausible.").  Norfolk has

thus failed to rebut the obvious: at this stage in the litigation, the longest-notice class period is

controlling.

Furthermore, if Norfolk's argument were accepted, it would not only eliminate most of

the putative Class, but the potential recovery in the current litigation would be reduced by over

ninety-five percent.  On this point, Rhode Island, as part of its comprehensive investigation into

this Action, retained an expert to conduct preliminary Class wide damages estimates under its

proprietary damages model in order to compare the potential recoveries in the *Roseville* and

*Steamfitters* Actions.  As summarized below, this analysis shows an ***astonishing*** disparity

between the potential recoveries of the inclusive class period and the artificially truncated class

period:

|  | **CLASS PERIOD** | **TOTAL VOLUME OF SHARES**[10] | **PRELIMINARY DAMAGES ANALYSIS** |
|---|---|---|---|
| ***Roseville* Action** | 11/2/18 – 1/2/19 | 1,838,955,511 | $2.49bn |
| ***Steamfitters* Action** | 8/1/17 – 1/2/19 | 11,554,076,992 | $51.1bn |

The inclusive class period advanced in the *Steamfitters* Action is not only appropriate—but

necessary—to ensure adequate representation of *all* investors who were damaged due to the

alleged artificial inflation of Apple securities.

---

[10] *See* Declaration of James M. Wagstaffe ("Wagstaffe Decl."), Ex. A (Apple daily trading volume exported from *Bloomberg*).

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

8

### C.       Rhode Island is Adequate and Typical in All Class Periods, and Norfolk's Arguments Should be Disregarded

Rhode Island indisputably has the largest financial interest in the litigation under the operative class period, and because it also satisfies Rule 23, it is entitled to Lead Plaintiff appointment.  *See Cavanaugh*, 306 F.3d at 730 (focusing "in particular" on typicality and adequacy at the lead plaintiff stage).  Norfolk—as a last resort—attempts to rebut this statutory presumption by making speculative attacks regarding Rhode Island's typicality and adequacy in the artificially truncated period, which for the reasons discussed above must not be applied.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Cavanaugh*, 306 F.3d at 732 (explaining that the PSLRA's presumption is triggered even if the district court believes another movant may be "'more typical' or 'more adequate' . . . [or] would do a better job").  Specifically, Norfolk argues that because in the artificially truncated period Rhode Island only has an "interest" of $31,900, and is a so-called "net seller/net gainer," that it ***might not*** vigorously represent class members with losses in the shorter period, and that Defendants ***may raise*** standing issues later on in the litigation.  This is simply not the case, and ignores well-settled law.  Rhode Island, as the movant with the largest financial interest that has also made the preliminary showing that it satisfies the adequacy and typicality requirements of Rule 23, is the best suited to represent the ***entirety*** of the Class.  *See, e.g., City of Royal Oak Ret. Sys. v. Juniper Networks*, No. 11-cv-04003, 2012 WL 78780, at *4 (N.D. Cal. Jan. 9, 2012) ("Th[e] showing [at the lead plaintiff stage] need not be as thorough as would be required on a motion for class certification.").

First and foremost, Norfolk's arguments are speculative and best, and therefore have failed to rebut the presumption that Rhode Island is the presumptive lead plaintiff.  "There is, of course, a marked difference between affirmatively demonstrating that [a lead plaintiff movant] is not an adequate representative or is subject to unique defenses and simply claiming that [a lead plaintiff movant] *might* be subject to such arguments in the future."  *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 547 (N.D. Tex. 1997) (emphasis in original).  Norfolk has used the latter approach, merely alleging that Defendants might later challenge Rhode Island's standing. "Such speculative assertions are insufficient to rebut the presumption that [Rhode Island] is the most

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

9

1    adequate plaintiff." *Id.*; *see also Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184,

2    189 (S.D.N.Y. 2006) (citing cases) (rejecting "speculative and hypothetical argument that [lead

3    plaintiff] *might* be subject to a later attack by Defendants") (emphasis in original). "The statute

4    requires [Norfolk] to present 'proof' of its assertions[.]" *Gluck*, 976 F. Supp. at 547–48 (citing 15

5    U.S.C. § 78u–4(a)(3)(B)(iii)(II)).

6         In addition, not only are Norfolk's arguments purely speculative, they are also

7    incorrect—Rhode Island ***has a loss*** of $31,927 in the artificially truncated period.  *See* Wagstaffe

8    Decl. Ex. B.[11]  Rhode Island not only has standing to bring all claims, but is also incentivized to

9    pursue recovery for ***every*** member of the Class in ***any*** period.  This is in stark contrast to

10   Norfolk, who is on the record stating that it will not vigorously pursue recovery on behalf of any

11   Class member outside of its gerrymandered period.

12        Even taking Norfolk's speculative accusations as true—which they are not—it is well-

13   settled law that a lead plaintiff need not have standing to state a claim on every day of the class

14   period.  *See Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 669 (C.D. Cal 2005) ("[n]othing in the

15   PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every

16   available cause of action") (quoting *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82-83 (2d Cir. 2004)

17   ("[I]t is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every

18   claim.")); *In re Leapfrog Enters., Inc. Sec. Litig.*, No. C-03-05421 RMW, 2005 WL 3801587, at

19   *3 (C.D. Cal. Nov. 23, 2005) (holding that "the lead plaintiffs needed only to prove that they

20   suffered *a* concrete injury because of defendants' wrongdoing, not every injury alleged by the

21   class.") (emphasis in original).  Instead, Rhode Island is prepared to add an additional class

22   representative to the extent the Court finds necessary to ensure the Class would be entirely

23   protected.  *See In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 627–28 (N.D. Cal. 2018) ("courts in

24

25

26        [11] Additionally, Norfolk's assertion that the filing plaintiff in the *Steamfitters* Action
     "forfeit[ed] its $36,000 loss to allege a dramatically longer class period" is entirely incorrect.
27   ECF No. 36, at 7 n.4.  In the inclusive class period Steamfitters' loss in fact ***increases*** by nearly
     $10,000 from $25,969 to $35,927.  *See* Wagstaffe Decl. Ex. C.
28

this [D]istrict and [C]ircuit regularly appoint both lead and additional plaintiffs as class representatives in PSLRA class actions") (collecting cases).

As "[e]very class member shares an overriding common interest in establishing the existence and materiality of misrepresentations," Rhode Island is fully committed to vigorously pursuing recovery for **all** Class members, unlike Norfolk. *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).

## II.   NORFOLK REMAINS UNFIT TO SERVE AS LEAD PLAINTIFF FOR ANY GROUP OF APPLE INVESTORS

Norfolk is entirely inadequate to represent **any** group of Apple investors. The law in assessing the adequacy of a lead plaintiff in this District is clear: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *3 (N.D. Cal. Sept. 4, 2018) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000)). Norfolk fails on both counts.

The Class deserves undivided loyalty, and as Norfolk already seeks to excise claims and Class members at this very preliminary stage in the litigation, it has shown that it intends to extend such loyalty to the Class only when convenient. Indeed, Norfolk's request to sever all battery-related claims is purely motivated by the self-interested goal of establishing the shortest possible class period in order to secure lead plaintiff appointment.[12] *See Eichenholtz v. Verifone Holding, Inc.*, No. C07-06140MHP, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) (noting that requests to use shorter class period likely based in self-interest and not the best interests of the class). In a veiled attempt to hide its true motive, Norfolk cloaks itself in false indignation as it attacks the merits of the *Steamfitters* Action. Through this attack, however, Norfolk has conceded that it has no intention to vigorously pursue recovery on behalf of a vast number of

---

[12] The confusing nature of this request is compounded by the fact that Norfolk's counsel originally brought battery-related claims (which it attributing as a direct result of the throttling) in the *Roseville* Action. *See* ECF No. 57, at 5–7 (discussing battery-related claims in *Roseville* Action).

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

11

1    Class members, and is wholly inadequate for the role of Lead Plaintiff in any class period.  *See*

2    *Deering v. Galena Biopharma, Inc.*, No. 14-cv-00367, 2014 WL 4954398, at *11 (D. Or. Oct. 3,

3    2014) (advocacy for shorter class period rendered lead plaintiff movant inadequate to represent

4    the entire class). Accordingly, based on Norfolk's astonishing antagonism towards the Class, its

5    motion should be denied.

6            Even more troubling, Norfolk's counsel is currently serving in a leadership position in the

7    Consumer Class Action, which revolves around the same battery-related theory advanced in the

8    *Steamfitters* Action (as discussed at length in the *Roseville* Action). *See* ECF no. 18–20.

9    Therefore, Norfolk's counsel is simultaneously arguing for two opposing results.  On one hand,

10   Norfolk's counsel seeks recovery on behalf of a class of injured consumers, on the other it seeks

11   to abandon a class of investors harmed by the same exact conduct.  Such divided loyalty violates

12   bedrock class action principles.  *See Sullivan v. Chase Inv. Servs. of Bos., Inc.*, 79 F.R.D. 246,

13   258 (N.D. Cal. 1978) ("The responsibility of class counsel to absent class members whose

14   control over their attorneys is limited does not permit even the appearance of divided loyalties of

15   counsel.").

16           In addition, due to the Protective Order in the Consumer Class Action, as well the

17   PSLRA discovery stay in this litigation, the appointment of Norfolk's counsel as Lead Counsel

18   would saddle the Class with a potential minefield of conflict.  *See* ECF No. 57, at 19.

19   Defendants would almost certainly utilize this apparent conflict to defeat class certification, thus

20   devolving the litigation into a sideshow of arguments wholly unique to Norfolk's counsel.  *See*

21   *Chase Inv. Servs. of Bos*, 79 F.R.D. at 258 (ordering withdrawal of counsel in class action based

22   on "role in a parallel securities fraud case," finding that because threat of "conflicting interests in

23   the course of each litigation, counsel [could not] represent both"); *see also Hanon v.*

24   *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("class certification is inappropriate

25   where a putative class representative is subject to unique defenses which threaten to become the

26   focus of the litigation.").  Tellingly, Norfolk likely now seeks to abandon all battery-related

27   claims to absolve itself of this substantial oversight.  Based on its selection of potentially

28   conflicted counsel, however, Norfolk is thus even further inadequate for the role of Lead

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

12

1   Plaintiff.  *See In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013)

2   ("The adequacy inquiry also 'factors in competency and conflicts of class counsel.'" (quoting

3   *Amchem*, 521 U.S. at 626 n. 20, 117 S.Ct. 2231)); *see also In re Cendant Corp.*, 264 F.3d 201,

4   265 (3d Cir. 2001) (a court might conclude that a movant "could not surmount the threshold

5   adequacy inquiry if it . . . intended to select as lead counsel a firm that was plainly incapable of

6   undertaking the representation").

7        Accordingly, Norfolk is "tainted by self-dealing [and] conflict[s] of interest, [and has

8   thus] cast genuine and serious doubt on [its] willingness or ability to perform the functions of

9   lead plaintiff."  *Cavanaugh*, 306 F.3d at 733.  Norfolk's motion should be denied.

10  **III.     REQUESTS FOR SUBCLASSES SHOULD BE REJECTED**

11       Rodriguez's request that the Court sever the Class by creating a subclass for those

12  investors who purchased options is not only warrantless, but entirely unnecessary.  As a

13  preliminary matter, courts are extremely cautious in appointing subclasses, finding that doing so

14  "would injure the purpose of the PSLRA by fragmenting the plaintiff class and decreasing client

15  control *at any stage* in the litigation.  *In re Cendant Corp. Litigation*, 182 F.R.D. 476, 480

16  (D.N.J. 1998).  On this point, the creation of subclasses not only threatens to rob absent class

17  members of uniform leadership, but may also give way to intra-class conflict.  *See In re Target

18  Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 974 (8th Cir. 2018) (can be inherent

19  conflicts between subclasses).

20       Furthermore, even if the Court were inclined to consider the use of subclasses, "[t]he

21  matter of a subclass may be dealt [with] at the time of class certification." *Weisz v. Calpine

22  Corp.*, No. 4:02-CV-1200, 2002 WL 32818827, at *3 n.4 (N.D. Cal. Aug. 19, 2002).[13]  In

23

24       [13] *See also Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1151 n.4 (N.D. Cal.
     1999) (denying subclasses, including options subclass, noting that its decision did not prevent the
25   "'niche' plaintiffs from raising the same issues during the Rule 23 class certification process,
     where their concerns are much more germane.");  *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F.
26   Supp. 3d 523, 541 (S.D.N.Y. 2015) (denying request for options subclass holding that "[i]f pre-
     trial discovery reveals rifts within the class that require subclasses, the issue will be addressed at
27   that time"); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 440 (E.D. Va. 2000)
28   (refusing to appoint subclass for options finding it inappropriate at the lead plaintiff stage).

1   addition, courts have found that additional named plaintiffs, not additional lead plaintiffs, are the

2   appropriate measure of leadership for subclasses.[14]  *See Schueneman v. Arena Pharm., Inc.*, No.

3   10-cv-1959, 2011 WL 3475380, at *5 (S.D. Cal. Aug. 8, 2011) ("Being a lead plaintiff is not the

4   same thing as being a class representative, and additional named plaintiffs may be added later to

5   represent subclasses of plaintiffs with distinct interests or claims.").  Finally, it is the duty of the

6   lead plaintiff to "identi[f]y and include named plaintiffs who have standing to represent the

7   various potential subclasses of plaintiffs who may be determined, at the class certification stage,

8   to have distinct interests or claims." *Fishbury, Ltd. v. Connetics Corp.*, No. 06-cv-11496, 2006

9   WL 3711566, at *4 (S.D.N.Y. Dec. 14, 2006).  Accordingly, fragmenting the Class into

10  subclasses is entirely premature at this stage in the litigation, and if the Court later determines

11  subclasses are appropriate, Rhode Island would readily select an appropriate class representative

12  to ensure the interests of option holders are protected.

13          Notwithstanding the premature nature of Rodriguez's request, courts routinely reject

14  requests to appoint subclasses for options-holders.  *In re Cendant Corp. Litigation*, 182 F.R.D. at

15  148 (declining to appoint subclasses, including options subclass, finding that "a disparate group

16  of plaintiffs, each seeking only the protection of its own interests, could well hamper the force

17  and focus of the litigation").[15]  On this point, courts regularly find that requests for an options

18  subclass unneeded—which logic is sound considering how stock and option holders have, in

19  essence, the same investment strategies. *Gopro*, 2016 WL 1718217, at *6 (finding options

20  subclass unnecessary); *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 155 (N.D. Cal. 1991)

21  ("[T]he value of options is directly related to the value of common stock."); *see also supra* note

22  13.  Indeed, as here "as all claims are based on the same financial disclosures," any difference

23

24

---

25      [14] *See also McKesson HBOC*, 79 F. Supp. 2d at 1151 ("Although each plaintiff undoubtedly has an interest in securing an outcome most favorable to its position, "'every warrior in this

26  battle cannot be a general.'" (quoting *In re Cendant*, 182 F.R.D. 144, 148 (D.N.J. 1998)).

27      [15] *See also Averdick v. Hutchinson Tech. Inc.*, 2006 U.S. Dist. LEXIS 47445, at *18 (D. Minn. Feb. 9, 2006) (same); *Porzio v. Overseas Shipholding Grp.*, No. 12 CIV. 7948, 2013 WL

28  407678, at *4 (S.D.N.Y. Feb. 1, 2013) (same)

REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS
CASE NO. 4:19-CV-02033-YGR

14

1  between stock and option holders "does not create the need for a separate lead plaintiff."

2  *McKesson HBOC*, 79 F. Supp. 2d at 1151.

3       Finally, Rodriguez's assertion that stock and option holders may require different

4  litigation strategy, including varying damages calculations, is unfounded and simply not true.

5  *See In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 20 (D.D.C. 2006) (rejecting

6  argument that subclass should be created because options purchasers "might perhaps seek a

7  different litigation strategy to maximize their recovery"); *see also Blackie*, 524 F.2d at 909–10

8  ("courts have generally declined to consider conflicts, particularly as they regard damages,

9  sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and

10  on an issue at the very heart of the suit").

11       Rodriguez's "speculations about possible conflicts [does] not rebut the statutory

12  presumption that one lead plaintiff can vigorously pursue all available causes of action against all

13  possible defendants under all available legal theories." *McKesson HBOC*, 79 F. Supp. 2d at 1151

14  n.4.  His request should be denied.

15  **CONCLUSION**

16       For the foregoing reasons, Rhode Island respectfully requests that the Court grant its

17  motion and deny all competing motions.

18  DATED:  July 8, 2019                Respectfully submitted,

19                          */s/ James M. Wagstaffe*

20                          James M. Wagstaffe (#95535)

21                          Frank Busch (#258288)

                        **WAGSTAFFE, VON LOEWENFELDT,**

22                          **BUSCH & RADWICK, LLP**

                        100 Pine Street, Suite 725

23                          San Francisco, California 94111

                        Telephone: (415) 357-8900

24                          Facsimile: (415) 357-8910

                        wagstaffe@wvbrlaw.com

25                          busch@wvbrlaw.com

26

27                          *Proposed Liaison Counsel for the Class*

28

Reply Memorandum in Further Support of Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel; And in Opposition to All Competing Motions
Case No. 4:19-cv-02033-YGR

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LABATON SUCHAROW LLP**
Christopher J. Keller (*pro hac vice* forthcoming)
Eric J. Belfi (*pro hac vice* forthcoming)
Carol C. Villegas (*pro hac vice* forthcoming)
Francis P. McConville (admitted *pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
cvillegas@labaton.com
fmcconville@labaton.com

*Counsel for Proposed Lead Plaintiff Employees'
Retirement System of the State Of Rhode Island
and Proposed Lead Counsel for the Class*

Reply Memorandum in Further Support of Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel; And in Opposition to All Competing Motions
Case No. 4:19-cv-02033-YGR

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 8, 2019, I was authorized to electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ James M. Wagstaffe*
James M. Wagstaffe