ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
KENNETH J. BLACK (291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
    – and –
MARK SOLOMON (151949)
DANIELLE S. MYERS (259916)
JUAN CARLOS SANCHEZ (301834)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
dmyers@rgrdlaw.com
jsanchez@rgrdlaw.com

Counsel to Interested Party Norfolk County Council
as Administering Authority of the Norfolk Pension Fund

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re APPLE INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>    ALL ACTIONS. | Case No. 4:19-cv-02033-YGR<br><br>CLASS ACTION<br><br>PLAINTIFF NORFOLK PENSION FUND'S REQUEST TO SUBMIT ADDITIONAL BRIEFING IN CONNECTION WITH DEFENDANT APPLE'S MOTION TO DISMISS THE CORRECTED CONSOLIDATED COMPLAINT AND LEAD PLAINTIFF'S OPPOSITION THERETO |

4842-8444-7412.v1

I.      INTRODUCTION

The Opposition (ECF No. 100) to Defendants' Motion to Dismiss (ECF No. 91) ("MTD") fails to adequately address key facts and advance applicable legal theories in an apparent effort to preserve the batterygate Class Period and materialization of the concealed risk theory of loss causation.  Thus, Norfolk Pension Fund requests an opportunity to address the issues of falsity, scienter and loss causation as they apply to the November 1, 2018 misrepresentations.

### A.      The Opposition Fails to Pursue the Strongest Arguments Supporting the Falsity and Scienter of the November 1, 2018 Misrepresentations

The Opposition fails to assert the strongest allegations and legal theories in support of falsity and scienter with respect to Defendants' November 1, 2018 statements concerning the condition of the Company's business in China.  In connection with the Company's FY18 financial results and 1Q19 revenue outlook, investors asked Defendants about "deceleration in . . . emerging markets" as a factor in the revenue forecast.  ¶¶383, 386.[1]  Defendants stated that the Company faced macro-economic uncertainty, particularly in emerging markets, where consumer confidence had declined, but Cook specifically excluded China from this trend: "***I would not put China in that category.  Our business in China was very strong last quarter. . . .  iPhone, in particular, was very strong double-digit growth there***."  ¶¶384, 386.  Similarly, Maestri claimed the Company "had an unprecedented number of products ramping" for the holidays which were going well, with some "uncertainty around supply and demand."  ¶383.  Cook also claimed that the new "***XS and XS Max [iPhones] got off to a really great start***" but Defendants had too little data to evaluate sales of the recently released iPhone XR.  ¶385.

Immediately thereafter, news out of China began to contradict aspects of Defendants' statements.  Apple *did* have data to assess demand for new iPhone models and had already cut orders for the iPhone XR.[2]  On November 5, 2018, *Nikkei* reported that Apple told its largest

---

[1]   All paragraph ("¶__") references are to the Corrected Consolidated and Amended Class Action Complaint for Violation of the Federal Securities Laws (ECF No. 98).  All citations and footnotes are omitted and emphasis is added unless otherwise indicated.

[2]   Apple launched the iPhone XS, XS Max, and XR in ***September and October of 2018***, and as of November 1, 2018 had substantial data about poor sales.  *See* ¶¶227, 261.

manufacturers, Foxconn and Pegatron, to "halt plans for additional [iPhone XR] production lines." ¶¶400-408. *Barron's* reported that Apple directed Foxconn to reduce iPhone XR production lines from a planned 60 to only 45 – down 20%-25% or 100,000 fewer iPhones *per day* than the original outlook. ¶403. Another iPhone manufacturer reportedly would get no iPhone XR orders at all. ¶400. On November 12, 2018, Wells Fargo reported that Apple told top supplier Lumentum "to materially reduce [iPhone] shipments to them during [1Q19]." ¶407. On December 4, 2018, *Bloomberg* reported that "in October," about a month after the iPhone XS went on sale, and again "in the days around the launch of the iPhone XR," Apple shifted marketing staff to "work on bolstering sales of the latest handsets," in what was described as a "fire drill" response to poor iPhone sales. *See* ¶396(e) n.120.

The temporal proximity of these disclosures, only days after the alleged misrepresentations, provides strong evidence of both falsity and scienter, yet the Opposition fails to advance argument or authority in support of this theory of liability. *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985, 988 n.5 (9th Cir. 2008) (disclosure of stop work orders halting work on the Company's largest contract ***just two weeks after the alleged misstatement*** supports strong inference of scienter); *Rihn v. Acadia Pharm. Inc.*, 2016 WL 5076147, at *9 (S.D. Cal. Sept. 19, 2016) ("The closeness in time of the February 26, 2015 representations and the March 11, 2015 disclosure supports an inference that [Defendants] were deliberately reckless . . . ."); *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *3, *15 (C.D. Cal. June 9, 2016) ("The close temporal proximity between [the alleged false statement and subsequent corrective disclosure] supports a strong inference of scienter . . . ."). The Ninth Circuit places even "more weight" on temporal proximity where, like here, no intervening events occur between the misrepresentation and disclosure. *Fecht v. Price Co.*, 70 F.3d 1078, 1083-84 (9th Cir. 1995) (decision to terminate sales expansion program ***more than two months*** after misrepresentations supports scienter).

The Opposition also fails to directly address the even stronger fact that Defendants actually admitted their ***knowledge*** of the true facts directly contradicting their November 1, 2018 statement that China was ***not*** experiencing the macro-economic issues plaguing other emerging markets. On January 2, 2019, Defendants admitted that it was clear that China's economy began to slow in the

second half of 2018 and had been further impacted by rising trade tensions with the United States. ¶410.  The Opposition also fails to advance other key admissions, including Cook's statement that, as part of slowing in China in the second half, "*we saw*" traffic in our retail stores slowing.  ¶411. "*We saw* . . . traffic in our channel partner stores . . . slowing" and "*we saw* . . . reports of the smartphone industry contracting."[3]  *Id.*; *Reese v. Malone*, 747 F.3d 557, 574-75 (9th Cir. 2014) (contradictory disclosures separated by three to six months bolster the inference of scienter); *Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at *11 (C.D. Cal. Feb. 27, 2015) (disclosures six months after misrepresentations support scienter); *see also S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1259 (W.D. Wash. 2009) (Defendants' later admissions support scienter).

**B.  The Opposition Downplays Critical Disclosures Correcting the November 1, 2018 Misrepresentations While Failing to Address Defendants' Substantive Challenges to Loss Causation**

The Opposition fails to directly address Defendants' main challenge to Lead Counsel's materialization of a concealed risk loss causation theory, namely, that batterygate, and its associated financial risk, was not "***concealed***" but rather fully disclosed from December 2017 to January 2018.  *See* MTD at 39.  The question under the materialization of the concealed risk approach to loss causation is whether the "risk that caused the loss was within the zone of risk ***concealed*** by the misrepresentations and omissions." *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1120 (9th Cir. 2013) (emphasis in original).  Here, Defendants cite to multiple reports published in January 2018, disclosing the very risk alleged to have been "concealed."  *See* MTD at 4, 14 n.16.  A January 3, 2018 *Barclays* report, "$29 Battery Replacement: Good PR Move, Might Not Be So Good For Units," warned investors that "16 [million] iPhone units could ***be at risk in [2018] due to the battery replacement offer***."  ECF No. 92-1 at 377; *see also id.* at 474 (Apple "***stands to lose iPhone sales worth over $10 billion***" due to $29 battery replacement discount to address battery controversy).  A January 3, 2018 *Business Insider* article, "Apple's battery controversy could cost the company over $10 billion in lost iPhone

---

[3]  According to Defendant Cook, these traffic declines were "particularly bad in November" and he also conceded "I haven't seen the December [traffic] number yet" – further confirming that the reported declines occurred in November 2018 ***or earlier***.  *Id.*

sales," stated that "'[e]ven a small percentage opting for battery replacement over upgrade could have meaningful impact on iPhone sales.'" ECF No. 37-3 at 4.

The Opposition sidesteps *all* these facts, deeming the disclosures irrelevant because the risks were reported by market analysts rather than the Company. Opp. at 21 n.11. However, "[a] corrective disclosure can come from any source and can take any form from which the market can absorb [the information] and react, so long as it 'reveal[s] to the market the falsity' of the prior misstatements." *Pub. Emps.' Ret. Syst. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 321 (5th Cir. 2014); *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 175 n.4 (2d Cir. 2005); *Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229, 243 (1st Cir. 2013) (contemporaneous analyst reports can represent market's understanding); *In re Terravia Holdings, Inc., Sec. Litig.*, 2020 WL 553939, at *8 (N.D. Cal. Feb. 4, 2020) (Donato, J.) (*Bloomberg* article disclosing prior concealed facts sufficient to allege loss causation); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 264 n.32 (5th Cir. 2009) (requiring a confession from Defendant to plead loss causation is ***inconsistent*** with Rule 8 or *Dura*). The Opposition's failure to address this law and these facts places the entire Class Period at risk, regardless of its length or definition.

Indeed, as Norfolk was concerned would happen based on Lead Plaintiff's trading history in Apple stock, the Opposition appears to intentionally deemphasize certain January 2, 2019 admissions concerning the true business conditions in China – *i.e.*, the original theory of the case – to preserve the materialization of the concealed risk loss causation theory. The Opposition inverts the import of the disclosures to make it appear that the 1Q19 revenue and earnings miss was driven by batterygate. *See* Opp. at 10; *see also id.* at 21 ("Apple missed its already-disappointing guidance range ***because customers taking advantage of the battery replacement program led (in part) to fewer iPhone upgrade rates***."). ¶¶410-13. A simple review of Cook's January 2, 2019 shareholder letter exposes this distortion:

- *Most of our revenue shortfall to our guidance occurred in Greater China*. ¶410.
- *100% of our [1Q] year-over-year worldwide revenue decline occurred in Greater China*. *Id*.
- *iPhone revenue primarily in Greater China accounts for all our revenue shortfall to our guidance*. *Id*.

These disclosures were directly contrary to the November 1, 2018 misrepresentations and constitute classic corrective disclosures. *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2741 (2019).  These disclosures also undermine the materialization of the concealed risk theory as disappointing "iPhone upgrades," were not reported to have occurred in Greater China, where the Company suffered "100 percent of our year-over-year worldwide revenue decline" and "the vast majority of the year-over-year iPhone revenue decline."  *See* ¶410.  Rather, the iPhone upgrades slowdown occurred in "developed markets."  *Id*. ("*in some developed markets, iPhone upgrades also were not as strong as we thought they would be*").

### C. Lead Counsel's Argument to This Court that a China Demand Theory Would Be Asserted as of July 31, 2018 Is Irrelevant

On August 13, 2019, Lead Counsel argued that, even if its batterygate theory was dismissed, it would assert a China demand theory beginning in July 2018 (as opposed to November 1, 2018, as alleged by Norfolk) that would preserve its client's status as the lead plaintiff with the largest loss.  ECF No. 73 at 9, 11-12.  While the Complaint asserts that a July 31, 2018 press release and conference call were false and misleading (¶349) – both took place *after* market close.  Yet, Lead Plaintiff purchased shares of Apple stock on July 31, 2018 at $190.29 per share – the price *prior to* market close.[4]  ECF No. 27-1 at 4.  Thus, even if the Court were to start the Class Period on this date (though Lead Counsel makes no substantive arguments in support thereof), Lead Plaintiff could not have relied on the July 31, 2018 alleged misrepresentations or suffered any recoverable losses from that purchase in a class period beginning with the after-hours misrepresentations because it purchased stock *before* the statements were made.

DATED:  February 7, 2020

                                          s/ Shawn A. Williams
                                          SHAWN A. WILLIAMS

---

[4]   Per Lead Counsel, "for the period of July 31, 2018 through January 2nd, 2019" Lead Plaintiff claimed a loss of $4 million due to a July 31 purchase of 230,400 shares.  ECF No. 73 at 11-12.

|   |   |
|---|---|
| 1 |  |
| 2 | ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>SHAWN A. WILLIAMS |
| 3 | DANIEL J. PFEFFERBAUM<br>KENNETH J. BLACK |
| 4 | Post Montgomery Center<br>One Montgomery Street, Suite 1800 |
| 5 | San Francisco, CA  94104<br>Telephone:  415/288-4545 |
| 6 | 415/288-4534 (fax)<br>shawnw@rgrdlaw.com |
| 7 | dpfefferbaum@rgrdlaw.com<br>kennyb@rgrdalw.com |
| 8 |  |
| 9 | ROBBINS GELLER RUDMAN<br>  & DOWD LLP |
| 10 | MARK SOLOMON<br>DANIELLE S. MYERS |
| 11 | JUAN CARLOS SANCHEZ<br>655 West Broadway, Suite 1900 |
| 12 | San Diego, CA  92101<br>Telephone:  619/231-1058 |
| 13 | 619/231-7423 (fax)<br>marks@rgrdlaw.com |
| 14 | dmyers@rgrdlaw.com<br>jsanchez@rgrdlaw.com |
| 15 | Counsel to Interested Party Norfolk County |
| 16 | Council as Administering Authority of the<br>Norfolk Pension Fund |
| 17 |  |
| 18 |  |
| 19 |  |
| 20 |  |
| 21 |  |
| 22 |  |
| 23 |  |
| 24 |  |
| 25 |  |
| 26 |  |
| 27 |  |
| 28 |  |

PLAINTIFF'S REQ TO SUBMIT ADD'L BRIEFING IN CONN'N W/ DEF'S MTD THE
CONSOLIDATED CPT AND LEAD PLAINTIFF'S OPP THERETO - 4:19-cv-02033-YGR   - 6 -
4842-8444-7412.v1

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on February 7, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

      s/ Shawn A. Williams
SHAWN A. WILLIAMS
ROBBINS GELLER RUDMAN
      & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:  shawnw@rgrdlaw.com

4842-8444-7412.v1

# Mailing Information for a Case 4:19-cv-02033-YGR IN RE APPLE INC. SECURITIES LITIGATION

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Adam Marc Apton**
  aapton@zlk.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com

- **Frank H. Busch**
  busch@wvbrlaw.com,pallister@wvbrlaw.com,barnes@wvbrlaw.com

- **Christine M. Fox**
  cfox@labaton.com,ndonlon@labaton.com,lpina@labaton.com,electroniccasefilings@labaton.com,fmalonzo@labaton.com,6312349420@filings.docketbird.com

- **Melinda Haag**
  mhaag@orrick.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **James Neil Kramer**
  jkramer@orrick.com,lpatts@orrick.com,mwatkins@orrick.com,vmorse@orrick.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,lpvega@pomlaw.com

- **Francis P. McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,egoodman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Mark Solomon**
  marks@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Alexander K. Talarides**
  atalarides@orrick.com,lpatts@orrick.com,casestream@ecf.courtdrive.com

- **Carol C. Villegas**
  cvillegas@labaton.com,ndonlon@labaton.com,5739893420@filings.docketbird.com,lpina@labaton.com,jchristie@labaton.com,acoquin@labaton.com,fmalonzo@laba

- **James Matthew Wagstaffe**
  wagstaffe@wvbrlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,smorris@rgrdlaw.com,kennyb@rgrdlaw.com,e_file_sd@rgrdlaw.com,smorris@ecf.courtdrive.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`