MELINDA L. HAAG (SBN 132612)
mhaag@orrick.com
JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
ALEXANDER K. TALARIDES (SBN 268068)
atalarides@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     (415) 773-5700
Facsimile:     (415) 773-5759

Attorneys for Defendants Apple Inc.,
Timothy Cook, and Luca Maestri

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | Civil Action No. 4:19-cv-02033-YGR |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| | Date:     March 10, 2020<br>Time:     2:00 p.m.<br>Judge:    Honorable Yvonne Gonzalez Rogers<br>Ctrm:     1, 4th Floor |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     THE CAC SHOULD BE DISMISSED BECAUSE IT IS PUZZLE PLED ...................... 2

III.    THE CAC ALSO SHOULD BE DISMISSED BECAUSE IT DOES NOT
        ALLEGE A MATERIAL MISSTATEMENT OR OMISSION ........................................ 2

        A.      Accurate Statements of Historical Fact Are Not Actionable .................................. 3

        B.      Forward-Looking Statements Are Protected by the PSLRA Safe Harbor ............. 6

        C.      Statements of Corporate Optimism are Not Actionable .......................................... 7

        D.      The Alleged Statements of Opinion and Belief Are Not Actionable ..................... 8

        E.      Apple's Risk Warnings Were Not Misleading ......................................................... 9

        F.      The Opposition's Remaining Misstatement Arguments Fail ................................. 10

IV.     THE CAC DOES NOT ALLEGE A STRONG INFERENCE OF SCIENTER ............. 12

        A.      Plaintiff Does Not Dispute That the CWs Had No Contact With Defendants ...... 12

        B.      The Stock Sales Allegations Do Not Support a Strong Inference of Scienter ...... 14

        C.      The Core Operations Doctrine Does Not Apply .................................................. 15

        D.      The Opposition's Remaining Scienter Arguments Fail ........................................ 17

        E.      The Innocent Inferences Far Outweigh Any Possible Inference of Scienter ........ 17

V.      THE CAC DOES NOT ALLEGE LOSS CAUSATION ............................................... 18

VI.     NORFOLK PENSION FUND'S BRIEF DOES NOT CHANGE THE ANALYSIS ...... 19

VII.    CONCLUSION .............................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                  **Page(s)**

*In re Accuray, Inc. Sec. Litig.,*
   757 F. Supp. 2d 936 (N.D. Cal. 2010) ......................................................................13

*Berson v. Applied Signal Tech., Inc.,*
   527 F.3d 982 (9th Cir. 2008).............................................................................4, 16

*Brody v. Transitional Hosps. Corp.,*
   280 F.3d 997 (9th Cir. 2002)........................................................................1, 3, 11

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,*
   856 F.3d 605 (9th Cir. 2017)..............................................................................20

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.,*
   2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) .........................................4, 5, 6, 14

*In re Intel Corp. Sec. Litig.,*
   2019 WL 1427660 (N.D. Cal. Mar. 29, 2019) ........................................................10

*Khoja v. Orexigen Therapeutics, Inc.,*
   899 F.3d 988 (9th Cir. 2018)..................................................................................5

*Kovtun v. VIVUS, Inc.,*
   2012 WL 4477647 (N.D. Cal. Sept. 27, 2012) .......................................................15

*Lipton v. Pathogenesis Corp.,*
   284 F.3d 1027 (9th Cir. 2002)...............................................................................15

*Lu v. Align Tech., Inc.,*
   2019 WL 5579520 (N.D. Cal. Oct. 29, 2019) ........................................................14

*McCasland v. FormFactor, Inc.,*
   2009 WL 2086168 (N.D. Cal. July 14, 2009) ........................................................13

*Metzler Inv. GMBH v. Corinthian Colls., Inc.,*
   540 F.3d 1049 (9th Cir. 2008)..........................................................................14, 15

*Murphy v. Precision Castparts Corp.,*
   2017 WL 3084274 (D. Or. June 27, 2017) ..........................................................2, 5

*In re Netflix Sec. Litig.,*
   964 F. Supp. 2d 1188 (N.D. Cal. 2013) ...................................................................4

*Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.,*
   774 F.3d 598 (9th Cir. 2014)..................................................................................13

*Police & Fire Ret. Sys. of the City of Detroit v. Crane*,
   87 F. Supp. 3d 1075 (N.D. Cal. 2015) ......................................................................5

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ...............................................................13, 16, 17

*Ret. Sys. v. YPF Sociedad Anonima*,
   15 F. Supp. 3d 336 (S.D.N.Y. 2014) ......................................................................19

*Rodriguez v. Gigamon, Inc.*,
   325 F. Supp. 3d 1041 (N.D. Cal. 2018) .................................................................15

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) ..................................................................................11

*Schneider v. Cal. Dep't of Corr.*,
   151 F.3d 1194 (9th Cir. 1988) ..................................................................................2

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) .............................................................................14, 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ................................................................................................17

*Veal v. LendingClub Corp.*,
   2019 WL 5698072 (N.D. Cal. Nov. 4, 2019) ........................................................13

*In re Viropharma Inc. Sec. Litig.*,
   21 F. Supp. 3d 458 (E.D. Pa. 2014) .......................................................................18

*Yourish v. Cal. Amplifier*,
   191 F.3d 983 (9th Cir. 1999) ........................................................................8, 11, 20

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) .............................................................................16, 17

**Statutes and Rules**

17 C.F.R.
   § 10b5–1 ...........................................................................................................14, 15

Fed. R. Civ. R.
   Rule 12(b)(6) ............................................................................................................2

4132-4479-7729.5

1    **I.    INTRODUCTION**

2           As set forth in Defendants' Motion to Dismiss (the "Motion"), the Consolidated Amended

3    Complaint ("CAC") should be dismissed at the outset because its puzzle-pled allegations are

4    almost impossible to follow.  When coupled with Plaintiff's 60-page "Supplemental Chart" (Dkt.

5    No. 88, the "Chart")—which does *not* "strictly adhere to the allegations in [the] operative

6    complaint" (Dkt. No. 87), but instead attempts to cure the CAC's puzzle pleading—Plaintiff's

7    allegations become even more confused, and require dismissal based solely on the discrepancy

8    between the two documents.

9           The Motion further demonstrates that, all confusion aside, the CAC also does not allege

10   that any Defendant made an affirmatively misleading statement or omission.  Indeed, Plaintiff's

11   Opposition to the Motion to Dismiss (the "Opposition" or "Opp.") admits that Defendants'

12   statements were "technically accurate" when made (*id.* at 13), but now asserts that they are

13   nonetheless actionable because they contained "*inherent* [false] representations about the quality

14   and sustainability" of iPhone sales (*id.* at 14 (emphasis added)).  But as a matter of law, a

15   statements or omissions are actionable only if they "*affirmatively* create" a false impression,

16   *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (emphasis added), which

17   the challenged statements indisputably did not do.  The Opposition also argues that Defendants'

18   statements were misleading because they failed to disclose Apple's *failing* business, but that

19   argument ignores the judicially noticeable documents showing that Apple's business actually

20   *improved* year-over-year for every quarter of the Class Period until the final quarter.  In short,

21   there is no material misstatement alleged in the CAC, and it should be dismissed on that ground.

22          The CAC also should be dismissed because it fails to plead the requisite "strong

23   inference" of scienter.  The Opposition effectively concedes that none of Plaintiff's confidential

24   witnesses ("CWs") has *any* firsthand knowledge of the Individual Defendants' mental states.

25   And none of Plaintiff's other allegations even suggest, let alone establish the required strong

26   inference, that Defendants acted with fraudulent intent.  To the contrary, the judicially noticeable

27   facts—including the fact that Apple spent ***$88 billion*** to buy back its own stock when the stock

28   price was allegedly fraudulently inflated—are fundamentally inconsistent with scienter.

For these reasons and other reasons discussed below, the CAC should be dismissed.

## II.   THE CAC SHOULD BE DISMISSED BECAUSE IT IS PUZZLE PLED

As set forth in Defendants' Motion, the CAC should be dismissed at the outset because it does not satisfy the PSLRA's requirement to specify the reasons why each alleged misstatement was materially misleading when made.   *See* Mot. at 8-9.   Plaintiff disagrees, noting that Defendants must have been able to follow the CAC's allegations because they spent "20 pages of their Motion identifying the alleged false and misleading statements and arguing that they are not actionable."   Opp. at 11.   Plaintiff forgets, however, that Defendants' Motion was drafted with reference to Plaintiff's Chart, which, unlike the CAC, actually enumerates the specific reasons why each alleged misstatement is purportedly false.[1]   Absent the Chart (which cannot be used to cure the CAC's defects[2]), Defendants and the Court would have been left to guess which of the many listed reasons for alleged falsity applied to any given alleged misstatement.   *Compare* CAC ¶ 338 (listing *five* reasons why the misstatements alleged in CAC ¶ 325 were false), *with* Chart at #30 (citing CAC ¶ 338(a) and (d) as the only *two* reasons why the misstatements alleged in CAC ¶ 325 were false).   In other words, without the Chart, the CAC would "shift[] responsibility to defendants and the court to match alleged misleading statements with reasons for the falsity," *Murphy v. Precision Castparts Corp.*, 2017 WL 3084274, at *7 (D. Or. June 27, 2017), and therefore should be dismissed on that basis alone.   *See* Motion at 8 (citing cases).

## III.   THE CAC ALSO SHOULD BE DISMISSED BECAUSE IT DOES NOT ALLEGE A MATERIAL MISSTATEMENT OR OMISSION

Even if Plaintiff's Chart could cure the CAC's puzzle pleading (and it cannot), the Motion demonstrates that the CAC would still fail to allege a material misstatement or omission. Mot. at 9-28.   The Opposition now admits that Defendants' factual disclosures were "technically accurate" (Opp. at 13) but argues that Defendants are nonetheless liable for allegedly making misleading "inherent representations," and for failing to disclose "sustainability," *i.e.*, predict the

---

[1] As noted in the Motion, Plaintiff's Chart plainly violates the Court's order requiring the Chart to "*strictly adhere* to the allegations in the operative complaint."   *See* Dkt. No. 87 (emphasis added).
[2] *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1988) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's [] papers, such as memorandum in opposition to a defendant's motion to dismiss.").

DEFENDANTS' REPLY ISO MOTION TO DISMISS CAC |
(C.A. NO. 4:19-CV-02033-YGR)

1    future.  As discussed below, those arguments fail as a matter of law.

2         **A.    Accurate Statements of Historical Fact Are Not Actionable**

3         The Motion shows that Defendants' accurate statements of historical fact regarding

4    growth, demand, and Apple's business in China cannot form the basis for securities liability.

5    Mot. at 9-16.  As noted above, the Opposition admits that Defendants' challenged statements of

6    fact are "technically accurate" (Opp. 13), but argues they are nonetheless misleading because they

7    contain "inherent representations about the quality and sustainability" of the historical results

8    being reported (*id.* at 14).  As Plaintiff would have it, those "inherent representations" effectively

9    touted Apple's continued success, and when "a company chooses to tout positive information, it

10   must also 'disclos[e] adverse information that cuts against the positive information.'"  *Id.* at 12

11   (citing *Schueneman v. Area Pharm., Inc.*, 840 F.3d 698, 706 (9th Cir. 2016)).

12        As the Motion shows, however, an omission cannot be actionable under the federal

13   securities laws unless it "*affirmatively* create[s] an impression of a state of affairs that differs in a

14   material way from the one that actually exists."  *See* Mot. at 10 (citing *Brody*, 280 F.3d at 1006

15   (emphasis added)).  Here, the challenged statements regarding historically "strong demand" for

16   iPhone sales (CAC ¶ 271), for example, "neither stated nor implied anything" regarding the

17   *reasons* for that demand, *Brody*, 280 F.3d at 1006, and therefore were not rendered misleading by

18   failure to disclose the alleged "true reasons" for the demand.  *See* Mot. at 10 (citing *Mar. Asset*

19   *Mgmt., LLC v. NeurogesX, Inc.*, 2013 WL 5442394, at *7 (N.D. Cal. Sept. 30, 2013)).

20        Not surprisingly, the Opposition does not cite any decision that has recognized or applied

21   Plaintiff's "inherent representation" theory.  *See* Opp. at 12-15.  To the contrary, the cases cited

22   by the Opposition uniformly hold that statements become misleading only where they

23   *affirmatively* tout positive information to the market without disclosing adverse information.[3]

---

24   [3] *See* Opp. at 12-15 (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1010 (9th Cir.
     2018) ("once Orexigen chose to tout the apparently positive 25 percent interim results, Orexigen
25   had the obligation also to disclose that they were likely unreliable"); *Schueneman*, 840 F.3d at
     708 (defendant liable where it "affirmatively represented that 'all the animal studies that had been
26   completed' supported [defendant's] case for approval" when it "knew that the animal studies
     were the sticking point with the FDA"); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987
27   (9th Cir. 2008) ("once defendants chose to tout the company's backlog, they were bound to do so
     in a manner that wouldn't mislead investors as to what that backlog consisted of"); *Murphy*, 2017
28   WL 3084274, at *9 (defendant liable where he "explained that 'organic growth was moving in the

DEFENDANTS' REPLY ISO MOTION TO DISMISS CAC |
(C.A. NO. 4:19-CV-02033-YGR)

Here, by stark contrast, none of the challenged statements "touted" or said anything *at all* about the allegedly undisclosed information, and thus cannot be said to have "affirmatively misled" in that regard. *See, e.g.*, *In re Netflix Sec. Litig.*, 964 F. Supp. 2d 1188, 1192-93 (N.D. Cal. 2013) (noting that if the defendant in *Berson* had not "touted its backlogged contracts as a source of value . . . it could have avoided [] a duty" to disclose that certain of those contracts were "subject to stop-work orders that would not result in any value for the company").[4]

Judge Freeman recently considered and dismissed similar allegations in *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *12 (N.D. Cal. Dec. 17, 2019). Like here, the plaintiff in that case alleged that Oracle's accurate statements about historical Cloud revenue and growth were misleading because the revenue being reported was the product of "financially engineered deals," not "true Cloud sales," and was therefore "artificial" and "not sustainable." *Id.* at *5. Like here, plaintiff there asserted that "once Defendants chose to tout the growth in Cloud sales, they were 'obligated to share information that diminished the weight of those results, including that results were driven by coerced and artificial sales, and did not represent true customer demand.'" *Id.* at *11.

Judge Freeman rejected those arguments for the same reasons discussed above. Noting that "[i]n order to be actionable, an omission must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists," *id.* at *12 (citation omitted), Judge Freeman held that "when Defendants discussed Oracle's Cloud revenue growth generally and *absent an affirmative representation* by Defendants regarding Oracle's allegedly

---

right direction,' without disclosing that a material portion of that growth resulted from an unsustainable practice of pulling in sales."); *Police & Fire Ret. Sys. of the City of Detroit v. Crane*, 87 F. Supp. 3d 1075 (N.D. Cal. 2015) (defendants liable where they compared their revenue numbers between quarters and affirmatively "passed this off as an apples-to-apples comparison," when in reality, the company's numbers were "the product of a significant change" in how the revenue was recognized)).

[4] The Opposition asserts that Defendants "actively misled investors" and then selectively quotes Mr. Cook's statement "I think the upgrade rate is a function of [many] different things" to delete the "I think" and present the remainder as an affirmative statement of fact. *See* Opp. at 13 ("Defendants [] actively misled investor about the drivers of iPhone demand stating, for instance, that the 'upgrade rate is a function of many, many different things' and listing certain examples . . . without disclosing the upgrade rate was actually artificially accelerated . . ."). Mr. Cook's statement was an obvious statement of opinion (*see* Mot. at 21-22), and Plaintiff's decision to misrepresent it as an "actively misl[eading]" statement of fact (Opp. at 13) speaks volumes.

1   coercive Sales Practice or attribution of Cloud revenue to other factors . . . they had no duty to

2   disclose the Sales Practices." *Id.* (emphasis added) (citing *Brody*, 280 F.3d at 1006).  Judge

3   Freeman also considered and distinguished many of the cases Plaintiff cites in the Opposition

4   here (*see* Opp. at 12-15) for the same reasons discussed in footnote 3, above—namely, because

5   each of those cases involved *affirmatively* misleading statements. *See City of Sunrise*, 2019 WL

6   6877195, at *12-14 (addressing *Crane*, *Precision Castparts* and *Orexigen*, among others).

7        Further, while plaintiff in *City of Sunrise* alleged that defendants were required to disclose

8   that Oracle's allegedly "artificial" sales were "not sustainable," *id.* at *5, Judge Freeman held that

9   plaintiff's allegations "in effect call[ed] on Oracle to predict futures sales (*i.e.*, sustained growth),

10  and such allegations do not state a claim under the securities laws." *Id.* at *11 (citing *In re

11  Verifone Sec. Litig.*, 784 F. Supp. 1471, 1485 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir.

12  1993)).  In short, because Oracle "sold real products for real money" and its "revenues were

13  accurately reported," the alleged failure to disclose that Oracle's sales were "artificial" and "not

14  sustainable" was not actionable. *Id*. at *13 (citing *In re Redback Networks, Inc. Sec. Litig.*, 2007

15  WL 4259464, at *3 (N.D. Cal. Dec. 4, 2007), *aff'd*, 329 F. App'x 715 (9th Cir. 2009)).

16       Those principles operate here to demonstrate why the Opposition's arguments fail as a

17  matter of law.  For example, while the Opposition asserts that Defendants' accurate statements

18  about historical sales, growth, and iPhone upgrades (*see* CAC ¶¶ 270-71, 273, 276, 285-88, 296-

19  99, 302, 204, 325-27, 330, 350-51, 354, 388) were misleading because they failed "to disclose the

20  true drivers of those results" (*see* Opp. at 12-15, 18-21), the challenged statements "neither stated

21  nor implied" anything regarding the drivers of those results, and thus are not affirmatively

22  misleading in that regard. *See* Mot. at 9-15 (citing *Brody*, 280 F.3d at 1006).  Defendants were

23  therefore "not under an independent obligation to disclose" the information Plaintiff asserts was

24  omitted. *City of Sunrise*, 2019 WL 6877195, at *12.  Likewise, the Opposition argues that the

25  challenged statements regarding iPhone demand were misleading because they failed to disclose

26  the battery replacement program "would negatively impact demand for the next generation[s] of

27  iPhones."  Opp. at 19-20 (citing CAC ¶ 351). But as Judge Freeman held, an allegation that

28  defendants were required to disclose the negative impact on *future* sales "in effect call[s] on

                                           5
                                                    (C.A. NO. 4:19-CV-02033-YGR)

1    [defendants] to predict futures sales (*i.e.*, sustained growth), and such allegations do not state a

2    claim under the securities laws." *City of Sunrise*, 2019 WL 6877195, at *11.

3         The same analysis holds true for the challenged statements of historical fact regarding

4    Apple's business in China.  *See* CAC ¶¶ 272, 275, 286-87, 298, 304, 325, 327, 330, 332, 354,

5    386.  The Opposition argues these statements were misleading because they failed to "disclose

6    that demand for iPhones in the region had been driven by artificially accelerated upgrade rates as

7    a result of intentional throttling and also that iPhone demand in Greater China was deteriorating."

8    Opp. at 22.  But as before, the challenged statements do not reference or refer to the reasons for

9    upgrade rates, make no promises about the future of demand in Greater China, and thus are not

10   affirmatively misleading.[5]  Like Oracle in *City of Sunrise*, Apple "sold real products for real

11   money" and its China results "were accurately reported," so the alleged omissions are not

12   actionable or misleading.  *City of Sunrise*, 2019 WL 6877195, at *13 (citation omitted).

13        **B.    Forward-Looking Statements Are Protected by the PSLRA Safe Harbor**

14        The Motion explains that the forward-looking statements challenged by the CAC (*see*

15   CAC ¶¶ 272-76, 302, 304, 328-29, 332, 346, 352, 354) are not actionable because they are all

16   accompanied by meaningful cautionary language and fall within the PSLRA safe harbor.  *See*

17   Mot. at 16-19 (citing *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010)).  As to

18   forward-looking statements that Plaintiff claims were *not* accompanied by meaningful cautionary

19   language, the CAC fails to allege any specific facts that establish any defendant had actual

20   knowledge that any forward-looking statement was false when made.  *Id.* at 19 (citing *In re*

21   *Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1070 (N.D. Cal. 2001)).  The

22   Opposition concedes the applicability of the safe harbor, but argues that certain portions of the

23   challenged forward-looking statements "are based on representations of historical and/or current

---

[5] The Opposition cites the testimony of Confidential Witnesses to argue that Defendants' statements about growth were misleading because "Defendants meticulously tracked point of sales data for the iPhone . . . and *knew that sales growth was stalling*." Opp. at 22 (emphasis added).  But even if the CAC contained specific allegations to make that showing, and it does not (there are no allegations *at all* regarding *any* Defendant's knowledge), the challenged statements about historical growth still would not be misleading because Defendants were under no obligation to predict the future of sales growth in China (*see* Mot. at 11 (citing *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1406 (9th Cir. 1996))), and their statements were "not inconsistent" with the possibility of declining future demand in any event (*see id.* at 15).

DEFENDANTS' REPLY ISO MOTION TO DISMISS CAC |
(C.A. NO. 4:19-CV-02033-YGR)

4132-4479-7729.5

1   facts," and therefore are "not covered by the safe harbor provision."  *See* Opp. at 25-26 (citation

2   omitted).  For example, the Opposition notes that by saying that "performance in China . . . will

3   continue to improve" (CAC ¶ 275), Defendants were expressing "that performance has *already*

4   *been improving*—i.e., a statement of historical fact."  Opp. at 26 (emphasis added).

5          But the Opposition misses the point.  Defendants agree that the PSLRA safe harbor

6   shields only *forward-looking* statements.  *See* Mot. at 16.  But even if certain present-fact portions

7   of the challenged forward-looking statements are not shielded by the PSLRA safe harbor, they are

8   also not specifically alleged to be misleading when made.  *Id.* at 10-11.  With reference to the

9   Opposition's example, Mr. Maestri's statement averred in CAC ¶ 275 ("I think, in general, even

10  the performance in China, Tim has mentioned it, we think that the performance will continue to

11  improve") was made in reference to an earlier statement by Mr. Cook that "in constant-currency

12  terms, [Apple was] up 6% in Mainland China" for the quarter, which is to say that Mr. Maestri's

13  statement *was true*—performance *had been improving* in that regard.  *See* CAC ¶ 272.  The CAC

14  alleges nothing to the contrary.

15         That same analysis applies to the other forward-looking statements cited by the

16  Opposition, none of which are specifically alleged to contain misleading historical and/or current

17  facts.  *See* Opp. at 26-27 (citing CAC ¶¶ 273, 276, 304).  To the extent the Opposition argues

18  those historical and/or current facts were misleading because "Defendants failed to disclose to

19  investors that [Apple's historical results] were artificially inflated" (*id.* at 27, 28), that argument

20  fails for the reasons discussed in Section B above.

21         **C.     Statements of Corporate Optimism are Not Actionable**

22         The Motion further demonstrates that the generalized statements of corporate optimism

23  challenged by the CAC are not actionable as a matter of law.  Mot at 19-21.  The Opposition

24  concedes the Motion's showing, but argues (as it does with regard to forward-looking statements)

25  that when the challenged statements of optimism are read in context, they are revealed to contain

26  "concrete description[s] of the past and present," and are therefore actionable.  Opp. at 30

27  (citation omitted).  As an example, the Opposition cites Mr. Cook's challenged statement "we're

28  very encouraged by that" (CAC ¶ 272), cites his preceding statement "We were actually up 6% in

1    Mainland China," and concludes that Mr. Cook was "stating the Company is 'encouraged' by
2    Apple's actual results."  Opp. at 30.  As Plaintiff would have it, Mr. Cook's statement about being
3    "encouraged" is thus "not mere corporate optimism" and is therefore actionable.  *Id.*

4         As before, however, that argument misses the point, because even if Mr. Cook's statement
5    about being "encouraged" is not considered corporate optimism (and it is), it is also not alleged to
6    be false when made.  The CAC does not contain any allegations to show that Apple was not "up
7    6% in mainland China" when Mr. Cook made the statement, or that Mr. Cook was not
8    "encouraged" by that fact, and thus it is irrelevant whether the statement is considered puffery—it
9    cannot form the basis for liability.  *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir.
10   1999).  Likewise, while the Opposition insists that Mr. Maestri's optimistic comment regarding
11   "strong demand for iPhone 7 plus," when read in context, was actually "explaining that strong
12   iPhone 7 demand contributed to higher ASP for the iPhone than for the same period in the prior
13   year" (Opp. at 30 (citing CAC ¶ 271)), it makes no difference for purposes of this Motion,
14   because the CAC does not (and cannot) allege that strong iPhone demand did *not* contribute to
15   higher ASP year-over-year, and thus fails to allege the statement was materially misleading.

16        **D.    The Alleged Statements of Opinion and Belief Are Not Actionable**

17        The Motion shows that the challenged statements of opinion and belief are not actionable
18   because the CAC does not allege specific facts to show "*both* that 'the speaker did not hold the
19   belief she professed' and 'that the belief is objectively untrue.'"  Mot. at 22 (citing *City of
20   Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc*., 856 F.3d 605, 615-16 (9th
21   Cir. 2017)).  The Opposition largely concedes the Motion's showing, but argues that when the
22   challenged statements are read in context, some of them "are not actually statements of opinion
23   and belief, but instead contain factual representations at their core.'"  Opp. at 31 (citation and
24   internal quotes omitted).  The Opposition does not identify which statements fall into that
25   category, or why, but it does not matter in any event, because as before, the CAC does not
26   specifically allege that the purported "factual representations" are misleading.  *See* Mot. at 21-22.

27        The Opposition further argues that even as to the challenged "statements that are arguably
28   statements of opinion," the CAC states a claim because it "identif[ies] particular (and material)

8

4132-4479-7729.5

facts going to the basis of the issuer's opinion . . . whose omission makes the opinion statement at issue misleading."  Opp. at 31.  Yet the Opposition does not cite to where in the CAC those allegations purportedly exist, because, of course, they do not.  *See id.*  As the Motion demonstrates (and the Opposition does not contest), the CAC does not allege *any* facts, specific or otherwise, to show what *any* Individual Defendant knew and when, and thus cannot establish what subjective belief any Individual Defendant held at the time any of the challenged statements were made.  *See* Mot. at 21-22.  For example, while the CAC challenges Mr. Maestri's August 1, 2017 statement "I think that the upgrade rate is a function of many, many different things" (CAC ¶ 27; Opp. at 13), the CAC does not contain any allegations, specific or otherwise, to show that Mr. Maestri did not actually believe "the upgrade rate [was] the function of many, many different things," let alone specific allegations to show his belief was "objectively untrue."  His statement of opinion therefore cannot form the basis for securities liability.  *See* Mot. at 21-22.

E.     **Apple's Risk Warnings Were Not Misleading**

The Motion shows that Apple's risk warnings were not misleading because (i) they were abundant and specific, and thus put the investing public on notice of the warned-about risks, and (ii) they were not affirmatively misleading or inconsistent with the allegedly undisclosed information.  *See* Mot. at 22-23.  In response, the Opposition asserts the risk warnings were nonetheless misleading because the risks they warned about had purportedly already materialized.  Opp. at 24.  As an example, the Opposition cites the warning that "Global markets for the Company's products and services are highly competitive . . . and the Company may be unable to compete effectively in these markets" (CAC ¶ 279; Opp. at 24) and asserts it was misleading because "Chinese smartphone competitors were already taking market share from Apple in China."  Opp. at 24 (citing CAC ¶¶ 315, 93-108).

Plaintiff's argument fails, however, because the challenged risk disclosure warned about Apple's ability to "compete effectively" in global markets, *not* about whether the Company might lose market share in China.  CAC ¶¶ 313, 279.  In other words, Apple's alleged loss of market share in China does not render the challenged risk warning actionable, because the warning is not affirmatively misleading about (or inconsistent with) the possibility of a loss of market share in

1    China.  *See* Mot. at 22-24.  The Opposition offers no meaningful response to the Motion's other

2    arguments regarding the challenged risk disclosures.  *Id.*

3              **F.       The Opposition's Remaining Misstatement Arguments Fail**

4              As the Motion explains, the challenged statement in Apple's February 2, 2018 letter to

5    Congress—new iPhones "include hardware updates that allow" them "to anticipate and avoid an

6    unexpected shutdown" (CAC ¶¶ 164, 317)—cannot form the basis for liability for three reasons:

7    (i) it was not affirmatively misleading (or inconsistent with the allegedly undisclosed

8    information), (ii) it was not made "in connection with a purchase or sale of a security," but in

9    response to questions from Congress, and (iii) it is shielded by the *Noerr-Pennington* doctrine,

10   which protects statements to Congress.  *See* Mot. at 24-25.  In response, the Opposition makes the

11   utterly conclusory argument that the statement was misleading because it "led the market to

12   believe that . . . Apple would no longer need to throttle iPhones."  Opp. at 17.  Yet the statement

13   itself says new hardware innovations would help "avoid" shutdowns, not cure them entirely, and

14   plainly does not affirmatively "promise" that Apple "would not need to throttle later generations

15   of iPhones," as asserted in the CAC (at ¶ 137).  Further, while the Opposition argues Apple's

16   letter to Congress was "made in connection with the purchase or sale of a security" because it was

17   "*appreciated* by the investment community" (Opp. at 17), to state a claim the CAC was required

18   to allege "[the statements] were *directly targeted* to investors or the investment community," *In re*

19   *Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *11 n.14 (N.D. Cal. Mar. 29, 2019), a requirement

20   the CAC cannot meet.[6]  Finally, while the Opposition asserts the *Noerr-Pennington* doctrine does

21   not apply to "false statements of fact," the CAC does not specifically allege the challenged

22   statement was false, and thus the doctrine applies to shield Apple from liability.  *See* Mot. at 24.

23             The Motion also shows that Apple's repeated Form 10-Q disclosure that "there have been

24   no material changes to the Company's market risk" (*see, e.g.*, CAC ¶ 312) defines "market risk"

25   to mean "interest rate and foreign currency risks" (*see* Ex. 20 at 36), and thus could not be

---

26   [6] *See Intel,* 2019 WL 1427660, at *11 n.14 (citing *Di Donato v. Insys Therapeutics Inc.*, 2017 WL
     3268797, at *16 (D. Ariz. Aug. 1, 2017) (holding that statements "are not actionable because
27   Plaintiff does not allege that they were made in a publication 'on which an investor would
     presumptively rely,' such as 'an SEC filing, press release, call with analysts or a financial news
28   publication,' or were '*intended* to influence the investing public.") (emphasis added)).

---

DEFENDANTS' REPLY ISO MOTION TO DISMISS CAC |
(C.A. NO. 4:19-CV-02033-YGR)

misleading for the unrelated reasons alleged in the CAC.  *See* Mot. at 25.  The Opposition insists the Court is not allowed to read the entirety of the Forms 10-Q—purportedly, it would "raise a question of fact" (Opp. at 25)—but later correctly admits that "the Court may not assess the statements listed in the [CAC] in a vacuum," and must "examine the entire statement *and its circumstances* to determine if it is actionable."  *Id.* at 29 (citation omitted, emphasis added). When read in context, the "market risk" disclosures are not misleading.  *See* Mot. at 25.

The Motion demonstrated why Mr. Cook's February 1, 2018 statements were not misleading by failing to disclose that Apple was then tracking battery replacements.  Mot. at 25-26 (citing CAC ¶ 300-01).  In rebuttal, the Opposition again quotes Mr. Cook out of context to insist that he said "Apple 'did not consider in any way, shape or form what [the battery replacement program] would do to upgrade rates'" (Opp. at 15 (quoting CAC ¶ 300)), but in fact, Mr. Cook said that when Apple was *deciding to offer lower cost batteries*, "we did not consider in any way, shape, form what it would do to upgrade rates. We did it because it was the right thing to do." *See* CAC ¶ 300.  That statement "neither stated nor implied anything" about whether Apple was tracking battery replacements, *Brody*, 280 F.3d at 1006, was not otherwise inconsistent with the idea that Apple was tracking battery replacements, *see Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001), and the CAC does not otherwise specifically allege the statement was false when made—because it was not.  *See Yourish*, 191 F.3d at 993.  By the same token, the Opposition again asserts Mr. Cook's statement that "it's very difficult to ever get a real-time handle on [the battery] replacement rate" is misleading because "Apple was actually tracking the battery replacement rate." Opp. at 16 (citing CAC ¶ 301).  But saying it is "difficult to ever get a real-time handle on replacement rates" does not imply Apple is *not* tracking historical replacement rates—to the contrary, Mr. Cook went on to say "You only know [replacement rates] in the historical sense" (CAC ¶ 301), a statement entirely *consistent* with the idea that Apple could be tracking replacement rates.  *See* Mot. at 26.

The Opposition argues that Mr. Cook's July 31, 2018 statement that "we have never done an analysis internally about how many people decided to get a lower-priced battery than buy another phone" (CAC ¶ 353) was also misleading by failing to disclose that Apple was tracking

battery replacements.  *See* Opp. at 16.  But as the Motion demonstrates, there are no allegations in the CAC to show Apple had performed that sort of analysis, and the statement does not reference or refer to whether Apple was tracking battery replacements or not.  *Id.*  The Opposition argues if "Apple tracked battery replacements . . . it is reasonable to infer that Apple was likewise monitoring the impact . . . on upgrade rates" (*id.*), but Plaintiff's assumption cannot satisfy the PSLRA requirement to plead specific *facts* and to specifically allege why each statement was misleading at the time it was made.  *See* Mot. at 7.

The Motion shows that Defendants cannot be liable for statements in a 2018 UBS analyst report (CAC ¶ 345) because Defendants are not alleged to have "entangled [themselves] with the analyst's forecasts" such that the statement could be attributed to them.  Mot. at 26-27 (citation omitted). The Opposition insists the CAC satisfies that requirement by alleging that "UBS [was] merely reiterating a statement made by Apple to UBS with the intention of public dissemination" (Opp. at 18), but it cannot cite to where those allegations purportedly exist (*id.*).

The Opposition also asserts that Mr. Maestri's November 1, 2018 statement regarding "uncertainty at the macroeconomic level in some emerging markets" (CAC ¶ 384) was misleading because it "failed to disclose that iPhone demand in Greater China was declining and expected to continue deteriorating."  Opp. at 21.  But as the Motion shows, the statement is not affirmatively misleading or inconsistent with that allegedly omitted fact—indeed the statement "neither states nor implies" anything about China specifically or about iPhone demand, and thus is not affirmatively misleading or inconsistent in either regard.  *See* Mot. at 27-28.  The CAC also lacks allegations (beyond the conclusory testimony of CWs) to show that "iPhone demand in Greater China was declining and expected to continue" when the statement was made.  *See id.*[7]

## IV.   THE CAC DOES NOT ALLEGE A STRONG INFERENCE OF SCIENTER

### A.   Plaintiff Does Not Dispute That the CWs Had No Contact With Defendants

As explained in the Motion, none of Plaintiff's ten CWs claims to have had any

---

[7] The Opposition asserts that Mr. Maestri's statement that Apple would stop reporting unit sales data was misleading because it was "intentionally designed to conceal declining iPhones sales." *See* Opp. at 22 (citing CAC ¶ 396(f)).  That argument fails both as a matter of Ninth Circuit law (Mot. at 28), and because the CAC does not allege *any* facts to show what Mr. Maestri knew or intended at the time the statement was made.  *See id.* at 21-22.

DEFENDANTS' REPLY ISO MOTION TO DISMISS CAC |
(C.A. No. 4:19-CV-02033-YGR)

interaction or contact, direct or indirect, with either Individual Defendant.  *See* Mot. at 30-34. The Opposition does not argue otherwise.  Accordingly, the CW allegations do not shed any light on the mental state of the Individual Defendants and cannot support the required strong inference that each Defendant acted with scienter.  *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) (CWs did not create a strong inference of scienter because they "lack first-hand knowledge regarding what the individual defendants knew or did not know"); *Veal v. LendingClub Corp.*, 2019 WL 5698072, at *18 (N.D. Cal. Nov. 4, 2019) ("None of the CWs had any direct (or indirect) contact with any of the Individual Defendants and therefore cannot provide reliable insight into the Defendants' state of mind."); *In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 949 (N.D. Cal. 2010) ("[I]t is difficult to surmise how the opinions and observations of the CWs [who had no contact with the individual defendants] could support a reasonable inference about what these individual Defendants knew or did not know").

In the absence of any allegations tying the CWs directly to the Individual Defendants, the Opposition instead argues that "numerous former employees corroborate that Apple senior management, including the Individual Defendants, tracked iPhone sales data and product lifetimes, and were provided access to reports and information contradicting their public statements about iPhone growth."  Opp. at 35; *see also id.* at 36 ("senior management knew about declining sales in China").  This argument fails to support a strong inference of scienter, for several reasons.  As an initial matter, the relevant question is not what "senior management" knew, but what the *Individual Defendants* knew.  *See Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*, 774 F.3d 598, 607 (9th Cir. 2014) ("Where, as here, the Plaintiffs seek to hold individuals and a company liable on a securities fraud theory, [the Ninth Circuit] require[s] that the Plaintiffs allege scienter with respect to each of the individual defendants.").

Moreover, although the CAC makes vague allegations about "reports" and "metrics" allegedly made available to senior management (*see* Opp. at 36), none of the CWs actually identify the specific content of those alleged "reports."  *See McCasland v. FormFactor, Inc.*, 2009 WL 2086168, at *6 (N.D. Cal. July 14, 2009) (no inference of scienter where plaintiff did not "(1) identify any specific information that was either received or communicated by any [Individual]

[D]efendant, that (2) contradicts any public statement at the time it was made"); *Lu v. Align Tech., Inc.*, 2019 WL 5579520, at *9 (N.D. Cal. Oct. 29, 2019) ("CWs' references to internal reports did not support a strong inference of scienter where they "fail[ed] to cite a single metric from any of the reports . . . that Defendants supposedly tracked" and did not identify a "single figure" from the reports). Finally, even if the CAC identified the contents of the reports allegedly made available to the Individual Defendants—and it does not—the CWs' lack of any interaction with the Individual Defendants means that they cannot shed any light on the question of what the Individual Defendants knew and when. *See City of Sunrise*, 2019 WL 6877195, at *19 (CWs' "'merely speculative' awareness of Individual Defendants' knowledge is not enough"); *id.* ("The CWs lack personal knowledge as to whether [Individual Defendants] read or heard of the internal information and presentations—and therefore cannot be relied upon to establish scienter.").

## B. The Stock Sales Allegations Do Not Support a Strong Inference of Scienter

The CAC's allegations about the Individual Defendants' stock sales similarly fail to create a strong inference of scienter. Well-settled Ninth Circuit law holds that stock sales support an inference of scienter only when they are "'dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information.'" *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999). The Opposition fails to rebut the Motion's showing that the Individual Defendants' stock sales were entirely consistent with— not "dramatically out of line with"—their prior trading practices. *See* Mot. at 34-36.

First, the Opposition does not dispute that all of the Individual Defendants' sales were made pursuant to 10b5-1 trading plans. It argues, however, that "Defendants cannot rely on their 10b5–1 trading plan at the pleading stage." Opp. at 34. Plaintiff is wrong on the law. As Defendants' Motion explains, courts in the Ninth Circuit frequently consider, at the pleading stage, whether a defendant's stock sales were conducted pursuant to a pre-determined Rule 10b5–1 trading plan. *See* Mot. at 35. The fact that neither Mr. Cook nor Mr. Maestri is alleged to have traded outside of his 10b5–1 trading plan is a relevant factor that the Court may weigh in conducting the required holistic analysis to determine whether the CAC pleads a strong inference of scienter. *See, e.g.*, *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 n.11

1  (9th Cir. 2008) (affirming dismissal and holding stock sales conducted pursuant to a pre-

2  determined Rule 10b5-1 trading plan may "rebut an inference of scienter"); *Rodriguez v.*

3  *Gigamon, Inc.*, 325 F. Supp. 3d 1041, 1056 (N.D. Cal. 2018) (dismissing complaint and finding

4  that automatic sales made pursuant to Rule 10b5-1 plans do not support a strong inference of

5  scienter); *Kovtun v. VIVUS, Inc.*, 2012 WL 4477647, at *21 (N.D. Cal. Sept. 27, 2012) (same).

6        Next, the Opposition does not offer a viable response to the argument in Defendants'

7  Motion that the Individual Defendants' stock sales during the Class Period were entirely

8  consistent with their prior trading history and vesting schedules.  Mot. at 35.  The Opposition

9  does not dispute that Mr. Cook sold *more shares* during the Control Period than he did during the

10  Class Period, and that both Mr. Cook and Mr. Maestri sold *higher percentages* of their total

11  available holdings during the Control Period than they did during the Class Period.  Mot. at 35-

12  36.  In light of that concession, it can hardly be said that Defendants' Class Period sales were

13  "dramatically out of line with prior trading practices."  *Silicon Graphics*, 183 F.3d at 986.  While

14  Plaintiff argues that the Individual Defendants netted greater total *proceeds* during the Class

15  Period (Opp. at 33; CAC ¶¶ 449-50), that fact simply reflects the increase over time in Apple's

16  stock price.  It does not change the fact that both Defendants sold similar percentages of their

17  available shares during both time periods.  *See Metzler*, 540 F.3d at 1067 (sales of 100% of

18  holdings did not raise scienter inference since trading was consistent with pre-class period sales).

19        Finally, the Opposition's conclusory argument that Defendants' stock sales were

20  "suspiciously timed" completely ignores Defendants' argument that all but two of the trades

21  during the Class Period took place within several weeks following the release of Apple's

22  quarterly results.  *See* Mot. at 36.  As the Ninth Circuit has recognized, an insider's sale of stock

23  after announcement of positive quarterly results does not give rise to a finding of scienter.  *See*

24  *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1037 (9th Cir. 2002).[8]

25        **C.    The Core Operations Doctrine Does Not Apply**

26        The Opposition next argues that the "core operations" doctrine supports an inference of

27

28

---

[8] In addition, the fact that Apple spent $88 billion during the Class Period to repurchase its own stock (*see* Mot. at 38) cuts sharply against any inference that the Individual Defendants sold their shares to take advantage of a share price they believed to be fraudulently inflated.

scienter, purportedly because the Individual Defendants "closely tracked the Chinese smartphone market and sales of the iPhone there," and because "demand for Apple's iPhone is critical to the Company's business."  Opp. at 37.  However, Plaintiff cannot avoid the requirement of pleading particularized facts supporting an inference of scienter simply by making the bare allegation that Greater China operations and iPhone sales are critical to the "core operations" of the Company. To the contrary, "[p]roof under this theory is not easy."  *Intuitive Surgical*, 759 F.3d at 1062.  "A plaintiff [seeking to invoke the core operations doctrine] must produce either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations, such as data monitoring . . . or witness accounts demonstrating that executives had actual involvement in creating false reports."  *Id.* (citation omitted).  Here, Plaintiff utterly fails to meet either of those requirements.

In *Intuitive Surgical*, the complaint, similar to the CAC here, relied heavily on "the impressions of witnesses who lacked direct access to the executives but claim that the executives were involved with [the Company's] day-to-day operations and were familiar with the contents of . . . reports because the substance of the reports was discussed in meetings."  *Id.*  The Ninth Circuit found that "[a]t best, these facts support a 'mere inference of [the defendants'] knowledge of all core operations,' not scienter."  *Id.* (citation omitted).  The same is true here.  As in *Intuitive Surgical*, "[m]issing are allegations linking specific reports and their contents to the executives, not to mention the link between the witnesses and the executives."  *Id.* at 1063.

Absent detailed allegations about each Individual Defendant's access to the relevant information—which are utterly lacking here—scienter may be assumed under the core operations doctrine only "where the falsity [of a statement] is patently obvious" and "the 'facts [are] prominent enough that it would be 'absurd to suggest' that top management was unaware of them.'"  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1001 (9th Cir. 2009).  This is plainly not such a case—it is not like *Berson*, for example, where the court found that it would be "absurd to suggest" that defendants were unaware of stop-work orders that had a "devastating effect" on the company's largest contract.  527 F.3d at 987.  In *Berson*, plaintiffs "allege[d] the existence and effect of the stop-work orders with particularity."  *Id.*  Here, by contrast, Plaintiff

cites only to vague, general allegations about sales data and "declining demand." *See* Opp. at 37. More importantly, Plaintiff has not even alleged the falsity of any statement, much less demonstrated that the falsity of any statement was "patently obvious." *Zucco*, 552 F.3d at 1001. Accordingly, the CAC's allegations do not present the "rare circumstance" in which the core operations inference may be invoked because it would be "'absurd' to suggest that management was without knowledge" of the allegedly undisclosed facts. *Intuitive Surgical*, 759 F.3d at 1063.

### D.     The Opposition's Remaining Scienter Arguments Fail

The Opposition's remaining scienter arguments do not help Plaintiff meet its burden of pleading a strong inference of scienter.  First, Plaintiff argues that "Defendants possessed the motive and opportunity to artificially accelerate the iPhone upgrade cycle." Opp. at 38.  But as explained in the Motion, this argument fails because Defendants' purported "motive" to "accelerate the iPhone upgrade cycle" is totally untethered to Plaintiff's actual claim in this case, which is that Defendants made misleading statements to investors.  *See* Mot. at 37.  And in any event, the CAC contains no particularized allegations linking the Individual Defendants to any attempt to "artificially accelerate the iPhone upgrade cycle." *Id.*  The Opposition wholly fails to acknowledge or respond to these arguments.

In addition, Plaintiff's argument that Apple's November 1, 2018 announcement that it would stop reporting iPhone sales "was designed to conceal declining iPhone sales" (Opp. at 38) similarly fails to respond to Defendants' arguments in the Motion.  There, Defendants pointed out that (among other things) the Company *did* continue to report iPhone unit sales on November 1, 2018, merely announcing that it would discontinue such reporting in *future* quarters.  Mot. at 37. Plaintiff fails to point to anything suggesting that the reporting change was designed to conceal material facts from investors *during the Class Period*, let alone anything that establishes scienter.

### E.     The Innocent Inferences Far Outweigh Any Possible Inference of Scienter

As explained in the Motion, the CAC's allegations, viewed holistically as required by *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24, 326 (2007), do not create even a reasonable inference of scienter, much less the cogent and compelling inference that is required. To the contrary, the opposing innocent inference far outweighs any possible inference of scienter.

DEFENDANTS' REPLY ISO MOTION TO DISMISS CAC |
(C.A. No. 4:19-cv-02033-YGR)

1   Most notably, Apple's massive **$88 billion** stock buyback program during the Class Period is

2   wholly inconsistent with any notion that Defendants were intentionally seeking to inflate the price

3   of Apple's stock.  *See* Mot. at 38.  It would have made no sense for Apple to purchase so many

4   shares if Defendants believed that the share price was artificially inflated due to alleged fraud.

5   Plaintiff addresses the stock repurchase program only by citing to one out-of-Circuit district court

6   case in which the court was "not persuaded that the existence of the stock repurchase plan wholly

7   negates the strong inference of scienter, in light of other factors such as the conscious

8   misbehavior and recklessness that Plaintiff has adequately pleaded."  *In re Viropharma Inc. Sec.*

9   *Litig.*, 21 F. Supp. 3d 458, 474 n.23 (E.D. Pa. 2014) (cited in Opp. at 38-39).  But in *Viropharma*,

10  the court found that the plaintiff there (unlike Plaintiff here) had adequately pleaded "conscious

11  misbehavior and recklessness."  *Id.*  And tellingly, Plaintiff ignores the numerous authorities from

12  within the Ninth Circuit that take stock repurchase programs into account as part of the holistic

13  scienter analysis.  *See* Mot. at 38 (citing authorities).

14  **V.   THE CAC DOES NOT ALLEGE LOSS CAUSATION**

15         Finally, as argued in the Motion (at 39-40), Plaintiff fails to allege loss causation with

16  respect to Defendants' alleged failure to disclose that: (1) Apple's battery replacement program in

17  2018 was negatively impacting demand (CAC ¶ 13(b)-(c)); (2) "higher iPhone demand in 2017

18  and early 2018 . . . was driven by artificially accelerated upgrade rates" (*id.* ¶ 13(a)); and (3)

19  "WeChat's core features competed directly with many of the core features of Apple's iOS

20  operating system" (*id.* ¶ 13(f)).

21         With respect to the first category of alleged omissions, Plaintiff cannot rely on the

22  "materialization of the risk" doctrine to establish loss causation because Plaintiff cannot plausibly

23  allege that the potential risks of Apple's battery replacement program were "concealed"

24  throughout the Class Period.  To the contrary, by early January 2018, the market was well aware

25  of the risk that the battery replacement program might negatively impact new iPhone sales.  *See*

26  Mot. at 39; *see also* Dkt. No. 101 (Plaintiff Norfolk Pension Fund's ("Norfolk") Request to

27  Submit Additional Briefing ("Norfolk Br.")) at 3-4 (pointing to "multiple reports published in

28  January 2018, disclosing the very risk alleged to have been 'concealed'").  Unable to dispute the

1    fact that the risks inherent in the battery replacement program were known to the market by

2    January 2018, Plaintiff says only that "whether the market fully appreciated these risks is a

3    question of fact not appropriate for determination on a motion to dismiss."  Opp. at 40.  But

4    where, as here, the judicially noticeable facts leave no question that the relevant risks were

5    known—not concealed—a claim based on a "materialization of the risk" theory must fail as a

6    matter of law.  *See Monroe Cty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336,

7    357-58 (S.D.N.Y. 2014) (finding loss causation was not pled where allegedly concealed risks

8    were subject to extensive media coverage well before the alleged materialization of the risk).

9         With respect to the second category, the Motion (at 40) pointed out that the CAC nowhere

10   alleged that Apple's stock price ever dropped as a result of a disclosure that "higher iPhone

11   demand in 2017 and early 2018 . . . was driven by artificially accelerated upgrade rates as a result

12   of Apple intentionally throttling older-model iPhones during 2017."  CAC ¶ 13(a).  Plaintiff does

13   not dispute that the CAC contains no such allegations, arguing only that this is a "question of fact

14   not appropriate for determination on a motion to dismiss."  Opp. at 40.  But Plaintiff cannot claim

15   that this is a "question of fact" precluding dismissal when the CAC does not even *allege* the

16   necessary predicate facts.  Finally, the Opposition does not even address the third category of

17   alleged omissions—regarding competition from WeChat—implicitly conceding that the CAC

18   fails to plead loss causation with respect to that theory.

19   **VI.    NORFOLK PENSION FUND'S BRIEF DOES NOT CHANGE THE ANALYSIS**

20        Norfolk's brief correctly notes that Plaintiff fails to adequately address the Motion's loss

21   causation arguments, which demonstrate that Plaintiff's "batterygate" theory of liability is

22   untenable.  *See* Norfolk Br. at 3-5.  But Norfolk's arguments regarding the supposed actionability

23   of certain statements made by Defendants on November 1, 2018 fail and should be disregarded.

24        Norfolk asserts that Mr. Cook's statements that the new "XS and XS Max [iPhones] got

25   off to a really great start" and that Apple had too "little data" to evaluate demand for the just-

26   released XR model (CAC ¶ 385), and Mr. Maestri's statement that there was "uncertainty around

27   supply and demand balance" (*id.* ¶ 383), were false because "Apple did have data to assess

28   demand for new iPhone models and had already cut orders for the XR."  Norfolk Br. at 1 (citing

CAC ¶¶ 227, 261).  But the CAC does not allege any contemporaneous facts to show that, *as of November 1, 2018* when the challenged statements were made, Apple "had already cut orders for the XR," or that Messrs. Cook or Maestri knew, or had enough data to know, that demand for the new iPhones would be insufficient for Apple to meet its revenue forecast for Q1 FY 2019. Indeed, the allegations cited in support of Norfolk's argument contain nothing more than the non-specific musings of Plaintiff's CWs, which, as discussed above, do not satisfy the PSLRA.  *See* CAC ¶¶ 227, 261.  Norfolk argues that because only five days later there were reports that Apple was slowing production on the XR (Norfolk Br. at 1-2 (citing CAC ¶¶ 400-408)), the "temporal proximity of the[se] disclosures . . . provide strong evidence of both falsity and scienter."  *Id.* at 2. But it is well-settled that the mere "temporal proximity" between a statement and a later disclosure of allegedly inconsistent "true facts" is insufficient to plead the falsity of a statement or that the statement was made with scienter.  *See Yourish*, 191 F.3d at 997; *Align*, 856 F.3d at 622.

Finally, Norfolk asserts that Defendants later admitted "true facts" regarding demand in China that "directly contradict[ed] [Mr. Cook's] November 1, 2018 statement that China was *not* experiencing the macro-economic issues plaguing other emerging markets."  Norfolk Br. at 2 (emphasis in original) (citing CAC ¶¶ 384, 410-11).  But Mr. Cook's statement regarding Apple's business in China relative to other emerging markets was a statement concerning the Company's results in China during the quarter that ended on September 30, 2018—*i.e.*, it was a statement of undisputed *historical* fact, which, as discussed above, is not actionable.  *See* CAC ¶ 386 ("In relation to China specifically, I would not put China in that category [of emerging markets in which Apple's business slowed in Q4 FY 2018].  Our business in China was very strong *last quarter*.  We grew 16%, which we're very happy with.  iPhone, in particular, was very strong double-digit growth there.  Our other products category was also stronger, in fact, a bit stronger than even the . . . overall company number." (emphasis added)).

**VII.   CONCLUSION**

For these reasons and those in Defendants' Motion, the CAC should be dismissed.

1   Dated: February 24, 2020                ORRICK, HERRINGTON & SUTCLIFFE LLP

2

3                                                          */s/ James N. Kramer*
                                           _____
4                                                   James N. Kramer
                                           Attorneys for Defendants Apple Inc.,
5                                          Timothy Cook, and Luca Maestri

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21                                         DEFENDANTS' REPLY ISO MOTION TO DISMISS CAC |
                                              (C.A. NO. 4:19-CV-02033-YGR)