MELINDA L. HAAG (SBN 132612)
mhaag@orrick.com
JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
ALEXANDER K. TALARIDES (SBN 268068)
atalarides@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     (415) 773-5700
Facsimile:     (415) 773-5759

Attorneys for Defendants Apple Inc.,
Timothy Cook, and Luca Maestri

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | Case No. 4:19-cv-02033-YGR<br><br>**DEFENDANTS' MOTION TO DISMISS THE REVISED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Judge:     Honorable Yvonne Gonzalez Rogers<br>Ctrm:     1, 4th Floor |

## NOTICE OF MOTION AND RELIEF REQUESTED

PLEASE TAKE NOTICE that Defendants Apple Inc. ("Apple" or the "Company"), Timothy Cook, and Luca Maestri (the "Individual Defendants," and collectively with Apple, "Defendants"), hereby move the Court pursuant to Federal Rules of Civil Procedure ("Rules") 8, 9, and 12(b)(6), and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (the "PSLRA"), for an order dismissing Lead Plaintiff's ("Plaintiff") Revised Consolidated Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint"). Defendants' motion is based on this Notice of Motion; the Memorandum of Points and Authorities below; the accompanying Request for Judicial Notice and exhibits attached thereto; the accompanying Proposed Order; the Court's files; and oral argument of counsel at any hearing held by the Court. As noted in the Court's June 29, 2020 order, "[a] hearing [on Defendants' motion] will be scheduled if the Court deems it necessary after briefing is complete." Dkt. No. 117.

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether Plaintiff's claim against Apple and Mr. Cook for violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) ("Section 10(b)"), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), should be dismissed because the Complaint:

  a.  Fails to plead any actionably false or misleading statement, and thus fails to plead the element of "falsity."

  b.  Fails to plead particularized facts giving rise to a strong inference that Mr. Cook made a false or misleading statement with a fraudulent state of mind, and thus fails to plead the element of "scienter."

2.     Whether Plaintiff's claim against Defendants for violation of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) ("Section 20(a)"), should be dismissed because:

  a.  The Complaint fails to plead a primary violation of Section 10(b).

  b.  With respect to the Section 20(a) claim against Mr. Maestri, the Complaint fails to plead that Mr. Maestri exercised actual power or control over the alleged primary violator.

1

## TABLE OF CONTENTS

2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.       INTRODUCTION ................................................................................................ 1

II.      BACKGROUND ................................................................................................. 2

        A.      November 1, 2018 Statements By Tim Cook ............................................ 2

        B.      Press Report Regarding Cancelled "Boost" Of iPhone XR
                Production ................................................................................................. 3

        C.      Apple Lowers Revenue Guidance For Q1 FY 2019 ................................. 4

        D.      Apple Repurchases More Than $1 Billion Of Its Own Stock During
                The Class Period, And The Individual Defendants Sell No Stock ............. 4

        E.      Relevant Procedural History ..................................................................... 4

III.     THE RIGOROUS PLEADING STANDARDS GOVERNING THIS MOTION ............. 5

IV.      ARGUMENT ..................................................................................................... 7

        A.      The Complaint Fails To Allege A False Or Misleading Statement ............ 7

                1.      Mr. Cook's Statements Regarding The Launch Of New
                        iPhone Models Were Not False Or Misleading. ............................ 7

                2.      Mr. Cook's Statements Regarding Apple's Business In
                        Greater China Were Not False Or Misleading. ............................. 10

        B.      The Complaint Does Not Allege Specific Facts Creating A "Strong
                Inference" Of Scienter .............................................................................. 12

                1.      Mr. Cook's January 2, 2019 Comments Do Not Give Rise
                        To A Strong Inference of Scienter ............................................... 14

                2.      The Report Of A Cancelled "Production Boost" For The XR
                        iPhone Model Does Not Give Rise To A Strong Inference
                        Of Scienter .................................................................................. 14

                3.      The Complaint's Allegations Do Not Give Rise To A
                        Reasonable Inference of Scienter, Much Less One That Is
                        Cogent And At Least as Compelling As The Alternative
                        Innocent Explanation ................................................................... 16

        C.      The Section 20(a) Claim Should Be Dismissed ....................................... 19

V.       CONCLUSION .................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Page(s)**

*In re Accuray, Inc. Sec. Litig.*,
  757 F. Supp. 2d 936 (N.D. Cal. 2010) .......................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................................5

*Bodri v. GoPro, Inc.*,
  252 F. Supp. 3d 912 (N.D. Cal. 2017) .....................................................................18

*In re Caere Corp. Sec. Litig.*,
  837 F. Supp. 1054 (N.D. Cal. 1993) ........................................................................10

*In re Cisco Sys. Inc. Sec. Litig.*,
  2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) ........................................................18

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017).....................................................................................16

*Costabile v. Natus Med. Inc.*,
  2018 WL 7134363 (N.D. Cal. Dec. 18, 2018) ........................................................18

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010).......................................................................................5

*In re Energy Recovery Inc. Sec. Litig.*,
  2016 WL 324150 (N.D. Cal. Jan. 27, 2016) ............................................................20

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976) .....................................................................................................6

*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000)...................................................................................19

*In re Intel Corp. Sec. Litig.*,
  2019 WL 1427660 (N.D. Cal. Mar. 29, 2019) (Rogers, J.) .....................................10

*Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*,
  445 F. App'x 368 (2d Cir. 2011)...............................................................................17

*Jasin v. Vivus, Inc.*,
  2016 WL 1570164 (N.D. Cal. Apr. 19, 2016), *aff'd*, 721 F. App'x 665 (9th Cir.
  2018) ............................................................................................................................7

*Jui-Yang Hong v. Extreme Networks, Inc.*,
  2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) .........................................................14

*Kairalla v. Advanced Med. Optics, Inc.*,
    2008 WL 2879087 (C.D. Cal. June 6, 2008) ...............................................................7

*Lopes v. Fitbit, Inc.*,
    2020 WL 1465932 (N.D. Cal. Mar. 23, 2020) ............................................................14

*Matthews v. Centex Telemanagement, Inc.*,
    1994 WL 269734 (N.D. Cal. 1994)..............................................................................18

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008).......................................................................................6

*Middlesex Ret. Sys. v. Quest Software Inc.*,
    527 F. Supp. 2d 1164 (C.D. Cal. 2007).......................................................................20

*In re Neustar Sec. Litig.*,
    83 F. Supp. 3d 671 (E.D. Va. 2015).............................................................................15

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ................................................................................ *passim*

*Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*,
    2018 WL 3126393 (N.D. Cal. June 6, 2018) ................................................................7

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014).......................................................................................6

*Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*,
    774 F.3d 598 (9th Cir. 2014).......................................................................................12

*In re Read-Rite Corp. Sec. Litig.*,
    335 F.3d 843 (9th Cir. 2003).......................................................................................13

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012)....................................................................................6, 7

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001).........................................................................7, 9, 11, 14

*Schuster v. Symmetricon, Inc.*,
    2000 WL 33115909 (N.D. Cal. Aug. 1, 2000)............................................................18

*Sgarlata v. PayPal Holdings, Inc.*,
    2018 WL 6592771 (N.D. Cal. Dec. 13, 2018) ............................................................19

*In re Silicon Graphics, Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999)...................................................................................6, 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...................................................................................2, 6, 16, 18

*Veal v. LendingClub Corp.*,
   423 F. Supp. 3d 785 (N.D. Cal. 2019) ...................................................................13

*Webb v. Solarcity Corp.*,
   884 F.3d 844 (9th Cir. 2018)........................................................................18, 19

*Welgus v. TriNet Grp., Inc.*,
   2017 WL 6466264 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th
   Cir. 2019) ...........................................................................................................16

*Wenger v. Lumisys, Inc.*,
   2 F. Supp. 2d 1231 (N.D. Cal. 1998) ..................................................................10

*In re Wet Seal, Inc. Sec. Litig.*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007)................................................................15

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994)...............................................................................18

*Yourish v. Cal. Amplifier*,
   191 F.3d 983 (9th Cir. 1999)........................................................................8, 9, 11

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009)..............................................................6, 15, 16, 19

**Rules and Statutes**

Fed. R. Civ. P.
   Rule 9(b)..........................................................................................................5, 9
   Rule 12(b)(6) ........................................................................................................5

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 .................................. *passim*

Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240-10b-5 ....................................6

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION**

3          The Complaint alleges two narrow categories of purportedly misleading statements, both

4    made by Apple CEO Tim Cook in response to questions posed by analysts during an investor

5    conference call held on November 1, 2018.  The Complaint's allegations are baseless and false.

6    The statements that Mr. Cook made in response to questions from analysts were accurate and

7    based on the known facts at the time, and the Complaint contains no allegations to the contrary.

8    There are no factual allegations to support the accusation that Mr. Cook's comments about the

9    performance of Apple's newly launched iPhone models and its business in Greater China were

10   inaccurate.   There are no allegations based on confidential witness accounts or internal Apple

11   emails or reports.  And there are no contemporaneous factual allegations demonstrating that Mr.

12   Cook was aware, at the time of his November 1, 2018 statements, that those statements were false

13   or misleading.

14          Instead, the Complaint relies on a subsequently published article, as well as a purported

15   "admission" made by Mr. Cook over two months later, in an attempt to meet Plaintiff's burden to

16   plead falsity.  But neither the article nor the purported "admission" is probative of falsity because

17   (among other reasons) nothing about them is inconsistent with the statements actually made by

18   Mr. Cook on November 1, 2018.  For example, the article, published four days after the alleged

19   misstatements, indicated only that Apple had cancelled a potential "production boost" for just ***one***

20   of ***three*** recently-released new iPhone models—the iPhone XR.   Nothing in the article—which

21   was anonymously sourced—indicated that Apple was making any changes to production plans for

22   the other two recently released models, or that the cancelled "production boost" would have been

23   necessary for Apple to meet the guidance it had issued four days earlier.   Nor did the article

24   indicate that Apple had decided to cancel the potential "production boost" for the iPhone XR—

25   which was not released until October 26, 2018—by the time Mr. Cook made his comments on

26   November 1, 2018.

27          With respect to Mr. Cook's purported "admission" in January 2019, he said only that

28   Apple saw headwinds in Greater China "as the quarter went on" and that those headwinds were

"particularly bad in November."  But neither of those purported "admissions" demonstrate that Mr. Cook knew about those circumstances on the **first day** of November—the day of the alleged misstatements—which was only one-third of the way through the fiscal quarter, let alone contradict Mr. Cook's November 1, 2018 statements.

The Complaint, which is devoid of factual allegations regarding Mr. Cook's state of mind as of November 1, 2018, likewise falls short of pleading the requisite "strong inference" of scienter.  Indeed, the Complaint's allegations do not create even a **reasonable** inference of scienter, much less the "cogent and compelling" inference necessary under the PSLRA.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  According to Plaintiff's theory of fraud, Mr. Cook decided to mislead the market about the Company's prospects, all while knowing that the allegedly misrepresented true state of affairs would be revealed just a few months later.  This theory is illogical, particularly since Mr. Cook is not alleged to have sold his Apple shares or otherwise personally benefitted from the purported lie in any way, and the Company spent over **$1 billion** during the alleged class period to repurchase its own stock at allegedly inflated prices.  As the Ninth Circuit recently emphasized in a decision issued after this Court's ruling on the motion to dismiss the Consolidated Amended Complaint, "the PSLRA neither allows nor requires [a court] to check [its] disbelief at the door."  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020).  Yet that is essentially what Plaintiff is asking the Court to do by advancing a theory of fraud that makes no sense.

For these reasons, and others discussed below, the Complaint should be dismissed.

## II.      BACKGROUND[1]

### A.      November 1, 2018 Statements By Tim Cook

On November 1, 2018, Apple announced its financial results for the fourth quarter of FY 2018 and held a conference call for analysts and investors.  Compl. ¶ 53.  During that call, in response to an analyst comment that "there has been some real deceleration in some of these emerging markets," Mr. Cook stated, in relevant part:

---

[1] All "Ex. __" references are to the exhibits attached to Defendants' Request for Judicial Notice.

> To give you a perspective in – at some detail, our business at India in Q4 was flat. Obviously, we would like to see that be a huge growth.  Brazil was down somewhat compared to the previous year.  And so I think – or at least the way that I see these is each one of the emerging markets has a bit of a different story.  And I don't see it as some sort of issue that is common between those for the most part.  In relation to China specifically, I would not put China in that category. Our business in China was very strong last quarter.  We grew 16%, which we're very happy with.  iPhone, in particular, was very strong double-digit growth there. Our other products category was also stronger, in fact, a bit stronger than even the . . . overall company number.

*Id.*; Ex. 1 at 10.

In addition, Mr. Cook was asked about the launch of three new iPhone models – the XS and XS Max, which had been released on September 21, 2018, and the XR, which had been released just days before the conference call on October 26, 2018:

> [Analyst]:  With the staggered iPhone launch, were you able to discern any impact on the Xs and Xs Max from buyers potentially waiting for the XR?  And what, if anything, can we take away from the December quarter guidance related to what you're seeing for early demand on the XR? . . .

> [Mr. Cook]:  The Xs and Xs Max got off to a really great start, and we've only been selling for a few weeks.  The XR, we've only got out there for, I guess, 5 – 5 days or so at this point and so that it's – we have very, very little data there. Usually, there is some amount of wait until a product shows – another product shows up in look, but in – that – in looking at the data, on the sales data for Xs and Xs Max, there's not obvious evidence of that in the data as I see it.

Compl. ¶ 57; Ex. 1 at 12.

**B.    Press Report Regarding Cancelled "Boost" Of iPhone XR Production**

Several days later, on November 5, 2018, the *Nikkei Asian Review* published an article reporting that, according to unnamed sources, Apple had "cancel[led]" a "production boost" for one of the three newly released iPhone models, the iPhone XR.  *See* Compl. ¶ 68; Ex. 2. According to the article, Apple purportedly instructed "its top smartphone assemblers Foxconn and Pegatron to halt plans for additional production lines dedicated to the relatively cost-effective model [the XR] that hit shelves in late October[.]"  Ex. 2 at 1.  The article did not indicate when Apple gave these instructions.  Nor was it possible to ascertain from the article whether the cancelled "production boost" would have been necessary for Apple to meet the guidance it had issued several days earlier on November 1, 2018—or, in the alternative, whether Apple believed it could meet its guidance without the "boost," whether through enhanced efficiency on existing

1  production lines or otherwise.[2]   Further, the article did not report on any changes to the
2  production of the other two newly-released iPhone models—the XS and XS Max, which were
3  priced higher than the XR.

### C.   Apple Lowers Revenue Guidance For Q1 FY 2019

5  On January 2, 2019, Apple issued the letter to investors in which the Company disclosed
6  that its revenues for the just-completed Q1 FY 2019 quarter were expected to be approximately
7  $84 billion, lower than the previously provided guidance of $89 billion to $93 billion.  *See*
8  Compl. ¶ 82; Ex. 3.  The letter explained that, although the Company had "anticipated some
9  challenges in key emerging markets, [it] did not foresee the magnitude of the economic
10  deceleration, particularly in Greater China."  Ex. 3 at 2.

11  In a CNBC interview conducted on the same day, Mr. Cook explained that the Company
12  "saw, *as the quarter went on*, things like traffic in our retail stores, traffic in our channel partner
13  stores, the reports of the smartphone industry contracting, *particularly bad in November*[.]"
14  Compl. ¶ 83 (emphasis added).  Mr. Cook did not say exactly when in the quarter, or when in
15  November, the Company saw these things.

### D.   Apple Repurchases More Than $1 Billion Of Its Own Stock During The Class Period, And The Individual Defendants Sell No Stock

18  Between November 4, 2018 and December 1, 2018, and within the class period of
19  November 2, 2018 through January 2, 2019 (the "Class Period"), Apple spent approximately
20  $1.35 billion to repurchase 6,681,000 shares of its own stock.  *See* Ex. 4.  Neither of the
21  Individual Defendants is alleged to have sold any shares of Apple stock during the Class Period
22  or to have otherwise benefitted in any way from the alleged fraud.

### E.   Relevant Procedural History

24  On June 2, 2020, the Court issued its order on Defendants' motion to dismiss the
25  Consolidated Amended Complaint (Dkt. No. 110, the "Order"), granting the motion in large part,

---

[2] As RBC Capital Markets noted that same day, while the report that Apple had asked suppliers to stop preparing additional production lines "could indicate muted unit demand, *we note that similar reports have been seen in past product cycles and AAPL has managed to navigate those relatively well, partially through ASP uplift.*"  Compl. ¶ 69 (emphasis added).

1    but denying the motion in part on the basis of additional arguments presented by Norfolk County

2    Council ("Norfolk"). Order at 40.  The Court held that Norfolk's argument regarding "[t]he close

3    temporal proximity of Defendants' optimistic and pessimistic statements" established that Mr.

4    Cook's November 1, 2018 statements described above were materially false and misleading, and

5    that Mr. Cook made those statements with scienter.  *Id.* at 42.  This argument advanced by

6    Norfolk was not specifically articulated by the then-Lead Plaintiff in its 40-page opposition.

7         At the conclusion of its Order, the Court stated that it "intends to reconsider the motion for

8    lead counsel as discussed at considerable length with counsel."  *Id.* at 46.  The Court ordered

9    Lead Plaintiff to "meet and confer with counsel for Norfolk for the orderly transition of

10   leadership," and further ordered that a "revised consolidated complaint consistent with this Order

11   shall be filed within twenty-one days."  *Id.*  The Court directed Apple to "file an answer within 21

12   days thereafter."  *Id.*  Plaintiffs subsequently agreed, and the Court ordered, that Norfolk would

13   replace the Employees' Retirement System of Rhode Island as Lead Plaintiff.  *See* Dkt. No. 113.

14   Norfolk then filed its Complaint on June 23, 2020.  Dkt. No. 114.

15        In the meantime, Defendants filed a motion seeking leave to file a motion to dismiss the

16   Complaint.  Dkt. No. 111.  On June 29, 2020, the Court granted that motion, and set a briefing

17   schedule for the instant motion to dismiss.  Dkt. No. 117.

18   **III.   THE RIGOROUS PLEADING STANDARDS GOVERNING THIS MOTION**

19        To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual

20   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

21   556 U.S. 662, 678 (2009).  While the Court must accept as true well-pleaded factual allegations, it

22   need not accept as true allegations that are conclusory, unreasonable inferences or unwarranted

23   deductions of fact, or allegations that contradict documents referred to in the complaint or matters

24   subject to judicial notice.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

25        Rule 9(b) and the PSLRA impose additional, exacting pleading requirements in securities

26   fraud cases like this one.  "Rule 9(b) requires particularized allegations of the circumstances

27   constituting fraud, including identifying the statements at issue and setting forth what is false or

28   misleading [] about the statement[s] and why the statements were false or misleading at the time

they were made." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012).  The PSLRA similarly requires a complaint to specify each statement alleged to have been misleading and the reasons why it was misleading when made, and to "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).  "This means that a plaintiff must provide, *in great detail*, all the relevant facts forming the basis of her belief." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) (emphasis added).  "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet this standard." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).

The PSLRA further requires a complaint to "state with particularity facts giving rise to a strong inference that [each] defendant acted with" scienter. 15 U.S.C. § 78u-4(b)(2).  Because the Supreme Court has defined "scienter" in the context of Section 10(b) and Rule 10b-5 as a "mental state embracing intent to deceive, manipulate, or defraud," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976), the complaint must plead specific facts giving rise to a strong inference that the defendant made a false or misleading statement with, "at a minimum, *deliberate* recklessness," *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014) (internal quotations omitted).  This standard "for recklessness is actually much closer to one of intent." *Id.* Thus, the complaint "must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent" to mislead investors. *In re Silicon Graphics*, 183 F.3d at 979.

A "strong inference" of scienter is one that is "more than merely plausible or reasonable— it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S at 314.  The Court must weigh all facts and inferences, including those that weigh *against* a finding of scienter. *Id.* at 323-24.  If the facts alleged and subject to judicial notice do not create an inference of fraudulent intent that is cogent and at least as compelling as the competing innocent explanation for the same facts, the complaint fails to plead scienter and must be dismissed. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).

IV.     **ARGUMENT**

    A.     **The Complaint Fails To Allege A False Or Misleading Statement**

        1.     **Mr. Cook's Statements Regarding The Launch Of New iPhone Models Were Not False Or Misleading.**

The Complaint fails to allege that Mr. Cook's statements regarding the launch of new iPhone models (Compl. ¶ 57) were materially false or misleading.  Where, as here, a plaintiff alleges that the challenged statements are misleading by way of omission (*id.* ¶ 66), the allegedly omitted facts must be "***inconsistent*** with the [challenged] statements so as to show that the statements must have been false or misleading when made," *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) (emphasis added); *see, e.g.*, *Jasin v. Vivus, Inc.*, 2016 WL 1570164, at *18 (N.D. Cal. Apr. 19, 2016) (disclosures were not misleading because "none of the allegedly omitted issues were inconsistent with Defendant's disclosures"), *aff'd*, 721 F. App'x 665 (9th Cir. 2018); *In re Rigel*, 697 F.3d at 881 (disclosure that omitted adverse facts was not misleading because "the subsequent release of more extensive information" was "not inconsistent with the results that were originally reported"); *Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*, 2018 WL 3126393, at *5 (N.D. Cal. June 6, 2018) (statements were not misleading because "[n]one of the [] omissions contradict the statements"); *In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 946 (N.D. Cal. 2010) (statement was not misleading because omitted facts were "not inconsistent with Accuray's prior representation").  In other words, "[s]tatements are not misleading where they are 'not necessarily inconsistent with the underlying true facts.'"  *Kairalla v. Advanced Med. Optics, Inc.*, 2008 WL 2879087, at *3 (C.D. Cal. June 6, 2008) (citing *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087 n.7 (9th Cir. 2002)).  Here, as explained below, there is no such inconsistency.

**First**, Plaintiff challenges Mr. Cook's statement, made on the November 1, 2018 conference call, that "[t]he Xs and Xs Max got off to a really great start, and we've only been selling for a few weeks."  Compl. ¶ 57.  But the Complaint alleges no specific facts suggesting that the XS and XS Max—which launched on September 21, 2018—did ***not*** get off to a really great start.  Instead, the Complaint points to a November 5, 2018 article in the *Nikkei Asian Review*, which reported that, according to unnamed sources, Apple had "cancel[led]" a

"production boost" for a different newly released iPhone model, the iPhone XR.  *See* Ex. 2; Compl. ¶ 68.  That article says nothing about any changes to the production of the *XS* or *XS Max.*  Thus, nothing in that article is inconsistent with Mr. Cook's statement that those two models "got off to a really great start."

In addition, there is no inconsistency between Mr. Cook's statement that the XS and XS Max "got off to a really great start" after their September 2018 launch, and his later January 2019 statement that the Company "saw, **as the quarter went on**, things like traffic in our retail stores, traffic in our channel partner stores, the reports of the smartphone industry contracting, **particularly bad in November**[.]"  Compl. ¶ 83 (emphasis added).  Inherent in the concept of falsity is the requirement of contemporaneousness—a statement must have been "untrue or misleading **when made**."  *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (emphasis added).  Here, the Complaint contains no specific factual allegations to show that the trends that Apple eventually saw "as the quarter went on" were known to Mr. Cook on November 1, 2018, when he stated that the XS and XS Max "got off to a really great start"—let alone that those trends had any bearing on the question of whether the XS and XS Max got off to a great start.  Nor is it plausible that the import of trends that became "particularly bad in November" were known to Mr. Cook on the **first day** of November, when the challenged statements were made.

**Second**, Plaintiff points to Mr. Cook's November 1, 2018 statement that "[t]he XR, we've only got out there for, I guess, 5 – 5 days or so at this point and so that it's – we have very, very little data there."  Ex. 1 at 12.  But the Complaint alleges no specific facts establishing that this statement was false or misleading at the time it was made.  As the Complaint concedes, the XR did not launch until October 26, 2018—just "5 days or so" before the November 1, 2018 conference call.  *See* Compl. ¶ 7.  While the Complaint cites a November 5, 2018 article which reported that Apple had "cancel[led]" a "production boost" for XR, *see* Ex. 2; Compl. ¶ 68, that article says nothing about **when** Apple decided to cancel the XR "production boost," and there are no particularized facts in the Complaint, from confidential witnesses or otherwise, suggesting that the decision to cancel the "production boost" had already been made by the time Mr. Cook

participated in the November 1, 2018 investor call.[3]  Absent those types of particularized facts, the temporal proximity of the November 5 article to Mr. Cook's November 1 statement is not enough to satisfy the falsity pleading requirements.  *See Yourish*, 191 F.3d at 997 ("We have allowed the temporal proximity of an allegedly fraudulent statement or omission and a later disclosure to bolster a complaint, . . . ***but we have never allowed the temporal proximity between the two, without more, to satisfy the requirements of Rule 9(b)***." (emphasis added)).   As the Ninth Circuit has held, "temporal proximity of an allegedly fraudulent statement or omission and a later disclosure" may "bolster a complaint" but is insufficient to allege falsity in the absence of "other adequately pleaded allegations for the temporal proximity to bolster." *Id.*   Here, the Complaint lacks "other adequately pleaded allegations for the temporal proximity to bolster," and thus the November 5 article is insufficient to support a finding that Mr. Cook's November 1 statement was false or misleading when made.  *See Ronconi*, 253 F.3d at 437 ("Because the complaint's remaining allegations do not comport with the requirements of the PSLRA, the temporal proximity of the statements, in and of itself, is insufficient.").

**Third**, in response to a question from an analyst asking whether the Company was "able to discern any impact on the Xs and Xs Max from buyers potentially waiting for the XR," Mr. Cook stated that "usually, there is some amount of wait until a product shows – another product shows up in look, but in – that – in looking at the data, on the sales data for Xs and Xs Max, there's not obvious evidence of that in the data as I see it."  Compl. ¶ 57.  To the extent Plaintiff intends to assert that Mr. Cook's response is an actionable misstatement, the Complaint fails to allege specific facts establishing that anything in that statement was false or misleading when made.  Plaintiff alleges no facts suggesting that Mr. Cook was aware, as of November 1 or otherwise, that there was an impact on sales of the XS and XS Max from buyers "potentially waiting for the XR."  *Id.*

---

[3] Indeed, the article claims that Apple was "reviewing iPhone demand weekly to adjust orders ***quickly*** in response to the market."  Ex. 2 at 2 (emphasis added).

1

2

**2.      Mr. Cook's Statements Regarding Apple's Business In Greater China Were Not False Or Misleading.**

3      The Complaint likewise fails to allege that Mr. Cook's statements on November 1, 2018

4  regarding Apple's business in Greater China (Compl. ¶ 56) were materially false or misleading.

5  As an initial matter, there is no allegation that there was anything misleading about Mr. Cook's

6  statement that the Company's "business in China was very strong last quarter" and that it "grew

7  16%." *Id.*; Ex. 1 at 10.  Accurate statements of past results like these, even when accompanied by

8  statements of optimism, are not actionable because they "contain no implicit prediction that those

9  events or conditions will continue in the future."  *In re Caere Corp. Sec. Litig.*, 837 F. Supp.

10  1054, 1058 (N.D. Cal. 1993) (citing *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 513 (9th

11  Cir. 1991)); *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1245 (N.D. Cal. 1998).

12      With respect to Mr. Cook's comment that he "would not put China in that category,"

13  Compl. ¶ 56, it is necessary to review the context of the question and answer in order to

14  determine exactly what "category" Mr. Cook is talking about, *see In re Intel Corp. Sec. Litig.*,

15  2019 WL 1427660, at *10 (N.D. Cal. Mar. 29, 2019) (Rogers, J.) ("Courts evaluate defendants'

16  alleged false statements in the context in which they were made, specifically in regard to

17  contemporaneous qualifying or clarifying language."). In response to an analyst comment that

18  "there has been some real deceleration in some of these emerging markets," Ex. 1 at 10, Mr. Cook

19  began his answer by pointing to *historical results from the previous quarter* in other emerging

20  markets where (unlike in China) results had been down or flat:

21

22

23

24

> To give you a perspective in – at some detail, our business at India in Q4 was flat. Obviously, we would like to see that be a huge growth.  Brazil was down somewhat compared to the previous year.  And so I think – or at least the way that I see these is each one of the emerging markets has a bit of a different story.  And I don't see it as some sort of issue that is common between those for the most part.  In relation to China specifically, I would not put China in that category.

25  Compl. ¶ 56; *see also* Ex. 1 at 10.  Read in context, Mr. Cook's statement plainly indicated that

26  he did not put China—with its 16% growth in the previous quarter—in the same category as

27  markets like Brazil or India that were down or flat in the previous quarter.  And the Complaint

28  does not allege that the statement about the 16% growth in Greater China was false.

However, even to the extent that Mr. Cook's statement about not putting China in "that category" is construed as a statement about the Company's current performance (and not just its historical performance for the previous quarter), the Complaint fares no better.  Plaintiff alleges no specific facts establishing that Mr. Cook's statement about China was false *at the time it was made* on November 1, 2018.

**First**, the November 5, 2018 article about a cancelled "boost" of iPhone XR production does not establish that Mr. Cook was aware of trends suggesting that the Company's overall business in Greater China was in decline as of November 1, 2018.  As an initial matter, the November 5, 2018 article relates only to production of the iPhone XR—just one of the three newly-launched iPhone models.  As Plaintiff acknowledges, the XR did not launch until October 26, 2018—just days before the November 1, 2018 conference call.  *See* Compl. ¶ 7.  And the article says nothing about *when* Apple decided to cancel the XR "production boost."  Absent additional factual allegations about the timing of the Company's cancellation of the XR "production boost" (and there are none), the temporal proximity of the November 5 article to Mr. Cook's November 1 statement is not enough to establish the falsity of Mr. Cook's statement about China.  *See Yourish*, 191 F.3d at 997; *Ronconi*, 253 F.3d at 437.

The November 5 article is not probative of falsity for several other reasons.  The article does not indicate that the purported cancellation of a "production boost" was specific to units being manufactured for sale in Greater China, and thus does not exclude the possibility that the Company was adjusting production to account for decreased demand in *other* geographic markets.  Moreover, the cancelled "production boost" referenced in the article relates to only *one* of the three newly released iPhone models.  A decrease in the production of the XR could simply reflect a shift in the expected product mix, not a decline in overall iPhone sales.  Further, it is impossible to ascertain from the November 5, 2018 article whether the referenced "production boost" was necessary for Apple to meet the guidance it had issued several days earlier on November 1, 2018—or, in the alternative, whether the "production boost" would have been additive to the production estimates that were factored into that guidance.  In other words, the article does not exclude the possibility that production and sales of the XR and other models were

continuing to track with the Company's projections even without activation of a potential "production boost" of the XR, whether through enhanced efficiency on existing production lines or otherwise. Indeed, an analyst report issued on the same day that the article was published noted that "similar reports have been seen in past product cycles and [Apple] has managed to navigate those relatively well, partially through ASP uplift." Compl. ¶ 69.

**Second**, as with Mr. Cook's statements about the launch of the new iPhone models, there is no inconsistency between Mr. Cook's November 1, 2018 statement about not putting China in "that category," and his later January 2019 statement that the Company "saw, *as the quarter went on*, things like traffic in our retail stores, traffic in our channel partner stores, the reports of the smartphone industry contracting, *particularly bad in November*[.]" Compl. ¶ 83 (emphasis added). There are no specific allegations to show that the trends that the Company eventually saw "as the quarter went on" existed and were known to Mr. Cook at the time he made his comments on November 1, 2018. Indeed, it is not plausible that trends that became "particularly bad in November" were known to Mr. Cook on the *very first day* of November, when the challenged statements were made.

**B.** **The Complaint Does Not Allege Specific Facts Creating A "Strong Inference" Of Scienter**

Not only does the Complaint fail to plead any actionable misstatement, it also fails to plead specific facts creating a "strong inference" of scienter. "Where, as here, the Plaintiffs seek to hold individuals and a company liable on a securities fraud theory, [the Ninth Circuit] require[s] that the Plaintiffs allege scienter with respect to . . . the individual defendants." *Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*, 774 F.3d 598, 607 (9th Cir. 2014). Moreover, because Section 10(b) scienter requires "some degree of intentional or conscious misconduct," the plaintiffs "must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent" to mislead investors. *In re Silicon Graphics*, 183 F.3d at 977, 979.

Here, the only individual defendant sued under Section 10(b) is Mr. Cook, so Plaintiff must allege Mr. Cook's scienter in order to adequately plead the scienter element of its Section 10(b) claim. Yet Plaintiff wholly fails to meet its burden to allege particularized facts creating a

strong inference that Mr. Cook acted with scienter when he made the challenged statements on the November 1, 2018 conference call. The Complaint contains no accounts from confidential witnesses, no references to Apple internal emails or reports, and no specific facts whatsoever establishing that Mr. Cook was contemporaneously aware—at the time he made the November 1, 2018 statements—that those statements were false or misleading. *See, e.g.*, *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 847 (9th Cir. 2003) (affirming dismissal because "complaint contains no factually particular allegations which strongly imply Defendant's ***contemporaneous*** knowledge that the statement was false when made"). Indeed, the Complaint "does not identify any specific information that was either received or communicated by any Individual Defendant that would contradict any public statement at the time it was made." *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 814 (N.D. Cal. 2019). In short, Plaintiff "fails to allege ***when*** and ***how***" Mr. Cook "became aware of any facts giving rise to inference of scienter." *Id.*

Instead, the Complaint relies on after-the-fact press reports, and a purported "admission" made by Mr. Cook in January 2019, in an attempt to establish that Mr. Cook's November 1, 2018 statements were made with scienter. But as explained below, nothing in those after-the-fact statements creates a strong inference that Mr. Cook acted with scienter.

Nor does Plaintiff's Complaint offer any plausible, much less cogent and compelling, theory of scienter. As Plaintiff would have it, Mr. Cook chose to mislead the market about the Company's prospects, knowing full well that the truth would come out a few months later when Apple would release its earnings, while selling no stock and thus not personally profiting from the purported lie, and while the Company was spending over $1 billion to repurchase its own stock at allegedly inflated prices. This theory "does not make a whole lot of sense" and "does not resonate in common experience." *Nguyen*, 962 F.3d at 415 (holding that complaint failed to plead a strong inference of scienter where plaintiff's theory was that defendants "were promising FDA approval for a medical device application they knew was 'unapprovable,' misleading the market all the way up to the point that defendants were 'unable to avoid the inevitable,'" while failing to personally profit in any way). "And the PSLRA neither allows nor requires [the Court] to check [its] disbelief at the door." *Id.*

1.   **Mr. Cook's January 2, 2019 Comments Do Not Give Rise To A Strong Inference of Scienter**

The Complaint alleges that in his January 2, 2019 CNBC interview, Mr. Cook purportedly "admitted facts indicating that the Company had, in fact, been seeing declines in and before November 2018, including in traffic in the Company's retail stores, its channel partner stores, and reports of the contraction in the smartphone industry." Compl. ¶ 36.  But a review of Mr. Cook's actual comments reveals that he made no such admission.  Here are Mr. Cook's words:

> And so we saw, **as the quarter went on**, things like traffic in our retail stores, traffic in our channel partner stores, the reports of the smartphone industry contracting, **particularly bad in November** – I haven't seen the December number yet, but I would guess that would not be good either.  And so that's what we've seen.

*Id.* (emphasis added).  Mr. Cook did not say **when** in the quarter, or **when** in November, Apple saw these things.  The Complaint contains no specific facts to show that the trends that Apple saw "as the quarter went on" were known to Mr. Cook when he made his statements on November 1. Nor is it plausible, let alone cogent and compelling, that trends that became "particularly bad in November" were known to Mr. Cook on the **very first day** of November.  In the Ninth Circuit, "[a]n after-the-fact statement does not constitute an admission unless it contradicts the substance of an earlier statement and essentially states 'I knew it all along.'" *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020) (citations omitted); *Jui-Yang Hong v. Extreme Networks, Inc.*, 2017 WL 1508991, at *21 (N.D. Cal. Apr. 27, 2017) ("In considering whether a subsequent statement is sufficient to demonstrate the falsity of a prior statement, the Ninth Circuit assesses whether the statement is along the lines of 'I knew it all along.'"); *see also Ronconi*, 253 F.3d at 432-33.  Mr. Cook's January 2019 statement does no such thing.

2.   **The Report Of A Cancelled "Production Boost" For The XR iPhone Model Does Not Give Rise To A Strong Inference Of Scienter**

The Complaint further cites the anonymously sourced November 5, 2018 *Nikkei Asian Review* article, which reported that Apple had "cancel[led]" a "production boost" for the newly released iPhone XR.  *See* Ex. 2; Compl. ¶ 68.  As an initial matter, the article cannot be probative of scienter because it does not name or otherwise provide sufficient identifying details about the

unnamed sources on which it relies. When a complaint relies on confidential witnesses, those witnesses must be described "with sufficient particularity to establish their reliability and personal knowledge." *Zucco*, 552 F.3d at 995. Courts have applied a similar standard to allegations based on anonymous sources in news articles. *See, e.g.*, *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1172 (C.D. Cal. 2007) (allegations based on anonymously sourced news reports "do Plaintiffs little good because they provide no specific facts to corroborate the reliability of the report, nor is the reliability corroborated by the fact it was referenced in the newspaper"); *In re Neustar Sec. Litig.*, 83 F. Supp. 3d 671, 686 (E.D. Va. 2015) (discounting allegations based on anonymous sources where the court had "no way to assess the credibility of anonymous sources quoted in the article, whether the sources have personal knowledge of the events described, and whether the sources were in a position to learn of such events personally").

Here, the *Nikkei Asian Review* article does not provide ***any*** details from which to infer that its unnamed sources had any personal knowledge of the circumstances they purported to describe. It is not clear at all whether the article's anonymous sources—described only as a "source familiar with the situation" and "supply chain sources"—even worked at any of the iPhone assemblers referenced in the article (Foxconn and Pegatron), let alone whether those sources had any personal knowledge concerning Apple's purported "plans" for "additional production lines dedicated to" to the iPhone XR, or the Company's purported decision to "halt" those plans. Compl. ¶ 69; *see* Ex. 2. And the article certainly does not suggest that the unnamed sources worked at Apple, much less that they had any personal knowledge relevant to the question of whether Mr. Cook's November 1, 2018 statements were made with scienter. *Cf. Zucco*, 552 F.3d at 996-98 (allegations based on anonymous witness reports did not create a strong inference of scienter where the complaint "does not provide the requisite particularity to establish that certain statements of these confidential witnesses are based on the witnesses' personal knowledge," "some of the confidential witnesses were simply not positioned to know the information alleged, many report only unreliable hearsay, and others allege conclusory assertions of scienter").

In any event, the article does not say ***when*** Apple purportedly decided to cancel the XR "production boost." Given the fact that the iPhone XR was not released until October 26, 2018—

just days before the November 1, 2018 conference call, *see* Compl. ¶ 7—it is not implausible that the decision to "cancel" the "production boost" would have been made sometime between November 1 and November 5.  Indeed, as noted above, the article itself claims that Apple was "adjust[ing] orders *quickly* in response to the market."  Ex. 2 at 2 (emphasis added).  The Complaint contains no particularized facts, from confidential witnesses or otherwise, suggesting that the decision to cancel the "production boost" had already been made by November 1, let alone that it was known to Mr. Cook, or that even if known to Mr. Cook, would have changed Apple's guidance or his comments, by the time Mr. Cook participated in the November 1 investor call.  Absent those types of particularized facts, the temporal proximity of the November 5 article to Mr. Cook's November 1 statement is not sufficient, standing alone, to support the required strong inference of scienter under applicable Ninth Circuit precedent.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 622 (9th Cir. 2017) (explaining that "temporal proximity of an allegedly fraudulent statement or omission and a later disclosure" is insufficient on its own to establish scienter and can only "bolster" an inference based on other allegations).  In the Ninth Circuit, "[a]lthough temporal proximity can sometimes constitute circumstantial evidence of scienter, the timing of a disclosure alone cannot establish a strong inference of scienter *or even contribute strongly to such an inference*."  *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *20 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019) (emphasis added; citations omitted).

> **3.     The Complaint's Allegations Do Not Give Rise To A Reasonable Inference of Scienter, Much Less One That Is Cogent And At Least as Compelling As The Alternative Innocent Explanation**

Plaintiff's failure to plead a strong inference of scienter is most glaring when examined under *Tellabs*' holistic analysis.  *See* 551 U.S. at 323-24, 326.  Under this comparative inquiry, the Court must "compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference."  *Zucco*, 552 F.3d at 991.

The Complaint's allegations, viewed holistically, do not create even a ***reasonable*** inference of scienter, much less a cogent one.  The Ninth Circuit's recent decision in *Nguyen v.*

1   *Endologix*, issued after this Court's ruling on the motion to dismiss the Consolidated Amended

2   Complaint, is instructive.  There, the plaintiff's "core theory [was] that defendants made false and

3   misleading statements about whether the FDA was likely to approve [a medical device called]

4   Nellix."  962 F.3d at 415.  The plaintiff alleged "that defendants knew the FDA would not

5   approve Nellix, or at least that it would not do so on the timeline defendants were telling the

6   market."  *Id.*  In holding that the complaint failed to satisfy the PSLRA's "strong inference" of

7   scienter standard, the Court explained:

> [W]hy would defendants promise the market that the FDA would approve Nellix
> if defendants knew the FDA would eventually figure out that Nellix could not be
> approved . . . ? ***The theory does not make a whole lot of sense.***  It depends on the
> supposition that defendants would rather keep the stock price high for a time and
> then face the inevitable fallout once Nellix's "unsolvable" migration problem was
> revealed.  If defendants had sought to profit from this scheme in the interim, such
> as by selling off their stock or selling the company at a premium, the theory might
> have more legs....  [But] [t]here are no factual allegations like that here.  Instead,
> we are asked to accept the theory that defendants were promising FDA approval
> for a medical device application they knew was "unapprovable," misleading the
> market all the way up to the point that defendants were "unable to avoid the
> inevitable."
>
> The allegation does not resonate in common experience.  ***And the PSLRA neither
> allows nor requires us to check our disbelief at the door*** . . . .

16   *Id.* (emphases added).

17   This analysis applies with equal force here.  Why would Mr. Cook knowingly lie on

18   November 1, 2018 about iPhone demand and the Company's prospects in Greater China,

19   knowing that the allegedly misrepresented true state of affairs would inevitably be revealed just a

20   few months later when Apple would release its quarterly earnings?  The Complaint fails to

21   identify any plausible motive for Mr. Cook to engage in this irrational course of conduct.  *See,

22   e.g.*, *Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*, 445 F. App'x 368, 370 (2d Cir. 2011)

23   (holding that complaint failed to plead a strong inference of scienter, and noting that "[t]he

24   complete absence of any motive to commit fraud . . . is underscored by the fact that [defendants']

25   alleged misstatements concerning the Company's quarterly earnings prospects were made no

26   more than a few weeks before GE would inevitably be required to report its quarterly earnings to

27   the market").  There is no allegation that ***any*** Defendant, much less Mr. Cook, profited from the

28   alleged fraud, and the Complaint makes no attempt to explain how Defendants benefitted in any

way by committing fraud, knowing that their alleged fraud would be exposed in two months.  For example, there are no allegations that Mr. Cook or Mr. Maestri took advantage of an artificially inflated share price by selling their Apple stock during the Class Period, and as the Ninth Circuit has recognized, "a lack of stock sales can detract from a scienter finding."  *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018).  *Tellabs* instructs courts to consider all inferences, and the fact that the Individual Defendants did not sell any Apple stock means that they stood to ***lose*** money in January 2019 when the "truth" of the alleged fraud would be revealed in Apple's earnings.  *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1427 (9th Cir. 1994) (finding no scienter where defendants "sold only a minuscule fraction" of their stock and thus "ended up reaping the same large losses as did Plaintiffs"); *Schuster v. Symmetricon, Inc.*, 2000 WL 33115909, at *7 (N.D. Cal. Aug. 1, 2000) (fact that "defendants were actually harmed by their alleged fraud often negates an inference of scienter").

Moreover, between November 4, 2018 and December 1, 2018, all within the Class Period, Apple spent approximately ***$1.35 billion*** to repurchase 6,681,000 shares of its own stock.  *See* Ex. 4.  These repurchases would have made no sense if, as Plaintiff contends, Defendants knew that Apple's stock price was artificially inflated due to the alleged fraud.  Simply put, "it is illogical that [Apple] would have been repurchasing its shares had it been aware of facts that would indicate the price would fall."  *In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *8 (N.D. Cal. Mar. 29, 2013) (citing *In re Tibco Software Sec. Litig.*, 2006 WL 1469654, *21 (N.D. Cal. May 25, 2006)); *Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 933 (N.D. Cal. 2017) (same); *see also Costabile v. Natus Med. Inc.*, 2018 WL 7134363, at *5 n.5 (N.D. Cal. Dec. 18, 2018) ("[S]tock repurchase programs . . . negate a finding of scienter."); *Matthews v. Centex Telemanagement, Inc.*, 1994 WL 269734, at *8 (N.D. Cal. 1994) ("It would have made no sense to purchase that stock if defendants knew the prices to be inflated.").

Thus, like the plaintiff in *Nguyen*, Plaintiff is asking the Court to accept a theory of fraud that "does not make a whole lot of sense."  962 F.3d at 415.  As *Nguyen* makes clear, "the PSLRA neither allows nor requires [the Court] to check [its] disbelief at the door," and a theory of fraud like the one here that "does not resonate in common experience" does not satisfy the

PSLRA's "strong inference" of scienter standard.  *Id.*  Here, the opposing innocent inferences, including those arising from Apple's stock repurchases and Mr. Cook's (and Mr. Maestri's) lack of stock sales, far outweigh any inference of fraud.  Defendants' lack of fraudulent intent is further evidenced by the fact that when economic conditions in China deteriorated more severely than the Company had anticipated, causing revenue to be projected to come in lower than expected, Defendants did not wait until the release of Apple's financial results to inform the market about the Company's guidance miss, as they were permitted to do under SEC rules.  They instead chose to proactively inform the market about the lower-than-expected revenue almost a month early, on January 2, 2019.  *Cf. Webb*, 884 F.3d at 856 (fact that defendants "were forthcoming with the public" regarding adverse facts undermined scienter inference).

Against this backdrop, the most cogent and compelling inference is that Defendants simply did not, on November 1, 2018, "foresee the magnitude of the economic deceleration [in Q1 FY 2019], particularly in Greater China," Ex. 3 at 2, as the January 2 letter to Apple investors stated.  As a matter of law, such an inference precludes a securities fraud claim.

**C.      The Section 20(a) Claim Should Be Dismissed**

Section 20(a) claims may be dismissed summarily "if a plaintiff fails to adequately plead a primary violation of [S]ection 10(b)."  *Zucco*, 552 F.3d at 990.  Because Plaintiff fails to plead a primary violation of Section 10(b), its Section 20(a) claim must likewise be dismissed.

Even if Plaintiff had adequately pled a primary violation of Section 10(b)—and it has not—Plaintiff nonetheless fails to plausibly allege control person liability under Section 20(a) as to Mr. Maestri.  The Ninth Circuit has held that plaintiffs asserting control-person liability claims must plead "that the defendant exercised actual power or control over the primary violator[.]"  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (citation omitted).  Plaintiffs "cannot rely 'on boilerplate allegations; they must provide some factual support that defendants were in a position to control a primary violator.'"  *Sgarlata v. PayPal Holdings, Inc.*, 2018 WL 6592771, at *8 (N.D. Cal. Dec. 13, 2018) (citation omitted).

Mr. Maestri is not alleged to be a "speaker" with respect to the narrow set of alleged misstatements that remain in the case, all of which were made by Apple's CEO, Mr. Cook, on the

1   November 1, 2018 conference call.  *See* Compl. ¶¶ 56-57.  While Plaintiff asserts generally that

2   Mr. Maestri spoke on the same conference call, Plaintiff fails to plead any facts to suggest that

3   Mr. Maestri exercised actual power or control over his boss, Mr. Cook.  Indeed, Plaintiff does

4   not, and cannot, allege how Mr. Maestri, a subordinate of Mr. Cook, ***could have*** plausibly

5   controlled Mr. Cook's verbal responses to questions asked by analysts on the conference call.  *See*

6   *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1194 (C.D. Cal. 2007)

7   (dismissing Section 20(a) claim against a Vice President where there were no allegations that he

8   "was able to exercise control over the other 10b-5 Defendants when the other 10b-5 Defendants

9   held positions of Vice President or higher"); *In re Energy Recovery Inc. Sec. Litig.*, 2016 WL

10  324150, at *26 (N.D. Cal. Jan. 27, 2016) (dismissing Section 20(a) claim against subordinate

11  officer where there was "no allegation that she directed or exercised control over [the CEO] who

12  allegedly made the false and misleading statements").  Accordingly, for these additional reasons,

13  the Section 20(a) claim should be dismissed as to Mr. Maestri.

14  **V.   <u>CONCLUSION</u>**

15      For these reasons, the Complaint should be dismissed.

16

17  Dated: July 13, 2020              ORRICK, HERRINGTON & SUTCLIFFE LLP

18

19                          _____*/s/ James N. Kramer*_____
                                            James N. Kramer

20                              Attorneys for Defendants Apple Inc.,
21                              Timothy Cook, and Luca Maestri

22

23

24

25

26

27

28