1  ROBBINS GELLER RUDMAN
   & DOWD LLP
2  SHAWN A. WILLIAMS (213113)
   DANIEL J. PFEFFERBAUM (248631)
3  KENNETH J. BLACK (291871)
   HADIYA K. DESHMUKH (328118)
4  Post Montgomery Center
   One Montgomery Street, Suite 1800
5  San Francisco, CA  94104
   Telephone:  415/288-4545
6  415/288-4534 (fax)
   shawnw@rgrdlaw.com
7  dpfefferbaum@rgrdlaw.com
   kennyb@rgrdlaw.com
8  hdeshmukh@rgrdlaw.com
      – and –
9  MARK SOLOMON (151949)
   TOR GRONBORG (179109)
10 DANIELLE S. MYERS (259916)
   JUAN CARLOS SANCHEZ (301834)
11 655 West Broadway, Suite 1900
   San Diego, CA  92101
12 Telephone:  619/231-1058
   619/231-7423 (fax)
13 marks@rgrdlaw.com
   torg@rgrdlaw.com
14 dmyers@rgrdlaw.com
   jsanchez@rgrdlaw.com
15
   Lead Counsel for Lead Plaintiff
16
              UNITED STATES DISTRICT COURT
17
             NORTHERN DISTRICT OF CALIFORNIA
18
                  OAKLAND DIVISION
19

| In re APPLE INC. SECURITIES LITIGATION | ) | Case No. 4:19-cv-02033-YGR |
|---|---|---|
| | ) | |
| | ) | CLASS ACTION |
| This Document Relates To: | ) | |
| | ) | LEAD PLAINTIFF'S OPPOSITION TO |
| ALL ACTIONS. | ) | DEFENDANTS' MOTION TO DISMISS |
| | ) | THE REVISED CONSOLIDATED CLASS |
| | ) | ACTION COMPLAINT |
| | ) | |
| | ) | DATE: TBD |
| | ) | TIME: TBD |
| | ) | CTRM: 1, 4th Floor |
| | ) | JUDGE: Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    RELEVANT PROCEDURAL HISTORY ...........................................................4

III.   LEGAL STANDARDS ........................................................................................5

IV.    ARGUMENT .......................................................................................................6

     A.     As This Court Has Already Found, the Revised Complaint Adequately
           Alleges the Falsity of Defendant Cook's November 1, 2018 Statements..............6

          1.     Defendants' Statements Concerning Business Conditions in China
               Were Materially False and Misleading ...................................................7

          2.     Defendants' Statements Concerning Sales of the New iPhone XS,
               XS Max and XR Were Materially False and Misleading ........................10

               a.     The Revised Complaint Alleges Additional Corroborative
                    Facts that Confirm Weak iPhone Demand.....................................11

               b.     Temporal Proximity Between the Alleged False Statements
                    and Disclosure of True Contrary Facts Are Highly
                    Probative of Falsity........................................................................12

     B.     As the Court Previously Found, the Combination of Temporal Proximity,
           Core Operations and Defendants' Admissions Raises a Strong Inference of
           Scienter ............................................................................................................15

          1.     Defendants' Admitted Knowledge of Slowing Trends in China Is
               Sufficient to Plead a Strong Inference of Scienter....................................15

          2.     The Importance of China and the Temporal Proximity of
                Defendants' False Statements and Corrective Disclosures Bolster a
                Strong Inference of Scienter ...................................................................17

     C.     Defendants' Improper Injection of Extrinsic Evidence Concerning
           Absence of Financial Motive Is Irrelevant and Unpersuasive ...............................19

          1.     The Absence of Insider Stock Sales During the Class Period Was
                Considered and Already Rejected by the Court in Finding Scienter.........20

          2.     Apple's Stock Repurchases, if Not Irrelevant, Supports a Strong
                Inference of Scienter .............................................................................21

     D.     Holistically Considered, Plaintiff's Allegations of Scienter Are
           Reasonable, Strong and More Compelling than Any Opposing Inference...........23

     E.     Control Person Liability Is Alleged as to Defendant Maestri...............................24

V.     CONCLUSION...................................................................................................25

1

## TABLE OF AUTHORITIES

2

Page

3

**CASES**

4

*Berson v. Applied Signal Tech., Inc.*,
5
    527 F.3d 982 (9th Cir. 2008) ...................................................................... *passim*

6

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Techs., Inc.*,
7
    856 F.3d 605 (9th Cir. 2017) ...................................................................18

8

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995) ...................................................................18

9

*Flynn v. Sientra, Inc.*,
10
    2016 WL 3360676 (C.D. Cal. June 9, 2016) ...................................................18, 21

11

*Hatamian v. Advanced Micro Devices, Inc.*,
    87 F. Supp. 3d 1149 (N.D. Cal. 2015) ...................................................................9, 14

12

*Howard v. Everex Sys., Inc.*,
13
    228 F.3d 1057 (9th Cir. 2000) ...................................................................25

14

*In re Aqua Metals, Inc. Sec. Litig.*,
15
    2019 WL 3817849 (N.D. Cal. Aug. 14, 2019) ...................................................................25

16

*In re BofI Holding, Inc. Sec. Litig.*,
    2017 WL 2257980 (S.D. Cal. May 23, 2017) ...................................................................25

17

*In re Caere Corp. Sec. Litig.*,
18
    837 F. Supp. 1054 (N.D. Cal. 1993) ...................................................................9

19

*In re Convergent Techs. Sec. Litig.*,
    948 F.2d 507 (9th Cir. 1991) ...................................................................9

20

*In re Energy Recovery Inc. Sec. Litig.*,
21
    2016 WL 324150 (N.D. Cal. Jan. 27, 2016) ...................................................................25

22

*In re Equifax Inc. Sec. Litig.*,
23
    357 F. Supp. 3d 1189 (N.D. Ga. 2019) ...................................................................12

24

*In re Extreme Networks, Inc. Sec. Litig.*,
    2018 WL 1411129 (N.D. Cal. Mar. 21, 2018) ...................................................................18

25

*In re Lattice Semiconductor Corp. Sec. Litig.*,
26
    2006 U.S. Dist. LEXIS 262 (D. Or. Jan. 3, 2006) ...................................................................15, 16

27

*In re LDK Solar Sec. Litig.*,
28
    584 F. Supp. 2d 1230 (N.D. Cal. 2008) ...................................................................11

LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE REVISED
CONSOLIDATED CLASS ACTION COMPLAINT - 4:19-cv-02033-YGR
4817-7998-5861.v1-7/27/20

- ii

1

2
**Page**

3

4
*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
  78 F. Supp. 3d 1215 (N.D. Cal. 2015) ...................................................................16

5
*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ...............................................................................6

6

7
*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017),
  *cert. denied*, _U.S._, 139 S. Ct. 589 (2018).....................................................6, 10

8

9
*In re VeriFone Holdings, Inc. Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012) ................................................................................23

10

11
*In re Wash. Mut. Inc. Sec. Derivative & ERISA Litig.*,
  694 F. Supp. 2d 1192 (W.D. Wash. 2009)............................................................16

12
*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018),

13
  *cert. denied sub nom. Hagan v. Khoja*,

14
  _U.S._, 139 S. Ct. 2615 (2019)...................................................................... *passim*

15
*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
  513 F.3d 702 (7th Cir. 2008) ................................................................................24

16

17
*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011).......................................................................................5, 6, 11

18
*Miller v. Thane Int'l, Inc.*,
  519 F.3d 879 (9th Cir. 2008) ............................................................................6, 9

19

20
*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th. Cir. 2020) ........................................................................23, 24

21

22
*No. 84. Emp'r Teamster Joint Council Pension Tr. Fund v. Am. W. Holding
  Corp.*,

23
  320 F.3d 926 (9th Cir. 2003) ................................................................................21

24
*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)................................................................................................9

25

26
*Purple Mountain Tr. v. Wells Fargo & Co.*,
  432 F. Supp. 3d 1095 (N.D. Cal. 2020) .............................................................9, 15

27

28

Page

*Rabkin v. Lion Biotechnologies, Inc.*,
 2018 WL 905862 (N.D. Cal. Feb. 15, 2018) ..........................................................................25

*Reese v. Malone*,
 747 F.3d 557 (9th Cir. 2014) ...................................................................................6, 17, 19

*Ret. Trust v. RH, Inc.*,
 302 F. Supp. 3d 1028 (N.D. Cal. 2018) ..................................................................................13

*Retail Wholesale & Dept's Store Union Local 338 Ret. Fund*
 *v. Hewlett-Packard Co.*,
 845 F.3d 1268, 1275 (9th Cir. 2017) .......................................................................................6

*Rihn v. Acadia Pharm. Inc.*,
 2016 WL 5076147 (S.D. Cal. Sept. 19, 2016) .......................................................................17

*Roberti v. OSI Sys., Inc.*,
 2015 WL 1985562 (C.D. Cal. Feb. 27, 2015) ........................................................................17

*S. Ferry LP #2 v. Killinger*,
 687 F. Supp. 2d 1248 (W.D. Wash. 2009)..............................................................................17

*S. Ferry LP, No. 2 v. Killinger*,
 542 F.3d 776 (9th Cir. 2008) ..................................................................................................16

*S.E.C. v. Todd*,
 642 F.3d 1207 (9th Cir. 2011) ................................................................................................25

*Shenwick v. Twitter, Inc.*,
 282 F. Supp. 1115 (N.D. Cal. 2017) .......................................................................................21

*Siracusano v. Matrixx Initiatives, Inc.*,
 585 F.3d 1167 (9th Cir. 2009),
 *aff'd*, 563 U.S. 27 (2011) .......................................................................................................20

*Tellabs v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007)..........................................................................................15, 16, 20, 23

*Thomas v. Magnachip Semiconductor Corp.*,
 167 F. Supp. 3d 1029 (N.D. Cal. 2016) .................................................................................16

*Welgus v. TriNet, Grp. Inc.*,
 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017),
 *aff'd* 785 F. App'x 239 (9th Cir. 2019)...................................................................................18

1

2                                                                                    **Page**

3

*Yourish v. Cal. Amplifier*,
    191 F.3d 983 (9th Cir. 1999) ................................................................18

4

5   **STATUTES, RULES AND REGULATIONS**

6
15 U.S.C.
    §78j(b) ..............................................................................................6
    §78u-4(b)(1)(B) ...............................................................................6
    §78u-4(b)(2)(A) ..............................................................................15

7

8

9   Federal Rules of Civil Procedure
    Rule 12 ...........................................................................................11

10

11  **SECONDARY AUTHORITIES**

12  Karen Brettell, David Gaffin & David Rohde, *Stock buybacks enrich the bosses
    even when business sags*, Reuters (December 10, 2015 5:00 PM) ..........................................22

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE REVISED
CONSOLIDATED CLASS ACTION COMPLAINT - 4:19-cv-02033-YGR                        - v -
4817-7998-5861.v1-7/27/20

I.    INTRODUCTION

To date, Apple Inc. ("Apple" or the "Company") has filed four briefs, and accompanying exhibits, totaling more than 550 pages, aimed at defeating this action at the pleading stage.  The allegations however are concise (40 pages) and compelling.  Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund ("Plaintiff" or "Norfolk") alleges a straightforward theory of fraud involving just two false statements during a two-month Class Period[1] that the Court has already upheld.  Specifically, on November 1, 2018, in response to investors' concern about worsening economic conditions in China – the Company's largest growth region – Defendant[2] Cook falsely assured the market that Apple's business there was not being affected by widely publicized trade tensions with the United States and decelerating economic conditions affecting other emerging markets ("EM").  ¶56.[3]  In addition, Cook said that sales of the Company's new premium iPhone XS and XS Max, which launched in September 2018, "were off to a really great start," and that insufficient data was available to assess sales performance for the iPhone XR, released in October.  ¶57.  Both statements were false.  But the investment community was encouraged by the news, and analysts reported that "demand trends [we]re solid for the three new iPhone models" (¶61), and that "Apple continues to see solid growth in EM countries like China" (¶63).

The truth, however, began to leak out almost immediately.  A series of negative reports revealed that Apple had already cancelled orders from its supply chain partners which signaled weak demand for the newly released iPhones.  ¶68.  For example, on *November 5, 2018*, the *Nikkei Asian Review* reported that Apple reduced iPhone XR production by 100,000 iPhones per day at its

---

[1]    The "Class Period" is from November 2, 2018 through January 2, 2019, inclusive.

[2]    "Defendants" are Apple and the "Individual Defendants" Timothy D. Cook ("Cook") and Luca Maestri ("Maestri").

[3]    All "¶_" and "¶¶__" references are to the Revised Consolidated Class Action Complaint for Violation of the Federal Securities Laws (ECF No. 114) ("Revised Complaint") unless otherwise indicated.  All terms not otherwise defined herein have the same meaning as defined in the Revised Complaint.

1    manufacturers *in China* (¶68);[4] the same day, *Barron's* reported demand for the iPhone XR was

2    down from 20% to 25% from the original forecast (¶70); on ***November 12, 2018***, Wells Fargo

3    reported that component supplier Lumentum, cut its outlook, reflecting a 30% cut in iPhone demand

4    (¶¶29, 74); on ***November 14, 2018***, Guggenheim downgraded Apple due to growing risk of softer

5    iPhone demand in China (¶76); on ***December 4, 2018***, *Bloomberg* reported that in ***October 2018***,

6    Apple made marketing changes in a "fire drill" response to weak iPhone XS and XS Max sales

7    (¶¶31, 78).

8           Then, on January 2, 2019, Apple was forced to publish a shareholder letter reporting that it

9    would miss its 1Q19 revenue expectations by up to ***$9 billion*** – its first pre-announced revenue miss

10   in 15 years.  ¶¶33, 82.  The culprit: ***weak iPhone sales in China***.  ¶¶82-83.  After the letter, Cook

11   took to CNBC, the most prominent investor news channel, to explain what happened.  He was

12   unequivocal:  Contrary to the assurances on November 1, 2018, that China was specifically ***not*** in

13   the category of emerging markets where the Company was seeing a risk of deceleration or volatility,

14   Cook admitted that China was the epicenter of economic deceleration for Apple's sales – 100% of

15   the Company's revenue decline occurred in China, and nearly all of it was due to poor iPhone sales.

16   ¶83.  More shocking was Cook's admission that Apple knew of, but concealed, negative trends in

17   China throughout the quarter which began on September 30, 2018.  According to Cook, economic

18   conditions in China began declining in the "second half of 2018," *i.e.*, since July 2018, and Apple

19   had seen evidence of deceleration in its business in China throughout the quarter, including declining

20   traffic in Apple retail stores in China, its channel partner stores in China, as well as reports of the

21   smartphone industry contracting in China.  ¶83.

22          Investors were enraged by the belated revelation of the truth and the stock price plummeted

23   more than $15.00 per share, or 10%, as a result of the January 2, 2019 disclosure.  Analysts and

24   news media impugned Cook's credibility and accused Defendants of misleading investors:

25

26

27   ─────────────────
     [4]   *Nikkei Asian Review* article titled "Apple cancels Production boost for budget iPhone XR:
     sources," (the "Nikkei Article").

28

- "*Cook said two months ago that China business was 'very strong'* even amid signs of an economic slowdown . . . . *Why didn't Cook make any of these admissions before now*?" ¶86.

- Apple "*failed to keep it real with investors about what they were seeing in iPhone demand data in late 2018*." ¶89.

- "*Apple stock could be 'broken' until credibility is restored*." *Id.*

This Court has already substantively analyzed these factual allegations in a thorough 46-page Order (ECF No. 110) ("MTD Order") issued on June 2, 2020, and found them sufficient to meet the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). *See* MTD Order at 19, 42.

> [P]laintiff challenges defendants' statements on the Q4 FY18 earnings call about positive iPhone sales, as well positive business outlook in China. Plaintiff alleges that sales in China were declining during this time period, and Apple reportedly told its suppliers to halt additional productional lines for the iPhone mere days after making the statement. And two months later, Cook admitted to investors that lower than anticipated iPhone revenue "primarily in Greater China" led to missed guidance. *Drawing all inferences in favor of plaintiff, the earlier statements were either false or misleading*.

> *       *       *

> The close temporal proximity of defendants' optimistic and pessimistic statements suggests scienter when the first statements were made. Defendants challenge this argument because they claim the statements do not show that on *November 1, 2018* (*i.e.*, four days before production lines were first cut), defendants had knowledge that demand for new iPhones would fall or that Chinese economic conditions were deteriorating. However, combined with plaintiff's allegations that China represented a critically important market for Apple for which the Company was carefully tracking sales – as well as the admission that defendants "saw" as "the quarter went on" negative business indicators in China – *plaintiff adequately raises an inference of scienter*.

*Id.* (emphasis in original).

Pursuant to the MTD Order, and following Norfolk's June 19, 2020 appointment as Lead Plaintiff (ECF No. 113), Plaintiff filed the Revised Complaint "consistent with th[e] Order," as directed. MTD Order at 46. Defendants unhappy with the Court's decision, did not wait for the Revised Complaint to be filed before they demanded a do-over. Indeed, one week before the Revised Complaint was due, Apple – among the richest and most influential companies in the world – filed a brief complaining that it did not have a fair chance to respond to Plaintiff's arguments,

1   despite the Court's explicit instruction for Apple to address it, and its according response.  ECF No.

2   111 ("Motion for Leave").  Now, despite being granted a new round of briefing, Defendants simply

3   repeat the same arguments they've already lost, but without the burden of the rules governing

4   motions for reconsideration, *i.e.*, requiring a material difference in law or fact, the emergence of new

5   facts or change in law or a manifest failure by the court (Civil Local Rules ("Civ. L.R.") 7-9(b)) as

6   well as the prohibition on repeated arguments (Civ. L.R. 7-9(c)).  They still fail.

7   **II.      RELEVANT PROCEDURAL HISTORY**

8           On August 14, 2019, the Court issued an Order appointing Lead Plaintiff and set a briefing

9   schedule for Apple's motion to dismiss which permitted Norfolk (who was not initially selected to

10  serve as Lead Plaintiff) to "request to file a brief supplementing the arguments made in [the

11  appointed] Lead Plaintiff's [motion to dismiss] opposition," limited to five pages.  ECF No. 72 at 24.

12          On October 15, 2019, the former lead plaintiff filed a consolidated complaint asserting a

13  class period of August 2, 2017 through January 2, 2019, inclusive.  ECF No. 85 ("CCAC").

14          On December 16, 2019, Defendants' filed a 40-page motion to dismiss (15 more pages than

15  Civ. L.R. 7 permits).  ECF No. 91 ("MTD I").

16          On February 7, 2020, Plaintiff filed a five page brief arguing, among other things, that the

17  temporal proximity of Defendants' misrepresentations, the subsequent disclosures of production

18  cancellations, and the Company's later admissions, satisfied the PSLRA pleading requirements.

19  ECF No. 101.

20          On February 19, 2020, the Court issued an Order providing Defendants additional time to file

21  a reply "so that it can address the arguments made [in Norfolk's 5-page brief]."  ECF No. 102.

22          On February 24, 2020, Defendants filed a reply brief, including a response to Plaintiff's

23  arguments that the temporal proximity between a statement and a later disclosure were insufficient to

24  plead falsity or scienter.  ECF No. 103 ("MTD I Reply") at 19-20.

25          On March 11, 2020, the Court held oral argument on Defendants' motion to dismiss in which

26  they asserted arguments on the same issues presented in the current motion including:

27

28

LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE REVISED
CONSOLIDATED CLASS ACTION COMPLAINT - 4:19-cv-02033-YGR                                          - 4 -

- Temporal Proximity and Admissions: "[The] 2019 CNBC discussion [is] not contemporaneous with November when the guidance was given."  ECF No. 108 ("MTD Hrg. Tr.") at 52.

- Absence of Insider Sales: "[T]here is not a single sale of stock . . . between the time of the guidance and . . . January 2nd."  *Id.* at 38.

- Share Repurchases: "You've got a company buying back all of its stock . . . while the fraud is occurring and don't profit their own – to themselves."  *Id.* at 38-39.

On June 2, 2020, the Court issued the MTD Order, granting Defendants' motion with respect to all but two statements made by Cook on November 1, 2018.  The Court directed Plaintiff to file the Revised Complaint consistent with the MTD Order and directed Defendants to file an answer.

On June 16, 2020, claiming a failure of due process, Defendants filed their Motion for Leave to file a second motion to dismiss, asserting that the new complaint was certain to contain new claims to which they were entitled to respond.  It does not.  However, on June 29, 2020, the Court granted Defendants' Motion for Leave.  ECF No. 117.

On June 23, 2020, as directed by the Court, Plaintiff filed the Revised Complaint alleging the same two statements made by Cook, on behalf of Apple, which the Court found actionable during the November 2, 2018 through January 2, 2019 Class Period.[5]

## III.   LEGAL STANDARDS

To adequately state a claim under §10(b) of the Exchange Act, a plaintiff must plead: "'(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'"  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).[6]  By specifically alleging the "'who, what, when, where, and how' of the fraud," Plaintiff's claims meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008

---

[5]   Consistent with the MTD Order, the Revised Complaint does not allege a §10(b) of the Securities Exchange Act of 1934 ("Exchange Act") claim against Maestri (without prejudice to later amendment).  The Revised Complaint continues to name Maestri as a Defendant under §20(a) of the Exchange Act.

[6]   All citations and footnotes omitted and emphasis added unless otherwise indicated.

1  (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, \_U.S.\_, 139 S. Ct. 2615 (2019).  When ruling

2  on a motion to dismiss a §10(b) action of the Exchange Act, 15 U.S.C. §78j(b), courts must "'take all

3  allegations of material fact as true and construe them in the light most favorable to the nonmoving

4  party.'"  *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017), *cert. denied*,

5  \_U.S.\_, 139 S. Ct. 589 (2018).

6  **IV.    ARGUMENT**

7          **A.    As This Court Has Already Found, the Revised Complaint**
                **Adequately Alleges the Falsity of Defendant Cook's November 1, 2018**
8                 **Statements**

9          The Revised Complaint adequately pleads falsity under the PSLRA, as it "specif[ies] each

10  statement alleged to have been misleading, the reason or reasons why the statement is misleading,

11  and, if an allegation regarding the statement or omission is made on information and belief, the

12  complaint . . . state[s] with particularity all facts on which that belief is formed."  15 U.S.C. §78u-

13  4(b)(1)(B); *Reese v. Malone*, 747 F.3d 557, 568 (9th Cir. 2014).  A statement is misleading if it

14  would give a reasonable investor an "'"impression of a state of affairs that differs in a material way

15  from the one that actually exists."'"  *Retail Wholesale & Dept's Store Union Local 338 Ret. Fund v.*

16  *Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017); MTD Order at 31.  Even if a statement is

17  not false, it may be misleading if it omits material information.  *See Khoja*, 899 F.3d at 1008-09

18  (citing *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1054 (9th Cir. 2014)); MTD Order at 12.  An

19  omission is material "when there is "'a substantial likelihood that the disclosure of the omitted fact

20  would have been viewed by the reasonable investor as having significantly altered the 'total mix' of

21  information available."'"  *Matrixx*, 563 U.S. at 38; MTD Order at 13.  Statements that are "literally

22  true" may be still be actionably misleading due to "'"their context and manner of presentation."'"

23  *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008).

24          Consistent with the MTD Order, the Revised Complaint alleges two false statements made by

25  Cook, on behalf of Apple, during the Company's November 1, 2018 earnings conference call:

26          •       In relation to China specifically, I would not put China in that category.  Our
                    business in China was very strong last quarter.  We grew 16%, which we're very
27                  happy with.  iPhone, in particular, was very strong double-digit growth there.  ¶56.

28

- The XS and XS Max got off to a really great start, and we've only been selling for a few weeks. The XR, we've only got out there for, I guess, 5 – 5 days or so at this point and so that it's – we have very, very little data there. Usually, there is some amount of wait until a product shows – another product shows up in look, but in – that – in looking at the data, on the sales data for XS and XS Max, there's not obvious evidence of that in the data as I see it. ¶57.

The allegations related to each of these statements, including the reasons for their falsity, have already been considered and found sufficient by the Court. MTD Order at 19, 26, 40-42, 46. Defendants offer no new or compelling arguments requiring reversal of the MTD Order.

### 1. Defendants' Statements Concerning Business Conditions in China Were Materially False and Misleading

During the Company's November 1, 2018 conference call, held in connection with the release of the Company's 4Q18 financial results, analysts concerned about economic conditions and issues related to China asked about "deceleration in some of these emerging markets." ¶56. Cook acknowledged that the Company was facing pressure in emerging markets like Turkey, India, Brazil and Russia – but that China was not among them. ¶56. To the contrary, Cook falsely assured concerned investors that "*[i]n relation to China specifically, I would not put China in that category* [of emerging markets at risk of economic deceleration]." ¶¶18, 56. He emphasized that Apple's "business in China was very strong last quarter. We grew 16% . . . iPhone, in particular, was very strong double-digit growth there." *Id.* The Revised Complaint alleges, and the Court recognized, that investors walked away from the November 1, 2018 conference call believing that "demand trends [we]re solid for the three new iPhone models." *See* ¶61; MTD Order at 41. Indeed, Cook's explicit exclusion of China from concerns regarding emerging markets left the impression with the investment community that "*Apple continues to see solid growth in EM countries like China.*" ¶63.

In truth, as of November 1, 2018, poor sales and slowing economic conditions were already negatively impacting demand for Apple products in China. ¶¶66, 82-83. The Revised Complaint details, among other things, admissions by Cook during a January 2, 2019 CNBC interview, where he acknowledged that China had been experiencing economic deceleration the entire second half of the year, and that during the just-completed quarter, which began September 30, 2018, Defendants

had seen: (i) declining traffic in Apple retail stores *in China*; (ii) declining traffic in Apple channel partner stores *in China*; and (iii) reports of slowing smartphone industry *in China*.  ¶¶66, 83; *see also* MTD Order at 3, 19, 26, 41.  According to the Company, these factors were the cause of virtually all of the Company's significant miss of quarterly financial guidance:

- ***Most of the Company's revenue shortfall to guidance occurred in Greater China***.  ¶¶34, 82.

- ***100% of the Company's 1Q year-over-year worldwide revenue decline occurred in Greater China***.  *Id.*

- ***iPhone revenue primarily in Greater China accounts for all of the Company's revenue shortfall to our guidance***.  *Id.*

Cook's January 2, 2018 admission confirmed that Defendants not only knew of these negative trends throughout the quarter, but that they had knowledge prior to his November 1, 2018 statements.  Cook admitted that Defendants saw traffic declines and reports of the smartphone industry contracting "as the quarter went on," before getting "particularly bad in November." ¶106. In light of Cook's acknowledgement that he ***"[had]n't seen the December number yet***," the only logical conclusion is that the negative trends were ongoing and evident in October, 2018, if not substantially earlier, before getting even worse in November.  *Id.*

Defendants' argument that Cook did not admit to knowledge prior to November 1, 2018 (MTD II at 1-2, 4, 8, 12, 14), simply cannot be reconciled with the plain meaning of his words when read in context.  Nor is Defendants' construction consistent with the negative reaction of analysts (and investors), one of whom openly questioned why Cook had not revealed this information "two months ago" – *i.e.*, on the November 1, 2018 conference call (¶¶86, 108):

> ***Cook said two months ago that Apple's China business was "very strong," even amid signs of an economic slowdown and months of headlines about trade tensions with the U.S. . . .  Why didn't Cook make any of these admissions before now***?

*Id.*

Based on the detailed factual allegations that, as of November 1, 2018, sales in China were already declining and Apple had already halted iPhone production lines (as discussed in detail below), as well as the confirmation provided by Cook's January admission that missed guidance was

1   driven by poor iPhone sales in Greater China, the Court concluded that the misrepresentation

2   concerning business conditions in China is false and actionable.  MTD Order at 19, 26 (citing *Berson*

3   *v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008)); *Purple Mountain Tr. v. Wells*

4   *Fargo & Co.*, 432 F. Supp. 3d 1095, 1104-05 (N.D. Cal. 2020) (falsity established solely by later

5   admissions); *Hatamian v. Advanced Micro Devices, Inc.*, 87 F. Supp. 3d 1149, 1160 (N.D. Cal.

6   2015) (later admissions by defendants make allegations of falsity plausible).

7          In reaching this conclusion and partially denying the motion to dismiss, the Court rejected

8   Defendants' argument that the statement was a true historical fact because it concerns the "'last

9   quarter,'" finding that "***the context*** clearly suggests that business [in China] ***continues to be strong***,"

10  making the statement materially misleading.  MTD Order at 26;[7] *see also Miller*, 519 F.3d at 886

11  (literally true statements can still be misleading).  Despite this specific ruling, and presenting no new

12  facts or intervening law, Defendants' new motion practically cut-and-pastes the identical argument

13  from its earlier brief.  *Compare* MTD II[8] at 10 ("Accurate statements of past results . . . even when

14  accompanied by statements of optimism, are not actionable because they 'contain no implicit

15  prediction that those events or conditions will continue in the future.'");[9] *with* MTD I at 10

16  (substantially identical).  This contention should again be rejected.

17         In an attempt at misdirection, Defendants now contend that the November 5, 2018 Nikkei

18  Article is "not probative of falsity" of the China statements.  MTD II at 11-12.  But the MTD Order

19  did not rely solely on the Nikkei Article to support its finding of falsity.  *See* MTD Order at 19.

20  And, however Defendants wish to characterize the article, they unequivocally admitted that ***100% of***

---

[7]     The Court also rejected Defendants' argument that Cook's statement was an "opinion" requiring allegations of subjective and objective falsity under *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015); MTD I at 21; MTD Order at 26.  The Court found that Plaintiff adequately alleged the statement "contains representations ***of fact*** – that China is not facing emerging market issues like other countries and that Apple's business there is strong." MTD Order at 26.

[8]     Defendants' Motion to Dismiss the Revised Consolidated Class Action Complaint (ECF No. 118) ("MTD II").

[9]     Defendants also cite the same cases the Court considered during the first round of briefing.  *In re Caere Corp. Sec. Litig.*, 837 F. Supp. 1054, 1058 (N.D. Cal. 1993) (citing *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991)).

1  *the guidance miss was due to poor iPhone sales in Greater China*.  ¶¶82-83.  Thus, alleged reports

2  of poor iPhone sales (like the November 5, 2018 Nikkei Article, the November 12, 2018 Wells Fargo

3  report and the December 4, 2018 *Bloomberg* article) occurring prior to, or immediately after,

4  Defendants' positive November 1, 2018 statements concerning China demand plausibly allege

5  falsity.  Order at 19 (citing *Berson*, 527 F.3d at 987).

### 2. Defendants' Statements Concerning Sales of the New iPhone XS, XS Max and XR Were Materially False and Misleading

8  During the November 1, 2018 conference call, Defendants were specifically asked about the

9  demand for the recently launched iPhones, whether there was any impact on the XS and XS Max

10  from buyers potentially waiting for the XR, and what the Company was seeing with respect to early

11  demand for the new iPhone XR.  ¶¶19, 58.  Cook falsely claimed that the XS and XS Max were off

12  to a great start and that the Company had little information regarding XR sales.  ¶57.[10]  On

13  November 5, 2018, only one business day later, the Nikkei Article reported that Apple had slashed

14  new iPhone XR orders by 100,000 units per day – a reduction of 20% to 25%:

15  > *Apple has signaled disappointing demand for the new iPhone XR, telling its top smartphone assemblers Foxconn and Pegatron to halt plans for additional production lines* . . . .

16  \*       \*       \*

17  > That means Foxconn . . . would *produce around 100,000 fewer units daily to reflect the new demand outlook – down 20% to 25%*.

19  ¶68.  The November 5, 2018 Nikkei Article also disclosed that another Taiwanese supplier, Wistron,

20  would *receive zero orders* for the remainder of the year.  ¶¶27-28.  Further disclosures, close on the

21  heels of the Nikkei Article, confirmed that Apple was slashing orders from other suppliers as well,

22  including Lumentum and Japan Display, fueling a "growing risk of even softer iPhone unit demands,

23  with downside in China."  *See* ¶¶74, 76.  In light of these facts, the Court previously found falsity

24  adequately alleged.  MTD Order at 19, 24.

---

25  [10]  Defendants previously argued that this statement was immaterial puffery.  MTD I at 19-20.  The
26  Court rejected that argument.  *See* MTD Order at 24 ("According to [P]laintiff, this statement was made mere days before Apple cut production lines for the iPhone.  Although investors understand
27  that corporate optimism may be unreliable, a party cannot affirmatively create a positive impression of an area it knows to be doing poorly.  *See In re Quality Sys.*, 865 F.3d at 1143").

28

1    Contrary to the Revised Complaint's well pled allegations, Defendants now argue that as of

2 November 1, 2018, Apple possessed only five days of sales data on the iPhone XR and therefore

3 lacked information rendering their statement false.  MTD II at 8.  The injection of this factual dispute

4 at the pleading stage is improper.  *See In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1260 (N.D.

5 Cal. 2008) (potentially exculpatory references do not turn Fed. R. Civ. P. 12 into a trial on the papers

6 especially not "one in which defendants get the benefit of every conceivable doubt").   More

7 importantly, it is not true.  Defendants ***did*** have relevant information about XR sales as the Company

8 had been taking pre-orders since October 19, 2018 – or ***11 days*** prior to the November 1, 2018

9 conference call.  ¶¶14, 57.  "[A] major benefit of accepting preorders is that the seller can obtain

10 advance demand information . . . [and] help[] improve the seller's decision on initial production runs

11 to satisfy demand."[11]   It is simply implausible that, on November 1, 2018, after Apple had either

12 already cut iPhone XR production or was on the verge of it occurring, Defendants' lacked the sales

13 data to justify such a decision.  ¶¶24, 27-30.  Order at 42 ("[It] is simply implausible that Cook

14 would not have known that iPhone demand in China was falling mere days before cutting production

15 lines.").

16           a.      **The Revised Complaint Alleges Additional**
                    **Corroborative Facts that Confirm Weak iPhone**
17                   **Demand**

18    Defendants incorrectly argue that the cancellation of up to 100,000 iPhones XR per day alone

19 is insufficient to allege falsity because there is "nothing in the [Nikkei Article]" that suggests

20 "changes to the production of the XS or XS Max" and therefore no facts to show they had not "got

21 off to a really great start."  MTD II at 7-8.  However, the Nikkei Article directly contradicts Cook's

22 statement that the Company lacked sufficient information to assess XR sales.  *Matrixx*, 563 U.S. at

23 38.  And, the significant cancellation of XR orders was not alone.  The Revised Complaint alleges

24 multiple corroborative facts, all ignored by Apple, that confirm ***all three*** new iPhone models, the XS,

25 XS Max and XR, were experiencing weak demand.  In September, *AppleInsider* reported on

26 ───────────────────────
27 [11]   Cuihong Li & Fuqiang Zhang, *Advance Demand Information, Price Discrimination and Pre Order Strategies*, Manufacturing & Service Operations Management Vol 15, No. 1, 58 (Winter 2013), *available at* https://tinyurl.com/y5nrg5bp.

28

1    "research suggest[ing] the iPhone XS Order pipeline is very weak, resulting in leftover inventory of

2    the iPhone XS," though Cook's November 1, 2018 statement sharply contradicted that report.  ¶16.

3    The November 5, 2018 Nikkei Article reported huge cancellations.  Then on November 12, 2018,

4    just 11 days after the alleged false statements, Wells Fargo issued a report that Lumentum, an iPhone

5    component supplier, had received a cancellation of "'previously placed orders [from Apple] that

6    were originally scheduled for delivery during the quarter'" indicating a ***30% reduction in orders***

7    without limitation to the iPhone XR.  ¶74.  On November 14, 2018, Guggenheim downgraded Apple

8    based upon the negative earnings and order reductions announced by suppliers like Lumentum and

9    Japan Display, citing a "***growing risk of even softer iPhone unit demand, with downside in China***."

10   ¶76.  On December 4, 2018, *Bloomberg* reported that in October 2018 – *i.e.*, before the launch of the

11   iPhone XR – the Company executed a so-called "'fire drill'" to bolster sales of the XS and XS Max,

12   which *Bloomberg* described as "a possible admission that the devices [were] selling below some

13   expectations."  ¶78.[12]  On January 3, 2019, Wedbush independently reported that negative supply

14   chain news during the quarter was not limited to the XR:  "[T]he Street had been anticipating

15   softness in the December quarter . . . ***given a slew of negative iPhone XS/XR data points coming***

16   ***out of the Asia supply chain over the past few months***."  ¶87.  Wedbush also pinned the iPhone

17   sales shortfall in China on both the XS and XR models.  *Id.* ("of an upgrade opportunity ***out of the***

18   ***China*** region it appears that of the 60 million to 70 million in the region less than 20 million have

19   upgraded to the ***X/XS/XR***").  Defendants ignore these facts.

20                           **b.      Temporal Proximity Between the Alleged False**
                                      **Statements and Disclosure of True Contrary Facts Are**
21                                    **Highly Probative of Falsity**

22           As detailed above, the timing of Defendants' misrepresentations and the disclosures of the

23   truth are also strongly indicative of falsity.  The first disclosure – via the Nikkei Article – occurred

24   within ***four days*** of the alleged false statements.  Defendants incorrectly argue that this temporal

25   _____

26   [12]   Defendants quarrel with the Nikkei Article's reference to unnamed sources.  But nothing
       prohibits such reliance.  Indeed, "the PSLRA can easily be satisfied with references to 'internal
       memoranda' and 'news articles' . . . which frequently rely upon unnamed sources [and] constitute
27     reliable bases for allegations."  *See In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1235-36
       (N.D. Ga. 2019) (rejecting Equifax's request to discount news articles relying on unnamed sources).

28

1   proximity is "not enough to establish . . . falsity." MTD II at 11. But this Court has recognized that

2   contradictory disclosures occurring *eight weeks* later can be sufficient to plead falsity. *City of Miami*

3   *Gen. Emps.' & Sanitation Emps.' Ret. Trust v. RH, Inc.*, 302 F. Supp. 3d 1028, 1042 (N.D. Cal.

4   2018).

5         In *RH*, this Court found falsity sufficiently alleged where RH reported "'encouraging' market

6   performance" while failing to disclose lack of inventory, customer complaints and canceled orders in

7   RH Modern, one of its lines of business. *Id.* at 1041-42. In that case, *eight weeks* after the alleged

8   misrepresentation, defendants admitted that RH's customers were "'on fire'" and they had "'let

9   customers die.'" *Id.* at 1036. The Court rejected as implausible RH's proposed innocent explanation

10   that the poor performance occurred only after the positive statements:

11         ***The Court does not find plausible the possibly that such pervasive customer***
           ***complaints arose only after December 10, 2015, and subsequently escalated with***
12         ***such intensity over the next eight weeks so as to drive Friedman to decry that RH***
           ***had let its customers "die."***

13   *Id.* at 1042 (Finding defendants' misrepresentations created an "'impression of a state of affairs that

14   differ[ed] in a material way from the one that actually exist[ed].'" *Id.* (citing *Berson*, 527 F.3d at

15   985)) (alterations in original).

16         Defendants do not acknowledge this authority much less attempt to distinguish *RH* or explain

17   how *four days* between Cook's after-hours statements on November 1, 2018, and the pre-market

18   opening Nikkei Article on November 5, 2018, are not sufficient – much less highly probative – of

19   falsity under circuit authority.[13] Indeed, the analysis of *RH* is consistent with a finding that *all* of the

20   alleged disclosures, including the Nikkei Article (November 5, 2018), the Wells Fargo report

21   (November 12, 2018), the Guggenheim report (November 14, 2018), the *Bloomberg* article

22   (December 4, 2018) and Cook's admissions (January 2, 2019), are of more than sufficient temporal

23   proximity to support a finding of falsity.

24

25

26

_____

27   [13]   Counsel for Plaintiff specifically noted the applicability of this case to the facts here at the March
     11, 2020 hearing. MTD Hrg. Tr. at 50.

28

Accordingly, in issuing the MTD Order, the Court considered – but rejected – the same arguments Defendants advance in their current motion, finding the alleged statements false and misleading:[14]

> [P]laintiff challenges defendants' statements on the Q4 FY18 earnings call about positive iPhone sales, as well positive business outlook in China. (*Id.* ¶¶ 385-86.) Plaintiff alleges that sales in China were declining during this time period, and Apple reportedly told its suppliers to halt additional productional lines for the iPhone mere days after making the statement. (*Id.* ¶¶ 400-405.) And two months later, Cook admitted to investors that lower than anticipated iPhone revenue "primarily in Greater China" led to missed guidance. (*Id.* ¶ 410.) ***Drawing all inferences in favor of plaintiff, the earlier statements were either false or misleading***.

MTD Order at 19.

As a last resort, Defendants ask the Court to credit purely speculative arguments which are untethered (or contrary to) the Revised Complaint's well pled allegations of falsity. First, Defendants ask the Court to credit their supposition that because the Nikkei Article referenced the reduction of XR production by 100,000 units per day as a "'boost,'" their cancellation may not have affected the Company's ability to achieve guidance. MTD II at 1, 3. Second, Defendants urge the Court to speculate that the massive cancellation of iPhone XR production "***could*** simply reflect a shift in the expected product mix, not a decline in overall iPhone sales." MTD II at 11. Third, Defendants muse that it is "impossible to ascertain" whether the cancellation of XR production "would have been additive" to the November 1, 2018 guidance. *Id.* Of course, this information ***is*** known to Defendants and ***will*** be subject to discovery, but crediting any one of these speculative contentions now would impermissibly draw inferences in Defendants' favor which contradict the well-pled allegations of the Revised Complaint. *Hatamian*, 87 F. Supp. 3d at 1161 (rejecting defendants' alternative theories because "[t]o claim non-plausibility at this juncture is premature and not supported by the standard to be applied herein").

Defendants finally suggest the Court did not understand that the Nikkei Article addressed only the iPhone XR. That contention is belied by the very language of the MTD Order which

---

[14]   Defendants again challenge allegations of falsity of the China representations on the 4Q18 deceleration in emerging markets. MTD II at 10. However, the Court already agreed with Defendants and Plaintiff does not allege it to be false. *See* MTD Order at 19 n.9.

1   specifically quotes two separate, specific references to the XR: First, "the publication *Nikkei* reported

2   that Apple told its biggest manufacturers, Foxconn and P[e]gatron, to 'halt plans for **additional**

3   production lines' *for the iPhone XR*"; and second, "[t]he publication *Barron's* similarly reported

4   that Apple directed Foxconn to reduce *iPhone XR* production lines by 20-25%." MTD Order at 41.

5   Again, Defendants ask the Court to reconsider its well-considered MTD Order without providing

6   any new basis for doing so.

        **B.**    **As the Court Previously Found, the Combination of Temporal**
7                **Proximity, Core Operations and Defendants' Admissions Raises a**
8                **Strong Inference of Scienter**

9         A complaint pleads scienter if it "state[s] with particularity facts giving rise to a strong

10   inference that the defendant[s] acted with the required state of mind." 15 U.S.C. §78u-4(b)(2)(A). A

11   "'strong inference'" of scienter is one that is "cogent and at least as compelling as any opposing

12   inference one could draw from the facts alleged." *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S.

13   308, 324 (2007). The inference "need not be irrefutable, *i.e.*, of the 'smoking gun' genre, or even the

14   'most plausible of competing inferences.'" *Id.* Allegations of motive are not required. *Id.* at 324-

15   35.

        **1.**     **Defendants' Admitted Knowledge of Slowing Trends in China**
16                **Is Sufficient to Plead a Strong Inference of Scienter**
17

18         The Revised Complaint alleges that Cook admitted to Defendants' contemporaneous

  knowledge of facts directly contradicting his November 1, 2018 statement that China was not
19

20   experiencing the macroeconomic issues plaguing other emerging markets. ¶¶82-83. According to

  Cook, it was clear **during the second half of 2018**, that China's slowing economy was impacting the
21

22   Company and that before and during the Class Period, Defendants "saw" declines in the Company's

  retail store traffic and its channel partner store traffic in China, and reports of contraction in the
23

24   smartphone industry in China. *Id.* These allegations of contradictory contemporaneous knowledge

  are sufficient – alone or in a holistic analysis – to allege scienter. *Purple Mountain*, 432 F. Supp. 3d
25

26   at 1105-06 (later issued statements by defendants' acknowledging contemporaneous knowledge gave

  rise to strong inference of scienter); *In re Lattice Semiconductor Corp. Sec. Litig.*, 2006 U.S. Dist.
27

28   LEXIS 262, at *43 (D. Or. Jan. 3, 2006) ("plaintiffs [pled facts creating] a strong inference that

1  defendants had contemporaneous knowledge of the falsity of their statements, because they have

2  alleged both contemporaneous business conditions which demonstrated that falsity and later

3  statements which directly contradict earlier statements").

4        Defendants attempt to parse Cook's admissions and take them out of context, arguing that

5  because Cook did not admit "*exactly*" when in November he saw traffic declines and reports on the

6  declining smartphone market in China, the Revised Complaint fails to plead that these factors were

7  occurring as of November 1, 2018.  MTD II at 4.[15]  Not true; Cook was specific in what he saw and

8  when. As of November 1, 2018, the quarter was already one-third complete.  ¶17.  On January 2,

9  2019, Cook conceded that conditions in China got worse *as the quarter went on* and got *particularly*

10 *bad* in November.  ¶83.  Critically, Cook acknowledged that, as of January 2, 2019, he *did not have*

11 *the December numbers yet*.  *Id.*  Thus, the cogent and indeed, compelling inference from these facts

12 is that the sales and economic trends seen as the quarter went on were negative in late September and

13 October, and got even worse in November.  *Id.*; *Tellabs*, 551 U.S. at 324.  Indeed, with the

14 combination of those facts, the Court concluded that scienter was adequately plead.  *See* MTD Order

15 at 40-42; *S. Ferry LP, No. 2 v. Killinger,* 542 F.3d 776, 784-86 (9th Cir. 2008); *In re Wash. Mut. Inc.*

16 *Sec. Derivative & ERISA Litig.*, 694 F. Supp. 2d 1192, 1207-08 (W.D. Wash. 2009) (emphasizing

17 that "[i]n evaluating scienter, the Court must consider the Complaint's allegations holistically");

18 *Thomas v. Magnachip Semiconductor Corp.,* 167 F. Supp. 3d 1029, 1045 (N.D. Cal. 2016) ("While

19 each of these allegations alone might be insufficient to plead . . . scienter, taken as a whole the Court

20 concludes they meet the standard under the PSLRA."); *In re Montage Tech. Grp. Ltd. Sec. Litig.,* 78

21 F. Supp. 3d 1215, 1226-27 (N.D. Cal. 2015) (facts "taken together" raised strong inference because

22 "'it would be "absurd" to suggest that management was without knowledge of the matter'").

23        The reaction of analysts and media to Cook's belated admissions further corroborate

24 Plaintiff's allegations and confirms that the market believed it was misled by Apple about the

---

25 [15]  Again, Apple made the exact same argument during the initial round of motion to dismiss.  *See,*
26 *e.g.*, MTD I Reply at 20 ("But the CAC does not allege any contemporaneous facts to show that, *as of*
   *November 1, 2018* when the challenged statements were made . . . that Messrs. Cook or Maestri knew, or
27 had enough data to know, that demand for the new iPhones would be insufficient for Apple to meet its
   revenue forecast for Q1 FY 2019.").

28

Company's iPhone sales and business conditions in China during the November 1, 2018 conference call.  For example:

- "**Cook said two months ago that Apple's China business was 'very strong**,' **even amid signs of an economic slowdown** and months of headlines about trade tensions with the U.S. . . . but executives failed to give any hints of red flags in the region." ¶86.

- "Tim **Cook now has a major credibility problem** . . . **[Apple executives] failed to keep it real with investors on what they were seeing in iPhone demand data late in 2018**." ¶89.

Defendants' brief says nothing to these powerful allegations supporting the knowing or deliberately reckless falsity of Cook's statements at the time they were made.

> **2.    The Importance of China and the Temporal Proximity of Defendants' False Statements and Corrective Disclosures Bolster a Strong Inference of Scienter**

The Revised Complaint pleads a brief, two-month Class Period marked by cascading disclosures.  As described above, Cook's two November 1, 2018 false and misleading statements were immediately followed by: Apple's **November 1, 2018** decision to stop reporting unit sales of iPhones; the **November 5, 2018** Nikkei Article; the **November 5, 2018** *Barron's* article; the **November 12, 2018** Wells Fargo report; the **November 14**, **2018** Guggenheim report; the **December 4, 2018** *Bloomberg* article; and the **January 2**, **2019** Cook letter and CNBC interview.  *See* ¶¶29, 31, 33, 58-59, 68, 70, 74, 76, 78, 82.  Rarely does the market learn that things went so wrong, so fast – which is why courts find that significantly longer intervals nevertheless support of an inference of scienter.  *Reese*, 747 F.3d at 574-75 (contradictory disclosures separated by **three to six months** bolster the inference of scienter); *Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at *11 (C.D. Cal. Feb. 27, 2015) (disclosures **six months** after misrepresentations support scienter); *S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1259 (W.D. Wash. 2009) (defendants' later admissions support scienter); *Berson*, 527 F.3d at 985, 988 n.5 (disclosure of stop work orders halting work on the company's largest contract just **two weeks** after the alleged misstatement supports strong inference of scienter); *Rihn v. Acadia Pharm. Inc.*, 2016 WL 5076147, at *9 (S.D. Cal. Sept. 19, 2016) ("The closeness in time of the February 26, 2015 representations and the March 11, 2015 disclosure

1   supports an inference that [defendants] were deliberately reckless . . . ."); *see also, Flynn v. Sientra,*

2   *Inc.*, 2016 WL 3360676, at *3, *15 (C.D. Cal. June 9, 2016) ("The close temporal proximity

3   between [the alleged false statement and subsequent corrective disclosure] supports a strong

4   inference of scienter . . . ."). Indeed, the Ninth Circuit places even "more weight" on temporal

5   proximity where, like here, no intervening events occur between the misrepresentation and

6   disclosure. *Fecht v. Price Co.*, 70 F.3d 1078, 1083-84 (9th Cir. 1995) (decision to terminate sales

7   expansion program ***more than two months*** after misrepresentations supports scienter).

8          The Court considered these facts and relied on this exact authority in upholding as actionable

9   Cook's two statements. MTD Order at 40-41. Yet, Defendants curiously fail to engage with most of

10  these facts, individually or in combination, or with any of these cases. Indeed, Defendants' Motion

11  for Leave proclaimed that Apple was denied a fair opportunity to address temporal proximity and

12  required a second motion to dismiss to "more fully address the Ninth Circuit precedent." *Compare*

13  Motion for Leave at 8 (citing *Yourish v. Cal. Amplifier*, 191 F.3d 983, 997 (9th Cir. 1999) and *City*

14  *of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Techs., Inc.*, 856 F.3d 605, 622 (9th

15  Cir. 2017)), *with* MTD II at 16 (citing *Align*, 856 F.3d at 622 and *Welgus v. TriNet, Grp. Inc.*, 2017

16  WL 6466264, at *20 (N.D. Cal. Dec. 18, 2017), *aff'd* 785 F. App'x 239 (9th Cir. 2019)).[16] But

17  Defendants offer nothing – no intervening event, no new case authority – to disturb the Court's

18  finding with respect to the damning temporal proximity of the immediate and varied disclosures

19  contradicting Cook's statements.

20         In addition to the timing of the disclosures, the Revised Complaint alleges that Apple's

21  business in Greater China was core to the Company's revenue and market share growth. ¶¶8-10.

22  The iPhone was the Company's most important product and its annual launch of new models is a

23  significant event in the technology world, closely scrutinized by analysts, media and investors. ¶¶6-

24

---

25  [16]   Defendants' reliance on *In re Extreme Networks, Inc. Sec. Litig.*, 2018 WL 1411129 (N.D. Cal.
    Mar. 21, 2018) for the proposition that admissions need to be of the "'I knew it all along'" variety to
26  support scienter (MTD II at 14), but ignore the later opinion in ***that same case*** finding that the
    temporal proximity of admissions following ***three months*** after a false statement support scienter
27  both via an admission theory and a temporal proximity one. *Extreme Networks*, 2018 WL 1411129,
    at *32 (citing *Berson*, 527 F.3d at 988).

28

7.  And poor iPhone sales in China were the cause of disappointing financial results.  *See* ¶82 ("Lower than anticipated iPhone revenue, ***primarily in Greater China, accounts for all of our revenue shortfall to our guidance and for much more than our entire year-over-year revenue decline***.").

Under the core operations theory recognized in this Circuit and by the MTD Order, "even bare-bones and non-particularized allegations may satisfy scienter 'where the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter.'"  MTD Order at 38-39 (citing *Berson*, 527 F.3d at 987-89); *see Reese*, 747 F.3d at 576-77.  While the MTD Order concluded that core operations inference was not sufficient ***by itself*** to plead scienter, the Court found that "in combination" with Plaintiff's other allegations, Plaintiff raised a strong inference of scienter.  MTD Order at 33, 38-39, 42 (finding that because of: (i) China's critically important market; (ii) Cook's admissions of what the Company "'saw'" as the quarter went on; and (iii) the temporal proximity of the disclosures and admissions, it was implausible that Cook would not know of falling sales in China on November 1, 2018).

On these facts, the only plausible inference remains that Defendants knew or were deliberately reckless in not knowing that business conditions in China and iPhone demand was poor at the time of his positive statements on November 1, 2018:

> Absent some natural disaster or other intervening reason, it is simply implausible that Cook would not have known that iPhone demand in China was falling mere days before cutting production lines.  *See Berson*, 527 F.3d at 987-89 (finding "absurd" that top management would not know about millions-of-dollars-worth of stop-work orders).  It is also implausible that Cook was unaware of emerging market issues in China despite admitting ***two months*** later that the Company observed worrying signs throughout the quarter.

MTD Order at 42.  And, the Court added, "[D]efendants' decision to stop reporting unit sales – announced on the same call despite negative investor reaction – plausibly suggests that [D]efendants expected unit sales to decline."  *Id.*; *see also* ¶¶20, 25, 58-60, 64, 67.

### C.    Defendants' Improper Injection of Extrinsic Evidence Concerning Absence of Financial Motive Is Irrelevant and Unpersuasive

As described above, the Revised Complaint pleads a number of facts – none of which concern motive – that "in combination" the Court has already found sufficient to allege a compelling

1    inference of scienter.[17] *See* MTD Order at 33.[18]  Nonetheless, Defendants seek to inject facts from

2    outside the Revised Complaint to contend that Defendants had no motive to commit fraud.  MTD II

3    at 4, 13, 18.  This tactic is precisely the kind that the Ninth Circuit cautions as "alluring" to a

4    defendant but "improper" at the motion to dismiss stage, particularly in cases governed by the

5    PSLRA.  *See Khoja*, 899 F.3d at 998 (cautioning against the "unscrupulous use of extrinsic

6    documents to resolve competing theories" at the pleading stage).[19]  More significantly, the Supreme

7    Court has made clear that Plaintiff need not plead motive.  *Tellabs*, 551 U.S. at 321, 325; *Siracusano*

8    *v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1182 (9th Cir. 2009), *aff'd*, 563 U.S. 27 (2011).  Thus,

9    Defendants' contentions – previously made and considered by the Court – concerning an absence of

10   stock sales by Cook, or stock repurchases by the Company, are simply not relevant at this stage.

11   MTD II at 17-19.  However, even if considered on their merits, the facts support scienter more than

12   they refute it.

13                   1.    **The Absence of Insider Stock Sales During the Class Period**
                          **Was Considered and Already Rejected by the Court in Finding**
14                        **Scienter**

15           The Revised Complaint does not allege insider stock sales and does not cite to, or rely on,

16   any document referencing them to allege any element of Plaintiff's claims.  While the previous

17   complaint alleged insider sales, the Court found those allegations did not support scienter, and thus

18   they did not factor into the Court's holistic analysis.  *See* MTD Order at 34-35.  Nonetheless,

19   Defendants now argue that the absence of such allegations – though entirely consistent with the

20

21   ───────────────
     [17]   *Compare* MTD I at 3, 38; MTD I Reply at 1, 15 n.8, 18; MTD Hrg. Tr. at 37-39; MTD Order at
     42 (rejecting motive allegations), *with* MTD II at 13, 18-19.

22
     [18]   *Compare* MTD I at 3, 38; MTD I Reply at 1, 15 n.8, 18; MTD Hrg. Tr. at 37-39; MTD Order at
23   42 (rejecting motive allegations), *with* MTD II at 13, 18-19.

24   [19]   For this reason, Plaintiff also opposes Defendants' request for judicial notice (ECF. No. 119)
     ("RJN II") to the extent that these documents do not support any of Plaintiff's allegations (RJN II,
25   Ex. 4), are not relevant to the Revised Complaint (RJN II, Ex. 4), are subject to reasonable dispute
     (RJN II, Exs. 1-3), or are improperly considered at the motion to dismiss stage (*id.*).  While Plaintiff
26   agrees that the Court may consider Apple's November 1, 2019 analyst call transcript, Tim Cook's
     letter to shareholders and the Nikkei Article (*id.*), because the documents are subject to reasonable
27   dispute, their contents should not be accepted for the truth of the matters asserted therein or used to
     resolve disputes of fact against Norfolk.  *See Khoja*, 899 F.3d at 998-99.

28
     ───────────────

1  Court's MTD Order – supports an inference in their favor.  MTD II at 16-19.  The absence of stock

2  sales does not support an innocent inference.  *See Sientra*, 2016 WL 3360676, at *15 (the argument

3  that "the lack of insider stock sales . . . negates scienter is contrary to controlling case law") (citing

4  *No. 84. Emp'r Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 926,

5  944 (9th Cir. 2003) ("Scienter can be established even if the officers who made the misleading

6  statements did not sell stock during the class period."); *see also Shenwick v. Twitter, Inc.*, 282 F.

7  Supp. 1115, 1124, 1149 (N.D. Cal. 2017) (Refusing to judicially notice or consider Forms 4 where

8  "Complaint mentions no stock sales of any kind . . . [and] does not rely on allegations of an improper

9  financial motive to demonstrate scienter, nor does it reference stock sales.").

10        Defendants' assertion that they were previously precluded from making specific arguments

11  about the lack of stock sales is plainly false.  First, Defendants advanced ***exactly*** this argument at the

12  March 11, 2020 hearing:

13        [Apple's Lawyer:] Your Honor, there is not a single sale of stock by any of the
          defendants in the . . . between the time of the [November 1, 2018] guidance and
14        when the company pre-released on January 2nd. . . . ***There were no sales in that last
          six days of the class period***.

15        So you've got no stock sales.  You've got sales that did occur under the 10b5-
16        1 plan.  You've got a company buying back all of its stock.

17  *See* MTD Hrg. Tr. at 38.  Second, the Court previously considered, ***and accepted***, the same argument

18  Defendants make once again – *i.e.*, that Defendants' insider trading history does not support scienter

19  – but it found unpersuasive in its overall evaluation of scienter.  *See* MTD II at 18 ("there are no

20  allegations that Mr. Cook or Mr. Maestri took advantage of an artificially inflated share price by

21  selling their Apple stock during the Class Period").  In sum, the lack of stock sale allegations in the

22  Revised Complaint provides no more or less inferential weight than the Court's prior rejection of the

23  same.

24                    **2.    Apple's Stock Repurchases, if Not Irrelevant, Supports a
                              Strong Inference of Scienter**

25        The Revised Complaint does not allege that Apple engaged in share repurchases as part of

26  the alleged fraud, but Apple nonetheless seeks to improperly inject them via extrinsic documents.

27  *See Khoja* at 1002-03 ("[s]ubmitting documents not mentioned in the complaint to create a

28

1    defense is nothing more than another way of disputing the factual allegations in the complaint"). 

2    First, share repurchases are irrelevant as they are not considered an affirmative defense to a 

3    securities fraud claim; in fact, share repurchases are often considered to be a mechanism by which 

4    CEOs and corporate executives enrich themselves.  *See, e.g.*, Karen Brettell, David Gaffin & David 

5    Rohde, *Stock buybacks enrich the bosses even when business sags*, Reuters (December 10, 2015 5:00 

6    PM), https://tinyurl.com/y398nz3g.

7            Second, Defendants' argument about buybacks has already been made and rejected.  

8    *Compare* MTD I at 38 ("Apple spent approximately ***$88 billion*** to repurchase its own stock during 

9    the Class Period which would have made no sense if Defendants believed that Apple's stock price 

10   was artificially inflated due to alleged fraud"), *with* MTD II at 18 ("Apple spent approximately ***$1.35*** 

11   ***billion*** to repurchase . . . its own stock.") (emphasis in original).  Certainly if the argument was not 

12   persuasive based on Apple buying back $88 billion in stock, it is even less so when the purported 

13   buyback is 98.5% smaller.

14           Third, if the Court does entertain the repurchases, it should do so according to Apple's terms: 

15   By contrasting the historical timing of Apple's buybacks against Cook's alleged 

16   misrepresentations.[20]  Here, Apple repurchased $86.5 billion between August 2, 2017 and November 

17   3, 2018, ***before*** the alleged misrepresentations.   Then, immediately thereafter, Apple slashed 

18   repurchases to $1.35 billion between November 4, 2018 and December 1, 2018, and then to ***zero*** 

19   from December 2, 2018 to the end of the Class Period. In other words, at the same time that Apple's 

20   stock price was falling precipitously, Defendants stopped buying.

21

22

23

24

---

25   [20]   Key facts concerning these transactions related to timing, amounts, historical trends and 
incentives have not yet been subject to discovery.  If entertained pre-discovery, this tactic "risks 
26   premature dismissals of plausible claims that may turn out to be valid after discovery.  This risk is 
especially significant in SEC fraud matters, where there is already a heightened pleading standard, 
27   and the defendants possess materials to which the plaintiffs do not yet have access."  *Khoja*, 899 
F.3d at 998.

28

Apple Share Repurchases

As the chart demonstrates, if any inference is to be drawn from the Company's repurchase history, it should be in Plaintiff's favor.

> **D.   Holistically Considered, Plaintiff's Allegations of Scienter Are Reasonable, Strong and More Compelling than Any Opposing Inference**

As this Court previously recognized, the relevant inquiry for scienter is "'whether ***all*** of the facts alleged, taken collectively, give rise to a strong inference of scienter.'"   *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012) (quoting *Tellabs*, 551 U.S. at 323) (emphasis in original); MTD Order at 40.  Where non-culpable inferences are equally compelling as the culpable inferences, the tie goes to the plaintiff. *Tellabs*, 551 U.S. at 324.  The Court previously engaged in a holistic analysis of the allegations and correctly found they support a strong inference of scienter.  MTD Order at 40-42.  The purportedly non-culpable inference which Defendants argue is meritless.

Defendants contend that Plaintiff's allegations defy common sense and Defendants lacked motive because, in their telling: Why would Cook knowingly lie on November 1 if the "true state of affairs would inevitably be revealed just a few months later" and he did not profit?  In support of their supposition, Defendants rely heavily on the recent decision in *Nguyen v. Endologix, Inc.*, 962 F.3d 405 (9th Cir. 2020).  MTD II at 2, 13, 16-18.  However, *Endologix* stands for nothing more than the unremarkable holding that allegations of fraud must be plausible and the Court need not

1    check its disbelief at the door. *Endologix*, 962 F.3d at 415.[21]  Here, the Court clearly did ***not*** check

2    its disbelief at the door; indeed, it ***granted*** Defendants' prior motion to dismiss with respect to all

3    alleged misrepresentations from August 2017 through October 2018.  MTD Order at 46.

4            While Defendants' authority is unhelpful, *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513

5    F.3d 702 (7th Cir. 2008), addresses the identical supposition.  There, defendants contended they "had

6    no motive to paint the prospects . . . in rosy hues because within months they acknowledged their

7    mistakes and disclosed the true situation" and they did not "profit[] from it." *Id.* at 710.  The court

8    found defendants' logic to be faulty:

9            ***The argument confuses expected with realized benefits***. . . .  [T]he benefits of
         concealment might exceed the costs. . . . Prompt disclosure of the truth would have
10        caused Tellabs's stock price to plummet, as it did when the truth came out a couple
         of months later.  Suppose the situation had corrected itself. . . . ***The fact that a***
11        ***gamble – concealing bad news in the hope that it will be overtaken by good news –***
         ***fails is not inconsistent with its having been a considered, though because of the***
12        ***risk a reckless, gamble***.  It is like embezzling in the hope that winning at the track
         will enable the embezzled funds to be replaced before they are discovered to be
13        missing.

14   *Id.  Tellabs* could not be more on-point:  Indeed, following the January 2, 2019 disclosure of the

15   truth, one outraged analyst wrote: "***The company simply denied the reality that was staring it in the***

16   ***face, until denial was no longer an option***." ¶86.  In other words, the gamble that good news might

17   overtake bad caught up to Defendants.

18           **E.      Control Person Liability Is Alleged as to Defendant Maestri**

19           The Revised Complaint sufficiently alleges that both Cook and Maestri were "controlling

20   persons" under §20(a) of the Exchange Act, 15 U.S.C. §78t(a).  The claim requires a primary

21   violation of federal securities laws and defendants' exercise of actual power or control over the

22

23   ---
     [21]   On the facts, *Endologix* is of no relevance to this case: There, the court found that the
     complaint's allegations, including its reliance on confidential witnesses, simply did not square with
24   allegations of fraud.  For example, the court noted that the scienter allegations were based on
     confidential witness allegations which were low on detail yet "high on alarming adjectives." *Id.* at
25   416.  Moreover, the key witness left the company before the company had reported important data
     to the FDA and the publication of the alleged false statements.  *Id.*  The court also found that
26   plaintiffs simply could not reconcile allegations that *Endologix* was intent on concealing the true
     facts in the United States while it had "'full and honest'" discussions on the very same issues in
27   London.  *See id.* at 416-17.  Ultimately the court found the more plausible inference favored
     *Endologix*. *Id.* at 418-19.

28

1   primary violator.  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  "'Courts have

2   found 'general allegations concerning an individual's title and responsibilities' to be sufficient to

3   establish control at the motion to dismiss stage."  *In re Energy Recovery Inc. Sec. Litig.*, 2016 WL

4   324150, at *25 (N.D. Cal. Jan. 27, 2016). Additionally, "[p]laintiffs 'need not show the controlling

5   person's scienter or that they "culpably participated" in the alleged wrongdoing.'"  *See id.* at *25.

6   Consequently, "'control person liability claims can generally only be dismissed at the pleading stage

7   if a plaintiff fails to adequately plead a primary violation.'"  *Rabkin v. Lion Biotechnologies, Inc.*,

8   2018 WL 905862, at *19 (N.D. Cal. Feb. 15, 2018).

9          Defendants do not challenge Cook's control over Apple and these allegations are sufficiently

10   pleaded.  ¶46.  The Revised Complaint alleges control as to Maestri because as CFO (¶47), he

11   regularly spoke on behalf of Apple, including on the November 1, 2018 conference call (¶¶54-55),

12   and he "managed the company on a day-to-day basis."  *S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir.

13   2011); *In re Aqua Metals, Inc. Sec. Litig.*, 2019 WL 3817849, at *10 (N.D. Cal. Aug. 14, 2019)

14   (finding control person liability based on defendants' positions as chief executives and participation

15   in road shows).  Contrary to Maestri's argument that his liability is precluded by Cook's control,

16   control person liability is not mutually exclusive and "can rest collectively with the corporation's

17   management."  *In re BofI Holding, Inc. Sec. Litig.*, 2017 WL 2257980, at *26 (S.D. Cal. May 23,

18   2017); MTD II at 20.

19   **V.    CONCLUSION**

20          For the foregoing reasons, Plaintiff respectfully requests that Defendants' motion be denied

21   in full.

22   DATED:  July 27, 2020                    Respectfully submitted,

23                                            ROBBINS GELLER RUDMAN
                                               & DOWD LLP

24

25                                            _____
                                                   s/ Shawn A. Williams
26                                               SHAWN A. WILLIAMS

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHAWN A. WILLIAMS
DANIEL J. PFEFFERBAUM
KENNETH J. BLACK
HADIYA K. DESHMUKH
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com

ROBBINS GELLER RUDMAN
    & DOWD LLP
MARK SOLOMON
TOR GRONBORG
DANIELLE S. MYERS
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
torg@rgrdlaw.com
dmyers@rgrdlaw.com
jsanchez@rgrdlaw.com

Lead Counsel for Lead Plaintiff

LABATON SUCHAROW
CAROL C. VILLEGAS
140 Broadway
New York, NY 10005
Telephone: 212/907-0824
212/883-7524 (fax)
cvillegas@labaton.com

Additional Counsel

LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE REVISED
CONSOLIDATED CLASS ACTION COMPLAINT - 4:19-cv-02033-YGR
4817-7998-5861.v1-7/27/20

- 26 -

1

<u>CERTIFICATE OF SERVICE</u>

2

      I hereby certify under penalty of perjury that on July 27, 2020, I authorized the electronic

3

filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

4

notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I

5

hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the

6

non-CM/ECF participants indicated on the attached Manual Notice List.

7

                                 <u>s/ Shawn A. Williams</u>

8

                                 SHAWN A. WILLIAMS
ROBBINS GELLER RUDMAN

9

                                   & DOWD LLP
Post Montgomery Center

10

                                 One Montgomery Street, Suite 1800
San Francisco, CA  94104

11

                                 Telephone:  415/288-4545
415/288-4534 (fax)

12

                                 E-mail:  shawnw@rgrdlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Mailing Information for a Case 4:19-cv-02033-YGR IN RE APPLE INC. SECURITIES LITIGATION

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Adam Marc Apton**
  aapton@zlk.com

- **Kenneth Joseph Black**
  KennyB@rgrdlaw.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com

- **Frank H. Busch**
  busch@wvbrlaw.com,pallister@wvbrlaw.com,barnes@wvbrlaw.com

- **Christine M. Fox**
  cfox@labaton.com,ndonlon@labaton.com,lpina@labaton.com,electroniccasefilings@labaton.com,fmalonzo@labaton.com,6312349420@filings.docketbird.com

- **Melinda Haag**
  mhaag@orrick.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,tcrockett@pomlaw.com,abarbosa@pomlaw.com

- **James Neil Kramer**
  jkramer@orrick.com,lpatts@orrick.com,mwatkins@orrick.com,vmorse@orrick.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,tcrockett@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,lpvega@pomlaw.com

- **Francis P. McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,egoodman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,dpfefferbaumRGRD@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Mark Solomon**
  marks@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Alexander K. Talarides**
  atalarides@orrick.com,lpatts@orrick.com,casestream@ecf.courtdrive.com

- **Carol C. Villegas**
  cvillegas@labaton.com,ndonlon@labaton.com,5739893420@filings.docketbird.com,lpina@labaton.com,jchristie@labaton.com,acoquin@labaton.com,fmalonzo@laba

- **James Matthew Wagstaffe**
  wagstaffe@wvbrlaw.com

- **Steven Ray Wedeking , II**
  swedeking@robbinsllp.com,notice@robbinsllp.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,smorris@rgrdlaw.com,kennyb@rgrdlaw.com,e_file_sd@rgrdlaw.com,smorris@ecf.courtdrive.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)