1  MELINDA L. HAAG (SBN 132612)
   mhaag@orrick.com
2  JAMES N. KRAMER (SBN 154709)
   jkramer@orrick.com
3  ALEXANDER K. TALARIDES (SBN 268068)
   atalarides@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
5  405 Howard Street
   San Francisco, CA  94105-2669
6  Telephone:    (415) 773-5700
   Facsimile:    (415) 773-5759
7
   Attorneys for Defendants Apple Inc.,
8  Timothy Cook, and Luca Maestri

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                          OAKLAND DIVISION

13

14                                          Case No. 4:19-cv-02033-YGR
    IN RE APPLE INC. SECURITIES
15  LITIGATION                              **DEFENDANTS' REPLY IN SUPPORT OF**
                                            **MOTION TO DISMISS THE REVISED**
16                                          **CONSOLIDATED CLASS ACTION**
                                            **COMPLAINT**
17
                                            Judge:    Honorable Yvonne Gonzalez Rogers
18                                          Ctrm:     1, 4th Floor

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................................... 1

II.     ARGUMENT ............................................................................................................... 2

        A.      The Complaint Fails To Allege A False Or Misleading Statement ........................ 2

                1.      Mr. Cook's Statement Regarding The Launch Of New
                        iPhone Models............................................................................................ 2

                2.      Mr. Cook's Statement Regarding Apple's Business In
                        Greater China ............................................................................................. 6

        B.      The Complaint Does Not Allege A "Strong Inference" Of Scienter .................... 8

                1.      There Was No "Admission" That The November 1, 2018
                        Statements Were False Or Misleading........................................................ 8

                2.      Plaintiff's Allegations About Temporal Proximity, And The
                        "Importance Of China," Do Not Establish A Strong
                        Inference Of Scienter ................................................................................. 9

                3.      There Is No Cogent And Compelling Inference Of Scienter,
                        As Required By The PSLRA ..................................................................... 12

        C.      The Section 20(a) Claim Should Be Dismissed.................................................. 15

III.    CONCLUSION.......................................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**            **Page(s)**

3

*Askins v. U.S. Dep't of Homeland Sec.*,

4
    899 F.3d 1035 (9th Cir. 2018)............................................................................................2, 6

5

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008)...............................................................................................10

6

*Bodri v. GoPro, Inc.*,

7
    252 F. Supp. 3d 912 (N.D. Cal. 2017) .................................................................................12

8

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,

9
    856 F.3d 605 (9th Cir. 2017).........................................................................................10, 11

10

*City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
    302 F. Supp. 3d 1028 (N.D. Cal. 2018) ................................................................................5

11

*Fecht v. Price Co.*,

12
    70 F.3d 1078 (9th Cir. 1995)...............................................................................................10

13

*Flynn v. Sientra*,

14
    2016 WL 3360676 (C.D. Cal. June 9, 2016) ......................................................................10

15

*Hatamian v. Advanced Micro Devices, Inc.*,
    87 F. Supp. 3d 1149 (N.D. Cal. 2015) .................................................................................7

16

*Howard v. Everex Sys., Inc.*,

17
    228 F.3d 1057 (9th Cir. 2000)............................................................................................15

18

*Jui-Yang Hong v. Extreme Networks, Inc.*,

19
    2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) .....................................................................7

20

*In re Lattice Semiconductor Corp. Securities Litig.*,
    2006 WL 538756 (D. Or. Jan. 3, 2006) ...............................................................................9

21

*Lopes v. Fitbit, Inc.*,

22
    2020 WL 1465932 (N.D. Cal. Mar. 23, 2020) .....................................................................8

23

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,

24
    513 F.3d 702 (7th Cir. 2008)...............................................................................................12

25

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020)....................................................................................... *passim*

26

*No. 84 Emp'r-Teamster Joint Council Pension Tr. Fund v. Am. W Holding Corp.*,

27
    320 F.3d 926 (9th Cir. 2003)..............................................................................................13

28

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ............................................................................................11

*Purple Mountain Tr. v. Wells Fargo & Co.*,
    432 F. Supp. 3d 1095 (N.D. Cal. 2020) ..........................................................................7, 8, 9

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014) ..............................................................................................10

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ..............................................................................................13

*Rihn v. Acadia Pharm. Inc.*,
    2016 WL 5076147 (S.D. Cal. Sept. 19, 2016) ....................................................................10

*Roberti v. OSI Sys., Inc.*,
    2015 WL 1985562 (C.D. Cal. Feb. 27, 2015) .....................................................................10

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ................................................................................................2

*S. Ferry LP #2 v. Killinger*,
    687 F. Supp. 2d 1248 (W.D. Wash. 2009) ...........................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .......................................................................................................8, 13

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ................................................................................12

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ..............................................................................................13

*Welgus v. TriNet Grp., Inc.*,
    2017 WL 6466264 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th
    Cir. 2019) ...........................................................................................................................11

*Westley v. Oclaro, Inc.*,
    897 F. Supp. 2d 902 (N.D. Cal. 2012) ................................................................................13

*In re Wet Seal, Inc. Sec. Litig.*,
    518 F. Supp. 2d 1148 (C.D. Cal. 2007) ...............................................................................10

*Yourish v. Cal. Amplifier*,
    191 F.3d 983 (9th Cir. 1999) .............................................................................................5, 7

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .........................................................................................11, 14

1    **I.       <u>INTRODUCTION</u>**

2          As set forth in Defendants' Motion to Dismiss (the "Motion" or "Mot."), the Revised

3    Consolidated Class Action Complaint (the "Complaint" or "Compl.") should be dismissed

4    because there are no factual allegations to establish that Mr. Cook's November 1, 2018 comments

5    about the performance of Apple's newly launched iPhone models and its business in Greater

6    China were false or misleading when made.  The Court should therefore dismiss this meritless

7    suit with prejudice.

8          Not only were Mr. Cook's statements accurate at the time he made them, but there

9    are *zero* contemporaneous factual allegations demonstrating that Mr. Cook knew that those

10   statements were false or misleading.  Further, the Complaint asserts an implausible theory of

11   fraud, contending that Mr. Cook decided to mislead the market about the Company's prospects,

12   all while knowing that the allegedly misrepresented true state of affairs would be revealed just a

13   few months later, but without selling his Apple shares or otherwise benefiting from the purported

14   lies.  As the Motion explains, this implausible theory of fraud is squarely foreclosed by the Ninth

15   Circuit's recent decision in *Nguyen v. Endologix, Inc.*, 962 F.3d 405 (9th Cir. 2020).

16         Plaintiff, unhappy that the Court granted Defendants leave to move to dismiss the

17   Complaint, *see* Dkt. No. 117, contends that "[t]his Court has already substantively analyzed these

18   factual allegations in a thorough 46-page Order … and found them sufficient," Opposition

19   ("Opp'n") at 3.  But the "factual allegations" previously analyzed by the Court were asserted by a

20   different plaintiff in a different complaint that alleged a different theory of fraud over a largely

21   different class period that encompassed over 80 alleged misstatements made over a 17-month

22   period.  The Complaint now before the Court is brought by a new plaintiff, asserts a different

23   theory of fraud over a significantly narrowed class period, and challenges only two alleged

24   misstatements.  The instant Complaint also gives rise to new and different arguments that

25   Defendants could not have previously made, or that Defendants could not have fully articulated in

26   earlier briefing given the dozens of alleged misstatements then at issue.  Contrary to Plaintiff's

27   suggestion, this is not a motion for reconsideration, and the Court is free to consider and decide

28

1

the relevant issues anew.[1]  *See, e.g.*, *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018) (the "filing of an amended complaint requires a new determination" and "leaves the district court free" to decide issues differently).

For these reasons and others discussed below, the Complaint should be dismissed.

## II.   ARGUMENT

### A.   The Complaint Fails To Allege A False Or Misleading Statement

The Complaint challenges only two allegedly misleading statements, both made by Mr. Cook in response to questions posed by analysts during an investor conference call held on November 1, 2018.  The Motion demonstrates that the Complaint alleges no contemporaneous facts demonstrating that either of the challenged statements was inconsistent with the underlying facts (i.e. were false when made).  *See* Mot. at 7-12.  As explained below, the Opposition fails to rebut that demonstration.

#### 1.   Mr. Cook's Statement Regarding The Launch Of New iPhone Models

As set forth in Defendants' Motion, the Complaint fails to allege that Mr. Cook's November 1, 2018 statements regarding the launch of new iPhone models—specifically, his statements that the "Xs and Xs Max got off to a really great start" and that Apple had "very, very little data" about the launch of the iPhone XR, *see* Compl. ¶ 57—were false or misleading.[2]  As explained below, while Plaintiff relies on various after-the-fact press reports and statements in an attempt to allege falsity, *see* Opp'n at 11-12, none of those after-the-fact disclosures were *inconsistent* with Mr. Cook's November 1 statements, and thus cannot establish falsity, *see Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) (allegedly omitted facts must be "*inconsistent* with the [challenged] statements so as to show that the statements must have been

---

[1] Even if the standards for reconsideration motions applied (they do not), the Ninth Circuit's recent decision in *Nguyen v. Endologix*, decided after the Court's ruling on the motion to dismiss the Consolidated Amended Complaint, would present sufficient basis for the Court to reconsider its earlier ruling.

[2] The Motion also points out that Plaintiff does not allege that there was anything false or misleading about Mr. Cook's additional statement that "[u]sually, there is some amount of wait until a product shows – another product shows up in look, but in – that – in looking at the data, on the sales data for Xs and Xs Max, there's not obvious evidence of that in the data as I see it."  *See* Mot. at 9 (citing Compl. ¶ 57).  The Opposition fails to address this argument, and thus Plaintiff tacitly concedes that this statement was not false or misleading.

false or misleading when made" (emphasis added)); *see also* Mot. at 7 (collecting additional Ninth Circuit precedent for proposition that statements are not misleading when they are not inconsistent with the allegedly omitted "true" facts).

     <u>**First**</u>, with respect to Mr. Cook's statement that "[t]he **Xs and Xs Max** got off to a really great start," Compl. ¶ 57 (emphasis added), the Complaint offers no facts suggesting that the XS and XS Max did ***not*** get off to a "really great start." Plaintiff does not dispute that the November 5, 2018 article in the *Nikkei Asian Review* (the "*Nikkei* Article") refers only to purported changes to the production of a ***different*** iPhone model—**the XR**. *See id.* ¶ 68; Ex. 2.[3] Indeed, the *Nikkei* Article says ***nothing*** about purported changes in production of the iPhone XS or XS Max. Unable to rely on the *Nikkei* Article to establish anything about demand for the XS and XS Max, Plaintiff instead argues that an assortment of other supposed "corroborative facts" purportedly "confirm ***all three*** new iPhone models, the XS, XS Max and XR, were experiencing weak demand." Opp'n at 11 (emphasis in the original). But none of Plaintiff's purported "corroborative facts" establish that Mr. Cook's November 1, 2018 statement that the XS and XS Max got off to a "really great start" was false at the time it was made. Specifically:

- **<u>September 24, 2018 *AppleInsider* Article (Compl. ¶ 16):</u>** Plaintiff points to an article from September 24, 2018 which cited an analyst opinion that XS and XS Max sales were "weak." Opp'n at 11-12. But this article—published only three days after the XS and XS Max were released, *see* Compl. ¶ 7—cannot establish that Mr. Cook had no reasonable basis to state, ***more than a month later***, that the XS and XS Max were off to a great start.

- **<u>November 12, 2018 Wells Fargo Report (Compl. ¶ 74):</u>** Wells Fargo noted in this report that Apple supplier Lumentum had announced that it "recently received a request from one of [its] largest Industrial and Consumer customers . . . to materially reduce shipments to them[.]" Compl. ¶ 74. But Lumentum did not name the specific customer; Wells Fargo merely presumed that the customer was Apple. *Id.* In any

---

[3] All "Ex. __" references are to the exhibits attached to Defendants' Request for Judicial Notice (Dkt. No. 119).

event, even assuming that the Wells Fargo report reflects a reduction in Apple orders from Lumentum, there is no way to determine from the report whether that reduction in orders was indicative of demand for the XS and XS Max as opposed to the XR. Nor is there anything in the report indicating that Lumentum received a request to reduce shipments *before* Mr. Cook's November 1, 2018 statements.  To the contrary, the report—dated nearly two weeks after Mr. Cook's statements—says that Lumentum only "recently" received such a request.

- **<u>November 14, 2018 Guggenheim Report (Compl. ¶ 76)</u>:**  This analyst report makes forward-looking predictions about iPhone demand; it contains no facts suggesting that Mr. Cook's November 1, 2018 statements about the XS and XS Max were false at the time they were made.

- **<u>December 4, 2018 *Bloomberg* Article (Compl. ¶ 78)</u>:**  In this article, *Bloomberg* cited an unnamed "person familiar with the situation" who purportedly stated that in October, "in the days around the launch of the iPhone XR," Apple "moved some marketing staff from other projects to work on bolstering sales of the latest handsets." Compl. ¶ 78.  But there is nothing unusual about a company deciding to focus its marketing efforts on newly-released products, and the article only *speculates* that the marketing moves reflected weak sales.  *Id.* (anonymous source viewed marketing shift as "*possible* admission that the devices *may* have been selling below some expectations") (emphasis added)).

- **<u>Mr. Cook's January 2, 2019 CNBC Interview (Compl. ¶ 83)</u>:**  As explained in the Motion, there is no inconsistency between Mr. Cook's statement that the XS and XS Max "got off to a really great start" after their September 2018 launch, and his later January 2019 statement that the Company "saw, *as the quarter went on*, things like traffic in our retail stores, traffic in our channel partner stores, the reports of the smartphone industry contacting, *particularly bad in November*[.]"  Compl. ¶ 83 (emphasis added); *see* Mot. at 8.  The Complaint contains no factual allegations showing that the trends that Apple eventually saw "as the quarter went on" were

known to Mr. Cook on *November 1*—let alone that those trends had any bearing on the question of whether the XS and XS Max got off to a "great start."  Nor is it plausible that the import of trends that became "particularly bad in November" were known to Mr. Cook on the *first day* of November.

Because none of these purportedly "corroborative" disclosures are *inconsistent* with Mr. Cook's November 1, 2018 statement regarding the XS and XS Max, it makes no difference that there is temporal proximity between the November 1 statement and the later disclosures.  Plaintiff relies heavily on this Court's findings with respect to temporal proximity in its decision in *City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 302 F. Supp. 3d 1028 (N.D. Cal. 2018), but in that case there was a stark and direct contradiction—unlike anything present here—between the company's representation that its results were "encouraging" and its subsequent acknowledgement of "pervasive customer complaints" and inventory problems.  *Id.* at 1042.  Moreover, in *RH*, the allegations of temporal proximity served only to *bolster* other particularized allegations of falsity—including the contemporaneous accounts of confidential witnesses.  *Id.* at 1041-42.  Here, the Complaint offers no confidential witnesses or other contemporaneous facts; Plaintiff relies *solely* on the temporal proximity of later media reports to establish the falsity of Mr. Cook's November 1 statements.  Under Ninth Circuit law, that is not enough.  "Temporal proximity of an allegedly fraudulent statement or omission and a later disclosure" may "bolster a complaint" but it is insufficient to allege falsity in the absence of "other adequately pleaded allegations for the temporal proximity to bolster."  *Yourish v. Cal. Amplifier*, 191 F.3d 983, 997 (9th Cir. 1999).

**Second**, with respect to Mr. Cook's statement that Apple had "very, very little data" about the launch of the iPhone XR as of November 1, 2018, Compl. ¶ 57, the Complaint offers no contemporaneous facts suggesting that the statement was false when made.  Again, Plaintiff relies entirely on the temporal proximity of after-the-fact disclosures—here, the November 5, 2018 *Nikkei* Article—which are not enough, standing alone, to allege falsity.  *See* Mot. at 9; *Yourish*, 191 F.3d at 997.  In any event, the *Nikkei* Article does not shed any light on what Mr. Cook knew about sales of the XR at the time of his earlier, November 1 statement.  It is undisputed that the

XR was not released until late October—just shortly before the November 1 statement.  *See* Compl. ¶ 7.  Mr. Cook did not state that Apple had "no data" about XR sales—just that it had "very, very little data," as to be expected after only a short period of sales.[4]  Further, Plaintiff does not dispute that the *Nikkei* Article does not indicate ***when*** Apple purportedly cancelled the "production boost" for the XR, *see* Ex. 2, and there are no particularized facts in the Complaint suggesting that the decision to cancel the "production boost" had already been made by the time Mr. Cook participated in the November 1 investor call.  If anything, the article suggests that the referenced production changes were very recent, stating that Apple was "reviewing iPhone demand weekly to adjust orders ***quickly*** in response to the market."  *Id.* at 2 (emphasis added).

### 2.    Mr. Cook's Statement Regarding Apple's Business In Greater China

The Complaint similarly fails to allege that there was anything false or misleading about Mr. Cook's November 1, 2018 statement that he would "not put China in that category" of emerging markets with flat or declining growth in the previous quarter.  Compl. ¶ 56; Ex. 1 at 10.

**First**, as the Motion explains, when viewed in the context of the complete question and answer from the investor call, it is clear that Mr. Cook's statement was an ***accurate historical statement*** because it referred to the "category" of emerging markets, like Brazil and India, that were down or flat ***in the previous quarter***.  *See* Mot. at 10.  Mr. Cook accurately stated that he would not put China—with its 16% historical growth in the previous quarter—in that category.  Plaintiff does not dispute that China experienced 16% growth in the previous quarter.  Instead, Plaintiff's only response is to argue that the Court has already decided this issue against Defendants.  *See* Opp'n at 9.  But the "filing of an amended complaint requires a new determination" and "leaves the district court free" to decide issues differently.  *Askins*, 899 F.3d at 1043.  Defendants respectfully submit that the Court should review this issue anew, particularly given that the last round of briefing, which involved dozens of alleged misstatements, did not permit Defendants to present this argument in as much detail.

---

[4] Plaintiff's assertion that "the Company had been taking pre-orders [for the XR] since October 19, 2018," Opp'n at 11, does not meaningfully change the analysis.  Even under Plaintiff's own theory, Apple had, at most, only 11 days of sales and/or pre-order data.

**Second**, even to the extent that Mr. Cook's statement is construed as a statement about the Company's current performance (and not just historical performance) in China, Plaintiff nonetheless fails to allege specific facts establishing that the statement was false at the time it was made on November 1, 2018.

As an initial matter, the Opposition effectively concedes that the *Nikkei* Article is not probative of falsity in connection with the statement about China—accusing Defendants of engaging in "an attempt at misdirection" by even making that argument. *See* Opp'n at 9.

That leaves Plaintiff with Mr. Cook's January 2, 2019 CNBC interview, *see* Compl. ¶ 106, which Plaintiff erroneously describes as an "admission" that "Defendants not only knew of . . . negative trends [in China] throughout the quarter, but that they had knowledge prior to his November 1, 2018 statements," Opp'n at 8. But Mr. Cook made no such "admission." Instead, he said that the Company saw negative trends "*as the quarter went on*," Compl. ¶ 106 (emphasis added), not—as Plaintiff contends—that the Company saw those trends "***throughout*** the quarter" or prior to November 1, Opp'n at 8 (emphasis added). And while Mr. Cook said that those trends became "particularly bad in November," nothing in his January 2019 interview suggests that those trends were known to him on the ***very first day*** of November when the challenged statements were made. The interview is far from the type of "I knew it all along" admission that is required in the Ninth Circuit to establish the falsity of a prior statement. *Yourish*, 191 F.3d at 996; *see also Jui-Yang Hong v. Extreme Networks, Inc.*, 2017 WL 1508991, at *21 (N.D. Cal. Apr. 27, 2017) ("In considering whether a subsequent statement is sufficient to demonstrate the falsity of a prior statement, the Ninth Circuit assesses whether the statement is along the lines of 'I knew it all along.'").[5]

---

[5] In Plaintiff's cited cases, *see* Opp'n at 9, the relevant "admissions" ***were*** of the "I knew it all along" variety—unlike here, *see Purple Mountain Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1104-05 (N.D. Cal. 2020) (involving explicit admissions by defendants that they knew of relevant problems at times prior to allegedly misleading disclosures); *Hatamian v. Advanced Micro Devices, Inc.*, 87 F. Supp. 3d 1149, 1160 (N.D. Cal. 2015) (defendants touted "strong . . . supply" in April 2011 but later admitted that "customers were not fully supplied . . . until December 2011").

### B.    The Complaint Does Not Allege A "Strong Inference" Of Scienter

As the Motion explains, the Complaint's allegations do not create even a reasonable inference of scienter, much less the cogent and compelling inference that is required by the PSLRA. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007); Mot. at 12-19.  The Opposition fails to rebut that showing.

#### 1.    There Was No "Admission" That The November 1, 2018 Statements Were False Or Misleading

Contrary to Plaintiff's assertion, the Complaint does not allege "that Cook admitted to Defendants' contemporaneous knowledge of facts directly contradicting his November 1, 2018 statement" regarding the Company's business in China.  Opp'n at 11.[6]  As discussed above, Mr. Cook's January 2, 2019 CNBC interview contains no such admission, instead stating only that the Company saw negative trends "*as the quarter went on . . . particularly bad in November*." Compl. ¶ 106 (emphasis added).  Nowhere in the interview does Mr. Cook "admit" that he was aware of negative trends in China on or before the first day of November—which fell one-third of the way through the quarter.  Further, while Mr. Cook said in January 2019 that "it's clear that the economy begins to slow [in China] for the second half," *id.*, he was plainly speaking from the vantage point of *January 2019 looking back*—not making an admission that the Company was aware of the slowing trends by November 1, 2018.  The Complaint offers nothing to challenge this conclusion.

As noted above, in the Ninth Circuit, "[a]n after-the-fact statement does not constitute an admission unless it contradicts the substance of an earlier statement and essentially states 'I knew it all along.'"  *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020) (citations omitted).  Mr. Cook's January 2, 2019 statements to CNBC do no such thing.  One of Plaintiff's cited cases, *Purple Mountain Trust v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095 (cited at Opp'n at 15), provides an example of the type of "I knew it all along" admission that is required to plead a

---

[6] Plaintiff apparently does not assert that Mr. Cook's January 2, 2019 interview has any bearing on his alleged state of mind in connection with the challenged statements about the launch of new iPhone models (XS and XS Max).

strong inference of scienter.  There, Wells Fargo and its then-CEO allegedly failed to disclose improper insurance practices in response to questions in November 2016 about "whether they knew about potential misconduct outside of [] already disclosed improper retail banking sales practices"—indeed, the CEO responded that "he was 'not aware of any issues.'"  *Id.* at 1104-05. The CEO later explicitly admitted that "he had been aware of the [insurance] problem 'in 2016, in late August, early September.'"  *Id.* at 1106.  Wells Fargo also later explicitly admitted that it was aware of and had initiated a review of the problem in July 2016.  *Id.*  Under these circumstances, Judge Donato held that the plaintiffs adequately pled that the CEO's and Wells Fargo's responses to the November 2016 questions were materially misleading and made with scienter.  *Id.*[7]  Such circumstances and explicit admissions are plainly missing here.[8]

### 2. Plaintiff's Allegations About Temporal Proximity, And The "Importance Of China," Do Not Establish A Strong Inference Of Scienter

Lacking any contemporaneous facts establishing that Mr. Cook had knowledge of the alleged falsity of his November 1, 2018 statements, Plaintiff instead contends that an inference of scienter is warranted by the purportedly "damning temporal proximity of the immediate and varied disclosures contradicting Cook's statements."  Opp'n at 18.  But as set forth in the Motion, and as discussed above, none of the facts purportedly revealed in these "immediate and varied disclosures," including the *Nikkei* Article, are inconsistent with Mr. Cook's November 1, 2018 statements at all.  *See* Mot. at 14-16.   Absent any such inconsistency, the temporal proximity of the later disclosures to the November statements is meaningless.   All of Plaintiff's cited authorities, *see* Opp. at 17-18, involved statements that were directly contrary to undisclosed

---

[7] The decision in *In re Lattice Semiconductor Corp. Sec. Litig.*, 2006 WL 538756 (D. Or. Jan. 3, 2006) (cited at Opp'n at 15-16), is similarly inapposite.  There, the court held that, unlike here, plaintiffs had alleged "**contemporaneous** business conditions which demonstrated . . . falsity." *Id.* at *16 (emphasis added).

[8] Plaintiff contends that "the reaction of analysts and media to Cook's belated admissions further corroborate Plaintiff's allegations and confirms that the market believed it was misled by Apple[.]"  Opp'n at 16.  Not surprisingly, Plaintiff cites no authority in support of the proposition that hindsight speculation by analysts or the press is sufficient to establish a strong inference of scienter.

adverse facts to which the individual defendants had access, and thus are inapposite and do not support Plaintiff's position.[9]

Further, the Opposition does not offer any compelling response to Defendants' argument that the anonymously sourced *Nikkei* Article cannot be probative of scienter because it does not name or otherwise provide sufficient identifying details about the unnamed sources on which it relies. *See* Mot. at 14-15 (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1172 (C.D. Cal. 2007)).[10] Plaintiff responds to this argument only by citing one out-of-circuit district court case allowing the use of news articles to establish scienter, *see* Opp'n at 12 n.12, while wholly ignoring the Ninth Circuit authority cited in the Motion which compels a contrary conclusion.

In any event, even if Plaintiff's allegations based on the temporal proximity of after-the-fact disclosures were suggestive of scienter (and they are not), under Ninth Circuit authority they could nonetheless serve only to bolster other well-pled allegations of scienter—not to establish a strong inference of scienter standing alone. *See City of Dearborn Heights Act 345 Police & Fire*

---

[9] *See Reese v. Malone*, 747 F.3d 557, 574 (9th Cir. 2014) (later-revealed facts included "information directly contradicting [the earlier, challenged] statements"); *Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at *12-13 (C.D. Cal. Feb. 27, 2015) (statements that defendants were close to developing upgraded software were misleading because they failed to disclose contradictory information from contemporaneous reports and data to which defendants had access); *S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1260 (W.D. Wash. 2009) (statements touting company's risk management capabilities were misleading where defendant represented he had access to "*all*" of the information necessary" to make his assessment about risk but failed to disclose certain contrary adverse information (emphasis added)); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 986-87 (9th Cir. 2008) (statements "touting" anticipated revenues from backlogged contracts were misleading because defendants failed to disclose that the contracts were subject to stop-work orders that rendered the contracts valueless); *Rihn v. Acadia Pharm. Inc.*, 2016 WL 5076147, at *6 (S.D. Cal. Sept. 19, 2016) (statements that company was "on track" to submit new drug application were misleading where defendants admitted that they had failed to timely conduct any meaningful assessment of the manufacturing and quality assurance systems required to complete the application); *Flynn v. Sientra*, 2016 WL 3360676, at *10-12 (C.D. Cal. June 9, 2016) (statements regarding risks associated with exclusive supplier's failure to comply with regulations were misleading because the company failed to disclose that regulators had already suspended the supplier's license for failure to comply with those regulations, and thus the risks had already materialized); *Fecht v. Price Co.*, 70 F.3d 1078, 1083 (9th Cir. 1995) (positive statements concerning company's store expansion program were misleading because they were contradicted by the alleged fact that "the new stores were losing money and the program overall was doing so poorly that it would have to be curtailed or abandoned").

[10] This argument applies with equal force to Plaintiff's allegations concerning additional anonymously sourced analyst and press reports. *See* Compl. ¶¶ 16, 74, 78.

*Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 622 (9th Cir. 2017) (explaining that "temporal proximity of an allegedly fraudulent statement or omission and a later disclosure" is insufficient on its own to establish scienter and can only "bolster" an inference based on other allegations). "Although temporal proximity can sometimes constitute circumstantial evidence of scienter, the timing of a disclosure alone cannot establish a strong inference of scienter ***or even contribute strongly to such an inference***." *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *20 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019) (emphasis added; citations omitted).

Relatedly, Plaintiff argues that the "core operations" inference applies because "Apple's business in Greater China was core to the Company's revenue and market share growth." Opp'n at 18. But "[p]roof under [the core operations] theory is not easy." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014). "A plaintiff [seeking to invoke the core operations doctrine] must produce either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations, such as data monitoring . . . or witness accounts demonstrating that executives had actual involvement in creating false reports." *Id.* (citation omitted). Plaintiff utterly fails to meet either of those requirements.

Absent detailed contemporaneous factual allegations about Mr. Cook's access to the relevant information—which are lacking here—scienter may be assumed under the core operations doctrine only "where the falsity [of a statement] is patently obvious" and "the 'facts [are] prominent enough that it would be 'absurd to suggest' that top management was unaware of them.'" *Zucco*, 552 F.3d at 1001. Plaintiff has not even alleged the falsity of any statement, much less demonstrated that the falsity of any statement was "patently obvious."

In any event, Plaintiff acknowledges, as it must, that the core operations inference standing alone is not sufficient to plead a strong inference of scienter. *See* Opp'n at 19. Because Plaintiff fails to allege that Mr. Cook "admitted" that he was contemporaneously aware of facts contradicting his November 1, 2018 statements (as discussed above), there are no "other well-pled allegations of scienter" for the temporal proximity and core operations allegations to "bolster." *See Align Tech.*, 856 F.3d at 622; *Zucco*, 552 F.3d at 1001.

1
2

### 3.      There Is No Cogent And Compelling Inference Of Scienter, As Required By The PSLRA

3      Perhaps most damning to the Complaint is the fact that Plaintiff cannot offer *any* cogent

4  and compelling theory for *why* Defendants, and Mr. Cook in particular, would lie.

5      In its Opposition, Plaintiff implicitly concedes that the Complaint fails to allege that

6  Defendants possessed any motive to commit securities fraud, contending instead that "the

7  Supreme Court has made clear that Plaintiff need not plead motive."  Opp'n at 20.  While it is

8  true that a plaintiff in a securities fraud case is not *required* to plead motive, it is equally true that

9  a *lack* of any motive allegations "significantly undermine[s]" any inference of scienter.  *Bodri v.*

10  *GoPro, Inc.*, 252 F. Supp. 3d 912, 933 (N.D. Cal. 2017); *see, e.g.*, *Veal v. LendingClub Corp.*,

11  423 F. Supp. 3d 785, 818 (N.D. Cal. 2019) (noting that "the Court may properly consider [the

12  absence of] motive as a factor in its holistic analysis of scienter," and holding that complaint

13  failed to plead scienter where "there are no allegations of motive to commit fraud").  The Ninth

14  Circuit confirmed as much in its recent decision in *Nguyen v. Endologix*, *decided after this*

15  *Court's ruling on the previous motion to dismiss*.  962 F.3d 405.  In holding that the plaintiff in

16  that case failed to plead a strong inference of scienter, the Ninth Circuit explicitly took note of the

17  *absence* of any allegations that the defendants "sought to profit from [their] scheme in the

18  interim, such as by selling off their stock or selling the company at a premium."  *Id.* at 415.

19      Plaintiff's attempt to distinguish *Endologix* is not persuasive.  According to Plaintiff,

20  "*Endologix* stands for nothing more than the unremarkable holding that allegations of fraud must

21  be plausible and the Court need not check its disbelief at the door."  Opp'n at 23-24.  But

22  *Endologix* also held that in a case where there were no allegations of motive or personal profit, an

23  allegation that defendants misled the market when they knew the truth was going to come out

24  anyway was not a plausible theory of scienter.  962 F.3d at 415; *see* Mot. at 16-17.  Under

25  Plaintiff's formulation, that is exactly the situation here.  *Endologix* is squarely on point.[11]

26
27
28

[11] Ignoring the on-point and controlling holding in *Endologix*, Plaintiff instead asks the Court to follow the Seventh Circuit's decision in *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702 (7th Cir. 2008), in which that court held that an absence of an obvious financial motive to commit securities fraud may not be dispositive because defendants may simply be taking a "gamble – concealing bad news in the hope that it will be overtaken by good news."  Opp'n at 24

DEFENDANTS' REPLY ISO MOTION TO DISMISS
CASE NO. 4:19-CV-02033-YGR

Plaintiff asserts that "[t]he absence of stock sales [by the Individual Defendants] does not support an innocent inference [of scienter]."  *See* Opp'n at 21.[12]  But this assertion is contrary to Ninth Circuit precedent, which squarely holds that the absence of stock sales ***does*** "detract from a scienter finding."  *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018).[13]  Indeed, under *Tellabs*, the Court must consider ***all*** inferences when assessing scienter, including the nonfraudulent inference arising from the fact that the Individual Defendants here stood to ***lose*** money in January 2019 when the "truth" of the alleged fraud was revealed in Apple's earnings.  *See* Mot. at 18 (citing cases).  Simply put, Plaintiff's contention that the lack of stock sales during the Class Period should not factor into the Court's scienter analysis because the Complaint "does not allege insider stock sales and does not cite to, or rely on, any document referencing them," Opp'n at 20, is dead wrong, *see, e.g.*, *Webb*, 884 F.3d at 844 (finding lack of defendants' stock sales during the class period inconsistent with, and undermining any inference of, scienter); *Endologix*, 962 F.3d at 415 (same); *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884-85 (9th Cir. 2012) (same); *see also Westley v. Oclaro, Inc.*, 897 F. Supp. 2d 902, 928-29 (N.D. Cal. 2012) (rejecting plaintiff's argument that because the complaint did not allege a financial motive to commit fraud, the absence of insider trading allegations was irrelevant to the scienter analysis).

---

(citing *Makor Issues*, 513 F.3d at 710).  Even putting aside that the Court should follow the on-point Ninth Circuit authority in *Endologix*, the Seventh Circuit's decision in *Makor Issues* is inapposite.  Plaintiff does not allege in this case that Defendants were taking a "gamble" and "hoping" for good news; rather, under Plaintiff's theory and allegations, Defendants allegedly knew as of November 1, 2018 that business in China was bad ***and getting worse***.  *See, e.g.*, Compl. ¶ 24 (alleging knowledge of "declining traffic in Apple's retail stores" and "an overall contraction of the smartphone industry," and that the Company was cutting iPhone production "for the current quarter and holiday season").

[12] Contrary to Plaintiff's contention, the Court has yet to consider Mr. Cook and Mr. Maestri's ***lack of*** stock sales during the Class Period as part of its holistic analysis of scienter.  *See* Opp'n at 20-21.  The fact that the Court previously found that Mr. Cook and Mr. Maestri's stock sales during the different Class Period alleged in the Consolidated Amended Complaint were not probative of scienter has no bearing on the Court's holistic assessment of scienter in considering the Motion before it now.

[13] In the Ninth Circuit's earlier decision in *No. 84 Emp'r-Teamster Joint Council Pension Tr. Fund v. Am. W Holding Corp.*, 320 F.3d 926, 944 (9th Cir. 2003) (cited by Plaintiff at Opp'n at 21), the court stated only that "the lack of stock sales by a defendant is not ***dispositive*** as to scienter."  *Id.* at 944 (emphasis added).  Defendants do not contend that the lack of stock sales here is dispositive as to scienter, only that the lack of stock sales significantly undermines any inference of scienter, as the Ninth Circuit held in cases like *Endologix* and *Webb*.

Finally, Plaintiff does not appear to dispute that Apple spent approximately **$1.35 billion** to repurchase 6,681,000 shares of its own stock during the Class Period.  *See* Ex. 4.[14]  Plaintiff likewise fails to address the numerous cases from this District holding that stock repurchases negate a finding of scienter because it would make no sense to purchase the stock if the Defendants knew the prices to be inflated by allegedly false and misleading statements.  *See* Mot. at 18 (citing *In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *8 (N.D. Cal. Mar. 29, 2013); *Bodri*, 252 F. Supp. 3d at 933; *In re Tibco Software Sec. Litig.*, 2006 WL 1469654, *21 (N.D. Cal. May 25, 2006); *Costabile v. Natus Med. Inc.*, 2018 WL 7134363, at *5 n.5 (N.D. Cal. Dec. 18, 2018); *Matthews v. Centex Telemanagement, Inc.*, 1994 WL 269734, at *8 (N.D. Cal. June 8, 1994)).  Instead, Plaintiff suggests that because Apple repurchased "only" $1.3 billion worth of stock during the 2-month Class Period, comparatively less than the tens of billions spent on stock repurchases over the preceding 15 months, the stock repurchases during the Class Period are somehow not exculpatory but rather *indicative* of scienter.  *See* Opp'n at 21-23.  Tellingly, Plaintiff cites no authority in support of this theory, which makes no sense: why would Defendants cause Apple to spend even one penny, let alone **$1.3 billion**, to purchase stock they knew was artificially inflated due to their alleged fraud?  Plaintiff does not say.

At bottom, the Court must "compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." *Zucco*, 552 F.3d at 991.  And the "malicious" inference that Plaintiff is asking the Court to accept—that Mr. Cook, with no apparent motive to do so, lied on November 1, 2018 about iPhone demand and the Company's prospects in China, knowing that the allegedly misrepresented true state of affairs would be revealed just two months later—is neither cogent nor compelling; indeed, it "does not make a whole lot of sense." *Endologix*, 962 F.3d at 415.

---

[14] Plaintiff complains that Apple seeks to "improperly inject" facts about the stock repurchases through extrinsic documents, *see* Opp'n at 21-22, but fails to raise any reasonable dispute regarding the timing and amounts of those repurchases.  Because the relevant facts regarding Apple's stock repurchases "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2), it is appropriate for the Court to take judicial notice of those facts, *see also* Defendants' Request for Judicial Notice.

## C.     The Section 20(a) Claim Should Be Dismissed

As the Motion explains, because Plaintiff has failed to plead a primary violation of Section 10(b), its Section 20(a) claim must also be dismissed.  *See* Mot. at 19.  The Motion further explains that, even if Plaintiff had adequately pled a violation of Section 10(b), Plaintiff has nevertheless failed to plausibly allege control person liability as to Mr. Maestri.  *Id.* at 19-20.

It is undisputed that as Apple's CFO, Mr. Maestri reported to Apple's CEO, Mr. Cook, the only "speaker" of the alleged misstatements.  *Id.*  Plaintiff fails to offer any plausible theory to explain how Mr. Maestri could have exercised actual power or control over his boss's verbal responses to questions posed by analysts on the November 1, 2018 investor call.  *See* Opp'n at 24-25.  Instead, Plaintiff cites authority for the general proposition that control can be sufficiently alleged by pointing to a defendant's position and role within a company.  *Id.*  But this general assertion fails to address the specific and unique circumstances present here—that the sole alleged misstatements were made by Apple's CEO on a single investor call in response to analyst questions.  Thus, Plaintiff's assertion that "control person liability is not mutually exclusive and 'can rest collectively with the corporation's management,'" *id.* at 25, is beside the point and untethered to any argument advanced in the Motion.  Simply put, Plaintiff has failed to allege any facts to show how Mr. Maestri could have "exercised actual power or control over the ***primary [alleged] violator***," as is required to plead Section 20(a) liability.  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (citation omitted; emphasis added); *see also* Mot. at 20 (citing additional cases).  Accordingly, Plaintiff's Section 20(a) claim against Mr. Maestri should also be dismissed on this independent ground.

## III.   CONCLUSION

For these reasons and those in Defendants' Motion, the Complaint should be dismissed.

Dated: August 3, 2020                       ORRICK, HERRINGTON & SUTCLIFFE LLP


                                            _____
                                                      */s/ James N. Kramer*
                                            JAMES N. KRAMER

                                            Attorneys for Defendants Apple Inc.,
                                            Timothy Cook, and Luca Maestri