ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
KENNETH J. BLACK (291871)
HADIYA K. DESHMUKH (328118)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com
    – and –
MARK SOLOMON (151949)
TOR GRONBORG (179109)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
torg@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re APPLE INC. SECURITIES LITIGATION | Case No. 4:19-cv-02033-YGR |
| | CLASS ACTION |
| This Document Relates To: | LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM* TO PEGATRON CORPORATION, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| ALL ACTIONS. | |
| | DATE: March 26, 2021 |
| | TIME: 9:30 a.m. |
| | CTRM: F, 15th Floor |
| | JUDGE: Hon. Joseph C. Spero |

4828-6508-0543.v1

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................................1

II. STATEMENT OF FACTS ......................................................................................3

    A.    Pegatron's Global Role in iPhone Production ..............................................3

    B.    As a Major iPhone Manufacturer, Pegatron Is Prominently Featured in the Events Underlying Plaintiff's Allegations ...................................................4

    C.    Pegatron Refuses to Comply with Plaintiff's Properly Served Subpoena *Duces Tecum* ...........................................................................................6

III. ARGUMENT ...........................................................................................................7

    A.    Plaintiff Properly Served a Subpoena *Duces Tecum* on Pegatron Under Rule 45 .......................................................................................................7

        1.    Plaintiff Properly Served Pegatron Co., a Foreign Corporation Operating in the United States ..........................................................8

            a.    Pegatron Co. Represented to a Federal Court That It Engaged in Business and Is Subject to Personal Jurisdiction in this District ...................................................10

        2.    Plaintiff Properly Served a Document Subpoena on Pegatron Co. Via Its U.S.-Based Subsidiaries ............................................11

            a.    Pegatron USA and PTSI Must Produce Responsive Documents Within Their Control ...................................13

    B.    Pegatron Co. Has Repeatedly Sought the Protections of California Courts When Beneficial ........................................................................................14

    C.    Pegatron Has Not Satisfied Its Burden to Resist Discovery of the Requested Documents ..............................................................................14

IV. CONCLUSION .....................................................................................................17

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*,

5
    262 F.R.D. 293 (S.D.N.Y. 2009) .........................................................12

6
*Beaver Cnty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*,
    2016 U.S. Dist. LEXIS 74205 (N.D. Cal. June 7, 2016) ...............................16, 17

7

8
*Castellar v. McAleenan*,
    2020 U.S. Dist. LEXIS 49942 (S.D. Cal. Mar. 23, 2020) ........................16

9
*Cosper v. Smith & Wesson Arms Co.*,

10
    346 P.2d 409 (Cal. 1959) .........................................................9, 11

11
*Halo Elecs., Inc. v. Bel Fuse Inc.*,
    2010 WL 2605195 (N.D. Cal. June 28, 2010) ...........................8, 9, 11, 12

12

13
*In re Citric Acid Litig.*,
    191 F.3d 1090 (9th Cir. 1999) .........................................................13

14
*In re Jee*,

15
    104 B.R. 289 (Bankr. C.D. Cal. 1989) .........................................................8

16
*In re Lithium Ion Batteries Antitrust Litig.*,
    2017 U.S. Dist. LEXIS 174022 (N.D. Cal. Oct. 19, 2017) .......................13

17
*In re Subpoena Duces Tecum to Dunhuang Grp.*,

18
    2019 WL 2150947 (E.D. Mich. May 17, 2019) ..................................... *passim*

19
*In re Subpoena to PayPal Holdings, Inc.*,
    2020 WL 3073221 (N.D. Cal. June 10, 2020) .........................................................16

20

21
*Javier v. Kaiser Found. Health Plan Inc.*,
    2020 WL 5630020 (N.D. Cal. Sept. 21, 2020) .........................................................8

22
*Jiae Lee v. Dong Yeoun Lee*,

23
    2020 U.S. Dist. LEXIS 246988 (C.D. Cal. Oct. 1, 2020) ........................16

24
*Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*,
    578 F. Supp. 2d 1224 (C.D. Cal. 2008) .........................................................8, 9

25

26
*Meneweather v. Powell*,
    2012 WL 12995648 (N.D. Cal. Apr. 4, 2012) .........................................................15

27
*Mga Ent., Inc. v. Nat'l Prods.*,

28
    2011 U.S. Dist. LEXIS 161044 (C.D. Cal. Dec. 20, 2011) ........................13

Page

*Paisley Park Enters., Inc. v. Boxill*,
   2019 WL 1036059 (D. Minn. Mar. 5, 2019) ........................................................................12

*Reflex Media, Inc. v. SuccessfulMatch.com*,
   2021 WL 275545 (N.D. Cal. Jan. 27, 2021) ..........................................................................7

*Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*,
   2018 WL 2387580 (S.D. Cal. May 24, 2018).....................................................................7, 12

*Sharma v. BMW of N. Am. LLC*,
   2016 WL 1019668 (N.D. Cal. Mar. 15, 2016).................................................................13, 14

*Tomlinson v. United Behavioral Health*,
   2020 U.S. Dist. LEXIS 96717 (N.D. Cal. June 2, 2020) ......................................................15

*U.S. ex rel. Miller v. Pub. Warehousing Co. KSC*,
   636 F. App'x 947 (9th Cir. 2016) .........................................................................................11

*Valley LLC v. Cnty. of L.A*,
   2018 U.S. Dist. LEXIS 80225 (C.D. Cal. May 11, 2018) .....................................................16

*Viacom Int'l, Inc. v. YouTube, Inc.*,
   2008 WL 3876142 (N.D. Cal. Aug. 18, 2008) ......................................................................16

*Viasat, Inc. v. Space Sys./Loral, LLC*,
   2014 WL 12577593 (S.D. Cal. June 30, 2014) .....................................................................12

*Yamaha Motor Co., Ltd. v. Super. Ct.*,
   194 Cal. App. 4th 264 (2009) ...............................................................................................11

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
   Rule 4 ............................................................................................................... *passim*
   Rule 4(h)(1)(A), (e)(1) .........................................................................................................8
   Rule 26 .................................................................................................................................15
   Rule 26 (b)(1).....................................................................................................................7, 15
   Rule 34 .................................................................................................................................15
   Rule 45 ............................................................................................................... *passim*
   Rule 45(a)(l)(D) ....................................................................................................................7
   Rule 45 (d)(2)(B)(i)...............................................................................................................7
   Rule 45(g) .............................................................................................................................7

California Code of Civil Procedure
   §416.10(b) .............................................................................................................................8

LEAD PLAINTIFF'S NTC OF MTN TO COMPEL COMPLIANCE WITH SUBPOENAS *DUCES TECUM* TO PEGATRON CORP., MEMO IN SUPPORT THEREOF – 4:19-cv-02033-YGR
4828-6508-0543.v1

- iii -

1

2                                                                                    **Page**

3
California Corporations Code
4        §2110...................................................................................................................11

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO:    ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on March 26, 2021, at 9:30 a.m., before the Honorable Joseph C. Spero, United States Magistrate Judge, at the United States District Court, Northern District of California, San Francisco Division, 450 Golden Gate Avenue, Courtroom F, 15th Floor, San Francisco, California 94102, Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund ("Plaintiff") hereby brings this Motion pursuant to Federal Rule of Civil Procedure 45 to compel production of documents in response to Plaintiff's subpoena *duces tecum*.  This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Daniel J. Pfefferbaum and the [Proposed] Order filed herewith, all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

**RELIEF REQUESTED**

Plaintiff seeks an order of this Court holding: (i) that service of Plaintiff's subpoena *duces tecum* to non-party Pegatron Corporation ("Pegatron Co.") was proper under Federal Rules of Civil Procedure 4 and 45 via service upon Pegatron Co. at its U.S.-based operations and/or via service upon its domestic subsidiaries Pegatron USA, Inc. and Pegatron Technology Services Inc. ("Pegatron USA" and "PTSI", respectively, and collectively with Pegatron Co., "Pegatron"); and (ii) compelling Pegatron Co. to produce the documents specified by the subpoena *duces tecum*.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Pegatron is a technology manufacturer headquartered in Taiwan, with global operations, multiple U.S.-based subsidiaries and hundreds of California employees, including in this District. Pegatron's single most important relationship is with Defendant Apple,[1] for which it produces millions of iPhones and generates billions of dollars in annual revenue.  Pegatron is a key figure

---

[1]    "Defendants" are Apple Inc. ("Apple" or the "Company"), Timothy D. Cook ("Cook") and Luca Maestri.

1   in the underlying securities fraud action, in which Plaintiff alleges that Apple CEO Cook

2   misrepresented Apple's performance in Greater China while simultaneously slashing iPhone

3   production orders from Pegatron.

4           In December 2020, Plaintiff subpoenaed documents from Pegatron Co. concerning, among

5   other things, iPhone production volumes, tracking of iPhone sales and economic conditions in

6   Greater China.  Plaintiff served the subpoena on Pegatron Co. at its Elk Grove, California, facility

7   (which happens to be part of Apple's Elk Grove campus) and via Pegatron USA, its wholly-owned

8   U.S. subsidiary, located in Fremont, California (about 25 minutes from Apple's headquarters).

9   Pegatron Co. has objected and refused to comply with the subpoena on the grounds that it is a

10  foreign corporation not subject to service or jurisdiction in this Court.

11          Meanwhile, when it is to its benefit, Pegatron Co. or its subsidiaries have told other courts

12  that Pegatron Co. is actively engaged in business in California, including in this District.  For

13  example, in a 2018 action before Judge Koh, it was revealed that Pegatron Co. and PTSI were

14  jointly covered on an insurance policy for the Elk Grove facility.  And, in seeking to recover

15  insurance funds paid out by Pegatron Co., PTSI revealed that Pegatron Co. is a party to a contract

16  with an unnamed customer, clearly Apple, for smartphone repairs at the Elk Grove facility:

17              The repair services were performed by Pegatron's subsidiary, PTSI,
                **pursuant to a Repairs Services Agreement ("RSA") between Customer [i.e.,**
18              **Apple], Pegatron [Co.] and PTSI**."

19  Ex. 1 at 9.[2]

20          In another instance, when Pegatron Co. was sued for patent infringement in the United

21  States District Court for the District of Wyoming, it affirmatively argued that the matter should be

22  transferred to this District because Pegatron Co. is doing business here:

23              **Pegatron [Co.] has technical support and service facilities in the Northern
                District of California.**

24                                      *       *       *

25

26

27  [2]  All "Ex. __ " citations herein are to the Declaration of Daniel J. Pfefferbaum in Support of Lead
    Plaintiff's Motion to Compel Compliance with Subpoena *Duces Tecum* to Pegatron Corporation,
28  filed concurrently herewith.

> [Pegatron Co.] *reside[s] or conduct[s] business in the Northern District of California* . . . .

Ex. 2 at 3, 11.  In fact, in support of transfer in that case, Pegatron Co. affirmatively argued that it was subject to personal jurisdiction in the Northern District of California:

> [The Wyoming District Court] should transfer these actions *to the Northern District of California, where personal jurisdiction can be exercised* over all of the Defendants [including Pegatron Co.].

*Id.* at 2.

Even if the Court were to accept Pegatron Co.'s claim, against all evidence, that it is immune from service, the Court should nonetheless find service properly effectuated via Pegatron's wholly-owned U.S.-based subsidiaries, Pegatron USA and PTSI.  As recently analyzed by the Ninth Circuit, California law is manifestly clear that a foreign parent corporation can be served via its domestic subsidiary.  And, the connection between these subsidiaries and Pegatron Co. is more than sufficient to meet the lenient and applicable California standards.

Pegatron's efforts to avoid service and its contradictory representations before various courts are not surprising.  Indeed, its litigation history portrays a foreign corporation that has often and willingly utilized state and federal courts to enforce the benefits and protections afforded to it under U.S. law while seeking to avoid the reach of the court where it does not stand to gain.  This Court should reject such gamesmanship and find that Pegatron Co. has been properly served and must produce the requested documents.

## II.     STATEMENT OF FACTS

### A.     Pegatron's Global Role in iPhone Production

While Apple famously designs its products in California, its iPhones are assembled from numerous components – *i.e.*, screens, cameras, batteries etc. – on high-tech assembly lines operated by a handful of prominent technology manufacturers including Pegatron.  Pegatron is the "world's second biggest contract electronics manufacturer" and the second-largest maker of Apple products behind Foxconn.  Exs. 3-4.  While Pegatron's largest iPhone production facility is outside Shanghai, it also has manufacturing sites and service and repair stations across North America, Europe, Australia and Asia.  Ex. 4 at 2-4; Ex. 5 at 90.  For instance, at its Elk Grove, California,

1   facility, Pegatron employs approximately 1,000 people and repairs up to 30,000 iPhones per day.

2   Ex. 6 at 8; Ex. 7.  And, Pegatron USA, located in Fremont, California, provides technical support

3   and business coordination to certain existing Pegatron customers as well as being a "[s]ales and

4   repair service center." ECF No. 131 at 2; Ex. 5 at 145.  Indeed, Pegatron represents that one of its

5   "most important advantages" is "providing prompt services across different time zones."  Ex. 5 at

6   90-91.

7        Pegatron is financially beholden to Apple and reportedly "tied at the hip to the iPhone"

8   which has fueled its growth ever since Apple sought to diversify production away from Foxconn.

9   Ex. 3.  When the iPhone 6 hit the market in 2015, Pegatron's sales surged 19% from a year earlier

10  to $39 billion, while net profit soared 60% year over year.  *Id.*  In 2017, Pegatron reportedly earned

11  57% of its $40 billion in annual revenue – or $22.8 billion – from its relationship with Apple.  Ex.

12  8 at 42.  In 2018, the iPhone accounted for approximately 50% to 60% of Pegatron's 2018 revenue

13  of over $48 billion.  *i.e.*, Pegatron raked in over $24 billion in revenue through its iPhone

14  production.  Ex. 9.

15       **B.    As a Major iPhone Manufacturer, Pegatron Is Prominently Featured
            in the Events Underlying Plaintiff's Allegations**

16

17       Apple is the largest technology company in the world and the iPhone is its most significant

18  revenue driver.  As alleged in the Revised Consolidated Class Action Complaint for Violation of

19  the Federal Securities laws (ECF No. 114) ("Complaint"), during a November 1, 2018 earnings

20  conference call, Cook misrepresented the then-current state of iPhone sales performance in Greater

21  China, which was Apple's most important growth market.  ¶56.[3]  In particular, Cook falsely stated

22  that Apple was not facing negative sales pressure in Greater China that the Company was

23  experiencing in other emerging markets.  *Id.*  During the same call, Apple stated that its newest

24  premium iPhones XS and XS Max were off to successful starts and the more affordable iPhone

25  XR was too new to evaluate.  ¶57.  The Company gave revenue guidance of $89 billion to $93

26  billion for the quarter.  ¶82.

27

28  ---
    [3]   All "¶_" citations herein are to the Complaint.

The Complaint alleges that the truth began to emerge just days later when the *Nikkei Asian Review* published reports of reductions in iPhone production at Pegatron and other manufacturers by "20% to 25%." ¶¶27, 68.  A November 5, 2018 analyst report titled "Apple cancels Production boost for budget iPhone XR: sources" stated:

> Apple has signaled disappointing demand for the new iPhone XR, ***telling its top smartphone assemblers Foxconn and Pegatron to halt plans for additional production lines*** dedicated to the relatively cost-effective model that hit shelves in late October, sources say.

¶¶27, 68.  This was echoed by RBC Capital, Reuters, RTT News and others and resulted in "Apple stock [being] down almost 4% . . . representing a loss in market capitalization of about $40 billion." ¶70.  Negative news concerning reductions at iPhone component suppliers continued to trickle out during the Class Period.[4]  ¶¶74, 76.

The full truth was revealed on January 2, 2019, when Apple pre-announced its first quarter FY19[5] earnings results, slashing quarterly revenue expectations.  ¶¶82-83.  In a "Letter from Tim Cook to Apple Investors," Apple reported 1Q19 revenue of $84 billion, as much as $9 billion below their outlook issued just eight weeks earlier.  ¶82.  Cook's letter admitted that the Company's guidance miss was due almost entirely to slowing iPhone sales in Greater China.  *Id.*

Unsurprisingly, in two Orders denying Defendants' motions to dismiss in part, the Court credited the allegations related to reported reductions at Pegatron, as well as other suppliers and manufacturers.  ECF No. 110 at 41 ("Apple told its biggest manufacturers, Foxconn and P[e]gatron, to 'halt plans for additional production lines'"); ECF No. 123 at 7 ("The *Nikkei* article forms part of the key allegations to show scienter.").  The Court also credited allegations that Cook acknowledged in post-Class Period interviews that Defendants had seen negative indicators in the Chinese smartphone market throughout the second half of 2018.  ECF No. 123 at 9 (Cook admitted in January 2019 that Apple was seeing emerging market pressure on November 1, 2018.)

---

[4]    The "Class Period" is from November 2, 2018 through January 2, 2019, inclusive.

[5]    Pursuant to Apple's fiscal year, 1Q19 represents the period from September 30, 2018 to December 29, 2018.

C. **Pegatron Refuses to Comply with Plaintiff's Properly Served Subpoena *Duces Tecum***

Plaintiff served two copies of the same subpoena on Pegatron Co. seeking documents and communications concerning: (i) iPhone volume production forecasts, plans and reductions; (ii) monitoring and analyzing iPhone pre-orders, sales and upgrades; (iii) economic conditions and consumer spending and its impact on smartphone sales in Greater China; (iv) agreements for iPhone production and capacity; and (v) communications with securities analysts and media regarding iPhone production changes. Exs. 10-11.

On December 14, 2020, Plaintiff served Pegatron Co. at a large facility it operates at or about 2811 Laguna Boulevard in Elk Grove, California. Ex. 12. The facility is either on an Apple campus or immediately adjacent thereto, as shown below:



Ex. 13. PTSI, a U.S.-based subsidiary is also reportedly a tenant at this location. Ex. 14. Service was accepted by Sabrina Guinn, Director of Security at Pegatron. Ex. 12; Ex. 7.[6]

On December 17, 2020, Plaintiff served an identical subpoena on "Pegatron Corporation d/b/a Pegatron USA, Inc." Ex. 16; Ex. 11. Pegatron USA is a U.S. corporation wholly owned by Pegatron Co. Ex. 5 at 65, 116. Plaintiff served Pegatron USA at its registered agent Ing Tsau Ciu

---

[6]    As of December 2020, when Plaintiff issued its subpoena to Pegatron Co. at the Elk Grove location, neither Pegatron Co. nor PTSI, had a readily ascertainable agent for service of process in California. It appears that since Plaintiff served its subpoena, and the instant dispute arose, PTSI has updated this information with the California Secretary of State. Ex. 15. Regardless, as discussed below, Plaintiff's personal service of Ms. Guinn at the Elk Grove facility is clearly sufficient.

1    at 39150 Paseo Padre Parkway, Suite 380, in Fremont, California.  Ex. 15.  Service of Pegatron

2    USA was accepted by Rebecca Chen.  Ex. 16.

3        On December 29, 2020, counsel for Pegatron, the Structure Law Group, objected on behalf

4    of both Pegatron Co. and Pegatron USA (referring to the two collectively as "Pegatron") and

5    refused to produce documents.  Ex. 17.  Counsel for Pegatron took the position that Pegatron Co.,

6    as a foreign entity, was effectively immune from service and not subject to this Court's jurisdiction.

7    *Id.*; ECF No. 131 at 3.  Counsel also objected that Pegatron USA did not control the requested

8    documents.  Plaintiff requested that counsel for Pegatron identify the proper entity for service to

9    obtain the documents sought, but counsel stated that no entity existed.  Plaintiff provided relevant

10   contrary case law but Pegatron refused to change its position.  The parties' discovery letter ensued

11   (ECF No. 131) and at the Order of the Court, this Motion followed.

12   **III.    ARGUMENT**

13       "Parties may obtain discovery regarding any non-privileged matter that is relevant to any

14   party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26 (b)(1).

15   Thus, "[a] command in a subpoena to produce documents [or] electronically stored information . . .

16   requires the responding person to permit inspection [or] copying . . . of the materials."  Fed. R.

17   Civ. P. 45(a)(l)(D).  "At any time, on notice to the commanded person, the serving party may move

18   the court . . . for an order compelling production or inspection," (Fed. R. Civ. P. 45 (d)(2)(B)(i)),

19   and the court "may hold in contempt a person who, having been served, fails without adequate

20   excuse to obey the subpoena," Fed. R. Civ. P. 45(g).

21           **A.    Plaintiff Properly Served a Subpoena *Duces Tecum* on Pegatron
                     Under Rule 45**

22

23       Federal Rule of Civil Procedure 45 governs subpoenas for the production of documents,

24   however, because Rule 45 does not specify what constitutes personal service on a corporation

     "courts have relied upon the service of process requirements on corporations set forth in Rule 4."

25   *Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, 2018 WL 2387580, at *3 (S.D. Cal. May 24,

26   2018).  If there is one thing the modern rules of procedure make clear, it is that the days of playing

27   games with service are over.  *Reflex Media, Inc. v. SuccessfulMatch.com*, 2021 WL 275545, at *2

28

1    (N.D. Cal. Jan. 27, 2021) (citing *Javier v. Kaiser Found. Health Plan Inc.*, 2020 WL 5630020, at

2    *1 (N.D. Cal. Sept. 21, 2020)).

### 1.    Plaintiff Properly Served Pegatron Co., a Foreign Corporation Operating in the United States

The Federal Rules of Civil Procedure permit service upon a foreign or domestic corporation

within the United States as prescribed by the law of the state in which service is made *i.e.*,

California. Fed. R. Civ. P. 4(h)(1)(A), (e)(1).  In California, service may be made upon "a general

manager, or a person authorized by the corporation to receive service of process."  Cal. Code Civ.

Proc. §416.10(b); *see also In re Jee*, 104 B.R. 289, 293 (Bankr. C.D. Cal. 1989) (a foreign

"corporation is amenable to service," including "a subpoena *duces tecum* . . . pursuant to Rule 45,"

"in any forum within which the corporation has sufficient minimum contacts").

Here, Plaintiff served Pegatron Co. at its facility on Laguna Blvd. in Elk Grove, California.

Ex. 12.  The facility is labeled as the location of "Pegatron Corporation" by Google Maps and is

located in, or immediately adjacent to, Apple's Elk Grove campus and between buildings

belonging to Apple.  Ex. 13.  Pegatron Co.'s presence at the Elk Grove facility – is supported by

Apple's "Supplier List" in which Apple states: "The Apple Supplier List details our top 200

suppliers based on spend, and outlines the supplier facilities which provide services to our supply

chain."   Ex. 18 at 1.   Apple's Supplier List specifies 18 different addresses for "Pegatron

Corporation" including the Elk Grove facility at which service was made.  *Id.* at 21.  These factors

provided Plaintiff with "a reasonable basis for believing that this [facility] belonged to" Pegatron

Co.  *See Halo Elecs., Inc. v. Bel Fuse Inc.*, 2010 WL 2605195, at *3 (N.D. Cal. June 28, 2010).

Plaintiff effectuated service of the subpoena on Pegatron Co. at the Elk Grove facility by

hand delivery to a general manager.[7]  Cal. Code Civ. Proc. §416.10(b).  A "general manager" under

the California statute has been interpreted to "'include[ ] any agent of the corporation "of sufficient

character and rank to make it reasonably certain that the defendant will be apprised of the service

made."'"  *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224, 1226 (C.D. Cal.

---

[7]    No registered agent was available for either Pegatron Co. or PTSI at the Elk Grove location in December 2020.

1    2008).  Here, the subpoena was accepted by Sabrina Guinn, Pegatron's "Director of Security" who

2    describes her position as follows:

3           Responsible for insuring **Pegatron Corporation** a direct supplier of Apple,
            appropriately manages all security risks . . . .  Responsible for the safety and security
4    of **over 1000 employees** to include managing and scheduling a security team that is
            comprised of over 60 individuals. . . .  Responsible for budgeting and billing of $2.5
5    million dollar security contract for **Pegatron/Apple's security needs**.

6    Ex. 7.  Ms. Guinn's duties and responsibilities are sufficient to find her a general manager (and far

7    exceed those of other individuals found to be general managers).  *E.g.*, *Cosper v. Smith & Wesson*

8    *Arms Co.*, 346 P.2d 409, 413 (Cal. 1959); *see also Halo Elecs.*, 2010 WL 2605195, at *3 (service

9    of someone appearing to be in charge, at an office appearing to belong to the respondent, even if

10   not correct, found sufficient).  And, Ms. Guinn clearly did "apprise[]" Pegatron Co. of service of

11   the subpoena as evidenced by Pegatron's timely service of objections which specifically note

12   service at the Elk Grove facility.  Ex. 17; *Khachatryan*, 578 F. Supp. 2d at 1226.

13          While Pegatron has taken the position that it is not "domiciled" in the United States and is

14   thus immune from service (and jurisdiction), ample evidence indicates this representation is false,

15   or at best, grossly misleading.  ECF No. 131 at 3-4; Ex. 17.  Among other things, the Elk Grove

16   facility is apparently a joint operation between Pegatron Co. and PTSI, which reportedly services

17   30,000 iPhones every day under Apple's AppleCare program.  Exs. 6, 19.

18          Based upon statements made by PTSI in other litigation, the iPhone repairs performed at

19   Elk Grove are made pursuant to an agreement between Apple, Pegatron Co. and PTSI.  For

20   example, in *Pegatron Tech. Serv., Inc. v. Zurich Am. Ins. Co.*, No. 5:18-cv-01477-LHK (N.D. Cal)

21   (Ex. 1), after sexual images were disseminated from Jane Doe's iPhone during repairs at the Elk

22   Grove facility, Pegatron Co. settled with Doe.  PTSI then filed an action in the Northern District

23   of California against the insurance company insuring both Pegatron Co. and PTSI for refusing to

24   reimburse Pegatron Co. for the settlement.  In that case, PTSI explained:

25          The repair services were performed by Pegatron's subsidiary, PTSI,
            **pursuant to a Repairs Services Agreement ("RSA") between Customer [i.e.,**
26   **Apple], Pegatron [Co.] and PTSI**."

27   *Id.* at 9.  And, the insurance carried by Pegatron for events occurring at the Elk Grove facility

28   covered both Pegatron Co. and PTSI.  *Id.* at 10 ("AGLIC responded by email, confirming that

1  Pegatron [Co.] had coverage under the policy.").  These representations confirm Pegatron Co.'s

2  presence at the Elk Grove facility.

3              a.      **Pegatron Co. Represented to a Federal Court That It**
                      **Engaged in Business and Is Subject to Personal**
4                     **Jurisdiction in this District**

5          In *AFTG-TG, L.L.C. v. Nuvoton Tech. Co.*, No. 2:10-cv-00227-NDF (D. Wyo.) (Ex. 2),

6  Pegatron Co. was a named defendant accused of patent infringement.  Pegatron Co. argued to the

7  District Court of Wyoming that the matter should be transferred to the Northern District of

8  California because Pegatron Co. resided or conducted sufficient business here to establish personal

9  jurisdiction over it.  According to Pegatron Co.'s filing:

10         [The Court] should transfer these actions ***to the Northern District of California,***
           ***where personal jurisdiction can be exercised*** over all of the Defendants [*e.g.*,
11         Pegatron Co.].

12                              *       *       *

13         Pegatron Corporation ("Pegatron") is a Taiwanese corporation with its
           principal place of business in Taiwan, Republic of China. . . . ***Pegatron [Co.] has***
14         ***technical support and service facilities in the Northern District of California***.

15                              *       *       *

16         Defendants [*e.g.*, Pegatron Co.] except PTS ***reside or conduct business in the***
           ***Northern District of California*** . . . .
17
   *Id.* at 2-3, 11.
18
           Indeed, Pegatron Co. even emphasized that, not only did it have operations in California,
19
   but its ownership and operation of its California-based subsidiaries strengthened its connection to
20
   the state and supported its transfer to this District:
21
           Each of these Defendants [including Pegatron Co.], however, ***has offices or***
22         ***purposeful connections with California***.  For example, Defendants ACI and ASRA
           are both California corporations ***and subsidiaries of*** ASUSTeK and ***Pegatron***
23         ***[Co.]***, respectively.   In addition, ASUSTeK and Pegatron [Co.], Taiwanese
           corporations, ***both maintain sales and technical service operations in California***.
24
   *Id.* at 15.  Pegatron Co.'s own prior representations directly contradict its claims in this matter of
25
   being a foreign corporation not subject to service or jurisdiction in this District.
26

27

28

1

2

          **2.**     **Plaintiff Properly Served a Document Subpoena on Pegatron Co. Via Its U.S.-Based Subsidiaries**

3

       If, as Pegatron's counsel claims, despite the incontrovertible evidence set forth above,

4

Pegatron Co. is not present in the U.S., then service nonetheless has been properly made via service

5

on Pegatron USA and PTSI.  "[T]he most recent decision from the California Court of Appeal

6

***declares outright*** that California law allows service on a foreign corporation by serving its

7

domestic subsidiary."  *See U.S. ex rel. Miller v. Pub. Warehousing Co. KSC*, 636 F. App'x 947,

8

949 (9th Cir. 2016).  California Corporations Code (CCC) §2110, permits service of process upon

9

a foreign corporation transacting business in California by serving "its general manager in this

10

state."  Reviewing past decisions, the Ninth Circuit looked to two factors:

11

> First, where service was permitted, the parent corporation was foreign and
> otherwise not readily available for service within California. . . .  Second, service
> through a subsidiary as general manager requires a sufficiently close connection
> with the parent.  This depends upon the frequency and quality of contact between
> the parent and the subsidiary, the benefits in California that the parent derives from
> the subsidiary, and the overall likelihood that service upon the subsidiary will
> provide actual notice to the parent.

12

13

14

*U.S. ex rel. Miller*, 636 F. App'x at 949, (citing *Yamaha Motor Co., Ltd. v. Super. Ct.*, 194 Cal.

15

App. 4th 264, 274 (2009)); *Cosper*, 346 P.2d at 414.

16

       Here, service on PTSI is sufficient to effectuate service on Pegatron Co. as PTSI has a

17

"sufficiently close connection" with its parent corporation.  *Id.*  As discussed above, PTSI is a

18

party to a contract with Pegatron Co. to provide repair services to Apple.  Ex. 1.  And the parent

19

clearly derives "substantial benefit" from the relationship as the Elk Grove facility reportedly

20

provides services on a massive scale (30,000 phones per day) performed by 1,000 employees.  Exs.

21

6-7.  The close connection between Pegatron Co. and PTSI is further supported by their joint

22

insurance policy related to their shared activities.  Ex. 1.  Essentially, "[PTSI], from its California

23

location, acts as a liaison between United States customers [*e.g.*, Apple] and [Pegatron Co., which]

24

arrangement provides [Pegatron Co.] with substantially the same business advantages it would

25

have enjoyed if it had opened its own offices or hired its own agents in California."  *Halo Elecs.*,

26

2010 WL 2605195, at *2.  Pegatron simply ignores this relationship between PSTI and Pegatron

27

Co.

28

LEAD PLAINTIFF'S NTC OF MTN TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*
TO PEGATRON CORP., MEMO IN SUPPORT THEREOF – 4:19-cv-02033-YGR
4828-6508-0543.v1

- 11

1    Service on Pegatron USA is also sufficient to effectuate service on Pegatron Co. because

2  the U.S. subsidiary acts as Pegatron Co.'s agent in California.  *Id.* at *1-*2.  A subsidiary may

3  constitute the foreign corporation's "general manager" where it offers such benefits to the foreign

4  corporation such that it were as if the parent "had opened its own offices or hired its own agents

5  in California."  *Id.*  Pegatron USA is a wholly owned subsidiary of Pegatron Co.  Ex. 5 at 65, 116.

6  Pegatron USA is evidently engaged in a wide variety of business activity on behalf of its parent

7  corporation:  Pegatron Co.'s 2019 Annual Report describes Pegatron USA as a "[s]ales and repair

8  service center in North America."  *Id.* at 145.  Pegatron's counsel describes its activities in the

9  U.S. as "providing technical support and business coordination to certain existing Pegatron

10  customers."  ECF No. 131 at 4.[8]  In other words, Pegatron USA's "staff function as a liaison

11  between United States customers and [Pegatron Co.]," making Pegatron USA its foreign parent's

12  general manager.  *Halo Elecs.*, 2010 WL 2605195, at *2.

13    Pegatron's objection to service of Pegatron USA relies on an outlier opinion, *Viasat, Inc.*

14  *v. Space Sys./Loral, LLC*, 2014 WL 12577593 (S.D. Cal. June 30, 2014), to claim a purported

15  distinction between service under Rule 4 and Rule 45.  But courts in the same circuit and across

16  the country have read Rule 4 and Rule 45 in conjunction with one another.  *See Sanchez Y Martin*,

17  2018 WL 2387580, at *3 ("Rule 45 does not specify what constitutes personal service on a

18  corporation in the United States or in a foreign country.  To fill this gap, courts have relied upon

19  the service of process requirements on corporations set forth in Rule 4 of the Federal Rules of Civil

20  Procedure."); *See Paisley Park Enters., Inc. v. Boxill*, 2019 WL 1036059, at *3 (D. Minn. Mar. 5,

21  2019) (same); *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 293, 305

22  (S.D.N.Y. 2009) (same); *see also In re Subpoena Duces Tecum to Dunhuang Grp.*, 2019 WL

23  2150947, at *5 (E.D. Mich. May 17, 2019) (rejecting non-party Chinese entity's assertion of

24  improper service because *inter alia* "service on a foreign entity is proper in a manner prescribed

25

26  _____

[8]    Pegatron's counsel's efforts to distance Pegatron USA from Pegatron Co. are further
27  undermined by the fact that the individual accepting service at the address of Pegatron USA's
    registered agent, Accounting Manager Rebecca Chen, holds herself out as a "Pegatron" employee.
28  Ex. 20.

by Rule 4" and "the [s]ubpoena was personally served on the [U.S. affiliate], which . . . shared the same owner . . . as the other [affiliates of the Chinese entity]"); *Mga Ent., Inc. v. Nat'l Prods.*, 2011 U.S. Dist. LEXIS 161044, at *4, *9 (C.D. Cal. Dec. 20, 2011) (applying Rule 4 to plaintiff's service attempts on non-party with connections to Hong Kong and California).

## a.   Pegatron USA and PTSI Must Produce Responsive Documents Within Their Control

In the unlikely event the Court were to find Pegatron Co. beyond the reach of the subpoena power – and there is abundant reason it should not – PTSI and Pegatron USA must still produce those documents from Pegatron Co. over which they have practical access or control, which is "a legal right [that] can be based on conduct, rather than a contract or a statute." *Sharma v. BMW of N. Am. LLC*, 2016 WL 1019668, at *4 (N.D. Cal. Mar. 15, 2016) ("A subsidiary is required to produce documents from its parent company where the subsidiary has legal control over the documents."). "Control is defined as the legal right to obtain documents upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107-08 (9th Cir. 1999); *see also Sharma*, 2016 WL 1019668, at *4. Even without the benefit of discovery, there is substantial evidence supporting PTSI and Pegatron USA's legal right to demand responsive documents, including: (i) PTSI's contractual relationship with both Pegatron Co. and Apple for the provision of iPhone repair; (ii) PTSI's litigation efforts on behalf of its parent company; and (iii) Pegatron USA's servicing of existing Pegatron Co. clients. In light of this evidence, Pegatron USA's one sentence disclaimer that it does not have the legal right to obtain documents is insufficient. Applying Judge Ryu's reasoning in *In re: Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR (N.D. Cal.) (Ex. 23), "although there is some testimony that there's no legal right, I find that that's conclusory . . . The question is whether [PTSI or Pegatron] USA has the legal right to obtain the sales data of its parent, [Pegatron Corp. in] Taiwan." *Id.* at 31:10-16; *see also In re Lithium Ion Batteries Antitrust Litig.*, 2017 U.S. Dist. LEXIS 174022, at *48-*50 (N.D. Cal. Oct. 19, 2017) (Judge Gonzalez Rogers upholding Judge Ryu's analysis). Like in *Lithium Ion*, "for [PTSI or Pegatron] USA to do its work," which evidently involves Apple's iPhones and Pegatron's customers, "it has to have access

1    to th[e requested documents] . . . for their one [major] customer, which is [Apple]." Ex. 23 at 31:7-
2    10.

3         If nothing else, this Court should follow the ruling of Judge Demarchi and order that "PTSI
4    [and Pegatron USA] must produce the above-referenced documents in [their] possession, custody,
5    or control, including any documents that PTSI [or Pegatron USA have] the legal right to obtain
6    upon demand from [their] parent, Pegatron Corporation." Ex. 29 at 2 (citing *Sharma*, 2016 WL
7    1019668, at *4).

8    **B.    Pegatron Co. Has Repeatedly Sought the Protections of California**
         **Courts When Beneficial**
9
10        Apparently, Pegatron Co. appears in California courts on its own terms. For example,
11   Pegatron Co. brought claims for breach of contract and goods and services rendered against a
     company in San Mateo County – again represented by the Structure Law Group – which ultimately
12
     resulted in an entry of judgment over $2.5 million. *See Pegatron Corp. v. Otto LLC*, No.
13
14   18CIV02981, (Cal. Super Ct. San Mateo Cnty.) (Ex. 21). In another breach of contract case, an
     Orange County court entered judgment for Pegatron Co. for over $52 million. *See Pegatron Corp.
15
16   v. Westinghouse Digit., LLC*, No. 30-2015-00786289-CU-BC-CJC, (Cal. Super. Ct. Orange Cnty.)
     (Ex. 22). In 2017, in the Southern District of California, Pegatron Co. sued Apple, seeking
17
18   indemnification for costs arising out of a lawsuit between Qualcomm and Pegatron Co. *Qualcomm
     Inc. v. Compel Elec. Inc.*, No. 3:17-cv-01010-GPC-MDD (S.D. Cal.) (Ex. 24). And as discussed
19
20   above, through its subsidiary PTSI, Pegatron Co. sought reimbursement from its insurers in this
     District for harms caused at the Elk Grove facility. Ex. 1.[9]
21
22   **C.    Pegatron Has Not Satisfied Its Burden to Resist Discovery of the**
         **Requested Documents**
23        The documents sought by Plaintiff's subpoena *duces tecum* are highly relevant to the
24   claims and defenses in this action, and Pegatron has not and cannot show otherwise. Non-party
25

26   _____
     [9]   Notably, when it was a named defendant in other cases, Pegatron Co. chose not to contest the
     Court's jurisdiction including in this Court as well as the Northern District of Georgia. *Via
27   Licensing Corp. v. Pegatron Corp.*, No. 4:15-cv-04086-JSW (2017) (Ex. 25 (summons); Ex. 26
     (motion to dismiss)); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Pegatron Corp.*, No. 1:18-
28   cv-03701-ELR (N.D. Ga.) (Ex. 27 (answer); Ex. 28 (discovery plan)).

1   subpoenas are governed by the same discovery scope as Rule 26.  Fed. R. Civ. P. 45 advisory

2   committee's note to 1970 amendment ("[T]he scope of discovery through a subpoena is the same

3   as that applicable to Rule 34 and other discovery rules.").  "'[R]elevance within the meaning of

4   Rule 26(b)(1) is considerably broader than relevance for trial purposes.'"  *Tomlinson v. United*

5   *Behavioral Health*, 2020 U.S. Dist. LEXIS 96717, at *10 (N.D. Cal. June 2, 2020); *Meneweather*

6   *v. Powell*, 2012 WL 12995648, at *2 (N.D. Cal. Apr. 4, 2012) ("'The question of relevancy [for a

7   Rule 45 subpoena] should be construed "liberally and with common sense" and discovery should

8   be allowed unless the information sought has no conceivable bearing on the case.'").

9       The subpoena *duces tecum* requests production of documents and communications

10  concerning generally: (i) iPhone volume production forecasts, plans and reductions; (ii)

11  monitoring and analyzing iPhone pre-orders, sales and upgrades; (iii) economic conditions and

12  consumer spending and its impact on smartphone sales in Greater China; (iv) agreements for

13  iPhone production and capacity; and (v) communications with securities analysts and media

14  regarding iPhone production changes.  Exs. 10-11.

15      These documents are unquestionably relevant and proportional to the needs of this case.

16  At the center of this case is the issue of declining iPhone demand in China and Pegatron is both

17  Apple's second largest iPhone manufacturer and located in the market at issue.  Indeed, the first

18  alleged partial disclosure of the truth on November 5, 2018, specifically identified Pegatron as one

19  of two iPhone producers directed to reduce daily production by 100,000 units, or 20% to 25%.

20  ¶68.  As noted above, Apple stock declined 4% on this news and erased more than $40 billion in

21  Apple's market capitalization.  ¶¶70, 100.  Documents and communications reflecting the timing

22  and changes in iPhone production will be at the gravamen of this matter.

23      Equally important is information related to economic conditions in Greater China, in

24  particular the consumer electronics market.  Cook is alleged to have falsely stated that economic

25  conditions in Greater China were not negative like those in other emerging countries, only to admit

26  eight weeks later that "'the economy begins to slow [in China] for the second half [of 2018]'" and

27  Apple "'saw . . . the reports of the smartphone industry contracting.'"  ECF No. 123 at 9.  The

28  Court credited these post-Class Period admissions as supporting allegations of scienter.  *Id.*

LEAD PLAINTIFF'S NTC OF MTN TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*
TO PEGATRON CORP., MEMO IN SUPPORT THEREOF – 4:19-cv-02033-YGR
4828-6508-0543.v1

- 15 -

1  Therefore, Pegatron's documents concerning smartphone demand in China generally, as well as

2  for the iPhone in particular, will bear upon both the elements of falsity and scienter.

3       While Pegatron has baldly objected that the requested documents are irrelevant, unduly

4  burdensome, confidential and proprietary, it has not substantiated its objections.  "'[T]he party

5  opposing discovery has the burden of showing that discovery should not be allowed, and also has

6  the burden of clarifying, explaining and supporting its objections with competent evidence.'"  *In

7  re Subpoena to PayPal Holdings, Inc.*, 2020 WL 3073221, at *2 (N.D. Cal. June 10, 2020).

8  Notably, at no point during the meet-and-confer process did Pegatron show any willingness to

9  discuss the scope of Plaintiff's requests – choosing to stand firm on its challenge based on improper

10 service.  For this reason alone, any such objections that Pegatron makes now should not be

11 countenanced.

12       Pegatron simply does not provide any detail as to why compliance with the subpoena would

13 be burdensome.  "The party 'claiming that a discovery request is unduly burdensome must allege

14 specific facts which indicate the nature and extent of the burden, usually by affidavit or other

15 reliable evidence.'"  *Castellar v. McAleenan*, 2020 U.S. Dist. LEXIS 49942, at *17-*18 (S.D. Cal.

16 Mar. 23, 2020).  Pegatron has only raised the fact that some of the documents requested can also

17 be obtained from Defendants but most of the requests seek documents unique to Pegatron.  And in

18 any case, "there is no general rule that plaintiffs cannot seek nonparty discovery . . . likely to be in

19 defendants' possession."  *Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 WL 3876142, at *3 (N.D. Cal.

20 Aug. 18, 2008).  "This is a fraud action.  Plaintiff is entitled to test the accuracy of Defendant's

21 discovery responses by seeking the same or similar information from other, neutral sources."  *Jiae

22 Lee v. Dong Yeoun Lee*, 2020 U.S. Dist. LEXIS 246988, at *25 (C.D. Cal. Oct. 1, 2020).

23       In addition, "'a general interest in protecting confidentiality does not equate to privilege.'"

24 *Valley LLC v. Cnty. of L.A*, 2018 U.S. Dist. LEXIS 80225, at *12 (C.D. Cal. May 11, 2018).

25 Pegatron has only made "'[b]road allegations of harm, unsubstantiated by specific examples or

26 articulated reasoning,'" which do not justify the failure to produce purportedly confidential

27 documents responsive to a subpoena.  *Beaver Cnty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*,

28 2016 U.S. Dist. LEXIS 74205, at *17 (N.D. Cal. June 7, 2016).  Further, the protective order in

1   this matter should alleviate any confidentiality concerns.  *See id.*, ECF No. 139.  Pegatron's

2   perfunctory, boilerplate objections should not limit in any way the documents to be produced in

3   response to Plaintiff's subpoena.

4   **IV.      CONCLUSION**

5           For the foregoing reasons, Plaintiff respectfully requests that the Court grant the Motion

6   and compel production of documents in response to Plaintiff's subpoena *duces tecum* to Pegatron

7   Co.

8    DATED:  March 5, 2021                      Respectfully submitted,

9                                               ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
10                                              SHAWN A. WILLIAMS
                                                DANIEL J. PFEFFERBAUM
11                                              KENNETH J. BLACK
                                                HADIYA K. DESHMUKH

12

13                                                    s/ Daniel J. Pfefferbaum
14                                              DANIEL J. PFEFFERBAUM

15                                              Post Montgomery Center
                                                One Montgomery Street, Suite 1800
16                                              San Francisco, CA  94104
                                                Telephone:  415/288-4545
17                                              415/288-4534 (fax)
                                                shawnw@rgrdlaw.com
18                                              dpfefferbaum@rgrdlaw.com
                                                kennyb@rgrdlaw.com
19                                              hdeshmukh@rgrdlaw.com

20                                              ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
21                                              MARK SOLOMON
                                                TOR GRONBORG
22                                              655 West Broadway, Suite 1900
                                                San Diego, CA  92101
23                                              Telephone:  619/231-1058
                                                619/231-7423 (fax)
24                                              marks@rgrdlaw.com
                                                torg@rgrdlaw.com

25                                              Lead Counsel for Lead Plaintiff

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LABATON SUCHAROW
CAROL C. VILLEGAS
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/883-7524 (fax)
cvillegas@labaton.com

Counsel for Employees' Retirement System of
the State of Rhode Island

LEAD PLAINTIFF'S NTC OF MTN TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*
TO PEGATRON CORP., MEMO IN SUPPORT THEREOF – 4:19-cv-02033-YGR
4828-6508-0543.v1

- 18 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on March 5, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Daniel J. Pfefferbaum
DANIEL J. PFEFFERBAUM
ROBBINS GELLER RUDMAN
 & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:  dpfefferbaum@rgrdlaw.com

4828-6508-0543.v1

## Mailing Information for a Case 4:19-cv-02033-YGR IN RE APPLE INC. SECURITIES LITIGATION

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **Kenneth Joseph Black**
  KennyB@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com

- **Frank H. Busch**
  busch@wvbrlaw.com,johnson@wvbrlaw.com,pallister@wvbrlaw.com

- **Hadiya Khan Deshmukh**
  hdeshmukh@rgrdlaw.com

- **Christine M. Fox**
  cfox@labaton.com,ndonlon@labaton.com,lpina@labaton.com,electroniccasefilings@labaton.com,fmalonzo@labaton.com,6312349420@filings.docketbird.com

- **Tor Gronborg**
  torg@rgrdlaw.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,tcrockett@pomlaw.com,abarbosa@pomlaw.com

- **James Neil Kramer**
  jkramer@orrick.com,lpatts@orrick.com,mwatkins@orrick.com,vmorse@orrick.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,tcrockett@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,lpvega@pomlaw.com

- **Francis P. McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,tcrockett@pomlaw.com,egoodman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@poml...

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,dpfefferbaumRGRD@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Mark Solomon**
  marks@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Alexander K. Talarides**
  atalarides@orrick.com,lpatts@orrick.com,casestream@ecf.courtdrive.com

- **Carol C. Villegas**
  cvillegas@labaton.com,ndonlon@labaton.com,5739893420@filings.docketbird.com,lpina@labaton.com,jchristie@labaton.com,acoquin@labaton.com,fmalonzo@laba...

- **James Matthew Wagstaffe**
  wagstaffe@wvbrlaw.com,johnson@wvbrlaw.com

- **Steven Ray Wedeking , II**
  swedeking@robbinsllp.com,notice@robbinsllp.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,cbarrett@rgrdlaw.com,ShawnW@ecf.courtdrive.com,smorris@rgrdlaw.com,kennyb@rgrdlaw.com,e_file_sd@rgrdlaw.com,smorris@ecf.courtd...

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)