EXHIBIT 1

ALEXANDER F. STUART- SBN 96141
ELLYN E. NESBIT- SBN 136398
**WILLOUGHBY, STUART, BENING & COOK**
50 W. San Fernando Street, Suite 400
San Jose, California 95113
Telephone: (408) 289-1972
Facsimile: (408) 295-6375
Email: alex@wsbclawyers.com

Attorneys for Plaintiff PEGATRON
TECHNOLOGY SERVICE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEGATRON TECHNOLOGY SERVICE, INC., an Indiana corporation,<br><br>                    Plaintiff,<br><br>vs.<br><br>ZURICH AMERICAN INSURANCE COMPANY, a New York corporation; AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY, a New York corporation; and DOES 1 through 100, inclusive,<br><br>                Defendants. | Case No.: 5:18-cv-01477-LHK<br><br>**PLAINTIFF PEGATRON TECHNOLOGY SERVICE, INC.'S NOTICE OF MOTION and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**<br><br>Date:     October 24, 2019<br>Time:     1:30 p.m.<br>Courtroom: 8<br>Hon.  Lucy H. Koh<br><br>[REDACTED VERSION] |

WILLOUGHBY, STUART, BENING & COOK

# TABLE OF CONTENTS

Page No.

NOTICE OF MOTION AND MOTION……………………………………………....   6

INTRODUCTION……………………………………………………………..   7

I.   SUMMARY JUDGMENT STANDARDS……………………………………..   7

II.  FACTS………………………………………………………………….   8

    A. Underlying Claim ……………………………………………………...   8

    B. Customer Tenders to Pegatron and PTSI …………………………………..   9

    C. PTSI Tender to AGLIC and Response ……………………………………....   9

    D. Binding Mediation March 23, 2016 ………………………………………..   11

    E. AGLIC's Post-Mediation Denial of Coverage ……………………………..   11

    F. Pegatron and PTSI's Settlement with Customer …………………………….   11

    G. Tender of Indemnification to AGLIC ……………………………………….   11

    H. AGLIC's Wrongful Reaffirmation of Denial ……………………………….....   12

    I. PTSI's Indemnity Obligation ……………………………………………….   12

II.  AGLIC'S COVERAGE………………………………………………………..   13

    A. CGL Coverage for Publication of Material in Violation of Rights of Privacy ………   13

    B. Commercial Umbrella Coverage for Publication of Material in
       Violation of Rights of Privacy………………………………………………....   14

IV. AGLIC'S DUTY TO DEFEND………………………………………………..   14

    A. Policy Provisions Obligating Defense……………………………………….   14

    B. An Insurer's Defense Obligation is Triggered by a Mere Possibility
       Of a Claim Within the Scope of Coverage…………………………………….   15

V.  AGLIC'S DUTY TO INDEMNIFY THE SETTLEMENT………………………….   17

VI. JANE DOE'S CLAIM WAS WITHIN THE SCOPE OF AGLIC'S COVERAGE…....   17

VII. AGLIC'S WRONGFUL DENIAL OF ITS OBLIGATIONS…………………………   19

    A. AGLIC Wrongfully Denied Coverage on Grounds PTSI Had No
       Liability for the Publication of the Photos and Video………………………….....   20

    B. AGLIC Wrongfully Denied Coverage Based Upon a Contractual
       Liability Exclusion…………………………………………………………..   20

    C. AGLIC Wrongfully Denied Coverage Based Upon a Recording and
       Distribution Exclusion……………………………………………………....   21

       1. The Exclusion Does Not Encompass Jane Doe's Claim…………………………   21

       2. AGLIC's Confirmed Intent of the Catchall Provision Was
          Consistent With the Doctrine of Ejusdem Generis and
          Contravenes AGLIC's Current Contrary Interpretation…………………………....   24

    D. AGLIC Wrongfully Denied Coverage Based Upon an Access or
       Disclosure Exclusion………………………………………………………..   24

    E. AGLIC's Wrongful Denial of Commercial Umbrella Coverage……………………   26

CONCLUSION………………………………………………………………..   26

WILLOUGHBY, STUART, BENING & COOK

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Abellon v. Hartford Ins. Co.* (1985)
4
    167 Cal.App.3d 21 .................................................................. 19

5

*Amato v. Mercury Casualty Co.* (1993)
    18 Cal.App.4th 1784 ............................................................ 16

6

*Aroa Marketing, Inc. v. Hartford Ins. Co. of Midwest* (2011)
7
    198 Cal.App.4th 781 .......................................................... 16

8

*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.* (2002)
    100 Cal.App.4th 1017 ................................................. 19, 20
9

*Beneficial Fire & Casualty Ins. Co. v. Kurt Hitke & Co.* (1956)
10
    46 Cal.2d 517 .................................................................... 24

11

*Berns v. Sentry Select Ins. Co.* (9th Cir. 2016)
12
    656 F.App'x 326 ........................................................ 22, 25

13

*Century Surety Co. v. United Specialty Ins. Co.* (C.D.Cal. 2018)
    2018 U.S. Dist. LEXIS 69807 ................................... 15, 16

14

*Chan v. Drexel Burnham Lambert, Inc.* (1986)
15
    178 Cal.App.3d 632 .......................................................... 13

16

*Douglass v. Hustler Magazine* (9th Cir. 1985)
    769 F.2d 1128 .................................................................... 19

17

*Evanston Ins. Co. v. Gene by Gene, Ltd.* (S.D.Texas 2016)
18
    155 F.Supp.3d 706 .................................................... 22, 23

19

*Fibreboard Corp. v. Hartford Accident & Indemnity Co.* (1993)
    16 Cal.App.4th 492 .......................................................... 18
20

*Fireguard Sprinkler Systems, Inc. v. Scottsdale Ins. Co.* (9th Cir. 1988)
21
    864 F.2d 648 ...................................................................... 24

22

*Freeman v. Allstate Life Ins. Co.* (9th Cir. 2001)
23
    253 F.3d 533 ........................................................................ 7

24

*Genesis Ins. Co. v. BRE Props.* (N.D.Cal. 2013)
    916 F.Supp.2d 1058 ............................................................ 8

25

*Gray v. Zurich Ins. Co.* (1966)
26
    65 Cal.2d 263 .................................................................... 16

27

*Harleysville Preferred Ins. Co. v. Rams Head Savage Mill, LLC* (Md.App.,2018)
    237 Md.App. 705 [187 A.3d 797] ...................................... 23

28

WILLOUGHBY, STUART, BENING & COOK

*Haynes v. Farmers Ins. Exchange* (2004)
32 Cal.4th 1198 ..................................................................................... 25, 26

*Horace Mann Ins. Co. v. Barbara B.* (1993)
4 Cal.4th 1076 ....................................................................................... 16, 17

*Ignat v. Yum! Brands, Inc.* (2013)
214 Cal.App.4th 808 ..................................................................................... 18

*Lumbermens Mut. Cas. Co. v. Corning, Inc.* (C.D.Cal. Dec. 23, 2008)
2008 U.S. Dist. LEXIS 126717 ..................................................................... 21

*M.C. v. Princeton Excess & Surplus Lines Ins. Co.* (C.D.Cal. June 1, 2017)
2017 U.S. Dist. LEXIS 116278 ..................................................................... 19

*M.G. v. Time Warner, Inc.* (2001)
89 Cal.App.4th 623 ..................................................................................... 18

*MacKinnon v. Truck Ins. Exchange* (2003)
31 Cal.4th 635 ............................................................................................. 20

*Michaels v. Internet Entm't Grp., Inc.* (C.D.Cal 1998)
5 F.Supp.2d 823 .......................................................................................... 19

*Middlesex Mutual Ins. Co. v. Ramirez* (1981)
116 Cal.App.3d 733 ..................................................................................... 24

*Montrose Chemical Corp. v. Superior Court* (1993)
6 Cal.4th 287 ............................................................................................... 16

*Navigators Specialty Ins. Co. v. Moorefield Construction, Inc.* (2016)
6 Cal.App.5th 1258 ..................................................................................... 17

*Prudential-LMI Commercial Ins. Co. v. Reliance Ins. Co.* (1994)
22 Cal.App.4th 1508 ................................................................................... 24

*Pruyn v. Agricultural Ins. Co.* (1995)
36 Cal.App.4th 500 ................................................................................ 17, 20

*Riley v. California* (2014)
573 U.S. 373 [134 S.Ct. 2473, 189 L.Ed.2d 430] ......................................... 19

*Roger H. Proulx & Co. v. Crest-Liners, Inc.* (2002)
98 Cal.App.4th 182 ................................................................................ 20, 21

*Safeco Ins. Co. v. Robert S.* (2001)
26 Cal.4th 758 ............................................................................................. 25

*Shulman v. Group W Productions, Inc.* (1998)
18 Cal.4th 200 ............................................................................................. 18

WILLOUGHBY, STUART, BENING & COOK

*Solano v. Playgirl, Inc.* (9th Cir. 2002)
   292 F.3d 1078 ............................................................................................. 18, 19

*State v. Continental Ins. Co.* (2012)
   55 Cal.4th 186 ........................................................................................................ 7

*Waller v. Truck Ins. Exchange, Inc.* (1995)
   11 Cal.4th 1 ............................................................................................................. 7

*Wells Fargo Bank v. California Ins. Guarantee Assn.* (1995)
   38 Cal.App.4th 936 ............................................................................................... 14

*White v. Ultramar* (1999)
   21 Cal.4th 563 .................................................................................................. 22, 25

*Yahoo! Inc. v. Nat'l Union Fire Ins. Co.* (N.D.Cal. 2017)
   255 F.Supp.3d 970 ........................................................................................ 19, 22, 25

**Other**

F.R.C.P. 56 .................................................................................................................

# NOTICE OF MOTION AND MOTION

NOTICE IS HEREBY GIVEN that on October 24, 2019, at 1:30 p.m., or as soon thereafter as counsel may be heard by the above-entitled Court, in Courtroom 8 of the United States District Court, Northern District of California, located at 280 South First Street, San Jose, California, Plaintiff will and hereby does move the Court for partial summary judgment on the grounds that there is no genuine issue as to any material fact, and Plaintiff is entitled to judgment as a matter of law on the issues set forth below:

1.  That American Guarantee & Liability Ins. Co. ("AGLIC") owed a duty to defend the binding mediation proceedings;

2.  That AGLIC breached its duty to defend the binding mediation proceedings;

3.  That AGLIC owed a duty to indemnify the settlement;

4.  That AGLIC breached its duty to indemnify the settlement;

If the Court for any reason declines to find each of the above issues in Plaintiff's favor, Plaintiff requests adjudication of the following issues:

5.  That the Contractual Liability Exclusion did not apply to preclude AGLIC's duty to defend and indemnify the settlement;

6.  That the Recording and Distribution Exclusion did not apply to preclude AGLIC's duty to defend and indemnify the settlement;

7.  That the Access or Disclosure Exclusion did not apply to preclude AGLIC's duty to defend and indemnify the settlement;

Plaintiff's motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Declaration of Alexander F. Stuart; Declaration of Kyle Steinbrueck; Declaration of Zoe Chen; Declaration of Lily Chao; the Exhibits (confidential and non-confidential); and all pleadings and papers on file in this action, and upon such additional evidence and argument as may be presented to the Court at the time of the hearing.

**INTRODUCTION**

This insurance coverage action arose after Defendant American Guarantee & Liability Ins. Co. ("AGLIC") induced Plaintiff to agree to a binding mediation with the third party claimant, and then abandoned Plaintiff, forcing Plaintiff to pay the substantial mediation award out of its own pocket. (Plaintiff Pegatron Technology Service Inc., is hereafter referenced as "PTSI"). AGLIC initially acknowledged coverage for the claim; consented to binding mediation with the claimant with high-low settlement parameters; waived the No Voluntary Payments condition of the policy, and AGLIC also appeared at the binding mediation. After expressly waiving the No Voluntary Payments condition, AGLIC then invoked the clause anyway, and disclaimed its obligations under its policies based upon a misapplication of exclusions, and based upon its own misinterpretation of obscure phrases in the exclusions. AGLIC breached its duty to defend and its duty to indemnify the settlement, and this motion seeks an adjudication of those legal issues, and alternatively, various sub-issues regarding coverage.

Many of the facts involved in this claim are highly confidential, including the identity of the third party claimant ("Jane Doe"), and the entity whom PTSI was obligated to indemnify (PTSI's "Customer"), so they are referenced by generic names in this motion.

**I.  SUMMARY JUDGMENT STANDARDS**

Summary judgment may be granted where "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law". (F.R.C.P. 56 (a).) The Court may grant summary judgment on each claim or defense or upon part of each claim or defense. *Id.* If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact - including an item of damage or other relief - that is not genuinely in dispute, and treat the fact as established in the case. (F.R.C.P. 56 (g).)

California law controls this dispute in diversity. *Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir, 2001). Under California law, "interpretation of an insurance policy is a question of law that is decided under settled rules of contract interpretation. *State v. Continental Ins. Co.*, 55 Cal.4th 186, 195 (2012). Whether an insurer owes a duty to defend is a question of law. *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18 (1995). With respect to the underlying

1    tort claims made by Jane Doe (an Oregon resident), there is no conflict in the laws of California

2    and Oregon regarding the privacy torts, and the law of the forum state is thus applied.  *Genesis*

3    *Insurance Co. v. BRE Properties*, 916 F.Supp.2d 1058, 1065 (N.D.Cal., 2013).[1]

**II.    FACTS**

   **A. Underlying Claim**

6        The claim at issue resulted when a female college student, Jane Doe, discovered that

7    sexually explicit photos and a video she had stored on her mobile phone had been uploaded to her

8    Facebook page.  The uploading occurred while Jane Doe's mobile phone was undergoing repairs at

9    Plaintiff PTSI's facility in Elk Grove, California.  (Confidential Ex's  4, 5, 6.)   PTSI performs

10   repair services at a facility for its customer in Elk Grove. (Confidential Ex's. 26, 27). (PTSI's

11   customer is referenced as "Customer".)  Jane Doe had shipped the phone to PTSI's repair facility

12   on January 12, 2016.   Shortly thereafter, friends informed her of the sexually explicit images on

13   her Facebook page.  (Confidential Ex's  4, 5, 6.)   The manner in which the images were uploaded

14   suggested that Jane Doe had uploaded the images herself, casting Jane Doe in the falsest of light,

15   and causing her severe emotional distress.  (Confidential Ex. 5, 6.)

16       PTSI operated the Elk Grove facility with employees of Third Party Vendor that provided

17   skilled technical workers. (Confidential Ex's. 25, 26, 27).   The employment services agreement

18   between PTSI and Third Party Vendor contained a reciprocal indemnity provision, and provided

19   that PTSI was responsible for any claim arising from its own conduct, including the failure to

20   properly supervise Third Party Vendor's employees.  (Confidential Ex. 25 ¶9).

21       On January 25, 2016, a lawyer representing Jane Doe sent a letter to Customer reporting

22   the incident and demanding the preservation of evidence.  (Confidential Ex  4.)  On February 4,

23   2016, the lawyer sent a follow-up letter describing the incident and demanding $5 million to settle

24   all claims.  (Confidential Ex  5.)

25       After an exhaustive investigation, Customer determined that two employees of the Third

---

[1] There are conflicts on issues of *respondeat superior* liability and the power of a trial court (state or federal) to review a compensatory damages award for excessiveness, issues that might become relevant if AGLIC attacks the settlement on grounds that neither PTSI nor Customer faced *respondeat superior* liability, or that the amount of the settlement was excessive.

1  Party Vendor had uploaded the images to Jane Doe's Facebook page, and the agency promptly

2  fired both of them.  (Confidential Ex's  5, 7).

3  **B.  <u>Customer Tenders to Pegatron and PTSI</u>**

4  On February 4, 2016, Customer tendered Jane Doe's claims to Pegatron  [REDACTED

5  REDACTED

6  REDACTED          ]  (Confidential Ex. 7 [tender];  Confidential Ex. 26 [MSA].)

7  The repair services were performed by Pegatron's subsidiary, PTSI, pursuant to a Repairs

8  Services Agreement ("RSA") between Customer, Pegatron and PTSI.  The RSA incorporated the

9  terms of the MSA, including an indemnity provision requiring that Pegatron and/or PTSI defend

10  and indemnify Customer against claims like those brought by Jane Doe. (Confidential Ex. 27 [RSA]

11  - incorporation provision is at pg. 1; (Confidential Ex. 26, [MSA] -  indemnity provision is ¶7.1).

12  On February 19, 2016, Customer tendered Jane Doe's claims to PTSI under the indemnity

13  provisions of the MSA.  (Confidential Ex. 8).

14  **C.  <u>PTSI Tender to AGLIC and Response</u>**

15  On February 22, 2016, PTSI tendered the claims of Jane Doe and Customer to AGLIC

16  under a policy of commercial general liability ("CGL") insurance issued to PTSI as named insured.

17  (Confidential Ex. 9).   On February 24, 2016, Pegatron sent AGLIC all of the documents AGLIC

18  requested in response to the tender letter, including the employment services agreement between

19  PTSI and Third Party Vendor, and the MSA between and Customer and Pegatron.  (Confirmed in

20  Confidential Ex 10).  On February 25, 2016, Pegatron's counsel, Zoe Chen, informed AGLIC's

21  handling adjuster that Customer wanted to negotiate an early pre-litigation settlement, and that

22  [REDACTED

23  REDACTED  ]

24  Jane Doe's lawyer had countered with            [REDACTED]

25  [REDACTED]                                        Chen emphasized to AGLIC that

26  PTSI and its insurer needed to cooperate with Customer:

27  [REDACTED]

28

WILLOUGHBY, STUART, BENING & COOK

[REDACTED]

(Confidential Ex. 10)

AGLIC responded by email, confirming that Pegatron had coverage under the policy. (Confidential Ex. 11).   After informing Chen that PTSI could count on $1 million of primary coverage, AGLIC then stalled the process of committing to binding mediation with a long series of questions.  (Confidential Ex. 12).

Customer moved expeditiously to finalize a binding mediation agreement [REDACTED ], which was fully executed by Customer and Jane Doe on February 26, 2016. (Confidential Ex. 13).  Customer then asked Pegatron, PTSI and Third Party Vendor to indemnify the results of the binding mediation, requesting written confirmation on February 26, 2016 that Pegatron/Third Party Vendor would be indemnifying Customer for the full amount of the settlement [REDACTED

REDACTED] (Confidential Ex. 14).   Since AGLIC had not yet given its consent for mediation, Pegatron and PTSI retained outside counsel.  Customer agreed to extend the deadline for confirmation to March 4, 2016, and outside counsel informed AGLIC of the imminent deadline. (Confidential Ex. 15).

PTSI's counsel continued to emphasize the urgency of the situation and request confirmation from AGLIC that AGLIC consented to settlement. (Confidential Ex.16).

When AGLIC had failed to commit by the March 4 deadline imposed by Customer, Pegatron's general counsel advised Customer that it would fund the [REDACTED]settlement Customer was proposing:

[REDACTED]

WILLOUGHBY, STUART, BENING & COOK

(Confidential Ex. 17).

Several hours later, on March 4, 2016, AGLIC's coverage counsel confirmed that AGLIC would not assert the "no voluntary payments" condition as a defense to coverage for the claim. (Confidential Ex. 18).

**D. Binding Mediation March 23, 2016**

Jane Doe's claims proceeded to binding mediation in Portland, Oregon on March 22, 2016. The mediation proceeded with AGLIC's consent, with AGLIC itself participating through its coverage counsel. Despite consenting to and participating in the mediation, AGLIC did not provide a defense to PTSI.

Before mediation, Jane Doe had [REDACTED                    ] and when the parties reached an impasse in settlement negotiations, the mediator (a retired local judge) issued a binding award of [REDACTED] The award was reduced to a written settlement agreement. (Confidential Ex. 19).

**E. AGLIC's Post-Mediation Denial of Coverage**

On April 7, 2016, AGLIC denied coverage under the CGL policy, and on April 27, 2016, AGLIC denied coverage under its excess policy. (Confidential Ex's. 20, 21). Incredibly, AGLIC denied coverage based upon the policy's "no voluntary payments" condition despite the fact that it had expressly waived that defense prior to the mediation. (Confidential Ex. 20, pgs. 9, 11).

**F. Pegatron and PTSI's Settlement with Customer**

Pegatron and PTSI entered into a written settlement agreement with Customer in July 2016. (Confidential Ex. 22.) The agreement called for [REDACTED

REDACTED

REDACTED]

**G. Tender of Indemnification to AGLIC**

On July 13, 2016, Pegatron and PTSI wrote to AGLIC responding to AGLIC's denial letters and requesting reconsideration. (Confidential Ex. 23.) The letter noted that [REDACTED REDACTED                                        ] and that PTSI was suffering extreme financial hardship as a consequence.

WILLOUGHBY, STUART, BENING & COOK

### H. **AGLIC's Wrongful Reaffirmation of Denial**

On September 6, 2016, AGLIC reaffirmed its wrongful denial of coverage. (Confidential Ex. 24.) The letter was unduly hostile, beginning with an extraordinary attack of Pegatron and PTSI's counsel, whom AGLIC falsely accused of misrepresentation. The letter first confirmed that AGLIC had indeed waived its right to assert a "voluntary payments" defense. AGLIC, however, falsely accused counsel for Pegatron and PTSI of misrepresentation based upon AGLIC's own misreading of the MSA and RSA. AGLIC erroneously concluded that the MSA and and RSA "did not contain or incorporate an indemnity agreement in favor of [Customer] or Pegatron against PTSI." (Confidential Ex. 24, pg. 2.) In fact, the MSA did contain an express indemnity provision, and the RSA incorporated the indemnity provision. (Confidential Ex. 27 [RSA] - incorporation provision is at pg. 1; (Confidential Ex. 26, [MSA] - indemnity provision is ¶7.1).

### I. **PTSI's Indemnity Obligation**

The parties to the RSA are Customer, Pegatron and PTSI. Pegatron and PTSI are described "collectively" as "Supplier." The RSA then "incorporates terms" of the MSA "by reference." (Confidential Ex. 27 [RSA] - incorporation provision is at pg. 1). Clarifying language follows the incorporation of the MSA. First, the RSA states that "[u]nless otherwise defined, the capitalized terms shall have the same meaning as such terms in the MSA." Next, the RSA states that in case of any "conflict in terms between this RSA and MSA, the terms of this RSA shall control." (Confidential Ex. 27, pg. 1). This means that the RSA's definition of "Supplier" (Pegatron and PTSI collectively) controls interpretation of the MSA's indemnity obligation imposed upon the "Supplier":

> Supplier shall indemnify, hold harmless and upon [Customer's] request defend [Customer]
> . . . from and against all claims, charges, and causes of action of any type . . . arising out or in connection with:
>
> (a) Supplier's failure to comply with the terms of this Agreement, including the data privacy and security requirements described under Section 9, and/or applicable Federal, state or local law, statute, common law regulation or ordinance;
>
> (b) Any negligent act or omission, or any willful misconduct, on the part of of Supplier or Supplier's Employees or their respective subcontractors, agents

WILLOUGHBY, STUART, BENING & COOK

or the like in the performance of the Services.

(Exhibit 26, MSA ¶7.1.)

To incorporate the terms of the MSA, it was necessary for Customer only to reference "terms of the MSA," and make the document containing those terms available to PTSI.  *Chan v. Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 641.  It was not necessary to recount each term by paragraph or page number.

## III.  AGLIC'S COVERAGE

### A.  CGL Coverage for Publication of Material in Violation of Rights of Privacy

AGLIC issued the liability coverage in the CGL policy providing "personal and advertising injury" coverage.   The coverage was to protect PTSI against any "oral or written publication, in any manner, of material that violates a person's right of privacy".

**1.  Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result . . .

b.   This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(Exhibit 1 pg. "Zurich 000181").

**SECTION V - DEFINITIONS**

3.   "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

14.  "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

* * *

e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;
(Exhibit 1 pgs. "Zurich" 000188, 000190).

**B.** <u>Commercial Umbrella Coverage for Publication of Material in Violation of Rights of Privacy</u>

AGLIC's Commercial Umbrella Liability Policy includes both "Excess Follow Form Liability Insurance" and Umbrella Liability Insurance.  The Excess coverage applies excess of AGLIC's CGL liability coverage pursuant to the same terms and conditions as that underlying CGL coverage, with limits of $10,000,000.  (Exhibit 2 pgs. "Zurich" 000365, 000370).

The Umbrella coverage applies on a primary basis when the CGL policy does not apply (the coverage "does not apply to any loss, claim or suit for which insurance is afforded under underlying insurance or would have been afforded except for the exhaustion of the Limits of Insurance of underlying insurance").  (Exhibit 2 pgs. "Zurich" 000370).  An "umbrella policy" fills in gaps in coverage left open by the primary insurance.  *Wells Fargo Bank v. California Insurance Guarantee Assn.* 38 Cal.App.4th 936, 940 fn2 (1995).  The Umbrella Liability Policy provides "personal and advertising injury" coverage, which is defined as:

> **12.  Personal and advertising injury** means injury, including consequential bodily  injury, arising out of one or more of the following offenses:
>
> *  *  *
>
>      e.  Oral or written publication, in any manner, of material that violates a person's right of privacy.
>
> *  *  *
>
> **Personal and advertising injury** also means mental anguish, mental injury, humiliation, or shock, if directly resulting from an offense listed in items **12.a** through **12.h** above.

(Exhibit 2 pgs. "Zurich" 000370, 000382).

## IV.  <u>AGLIC'S DUTY TO DEFEND</u>

### A.  <u>Policy Provisions Obligating Defense</u>

The CGL Policy obligated AGLIC to provide a defense to PTSI.  As set forth above, the Policy imposes a duty upon AGLIC to "defend the insured against any 'suit' "  seeking damages because of "personal and advertising injury" to which the policy applies.  (Exhibit 1 pg. "Zurich" 000181).  The policy defines "suit" to include the binding mediation at issue which proceeded pursuant to AGLIC consent and with AGLIC's participation:

## SECTION V - DEFINITIONS

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

(Exhibit 1 pg. "Zurich" 000191).

AGLIC's Umbrella Liability Policy also imposed a duty to defend:

A. We have the right and duty to assume control of the investigation and settlement of any claim, or defense of any suit against the insured for damages covered by this policy:

* * *

2. Under Coverage B, when damages are sought for bodily injury, property damages, or personal and advertising injury to which no underlying insurance or other insurance applies.

(Exhibit 2 pg. "Zurich" 000372).

The Policy's definition of "Suit" encompasses the binding mediation:

6. Suit means a civil proceeding in which injuries or damages to which this insurance applies are alleged. Suit includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with our consent.

(Exhibit 2 pg. "Zurich" 000379).

### B.  An Insurer's Defense Obligation is Triggered by a Mere Possibility of a Claim Within the Scope of Coverage

"An insurer faces an uphill battle from the beginning because the duty to defend in California is extensive." *Century Surety Co. v. United Specialty Ins. Co.*, 2018 U.S. Dist. LEXIS 69807 *13 (C.D. Cal., 2018) [internal citation omitted].   An insurer's duty to defend is broader than the duty to indemnify, and it may apply even in an action where liability under the policy

WILLOUGHBY, STUART, BENING & COOK

1  ultimately fails to materialize. *Montrose Chemical Corp. v. Superior Court,* 6 Cal.4th 287, 299

2  (1993). "[T]he duty to defend may exist where coverage is questionable and ultimately found

3  lacking [citations omitted], and any doubt must be resolved in favor of the insured." *Amato v.*

4  *Mercury Casualty Co.,* 18 Cal.App.4th 1784, 1790 (1993); *Montrose* at 300.

5      To establish that an insurer owed a duty to defend, an insured has only the minimal burden

6  to show that there was a potential for coverage under the insuring agreement of the Policy.

7  *Montrose, supra* at 300-301. An insured is entitled to a defense if the underlying complaint alleges

8  liability for damages potentially covered under the policy, or if the complaint might be amended to

9  give rise to a liability that would be covered. *Id.*; *Gray v. Zurich*, 65 Cal.2d 263, 275-276 (1966).

10  Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that

11  the claim may be covered by the policy. *Montrose, supra* at 295. An insurer has an immediate

12  duty to defend incepting upon tender of the claim to the insurer. *Id.*

13      Once the insured has met its minimal burden to make a prima facie showing of the

14  potential for coverage, the burden then shifts to the insurer to show that undisputed facts

15  conclusively eliminated the potential for coverage. *Montrose, supra,* at 300. The insurer must

16  prove the claim cannot fall within the policy's coverage. *Id.* An insurer may defeat a motion for

17  summary judgment only by producing undisputed extrinsic evidence conclusively eliminating the

18  potential for coverage under the policy. *Century Surety Co , supra,* 2018 U.S. Dist. LEXIS 69807

19  *14. An insurer cannot deny a defense on grounds that an exclusion might apply. An insurer is

20  obligated to provide a defense where an exclusion arguably applies but may reasonably be

21  interpreted to be inapplicable to the alleged facts. *Aroa Marketing, Inc. v. Hartford Ins. Co. of*

22  *Midwest*, 198 Cal.App.4th 781, 786 (2011).

23      Evidence which merely places in dispute whether the insured's actions will eventually be

24  determined to fall outside the insuring agreement, or fall within an exclusion, is insufficient to

25  defeat the insured's right to summary adjudication of the duty to defend. *Montrose* at 300, 304.

26  When the evidence does not eliminate the possibility that the insured's conduct is covered, the duty

27  to defend is established. *Montrose* at 301. The mere existence of a question of fact dispositive of

28  coverage establishes the duty to defend. *Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th

1076, 1085.

## V.  AGLIC'S DUTY TO INDEMNIFY THE SETTLEMENT

An insured who has been abandoned by its insurer and elects to settle rather than risk an adverse judgment is entitled to an evidentiary presumption in litigation against the insurer.  *Pruyn v. Agricultural Ins. Co.* 36 Cal.App.4th 500, 527 (1995).   The settlement becomes presumptive evidence of the liability of the insured, and the amount thereof.  *Id.* at 525.   For the presumption to arise, the insured need only establish the following foundational facts:  (1) the insurer wrongfully failed to provide coverage or a defense; (2) the insured thereafter entered into a settlement which was (3) reasonable in the sense that it reflected an informed and good faith effort by the insured to resolve the claim.  *Id.* at 528.   The evidentiary presumption given to the insured is one which affects the burden of proof. *Id.* at 529.   Presumptions affecting the burden of proof are established in order to implement public policy concerns, and are "justifiably given greater weight".  *Id.* at 529.  When an insurer has breached the insurance policy, there is an obvious need, as a matter of policy, to permit the insured to protect its position by settling the third party's claim, so long as the settlement is reasonable.  *Id.* at 530.  "It is sound and rational to conclude that the burden of showing that the settlement does *not* reflect the fact and amount of the insured's liability should fall upon the insurer whose breach has occasioned the settlement".  *Id.* (emphasis original, internal citation omitted).   Additionally, "[t]he insurer, not the insured, has the burden of proving by a preponderance of the evidence that the settlement payments were allocable to claims not actually covered, and the defense costs were allocable to claims not even potentially covered".  *Navigators Specialty Ins. Co. v. Moorefield Construction, Inc.,* 6 Cal.App.5th 1258, 1287 (2016).

## VI.   JANE DOE'S CLAIM WAS WITHIN THE SCOPE OF AGLIC'S COVERAGE

The publication of Jane Doe's photos and video easily qualify as a written publication of material "in any manner" that violates a person's right of privacy.   The publication humiliated Jane Doe, subjecting Customer and PTSI to liability in tort for (1) the publication of private facts, and (2) false light publicity.   The latter tort arises from the negative inference others could draw from publishing sexually explicit images to Jane Doe's Facebook page, namely that she had published

1  the images herself.

2        To construe the scope of "personal injury" coverage, courts look to substantive law

3  regarding the personal injury "offenses".  See *Fibreboard Corp. v. Hartford Accident & Indem.*

4  *Co.* 16 Cal.App.4th 492, 511 (1993) (because the offenses listed in the definition of "personal

5  injury" are not defined, courts "give them meaning by reference to their common law elements".)

6  California recognizes four common law privacy torts: (1) public disclosure of private facts; (2)

7  intrusion into private places, conversations, or other private affairs; (3) presentation to the public in

8  a false light; and (4) misappropriation of one's image or personality.  *Shulman  v. Group W*

9  *Productions* (1998) 18 Cal.4th 200, 214.

10       Liability for "public disclosure of private facts" arises when unwanted publicity is given to

11  private aspects of a person's life. *Shulman, supra* at 214.  The elements of the tort are (1) public

12  disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable

13  person and (4) which is not of legitimate public concern.  *Id.*  Public disclosure of private "facts" is

14  not limited to those recorded in a writing, but expansively encompasses the publication of pictures

15  and even oral statements.  *Ignat v. Yum! Brands, Inc.*, 214 Cal.App.4th 808, 815-819 (2013).

16       A "false light" claim requires a disclosure creating a false impression about someone

17  which states or implies something highly offensive that would have a tendency to injure their

18  reputation.  *Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1082 (9th Cir., 2002).  "False light" publicity

19  "exposes a person to hatred, contempt, ridicule, or obloquy and assumes the audience will

20  recognize it as such".  *M.G. v. Time Warner, Inc.,* 89 Cal.App.4th 623, 636 (2001).  A showing of

21  malice is only required for public figures.  *Id.*  "It is well-established that a defendant is liable for

22  what is insinuated as well as for what is stated explicitly."  *Solano, supra* at 1083.  In *Solano,* the

23  court held that a Playgirl magazine cover which featured a photograph of an actor could create the

24  false impression that readers could expect to find nude photos of the actor inside the magazine (*id.*

25  at 1083), and that the actor "was not the wholesome person he claimed to be, that he was willing to

26  - or was 'washed up' and had to - sell himself naked to a women's sex magazine".  *Id.*at 1084.   The

27  Court of Appeals cited with approval a decision from another district in which an actress asserted a

28  false light claim based upon Hustler magazine's insinuation that she was the kind of person to pose

WILLOUGHBY, STUART, BENING & COOK

1  nude for Hustler.  *Solano, supra* at 1083, citing *Douglass v. Hustler Magazine*, 769 F.2d 1128 (7th

2  Cir., 1985).   The United States Supreme Court has confirmed the privacy interest that exits

3  regarding the contents of a smart phone.  *Riley v. California*, 573 U.S. 373, 375-376, 134 S.Ct.

4  2473, 189 L.Ed.2d 430 (2014).   Even celebrities retain a privacy interest in their sex lives and

5  intimate details of their lives.  *Michaels v. Internet Entertainment Group, Inc.*, 5 F. Supp. 2d 823,

6  840 (C.D.Cal., 1998).

7       The posting to Facebook of Jane Doe's private photos and videos satisfied the policy's

8  requirement of "a publication, in any manner".   "Publication" means "making known" to third

9  parties.  *Yahoo! Inc. v. National Union Fire Ins. Co.,* 255 F. Supp. 3d 970, 975 (N.D.Cal., 2017).

10 The personal injury provision thus covers injury caused by the disclosure of private content to third

11 parties.  *Id.*   The phrase "in any manner" modifies "publication", and means that information may

12 be made known in any way in order for coverage to apply.  *Id.* at 977.   "Any manner" of

13 publication involves any medium by which material is published.  *Id.*

14       Finally, Jane Doe's claim satisfied the policies' requirement of injury.   The CGL policy

15 defines injury to include "consequential 'bodily injury', arising out of a personal injury offense."

16 (Exhibit 1 pg. 000190).   "Bodily injury" includes physical injury resulting from emotional

17 distress.  *Abellon v. Hartford Ins. Co*., 167 Cal.App. 3d 21, 27-29 (1985);  *M.C. v. Princeton

18 Excess & Surplus Lines Inc. Co*., 2017 U.S. Dist LEXIS 116278, *19-*23.  Additionally,

19 AGLIC's Umbrella Policy expressly defines injury to include "mental anguish, mental injury,

20 humiliation, or shock" directly resulting from a personal injury offense.  (Exhibit 2 pg. 000382).

21       **VII.   AGLIC'S WRONGFUL DENIAL OF ITS OBLIGATIONS**

22       AGLIC denied coverage on multiple grounds, none of which are valid.  AGLIC invoked

23 the "no voluntary payments" clause which AGLIC had expressly waived;  AGLIC denied coverage

24 based upon exclusions which do not apply; and AGLIC stood upon its specious assertion that PTSI

25 faced no liability for publication of the photos and video.   (Confidential Ex's. 20, 21, 24).

26       AGLIC has the burden to prove there is no conceivable possibility of an injury falling

27 outside the scope of its exclusions.   An insurer that wishes to rely on an exclusion has the burden

28 of proving through conclusive evidence that the exclusion applies in all possible worlds.  *Atlantic*

WILLOUGHBY, STUART, BENING & COOK

*Mutual Ins. Co. v. J. Lamb, Inc.,* 100 Cal.App.4th 1017, 1039 (2002). Insurance coverage provisions are "interpreted broadly so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted narrowly against the insurer". *MacKinnon v. Truck Insurance Exchange,* 31 Cal.4th 635, 648 (2003). To hold in favor of the insured, the court need not determine that the insurer's interpretation is not possible or is not reasonable. *Id.* at 655. Even assuming the insurer's interpretation is reasonable, a finding of coverage must be affirmed so long as there is any other interpretation under which recovery may be permitted. *Id.* If an insurer's interpretation is considered reasonable, the insurer still cannot prevail unless it also establishes that its interpretation is the *only* reasonable one. *Id.*(emphasis original).

### A. AGLIC Wrongfully Denied Coverage on Grounds PTSI Had No Liability for the Publication of the Photos and Video

PTSI faced liability on two fronts, but AGLIC deliberately ignored one basis of liability, and deliberately misinterpreted the document giving rise to the other avenue of liability. PTSI's liability stemmed from (1) its direct tort liability to Jane Doe; and (2) from its duty to indemnify Customer for the liability to Jane Doe. In this coverage action, the settlement constitutes presumptive evidence of PTSI's liability to Jane Doe, and the amount of damages sustained by Jane Doe. *Pruyn, supra*, 36 Cal.App.4th 500, 525.

### B. AGLIC Wrongfully Denied Coverage Based Upon a Contractual Liability Exclusion

AGLIC contends that coverage is barred by a contractual liability exclusion (while at the same time asserting the inconsistent position that PTSI had no contractual liability to Customer.) (Confidential Ex's. 20, 21, 24). The Exclusion provides that AGLIC has no obligation to indemnify PTSI against "personal and advertising injury" for which PTSI has "assumed liability in a contract or agreement". (Exhibit 1 pg. "Zurich" 000159). An exception to the exclusion provides that it does not apply to "liability for damages that the insured would have in the absence of the contract or agreement". (Exhibit 1 pg. 000159). The exception parses liability for tort damages, so that the exclusion applies only when the insured is exposed to liability for contract damages. *Roger H. Proulx & Co. v. Crest-Liners, Inc.,* 98 Cal.App.4th 182, 203 (2002). In *Proulx,* the court observed

that the exclusion applies only in situations where the insured's liability derives exclusively from the assumption of duties under a contractual indemnity provision. *Id.* at 202. If the insured's liability derives from other duties owed, the exclusion has no effect. See also *Lumbermens Mutual Casualty Co. v. Corning, Inc.,* 2008 U.S. Dist. LEXIS 126717 *48 (C.D.Cal., 2008).

AGLIC had no basis to assert that PTSI exclusively faced exposure to contractual indemnity. PTSI assumed custody of Jane Doe's phone, employed Third Party Vendor workers to repair the phone, and undertook responsibility for Internet connection to the phone, and as such, PTSI owed legal duties to Jane Doe to protect her from invasions of privacy arising from PTSI's repair activities. (Confidential Exhibits 5, 8, 25, 26, 27, and Ex. 27 pg. PTSI002532 opening paragraph [re PTSI responsibility for connectivity].

### C. AGLIC Wrongfully Denied Coverage Based Upon a Recording and Distribution Exclusion

#### 1. The Exclusion Does Not Encompass Jane Doe's Claim

AGLIC denied coverage based on an exclusion titled "Recording and Distribution of Material or Information in Violation of Law". (Confidential Ex's. 20, 21 pg.6, 24 pg.7). This exclusion begins with the elimination of coverage for any "personal and advertising injury" that arises out of any "action or omission that violates or is alleged to violate" (1) the Telephone Consumer Protection Act ("TCPA"), its amendments and additions, (2) the CAN-SPAM Act of 2003, its amendments and additions; and (3) the Fair Credit Reporting Act ("FCRA"), its amendments and additions, including the Fair and Accurate Credit Transaction Act. The endorsement then adds the following obscure language to the list of statutes for which coverage is eradicated:

> (4) any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003, or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

(Exhibit 1, pgs. "Zurich" 000167-168; Exhibit 2 pg. 000396).

The posting of extremely personal and private images on a social media site does not fall

WILLOUGHBY, STUART, BENING & COOK

1    within the recording and distribution exclusion.  First, the posting of images is not a violation of

2    the TCPA, CAN-SPAM Act of 2003 or the FCRA, and Jane Doe never claimed that the uploading

3    of her images violated any of those statutes.   Nor did Jane Doe claim that the posting of her photos

4    and video violated any other statute, ordinance or regulation.  (Confidential Exhibits 4, 5).

5           While the exclusion also refers to "any other legal liability, at common law or otherwise,"

6    that phrase (buried deep within the exclusion), cannot be interpreted to wipe out coverage for

7    "publications in any manner" otherwise promised by AGLIC's grant of "personal and advertising

8    injury" coverage.  In *Safeco Ins. Co. Robert S.,* 26 Cal.4th 758, 764-765 (2001), the Supreme Court

9    refused to enforce an "illegal act" exclusion on grounds that the term "illegal" was so broad that it

10   could encompass any violation of law, including breaches of tort duty which would render the

11   insurer's promise to cover bodily injury caused by accident illusory.  The same analysis applies

12   here.  The phrase "any other legal liability, at common law or otherwise," is so broad that it could

13   render AGLIC's promise of libel coverage, slander coverage, disparagement coverage and invasion

14   of privacy coverage illusory.  See also *Evanston Insurance Co. v. Gene by Gene, Ltd*., 155 F.

15   Supp.3d 706 (S.D. Tex., 2016), where the court agreed that the insurer's construction of a

16   substantially similar exclusion was unreasonable, because it would render illusory the policy's

17   advertising injury coverage and personal injury coverage for claims arising out of publication of

18   material that violates a person's right of privacy.  *Id.* at 712-713.

19          AGLIC's interpretation also violates the rule that context must be considered when

20   interpreting a policy provision.   See *Yahoo! Inc., supra*, 255 F. Supp. 3d 970, 976-977.   The

21   principle of *ejusdem generis* precludes AGLIC's interpretation that the catchall subpart (4) applies

22   to preclude coverage for the posting of Jane Doe's confidential photos and videos to Facebook.

23   The *ejusdem generis* canon of construction instructs that catchall clauses are to be read as being

24   restricted to categories of the same general nature as those specifically enumerated.  *Berns v. Sentry*

25   *Select Ins. Co*., 656 Fed. Appx. 326 *2 (9th Cir., 2016).   The rule is "based on the obvious reason

26   that if the [writer] had intended the general words to be used in their unrestricted sense, [he or she]

27   would not have mentioned the particular things or classes of things which would in that event

28   become mere surplusage.  *White v. Ultramar, Inc.,* 21 Cal.4th 563, 573 (1999) [bracketed notations

WILLOUGHBY, STUART, BENING & COOK

original]. The court in *Evanston Insurance v. Gene by Gene, supra* applied the doctrine of *ejusdem generis* to interpret the scope of the catchall subpart excluding coverage for claims based upon "any other statute, law, rule, ordinance, or regulation that prohibits or limits the sending, transmitting, communication, or distribution of information or other material" . The court concluded that the scope of the catchall provision was restricted to the same general categories as the preceding subparts of the exclusion, which encompassed statutes governing unsolicited communication to consumers that intrude into one's seclusion [the TCPA and CAN-SPAM Act which are also specified in AGLIC's exclusion] . *Id.* at 711-712. Likewise, in *Harleysville Preferred Insurance Co. v. Rams Head Savage Mill, LLC*, 237 Md. App. 705, 187 A.3d 797 (Md. App., 2018), the court applied the doctrine of *ejusdem generis* to find that the catchall provision in a recording and distribution exclusion was limited to the same type of laws as the preceding categories protecting consumers from unwanted solicitations and the improper collection and distribution of financial information [the TCPA, CAN-SPAM Act, and FCRA which are also specified in AGLIC's exclusion.] *Id.* at 735.

### 2. AGLIC's Confirmed Intent of the Catchall Provision Was Consistent With the Doctrine of *Ejusdem Generis* and Contravenes AGLIC's Current Contrary Interpretation

The "recording and distribution" exclusion bears form no. U-GL-1517-B CW (04/13), indicating the exclusion was first used in 2013. AGLIC submitted a similar exclusion, bearing form no. U-GL-1517-A CW (01/12), to the Indiana Department of Insurance in December 2011. (Exhibit 3). When AGLIC submitted its exclusion, it represented that the phrase "any other legal liability, at common law or otherwise":

> *clarifies* our coverage intent by confirming our intent to exclude all causes of action arising out of Telephone Consumer Act (TCPA), CAN-SPM [sic] Act of 2003, Fair Credit Reporting Act (FCRA) and Accurate [sic] Credit Transaction Act (FACTA).
>
> (Exhibit 3, pg.3, emphasis added)

AGLIC cannot use language intended to *clarify* its exclusion of certain statutory causes of action to deprive an Indiana insured of its right to "personal and advertising injury" coverage for

WILLOUGHBY, STUART, BENING & COOK

common law violations of privacy.   In disclaiming coverage of Jane Doe's claim, AGLIC misrepresented its submission to the Indiana Department of Insurance, arguing that the submission addressed the first three prongs of the exclusion barring coverage for certain statutory violations. (Confidential Ex. 23, pg. 8.)  AGLIC's misrepresentation is revealed as false by AGLIC's own redline version of the exclusion, which confirms that its submission specifically addressed changes to the exclusion contained in the *fourth prong* adding the phrase "any other legal liability, at common law or otherwise."   (Exhibit 3, pg. 13).

Drafting history of a policy is strong evidence of the intent of the policy.  *Fireguard Sprinkler Systems v. Scottsdale Insurance,* 864 F.2d 648, 653 (9th Cir., 1988).   *Prudential-LMI Commercial Insurance Co. v. Reliance Insurance Co,.* 22 Cal.App.4th 1508, 1513 (1994) (insurance industry publications are particularly persuasive as interpretive aids where they support coverage on behalf of the insureds).  A construction given to the contract by the parties with knowledge of its terms before any controversy has arisen as to its meaning, is entitled to great weight.  *Beneficial Fire and Casualty Insurance Company,* 46 Cal.2d 517, 524 (1956).  An insurer is bound by its interpretation of its own policy.  *Middlesex Mutual Insurance Co. v. Ramirez,* 116 Cal.App.3d 733, 740 (1981).

### D.   AGLIC Wrongfully Denied Coverage Based Upon an Access or Disclosure Exclusion

AGLIC next claimed that an exclusion, titled "Exclusion – Access or Disclosure of Confidential or Personal Information and Data-Related Liability – Limited Bodily Injury Exception Not Included," also eliminated coverage for Jane Doe's invasion of privacy claims.   (Confidential Ex's 20 pg. 7;  Ex. 24 pg. 9).   This exclusion provides that the policy does not apply to "personal and advertising injury" arising out of "any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information."   (Exhibit 1, pg. "Zurich" 000198).

The phrases "personal information" and "any other type of nonpublic information" suffer from the same overbreadth that renders the "recording and distribution" exclusion unenforceable

WILLOUGHBY, STUART, BENING & COOK

1   when applied to Jane Doe's facts. *Safeco Ins. Co. Robert S.* (2001) 26 Cal.4[th] 758, 764-765.   Only

2   by construing "personal information" and "any other nonpublic information" to mean all

3   information personal to Jane Doe could AGLIC apply the "access or disclosure" exclusion to

4   defeat coverage.  But if the Exclusion applies to all information personal to Jane Doe, then the

5   exclusion also applies to all information personal to anyone, effectively vitiating all coverage for

6   libel, slander, and invasion of privacy, since those coverages each depend on the "publication" (i.e,

7   disclosure) of personal facts.   (Exhibit 1, pg. "Zurich" 000190 ¶14(d) and (e).)

8        AGLIC's interpretation again contravenes the rule that the context must be considered

9   when interpreting a policy provision, and that the doctrine of *ejusdem generis* restricts the scope of

10  generic catchall clauses.   *Yahoo! Inc., supra*, 255 F. Supp. 3d 970, 976-977;  *White v. Ultramar,*

11  *Inc., supra,* 21 Cal.4[th] at 573;  *Berns v. Sentry, supra* 656 Fed. Appx. 326 *2.   The specific

12  examples enumerated by AGLIC in its exclusion are confined to the contexts of intellectual

13  property, business competition, financial privacy, and health care.   The catchall phrase tacked on

14  to the end of the exclusion cannot be interpreted expansively to encompass all other categories of

15  information which someone may consider personal.   Even AGLIC has conceded that the "access

16  or disclosure" exclusion applies only to a small subset of invasion of privacy torts, and does not

17  apply to other privacy torts such as *false light publicity*.  (Confidential Ex. 24, pg. 10.)   Thus, by

18  AGLIC's own admission, the "access or disclosure" exclusion *cannot* defeat coverage for Jane

19  Doe's damages, since Jane Doe's claim triggered coverage for false light publicity.  The uploading

20  of extremely personal and private images to Jane Doe's own Facebook page cast her in the falsest

21  of light by suggesting she had intended to publish the images herself.

22       If AGLIC intended to eliminate the violation of privacy coverage it granted, it had an

23  obligation to notify the insured in clear and precise terms that it was eliminating coverage.

24  California law requires that every exclusion must be conspicuous, plain and clear.  *Haynes v.*

25  *Farmers Ins. Exchange,* 32 Cal.4[th] 1198, 1204 (2004).  A policy exclusion is plain and clear when

26  its meaning is obvious to a layperson, "stated precisely and understandably, in words that are part

27  of the working vocabulary of the average layperson."  *Id*.  This means more than the traditional

28  requirement that contract terms be "unambiguous."  Precision is not enough.  Understandability is

WILLOUGHBY, STUART, BENING & COOK

required.  *Id.* at 1211.  If not plain and clear, the exclusion cannot be enforced.  *Id.* at 1204.  Obscuring the elimination of promised coverage in an exclusion that purports to address patents, trade secrets, and financial and health information does not come close to complying with the clarity and precision required by California law.

### E.  AGLIC's Wrongful Denial of Commercial Umbrella Coverage

AGLIC has disputed coverage under its umbrella policy on essentially the same grounds that it has refused CGL coverage. (Confidential Ex. 21).   AGLIC's denial is wrongful for the same reasons.  Additionally, although the umbrella policy expressly defines "personal and advertising injury", to include pure "mental anguish, mental injury, humiliation", AGLIC imposed a non-existent "physical injury" requirement.  (Confidential Ex. 21 pg. 7 ¶C).

### CONCLUSION

To prevail on this motion, PTSI need only show a bare potential that the claim fell within the scope of AGLIC's coverage, that AGLIC wrongfully failed to provide a defense or coverage, and PTSI entered into a settlement with was reasonable in the sense that it reflected an informed and good faith effort by PTSI to resolve the claim.   PTSI has met its burden.  AGLIC breached its duty to defend and indemnify the settlement, and cannot escape the consequences of its breach by asserting policy conditions it waived, nor by misinterpreting and misapplying exclusions.

DATED: August 23, 2019

WILLOUGHBY, STUART, BENING & COOK

By         **/S/**

ALEXANDER F. STUART
Attorneys for Plaintiff