# EXHIBIT 27

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, as assignee and subrogee,<br><br>Plaintiff,<br><br>v.<br><br>PEGATRON CORPORATION,<br><br>Defendant. | CIVIL ACTION NO.:<br>1:18-cv-03701-ELR |

## ANSWER

Pegatron Corporation ("Pegatron") hereby responds to the Complaint by National Union Fire Insurance Company of Pittsburgh, Pa., as assignee and subrogee ("National Union"). Pegatron answers and avers as follows, with numbered paragraphs corresponding to the like-numbered paragraphs of the Complaint. Pegatron denies each and every allegation of the Complaint unless specifically admitted herein.

### THE PARTIES, JURISIDCTION, AND VENUE

1. Pegatron lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 1 and therefore denies them.

2. Admitted.

3. Paragraph 3 consists of a legal conclusion to which no response is required.

4. Paragraph 4 consists of a legal conclusion to which no response is required.

5. Paragraph 5 consists of a legal conclusion to which no response is required.

## PEGATRON'S CONTRACT WITH INSURED

6. Pegatron denies the allegations in paragraph 6, except that it admits that Scientific-Atlanta, Inc. ("Scientific-Atlanta") reportedly entered into a Blanket Purchase Agreement ("BPA") with ASUSTek Computer, Inc. ("ASUSTek") in April 2004. Pegatron was not an original party to the BPA and cannot admit nor deny the parties' intentions at the time of or prior to execution. Pegatron denies the remaining allegations in paragraph 6 as these allegations do not quote the terms in the BPA, and the BPA speaks for itself.

7. Pegatron denies the allegations in paragraph 7, except that it admits that Cisco Systems, Inc. ("Cisco") reportedly acquired Scientific-Atlanta during or around 2005. Pegatron admits that Scientific-Atlanta reportedly assigned the BPA to Cisco Systems International B.V. ("CSI BV") in 2007.

8. Pegatron denies the allegations in paragraph 8, except that it admits that ASUSTek, CSI BV, and Unihan Corporation ("Unihan") reportedly entered into a Letter Amendment No. 1 to the BPA in October 2008.

9. Pegatron admits that it provided some products to Insured. Pegatron denies the remaining allegations in paragraph 9. .

10. Pegatron denies the allegations in paragraph 10, except that it admits that Paragraph 7.1 of the BPA is entitled "Warranties" and includes the statement: "SELLER hereby represents and warrants that: 7.1.1    All Equipment shall conform in all material respects to the Specifications and be free from defects in materials and workmanship; 7.1.2        All Equipment shall function under ordinary use in conformation with the Specification; . . . ."

11. Pegatron denies the allegations in paragraph 11, except that it admits that Paragraph 7.2 of the BPA is entitled "Warranty Period" and includes the statement: "The

- 2 -

warranties set forth above shall apply for the period beginning on the date of SELLER's invoice under which Equipment was shipped to S-A, or to the location(s) designated by S-A, and ending sixty-six (66)months [sic] thereafter (such period, as extended, if applicable, being referred to herein as the 'Warranty Period'). The Warranties set forth above shall be passed through to S-A's Customers, however, S-A, and not its customers, will interface with SELLER on all warranty claims."

12. Pegatron denies the allegations in paragraph 12, except that it admits that Paragraph 7.3 of the BPA is entitled "Warranty Replacement or Repair" and includes the statement: "Within the Warranty Period, S-A and/or such other party or parties as S-A may, from time to time designate (hereinafter referred to as ' S-A designees' shall have the right to return to SELLER, after receiving a return material authorization (RMA) number from SELLER and within the Warranty Period of an intention to return, Equipment not conforming to the above warranties and to require the SELLER, at SELLER's expense and option, repair such Equipment or replace such Equipment with new, conforming Equipment."

13. Pegatron denies the allegations in paragraph 13, except that it admits that Paragraph 18 of the BPA includes the statement: "Equipment delivered hereunder will be manufactured, labeled, certified and will perform in compliance with all applicable laws, regulations, standards and/or codes in effect for the Equipment intended use at the time of delivery. It shall be SELLER's responsibility to secure and maintain any and all certifications and/or approvals (including, but not limited to those of the Federal Communications Commission, Underwriter's Laboratories, and the European Union – CE Conformity, Wi-Fi, Wireless Protected Access ('WPA'), ITU, and CCC) ('Covered Regulatory Compliance') required for the Equipment purchased hereunder including Equipment privately labeled for S-A.

In order to ensure the relevant laws and regulations are satisfactorily met, SELLER agrees to: (a) Certify to S-A that the Equipment delivered hereunder is in compliance with regulations, laws, standards and/or codes . . . ."

14. Pegatron admits that the BPA states "Equipment" means "cable modem products, wireless products, Stand-alone Media Terminal Adapters ('SMTAs'), IP settop boxes, associated accessories, and the software used with or incorporated within all of these, purchased (in the case of software, licensed) under this contract as set forth in Purchase Orders issued hereunder." Pegatron denies the remaining allegations in paragraph 14.

15. Pegatron admits that it provided some devices capable of operating on the 2.4 GHz and 5 GHz frequency bands. Pegatron denies the remaining allegations in paragraph 15.

### INSURED'S CONTRACT WITH CUSTOMER

16. Pegatron lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 16 and therefore denies them.

17. Pegatron lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 17 and therefore denies them.

18. Pegatron lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18 and therefore denies them.

19. Pegatron lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 19 and therefore denies them.

20. Denied.

21. Denied.

**PLAINTIFF REIMBURSED INSURED'S LOSS**

22.     Pegatron lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 22 and therefore denies them.

23.     Pegatron lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 23 and therefore denies them.

## COUNT 1

### (BREACH OF CONTRACT: BLANKET PURCHASE AGREEMENT)

24.     Pegatron repeats and restates its answers to paragraphs 1-23 as if fully set forth herein.

25.     Pegatron admits that it provided some products to Insured.  Pegatron denies the remaining allegations in paragraph 25.

26.     Pegatron admits that it provided some products to Insured.  Pegatron denies the remaining allegations in paragraph 26.

27.     Pegatron admits that it provided some products to Insured.  Pegatron denies the remaining allegations in paragraph 27.

28.     Denied.

29.     Pegatron denies that Cisco performed all its duties to Pegatron.  Pegatron lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 29, including whether Cisco performed all of its duties to National Union or "Customer," and therefore denies them.

30.     Denied.

Pegatron denies that National Union is entitled to any relief, including monetary damages, interest, attorney's fees, or costs, claimed by National Union for Count I.

## COUNT II

## (BREACH OF CONTRACT – WARRANTY)

31. Pegatron repeats and restates its answers to paragraphs 1-30 as if fully set forth herein.

32. Pegatron admits that it provided some products to Insured. Pegatron denies the remaining allegations in paragraph 32.

33. Pegatron admits that it provided some products to Insured. Pegatron denies the remaining allegations in paragraph 33.

34. Pegatron admits that it provided some products to Insured. Pegatron denies the remaining allegations in paragraph 34.

35. Pegatron denies the allegations in paragraph 35, except that it admits that Paragraph 7.2 of the BPA is entitled "Warranty Period" and includes the statement: "The warranties set forth above shall apply for the period beginning on the date of SELLER's invoice under which Equipment was shipped to S-A, or to the location(s) designated by S-A, and ending sixty-six (66)months [sic] thereafter (such period, as extended, if applicable, being referred to herein as the 'Warranty Period'). The Warranties set forth above shall be passed through to S-A's Customers, however, S-A, and not its customers, will interface with SELLER on all warranty claims."

36. Pegatron denies the allegations in paragraph 36, except that it admits that the BPA includes the statement: "Within the Warranty Period, S-A and/or such other party or parties as S-A may, from time to time designate (hereinafter referred to as ' S-A designees' shall have the right to return to SELLER, after receiving a return material authorization (RMA) number from SELLER and within the Warranty Period of an intention to return, Equipment not conforming to

- 6 -

the above warranties and to require the SELLER, at SELLER's expense and option, repair such Equipment or replace such Equipment with new, conforming Equipment."

37. Denied.

38. Denied.

39. Pegatron denies that Cisco performed all its duties to Pegatron. Pegatron lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 39, including whether Cisco performed all of its duties to National Union or "Customer," and therefore denies them.

40. Denied.

Pegatron denies that National Union is entitled to any relief, including monetary damages, interest, attorney's fees, or costs, claimed by National Union for Count II.

## COUNT III

### (BREACH OF CONTRACT – REPRESENTATION)

41. Pegatron repeats and restates its answers to paragraphs 1-40 as if fully set forth herein.

42. Pegatron denies the allegations in paragraph 42, except that it admits that Paragraph 18 of the BPA includes the statement: "Equipment delivered hereunder will be manufactured, labeled, certified and will perform in compliance with all applicable laws, regulations, standards and/or codes in effect for the Equipment intended use at the time of delivery. It shall be SELLER's responsibility to secure and maintain any and all certifications and/or approvals (including, but not limited to those of the Federal Communications Commission, Underwriter's Laboratories, and the European Union – CE Conformity, Wi-Fi, Wireless Protected Access ('WPA'), ITU, and CCC) ('Covered Regulatory Compliance')

required for the Equipment purchased hereunder including Equipment privately labeled for S-A. In order to ensure the relevant laws and regulations are satisfactorily met, SELLER agrees to: (a) Certify to S-A that the Equipment delivered hereunder is in compliance with regulations, laws, standards and/or codes . . . ."

43. Pegatron lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 43 and therefore denies them.

44. Denied.

45. Pegatron denies that Cisco performed all its duties to Pegatron. Pegatron lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 45, including whether Cisco performed all of its duties to National Union or "Customer," and therefore denies them.

46. Denied.

Pegatron denies that National Union is entitled to any relief, including monetary damages, interest, attorney's fees, or costs, claimed by National Union for Count III.

## COUNT VI[1]

## (NEGLIGENT MISREPRESENTATION)

47. Pegatron repeats and restates its answers to paragraphs 1-46 as if fully set forth herein.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

---

[1] The Complaint identifies this as "COUNT VI." This appears to be a typographical error.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

Pegatron denies that National Union is entitled to any relief, including monetary damages, interest, attorney's fees, or costs, claimed by National Union for Count VI.

### COUNT VI[2]

### (BREACH OF CONTRACT – TERMS AND CONDITIONS)

57. Pegatron repeats and restates its answers to paragraphs 1-56 as if fully set forth herein.

58. Pegatron admits that it provided some products to Insured. Pegatron denies the remaining allegations in paragraph 58.

59. Denied.

60. Denied.

61. Denied.

62. Pegatron denies that Cisco performed all its duties to Pegatron. Pegatron lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 62, including whether Cisco performed all of its duties to National Union or "Customer," and therefore denies them.

63. Denied.

---

[2] The Complaint also identifies this as "COUNT VI." This also appears to be a typographical error.

Pegatron denies that National Union is entitled to any relief, including monetary damages, interest, attorney's fees, or costs, claimed by National Union for Count VI.

## AFFIRMATIVE DEFENSES

64. Without admitting or acknowledging that it bears the burden of proof as to any of the following affirmative defenses and based upon information and belief to date, Pegatron asserts the following affirmative defenses and reserves the right to amend its answer as additional information becomes available:

### FIRST AFFIRMATIVE DEFENSE

### (WAIVER)

65. The claims asserted in the Complaint are barred, in whole or in part, because National Union, the Insured, and/or Customer waived them.

### SECOND AFFIRMATIVE DEFENSE

### (RELEASE)

66. The claims asserted in the Complaint are barred, in whole or in part, because National Union, the Insured, and/or Customer released Pegatron from liability.

### THIRD AFFIRMATIVE DEFENSE

### (FAILURE TO MITIGATE)

67. The claims asserted in the Complaint are barred, in whole or in part, because National Union, the Insured, and/or the Customer failed to use ordinary care and diligence to lessen damages as far as is practicable.

## FOURTH AFFIRMATIVE DEFENSE

## (ACCORD AND SATISFACTION)

68. The claims asserted in the Complaint are barred, in whole or in part, because a bona fide dispute existed over the amount owed and National Union, the Insured, and/or the Customer accepted payment.

## FIFTH AFFIRMATIVE DEFENSE

## (EQUITABLE ESTOPPEL)

69. The claims asserted in the Complaint are barred, in whole or in part, by equitable estoppel.

## SIXTH AFFIRMATIVE DEFENSE

## (FAILURE TO STATE A CLAIM)

70. The Complaint fails to state a claim for which relief can be granted.

## SEVENTH AFFIRMATIVE DEFENSE

## (VOLUNTARY PAYMENT)

71. The claims asserted in the Complaint are barred, in whole or in part, because any injury suffered by National Union, the Insured, and/or the Customer was a result of its own conduct, including failing to comply with the terms of agreements or laws, making voluntary payments, or providing gratuitous benefits.

## EIGHTH AFFIRMATIVE DEFENSE

## (CONTRACT)

72. The claims asserted in the Complaint are barred, in whole or in part, by contract.

## NINTH AFFIRMATIVE DEFENSE

## (ASSUMPTION OF RISK)

73. The claims asserted in the Complaint are barred, in whole or in part, because National Union, the Insured, and/or the Customer assumed the risk of any allegedly defective products.

## TENTH AFFIRMATIVE DEFENSE

## (FAILURE OF A CONDITION PRECEDENT)

74. The claims asserted in the Complaint are barred, in whole or in part, because, while Pegatron does not admit that the BPA is applicable to any of National Union's claims, a condition precedent to Pegatron's alleged obligations under the BPA has not occurred. For example, conditions precedent in Paragraphs 7.3, 7.4, 7.5, 7.7, 7.11, 7.12, and 7.13 of the BPA have not been met.

## JURY DEMAND

Pegatron demands a trial by jury on all issues triable by a jury.

Dated: December 3, 2018                                Respectfully submitted,

                                                       **BAKER & HOSTETLER LLP**

                                        By:    */s/ Lisa N. Collins*
                                               Lisa N. Collins
                                               Georgia Bar No. 141523
                                               lncollins@bakerlaw.com
                                               James B. Hatten
                                               Georgia Bar No. 963831
                                               jhatten@bakerlaw.com
                                               1170 Peachtree Street NE, Suite 2400
                                               Atlanta, GA  30309-7676
                                               Telephone:   404.459.0050
                                               Facsimile:   404.459.5734

                                               Attorneys for Defendant
                                               Pegatron Corporation

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing ANSWER with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification of such filing to the following attorneys of record pursuant to LR 5-1(A)(3):

>Counsel for Plaintiff:
>
>Leslie K. Eason
>Gordon & Reese LLP
>Georgia Bar No. 100186
>3455 Peachtree Road, Suite 1500
>Atlanta, GA 30326
>Tel: (404) 978-7329
>Fax: (678) 389-8475
>leason@grsm.com

This 3rd day of December, 2018.

*/s/ Lisa N. Collins*
Lisa N. Collins