EXHIBIT 28

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, as assignee and subrogee, | ) ) ) ) ) | CIVIL ACTION NO.: 1:18-cv-03701-ELR |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| PEGATRON CORPORATION, | ) ) | |
| Defendant. | ) | |

## JOINT PRELIMINARY REPORT AND DISCOVERY PLAN

Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), and Defendant Pegatron Corporation ("Pegatron") jointly and respectfully submit this Joint Preliminary Report and Discovery Plan pursuant to Civil Local Rule 16.2.

**1.      Description of Case:**

(a)      Describe briefly the nature of this action.

National Union alleges that Pegatron provided defective products to Cisco Systems, Inc. ("Insured"), purportedly breaching Pegatron's alleged contractual obligations to Insured and allegedly causing losses to Insured and to National Union as Insured's insurer.  National Union filed a breach of contract and negligent

misrepresentation claim and seeks indemnity pursuant to a Blanket Purchase Agreement (or in the alternative, Insured's standard terms and conditions). Pegatron denies these allegations.

(b)    Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.

<u>National Union's Response:</u>

National Union alleges that pursuant to a Blanket Purchase Agreement ("BPA"),[1] Pegatron sold branded internet and cable equipment, and wireless residential voice and networking gateways (hereinafter collectively referred to as "Equipment") to Insured who then sold the Equipment to its customers. National Union maintains the Equipment, per a Product Supply Addendum and design specifications, was supposed to operate within the 2.4 GHz and 5 GHz frequencies.

In or about January of 2016, one of Insured's customers (hereinafter "Customer") reported an alleged defect in the Equipment, alleging that the Equipment oscillated into the 2.5 GHz spectrum and thus, allegedly violated Federal Communications Commission regulations. Customer demanded that Insured repair or replace the Equipment. Upon receipt of Customer's demand, Insured sought to

---

[1] The agreement was originally executed by Scientific-Atlanta, Inc. ("Scientific-Atlanta") and ASUSTek Computer, Inc. ("ASUSTek"). In 2005, Insured acquired Scientific-Atlanta and succeeded to its rights under the BPA. In 2008, ASUSTek assigned all rights and obligations under the BPA to Unihan Corporation who then assigned its rights and obligations under the BPA to Pegatron.

enforce the BPA and demanded that Pegatron repair or replace the allegedly nonconforming Equipment. National Union alleges that Pegatron denied Insured's demand and refused to repair or replace the nonconforming Equipment and as a result that the Insured incurred costs in excess of $75,000 to repair and replace the nonconforming Equipment and to partially resolve Customer's claim.[2]

Plaintiff issued insurance to Insured. In accordance with the terms of its insurance policy, National Union alleges that it reimbursed Insured for its loss and in exchange for that payment, Insured assigned to Plaintiff the claims against Pegatron. Plaintiff then filed this action against Pegatron alleging claims for breach of contract and negligent misrepresentation.

***Contractual Claims***: National Union alleges that Pegatron owes a duty to reimburse Insured's loss pursuant to two provisions in the BPA.[3] First, National Union alleges that Pegatron's sale of Equipment to Insured is subject to the following express warranty:

> 7.1    Warranties. [Pegatron] hereby represents and warrants that:
>
> 7.1.1  All Equipment shall conform in all material respects to the Specifications and be free from defects in materials and workmanship;

---

[2] Insured continues to incur additional damages.

[3] To the extent that Pegatron contests the applicability and enforceability of the BPA, National Union pursued an alternative claim under Insured's standard terms and conditions which require Pegatron to indemnify Insured for its loss.

> 7.1.2  All Equipment shall function under ordinary
> use in conformance with the Specifications;….

Since Customer alleged that Equipment contained a defect and did not conform to the specifications, National Union alleges that Pegatron must reimburse Insured for amounts incurred to resolve Customer's claim and reimburse damages incurred to replace the defective Equipment.

Second, National Union alleges that Pegatron contractually agreed to certify that all Equipment complied with Federal Communications Commission regulations:

> 18.  Warranty Replacement or Repair.  Equipment delivered hereunder will be manufactured, labeled, certified and will perform in compliance with all applicable laws, regulations, standards and/or codes in effect for the Equipment intended use at the time of delivery.  It shall be [Pegatron]'s responsibility to secure and maintain any and all certifications and/or approvals (including, but not limited to those of the Federal Communications Commission, Underwriter's Laboratories, and the European Union – DE Conformity, Wi-Fi, Wireless Protected Access ("WPA"), ITU, and CCC) ("Covered Regulatory Compliance") required for the Equipment purchased hereunder including Equipment privately labeled for [Insured].  In order to ensure the relevant laws and regulations are satisfactorily met, [Pegatron] agrees to:
>
> > (a) Certify to [Insured] that the Equipment delivered hereunder is in compliance with regulations, laws, standards and/or codes….

Customer alleged that the Equipment oscillated into the 2.5 GHz spectrum in violation of Federal Communications Commission regulations.  Therefore, National

Union alleges, pursuant to its obligations under the BPA, Pegatron must reimburse Insured for amounts incurred to resolve Customer's claim and reimburse damages incurred to replace the allegedly defective Equipment.

***Negligent Misrepresentation Claims***: When supplying the Wireless Devices, National Union alleges that Pegatron represented that the devices (1) conformed to Specifications, including the requirement that they operate on a dual-band of 2.4 GHz and 5 GHz; and (2) conformed to applicable laws and regulations, including Federal Communications Commission's regulations prohibiting interference with others' use of frequencies. Accepting Customers' allegations as true, National Union alleges that Pegatron's representations are untrue in that Customer alleged that the Equipment operated in the 2.5 GHz frequency and violated Federal Communications Commission's regulations.

In reasonable reliance on the alleged representations by Pegatron, National Union alleges that (1) Insured accepted delivery of the Equipment, including Wireless Devices; (2) Pegatron knew or should have known such representations were false at the time they were made to Insured or had no reasonable basis for believing such representations were true; and (3)absent the BPA, Pegatron breached its common law duty to exercise reasonable care in certifying that the Equipment, including Wireless Devices, conformed to the Specifications and applicable laws and regulations.

Pegatron's Response:

National Union's claims are based on an allegedly defective product specifically requested for a certain series of wireless home gateway products. The alleged defect does not interfere with the operation of the wireless home gateway product.

(c)     The legal issues to be tried are as follows:

(1)     Whether Insured and Pegatron entered into a contract regarding the allegedly defective product;

(2)     If Insured and Pegatron entered into a contract regarding the allegedly defective product, whether Pegatron had a warranty obligation under the contract;

(3)     If Insured and Pegatron entered into a contract regarding the allegedly defective product and Pegatron had a warranty obligation under the contract, whether the alleged defect is covered by that warranty obligation;

(4)     If Insured and Pegatron entered into a contract regarding the allegedly defective product and Pegatron had a warranty obligation under the contract, whether Insured waived the warranty obligation;

(5)     If Insured and Pegatron entered into a contract regarding the allegedly defective product, whether Pegatron breached any alleged regulatory certification;

(6)    In the absence of the BPA, whether Insured has applicable standard terms and conditions;

(7)    In the absence of the BPA, whether Pegatron owes a duty of indemnity under Insured's standard terms and conditions;

(8)    Whether Pegatron can assert mitigation of damages as a defense and, if so, whether National Union or Insured mitigated its alleged damages;

(9)    If National Union prevails on its claims against Pegatron, what are National Union's actual damages, if any;

(10)    Whether any of Pegatron's defenses bar or limit National Union's recovery.

The parties request the opportunity to present additional legal issues to the Court for its consideration as this matter progresses.

(d)    The cases listed below (including both style and action number) are:

(1)    Pending Related Cases:

None.

(2)    Previously Adjudicated Related Cases:

None.

**2.    This case is complex because it possesses one or more of the features listed below (please check):**

\_\_\_\_\_ (1) Unusually large number of parties
\_\_\_\_\_ (2) Unusually large number of claims or defenses
\_\_X\_\_ (3) Factual issues are exceptionally complex

   __X__ (4) Greater than normal volume of evidence
   __X__ (5) Extended discovery period is needed
   _____ (6) Problems locating or preserving evidence
   _____ (7) Pending parallel investigations or action by government
   __X__ (8) Multiple use of experts
   __X__ (9) Need for discovery outside United States boundaries
   __X__ (10) Existence of highly technical issues and proof
   _____ (11) Unusually complex discovery of electronically stored information

**3.**    **Counsel:**

The following individually-named attorneys are hereby designated as lead counsel for the parties:

**Plaintiff:**

Scott Schmookler
Gordon & Rees LLP
1 N. Franklin, Suite 800
Chicago, IL  60606
Tel: (312) 980-6779
Fax: (312) 565-6511
sschmookler@grsm.com

**Defendant:**

Lisa N. Collins
Georgia Bar No. 141523
Baker & Hostetler LLP
1170 Peachtree Street NE
Suite 2400
Atlanta, Georgia  30309-7676
Telephone:   (404) 459-0050
Facsimile:    (404) 459-5734
lncollins@bakerlaw.com

**4.**    **Jurisdiction**

Is there any question regarding this Court's jurisdiction?

_____ Yes          __X_ No

If "yes," please attach a statement, not to exceed one page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.

**5.      Parties to This Action:**

(a)      The following persons are necessary parties who have not been joined:

At this time, there are no known necessary parties who have not been joined.

(b)      The following persons are improperly joined as parties:

There are no improperly joined parties.

(c)      The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:

No party's name is inaccurately stated and no necessary portion of any party's

name has been omitted.

(d)      The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of party's name.

**6.      Amendment to the Pleadings:**

Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15.  Further instructions regarding amendments are contained in LR 15.

(a)      List separately any amendments to the pleadings that the parties anticipate will be necessary:

National Union will provide Pegatron with additional information about the

reimbursement of the alleged damages and assignment of claims, so that Pegatron

can confirm that all proper parties were joined.  In the event of a dispute over the scope of National Union's assignment, it may be necessary to amend the pleadings. Otherwise, the parties do not currently anticipate needing to make any amendments to the pleadings.  However, the parties reserve the right to file such amendments as needed in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Court.

(b)    Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.

## 7.    Filing Times for Motions

All motions should be filed as soon as possible.  The local rules set specific filing for some motions.  These times are restated below.

All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later.  Local Rule 7.1A(2).

(a)    **Motions to Compel**:  before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.

(b)    **Summary Judgment Motions**: within thirty days after the close of discovery, unless otherwise permitted by court order.  Local Rule 56.1

(c)    **Other Limited Motions**: Refer to Local Rules 7.2A, 7.2B, and 7.2E, respectively, regarding filing limitations for motions on removal, emergency motions, and motions for reconsideration.

(d)    **Motions Objecting to Expert Testimony**: *Daubert* motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted.  Refer to Local Rule 7.2F.

## 8.    Initial Disclosures:

The parties are required to serve initial disclosures in accordance with Fed. R. Civ. P. 26.  If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection.  NOTE: Your initial disclosures should include electronically stored information. Refer to Fed. R. Civ. P. 26(a)(1)(B).

No party objects to serving initial disclosures.  Given the complexity of the case, the parties request that the scheduling order include an express expert disclosure schedule and that the Court permit the parties to defer expert disclosures until they can define the scope of the disputed issues and complete fact discovery. The parties request an extension of the deadline to submit initial disclosures to January 14, 2019.

## 9. Request for Scheduling Conference:

Does any party request a scheduling conference with the Court?  If so, please state the issues which could be addressed and the position of each party.

The parties do not request a scheduling conference with the Court at this time.

## 10. Discovery Period:

The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.

Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.

Please state below the subjects on which discovery may be needed:

(1) National Union's claims and allegations;

(2) National Union's alleged injuries and damages;

(3) Pegatron's defenses;

(4) The legal issues identified in paragraph 1(c).

If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:

The parties anticipate additional time beyond that allowed by the assigned discovery track, because this case will involve discovery outside the United States and potentially subpoenas to foreign corporations (thereby requiring additional time to request judicial assistance and effect service in those countries, including Taiwan). Accordingly, the parties request fact and expert discovery close on December 2, 2019. The parties further request plaintiff disclose its expert(s) on August 2, 2019, defendant disclose its expert(s) on September 2, 2019, and that plaintiff disclose any rebuttal expert(s) by October 2, 2019.

## 11. Discovery Limitation and Discovery of Electronically Stored Information:

(a)     What changes should be made in limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?

The parties do not request any changes to the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court.

(b)     Is any party seeking discovery of electronically stored information?

__X__ Yes   ____ No

If "yes,"

(1)     The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:

The parties believe that discovery will encompass electronically stored information ("ESI").

(2)     The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:

The parties agree to produce ESI as follows:

(a)     Production of Native Format ESI.

All responsive ESI which are spreadsheets (e.g., Microsoft Excel), databases (e.g., Microsoft Access), or audio/video files (e.g., MP3, WAV, WMV, MOV) shall be produced in native format, except where such files are redacted on privilege grounds.  Responsive spreadsheets produced in Native Format shall be produced with all Metadata contained in or associated with that file to the extent possible consistent with paragraph (b).  Nothing in this protocol shall limit a Party's ability to elect to produce other forms of responsive ESI in Native Format.

(b)     Production of ESI (both Native and Non-Native).

All responsive ESI except that which is produced in Native Format pursuant to paragraph (a) should be produced in single-page TIFF images with corresponding extracted full text and affiliated metadata as identified below. For documents whose Native Format is multimedia, the original native files shall be produced in addition to a TIFF placeholder and fields of metadata. All products will include these additional specifications:

- A load file for images;

- Delimited load files (.dat, .opt) containing a field with the full path and filename to native files produced and the metadata fields identified below (for ESI);

- Document level .txt files for native documents containing extracted full text or OCR text;

- Bates number branding and confidentiality on the face of the image;

- The following fields and metadata to the extent said information is available in the original ESI file (except for the agreed-upon vendor-generated fields related to litigation production):

  o Bates Beg Number

  o Bates End Number

  o Author

- o   Confidentiality

- o   Custodians

- o   Date/Time Created

- o   Date/Time Last Modified

- o   Date/Time Received

- o   Date/Time Sent

- o   Email To

- o   Email From

- o   Email BCC

- o   Email CC

- o   Email Subject

- o   File Extension

- o   Filename

- o   File Size

- o   File Type

- o   Page Count

- o   Bates Beg Attach

- o   Bates End Attach

- o   Native Link

- o   Hash

○ Attach Count

In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.

## 12. Other Orders:

What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?

As mentioned in the parties' response in paragraph 8, the parties seek an order

extending the time for submitting initial disclosures to January 14, 2018.

The parties anticipate submitting an agreed upon Protective Order pursuant to

Fed. R. Civ. P. 26(c) for the Court's consideration.

## 13. Settlement Potential

(a)   Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on <u>December 13, 2018</u>, and that they participated in settlement discussions.  Other persons who participated in the settlement discussions are listed according to party.

**For Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa., as assignee and subrogee:**

Lead Counsel:

<u>/s/ Scott L. Schmookler___</u>
Scott L. Schmookler

Other Participants:  None

**For Defendant Pegatron Corporation:**

Lead Counsel:


<u>/s/ Lisa N. Collins_____</u>

Lisa N. Collins

Other Participants:  James B. Hatten

(b)　　All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:

(_____) A possibility of settlement before discovery
(__X__) A possibility of settlement after discovery
(_____) A possibility of settlement, but a conference with the judge is needed.
(_____) No possibility of settlement

(c)　　Counsel (_____) do or (_____) do not intend to hold additional settlement conferences among themselves prior to the close of discovery. The proposed date of the next settlement conference is _____, 20__.

(d)　　The following specific problems have created a hindrance to settlement of this case.

The parties are not aware of any specific problems creating a hindrance to settlement of this case.

## 14.　　Trial by Magistrate Judge:

Note:  Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.

(a)　　The parties (_____) do consent to having this case tried before a magistrate judge of this Court. A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this _____ day _____, 20___.

(b)　　The parties (__X__) do not consent to having this case tried before a magistrate judge of this Court.

(Signatures on next page.)

Respectfully submitted this 27th day of December, 2018.

**GORDON & REES LLP**

*Counsel for Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa., as assignee and subrogee*

*/s/ Scott L. Schmookler*

Leslie K. Eason
Georgia Bar No. 100186
3455 Peachtree Road, Suite 1500
Atlanta, GA 30326
Tel: (404) 978-7329
Fax: (678) 389-8475
leason@grsm.com

Scott L. Schmookler
1 N. Franklin, Suite 800
Chicago, IL 60606
Tel: (312) 980-6779
Fax: (312) 565-6511
sschmookler@grsm.com

Katherine A. Musbach
1 N. Franklin, Suite 800
Chicago, IL 60606
Tel: (312) 980-6798
Fax: (312) 565-6511
kmusbach@grsm.com

**BAKER & HOSTETLER LLP**

*Counsel for Defendant Pegatron Corporation*

*/s/ Lisa N. Collins*

Lisa N. Collins
Georgia Bar No. 141523
lncollins@bakerlaw.com
James B. Hatten
Georgia Bar No. 963831
jhatten@bakerlaw.com
1170 Peachtree Street NE, Suite 2400
Atlanta, GA  30309-7676
Telephone: 404.459.0050
Facsimile:  404.459.5734

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing JOINT PRELIMINARY REPORT AND DISCOVERY PLAN was electronically filed with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification of such filing to the following attorneys of record pursuant to LR 5-1(A)(3):

Counsel for Plaintiff:

| | | |
|---|---|---|
| Leslie K. Eason | Scott L. Schmookler | Katherine Musbach |
| Gordon & Reese LLP | Gordon & Reese LLP | Gordon & Reese LLP |
| 3455 Peachtree Road, | 1 N. Franklin, Suite 800 | 1 N. Franklin, Suite 800 |
| Suite 1500 | Chicago, IL 60606 | Chicago, IL 60606 |
| Atlanta, GA 30326 | Tel: (312) 980-6779 | Tel: (312) 619-4924 |
| Tel: (404) 978-7329 | Fax: (312) 565-6511 | Fax: (312) 565-6511 |
| Fax: (678) 389-8475 | sschmookler@grsm.com | kmusbach@grsm.com |
| leason@grsm.com | | |

This 27th day of December 2018.

/s/ Lisa N. Collins
Lisa N. Collins

## SCHEDULING ORDER

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified:

_____

_____.

IT IS SO ORDERED, this _____ day of _____, 2019.

_____
The Honorable Eleanor L. Ross,
**UNITED STATES DISTRICT JUDGE**