1  Mark R. Figueiredo, Esq. (SBN 178850)
mrf@structurelaw.com
2  Austin T. Jackson, Esq. (SBN 312698)
ajackson@structurelaw.com
3  STRUCTURE LAW GROUP, LLP
1754 Technology Drive, Suite 135
4  San Jose, California 95110
Telephone: (408) 441-7500
5  Facsimile: (408) 441-7501

6  Attorneys for Non-Parties
Pegatron Corporation and Pegatron USA, Inc.
7

8             UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10  | In re APPLE INC. SECURITIES LITIGATION | CASE NO. 4:19-cv-02033-YGR (JCS) |

11  **PEGATRON CORPORATION AND PEGATRON USA, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBPOENA**
12
13
14  Date:      March 26, 2021
Time:     9:30 a.m.
15  Dept:     Zoom
Judge:    Hon. Joseph C. Spero
16

17              **TABLE OF CONTENTS**

18  I.    INTRODUCTION..................................................................................................... 1

19  II.   RELEVANT FACTS ................................................................................................ 1

20        A.  The Subpoenas And Pegatron Corporation And PGUSA's Response. ....................... 1

21        B.  Pegatron Corporation And PGUSA's Additional Response To Plaintiff. .................... 3

22        C.  Plaintiff's Attempts To Confuse The Court. ............................................................... 4

23        D.  Plaintiff's Failure To Meet And Confer On The Arguments Raised

24        In Its Motion. ............................................................................................................... 4

25        E.  Cost To Produce Documents Sought........................................................................... 5

26  III.  ARGUMENT............................................................................................................ 5

27        A.  Pegatron Corporation Is A Taiwanese Corporation And Not Subject

28        To This Court's Jurisdiction. ....................................................................................... 5

PEGATRON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBPOENA

B.  Even If This Court Has Jurisdiction Over Pegatron Corporation, It Was Nonetheless Improper To Serve PTSI At Its Elk Grove Location On Behalf Of Pegatron Corporation. ................................................. 7

      i.  Plaintiff Improperly Relies On Rule 4 For Its Analysis. ........................ 8

      ii.  Even If The Court Determines That The Rule 4 Analysis Applies, Neither Ms. Guinn, Nor PTSI Is A "General Manager" For Pegatron Corporation. ........................... 10

        a. Ms. Guinn Was Not A General Manager, And It Was Improper To Serve The Subpoena To Pegatron Corporation On Her. ............................... 10

        b. PTSI Is Not A General Manager For Pegatron Corporation. .............. 11

      iii.  Even If The Court Determines Both That Pegatron Corporation Can Be Served Via PTSI, Plaintiff Improperly Served The Subpoena At PTSI's Elk Grove Facility. ...................................... 13

C.  PTSI Has Not Been Served With A Subpoena So There Are No Grounds To Compel It To Produce Documents. ........................................... 13

D.  Plaintiff's Argument That Service Of The Subpoena On Pegatron Corporation Via PGUSA Is Wrong. ................................................. 14

E.  PGUSA Does Not Have "Control" Over The Documents Sought. ........................... 14

F.  The Subpoena Requests Are Overbroad And Unduly Burdensome. ......................... 15

G.  If The Court Is Inclined To Compel Pegatron Corporation Or PGUSA To Produce The Documents Sought—Which It Should Not— Then The Plaintiff Should Bear The Expense. ............................................... 17

IV.  CONCLUSION .............................................................................. 18

PEGATRON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBPOENA

# TABLE OF CONTENTS

**Cases**

*Calcor Space Facility, Inc v. Superior Court*, 53 Cal. App. 4th 216 (1997) ............................... 17

*Cascade Yarns, Inc. v. Knitting Fever, Inc.* (1st Cir. 2014) 755 F3d 55 .................................... 16

*Daimler AG v. Bauman* (2014) 571 U.S. 117 ............................................................................... 6

*Doe v. Hersemann*, supra, 155 FRD at 630 ................................................................................... 9

*F.T.C. v. Compagnie De Saint-Gobain-Pont-a-Mousson*(D.C. Cir. 1980) 636 F.2d 1311 .......... 9

*Fujikura Ltd. V. Finisar Corporation* (N.D. Cal., Oct. 5, 2015 No.
15MC801110HRLJSC) 2015 WL 5782351.) ................................................................................ 9

*Halo Elecs., Inc. v. Bel Fuse Inc.,* (2010 WL 2605195 (N.D. Cal. June 28, 2010) ..................... 8

*In re First American Corp.* (SD NY 1998) 184 FRD 234 ........................................................... 18

*Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224 (C.D. Cal. 2008) .. 10,11

*Legal Voice v. Stormans Inc.*, 738 F.3d 1178 (9th Cir. 2013) ............................................... 17,18

*Pokemon Company International, Inc. v. Shopify, Inc.*
(N.D. Cal., Feb. 22, 2017, No. 16-MC-80272-KAW) 2017 WL 697520, at *3 .......................... 6

*Ranza v. Nike, Inc.* (9th Cir. 2015) 793 F.3d 1059 ...................................................................... 6

*U.S. ex rel. Miller* relies on *Yamaha Motor Co., Ltd. V. Super. Ct.,*
194 Cal. App. 4th 174 (2009) ............................................................................. 8,10,11,13

*United States v. Int'l Union of Petroleum & Indus. Workers,*
870 F.2d 1450 (9th Cir.1989) ..................................................................................................... 14

*United States v. McGraw-Hill Cos., Inc.* (CD CA 2014) 302 FRD 53 ...................................... 18

*Viasat, Inc. v. Space Systems/Loral, LLC S.D. Cal.,* June 30 214, No.
13-CV-2074-H (WVG) 2014 WL 12577593 ................................................................................ 9

*XTO Energy, Inc. v. ATD, LLC* (D NM 2016)2016 WL 1730171, *17-20 ................................ 16

*Yamaha Motor Co., Ltd. V. Super. Ct.,* 174 Cal. App. 4th 264 (2009) ......................................... 8

**Statutes**

California Corporation Code § 2110 ................................................................................. 8,11,13

CCP § 416.10 .............................................................................................................................. 8,11

PEGATRON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBPOENA

CCP § 416.10(b) ........................................................................................ 8

FRCP 26(b)(2) ..................................................................................... 15,16

FRCP 4 ................................................................................... 3,7,8,9,10,14

FRCP 4(e)(2) ........................................................................................... 9

FRCP 45 ................................................................................. 3,7,8,9,10,14

FRCP 45(a)(1)(A)(iii) ............................................................................. 14

FRCP 45(b)(1) ...................................................................................... 9,10

FRCP 45(c) ............................................................................................... 9

FRCP 45(d)(1) ....................................................................................... 15

FRCP 45(d)(2)(B)(ii) .............................................................................. 17

PEGATRON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBPOENA

Non-Parties Pegatron Corporation and Pegatron USA, Inc. ("PGUSA") respectfully submit this brief in Opposition to Plaintiff's Motion to Compel Subpoena.

## I.    INTRODUCTION

Pegatron Corporation is a Taiwanese electronics manufacturing company head quartered in Taipei, Taiwan. PGUSA is a domestic subsidiary of Pegatron Corporation, which is in the business of providing technical support and business coordination to existing customers. The Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund ("Plaintiff") has improperly served subpoenas on Pegatron Corporation and PGUSA. Even if the Court determines that the subpoenas were properly served—which it should not—the requests are nonetheless hopelessly overbroad and unduly burdensome. Pegatron Corporation and PGUSA both timely objected to the improperly served subpoenas resulting in the underlying motion. In the event this Court determines that either Pegatron Corporation or PGUSA should be compelled to produce the documents requested in the subpoenas, Pegatron Corporation and PGUSA respectfully request this Court order Plaintiff bear the cost of producing the documents.

## II.    RELEVANT FACTS

PGUSA is a domestic subsidiary of Pegatron Corporation. (Chen Decl. ¶ 3.) Although Pegatron Corporation's 2019 Annual report describes PGUSA as a "[s]ales and repair service center in North America", this is not the case and has not been the case for a very long time. (Chen Decl. ¶ 4) Rather, PGUSA is in the business of technical support and business coordination to certain existing Pegatron Corporation customers. (*Id.*) In fact, none of PGUSA's employees are working with and have never had any contact with Apple as a Pegatron Corporation client. (*Id.*)

### A.    The Subpoenas And Pegatron Corporation And PGUSA's Response.

In December of 2020, Plaintiff served a subpoena to produce documents on Pegatron Corporation at Pegatron Technology Services, Inc.'s ("PTSI") Elk Grove facility. (Declaration of Austin T. Jackson in Support of Pegatron's Opposition to Plaintiff's Motion to Compel Subpoena ("Jackson Decl.") ¶ 2.) In or around the same time, Plaintiff improperly served a subpoena on the improperly named Pegatron Corporation d/b/a Pegatron USA, Inc. at PGUSA's

PEGATRON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBPOENA

Fremont location. (Jackson Decl. ¶ 3.)

Plaintiff seems to gloss over the requests that are being sought and that is likely attributable to the fact that the requests are hopelessly overbroad, unduly burdensome, and vague. The subpoenas to both parties were identical and sought outrageously broad requests for documents from a period of time extending over an entire year dating back more than three years ago on a company that has over 7,000 employees. (Jackson Decl. ¶¶ 2-3, Exs. A and B.) The subpoenas seek all documents and communications concerning from February 1, 2018 to January 31, 2019 for the following:

> (1) Apple iPhone **volume production plans, forecasts, etc.** including communications **not only between Apple and Pegatron Corporation/PGUSA, but also their suppliers** for components used for the Apple iPhone;
> (2) The analysis, monitoring or tracking of iPhone orders, pre-orders, sales, or upgrades, including comparisons to any prior periods, forecasts or expectations.
> (3) **Economic conditions and consumer spending in Greater China** and its impact on Pegatron and PGUSA's production or assembly of Apple smartphones or smartphones offered by other companies such as **Huawei, Oppo, Vivo, and Xiaomi**;
> (4) Any formal or informal contracts, agreements, or arrangements for production volume or capacity between not only Pegatron Corporation/PGUSA and Apple, but also between Pegatron Corporation/PGUSA **and all of their suppliers**; and
> (5) Communications with any **securities analysts, financial analysts, financial publications, news reporters or journalists** concerning production of or demand for Apple's iPhone.
> (**Emphasis Added**)

On December 29, 2020, Pegatron Corporation and PGUSA's counsel timely served a letter objecting to the service of Pegatron Corporation at PTSI's Elk Grove Facility, as well as improper service on PGUSA. (Jackson Decl. ¶ 4.) Both Pegatron Corporation and PGUSA also objected to these requests on the grounds that (1) the documents sought are not reasonably accessible, (2) the documents or records are obtainable from another source that is less burdensome, expensive or more convenient (i.e. Apple), (3) the burden of producing the records or documents outweigh the likely benefit, (4) the requests use vague and ambiguous terms such as "components", "analysis, monitoring, or tracking", "actual, expected, contingent or stand-by

PEGATRON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBPOENA

production volume or capacity", and "economic conditions and consumer spending." (*Id*.) Pegatron Corporation and PGUSA also objected that the requests sought documents or records that are proprietary, confidential, or trade secrets. (*Id*.) These objections were of serious concern to both Pegatron Corporation and PGUSA because the requests were so broad and sought communications with suppliers that are arguably irrelevant and likely would include confidential information like pricing and other confidential information. (*Id.*)

During the meet and confer process, counsel for Pegatron Corporation and PGUSA reached out to discuss the case with Apple's attorney. (Jackson Decl. ¶ 5.) On this call, Apple's attorney informed counsel for Pegatron Corporation and PGUSA that Plaintiff and Apple are currently in the process of negotiating a relevant time frame in terms of what discovery would be relevant to the underlying dispute. (*Id*.) Put another way, the parties to this action are not even clear as to what time frame is the relevant time frame, but regardless of not knowing what the relevant time frame is, Plaintiff is attempting to require a non-party to produce a years' worth of communications, documents, and work product from three years ago. It would seem logical that the parties to the underlying action first determine what they are looking for and in what time period prior to burdening non-parties to produce what is either irrelevant or can be obtained from a party to the case.

### B. Pegatron Corporation And PGUSA's Additional Response To Plaintiff.

On January 7, 2021 Plaintiff's counsel had a call with Pegatron's attorney to discuss the service of the subpoena on PGUSA. On the call, Plaintiff's counsel stated that he felt service on PGUSA was proper and later sent an email and letter citing caselaw to support his position. (Jackson Decl. ¶ 6.) As will be explained at greater length below, Plaintiff's counsel's reliance on two cases to support proper service on PGUSA was based on a Rule 4 analysis rather than a Rule 45 analysis. On January 19, 2021, in response to Plaintiff's January 8, 2020 letter, counsel for Pegatron Corporation and PGUSA responded to Plaintiff's letter explaining that the case law is clear that Rule 45 applies to the service of subpoenas and it ultimately comes down to whether the foreign owned subsidiary has control over the documents sought. (Jackson Decl. ¶ 7.)

///

### C. Plaintiff's Attempts To Confuse The Court.

In several places throughout the Plaintiffs motion it claims that Pegatron Corporation has told Courts it is actively engaged in business in California. However, Plaintiff is misrepresenting the statements made by Pegatron Corporation in the exhibits cited by Plaintiff. Plaintiff fails to consider that Pegatron consented to jurisdiction for the purposes of those cases alone and does not mean that it is now subject to that jurisdiction for the rest of Pegatron Corporation's existence.

Further, in Plaintiff's footnote 6 it claims that PTSI has no readily ascertainable agent for service of process and that PTSI has, since this dispute arose, updated the information. This is simply not true as the agent for service of process for PTSI has been listed since August 26, 2020. (Jackson Decl. ¶ 8.) Further, in Plaintiff's footnote 7, it makes a similar claim that it was unable to identify the agent for service of process for PTSI, which is not true. (*Id.*)

### D. Plaintiff's Failure To Meet And Confer On The Arguments Raised In Its Motion.

Plaintiff never raised the arguments regarding Pegatron Corporation being served via PTSI and PGUSA during the meet and confer process and thus should not be considered. (Jackson Decl. ¶ 9.) A review of the letters that were exchanged as well as the joint letter filed with this Court will show that this is the first time Plaintiff has made the argument that PTSI, Sabrina Guinn, and PGUSA are "general managers" for Pegatron Corporation. (*Id.*)  In fact, in Plaintiff's footnote to the joint letter filed with this Court, Plaintiff states that it can "draw a connection between Pegatron Corporation and Pegatron USA, and between Pegatron and Apple", but nowhere did they make the argument that there is a connection between Pegatron Corporation and PTSI sufficient to allow service on Pegatron Corporation via PTSI or even that Pegatron Corporation was served via PTSI. (*Id.*) Further to this point, in an email dated January 21, 2021 Plaintiff's counsel informed Pegatron Corporation and PGUSA's counsel that they intended to seek judicial intervention and still maintained that service was proper, but never discussed any of the objections raised in Pegatron Corporation or PGUSA's December 29, 2020 letter. (Jackson Decl. ¶ 10.) Ultimately, any argument that Pegatron Corporation was served via

PEGATRON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBPOENA

PTSI, PGUSA, or Sabrina Guinn has been raised for the first time and should not be considered. Out of an abundance of caution, Pegatron Corporation and PGUSA will nonetheless brief these new arguments, but these new arguments should not be considered by this Court.

### E. Cost To Produce Documents Sought.

In the event the Court determines that (1) it has personal jurisdiction over Pegatron Corporation, (2) that Pegatron Corporation was properly served at PTSI's Elk Grove facility, and (3) the requests are proper and compels Pegatron Corporation or PGUSA to produce the documents pursuant to the subpoenas, the cost would be substantial. The requests seek documents relating to a wide variety of communications and documents over an entire year from three years ago. Based on the wide net cast by Plaintiff, a document review service has quoted a project of this size to cost around $300,000 and $400,000. (Jackson Decl. ¶ 12.) Pegatron Corporation is a large multi-million-dollar company with over 7,000 employees all of whom will have to have their emails and computers searched for responsive documents. (*Id.*) In addition to searching all of the emails and computers, the document review service will then be required to analyze the documents for responsiveness, redact any confidential or privilege information and withhold and privileged documents. Specifically, Pegatron Corporation has been quoted approximately $100,000 for the collection, processing, and storage of the documents. Additionally, the review would be approximately $330,000. (*Id.*)

### III. ARGUMENT

### A. Pegatron Corporation Is A Taiwanese Corporation And Not Subject To This Court's Jurisdiction.

Plaintiff throws several theories on why this Court has jurisdiction over Pegatron Corporation, but none of the arguments are sufficient to amount to this Court having jurisdiction over Pegatron Corporation. Pegatron Corporation maintains that it is a domestic corporation and not subject to the jurisdiction of this Court. Plaintiff attempts to argue that based on PTSI and PGUSA's presence in this state, the Court has jurisdiction over Pegatron Corporation. Plaintiff also attempts to paint a picture that Pegatron Corporation should be subject to jurisdiction because it has consented to jurisdiction in the past.

1    Plaintiff attempts to argue that because some third parties have identified the PTSI Elk

2    Grove facility as Pegatron Corporation then it has some contact with California. However,

3    Plaintiff relies on the facility being labeled as "Pegatron Corporation" by Google Maps and

4    because Apple's 2019 Suppliers List identifies the Elk Grove facility as one of eighteen Pegatron

5    Corporation addresses. What is missing from this analysis is where Pegatron Corporation lists

6    its address and not what other third parties have listed. Ultimately, just because some third parties

7    improperly identify an address belonging to the wrong company does not create jurisdiction.

8    Plaintiff's argument that this Court has jurisdiction over Pegatron Corporation simply

9    because it has subsidiaries in the California is improper. In general, "[t]he existence of a parent-

10   subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a

11   forum state to another for the purpose of establishing personal jurisdiction."  This is because "'[a]

12   basic tenet of American corporate law is that the corporation and its shareholders are distinct

13   entities." *Pokemon Company International, Inc. v. Shopify, Inc.* (N.D. Cal., Feb. 22, 2017, No.

14   16-MC-80272-KAW) 2017 WL 697520, at *3. In order for the Court to impute jurisdiction on

15   the parent company it must find that the subsidiary is an alter ego of the parent company. *Daimler*

16   *AG v. Bauman* (2014) 571 U.S. 117, 134.  To satisfy the alter ego test, a plaintiff "must make out

17   a prima facie case '(1) that there is such unity of interest and ownership that the separate

18   personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate

19   identities] would result in fraud or injustice.'" *Ranza v. Nike, Inc.* (9th Cir. 2015) 793 F.3d 1059,

20   1073.  The "unity of interest and ownership" prong of this test requires "a showing that the parent

21   controls the subsidiary to such a degree as to render the latter the mere instrumentality of the

22   former."  (internal quotation marks omitted). This test envisions pervasive control over the

23   subsidiary, such as when a parent corporation "dictates every facet of the subsidiary's business—

24   from broad policy decisions to routine matters of day-to-day operation." *Id.*  Total ownership and

25   shared management personnel are alone insufficient to establish the requisite level of control. *Id.*

26   Plaintiff has yet to provide sufficient evidence to support an argument that Pegatron

27   Corporation has the requisite pervasive control over PTSI or PGUSA. Here Pegatron Corporation

28   is in the business of product development and manufacturing. PTSI on the other hand is a repair

- 6 -

PEGATRON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBPOENA

facility. PGUSA provides technical support and business coordination to certain existing Pegatron Corporation customers. Although Pegatron Corporation has a relationship with PTSI and PGUSA, Plaintiff has failed to provide sufficient evidence in its moving papers to establish that jurisdiction should be imputed on Pegatron Corporation through PTSI's presence in California. Plaintiff attempts to twist words and claim that PGUSA's staff function is a "liaison between the US customers and Pegatron Corporation making PGUSA its foreign parent's general manager, but Plaintiff has provided no evidence to support this kind of relationship and is nonetheless insufficient to establish that Pegatron Corporation had "pervasive control" over PGUSA. Similarly, there is no evidence to suggest that Pegatron Corporation has "pervasive control" over PTSI. Further, Plaintiff has not provided any evidence or argument to support that viewing Pegatron Corporation, PTSI, and PGUSA as separate entities would result in fraud or injustice. Ultimately, Plaintiff has failed to provide sufficient evidence to support that Pegatron Corporation has sufficient control over PTSI or PGUSA to result in being subject to jurisdiction by this Court.

Plaintiff also attempts to sensationalizes prior cases in hopes of confusing the Court. First, the primary case they rely on is a case from ten years ago. Second, Plaintiff cites multiple times that the defendants in the action make a statement, but Plaintiff fails to consider that Pegatron was only consenting to jurisdiction in those cases based on convenience of the other Defendants. Pegatron Corporation and PGUSA are unaware of, and Plaintiff failed to provide any case law that states that if a corporation has previously consented to jurisdiction then they are subject to the that court's jurisdiction indefinitely.

**B.    Even If This Court Has Jurisdiction Over Pegatron Corporation, It Was Nonetheless Improper To Serve PTSI At Its Elk Grove Location On Behalf Of Pegatron Corporation.**

Even if this Court finds that it has personal jurisdiction over Pegatron Corporation—which it should not—Plaintiff still improperly served Pegatron Corporation at PTSI's Elk Grove facility. Plaintiff argues that by serving PTSI at its Elk Grove facility it has effectuated service on Pegatron Corporation. This argument is wrong. First, Plaintiff's analysis is solely based on Rule 4 service of process, whereas at issue is the service of a subpoena pursuant to Rule 45.

- 7 -

PEGATRON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBPOENA

1  Further, Plaintiff's analysis that PTSI is a general manager is wrong. Lastly, Plaintiff also

2  improperly argues that service at the Elk Grove facility was proper.

3           i.   Plaintiff Improperly Relies On Rule 4 For Its Analysis.

4           Plaintiff improperly relies on caselaw relating to Rule 4 service of process rather than

5  analyzing service of process under Rule 45. Plaintiff for the first time claims that Plaintiff

6  properly served the subpoena on Pegatron Corporation via PTSI. PTSI is a domestic subsidiary

7  owned by Pegatron Corporation. Plaintiff relies on *U.S. ex rel. Miller v. Pub. Warehousing Co.*

8  *KSC*, to argue that service on Pegatron Corporation via PTSI was proper. However, *U.S. ex rel.*

9  *Miller* deals exclusively with service of process pursuant to Rule 4 and not service of a subpoena

10 pursuant to Rule 45. In fact, *U.S. ex rel. Miller* relies on *Yamaha Motor Co., Ltd. V. Super. Ct.,*

11 174 Cal. App. 4th 264 (2009) as a basis for its analysis, but *Yamaha Moto Co., Ltd.* Also only

12 deals with service of process pursuant to Rule 4 and there is no mention of Rule 45 at all. Further,

13 Plaintiff's reliance on *Halo Elecs., Inc. v. Bel Fuse Inc.,* (2010 WL 2605195 (N.D. Cal. June 28,

14 2010), is misplaced because this case again has no discussion whatsoever regarding service of a

15 subpoena pursuant to Rule 45.

16           Plaintiff also improperly relies on California Corporation Code § 2110. Plaintiff cites to

17 CCC §2110 but only provides a small portion of the relevant statute. CCC §2110 provides in

18 pertinent part, "Delivery by hand of a copy of any **process against a foreign corporation**…"

19 (**Emphasis Added**) Service of a subpoena to a foreign non-party corporation is very different

20 than service of "**any process against** a foreign corporation." (**Emphasis Added**) In fact, a

21 review of the notes of decisions for CCC § 2110 has no mention or discussion relating to service

22 of subpoenas let alone service of subpoenas to non-parties. Further, Plaintiff improperly relies

23 on California Code of Civil Procedure ("CCP") Section 416.10(b) as a basis for serving the

24 subpoena on PTSI. However, as with CCC § 2110, Plaintiff fails to fully cite CCP § 416.10(b).

25 CCP § 416.10, provides in pertinent part, "A **summons** may be served on a corporation by

26 delivering a copy of the **summons and the complaint** by any of the following…" (**Emphasis**

27 **Added**) Just as with CCC § 2110, this statute has nothing to do with service of a subpoena on a

28 non-party foreign corporation, but rather deals with service of summons and complaints.

PEGATRON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBPOENA

On the other hand, courts have consistently construed the service requirement of a subpoena pursuant to FRCP 45 more narrowly than service of process pursuant to FRCP 4. (*Fujikura Ltd. V. Finisar Corporation* (N.D. Cal., Oct. 5, 2015 No. 15MC801110HRLJSC) 2015 WL 5782351.) "Significant differences exist between service of process and service of a subpoena deuces tecum on a non-party." *Viasat, Inc. v. Space Systems/Loral, LLC S.D. Cal.,* June 30 214, No. 13-CV-2074-H (WVG) 2014 WL 12577593. The court in *Viasat* continues, "The Court declines to rely on a Rule 4 analysis in the context of service of a subpoena on a non-party foreign corporation." "In any event, the FRCP 4(e)(2) substituted service provisions (leaving copy of complaint at dwelling or serving authorized agent) do *not* apply to subpoenas because Rule 45(b)(1) requires delivery "to the named person …" (*Doe v. Hersemann*, supra, 155 FRD at 630.) In fact, the Advisory Committee Notes to Rule 4 specifically state, "Service of subpoenas is governed by Rule 45, and the service of summonses and complaints are governed by Rule 4."

Further, "the distinction between service of notice and service of compulsory process is a crucial one under principles of both domestic and international law. When an agency serves a party with notice of the pendency of an action, it thereby supplies the recipient with information upon which he may base a decision to act or not. When an agency serves compulsory process upon a third-party witness, regardless of the technique of service employed, it effectively compels that witness to do something and threatens him with sanctions should he choose not to comply." *F.T.C. v. Compagnie De Saint-Gobain-Pont-a-Mousson* (D.C. Cir. 1980) 636 F.2d 1300, 1311 "The distinction between notice and compulsory process, and the implications of that distinction for permissible modes of service, is well illustrated in the context of civil litigation. Federal Rule of Civil Procedure 4, which governs service of process, is primarily concerned with effectuating notice. To that end, the rule provides for a wide range of alternative methods of service, including registered mail, each designed to ensure the receipt of actual notice of the pendency of the action by the defendant. By contrast, Federal Rule 45(c), governing subpoena service, does not permit any form of mail service, nor does it allow service of the subpoena merely by delivery to a witness' dwelling place. Ultimately, the courts have

PEGATRON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBPOENA

consistently held that service of a subpoena pursuant to Rule 45 is much different and has a different analysis than service of process under Rule 4.

Here, Plaintiffs rely solely on Rule 4 to establish that service on PTSI was proper to serve Pegatron. However, that is not the case. Rule 45(b)(1) specifically provides "Serving a subpoena requires delivering a copy to the named person." Here, the named person would be Pegatron Corporation, but Plaintiff failed to serve the subpoena on Pegatron Corporation. Rather, Plaintiff has improperly served the subpoena for Pegatron Corporation on its subsidiary in Elk Grove and is now attempting to justify their service regardless of never previously making the argument.

> ii.   Even If The Court Determines That The Rule 4 Analysis Applies, Neither Ms. Guinn, Nor PTSI Is A "General Manager" For Pegatron Corporation.

Plaintiff improperly argues that it effectuated service on Pegatron Corporation by serving Sabrina Guinn, a "general manager" or alternatively by serving PTSI as a general manager. Although neither case has any discussion of service of a subpoena on a non-party pursuant to Rule 45 and should not be used to analyze service of a subpoena on a non-party, Plaintiff relies on *U.S. ex rel. Miller v. Public Warehouseing Co.* and *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.* for its analysis of whether Ms. Guinn and PTSI are general managers.

> a.   Ms. Guinn Was Not A General Manager, And It Was Improper To Serve The Subpoena To Pegatron Corporation On Her.

Ms. Guinn was not the proper person on whom to serve the subpoena for Pegatron Corporation. Plaintiff relies on *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224, 1226 (C.D. Cal. 2008) where the court stated, A "general manager" under the California statute has been interpreted to "include[ ] any agent of the corporation 'of sufficient character and rank to make it reasonably certain that the **defendant** will be apprised of the service made.'" (**Emphasis Added**)

First, it should be noted that the standard that is being applied is ensuring the **defendant** is made aware of the service and not a foreign non-party served with a subpoena. Plaintiff then continues to argue that Ms. Guinn is a general manager based on her LinkedIn description (which is often auto created by LinkedIn). Plaintiff fails to provide whether they knew this prior to

PEGATRON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBPOENA

1   serving the subpoena on Ms. Guinn or if Plaintiff is now grasping at straws in a last ditch effort

2   to rectify their improper service. This is further evidenced by the fact that Ms. Guinn's name

3   never once came up during the meet and confer process. (See Jackson Decl. ¶¶ 4, 6, 7, 9-12; see

4   also Exs. C-F and H.)

5        Next, Plaintiff also argues that Ms. Guinn was the proper person to serve on behalf of

6   Pegatron Corporation because it was certain that Pegatron Corporation would be apprised of the

7   service of the subpoena evidenced by Pegatron Corporation's response. This is a circular

8   argument that any party that objects would then open themselves up to the argument that any

9   person served was a "general manager" simply because the responding party responded. Plaintiff

10  also argued that it served Pegatron Corporation at the Elk Grove facility through Ms. Guinn

11  because it could not locate an agent for service of process, which is simply not true. (See Jackson

12  Decl. ¶ 8.)

13       Ultimately, if the Court agrees with Plaintiff that CCP 416.10 and *Khachatryan v. Toyota*

14  *Motor Sales, U.S.A., Inc*. should apply to service of a subpoena on a non-party foreign

15  corporation—which it should not—Ms. Guinn is not a "general manager." Ms. Guinn happened

16  to be there and Plaintiff happened to serve the subpoena for Pegatron Corporation on her, but

17  she clearly is not a "general manager" and it is highly unlikely Plaintiff researched her prior to

18  service and is now grasping at straws trying to rectify their improper service.

19              b.   PTSI Is Not A General Manager For Pegatron Corporation.

20       Plaintiff relies on CCC § 2110 and *U.S. ex rel Miller*, both of which deal with the service

21  of process and not service of subpoenas to foreign non-parties, as its basis for arguing that PTSI

22  is a "general manager" of Pegatron Corporation and thus was appropriate to serve the Pegatron

23  Corporation subpoena on PTSI. CCC § 2110 permits service of process upon a foreign

24  corporation by serving "its general manager" in the state. Pursuant to *U.S. ex rel. Miller*,

25              First, where service was permitted, the parent corporation was
            foreign and otherwise not readily available for service within

26          California. . . . Second, service through a subsidiary as general
            manager requires a sufficiently close connection with the parent.

27          This depends upon the frequency and quality of contact between the
            parent and the subsidiary, the benefits in California that the parent

28          derives from the subsidiary, and the overall likelihood that service

- 11 -

PEGATRON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBPOENA

upon the subsidiary will provide actual notice to the parent.

Service to PTSI on behalf of Pegatron Corporation is flawed from the outset because Plaintiff failed to properly research and identify the agent for service of process and rather served it on an employee at the PTSI facility. Plaintiff relies on the fact that Pegatron Corporation and PTSI have been in a contract with Apple in the past, as well as a joint insurance policy to satisfy the frequency and quality of contact. Plaintiff offers no other evidence to support frequent and quality communication between PTSI and Pegatron. Obviously as the parent company of PTSI there is going to be some communications between PTSI and Pegatron Corporation, but claiming the evidence relied on by Plaintiff falls well short of the frequent and quality communications required.

Next, Plaintiff relies on Exhibits 6 and 7 to their moving papers. Exhibit 6 is a news article about issues the Elk Grove facility was having dialing 911 and is from three years ago. Exhibit 7, appears to be a screen shot of Ms. Guinn's LinkedIn profile. Neither of these exhibits support their claim regarding "providing services on a massive scale." Even more Plaintiff attempts to argue that Pegatron Corporation receives a substantial benefit from its subsidiary providing repair services for what it alleges is 30,000 phones per day. There is no discussion as to the income derived from PTSI or any strategic benefit they received, but rather Plaintiff just draw an unfounded conclusory opinion that because Pegatron Corporation has a subsidiary in California it must be deriving a "substantial benefit." Somehow from the facts presented above, Plaintiff then makes a large jump with no supporting evidence that PTSI, from its California location, "acts a liaison between US customers and Pegatron Corporation." There is no evidence to support that PTSI is a liaison for Pegatron Corporation. Lastly, Plaintiff has failed to provide any argument or evidence to support that service to PTSI at its Elk Grove facility would result in actual notice to Pegatron Corporation beyond "well they responded." Simply responding does not satisfy the prong requiring service to result in actual notice, especially given that Pegatron Corporation had no other option but to respond or risk being held in contempt of court.

Ultimately, Plaintiff has realized that it has improperly served Pegatron Corporation at PTSI's Elk Grove facility and is now attempting to gin up arguments to support its decision.

PEGATRON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBPOENA

Even if the Court were to agree that CCC § 2110 and *U.S. ex rel. Miller* are relevant to the analysis of service of a subpoena on a non-party foreign company—which it should not— Plaintiff has failed to provide sufficient evidence and arguments to prove that PTSI is a "general manager."

        iii.    <u>Even If The Court Determines Both That Pegatron Corporation Can Be Served Via PTSI, Plaintiff Improperly Served The Subpoena At PTSI's Elk Grove Facility.</u>

Plaintiff admitted to serving the subpoena for Pegatron Corporation on an employee at PTSI's Elk Grove facility rather than to its registered agent for service of process, which is easily accessible through a search on the secretary of state website. This is akin to walking into a Porsche dealership in California and serving a non-party subpoena for Volkswagen Group (Porsche's foreign parent company) on the branch manager and arguing that because Volkswagen Group responded the subpoena was properly served. Agents for service of process exist for a reason and PTSI has had a registered agent for service of process for the relevant times. If a company can be served in this manner, then what is the point for having an agent for service of process. Here, there was a clear agent for service of process and Plaintiff disregarded or failed to do a diligent search for the agent for service of process and decided instead to simply serve it at PTSI's facility. Plaintiff is again reeling from the improper service and trying to justify why they did not properly serve the agent for service of process as required.

**C.     PTSI Has Not Been Served With A Subpoena So There Are No Grounds To Compel It To Produce Documents.**

Plaintiff improperly argues that if Pegatron Corporation is not subject to this Court's jurisdiction PTSI should nonetheless be required to produce documents within its custody, care, or control. Plaintiff fails to explain why PTSI should be compelled to do anything considering it has not been served with a subpoena to produce documents. The subpoena that was improperly served at PTSI's Elk Grove facility was for Pegatron Corporation. The subpoena served on PGUSA was for PGUSA (improperly named Pegatron Corporation d/b/a Pegatron USA, Inc.). Considering PTSI has not been served with a subpoena, has not had an opportunity to respond to a subpoena, and is not involved in this Opposition, there are no grounds to compel PTSI to

PEGATRON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBPOENA

produce any documents and thus any argument that it should have to produce any documents within it care, custody, or control fails.

### D. Plaintiff's Argument That Service Of The Subpoena On Pegatron Corporation Via PGUSA Is Wrong.

Plaintiff improperly argues that it properly served Pegatron Corporation through PGUSA. This argue fails from the outset. First, the subpoena that was served on PGUSA was served on Pegatron Corporation d/b/a Pegatron USA, Inc. As an initial point, this is improperly named because PGUSA is its own company and that was pointed out to Plaintiff's counsel in the initial letters. Second, Plaintiff never served Pegatron Corporation via PGUSA because they served PGUSA (improperly named Pegatron Corporation d/b/a Pegatron USA, Inc.). Lastly, and as noted above, it is improper to simply serve a subsidiary on behalf of its parent corporation under Rule 45. Even if the Court determines that using the Rule 4 analysis is proper, Plaintiff nonetheless did not serve PGUSA on behalf of Pegatron Corporation and thus PGUSA can only be compelled to produce documents that are in its custody, care, or control.

Ultimately, service of a subpoena on Pegatron Corporation d/b/a Pegatron USA, Inc. is not a subpoena for Pegatron Corporation, and it is nonetheless improper to serve a foreign corporation via its subsidiary under Rule 45.

### E. PGUSA Does Not Have "Control" Over The Documents Sought.

PGUSA does not have a legal right to the documents sought and thus do not have legal control over the documents. Federal Rule of Civil Procedure 45 governs discovery of non-parties by subpoena. The rule provides that a party may command a non-party to testify at a deposition and "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." FRCP Rule 45(a)(1)(A)(iii). Control is defined as "the legal right to obtain required documents on demand." *United States v. Int'l Union of Petroleum & Indus. Workers,* 870 F.2d 1450, 1452 (9th Cir.1989). "The **party seeking production** of the documents ... **bears the burden of proving that the opposing party has such control**." *Id.* Non-party domestic subsidiary corporation was not obligated to obtain documents from its foreign parent corporation in response to a subpoena duces tecum served on the non-party subsidiary in

- 14 -

a patent infringement action in the United States; the relationship between the corporate entities was not the type that would justify disregarding the discrete, corporate identity of the subsidiary, and an alternative existed for proceeding directly against the foreign corporation for the information. *Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, D.Del.2005, 233 F.R.D. 143.

Plaintiff has failed to carry the burden that PGUSA is control of the documents sought. Its sole argument on PGUSA's control of documents is based on PGUSA servicing existing Pegatron Corporation clients. However, PGUSA has sworn under oath that although it provides services to existing customers none of the employees have had any interaction with Apple as a client of Pegatron Corporation. Considering Apple is the defendant in this case, the fact that PGUSA is working on all other clients of Pegatron Corporation to the exclusion of Apple is sufficient evidence to prove that PGUSA does not have control over the documents requested. PGUSA also testified under the penalty of perjury that it has no legal right to the documents that are being requested.

Ultimately, PGUSA does not have legal control over the documents requested in the subpoena and thus cannot be compelled to produce anything.

**F.      The Subpoena Requests Are Overbroad And Unduly Burdensome.**

Plaintiff has not taken the necessary steps to avoid imposing undue burden or expense. Pursuant to Rule 45(d)(1) "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earning and reasonable attorney's fees—on a party or attorney who fails to comply." Further, as will be discussed at greater length below Plaintiff has failed to take the necessary steps to avoid issuing and serving a subpoena that is overly broad and unduly burdensome. Discovery may be refused where the *burden* of the proposed discovery *outweighs its likely benefits*, taking into account such factors as the needs of the case, the parties' resources, the importance of the issues at stake, and the role of proposed discovery in resolving those rules. FRCP 26(b)(2); *Cascade Yarns, Inc. v. Knitting Fever,*

- 15 -

*Inc.* (1st Cir. 2014) 755 F3d 55, 58-59—court applied proportionality limitations in FRCP 26(b)(2) and considered third party had no stake in litigation; *XTO Energy, Inc. v. ATD, LLC* (D NM 2016) 2016 WL 1730171, *17-20, 27-31—undue burden warranted quashing subpoena seeking opposing counsel's documents.

As an initial point, Plaintiff attempts to confuse the Court regarding the meet and confer process. Pegatron Corporation and PGUSA would have been more than happy to discuss the objections for being overbroad and unduly burdensome. It was raised in the Non-Parties' initial letter, but subsequent calls and letters were focused on whether PGUSA was the proper party to subpoena and whether PGUSA had legal control of the documents. Plaintiff's claim that Pegatron Corporation and PGUSA were unwilling to discuss these objections is a flat out lie and is unsubstantiated. (See Jackson Decl. ¶¶ 4, 6, 7, 9-12; see also Exs. C-F and H.)

Here, the subpoenas request documents from over 7,000 employees spanning an entire year relating to not just Apple information, but analysis, trends, forecasts and communications relating to other non-relevant smart phone companies. The burden on the proposed discovery greatly outweighs its likely benefit considering the bulk of the documents requested can be recovered from Apple, which is a party to this case. Further, this is no limitation on who at Pegatron Corporation should be subjected to searching and the requests seek documents that are unnecessary to establish the claims by Plaintiff; specifically, communications with suppliers, the economic conditions and consumer spending in Greater China, and the production and manufacturing of irrelevant companies. Plaintiff has yet to provide sufficient grounds for such a broad and burdensome search of a company as large as Pegatron Corporation.

The parties to the underlying action are currently in a dispute as to when the relevant time period should be. As discussed above an attorney for Pegatron Corporation and PGUSA spoke with an attorney for Apple and was informed that the parties are currently negotiating a relevant time period for discovery purposes. It would be unjust and premature to require a non-party to undertake such a large discovery process when the parties to this action have not yet determined the relevant time frame for the discovery in this case.

Lastly, the documents sought by the moving party can be obtained from a party to the

action rather than through great expense to a non-party. In *Calcor Space Facility, Inc v. Superior Court*, 53 Cal. App. 4th 216, 224-225 (1997), the court provided, "[a]s between parties to litigation and non-parties, the burden of discovery should be placed on the latter only if the former does not possess the material sought to be discovered."

The communications Plaintiff is seeking would obviously be discoverable through Apple, a party to the action. Additionally, any agreements or other pertinent information relating to ordering and manufacturing of the iPhone would also be in the possession, custody, and control of Apple as well. Plaintiff provides no argument as to why it would it should not have to first seek the documents from a party to the action prior burdening a foreign non-party. Plaintiff also provides no argument as to why it needs the additional non-relevant information relating to the economics of China, Pegatron Corporation's communications with suppliers, or information relating to non-relevant companies when it would appear, they can get everything they need from Apple. Plaintiff is unsure whether Apple will produce all of the relevant documents and is thus burdening non-parties to potentially fill in the gaps. It would be highly improper to require a foreign non-party to produce documents to such over broad and unduly burdensome requests simply because Plaintiff is unsure that Apple will not produce all of the relevant documents when there are mechanisms in place to ensure production.

G.   **If The Court Is Inclined To Compel Pegatron Corporation Or PGUSA To Produce The Documents Sought—Which It Should Not—Then The Plaintiff Should Bear The Expense.**

The Ninth Circuit has instructed that cost-shifting (that may include reasonable attorneys' fees) is *mandatory* if a non-party has or is expected to incur "significant expense" in responding to a subpoena. *See Legal Voice v. Stormans Inc.*, 738 F.3d 1178 (9th Cir. 2013). Pegatron's expenses in responding to plaintiffs' document subpoena will be significant—and greater than the $20,000 amount that the Ninth Circuit had "no trouble concluding" was "significant" subject to the mandatory fee shifting rule applicable in the Ninth Circuit under *Legal Voice*.

Any order to compel production "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." FRCP Rule 45(d)(2)(B)(ii) Thus, the party benefited by the discovery may be ordered to pay all or part of the legal fees or other

expenses reasonably incurred by a non-party in complying with a subpoena to produce documents or other materials. *Legal Voice v. Stormans, Inc.* (9th Cir. 2013) 738 F3d 1178, 1184-1185—rule requires court to shift non-party's compliance costs if significant; *In re First American Corp.* (SD NY 1998) 184 FRD 234, 240 Presumably, attorney fees, the value of employee or consultant time needed to search for responsive material, and copying charges can be shifted to the party who served the subpoena. *United States v. McGraw-Hill Cos., Inc.* (CD CA 2014) 302 FRD 532, 536.

Here, the cost of undertaking such a large discovery request would be between $300,000 and $400,000. (See Jackson Decl. ¶ 12.) This high dollar amount should not be surprising given Pegatron Corporation employs over 7,000 people and the requests are seeking documents spanning an entire year from three years ago. Attached to Jackson Decl. is a breakdown of how Fronteo determined the estimate to perform the search.

Ultimately, the cost of undertaking this massive discovery project is much greater than the $20,000 from the *Legal Voice* case where the Ninth Circuit had "no trouble concluding" was "significant" and subject to mandatory fee shifting.

## IV.   CONCLUSION

Based on the foregoing, Pegatron Corporation and PGUSA respectfully requests the Court deny Plaintiff's motion to compel. Alternatively, if the Court is inclined to grant Plaintiff's motion to compel, Pegatron Corporation and PGUSA respectfully request that this Court order that Plaintiff is responsible for the fees and costs associated with undertaking the discovery process.

Date:  March 10, 2021                              Respectfully submitted,


By:   /s/ Austin T. Jackson
    Mark R. Figueiredo, Esq.
    *mrf@structurelaw.com*
    Austin T. Jackson, Esq.
    *ajackson@structurelaw.com*
    STRUCTURE LAW GROUP, LLP
    1754 Technology Drive, Suite 135

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

San Jose, California 95110
Telephone: (408) 441-7500
Facsimile: (408) 441-7501
Attorneys for Non-Parties
Pegatron Technology Service, Inc
and Pegatron USA, Inc.

PEGATRON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBPOENA