1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  SHAWN A. WILLIAMS (213113)
   DANIEL J. PFEFFERBAUM (248631)
3  JOHN H. GEORGE (292332)
   KENNETH J. BLACK (291871)
4  HADIYA K. DESHMUKH (328118)
   Post Montgomery Center
5  One Montgomery Street, Suite 1800
   San Francisco, CA  94104
6  Telephone:  415/288-4545
   415/288-4534 (fax)
7  shawnw@rgrdlaw.com
   dpfefferbaum@rgrdlaw.com
8  jgeorgegrdlaw.com
   kennyb@rgrdlaw.com
9  hdeshmukh@rgrdlaw.com
         – and –
10 MARK SOLOMON (151949)
   TOR GRONBORG (179109)
11 655 West Broadway, Suite 1900
   San Diego, CA  92101
12 Telephone:  619/231-1058
   619/231-7423 (fax)
13 marks@rgrdlaw.com
   torg@rgrdlaw.com
14
   Lead Counsel for Lead Plaintiff
15
   [Additional counsel appear on signature page.]
16
                    UNITED STATES DISTRICT COURT
17
                   NORTHERN DISTRICT OF CALIFORNIA
18
                           OAKLAND DIVISION
19

| 20 | In re APPLE INC. SECURITIES LITIGATION | ) ) ) | Case No. 4:19-cv-02033-YGR |
|---|---|---|---|
| 21 | | ) | CLASS ACTION |
| 22 | This Document Relates To: | ) ) | REPLY IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO COMPEL |
| 23 | ALL ACTIONS. | ) ) ) | COMPLIANCE WITH SUBPOENA *DUCES TECUM* TO PEGATRON CORPORATION |

24                                            DATE:      March 26, 2021
                                             TIME:      9:30 a.m.
25                                            CTRM:      F, 15th Floor
                                             JUDGE:     Hon. Joseph C. Spero
26

27

28

4829-8087-5489.v1

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    ARGUMENT ........................................................................................................2

       A.    Plaintiff Properly Served Pegatron Co. .......................................................2

             1.    Pegatron Co. Has Represented that Jurisdiction Is Proper in the
                   Northern District ................................................................................3

             2.    Apple Lists Pegatron Co. as Located in Elk Grove .................................3

             3.    Pegatron's Employees Say They Are Employed By Pegatron Co.
                   in California ......................................................................................4

             4.    Pegatron Co. Operates the Elk Grove Facility ...........................................4

             5.    Service at the Elk Grove Facility Was Proper Because It Was
                   Reasonable to Believe Pegatron Co. Operates There ...............................5

       B.    Alternatively, Plaintiff Properly Served Pegatron Co. Via its U.S.-Based
             Subsidiaries ..............................................................................................6

             1.    Service of a Subpoena Under Rule 45 Follows the Same Standard
                   as Under Rule 4 .................................................................................7

             2.    Service on Pegatron Co. Via Its General Manager and Wholly
                   Owned Subsidiaries Was Proper ..........................................................8

                   a.    Plaintiff Properly Served Pegatron Co. Via Pegatron USA.............8

                   b.    Plaintiff Properly Served Pegatron Co. Via PTSI.........................9

III.   PEGATRON'S REMAINING ARGUMENTS CONCERNING BURDEN AND
       COSTS ARE PREMATURE AND FAIL BECAUSE THEY ARE
       CONCLUSORY AND IMPROPER ........................................................................10

       A.    Plaintiff's Subpoena is Not Overly Burdensome ........................................11

       B.    Pegatron's Request for an *A Priori* Order to Shift Costs Is Improper and
             Unwarranted .............................................................................................12

IV.    CONCLUSION ...................................................................................................15

1

## TABLE OF AUTHORITIES

2

Page

3

**CASES**

4

5

*Apple, Inc. v. Samsung Elecs. Co. Ltd.*,
    2013 WL 1942163 (N.D. Cal. May 9, 2013) .................................................................6

6

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*,
    262 F.R.D. 293 (S.D.N.Y. 2009) ...................................................................................7

7

8

*Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.*,
    319 F.R.D. 277 (N.D. Cal. 2017)......................................................................12, 13, 14

9

*Cardinali v. Plusfour, Inc.*,
    2019 WL 3456630 (D. Nev. June 20, 2019)...............................................................11

10

11

*F.T.C. v. Compagnie De Saint-Gobain-Pont-a-Mousson*,
    636 F.2d 1300 (D.C. Cir. 1980) ....................................................................................8

12

*Halo Elecs. Inc. v. Bel Fuse Inc.*,
    2010 WL 2605195 (N.D. Cal. June 28, 2010) ......................................................5, 6, 8

13

14

*Hatamian v. Advanced Micro Devices, Inc.*,
    2015 WL 7180662 (N.D. Cal. Nov. 16, 2015) ...........................................................12

15

16

*In re Jee*,
    104 B.R. 289 (Bankr. C.D. Cal. 1989)......................................................................2, 7

17

18

*In re: Lithium Ion Batteries Antitrust Litig.*,
    No. 4:13-md-02420-YGR (N.D. Cal.) .......................................................................7, 9

19

*In re Remec Sec. Litig.*,
    2008 U.S. Dist. LEXIS 135208 (S.D. Cal. Oct. 24, 2008) ......................................11

20

21

*In re Seagate Tech. II Sec. Litig.*,
    1993 WL 293008 (N.D. Cal. June 10, 1993) ............................................................11

22

23

*In re Subpoena Duces Tecum to Dunhuang Grp.*,
    2019 WL 2150947 (E.D. Mich. May 17, 2019)..............................................2, 3, 5, 7

24

*In re Subpoenas to Intel Corp.*,
    2018 WL 1035794 (N.D. Cal. Feb. 23, 2018) ...........................................................12

25

26

*In re Toyota Motor Corp. Sec. Litig.*,
    2012 U.S. Dist. LEXIS 124438 (C.D. Cal. Mar. 12, 2012) ....................................12

27

28

**Page**

*Lang Van, Inc. v. VNG Corp.*,
669 F. App'x 479 (9th Cir. 2016) ........................................................................1

*Laukat v. Abb, Inc.*,
2020 U.S. Dist. LEXIS 107753 (C.D. Cal. Feb. 20, 2020)...................................8, 9

*Legal Voice v. Stormans Inc.*,
738 F.3d 1178 (9th Cir. 2013) ............................................................................13

*Mattel, Inc. v. MGA Ent., Inc.*,
2010 WL 11464002 (C.D. Cal. Nov. 1, 2010) ......................................................7

*MGA Ent., Inc. v. Nat'l Prods.*,
2011 U.S. Dist. LEXIS 161044 (C.D. Cal. Dec. 20, 2011) ...................................7

*Mount Hope Church v. Bash Back!*,
705 F.3d 418 (9th Cir. 2012) ..............................................................................11

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*,
2009 WL 4258550 (N.D. Cal. Nov. 24, 2009) ...................................................2, 7

*NML Cap. LTD. v. Republic of Arg.*,
2014 U.S. Dist. LEXIS 110625 (D. Nev. Aug. 11, 2014) ....................................3

*Paisley Park Enters., Inc. v. Boxill*,
2019 WL 1036059 (D. Minn. Mar. 5, 2019) .......................................................7

*Sanchez Y Martin, S.A. de C.V. v. Dos Amgios, Inc.*,
2018 WL 2387580 (S.D. Cal. May 24, 2018)....................................................2, 7

*Shasta Linen Supply, Inc. v. Applied Underwriters Inc.*,
2018 WL 2981827 (E.D. Cal. June 14, 2018) ....................................................13

*Steward Health Care Sys. LLC v. Blue Cross & Blue Shield of Rhode Island*,
2016 WL 8716426 (E.D. Pa. Nov. 4, 2016) ........................................................14

*U.S. ex rel. Miller v. Pub. Warehousing Co. KSC*,
636 F. App'x 947 (9th Cir. 2016) ......................................................................6, 7

*United States v. McGraw-Hill Cos., Inc.*,
302 F.R.D. 532 (C.D. Cal. 2014).........................................................................12

*Valcor Eng'g Corp. v. Parker Hannifin Corp.*,
2018 WL 3956732 (C.D. Cal. July 12, 2018) ..................................................13, 14

**Page**

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    2008 WL 3876142 (N.D. Cal. Aug. 18, 2008) ......................................................12

*W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*,
    2014 WL 1257762 (D. Colo. Mar. 27, 2014) ......................................................11

*Xun v. Daimler AG*,
    2020 U.S. Dist. LEXIS 224600 (C.D. Cal. Sept. 3, 2020).......................................10

**STATUTES, RULES AND REGULATIONS**

Cal. Code of Civ. P. §416.10(b)..............................................................5, 6, 10

Federal Rule of Civil Procedure
    Rule 4................................................................................................7, 8
    Rule 4(h) ...........................................................................................2, 7
    Rule 45 ........................................................................................... *passim*

## I.    INTRODUCTION

Pegatron has told multiple federal courts that its parent company, Pegatron Co., operates in California, including in this District.  Apple lists Pegatron Co. as operating in California.  Google lists Pegatron Co. as operating in California.   And, employees at those California locations represent that they work for Pegatron Co.  *See* MTC at 8-10.[1]  Both common sense and the law point firmly to California as one of its places of business.  Plaintiff's Motion demonstrates with evidence, that service of Plaintiff's subpoena on Pegatron Co. was proper under Federal Rule of Civil Procedure 45.  As demonstrated by its inability to rebut any of these arguments, Pegatron's blanket refusal to accept service or comply with the subpoena – whether served directly on Pegatron Co. or via its subsidiaries – is groundless.

The Opposition[2] offers facially baseless assertions, for example, outside counsel's claim that Pegatron's own annual reports are (and have long been) false and that rogue employees or LinkedIn algorithms have conspired to improperly assign employment to Pegatron Co.  But these arguments revolve around Pegatron's own operations and employees.  If Pegatron had documents or evidence to refute Plaintiff's arguments, it could have presented them to the Court.  It could have demonstrated who operates at the Elk Grove facility or contradicted the information obtained from Apple, Google or LinkedIn about its own operations and employees.  Instead, the Opposition resorts to wild speculation and alternative explanations.[3]

Even the evidence Pegatron does submit is consistent with Plaintiff's position, for example, that Pegatron USA's staff function as a liaison between United States customers and Pegatron Co.

---

[1]   Lead Plaintiff's Notice of Motion and Motion to Compel Compliance with Subpoena *Duces Tecum* to Pegatron Corporation, Memorandum of Points and Authorities in Support Thereof (ECF No. 141) (the "Motion" or "MTC").  All terms not defined herein have the same meaning as in the Motion.

[2]   Pegatron Corporation and Pegatron USA, Inc.'s Opposition to Plaintiff's Motion to Compel Subpoena (ECF No. 144) ("Opposition" or "Opp.").

[3]   To the extent the Court believes that the Motion raises any issues that are not yet ripe and cannot be resolved at this stage in Plaintiff's favor, such as jurisdictional questions, Plaintiff hereby requests jurisdictional or other appropriate discovery as a form of relief.  *See Lang Van, Inc. v. VNG Corp.*, 669 F. App'x 479, 480 (9th Cir. 2016) (limited jurisdictional discovery permitted where connections to California contested).

MTC at 12.   The Chen Declaration (ECF No. 144-11) ("Chen Decl."), submitted with the Opposition, confirms its accuracy: "PGUSA is in the business of providing technical support and business coordination to certain existing Pegatron Corporation customers."   Chen Decl., ¶4.

Pegatron is also wrong on the law.   It ignores the fact that courts frequently read service under Rule 4 and 45 together.   *E.g.*, *contrast* MTC at 7, 12 (contrasting the S.D. Cal. cases *Viasat* and *Sanchez*), *with* Opp. at 9.   In fact, this Court has interpreted them as the same: "Under Federal Rule of Civil Procedure 4(h) ***and 45(b)***, a subpoena directed to a corporation . . . may be served by delivering a copy to an [appropriate] agent."   *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 2009 WL 4258550, at *2 (N.D. Cal. Nov. 24, 2009).[4]

Clearly recognizing that its efforts to dodge service will be short-lived, Pegatron instead shifts gears, claiming that the subpoena is overbroad and unduly burdensome.   But its arguments on these points are brand new to Plaintiff.   Pegatron previously claimed it was immune from service and thus its new representations of exorbitant costs were never offered or tested in the meet and confer process.   Nonetheless, as set forth herein, Pegatron's objections are the type of generic assertions of non-parties routinely rejected by courts, and the same should occur here.

Plaintiff made a good faith effort to serve Pegatron Co., through multiple avenues at its operations in California.   Plaintiff has provided ample evidence of proper service, none of which Pegatron disputes.   For these reasons, Plaintiff respectfully requests the Court grant its Motion.

## II.   ARGUMENT

Plaintiff has properly served Pegatron Co. in at least two ways: by serving Pegatron Co. directly at its place of business in Elk Grove; and by serving Pegatron Co. via its subsidiaries, Pegatron USA and/or PTSI, the latter of which is also present at the Elk Grove facility.

### A.   Plaintiff Properly Served Pegatron Co.

The test for service on a foreign corporation is straightforward: A foreign "corporation is amenable to service," including "'a subpoena *duces tecum* . . . pursuant to Rule 45,'" "in any forum within which the corporation has sufficient minimum contacts."   *In re Jee*, 104 B.R. 289, 293

---

[4]    All citations and footnotes omitted and emphasis added unless otherwise indicated.

1  (Bankr. C.D. Cal. 1989).  While the Opposition argues Pegatron Co. could be served only at an

2  address it specifies (*see* Opp. at 6), it ignores both the minimum contacts standard and the evidence

3  presented that Pegatron itself describes California as its business location.

**1.      Pegatron Co. Has Represented that Jurisdiction Is Proper in the Northern District**

6          Pegatron Co. has affirmatively represented to other federal courts in support of transfer to

7  this venue that Pegatron Co. "has technical support and service facilities in the Northern District

8  of California" and either "reside[s] or conduct[s] business in the Northern District of California."

9  Ex. 2 at 3, 11.[5]  Pegatron's excuse that it merely "consented to jurisdiction for the purposes of

10 those cases alone" misrepresents its own prior filings.  Opp. at 4 (assertion made without citation

11 or other basis).  Pegatron Co. actively sought to transfer venue from the District of Wyoming to

12 the Northern District of California.  Ex. 2.  And whereas PTSI (also a party in that matter) stated

13 that PTSI "consents to the jurisdiction of [the Northern] District for [that] action only," Pegatron

14 Co. affirmatively argued that its presence in this District supported jurisdiction.  *Id.* at 11.

**2.      Apple Lists Pegatron Co. as Located in Elk Grove**

16         On Apple's 2019 Supplier List, Apple identified the Elk Grove facility as a location of its

17 supplier, Pegatron Co.  Ex. 18 at 21.  This fact is further supported by the case brought before

18 Judge Koh, in which PTSI represented that "[t]he repair services [at the Elk Grove facility] were

19 performed by Pegatron [Co.]'s subsidiary, PTSI, pursuant to a Repairs Services Agreement

20 ("RSA") between Customer [*i.e.*, Apple], Pegatron [Co.] and PTSI."  Ex. 1 at 9.  And, Google

21 Maps identifies the Elk Grove location as belonging to Pegatron Co., and also identifies it as a part

22 of (or adjacent to) an Apple campus.  Ex. 13.  This location employs over 1,000 people and repairs

---

[5]   All "Ex. __" citations herein are to the Declaration of Daniel J. Pfefferbaum in Support of Lead Plaintiff's Motion to Compel Compliance with Subpoena *Duces Tecum* to Pegatron Corporation (ECF No. 141-1), unless otherwise indicated.  Pegatron Co. has also initiated a number of state court cases in California when it served its own interests, ultimately resulting in judgements for Pegatron Co. totaling over $57 million.  Exs. 21-22.  Allowing Pegatron Co. to evade jurisdiction now "would allow [the] corporation to exploit the benefits created by the law without shouldering the concomitant burdens and responsibilities imposed by the law."  *NML Cap. LTD. v. Republic of Arg.*, 2014 U.S. Dist. LEXIS 110625, at *34 (D. Nev. Aug. 11, 2014); *see* MTC at 19 (citing California cases).

up to 30,000 iPhones per day.  Ex. 6 at 8; Ex. 7.  Pegatron does not refute these facts with evidence.

Instead, it questions without basis whether Plaintiff's sources are reliable.

### 3. Pegatron's Employees Say They Are Employed By Pegatron Co. in California

Both employees served by Plaintiff on behalf of Pegatron Co. hold themselves out to the public as employed by "Pegatron" or "Pegatron Co." and not any subsidiary.  Exs. 7, 20.  In fact, Sabrina Guinn represents that she: (i) is "[r]esponsible for insuring *Pegatron Corporation a direct supplier of Apple*, appropriately manages all security risks"; (ii) is "responsible for the safety and security of over 1000 employees"; and (iii) is "[r]esponsible for budgeting and billing of $2.5 million dollar security contract for Pegatron/Apple's security needs."  Ex. 7.  Pegatron's response is that this description may have been auto-generated by LinkedIn.  This outlandish speculation notwithstanding, Pegatron does not contest the accuracy of these representations.  *See* Opp. at 10.

### 4. Pegatron Co. Operates the Elk Grove Facility

Pegatron's Opposition disputes proper service on the ground that Pegatron Co. is not operating at the Elk Grove facility.  But all of the *evidence* in the record – Pegatron Co.'s litigation history, Pegatron's own employees, Pegatron's subsidiary PTSI's litigation history, statements by Apple, maps from Google, etc. – is in agreement: Pegatron Co. operates at the Elk Grove facility at which Plaintiff personally served Pegatron Co.  *See supra* §§II.A.1-3.  The evidence shows the subpoena was served on "Pegatron Corporation."  Ex. 12.  An employee of "Pegatron Corporation" accepted service.  *Id.*  She accepted service on behalf of "Pegatron Corporation."  *Id.*  Pegatron admits in litigation to have, at least, a presence that would qualify as minimum contacts with California.  *Id.* at 8-10; Ex. 1.  So too do third parties.  MTC at 8-10.  And PTSI's presence at Elk Grove, a fact the Opposition repeatedly raises, proves nothing concerning Pegatron Co.'s presence there.  Pegatron's own briefing in other cases describes the Elk Grove facility as a *joint* operation between Pegatron Co. and PTSI.  *Id.* at 9; Ex. 1.  Thus, whether Pegatron Co. solely or jointly operates the Elk Grove facility, service on Pegatron Co. there was proper.

In lieu of evidence, the Opposition is based upon makes a series of speculations, not facts: "[1] Ms. Guinn happened to be there and [2] Plaintiff happened to serve the subpoena for Pegatron

1   Corporation on her, but [3] she clearly is not a 'general manager' and [4] it is highly unlikely

2   Plaintiff researched her prior to service." Opp. at 11. These bizarre claims fail for obvious reasons:

3   Ms. Guinn was there because she was a Pegatron employee. Ex. 7. Plaintiff served Pegatron Co.

4   where all the evidence[6] indicated it did business. MTC at 8-10. Though not required, Ms. Guinn

5   would qualify as a general manager of Pegatron Co., because as an employee who oversees more

6   than 1,000 Pegatron Co.'s employees, she was apparently in charge when the subpoena was served

7   upon her. *See infra* at §II.B.2. Plaintiff researched Pegatron Co. and served it where that research

8   indicated the company was. Nothing in the Federal Rules requires Plaintiff to research Ms. Guinn

9   and, in any event, research would only have confirmed that she worked for Pegatron Co. and had

10  apparent authority to accept service. Ex. 7. In short, Pegatron's arguments fail because they are

11  speculative and irrelevant under appropriate authority. *See* Cal. Code of Civ. P. §416.10(b).

12              **5.    Service at the Elk Grove Facility Was Proper Because It Was
                        Reasonable to Believe Pegatron Co. Operates There**

13          Plaintiff made a good faith effort to properly serve Pegatron Co., including by researching

14  Pegatron's legal presence and business activities in the United States and California prior to

15  service.[7] That presence and those activities are apparently extensive, and corroborated by

16  independent sources, including PTSI, Apple and Google. MTC at 6, 8-10. Plaintiff thus had "'a

17  reasonable basis for believing that [the Elk Grove facility] belonged to' Pegatron Co." and service

18  was proper. MTC at 8-10 (quoting *Halo Elecs. Inc. v. Bel Fuse Inc.*, 2010 WL 2605195, at *3)

19  (N.D. Cal. June 28, 2010).

20

21

_____

22  [6]   The Jackson Declaration (ECF No. 144-1) ("Jackson Decl.") claims that Plaintiff was primarily
        interested in discussing service on Pegatron Co. via Pegatron USA. *E.g.*, Jackson Decl., ¶6
23      ("Plaintiff's counsel focused primarily on the position that service on PGUSA was proper").
        Plaintiff equally believed service at the Elk Grove facility was proper, and at no time did
24      Pegatron's counsel explain that the Elk Grove facility did not belong to Pegatron Co. *See*
        Declaration of Daniel J. Pfefferbaum in Support of Reply in Support of Lead Plaintiff's Motion to
25      Compel Compliance with Subpoena *Duces Tecum* to Pegatron Corporation ("Pfefferbaum Decl."),
        ¶2, filed concurrently herewith.

26  [7]   Subsequent to service, Plaintiff also offered to re-serve Pegatron Co. at its preferred location,
        or through its preferred manager or subsidiary, even at the cost to Plaintiff of delay in response.
27      Pegatron rejected this offer on the ground that Pegatron Co. cannot be served anywhere by any
        mechanism. *See* Pfefferbaum Decl., ¶2.
28

1    Nothing more is required for proper service, even if one or more of those apparently reliable

2    sources ultimately were revealed to be in error (not that Pegatron submits any such proof).  MTC

3    at 8-10.  This authority makes sense; because the serving party will not typically possess perfect

4    knowledge of the legal or practical presence an entity has in a jurisdiction, the law requires good

5    faith attempt to serve a party where there is a reasonable basis to think it can be properly served;

6    if service is then ultimately improper, the parties should cooperatively negotiate resolution, rather

7    than stand on technical objections.  *Id.*; *see also Apple, Inc. v. Samsung Elecs. Co. Ltd.*, 2013 WL

8    1942163, at *3 (N.D. Cal. May 9, 2013) ("nonparty must still "participate in transparent and

9    collaborative discovery.  Third-party status does not confer a right to obfuscation or obstinacy.").

10   Pegatron does not respond to this argument or Plaintiff's authority except to dismiss *Halo* on the

11   conclusory basis that it is irrelevant to Rule 45 subpoenas.  Pegatron Co. was properly served.

12   **B.    Alternatively, Plaintiff Properly Served Pegatron Co. Via its U.S.-
            Based Subsidiaries**

13

14   Even if the Court were to find that Pegatron Co. was not present and properly served,

15   California law allows service on a foreign corporation by serving its domestic subsidiary.  *See U.S.

16   ex rel. Miller v. Pub. Warehousing Co. KSC*, 636 F. App'x 947 (9th Cir. 2016).  The Ninth Circuit

17   has looked at two factors when permitting service: (1) "the parent corporation was foreign and

18   otherwise not readily available for service within California"; and (2) "service through a subsidiary

19   as general manager requires a sufficiently close connection with the parent."  *Id.*  The second factor

20   "depends upon the frequency and quality of contact between the parent and the subsidiary, the

21   benefits in California that the parent derives from the subsidiary, and the overall likelihood that

22   service upon the subsidiary will provide actual notice to the parent."  *Id.*

23   Here, Pegatron advocates for the first factor in spite of the evidence developed.  As to the

24   second factor, as described in depth in Plaintiff's Motion, Pegatron Co. derives a substantial benefit

25   from its Elk Grove facility, primarily through its relationship with Apple.  *See* Ex. 1 (repair services

26   agreement between Apple and Pegatron); Ex. 6 at 8 (servicing 30,000 iPhones per day).  It strains

27   credulity to suggest that Pegatron's Elk Grove facility, which is part of an Apple complex –

28

1    Pegatron's most important and lucrative customer and most financially profitable company in the

2    world – does not provide any strategic benefit to Pegatron Co.  *See* Opp. at 12.[8]

3         Even if Pegatron Co. derived no benefit from Apple, Ms. Chen has sworn that Pegatron

4    Co. derive benefits from other customers: "PG USA is in the business of providing technical

5    support and business coordination to certain existing Pegatron Corporation customers.

6    Throughout my 13 years of service PGUSA has operated for technical support and business

7    coordination to certain existing Pegatron Corporation customers."  Chen Decl., ¶4.  Thus, even

8    accepting Pegatron's own arguments, Pegatron Co. derives substantial benefit from its

9    subsidiaries' presence here, and service on them as general managers of Pegatron Co. is proper

10   under California law.  *See U.S. ex. rel. Miller*, 636 F. App'x at 949.

11        **1.    Service of a Subpoena Under Rule 45 Follows the Same
                   Standard as Under Rule 4**

12

13        Plaintiff set forth ample case law supporting the application of Rule 4 service requirements

     to a non-party subpoena.  MTC at 8, 12-13.  Plaintiff cited a half dozen cases in explicit support
14
     (*id.*),[9] as well as other Rule 45 cases, such as this Court's *Lithium Ion* case (MTC at 13),
15
     demonstrating service is proper under Rule 45.[10]  Pegatron's view that a subsidiary cannot accept
16
     service of a parent's Rule 45 subpoena because Rule 45 is narrower than Rule 4 is wrong, and
17
     service is proper.  *See NGV Gaming, Ltd.*, 2009 WL 4258550, at *2 (service under Rule 4 and
18
     Rule 45 the same).
19

20

21

22   _____
     [8]    Pegatron Co.'s annual report claims over $10.2 million profit associated with PTSI (though
     that number is not specific to its California operation).  Ex. 5 at 345.

23
     [9]    *Sanchez Y Martin, S.A. de C.V. v. Dos Amgios, Inc.*, 2018 WL 2387580, at *3 (S.D. Cal. May
24   24, 2018); *Paisley Park Enters., Inc. v. Boxill*, 2019 WL 1036059, at *3 (D. Minn. Mar. 5, 2019)
     (same); *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 293, 305 (S.D.N.Y.
25   2009) (same); *see also In re Subpoena Duces Tecum to Dunhuang Grp.*, 2019 WL 2150947, at *5
     (E.D. Mich. May 17, 2019); *MGA Ent., Inc. v. Nat'l Prods.*, 2011 U.S. Dist. LEXIS 161044, at *4,
26   *9 (C.D. Cal. Dec. 20, 2011); *In re Jee*, 104 B.R. at 293.

27   [10]   *See also*, *e.g.*, *Mattel, Inc. v. MGA Ent., Inc*., 2010 WL 11464002, at *1 (C.D. Cal. Nov. 1,
     2010) (the service of a subpoena directed to a non-party corporation must generally comport with
28   Rule 4(h)'s requirements for the service of a summons directed to a defendant corporation).

1    Pegatron's argument that "Plaintiff[] rel[ies] solely on Rule 4" (Opp. at 10) ignores **every**

2    **one** of Plaintiff's cited cases, and in defiance of the obvious, argues that "courts have **consistently**

3    construed" service under Rule 45 more narrowly.  Opp. at 9; *see also id.* at 9-10 (same).  To the

4    extent that some courts do construe service "more narrowly" under Rule 45 than under Rule 4,

5    they do so only by requiring service be in-person.  *See* Opp. at 9.[11]  Because there is no dispute

6    that Plaintiff's subpoena was served in person twice, this argument fails.

7                    **2.    Service on Pegatron Co. Via Its General Manager and Wholly**
                         **Owned Subsidiaries Was Proper**
8

9    A subsidiary may constitute the foreign corporation's "general manager" where it offers

10   such benefits to the foreign corporation such that it were as if the parent "had opened its own

11   offices or hired its own agents in California."  *Halo Elecs.*, 2010 WL 2605195, at *1-*2.  "The

12   inquiry . . . is not whether the parent company controls its subsidiary, but whether the subsidiary

13   (1) is 'of sufficient character and rank to make it reasonably certain that the [parent] will be

14   apprised of the service made,' and (2) offers the parent the advantages of doing business in

15   California."  *Laukat v. Abb, Inc.*, 2020 U.S. Dist. LEXIS 107753, at *18-*19 (C.D. Cal. Feb. 20,

     2020).
16
                    **a.    Plaintiff Properly Served Pegatron Co. Via Pegatron**
17                       **USA**

18   Here, Plaintiff served Pegatron USA's registered agent, which serves the very purpose of

19   providing notice of service.  *See id.* at *20.  Pegatron USA is a wholly owned subsidiary of

20   Pegatron Co.  Ex. 5 at 65, 116.  Pegatron concedes "PGUSA . . . provide[s] technical support and

21   business coordination to certain existing Pegatron [Co.] customers."  ECF No. 131 at 3; Ex. 5 at

22   145; *see also* Chen Decl., ¶4.  These and a host of other reasons demonstrate that Plaintiff's service

23

24

25   ───────────────

     [11]   Pegatron's reliance on *F.T.C. v. Compagnie De Saint-Gobain-Pont-a-Mousson*, 636 F.2d
26   1300, 1311 (D.C. Cir. 1980) is misplaced for the same reason.  There, at issue was a government
     agency attempting to serve an investigative subpoena on a foreign holding company on foreign
27   soil via mail.  *Id.*  Here, Plaintiff has served Pegatron Co., and Pegatron Co.'s general manager(s),
     in person and on American soil.  Moreover, unlike in *F.T.C.*, the foreign entity here has an active
28   and thriving business operation in California.

1   of one subpoena on one entity, which, based on its research, it described as "Pegatron Corporation

2   d/b/a Pegatron USA, Inc." was entirely proper.  MTC at 11-13.

3          Nevertheless, Pegatron contests service on Pegatron Co. via its subsidiary Pegatron USA

4   on the ground Plaintiff served Pegatron USA, not Pegatron Co., notwithstanding the above facts

5   and clear language of the subpoena.   Opp. at 14.   Pegatron's arguments ignore the facts

6   demonstrating that Pegatron USA is a general manager of Pegatron Co.  MTC at 11-14.  Pegatron

7   cannot and does not even ***attempt*** to substantiate that Pegatron USA, a wholly owned subsidiary,

8   is its "own company."  *See* Opp.at 14.  Pegatron's semantic dispute as to whether Pegatron Co.

9   was properly named cannot defeat proper service.  Opp. at 14.

10          Similarly, there is no requirement that Pegatron USA be an alter ego of Pegatron Co. or

11   that Pegatron Co. control Pegatron USA to satisfy the general manager inquiry.  *Laukat*, 2020 U.S.

12   Dist. LEXIS 107753, at *19 ("[n]either element [of the general manager inquiry] demands that the

13   parent control the subsidiary").  As Judge Ryu found, on similar facts, and in a case briefed in the

14   Motion but ignored by the Opposition, alter ego is not relevant.  *See In re: Lithium Ion Batteries*

15   *Antitrust Litig*., No. 4:13-md-02420-YGR (N.D. Cal.) (Ex. 23) at 30:21-23 ("I already found

16   there's no alter ego here; but on the unique facts of this case, I do find that there is a legal right to"

17   obtain documents from a Taiwanese parent via a U.S. subsidiary.); *see generally id.* at 9:12-13,

18   16:4-5, 19:13-17.  There, the issue was whether the subsidiary had sufficient control of – in the

19   form of access to – the foreign parent's documents.  Should the Court find that Pegatron USA

20   cannot be considered a general manager, then at the very least, it should still be required to produce

21   Pegatron Co.'s documents within its control.  *See* MTC at 13-14.

22          **b.       Plaintiff Properly Served Pegatron Co. Via PTSI**

23          For the same reasons as with Pegatron USA, even if service on Pegatron Co. was properly

24   made only on PTSI and not Pegatron Co., the Court should find that service was effectively made

25   on Pegatron Co. via its subsidiary PTSI.  Pegatron does not deny that PTSI is a subsidiary of

26   Pegatron Co. and recognizes that "as the parent company of PTSI there is going to be some

27

28

1   communications between PTSI and Pegatron Corporation."  Opp. at 12.[12]  Pegatron provides no

2   evidence for why PTSI cannot be served at the Elk Grove location as a general manager for the

3   same reasons Pegatron USA can be served.  And because Pegatron "cites no authority for the

4   proposition that service via a general manager's designated agent is defective unless it names the

5   general manager . . . the Court [should] not consider that argument."  *Xun v. Daimler AG*, 2020

6   U.S. Dist. LEXIS 224600, at *5 (C.D. Cal. Sept. 3, 2020).

7          Finally, contrary to Pegatron's argument that Plaintiff was required to serve an identified

8   agent for service of process (Opp. at 12), there is no such requirement; California law permits

9   service on a corporation through many individuals beyond the company's registered agent.  *See*

10  Cal. Code of Civ. P. § 416.10(b).[13]

11  **III.    PEGATRON'S REMAINING ARGUMENTS CONCERNING BURDEN
            AND COSTS ARE PREMATURE AND FAIL BECAUSE THEY ARE
12          CONCLUSORY AND IMPROPER**

13         None of Pegatron's objections to burden or requests for costs are substantiated or

14  meritorious.  When Plaintiff and Pegatron conducted their meet and confer, Plaintiff explained that

15  service was proper, but offered to remedy any perceived defect in service by re-serving the

16  subpoena in whatever manner Pegatron specified.  *See* Pfefferbaum Decl., ¶2.  Plaintiff was willing

17  to accept this delay to correct service before advancing to substantive discussions of the subpoena.

18  Pegatron, however, insisted that it was service-proof and would never produce a single document.

19  *See* Pfefferbaum Decl., ¶2; *see also* Ex. 17 at 2 (suggesting objections alone should "suffice");

20  ECF No. 144-7 (same).[14]  In light of this position, which made meaningful discussions impossible,

21

22  [12]  As with Pegatron USA, these and other contacts and benefits derived between or from Pegatron
    Co. and its subsidiary PTSI indicate that PTSI has legal control to documents sought by Plaintiff's
23  subpoena.  *See* MTC at 13-14.

24  [13]  Contrary to Pegatron's arguments, Plaintiff did research proper agents for service.  *See* MTC
    at 6 n.6.  Pegatron Co. does not have a registered agent in California.  PTSI's California agent for
25  process updated its Statement of Information on December 21, 2020 – after Plaintiff served its
    subpoena on PTSI.  Ex. 30.  Oddly, the December date is now gone, and reflects a filing date of
26  February 3, 2021.  Ex. 31.  These inconsistencies in the Secretary of State for the State of
    California's records further demonstrate the importance of parties working in good faith to resolves
27  issues of service.

28  [14]  Pegatron does not and cannot dispute that it refused to accept service and refused to produce
    any documents under any circumstances.  Thus, Pegatron's resort to personal attacks on this point

1    the Court should reject Pegatron's new arguments as to their burden or cost objections which they

2    never substantiated in the meet and confer process.

3         **A.    Plaintiff's Subpoena is Not Overly Burdensome**

4              Plaintiff seeks relevant information from Pegatron because the Court found events directly

5    involving Pegatron key to upholding Plaintiff's claims, and the subpoena is proportionately

6    tailored to the needs of the case.  *See* MTC at 4-6.  Indeed, this is precisely the type of discovery

7    Rule 45 was designed to facilitate.  *See Cardinali v. Plusfour, Inc.*, 2019 WL 3456630, at *2 (D.

8    Nev. June 20, 2019) ("Parties are permitted to subpoena nonparties for the production of

9    documents.").  The Ninth Circuit does "not read 'undue burden' differently just because a non-

10   party was subpoenaed," and mere invocation of third party status is insufficient to avoid

11   compliance.  *See Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012).

12             Nonetheless, Pegatron burdens the Court with a host of conclusory objections.  *See W.*

13   *Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, 2014 WL 1257762, at *25 (D. Colo. Mar.

14   27, 2014) ("Counsel for a non-party subpoena recipient, however, should be expected to 'stop and

15   think' before taking actions that will almost certainly result in unnecessary delay and burden an

16   already congested court docket.").  For example, Pegatron argues "[t]he parties to the underlying

17   action are currently in a dispute as to when the relevant time period should be."  Opp. at 16.  Not

18   so.  Weeks ago, the parties agreed to relevant periods requests.[15]  Further, while Plaintiff had

19   already sought documents from a more narrow period than from Defendants, Plaintiff was (and is)

20   willing to engage in good faith negotiations regarding time period.  *See In re Remec Sec. Litig.*,

21

22   ─────────────
     – "Plaintiff's claim that Pegatron Corporation and PGUSA were unwilling to discuss these
23   objections is a flat out lie and is unsubstantiated" (Opp. at 16) – should be dismissed as an
     inaccurate, unsubstantiated, and irrelevant attempt to distract from its own refusal to negotiate or
24   compromise before burdening the Court with a narrow and technical dispute as to service.

25   [15]   More concerning is counsel's sworn representation that Apple informed Pegatron that the
     relevant time period "should not extend through the entire year."  Jackson Decl., ¶5.  When Apple
26   has represented that it "ha[s] in no way sought to interfere with Plaintiff's attempts to obtain
     discovery from . . . any of the . . . non-parties from whom Plaintiff has sought discovery to date."
27   ECF No. 135.  Any coaching of non-parties regarding the relevant time period of discovery is in
     appropriate.  *See In re Seagate Tech. II Sec. Litig.*, 1993 WL 293008, at *2 (N.D. Cal. June 10,
28   1993).

2008 U.S. Dist. LEXIS 135208, at *9-*10 (S.D. Cal. Oct. 24, 2008) (non-parties' relevant periods differ).  It is also improper for Pegatron to object that its own compliance is dependent on agreements made or not made by Apple.  *See Hatamian v. Advanced Micro Devices, Inc.*, 2015 WL 7180662, at *2 (N.D. Cal. Nov. 16, 2015); *In re Toyota Motor Corp. Sec. Litig.*, 2012 U.S. Dist. LEXIS 124438, at *21-*23 (C.D. Cal. Mar. 12, 2012).  Or to object that the documents are in Defendants' possession.  *Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 WL 3876142, at *3 (N.D. Cal. Aug. 18, 2008) ("there is no general rule that plaintiffs cannot seek nonparty discovery . . . likely to be in defendants' possession.").  Nor is the Opposition correct that Plaintiff is improperly burdening non-parties to "***potentially*** fill in the gaps" (Opp. at 17, emphasis in original)[16] – especially as Plaintiff has had no such difficulty with other parties.  The Court should compel compliance with the subpoena.

**B.    Pegatron's Request for an *A Priori* Order to Shift Costs Is Improper and Unwarranted**

Pegatron raises for the very first time a demand for costs never previously presented to plaintiff.  The Court should reject this new and unsubstantiated demand.  The "nonparty seeking cost shifting ***must demonstrate*** that its costs are reasonable and resulted from compliance with the subpoena." *Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.*, 319 F.R.D. 277, 281-82 (N.D. Cal. 2017).  Here, because Pegatron has made no demonstration, and also "remains silent on its ability to bear the financial cost of production," no costs can be awarded.  *Id.* at 282.

Further, costs should only be ordered shifted to the requesting party where the costs are "significant" relative to the litigation, and relative to the size and sophistication of the producing party.  *See, e.g.*, *In re Subpoenas to Intel Corp.*, 2018 WL 1035794, at *6 (N.D. Cal. Feb. 23, 2018) ("It is unlikely that the cost of compliance is 'significant' to a company of Intel's size."); *United States v. McGraw-Hill Cos., Inc.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014) (the determination of whether costs are significant was relative, such that "an expense might be 'significant,' for

---

[16]   Pegatron is making inferences from separate filings, not reporting discussions with Plaintiff. *See* ECF No. 132 at 2 ("especially in 'a fraud action[,] Plaintiff is entitled to test the accuracy of [d]efendant's discovery responses by seeking the same or similar information from' Foxconn").

1    instance, to a small family-run business, while being 'insignificant' to a global financial

2    institution"); *Balfour Beatty Infrastructure, Inc.*, 319 F.R.D. at 281-82 (same); *Valcor Eng'g Corp.*

3    *v. Parker Hannifin Corp.*, 2018 WL 3956732, at *2 (C.D. Cal. July 12, 2018) ("courts consider[]

4    a non-party's financial ability to bear the expenses in determining whether the expenses were

5    'significant'").  The importance of Pegatron to the litigation, the scope of the litigation itself (MTC

6    at 4-5), and Pegatron's size and sophistication – "Pegatron Corporation is a multi-million-dollar

7    company with over 7.000 employees"[17] – all suggest that Pegatron, not Plaintiff, should be

8    responsible for costs.  For example, in *Shasta Linen Supply, Inc. v. Applied Underwriters Inc.*,

9    2018 WL 2981827 (E.D. Cal. June 14, 2018), a nonparty insurance company ("Relation") claimed

10   $15,000 in (anticipated) costs but failed to state a basis for them.  There, the court noted that

11   Relation failed to do the same things Pegatron failed to do here:

12             In the context of this case, $15,000 is not a "significant" cost such that fee shifting
              is appropriate. Relation did not provide the court with any information indicating
13            that $15,000 is significant with respect to its total value as a company. Nor did
              Relation provide any information regarding it gross revenues. . . . This, along with
14            Relation's statement at hearing that Relation is a national company with multiple
              offices, indicates Relation has the financial ability to bear the costs of production.
15

16   *Id.* at *5 (the Court also considered the fact that Relation derived a financial benefit from the

17   subpoenaing party, a factor not relevant here).

18             Pegatron's arguments to the contrary fail.  First, cost-shifting is not mandatory where a

19   non-party "is ***expected*** to incur 'significant expense' in responding to a subpoena."  Opp. at 17.  In

20   Pegatron's cited authority, the Ninth Circuit only ordered costs shifted where a non-party women's

21   law center "***had by then*** incurred roughly $20,000 in expenses in complying with the subpoena."

22   *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1182 (9th Cir. 2013).  Here, by contrast, Pegatron's

23   expenses are entirely hypothetical, and Pegatron remains free to later seek costs based on what it

24   actually incurs.

25             To the extent that any of Pegatron's claims are purportedly substantiated, they rely on just

26   a one page document – Exhibit I to the Jackson Decl.  ECF No. 144-10 ("Exhibit I").  But Exhibit

27

28   ──────────────
     [17]    Jackson Decl., ¶12; *see also* Opp. at 2, 5, 16, 18 (repeatedly invoking Pegatron's size).

1  I is just a list of **potential** costs based on untested assertions, and improper requests for unnecessary

2  costs, such as more than $300,000 for "review" (*id.*) – an activity that should not even be necessary

3  if proper custodians and search terms are used.  *See, e.g.*, *Steward Health Care Sys. LLC v. Blue*

4  *Cross & Blue Shield of Rhode Island*, 2016 WL 8716426, at *4 (E.D. Pa. Nov. 4, 2016).  Likewise,

5  Exhibit I purports to provide the costs for reviewing and producing documents for 13 custodians

6  but Pegatron has never identified such individuals to Plaintiff.  *Id.*  Nothing in the Opposition or

7  Exhibit I substantiate a request from between $300,000 and $400,000 in costs.  *Balfour Beatty*

8  *Infrastructure, Inc.*, 319 F.R.D. at 282 ("'Rule 45 does not cut a blank check to non-parties –

9  unnecessary or unduly expensive services do not "result from compliance" and, therefore, do not

10  count as "expenses."'").

11        Further, Pegatron requests fees for which it has no basis in law, such as attorney's fees,

12  which to date have been incurred resisting the subpoena.  Courts do not order such fees where they

13  have been incurred fighting, rather than complying with, a subpoena.  *E.g.*, *Valcor Eng'g Corp.*,

14  2018 WL 3956732, at *4 (court "extremely skeptical that all or even most of the more than

15  $476,000 [non-party] incurred was reasonably necessary to respond to the subpoena").

16        Pegatron first burdened the Court with an unnecessary technical objection to service.

17  However, that objection was narrow and could have easily been resolved pursuant to the four-page

18  discovery letter submitted to the Court.  Instead, Pegatron used its two pages to raise a host of new

19  objections.  Then, when Plaintiff responded to those objections in the Motion, Pegatron added this

20  new request for costs in their Opposition.  This constant effort to shift the goal-posts should be

21  rejected.

22

23

24

25

26

27

28

## IV.   CONCLUSION

For the reasons stated herein, the Court should compel Pegatron to accept service and produce documents pursuant to the subpoena in good faith.

DATED:  March 15, 2021

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
DANIEL J. PFEFFERBAUM
JOHN H. GEORGE
KENNETH J. BLACK
HADIYA K. DESHMUKH


                    s/ Daniel J. Pfefferbaum
              DANIEL J. PFEFFERBAUM

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
jgeorge@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
MARK SOLOMON
TOR GRONBORG
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
torg@rgrdlaw.com

Lead Counsel for Lead Plaintiff

LABATON SUCHAROW
CAROL C. VILLEGAS
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/883-7524 (fax)
cvillegas@labaton.com

Counsel for Employees' Retirement System of
the State of Rhode Island

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify under penalty of perjury that on March 15, 2021, I authorized the electronic

3

filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

4

notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and

5

I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to

6

the non-CM/ECF participants indicated on the attached Manual Notice List.

7

  s/ Daniel J. Pfefferbaum
DANIEL J. PFEFFERBAUM

8

9

ROBBINS GELLER RUDMAN
    & DOWD LLP

10

Post Montgomery Center
One Montgomery Street, Suite 1800

11

San Francisco, CA  94104
Telephone:  415/288-4545

12

415/288-4534 (fax)
E-mail:  dpfefferbaum@rgrdlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4829-8087-5489.v1

## Mailing Information for a Case 4:19-cv-02033-YGR IN RE APPLE INC. SECURITIES LITIGATION

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **Kenneth Joseph Black**
  KennyB@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com

- **Frank H. Busch**
  busch@wvbrlaw.com,johnson@wvbrlaw.com,pallister@wvbrlaw.com

- **Hadiya Khan Deshmukh**
  hdeshmukh@rgrdlaw.com

- **Christine M. Fox**
  cfox@labaton.com,ndonlon@labaton.com,lpina@labaton.com,electroniccasefilings@labaton.com,fmalonzo@labaton.com,6312349420@filings.docketbird.com

- **John Hamilton George**
  jgeorge@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,tcrockett@pomlaw.com,abarbosa@pomlaw.com

- **Austin Thomas Jackson**
  ajackson@structurelaw.com,cford@structurelaw.com

- **James Neil Kramer**
  jkramer@orrick.com,lpatts@orrick.com,mwatkins@orrick.com,vmorse@orrick.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,tcrockett@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,lpvega@pomlaw.com

- **Francis P. McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,egoodman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,jalieberman@pomlaw.com,tcrockett@pomla

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,jgeorge@rgrdlaw.com,dpfefferbaumRGRD@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,jgeorge@ecf.courtdrive.com

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Mark Solomon**
  marks@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Alexander K. Talarides**
  atalarides@orrick.com,lpatts@orrick.com,casestream@ecf.courtdrive.com

- **Carol C. Villegas**
  cvillegas@labaton.com,ndonlon@labaton.com,5739893420@filings.docketbird.com,lpina@labaton.com,jchristie@labaton.com,acoquin@labaton.com,fmalonzo@laba

- **James Matthew Wagstaffe**
  wagstaffe@wvbrlaw.com,johnson@wvbrlaw.com

- **Steven Ray Wedeking , II**
  swedeking@robbinsllp.com,notice@robbinsllp.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,cbarrett@rgrdlaw.com,ShawnW@ecf.courtdrive.com,smorris@rgrdlaw.com,kennyb@rgrdlaw.com,e_file_sd@rgrdlaw.com,smorris@ecf.court

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)