UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, | Case No.  19-cv-02033-YGR (JCS) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART MOTION TO COMPEL** |
| APPLE INC., et al., | Re: Dkt. No. 141 |
| Defendants. | |

## I.      INTRODUCTION

This discovery dispute involves a subpoena *duces tecum* ("Subpoena") seeking documents from non-party Pegatron Corporation ("Pegatron Co." or "Pegatron"), a technology manufacturer with its headquarters in Taiwan.  Pegatron has refused to comply with the Subpoena on the ground that it was not served properly.  It further asserts that the document requests in the Subpoena are excessively broad and unnecessarily burdensome, and that to the extent the Court orders that it comply with the Subpoena, the costs associated with producing the documents Plaintiff requests should be shifted to Plaintiff.

As to the first issue, the Court finds that service of the Subpoena was proper.  The Court further finds that it is premature to resolve the second and third issues.  While counsel point fingers as to which side has allegedly failed to cooperate, both sides agree that there have been no meaningful meet-and-confer discussions as to the scope of the document requests.  Likewise, Pegatron's assertions regarding the expense of compliance consist of conclusory arguments and speculation.  Accordingly, the Court GRANTS in part the Motion to Compel and ORDERS lead counsel for Plaintiff and Pegatron to meet and confer by Zoom video during the week of April 5, 2021 to resolve issues on scope of the subpoena. If there is any remaining issue that needs Court

intervention, the parties shall file a joint letter five (5) days after their meet and confer.  The Joint Letter shall not exceed five (5) pages, and shall, in addition to including each party's position, recite each party's proposed compromise.

## II.      BACKGROUND

### A.      The Underlying Action

In this case, Plaintiff brings antitrust claims against defendants Apple, Inc. ("Apple"), its CEO, Tim Cook, and CFO Luca Maestri based on allegedly fraudulent and misleading statements Cook made on November 1, 2018 about sales of certain newly-released iPhone models.  *See generally* Revised Consolidated Class Action Complaint for Violation of the Federal Securities laws (ECF No. 114) ("Complaint").  In the wake of the Court's November 4, 2020 order on Defendants' motion to dismiss, Dkt. 123, the claims that remain in the case relate to the allegation that Cook's November 1, 2018 statements misrepresented the then-current state of iPhone sales performance in Greater China, which was Apple's most important growth market. Complaint ¶56. In particular, the Complaint alleges, Cook falsely stated that Apple was not facing the negative sales pressure in Greater China that the Company was experiencing in other emerging markets and that iPhone sales there were very strong. *Id.*

In fact, the Complaint alleges, just days later the *Nikkei Asian Review* reported that iPhone's top iPhone manufacturers, Foxconn and Pegatron, were ordered to halt plans for additional production lines, indicating a reduction in expected sales of  "20% to 25%." Complaint ¶¶27, 68.  The *Nikkei Asian Review* report and a series of reports that followed about declining demand for the new iPhone models allegedly led to declining stock prices in November and December 2018.  *Id.*  ¶¶ 68-81.  On January 2, 2019, Apple pre-announced its first quarter FY19 earnings results, with revenue of $84 billion – far lower than the projected revenues of $89 billion to $93 billion Apple had announced on November 1, 2018.  *Id.* ¶¶82-83.  In a "Letter from Tim Cook to Apple Investors," Cook attributed the shortfall to a sharp contraction of the iPhone market in Greater China.  *Id.*   Plaintiff alleges that at the time Cook made the November 1, 2018 statements about iPhone sales in greater China, he and Apple knew that they were false.  *Id.* ¶ 83.

The Class period is between November 2, 2018 and January 2, 2019.

2

**B.     The Subpoena**

In the Subpoena, Plaintiff seeks documents for the time period February 1, 2018 through January 31, 2019 responsive to the following requests for production:

REQUEST FOR PRODUCTION NO. 1:
All documents and communications concerning Apple iPhone volume production plans, forecasts, expectations, delays, reductions or cancellations, including such communications between you and Apple or you and your suppliers of components used for Apple iPhone manufacturing or assembly.

REQUEST FOR PRODUCTION NO. 2:
All documents and communications concerning the analysis, monitoring or tracking of iPhone orders, pre-orders, sales or upgrades, including comparisons to any prior periods, forecasts or expectations.

REQUEST FOR PRODUCTION NO. 3:
All documents and communications concerning economic conditions and consumer spending in Greater China and its impact on your production or assembly of Apple smartphones or smartphones offered by Huawei, Oppo, Vivo and Xiaomi.

REQUEST FOR PRODUCTION NO. 4:
All documents and communications concerning any formal or informal contracts, agreements or arrangements for actual, expected, contingent or stand-by production volume or capacity between you and Apple or you and your suppliers of components used for assembly of Apple products.

REQUEST FOR PRODUCTION NO. 5:
All documents concerning communications with any securities analysts, financial analysts, financial publications, news reporters or journalists concerning production of or demand for Apple's iPhones, including reductions in volume or cancellation of production from Apple.

Pfefferbaum Motion Decl., Exs, 10 – 11.

Plaintiff served the Subpoena twice.  First, on December 14, 2020, Plaintiff served a subpoena directed to "Pegatron Corporation" at 2811 Laguna Boulevard in Elk Grove, California ("the Elk Grove address" or the "Elk Grove facility") by leaving a copy of the Subpoena with Sabrina Guinn, who describes herself as Director of Security at Pegatron on her LinkedIn page. Pfefferbaum Motion Decl., Exs.  6 (Guinn LinkedIn page), 10 (Subpoena), 12 (Proof of Service). According to Plaintiff, both Pegatron and its wholly-owned subsidiary PTSI operate out of this address.  Motion at 6.  Plaintiff further represents that at the time this subpoena was served, no registered agent for service of process was listed for either Pegatron or PTSI with the California

1   Secretary of State. *Id.*

2       Next, on December 17, 2020, Plaintiff served the same subpoena on "Pegatron Corporation

3   d/b/a Pegatron USA, Inc. c/o Ing Tsau Chiu, 39510 Paseo Padre Parkway, Suite 380, Fremont, CA

4   94538" ("the Fremont address") by leaving it with Rebecca Chen at that address.  Pfefferbaum

5   Motion Decl.*,* Exs. 11 (Subpoena), 16 (proof of service).  According to Plaintiff, Pegatron USA,

6   Inc. ("Pegatron USA") is a U.S. corporation wholly owned by Pegatron Co., *id.*, Ex. 5 at 116, and

7   its registered agent is Ing Tsau Chiu. *Id.*, Ex. 15 (California Secretary of State Statement of

8   Information for Pegatron USA, Inc.).

9       On December 29, 2020, counsel for Pegatron, the Structure Law Group, objected on behalf

10   of both Pegatron Co. and Pegatron USA and refused to produce documents in response to the

11   Subpoena. *Id.,* Ex. 17.  Counsel for Pegatron asserted that service of the Subpoena on Pegatron

12   Co. at the Elk Grove address was improper because "Pegatron Corporation is a Taiwanese

13   company not domiciled in the United Stated and is thus not subject to the jurisdiction of the

14   United States District Court for the Northern District of California." *Id.*  As to the Subpoena that

15   was served on Pegatron USA at the Fremont address, counsel objected on the grounds that the

16   requests were "vague, overbroad, and unduly burdensome" because they sought some information

17   that was irrelevant, the requests were not limited in time, and they used ambiguous terms and

18   phrases. *Id.*  Counsel further objected that the Subpoena sought documents that were "not

19   reasonably accessible by Pegatron USA because of undue burden or expense; (2) obtainable from

20   another source that is less burdensome, expensive or more convenient; and (3) unreasonably

21   cumulative or duplicative, or . . . the likely burden or expense of producing the records or

22   documents outweigh[s] the likely benefit." *Id.*  Finally, counsel objected on the ground that "the

23   records and documents sought in the subpoena are not within the possession, custody or control of

24   Pegatron USA." *Id.*

25       **C.    Contentions of the Parties**

26           **1.  The Motion**

27       Plaintiff contends it has properly served the Subpoena on Pegatron twice and that Pegatron

28   should be compelled to respond.  Plaintiff argues that service was proper under two theories.

United States District Court
Northern District of California

1    First, it argues that it properly served Pegatron Co. directly by serving the Subpoena at the Elk

2    Grove address. Second, it contends service of the Subpoena was valid because it properly served

3    Pegatron Co. through service on its subsidiaries PTSI (which Plaintiff represents operates out of

4    the same Elk Grove address as Pegatron Co.) and Pegatron USA.

5    In support of the direct service theory, Plaintiff asserts that although "Federal Rule of

6    Civil Procedure 45 governs subpoenas for the production of documents, . . . because Rule 45 does

7    not specify what constitutes personal service on a corporation 'courts have relied upon the service

8    of process requirements on corporations set forth in Rule 4.'" Motion at 7 (quoting *Sanchez Y*

9    *Martin, S.A. de C.V. v. Dos Amigos, Inc*., 2018 WL 2387580, at *3 (S.D. Cal. May 24, 2018)).

10   Rule 4(h)(1)(A) and (e)(1), in turn, permit service upon a foreign or domestic corporation in

11   accordance with state law. *Id.*  According to Plaintiff, this means that service was proper as to

12   Pegatron Co. if service was made in accordance with California law, that is, if it was made upon

13   "a general manager, or a person authorized by the corporation to receive service of process." *Id.*

14   (quoting Cal. Code Civ. Proc. §416.10(b); and citing *In re Jee*, 104 B.R. 289, 293 (Bankr. C.D.

15   Cal. 1989) for the proposition that a foreign "corporation is amenable to service," including "a

16   subpoena duces tecum . . . pursuant to Rule 45," "in any forum within which the corporation has

17   sufficient minimum contacts").

18   According to Plaintiff, the requirements discussed above were met because:  1) Pegatron

19   Co. is operating out of the Elk Grove address and has significant contacts with the forum, even

20   representing to a Wyoming district court that there is jurisdiction over it in this district because it

21   conducts business here; and 2) Sabrina Guinn is a "general manager" of Pegatron Co. under

22   California law.  *Id.* at 7-10.

23   In support of the contention that Pegatron Co. is conducting its own business operations at

24   the Elk Grove address, Plaintiff points to the following evidence: 1) a Google map showing that

25   the Elk Grove address is adjacent to Apple's facility and describing it as "Pegatron Corporation"

26   (Pfefferbaum Decl., Ex. 13); 2) an Apple "Supplier List" in which 18 different addresses for

27   "Pegatron Corporation" are listed, including the Elk Grove facility at which service was made (*id.,*

28   Ex. 18); 3) a news article describing the Elk Grove facility as "Apple's Elk Grove warehouse" and

1  stating that hundreds of employees who "officially work for Pegatron Technology Services" work

2  there repairing 30,000 iPhones a day (*id.*, Ex. 6); 4) an Indeed listing for "Pegatron in Elk Grove"

3  with comments from employees who work at the facility (*id.*, Ex. 19);  5) statements made by

4  PTSI in *Pegatron Tech. Serv., Inc. v. Zurich Am. Ins. Co.*, No. 5:18-cv-01477-LHK (N.D. Cal)

5  indicating that the iPhone repairs performed at Elk Grove are made pursuant to an agreement

6  between Apple, Pegatron Co. and PTSI (*id.*, Ex. 1 at 9) and 6) statements made by PTSI in the

7  same case indicating that the insurance carried by Pegatron for events occurring at the Elk Grove

8  facility covered both Pegatron Co. and PTSI (*id.*).

9         Plaintiff also points to statements made by Pegatron Co. when it was a defendant in a

10  patent case filed against it and a number of other companies  in Wyoming District Court, *AFTG-*

11  *TG, L.L.C. v. Nuvoton Tech. Co*., No. 2:10-cv-00227-NDF (D. Wyo.) ("the Wyoming case").  *See*

12  Pfefferbaum Motion Decl., Ex. 2) (Motion to Transfer).   There, the defendants, including

13  Pegatron Co. and PTSI, argued that the case should be dismissed for lack of personal jurisdiction

14  or alternatively, transferred to the Northern District of California "where personal jurisdiction can

15  be exercised over all of the Defendants."   *Id.*  at 2.  The defendants stated that "Pegatron has

16  technical support and service facilities in the Northern District of California" and further

17  represented that "[e]ach of [the defendants] . . . has offices or purposeful connections with

18  California."  *Id.*  at 2, 15.  It went on to note that defendants "ASUSTeK and Pegatron, Taiwanese

19  corporations, both maintain sales and technical service operations in California."  *Id.* at 15.

20  Finally, the defendants in the Wyoming case stated that "all of the moving Defendants except

21  [PTSI] reside or conduct business in the Northern District of California, and [PTSI] consents to

22  the jurisdiction of that District for this action only."  *Id.*  at 11.

23         In support of Plaintiff's contention that Sabrina Guinn is a "general manager" under

24  California law and therefore that it was proper to serve the Subpoena on Pegatron Co. by leaving it

25  with her, Plaintiff cites the standard in *Khachatryan v. Toyota Motor Sales, U.S.A., Inc*., asserting

26  that a "general manager" under Cal. Code Civ. Proc. §416.10(b) is "any agent of the corporation

27  of sufficient character and rank to make it reasonably certain that the defendant will be apprised of

28  the service."  Motion  at 8 (quoting 578 F. Supp. 2d 1224, 1226 (C.D. Cal. 2008)) (cleaned up).

6

1   To show that this standard is met, Plaintiff points to the following description of Guinn's job

2   responsibilities posted on her LinkedIn page:

> Responsible for insuring **Pegatron Corporation** a direct supplier of Apple, appropriately manages all security risks . . . . Responsible for the safety and security of **over 1000 employees** to include managing and scheduling a security team that is comprised of over 60 individuals. . . . Responsible for budgeting and billing of $2.5 million dollar security contract for **Pegatron/Apple's security needs**.

7   *Id.* at 9 (quoting Pfefferbaum Motion Decl., Ex. 7 (Guinn LinkedIn page) (emphasis added in

8   Motion)). Plaintiff further points out that Guinn did, in fact, apprise Pegatron Co. of service of the

9   Subpoena. *Id.*

10        Plaintiff contends in the alternative that even if Pegatron Co. does not have sufficient

11   contacts with California to be served directly, service on Pegatron Co. via PTSI and Pegatron USA

12   was proper.  In particular, it asserts that under California law, service may be made upon "a

13   general manager, or a person authorized by the corporation to receive service of process[,]" and

14   that a domestic subsidiary of a foreign company may be a "general manager" if the foreign

15   corporation is not "readily available for service in California" and there is a "sufficiently close

16   connection with the parent."  *Id.*  at 11. (quoting Cal. Corp. Code §2110 and *U.S. ex rel. Miller v.*

17   *Pub. Warehousing Co. KSC*, 636 F. App'x 947, 949 (9th Cir. 2016) (citations omitted)).

18   According to Plaintiff, based on consideration of the factors identified in *Miller* for evaluating the

19   closeness of the connection – "the frequency and quality of contact between the parent and the

20   subsidiary, the benefits in California that the parent derives from the subsidiary, and the overall

21   likelihood that service upon the subsidiary will provide actual notice to the parent" – both PTSI

22   and Pegatron USA are closely connected to Pegatron Co. and therefore may be served as "general

23   managers" of Pegatron Co. under California law.  *Id.* at 11-12 (quoting *U.S. ex rel. Miller v. Pub.*

24   *Warehousing Co. KSC*, 636 F. App'x at 949).

25        To show the closeness of PTSI's connection to Pegatron Co., Plaintiff points to the

26   evidence that PTSI and Pegatron are both parties to the contract with Apple to provide repair

27   services, *see* Pfefferbaum Motion Decl., Ex. 1 (discussed above); evidence in the form of news

28   reports that  the Elk Grove facility "provides services on a massive scale (30,000 phones per day)

United States District Court
Northern District of California

7

performed by 1,000 employees[,]" indicating that Pegatron Co. derives "substantial benefit" from PTSI's operations, *id*., Exs. 6-7;   and the joint insurance policy held by both PTSI and Pegatron Co. to cover activities at the Elk Grove facility, *id.*, Ex. 1 (discussed above). To show that Pegatron USA is a "general manager" of Pegatron Co., Plaintiff points to the description of Pegatron USA as a "[s]ales and repair service center in North America" in Pegatron Co.'s 2019 Annual Report.  Motion at 12 (quoting Pfefferbaum Motion Decl., Ex. 5 (Pegatron Co. 2019 Annual Report) at 145).  Plaintiff also points to Pegatron's representation in the joint discovery letter that Pegatron USA is "in the business of providing technical support and business coordination to certain existing Pegatron customers." *Id.* (citing Dkt. No. 131 at 4).

To the extent that Pegatron Co. and Pegatron USA object to service via its subsidiaries on the basis of *Viasat, Inc. v. Space Sys./Loral, LLC*, 2014 WL 12577593 (S.D. Cal. June 30, 2014), which draws a distinction between service under Rule 4 and Rule 45, Plaintiff argues that this opinion is an "outlier" and that numerous federal courts have held that it is appropriate to look to Rule 4 to fill in the gaps of Rule 45 as to what constitutes proper service with respect to a foreign entity.  *Id*. at 12-13 (citing *Sanchez Y Martin*, 2018 WL 2387580, at *3;  *Paisley Park Enters., Inc. v. Boxill*, 2019 WL 1036059, at *3 (D. Minn. Mar. 5, 2019); *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams*., 262 F.R.D. 293, 305 (S.D.N.Y. 2009);  *In re Subpoena Duces Tecum to Dunhuang Grp*., 2019 WL 2150947, at *5 (E.D. Mich. May 17, 2019);  *Mga Ent., Inc. v. Nat'l Prods*., 2011 U.S. Dist. LEXIS 161044, at *4, *9 (C.D. Cal. Dec. 20, 2011)).

Even if the Court finds that Pegatron Co. is beyond its subpoena power, Plaintiff argues, "PTSI and Pegatron USA must still produce those documents from Pegatron Co. over which they have practical access or control." *Id.* at 13 (citing *Sharma v. BMW of N. Am. LLC*, 2016 WL 1019668, at *4 (N.D. Cal. Mar. 15, 2016) for the proposition that "[a] subsidiary is required to produce documents from its parent company where the subsidiary has legal control over the documents.").  According to Plaintiff, there is "substantial evidence" that PTSI and Pegatron USA have "control" – defined as "the legal right to obtain documents upon demand" – over "(i) PTSI's contractual relationship with both Pegatron Co. and Apple for the provision of iPhone repair; (ii) PTSI's litigation efforts on behalf of its parent company; and (iii) Pegatron USA's servicing of

8

existing Pegatron Co. clients." *Id.* (quoting *Sharma*, 2016 WL 1019668, at *4).

Moreover, a conclusory denial of control over any responsive documents by PTSI and Pegatron USA is not sufficient to avoid compliance with the Subpoena, Plaintiff argues. *Id.* (citing Pfefferbaum Motion Decl., Ex. 23 (transcript of October 3, 2017 discovery hearing before Judge Donna Ryu in *In re: Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR (N.D. Cal.)) at 31). Plaintiff argues that because PTSI and Pegatron USA must have access to the requested documents, which relate to Pegatron's sales data, to do their work, the Court should find that these subsidiaries have "legal control" over them and therefore, that they must be produced. *Id.* at 13-14. At a minimum, it asserts, the Court should order that PSTI and Pegatron USA produce the documents that are in their control, including any documents they have a legal right to obtain upon demand from Pegatron Co. *Id.* at 14.

Finally, Plaintiff argues that Pegatron Co. has repeatedly sought the protection of California courts when beneficial to its interests. *Id.* (citing Pfefferbaum Motion Decl., Exs. 21 (judgment of over $2.5 million in Pegatron Co.'s favor in *Pegatron Corp. v. Otto LLC*, No. 18CIV02981, (Cal. Super Ct. San Mateo Cnty.)); 22 (judgment of over $52 million in Pegatron Co.'s favor in *Pegatron Corp. v. Westinghouse Digit., LLC*, No. 30-2015-00786289-CU-BC-CJC, (Cal. Super. Ct. Orange Cnty.)); 24 (third party complain by Pegatron Co. in *Qualcomm Inc. v. Compel Elec. Inc.*, No. 3:17-cv-01010-GPC-MDD (S.D. Cal.)). Likewise, Plaintiff asserts, "when it was a named defendant in other cases, Pegatron Co. chose not to contest the Court's jurisdiction including in this Court as well as the Northern District of Georgia." *Id.* (citing Pfefferbaum Motion Decl., Exs. 25 and 26 (summons and motion to dismiss in *Via Licensing Corp. v. Pegatron Corp.*, No. 4:15-cv-04086-JSW (2017)); 27 and 28 (answer and discovery plan in *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Pegatron Corp.*, No. 1:18-cv-03701-ELR (N.D. Ga.)).

### 2. Opposition

Pegatron Co. argues that it is a foreign corporation and is not subject to jurisdiction in this Court. Opposition at 5.[1] To the extent that Plaintiff points to other cases in which Pegatron Co.

---

[1] In a supplemental brief filed by Pegatron, dkt. no. 146, it corrected an error in its original

United States District Court
Northern District of California

has appeared to show that it is subject to jurisdiction in this district, Pegatron contends "Plaintiff is misrepresenting the statements made by Pegatron Corporation in the exhibits cited by Plaintiff" because it "fails to consider that Pegatron consented to jurisdiction for the purposes of those cases alone and does not mean that it is now subject to that jurisdiction for the rest of Pegatron Corporation's existence." *Id.* at 4, 6. Pegatron does not specifically address any of the cases cited by Plaintiff, including the Wyoming case discussed above. However, it does state that "the primary case they rely on is a case from ten years ago[,]" apparently referring to the Wyoming case.[2]

Pegatron further dismisses Plaintiff's reliance on Google maps and an Apple Supplier List listing (or showing) "Pegatron Corporation" as being located at the Elk Grove address, arguing that these mistakes by third parties do not establish jurisdiction over Pegatron Co. *Id.* at 6. Further, Pegatron asserts, the mere fact that Pegatron Co. has U.S. subsidiaries does not establish jurisdiction over it as subsidiaries only give rise to jurisdiction where they are alter egos of the parent, which has not been demonstrated here. *Id.* at 6-7.

Next, Pegatron challenges Plaintiff's argument that Guinn was a proper person to serve as a "general manager" of Pegatron Co., an argument Pegatron contends is also improper because "Ms. Guinn's name never once came up during the meet and confer process." *Id.* at 10-11. On the merits, Pegatron casts doubt on the "general manager" standard Plaintiff cites, which is taken

_____

Opposition, which erroneously stated that Pegatron Co. contends it is a "domestic corporation and not subject to the jurisdiction of this Court." Opposition at 5. It is obvious from context that Pegatron intended to state that it is a "foreign" corporation, and the Court will consider that correction. Otherwise, the Court will not consider this improperly filed brief. Pegatron justifies the supplemental brief on the basis that it "did not have adequate time to respond to all the new arguments raised in Plaintiff's motion." The Court set an expedited briefing schedule to resolve the parties' dispute in a timely manner; if Pegatron was unable to respond on the Court's schedule it could have requested an extension of time to respond, which would have allowed Plaintiff to address all of Pegatron's arguments in its Reply brief. Pegatron did not do so and also said nothing in its Opposition brief about its inability to fully respond in the time allowed. Pegatron's supplemental brief is nothing more than an improper surreply.

[2] Neither of the declarations supplied by Pegatron in support of its Opposition addresses any changes with respect to Pegatron Co.'s business activities in this district over the last ten years; nor does Pegatron Co. state in its brief or offer any evidence that its activities in this district have decreased. The only evidence in the record suggests that Pegatron Co.'s activities in this district have increased. At oral argument, Pegatron stipulated that there is no evidence in the record that Pegatron Co.'s activities in this district have decreased over the last ten years.

United States District Court
Northern District of California

from *Khachatryan*. According to Pegatron, in that case, the court was addressing the propriety of service on a *defendant* and not on a non-party foreign corporation. *Id.* at 10. Even assuming the standard is correct, Pegatron contends, Plaintiff has presented insufficient evidence of Guinn's responsibilities because LinkedIn pages are often auto-generated. *Id.*[3] Pegatron further observes that "Plaintiff fails to provide whether they knew this prior to serving the subpoena on Ms. Guinn." *Id.* at 10-11.

Pegatron also contends that "it is simply not true" that Plaintiff could not locate an agent for service of process for Pegatron Co., citing a declaration by Pegatron's attorney stating that "PTSI's agent for service of process has been listed on the secretary of state website for the relevant periods of time" and that "PTSI had a filing identifying its agent for service of process dating back to August of 2020, four months prior because at the time the Subpoena was served." *Id.* at 11 (citing Jackson Decl. ¶ 8). Pegatron also provides a copy of an electronic filing reflecting that on August 26, 2020, it listed California Corporate Agents Inc. as PTSI's agent for service of process. Jackson Decl., Ex. G.[4]

Pegatron asserts that Plaintiff did not rely on the theory that service of the Subpoena through subsidiaries PTSI and Pegatron USA was proper in the meet-and-confer process and therefore the Court should not reach these arguments. Opposition at 4-5. Plaintiff's arguments as to service via the subsidiaries also fail on the merits, Pegatron contends. First, as to both subsidiaries, Pegatron argues that the cases Plaintiff cites for the proposition that an entity can be served through a subsidiary under Cal. Corp. Code section 2110 and Rule 4, including *U.S. ex rel. Miller v. Pub. Warehousing Co. KSC*, do not apply to service of subpoenas on non-party foreign entities, which is governed by the narrower Rule 45. *Id.* at 8-10, 14. Further, as to service on Pegatron Co. via PTSI, Pegatron contends service was improper because Plaintiff did not serve the Subpoena on PTSI's registered agent for service of process (discussed above) and because PTSI is

---

[3]Pegatron does not offer any evidence that Guinn's job description was auto-generated or that it does not accurately reflect her position or responsibilities. At oral argument, Pegatron's counsel conceded that there is no such evidence in the record and that the suggestion that Guinn's profile might have been auto-generated was based on his own experience creating his LinkedIn profile.
[4]However, at oral argument Pegatron conceded that Pegatron Co. (as opposed to PTSI) has no registered agent for service of process in California.

United States District Court
Northern District of California

not a "general manager." *Id.* at 11-13.

With respect to Plaintiff's argument that the relationship between Pegatron Co. and PTSI is sufficiently close to make PTSI a "general manager," Pegatron rejects Plaintiff's reliance on the contract between Apple, PTSI and Pegatron Co. (discussed above) and the insurance policy that covers both PTSI and Pegatron Co. for losses from the Elk Grove facility (also discussed above) as evidence of "frequency and quality of contact" between the parent and the subsidiary. *Id.* at 12. Likewise, Pegatron argues that newspaper articles cited by Plaintiff to establish the volume of repairs completed at the Elk Grove facility by PTSI do not provide sufficient evidence to show that Pegatron Co. derives "substantial benefit" from PTSI's activities in the forum. *Id.* According to Pegatron, there is also no evidence that PTSI acts as a "liaison between US customers and Pegatron Corporation," contrary to Plaintiff's assertion. *Id.* Nor has Plaintiff provided any "evidence to support that service to PTSI at its Elk Grove facility would result in actual notice to Pegatron Corporation," Pegatron contends. *Id.*

With respect to Pegatron USA, Pegatron argues that service was improper because the Subpoena that was served at the Fremont address (where Pegatron USA is based) was addressed to "Pegatron Corporation d/b/a Pegatron USA, Inc." Pegatron contends that the Subpoena erroneously names Pegatron USA, Inc. as a "d/b/a" when in fact, it is its own entity; more importantly, it argues that the subpoena was aimed *only* at Pegatron USA and not at Pegatron Co. *Id.* at 14. As a result, it contends, the Subpoena requires only that Pegatron USA produce responsive documents within its control. *Id.* at 14-15. According to Pegatron USA, it has no such documents, however. *Id.* at 15. In particular, in support of Pegatron's Opposition, it has supplied a declaration from its accounting manager of thirteen years, Rebecca Chen, stating that no employees of Pegatron USA "are working with [or have ever] had any contact with Apple as a Pegatron Corporation client." Chen Decl. ¶ 4.[5] She also states generally that "[t]he documents

---

[5] Paragraph 4, in its entirety, states as follows:

> [Pegatron USA] is in the business of providing technical support and business coordination to certain existing Pegatron Corporation customers. Throughout my 13 years of service [Pegatron USA] has operated for technical support and business coordination to certain

United States District Court
Northern District of California

United States District Court
Northern District of California

1    sought in the subpoena to [Pegatron USA] are not in control of [Pegatron USA]." *Id.* ¶ 5.

2         Pegatron goes on to argue that the document requests in the Subpoena are overbroad and

3    unduly burdensome. Opposition at 15-17. First, Pegatron contends the requests will impose a

4    great burden because they "request documents from over 7,000 employees spanning an entire year

5    relating to not just Apple information, but analysis, trends, forecasts and communications relating

6    to other non-relevant smart phone companies." *Id.* at 15. According to Pegatron, the likely

7    benefit of this production will be small, however, because "the bulk of the documents requested

8    can be recovered from Apple, which is a party to this case." *Id.* at 16.

9         Second, Pegatron represents based on conversations with Apple's counsel that "the parties

10   are currently negotiating a relevant time period for discovery purposes" and argues that it "would

11   be unjust and premature to require a non-party to undertake such a large discovery process when

12   the parties to this action have not yet determined the relevant time frame for the discovery in this

13   case." *Id.*; *see also* Jackson Decl. ¶ 5 ("During the meet and confer process, I spoke with counsel

14   from Apple regarding the case and the status of discovery in the underlying action. I was informed

15   on this call that Apple and Plaintiff were still in the process of determining a relevant time frame

16   for discovery purposes and that it should not extend through the entire year.").

17        Third, Pegatron argues that as a non-party, it should not be required to produce documents

18   that can be obtained from Apple, which is a party to the litigation. Opposition at 17 (quoting

19   *Calcor Space Facility, Inc v. Superior Court*, 53 Cal. App. 4th 216, 224-225 (1997) ("[a]s between

20   parties to litigation and non-parties, the burden of discovery should be placed on the latter only if

21   the former does not possess the material sought to be discovered."). It is inappropriate to seek

22   documents from a non-party without first trying to obtain these documents from Apple, Pegatron

23

24   ─────────────────────
          existing Pegatron Corporation customers. In fact, none of the [Pegatron USA] employees
25        are working with and have never had any contact with Apple as a Pegatron Corporation
          client.
26   Chen Decl. ¶ 4. To the extent that this description of Pegatron USA's activities is inconsistent
     with the description of Pegatron USA in Pegatron Corporation's 2019 Annual Report, describing
27   Pegatron USA as a "[s]ales and repair service center in North America," Pegatron states in its
     Opposition that "this is not the case and has not been the case for a very long time." Opposition at
28   1.

1    contends.  *Id.*

2        Finally, Pegatron argues that the costs of responding to the Subpoena must be shifted to

3    Plaintiff under *Legal Voice v. Stormans Inc.*, 738 F.3d 1178 (9th Cir. 2013) because the cost will

4    be significant.  *Id.* at 17-18.   In particular, Pegatron offers a quote for $300,000 to $400,000 to

5    search for and produce the requested documents.  Jackson Decl., Ex. I.

6        **3.  Reply**

7        In its Reply, Plaintiff contends Pegatron's objections to service of the Subpoena are

8    "facially baseless," highlighting Pegatron's suggestion that Guinn's description of herself as a

9    Pegatron Co. employee on her LinkedIn page was due to an algorithm, its attempts to disavow

10   statements in its own Annual Report and its representations to "multiple federal courts" that

11   Pegatron Co. operates in California, including in this district.  Reply at 1.  Plaintiff argues that any

12   evidence that might controvert the jurisdictional evidence it offered in support of the Motion

13   relates to Pegatron's own operations and thus Pegatron could have offered such evidence in

14   support of its Opposition brief, yet it failed to do so.  *Id.*  In a footnote, it requests that if the Court

15   finds that the jurisdictional question is not ripe for decision, it be permitted to conduct limited

16   jurisdictional discovery.  *Id.* at 1 n. 3 (citing *Lang Van, Inc. v. VNG Corp.*, 669 F. App'x 479, 480

17   (9th Cir. 2016)).

18       Plaintiff further asserts that even Pegatron's own evidence supports Plaintiff's position.  *Id.*

19   at 1-2.  For example, it contends the statement in the Chen Declaration that Pegatron USA "is in

20   the business of providing technical support and business coordination to certain existing Pegatron

21   Corporation customers" shows that Pegatron USA serves as a liaison between customers in the

22   United States and Pegatron Co.  *Id.* at 1-2 (citing Chen Decl. ¶ 4).

23       Plaintiff also rejects Pegatron's assertion that Rule 4 does not apply to service of a

24   subpoena on a foreign corporation, arguing that the vast majority of courts has looked to Rule 4

25   when addressing service on a corporation under Rule 45.  *Id.* at 2.  According to Plaintiff, this

26   Court agreed with that approach in *NGV Gaming, Ltd. v. Upstream Point Molate*, LLC, 2009 WL

27   4258550, at *2 (N.D. Cal. Nov. 24, 2009) (stating that "[u]nder Federal Rule of Civil Procedure

28   4(h) and 45(b), a subpoena directed to a corporation or unincorporated association may be served

United States District Court
Northern District of California

by delivering a copy to an officer, managing agent, general agent, or any other agent authorized by appointment or by law, and mailing a copy to the defendant."). *Id.* at 2.

With respect to the question of whether Pegatron Co. has sufficient minimum contacts in the forum to give rise to personal jurisdiction, Plaintiff again points to the Wyoming case, statements in *Pegatron Tech. Serv., Inc. v. Zurich Am. Ins. Co.*, No. 5:18-cv-01477-LHK (N.D. Cal.) indicating that the Elk Grove facility is jointly operated by Pegatron Co. and PTSI, the Apple Supplier List, Guinn's LinkedIn job description, the description of the facility at Elk Grove as "Pegatron Corporation" on Google maps, and evidence that over 1,000 Pegatron employees work at the Elk Grove location repairing up to 30,000 iPhones a day pursuant to the contract between Apple, Pegatron Co. and PTSI. *Id.* at 3-5. Moreover, Plaintiff asserts, having researched Pegatron Co.'s legal presence and business activities in the United States and at the Elk Grove facility, it had a reasonable basis to believe Pegatron Co. conducted business there and that Guinn – who accepted service on behalf of Pegatron Co. – was apparently in charge, which is all that is required under California law. *Id.* at 4-6 (citing Pfefferbaum Motion Decl., Ex. 12 (proof of service at Elk Grove facility); *Halo Elecs. Inc. v. Bel Fuse Inc.*, 2010 WL 2605195, at *3, (N.D. Cal. June 28, 2010)).

Plaintiff also rejects Pegatron's arguments as to service through its subsidiaries. It reiterates its argument that both PTSI and Pegatron USA have a sufficiently close relationship to Pegatron Co. to be considered a "general manager" for purposes of service. *Id.* at 7-10. According to Plaintiff, Pegatron did not even try to establish in its Opposition that Pegatron USA is a separate entity and conceded that Pegatron USA "provide[s] technical support and business coordination to certain existing Pegatron [Co.] customers." *Id.* at 8-9. Nor did Pegatron dispute that the subpoena was left with Pegatron USA's registered agent for service of process, Plaintiff contends. *Id.* Instead, Plaintiff asserts, Pegatron resorted to "semantic" arguments based on the reference to Pegatron USA using the term "d/b/a" on the Subpoena. *Id.* at 9. According to Plaintiff, it is clear that the Subpoena was directed to Pegatron Co. through service on Pegatron USA and the subpoena that was served at the Fremont address was properly served. *Id.*

Likewise, Plaintiff argues that "Pegatron provides no evidence for why PTSI cannot be

served at the Elk Grove location as a general manager for the same reasons Pegatron USA can be served." *Id.* at 10.  Plaintiff further asserts that the mere fact that PTSI was not identified on the Subpoena as the general manager for Pegatron Co. does not render service defective under California law.  *Id.* (citing *Xun v. Daimler AG*, 2020 U.S. Dist. LEXIS 224600, at *5 (C.D. Cal. Sept. 3, 2020)).  Nor does California law require that Plaintiff must have served PTSI's registered agent for service of process in order for service to be valid, Plaintiff contends.  *Id.*  Rather, "California law permits service on a corporation through many individuals beyond the company's registered agent." *Id.* (citing Cal. Code Civ. Proc. § 416.10(b)).

Plaintiff argues that the Court should reject Pegatron's arguments about the purported undue burden of responding to Plaintiff's record requests, as well as Pegatron's argument that costs should be shifted to Plaintiff, because during the meet and confer process Pegatron did not engage in meaningful discussions or substantiate these costs, instead insisting that Pegatron Co. could not be served and rejecting Plaintiff's offer to re-serve the Subpoena in a manner acceptable to Pegatron.  *Id.* at 10-11; Pfefferbaum Reply Decl. ¶ 2.  In any event, it asserts, the requests are not overly burdensome.  Reply at 11-12.  In particular, Plaintiff argues, Pegatron's objections on this basis are conclusory, its argument that the relevant time period has not been decided is incorrect, and the fact that some documents may also be in Apple's possession is not a proper basis for objection.  *Id.*

Finally, Plaintiff argues that Pegatron's request for costs is premature and further contends it has not demonstrated that the costs that it will incur are "significant" in the context of this case. *Id.* at 12-13.  As to the cost estimate offered by Pegatron of $300,000 to $400,000, Plaintiff contends it is "based on untested assertions, and improper requests for unnecessary costs, such as more than $300,000 for 'review' . . . – an activity that should not even be necessary if proper custodians and search terms are used." *Id.* at 14. Further, to the extent Pegatron seeks to shift the cost of its attorneys' fees, Plaintiff contends that it is inappropriate to shift the cost of *fighting* a subpoena, rather than complying with it, to the propounding party.  *Id.*

## III.   ANALYSIS

### A.   Legal Standards

"Personal jurisdiction over a non-party served with a subpoena *duces tecum* is obtained by a court pursuant to Rule 45(c)" of the Federal Rules of Civil Procedure. *In re Jee*, 104 B.R. 289, 293 (Bankr. C.D. Cal. 1989) (citing *Ghandi v. Police Department of the City of Detroit*, 74 F.R.D. 115, 120 (E.D. Mich. 1977); *Elder–Beerman Stores Corp. v. Federated Department Stores, Inc.*, 45 F.R.D. 515, 516 (S.D.N.Y.1968)). If the non-party named in the subpoena is a corporation, the corporation is amenable to service in any forum within which the corporation has sufficient minimum contacts. *Id.* (citing *Ghandi*, 74 F.R.D. at 121 (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)); and *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408 (1984)).

Rule 45 of the Federal Rules of Civil Procedure provides that "[s]erving a subpoena requires delivering a copy to the named person" but does not elaborate on how delivery is to be accomplished. Fed. R. Civ. P. 45(b)(1). "Most courts interpret 'delivering' as requiring personal service." *Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, No. 17CV1943 LAB (JMA), 2018 WL 2387580, at *3 (S.D. Cal. May 24, 2018) (citing Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, § 11:2272 (2018 rev.)). Thus, many courts have looked to Rule 4 of the Federal Rules of Civil Procedure, governing service, to determine the requirements for serving a subpoena on a corporation (whether foreign or domestic) within the United States. *Id.* (citing *In re Grand Jury Subpoenas Issued to Thirteen Corps.*, 775 F.2d 43, 46 (2d Cir. 1985)); *see also Paisley Park Enterprises, Inc. v. Boxill*, No. 17-CV-1212 (WMW/TNL), 2019 WL 1036059, at *3 (D. Minn. Mar. 5, 2019) (looking to Rule 4 to determine whether subpoena served on a corporation was properly served); *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 305 (S.D.N.Y. 2009) (same); *In re Subpoena Duces Tecum to Dunhuang Grp.*, No. CV 17-10964, 2019 WL 2150947, at *5 (E.D. Mich. May 17, 2019) (same).

Under Rule 4, a corporation may be served by "delivering a copy of the [subpoena] to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so

17

United States District Court
Northern District of California

1  requires—by also mailing a copy to the [person to whom the subpoena is directed]." Fed. R. Civ.

2  P. 4(h)(1)(B).  Further, Rule 4 authorizes service in the manner approved under state law. Fed. R.

3  Civ. P. 4(h)(1)(A), 4(e)(1).

4  In California, service on a corporation may be made upon "a general manager, or a person

5  authorized by the corporation to receive service of process."  Cal. Code Civ. Proc. §416.10(b)

6  (addressing service on "[c]orporations generally").  "A related service-of-process statute,

7  California Corporations Code . . . § 2110, permits service of process upon a foreign corporation

8  transacting business in California by serving 'its general manager in this state.'" *U.S. ex rel. Miller*

9  *v. Pub. Warehousing Co. KSC*, 636 F. App'x 947, 948 (9th Cir. 2016).  The term "general

10  manager" is not defined in either statute, but California courts have found that the term includes

11  any agent of the corporation "of sufficient character and rank to make it reasonably certain that the

12  defendant will be apprised of the service made."  *Gibble v. Car-Lene Rsch., Inc*., 67 Cal. App. 4th

13  295, 313 (1998) (citations omitted).

14  A "general manager" may be an individual or an entity.  *Khachatryan v. Toyota Motor*

15  *Sales, U.S.A., Inc*., 578 F. Supp. 2d 1224, 1227 (C.D. Cal. 2008).  Thus, a California entity may be

16  found to be a "general manager" where the foreign corporation's relationship with the California

17  entity gives the foreign corporation "substantially the business advantages that it would have

18  enjoyed if it conducted its business through its own offices or paid agents in the state[.]" *Id*.

19  (citations and internal quotations omitted).   In *Miller*, the Ninth Circuit found that although

20  California courts have been "less than perfectly consistent[,]" they have generally found that a

21  subsidiary may properly be served as a "general manager" where: 1) "the parent corporation was

22  foreign and otherwise not readily available for service within California[;]" and 2) there [is] "a

23  sufficiently close connection with the parent[,] [which] depends upon the frequency and quality of

24  contact between the parent and the subsidiary, the benefits in California that the parent derives

25  from the subsidiary, and the overall likelihood that service upon the subsidiary will provide actual

26  notice to the parent."  *U.S. ex rel. Miller v. Pub. Warehousing Co. KSC*, 636 F. App'x 947, 949

27  (9th Cir. 2016) (citations omitted).

28

**B.     Whether Plaintiff Properly Served Pegatron Co. at the Elk Grove Address Based on its Own Business Operations in the District**

Plaintiff contends it properly served Pegatron Co. directly when it served the Subpoena at the Elk Grove address on December 14, 2020.  The Court agrees.

First, the Court finds that Plaintiff has presented sufficient evidence to establish that Pegatron Co. is amenable to service in this district based on its business operations here.  In particular, Plaintiff has presented evidence that Pegatron Co. jointly operates the Elk Grove facility with PSTI to provide services to Apple under a contract that includes both Pegatron Co. and PTSI; that PTSI and Pegatron Co. are both covered for losses at the Elk Grove facility under Pegatron's insurance policy;  that Apple, which is a major partner of Pegatron Co., considers the Elk Grove facility to be a Pegatron Co. operation; that Sabrina Guinn considers herself to be an employee of Pegatron Co. and accepted service of the subpoena on behalf of Pegatron Co.;  and that Pegatron provides repair services to Apple at the Elk Grove facility on a large scale.

While Pegatron attempts to discredit Plaintiff's evidence, it fails to offer any meaningful evidence to rebut it as to the nature and extent of Pegatron Co.'s activities in this forum. Particularly telling are Pegatron Co.'s representations to the court in the Wyoming case that there is jurisdiction in this district based on Pegatron Co.'s business operations here.  Rather than merely consenting to jurisdiction in that case, as Pegatron now contends, Pegatron Co. affirmatively represented to the court in the Wyoming case that jurisdiction existed in the Northern District of California based on the technical support and service facilities Pegatron Co. operates here.   Furthermore, while Pegatron attempts to dismiss this representation on the basis that it was made ten years ago, Pegatron concedes that there is no evidence in the record that Pegatron Co.'s business operations in the Northern District of California have decreased during that period. Indeed, the only evidence in the record suggests that they have increased as a result of Pegatron Co. and PTSI entering into a contract to provide services to Apple in this district.

The Court further concludes that Sabrina Guinn was properly served as a "general manager" of Pegatron Co. Sabrina Guinn represents on her LinkedIn page that she: (i) is "[r]esponsible for insuring Pegatron Corporation a direct supplier of Apple, appropriately manages all security risks"; (ii) is "responsible for the safety and security of over 1000 employees"; and (iii)

is "[r]esponsible for budgeting and billing of $2.5 million dollar security contract for Pegatron/Apple's security needs." Pfefferbaum Motion Decl., Ex. 7. Pegatron's suggestion that this description of Guinn's position and affiliation with Pegatron Co. might be auto-generated is far-fetched, and Pegatron Co. has offered no evidence that the job description is not accurate. The Court therefore finds that Guinn is an agent of the corporation "of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made." *Gibble v. Car-Lene Rsch., Inc.*, 67 Cal. App. 4th 295, 313 (1998) (citations omitted).

**C.    Whether Plaintiff Properly Served Pegatron Co. by Serving Subsidiary Pegatron USA**

Even if the Court were to find that Pegatron Co. is not itself conducting sufficient business operations in the forum to be served directly, the Court finds that the Subpoena was properly served indirectly based on service of Pegatron USA at the Fremont address.

As a preliminary matter, the Court rejects Pegatron's argument that the Subpoena served at the Fremont address was not directed to Pegatron Co. but only to Pegatron USA because it lists the person to whom the Subpoena is directed as "Pegatron Corporation d/b/a Pegatron USA, Inc. c/o Ing Tsau Chiu, 39510 Paseo Padre Parkway, Suite 380, Fremont, CA 94538." Pfefferbaum Motion Decl., Ex. 11. Any ambiguity that might arise from the use of "d/b/a" is entirely dispelled by Attachment A to the Subpoena explicitly listing "Pegatron Corporation" in the header and defining "you" and "your" with reference to "Pegatron Corporation" and *not* Pegatron USA. This purely semantic argument has no merit.

The Court further finds that Pegatron USA is a "general manager" of Pegatron Co. for the purposes of service under California law. "Whether an entity constitutes a corporation's general manager in California depends on the particular facts of the case." *Halo Elecs., Inc. v. Bel Fuse Inc.*, No. CIV. C-07-06222 RMW, 2010 WL 2605195, at *1 (N.D. Cal. June 28, 2010) (citing *Cosper v. Smith & Wesson Arms Co.*, 53 Cal.2d 77, 83 (1959)). In *Cosper*, the California Supreme Court addressed whether gun manufacturer Smith & Wesson, Inc., a Massachusetts corporation, could be served by serving an independent "manufacturer's representative" based in California that provided services on Smith & Wesson's behalf under a non-exclusive contract. 53

Cal. 2d at 79-80.  The court found that it could.  First, it concluded that the business conducted through the manufacturer's representative was sufficient to establish minimum contacts with the forum with respect to Smith & Wesson, finding that "even though self-employed[,]"  the California company "had a continuing arrangement for the distribution and sale of [Smith & Wesson's] products throughout [California]" and that Smith & Wesson  "had retained [the] manufacturer's representative . . . for the promotion of sales, for the servicing of dealer accounts, and for the distribution of advertising material which defendant furnished in furtherance of its selling activity." *Id.* at 82.

The court in *Cosper* further found that the manufacturer's representative was a "general manager" for the purposes of service under the California Corporations Code.  *Id.* at 84.  It explained that the "essential factor" was that the manufacturer's representative was in its "selling and advertising activities  . . . performing services for Smith & Wesson and providing it with the opportunity for 'regular contact with its customers and a channel for a continuous flow of business into the state.'"  *Id.* (quoting *Sales Affiliates, Inc. v. Superior Court*, 96 Cal.App.2d 134, 136 (1950)).  This arrangement, the court reasoned, gave Smith & Wesson "substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state," *id.*  (internal quotation and citation omitted) and therefore this arrangement was sufficient to make the manufacturer's representative a "general manager" for purposes of service of process on Smith & Wesson.  *Id.*  "California and federal courts have found that *Cosper* remains good law" even though the Court of Appeal has "acknowledged the 'anomaly' that agents without 'any real control over their principals' might be considered 'general managers.'" *Laukat v. ABB, Inc*., No. CV 19-09436-CJC(EX), 2020 WL 3213759, at *3 (C.D. Cal. Feb. 20, 2020) (citation omitted).

In *Halo Electronics*, the court looked to *Cosper* in deciding whether service on a foreign company was adequate based on service of the complaint on a wholly-owned California subsidiary.  *Halo Elecs., Inc. v. Bel Fuse Inc*., No. CIV. C-07-06222 RMW, 2010 WL 2605195, at *1 (N.D. Cal. June 28, 2010).  The court in that case concluded that the subsidiary, like the manufacturer's representative in *Cosper*, was a "general manager" of the foreign corporation for

United States District Court
Northern District of California

1   the purposes of service. *Id.* at *2. The court pointed to evidence that the subsidiary acted as a

2   "liaison" between customers in the United States and the foreign company, fielding calls from

3   United States customers who encountered problems with the parent company's products and

4   referring them on to the parent's quality department, as well as responding to inquiries from

5   potential and existing United States customers by communicating their requests to the parent. *Id.*

6   These "ties [were] closer and stronger than the casual, non-exclusive relationship between the gun

7   manufacturer and its California representative in *Cosper*[,]" the court found, and demonstrated that

8   there would be "ample regular contact between [the parent and the subsidiary] and that contact

9   would be of sufficient rank and character to make it reasonably certain that [the foreign

10  corporation] would be appraised of the service of process" on the subsidiary. *Id.*

11          Here, Pegatron USA is described as a "sales and repair center" in the 2019 Pegatron Co.

12  Annual Report. Pfefferbaum Motion Decl., Ex. 5. While Pegatron contends the statement in its

13  own annual report is actually incorrect and that Pegatron USA has not provided sales and repair

14  services for Pegatron Co. in a "very long time[,]" Opposition at 1, the activities that Pegatron

15  concedes are conducted by Pegatron USA are nonetheless sufficient to show that it is a "general

16  manager" under California law. In particular, Pegatron represented in the joint discovery letter

17  that Pegatron USA "is in the business of providing technical support and business coordination to

18  certain existing Pegatron customers[.]" Dkt. No. 131 (Joint Discovery Letter) at 3. Likewise, it

19  supplied a declaration by Pegatron USA's Accounting Manager, Rebecca Chen, stating that

20  Pegatron USA "has operated for technical support and business coordination to certain existing

21  Pegatron Corporation customers." Chen Decl. ¶ 4. This evidence is sufficient to demonstrate that

22  Pegatron USA, like the subsidiary in *Halo*, acts as a liaison between customers in the United

23  States and Pegatron USA, giving Pegatron Co. "substantially the business advantages that it would

24  have enjoyed if it conducted its business through its own offices or paid agents in the state[.]"

25  *Khachatryan v. Toyota Motor Sales, U.S.A., Inc*., 578 F. Supp. 2d 1224, 1227 (C.D. Cal. 2008).

26  As in *Halo*, these ties ensure that there is contact of sufficient rank and character to make it

27  reasonably certain that Pegatron Co. would be appraised of the service of process on Pegatron

28  USA. The fact that Pegatron USA apparently does not engage in sales or business development

1    for Pegatron Co. does not change this result.

2        Finally, based on the specific circumstances of this case the Court rejects Pegatron's

3    argument that it is improper to rely on Rule 4 to fill in the gaps with respect to the adequacy of

4    service of the Subpoena under Rule 45. The Court recognizes that in some contexts it may not be

5    proper to rely on Rule 4 to determine what constitutes adequate service.  For example, in *F.T.C. v.*

6    *Compagnie De Saint-Gobain-Pont-a-Mousson*, the court found that while a complaint and

7    summons may be served abroad by registered mail under Federal Rule of Civil Procedure

8    4(i)(1)(D), it was not proper to serve a subpoena on a foreign citizen on foreign soil by registered

9    mail. 636 F.2d 1300, 1312-1313 (D.C. Cir. 1980).  The court distinguished between Rule 4, which

10   is aimed at providing notice, and Rule 45, which governs service of compulsory process,

11   compelling the recipient to do something and subjecting them to sanctions if they do not comply.

12   *Id.*  This is a particularly important distinction in international law, the court found, requiring

13   "judicial sensitivity to foreign territorial sovereignty when scrutinizing particular methods of

14   overseas service" of a subpoena under Rule 45. *Id.*  The court also found that Rule 45 is narrower

15   than Rule 4 because the latter "provides for a wide range of alternative methods of service,

16   including registered mail" while "Federal Rule 45(c), governing subpoena service, does not permit

17   any form of mail service, nor does it allow service of the subpoena merely by delivery to a

18   witness' dwelling place." *Id.*

19       Similarly, in *Fujikura Ltd. v. Finisar Corp.*, the court found that service of a subpoena was

20   not proper where the subpoena was served by mail on a domestic subsidiary of a foreign

21   corporation.  No. 15-mc-80110 HRL (JSC), 2015 WL 5782351, at *7 (N.D. Cal. Oct. 5, 2015).

22   Following the majority of courts, the court in *Fujikura* found that Rule 45(b)(1) requires personal

23   service of a subpoena and went on to conclude that service of the subpoena by mail was thus

24   improper.  *Id.*  The court did not decide the question of whether the subsidiary could have been

25   served as a "general manager" under California law, though it noted that the cases that have

26   addressed such service have involved service of the complaint rather than a subpoena under Rule

27   45, "which has service requirements that courts have construed more narrowly." *Id.*  at 6.

28       In contrast to the cases discussed above, the Subpoena at issue in this case was not served

by alternative means; nor was it served on foreign soil.  As a consequence, the differences between service of notice under Rule 4 and service of compulsory process under Rule 45 that were implicated in the cases discussed above are not an important factor here.  Under the circumstances of this case, the undersigned concludes that it is appropriate to look to Rule 4 to fill in gaps as to what constitutes adequate service of the Subpoena.[6]

Therefore, the Court concludes that even if direct service on Pegatron Co. at the Elk Grove address was not proper, service of the Subpoena indirectly through Pegatron USA was adequate.[7]

## IV.    CONCLUSION

For the reasons stated above, the Court concludes that service of the Subpoena was valid and that subject to any modifications to Plaintiff's requests made during the meet-and-confer process or by the undersigned following the parties' good faith efforts to resolve their disputes as to the scope of the requests, Pegatron Co. will be required to comply with the Subpoena.

**IT IS SO ORDERED.**

Dated: March 29, 2021

_____
JOSEPH C. SPERO
Chief Magistrate Judge

---

[6] The undersigned respectfully declines to take the approach to this issue that was taken in *Viasat, Inc. v. Space Sys./Loral, LLC*, No. 13-CV-2074-H (WVG), 2014 WL 12577593, at *5 (S.D. Cal. June 30, 2014).  In that case, the court found that as a general  matter it is improper to look to Rule 4 to determine whether service of a subpoena is proper under Rule 45 because of the "[s]ignificant differences [that] exist between service of process and service of a subpoena duces tecum on a non-party."  *Id.*   The court acknowledged that other courts in the same judicial district had analyzed service of a subpoena duces tecum under Rule 4, but "decline[d] to take that leap." *Id.* (citing *Rockwell Automation, Inc. v. Kontron Modular Computers*, No. 12CV566-WQH WMC, 2012 WL 5197934, at *1 (S.D. Cal. Oct. 19, 2012)).  The undersigned concludes that while there may be specific situations where the requirements of Rule 45 and Rule 4 diverge with respect to service, it is permissible to look to Rule 4 to fill in gaps where those divergences are not implicated, as many courts have done.

[7] Because the Court finds that service was proper on the grounds discussed above, it declines to reach Plaintiff's third theory, namely, that service on Pegatron Co. via PTSI was proper.

24