**Pages 1 - 12**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Joseph C. Spero, Magistrate Judge

IN RE APPLE INC. SECURITIES )
LITIGATION, )
   )
   ) **NO. C 19-02033-YGR (JCS)**
   )

San Francisco, California
Friday, March 26, 2021

**TRANSCRIPT OF REMOTE VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**: (Appearances via Zoom videoconference.)

For Plaintiffs:
    ROBBINS, GELLER, RUDMAN & DOWD LLP
    Post-Montgomery Center
    One Montgomery Street - Suite 1800
    San Francisco, California 94104
  BY: **DANIEL J. PFEFFERBAUM**
    **SHAWN A. WILLIAMS**
    **ATTORNEYS AT LAW**

For Defendants:
    ORRICK, HERRINGTON & SUTCLIFFE LLP
    405 Howard Street
    San Francisco, California  94105
  BY: **ARIEL B. WINAWER**
    **ATTORNEY AT LAW**

    ORRICK, HERRINGTON & SUTCLIFFE LLP
    777 South Figueroa Street - Suite 3200
    Los Angeles, California  90017
  BY: **KEVIN M. ASKEW**
    **ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
      Official Reporter, CSR No. 12219

**APPEARANCES:** (CONTINUED)

For Non-party Pegatron:
           STRUCTURE LAW GROUP, LLP
           1754 Technology Drive - Suite 135
           San Jose, California 95110
  BY: **AUSTIN T. JACKSON**
       **ATTORNEY AT LAW**

```
1    Friday - March 26, 2021                              9:53 a.m.
2                          P R O C E E D I N G S
3                                 ---o0o---
4         THE CLERK:  The next matter we're calling is
5    19-CV-2033, In Re:  Apple, Inc. Securities Litigation.
6         Counsel, would you please raise your hands.
7                                (Pause.)
8         THE CLERK:  Good morning.  Appearances please, first
9    starting with the plaintiff and the defendant, then the
10   non-party.
11        MR. PFEFFERBAUM:  Good morning, Your Honor.  Dan
12   Pfefferbaum from Robins Geller on behalf of the plaintiff,
13   Norfolk Pension -- Norfolk County Pension Fund.
14        THE COURT:  All right.
15        MR. WILLIAMS:  Good morning, Your Honor.  Shawn
16   Williams, Robbins Geller Rudman & Dowd, on behalf of lead
17   plaintiff.
18        THE COURT:  All right.
19        MR. ASKEW:  Good morning, Your Honor.  Kevin Askew on
20   behalf of defendants.
21        MS. WINAWER:  Good morning, Your Honor.  Ariel Winawer
22   on behalf of defendant.
23        MR. JACKSON:  Good morning, Your Honor.  Austin
24   Jackson on behalf of non-party.
25        THE COURT:  All right.  So I had a series of
```

1   questions.  I guess it is undisputed -- well, here is my --
2   Mr. Jackson, in your brief, you say that the plaintiff also
3   argued that "It served Pegatron Corporation at the Elk Grove
4   facility through Ms. Guinn because it could not locate an agent
5   for service of process, which is simply not true."
6       Is there an agent for service of process for Pegatron that
7   they can serve?
8           **MR. JACKSON:**  There is an agent for service of process
9   for PTSI who would have been the proper person to serve, rather
10  than just the manager that's working there.
11          **THE COURT:**  I see.  So if they had served the agent
12  for service of process for PTSI, that would have been effective
13  service on Pegatron; is that what you're saying?
14          **MR. JACKSON:**  No, Your Honor.  I still believe that
15  that's an improper service --
16          **THE COURT:**  Okay.
17          **MR. JACKSON:**  -- because PTSI is not an agent or
18  manager.  Sorry.
19          **THE COURT:**  Well, then I recommend that you not try to
20  mislead the Court in your briefs.  Because your brief says that
21  "Plaintiff argued that it served Pegatron by serving Ms. Guinn
22  because it could not locate an agent for service of process,
23  which is simply not true," suggesting agent for service of
24  process for Pegatron.
25      Your brief is replete with these exaggerations and I've

got to tell you, you've got to be careful about this.

Let me ask you my next question.

So it's undisputed then that Pegatron does not have and did not have an agent designated for service of process in California; right?

**MR. JACKSON:** Correct, Your Honor.

**THE COURT:** Okay. And there is no evidence in the record, is there, that Ms. Guinn's LinkedIn job description was auto-generated or inaccurate; right?

**MR. JACKSON:** No, Your Honor. That's based off of personal experience. When I created my LinkedIn profile, it auto-generated my experience and my title that popped up as my bio.

**THE COURT:** Well, I'm delighted with your personal experience, but that's not record evidence.

**MR. JACKSON:** Understood, Your Honor.

**THE COURT:** And is there -- there is no evidence in the record, is there, that Pegatron's activities in the Northern District of California have decreased materially in the past 10 years, is there?

**MR. JACKSON:** I'm sorry, Your Honor. I'm not understanding the question.

**THE COURT:** There is no evidence in the record that Pegatron's activities, Pegatron Company -- Corporation, activities in the Northern District of California have

1  decreased materially in the past 10 years?
2      **MR. JACKSON:**  I'm not sure what "material" would be,
3  Your Honor.  I know that they have -- they've consented to
4  jurisdiction in limited cases, but I don't necessarily know if
5  there is -- that there is a material increase or decrease, Your
6  Honor.
7      **THE COURT:**  There is no evidence in the record of a
8  decrease, is there?
9      **MR. JACKSON:**  Not that I'm aware of, Your Honor.
10     **THE COURT:**  Okay.  And, again, the "consented to
11  jurisdiction in particular cases," again, that's one where I
12  don't know if it's a mistake or you're doing it intentionally;
13  but I actually read the briefs in the case in Wyoming and they
14  clearly say that they are subject to jurisdiction, not that
15  they consented to jurisdiction.  There was another company that
16  consented to jurisdiction, but not with respect to Pegatron.
17  So I think that that's actually false.
18     So you've got to be very careful about this.
19     So here is where I'm going with this:  My tentative is to
20  grant the motion.  I think this is about scope, not about
21  whether or not Pegatron has to produce documents.  I think that
22  the subpoena is overbroad, but I wouldn't rule on that issue at
23  this time because I don't think the parties have negotiated,
24  because Pegatron has taken such a hard line on the case, on the
25  subpoena.

1     I think that this is really about a negotiation about the
2  scope.  I think the scope needs to be narrowed to what the
3  subpoenaing party really needs.  And that if that's done, then
4  it will be a much more manageable search for Pegatron, and it
5  will be directly relevant to the issues in the case.
6     I don't -- in guidance for that, I would say, you know, I
7  don't think that -- that it's not an excuse for produce -- for
8  not producing that Apple or somebody who's party to the case or
9  some other non-party has the documents.  That's not an excuse
10 for non-producing.  Nonetheless, it seems to me that if you --
11 that should be a narrower scope and a much more refined scope.
12    And I can see counsel is nodding his head.
13    This should be something that the parties can work out.  I
14 know that you haven't really had much of a chance to do that.
15 I'm going to give you the chance.
16    But that's -- my tentative is to grant the motion.  I've
17 obviously read everything in the record, as you can tell from
18 my questions.  I'm happy to hear any brief argument, if you
19 have something that you wanted to emphasize that, perhaps, I've
20 missed.
21    **MR. JACKSON:**  I would just like to point out, Your
22 Honor, that I understand your points and they are well taken --
23 that there is a discovery mechanism in place to properly serve
24 Pegatron, and that serving a subsidiary just because there is a
25 subsidiary is improper.

1  The plaintiff could do a letter interrogatory and have it
2  served through the proper channels to get directly to Pegatron,
3  rather than serving it on subsidiaries in a state -- it's akin
4  to going into a Volkswagen dealership, going to the service
5  department, and serving a subpoena on the service department to
6  get documents that are in control of the parent company
7  regarding production of the vehicles moving forward.
8  So my point, Your Honor, is that there are options
9  available; that the parties to this action haven't completed
10 their discovery; that it's a very broad, broad motion,
11 Your Honor; and that I -- that the plaintiffs have failed to
12 meet the burden to prove that PTSI or PGUSA are agents or
13 general managers for the Pegatron Corporation, Your Honor.
14 Thank you.
15 **THE COURT:**  Well, I don't think they have to.  I mean,
16 I think they actually served Pegatron directly by serving
17 Guinn.  And I think there is sufficient context with respect to
18 Pegatron U.S.A., by admission, frankly.  So I'm not buying any
19 of those arguments.
20 But I also find it always disturbing when a company comes
21 in and says "You can serve us, but you did it improperly.  I
22 want you to go through a process that will take six months."  I
23 just -- that is something that is, in my judgment -- while it
24 is legally proper, is gamesmanship; and I'm not going to
25 tolerate it.

1    But, in any event, I think that they have well met their
2 burden.  It's clear that Pegatron has sufficient contacts in
3 the district itself.  It is clear that the evidence is -- the
4 only evidence is that they properly served the general manager
5 by serving Ms. Guinn.  And that, in any event, the --
6 Pegatron U.S.A. is described by Pegatron itself as its sales
7 and repair center in 2019.  So despite the fact that you put in
8 your brief, without any evidence, that maybe it didn't do that
9 anymore, et cetera, et cetera, I'm not really interested in
10 what your brief says, but the evidence in the record is to the
11 contrary.
12    Not only that, but Ms. Chen admitted in her declaration
13 that Pegatron provides coordination with Pegatron --
14 Pegatron U.S.A. provides coordination with and technical
15 support for Pegatron customers meeting the standard for general
16 manager under California law.  And I do think California law
17 can be applied here.  I think that that's -- I'm going to go
18 with the majority of the cases that use Rule 4.
19    So I'm going to grant the motion.
20    But I've got to tell you, I expect both sides to do great
21 compromises in trying to limit the scope of this, but produce
22 documents under the subpoena.
23    It's not going to be cheap.  I'm sure it's also not going
24 to be $3- or $400,000.  I'm sure you don't have to search all
25 7,000 employees.  That's just an exaggeration.

1      So I expect that the non-party will comply with the
2 subpoena, and be generous with its response; but I also expect
3 the plaintiff to narrow their requests during the meet and
4 confer.  I want you both to do that.
5      So here is what we're going to do:  We're going to set a
6 date right now for a Zoom meeting in which you two are going to
7 work out -- or you four or how many number of people you
8 want -- are going to work out -- and I'll write an order on
9 this; but I want to set a date right now on the meet and confer
10 by Zoom to work out the scope of the subpoena.
11      So I would like it to happen soon, you know, the -- but,
12 you know, it doesn't have to happen this week or next week.
13 But is there a time in the next, say, 30 days, when counsel are
14 available?  Anyone have a suggestion?
15          **MR. PFEFFERBAUM:**  Counsel -- I'm sorry, Your Honor.
16 Plaintiff's counsel, Your Honor, are available starting Monday
17 to commence these Zoom negotiations.  We can -- we'll
18 essentially make our team available as soon as Pegatron is
19 willing to get back on videoconference.
20          **THE COURT:**  So, Mr. Jackson, when would you be ready
21 for that?  You may need to talk to your client.
22          **MR. JACKSON:**  Yes, Your Honor.  I am going to need to
23 talk to my client and discuss with them and get back.  I
24 probably wouldn't be able to meet next week just -- because I
25 have hearings Monday and Tuesday so I'm not going to be able to

1   have a conversation with my client until Wednesday/Thursday.
2   So if we could push to the second -- that second week of April,
3   I'm generally available on those dates.
4           **THE COURT:** All right.  If that's all right with
5   everyone, I'll order that the parties meet and confer by Zoom
6   to resolve issues regarding the scope of the subpoena the week
7   of April 5.  And you guys can figure out exactly what day
8   you're going to do it.
9       I assume that will work out all of the problems regarding
10  scope, including that it's narrow enough so that there is no
11  legitimate argument that the cost burden should be shifted;
12  however, if there is something left at the end, you know, a
13  very narrow question that you want to submit to the Court, or a
14  very narrow question, such as cost shifting, that you want to
15  submit to the Court, prepare a joint letter.  And what -- I'd
16  like for that joint letter to be submitted within five days of
17  the meet and confer Zoom meeting.
18      You know, you're welcome to move your -- to start your
19  Zoom meeting and continue it, but whenever the Zoom meetings
20  conclude, within five days, I'd like you to file a joint letter
21  on anything that's left.  You know, just looking at this, there
22  shouldn't be anything left.  You know, these kinds of fights,
23  once which get down to the issue -- I've no issue with the
24  parties for debating on whether or not service was proper,
25  et cetera, et cetera; that's a legal question proper for the

1  Court.
2      On scope, you know, the Federal Rules of Civil Procedure
3  don't work if lawyers don't compromise on scope issues.
4      So I expect you to work everything out.  If there is one
5  or two narrow issues that you need to by bring to me, you can
6  bring it to me by filing a joint letter five days after the
7  meet and confer meeting.
8      Okay.  Any other questions?
9          **MR. PFEFFERBAUM:**  No questions, Your Honor.
10         **THE COURT:**  Okay.
11         **MR. JACKSON:**  None, Your Honor.
12         **THE COURT:**  Okay.  Thank you, all.
13         **MR. JACKSON:**  Thank you, Your Honor.
14         **MR. PFEFFERBAUM:**  Thank you.
15         **THE CLERK:**  Court stands in recess.
16             (Proceedings adjourned at 10:07 a.m.)
17                         ---o0o---
18                  **CERTIFICATE OF REPORTER**
19         I certify that the foregoing is a correct transcript
20  from the record of proceedings in the above-entitled matter.
21  DATE:   Saturday, April 3, 2021
22
23
    _____
24      Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
             Official Reporter, U.S. District Court
25