ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
JOHN H. GEORGE (292332)
KENNETH J. BLACK (291871)
HADIYA K. DESHMUKH (328118)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
jgeorge@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com
    – and –
MARK SOLOMON (151949)
TOR GRONBORG (179109)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
torg@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re APPLE INC. SECURITIES LITIGATION | ) <br> ) <br> ) |
| | ) |
| This Document Relates To: | ) <br> ) |
|     ALL ACTIONS. | ) <br> ) <br> ) |

Case No. 4:19-cv-02033-YGR

CLASS ACTION

LEAD PLAINTIFF'S NOTICE OF MOTION
AND MOTION TO CERTIFY CLASS,
APPOINT CLASS REPRESENTATIVE AND
APPOINT CLASS COUNSEL;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

DATE:     September 14, 2021
TIME:     2:00 p.m.
CTRM:    1, 4th Floor
JUDGE:    Hon. Yvonne Gonzalez Rogers

4826-9329-1752.v1

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................1

I.     INTRODUCTION ....................................................................................1

II.    STATEMENT OF FACTS .......................................................................2

III.   THE PROPOSED CLASS REPRESENTATIVE ...................................4

IV.    ARGUMENT ............................................................................................5

       A.     The Standards for Class Certification ...........................................5

       B.     This Case Meets the Requirements of Rule 23(a) .........................6

              1.     The Class Is Sufficiently Numerous ..................................6

              2.     Questions of Law and Fact Are Common to the Class .......6

              3.     Norfolk Pension Fund's Claims Are Typical of the Class ..7

              4.     Norfolk Pension Fund Will Fairly and Adequately Protect the
                     Interests of the Class .........................................................9

       C.     The Proposed Class Meets the Requirements of Rule 23(b)(3) .....10

              1.     Common Questions of Law and Fact Predominate .............10

              2.     Class Members' Reliance on Defendants' Fraudulent
                     Misrepresentations and Omissions Is Presumed ................12

                     a.     Apple's Average Trading Volume Provides Strong Indicia
                            of Market Efficiency ..............................................13

                     b.     Analyst Coverage of Apple Provides Strong Indicia of
                            Market Efficiency ...................................................14

                     c.     Market Makers Provide Strong Indicia of Market
                            Efficiency ...............................................................14

                     d.     Apple's Eligibility to File Forms S-3 Registration
                            Statements Provide Strong Indicia of Market Efficiency ...15

                     e.     Apple's Price Reaction to New Material Information
                            Demonstrates Market Efficiency ...........................15

              3.     Apple Will Be Unable to Rebut the Presumption of Reliance with
                     Evidence of the Absence of Price Impact ..........................17

1

2                                                                                                    **Page**

3

4.     The Event Study Methodology Is Capable of Measuring Damages
       on a Class-wide Basis ...................................................................................18

5.     A Class Action Is Superior to Other Available Methods for the
       Efficient Adjudication of This Case .........................................................18

V.     CONCLUSION...........................................................................................................20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Affiliated Ute Citizens v. United States*,
    406 U.S. 128 (1972) ................................................................................................16, 17

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .............................................................................................5, 10, 11

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013) ................................................................................................. *passim*

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ...................................................................................7

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ................................................................................................11, 12, 17

*Brown v. China Integrated Energy, Inc.*,
    2015 WL 12720322 (C.D. Cal. Feb. 17, 2015) ...........................................................14

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) ............................................................................ *passim*

*City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
    2018 U.S. Dist. LEXIS 175573 (N.D. Cal. Oct. 11, 2018) .............................................6, 9, 18

*Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*,
    660 F.3d 1170 (9th Cir. 2011),
    *aff'd*, 568 U.S. 455 (2013) ....................................................................................5

*Di Donato v. INSYS Therapeutics, Inc.*,
    333 F.R.D. 427 (D. Ariz. 2019) .............................................................................13, 15, 16

*Dickey v. Advanced Micro Devices, Inc.*,
    2019 U.S. Dist. LEXIS 8740 (N.D. Cal. Jan. 17, 2019) ..........................................7, 8

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) ................................................................................................8, 11, 12, 17

*Escott v. Barchris Constr. Corp.*,
    340 F.2d 731 (2d Cir. 1965) ...................................................................................19

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968) ...................................................................................19

1

2                                                                          **Page**

3

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)......................................................................................11, 12, 17, 18

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .........................................................................................7

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ...........................................................................................8

*Hatamanian v. Advanced Micro Devices, Inc.*
2016 U.S. Dist. LEXIS 34150 (N.D. Cal. Mar. 16, 2016)........................................6, 17

*Hodges v. Akeena Solar, Inc.*,
274 F.R.D. 259 (N.D. Cal. 2011) ...................................................................................13

*In re Banc of Cal. Sec. Litig.*,
326 F.R.D. 640 (C.D. Cal. 2018) ..............................................................................11, 18

*In re Cooper Cos. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) ................................................................................6, 19

*In re Countrywide Fin. Corp. Sec. Litig.*,
273 F.R.D. 586 (C.D. Cal. 2009) ...................................................................................14

*In re Diamond Foods, Inc., Sec. Litig.*,
295 F.R.D. 240 (N.D. Cal. 2013)..............................................................................5, 15, 18

*In re Dynex Corp., Inc. Sec. Litig.*,
2011 WL 781215 (S.D.N.Y. Mar. 7, 2011) ...................................................................13

*In re LendingClub Sec. Litig.*,
282 F. Supp. 3d 1171 (N.D. Cal. 2017) ...................................................................7, 9, 18

*In re Merck & Co., Sec. Derivative & ERISA Litig.*,
2013 U.S. Dist. LEXIS 13511 (D.N.J. Jan. 30, 2013) ...............................................16

*In re NYSE Specialists Sec. Litig.*,
260 F.R.D. 55 (S.D.N.Y. 2009) ......................................................................................19

*In re Petrobras Sec. Litig.*,
312 F.R.D. 354 (S.D.N.Y. 2016),
*vacated in part on other grounds*, 862 F.3d 250 (2d Cir. 2017)...........................................10

*In re SanDisk LLC Sec. Litig.*,
2018 U.S. Dist. LEXIS 157177 (N.D. Cal. Sept. 4, 2018) ............................................18

**Page**

*In re Scientific-Atlanta, Inc. Sec. Litig.,*
   571 F. Supp. 2d 1315 (N.D. Ga. 2007) ................................................................16

*In re Silver Wheaton Corp. Sec. Litig.,*
   2017 WL 2039171 (C.D. Cal. May 11, 2017) ........................................................8

*In re Smith Barney Transfer Agent Litig.,*
   290 F.R.D. 42 (S.D.N.Y. 2013) .............................................................................16

*In re Twitter Inc. Sec. Litig.,*
   326 F.R.D. 619 (N.D. Cal. 2018) .............................................................................7

*Kennedy v. Tallant,*
   710 F.2d 711 (11th Cir. 1983) ................................................................................19

*Krogman v. Sterritt,*
   202 F.R.D. 467 (N.D. Tex. 2001) ...............................................................14, 15, 16

*Leyva v. Medline Indus., Inc.,*
   716 F.3d 510 (9th Cir. 2013) ..................................................................................11

*Luna v. Marvell Tech. Grp., Ltd.,*
   2017 WL 4865559 (N.D. Cal. Oct. 27, 2017) ......................................................6, 7

*Parra v. Bashas', Inc.,*
   536 F.3d 975 (9th Cir. 2008) ....................................................................................7

*Ret. Sys. v. Sonoco Prods. Co.,*
   270 F.R.D. 247 (D.S.C. 2010) ................................................................................14

*Rodriguez v. Hayes,*
   591 F.3d 1105 (9th Cir. 2010) ..................................................................................8

*Rougier v. Applied Optoelectronics, Inc.,*
   2019 U.S. Dist. LEXIS 198919 (S.D. Tex. Nov. 13, 2019)....................................16

*SEB Inv. Mgmt. AB v. Symantec Corp.,*
   335 F.R.D. 276 (N.D. Cal. 2020).................................................................6, 17, 18

*Tyson Foods, Inc. v. Bouaphakeo,*
   577 U.S. 442 (2016)................................................................................................11

*Villanueva v. Liberty Acquisitions Servicing, LLC,*
   319 F.R.D. 307 (D. Or. 2017) .................................................................................11

**Page**

*Vinh Nguyen v. Radient Pharm. Corp.*,
    287 F.R.D. 563 (C.D. Cal. 2012) ...........................................................................................14

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
    325 F.R.D. 280 (D. Minn. 2018)............................................................................................16

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017)......................................................................................13, 14, 15, 17

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) ................................................................................................10

*Wong v. Arlo Techs.*,
    2021 U.S. Dist. LEXIS 58514 (N.D. Cal. Mar. 25, 2021)......................................................8

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 10b-5 .............................................................................................................................1
    Rule 23 .........................................................................................................................1, 5, 19
    Rule 23(a) ..................................................................................................................... *passim*
    Rule 23(a)(2) ......................................................................................................................6, 7
    Rule 23(a)(3) .........................................................................................................................7
    Rule 23(a)(4) ......................................................................................................................9, 10
    Rule 23(b) ..........................................................................................................................5, 10
    Rule 23(b)(3) ................................................................................................................ *passim*
    Rule 23(g) .................................................................................................................2, 10, 20

17 C.F.R.
    §239.13................................................................................................................................15
    §240.10b-5 ...........................................................................................................................1

**NOTICE OF MOTION AND MOTION**

TO:     ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on September 14, 2021, at 2:00 p.m., before the Honorable Yvonne Gonzalez Rogers, United States District Judge, at the United States District Court, Northern District of California, Oakland Division, 1301 Clay Street, Courtroom 1, 4th Floor, Oakland, California 94612, Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund ("Plaintiff" or "Norfolk Pension Fund") hereby brings this Motion pursuant to Federal Rule of Civil Procedure 23 for class certification, appointment of class representative and appointment of class counsel.  This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Shawn A. Williams ("Williams Decl."), the Declaration of Alexander Younger ("Younger Decl.") (Ex. 1),[1] the Report on Market Efficiency of Steven P. Feinstein ("Feinstein Report") (Ex. 2), the [Proposed] Order filed herewith, and any additional materials and arguments that may be submitted by Plaintiff in further support of this Motion, the pleadings and filings herein and such other evidence, written or oral, as may be presented.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), Plaintiff hereby moves the Court for certification of a class of purchasers of Apple securities to pursue claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, against Defendants.[2]  The Class is defined as:

All persons and entities who purchased or otherwise acquired the publicly traded securities of Apple Inc. during the period from November 2, 2018 through January

---

[1]    All "Ex. _" citations herein are to the Williams Decl., filed concurrently herewith.

[2]    "Defendants" are Apple Inc. ("Apple" or the "Company") and "Individual Defendants" Chief Executive Officer Timothy D. Cook ("Cook") and Chief Financial Officer Luca Maestri.

2, 2019, inclusive (the "Class Period"), and who suffered damages by Defendants' alleged violations of §§10(b) and 20(a) of the Exchange Act.[3]

Plaintiff also respectfully moves this Court for an order appointing Norfolk Pension Fund as Class Representative and, pursuant to Fed. R. Civ. P. 23(g), appointing Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.

## II.    STATEMENT OF FACTS

In April 2019, this action was initially filed by City of Roseville Employees' Retirement System against Apple and the Individual Defendants.  ECF No. 1.  As set out in detail in the operative Revised Consolidated Class Action Complaint for Violation of the Federal Securities Laws (ECF No. 114) ("Complaint"), Defendants made material misrepresentations and omissions in violation of the federal securities laws between November 2, 2018 and January 2, 2019, inclusive.  Specifically, in September 2018, with the backdrop of declining economic conditions is China and a sharp decline in demand for expensive smartphones in China, Apple launched its most expensive iPhones ever, the XS and XS Max.  ¶14.[4]  In October 2018, Apple launched yet another iPhone, the XR, a less expensive version designed to compete with Chinese smartphone manufacturers who were making more competitively-priced smartphones with similar features.  ¶¶14, 19.  Demand for all of these phones was reportedly muted due to weakening economic conditions in China and strong competition.  ¶66.  On November 1, 2018, when Apple reported its 4Q18 financial results and set expectations for 1Q19, investors were concerned about the demand impact of worsening economic conditions in China, Apple's largest growth market.  ¶¶53-59.  When asked about the Company's business in China, Cook falsely assured the market that Apple's business there was not being affected by widely publicized trade tensions with the United States and decelerating economic conditions affecting other emerging markets.  ¶56.

---

[3]    Excluded from the Class are: (i) Apple and the Individual Defendants; (ii) members of the families of each Individual Defendant; (iii) officers and directors of Apple; and (vi) the legal representatives, heirs, successors or assigns of any such excluded party.

[4]    All "¶_" citations herein are to the Complaint unless otherwise indicated.

1        In addition to the alleged misrepresentations concerning business and demand for iPhones

2 in China, Cook reported that the September 2018 launch of the new premium iPhone XS and XS

3 Max "were off to a really great start."  ¶57.  Cook added, despite taking pre-orders for the iPhone

4 XR beginning on October 19, 2018 and launching on October 26, 2018, the Company had

5 insufficient data to assess sales performance for the iPhone XR.  *Id.*[5]  Investors accepted

6 Defendants' November 1, 2018 assurances, with analysts immediately reporting that "demand

7 trends [we]re solid for the three new iPhone models" (¶61), and that "Apple continues to see solid

8 growth in EM [*i.e.*, emerging market] countries like China" (¶63).

9        Within days of the November 1, 2018 statements, some of the truth about demand for the

10 new iPhones began to leak into the marketplace.  *See* ¶¶68-74.  A series of negative reports

11 revealed that Apple had already slashed orders from its supply chain partners, signaling weak

12 demand for the newly released iPhones.  ¶68.  For example, on November 5, 2018, the *Nikkei*

13 *Asian Review* reported that Apple reduced iPhone XR production by **100,000 iPhones per day** at

14 its largest manufacturers in China, Foxconn and Pegatron.  *Id.*  The same day, *Barron's* reported

15 demand for the iPhone XR was down from 20% to 25% from the original forecast.  ¶70.  On

16 November 12, 2018, Wells Fargo reported that Apple component supplier Lumentum cut its

17 outlook, reflecting a 30% cut in iPhone demand.  ¶¶29, 74.  On December 4, 2018, *Bloomberg*

18 reported that in **October 2018**, before the Class Period, Apple made marketing changes in a "fire

19 drill" response to weak iPhone XS and XS Max sales.  ¶¶31, 78.

20        On January 2, 2019, Apple pre-announced its first revenue miss in more than 15 years in a

21 shareholder letter reporting that 1Q19 revenue expectations would be missed by up to $9 billion.

22 ¶¶33, 82.  The cause of the miss was weak iPhone sales in China.  ¶¶82-83.  In fact, according to

23 Cook, 100% of the Company's revenue decline occurred in China, and nearly all of it was due to

24

---

25 [5]   The Court's November 4, 2020 Order granted Defendants' motion to dismiss alleged
misrepresentations concerning the launch of the iPhone XS, XS Max and XR statements.  ECF
26 No. 123 at 11.  Despite the Court's dismissal of these statements as inactionable, they contributed
to the false impression that sales in it its largest growth market, Greater China, to which the iPhone
27 XR was specifically targeted, were going well and not being impacted by the slowing economic
conditions.
28

1  poor iPhone sales in China.  ¶83.  Despite Cook's November 1, 2018 assurances that business in

2  China was strong, he admitted that Apple knew of negative trends in China throughout the quarter,

3  which began on September 30, 2018.  *Id.*  According to Cook, economic conditions in China began

4  declining in the "second half" of 2018, *i.e.*, since July 2018, and Apple had seen evidence of

5  deceleration in its business in China throughout the quarter, including declining traffic in Apple

6  retail stores in China, its channel partner stores in China, as well as reports of the smartphone

7  industry contracting in China.  ¶83.

8        Investors were enraged by the belated revelation of the truth.  For example, analysts and

9  news media impugned Cook's credibility and accused Defendants of misleading investors:

10   •   "*Cook said two months ago that Apple's China business was 'very strong,'* even

11        amid signs of an economic slowdown . . . .  *Why didn't Cook make any of these
        admissions before now?*"  ¶86.

12   •   *Apple "failed to keep it real with investors about what they were seeing in iPhone

13        demand data in late 2018*."  ¶89.

14  As a result of the eventual disclosure of the truth, Apple's stock price plummeted more than $15.00

15  per share, or 10%, causing substantial damages to Plaintiff and the Class.  ¶111.

16  **III.    THE PROPOSED CLASS REPRESENTATIVE**

17        On June 19, 2019, Norfolk Pension Fund was appointed Lead Plaintiff under the Private

18  Securities Litigation Reform Act of 1995.  ECF No. 113.  Norfolk Pension Fund, headquartered in

19  Norwich, England, is part of the United Kingdom's Local Government Pension Scheme and

20  provides pensions and pension benefits for its members and their families following retirement or

21  disability.  Its members include people who work for the Norfolk County Council, local colleges

22  and town parish council.  Norfolk Pension Fund purchased or acquired 39,617 shares of Apple

23  common stock during the Class Period at allegedly artificially inflated prices as high as $196.94

24  per share.  *See* Younger Decl., ¶2; Ex. 3.

25        Norfolk Pension Fund has vigorously pursued the claims in this litigation on behalf of the

26  putative Class and has closely monitored and directed the litigation, including appearing at Court

27  hearings on the lead plaintiff motions and the motion to dismiss.  Plaintiff is also experienced in

28  leading securities class action cases.  In fact, Norfolk Pension Fund lead a securities class action

1    through a rare trial in February 2019, and secured a jury verdict in *Hsu v. Puma Biotech Sec. Litig.*,

2    No. 8:15-cv-00865-DOC-SHK (C.D. Cal.); *see Norfolk Pension Fund wins rare US securities*

3    *fraud class action injury trial*, Institutional Asset Manager (Feb. 19, 2019, 10:39 AM),

4    https://www.institutionalassetmanager.co.uk/2019/02/19/273208/norfolk-pension-fund-wins-

5    rare-us-securities-fraud-class-action-jury-trial.

6    **IV.    ARGUMENT**

7       **A.    The Standards for Class Certification**

8          To certify a class action under Rule 23, the Court must find, by a preponderance of

9    evidence, that each of the prerequisites under Rule 23(a), as well as one of the requirements under

10   Rule 23(b) – here, Rule 23(b)(3) – are satisfied.  *See* Fed. R. Civ. P. 23; *Amchem Prods., Inc. v.*

11   *Windsor*, 521 U.S. 591, 615 (1997).  Under Rule 23(a), a court may certify a class where "(1) the

12   class is so numerous that joinder of all members is impracticable; (2) there are questions of law or

13   fact common to the class; (3) the claims or defenses of the representative parties are typical of the

14   claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

15   the interests of the class."  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires "that the questions of law

16   or fact common to class members predominate over any questions affecting only individual

17   members, and that a class action is superior to other available methods for fairly and efficiently

18   adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

19          As Supreme Court and Ninth Circuit authority make clear, the inquiry at the class-

20   certification stage is not concerned with whether the plaintiff will ultimately prevail on the merits,

21   but rather whether the requirements of Rule 23 are met.  *See Conn. Ret. Plans & Tr. Funds v.*

22   *Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011), *aff'd*, 568 U.S. 455 (2013).  Questions regarding

23   the merits "'may be considered to the extent – but only to the extent – that they are relevant to

24   determining whether the Rule 23 prerequisites for class certification are satisfied.'"  *In re Diamond*

25   *Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 245 (N.D. Cal. 2013) (quoting *Amgen Inc. v. Conn. Ret.*

26   *Plans & Trust Funds*, 568 U.S. 455, 466 (2013));[6] *see also City of Miami Gen. Emps.' & Sanitation*

27

28   _____
     [6]    All citations and footnotes omitted and emphasis added unless otherwise indicated.

1   *Emps.' Ret. Tr. v. RH, Inc.*, 2018 U.S. Dist. LEXIS 175573, at *6 (N.D. Cal. Oct. 11, 2018);

2   *Hatamanian v. Advanced Micro Devices, Inc.* 2016 U.S. Dist. LEXIS 34150, at *10 (N.D. Cal.

3   Mar. 16, 2016).

4         For the reasons set forth herein, the requirements of Rule 23(a) and (b)(3) are satisfied

5   because the Class comprised of purchasers of Apple securities (common stock and options) is

6   sufficiently numerous, Norfolk Pension Fund is a more than adequate representative and its claims

7   are common to the Class, proposed Class Counsel is well-qualified, common questions of law and

8   fact predominate and a class action is superior to alternative methods for fair and efficient

9   adjudication.  Accordingly, class certification is appropriate.

10        **B.      This Case Meets the Requirements of Rule 23(a)**

11               **1.      The Class Is Sufficiently Numerous**

12        In the Ninth Circuit, courts routinely hold that numerosity is satisfied when the class

13   contains 40 members.  *See Hatamanian*, 2016 U.S. Dist. LEXIS 34150, at *11; *In re Cooper Cos.*

14   *Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).  This low threshold is readily cleared in securities

15   cases where the defendant company has millions of shares of stock outstanding or traded during

16   the class period.  *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 283 (N.D. Cal. 2020)

17   (600,000 shares outstanding); *Hatamanian*, 2016 U.S. Dist. LEXIS 34150, at *11 (700 million

18   shares outstanding); *Cooper*, 254 F.R.D. at 634 (36 million shares outstanding).

19        Here, Apple shares are traded on the Nasdaq and the Company had more than 4.7 billion

20   shares outstanding during the Class Period.  Feinstein Report, ¶¶26, 87.  At least 4,000 institutions

21   owned Apple stock and on average, more than 46 million shares changed hands daily and 229

22   million shares weekly throughout the Class Period.  *Id.*, ¶¶57, 58, 66.  From these facts, it is readily

23   apparent that there are likely thousands of members of the Class – far more than needed to satisfy

24   the numerosity requirement.  *See Luna v. Marvell Tech. Grp.*, *Ltd.*, 2017 WL 4865559, at *6 (N.D.

25   Cal. Oct. 27, 2017) (500 million shares traded during the class period satisfies numerosity).

26               **2.      Questions of Law and Fact Are Common to the Class**

27        Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."

28   Fed. R. Civ. P. 23(a)(2).  Commonality does not mandate that all class members make identical

1  claims and arguments.  *See In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1179 (N.D. Cal.

2  2017).  "'So long as there is even a single common question, a would-be class can satisfy the

3  commonality requirement of Rule 23(a)(2).'"  *Id.*; *see also Parra v. Bashas', Inc.*, 536 F.3d 975,

4  978 (9th Cir. 2008) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

5  Defendants' material misrepresentations and omissions injured each Class member who

6  purchased or acquired Apple securities in the open market during the Class Period.  Virtually all

7  of the questions of law or fact at issue are common between Norfolk Pension Fund and all others

8  in the proposed Class, including, for example: (i) whether the November 1, 2018 conference call

9  contained material misrepresentations and omissions concerning the Company's financial

10  condition, specifically, demand for the iPhone and the strength of Apple's business in Greater

11  China; (ii) whether the Company failed to disclose material information concerning the state of its

12  business and economic conditions in Greater China; (iii) whether the alleged misrepresentations

13  and omissions were made with scienter; and (iv) whether Defendants' misrepresentations and

14  omissions caused Class members' damages.  Each of these is a common question to which Class-

15  wide proceedings will "'generate common *answers* apt to drive resolution of the litigation.'"

16  *Dickey v. Advanced Micro Devices, Inc.*, 2019 U.S. Dist. LEXIS 8740, at *7 (N.D. Cal. Jan. 17,

17  2019) (emphasis in original); *see also In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 626 (N.D. Cal.

18  2018) (finding commonality satisfied where "'investors were [allegedly] defrauded by the same

19  misleading statements over the same period of time, and suffered similar losses as a result'")

20  (quoting *Luna*, 2017 WL 4865559, at *2).

21  Because absent Class members would have to prove nearly identical facts and address

22  nearly identical legal issues if they pursued their claims individually, the proposed Class satisfies

23  the commonality requirement of Rule 23(a)(2).

24  **3.    Norfolk Pension Fund's Claims Are Typical of the Class**

25  Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties

26  are typical of the claims and defenses of the class."  Fed. R. Civ. P. 23(a)(3).  That standard is

27  "permissive" and class members' claims "need not be substantially identical."  *Hanlon*, 150 F.3d

28  at 1020; *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).  "'The test of typicality

1   is whether other members have the same or similar injury, whether the action is based on conduct

2   which is not unique to the named plaintiffs, and whether other class members have been injured

3   by the same course of conduct.'"   *Dickey*, 2019 U.S. Dist. LEXIS 8740, at * 9 (quoting *Hanon v.*

4   *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).   Typicality is thus "'satisfied when each

5   class member's claim arises from the same course of events, and each class member makes similar

6   legal arguments to prove the defendant's liability.'"   *Id.* at *10 (quoting *Rodriguez v. Hayes*, 591

7   F.3d 1105, 1124 (9th Cir. 2010)).

8          Norfolk Pension Fund's claims are typical of, if not identical to, claims of the absent Class

9   members and proof of these claims will be based on similar evidence and legal theories.   For

10   example, Norfolk Pension Fund alleges that Defendants violated the Exchange Act by

11   misrepresenting or omitting material facts concerning the strength of its business in Greater China

12   including demand for its marquee product, the iPhone.   ¶¶18, 33-35, 66.   Like the absent Class

13   members, Norfolk Pension Fund purchased or acquired Apple securities during the Class Period

14   at allegedly artificially inflated prices.   *See* Younger Decl., ¶2; Ex. 3.   Like the absent Class

15   members, Plaintiff is presumed – by virtue of its purchase of Apple stock in an efficient market –

16   to have relied upon Defendants' misrepresentations and omissions.   *See Erica P. John Fund, Inc.*

17   *v. Halliburton Co.*, 563 U.S. 804, 811 (2011) ("*Halliburton I*").   And, like all other Class members,

18   Norfolk Pension Fund was injured when the price of Apple stock declined on the disclosure of the

19   true facts previously concealed by the alleged fraud.   *Wong v. Arlo Techs.*, 2021 U.S. Dist. LEXIS

20   58514, at *14 (N.D. Cal. Mar. 25, 2021) ("Lead Plaintiff's claims are typical, if not identical, to

21   those of the class because he purchased or acquired Arlo stocks at (allegedly) artificially inflated

22   prices during the relevant time period and suffered accompanying losses."); *In re Silver Wheaton*

23   *Corp. Sec. Litig.*, 2017 WL 2039171, at *7 (C.D. Cal. May 11, 2017) (plaintiffs were typical

24   because "like all members of the proposed [c]lass, plaintiffs purchased Silver Wheaton common

25   stock during the [c]lass [p]eriod and were allegedly damaged by the same misstatements and

26   omissions").

27

28

### 4. Norfolk Pension Fund Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a) requires plaintiffs to establish that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "'To determine whether a plaintiff will adequately serve the class, courts consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *City of Miami*, 2018 U.S. Dist. LEXIS 175573, at *10 (quoting *LendingClub*, 282 F. Supp. 3d at 1182).

Norfolk Pension Fund is not antagonistic to, or in conflict with, the interests of the proposed Class members. Norfolk Pension Fund purchased Apple securities during the Class Period and sustained losses as a result of the same alleged material misrepresentations and omissions as absent Class members. Norfolk Pension Fund has also proven its willingness and ability to take an active role in, and control of, the litigation to protect the interests of the absent Class members. *Younger Decl.*, ¶3. Indeed, Norfolk Pension Fund has pursued the Class' claims through initially seeking appointment as lead plaintiff and stepping into that role when the appropriate class period was identified in the Court's June 2, 2020 Order. *See* ECF No. 110. Norfolk Pension Fund: (i) understands the responsibilities of serving as a class representative in a securities class action; (ii) has reviewed key pleadings in this action; (iii) intends to continue to supervise and monitor the progress of this litigation; and (iv) intends to continue working with Robbins Geller to maximize the recovery to the Class. *Younger Decl.*, ¶¶4-5. Norfolk Pension Fund has a substantial financial stake in this litigation and has already demonstrated, and will continue to demonstrate, its adequacy through its participation in this litigation.

Norfolk Pension Fund has also retained attorneys with considerable experience in securities class actions and complex litigation, demonstrating that they and counsel will continue to zealously and competently represent the interests of all Class members. Indeed, Robbins Geller has served as class counsel in scores of class actions throughout the United States and some of the most significant federal securities class actions recovering billions for defrauded investors, including: *In re Enron Corp. Sec. Litig.*, No. H-01- 3624 (S.D. Tex.) (recovering in excess of $7.2 billion for

1    investors); *Jaffe v. Household Int'l, Inc.*, No. 02-C-05893 (N.D. Ill.) (largest securities class action

2    settlement following a trial: $1.575 billion); *In re Am. Realty Cap. Props., Inc. Litig.*, 1:15-mc-

3    00040 (S.D.N.Y.) (recovering $1.025 billion for investors); *In re Valeant Pharms. Int'l, Inc. Sec.*

4    *Litig.*, No. 3:15-cv-07658 (D.N.J.) (recovering more than $1 billion) and *Smilovits v. First Solar,*

5    *Inc.*, No. 2:12-cv-00555 (D. Ariz.) (recovering more than $350 million).  Ex. 4.  In addition, in

6    February 2019, with Norfolk Pension Fund as lead plaintiff and class representative, Robbins

7    Geller secured a jury verdict in plaintiffs' favor in a securities class action trial.  *Puma*, No. 8:15-

8    cv-00865-DOC-SHK (C.D. Cal.).

9         The prerequisite of Rule 23(a)(4) and requirement of Rule 23(g) are satisfied, and

10   Plaintiff's choice of counsel should be appointed as Class Counsel pursuant to Rule 23(g).

11   **C.    The Proposed Class Meets the Requirements of Rule 23(b)(3)**

12        In addition to meeting the prerequisites of Rule 23(a), a class action must also satisfy at

13   least one of the three conditions imposed by Rule 23(b).  Rule 23(b)(3) authorizes certification

14   where: (i) "the questions of law or fact common to class members predominate over any questions

15   affecting only individual members"; and (ii) "a class action is superior to other available methods

16   for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This action

17   satisfies Rule 23(b)(3) because "the interests of the class members are aligned and the same alleged

18   misconduct underlies their claims" and the thousands of members who comprise the Class "have

19   a minimal interest in controlling the course of the litigation; there are significant efficiency gains

20   to be reaped from concentrating the litigation in a single forum; and the likely difficulties in

21   managing the class action are readily surmountable."  *In re Petrobras Sec. Litig.*, 312 F.R.D. 354,

22   363 (S.D.N.Y. 2016), *vacated in part on other grounds*, 862 F.3d 250 (2d Cir. 2017).

23             **1.    Common Questions of Law and Fact Predominate**

24        "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

25   cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623; *Wang v. Chinese*

26   *Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013).  This inquiry is satisfied where "*questions* of

27   law or fact common to the class will 'predominate over any questions affecting only individual

28   members' as the litigation progresses."  *Amgen*, 568 U.S. at 467 (emphasis in original).  As the

Supreme Court held, "[p]redominance is a test readily met in certain cases alleging . . . securities [claims]." *Amchem*, 521 U.S. at 625; *see also Basic Inc. v. Levinson*, 485 U.S. 224 (1988). Indeed, the Supreme Court has recently confirmed that when:

> "[O]ne or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016). Therefore, a plaintiff "need not establish that there are no individual issues, only that the class issues predominate and that a class action is superior." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307, 332 (D. Or. 2017).

Here, there can be no reasonable dispute that questions of law and fact common to every Class member predominate, including: (i) whether Defendants issued false and misleading statements and omissions; (ii) whether Defendants acted with scienter; (iii) whether Apple securities traded at artificially inflated prices; and (iv) whether investors suffered damages as the truth was revealed. All of these issues are subject to common proof. *See Amgen*, 568 U.S. at 625. Moreover, the Supreme Court has clearly found that materiality and loss causation are "'common questio[ns]' for purposes of Rule 23(b)(3)" because "failure of proof" of any of these elements "would end the case" for all putative class members. *Id.* at 459-60, 467; *Halliburton I*, 563 U.S. at 813 (plaintiffs are not required to "show loss causation as a condition of obtaining class certification"); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 282 (2014) ("*Halliburton II*").

These numerous common questions are sufficient to demonstrate that the predominance standard of Rule 23(b)(3) is satisfied, as they easily predominate over any perceived or potential individual issues. *Amchem*, 521 U.S. at 625; *see In re Banc of Cal. Sec. Litig.*, 326 F.R.D. 640, 651-52 (C.D. Cal. 2018) ("It's well settled that 'the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).'") (quoting *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)).

1

2.      **Class Members' Reliance on Defendants' Fraudulent Misrepresentations and Omissions Is Presumed**

2

3      Norfolk Pension Fund has invoked the fraud-on-the-market presumption of reliance.  *See*

4  *Basic*, 485 U.S. at 246.  "The fraud-on-the-market premise is that the price of a security traded in

5  an efficient market will reflect all publicly available information about a company; accordingly, a

6  buyer of the security may be presumed to have relied on that information in purchasing the

7  security."  *Amgen*, 568 U.S. at 458; *see Halliburton II*, 573 U.S. at 272.  ("Even the foremost critics

8  of the efficient-capital-markets hypothesis acknowledge that public information generally affects

9  stock prices.").

10      In order to invoke the presumption, a class representative need merely establish that the

11  alleged misrepresentations were public, that the defendant's shares traded in an efficient market,

12  and that the class representative purchased shares "'between the time the misrepresentations were

13  made and the time the truth was revealed.'"  *Halliburton I*, 563 U.S. at 811; *Halliburton II*, 573

14  U.S. at 268; *Amgen*, 568 U.S. at 472.  Individual class members need not prove they actually relied

15  upon the alleged misrepresentations, as "anyone who buys or sells the stock at the market price

16  may be considered to have relied on those misstatements."  *Halliburton II*, 573 U.S. at 263.  Nor

17  do they need to establish loss causation or materiality to invoke the presumption.  *Halliburton I*,

18  563 U.S. at 812-13; *Halliburton II*, 573 U.S. at 265.  Here, Norfolk Pension Fund has established

19  the prerequisites to invoking the presumption.  The alleged misrepresentations were all made

20  publicly between November 2, 2018 and January 2, 2019, and Norfolk Pension Fund purchased

21  Apple securities during the Class Period.  Younger Decl., ¶2; Ex. 3.

22      Further, as detailed in the Feinstein Report, Apple securities traded in an efficient market.

23  Feinstein Report, ¶¶56-177.  In considering whether a stock is traded in an efficient market, courts

24  have generally considered five factors enunciated by the court in *Cammer v. Bloom*, 711 F. Supp.

25  1264, 1286-87 (D.N.J. 1989): (1) whether the stock trades at a high weekly volume; (2) whether

26  securities analysts follow and report on the stock; (3) whether the stock has market makers and

27  arbitrageurs; (4) whether the company is eligible to file United States Securities and Exchange

28  Commission ("SEC") Registration Statement Forms S-3; and (5) whether there are "empirical facts

1  showing a cause and effect relationship between unexpected corporate events or financial releases

2  and an immediate response in the stock price." *Id.*

3      While the *Cammer* court identified five factors that have been widely adopted as indicia of

4  market efficiency, in cases where it is undisputed that a company's shares trade on an open and

5  developed exchange like Nasdaq, a *Cammer* analysis is not required.  Indeed, that Apple was

6  widely traded on Nasdaq prior to, during and after the Class Period, supports a finding of market

7  efficiency.  *Id.* at 1292 (the Nasdaq is considered "'developed and efficient for virtually all the

8  securities traded there'"); *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 269 (N.D. Cal. 2011)

9  ("[p]laintiffs made a *prima facie* showing that the fraud-on-the-market presumption of reliance

10  applied because [p]laintiffs sufficiently established that Akeena's stock was actively traded on an

11  efficient market – the NASDAQ").  And even if a *Cammer* factor analysis is performed, direct

12  evidence of price impact under *Cammer* factor five is not necessary where, like here, strong indicia

13  of market efficiency exists.  *See Di Donato v. INSYS Therapeutics, Inc.*, 333 F.R.D. 427, 438 (D.

14  Ariz. 2019); *Waggoner v. Barclays PLC*, 875 F.3d 79, 97-98 (2d Cir. 2017).  Nevertheless, as set

15  forth below, analysis of each *Cammer* factor indicates that the market for Apple securities was

16  efficient during the Class Period.

### a.      Apple's Average Trading Volume Provides Strong Indicia of Market Efficiency

19      "Turnover measured by average weekly trading of two percent or more of the outstanding

20  shares would justify a strong presumption that the market for the security is an efficient one; one

21  percent would justify a substantial presumption."  *Cammer*, 711 F. Supp. at 1286.  During the

22  Class Period, the average weekly trading volume of Apple common stock was approximately 229.9

23  million shares, nearly 4.84% of the total shares outstanding.  Feinstein Report, ¶58.  Thus, Apple

24  securities exceed the benchmark commonly used by courts as an indication that trading transpired

25  in an efficient market.  *In re Dynex Corp., Inc. Sec. Litig.*, 2011 WL 781215, at *4 (S.D.N.Y. Mar.

26  7, 2011) ("There is a substantial presumption of market efficiency where 1% of the average

27  outstanding balance is traded, *i.e.* a 1% weekly turnover rate.").

28

1

2

     **b.**  **Analyst Coverage of Apple Provides Strong Indicia of**
        **Market Efficiency**

3

   Significant industry analyst coverage supports a finding of market efficiency as it

4

demonstrates that the security in question is closely reviewed by investment professionals who

5

make, buy or sell recommendations to investors. *Krogman v. Sterritt*, 202 F.R.D. 467, 475 (N.D.

6

Tex. 2001); *Cammer*, 711 F. Supp. at 1286. Here, at least 28 separate analyst firms covered Apple

7

during the Class Period and accordingly issued reports on the Company. Feinstein Report, ¶¶60-

8

63; *see City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*, 270 F.R.D. 247, 256 (D.S.C.

9

2010) (coverage by six analysts sufficient). Thus, Apple's significant analyst coverage also

10

supports market efficiency. *Brown v. China Integrated Energy, Inc.*, 2015 WL 12720322, at *17

11

(C.D. Cal. Feb. 17, 2015) (coverage by five analysts "weighs in favor of market efficiency").

12

     **c.**  **Market Makers Provide Strong Indicia of Market**
        **Efficiency**

13

   Market makers "'help[] establish a market for securities by reporting bid-and-asked

14

quotations . . . and . . . stand[] ready to buy or sell at these publicly quoted prices.'" *In re*

15

*Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 613-14 (C.D. Cal. 2009). Here, Apple

16

common stock was traded on the Nasdaq, which uses designated market makers to maintain

17

orderly trading and match bids and offers, enabling investors to trade continually during market

18

hours. *See* Feinstein Report, ¶¶71-74. In addition, the Nasdaq permits trading in most Nasdaq-

19

listed stocks through its market maker structure. *See id*. During the Class Period, in addition to

20

Apple trading on the Nasdaq, there were at least 133 market makers for Apple common stock. *Id.*,

21

¶72; *see Waggoner*, 875 F.3d at 94 (extent of market makers trading in the stock relevant to market

22

efficiency); *Vinh Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 572-73 (C.D. Cal. 2012)

23

(finding stock trading on New York Stock Exchange through designated market makers sufficient

24

to support market efficiency). These facts further support the conclusion that the market for Apple

25

securities was efficient during the Class Period.

26

27

28

#### d. Apple's Eligibility to File Forms S-3 Registration Statements Provide Strong Indicia of Market Efficiency

The SEC only permits the use of a Form S-3 Registration Statement by issuers whose securities are presumed to be actively traded and widely followed, as demonstrated by a history of making the required SEC filings and a market capitalization of more than $75 million.  17 C.F.R. §239.13.  Here, during the Class Period, Apple's market capitalization averaged $839 billion and its common stock float averaged $838 billion (both larger than 99% of all publicly-traded companies in the United States).  Feinstein Report, ¶¶84, 86-87.  During the Class Period, Apple was eligible to, and did, raise capital pursuant to a Form S-3 Registration Statement.  *Id.*, ¶¶75-81.

#### e. Apple's Price Reaction to New Material Information Demonstrates Market Efficiency

Evidence that the price of a security regularly reacts to unexpected corporate events or the issuance of financial releases about the issuer is strong evidence of an efficient market.  *See Cammer*, 711 F. Supp. at 1287.  While such evidence is not always required in cases where other indicia of market efficiency are apparent (*see, e.g.*, *Waggoner*, 875 F.3d at 99), Dr. Feinstein conducted an event study and a series of statistical analyses to determine whether Apple securities reacted to unexpected material information.  Feinstein Report, ¶¶93-139.  Indeed, Dr. Feinstein's event study analysis establishes that there is a consistent cause-and-effect relationship between the disclosure of material information and Apple stock price, thus further supporting a finding of market efficiency.  *Id.*, ¶¶140-142.  Event studies such as the one performed by Dr. Feinstein are regularly accepted by courts to demonstrate market efficiency under *Cammer* factor five.  *See, e.g.*, *Diamond Foods*, 295 F.R.D. at 249-50.

In addition to the *Cammer* factors, which all demonstrate an efficient market for Apple securities, courts also rely on the *Krogman* factors in considering whether there is an efficient market.  *See Di Donato*, 333 F.R.D. at 438 (citing *Krogman*, 202 F.R.D. at 474).  These include a company's market capitalization, the bid-ask spread and the percentage of stock not held by insiders (the float).  *Id.*; *Krogman*, 202 F.R.D. at 474.  Here, these factors further support a finding that Apple securities traded in an efficient market.  As identified above, during the Class Period, Apple had an average market capitalization of $839 billion and a public float of over $838 billion

(or more than 99.9% of outstanding shares), each higher than 99% of publicly-traded companies in the United States.  Feinstein Report, ¶¶80, 82.  Further, Apple shares had an average bid-ask spread of $0.02 (or 0.01%) per share, far narrower than the mean level among **all** other stocks monitored by the Center for Research in Security Prices (0.7% or $0.14).  Feinstein Report, ¶¶89-92.  Each of these facts supports a finding that the market for Apple shares was efficient.  *See Di Donato*, 333 F.R.D. at 441 (market efficiency demonstrated by $2.2 billion market cap, public float of 87.2% and bid-ask range of 0.12% to 0.36%).

Dr. Feinstein also analyzed each of the *Cammer* and *Krogman* factors for Apple's publicly-traded options and concluded that like Apple common stock, they too traded in an efficient market during the Class Period.  Feinstein Report, ¶¶143-177.  Even absent a thorough expert analysis like Dr. Feinstein conducted here, courts have concluded that "a finding of market efficiency for common stock also applies to options, because the price for the option is derivative of the price of the stock."  *Rougier v. Applied Optoelectronics, Inc.*, 2019 U.S. Dist. LEXIS 198919, at *41 (S.D. Tex. Nov. 13, 2019); *see In re Merck & Co., Sec. Derivative & ERISA Litig.*, 2013 U.S. Dist. LEXIS 13511, at *60 (D.N.J. Jan. 30, 2013) (same); *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1329 (N.D. Ga. 2007) (collecting cases).

Moreover, because the Complaint alleges material omissions, Plaintiff and the proposed Class are also entitled to the presumption of reliance under *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972) (For claims "involving primarily a failure to disclose, [by persons with a duty to disclose,] positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material."); *In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42 (S.D.N.Y. 2013).  For example, here, the Complaint specifically alleges that Defendants failed to disclose that demand conditions had already resulted in planned or actual cancellations or reductions of iPhone production at its largest manufacturers (*see* ¶66(c)), thus entitling Plaintiff and the proposed Class to the *Affiliated Ute* presumption.  *See W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280, 290 (D. Minn. 2018) (finding *Affiliated Ute* presumption applicable where §10(b) claims focused on concealment of known adverse information).

1    For all the reasons set forth above, and in light of the evidence set forth in the Feinstein

2  Report and exhibits attached thereto, it cannot be credibly disputed that the market for Apple

3  securities was efficient throughout the Class Period, and, in any event, Plaintiff and the Class are

4  entitled to the presumption of reliance under *Affiliated Ute*.

### 3.    Apple Will Be Unable to Rebut the Presumption of Reliance with Evidence of the Absence of Price Impact

7    In *Halliburton II*, the Supreme Court reaffirmed the fraud-on-the-market presumption from

8  *Basic* and held that defendants may attempt to rebut the presumption at the class-certification stage

9  with direct evidence of the absence of price impact.  *Halliburton II*, 573 U.S. at 280-83.  "Price

10  impact" simply refers to "whether the alleged misrepresentations affected the market price."

11  *Halliburton I*, 563 U.S. at 814.  To rebut the presumption, defendants must show that there is "no

12  link between plaintiffs' decision to trade at the market price and the alleged misrepresentations or

13  omissions."  *SEB*, 335 F.R.D. at 283.  Indeed, "[d]efendants must introduce evidence showing the

14  alleged 'misrepresentation[s] in fact did not lead to a distortion of price or that an individual

15  plaintiff traded or would have traded despite his knowing the statement was false.'"  *Hatamian*,

16  2016 U.S. Dist. LEXIS 34150, at *18 (quoting *Basic*, 485 U.S. at 248) (some alteration in original).

17  Even where the alleged misrepresentations "'merely maintain inflation already extant in a

18  company's stock price, but do not add to that inflation' . . . lack of [stock] price movement on the

19  dates of the alleged misrepresentations does not rebut the *Basic* presumption."  *Waggoner*, 875

20  F.3d at 103-104; *Hatamian*, 2016 U.S. Dist. LEXIS 34150, at *21.  While defendants are permitted

21  to rebut the presumption by establishing a lack of price impact, plaintiffs are not required to prove

22  price impact or loss causation at class certification.  *Halliburton I*, 563 U.S. at 813; *Halliburton II*,

23  573 U.S. at 275-76, 281-85.  Indeed, adjudicating specific reasons for stock price declines treads

24  into the merits issue of loss causation.  *Halliburton I*, 563 U.S. at 813; *Halliburton II*, 573 U.S. at

25  275-76, 281-85; *Amgen*, 568 U.S. at 475.

26    Here, the facts and evidence overwhelmingly demonstrate the applicability of the

27  presumption of reliance, and the futility of any attempt to rebut the presumption with evidence of

28  a lack of price impact.  The evidence here establishes not only that the presumption of reliance

applies, but also that Apple stock price declined when the relevant truth (*i.e.*, corrective information) was revealed.  ¶¶94-137; *Halliburton II*, 573 U.S. at 278-81.

### 4. The Event Study Methodology Is Capable of Measuring Damages on a Class-wide Basis

Proof of damages is not a prerequisite to class certification.  *See LendingClub*, 282 F. Supp. 3d at 1184.  Nor does the calculation of damages present individual issues capable of predominating over common ones.  *Banc of Cal.*, 326 F.R.D. at 651.  Plaintiff intends to prove damages and economic loss though the "out-of-pocket" method of damages.  The out-of-pocket method is a widely accepted method of measuring damages in Exchange Act cases.  *City of Miami.*, 2018 U.S. Dist. LEXIS 175573, at *8 ("Courts regularly reaffirm that the out-of-pocket, or event study, method matches plaintiffs' theory of liability under Section 10(b) of the Securities Exchange Act, making it the standard method for calculating damages in virtually every Section 10(b), class action.") (citing *In re SanDisk LLC Sec. Litig.*, 2018 U.S. Dist. LEXIS 157177, at *2 (N.D. Cal. Sept. 4, 2018)).

As set forth in the Feinstein Report, the event study methodology is capable of calculating damages on a class-wide basis, consistent with Plaintiff's theory of the case.  *See* Feinstein Report, ¶¶178-189.  The event-study methodology is a widely-accepted method for evaluating market efficiency, materiality and damages.  *See City of Miami*, 2018 U.S. Dist. LEXIS 175573, at *7; *Diamond Foods*, 295 F.R.D. at 251 (because plaintiff's expert stated that "damages 'will be calculated using an event study analysis similar to the event study analysis' regarding market efficiency," that is sufficient); *SEB*, 335 F.R.D. at 288 ("[p]laintiff's proposed 'out of pocket' damages methodology, which uses an event study to determine the price inflation attributable to the alleged fraud, is widely accepted for calculating damages of a class of stockholders").  Plaintiff has plainly shown that damages can be calculated on a class-wide basis.

### 5. A Class Action Is Superior to Other Available Methods for the Efficient Adjudication of This Case

Finally, Rule 23(b)(3) requires that the class action vehicle be superior to any other method of adjudication.  Fed. R. Civ. P. 23(b)(3).  That is plainly the case here.  To determine whether a class action is superior, the courts must consider four factors: (i) class members' individual

1   interests in controlling the prosecution of separate actions; (ii) whether other litigation has already

2   commenced; (iii) the desirability of concentrating claims in one forum; and (iv) the difficulties

3   likely to be encountered in managing a class action.  *Id.*

4        Each of the factors enumerated in Rule 23(b)(3) weigh in favor of class certification in this

5   case.  First, there is no indication that any member of the Class would control the prosecution of

6   these claims individually; given the prohibitive costs required for the prosecution of a complex

7   securities fraud case, very few Class members could prosecute these claims on an individual basis,

8   nor would it be economically prudent for them to do so.  *Green v. Wolf Corp.*, 406 F.2d 291, 296

9   (2d Cir. 1968).  In any event, any individual who may so desire will have the opportunity to opt

10  out of the Class.  Second, counsel are unaware of any other litigation against these Defendants

11  asserting these claims.  Third, concentration of this litigation in one forum is desirable to avoid

12  inconsistent adjudications.  Fourth, this case presents no unusual difficulties in management or

13  notification of Class members.  Moreover, class action treatment promotes fairness and efficiency:

14  "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary

15  burden on the courts." *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983); *see also e.g.*, *Escott*

16  *v. Barchris Constr. Corp.*, 340 F.2d 731, 733 (2d Cir. 1965).

17       For these reasons, "'[c]ourts have long recognized that [c]lass actions are a particularly

18  appropriate and desirable means to resolve claims based on the securities laws'" and "securities

19  cases 'easily satisfy the superiority requirement of Rule 23.'"  *In re NYSE Specialists Sec. Litig.*,

20  260 F.R.D. 55, 80 (S.D.N.Y. 2009) (alterations in original); *see Cooper*, 254 F.R.D. at 632 ("As

21  the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 'like a glove.'").  This case

22  is no different; a class action is superior to any other method of resolving the claims at issue.

23

24

25

26

27

28

# V.     CONCLUSION

For the reasons addressed above, Plaintiff requests that the Court: (i) certify this action as a Class action pursuant to Rule 23(a) and (b)(3); (ii) appoint Norfolk Pension Fund as Class Representative; and (iii) appoint Robbins Geller as Class Counsel pursuant to Rule 23(g).

DATED: May 5, 2021                              Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
DANIEL J. PFEFFERBAUM
JOHN H. GEORGE
KENNETH J. BLACK
HADIYA K. DESHMUKH


                                                        s/ Shawn A. Williams
                                                   SHAWN A. WILLIAMS

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
jgeorge@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
MARK SOLOMON
TOR GRONBORG
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
torg@rgrdlaw.com

Lead Counsel for Lead Plaintiff and Proposed
Class Counsel

LABATON SUCHAROW
CAROL C. VILLEGAS
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/883-7524 (fax)
cvillegas@labaton.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Additional Counsel to the Proposed Class*

LEAD PLAINTIFF'S NTC OF MTN AND MTN TO CERTIFY CLASS, APPOINT CLASS
REPRESENTATIVE AND CLASS COUNSEL; MEM OF P&A - 4:19-cv-02033-YGR
4826-9329-1752.v1

- 21 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on May 5, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Shawn A. Williams
SHAWN A. WILLIAMS
ROBBINS GELLER RUDMAN
    & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:  shawnw@rgrdlaw.com

4826-9329-1752.v1

## Mailing Information for a Case 4:19-cv-02033-YGR IN RE APPLE INC. SECURITIES LITIGATION

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **Kevin Michael Askew**
  kaskew@orrick.com

- **Kenneth Joseph Black**
  KennyB@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com

- **Frank H. Busch**
  busch@wvbrlaw.com,johnson@wvbrlaw.com,pallister@wvbrlaw.com

- **Hadiya Khan Deshmukh**
  hdeshmukh@rgrdlaw.com

- **Christine M. Fox**
  cfox@labaton.com,ndonlon@labaton.com,lpina@labaton.com,electroniccasefilings@labaton.com,fmalonzo@labaton.com,6312349420@filings.docketbird.com

- **John Hamilton George**
  jgeorge@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,tcrockett@pomlaw.com,abarbosa@pomlaw.com

- **Austin Thomas Jackson**
  ajackson@structurelaw.com,cford@structurelaw.com

- **James Neil Kramer**
  jkramer@orrick.com,lpatts@orrick.com,mwatkins@orrick.com,vmorse@orrick.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Francis P. McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,egoodman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,jalieberman@pomlaw.com,asoto@pomlaw.c

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,jgeorge@rgrdlaw.com,dpfefferbaumRGRD@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,jgeorge@ecf.courtdrive.com,sbloyd@rgrdlaw.co

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Mark Solomon**
  marks@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Alexander K. Talarides**
  atalarides@orrick.com,lpatts@orrick.com,casestream@ecf.courtdrive.com

- **Carol C. Villegas**
  cvillegas@labaton.com,ndonlon@labaton.com,5739893420@filings.docketbird.com,dsaldamando@labaton.com,lpina@labaton.com,acoquin@labaton.com,fmalonzo@

- **James Matthew Wagstaffe**
  wagstaffe@wvbrlaw.com,johnson@wvbrlaw.com

- **Steven Ray Wedeking , II**
  swedeking@robbinsllp.com,notice@robbinsllp.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,smorris@rgrdlaw.com,kennyb@rgrdlaw.com,e_file_sd@rgrdlaw.com,smorris@ecf.courtdrive.com

- **Ariel Brianna Winawer**
  awinawer@orrick.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)