May 26, 2021

<u>**Via ECF**</u>
The Honorable Joseph C. Spero
United States Magistrate Judge
United States District Court
for the Northern District of California
Courtroom F, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *In re Apple Inc. Securities Litigation*, No. 4:19-cv-02033-YGR-JCS (N.D. Cal.)

**JOINT STATEMENT ON DISCOVERY DISPUTE**

Dear Judge Spero:

Pursuant to this Court's Civil Standing Orders, Defendants Apple Inc., Timothy D. Cook and Luca Maestri (collectively, "Defendants") and Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund ("Lead Plaintiff" or "Norfolk") respectfully submit this joint discovery letter.  The parties have met and conferred in good faith, via video conference, and cannot reach a resolution.[1]

Respectfully submitted,

Dated: May 26, 2021          ORRICK, HERRINGTON & SUTCLIFFE LLP

                             */s/ James N. Kramer*
                             James N. Kramer
                             Attorneys for Defendants

Dated: May 26, 2021          ROBBINS GELLER RUDMAN & DOWD LLP

                             */s/ Shawn A. Williams*
                             Shawn A. Williams
                             Attorneys for Lead Plaintiff

---

[1] The parties met and conferred on Wednesday, May 19, 2021 by video conference.

The Honorable Joseph C. Spero
May 26, 2021
Page No. 2

## Defendants' Position

Defendants seek the Court's assistance regarding two issues: (a) Plaintiffs' refusal to produce documents concerning their post-class period transactions in Apple securities; and (b) Plaintiffs' substantial delays in producing relevant documents. In line with the Court's recent guidance, Defendants made substantial compromises in an effort to avoid burdening the Court with these disputes, but have been met with resistance at every turn.[2] With Defendants' deadline to oppose Plaintiffs' pending motion for class certification now just over a month away, Plaintiffs' failure to provide relevant discovery is jeopardizing Defendants' ability to meaningfully prepare an opposition to that motion. Defendants respectfully request the Court's assistance in ensuring an adequate discovery record prior to the June 30 deadline to oppose class certification.

### A.   Plaintiffs' Post-Class Period Transactions In Apple Securities

Defendants' first Request for Production seeks documents concerning Plaintiffs' transactions in Apple securities. After considerably narrowing the scope of this request through the meet-and-confer process, Defendants are now requesting documents concerning Plaintiffs' transactions in Apple securities from August 1, 2018 through **January 31, 2020**. Plaintiffs contend, however, that "post-class period transactions in Apple securities are not relevant," and have agreed to produce only transaction documents between August 1, 2018 and **March 31, 2019**.[3]

Contrary to Plaintiffs' position, their post-class period purchases and sales of Apple securities are plainly relevant and discoverable. As the Court is aware, Plaintiffs have accused Apple and its senior executives of making a fraudulent statement that caused them substantial injury. If Plaintiffs continued buying Apple securities *after* the discovery of this alleged fraud, those purchases would be probative, among other things, of whether Plaintiffs truly believed that Defendants had just defrauded them. Additionally, post-disclosure transactions are relevant to class certification issues such as reliance and typicality. "The fact that [plaintiff] continued to trade in the stock [of defendants] after he learned of the alleged misrepresentations of defendants severs the link between the alleged misrepresentations . . . and the stock purchases." *In re Valence Tech. Sec. Litig.*, 1996 WL 119468, at *4 (N.D. Cal. Mar. 14, 1996); *see also Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) ("[A] person that increases his holdings in a security after revelation of an alleged fraud involving that security is subject to a unique defense that precludes him from serving as a class representative."). Plaintiffs undoubtedly will point to certain courts that have determined—in the class certification context—that a plaintiff's post-disclosure transactions in the defendant's securities were insufficient to defeat typicality or rebut reliance. Defendants do not dispute that there are class certification decisions going both ways on this issue and that the results are highly fact dependent. But this dispute is over discovery, not the merits of

---

[2] For example, while Plaintiffs have refused to produce documents in response to ten of Defendants' requests for production, Defendants have opted to seek the Court's intervention in connection with just one request.

[3] Although Defendants initially requested the production of these documents through *the present*, and believe that documents through the present should be discoverable, we took seriously the Court's guidance at the April 16, 2021 conference that the parties should endeavor to compromise on matters of discovery. Accordingly, Defendants first offered to shorten the relevant time period to June 23, 2020 (the date of the operative complaint), and later shortened it again to January 31, 2020. In sum, Defendants agreed to shorten the relevant period by *more than fourteen months*. In contrast, Plaintiffs moved their proposed end date by just two months, from January 31, 2019 to March 31, 2019.

The Honorable Joseph C. Spero
May 26, 2021
Page No. 3

class certification, and for Defendants to even consider such an argument, Plaintiffs must produce the documents. Defendants are aware of no authority, and Plaintiffs have not cited any in three separate meet-and-confer letters, holding that these materials are not relevant or discoverable. In fact, courts have said the opposite. *See, e.g.*, *In re Allergan, Inc. Sec. Litig.*, 2016 WL 5929250, at *3 (C.D. Cal. Oct. 5, 2016) (holding that defendants were entitled to discovery on plaintiff's transactions in defendant's stock for more than seven months after the class period). Indeed, one of the decisions cited prominently in Plaintiffs' April 9, 2021 letter to Defendants held that "post-disclosure purchases" may render plaintiffs atypical when "those plaintiffs . . . made a 'disproportionately large percentage' of their purchases post-disclosure." *City of Livonia v. Wyeth*, 284 F.R.D. 173, 178 (S.D.N.Y. 2012). Unless Plaintiffs produce these materials, Defendants have no way of determining whether Plaintiffs are atypical due to "disproportionately large" post-disclosure purchases.

There would be no significant burden associated with collecting and producing several months of post-disclosure account statements, and Plaintiffs have never contended otherwise. Accordingly, Defendants ask the Court to order Plaintiffs to promptly produce documents sufficient to show Plaintiffs' transactions in Apple securities through January 31, 2020.

### B.     Plaintiffs' Ongoing Discovery Delays

Mindful of the June 30, 2021 deadline to oppose Plaintiffs' pending motion for class certification, Defendants have, *for months*, sought the production of documents from Plaintiffs. Defendants first served Plaintiffs with requests for production on January 14, 2021, and the parties then met-and-conferred and corresponded to reach various agreements. Since late March, Defendants have repeatedly asked Plaintiffs for details about their outstanding document collection and production efforts. For example, in email correspondence dated March 31, April 7, and April 19, Defendants asked Plaintiffs to identify their proposed custodians and/or provide a timeline for their production of documents. On April 30, Defendants again asked for custodian and search term information, noting that while Defendants had "prepared and circulated a list of initial custodians to plaintiffs *more than five weeks ago* and shared proposed search parameters last week," Plaintiffs had "yet to reciprocate, and have refused even to provide a rationale for their delay."

Plaintiffs, however, did not produce documents until April 23, when they made a limited production of 84 documents. And despite Defendants' repeated requests, Plaintiffs did not provide Defendants with any proposed custodians or search terms until May 13. Even then, Plaintiffs' proposal covered only two of the three Plaintiffs (Norfolk and Rhode Island), and as of this writing, the third Plaintiff, City of Roseville, still has not provided proposed custodians or search terms. Further, Plaintiffs' provision of proposed custodians and search terms did not come until *after* Defendants, on May 11, asked to convene a video conference in accordance with the Court's standing orders to discuss Plaintiffs' failure to provide custodians and search terms, as well as the "schedule for the production of the remaining documents responsive to defendants' RFPs," and the fact that Plaintiffs' "delay in providing documents relevant to the motion for class certification has already jeopardized defendants' ability move forward with depositions and adequately respond to that motion under the current schedule."

Even now, Plaintiffs are refusing to provide clarity regarding when their production will be completed.[4] For example, during the May 19 video conference on this issue, when Defendants

---

[4] Plaintiffs made a supplemental production of six documents on May 14, for a total of 90 documents produced to date.

The Honorable Joseph C. Spero
May 26, 2021
Page No. 4

requested a June 1 production deadline, Plaintiffs declined to agree and refused to counter-propose a deadline of their own.  As recently as May 25—i.e., *last night*—the best Plaintiffs could offer was that they "have been working on the issues with our clients and expect to produce additional documents, to the extent they exist, from the custodial files from Norfolk in a timely fashion." Plaintiffs' apparent inability to provide a firm production deadline—at this late stage—is plainly insufficient.

In light of the rapidly approaching June 30 deadline, Defendants have asked to depose the three Plaintiffs' representatives in early June, preferably the week of June 7.  But without responsive documents, Defendants cannot adequately prepare for those depositions.  Accordingly, Defendants respectfully request that the Court order Plaintiffs to complete their production of documents responsive to Defendants' First Set of Requests for Production by June 1 to ensure an adequate discovery record for class certification briefing.

The Honorable Joseph C. Spero
May 26, 2021
Page No. 5

<u>**Plaintiff's Position**</u>

**I.     Plaintiffs' Post-Class Period Transactions in Apple Securities Are Irrelevant**

In response to Defendants' request for documents regarding transactions in Apple securities, Plaintiffs produced documents for the period spanning August 1, 2018 through March 31, 2019, *i.e.*, three months before, and three months after, the two-month Class Period (November 2, 2018 – January 2, 2019). Despite this more than sufficient production, Defendants demand documents from ***more than a year*** after the Class Period, purportedly to adequately respond to Plaintiffs' motion for class certification, which, notably, seeks the appointment of just Lead Plaintiff Norfolk Pension Fund as class representative (ECF No. 165). Because "discovery is limited to relevant matters," and a securities fraud plaintiff's post-class period stock transactions are not relevant, the request should be denied. *Chambers v. Herrera*, 2019 WL 1075277, at *1 (C.D. Cal. Jan. 2, 2019); *see* Fed. R. Civ. P. 26(b)(1).[5]

In order to invoke the fraud-on-the-market presumption of reliance in a securities fraud action, the plaintiff must show it bought shares "'between the time the misrepresentations were made and the time the truth was revealed.'" *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 811 (2011). Transactions that occur after the end of the class period are simply not relevant to reliance or any other issue. *Pearlstein v. BlackBerry Ltd.*, 2021 WL 253453, at *10 (S.D.N.Y. Jan. 26, 2021) (post-class period purchases not relevant because "[w]hat [plaintiff] chose to do when he had complete information is ***not probative*** of why he did what he did at a time when the available information was incomplete or deficient"); *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 446 (S.D. Ohio 2009) ("The Court finds this purchase [six days after the class period] to be ***irrelevant***."); *Rosen v. Textron, Inc.*, 369 F. Supp. 2d 204, 209 (D.R.I. 2005) ("[T]he fact that [plaintiff] concluded, for example, that Textron stock was a good buy . . . following full disclosure, is ***essentially irrelevant*** to the question whether it relied on misleading information in buying Textron stock . . . during the Class Period."); *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 114 (W.D. Pa. 2003) ("these purchases, having occurred after the putative class period, are ***irrelevant*** to the instant litigation").

During the parties' discussions, Defendants asserted that because Plaintiffs had accused them of fraud, whether Plaintiffs purchased Apple stock up to a year after the Class Period is relevant to whether Plaintiffs relied on the alleged Class Period misrepresentations. But Defendants' position has been squarely rejected in the numerous cases cited above, all of which allege securities fraud. Where, as here, reliance is based on the fraud-on-the-market presumption, "post-disclosure purchases will not prevent an investor from relying on the integrity of the market for pre-disclosure purchases." *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 203-04 (E.D. Pa. 2008); *see Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 138 (5th Cir. 2005); *McGuire v. Dendreon Corp.*, 2008 WL 418122, at *2 (W.D. Wash. Feb. 13, 2008) ("Courts have repeatedly rejected the argument that a plaintiff's post-class period transactions in a defendant company's securities are inconsistent with a claim of fraud."); *In re Frontier Ins. Grp. Secs. Litig.*, 172 F.R.D. 31, 42 (E.D.N.Y. 1997) (plaintiff's post-class period purchase "has no bearing on whether or not she relied on the integrity of the market during the class period").

In addition to being irrelevant to the issue of reliance, post-class period purchases do not render a proposed class representative atypical.[6] *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336,

---

[5] All citations and footnotes omitted and emphasis added.

[6] Since the documents they seek are irrelevant, Defendants are able to respond to the pending class certification motion (ECF No. 165) with the documents already produced. And because Norfolk Pension Fund is the sole proposed class representative, only its typicality is at issue. *Id.*

The Honorable Joseph C. Spero
May 26, 2021
Page No. 6

347 (C.D. Cal. 2015) ("many district courts in the Ninth Circuit have held that post-disclosure or even post-class period purchases do not necessarily defeat typicality"); *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 576-77 (N.D. Cal. 2009) (collecting cases and agreeing that "the proposed class representative's purchases of stock after adverse disclosures do not destroy typicality"); *Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.*, 2004 WL 5326262, at *3 (N.D. Cal. May 27, 2004) ("post-class period purchases do not defeat typicality").

Even where courts have considered post-class period transactions, they look to those immediately after the class period, not (as Defendants demand here) up to a year later. *See, e.g.*, *Petrie*, 308 F.R.D. at 346-48 (rejecting argument that April purchase after class period ending in February defeats typicality); *In re Providian Fin. Corp. Sec. Litig.*, 2004 WL 5684494, at *4-*5 (N.D. Cal. Jan. 15, 2004) (purchase one week after class period did not make plaintiff atypical). Here, in an effort to compromise, Plaintiffs produced documents reflecting transactions in Apple securities from August 1, 2018 through March 31, 2019, three months before and three months after the Class Period. This is more than sufficient and Defendants have failed to explain, let alone provide compelling authority for, the relevance of Plaintiffs' potential Apple transactions through ***January 31, 2020***. Defendants' request should be denied.

## II.    Plaintiffs, Unlike Defendants, Are Timely Complying with Their Obligations

Less than 24 hours before filing this joint letter, Defendants informed Plaintiffs that they intended to raise purported "delays" in Plaintiffs' document production unless Plaintiffs agreed to complete production by June 1, 2021. Contrary to this Court's Standing Order, Defendants did not notify Plaintiffs of this supposed "dispute" during the parties' May 19, 2021 videoconference nor was it identified as a matter to be submitted in this joint letter. Plaintiffs are compelled to respond to Defendants' baseless accusation without the benefit of a meet and confer or even a clear articulation of the dispute or desired relief.

As demonstrated by their prompt responses, numerous compromises and substantial production, Plaintiffs have, and will continue to, timely abide by their discovery obligations. Defendants served 26 RFPs on Plaintiffs on January 14, 2021. Following timely service of Plaintiffs' responses and objections, the parties engaged in two lengthy meet and confers on March 8 and 11, 2021, to discuss the scope of production and relevant time period. Between March 17 and May 7, 2021, the parties exchanged five letters in which Plaintiffs made numerous compromises and successfully resolved every dispute save for one, presented above.

Despite the fact that many issues remained unresolved, and without any agreement on search terms, on April 23, 2021, Plaintiffs produced more than 2,700 pages of documents,[7] including transaction documents directly relevant to the motion for class certification. On May 14, Plaintiffs made an additional production of retention and monitoring agreements. Although Norfolk Pension Fund is the only proposed class representative, Plaintiffs have produced documents for each plaintiff and are in the process of searching for and reviewing others.

With respect to search terms, Plaintiffs proposed custodians for two plaintiffs and terms for all three on May 13, 2021. Defendants did not respond to Plaintiffs' proposal until May 19, at which point they demanded the inclusion of 63 additional terms, which Plaintiffs refused. The demand for 63 additional terms was to be included in this letter, until Defendants' reversed their position ***the day before filing***. Plaintiffs are in the process of applying the agreed-upon terms, searching for and producing responsive documents.

In stark contrast, Defendants have delayed at every turn. Plaintiffs served their document requests on November 23, 2020, more than 7 months ago. To date, Defendants have produced

---

[7] These were primarily documents Defendants asked Plaintiffs to "prioritize," which they did.

The Honorable Joseph C. Spero
May 26, 2021
Page No. 7

their insurance policies (as required by the Federal Rules), their document destruction policy (improperly redacted), and 319 publicly available analyst reports (without proper metadata). ***Defendants have not produced a single internal document related to the merits of this action: Not a single email, internal report or analysis has been turned over.  Not a single document from any file of the custodians agreed to by the parties or ordered by the Court has been produced***.  Despite the Court's Order to agree to search terms by May 7, 2021 (ECF No. 158), on that day (at 11:13 p.m.) Defendants unilaterally rejected the vast majority of Plaintiffs' terms and have not responded to Plaintiffs' counter-proposal in more than two weeks.  Those negotiations remain ongoing.  Despite the Order directing Defendants to produce documents without search terms "earlier" than July 15, 2021 (*id.*), Defendants rejected all but one category of documents Plaintiffs proposed (and even that one they have not produced).  *See id.*  That dispute, as well, appears headed to the Court.  Yet now, perhaps to distract from their own failures, Defendants cry wolf.  The Court should reject this fabricated "dispute" and permit Plaintiffs to, as they have been doing, continue with their prompt discovery productions undisturbed.

The Honorable Joseph C. Spero
May 26, 2021
Page No. 8

## **ATTESTATION REGARDING SIGNATURES**

In compliance with Local Rule 5-1(i)(3), the undersigned ECF user whose identification and password are being used to file this document, hereby attests that all signatories have concurred in the filing of this document and all supporting declarations and exhibits.

 */s/ James N. Kramer*
 JAMES N. KRAMER

The Honorable Joseph C. Spero
May 26, 2021
Page No. 9

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on May 26, 2021, I authorized the electronic
filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send
notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List,
and I hereby certify that I caused the mailing of the foregoing via the United States Postal
Service to the non-CM/ECF participants indicated on the attached Manual Notice List.


*/s/ James N. Kramer*
JAMES N. KRAMER

ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone:  (415) 773-5700
Facsimile:  (415) 773-5759
Email:  jkramer@orrick.com