```
                                                         Pages 1 - 14

                      UNITED STATES DISTRICT COURT

                    NORTHERN DISTRICT OF CALIFORNIA

          BEFORE THE HONORABLE JOSEPH C. SPERO, MAGISTRATE

IN RE:                             )
                                   )
APPLE, INC. SECURITIES LITIGATION  ) No. C 19-2033 YGR (JCS)
                                   )
                                   ) San Francisco, California
                                   ) Friday
                                   ) June 4, 2021
_____) 9:30 a.m.


            TRANSCRIPT OF ZOOM VIDEO CONFERENCE PROCEEDINGS

APPEARANCES:

For Plaintiffs:         ROBBINS, GELLER, RUDMAN & DOWD LLP
                        Post Montgomery Center
                        One Montgomery Street
                        Suite 1800
                        San Francisco, California 94104
                   BY:  SHAWN A. WILLIAMS, ESQ.
                        DANIEL J. PFEFFERBAUM, ESQ.



For Defendants:         ORRICK, HERRINGTON & SUTCLIFFE LLP
                        777 S. Figueroa Street
                        Suite 3200
                        Los Angeles, California 90017
                   BY:  KEVIN M. ASKEW, ESQ.


                        ORRICK, HERRINGTON & SUTCLIFFE LLP
                        51 West 52nd Street
                        New York, New York 10019
                   BY:  WILLIAM J. FOLEY, ESQ.




Reported By:    Debra L. Pas, CSR 11916, CRR, RMR, RPR
                Official Reporter - US District Court
                Computerized Transcription By Eclipse
```

```
1   FRIDAY - JUNE 4, 2021                              9:49 A.M.
2                    P R O C E E D I N G S
3                           ---oOo---
4        THE CLERK:  The next matter we're calling is
5   19-CV-2033, In Re Apple, Inc. Securities Litigation.
6      It's our friends again.  They are raising their hands, so
7   let's see.  Promote to panelist.
8        (Brief pause.)
9        THE CLERK:  Okay.  Looks like I have everybody.
10     Good morning.  Welcome back.  Appearances please, starting
11  with the plaintiffs.
12       MR. WILLIAMS:  Good morning, everyone.  Good morning,
13  Your Honor.  Sean Williams, Robbins, Geller, Rudman and Dowd on
14  behalf of plaintiffs.
15       MR. PFEFFERBAUM:  Good morning, Your Honor.  Dan
16  Pfefferbaum from Robbins, Geller, Rudman and Dowd also on
17  behalf of plaintiffs.
18       MR. ASKEW:  Good morning, Your Honor.  Kevin Askew on
19  behalf of defendants.  And my colleague William Foley is with
20  me as well.
21       THE COURT:  Good morning.
22     I don't really know what to say.  This is entirely
23  unacceptable.  This time it's Apple's fault.  I mean, I think
24  there is some blame that goes with the plaintiff, but it's
25  largely Apple's fault.  So it seems to be going back and forth
```

1   on who is being completely unreasonable.
2       Let me tell you a couple things.  Number one, Apple
3   doesn't get to unilaterally determine how to look for documents
4   or what's the most efficient.  You actually have to, in your
5   negotiation with the other side, justify what you're doing and
6   how you're doing it and why, especially with a company that you
7   say has such far-flung possibilities and places to look.  You
8   need to justify it.  You're lucky I don't order a 30(b)(6)
9   deposition on the entire storage system of Apple and how that
10  works.
11      I would have expected, number two, that regardless of the
12  negotiations, Apple would have started searching for places
13  where these group of documents -- groups of documents could be
14  found shortly after my hearing in April.
15      You know, I didn't just say that you had to
16  meet-and-confer just as an awkward step that the parties had to
17  get through.  I would have expected that had been done in the
18  next couple of weeks and would have been resolved, but you
19  would have certainly started looking for them.
20      And efficiency is not the only consideration.  I wanted
21  these documents produced earlier than the others.  I wanted it
22  because -- some of them because it may be a backup to make sure
23  the document discovery is more complete, and you can't just
24  tell that by having -- by looking at the production that you do
25  by custodian and search terms.  It doesn't tell you whether or

1  not there are other locations that you might find stuff.  So
2  that's why we do belt and suspenders.
3       Number four, it's -- the fact that you're doing a
4  custodian search does not excuse you from searching in other
5  ways that are reasonably available to find these documents.
6       Now, I will be the first to say, in this hearing at least,
7  that plaintiff's list of documents sweeps too broadly given
8  what's going on here.
9       But the commitment of the defendants to forward narrow
10 categories of documents and will check the others out and make
11 that commitment, like, two weeks ago after -- when it should
12 have been doing it months ago, is woefully insufficient.
13      So I've got to say this one is largely, not entirely,
14 Apple's fault.
15      And who is the lead trial counsel for each side?
16           **MR. WILLIAMS:**  Your Honor, I am for the plaintiffs,
17 Sean Williams.
18           **THE COURT:**  And who is the lead trial counsel for
19 Apple in this case?
20           **MR. ASKEW:**  Mr. Kramer, Your Honor.
21           **THE COURT:**  Okay.  Mr. Kramer has to come to every
22 discovery hearing from now on, okay?
23           **MR. ASKEW:**  He's traveling today, Your Honor --
24           **THE COURT:**  It doesn't matter whether he's traveling
25 or not.  When I order something, he's got to stop whatever the

1  heck he's doing and do the discovery in this matter.
2       And the reason I do that is because he won't want to do
3  that.  He will rather be more reasonable rather than do that.
4       The same with Mr. Williams.  I do that intentionally.  I
5  want to interrupt your schedules whenever you're being
6  unreasonable just so that you'll start to be reasonable,
7  because I'm not seeing signs of it yet.
8       You know, I -- this one is -- well, as I said, it's a
9  little bizarre just because it was done -- this should have
10 been done in April.
11      So there are 14 categories of documents.  Which one of
12 those, Mr. Askew, which ones of them are the kinds of reports
13 of something that will be found in a file that you can find?
14           **MR. ASKEW:**  Your Honor, what I can tell you is as
15 recently as yesterday we reached out to plaintiffs and offered
16 to look for and produce seven of these categories of documents
17 to the extent we're able to do so before July 15th, in addition
18 to the one category that we've already --
19           **THE COURT:**  Which seven are you talking about?  Give
20 me the category numbers.
21           **MR. KRAMER:**  Category one, unbricking or activation
22 reports.
23      No. 2, reports on customer traffic.
24      No. 7, master production schedules.
25      No. 8, preparation materials for investor conference

1   calls.

2       No. 9, Board materials and meeting minutes.

3       No. 10, drafts of Mr. Cook's letter.

4       No. 11, stock buyback records.

5       And No. 12, market research.

6           **THE COURT:** Okay.  So 1, 2, 7, 8, 9, 10, 11, 12.
7   Report -- there is nothing, no place where you keep reports on
8   three and four?

9           **MR. ASKEW:** So, your Honor, and I'm not trying to
10  argue with the plaintiffs.  I certainly understand where Your
11  Honor is coming from.

12      But what I will tell you is when we go to complete our
13  custodial search and collection process, we are speaking to
14  individuals about all of these categories and asking where are
15  these.  And we are collecting these types of documents as part
16  of our custodial search process.

17      We have been devoting significant resources.  And we're
18  stretched, Your Honor, and we'll -- we're taking the July 15th
19  deadline very seriously.  So I don't want you to think we have
20  been sitting on our hands doing nothing.  That's the furthest
21  thing from the truth.

22      So in our view, I understand the Court disagrees, we had
23  already searched for and picked up these categories of things
24  to be found during the search process.  I understand --

25          **THE COURT:** So, but if -- let me just explore what

1  that means.
2      So you're talking to somebody who is one of the people who
3  knows about the reports on the economic conditions, and you
4  chime in and say:  Where are those?
5      And they say:  Well, there's this file, this common file,
6  which everybody in this particular group can get to.
7      Is that the kind of thing you're asking them?
8          **MR. ASKEW:**  Yeah.  And we're ingesting all of those
9  materials into --
10         **THE COURT:**  Okay.
11         **MR. ASKEW:**  -- into the universe of data --
12         **THE COURT:**  That's what I told you not to do.  I
13 mean, that is the implication of my statement that you're going
14 to meet-and-confer and produce earlier things that can be
15 produced earlier.  So that doesn't work.
16     So are you saying to me that there are other materials in
17 this that are -- for example, the reports on -- you know, 2, 3
18 or 4 that are kept, you know, other than that are -- that you
19 have already identified in particular files that people can --
20 they can be produced?
21         **MR. ASKEW:**  I can't make a representation to you
22 either way sitting here today, because we're still right in the
23 middle of that custodial search and review process.
24     What I can tell you, Your Honor, is I've heard the Court's
25 views loud and clear.  We will go through each of these

1    categories of documents --
2           **THE COURT:** Oh, no. We're not doing that. We're not
3    doing that. I'm going to decide the categories right here and
4    now that you're going to produce, and I'm going to give you a
5    date for production. And it isn't going to be July 15th, I
6    promise you. It's going to be before July 15th.
7        So that's why I want to know, are there separate files
8    that contain Nos. 3 and 4?
9           **MR. ASKEW:** I don't know the answer to that sitting
10   here today, Your Honor.
11          **THE COURT:** Okay. Have you investigated that? And
12   why don't you know the answer sitting here today?
13          **MR. ASKEW:** We have not conducted a manual process to
14   go look for those specific categories of documents where they
15   live in Apple. We have collected documents on all categories
16   relevant to the case from the 14 custodians that the Court has
17   ordered.
18          **THE COURT:** Okay. Well, then since you can't tell me
19   the answer to the questions, I have to assume you don't have an
20   answer. And I'm just going to make a judgment as to each one
21   as to whether I think it's likely to be kept in some file
22   together that you could locate that wouldn't be dependent on a
23   particular custodian.
24       So I would add to your list 3 and 4, and 14. Those are
25   the ones that seem to me likely. I only just -- you know, just

1  from my overall experience think there's likely to be some
2  common file where those things are.  I don't actually know, but
3  you aren't giving me any information, and I've got to make a
4  decision.
5      You should have figured this out in April whether or not
6  there were common files.  So you have to live with the results
7  of not finding it.  So I would add those three to yours.
8      Mr. Williams, do you want to make any comments about this?
9          **MR. WILLIAMS:**  Your Honor, my partner Dan Pfefferbaum
10 is going to argue this.
11         **THE COURT:**  Thank you.  Mr. Pfefferbaum.
12         **MR. PFEFFERBAUM:**  Thank you, Your Honor.
13     I think that our frustration -- you've experienced some of
14 the same frustrations that we have experienced in trying to
15 obtain these documents.
16     And I just -- for the record, I want to point out that
17 Mr. Askew suggested that the defendant, you know, had offered
18 to look for and produce seven categories.  I think a
19 clarification is necessary there.
20     They had offered to investigate and get back to us in two
21 weeks about whether they would produce anything in response to
22 those categories.  And that -- as you know, the inability to
23 get information on this has obviously hampered us.
24     If Your Honor would allow, I would like to address just a
25 couple of the categories that you did not direct them to search

1  for and produce, if you would be willing to hear a little bit
2  on -- of detail on why we requested those and why we think they
3  may be readily collectable from a single location.
4         **THE COURT:**  Well, I'm not interested in the first
5  because these are all -- seem to me appropriate categories in
6  general for discovery.
7      The question is really why you think that they are so
8  likely to be in a separate document repository that it will be
9  just as easy for them to pull them up as to go through the
10 process that they are going through now with custodians.
11        **MR. PFEFFERBAUM:**  Well, for example, with -- you
12 know, category No. 6, the iPhone manufacturing orders, changes
13 and cancellations, you know, Your Honor, that's such a
14 fundamental part of this case.  You know, we believe that a
15 targeted search of those documents -- frankly, we'd be shocked
16 that it hadn't been undertaken already.
17     As you know, the Complaint alleges that just days after
18 the alleged false statements about how the company was doing in
19 China, there were reports coming out that they had slashed
20 manufacturing production by 25 percent.  And it names the
21 manufacturers:  Foxconn, and Pegatron and Wistron.  And it
22 would be -- you know, we're incredulous that they haven't
23 collected those documents already.
24     They -- obviously, we know that they did reduce iPhone
25 orders during the class period.  We think that that should be

1   the product of a search without -- a production without search
2   terms.
3           **THE COURT:** Well, I don't necessarily disagree with
4   you. The reason I didn't include that was because it's likely
5   to be a large number of small documents. I mean, the other
6   ones that I focused on are more in the nature of overarching
7   reports that might be in a common space, but these, it's going
8   to be, you know, invoice level things.
9       So it's a -- it could be -- I don't know what it looks
10  like because I don't know what the trafficking graphic is, but
11  it could be a huge number. That's the reason I didn't include
12  No. 6. But it's just my thinking on it.
13          **MR. PFEFFERBAUM:** Understood, Your Honor.
14      Similarly with respect to 5, it's very unusual that a
15  company with thea sophistication of Apple doesn't have a weekly
16  dashboard. Often has, you know, key financial metrics. It
17  shows how, say, iPhone sales are doing against expectations.
18      We see that in many of our cases. It's a high level
19  report that gets circulated among, you know, top employees.
20  Sometimes it's called a dashboard. Some other companies use
21  other terms for it. Again, that's the type of thing we would
22  expect would be in a central location and readily collectable
23  and producible on No. 5.
24          **THE COURT:** Mr. Askew, do you want to comment on
25  No. 5?

1          **MR. ASKEW:** I'll make this simple, Your Honor.  We'll
2   just -- we will add that to the list of the categories.
3          **THE COURT:** Okay.
4          **MR. PFEFFERBAUM:** And, Your Honor, if I can just make
5   a final comment about this.  You know, this issue has -- our
6   inability to obtain, you know, internal documents from the
7   defendant has really infected a lot of what's going on in this
8   case.  And, you know, I think implicitly or explicitly -- and I
9   think it's implicitly -- it's been affecting, you know, the
10  production we have been trying to get from third parties as
11  well.
12         And the -- Apple's refusal to turn over documents means --
13  we were in front of you three months ago with Pegatron.  We
14  don't have a single Pegatron document.  We were in front of you
15  last week with Foxconn, and you told Foxconn's attorney to turn
16  over those MPS reports, those master production schedules
17  immediately.  He just told us this morning that he'd talk to us
18  next week about when he might turn them over, or when he -- you
19  know, when he will turn them over.
20         So this is really frustrated discovery, and it's -- you
21  know, these targeted searches were supposed to help move this
22  case forward at an early point in time.  They were supposed to
23  assist in the search term process, which we're still trying to
24  obtain.
25         You know, we were told we would have hit counts this week.

1  We still don't have hit counts.

2  So I appreciate Your Honor's order directing Apple to
3  produce these things promptly.

4  **THE COURT:** Okay. Yeah, you should figure out the
5  search terms, and you should be giving them a constant feed of
6  hits, hit counts, so they can -- that negotiation can happen.

7  I don't expect to be back here deciding whether it's "and"
8  or "or" on search terms. I want you to work that out.

9  So the order of the Court is that not later than -- let me
10  just look at a calendar -- three weeks from today, June 25th,
11  Apple shall search for and produce documents responsive to
12  Categories 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 12 and 14.

13  And I'm -- I'm getting to the end of my rope here. You've
14  got a lot of discovery to go, and I don't -- you're not going
15  to want me to step this up a notch, either side. It's -- now
16  we've -- Apple is on the hot seat today. Plaintiffs have been
17  on the hot seat before. Everybody is taking turns being
18  ridiculous.

19  I expect people to be extremely accommodating in discovery
20  on both sides. And if you're not, I have to take further
21  steps. I haven't decided what they are.

22  With the plaintiff's securities class action I can't do my
23  usual threat, which would be to have the CEOs here. I'm happy
24  to see Mr. Cook here, but there is no comparable person on the
25  other side to make that throw who has got quite the same level

1  of responsibilities of Mr. Cook that would be interrupted by
2  having to deal with discovery matters.
3      So I'm not going to do that in the first instance, but
4  I've got to do something.  This is ridiculous.  This may be the
5  way you've -- you're used to doing business in other cases.  It
6  will not be the way you're doing business in this case.  It's
7  very unfortunate.
8      But all I'm going to do for the moment is order what I've
9  ordered and expect that you're going to do better.  If you
10 don't, then I'll have to change my thought process on these
11 things.  Okay?
12     Anything further?
13         **MR. ASKEW:**  Not from us, Your Honor.
14         **MR. WILLIAMS:**  Nothing further, Your Honor.
15         **THE COURT:**  Thank you.
16         **MR. WILLIAMS:**  Thank you.
17         **MR. ASKEW:**  Thank you, Your Honor.
18         **THE CLERK:**  Thank you.  Court stands in recess.
19     (Proceedings adjourned.)

*Debra L. Pas, CSR, RPR, RMR, CRR*
*Official Reporter - U.S. District Court - San Francisco*
*(415) 431-1477*

**CERTIFICATE OF OFFICIAL REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Friday, June 11, 2021