ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
JOHN H. GEORGE (292332)
KENNETH J. BLACK (291871)
HADIYA K. DESHMUKH (328118)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
jgeorge@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com
    – and –
MARK SOLOMON (151949)
TOR GRONBORG (179109)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
torg@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re APPLE INC. SECURITIES LITIGATION | Case No. 4:19-cv-02033-YGR |
| | CLASS ACTION |
| This Document Relates To: | REPLY IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO CERTIFY CLASS, APPOINT CLASS REPRESENTATIVE AND APPOINT CLASS COUNSEL |
| ALL ACTIONS. | |
| | DATE: September 14, 2021 |
| | TIME: 2:00 p.m. |
| | CTRM: 1, 4th Floor |
| | JUDGE: Hon. Yvonne Gonzalez Rogers |

**[REDACTED]**

4816-4170-0088.v1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    ARGUMENT .........................................................................................................2

    A.     The Proposed Class Satisfies Rule 23(b)(3) as Common Questions of Law and Fact Predominate................................................................................2

        1.     Plaintiff Is Entitled to the Fraud-on-the-Market Presumption of Reliance...............................................................................................2

        2.     Defendants Have Failed to Rebut the Fraud-on-the-Market Presumption with Evidence of the Absence of Price Impact.....................4

            a.     Apple's So-Called Evidence of Lack of Price Impact Is a Procedurally Improper and Factually Incorrect Truth-on-the-Market Defense.................................................................5

            b.     Defendants' Improper Loss Causation Arguments Cannot Be Resolved at Class Certification ..................................................7

        3.     Plaintiff's Damages Methodology Is Capable of Calculating Damages for All Putative Class Members ....................................................9

    B.     Norfolk is an Adequate Class Representative Under Rule 23(a)(4) .....................12

III.   CONCLUSION..............................................................................................................15

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972) ........................................................................................4

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ..................................................................................1, 2, 5

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ...............................................................................1, 2, 4, 5

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) ....................................................................3, 4

*Camp v. Qualcomm Inc.*,
    2019 WL 277360 (S.D. Cal. Jan. 22, 2019) .........................................................14

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ....................................................................................10, 11

*Cooper v. Thoratec Corp.*,
    2018 WL 2117337 (N.D. Cal. May 8, 2018) ..........................................................10

*DiDonato v. Insys Therapeutics Inc.*,
    333 F.R.D. 427 (D. Ariz. 2019) .........................................................................3

*Eggleston v. Chi. Journeymen Plumbers' Loc. Union No. 130*,
    657 F.2d 890 (7th Cir. 1981) ............................................................................15

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ............................................................................12

*Erica P. John Fund, Inc. v. Halliburton Co. (Halliburton I)*,
    563 U.S. 804 (2011) .......................................................................................7

*Ferrari v. Gisch*,
    225 F.R.D. 599 (C.D. Cal. 2004) .......................................................................13

*FindWhat Inv. Grp. v. FindWhat.com*,
    658 F.3d 1282 (11th Cir. 2011) .....................................................................8, 11

*Goldman Sachs Grp. Inc. v. Ark. Tchr. Ret. Sys.*,
    _U.S._, 141 S. Ct. 1951 (2021) ....................................................................4, 5, 8

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Page

*Halliburton Co. v. Erica P. John Fund, Inc.*
   573 U.S. 258 (2014)................................................................................2, 3, 4, 5

*Hatamian v. Advanced Micro Devices, Inc.*,
   2016 WL 1042502 (N.D. Cal. Mar. 16, 2016)..........................................7, 10

*In re Alphabet, Inc. Sec. Litig.*,
   1 F.4th 687 (9th Cir. 2021) ..............................................................................8

*In re Apple Sec. Litig.*,
   2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ...................................................11

*In re Boeing Co. Aircraft Sec. Litig.*,
   2020 WL 476658 (N.D. Ill. Jan. 28, 2020) ..............................................13, 14

*In re Countrywide Fin. Corp. Sec. Litig.*,
   273 F.R.D. 586 (C.D. Cal. 2009) .................................................................3, 4

*In re Diamond Foods, Inc.*,
   295 F.R.D. 240 (N.D. Cal. 2013).................................................................5, 10

*In re Enron Corp. Sec.*,
   529 F. Supp. 2d 644 (S.D. Tex. 2006) .........................................................3, 4

*In re Glob. Brokerage, Inc.*,
   2021 WL 1160056 (S.D.N.Y. Mar. 18, 2021) ..................................................4

*In re Lyft Inc. Sec. Litig.*,
   2021 WL 3711470 (N.D. Cal. Aug. 20, 2021) ................................................12

*In re Merck & Co., Sec. Derivative & ERISA Litig.*,
   2013 WL 396117 (D.N.J. Jan. 30, 2013) .........................................................3

*In re NYSE Specialists Sec. Litig.*,
   240 F.R.D. 128 (S.D.N.Y. 2007) ....................................................................13

*In re SLM Corp. Sec. Litig.*,
   2012 WL 209095 (S.D.N.Y. Jan. 24, 2012) ..............................................7, 13

*In re Solar City Corp. Sec. Litig.*,
   2017 WL 363274 (N.D. Cal. Jan. 25, 2017)...................................................13

*In re Twitter Inc. Sec. Litig.*,
   326 F.R.D. 619 (N.D. Cal. 2018).....................................................................12

**Page**

*In re Williams Sec. Litig.-WCG Subclass*,
   558 F.3d 1130 (10th Cir. 2009) ...........................................................8

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015).................................................13

*Krogman v. Sterritt*,
   202 F.R.D. 467 (N.D. Tex. 2001) ..........................................................3

*Levya v. Medline Indus., Inc.*,
   716 F.3d 510 (9th Cir. 2013) ...............................................................10

*Marcus v. J.C. Penney Co.*,
   2016 WL 8604331 (E.D. Tex. Aug. 29, 2016) ....................................3, 4

*No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003) .................................................................8

*Plaut v. Goldman Sachs Grp., Inc.*,
   2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019).....................................14

*Ret. Tr. v. RH, Inc.*,
   2018 WL 4931543 (N.D. Cal. Oct. 11, 2018).......................................10

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)..................................................................10

*Rougier v. Applied Optoelectronics, Inc.*,
   2019 WL 6111303 (S.D. Tex. Nov. 13, 2019) .......................................3

*Waggoner v. Barclays, PLC*,
   875 F.3d 79 (2d Cir. 2017).....................................................................3

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
   Rule 23 ....................................................................................................1
   Rule 23(a)................................................................................................1
   Rule 23(a)(4)..........................................................................................12
   Rule 23(b)(3)........................................................................................1, 2

1   **I.      INTRODUCTION**

2       Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension

3   Fund ("Plaintiff" or "Norfolk")[1] has met all of the prerequisites for class certification under Federal

4   Rule of Civil Procedure 23.  In fact, Defendants do not challenge numerosity, commonality or

5   typicality under Fed. R. Civ. P. 23(a).  Defendants also largely concede Fed. R. Civ. P. 23(b)(3)

6   predominance.  Falsity, materiality, scienter and loss causation are all common issues that will be

7   decided by common evidence at a later stage in this action.  *Amgen Inc. v. Conn. Ret. Plans & Tr.*

8   *Funds*, 568 U.S. 455, 471-72 (2013).[2]

9       Lacking any credible objection to class certification, Defendants' Opposition to Motion for

10  Class Certification (ECF No. 196) ("Opposition" or "Opp.") launches hyperbolic attacks on

11  Norfolk for amending its loss chart and then confusingly meanders through applicable (and

12  inapplicable) legal standards while raising widely rejected challenges to class certification.  For

13  example, Defendants baselessly assert that market efficiency for Apple stock options has not been

14  shown – a position routinely rejected where, as here, the common stock linked to the options is

15  efficiently traded.  Opp. at 19.

16      Defendants distort the burdens associated with the *Basic Inc. v. Levinson*, 485 U.S. 224

17  (1988) presumption of reliance and rebuttal thereto, manufacture a nonexistent "mismatch"

18  between the alleged misrepresentations and the corrective disclosures, and advance poorly

19  disguised materiality and loss causation arguments that the Supreme Court has reaffirmed cannot

20  be decided at class certification.  Defendants improperly challenge materiality (via truth-on-the-

21  market arguments), claiming that the market knew of declining conditions in China before the

22  Class Period, and therefore Cook's November 1, 2018 false assurance that iPhone demand in China

23  was not facing the same risk as other emerging markets could not have affected the market price

24  of Apple's stock.  *Id.* at 5, 9, 17.  This argument has no place at class certification.  Moreover, the

25  early evidence obtained to date demonstrates that the undisclosed truth was just as Plaintiff alleged

26

27  [1]    All terms not defined herein have the same meaning as in Plaintiff's motion for class certification (ECF No. 165) ("Motion").

28  [2]    All citations and footnotes omitted and emphasis added unless otherwise indicated.

1    (if not worse): ███████████████████████████████████████

2    ███████████████████████████████████████████████████████

3    ██████████████████████████████████████████.[3]

4          Equally inappropriate, Defendants' repeated arguments that Plaintiff has not proven the

5    alleged corrective disclosures caused its economic loss (Opp. at 17-18) are procedurally improper

6    under Supreme Court precedent, as well as factually incorrect.  The partial disclosures concerning

7    reductions in iPhone manufacturing were directly related to the subject matter of Defendants' false

8    assurance – *i.e.*, the performance of Apple's iPhone business in China.  And, the Company

9    ultimately blamed its historically bad 1Q19 results ***entirely*** on poor iPhone sales in China, thereby

10   connecting the prior leaks of slashed iPhone production to Apple's poor performance in China.

11         The arguments in the Opposition are without merit; the Motion should be granted.

12   **II.**  **ARGUMENT**

13       **A.**  **The Proposed Class Satisfies Rule 23(b)(3) as Common Questions of
Law and Fact Predominate**

14

15         Plaintiff has invoked the fraud-on-the-market presumption of reliance under *Basic*.  485

16   U.S. at 244-47.  Defendants fail to rebut the presumption by proving an absence of price impact,

17   *i.e.*, that the alleged misrepresentations did not impact Apple's stock price.  *Halliburton Co. v.
Erica P. John Fund, Inc.* ("*Halliburton II*") 573 U.S. 258, 281-82 (2014).

18

19       **1.**  **Plaintiff Is Entitled to the Fraud-on-the-Market Presumption
of Reliance**

20         "The fraud-on-the-market premise is that the price of a security traded in an efficient

21   market will reflect all publicly available information about a company; accordingly, a buyer of the

22   security may be presumed to have relied on that information in purchasing the security."  *Amgen*,

23   568 U.S. at 458; *Basic*, 485 U.S. at 247.  Plaintiff has undisputedly invoked the presumption by

24   establishing the alleged misrepresentations were public, Plaintiff traded in the stock between the

25   time the misrepresentations were made and the truth was revealed, and the stock traded in an

---

[3]  *See* Ex. 5.  All "Ex. _" citations herein are to the Declaration of Shawn A. Williams in Support of Reply in Support of Lead Plaintiff's Motion to Certify Class and Appoint Class Representative unless otherwise indicated.

1   efficient market.  *See Halliburton II*, 573 U.S. at 280.  As to market efficiency, Plaintiff has

2   established with evidence, each factor identified in *Cammer v. Bloom*, 711 F. Supp. 1264, 1292

3   (D.N.J. 1989).[4]  *See* ECF No. 165-3 ("Feinstein Report"), ¶¶93-142.  Defendants do not challenge

4   market efficiency of the Company's common stock.

5          Defendants contend that Plaintiff has not established efficiency for Apple options and Dr.

6   Feinstein simply "assume[d]" efficiency.  Opp. at 19 & n.11.  But Dr. Feinstein applied every

7   *Cammer* and *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2001) factor to Apple options,

8   including conducting an event study to test the cause and effect relationship between new

9   information and movement in the value of Apple stock options.  Feinstein Report, ¶¶93-165; *see*

10  Ex. 7 ("Feinstein Reply"), ¶¶2-3.  Based on this robust analysis, Dr. Feinstein concluded the Apple

11  options market was efficient.  This analysis has been repeatedly accepted by courts to show options

12  market efficiency.  *See Countrywide*, 273 F.R.D. at 619 (options market efficient where *Cammer*

13  factors weighed in favor); *Marcus v. J.C. Penney Co.*, 2016 WL 8604331, at *9 (E.D. Tex. Aug.

14  29, 2016).  Indeed, even without an analysis as comprehensive as Dr. Feinstein's, courts hold that

15  evidence showing efficiency of common stock is "sufficient to trigger the fraud-on-the-market

16  presumption . . . on the options."  *In re Enron Corp. Sec.*, 529 F. Supp. 2d 644, 754 (S.D. Tex.

17  2006); *see Rougier v. Applied Optoelectronics, Inc.*, 2019 WL 6111303, at *14 (S.D. Tex. Nov.

18  13, 2019) (finding market efficiency for common stock is sufficient to prove options market

19  efficiency); *In re Merck & Co., Sec. Derivative & ERISA Litig.*, 2013 WL 396117, at *12 (D.N.J.

20  Jan. 30, 2013) (same); *Countrywide*, 273 F.R.D. at 609 n.74 ("efficiency is very nearly a nonissue

21  for Countrywide common stock and options").

22         Defendants ignore this authority and contend that Plaintiff has not proven that each Apple

23  option traded in its own individual efficient market.  Opp. at 19.  Defendants cite nothing to support

24  this argument, and courts have specifically rejected it.  *See, e.g.*, *Marcus*, 2016 WL 8604331, at

25

26  [4]  Courts consistently hold that while *Cammer* factor five is helpful to establish market
    efficiency, it is not necessary where, like here, other factors weigh in favor of market efficiency.
27  *See Waggoner v. Barclays, PLC*, 875 F.3d 79, 98 (2d Cir. 2017); *DiDonato v. Insys Therapeutics*
    *Inc.*, 333 F.R.D. 427 (D. Ariz. 2019); *see also In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D.
28  586, 609 n.74 (C.D. Cal. 2009) ("'[i]n many cases, where heavily-traded or well-known stocks are
    the target of suits, market efficiency will not even be an issue'").

REPLY IN SUPPORT OF MOTION TO CERTIFY CLASS - 4:19-cv-02033-YGR                     - 3 -
4816-4170-0088.v1

*9 (dismissing argument raised here and agreeing "that market analysis does not have to focus on the market for every security, separately"); *In re Enron*, 529 F. Supp. 2d at 754.  The one case Defendants do cite, *In re Glob. Brokerage, Inc.*, 2021 WL 1160056 (S.D.N.Y. Mar. 18, 2021), only relates to *Cammer* factor two (analyst coverage) and addressed ***debt*** securities, which are commonly known to react to different information than stocks and options.  *See* Opp. at 21; *Countrywide*, 273 F.R.D. at 615 ("coverage by equities analysts, such as analysts who cover common stock of the issuer, differs from debt analyst coverage").  Here, as in *Marcus*, Defendants' expert does not provide ***any*** economic analysis or evidence suggesting that the market for Apple options is not efficient.  Nor do Defendants or their expert contend that the options' prices are not based on the common stock price, which they agree is efficient.[5]  Market efficiency is established.

## 2. Defendants Have Failed to Rebut the Fraud-on-the-Market Presumption with Evidence of the Absence of Price Impact

As the Supreme Court reiterated in *Halliburton II*, the fraud-on-the-market presumption "could be rebutted by appropriate evidence," including evidence that the asserted misrepresentation (or its correction) did not affect the market price of the defendant's stock.  573 U.S. at 279-80.  However, to rebut the presumption, defendants must establish by a ***preponderance of the evidence*** that the misrepresentations "'did not affect the stock's market price.'" *Goldman Sachs Grp. Inc. v. Ark. Tchr. Ret. Sys.*, _U.S._, 141 S. Ct. 1951, 1962 (2021).[6]  That is, Defendants must produce evidence which proves that the misrepresentation "'***in fact*** did not lead to a distortion of price.'"  *Goldman*, 141 S. Ct. at 1962 (quoting *Basic*, 485 U.S. at 248) (emphasis in original).  Defendants ignore their burden, instead constructing a series of factually wrong and legally

---

[5]    Defendants' effort to create a distinction between employee option grants and options traded in the open market is both wrong and confirms the efficiency of the options market. Opp. at 19 n.10.  The Company's FY19 Schedule 14A states that employee stock option grants are given the same value of the Company's common stock on the date they are granted.  Ex. 6 at 23 ("The grant date fair value for RSUs [to executive officers] is measured based on the closing price of Apple's common stock on the date of grant.").   In other words, Apple accepts that the fair value of the stock options is directly tied to the value of the common stock trading in an efficient market.

[6]    Defendants also fail to provide any credible challenge to the *Affiliated Ute* presumption that applies given the material omissions at issue.  *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972); *see, e.g.*, ECF No. 123 at 18-19 ("Cook had reasonable grounds to believe material facts existed . . . that were misstated or omitted"); *id.* at 22 (Maestri liable as control person because he "could have . . . disclosed omitted facts").

1   improper arguments that they contend show the challenged statement "could not have" affected

2   Apple's stock price.  Opp. at 16.  Defendants then pronounce that it is Plaintiff's burden to show

3   price impact (*id.* at 15), and that it is Plaintiff's burden to produce evidence of front-end inflation

4   or price maintenance.  *See id.* at 16.  This is contrary to law; Plaintiff need not directly prove "price

5   impact."  *Halliburton II*, 573 U.S. at 278-279; *Goldman*, 141 S. Ct. at 1958.  Because the

6   Opposition misconstrues the weight of Defendants' burden and incorrectly assumes that

7   Defendants have proven the absence of price impact by a preponderance of the evidence,

8   Defendants' arguments fail.

9           **a.    Apple's So-Called Evidence of Lack of Price Impact Is a
              Procedurally Improper and Factually Incorrect Truth-
10             on-the-Market Defense**

11          The Supreme Court has clearly held that "'truth-on-the-market,'" a materiality-based

12   defense to securities claims, cannot be decided at class certification.  *Amgen*, 568 U.S. at 481-82

13   (proof that "'news of the [truth] credibly entered the market and dissipated the effects of [prior]

14   misstatements'" is reserved for trial) (quoting *Basic*, 485 U.S. at 248-49 & n.29) (alterations in

15   original)).  Accordingly, courts routinely reject truth-on-the-market defenses at class certification.

16   *See, e.g.*, *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 250 (N.D. Cal. 2013) ("an attempt to offer

17   proof of a 'truth on the market' defense to rebut the presumption of reliance is 'a matter for trial'")

18   (quoting *Basic*, 485 U.S. at 249 n.29).  Nonetheless, Defendants repeatedly advance this premature

19   merits-based argument which underpins their entire Opposition.  *See, e.g.*, Opp. at 17 ("November

20   5, 2018, the market was already appraised of Apple's slowing iPhone business in Greater China");

21   *id.* at 5. ("on November 1, 2018, the market was already well-aware that Apple was facing

22   headwinds in China"); *id.* at 5 n.2 (the "first two allegedly undisclosed 'true facts' were already

23   known to the market"); *id.* at 9 ("the market was already informed of slowing iPhone business in

24   China").  Recognizing that this argument must fail, Defendants curiously suggest that it is not a

25   truth-on-the-market argument, but an equally doomed loss causation argument.  *Id.* at 5 n.2

26   (because the "'true facts'" were already known to the market, the "'corrective disclosures' . . .

27   could not have affected Apple's stock price").

28

1    Even if Defendants' merits contentions were considered, their arguments are directly

2    contradicted by the evidence collected so far.   Despite Defendants' significant delay in the

3    production of documents, the early evidence ████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████████████████

5    ████████████████. For example, ████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████████████████████

7    ██████████████████████████████████████     ███████████████████████████████████████

8    ████████████████████████████████████████████ Ex. 8.   Another email

9    chain ████████████████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████████████████████

12   ██████████. Ex. 9 ████████████████████████████████████

13   ████████████; *see also* Ex. 5 at APL-SECLIT_00183226 ████████████████████████████

14   ████████████████████████████████████████████     █████████████████████████████████

15   ████████████████████████████████████████████████████████████████████████████████

16   ███████████████████████████████████. *Id.* at APL-SECLIT_00183229.[7]

17   Thus, Defendants' arguments are both procedurally impermissible and factually wrong.

18   The truth was not known to investors and these facts confirm Plaintiff's allegations, as well as the

19   Court's conclusions.   *See* ECF No. 110 at 42 ("it is simply implausible that Cook would not have

20   known that iPhone demand in China was falling mere days before cutting production lines").

21   Defendants' argument that Plaintiff's claims have "zero basis in fact" (Opp. at 2), is outright false.

22

23

24

25

---

26   [7] ████████████████████████ the Court's Order which rejected "Defendants . . . claim [that] the
statements do not show that ***on November 1, 2018*** (*i.e.*, four days before production lines were

27   first cut), defendants had knowledge that demand for new iPhones would fall or that Chinese
economic conditions were deteriorating."   ECF No. 110 at 42 (emphasis in original).   The Court

28   should not now entertain Defendants' new spin that all market participants knew the very truth
they previously claimed Defendants did not know.

### b. Defendants' Improper Loss Causation Arguments Cannot Be Resolved at Class Certification

Loss causation cannot be decided at class certification. *Erica P. John Fund, Inc. v. Halliburton Co.* (*Halliburton I*), 563 U.S. 804, 812-13 (2011). Nevertheless, Defendants contend that they meet their burden by essentially arguing that Plaintiff has not proved loss causation. *See* Opp. at 7, 16 ("the two November 2018 allegedly corrective disclosures cannot be said to have dissipated the . . . purported price inflation because they do not 'relate back'"); *id.* at 18 ("Plaintiff does not even attempt to demonstrate that . . . Apple's stock price decline was the result of the allegedly fraudulent Challenged Statement"); *id.* at 16-17 (the "corrective disclosures concerned reduced iPhone production, not Apple's overall business in Greater China"). These are classic challenges to loss causation that cannot be decided at class certification. *See Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *9 (N.D. Cal. Mar. 16, 2016) (rejecting nearly identical arguments as "nothing more than an attack on loss causation, or Plaintiffs' ability to 'show that a misrepresentation that affected the integrity of the market price ***also*** caused a subsequent economic loss'") (quoting *Halliburton I*, 563 U.S. at 812) (emphasis in original). Even Defendants' expert's attack on Dr. Feinstein's opinions is premised upon a loss causation challenge. *See* ECF No. 197-2, ¶17 (Dr. Feinstein's event study fails to explain or "take into account confounding information unrelated to the allegations that came out at the time of the alleged corrective disclosures."); *see Hatamian*, 2016 WL 1042502, at *9 ("'evaluating potentially confounding information on the disclosure dates, and determining whether it was material, is tantamount to a loss causation analysis'") (quoting *In re SLM Corp. Sec. Litig.*, 2012 WL 209095, at *5 (S.D.N.Y. Jan. 24, 2012)).

Defendants' insistence that the fraud-related losses be disaggregated from contemporaneously disclosed non-fraud factors is precisely what the Supreme Court has prohibited at class certification: "The fact that a subsequent loss may have been caused by factors other than the revelation of a misrepresentation has nothing to do with whether an investor relied on the misrepresentation in the first place, either directly or presumptively through the fraud-on-the-market theory." *Halliburton I*, 563 U.S. at 813 ("loss causation has no logical connection to the

1  facts necessary to establish the efficient market predicate to the fraud-on-the-market theory").

2  Unsurprisingly, the inapt case law Defendants rely upon addresses loss causation at summary

3  judgment. *See* Opp. at 7-8 (citing *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1140

4  (10th Cir. 2009) (pre-*Halliburton* opinion affirming the district court's grant of summary

5  judgment) and *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1311 n.28 (11th Cir. 2011)

6  (addressing loss causation at summary judgement)).

7        Defendants also mischaracterize the Supreme Court's opinion in *Goldman*, incorrectly

8  suggesting that "mismatches" between a misrepresentation and corrective disclosures "sever . . .

9  any showing of classwide reliance" without the need to prove the lack of price impact by a

10  preponderance of the evidence. *See* Opp. at 2.  But, *Goldman*'s analysis of "generic"

11  misrepresentations followed by "specific" disclosures is a situation not present here. *Goldman*,

12  141 S. Ct. at 1961.  And even in such circumstances, a "mismatch" merely invites the court to

13  consider more closely the evidence presented on the issue of price impact. *Id.*  To be clear, Plaintiff

14  does not object to the Court considering facts or evidence to the extent that they are relevant to

15  price impact even if that evidence overlaps with materiality and loss causation. *See Goldman*, 141

16  S. Ct. at 1960-61.  But, Defendants' arguments based on such facts are plainly challenges to loss

17  causation.

18        Defendants failure in their attempt to manufacture a "mismatch" between the November 1,

19  2018 misrepresentations and the November 5 and 12, 2018 partial disclosures reporting drastic

20  iPhone production cuts is nevertheless easily rejected. *See* Opp. at 2, 5, 8.  Defendants incorrectly

21  assert that the November 5 disclosure that Apple cut iPhone production by up to 100,000 iPhone

22  XR units per day was unrelated to Cook's misrepresentation regarding China.  Opp. at 7.[8]  But the

---

[8]   Remarkably, Defendants argue that the November 2018 stock price declines were caused by
the alleged misrepresentations that were dismissed as immaterial puffery, specifically: (i) iPhone
XS and XS Max had gotten off to a great start; and (ii) that it was too early to assess XR
performance of the newly released iPhone XR.  Opp. at 17 n.9.  By making this argument,
Defendants concede that these statements were in fact material because the price declines would
not have occurred but for the materiality of those alleged misrepresentations. *See In re Alphabet,
Inc. Sec. Litig.*, 1 F.4th 687, 705 (9th Cir. 2021) (investor reaction to disclosure including 13%
price decline supports materiality of the alleged misrepresentation); *No. 84 Employer-Teamster
Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 948 (9th Cir. 2003).

1   iPhone XR was specifically targeted to compete in China – the Company's largest growth market

2   – where declining economic conditions were driving consumers to buy fewer and cheaper

3   smartphones with better features.  Defendants' expert's report proves the very relatedness they

4   claim is missing.  For example, prior to the Class Period, it was reported that "Apple has reserved

5   most of its initial supply of **iPhone XRs for China**."  ECF No. 197-2, ¶103; *id.*, ¶103 n.133

6   ("'Apple to Send Two-Thirds of 3 million iPhone XRs to China,'" *Yicai Global*, October 23,

7   2018.).  On October 29, 2018, a *South China Morning Post* article titled, "Apple CEO Tim Cook

8   hints at popularity of new lower cost iPhone XR in China" stated that "Tim Cook seems relieved

9   that the company's more affordable iPhone XR is apparently doing better in China compared to

10  the tepid Chinese response to its recent high-end flagship [*i.e.*, the XS/XS Max] released last

11  month." *Id.*, ¶¶136-137 n.138-139, Ex. 9.  The November 5 and 12 reported cuts to XR production

12  directly contradicts Cook's November 1 assurances about demand in China.

13        This evidence is further supported by █████████████████████████████

14  ████████████████████████████████████████████████████████████████████████

15  ███████████████████████████████████████.  Ultimately, on January 2,

16  2019, the Company would confirm that it was poor iPhone sales in China that drove its poor

17  performance: "Lower than anticipated **iPhone** revenue, **primarily in Greater China**, accounts for

18  **all of our revenue shortfall** to our guidance."  Complaint, ¶82.  In short, Defendants have failed

19  to carry their burden to rebut the fraud-on-the-market presumption.

20        **3.    Plaintiff's Damages Methodology Is Capable of Calculating
              Damages for All Putative Class Members**

21

22        Plaintiff and Dr. Feinstein have proffered a viable, widely accepted and generally applied

23  methodology for measuring per share damages common to all class members.  *See* Feinstein

24  Report, ¶¶178-189.  The "out-of-pocket" and "event study" methodologies measure the artificial

25  inflation on each day during the Class Period and appropriately calculate per share damages.  *See*

26  *id.*, ¶186(i)-(vi).  This Court recently found that "[c]ourts regularly reaffirm that the out-of-pocket,

27  or event study, method matches plaintiffs' theory of liability under Section 10(b) of the Securities

28  Exchange Act, making it the standard method for calculating damages in virtually every Section

1   10(b) class action." *City of Mia. Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 2018 WL

2   4931543, at *3 (N.D. Cal. Oct. 11, 2018); *see Cooper v. Thoratec Corp.*, 2018 WL 2117337, at *7

3   (N.D. Cal. May 8, 2018) ("'[t]he event study method is an accepted method for the evaluation of

4   materiality damages to a class of stockholders'"); *Hatamian*, 2016 WL 1042502, at *8 (same).

5          Defendants misread *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), and its progeny, to

6   advance the widely rejected notion that "[p]laintiff must show a classwide method for calculating

7   damages" to establish predominance.  Opp. at 23; *see Comcast*, 569 U.S. at 41 (Ginsburg, J.,

8   dissenting) (this "decision should not be read to require, as a prerequisite to certification, that

9   damages attributable to a classwide injury be measurable '"on a classwide basis."'").  In *Hatamian*,

10  this Court recognized that "[t]he Ninth Circuit reads *Comcast* to demand only that plaintiffs 'be

11  able to show that their damages stemmed from the defendant's actions that created the legal

12  liability.'"  2016 WL 1042502, at *8 (citing *Levya v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th

13  Cir. 2013) (citing *Comcast*, 569 U.S. at 38)); *Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 407 (2d

14  Cir. 2015) ("'the [*Comcast*] Court did not hold that proponents of class certification must rely upon

15  a classwide damages model to demonstrate predominance'").  Addressing Defendants' exact

16  argument, this Court noted that "courts in this District have declined to adopt Defendants'

17  suggested interpretation."  *Hatamian*, 2016 WL 1042502, at *24 (declining to "'decide whether,

18  as defendant claims, *Comcast* requires that class certification be denied absent affirmative

19  evidence that damages are susceptible of measurement across the entire class'") (quoting *Diamond

20  Foods*, 295 F.R.D. at 251).  "The ultimate question . . . is whether 'damages could feasibly and

21  efficiently be calculated once the common liability questions are adjudicated'" – a showing

22  Plaintiff easily meets here.  *Hatamian*, 2016 WL 1042502, at *8 (citing *Levya,* 716 F.3d at 514).

23         Like *Hatamian*, Plaintiff intends to use the standard – and widely accepted – measurement

24  of damages in §10(b) securities cases: The "out-of-pocket" measure.  Feinstein Report, ¶¶182,

25  186; Feinstein Reply, ¶¶11, 29, 33-34.  Defendants incorrectly contend that the "'out-of-pocket'"

26  damages method is "merely a general definition of damages" but "not a functional model that one

27  could actually use to calculate damages."  Opp. at 23.  Nonsense.  As Dr. Feinstein reported and

28  testified, the out-of-pocket methodology includes an event study and available valuation tools to

1  allow calculation of classwide damages stemming from alleged misrepresentations and omissions.

2  The event study methodology for assessing damages "is '[t]he gold standard, which is accepted by

3  both courts and economists.'"  *Household, Int'l, Inc.*, No. 02 C 5893, slip op. at 2 (N.D. Ill. Mar.

4  23, 2009) (quoting Marge S. Thorsen, *et al.*, "Rediscovering the Economics of Loss Causation," 6

5  J. Bus. & Sec. L. 93, 99 (2006)); *FindWhat*, 658 F.3d at 1313 & n.31 ("[E]vent studies are a

6  'common method' . . . 'used routinely in the academic literature to determine whether the release

7  of particular information has a significant effect on a company's stock price.'").

8          Defendants' expert, Steven Grenadier, does nothing to undermine that Plaintiff proposes a

9  damages methodology consistent with its theory of liability, as well as *Comcast* and numerous

10  decisions certifying §10(b) claims.  *In re BofI Holding, Inc. Sec. Litig.*, No. 3:15-cv-02324-GPC-

11  KSC, Order Granting Plaintiff's Motion for Class Certification, Appointment of Class

12  Representative, and Approval of Class Counsel, 11-19 (S.D. Cal. Aug. 24, 2021) (certifying class

13  over identical objections to plaintiff's out-of-pocket or event study damages model).  Grenadier

14  posits that the out-of-pocket and event study method cannot "take into account information that

15  Apple could have learned only after the alleged misrepresentation on November 1, 2018."  ECF

16  No. 197-2, ¶¶14, 17.  This assertion ignores that Plaintiff can only obtain damages by proving that

17  the alleged misrepresentations were false or misleading when made.  *In re Apple Sec. Litig.*, 2020

18  WL 6482014 (N.D. Cal. Nov. 4, 2020), at *7 ("plaintiff adequately pleads that the China related

19  statements were materially false or misleading ***when made***").   In other words, Grenadier

20  paradoxically complains that the damages methodology cannot calculate damages if Defendants

21  were to prevail on liability, at which point damages are irrelevant.  Defendants' Opposition

22  incorporates the same pointless critique.  Opp. at 24. (Dr. Feinstein's damages methodology, per

23  Defendants, does not account for the fact that the "quarter-end drop in Apple's iPhone business in

24  China could not have been known" in November 2018).  To the extent that Defendants claim that

25  non-fraud factors must be disaggregated from price declines, Dr. Feinstein opined that accepted

26  tools and techniques exist to do so.  Feinstein Report, ¶48.  Plaintiff has provided a sufficient

27  damages methodology.

28

### B.     Norfolk is an Adequate Class Representative Under Rule 23(a)(4)

"'To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"'" *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 626 (N.D. Cal. 2018) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).  Here, there is no conflict between Norfolk, its counsel and members of the Class, and it is not subject to any unique defenses that would divert the attention from the merits.  *In re Lyft Inc. Sec. Litig.*, 2021 WL 3711470, at *4 (N.D. Cal. Aug. 20, 2021) (finding plaintiff adequate where plaintiff vigorously prosecuted action and no conflict of interest between plaintiff and proposed class counsel and the class).

Norfolk and its counsel have vigorously pursued the claims on behalf of the Class including: (a) moving for appointment as lead plaintiff; (b) attending (in person) hearings on the lead plaintiff motion and motion to dismiss; (c) crystalizing the initial allegations necessary to survive the motion to dismiss in a condensed class period; (d) assuming the lead plaintiff role for the operative class period; (e) defeating the motion to dismiss the complaint; (f) searching for and producing relevant documents; (g) aggressively pursuing discovery from Defendants and non-parties; (h) preparing for and providing deposition testimony; and (i) remaining apprised of counsel's efforts, including the extensive discovery and motion practice to date.  Moreover, Norfolk is among the few investors with the experience of prosecuting a securities class action as class representative through trial.  *See* Motion at 5.  These unchallenged facts more than satisfy Rule 23(a)(4).  Instead, Defendants convulse over Norfolk's filing of an amended loss chart correcting the date and price of one transaction based upon updated information and substituting the realized sale price for the average price which had been mistakenly entered by counsel.  ECF No. 194.  These changes, one of which reduced Norfolk's stated losses and the other of which increased them, have zero indicia of bad faith or deception.  Indeed, Norfolk identified the issue,

1   apprised the Court via a revised loss chart, and continues to have the largest losses of any lead

2   plaintiff movant in this action.  *See* ECF No. 194.[9]

3         At class certification, "'allegations concerning [a] representative's adequacy must be

4   relevant to the claims in the litigation, such that problems could become the focus of cross-

5   examination and unique defenses at trial to the detriment of the class.'"  *In re SLM Corp. Sec.*

6   *Litig.*, 2012 WL 209095, at *8 (quoting *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 144

7   (S.D.N.Y. 2007).  Indeed, "[c]ourts routinely reject criticisms based on errors in certifications,

8   particularly where there is no evidence of bad faith or intent to deceive the court or the parties."

9   *Id.*; *see also*, *In re Solar City Corp. Sec. Litig.*, 2017 WL 363274, at * 6 (N.D. Cal. Jan. 25, 2017)

10  (finding loss calculation errors in certification do not render lead plaintiff inadequate "if there is

11  [no] 'evidence of bad faith or intent to deceive the court'") (collecting cases); *Khunt v. Alibaba*

12  *Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 538-39 (S.D.N.Y. 2015) (inadvertent errors in

13  certifications "do not strike at the heart of Rule 23's adequacy requirement"); *Ferrari v. Gisch*,

14  225 F.R.D. 599, 605 (C.D. Cal. 2004) (minor miscalculation in losses not a basis for

15  disqualification).  Here, the only correction to Norfolk's certification (as opposed to the loss chart,

16  which was computed by counsel), results in an increase in Norfolk's losses.  *See Solar City*, 2017

17  WL 363274, at *6 (bad faith unlikely where correct calculation would have increased losses); *SLM*,

18  20112 WL 209095, at *8 (noting that despite plaintiffs' certification error, reduced losses were

19  still greater than other movants).

20        Defendants rely on a series of inapt cases, each of which includes evasive conduct and a

21  series of unexplained omissions and errors which led courts to find that a proposed lead plaintiff

22  was not adequate.  For example, in *In re Boeing Co. Aircraft Sec. Litig.*, 2020 WL 476658 (N.D.

23  Ill. Jan. 28, 2020), the court found that the movant had not provided ***any*** meaningful information

24

25  ---

    [9]   Plaintiff Employees' Retirement System of the State of Rhode Island testified that ██████████
26  ████████████████████████████████████████████████████████████  *See* Ex. 10 at 72-73:
    23-1_.  Plaintiff City of Roseville Employees' Retirement System testified, ████████████████
27  ████████  Ex. 11 at 87:3-4, 20-21. Defendants
    also ignore that Norfolk was not appointed Lead Plaintiff until June 2020, with discovery
28  beginning in earnest in early 2021, thus explaining the delay in identifying the error.

1    to support its adequacy, failed to disclose that its purchased shares were made with borrowed

2    money **and** its loss chart failed to disclose **any** sales of Boeing shares.  *Id.* at *3.  In *Plaut v.*

3    *Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019), proposed lead

4    plaintiffs entirely omitted certain transactions from the loss chart and made no attempt to explain

5    why.  Finally, Defendants misrepresent the holding in *Camp v. Qualcomm Inc.*, 2019 WL 277360,

6    at *3-*4 (S.D. Cal. Jan. 22, 2019) (arguing that the court disqualified plaintiff "**due to** misstated

7    loss calculations").  *See* Opp. at 13.  But there again, the court found plaintiff: (i) failed to provide

8    any details about himself; (ii) falsely claimed to have filed a complaint; **and** (iii) identified

9    inaccurate purchase transactions in the loss chart.  *Camp*, 2019 WL 277360, at *4-*5.

10        None of the misleading characteristics in those cases are present here, and Defendants

11   never assert that Norfolk would be subject to any unique defense.  Norfolk's amended loss chart

12   updated a reported acquisition of 14,012 shares from Tuesday, November 13, 2018 at $192.23 per

13   share to Monday, November 12, 2018 at $204.42 per share.  ECF No. 194.  Defendants argue that

14   Apple shares never traded at that price on that day (Opp. at 13), but, records produced in April

15   2021, from Fidelity International (Norfolk's investment manager), and HSBC (its custodial bank),

16   plainly identify the acquisition on November 12, 2018, at a price of $204.42 per share.  *See* Ex. 12

17   ("Younger Reply Decl."),¶¶3, 6-7; ECF Nos. 165-4, 197-7.  Without taking discovery from either

18   institution, Defendants speculate that Norfolk intentionally misled the Court and manipulated its

19   submission.  To the contrary, further demonstrating its adequacy, Norfolk investigated the

20   transaction's details.  *See* Younger Reply Decl., ¶¶4-11, 16.  On July 23, 2021, Fidelity confirmed

21   that Norfolk acquired Apple shares on November 12, 2018 at $204.42 per share, as recorded on

22   both Fidelity and HSBC's account statements, and provided screenshots of the transaction and a

23   reconciliation of accounts.  *Id.*, ¶16, Ex. C.

24        Defendants also inaccurately assert that one of Norfolk's Class Period purchases of Apple

25   shares was simply a "transfer[] between [its own] accounts."  Opp. at 13.  In fact, on November

26   12, Norfolk redeemed its position in a pooled fund for Apple shares based on the market price.

27   The November 12 acquisition was a redemption of Norfolk's units in a Fidelity managed fund, the

28   Exempt America Multi Manager Fund, in which the fund, not Norfolk, owned Apple shares.

1    Younger Reply Decl., ¶¶13-16.  The redemption was conducted through an *in specie* acquisition

2    in which Norfolk exchanged its Exempt America Multi Manager Fund investment for the Apple

3    shares (as well as other securities), at the price of $204.42.  *Id.* at ¶¶15-16; *see also* Ex. 13

4    (describing benefits of *in specie* transactions).  Only after the transaction did Norfolk own the

5    Apple shares, which it had transferred to a segregated fund.  Fidelity confirmed the *in specie*

6    acquisition was an efficient alternative to Norfolk selling the Exempt America Multi Manager

7    Fund investment for cash and purchasing the Apple shares at $204.42.  Younger Reply Decl.,

8    ¶¶15-16.

9         Finally, in their zeal to characterize Norfolk and its lawyers as dishonest (Opp. at 14),

10    Defendants wrongly contend that the total number of shares Norfolk sold is incorrect because the

11    HSBC trading records show that the fund sold a total of 36,934 shares on February 11, 2019.  *Id.*

12    at 13.  But the loss chart uses the widely accepted "First in First Out" ("FIFO") accounting method

13    under which the first shares sold by Norfolk during the Class Period are first matched against any

14    pre-Class Period holdings and then against the remaining Class Period purchases until the sale

15    shares are exhausted.  Norfolk held 4,787 Apple shares prior to the Class Period, thus those pre-

16    Class Period holdings were matched against the first of the 36,934 shares sold on February 11,

17    2019, thereby leaving the 32,147 shares listed in the Norfolk loss chart.  Defendants' accusations

18    call to mind the observation that a defendant purportedly looking out for the good of the class "is

19    a bit like permitting a fox . . . to take charge of the chicken house."  *Eggleston v. Chi. Journeymen*

20    *Plumbers' Loc. Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981).  All of these challenges to

21    Norfolk's adequacy fail.

22    **III.    CONCLUSION**

23         For all the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's

24    Motion, certify the Class, appoint Norfolk as Class Representative and appoint Robbins Geller

25    Rudman & Dowd LLP as Class Counsel.

26    DATED:  August 24, 2021                    Respectfully submitted,

27                                              s/ Shawn A. Williams
                                              SHAWN A. WILLIAMS

28

1

2 ROBBINS GELLER RUDMAN
  & DOWD LLP

3 SHAWN A. WILLIAMS
 DANIEL J. PFEFFERBAUM

4 JOHN H. GEORGE
 KENNETH J. BLACK

5 HADIYA K. DESHMUKH
 Post Montgomery Center

6 One Montgomery Street, Suite 1800
 San Francisco, CA  94104

7 Telephone:  415/288-4545
 415/288-4534 (fax)

8 shawnw@rgrdlaw.com
 dpfefferbaum@rgrdlaw.com

9 jgeorge@rgrdlaw.com
 kennyb@rgrdlaw.com

10 hdeshmukh@rgrdlaw.com

11 ROBBINS GELLER RUDMAN
  & DOWD LLP

12 MARK SOLOMON
 TOR GRONBORG

13 655 West Broadway, Suite 1900
 San Diego, CA  92101

14 Telephone:  619/231-1058
 619/231-7423 (fax)

15 marks@rgrdlaw.com
 torg@rgrdlaw.com

16 Lead Counsel for Lead Plaintiff

17 LABATON SUCHAROW
 CAROL C. VILLEGAS

18 140 Broadway
 New York, NY 10005

19 Telephone: 212/907-0700
 212/883-7524 (fax)

20 cvillegas@labaton.com

21 Counsel for Employees' Retirement System of
 the State of Rhode Island

22

23

24

25

26

27

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on August 24, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Shawn A. Williams
SHAWN A. WILLIAMS

ROBBINS GELLER RUDMAN
   & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:  shawnw@rgrdlaw.com

## Mailing Information for a Case 4:19 cv 02033 YGR IN RE APPLE INC. SECURITIES LITIGATION

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **Kevin Michael Askew**
  kaskew@orrick.com

- **Kenneth Joseph Black**
  KennyB@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com

- **Frank H. Busch**
  busch@wvbrlaw.com,johnson@wvbrlaw.com,pallister@wvbrlaw.com

- **Hadiya Khan Deshmukh**
  hdeshmukh@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **William Joseph Foley**
  wfoley@orrick.com

- **Christine M. Fox**
  cfox@labaton.com,ndonlon@labaton.com,lpina@labaton.com,electroniccasefilings@labaton.com,fmalonzo@labaton.com,6312349420@filings.docketbird.com

- **John Hamilton George**
  jgeorge@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Nicomedes Sy Herrera**
  nherrera@herrerakennedy.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Austin Thomas Jackson**
  ajackson@structurelaw.com,cford@structurelaw.com

- **James Neil Kramer**
  jkramer@orrick.com,lpatts@orrick.com,mwatkins@orrick.com,vmorse@orrick.com,tallen@orrick.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,asoto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Francis P. McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,egoodman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,jalieberman@pomlaw.com,asoto@pomlaw.c

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,jgeorge@rgrdlaw.com,dpfefferbaumRGRD@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,jgeorge@ecf.courtdrive.com,sbloyd@rgrdlaw.co

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Mark Solomon**
  marks@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Alexander K. Talarides**
  atalarides@orrick.com,lpatts@orrick.com,casestream@ecf.courtdrive.com

- **Carol C. Villegas**
  cvillegas@labaton.com,ndonlon@labaton.com,5739893420@filings.docketbird.com,dsaldamando@labaton.com,lpina@labaton.com,acoquin@labaton.com,fmalonzo@

- **James Matthew Wagstaffe**
  wagstaffe@wvbrlaw.com,johnson@wvbrlaw.com

- **Steven Ray Wedeking , II**
  swedeking@robbinsllp.com,notice@robbinsllp.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,smorris@rgrdlaw.com,kennyb@rgrdlaw.com,e_file_sd@rgrdlaw.com,smorris@ecf.courtdrive.com

- **Ariel Brianna Winawer**
  awinawer@orrick.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`