# EXHIBIT 1

JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
ALEXANDER K. TALARIDES (SBN 268068)
atalarides@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     (415) 773-5700
Facsimile:     (415) 773-5759

WILLIAM J. FOLEY (*Admitted Pro Hac Vice*)
wfoley@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone:     (212) 506-5000
Facsimile:     (212) 506-5151

Attorneys for Defendants Apple Inc.,
Timothy Cook, and Luca Maestri

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | Civil Action No. 4:19-cv-02033-YGR |
| | **DEFENDANTS' SUR-REPLY TO MOTION FOR CLASS CERTIFICATION** |
| | Judge:     Honorable Yvonne Gonzalez Rogers |

## I.  **INTRODUCTION**

Defendants' Opposition to Plaintiff's Motion for Class Certification (the "Opposition") demonstrates that Plaintiff's Apple stock loss certifications to the Court were misstated by *more than double*, and that Plaintiff is therefore not an adequate representative to lead the proposed class.  While Plaintiff's reply memorandum (the "Reply") attempts to obscure the matter, the evidence it introduces there for the first time actually confirms that Plaintiff's loss certifications continue to be significantly misstated.

As an initial matter, the Reply introduces new details about Plaintiff's November 12, 2018 purported "in-specie acquisition" of Apple shares that establish the transaction was not a purchase and could not have caused Plaintiff losses.  The Reply also now discloses, for the first time, that Plaintiff's February 11, 2019 purported "sale" of Apple shares was also a "non-cash" exchange.  Defendants have sought (and thus far have been refused) additional details regarding the February 11 exchange through discovery, but based on what Plaintiff has already provided, it can be reasonably inferred the "non-cash" exchange was also merely a transfer of assets between investment accounts, and thus also could not have caused Plaintiff's claimed losses.

Correcting the November 12, 2018 transaction on Plaintiff's loss certifications reduces Plaintiff's claimed losses from $1.17 million to around *$500,000*, and correcting for the February 11, 2019 transaction will likely reduce the losses by even more.  The magnitude of these misstatements alone disqualify Plaintiff as an adequate class representative, *see*, *e.g.*, *In re Boeing Co. Aircraft Sec. Litig.*, 2020 WL 476658, at *5 (N.D. Ill. Jan. 28, 2020) ("failure to discover . . . obvious [loss chart] errors independently warrants a determination that the [plaintiffs] will not be adequate representatives of the class.") (collecting cases), though Plaintiff's continued refusal to come clean about its true stock losses further demonstrates why its Motion for Class Certification (the "Motion") should be denied, *see In re Solar City Corp. Sec. Litig.*, 2017 WL 363274, at *6 (N.D. Cal. Jan. 25, 2017) ("Errors in claimed losses may render a movant inadequate if there is evidence of bad faith or intent to deceive the court or the parties.") (internal quotations and citation omitted).

## II. __BACKGROUND__

When Plaintiff first moved for lead plaintiff appointment, it claimed that it had "*purchased* 39,617 shares of Apple stock [during the relevant period] and suffered approximately $1.1 million in losses as the price of Apple stock declined."  Dkt. No. 36 at 10 (emphasis added).  However, when Defendants deposed Plaintiff's Rule 30(b)(6) representative in connection with the Motion, his testimony revealed that one of those "purchases" was in fact a "transfer of assets from a pooled vehicle in which [Plaintiff was] a unit holder" and one of Plaintiff's segregated accounts.  Dkt. No. 197-6 at 141:9-10 (concerning the November 12, 2018 transaction).  Then, after the deposition was over (and Defendants could no longer ask questions about it), Plaintiff produced a document from *before* November 12, 2018 that showed Plaintiff then understood the November 12 transaction to be a "transfer of assets," *not* a purchase, and had directed its investment manager to make the transfer as of that date.  Dkt. No. 197-9 at NORFOLK_0002301.  The week following the deposition of Plaintiff's designee, Plaintiff also filed an errata with the Court purporting to finally "update" the two-year old false information Plaintiff submitted in its lead plaintiff application (the "Errata"), Dkt. No. 194, a document that itself contained numerous misstatements.  *See* Opposition at 12-13.

Now, in its Reply, Plaintiff tries to backtrack away from its recent admissions, and for the first time claims that the November 12 transfer was really an "in-specie *acquisition*" that should somehow be credited as a purchase.  Reply at 15.  The Reply also provides new details about how that transaction operated, how Plaintiff in fact selected the purported "purchase price" that is cited on its stock loss certification (despite it being a non-cash transaction), and how Plaintiff held its interests in Apple since *before* the class period.  Dkt. No. 202-9 (the "Younger Reply Decl.").  The Reply also discloses, again for the first time, that another transaction, the February 11, 2019 purported "sale" of Apple stock, was also a "non-cash" exchange.  *Id.* ¶ 17.

III.     **ARGUMENT**

    A.     **The November 12, 2018 In Specie Transfer Was Not A Purchase And Could Not Have Contributed To Plaintiff's Alleged Losses**

The Younger Reply Declaration confirms that Plaintiff's November 12, 2018 purported "acquisition" of 14,012 shares of Apple stock was not a "purchase," but was instead an "in specie" transfer of Apple shares from one of Plaintiff's investment accounts into another.  *See* Younger Reply Decl., ¶¶ 14-16.  On November 12, 2018 Plaintiff did *not* pay money in exchange for Apple shares, but rather directed its London-based investment manager Fidelity to exchange its unitized interest in Fidelity's Exempt America Multi Manager Fund (the "Fidelity Fund") for a proportional stake in the Fidelity Fund's underlying holdings, including Apple.   Younger Reply Decl., ¶ 15.   But nothing fundamentally changed about the nature of Plaintiff's investment in Apple— it simply transferred its interest in Apple shares from those held in the Fidelity Fund to identical shares in a separate account. *Id.*  Accordingly, Plaintiff stood to gain or lose just as much in Apple's stock performance after the transfer as it did before.

In short, on November 12, 2018, Plaintiff did not acquire or purchase shares, but effectuated a "mere transfer between corporate pockets."  *See Rathborne v. Rathborne*, 683 F.2d 914, 921 (5th Cir. 1982) ("[P]laintiff did not participate in a conventional purchase or sale of securities, nor did he experience the kind of fundamental change in the nature of his investment which would allow us to find that he was a constructive purchaser.").  Significantly, the Reply does not and cannot cite *any* decision where this sort of transfer of stock between investment accounts constitutes a purchase or sale under the federal securities laws.

Of course, even if the November 12 in specie transfer could be considered a "purchase," and it cannot, the transfer did not and *could not have* contributed to Plaintiff's losses, because as Plaintiff concedes, the value of the Fidelity Fund was *directly tied* to the market value of the Fund assets, such that an investor could liquidate its interest in the Fund for cash to purchase the *exact amount of shares* that its unitized interest represented.  *See* Younger Reply Decl., ¶ 16 & Exhibit C.  Because the value of the Fund was directly tied to the market value of Apple stock, if the market price of Apple's stock

were artificially inflated, *so too was the value of the Fund's holdings*.  Thus, insofar as Plaintiff admittedly purchased its units in the Fidelity Fund before the start of the class period (*id.* ¶ 14), any alleged price inflation that occurred during the period would have equally inflated the value of Plaintiff's unitized interest in the Fidelity Fund, and when the "in specie" transfer occurred, any inflation would have been transferred with it.

As discussed in the Opposition, when the November 12, 2018 in specie transfer is removed from Plaintiff's loss calculation, Plaintiff's purported losses from its trades in Apple during the class period drop to *$500,000*, far below both the $1.17 million in losses Plaintiff claimed in its Original Loss Certification (Dkt. No. 37-9) and the $980,000 now claimed in the Errata (Dkt. No. 194-1).

**B.    The February 11, 2019 "Non-Cash Exchange" of Apple Shares Is Also Misrepresented**

The Reply further admits, for the first time, that Plaintiff's February 11, 2019 purported "sale" of 36,934 shares of Apple stock (encompassing the *entirety* of its claimed post-class sales) was also misrepresented, and that the shares were likewise exchanged "free of cash," i.e., "where the economic consideration received [was] a non-cash item."  Younger Reply Decl., ¶ 17 (explaining the "SFREE" code); Dkt. No. 197-7 at NORFOLK_0000445 (using the "SFREE" code for the February 11, 2019 transaction).[1]    That admission is contrary to Plaintiff's representations in the Original Loss Certification and Errata, both of which claimed that Plaintiff had received a dollar amount of "proceeds" in connection with the transaction.  *See* Dkt. No. 37-9 & Dkt. No. 194-1.

Given Plaintiff's admission that the February 11 transaction was a "non-cash" exchange, and evidence that shows the transaction code associated with the February 11 "sale" ("SFREE") is the

---

[1] Defendants have repeatedly attempted to obtain additional information regarding this transaction. On August 4, 2021, Defendant Apple issued an interrogatory specifically requesting details regarding "the circumstances and context of [Norfolk's] February 11, 2019 trade," and on September 3, 2021, Plaintiff objected to the interrogatory without providing any substantive response.  *See* Declaration of William Foley in Support of Administrative Motion for Leave to File Sur Reply at Ex. A, (interrogatory number 4).  During a meet and confer on September 15, 2021, Plaintiff's counsel argued that this information was not relevant to the case, and then stated Plaintiff would need more time to determine whether it would respond.

mirror image of the transaction code for the November 12, 2018 "purchase" ("PFREE"),[2] it can fairly be inferred that Plaintiff did not in fact "sell" any Apple shares on February 11, 2019, and thus did not suffer any associated losses.  Indeed, if the February 11 transaction was another in specie transfer, a true "sale" of the Plaintiff's interest in Apple (that could have caused losses) would occur only when Plaintiff sold its interest in the pooled fund or that fund sold those Apple shares on the open market.

Plaintiff has as of yet refused to divulge when, if at all, that sale in fact occurred, and thus Defendants cannot accurately determine how overstated Plaintiff's losses are in that regard.

**C.      Plaintiff's Misstatements And Its Continued Refusal to Disclose the Truth About Its Trades Make It An Inadequate Class Representative.**

The sheer magnitude of Plaintiff's stock loss misrepresentations—by at least $650,000, or 133%—demonstrate an extreme carelessness that should disqualify Norfolk to represent the class even in the absence of bad faith.  These are far from the sort of "minor miscalculations" that generally do not serve as a basis for disqualifying a plaintiff.  *See Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D. Cal. 2004) (concerning an overstatement of $25,000).

Unfortunately, there are also reasons to infer that Plaintiff's misrepresentations were intentional.  First, Plaintiff's numerous misstatements significantly *increased* Plaintiff's purported losses and therefore helped it secure the coveted lead plaintiff position.  *Cf. Solar City*, 2017 WL 363274, at *6 (noting that bad faith was unlikely because the plaintiff's error *decreased* its claimed losses).  And while Plaintiff claims that it is still the largest loss holder of any lead plaintiff movant (Reply at 13), that claim is based on an Errata that still overstates Plaintiff's losses by 96%.  *See* Dkt. No. 194-1.

Second, despite Defendants' best efforts, Plaintiff has consistently refused to disclose the full truth about its irregular transactions, instead releasing limited information in a slow drip: first at the deposition, then in the Errata, then in a produced document, and now in the Reply.  Indeed, it has

---

[2] *See* Younger Reply Decl., ¶ 17; Dkt. No. 197-7 at NORFOLK_0000510.  At a September 15, 2021 discovery meet and confer, counsel for Defendants directly asked Plaintiff's counsel to confirm whether the February 11 transaction was another in specie transfer, but Plaintiff has, to date, declined to do so.

1  taken Plaintiff *over two years* to disclose information about its irregular transactions in Apple stock,

2  and those disclosures are *still* incomplete or misleading.  For example, the recently filed Errata

3  claimed that the November 12, 2018 "acquisition" of Apple shares "cost" Plaintiff $2.9 million.  Dkt.

4  No. 194-1.  That is, at best, a half-truth, because as Plaintiff now admits, that "acquisition" was

5  actually a transfer of shares for a proportional interest in the Fidelity Fund, not a cash sum.  Younger

6  Reply Decl., ¶ 15.  While Plaintiff's Reply scrambles to justify the dollar price assigned to that

7  transaction, that price was nothing more than an accounting technicality because no cash ever changed

8  hands.  *See id.* ¶¶ 6, 7 & Exhibit A (describing how Plaintiff's investment managers contemplated

9  and selected between an Apple closing price on November 9, 2018 and November 13, 2018 to assign

10  to the transfer).[3]  Plaintiff argues in the Reply that an in specie transfer is the equivalent of a securities

11  purchase, but "[t]he time to make that argument was . . . as part of [Plaintiff's] application for

12  appointment as Lead Plaintiff."  *See In re Grupo Televisa Sec. Litig.*, 2021 WL 2000005, at *1 n.*

13  (S.D.N.Y. May 19, 2021).  Defendants, the Court, and the purported class deserve Plaintiff's candor

14  in explaining these irregular transactions.

15  **IV.   CONCLUSION**

16          For the reasons addressed above, Plaintiff is not an adequate class representative of the

17  proposed class and its Motion for Class Certification should be denied.

18

19   Dated: September 20, 2021                    ORRICK, HERRINGTON & SUTCLIFFE LLP

20

21                                                      */s/ James N. Kramer*
                                                    _____
22                                                       JAMES N. KRAMER

23                                                  Attorneys for Defendants Apple Inc.,
                                                    Timothy Cook, and Luca Maestri

24

25  _____

26  [3] The Reply also claims that when the misstated November 12, 2018 transaction is corrected, it
    actually *increases* Plaintiff's losses.  Reply at 12-13.  But Plaintiff admits that it did not pay a penny
    for the 14,012 shares of Apple that were transferred on November 12, 2018 (Younger Reply Decl., ¶
27  15) and therefore arguing that it suffered more losses because it paid a higher "price" for those shares
    (based on an artificial accounting technicality) is false.

28  _____