# EXHIBIT C

**Robbins Geller Rudman & Dowd LLP**

| | | |
|---|---|---|
| Boca Raton | Melville | San Diego |
| Chicago | Nashville | San Francisco |
| Manhattan | Philadelphia | Washington, D.C. |

John H. George
jgeorge@rgrdlaw.com

March 17, 2021

<u>VIA EMAIL</u>

William J. Foley
Orrick, Herrington & Sutcliffe LLP
51 W. 52nd St.
New York, NY 10019
wfoley@orrick.com

M. Todd Scott
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
tscott@orrick.com

Re:   *In re Apple Inc. Sec. Litig.*, No. 4:19-cv-02033-YGR (N.D. Cal.)

Dear Bill and Todd:

We write on behalf of Lead Plaintiff Norfolk County[1], Named Plaintiff City of Roseville[2] and Named Plaintiff Rhode Island[3] (collectively, "Plaintiffs") to summarize the parties' telephonic meet and confer held on March 8, 2021 and March 11, 2021 concerning Plaintiffs' Objections and Responses[4] to Defendants'[5] First Requests for Production of Documents to Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund, Plaintiff Employees' Retirement System of the State of Rhode Island and Plaintiff City of Roseville Employees' Retirement System ("RFPs").

---

[1]   "Lead Plaintiff" and "Norfolk County" refer to Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund.

[2]   "City of Roseville" refers to Plaintiff City of Roseville Employees' Retirement System.

[3]   "Rhode Island" refers to Plaintiff Employees' Retirement System of the State of Rhode Island.

[4]   "Objections and Responses" refers, collectively, to: (1) Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund's Objections and Responses to Defendants' First Requests for Production of Documents to Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund, Plaintiff Employees' Retirement System of the State of Rhode Island and Plaintiff City of Roseville Employees' Retirement System; (2) Named Plaintiff City of Roseville Employees' Retirement System's Objections and Responses to Defendants' First Requests for Production of Documents to Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund, Plaintiff Employees' Retirement System of the State of Rhode Island and Plaintiff City of Roseville Employees' Retirement System; and (3) Named Plaintiff Employees' Retirement System of the State of Rhode Island's Objections and Responses to Defendants' First Requests for Production of Documents to Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund, Plaintiff Employees' Retirement System of the State of Rhode Island and Plaintiff City of Roseville Employees' Retirement System.

[5]   "Defendants' are Apple, Inc., Timothy D. Cook and Luca Maestri.

**Robbins Geller Rudman & Dowd LLP**

William J. Foley
M. Todd Scott
March 17, 2021
Page 2

### Relevant Time Period

We began by discussing the relevant time period for the RFPs, which was not defined by the RFPs. You proposed a "default" time period of April 1, 2018 through April 1, 2019, and stated that it applied to each RFP unless you informed us otherwise. Presumably Defendants have selected that default time period because it is the agreed-upon time period for Defendants' production of documents requested by Plaintiffs. However, Defendants' proposed time period is neither relevant nor reasonable for Plaintiffs' productions under the circumstances. The Class Period runs from November 2, 2018 through January 2, 2019, inclusive, and you have offered no explanation regarding how Plaintiffs' documents from seven months before the Class Period begins and three months after it ends are relevant to the claims or defenses in this action. Instead, Plaintiffs will apply the time period August 1, 2018 through January 31, 2019, which more than encompasses Plaintiffs' relevant transactions in Apple securities and the disclosures leading to their losses at issue.

### RFP No. 1

You stated that Defendants' requested time period for RFP No. 1 is April 1, 2018 ***to the present day***. When asked how this period, which goes beyond the end of the Class Period by more than two years, could possibly be relevant, you stated that recent purchases could establish unique defenses. This is incorrect. As numerous courts have recognized, post-disclosure purchases do not render a proposed class representative atypical due to the existence of a unique defense. *See, e.g.*, *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 577 (N.D. Cal. 2009) (holding post-disclosure purchases do not defeat typicality or present unique defenses); *Children's Hosp. & Med. Ctr. Found. of Omaha v. Countrywide Fin. Corp.*, 2011 U.S. Dist. LEXIS 166291, at *19 (C.D. Cal. Aug. 22, 2011) ("[C]ourts are nearly unanimous that post-disclosure purchases do not rebut a presumption of reliance for shares purchased before the disclosure."). As for the seven months preceding the start of the Class Period, you offered no explanation for why that period is relevant. As explained above, Plaintiffs will apply a relevant time period of August 1, 2018 through January 31, 2019 for RFP No. 1.

At the beginning of our March 11 call, you agreed to limit RFA No. 1 to the Plaintiffs' account statements, investment management agreements and related contracts with their respective managers and communications between Plaintiffs and their respective managers regarding transactions in Apple securities. This limitation followed our explanation that Plaintiffs' transactions are carried out by their respective investment managers without Plaintiffs' direct involvement and that the vast majority of the requested documents are not within Plaintiffs' possession, custody or control or, as with trade confirmation slips, are merely duplicative and cumulative of other trading records. Your statement that some of the investment managers are in other countries (which is only accurate as to Norfolk County's managers), does not change Plaintiffs' lack of control over their managers' documents, which Defendants may seek directly from the managers, even those outside the United States *See Villella v. Chem. & Mining Co. of Chile Inc.*, 2018 U.S. Dist. LEXIS 99151 (S.D.N.Y. June 13, 2018)

**Robbins Geller Rudman & Dowd LLP**

William J. Foley
M. Todd Scott
March 17, 2021
Page 3

(granting motion to seek discovery under Hague Convention from plaintiff's British investment manager).

In response to RFP No. 1, Plaintiffs will conduct a reasonable search for and produce their respective investment guidelines or policies, investment management agreements (and/or related contracts), accounting statements and communications with their respective investment managers concerning transactions in Apple securities for the time period August 1, 2018 through January 31, 2019.

**RFP No. 2**

RFP No. 2 seeks all documents regarding transactions in the securities of consumer electronics, software and technology companies and you stated that time period is April 1, 2018 through April 1, 2019. As set out above, this time period is over broad. When asked about how transactions in other securities could be relevant to the parties' claims or defenses, you stated that Defendants were attempting to discover whether Plaintiffs' transactions in Apple securities were part of an "industry block" purchase. As we stated on the call, transactions in the securities of other companies are not relevant. *See In re New Century*, 2009 U.S. Dist. LEXIS 144557, at *13 (C.D. Cal. Dec. 7, 2009) ("in securities class actions, courts routinely deny general discovery into a plaintiff's trading and investment strategy in other securities"); *In re Northfield Labs. Sec. Litig.*, 264 F.R.D. 407, 410 (N.D. Ill. 2009) (denying motion to compel "trading history in securities other than [defendant's]"). To the extent that documents reflecting Plaintiffs' transactions in Apple securities also show transactions in securities of other companies, Plaintiffs will not redact that information, but they will not search for or produce documents related to non-Apple securities transactions in response to this Request.

**RFP No. 3**

As we explained, RFP No. 3, as written, is limited to documents reviewed, considered or relied on in connection with Plaintiffs' "decision" to buy or sell Apple securities, but the decision to purchase a particular security is made by Plaintiffs' investment managers. The documents sought by RFP No. 3, to the extent they exist, are therefore within the investment managers' possession, custody and control. Moreover, even if Plaintiffs had possession, custody or control of a particular document that an investment manager considered in its decision to purchase Apple securities, Plaintiffs are not able to identify it as having been relied on by the investment manager because Plaintiffs were not involved in making the investment decisions.

You stated that the applicable time period for RFP No. 3 is April 1, 2018 through the date of the last transaction in Apple securities for each Plaintiff, which, could conceivably mean ***to the present day***. Defendants' proposed time period is unreasonably broad. Transactions in Apple securities that occurred months before or months or even years after the end of the Class Period (assuming such transactions occurred) have no bearing on the claims or defenses in this litigation.

4836-5125-9617.v1

**Robbins Geller Rudman & Dowd LLP**

William J. Foley
M. Todd Scott
March 17, 2021
Page 4

### RFP No. 4

As discussed, and based upon our investigation to date, Plaintiffs delegate investment authority to investment managers and do not perform their own research or investigations to determine which securities to purchase. And, as set out above, Plaintiffs' investments in securities or companies other than Apple, and any research or investigations regarding them, are irrelevant to the claims or defenses in this action. As we explained on the call, RFP No. 4 is drafted so broadly (*e.g.*, all research, however informal, about any consumer electronics company or the consumer electronics industry untethered to any securities transaction) that it would necessarily include plainly irrelevant documents like, for example, an article in a magazine or online about any company or industry involved at all in technology or electronics. You agreed that reading a magazine with an article about a tech company was not what Defendants intended to request by RFP No. 4.

Although they are unlikely to possess such documents, Plaintiffs will conduct a reasonable search for and produce, to the extent they are within their possession, custody or control and can be identified, non-privileged documents regarding research or investigations of Apple related to any transactions in Apple securities for the time period August 1, 2018 through January 31, 2019.

### RFP No. 5

During our call, you stated that RFP No. 5 is related to RFP Nos. 3 and 4 in seeking the "universe" of documents Plaintiffs relied on when making their decision to purchase Apple securities. You also clarified that RFP No. 5 is limited to documents related to Plaintiffs' transactions in Apple securities, although this limitation was not clear from the text of RFP No. 5, which, as drafted, is exceptionally overbroad. As with RFP Nos. 3 and 4, the documents Defendants seek with RFP No. 5 (even as narrowed) are likely not within Plaintiffs' possession, custody or control as they delegate specific investment decisions to others. Additionally, RFP No. 5 seeks documents that Plaintiffs cannot possibly identify, and are plainly irrelevant, including, for example, all documents "acquired from any source at any time" regarding Apple's current and former unidentified "employees, shareholders, agents, independent contractors, attorneys, or representatives." This would likely encompass hundreds of thousands of individuals and entities. Plaintiffs have no way of knowing who these people are, let alone how information to, from or about them is relevant to the case.

Although they are unlikely to possess such documents, Plaintiffs will conduct a reasonable search for and produce, to the extent they are within their possession, custody or control, non-privileged documents they received or acquired regarding Apple's business or the value of Apple's securities related to any transactions in Apple securities for the time period August 1, 2018 through January 31, 2019.

**Robbins Geller Rudman & Dowd LLP**

William J. Foley
M. Todd Scott
March 17, 2021
Page 5

### RFP No. 6

You explained that RFP No. 6 seeks promises of monetary or non-monetary compensation made to Plaintiffs for participating in litigation and that the time period was unlimited. We inquired as to whether this applied to all litigation ever, as the request is written, and you said Defendants were "interested in *this* litigation." There are no promises of monetary or non-monetary compensation made to Plaintiffs for participating in this litigation, as Plaintiffs certified in their respective certifications filed in this action. ECF Nos. 1 at 21-22; 27-1 at 2-3; 37-8 at 2-3.

### RFP No. 7

We inquired as to the relevance of the documents sought by RFP No. 7, which requests "[a]ll documents regarding any lawsuit, arbitration, or administrative proceeding in which [Plaintiffs] have been, are, or sought to be a party or class member" under the securities laws. You responded that you did not know, but they could be related to Class certification. This is plainly insufficient. You also stated that Defendants are seeking transcripts of every deposition Plaintiffs' representatives have given in other cases. As you know, such transcripts are nearly universally protected by confidentiality orders. Such transcripts also are not relevant to the claims or defenses at issue in this action, and you offered no explanation as to how they could be. Tellingly, you were also unwilling to respond to our inquiry as to whether Defendants were willing to waive confidentiality and produce transcripts of every deposition that they have ever given.

As we explained, Plaintiffs' filings related to the lead plaintiff motions all disclose, pursuant to the PSLRA, the cases in which each Plaintiff has sought to serve as representative in the 3-year period preceding the filings. In response to our explanation that Plaintiffs have been class members in many cases in which they have no role as a named party, you agreed to limit RFP No. 7 to securities actions where Plaintiffs were involved in a "representative capacity."

As discussed with respect to RFP No. 13, the main relevant information sought by RFP No. 7 – the securities actions in which Plaintiffs have served in representative capacities – is typically sought by interrogatory as that method is far more efficient than producing documents that simply identify each action. Plaintiffs propose, in satisfaction of this Request, to send Defendants a list of each federal securities action filed within the previous five years in which they served as a court-appointed lead plaintiff or class representative.

### RFP No. 8

RFP No. 8 requests "[a]ll Documents regarding any Communications," unlimited by topic, between Plaintiffs and any potential Class members. In addition to requesting plainly irrelevant documents and communications, RFP No. 8 seeks documents that Plaintiffs cannot possibly identify as they are unaware of the identities of every potential Class member. Your statement that Defendants were most interested in communications by the Plaintiffs' themselves with other Apple investors

**Robbins Geller Rudman & Dowd LLP**

William J. Foley
M. Todd Scott
March 17, 2021
Page 6

about Apple or this litigation does not cure the deficiencies. Plaintiffs do not know the identity of every Apple investor for your proposed time period of April 1, 2018 through April 1, 2019. Nor are communications between Plaintiffs and other Apple investors about this litigation relevant to any claim or defense at issue.

**RFP No. 9**

As with RFP No. 5, Plaintiffs have no way to readily identify Apple's "current or former . . . employees, independent contractors, or agents." RFP No. 9 also is not limited to any topic and therefore seeks documents irrelevant to this litigation. You stated that Defendants only seek "relevant" communications, but that offers no meaningful way of searching for or identifying such communications. Additionally, to the extent communications exist, Apple already has them. Because RFP No. 9 seeks Plaintiffs' communications with Defendants and Apple's employees and agents, Apple should search its communications for whatever communications with Plaintiffs it believes exist.

**RFP No. 10**

You stated that the time period for RFP No. 10 is April 1, 2018 until the date the suit was filed. This time period, which begins nearly seven months before the first alleged misstatements giving rise to the action is not reasonable or relevant. In response to our request for examples of what documents RFP No. 10 requested that were not covered by prior requests, you stated that Defendants were requesting, for example, documents relating to a process for monitoring lawsuits or investments. Because this Request seeks documents regarding Plaintiffs' decision to bring suit, most, if not all, of those documents will be protected by the attorney-client privilege or work product doctrine. Accordingly, Plaintiffs will conduct a reasonable search for and produce non-privileged documents relating to its decision to file this action.

**RFP No. 11**

You stated that RFP No. 11 seeks communications within the Plaintiff Funds regarding choice of counsel, communications with law firms regarding representation and documents regarding research of law firms. You stated that the requested documents are potentially relevant to Plaintiffs' adequacy because they relate to "whether the Funds are driving the bus." In addition to seeking obviously privileged communications with counsel, the documents are not relevant to Plaintiffs' adequacy. Adequacy turns on whether a proposed class representative has a serious, actual conflict of interest with other class members, not the Plaintiffs' deliberations about selecting counsel. *See In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 626 (N.D. Cal. 2018) (class representatives are adequate where they have no "conflicts of interest with other class members" and will "prosecute the action vigorously on behalf of the class"); *In re Static Random Access Memory Antitrust Litig.*, 264 F.R.D. 603, 609 (N.D. Cal. 2009) ("[t]he mere potential for a conflict of interest is not sufficient to defeat

**Robbins Geller**
**Rudman & Dowd LLP**

William J. Foley
M. Todd Scott
March 17, 2021
Page 7

class certification; the conflict must be actual."). While an inappropriate financial incentive between a proposed class representative and counsel can bear on adequacy, that is the subject of RFP No. 6.

### RFP No. 12

You stated that RFP No. 12 seeks documents regarding any business or social relationship, apart from this litigation and the attorney-client relationship, between Norfolk County or City of Roseville and Robbins Geller Rudman & Dowd LLP or between Rhode Island and Labaton Sucharow LLP. When asked what was meant by "social relationship," you did not provide examples or definitions, instead stating that derivative litigation should provide a definition. Nor could you provide examples of what types of ***documents*** were sought that would pertain to a social relationship. As with many other requests, you merely stated that RFP No. 12 was relevant to "adequacy" without attempting to provide an explanation as to how such documents would bear on whether Plaintiffs have an actual conflict of interest with other Class members. In fact, courts have held that even close friendships between a class representative and his or her attorney does not create the actual conflict required to show inadequacy. *See, e.g.*, *Zeisel v. Diamond Foods, Inc.*, 2011 U.S. Dist. LEXIS 60608, at *29 (N.D. Cal. June 7, 2011).

### RFP No. 13

You clarified that RFP No. 13 seeks documents sufficient to identify the previous actions in which Plaintiffs were represented by the law firms in this action. We explained that this information is more easily sought by an interrogatory or informal request, as opposed to production of documents identifying any previous actions. Moreover, pursuant to the PSLRA, Plaintiffs identified the actions in which they sought to be representative plaintiffs during the 3-year period in the certifications filed with the lead plaintiff motions. ECF Nos. 1 at 21; 27-1 at 2; 37-8 at 2.

Per our discussion, Plaintiffs propose, in satisfaction of this Request, sending Defendants a list of each federal securities action filed within the previous five years in which they served as a court-appointed lead plaintiff or class representative.

### RFP No. 14

In response to our inquiry as to how RFP No. 14 differed from RFP No. 11, you acknowledged that they sought similar information and substantially overlapped. As with RFP No. 11, the documents sought by RFP No. 14 have no relevance to adequacy, that is, whether Plaintiffs have

**Robbins Geller Rudman & Dowd LLP**

William J. Foley
M. Todd Scott
March 17, 2021
Page 8

actual conflicts of interest with other Class members. The only conceivable relevance, an improper financial arrangement, is the subject of RFP No. 6.

### RFP No. 15

While the parties did not meet and confer regarding RFP No. 15, it seeks Plaintiffs' fee agreements with counsel. As many courts have held, such agreements are not relevant or discoverable. *See, e.g.*, *Clark v. Berkshire Med. Ctr., Inc.*, 2019 U.S. Dist. LEXIS 376, at *11 (D. Mass. Jan. 2, 2019); (denying motion to compel engagement letters between proposed class representative and counsel); *In re Riddell Concussion Reduction Litig.*, 2016 U.S. Dist. LEXIS 193654, at *8 (D.N.J. Jan. 19, 2016) ("Fee agreements are generally not discoverable unless the party seeking the discovery makes a preliminary showing of a relevant conflict or a *prima facie* challenge to the class representatives' adequacy to act as a class representative."); *Piazza v. First Am. Title Ins. Co.*, 2007 U.S. Dist. LEXIS 89319, at *3 (D. Conn. Dec. 5, 2007) ("several leading cases and treatises have held that the fee arrangements between a plaintiff and her counsel are not relevant to certification issues").

### RFP No. 16

You acknowledged that RFP No. 16 is a "catch-all" Request and that Defendants want to ensure there is no non-public information supporting the Complaint's[6] allegations that they are unaware of. We explained that the information supporting the allegations in the Complaint, which the RFPs define as the Revised Consolidated Class Action Complaint, is all public information accessible to Defendants.

### RFP No. 17

RFP No. 17 seeks documents related to any investigation undertaken concerning this action. You stated that RFP No. 17, as well as every other RFP, only applies to Plaintiffs' documents and not Plaintiffs' counsels' documents. Plaintiffs will conduct a reasonable inquiry into whether non-privileged documents regarding an investigation undertaken by Plaintiffs concerning the allegations in the Complaint.

### RFP No. 18

We explained that the Complaint, as defined by the RFPs, does not rely on any confidential witnesses and directed your attention to footnote 11 of the Complaint, which specifically states,

---

[6] Revised Consolidated Class Action Complaint for Violation of the Federal Securities Laws (ECF No. 114) ("Complaint").

**Robbins Geller Rudman & Dowd LLP**

William J. Foley
M. Todd Scott
March 17, 2021
Page 9

"consistent with the June 2, 2020 Order, the Revised Consolidated Complaint does not rely on the accounts of the CWs." Complaint, ¶66(c) n.11. You also confirmed that, as with other RFPs, RFP No. 18 was not seeking Plaintiffs' counsels' communications with witnesses, just Plaintiffs' (or as you put it, "the clients'") communications with potential witnesses. With that clarification, we represented that Plaintiffs did not have communications with any witnesses.

**RFP No. 19**

Damages in this case will be the subject of expert testimony, which is not due to be disclosed until April 27, 2022. RFP No. 19, which requests documents regarding Plaintiffs' and Class members' damages or losses, is therefore premature. Defendants have already sought, pursuant to other RFPs, documents sufficient to show Plaintiffs' transactions in Apple securities. When the time for expert disclosures comes, Plaintiffs will provide the required report and related documents pursuant to Rule 26. To the extent RFP No. 19 seeks records showing Plaintiffs' transactions in Apple securities, it is duplicative of RFP No. 1.

**RFP Nos. 20-24**

RFP Nos. 20 through 24 all concern documents supporting Plaintiffs' motion for class certification, which has not been filed and is not due before May 5, 2021. When Plaintiffs' motion to certify the proposed Class is filed, which Plaintiffs have the burden of supporting with evidence, Plaintiffs will provide the documents and any expert reports, and underlying data, supporting the motion. Until then, Defendants' request for such documents is premature.

**RFP No. 25**

As with our discussion of RFP No. 18, we pointed out that the Complaint does not rely on or contain allegations from any confidential witnesses. You made clear that, as for the other RFPs, Defendants were not seeking Plaintiffs' counsels' documents or communications regarding witnesses and instead were only seeking the clients' communications with or documents from potential witnesses. With that limitation, we represented that Plaintiffs were not involved in identifying or communicating with any witnesses and therefore have no documents responsive to this Request.

Very truly yours,

JOHN H. GEORGE

JHG:rb

4836-5125-9617.v1