1

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
KENNETH J. BLACK (291871)
HADIYA K. DESHMUKH (328118)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com
      – and –
MARK SOLOMON (151949)
TOR GRONBORG (179109)
JASON A. FORGE (181542)
RAPHAELLA FRIEDMAN (323324)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
torg@rgrdlaw.com
jforge@rgrdlaw.com
rfriedman@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re APPLE INC. SECURITIES LITIGATION | ) ) ) ) | Case No. 4:19-cv-02033-YGR |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) ) | LEAD PLAINTIFF'S NOTICE OF MOTION AND SUPPLEMENTAL MOTION TO |
| ALL ACTIONS. | ) ) ) | CERTIFY CLASS OF APPLE OPTIONS INVESTORS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| | | DATE:        TBD
TIME:        2:00 p.m.
CTRM:      1, 4th Floor
JUDGE:     Hon. Yvonne Gonzalez Rogers |

4854-7019-7276.v1

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION .................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

I.     INTRODUCTION ......................................................................................................1

II.    RELEVANT PROCEDURAL HISTORY ...............................................................2

III.   ARGUMENT ..............................................................................................................4

       A.     All Relevant Data and Empirical Research Demonstrate that Apple
              Options Trade in an Efficient Market ..........................................................4

              1.     Apple Common Stock Trades in a Highly Efficient Market and
                     Reflects All Publicly Available Information About the Company ..............4

              2.     Where a Company's Underlying Common Stock Trades in an
                     Efficient Market, Its Derivative Stock Options Also Trade in an
                     Efficient Market ............................................................................................5

              3.     The Chance Report Provides Additional Powerful Support for the
                     Efficiency of the Apple Options Market ......................................................6

              4.     The Academic Literature Outside the Litigation Context Also
                     Supports the Efficiency of the Options Market ...........................................7

              5.     All Apple Put and Call Options Traded in a Singular Efficient
                     Market ...........................................................................................................9

              6.     The *Cammer* and *Krogman* Factors Are Less Instructive for
                     Assessing the Efficiency of the Options Market.........................................10

       B.     Damages for Apple Options Can Be Calculated on a Class-Wide Basis
              Using a Common Methodology......................................................................12

IV.    CONCLUSION........................................................................................................14

# TABLE OF AUTHORITIES

Page

CASES

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ............................................................................................4

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ...........................................................................................4, 5

*Cammer v. Bloom*,
   711 F. Supp. 1264 (D.N.J. 1989) ....................................................... *passim*

*City of Miami General Employees' & Sanitation Employees Retirement Trust v. RH, Inc.*,
   2018 WL 4931543 (N.D. Cal. Oct. 11, 2018) ........................................12

*Deutschman v. Beneficial Corp.*,
   841 F.2d 502 (3d Cir. 1988) .............................................................................5

*Hatamian v. Advanced Micro Devices, Inc.*,
   2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) .....................................14

*In re Countrywide Fin. Corp. Sec. Litig.*,
   273 F.R.D. 586 (C.D. Cal. 2009) ...................................................................6

*In re Enron Corp. Sec.*,
   529 F. Supp. 2d 644 (S.D. Tex. 2006) ...................................................6, 11

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
   2013 WL 396117 (D.N.J. Jan. 30, 2013) ...................................................6

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
   571 F. Supp. 2d 1315 (N.D. Ga. 2007) ....................................................5, 6

*In re Vale S.A. Sec. Litig.*,
   2022 WL 969724 (E.D.N.Y. Mar. 31, 2022) .........................................11

*Krogman v. Sterritt*,
   202 F.R.D. 467 (N.D. Tex. 2001) ...................................................... *passim*

*Levie v. Sears, Roebuck & Co.*,
   496 F. Supp. 2d 944 (N.D. Ill. 2007) ..........................................................6

*Levya v. Medline Indus., Inc.*,
   716 F.3d 510 (9th Cir. 2013) ..........................................................................14

**Page**

*Marcus v. J.C. Penney Co., Inc.,*
  2016 WL 8604331 (E.D. Tex. Aug. 29, 2016) ..............................................................6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
  _F.4th_, 2022 WL 1053459 (9th Cir. Apr. 8, 2022) ...................................................7

*Rougier v. Applied Optoelectronics, Inc.,*
  2019 WL 6111303 (S.D. Tex. Nov. 13, 2019) .............................................................6

*Scheller v. Nutanix, Inc.,*
  2021 WL 2410832 (N.D. Cal. June 10, 2021) .............................................................5

*Tolan v. Computervision Corp.,*
  696 F. Supp. 771 (D. Mass. 1988) ...............................................................................6

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
  Rule 23 ...................................................................................................................1, 2
  Rule 23(a) ..............................................................................................................1, 2
  Rule (b)(3) ..................................................................................................................2
  Rule 23(c) ...................................................................................................................2

**NOTICE OF MOTION AND MOTION**

TO: ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on a date to be determined, at 2:00 p.m., before the Honorable Yvonne Gonzalez Rogers, United States District Judge, at the United States District Court, Northern District of California, Oakland Division, 1301 Clay Street, Courtroom 1, 4th Floor, Oakland, California 94612, Lead Plaintiff and Class Representative Norfolk County Council as Administering Authority of the Norfolk Pension Fund ("Plaintiff") hereby brings the instant Supplemental Motion ("Supplemental Motion") pursuant to Federal Rule of Civil Procedure 23 to certify a class of options investors.  This Supplemental Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Daniel J. Pfefferbaum ("Pfefferbaum Decl."), the Expert Report of Don Chance ("Chance Report"),[1] the [Proposed] Order filed herewith, and any additional materials and arguments that have been submitted in the record in connection with Class-certification proceedings in this action and such other evidence, written or oral, as may be presented.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

Plaintiff previously moved the Court to certify this securities fraud action as a Class action on behalf of purchasers of Apple common stock and options.  Motion for Class Certification.  The Court granted the Motion for Class Certification with respect to purchasers of Apple common stock, finding that Plaintiff had satisfied the Fed. R. Civ. P. 23(a) and 23(b)(3) prerequisites for Class certification, including finding that Apple common stock traded in an efficient market and that Plaintiff provided the Court with a methodology that would allow for damages to be calculated on a Class-wide basis.  ECF No. 224 ("Order").  The Court denied the Motion for Class Certification, without prejudice, with respect to Apple options holders.  *Id.*  While the Court did

---

[1]   All "Chance Report" citations herein are to Exhibit 1 of the Pfefferbaum Decl., filed concurrently herewith.  "Defendants" are Apple Inc. ("Apple" or the "Company") and "Individual Defendants" Timothy D. Cook and Luca Maestri.  All terms not defined herein have the same meaning as in Plaintiff's motion for class certification (ECF No. 165) ("Motion for Class Certification").

1    not issue a ruling on the market efficiency of Apple options, the Court noted an absence of analysis

2    in other court opinions finding options market to be efficient.  *Id.* at 19-20.  The Court held that

3    Plaintiff failed to meet its burden of showing that a common-damages methodology could account

4    for the various Apple options contracts traded during the Class Period.  *Id.* at 19.

5         Plaintiff hereby respectfully submits this Supplemental Motion, including the report of Dr.

6    Don M. Chance, one of the country's foremost experts on financial derivatives, to address each of

7    the deficiencies identified by the Court and to establish by a preponderance of evidence that the

8    market for Apple options was highly efficient and rapidly incorporated all publicly available

9    information about the Company.  Indeed, Dr. Chance opines that efficiency for Apple options "is

10   unquestionable."  Chance Report, ¶86.  Dr. Chance also provides a detailed methodology based

11   on recognized options valuation principles that can be applied across all options traded during the

12   Class Period and will accommodate the different permutations of exercise price and expiration

13   date in the securities purchased by all proposed option Class members.

14        Based on the foregoing, as well as the information previously provided to the Court,

15   Plaintiff seeks an order pursuant to Fed. R. Civ. P. 23(c) including the purchasers of Apple call

16   options and the sellers of Apple put options in the certified Class.[2]

17   **II.    RELEVANT PROCEDURAL HISTORY**

18        On May 5, 2021, Plaintiff filed its Motion for Class Certification supported by a Report on

19   Market Efficiency from Professor Steven P. Feinstein, Ph.D., CFA., seeking the certification of a

20   class of Apple common stock purchasers and options holders from November 2, 2018 to January

21   2, 2019, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).  Motion for Class Certification; ECF No.

22   165-3 ("Feinstein Report").

23        On July 9, 2021, Defendants filed their opposition to the Motion for Class Certification,

24   which did not challenge the elements of numerosity, commonality or typicality for the common

25   stock or options classes.  ECF No. 196.  In addition, Defendants conceded the efficiency of the

26

27   [2]   The Class definition currently Ordered by the Court is broad enough to include purchasers of

28   Apple calls, but must be modified, as discussed below, to include sellers of Apple puts.

1  common stock market but challenged Plaintiff's proof of the efficiency of the options market and

2  contested the proposed damages methodology for both common stock and options.  *Id.*

3      On August 24, 2021, Plaintiff filed its reply briefing and supporting documents, including

4  the Reply Report of Dr. Feinstein.  ECF Nos. 202, 202-4.[3]

5      On January 18, 2022, the Court held argument on Plaintiff's Motion for Class Certification.

6  ECF No. 219.  During oral argument, with respect to the market efficiency of the options market,

7  the Court stated that the options class appeared to meet some of the *Cammer v. Bloom*, 711 F.

8  Supp. 1264 (D.N.J. 1989), and *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2001), factors but

9  not others.  ECF No. 219 at 6.  The Court acknowledged that the case law supported Plaintiff's

10  position that the options market is efficient, but did so without extensive analysis.  *Id*. at 11.  The

11  Court also noted an absence of non-litigation authority supporting (or refuting) the position that

12  the options market is considered efficient in the parties' submissions.  *E.g., id.* at 7.

13      On February 4, 2022, the Court issued the Order holding that Plaintiff made a sufficient

14  showing that Apple common stock traded in an efficient market and certified a Class of Apple

15  common stock purchasers.  Order at 10.  The Court denied the Motion for Class Certification

16  without prejudice as to options holders.  *Id.* at 21.  In particular, the Court held that there was

17  insufficient evidence regarding how the proposed out-of-pocket damages methodology, employing

18  an options pricing formula such as Black Scholes, would account for the variation in strike prices

19  and expiration dates for the various options trading during the Class Period.  *Id.* at 20.  And to the

20  extent Plaintiff sought to re-seek certification for options holders, the Court noted further support

21  for the efficiency of the options market would be helpful, in particular, whether "market efficiency

22  with respect to the common stock translates to market efficiency with respect to options on the

23  same" and whether the *Cammer* and *Krogman* factors are applicable to the evaluation of the

24  efficiency of the options market.  Order at 20 n.11.

25

26

---

27  [3]  Defendants also sought leave to file a sur-reply limited to the issues of adequacy (ECF No. 206), which Plaintiff opposed (ECF No. 207) and the Court granted (Order at 7 n.5), and which
28  are not relevant to the instant Supplemental Motion.

On March 4, 2022, the Court set a deadline of April 15, 2022, for any supplemental submission to Plaintiff's Motion for Class Certification with respect to options holders.  ECF No. 231.

## III.   ARGUMENT

### A.   All Relevant Data and Empirical Research Demonstrate that Apple Options Trade in an Efficient Market

#### 1.   Apple Common Stock Trades in a Highly Efficient Market and Reflects All Publicly Available Information About the Company

By showing that Apple common stock traded in an efficient market, Plaintiff successfully invoked the fraud-on-the-market theory to satisfy the element of reliance.  Order at 10.  "The fraud-on-the-market premise is that the price of a security traded in an efficient market will reflect all publicly available information about a company; accordingly, a buyer of the security may be presumed to have relied on that information in purchasing the security."  *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 458 (2013); *Basic Inc. v. Levinson*, 485 U.S. 224, 246-7 (1988).[4]

It is undisputed that Apple common stock traded in an efficient market and reflected all of the publicly available information about the Company.  This is an axiomatic conclusion based upon Apple's status as one of the largest and most actively traded public companies in the world and one of the most intensely scrutinized by analysts and media.  Expectedly, efficiency of Apple common stock is also supported by all five of the direct and indirect indicators of efficiency set forth in *Cammer*, and the additional indicia of efficiency set forth in *Krogman*.[5]  ECF No. 165 at 12-16; Feinstein Report, ¶¶44-92.

---

[4]   All citations and footnotes omitted and emphasis added unless otherwise indicated.

[5]   The *Cammer* factors consider whether: (1) the stock trades at a high weekly volume; (2) securities analysts follow and report on the stock; (3) the stock has market makers and arbitrageurs; (4) the company is eligible to file SEC Forms S-3; and (5) there are "empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price."  711 F. Supp. at 1286-87.  The *Krogman* factors are: (1) the capitalization of the company; (2) the bid-ask spread of the security; and (3) the percentage of stock not held by company insiders ("float").  202 F.R.D. at 474.

1    Unsurprisingly, in the face of overwhelming evidence of efficiency, "defendants [did not]

2  challenge the findings of Plaintiff's expert, [Dr. Feinstein], demonstrating that Apple stock,

3  specifically, traded in an efficient market over the course of the class period.  Therefore, the Court

4  finds that plaintiff makes a *prima facie* showing sufficient to invoke the *Basic* presumption as to

5  holders of Apple stock."  Order at 10.

6          **2.    Where a Company's Underlying Common Stock Trades in an
           Efficient Market, Its Derivative Stock Options Also Trade in
7          an Efficient Market**

8          Courts around the country have routinely held that derivatives, such as put and call options,

9  trade in an efficient market when the underlying common stock trades in an efficient market

10  because the valuation of derivatives is entirely dependent upon the price of the underlying common

11  stock.  "The market price for options is directly responsive, therefore, to changes in the market

12  price of the underlying stock, and to information affecting that price."  *Deutschman v. Beneficial*

13  *Corp.*, 841 F.2d 502, 504 (3d Cir. 1988) (citing Rubenstein, An Economic Evaluation of Organized

14  Option Markets, 2 J. of Comp. Corp. Law and Sec. Reg. 49 (1979)).  The Third Circuit went

15  further, explaining that material misrepresentations that distort the market price also damage

16  options holders.  *Id.* ("Insiders . . . can injure option holders by misstating material facts to the

17  public, thereby causing a distortion in the market price of the underlying security, and in the

18  necessarily related market price of the option contract.").

19          Because of this linkage, a plaintiff need only establish the efficiency of the common stock

20  market to satisfy the *Basic* presumption for options:

21          The relevant question is ***not*** whether [plaintiff] has established that the market for
           . . . put options was itself efficient.  Rather, the question is whether a seller of put
22          options is entitled to rely on the stock market to accurately reflect the value of the
           underlying stock upon which the put option is sold.
23
   *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1329 (N.D. Ga. 2007).  Accordingly, "a
24
   put options seller, upon proof of market efficiency in the underlying stock, is generally entitled to
25
   a rebuttable presumption of reliance."  *Id.* at 1329.
26
           As the Court is aware, virtually every other court faced with the issue has reached the same
27
   result.  *See Scheller v. Nutanix, Inc.*, 2021 WL 2410832, at *5 (N.D. Cal. June 10, 2021) ("Courts
28

1  have held that the sale of put option contracts relies on market price") (citing *Sci.-Atlanta*, 571 F.

2  Supp. 2d at 1330); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 609 n.74 (C.D. Cal.

3  2009) ("efficiency is very nearly a nonissue for Countrywide common stock and options"); *Marcus*

4  *v. J.C. Penney Co., Inc.*, 2016 WL 8604331, at *9 (E.D. Tex. Aug. 29, 2016) (same); *Rougier v.*

5  *Applied Optoelectronics, Inc.*, 2019 WL 6111303, at *14 (S.D. Tex. Nov. 13, 2019) (finding

6  market efficiency for common stock is sufficient to prove options market efficiency); *In re Merck*

7  *& Co., Inc. Sec., Derivative & ERISA Litig.*, 2013 WL 396117, at *12 (D.N.J. Jan. 30, 2013)

8  (same); *Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 949 (N.D. Ill. 2007) (including put

9  and call options traders because while they might believe there will be fluctuation in the stock

10  price, they also rely on the integrity of the information disseminated); *In re Enron Corp. Sec.*, 529

11  F. Supp. 2d 644, 754 (S.D. Tex. 2006) ("[t]he value of these derivative securities [options]

12  depended upon the value of Enron common stock, and all the information about the stock was

13  readily available to investors and factors affecting the price of the stock were incorporated into the

14  determination of the value of the call and put options"); *Tolan v. Computervision Corp.*, 696 F.

15  Supp. 771, 779 (D. Mass. 1988) (options traders "rely on the integrity of information disseminated

16  in the market just as do the purchasers and sellers of the underlying securit[y]").[6]

17             **3.      The Chance Report Provides Additional Powerful Support for
                         the Efficiency of the Apple Options Market**

18            Plaintiff files herewith the expert report of Dr. Chance, who is one of – if not the – foremost

19  academic experts on derivatives.  Chance Report, Ex. 3.  Dr. Chance has authored five books on

20  derivatives, including *An Introduction to Derivatives and Risk Management*, now in its 10th

21  edition and is one of the most successful textbooks ever published on derivatives.  Chance Report,

22  ¶3.  Dr. Chance also authored the core teaching materials for derivatives for the Chartered

23  Financial Analyst ("CFA") program; he has taught the subject for more than forty years; and he

24  has published more than 100 articles on the subject.  *Id.*,¶¶3-4.

25

26

27  ―――――――――――――――
     [6]    Defendants failed to identify a single case in their briefing or at oral argument holding the
     opposite – that where a company's common stock trades in an efficient market, the options do not.
28  *See* ECF No. 202 at 4 (distinguishing case Defendants relied on as related to debt securities).

1    Dr. Chance opines that "Apple options are derivatives, and their valuations are driven by

2    the price of Apple common stock . . . Apple options trade in an efficient market in that their prices

3    rapidly reflects all publically available information." *Id.*, ¶12(a).  Dr. Chance explains that put and

4    call options are derivatives, meaning their value is dependent on an underlying asset, in this case

5    Apple common stock.  *Id.*, ¶¶12(a), 46-47.  He illustrates how and why options prices are tethered

6    to the underlying stock price and must react rapidly to any changes in the common stock price.

7    *Id.*, ¶¶12(d), 48-61.  Dr. Chance also reviews the academic literature which overwhelmingly

8    supports that options trade in efficient markets.  *Id.*, ¶¶72-86.  Dr. Chance explains in detail why

9    the factors listed in *Cammer* and *Krogman*, are not applicable to determining whether options are

10   traded in an efficient market.  *Id.*, ¶¶69-71.  Dr. Chance also refutes the misleading arguments

11   made by Defendants seeking to portray the Apple options market as inactive and he presents data

12   that Apple options were the most heavily traded single company options during the Class Period.

13   *Id.*, ¶¶96-108. [7]

14   Thus, the Chance Report establishes that the price of every single option bought and sold

15   (whether it was the most or least traded option during the Class Period) is driven by the underlying

16   price of Apple common stock at the time of sale and thus necessarily incorporated the publicly

17   available information about the Company.  This evidence more than satisfies Plaintiff's burden, a

18   preponderance of evidence, to show that Apple options traded in an efficient market.  *See Olean*

19   *Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, _F.4th_, 2022 WL 1053459, at *5 (9th

20   Cir. Apr. 8, 2022) (en banc).

21           **4.    The Academic Literature Outside the Litigation Context Also
                     Supports the Efficiency of the Options Market**

22

23   While the Court acknowledged that the body of case law finds market efficiency for the

24   options market where the common stock market is efficient (Order at 20 n.11), it inquired about

25   _____

     [7]   Neither Defendants, nor their expert, have asserted that the market for Apple options is not

26   efficient.  Instead, they have argued only that Plaintiff has failed to meet its burden of a
     preponderance of the evidence largely based upon a distorted presentation of the trading volume

27   of Apple options to suggest that common typical options characteristics (varying strike prices and
     expiration dates) undermined efficiency and Plaintiff's proof of a common methodology for

28   calculating damages.

the non-litigation academic literature on the topic.  *E.g.*, ECF No. 219 at 6 ("I didn't see any non-litigation economic articles or thoughts about whether options in general operate in an efficient market."); *see id.* at 11-12 ("So tell me the theoretical basis for it because I'm not seeing it in the court cases and I'm not seeing it in the academic literature that hasn't been provided to me.").

Plaintiff submits that a multitude of academic literature, beginning in the late 1970's, evaluated and concluded that options markets are efficient in that they rapidly react to new information, they make the stock markets more efficient and they conform to pricing rules and models that prohibit investors from earning easy profits via arbitrage.  *See* Chance Report, ¶¶73-85.  That literature and its origination and focus is discussed in detail by Dr. Chance.  *Id.*

The literature supports the conclusion that an option price is driven by the price of the underlying stock, and if the stock price changes, the option price must adjust quickly to changes in the stock price.  According to a leading academic textbook on options:

> A derivative can be defined as a financial instrument whose value depends on (or derives from) the values of other, more basic, underlying variables.  Very often the variables underlying derivatives are the prices of traded assets.  A stock option, for example, is a derivative whose value is dependent on the price of a stock.

John Hull, *Options, Futures, and Other Derivatives*, 1 (9th ed. 2015).  The CFA program materials similarly state:

> The value of a call option is positively related to the value of the underlying.  That is, they both move up or down together.  Hence, by writing a call option, the trader will lose money if the underlying goes up and make money if the underlying falls.

Robert Brooks and David Gentle, *The Valuation of Contingent Claims*, Fixed Income and Derivatives, CFA Program Curriculum, 390, Level II, Vol. 5 (2020).

Additional academic studies have tested how quickly options markets incorporated new information and universally concluded that options markets rapidly incorporated new information.  Chance Report, ¶¶75-79.  Academic research also demonstrates that the options market also makes the common stock market more efficient: "This paper presents empirical evidence that trading in options contributes to both transactional and informational efficiency of the stock market by reducing the effect of constraints on short sales."  *Id.*, ¶83.

As reported by Dr. Chance, to the extent that this academic research was published decades ago, it is merely a function of the settled nature of the inquiry into the efficiency of the options market and he has identified no academic studies that suggest as a matter of general proposition that the options market is not efficient.  *Id.*, ¶86.  Moreover, advances in technology now provide near immediate access to data to a far wider audience, only further enhancing the efficiencies of these markets.  *Id.* [8]

### 5. All Apple Put and Call Options Traded in a Singular Efficient Market

Based on arguments put forth by Defendants, the Court expressed doubt as to whether it was appropriate to treat all 2,282 different options traded during the Class Period as a singular efficient market and, ultimately, whether there is a methodology under which damages could be calculated on a class-wide basis.  Order at 20.  However, as confirmed by Dr. Chance, the varying combinations of strike price and expiration dates do nothing to undermine the efficiency of the Apple options market or preclude the use of common damages model.  Chance Report, ¶¶97-108.

Defendants' efforts to manufacture "inefficiency" based on wholly inaccurate representations of trading volume in Apple options should be rejected.  For example, Dr. Steven Grenadier invented a non-standard calculation of average daily trading volume to incorrectly assert that approximately 1,300 options contracts traded per day (ECF No. 197-2, ¶¶181-184) which grossly misrepresented the true daily trading volume of Apple options.  According to Dr. Chance, this figure is "completely meaningless and distorted . . . from the true average daily volume of Apple options."  Chance Report, ¶102.  The accepted computation of average trading volume in the industry is the total number of trades for each day divided by the number of days.  Here, that results in an average of 119,363 contracts per day in November 2018, and 94,673 per day on just one options exchange.  *Id.*, ¶101.  Dr. Chance's results were consistent with Dr. Feinstein's

---

[8]   In *How Options Compare to Equities*, the NASDAQ explains: "Options are derivatives, which means their value is derived from the value of an underlying investment.  Most frequently the underlying investment on which an option is based is the equity shares in a publicly listed company."   NASDAQ, *How Options Compare to Equities* (June 10, 2019), https://www.nasdaq.com/articles/how-options-compare-equities-2019-06-10.

1   findings of 675,640 contracts per day, or eight contracts per second for each day of the Class

2   Period, across data sources using iVolatility.  *Id.*, ¶¶99-101; Feinstein Report, ¶151. [9]

3       During oral argument, Defendants also falsely asserted that Apple call options did not trade

4   on 35% of Class Period trading days, and put options did not trade on 31% trading days.  ECF No.

5   219 at 4:10-13.  That too was pure fiction.  In fact, the Chicago Board Options Exchange ("CBOE")

6   data show: "***Apple options traded every single day and in high volume***."  Chance Report, ¶105.

7   Indeed, Apple options ***were the most heavily traded of any Company on the CBOE during the***

8   ***months of November and December 2018***, *i.e.*, the Class Period.  *Id.*, ¶91.

9       Defendants also attempted to undermine market efficiency for the entire market for Apple

10  options because some options were thinly traded.  Not so.  As Dr. Chance explained, it is not

11  unexpected that outlier options like those which are deep in- or deep out-of-the-money are thinly

12  traded and the existence of these options does not undermine the efficiency of the Apple options

13  market as a whole or require analysis of separate markets.  *Id.*, ¶95.  As Dr. Chance explains, deep

14  out of the money options are like lottery tickets which are inexpensive and pay off in very rare

15  circumstances.  *Id.*, ¶93.  Because the outcome of these options is not in doubt, they are not

16  purchased in the volumes like those options closer to the money.  *Id*.  Simply because these options

17  are traded in low volume does not require that they be analyzed separately nor does it undermine

18  the efficiency of the market as a whole.  Every option trade – even those with a single trade during

19  the Class Period – is based on and driven by the price of the common stock at the time of the trade

20  and thus incorporates all publicly available information about Apple.  *Id.*, ¶94.

### 6. The *Cammer* and *Krogman* Factors Are Less Instructive for Assessing the Efficiency of the Options Market

22      In addition to inquiries concerning academic literature on market efficiency, the Court

23  noted that the parties did not fully address the applicability of the *Cammer* and *Krogman* factors

24  to the analysis of market efficiency of options.  Order at 20 n.11.  Because options are derivatives,

---

[9]   iVolatility describes itself as offering "end of day and intraday historical options prices/data covering the entire US and most of the EU and Asia."  *Historical Options Data*, iVolatility, https://www.ivolatility.com/data/historical_data2.html (last visited Apr. 15, 2022).

the *Cammer* and *Krogman* factors assessing market efficiency for common stock are not pre-requisites to finding efficiency. *See In re Vale S.A. Sec. Litig.*, 2022 WL 969724, at *5 (E.D.N.Y. Mar. 31, 2022) ("the *Cammer* and *Krogman* factors were designed to test market efficiency for equity securities" and "are considered less instructive" when analyzing other markets). These factors do not meaningfully map to other financial instruments such as stock options or debt securities. *Enron*, 529 F. Supp. 2d at 768 ("The Court concludes that denying application of fraud on the market to the bond market because it does not operate in the same way as a national exchange or trade in the same volume, frequency, or manner as equity on those exchanges is throwing out oranges because they are not apples.").

Nevertheless, the Court previously noted that options appear to satisfy some factors and not others – a not unexpected finding. ECF No. 219 at 6 ("[i]t appears to me that some of the factors are satisfied, some of the factors are not"). For example, as Dr. Feinstein opined, Apple options trade on the NASDAQ, the Company is eligible to file on Forms S-3, there existed more open interest in the options than in the common stock, the average daily trading volume exceeded the common stock and Apple was followed by 28 different securities analysts. Feinstein Report, ¶¶146-153. Dr. Feinstein also constructed a synthetic option to empirically demonstrate that option prices reacted to new material information. *Id.*, ¶¶159-174.

Unsurprisingly, Defendants argue that Plaintiff failed to meet its burden because the options do not meet certain *Cammer/Krogman* factors, but these efforts do nothing to undermine the efficiency of the options or suggest they do not rapidly incorporate new information. For example, Dr. Chance explains that while the specific number of market makers for options is not public information like it is for common stock, "[t]he options exchanges . . . guarantee that there will be market makers willing to buy or sell at any time during trading hours," making the specific number irrelevant. Chance Report, ¶71(a). Similarly, the lack of options-specific analyst reports does nothing to refute efficiency because "those reports would be outdated almost instantaneously. The options market moves too fast for reports." *Id.*, ¶71(e). The analysis of the bid-ask spread for options is different as well: "Options bid-ask spreads are larger than those of stocks because market makers have certain fixed costs of providing that service [and] [o]ptions are priced lower than

stocks so the same bid-ask spread on the option and on the stock would be larger as a percentage of the option price." *Id.*, ¶71(f).  In sum, the criteria used to assess the efficiency of the common stock market do not map to the options market.

**B.      Damages for Apple Options Can Be Calculated on a Class-Wide Basis Using a Common Methodology**

As set forth in the Chance Report, damages in this action for both buyers of Apple calls and sellers of Apple puts can be computed with a single damages methodology which takes into account each of the elements of every option traded during the Class Period, including whether it is a put or call, purchase price, strike price and expiration date.  Chance Report, ¶111.  Calculation of out-of-pocket damages for options holders will build upon the already accepted out-of-pocket damages methodology this Court has already recognized as sufficient for the common stock class.  Order at 17-18 (citing *City of Miami General Employees' & Sanitation Employees Retirement Trust v. RH, Inc*., 2018 WL 4931543, at *3 (N.D. Cal. Oct. 11, 2018) (collecting cases)).

Dr. Chance has opined that the binomial model is a standard model which can easily be utilized to calculate out-of-pocket damages in this action.[10]  For purchasers of Apple calls, the artificial inflation will be the difference in the premium paid, less the premium that should have been paid had the stock not been inflated by fraud, as calculated by the damages model *i.e.*, the amount overpaid.  Chance Report, ¶¶87-89.  For sellers of Apple puts, artificial depression will be the difference between the premium the seller should have received had the stock not been inflated by fraud, as calculated by the damages model, less the premium actually received *i.e.*, the under-receipt.  *Id.*, ¶¶49-60.  The proposed methodology applies equally to every put and call and every combination of premium, strike price and expiration date.

---

[10]   Dr. Feinstein opined that such a model would be appropriate in this matter and identified Black Scholes as one such potential model.  Pfefferbaum Decl., Ex. _2 at 155:10-157:9.  Defendants argued that the Black Scholes model did not account for the early exercise right present in American-style options, like Apple's.  *See* ECF No. 196 at 20-21.  In response, Dr. Chance opines that the binomial model accounts for the additional value presented by the early exercise right.  Chance Report, ¶¶115-117.  The binomial model determines the same valuation as the Black Scholes model ***plus*** the valuation of the early exercise option.  This change will have the dual function of addressing Defendants' concern while likely increasing the total damages suffered by the options class.

Dr. Chance lays out the steps utilized in his report:

Before starting, one would determine the appropriate short-term risk-free interest rates and dividends over the lives of the options. These inputs are required of all option pricing models that are commonly used on trading desks. I also understand that an amount of inflation in the stock price attributable to the alleged fraud for every day during the Class Period will be determined later or at trial.

Step 1: Determine the terms of the purchased option (exercise price, expiration) and the price paid by the option buyer as submitted on a claim form.

Step 2. Use the dividend-adjusted binomial American option pricing model to infer the volatility parameter that was used by the market based upon the price at which the option traded.

Step 3. Take the dollar amount by which the stock price was inflated as determined at trial to determine the price the stock should have been trading absent the alleged misstatements.

Step 4. Insert this new adjusted stock price and the volatility obtained in Step 2 back into the dividend adjusted binomial American option pricing model to obtain what the option price would have been if the stock price had not been inflated by the alleged misstatements.

Step 5. The difference in the option price as determined in Step 4 and the price paid by the option holder is the amount by which the option was inflated due to the alleged misstatements. Multiply this amount by the number of contracts purchased times 100, as each contract covers 100 options.

If the purchased option was subsequently traded during the class period this procedure can also be applied to reprice the option to account for any corrective disclosures on subsequent days during the class period. A similar method would be applied for put sellers. In all cases, for each option transaction, all that would be necessary is the stock price, the option price paid or received, and the stock price inflation on each day of the Class Period.

Chance Report, ¶¶118-120. Dr. Chance also provides a numerical demonstration of this process:

I will demonstrate this procedure for a call buyer who holds through expiration. Consider a stock priced at $100. An investor buys a two-month call option with a strike of $105 for $5.04 (Step 1). We need to know what volatility was used to determine that price, which requires that we gather some additional inputs, which include a 3% risk-free rate and the fact that the stock pays a dividend of $1 in one month. Using the binomial American option pricing model with 2,000 time steps, we find the volatility that produced a price of $5.04. This volatility would be 45% (Step 2). We then are told the amount by which the stock price was inflated. Let us say that is $10 (Step 3). We reprice the option using a price of $90 and would obtain $1.87 (Step 4). So, he paid $5.04 for the call and should have paid $1.87, a difference of $3.17. If the investor bought 10 contracts, each of which covers 100 options, his total damages would be 10 x 100 x $3.17 = $3,170 (Step 5). It would be easy to create similar examples for puts and options with different terms.

1  *Id.*, ¶120.

2  Critically, as shown above, each option contract does not require a unique damages

3  calculation any more than each purchase of common stock requires a unique calculation. *See*

4  Order at 19-20.  All of the relevant information to calculate damages for an options holder will

5  appear on the face of their trading statements and will be collected via the claims process, just like

6  members of the Class who purchased common stock.  While each member of the options class

7  would receive an amount specifically determined by their unique purchase characteristics, just like

8  common stock damages, this does not present individualized issues preventing a class from being

9  certified.  "The ultimate question . . . is whether 'damages could feasibly and efficiently be

10 calculated once the common liability questions are adjudicated'" – a showing Plaintiff makes here.

11 *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *8 (N.D. Cal. Mar. 16, 2016)

12 (quoting *Levya v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)).

13 **IV.    CONCLUSION**

14 For the foregoing reasons, Plaintiff respectfully requests that the Court certify a class of

15 Apple call option buyers and Apple put options sellers and modify the Class definition as follows

16 (changes emphasized):

17
   All persons and entities who purchased or otherwise acquired the publicly traded
   securities of Apple Inc., ***including purchasers of Apple Inc. call options and***
18 ***sellers of Apple Inc. put options***, during the period from November 2, 2018 through
   January 2, 2019, ***inclusive***, and who suffered damages by defendants' alleged
19 violations of Sections 10(b) and 20(a) of the Exchange Act.  Excluded from the
   class are (i) Apple and the individual defendants; (ii) members of the families of
20 each individual defendant; (iii) officers and directors of Apple; and (iv) the legal
   representatives, heirs, successors or assigns of any such excluded party.[11]

21
   DATED:  April 15, 2022                    Respectfully submitted,
22
                                             ROBBINS GELLER RUDMAN
23                                             & DOWD LLP

24

25                                                s/ Daniel J. Pfefferbaum
                                             DANIEL J. PFEFFERBAUM
26

27 ──────────────────
   [11]  The proposed revised Class definition not only adds options investors to the Class, but also
28 clarifies that the Class Period is from November 2, 2018 to January 2, 2019, ***inclusive***.

SHAWN A. WILLIAMS
DANIEL J. PFEFFERBAUM
KENNETH J. BLACK
HADIYA K. DESHMUKH
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
MARK SOLOMON
TOR GRONBORG
JASON A. FORGE
RAPHAELLA FRIEDMAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
torg@rgrdlaw.com
jforge@rgrdlaw.com
rfriedman@rgrdlaw.com

Lead Counsel for Lead Plaintiff

LABATON SUCHAROW
CAROL C. VILLEGAS
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/883-7524 (fax)
cvillegas@labaton.com

Counsel for Employees' Retirement System of the
State of Rhode Island

VANOVERBEKE, MICHAUD & TIMMONY,
P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on April 15, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Daniel J. Pfefferbaum
DANIEL J. PFEFFERBAUM
ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
Email:  dpfefferbaum@rgrdlaw.com

4854-7019-7276.v1

## Mailing Information for a Case 4:19-cv-02033-YGR IN RE APPLE INC. SECURITIES LITIGATION

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Tristan Allen**
  tallen@orrick.com

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **Kevin Michael Askew**
  kaskew@orrick.com

- **Kenneth Joseph Black**
  KennyB@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com

- **Frank H. Busch**
  busch@wvbrlaw.com,abarca@wvbrlaw.com,pallister@wvbrlaw.com

- **Hadiya Khan Deshmukh**
  hdeshmukh@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **William Joseph Foley**
  wfoley@orrick.com

- **Jason A. Forge**
  jforge@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christine M. Fox**
  cfox@labaton.com,ndonlon@labaton.com,lpina@labaton.com,electroniccasefilings@labaton.com,6312349420@filings.docketbird.com

- **Raphaella Friedman**
  rfriedman@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Nicomedes Sy Herrera**
  nherrera@herrerakennedy.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Austin Thomas Jackson**
  ajackson@structurelaw.com,cford@structurelaw.com

- **James Neil Kramer**
  jkramer@orrick.com,lpatts@orrick.com,mwatkins@orrick.com,vmorse@orrick.com,tallen@orrick.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,fgravenson@pomlaw.com,ipareja@pomlaw.com

- **Francis P. McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle Suzanne Myers**
  dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,dmyers@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,jalieberman@pomlaw.com,lobas@pomlaw.com,abarbosa@pomlaw.co

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,jgeorge@rgrdlaw.com,dpfefferbaumRGRD@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,jgeorge@ecf.courtdrive.com,sbloyd@rgrdlaw.c

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Craig Wallace Smith**
  notice@robbinsllp.com,noticerobbinsllp@ecf.courtdrive.com,csmith@robbinsllp.com

- **Mark Solomon**
  marks@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Alexander K. Talarides**
  atalarides@orrick.com,lpatts@orrick.com,casestream@ecf.courtdrive.com,tallen@orrick.com

- **Carol C. Villegas**
  cvillegas@labaton.com,ndonlon@labaton.com,lpina@labaton.com,5739893420@filings.docketbird.com,acoquin@labaton.com,electroniccasefiling@labaton.com,dsal

- **James Matthew Wagstaffe**
  wagstaffe@wvbrlaw.com,abarca@wvbrlaw.com,johnson@wvbrlaw.com

- **Steven Ray Wedeking , II**
  swedeking@robbinsllp.com,notice@robbinsllp.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,smorris@rgrdlaw.com,kennyb@rgrdlaw.com,e_file_sd@rgrdlaw.com,mtroncoso@rgrdlaw.com,jgelman@rgrdla

- **Ariel Brianna Winawer**
  awinawer@orrick.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)