1  JAMES N. KRAMER (SBN 154709)
   jkramer@orrick.com
2  ALEXANDER K. TALARIDES (SBN 268068)
   atalarides@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
4  405 Howard Street
   San Francisco, CA  94105-2669
5  Telephone:   (415) 773-5700
   Facsimile:   (415) 773-5759
6
   Attorneys for Defendants Apple Inc.,
7  Timothy Cook, and Luca Maestri

8

                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                           OAKLAND DIVISION
11

12

13 | IN RE APPLE INC. SECURITIES LITIGATION | Case No. 4:19-cv-02033-YGR |
   |---|---|
14 |  | **CLASS ACTION** |
15 | This Document Relates to: | **DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED** |
16 | ALL ACTIONS. |  |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 4

    A. The Challenged Documents Relating to the Cook Letter Are Privileged. ........................................................................................................ 4

    B. The Challenged Redactions Concerning the Company's Response to the November 5, 2018 *Nikkei Asian Review* Article Are Privileged. ........................................................................................................ 8

    C. The Challenged Emails Sent To The Distribution List For Apple's Disclosure Committee Are Privileged. ....................................................... 9

    D. The Challenged Documents from Non-Lawyers' Custodial Files Are Privileged. ........................................................................................... 10

    E. The Disputed Email Attachments Are Privileged. .................................... 11

III. CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                         **Page(s)**

*Applied Med. Res. Corp. v. Ethicon, Inc.*,
  2005 WL 6567355 (C.D. Cal. May 23, 2005) ........................................................................... 2

*In re Banc of California Sec. Litig.*,
  2018 WL 6167907 (C.D. Cal. Nov. 26, 2018) ............................................................... 9, 11, 12

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*,
  408 F.3d 1142 (9th Cir. 2005) ................................................................................................. 1

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
  2018 WL 1468371 (C.D. Cal. Mar. 19, 2018) .......................................................................... 3

*In re Grand Jury Investigation*,
  974 F.2d 1068 (9th Cir. 1992) ................................................................................................. 1

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
  329 F.R.D. 656 (D. Or. 2019) ................................................................................................ 12

*In re Rivastigmine Patent Litig.*,
  486 F. Supp. 2d 241 (S.D.N.Y. 2007) ...................................................................................... 6

*Roth v. Aon Corp.*,
  254 F.R.D. 538 (N.D. Ill. 2009) ............................................................................ 9, 10, 11, 12

*Simon v. G.D. Searle & Co.*,
  816 F.2d 397 (8th Cir. 1987) ................................................................................................... 3

*In re Spalding Sports Worldwide, Inc.*,
  203 F.3d 800 (Fed. Cir. 2000) ................................................................................................. 2

## I. INTRODUCTION

Defendants have consistently sought to withhold or redact only those documents that qualify as privileged under the relevant legal standards. Defendants have conducted painstaking reviews, and re-reviews, of individual documents (including a substantial volume of documents challenged by Plaintiff that bear no relevance to the key issues in the case). Defendants are confident that they have drawn lines in the correct places, and have transparently supported their privilege assertions by providing Plaintiff with multiple rounds of privilege logs, and multiple rounds of detailed declarations from senior Apple in-house lawyers—including Apple's General Counsel—concerning the documents remaining in dispute. These efforts have gone well beyond what the Ninth Circuit requires to justify an assertion of privilege,[1] and should have resolved this dispute in its entirety. Plaintiff, however, continues to challenge Defendants' privilege assertions for 232 documents. *See* Declaration of Kenny J. Black ("Black Decl.") ¶ 15.[2] Plaintiff has grouped these documents into five categories. *Id.* We address each of these categories in turn below, explaining why Plaintiff's continued challenges in each category are meritless.

To begin, though, a few overarching points bear emphasis:

<u>First</u>, Plaintiff's supplemental brief ("Pl's Br.") consistently mischaracterizes the actual substance of Defendants' declarations, including the supplemental declarations submitted by Apple in-house lawyers Katherine Adams (*see* Black Decl., Ex. 10, hereinafter "Adams Supp. Decl.") and Sam Whittington (*id.*, Ex. 19, hereinafter "Whittington Supp. Decl.").[3] For example,

---

[1] *See In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) ("We have previously recognized a number of means of sufficiently establishing the privilege, one of which is the privilege log approach."); *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1148 (9th Cir. 2005) ("This circuit has held that a privilege log is *sufficient* to properly assert the privilege") (citing *Dole v. Milonas*, 889 F.2d 885, 890 (9th Cir. 1989)).

[2] For the Court's convenience, Defendants have prepared privilege log excerpts for these 232 documents, grouped into the five categories identified by Plaintiff. Declaration of Kevin M. Askew ("Askew Decl."), Exs. 1-5. To provide important context for the email attachments challenged by Plaintiff in categories 1, 5a, and 5b, Defendants' privilege log excerpts for those categories include, in addition to the challenged attachments, the relevant parent emails for those attachments. *See* Askew Decl., Exs. 1, 5a, and 5b (parent emails not challenged by Plaintiff shaded in gray).

[3] Defendants initially provided declarations from Ms. Adams and Mr. Whittington on May 13, 2022. *See* Black Decl., Exs. 9 and 18. Following additional meet and confer discussions, Defendants agreed to provide supplemental declarations from Ms. Adams and Mr. Whittington to

1    Plaintiff contends that "Apple is unable to find anyone who will take responsibility for all but a
2    handful of the documents Plaintiff has challenged." Pl's Br. at 2.  But Apple's declarants have
3    attested, based on their firsthand knowledge of the relevant documents and under penalty of
4    perjury, that they understood *all* of the communications referenced in their declarations to have
5    been sent primarily for a legal purpose.  *See* Adams Supp. Decl. ¶¶ 3-7; Whittington Supp. Decl.
6    ¶¶ 3-6; Declaration of David Tom (*see* Black Declaration, Ex. 17, hereinafter "Tom Decl.") ¶ 3.
7    Plaintiff nonetheless contends that the declarations are deficient because some of the documents
8    involve multiple lawyers, and Defendants have not provided declarations from *each* of those
9    lawyers.  *See, e.g.*, Pl's Br. at 8:6-16 (complaining that Defendants did not submit declarations
10   from each of three Apple in-house lawyers to describe comments that they provided collectively).
11   In contrast to Plaintiff's misrepresentations, Defendants have submitted detailed declarations
12   from individuals who sent or received, and thus have firsthand knowledge about, the documents
13   in dispute, which the Court can plainly see upon review of the declarations.  Additional
14   declarations from additional declarants, about the very same documents, would serve no purpose.
15   Defendants have already engaged in a substantial undertaking to provide declarations describing
16   the hundreds of documents in dispute.  Plaintiff's proposed approach would subject Defendants to
17   even greater, and wholly unnecessary, burden.  *See Applied Med. Res. Corp. v. Ethicon, Inc.*,
18   2005 WL 6567355, at *1 & *3 (C.D. Cal. May 23, 2005) (where hundreds of documents
19   remained in dispute, "requiring affidavits or a similar individualized showing would be unduly
20   burdensome").

21       Plaintiff also takes issue with the fact that Mr. Whittington describes only some
22   documents as reflecting "explicit" requests for legal advice.  *See* Pl's Br. at 2 (asserting that
23   Defendants are improperly withholding "non-explicit requests for legal advice").  But Mr.
24   Whittington's declaration also makes clear, with respect to other documents, that "[e]ven where
25   the request for legal advice was not explicit," he understood that draft materials were sent to him
26   (and other Apple in-house lawyers) "for the purpose of soliciting legal advice concerning the

27
28   address Plaintiff's stated concerns regarding the original declarations.  Defendants provided those
     supplemental declarations on June 15, 2022.  *See* Black Decl., Exs. 10 and 19.

1  contents of the draft." Whittington Supp. Decl. ¶ 3.  That is sufficient to establish a basis for

2  asserting the privilege.  *See, e.g.*, *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 806 (Fed.

3  Cir. 2000) (for a communication to be privileged, "it is not necessary to expressly request

4  confidential legal assistance when that request is implied"); *see also Simon v. G.D. Searle & Co.*,

5  816 F.2d 397, 404 (8th Cir. 1987) ("Client communications intended to keep the attorney

6  apprised of business matters may be privileged if they embody 'an implied request for legal

7  advice based thereon.'") (quoting *Jack Winter, Inc. v. Koratron Co.*, 54 F.R.D. 44, 46 (N.D. Cal.

8  1971)); *Cal. Inst. of Tech. v. Broadcom Ltd.*, 2018 WL 1468371, at *3 (C.D. Cal. Mar. 19, 2018)

9  (document was privileged notwithstanding that it did not "expressly state that it is a request for

10  legal advice," where the request was implied).

11  Worse yet, in its attempt to downplay the substance of Defendants' declarations, Plaintiff

12  makes the false assertion that the substance of Mr. Whittington's five-and-a-half page

13  supplemental declaration, which addresses nearly 200 specific documents, is nothing but a

14  "largely near-verbatim repetition[] of Mr. Whittington's March 11, 2022 declaration (ECF 233-

15  5), which the Court has already described as 'woefully inadequate.'" Pl's Br. at 2.  But Mr.

16  Whittington's supplemental declaration provides far more detail than his March 11, 2022

17  declaration, which did not address individual documents, as is readily apparent from a redline

18  comparison (*see* Askew Decl., Ex. 6).  Indeed, beyond the introductory paragraph there is hardly

19  *any* overlap between the two declarations.  *Id.*  Plaintiff's obvious mischaracterization of Mr.

20  Whittington's supplemental declaration exemplifies the ways in which Plaintiff's brief takes

21  liberties with the facts.

22  Second, Plaintiff erroneously claims that Defendants "persist in asserting blanket claims

23  of privilege over hundreds of challenged documents."  Pl's Br. at 1.  Defendants make no such

24  "blanket claim."  Contrary to Plaintiff's assertion, Defendants are not asking the Court to hold

25  that every communication pertaining to the preparation of the January 2, 2019 Letter from Tim

26  Cook to Apple Investors (the "Cook Letter") is privileged.  Defendants acknowledge that each

27  and every document must individually satisfy the requirements for privilege, and have reviewed

28  every single document multiple times in that light.  Plaintiff's claim that Defendants are making a

1  "blanket claim of privilege" is belied by the fact that Defendants have produced dozens of

2  unredacted documents relating to the Cook Letter.  Askew Decl. ¶ 2.  And the privileged natures

3  of the individual documents that continue to be withheld are described through Defendants'

4  privilege log and in additional detail through Defendants' supplemental declarations.

5  　　　　Third, Plaintiff makes the baseless accusation that "Apple instructed non-attorney

6  employees to copy 'silent' in-house counsel on ordinary business emails and to write 'Privileged

7  and Confidential' at the top of emails that were not privileged in an effort to improperly shield

8  these documents from future discovery."  Pl's Br. at 3.  But Plaintiff does not cite a shred of

9  evidence of any such "instruction."  And in any event, Defendants have never contended that a

10  document is privileged just because it is labeled "Privileged and Confidential," or just because an

11  attorney is copied.  That individual employees, particularly non-attorneys, may have applied a

12  privilege label to some documents that were not in fact privileged, is of no moment when those

13  labels are not the basis for Defendants' assertions of privilege in this case.

14  　　　　For these and other reasons discussed below, the Court should deny Plaintiff's motion to

15  compel with respect to the documents remaining in dispute.[4]

16  **II.   ARGUMENT**

17  　　　　**A.　　The Challenged Documents Relating to the Cook Letter Are Privileged.**

18  　　　　Plaintiff continues to challenge the withholding of 159 documents relating to the Cook

19  Letter.  *See* Black Decl. ¶ 15, first bullet point (identifying 159 documents in dispute); Askew

20  Decl., Ex. 1 (privilege log excerpts for these 159 documents, plus privilege log excerpts for

21  related cover emails for context).  The discussion of these documents in Plaintiff's brief is limited

22  to two issues: (1) the purported "noncompliance" of Defendants' declarations with the Court's

23  April 15, 2022 order; and (2) Defendants' purported "practices of copying 'silent' attorneys and

24  mislabeling documents 'Privileged and Confidential.'"  Pl's Br. at 7.  Neither of these alleged

---

[4] Plaintiff filed its supplemental brief as an attachment to an Administrative Motion to Consider Whether Another Party's Material Should Be Sealed.  Dkt. No. 246.  Defendants have no objection to the public filing of the supplemental brief and its supporting documents.  To protect the privacy of Apple employees, however, Defendants request that Plaintiff, when filing the supplemental brief and its supporting documents on the Court's public docket, redact the email addresses of Apple personnel.

issues presents a valid basis to challenge Defendants' privilege assertions.

<u>Compliance of Declarations with the Court's Order.</u>  Plaintiff first complains that "in most cases the declarations do not identify the relevant attorney," and further contends that "Apple cannot put forward anyone to take responsibility for the challenged documents." Pl's Br. at 7-8. In connection with this argument, Plaintiff focuses in particular on a subset of the documents referenced in the sixth bullet point in paragraph 3 of Mr. Whittington's supplemental declaration, relating to drafts of the Cook Letter. *Id.*; Black Decl. ¶ 15 (first bullet point).[5] Mr. Whittington confirms that nearly one-half of those documents—56 out of 125, or what Plaintiff misleadingly refers to as a "small minority," Pl's Br. at 7—contain "explicit requests" to Mr. Whittington for legal advice, or "explicit provision of legal advice" by Mr. Whittington. Whittington Supp. Decl. ¶ 3. Plaintiff has, in large part, dropped its challenges to those 56 documents.[6]

Plaintiff takes issue, however, with an additional 15 documents described by Mr. Whittington as including "detailed comments and edits provided by Ms. Adams (Nos. 365 and 366), and emails including extensive comments on the draft Cook Letter sent collectively by [Mr. Whittington], Ms. Adams, and [Apple in-house lawyer Kyle] Andeer (Nos. 389, 391, and 400-10)." Whittington Supp. Decl. ¶ 3. Notwithstanding that Mr. Whittington was a sender or recipient of *each* of these documents (*see* Askew Decl., Ex. 1), Plaintiff complains that "Mr. Andeer did not submit a declaration and Ms. Adams, who did, is notably silent on the 'extensive comments' Mr. Whittington would attribute to her." Pl's Br. at 8. As Plaintiff would have it,

---

[5] While this section of Plaintiff's brief makes passing reference to the documents described in the fourth bullet point of paragraph 3 of Mr. Whittington's supplemental declaration (*see* Pl's Br. at 7-8), none of those 45 documents are identified in the list of documents relating to the Cook Letter that Plaintiff continues to challenge. *See* Black Decl. ¶ 15 (first bullet point). Accordingly, Defendants focus only on those documents that Plaintiff contends remain in dispute in this category.

[6] It is not entirely clear whether Plaintiff is continuing to challenge any of the 56 documents in this category. Plaintiff states that it "is no longer challenging the documents in Bullet No. 6 to ¶ 3 [of Mr. Whittington's supplemental declaration] that were in fact sent directly to Mr. Whittington, and thus plausibly sought his legal advice." Pl's Br. at 7-8. But the enumerated list following that statement omits 22 documents that were both: (1) identified in Bullet No. 6 to ¶ 3 of Mr. Whittington's supplemental declaration; and (2) sent directly to or from Mr. Whittington. These 22 documents are entry nos. 382, 515, 516, 520, 522, 524, 526, 532-34, 536, 575, 582, 594, 651, 653, 655, 656, 657, 658, 682, and 965. If Plaintiff is continuing to challenge these documents in this category, it has failed to articulate any basis for that challenge.

Defendants were required to submit a declaration from *each* lawyer who had a hand in preparing legal advice provided by a *group* of lawyers. But Mr. Whittington has firsthand knowledge of the legal advice communicated in these emails—indeed, he contributed to the preparation of that legal advice[7]—and he has attested to that firsthand knowledge. *See* Whittington Supp. Decl. ¶ 3. That is more than sufficient to establish a basis for the privilege.

That leaves 41 documents in the sixth bullet point of paragraph 3 of Mr. Whittington's supplemental declaration. With respect to those documents, Mr. Whittington says that "even where the request for legal advice was not explicit," he understood that drafts of the Cook Letter "were forwarded to me (and/or my colleagues in the legal department) for the purpose of soliciting legal advice concerning the contents of the drafts." Whittington Supp. Decl. ¶ 3. Plaintiff says that Mr. Whittington's assertion that these documents "were forwarded to him *or* his colleagues constitutes a failure by Defendants to provide a declaration by the attorney from whom legal advice was sought." Pl's Br. at 8. But Mr. Whittington's declaration, and Defendants' privilege log, establish that Mr. Whittington has relevant knowledge of, and was copied on, these communications. Whittington Supp. Decl. ¶ 3; Askew Decl., Ex. 1. No purpose would be served by requiring each of the *additional* attorneys copied on those communications to separately attest to their contents. Further, Plaintiff cites no caselaw suggesting that a communication cannot be privileged just because it involves multiple attorneys instead of a single, specific attorney. *C.f. In re Rivastigmine Patent Litig.*, 486 F. Supp. 2d 241, 244 n.1 (S.D.N.Y. 2007) (upholding privilege assertion for legal advice described as originating from a company's "legal department," not from a specific attorney).

Next, Plaintiff challenges the privilege assertions for 54 of the documents referenced in Paragraph 4 of Mr. Whittington's supplemental declaration, which describes communications relating to an effort to gather back-up documentation for the factual assertions in the Cook Letter. Pl's Br. at 9; Black Decl. ¶ 15 (first bullet point). Plaintiff contends that "Mr. Whittington

---

[7] Plaintiff further contends that Mr. Whittington "does not say that these comments or edits were legal in nature." Pl's Br. at 8. But Mr. Whittington plainly states that each of these communications was sent primarily for a legal purpose. Whittington Supp. Decl. ¶ 3.

provides no reason to believe that his or anyone else's 'directions' concerning such issues would be privileged." *Id.* But to the contrary, Mr. Whittington explains that he "directed various Apple employees to prepare certain back-up documentation with respect to the factual assertions made in the Cook Letter, for the purpose of ensuring compliance reporting requirements and minimizing legal risk to the Company." Whittington Supp. Decl. ¶ 4.

Plaintiff fares no better with its challenges to 11 of the documents described in Ms. Adams' supplemental declaration. Plaintiff's brief focuses on a set of related emails (Entry Nos. 285-91, 298, 299, and 300) described in paragraph 4 of the declaration. Pl's Br. at 9-10. In a sentence that Plaintiff's brief omits, Ms. Adams explains that these emails include communications from Mr. Cook, in which Ms. Adams understood Mr. Cook to be soliciting input from her "with respect to the legal implications of the topics he planned to cover" at an upcoming meeting of the Company's board of directors. Adams Supp. Decl. ¶ 4. Ms. Adams further explains that she responded to Mr. Cook's email to "advise[] Mr. Cook and Mr. Maestri concerning legal implications of an announcement of lowered revenue guidance." *Id.* Plaintiff appears to complain that Ms. Adams' declaration did not break down, in painstaking detail, each component email of each version of the thread (*see* Pl's Br. at 9-10), but the declaration plainly confirms that "the communications in this group of emails were sent primarily for a legal purpose." Adams Supp. Decl. ¶ 4. Ms. Adams' supplemental declaration, together with Mr. Whittington's, provide ample basis for the Court to uphold the privilege assertions for the documents relating to the Cook Letter.

"Privileged and Confidential" Labels. Plaintiff goes on to contend that "Defendants' production evinces a consistent effort within Apple to mislabel communications in order to later shield them from discovery." Pl's Br. at 10. As purported evidence for this contention, Plaintiff says only that "fifty-four of the 175 non-privileged documents Defendants produced in whole or with de minimis redactions on May 14, 2022, were improperly marked 'Privileged and Confidential.'" *Id.* But Plaintiff identifies no evidence suggesting that there was ever a concerted, "consistent effort" to label documents as privileged to "shield" them from later discovery. And there is nothing "improper" about an employee labeling a document as

1    "privileged" in good faith, even if that employee is ultimately incorrect about whether the
2    privilege applies.

3    More importantly, Plaintiff's baseless accusations are irrelevant to this motion.
4    Defendants have never contended that "Privileged and Confidential" labels, or the fact that
5    attorneys are copied on communications, are sufficient, standing alone, to justify the privilege.
6    Far from it.  For example, Apple has produced *1,430* unredacted emails in this action in which
7    Ms. Adams is a sender or recipient, 34 of which contain a "Privileged and Confidential" label.
8    Askew Decl. ¶ 3.  Apple has produced *810* unredacted emails in which Mr. Whittington is a
9    sender or recipient, 38 of which contain a "Privileged and Confidential" label.  *Id*.  The
10   production of those communications belies any allegation that Defendants have improperly
11   "shielded" documents from discovery by labeling documents as "Privileged" or by copying
12   attorneys.

13   **B.    The Challenged Redactions Concerning the Company's Response to the
14           November 5, 2018 *Nikkei Asian Review* Article Are Privileged.**

15   Plaintiff makes three arguments concerning the two documents in this category, not one of
16   which has merit.

17   First, Plaintiff contends that Defendants, through the Tom Declaration, have "modified
18   their story" about these documents.  Pl's Br. at 12.  Not so.  Mr. Tom's declaration states that the
19   redacted portions of these two documents reflect information relating to "communications
20   between me and Apple's legal department, pertaining to potential contractual remedies under a
21   contract with a supplier."  Tom Decl. ¶ 3.  That is entirely consistent with the description of these
22   documents in the previously-submitted Declaration of Ariel B. Winawer (Dkt. No. 233-1,
23   hereinafter "Winawer Decl."), which described the documents as containing "an explicit request
24   by Mr. Tom for legal advice from the legal department."  *Id.* ¶ 6.

25   Second, Plaintiff asserts that Mr. Tom's declaration is insufficient because he was the
26   person *seeking* legal advice, not the attorney *providing* legal advice.  Pl's Br. at 12.  But Mr. Tom
27   is more than capable of attesting to the privileged nature of this communication.  He was a party
28   to the communication with the legal department that is described in the redacted portion of these

emails. He has firsthand knowledge of that communication. And although he was not acting in a legal capacity at the time of these emails, he is in fact an attorney, and a member in good standing of the State Bar of California. *See* Winawer Decl. ¶ 6.

Finally, Plaintiff argues that these communications concern "business operations," not legal issues. Pl's Br. at 12. But as Mr. Tom explains, the subject matter of the redacted text pertains to "potential contractual remedies under a contract," Tom Decl. ¶ 3—a textbook legal question.

### C. The Challenged Emails Sent To The Distribution List For Apple's Disclosure Committee Are Privileged.

Next, Plaintiff challenges a group of 13 documents involving communications sent to the email distribution list for Apple's disclosure committee. Pl's Br. at 12-13; Askew Decl., Ex. 3 (privilege log excerpts for these 13 documents).

Mr. Whittington explains in his supplemental declaration that these emails "relat[e] to requests for members of the Company's disclosure committee to review draft corporate disclosure materials—including press releases, SEC filings (including draft Forms 10-Q), earnings call scripts, etc." Whittington Supp. Decl. ¶ 5.[8] He further explains that at all relevant times he was a member of the disclosure committee. *Id.* His understanding is that the relevant emails, and attached draft disclosure materials, were sent to him "for the purpose of soliciting legal advice with respect to the contents of the materials." *Id.* That is enough to establish that these communications, and their attachments, were appropriately withheld. *See Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009) (email sent to in-house counsel and other employees, which attached a draft portion of a company's SEC filing for review, was privileged); *In re Banc of California Sec. Litig.*, 2018 WL 6167907, at *2 (C.D. Cal. Nov. 26, 2018) ("When a client sends a draft disclosure document to an attorney for comment or input, the attorney-client privilege attaches to the draft and remains intact even after the final document is disclosed.").

---

[8] Defendants note that the majority of these documents relate to materials for fiscal periods other than the one that is actually at issue in this litigation. Defendants logged these materials because they are responsive to Plaintiff's document requests, but the documents are hardly relevant to Plaintiff's claims.

1    Plaintiff asserts that the documents may not be privileged because the disclosure
2  committee's members included non-attorneys, Pl's Br. at 13, but Mr. Whittington's declaration
3  establishes that he understood these communications to have been sent "primarily for a legal
4  purpose." Whittington Supp. Decl. ¶ 5. And "there is no doubt that the inclusion of [non-
5  lawyers] in the e-mail correspondence did not destroy the attorney-client privilege." *Roth*, 254
6  F.R.D. at 542.

7    Plaintiff also repeats its argument, made in the last round of briefing, that "Defendants
8  still cannot or will not identify the members of the Disclosure Committee email group, as
9  required to meet their burden of establishing that the privilege applies and has not been waived."
10 Pl's Br. at 12-13. As Defendants have explained before, Apple is not able to ascertain the exact
11 membership list of the disclosure committee group distribution email address as of a particular
12 date in the past. *See* Declaration of Robin Goldberg (Dkt. No. 233-4) ¶ 3. Nonetheless, Mr.
13 Whittington has confirmed, based on personal knowledge, that at all relevant times the disclosure
14 committee email list did not include anyone other than Apple employees. Declaration of Sam
15 Whittington (Dkt. No. 233-5) ¶ 5. That is sufficient to establish that the privilege has not been
16 waived by disclosure to third parties.

17    **D.    The Challenged Documents from Non-Lawyers' Custodial Files Are Privileged.**
18

19    Plaintiff challenges two documents in this category—Entry Nos. 31 and 32. Both
20 documents are drafts of the Cook Letter. *See* Askew Decl., Ex. 4 (privilege log excerpts for these
21 two documents). Mr. Whittington's supplemental declaration confirms that Entry No. 31 was
22 sent to him and other Apple in-house lawyers to seek their legal advice with respect to the
23 contents of the draft. Whittington Supp. Decl. ¶ 3. Entry No. 32 was a draft sent to Mr. Cook,
24 copying Mr. Whittington and other in-house lawyers, reflecting advice provided by Apple in-
25 house lawyers. *Id.* Mr. Whittington further confirms his understanding that these drafts were
26 sent primarily for a legal purpose. *Id.* Accordingly, these two drafts of the Cook Letter, sent for
27 the purpose of obtaining legal advice, or reflecting legal advice that had already been provided,
28 are protected by the attorney-client privilege. *See Roth*, 254 F.R.D. at 541 ("most courts have

1  found that even when a final product is disclosed to the public, the underlying privilege attached
2  to drafts of the final product remains intact"); *In re Banc of California Sec. Litig.*, 2018 WL
3  6167907, at *2 (holding that drafts shared with counsel for review were privileged).

4      Plaintiff points out that whereas Defendants' prior briefing described these two documents
5  as "loose files of privileged drafts of the Cook Letter that do not contain a cover email" (Dkt. No.
6  233 at 8), Mr. Whittington's supplemental declaration explains that these documents were sent
7  via email. Pl's Br. at 14. The reason for that is simple. The two documents identified as Entry
8  Nos. 31 and 32 on Defendants' privilege log are in fact electronic loose files, collected from
9  individual custodians without an accompanying cover email. Counsel subsequently determined,
10 in connection with the preparation of Mr. Whittington's supplemental declaration, that these two
11 files are identical to files that had also been sent as attachments via email. Those are the email
12 transmissions described in paragraph 3 of Mr. Whittington's supplemental declaration.

13     **E.  The Disputed Email Attachments Are Privileged.**

14     Finally, Plaintiff continues to challenge Defendants' assertions of privilege over numerous
15 email attachments. *See* Askew Decl., Exs. 5a and 5b. To provide important context for these
16 email attachments, Defendants are submitting privilege log excerpts that include, in addition to
17 the challenged attachments, the corresponding parent emails for those attachments. *See id.*
18 (parent emails not challenged by Plaintiff are shaded in gray).

19     The vast majority of these email attachments are draft materials relating to the Cook
20 Letter or other Apple disclosures, or draft internal presentations, which were either sent to in-
21 house counsel for their legal advice, or which reflect legal advice from in-house counsel. *See id.*;
22 Whittington Supp. Decl. ¶¶ 3, 5; Adams Supp. Decl. ¶ 3.[9] Plaintiff's supplemental brief feigns
23 ignorance about the nature of these attachments, referring to the file names for the attachments,
24 but ignoring the privilege log's description of the attachments as *drafts*. *Compare* Pl's Br. at 15
25 (referring to file names of entry nos. 218-20) *with* Askew Decl., Ex. 5b (privilege log entry for

---

[9] Documents in this category are entry nos. 142, 175, 177, 218-20, 85, 107, 109, 143-44, 151, 165, 212, 323, 325-26, 334, 343, 364, 366, 376, 379, 384, 391, 402, 411, 419, 421, 426, 428, 433, 437, 444, 519, 524, 532, 539, 541, 543, 556, 558, 560, 567, 574, 594, 601, 624, 630, 645, 648, 660, 669, 682, 685, 699, 732, 736, 756, 758, 776, 778, 832, 834, 863-64, and 886.

1  cover email (no. 216) describing these attachments as "draft earnings release materials" sent for
2  the purpose of obtaining legal advice).

3  There should be no serious dispute that these kinds of drafts, shared with counsel for legal
4  review, are privileged. *See Roth*, 254 F.R.D. at 541 (finding that drafts of SEC filings, circulated
5  to counsel for review, were privileged); *In re Banc of California Sec. Litig.*, 2018 WL 6167907, at
6  *2 (drafts shared with counsel for review were privileged); *In re Premera Blue Cross Customer
7  Data Sec. Breach Litig.*, 329 F.R.D. 656, 662 (D. Or. 2019) ("A draft prepared at the request of
8  counsel or otherwise prepared by [the company] and sent to counsel for review and legal advice is
9  subject to the attorney-client privilege"). Plaintiff cites no authority to the contrary. Further, "the
10 fact that a document may be prepared for a business purpose does not preclude it from being
11 privileged if it is sent to an attorney for the purpose of receiving legal advice relating to that
12 document." *Premera*, 329 F.R.D. at 662.

13 Plaintiff challenges only five attachments in this category that are *not* drafts – entry nos.
14 270, 463, 466, 471, and 488.[10] Mr. Whittington attests that entry no. 270 is an Excel spreadsheet
15 in which an Apple employee provided an analysis relating to Apple's EPS (earnings per share),
16 following Mr. Whittington's request for the information. Whittington Supp. Decl. ¶ 2. Plaintiff's
17 brief does not address this document at all, let alone explain how the analysis is relevant to
18 Plaintiff's claims. The remaining four attachments were created in connection with the effort,
19 described in Mr. Whittington's declaration, by which he "directed various Apple employees to
20 prepare certain back-up documentation with respect to the factual assertions made in the Cook
21 Letter, for the purpose of ensuring compliance reporting requirements and minimizing legal risk
22 to the Company." Whittington Supp. Decl. ¶ 4. Mr. Whittington further attests that these
23 materials were sent primarily for a legal purpose. *Id.*

---

[10] Plaintiff also says that it is challenging entry no. 574 because it is "described in identical fashion as Entry No. 488," Pl's Br. at 15, but the two documents are in fact described differently in the privilege log. Entry no. 574 is correctly described as a "draft investor letter reflecting legal advice from in-house counsel." Askew Decl., Exs. 5a, 5b.

## III. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion to compel with respect to the 232 documents remaining in dispute. To the extent the Court is inclined to grant Plaintiff's motion with respect to any of the documents, Defendants request that the Court first order an *in camera* review of those materials, or a sampling thereof.

Dated: July 5, 2022              Respectfully submitted,

                                 ORRICK, HERRINGTON & SUTCLIFFE LLP


                                       */s/ James N. Kramer*
                                         JAMES N. KRAMER

                                 Attorneys for Defendants Apple Inc.,
                                 Timothy Cook, and Luca Maestri