1  ROBBINS GELLER RUDMAN
       & DOWD LLP
2  SHAWN A. WILLIAMS (213113)
   DANIEL J. PFEFFERBAUM (248631)
3  KENNETH J. BLACK (291871)
   HADIYA K. DESHMUKH (328118)
4  Post Montgomery Center
   One Montgomery Street, Suite 1800
5  San Francisco, CA  94104
   Telephone:  415/288-4545
6  415/288-4534 (fax)
   shawnw@rgrdlaw.com
7  dpfefferbaum@rgrdlaw.com
   kennyb@rgrdlaw.com
8  hdeshmukh@rgrdlaw.com
            – and –
9  MARK SOLOMON (151949)
   TOR GRONBORG (179109)
10 JASON A. FORGE (181542)
   RAPHAELLA FRIEDMAN (323324)
11 655 West Broadway, Suite 1900
   San Diego, CA  92101
12 Telephone:  619/231-1058
   619/231-7423 (fax)
13 marks@rgrdlaw.com
   torg@rgrdlaw.com
14 jforge@rgrdlaw.com
   rfriedman@rgrdlaw.com
15
   Lead Counsel for Lead Plaintiff
16 [Additional counsel appear on signature page.]

17              UNITED STATES DISTRICT COURT

18             NORTHERN DISTRICT OF CALIFORNIA

19                    OAKLAND DIVISION

| | |
|---|---|
| 20  In re APPLE INC. SECURITIES LITIGATION | )  Case No. 4:19-cv-02033-YGR |
| 21 | )  CLASS ACTION |
| 22  This Document Relates To: | )  LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO COMPEL |
| 23      ALL ACTIONS. | )  PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED; |
| 24 | )  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| 25 | )  DATE:      April 15, 2022 |
| 26 | )  TIME:      9:30 a.m. |
| | )  CTRM:     F, 15th Floor |
| 27 | )  JUDGE:    Hon. Joseph C. Spero |

28

1

## TABLE OF CONTENTS

2
Page

3    I.      INTRODUCTION ..................................................................................................1

4    II.     FACTS ...................................................................................................................2

5    III.    LEGAL STANDARD............................................................................................3

6            A.      Burden of Proving Privilege ....................................................................3

7            B.      Dual-Purpose Communications ...............................................................4

8    IV.     ARGUMENT .........................................................................................................5

9            A.      Documents Related to the January 2, 2019 Preannouncement of 1Q19
10                   Earnings ....................................................................................................6

11                   1.      Defendants Do Not Substantiate the Lone Implausible Basis for
                            Their Blanket Privilege Assertion.................................................6

12                   2.      Defendants' Privilege Log Is Woefully Insufficient.....................8

13           B.      Documents Relating to *Nikkei* Article About Supplier Cuts ...................9

14           C.      Members of Email Groups........................................................................10

15           D.      Unsent Documents in Non-Lawyers' Custodial Files ............................10

16           E.      Non-Privileged Email Attachment...........................................................11

17   V.      CONCLUSION......................................................................................................13
18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

Page

3

**CASES**

4

*Bowne of New York City, Inc. v. AmBase Corp.*,

5
   150 F.R.D. 465 (S.D.N.Y. 1993) ...................................................................4

6

*Burlington N. & Santa Fe Rv. Co. v. U.S. D. Ct.*,

7
   408 F.3d 1142 (9th Cir. 2005) .......................................................................6

8
*Chrimar Sys. Inc v. Cisco Sys. Inc*,
   2016 WL 1595785 (N.D. Cal. Apr. 21, 2016) .............................................10

9

*Dolby Lab'ys. Licensing Corp. v. Adobe Inc.*,

10
   402 F. Supp. 3d 855 (N.D. Cal. 2019) ...........................................................4

11
*In re Grand Jury*,
   23 F.4th 1088 (9th Cir. 2021) ...............................................................4, 5, 7

12

*Mitchell v. Adams*,

13
   2009 WL 674348 (E.D. Cal. Mar. 6, 2009) ..............................................4, 11

14
*Oracle Am., Inc. v. Google, Inc.*,
   2011 WL 3794892 (N.D. Cal. Aug. 26, 2011) ..............................................4

15

*Our Child's. Earth Found. v. Nat'l Marine Fisheries Serv.*,

16
   85 F. Supp. 3d 1074 (N.D. Cal. 2015) .........................................................12

17
*U.S. v. ChevronTexaco Corp.*,
   241 F. Supp. 2d 1065 (N.D. Cal. 2002) ...................................................7, 12

18

*U.S. v. Martin*,

19
   278 F.3d 988 (9th Cir. 2002) ..........................................................4, 8, 10

20
*U.S. v. Ruehle*,
   583 F.3d 600 (9th Cir. 2009) ......................................................................3, 4

21

*von Bulow by Auersperg v. von Bulow*,

22
   811 F.2d 136 (2d Cir. 1987) ..........................................................................4

23

**STATUTES, RULES AND REGULATIONS**

24

25
Federal Rules of Civil Procedure
   Rule 26(b)(5)(A)(ii) ....................................................................................4, 8

26

27

28

**NOTICE OF MOTION AND MOTION**

TO:    ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on April 15, 2022, at 9:30 a.m., before the Honorable Joseph C. Spero, United States Magistrate Judge, at the United States District Court, Northern District of California, Oakland Division, 1301 Clay Street, Courtroom F, 15th Floor, Oakland, California 94612, Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund ("Plaintiff") hereby brings this Motion pursuant to Rules 26(b)(5)(a) and 37 of the Federal Rules of Civil Procedure and this Court's Order (ECF No. 229) for an order compelling Defendants[1] to produce all documents withheld as privileged and provide additional information, supported by declaration(s) and signed by declarant(s).  This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Kenneth J. Black ("Black Decl.") and the exhibits thereto, the [Proposed] Order filed herewith, the pleadings and filings herein and such other evidence that may be submitted by Plaintiff in further support of this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendants have withheld hundreds of documents by virtue of a sense of entitlement untethered to the standards that apply to other litigants.  Months of meet-and-confer efforts have culminated in this Motion concerning five categories of withheld documents, all of which share a common bond:  Defendants have steadfastly provided as little substantive information about them as possible, which for many makes it impossible for the Court, or Plaintiff, to assess Defendants' privilege assertions.  For example, Defendants have provided no substantiation whatsoever for their blanket assertion that more than 250 documents related to the pivotal January 2, 2019 preannouncement of fiscal 1Q19 earnings in a "Letter from Tim Cook to Apple Investors," which conveyed standard financial performance metrics and typical corporate commentary, are privileged because they were supposedly "created at the behest of Apple in-house counsel," as if Apple's

---

[1]      "Defendants" are Apple Inc. ("Apple"), Timothy D. Cook and Luca Maestri.

General Counsel was also its CAO, CFO and CEO, and thereby transformed all business functions into legal ones.  For many documents, Defendants have refused to even identify an involved attorney.  For others, the "description" goes no further than "[a]ttached document" prepared by an unidentified employee supposedly acting under the unspecified direction of an unidentified in-house counsel.  Defendants have admitted they are withholding them based on nothing more than the fact that they happened to have been attached to emails that Defendants claim are privileged.  Defendants do not even claim, let alone explain, how these admittedly non-privileged attachments could reveal the actual substance of supposedly privileged transmittal emails, which Defendants have also withheld.

As set forth below, Plaintiff respectfully requests two different forms of relief.  For many documents, there is already enough information for the Court to order production.  For others, and for now, Plaintiff asks that the Court order Defendants to provide the information (including one or more personal-knowledge declarations) necessary to assess their privilege assertions.

**II.    FACTS**

The instant Motion did not start as a privilege dispute.  Rather, it began with Plaintiff trying to get Defendants to produce any documents.  On November 23, 2020, Plaintiff served its first set of requests for production of documents relevant to its claims and Defendants' defenses.  Disputes as to the timing and initial scope of discovery resulted in an April 16, 2021 Order that Defendants begin producing documents immediately, and substantially complete their initial production by July 15, 2021. ECF No. 158.  Defendants did not produce a single internal, non-public communication until June 25, 2021; Defendants' made subsequent productions pursuant to this Order on June 25, July 15, September 23 and October 25, 2021.  ECF No. 228 at 4.  Approximately half of the pages produced to date were produced between late September 2021, and through February 2022.  *Id.* (chart of Defendants' production by total pages).  No privilege or redaction logs accompanied these productions, yet Defendants had withheld and redacted hundreds of documents.

Plaintiff's suspicions about withheld documents arose after Plaintiff identified subject-matter and temporal gaps in Defendants' productions.[2]  For example, regarding the absence of documents concerning Apple's January 2, 2019 preannounced revenue miss, Defendants responded: "These documents are, in large part, privileged.  They will be reflected on our forthcoming privilege log." Black Decl., ¶3.  It was not until November 24, 2021, that Apple finally provided a privilege log for documents the Court Ordered them to start producing immediately.  *Id.*, ¶4.

On November 24, 2021, Defendants produced their first privilege log, as a PDF, and then on December 21, 2021, as an Excel spreadsheet the same day the parties discussed deficiencies with the log and Defendants' privilege assertions.  *Id.*, ¶4.  Following further discussions, on January 19, 2021, Plaintiff provided an itemized list of objections to the privilege log which led Defendants to provide a new log on February 3, 2022 – the key change being the addition of email subjects which were previously omitted.  *Id.*, ¶¶6-7.  Armed with this belated information, Plaintiff was able to raise more specific objections, as itemized in a list on February 7, 2022, before the parties' meet and confer over Zoom on February 14, 2022.  *Id.*, ¶8.  The parties concluded the Zoom meet and confer with an agreement to file a joint letter to advise the Court of the dispute.  *Id.*, ¶9.  On February 23, 2022, literally the eve of filing the parties' joint letter, Defendants provided what is the third or fourth version of their privilege log.  *Id.*, ¶11.

## III.   LEGAL STANDARD

### A.   Burden of Proving Privilege

"Under federal law, the attorney-client privilege is strictly construed."  *U.S. v. Ruehle*, 583 F.3d 600, 608-09 (9th Cir. 2009).[3]  The burden lies with the party claiming the privilege to prove each element of a "well-established eight-part test":

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

---

[2]     Plaintiff repeatedly requested a privilege log from Defendants.  *See* Black Decl., ¶2 (setting forth dates of communications).

[3]     All citations and footnotes omitted and emphasis added unless otherwise indicated.

1    *Id.* at 607-08.  "'[T]his burden can be met only by an evidentiary showing based on competent

2    evidence, and cannot be "discharged by mere conclusory or *ipse dixit* assertions."'"  *Mitchell v.*

3    *Adams*, 2009 WL 674348, at \*17 (E.D. Cal. Mar. 6, 2009) (quoting *Bowne of New York City, Inc. v.*

4    *AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y. 1993) and citing *von Bulow by Auersperg v. von*

5    *Bulow*, 811 F.2d 136, 144 (2d Cir. 1987)).

6         "A cursory review of the case law demonstrates that attorney declarations generally are

7    necessary to support the designating party's position in a dispute about attorney-client privilege."

8    *Dolby Lab'ys. Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 865 (N.D. Cal. 2019).  Where a

9    claimed privilege asserts "an attorney-directed effort to provide legal advice or prepare for

10   litigation," attorney declarations must expressly substantiate such assertions.  *Oracle Am., Inc. v.*

11   *Google, Inc.*, 2011 WL 3794892, at \*3 (N.D. Cal. Aug. 26, 2011).

12        Parties may also use privilege logs as part of their proof, but such logs must "describe the

13   nature of the documents, communications, or tangible things not produced or disclosed – and do so

14   in a manner that, without revealing information itself privileged or protected, will enable other

15   parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii).  "Blanket assertions are 'extremely

16   disfavored.'"  *U.S. v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002), *as amended on denial of reh'g*

17   (Mar. 13, 2002).

18        **B.**    **Dual-Purpose Communications**

19        As the Ninth Circuit recently reminded, "the attorney-client privilege extends only to

20   communications made 'for the purpose of facilitating the rendition of professional legal services.

21   Thus, the 'client must consult the lawyer for the purpose of obtaining legal assistance and not

22   predominantly for another purpose.'"  *In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. 2021).

23   Recognizing that in a business context, many communications can have a dual business and legal

24   purpose, the Ninth Circuit rejected the so-called "because of" test that would render all

25   communications privileged so long as the "dual-purpose communication was made 'because of' the

26   need to give or receive legal advice" irrespective of whether the legal advice was the ***primary***

27   purpose of the communication.  *Id*. at 1092.  As the Ninth Circuit explained:

28

> Applying a broader 'because of' test to attorney-client privilege might harm our adversarial system if parties try to withhold key documents as privileged by claiming that they were created 'because of' litigation concerns.  Indeed, it would create perverse incentives for companies to add layers of lawyers to every business decision in hopes of insulating themselves from scrutiny in any future litigation.

*Id*. at 1093-94.   Therefore, to be privileged, the "'primary or predominant' purpose of a communication" must be to obtain or provide legal advice.  *Id*. at 1094.  Last, the Court expressly provided the following example of a business purpose communication: One whose purpose is "to comply with regulatory requirements and corporate policy."  *Id*. at 1094.

## IV.   ARGUMENT

Far from having "worked exceedingly hard to avoid this dispute" (ECF No. 227 at 5), as they claim, Defendants have repeatedly refused to carry their burden of justifying their withholding of hundreds of relevant and responsive documents.  Even the most valuable company in the world must abide by the same standards as everyone else.  The Court should now compel Defendants to do so.

One persistent difficulty is Defendants' ever-changing tactics and justifications for their privilege assertions.  For example, Defendants' November 24, 2021 and December 21, 2021 privilege logs failed to address – or even include – certain email attachments.  Attached documents then appeared or were identified in Defendants' February 3, 2022 log.  During the February 14, 2022 Zoom, Plaintiff asked whether Defendants were claiming that these attachments would reveal the privileged contents of parent emails.  Defendants confirmed that position and asserted no other basis for withholding these documents.  Black Decl., ¶9.  On February 23, 2022, Defendants' again changed tactics.  In their February 23, 2022 privilege log, Defendants now assert that each of these attachments was attached "for the purpose" of obtaining legal advice.  *Infra* §IV.E.

The same process has played out with respect to the other privilege claims and objections at issue here.  Defendants' first three logs described emails about the *Nikkei* Article described below as "regarding [a] contract issue."  *Infra* §IV.B.  The February 23, 2022 privilege log now describes them as "regarding response to article."  *Id.*

Similarly, Defendants' initial justification for withholding documents related to what the privilege logs call the "investor letter" (*i.e.*, Apple's January 2, 2019 preannounced revenue miss) was that drafts reflecting legal advice may be withheld in their entirety.  But when Plaintiff pointed

1  out that Defendants had also withheld non-draft documents concerning the investor letter,

2  Defendants changed their tune.  Defendants then argued that the entire process resulting in the

3  investor letter was undertaken at the direction of counsel, justifying a blanket claim of privilege.

4  Plaintiff disagreed, explaining that their blanket assertion is proscribed and particularly inappropriate

5  here, where the process is not inherently legal and involves a subject central both to Plaintiff's

6  claims and Defendants' defenses.  Black Decl., ¶6.  This game of whack-a-mole needs to end,

7  Defendants must produce a sufficient log or turn over the withheld documents.[4]

8      A.    **Documents Related to the January 2, 2019 Preannouncement of 1Q19**
            **Earnings**
9

10          1.    **Defendants Do Not Substantiate the Lone Implausible Basis**
                  **for Their Blanket Privilege Assertion**

11      Defendants' January 2, 2019 preannouncement, styled as a "Letter from Tim Cook to Apple

12  Investors," and filed with the SEC on Form 8-K (Ex. 6 at 1[5] ("investor letter")) "revis[ed] our

13  guidance for Apple's fiscal 2019 first quarter . . . ." and revealed a multi-billion-dollar revenue miss

14  primarily attributed to a significant contraction in China's smartphone market that accounted for

15  over 100% of Apple's year-over-year revenue decline.  The investor letter had a plainly business, not

16  legal, purpose.  It preannounced many of the same financial performance metrics that Defendants

17  routinely compile and publicly report, and would do so in final form a few weeks later.  Yet, in

18  ─────────────────

19  [4]    Plaintiff recently discovered what appear to be dozens of additional documents with
20  redactions that do not appear in Defendants' privilege log.  Although not at issue here, this new
    development, combined with the lengthy delays and remaining significant deficiencies in
    Defendants' privilege log, may ultimately satisfy the Ninth Circuit's test for a total waiver:

21          [T]he degree to which the objection or assertion of privilege enables the litigant
22          seeking discovery and the court to evaluate whether each of the withheld documents
            is privileged (where providing particulars typically contained in a privilege log is
23          presumptively sufficient and boilerplate objections are presumptively insufficient);
            the timeliness of the objection and accompanying information about the withheld
24          documents (where service within 30 days, as a default guideline, is sufficient); the
            magnitude of the document production; and other particular circumstances of the
25          litigation that make responding to discovery unusually easy . . . or unusually hard.

26  *Burlington N. & Santa Fe Rv. Co. v. U.S. D. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005).  Although
    Plaintiff is not presently asking the Court to determine a total waiver, this new discovery and
27  Defendants' response to the Court's rulings on this dispute may trigger such a request.

28  [5]    All "Ex. _" citations herein are to the Black Decl.

LEAD PLTF'S NOTICE OF MOT & MOT TO COMPEL PROD OF DOCS WITHHELD AS
PRIVILEGED; MEMORANDUM OF P'S & A'S IN SUPPORT THEREOF - 4:19-cv-02033-YGR        - 6 -
4863-7341-9026.v1

1   direct defiance of the Ninth Circuit's recent decision in *Grand Jury*, Defendants have taken this

2   business reason ("to comply with regulatory requirements and corporate policy" regarding financial

3   guidance) and attempted to transform it into a legal reason merely by "add[ing] layers of lawyers to

4   [this] business decision."  23 F.4th at 1093-94.

5       Defendants' blanket assertion that virtually all documents related to a letter "revising our

6   guidance for Apple's fiscal 2019 first quarter" (Ex. 6 at 1) were "created at the behest of Apple in-

7   house counsel" (ECF No. 227 at 5 n.7) is highly implausible.  But even if true, even if an in-house

8   counsel learned that Apple's dismal October performance in China continued into November and

9   December, and then initiated and directed the effort to revise Apple's guidance, that would simply

10  mean this was another example of an "in-house counsel . . . operat[ing] in a purely or primarily

11  business capacity in connection with many corporate endeavors, [which is why] the presumption that

12  attaches to communications with outside counsel does not extend to communications with in-house

13  counsel."  *U.S. v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002).

14      Worse, although the claim that all documents related to a letter "revising our guidance for

15  Apple's fiscal 2019 first quarter" (Ex. 6 at 1) were "created at the behest of Apple in-house counsel"

16  (ECF No. 227 at 5 n.7) is the ***lone*** basis for Defendants' blanket privilege assertion, Defendants do

17  not even attempt to substantiate it.  In fact, during one meet and confer, when pressed, counsel for

18  Apple stated that it was up to Plaintiff to envision a scenario in which all such withheld documents

19  were created pursuant proper attorney-client relationships.  Black Decl., ¶5.  Directing an adversary

20  to imagine circumstances in which a large category of business-related documents were created at

21  the direction of counsel is obviously no way to carry the burden of establishing that all such

22  documents are privileged.  Defendants must answer: On what date did which specific lawyers ask for

23  what type of information in each communication?  To what area of the law did the supposed advice

24  pertain?  How or why was the process of "revising our guidance" a legal, rather than business,

25  purpose, particularly when Apple routinely provides financial performance guidance as part of its

26  ordinary business operations?  Since the revised guidance primarily provided standard financial

27  metrics, wasn't the requested information underlying revision the same generated in the ordinary

28

1    course of Apple's business, as opposed to information gathered for the unique purpose of obtaining

2    legal advice?

3         Because Defendants' entire blanket privilege assertion turns on the representation that

4    virtually all documents related to a letter "revising our guidance for Apple's fiscal 2019 first quarter"

5    (Ex. 6 at 1) were "created at the behest of Apple in-house counsel" (ECF No. 227 at 5 n.7), at a

6    minimum, Defendants must substantiate this representation with a sworn declaration from

7    individual(s) with personal knowledge of the answers to the foregoing questions.

8                  **2.      Defendants' Privilege Log Is Woefully Insufficient**

9         Defendants' glib disregard of their burden and corresponding disclosure obligations is

10   manifest throughout their privilege log entries relating to the withheld investor letter documents.  In

11   the 258 privilege log entries, Defendants do not even try to provide enough information to "enable

12   [the Court or Plaintiff] to assess the claim."   Fed. R. Civ. P. 26(b)(5)(A)(ii).   Instead, they

13   exclusively rely on the very kind of "[b]lanket assertions [that] are 'extremely disfavored.'" *Martin*,

14   278 F.3d at 1000.  For example, the first entry (chronologically) does not describe the type of

15   document, does not identify its author (though it states the document is from "Tim Cook's files"),

16   does not identify a single lawyer, nor the area of the law to which it relates.  *See* Ex. 1, Entry No. 33.

17   Rather, the entire "Privilege Description" comprises the following: "Document reflecting legal

18   advice from in-house counsel regarding board of directors' call and pre-announcement of revenue

19   guidance miss."   *Id*.   There is simply no way for the Court or Plaintiff to assess Defendants'

20   privilege assertion based on this vague and limited description.

21        Similarly, Defendants have several entries with no dates, no authors, no senders and no

22   recipients.   For example, Entry Nos. 466-468 reflect no information other than the following

23   boilerplate: "Attached document prepared by employee acting under the direction of in-house

24   counsel sent for the purpose of obtaining legal advice regarding investor letter." *Id.*, Entry Nos. 466-

25   468 (*n.b. id.*, Entry No. 468 is further described as "PastedGraphic-2.png").  What does "prepared"

26   even mean in this context?  Are Defendants representing that this document did not exist until some

27   unidentified lawyer asked for it to be created?  Did it reflect a search for information that had not

28   previously been gathered or did it merely repeat information Apple maintains in the ordinary course

1    of its business?  No one operating in good faith could claim that so little information is sufficient to

2    assess Defendants' privilege assertion, much less sufficient for Defendants to carry their burden of

3    establishing the privilege.

4         Many documents are simply described as: "Email requesting and reflecting legal advice from

5    in-house counsel regarding draft investor letter." *See, e.g.*, *id.*, Entry Nos. 368-375, 412-418.  Legal

6    advice about what laws or legal doctrines?  Who supposedly rendered the advice?  Defendants

7    intentionally provide so little information that their assertion can neither be assessed nor

8    investigated.

9         To meet their burden, at a minimum, ***for each entry***, Defendants must provide a competent

10   privilege log with information reflecting the type of document, its title, author(s), the areas of the law

11   in which legal advice was sought or rendered, the lawyer(s) whose advice was sought or rendered,

12   what lawyer(s) requested what specific information, and whether that specific information was

13   gathered for this unique purpose or was it merely information Apple maintains in the ordinary course

14   of its business.

15        **B.      Documents Relating to *Nikkei* Article About Supplier Cuts**

16        In another example of documents relating to prototypical business purposes that Defendants

17   are trying to transform into privileged documents, Defendants have redacted two documents

18   concerning the *Nikkei* Article about production cancellations for iPhone XR.  Ex. 2, Entry Nos.

19   1263-1264.  In their November 24, 2021, December 21, 2021, and February 3, 2022 privilege logs,

20   Defendants asserted that these redactions concerned a "contract issue." *See* Black Decl., ¶7.  In their

21   February 23, 2022 privilege log, however, Defendants now assert that these exact same redactions

22   are instead privileged, because they "reflect[] legal advice from in-house counsel David Tom

23   regarding response to [*Nikkei*] [A]rticle [about cancelled production for iPhone XR]."  Ex. 2, Entry

24   Nos. 1263-1264.  This dramatic change betrays the contrived nature of Defendants' privilege

25   assertions.  More fundamentally, what area of the law does this supposed legal advice concern?

26   Were Defendants contemplating a lawsuit or cease-and-desist letter in response to the *Nikkei* Article?

27   Or was this just wordsmithing a business threat to suppliers who dared to tell the truth about Apple's

28   ongoing woes in China?  A sufficient description would answer these questions and enable the Court

1   and Plaintiff to assess these privilege assertions.  Defendants' description does not.  Moreover, given

2   Defendants' dramatically changed description, it should be a declaration that sets forth the requisite

3   information, rather than a mere privilege log that Defendants could change again on a whim.

4       **C.      Members of Email Groups**

5       Defendants' lack of cooperation is perhaps epitomized by their refusal to identify the

6   members of email groups listed as recipients of withheld documents, including the identities of any

7   lawyers in the groups.  Without such information, it is impossible to know whether an attorney

8   received each of these group emails or whether such emails were limited in distribution solely to

9   Apple employees.  While the lack of an attorney-recipient is not necessarily dispositive of a privilege

10  assertion, it is undeniably relevant, and it is petty of Defendants to withhold such information.  Their

11  assurance that counsel "identities are ***generally*** evident from the log" (ECF No. 227 at 6) means that

12  not all counsel identities are evident, so Defendants should just stop the gamesmanship and identify

13  the lawyer(s) whose advice was supposedly being sought, given or assisted, as well as the nature of

14  the advice being sought, given or assisted (*i.e.*, what area of the law did it concern).  At bottom, it is

15  Defendants' burden to prove that these documents are privileged and that privilege was not waived,

16  and without this basic information, they have not carried their burden.

17      **D.      Unsent Documents in Non-Lawyers' Custodial Files**

18      Defendants have withheld seven documents that apparently were not sent to or received by

19  anyone.  Rather, they are described simply as the files of Tim Cook, Tejas Gala and Adam Talbot,

20  respectively.  Ex. 4, Entry Nos. 26-29, 31-33.  And the "Privilege Description" merely states that

21  they "reflect[] legal advice from" unidentified "in-house counsel."  *Id.*  Again, such "'vague

22  declaration[s] . . . stat[ing] only that the document "reflects" an attorney's advice [are] insufficient.'"

23  *Chrimar Sys. Inc v. Cisco Sys. Inc*, 2016 WL 1595785, at *3 (N.D. Cal. Apr. 21, 2016); *see also*

24  *Martin*, 278 F.3d at 999-1000 ("[a] party claiming the privilege must identify specific

25  communications and the grounds supporting the privilege as to each piece of evidence").  Whose

26  legal advice about what laws or legal doctrines do each of these documents supposedly reflect?  This

27  information should be provided by way of declaration so each individual is accountable for it.

28  Otherwise, it is apparent that what Defendants have provided falls far short of the requisite

1    "'evidentiary showing based on competent evidence [that] cannot be "discharged by mere

2    conclusory or *ipse dixit* assertions,"'" and therefore, they have not carried their burden. *Mitchell*,

3    2009 WL 674348, at *17.

4            E.      **Non-Privileged Email Attachment**

5            Last, Defendants have withheld 209 email attachments that, as recently as the parties'

6    February 14, 2022 Zoom meeting, Defendants stated were being withheld based on the unexplained

7    and unsubstantiated assertion that these non-privileged attachments would somehow reveal the

8    privileged portions of the transmittal emails to which they were attached. *See* Black Decl., ¶9.  Less

9    than two weeks ago, in their February 23, 2022 privilege log, Defendants added new boilerplate

10   language contending that these documents had been "sent for the purpose of obtaining legal advice,"

11   as if that somehow confers privileged status on an otherwise non-privileged document.  *See* Exs.

12   5a-5b.  Based on the dates and/or titles of these documents (the only information Defendants

13   provide), 39 are facially non-privileged.  These facially non-privileged documents are set forth in

14   Exhibit 5a.  They clearly concern business topics, including third-party reports, such as: past third-

15   party sales rankings (Ex. 5a, Entry No. 473); phone activation trends (*id.*, Entry No. 481); revenues

16   by country (*id.*, Entry No. 336); third-party "ISS Report" (*id.*, Entry No. 760); "iPhone 6s Net Price

17   & Margin – 2019-1-1.pdf" (*id.*, Entry No. 626); "China FQ1'19 Installed Base Summary 1-1-19.pdf"

18   (*id.*, Entry No. 588); "InstalledBaseUpdate_FY19Q1_01jan19.key" (*id.*, Entry No. 591); and the list

19   goes on.  Most tellingly, three of these attachments appear to be market data reports for China, dated

20   October 15, 2018, November 12, 2018, and December 10, 2018 ("Sept China SMP.pdf"; "Oct China

21   SMP.pdf"; and "Nov China SMP.pdf").  *See id.*, Entry Nos. 456-458.  Similarly, Entry No. 465 is an

22   "Attached document" from 2013.  *Id.*, Entry No. 465.  These documents, therefore, were created

23   weeks, months or *years* before there is any indication Defendants were even considering issuing the

24   investor letter.  Yet, Defendants represent that each one was "prepared by employee acting under the

25   direction of in-house counsel sent for the purpose of obtaining legal advice regarding investor letter."

26   *See id.*  That is simply not possible.

27           Moreover, Defendants have withheld in their entirety all the corresponding transmittal emails

28   for these attachments.  This means it is literally impossible for the production of these non-privileged

1    attachments to reveal the privileged portion(s) of the corresponding withheld transmittal emails.

2    Accordingly, it is clear that Defendants are improperly withholding the documents set forth in Ex. 5a

3    as "[a]ttachments which do not, by their content, fall within the realm of the [attorney-client]

4    privilege cannot become privileged by merely attaching them to a communication with the attorney."

5    *Our Child's. Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1088 (N.D. Cal.

6    2015).

7              In addition to the facially non-privileged documents, Exhibit 5b sets forth a group of

8    attachments that cannot be eliminated facially (due to the insufficient information Defendants'

9    privilege log provides), but they appear to be additional instances of "in-house counsel . . .

10   operat[ing] in a purely or primarily business capacity in connection with many corporate endeavors,

11   [which is why] the presumption that attaches to communications with outside counsel does not

12   extend to communications with in-house counsel." *ChevronTexaco*, 241 F. Supp. 2d at 1076.  For

13   example, Entry No. 95 is an Excel spreadsheet of a master product schedule. Ex. 5b, Entry No. 95;

14   Entry Nos. 168 and 169 are titled "President Trump – 09 August 2018 copy.pdf." *Id.*, Entry Nos.

15   168-169; and Entry No. 736 is titled, "2. Q1'19 Earnings Release Financials v4.docx" *Id.*, Entry No.

16   736.

17             Plaintiff is *not* challenging attachments that objectively appear to have a legal purpose (*e.g.*,

18   ones that are described as relating to litigation Q&A's), but the documents set forth in Ex. 5b do *not*

19   objectively appear to have a legal purpose.  Instead, they appear to have a business purpose, and

20   Defendants have certainly failed to *prove* these documents themselves are privileged.  Nevertheless,

21   if the Court wishes to allow Defendants what would be their *fifth* chance to get it right, Plaintiff

22   respectfully requests that the Court order Defendants to provide a competent privilege log and

23   declaration (from a witness with personal knowledge), setting forth, *for each attachment in Exhibit*

24   *5b*, the document's type, title, author(s), the area(s) of the law in which legal advice was sought or

25   rendered, the lawyer(s) whose advice was sought or rendered, what lawyer(s) requested what

26   specific information and whether that specific information had not previously been gathered or was

27   merely information Apple maintains in the ordinary course of its business.

28

1

## V.    CONCLUSION

2          For all the forgoing reasons, Plaintiff respectfully requests that the Court order Defendants to

3  immediately produce the documents set forth in Exhibits 2 and 5a, and to provide the additional

4  information and declaration(s) described above as to the documents set forth in Exhibits 1, 3, 4, and

5  5b.

6  DATED:  March 4, 2022                          Respectfully submitted,

7                                                 ROBBINS GELLER RUDMAN
                                                     & DOWD LLP
8                                                 SHAWN A. WILLIAMS
                                                  DANIEL J. PFEFFERBAUM
9                                                 KENNETH J. BLACK
                                                  HADIYA K. DESHMUKH
10
                                                         s/ Kenneth J. Black
11                                                     KENNETH J. BLACK

12                                                Post Montgomery Center
                                                  One Montgomery Street, Suite 1800
13                                                San Francisco, CA  94104
                                                  Telephone:  415/288-4545
14                                                415/288-4534 (fax)
                                                  shawnw@rgrdlaw.com
15                                                dpfefferbaum@rgrdlaw.com
                                                  kennyb@rgrdlaw.com
16                                                hdeshmukh@rgrdlaw.com

17                                                ROBBINS GELLER RUDMAN
                                                     & DOWD LLP
18                                                MARK SOLOMON
                                                  TOR GRONBORG
19                                                JASON A. FORGE
                                                  RAPHAELLA FRIEDMAN
20                                                655 West Broadway, Suite 1900
                                                  San Diego, CA  92101
21                                                Telephone:  619/231-1058
                                                  619/231-7423 (fax)
22                                                marks@rgrdlaw.com
                                                  torg@rgrdlaw.com
23                                                jforge@rgrdlaw.com
                                                  rfriedman@rgrdlaw.com
24
                                                  Lead Counsel for Lead Plaintiff
25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LABATON SUCHAROW
CAROL C. VILLEGAS
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/883-7524 (fax)
cvillegas@labaton.com

Counsel for Employees' Retirement System of the
State of Rhode Island

VANOVERBEKE, MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on March 4, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Kenneth J. Black
KENNETH J. BLACK

ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
Email:  kennyb@rgrdlaw.com

4863-7341-9026.v1

# Mailing Information for a Case 4:19-cv-02033-YGR IN RE APPLE INC. SECURITIES LITIGATION

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Tristan Allen**
  tallen@orrick.com

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **Kevin Michael Askew**
  kaskew@orrick.com

- **Kenneth Joseph Black**
  KennyB@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com

- **Frank H. Busch**
  busch@wvbrlaw.com,johnson@wvbrlaw.com,pallister@wvbrlaw.com

- **Hadiya Khan Deshmukh**
  hdeshmukh@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **William Joseph Foley**
  wfoley@orrick.com

- **Jason A. Forge**
  jforge@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christine M. Fox**
  cfox@labaton.com,ndonlon@labaton.com,lpina@labaton.com,electroniccasefilings@labaton.com,6312349420@filings.docketbird.com

- **Raphaella Friedman**
  rfriedman@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Nicomedes Sy Herrera**
  nherrera@herrerakennedy.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Austin Thomas Jackson**
  ajackson@structurelaw.com,cford@structurelaw.com

- **James Neil Kramer**
  jkramer@orrick.com,lpatts@orrick.com,mwatkins@orrick.com,vmorse@orrick.com,tallen@orrick.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,fgravenson@pomlaw.com,ipareja@pomlaw.com

- **Francis P. McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle Suzanne Myers**
  dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,dmyers@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,jalieberman@pomlaw.com,lobas@pomlaw.com,abarbosa@pomlaw.co

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,jgeorge@rgrdlaw.com,dpfefferbaumRGRD@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,jgeorge@ecf.courtdrive.com,sbloyd@rgrdlaw.c

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Craig Wallace Smith**
  notice@robbinsllp.com,noticerobbinsllp@ecf.courtdrive.com,csmith@robbinsllp.com

- **Mark Solomon**
  marks@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Alexander K. Talarides**
  atalarides@orrick.com,lpatts@orrick.com,casestream@ecf.courtdrive.com,tallen@orrick.com

- **Carol C. Villegas**
  cvillegas@labaton.com,ndonlon@labaton.com,lpina@labaton.com,5739893420@filings.docketbird.com,acoquin@labaton.com,electroniccasefiling@labaton.com,dsal

- **James Matthew Wagstaffe**
  wagstaffe@wvbrlaw.com,johnson@wvbrlaw.com

- **Steven Ray Wedeking , II**
  swedeking@robbinsllp.com,notice@robbinsllp.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,smorris@rgrdlaw.com,kennyb@rgrdlaw.com,e_file_sd@rgrdlaw.com,mtroncoso@rgrdlaw.com,smorris@ecf.cou

- **Ariel Brianna Winawer**
  awinawer@orrick.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)