Pages 1 - 14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**Before The Honorable YVONNE GONZALEZ ROGERS, Judge**

| | |
|---|---|
| In re Apple, Inc. ) | NO. C-19-2033 YGR |
| Securities Litigation, ) | |
| _____) | Monday, December 14, 2020 |
| | Oakland, California |
| | Case Management Conference |

**REPORTER'S TRANSCRIPT OF ZOOM PROCEEDINGS**

**APPEARANCES:**

| | |
|---|---|
| City of Roseville Employees' Retirement System: | **ROBBINS GELLER RUDMAN & DOWD LLP** <br> One Montgomery Street, Suite 1800 <br> San Francisco, California 94104 <br> By: **SHAWN A. WILLIAMS, ESQUIRE** |
| For Defendant Apple: | **ORRICK, HERRINGTON & SUTCLIFFE LLP** <br> 405 Howard Street <br> San Francisco, California 94105 <br> By: **ALEXANDER K. TALARIDES, ESQUIRE** <br> **ARIEL B. WINAWER, ESQUIRE** <br> **JAMES N. KRAMER, ESQUIRE** |
| For Defendant Employees' Retirement System of the State of Rhode Island: | **LABATON SUCHAROW, LLP** <br> 140 Broadway <br> New York, New York 10005 <br> By: **CAROL C. VILLEGAS, ESQUIRE** |
| Reported By: | Diane E. Skillman, CSR 4909, RPR, FCRR <br> Official Court Reporter |

TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

```
1    Monday, December 14, 2020                          2:00 p.m.
2                         P R O C E E D I N G S
3    o0= will go ahead and let the Court know we are ready on this
4                                case.
5                      (Pause in the proceedings.)
6             THE COURT:  Okay.  Good afternoon, everyone.
7             MR. KRAMER:  Good afternoon, Your Honor.
8             MR. WILLIAMS:  Good afternoon, Your Honor.
9             THE COURT:  We have a lot of cases on today.  And I
10   see we've got 46 on the platform, many of whom are just
11   listening at this point, and we will go through the cases in
12   case order as it comes up lowest numbered case to highest
13   numbered case.
14        I would ask that you all pay attention early on,
15   especially for those cases that are getting trial dates today.
16   A number of the things I say are going to be identical for all
17   of your cases.  When you get to the platform and I can see you
18   if you have questions you can ask me, but if I don't have to
19   repeat every single thing that I say as many times as I'm
20   going to have to say it today, I would appreciate it.  It will
21   make this go by more efficiently.
22        Okay.  In this case, you're not getting a trial date.  You
23   are just getting a schedule for purposes of class
24   certification.  So let's go ahead and call your case and then
25   appearances can be stated for the record.
```

1        Ms. Stone.
2            **THE CLERK:**  Calling Civil Action 19-2033 In re Apple
3    Inc. Securities Litigation.  And, counsel, please state your
4    appearances.
5            **MR. WILLIAMS:**  Good afternoon, Your Honor.  Shawn
6    Williams, Robbins, Geller, Rudman & Dowd on behalf of the lead
7    plaintiff.
8            **THE COURT:**  Good morning.
9            **MS. VILLEGAS:**  Good afternoon, Your Honor.  Carol
10   Villegas from Labaton Sucharow on behalf of Rhode Island
11   Employee Retirement System.
12           **THE COURT:**  All right.  Good afternoon.
13           **MR. KRAMER:**  Good afternoon, Your Honor.  James
14   Kramer, Ariel Winawer and Alex Talarides on behalf of
15   defendants.
16           **THE COURT:**  Okay.  Good afternoon.
17       All right.  So, in terms of your schedule, I thought that
18   it looked reasonable, but let's just go through it.
19       You are still set to make your Rule 26 disclosures on
20   December 18th?
21           **MR. WILLIAMS:**  Correct, Your Honor.
22           **MR. KRAMER:**  Yes, Your Honor.
23           **THE COURT:**  So that will be ordered.
24       In terms of the motion for class certification, May 5th
25   seems to be reasonable.  So I'll give you that date.

1    Now, Mr. Kramer, you're asking for two months to respond?
2    It's a little bit on the long side.
3            **MR. KRAMER:**  Yes, Your Honor.  I appreciate that.
4    The reason for that is we are hopeful that we can conduct the
5    depositions in person.  And based on the information available
6    in the vaccine that has come out I think today, we have some
7    optimism that if we go with June 30th, we will have that
8    opportunity do an in-person deposition.
9            **THE COURT:**  Okay.  So I had this come up recently,
10   and this is what I am willing to do.
11       I am willing to give you that time, but if something
12   happens and it hasn't rolled out as fast as you want, I'm not
13   going to extend it for you to take yet an additional
14   opportunity to try to get them live.
15       So we are on the same page on that, Mr. Kramer?
16           **MR. KRAMER:**  We are, Your Honor.  Actually that was
17   my case where you did that.  So I was aware of that.
18           **THE COURT:**  Okay.  Great.  Sorry I didn't remember.
19           **MR. KRAMER:**  It's okay.
20           **THE COURT:**  I am glad I am being consistent and that
21   you remember.
22       Okay.  Then six weeks for a reply.  Same issue,
23   Mr. Williams?
24           **MR. WILLIAMS:**  Yes, Your Honor.  I expect it to be
25   the same issue.

1       This is, you know, Mr. Kramer and I spent a lot of time
2   going through this schedule, and a lot of the discussion was,
3   in fact, around the possibility or hopeful vaccine that would
4   allow for in-person depositions to be taken.  That would
5   include, of course, if in fact there are experts associated
6   with the class certification motions on the plaintiffs' side
7   or on the defendants' side.
8       So, you know, we worked hard to see if we could compress
9   that schedule being reasonable, of course, so sort of the
10  unknown.  But, yes, the same issue.
11           **THE COURT:**  Okay.  So August 13th is fine.  Let's set
12  it for a hearing September 14th at 2:00 p.m.
13      I will tell you now, I have no idea what my life is going
14  to be like.  If we are doing jury trials, I could be in
15  back-to-back jury trials again because everything is -- I've
16  had so many that I have had to continue.  I'll try to keep
17  your hearing on for that date, but I make no guarantees.  At
18  least we have something that we are shooting for.
19      I did, by the way, while everybody is still listening and
20  it's not specific to this case, I just completed a
21  six-and-a-half day bench trial by Zoom.  It actually worked
22  pretty well.  Because it was a bench trial, you know, you
23  don't have to worry about all of the stuff that happens with
24  juries and the same kind of, I think, issues in terms of
25  personalities, and presentations don't apply in the same way.

**DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC**

1   Cross-examination is a little bit more difficult by Zoom, but
2   the nice thing for a judge when you are going a bench trial is
3   you can always interrupt and do your own examination.  And
4   that always works pretty well, at least from the Judge's
5   perspective.  Probably not from the lawyers' perspective.
6        The other thing is, from the Judge's perspective, you can
7   actually see the face of the witness.  When we're on the
8   bench, the witness is over to our right in most of our
9   courtrooms or over to our left, so you are only getting sort
10  of a side profile unless you have the witness turn and look at
11  you.  So that's kind of a difference that I thought was
12  useful.
13       The parties used a third party, I would say, kind of trial
14  manager.  We had daily downloads of documents for each witness
15  as they came on to the stand so you could click on those and
16  have the exhibits right there.
17       Anyway, so all of you litigators should think about that
18  if you have something that's coming up that could be a bench
19  trial, you might want to talk to your judges about it because
20  we are all going to be really backed up.  And so if you can
21  get some of these things done in the interim, that's going to
22  help with the load once we are all out of this.
23       Okay.  The rest of your dates -- so, completion of
24  document discovery, fact discovery deadlines, those are fine.
25       I guess I had a concern with the plaintiffs' proposal,

1   Mr. Williams, about the motion to amend the pleadings.  How
2   can -- this is after all the briefing on the class action.  So
3   why would I let you amend the pleadings without motion after?
4          **MR. WILLIAMS:**  So, to be clear, what we've proposed
5   is a date to the last day to file a motion to amend the
6   pleadings.  So, again, this is an issue that we talked about
7   pretty thoroughly with the other side.
8      Their proposal of March of 2021 is a bit early.  The
9   likelihood is that they will not even have produced their
10  initial slug of documents responsive to our requests by then,
11  and their proposal is, you know, similar to, you know, us
12  amending tomorrow or next week.  What we propose --
13         **THE COURT:**  What about May 5th?  By May 5th you
14  should know.
15         **MR. WILLIAMS:**  I hope so.  And if we have, you know,
16  documents by then and we've been through them and we have a
17  basis to move the Court for leave to amend, which we would
18  have to show good cause anyway, we would do that.
19     So we -- you know, have seen this issue before.  I thought
20  our proposal was reasonable.  But if May 5th seems more
21  reasonable to Your Honor, we will obviously comply with that.
22         **THE COURT:**  I think May 5th.  I don't want to see --
23  I don't want to see that motion after I've already had full
24  briefing on class cert.  So let's make that May 5th, 2021.
25         **MR. KRAMER:**  Your Honor, may I ask a question?

1           **THE COURT:**  You may.

2           **MR. KRAMER:**  Thank you.

3       Assuming Mr. Williams files a motion for leave to amend on

4    the 5th of May, does that mean he obviates the need to move

5    for class certification on the old complaint while we wait to

6    see if you grant leave to amend or does it mean he needs to

7    file this motion for class cert.  I am just trying to figure

8    out whether we are going to be, you know, obviously briefing a

9    motion for class certification on a complaint that may change,

10   which we would obviously --

11          **THE COURT:**  What I think would be useful, I mean, I

12   could envision, for instance, a situation where they have now

13   got their motion for class cert all figured out.  They file

14   that simultaneously with a motion for leave to amend.  And you

15   can either agree, you know, if the things match up.  If they

16   don't, then I think you all should probably talk about holding

17   off on the opposition until I respond.

18       But I think that the only reason to file the motion is for

19   it to be consistent with the anticipated motion for class

20   certification.  That's -- that would be the anticipation.

21       And if there's, you know, if it's one of these things

22   where everybody -- right?  Because leave to amend is going to

23   be -- is going to be freely granted.  I have to take a very

24   broad view of it.  It is very early in the case.  Perhaps,

25   Mr. Kramer, you just agree and then we move on with class

1  certification.
2      But if it means that I've got to resolve that issue, then
3  everything may have to be pushed back 35 days.
4          **MR. KRAMER:**  I understand, Your Honor.  I am
5  familiar, obviously, with the standards with leave being
6  freely given.  I'm trying to avoid a situation where I'm
7  working on my opposition --
8          **THE COURT:**  I agree.
9          **MR. KRAMER:**  -- and experts, and we get a complaint
10 that day.  That's what I am concerned about on May 5th.  Then
11 I have a new complaint that my expert hasn't seen before that
12 may impact our class cert opposition.
13         **THE COURT:**  If it was that significant, I think it
14 would impact it.  And so I think you probably need to agree on
15 a continuance of the briefing until I agree on a change or you
16 can all just say, yes, you will probably grant it, now I need
17 more time, send me a revised schedule.
18         **MR. KRAMER:**  Thank you, Your Honor.  That's helpful.
19         **THE COURT:**  As you may know, Mr. Kramer, I'm supposed
20 to be in trial with Apple in May.
21         **MR. KRAMER:**  Yes, Your Honor.
22         **THE COURT:**  So I will try to be getting to things,
23 but that will, you know, when you are in trial, that's
24 obviously the first thing on your plate.
25         **MR. KRAMER:**  We have a good working relationship with

```
 1    Mr. Williams, and we will try and work it out without Your
 2    Honor's involvement.
 3              THE COURT:  Okay.
 4       So under this schedule then, expert disclosures the 27th,
 5    rebuttals on June 10th.  Is there a reason why you have a time
 6    frame for the expert depositions as opposed to the last day?
 7              MR. WILLIAMS:  No.  It is really just an expectation
 8    that they would all take place within that time frame.
 9              THE COURT:  Okay.  That's fine.
10       So here's the next question I had with respect to your
11    schedule, and that is this issue about summary judgment.  So
12    you want to file your motion for summary judgment before you
13    have an answer on class certification, Mr. Kramer?
14              MR. KRAMER:  Well, Your Honor, I had assumed that we
15    would have -- I'm sorry.  Before we have an answer on class
16    certification?
17              THE COURT:  Right.  Oh, this is 2022.  Sorry.
18              MR. KRAMER:  Yes, Your Honor.  You had said -- you
19    scared me there.  You scheduled, I thought, class cert for
20    September 14th, 2021.
21              THE COURT:  That's my mistake.
22              MR. KRAMER:  That's fine.
23              THE COURT:  Okay.  July 29th, 2022 is fine.
24       Last day to file summary judgments, and this applies to
25    *Dauberts* as well.  I do them both at the same time.
```

```
 1    September 9th.
 2            MR. KRAMER:  Excuse me, Your Honor, for
 3    clarification.  You would like all the Daubert motions filed
 4    even if they don't relate to an issue in the motion for
 5    summary judgment, you want them all at the same time?
 6            THE COURT:  I do.  And here's the reason why:  Is
 7    that when I get into the case, I get into the case.  So having
 8    everything that's -- you know, that concerns that case in
 9    front of me at the same time is the most efficient way for me
10    to do my job.
11            MR. KRAMER:  Understood.
12            THE COURT:  So here is one of those issues that I was
13    talking about before.  This applies to everybody, so everybody
14    pay attention please.
15         Before you can file a summary judgment in my court, you
16    must have a pre-filing conference with me.  The requirements
17    for that conference are set forth in my standing order.
18    Whoever wants to bring a motion, files a three-page executive
19    summary telling me why you think you should win.  The other
20    sides responds in kind.  I get you on my calendar typically
21    within about a week on a Wednesday or Friday afternoon, and we
22    have a conversation about the motion.
23         I find these conferences to be very useful.  This process
24    is routinely used in the Southern District of New York.  It is
25    not routinely used here, which is why I spend some time on the
```

1   topic.
2       I like them because it gives me a preview of your motion.
3   Two, if, and in many cases it is, say employment cases, they
4   very frequently are they very heavily fact based.  And so
5   during that conference, I really push lawyers about the need
6   to bring these motions.  I think, you know, lots of times your
7   clients are asking you to do it, and so at the end of the day,
8   I can't stop you under Ninth Circuit law from bringing a
9   motion, but certainly I can warn you if I don't think it's a
10  good motion, to tell your client that when they get a
11  three-page order denying your motion, after they've spent
12  $80,000 on it, then at least they were forwarned at the
13  conference that that's what was going to happen.
14      The other thing that I find useful is that by the end of
15  the case frequently there are times when causes of action that
16  are brought by plaintiffs really didn't pan out.  As a
17  consequence, we just dispose of them there.  We don't deal
18  with them on the papers because there's really no need to.
19  There is no other mechanism in the federal rules that allows
20  us to do that efficiently, unlike the California state rules.
21      So that's -- that has to happen before you file.  If you
22  fail to comply with that, your motion will automatically be
23  denied without prejudice because I just require you to follow
24  my rules, and that's the rule.  So make sure that you have
25  that conference scheduled sometime in advance of filing.

1    All right.  The other thing that we would do, is we'll
2  come up with a schedule, and I don't need do it right now.
3  When I have cross-motions for summary judgment, I don't let
4  you file simultaneously.  Someone starts, the other side then
5  responds, opposes with their cross-motion, and then I get a
6  reply in support of a motion plus an opposition, and then
7  finally a reply.  That reduces the amount of paper that I have
8  to deal with and it makes sure you are not talking at cross
9  purposes.  So we'll do that at that conference as well.
10      Okay?  Any questions about the process?
11           **MR. WILLIAMS:**  No, Your Honor.
12           **MR. KRAMER:**  No, Your Honor.
13           **THE COURT:**  Okay.  So anything else that you need
14  today in terms of dates?
15           **MR. WILLIAMS:**  I don't think so, Your Honor.
16           **MR. KRAMER:**  No, Your Honor.
17           **THE COURT:**  Okay.
18      Then what I would appreciate is, whoever is in control of
19  this document, if you would send me a proposed form of order
20  with the dates which is basically your chart, and then you
21  will stop at September 9th, 2022 with the filing of that
22  motion, and I'll add in some of my own language, but that
23  would make it much quicker for me to get an order out for you.
24      Okay?
25           **MR. WILLIAMS:**  Will do, Your Honor.  Thank you very

```
 1   much.
 2           THE COURT:  Mr. Kramer, anything else?
 3           MR. KRAMER:  No, Your Honor.  Thank you for your time
 4   today.
 5           THE COURT:  Okay.  Everybody stay safe.  Happy
 6   Holidays.
 7           MR. KRAMER:  Happy Holidays.
 8           THE COURT:  We are adjourned on your case.  Thank
 9   you.
10              (Proceedings concluded at 2:20 p.m.)
11
12
13                     **CERTIFICATE OF REPORTER**
14           I, Diane E. Skillman, Official Reporter for the
15   United States Court, Northern District of California, hereby
16   certify that the foregoing is a correct transcript from the
17   record of proceedings in the above-entitled matter.
18
19                   *[Signature: Diane E. Skillman]*
20              DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
21                      Thursday, July 14, 2022
22
23
24
25
```

**DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC**