JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
MICHAEL D. TORPEY (SBN 79424)
mtorpey@orrick.com
ALEXANDER K. TALARIDES (SBN 268068)
atalarides@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 (415) 773-5700
Facsimile:    +1 (415) 773-5759

Attorneys for Defendants Apple Inc.,
Timothy Cook, and Luca Maestri

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Lead Case No. 4:19-cv-02033-YGR<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED CLASS ACTION COMPLAINT**<br><br><u>Hearing</u><br>Date:   None Set<br>Ctrm:  1, 14th Floor<br>Judge: Honorable Yvonne Gonzalez Rogers |

# **REDACTED VERSION**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................. 1

II. BACKGROUND .................................................................................................................. 3

    A.    Following Motion Practice, Plaintiff's Case is Narrowed to One Challenged Statement, and the Court Issues a Case Management Order Including a Deadline for Motions for Leave to Amend the Pleadings. .................. 3

    B.    The Parties Complete Extensive Fact and Expert Discovery Relating to the Single Challenged Statement. ................................................................................ 4

    C.    Plaintiff Seeks Leave to Re-Plead Allegations Previously Dismissed as a Matter of Law. ..................................................................................................... 6

III. ARGUMENT ....................................................................................................................... 6

    A.    Legal Standard ........................................................................................................ 6

    B.    Plaintiff Was Not Diligent in Seeking Leave to Amend and Thus Cannot Show Good Cause to Amend the Scheduling Order Under Rule 16. ..................... 7

    C.    Denial of Leave to Amend is Also Appropriate Under Rule 15. ........................... 9

        1.    Amendment at this late stage would prejudice Defendants. ..................... 10

        2.    Plaintiff unduly delayed in seeking leave to amend................................. 11

        3.    Plaintiff's proposed amendment would be futile. ..................................... 12

IV. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*In re Apple iPhone Antitrust Litig.*,
   2021 WL 5181862 (N.D. Cal. Nov. 8, 2021) ............................................................................... 7

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
   399 F.3d 651 (6th Cir. 2005) .................................................................................................... 14

*Coleman v. Quaker Oats Co.*,
   232 F.3d 1271 (9th Cir. 2000) ................................................................................................ 6, 9

*Cunha v. Hansen Nat. Corp.*,
   2010 WL 11469534 (C.D. Cal. Jul. 12, 2010) ......................................................................... 14

*Davis v. Paramo*,
   2018 WL 3532965 (S.D. Cal. Jul. 23, 2018) ............................................................................ 12

*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*,
   870 F.3d 978 (9th Cir. 2017) .................................................................................................. 1, 6

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ............................................................................................. 7, 10

*Experexchange, Inc. v. Doculex, Inc.*,
   2009 WL 3837275 (N.D. Cal. Nov. 16, 2009) ........................................................................... 8

*Fisher v. Acuson Corp.*,
   1995 WL 261439 (N.D. Cal. Apr. 26, 1995) ........................................................................... 15

*Foman v. Davis*,
   371 U.S. 178 (1962) ................................................................................................................... 6

*G.P.P., Inc. v. Guardian Prot. Prods.*,
   2016 WL 4041194 (E.D. Cal. Jul. 27, 2016) ............................................................................. 9

*In re Initial Pub. Offering Sec. Litig.*,
   241 F. Supp. 2d 281 (S.D.N.Y. 2003) ...................................................................................... 14

*Johnson v. Buckley*,
   356 F.3d 1067 (9th Cir. 2004) ................................................................................................... 7

*Johnson v. Hewlett–Packard Co.*,
   809 F. Supp. 2d 1114 (N.D. Cal. 2011), *aff'd*, 546 Fed. Appx. 613 (9th Cir. 2013) .............. 12

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ............................................................................................... 6, 12

*Lockheed Martin Corp. v. Network Sols., Inc.*,
   194 F.3d 980 (9th Cir. 1999) ................................................................................................ 10, 12

*M.H. v. Cty. of Alameda*,
   2012 WL 5835732 (N.D. Cal. Nov. 16, 2012) ............................................................................ 9

*Macomb Cty. Employees' Ret. Sys. v. Align Tech., Inc.*,
   2022 WL 2525306 (9th Cir. Jul. 7, 2022) .......................................................................... 13, 14

*Magtarget LLC v. Saldana*,
   2019 WL 1904205 (N.D. Cal. Apr. 29, 2019) ............................................................................ 8

*In re Mellanox Techs. Ltd. Sec. Litig.*,
   2014 WL 12650991 (N.D. Cal. Mar. 31, 2014) ........................................................................ 13

*Ordaz Gonzalez v. Cty. of Fresno*,
   2020 WL 2539287 (E.D. Cal. May 19, 2020) ........................................................................ 8, 9

*Parker v. Joe Lujan Enters., Inc.*,
   848 F.2d 118 (9th Cir. 1988) .................................................................................................... 12

*In re Pivotal Sec. Litig.*,
   2020 WL 4193384 (N.D. Cal. Jul. 21, 2020) ............................................................................ 15

*Sako v. Wells Fargo Bank, Nat'l Ass'n*,
   2015 WL 5022326 (S.D. Cal. Aug. 24, 2015) ............................................................................ 8

*San Francisco Baykeeper v. City of Sunnyvale*,
   2022 WL 1914313 (N.D. Cal. Jun. 3, 2022) ............................................................................... 8

*Scheller v. Nutanix, Inc.*,
   450 F. Supp. 3d 1024 (N.D. Cal. 2020) .................................................................................... 14

*Schwerdt v. Int'l Fidelity Ins. Co.*,
   28 Fed. App'x 715 (9th Cir. 2002) .......................................................................................... 2, 8

*In re Silver Wheaton Corp. Sec. Litig.*,
   2018 WL 1517130 (C.D. Cal. Mar. 26, 2018) ............................................................................ 8

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
   2022 WL 1078460 (S.D.N.Y. Apr. 11, 2022) ............................................................................. 8

*Solomon v. N. Am. Life and Cas. Ins. Co.*,
   151 F.3d 1132 (9th Cir. 1998) .................................................................................................. 10

*Zivkovic v. S. Cal. Edison Co.*,
   302 F.3d 1080 (9th Cir. 2002) .................................................................................................... 6

**Rules**

Fed. R. Civ. P.
  Rule 12 ................................................................................................................................ 10
  Rule 12(b)(6) ......................................................................................................................... 2
  Rule 15 ........................................................................................................................... *passim*
  Rule 16 ........................................................................................................................... *passim*
  Rule 16(b)(4) ..................................................................................................................... 1, 6

I.      **INTRODUCTION**

Almost two years ago, the Court dismissed Plaintiff's claim that Mr. Cook made a materially misleading statement when he said, less than one week after the iPhone XR landed on shelves, that Apple had "very little data" about iPhone XR sales.  The Court found, correctly, that this statement (the "Very Little Data Statement") "appears to be accurate," and was otherwise not actionable because it was "the type of vague, hedging, hyper-specific statement[] that [is] not likely to give investors an impression of a state of affairs one way or the other."  Dkt. No. 123 at 11.

Since that ruling, the parties have engaged in extensive litigation over Plaintiff's sole remaining misstatement claim, which is based on a comment by Mr. Cook relating to China (the "China Statement").  Apple produced hundreds of thousands of pages of documents, and numerous Apple senior executives sat for deposition.  Fact discovery closed in March 2022.  The parties briefed class certification and the Court certified a class.  Most recently, the parties conducted expansive expert discovery, involving nine expert witnesses.  By the time briefing on this motion is complete, Defendants will have filed a letter requesting a pre-motion conference in advance of filing their motion for summary judgment.  Throughout all of these proceedings, the case has involved only the China Statement.

Now, on the cusp of summary judgment briefing that will demonstrate the lack of a factual basis for the China Statement claim, Plaintiff seeks to resurrect its previously-dismissed allegations about the Very Little Data Statement.  Because the deadline set by the Court for amended pleadings has long since expired, Plaintiff must show, as a threshold matter, that there is good cause to modify the scheduling order under Federal Rule of Civil Procedure 16(b)(4).  The focus of the Rule 16 "good cause" analysis is "whether the requesting party was diligent in seeking the amendment."  *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 989 (9th Cir. 2017).  Plaintiff has not been diligent, and cannot show good cause.

Plaintiff contends that its Proposed Second Amended Complaint (the "PSAC") is based on facts Plaintiff learned in fact discovery, and further argues that "the diligence requirement of Rule 16 affords a party time to collect and comprehend the importance of facts and evidence."  Mot. at

17. But Rule 16 does not afford a party *unlimited* time to "comprehend" facts and evidence. Fact discovery closed more than four months ago, and the internal Apple documents cited in the PSAC were produced long before that. Of the 41 Apple documents relied upon by Plaintiff in the PSAC, more than *70%* had been produced by July 2021—*over a year ago*. More than *90%* had been produced by October 2021. *All* of the documents had been produced by February of this year. Declaration of James N. Kramer ("Kramer Decl.") ¶¶ 5-6.

Moreover, Plaintiff's claim that it needed several *more* months to "comprehend" the contents of these documents before seeking leave to amend is belied by the fact that Plaintiff served interrogatory responses in March 2022—more than four months ago—in which Plaintiff articulated many of the same facts it now seeks leave to reference in the PSAC, and specifically cited *each* of the 41 Apple documents Plaintiff now references in the PSAC. *Id.*, Ex. 2. Whatever "comprehending" Plaintiff needed to do had been done by March 2022 at the latest.

Instead of seeking to amend at the first reasonable opportunity, Plaintiff inexplicably chose to do nothing for *months*, waiting to drop its surprise motion for leave to amend until after the parties had conducted extensive expert discovery on the basis of the China Statement alone. Rule 16 requires far more to establish diligence and good cause. *See, e.g.*, *Schwerdt v. Int'l Fidelity Ins. Co.*, 28 Fed. App'x 715, 719 (9th Cir. 2002) (delay of one month after learning new facts demonstrated lack of diligence sufficient to support denial of leave to amend). Plaintiff's lack of diligence is reason enough for the Court to deny leave to amend under Rule 16.

Further, the Court should deny leave to amend under Federal Rule 15 for several important reasons. First, amendment would cause substantial prejudice to Defendants. While Plaintiff purports to disclaim any desire to conduct discovery on the proposed claim in the PSAC, Defendants, for their part, have proceeded through the case with the understanding that it involved only the China Statement. Plaintiff now wants to proceed on an entirely different claim, which, should it survive a Rule 12(b)(6) motion, would require, at minimum, that Defendants be permitted to file supplemental expert reports on the subject and take further discovery of Plaintiff's experts on this topic so Defendants are allowed an adequate opportunity to prepare a defense.

Second, Plaintiff's unexplained and extended delay in seeking leave to amend, waiting until many months after it undisputedly knew about the purported basis for its proposed amendment, provides further reason for the Court to deny leave to amend under Rule 15.

Finally, Plaintiff's proposed amendment would be futile. As noted above, the Court has already determined that the Very Little Data Statement was not actionable because it "appears to be accurate." Dkt. No. 123 at 11. There is no need to revisit that determination. The Very Little Data Statement *was* accurate. As the PSAC itself acknowledges, the iPhone XR was not available until October 26, 2018—less than one week before the Apple earnings call on which Mr. Cook made the Very Little Data Statement. *See* PSAC ¶ 9. The Court additionally found that the Very Little Data Statement was not actionable as a matter of law. Dkt. No. 123 at 11. No amount of discovery could change that.

Defendants respectfully request that the Court deny Plaintiff leave to amend.

## II. BACKGROUND

### A. Following Motion Practice, Plaintiff's Case is Narrowed to One Challenged Statement, and the Court Issues a Case Management Order Including a Deadline for Motions for Leave to Amend the Pleadings.

After the Court dismissed a substantial majority of the claims asserted in an earlier complaint (*see* Dkt. No. 110), Plaintiff filed a Revised Consolidated Amended Complaint ("RCAC") on June 23, 2020. Dkt. No. 114. In the RCAC, Plaintiff asserted claims based on both the China Statement and the Very Little Data Statement. *Id.*[1] Defendants moved to dismiss. On November 4, 2020, the Court issued an order granting Defendants' motion to dismiss with respect to the claims based on the Very Little Data Statement. Dkt. No. 123. The Court found that Plaintiff failed to plead falsity as to that statement, both because it "appears to be accurate," and because it was "the type of vague, hedging, hyper-specific statement[] that [is] not likely to give investors an impression of a state of affairs one way or the other." *Id.* at 11.

The Court denied Defendants' motion with respect to the China Statement, allowing

---

[1] Plaintiff also alleged in the RCAC that Mr. Cook's November 1, 2018 statement that the "XS and XS Max got off to a really great start" was a material misstatement. Dkt. No. 114 ¶¶ 57, 66. The Court later dismissed Plaintiff's claims to the extent they were premised on that statement. Dkt. No. 123 at 11.

1   Plaintiff's claim based on that statement to proceed to discovery.  *Id.* at 23.

2   The initial Case Management Conference took place on December 14, 2020.  While the parties had largely reached agreement on a proposed case schedule, they disagreed on the deadline for motions for leave to amend, with Plaintiff proposing a deadline of September 17, 2021, and Defendants suggesting an earlier date.  *See* Dkt. No. 126 at 10.  At the conference, the Court expressed that Plaintiff's proposed deadline was too late, and instead set an earlier deadline of May 5, 2021 for motions for leave to file amended pleadings, making clear that any motions for leave to amend should be promptly filed.  *See* Kramer Decl., Ex. 1 (12/14/20 CMC Hrg. Tr.) at 7:23-24 ("I don't want to see that motion [for leave to amend] after I've already had full briefing on class cert.  So let's make that May 5th, 2021.").  The Court then issued a Case Management Order confirming the May 5, 2021 deadline for motions for leave to amend.  Dkt. No. 128.  The Court also set a deadline of January 14, 2022 for substantial completion of document production, *see id.*, suggesting the likelihood that the parties would continue producing documents well after the scheduling order deadline for seeking leave to amend.  *Id.*  The Court set a fact discovery cutoff of March 16, 2022.  *Id.*

### B. The Parties Complete Extensive Fact and Expert Discovery Relating to the Single Challenged Statement.

The parties proceeded to conduct extensive fact discovery relating to the China Statement.  Apple produced hundreds of thousands of pages of documents, with the substantial majority of those documents produced to Plaintiff by October 2021.  Kramer Decl. ¶ 4.  Mr. Cook, Mr. Maestri, and numerous other senior Apple executives were deposed before the fact discovery cutoff in March 2022.  *Id.* ¶ 7.

While Plaintiff correctly states that Apple produced a number of documents after October 24, 2021, and a smaller number after January 13, 2022, *see* Mot. at 5, the statistics cited by Plaintiff are entirely irrelevant to this motion.  Of the 41 Apple documents that Plaintiff cites in the PSAC in connection with the Very Little Data Statement, 90% of them were produced on or before October 25, 2021.  Only four of those 41 documents were produced after October 2021—

two of them in January 2022 and two in February 2022. Kramer Decl. ¶¶ 5-6.[2] In any event, the Court already has addressed Plaintiff's unsubstantiated argument that Defendants' production was "slow and incomplete," having previously held that Plaintiff had not shown good cause for its requested extension of the discovery cutoff given Plaintiff's failure to dispute that "defendants produced 'virtually all' of their documents by the agreed-upon date for substantial completion of document discovery." Dkt. No. 231.

Fact discovery closed, as scheduled, on March 16, 2022.[3] On the last day of fact discovery, Plaintiff served responses to Defendants' contention interrogatories. Kramer Decl., Ex. 2. In response to an interrogatory asking Plaintiff to identify all facts in support of its allegation that Apple made misleading statements, Plaintiff stated, among other things, that Defendants "claimed that . . . as of November 1, 2018, with respect to the iPhone XR, Defendants had too little information to tell what was happening with early demand for the product." *Id.* at 5. Plaintiff's interrogatory responses specifically identified, as documents supporting the responses, each of the 41 Apple documents that are now cited by Plaintiff in the PSAC. Kramer Decl., Ex. 2. Plaintiff did not, however, indicate at that time that it planned to seek leave to amend its complaint to re-assert the claim based on the Very Little Data Statement.

The parties then conducted extensive expert discovery relating to the China Statement. On April 27, 2022, Defendants served opening reports from four expert witnesses, and Plaintiff served two opening reports. The parties served rebuttal reports on June 10, 2022—five rebuttal reports from Defendants, and one from Plaintiff. All told, the parties designated a total of nine separate merits-phase experts. Kramer Decl. ¶ 9. Depositions of Plaintiff's experts have taken place over the last two weeks.[4] With the exception of one remaining deposition scheduled to take

---

[2] The four documents produced in January and February 2022 are those referenced in paragraphs 89, 110, 113, and 126 of the PSAC. Kramer Decl. ¶ 5. Even if Plaintiff could argue that these four documents are the linchpin of the PSAC—they are not—Plaintiff does not explain why it needed five months to analyze four documents before moving for leave to amend.

[3] Plaintiff references an ongoing discovery dispute before Magistrate Judge Spero concerning Defendants' assertions of privilege. Mot. at 5 n.6. Fewer than 250 documents remain in dispute. Kramer Decl. ¶ 8. Plaintiff does not argue that any of those documents may be relevant to Plaintiff's motion for leave to amend.

[4] After requesting, and then confirming, deposition dates for all six of Defendants' expert witnesses, Plaintiff unilaterally cancelled each deposition without explanation, waiting until the

place on July 27, 2022, expert discovery is complete.  *Id.*

### C. Plaintiff Seeks Leave to Re-Plead Allegations Previously Dismissed as a Matter of Law.

On July 5, 2022, nearly a month after the parties exchanged rebuttal expert reports, Plaintiff filed its motion for leave to amend, attaching the PSAC.  Dkt. No. 250.  The PSAC would assert a claim that, just like the claim previously dismissed by the Court, is premised on the Very Little Data Statement.  Dkt. No. 123.

## III. ARGUMENT

### A. Legal Standard

"Where, as here, a party seeks leave to amend after the deadline set in the scheduling order has passed, the party's request is judged under Federal Rule of Civil Procedure ('FRCP') 16's 'good cause' standard rather than the 'liberal amendment policy' of FRCP 15(a)."  *DRK Photo*, 870 F.3d at 989.  In the Ninth Circuit, "the central inquiry under Fed. R. Civ. P. 16(b)(4) is whether the requesting party was diligent in seeking the amendment."  *Id.*  The party seeking leave to amend bears the burden to demonstrate its diligence in seeking leave to amend.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609-10 (9th Cir. 1992).  If the party seeking leave to amend fails to show diligence under Rule 16, the inquiry ends and leave to amend should be denied.  *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) ("Because [plaintiffs] have failed to show diligence, 'the inquiry should end'").

If the party seeking leave to amend shows diligence under Rule 16, courts then proceed to weigh the factors relevant to a motion seeking leave to amend under Rule 15, including prejudice to the opposing party, undue delay, and futility of the amendment.  *See Foman v. Davis*, 371 U.S.

---

business day before each deposition (in one case, two days before) to do so.  Kramer Decl. ¶ 10. Defendants can only surmise that Plaintiff intends to argue that, because Plaintiff has not deposed Defendants' experts, Defendants would not be prejudiced by a re-opening of expert discovery. The Court should discount any such argument, which would not account for the prejudice resulting from Defendants needing to prepare entirely new expert opinions on an entirely new claim—a significant burden that will fall on Defendants irrespective of whether their experts are ultimately deposed.

178, 182 (1962); *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).  Of the various Rule 15 factors, "the consideration of prejudice to the opposing party [] carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

        **B.**        **Plaintiff Was Not Diligent in Seeking Leave to Amend and Thus Cannot Show Good Cause to Amend the Scheduling Order Under Rule 16.**

Plaintiff contends that amendment is warranted because "evidence obtained since the November 4, 2020 Order" purportedly proves that the Very Little Data Statement was false.  *See* Mot. at 2.  But the relevant inquiry is not whether Plaintiff has obtained documents that it believes support its proposed amendment, but rather whether Plaintiff has shown good cause to amend the scheduling order.  Plaintiff has not done so.  As shown above, the "evidence" underlying the PSAC has been in Plaintiff's possession for many months, and in most cases since *last July*, a full year ago.  *See supra* at 4-5.  The PSAC also cites deposition testimony from Mr. Cook and Mr. Maestri, but those depositions were completed in February 2022, five months ago.  Kramer Decl. ¶ 7.  And whatever Plaintiff now says about needing time to "collect and comprehend" evidence in support of the PSAC, *see* Mot. at 17, Plaintiff's March 16, 2022 interrogatory responses, where Plaintiff articulated allegations relating to the Very Little Data Statement and cited to each of the 41 Apple documents that Plaintiff references in the PSAC, is unassailable proof that Plaintiff had done all the "comprehending" it needed to do by March 2022 at the latest.

Nor is it clear that Plaintiff needed to do much "comprehending" before seeking leave to file the PSAC.  This is not a case where Plaintiff needed time to review a voluminous factual record in order to ascertain *new* theories.  To the contrary, the theory that Plaintiff is now seeking to resurrect has been known to Plaintiff for more than two years.  Indeed, Plaintiff previously alleged a claim based on the Very Little Data Statement before the Court dismissed it.

Beyond the notion that it needed more time to "comprehend" the evidence, Plaintiff offers no explanation for its decision to wait until *after* the parties had completed extensive fact and expert discovery on the single remaining misstatement claim before seeking leave to amend.  That is reason enough to conclude that Plaintiff has not demonstrated the diligence required by Rule 16.  *See In re Apple iPhone Antitrust Litig.*, 2021 WL 5181862, at *4 (N.D. Cal. Nov. 8, 2021)

(finding lack of diligence under Rule 16 where party seeking leave to amend "utterly failed to explain their delay").

Courts including the Ninth Circuit have held that far shorter delays than Plaintiff's here are sufficient to demonstrate a lack of diligence under Rule 16, requiring denial of leave to amend. *See Schwerdt*, 28 Fed. App'x at 720 (where plaintiff waited three months to seek leave to amend after learning of the basis for the amendment, the court had "no difficulty in concluding that [plaintiff] did not diligently seek amendment of his complaint," and upheld denial of leave to amend); *Sako v. Wells Fargo Bank, Nat'l Ass'n*, 2015 WL 5022326, at *2 (S.D. Cal. Aug. 24, 2015) (denying motion for leave to amend under Rule 16 where plaintiff waited two months after discovering new facts to seek leave to amend); *Experexchange, Inc. v. Doculex, Inc.*, 2009 WL 3837275, at *29 (N.D. Cal. Nov. 16, 2009) (delay of two months after discovering new facts constituted lack of diligence requiring denial of leave to amend under Rule 16); *Ordaz Gonzalez v. Cty. of Fresno*, 2020 WL 2539287, at *3 (E.D. Cal. May 19, 2020) (unexplained two-month delay in seeking leave to amend demonstrated lack of diligence requiring denial of leave to amend under Rule 16).

Plaintiff's cited cases, far from justifying Plaintiff's extended delay, are inapposite and only provide further reason to conclude that Plaintiff has failed to demonstrate diligence. For example, in *San Francisco Baykeeper v. City of Sunnyvale*, 2022 WL 1914313 (N.D. Cal. Jun. 3, 2022), the plaintiff sought leave to amend "*within weeks* of discovering facts" supporting the proposed amendment. *Id.* at *2 (emphasis added); *see also Paradigm BioDevices, Inc.*, 2013 WL 1830416, at *4 (S.D.N.Y. May 1, 2013) (plaintiff did not discover relevant facts "until the end of discovery" and promptly sought leave to amend "approximately one month after the final deposition upon which its . . . allegations rely"); *In re Silver Wheaton Corp. Sec. Litig.*, 2018 WL 1517130, at *2-*4 (C.D. Cal. Mar. 26, 2018) (plaintiffs sought leave to amend within a month after production of documents allowing plaintiffs to plead allegations sufficient to state a claim); *Magtarget LLC v. Saldana*, 2019 WL 1904205, at *2 (N.D. Cal. Apr. 29, 2019) (plaintiffs sought leave to amend within two months of learning facts supporting amendment); *Sjunde AP-Fonden v. Gen. Elec. Co.*, 2022 WL 1078460, at *6 (S.D.N.Y. Apr. 11, 2022) (amendment relied on

documents produced less than five months before plaintiffs sought amendment, and plaintiffs sought leave to amend prior to close of discovery); *M.H. v. Cty. of Alameda*, 2012 WL 5835732, at *3 (N.D. Cal. Nov. 16, 2012) (plaintiff sought leave to amend within two months of learning facts supporting amendment).

Finally, Plaintiff argues that it was sufficiently diligent because "as of the May 5, 2021 deadline to amend the pleadings set by the Court, Plaintiff had not received the necessary discovery to evaluate the facts and to seek leave to amend the pleadings." Mot. at 16. But the passage of the May 5, 2021 deadline did not give Plaintiff *carte blanche* to then sit on its hands and seek leave to amend only when it pleased. "In general, the focus of the diligence inquiry under Rule 16 is the time between the moving party's discovery of new facts and its asking leave of the court to file an amended pleading." *G.P.P., Inc. v. Guardian Prot. Prods.*, 2016 WL 4041194, at *5 (E.D. Cal. Jul. 27, 2016). Here, Plaintiff discovered the allegedly relevant new facts beginning with Apple's document production in the summer of 2021. But Plaintiff did not seek leave to amend in July 2021, when Apple had produced 70% of the documents that Plaintiff ultimately referenced in the PSAC. It did not seek leave to amend in October 2021, when Apple had produced 90% of the documents that Plaintiff later included in the PSAC. It did not seek leave to amend in February 2022, after it deposed Mr. Cook and Mr. Maestri. And perhaps most inexplicably, it did not seek leave to amend even in March 2022, after it had served interrogatory responses articulating the very same allegations, and citing the very same documents, that it now seeks to advance in the PSAC.

Plaintiff was not diligent, and has not shown good cause under Rule 16. "The inquiry should end" and the Court should deny leave to amend without reaching the Rule 15 factors. *Coleman*, 232 F.3d 1271, 1295 (9th Cir. 2000); *see also Ordaz Gonzalez*, 2020 WL 2539287, at *3 ("Because the Rule 16 standard is not satisfied, the Court does not reach the Rule 15 analysis.").

### C. Denial of Leave to Amend is Also Appropriate Under Rule 15.

Although the Court need not consider the Rule 15 factors in light of Plaintiff's lack of diligence under Rule 16, consideration of the Rule 15 factors—specifically, prejudice to the

opposing party, undue delay, and futility—would only further support denial of leave to amend. Of the Rule 15 factors, "the consideration of prejudice to the opposing party [] carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052.

### 1. Amendment at this late stage would prejudice Defendants.

Defendants would be substantially prejudiced by the addition of an entirely different misstatement theory at this advanced stage of the litigation. As discussed above, the parties have already completed extensive fact and expert discovery, all focused on the China Statement. Summary judgment briefing is imminent, with pre-motion letters due on July 29, 2022 and opening briefs due on September 9, 2022. If leave to amend is granted, and if the PSAC were to survive a Rule 12 motion, then at a minimum Defendants would need to supplement their expert reports and take further discovery of Plaintiff's experts, at great expense and at the risk of significant delay to summary judgment briefing and other pretrial proceedings.

"Prejudice is the touchstone of the inquiry under Rule 15(a)." *Eminence Capital*, 316 F.3d at 1052. "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999); *see also Solomon v. N. Am. Life and Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (upholding denial of motion for leave to amend that was made "on the eve of the discovery deadline . . . [and] would have required reopening discovery, thus delaying the proceedings").

Plaintiff's blithe assertion that "permitting filing of the PSAC will not require additional discovery," Mot. at 21, should not be taken seriously. The claim based on the Very Little Data Statement was dismissed before discovery began. Defendants conducted discovery with the understanding that this case was about one alleged misstatement—the China Statement. While Plaintiff has forsworn any desire to take additional discovery relating to the Very Little Data Statement, *see* Mot. at 22, Defendants should be permitted to make their own decision about the necessity of further discovery, including the necessity of reviewing and producing additional internal Apple documents that may support Apple's defenses and were not previously produced because they were not relevant to the China Statement.

1    Further, expert discovery would need to be reopened and effectively begin again to permit
2    Defendants to present expert testimony concerning issues specific to the Very Little Data
3    Statement.  For example, Defendants' economist expert, who has opined on issues relevant to loss
4    causation, has to date focused on the China Statement, and would need to offer additional
5    opinions relating to the Very Little Data Statement.  Defendants have also provided expert reports
6    from two experts who offer opinions relating to the market's reaction (or lack thereof) to the
7    China Statement.  Those experts would be asked to consider similar opinions concerning the Very
8    Little Data Statement.  Defendants' other experts may need to offer additional opinions as well,
9    and Defendants may need to retain entirely new experts to offer opinions relating to issues
10   specific to the Very Little Data Statement.  Defendants would need time to make those
11   determinations, and then to proceed with related expert discovery.[5]

12   In addition, by the time briefing on this motion is complete, Defendants will have already
13   filed a request for a pre-motion conference in connection with their anticipated motion for
14   summary judgment on the China Statement claim, and will have already put substantial effort into
15   the preparation of their summary judgment motion and supporting evidence.  If leave to amend is
16   granted, the filing and resolution of Defendants' summary judgment motion will be put off for
17   many months, or longer.  That delay, coupled with the delay inherent in re-opening discovery,
18   would cause prejudice sufficient to justify denial of Plaintiff's motion for leave to amend.

**2.    Plaintiff unduly delayed in seeking leave to amend.**

Plaintiff's unexplained delay in seeking leave to amend, discussed at length above, also constitutes undue delay, supporting denial of leave to amend under Rule 15.  "Although delay is not a dispositive factor in the amendment analysis, it is relevant . . . especially when no reason is

---

[5] Plaintiff's arguments that certain of Defendants' experts make mention of Apple's revenue guidance (Mot. at 19-20), or that Defendants' class certification opposition made reference to the dismissed statement about iPhone XS and iPhone XS Max sales being off to a "great start" (Mot. at 23), or that Defendants have shown "significant familiarity" with the Very Little Data Statement (*id.*), are all beside the point.  The Very Little Data Statement has been out of the case since before discovery began.  Plaintiff waited until after discovery ended to seek leave to reinsert the Very Little Data Statement into the case.  If leave to amend is granted, Defendants should be permitted to take discovery on, and to present expert testimony about, this new claim on which Plaintiff is seeking to recover billions of dollars.

given for the delay[.]" *Lockheed Martin Corp.*, 194 F.3d at 986 (internal citations omitted).

"A party unduly delays seeking amendment by failing to seek amendment reasonably promptly after it 'knew or should have known' that amendment was called for." *Johnson v. Hewlett–Packard Co.*, 809 F. Supp. 2d 1114, 1120 (N.D. Cal. 2011), *aff'd*, 546 Fed. Appx. 613, (9th Cir. 2013), quoting *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). In *Johnson*, the court found that the plaintiff unduly delayed by failing to seek leave to amend until two months after the "absolute latest" time when the plaintiff knew or should have known of the need for amendment. 809 F. Supp. 2d at 1121. Here, by contrast, Plaintiff should have known of the purported need for amendment as early as July 2021, by which point Defendants had produced over 70% of the documents that Plaintiff relies upon for the new allegations in the PSAC. Kramer Decl. ¶ 6. And at the absolute latest, Plaintiff plainly knew about the purported need for amendment by March 2022, when it served interrogatory responses articulating the theory it now seeks to advance and pointing to the exact documents it now seeks to cite in the PSAC. *Id.*, Ex. 2. That was four months ago. The Ninth Circuit has held that a delay of as little as *five weeks* between counsel's discovery of new facts and the filing of a motion for leave to amend can constitute undue delay sufficient to uphold a trial court's denial of leave to amend. *See Parker v. Joe Lujan Enters., Inc.*, 848 F.2d 118, 120 (9th Cir. 1988); *see also Davis v. Paramo*, 2018 WL 3532965, at *4 (S.D. Cal. Jul. 23, 2018) (finding that plaintiff unduly delayed by waiting 5 ½ months after ascertaining relevant facts before moving for leave to amend).

Plaintiff's undue delay in seeking leave to amend, coupled with the prejudice that would result from amendment, provides ample reason for the Court to deny leave to amend under Rule 15.

### 3. Plaintiff's proposed amendment would be futile.

Leave to amend also should be denied under Rule 15 because the proposed amendment would be futile. When Mr. Cook made the Very Little Data Statement on November 1, 2018, the iPhone XR had been on store shelves for less than a week. This was known to the market. Indeed, Mr. Cook correctly said that "the XR, we've only got out there for, I guess, 5 – 5 days or

so at this point." PSAC ¶ 2. Plaintiff's proposed new claim hinges on its allegation that Mr. Cook's statement that "we have very, very little data there" was nonetheless materially misleading. *Id.* But the Court already once dismissed Plaintiff's claim based on this statement, finding that: (1) it "appears to be accurate," and (2) it was incapable of objective verification. Dkt. No. 123 at 11. No amount of discovery could change that determination.

    First, the Court's previous finding that "[Mr.] Cook's statement that he has 'very, very little data' regarding the iPhone XR launch appears to be accurate," *id.*, continues to be true. As the chart in the PSAC demonstrates, the six days that the iPhone XR had been available as of November 1, 2018 was far less than the 41 days that the iPhone XS and iPhone XS Max had been available, the 363 days that the iPhone X had been available, and the 405 days that the iPhone 8 and iPhone 8 Plus had been available. *See* PSAC ¶ 9. In other words, Apple still had "very, very little data" available about the sales performance of the iPhone XR.[6] The Very Little Data Statement was accurate.

    Second, the Court's previous ruling that the Very Little Data Statement is "the type of vague, hedging, hyper-specific statement[] that [is] not likely to give investors an impression of a state of affairs one way or the other," Dkt. No. 123 at 11, was correct and should not be revisited. This is because it is "an opinion that is not capable of objective verification." *Macomb Cty. Employees' Ret. Sys. v. Align Tech., Inc.*, __ F.4th __, 2022 WL 2525306, at *3 (9th Cir. Jul. 7, 2022) (internal quotation marks omitted); *see also In re Mellanox Techs. Ltd. Sec. Litig.*, 2014 WL 12650991, at *7 (N.D. Cal. Mar. 31, 2014) (statements found to be unactionable because they "employ terms that are not measurable . . . [or] capable of objective verification and lack a standard against which a reasonable investor could expect them to be pegged.") (citations and

---

[6] Plaintiff's own allegations further emphasize the unique nature of the iPhone XR launch, which made the very limited data available about its performance even more difficult to judge. *See, e.g.*, PSAC ¶ 105 ███████████████████████████████████████████████████████████ (emphasis added); *id.* ███████████████████████████████████████████████████████████████████████████████ (emphasis added).

internal quotation marks omitted); *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 671 (6th Cir. 2005) (same where the statements were "too squishy, too untethered to anything measurable, to communicate anything that a reasonable person would deem important to a securities investment decision") (citation omitted). The Very Little Data Statement was exactly the type of vague and indeterminate comment that is unactionable under this standard. The nature of the "data" that Mr. Cook referred to is not entirely clear from the statement itself. Nor did Mr. Cook reference any objective standard of measurement against which the "very little" descriptor could be measured. Nothing in the Very Little Data Statement was "capable of objective verification," *Align Tech.*, 2022 WL 2525306, at *3, and therefore the Court appropriately dismissed claims regarding it. *See Scheller v. Nutanix, Inc.*, 450 F. Supp. 3d 1024, 1036 (N.D. Cal. 2020) (corporation's statements that it was "big on hiring," and that "a lot of hiring" was going on, were unactionable); *Cunha v. Hansen Nat. Corp.*, 2010 WL 11469534 at *11 (C.D. Cal. Jul. 12, 2010) (same as to the statement "we do believe that Rumba has got a lot of legs").

Further, unlike "general statements of optimism" which "may form a basis for a securities fraud claim when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly," Dkt. No. 123 at 10 (citing *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017)), the "Very Little Data" Statement was hardly a "feel good" statement that could have left reasonable investors with an impression of optimism. This was an immaterial and neutral observation—in Mr. Cook's opinion, there was very little data available on the iPhone XR's performance, which had just launched *less than a week prior*. While Plaintiff attempts to twist the Very Little Data Statement into a statement that "nothing should be inferred from the disappointing guidance about [the iPhone XR's] performance to date," *see* PSAC ¶ 66, Mr. Cook said nothing of the sort.

It is well-established that "not every securities fraud claim that is dismissed lends itself to repleading," and, specifically, "where a claim is dismissed as a matter of law because it fails to state a claim, repleading would be 'futile.'" *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 397 (S.D.N.Y. 2003). "Unlike an attack for failure to plead fraud with particularity, which can be cured by amendment, *an attack based on immateriality cannot be cured*, as the

statements themselves are inactionable for reasons other than that they are false or misleading." *Fisher v. Acuson Corp.*, 1995 WL 261439, at *3 (N.D. Cal. Apr. 26, 1995) (emphasis added); *see also In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *8 (N.D. Cal. Jul. 21, 2020) (finding that "amendment as to some of the challenged statements (e.g., corporate puffery) would be futile"). Plaintiff's proposed amendment would be futile.

### IV. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion.

Dated: July 26, 2022

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ James N. Kramer*
JAMES N. KRAMER

Attorneys for Defendants Apple Inc., Timothy D. Cook, and Luca Maestri