JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
MICHAEL D. TORPEY (SBN 79424)
mtorpey@orrick.com
ALEXANDER K. TALARIDES (SBN 268068)
atalarides@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:      +1 (415) 773-5700
Facsimile:      +1 (415) 773-5759

Attorneys for Defendants Apple Inc.,
Timothy Cook, and Luca Maestri

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION<br><br>_____<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Lead Case No. 4:19-cv-02033-YGR<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED CLASS ACTION COMPLAINT**<br><br><u>Hearing</u><br>Date:   None Set<br>Ctrm:  1, 14th Floor<br>Judge:  Honorable Yvonne Gonzalez Rogers |

# <u>REDACTED VERSION</u>

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     BACKGROUND ............................................................................................................ 3

        A.      Following Motion Practice, Plaintiff's Case is Narrowed to One
                Challenged Statement, and the Court Issues a Case Management Order
                Including a Deadline for Motions for Leave to Amend the Pleadings. ................. 3

        B.      The Parties Complete Extensive Fact and Expert Discovery Relating to the
                Single Challenged Statement. ................................................................................ 4

        C.      Plaintiff Seeks Leave to Re-Plead Allegations Previously Dismissed as a
                Matter of Law. ....................................................................................................... 6

III.    ARGUMENT ................................................................................................................. 6

        A.      Legal Standard ....................................................................................................... 6

        B.      Plaintiff Was Not Diligent in Seeking Leave to Amend and Thus Cannot
                Show Good Cause to Amend the Scheduling Order Under Rule 16. ..................... 7

        C.      Denial of Leave to Amend is Also Appropriate Under Rule 15. ............................ 9

                1.      Amendment at this late stage would prejudice Defendants. ..................... 10

                2.      Plaintiff unduly delayed in seeking leave to amend................................. 11

                3.      Plaintiff's proposed amendment would be futile. .................................... 12

IV.     CONCLUSION ............................................................................................................. 15

1
2

# <u>TABLE OF AUTHORITIES</u>

3

**Cases**                                                                                              **Page(s)**

4

*In re Apple iPhone Antitrust Litig.*,
    2021 WL 5181862 (N.D. Cal. Nov. 8, 2021)............................................................................ 7

5

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
    399 F.3d 651 (6th Cir. 2005)................................................................................................ 14

6
7

*Coleman v. Quaker Oats Co.*,
    232 F.3d 1271 (9th Cir. 2000)........................................................................................... 6, 9

8

*Cunha v. Hansen Nat. Corp.*,
    2010 WL 11469534 (C.D. Cal. Jul. 12, 2010) .................................................................. 14

9
10

*Davis v. Paramo*,
    2018 WL 3532965 (S.D. Cal. Jul. 23, 2018) ..................................................................... 12

11
12

*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*,
    870 F.3d 978 (9th Cir. 2017)............................................................................................ 1, 6

13

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003).......................................................................................... 7, 10

14
15

*Experexchange, Inc. v. Doculex, Inc.*,
    2009 WL 3837275 (N.D. Cal. Nov. 16, 2009).................................................................... 8

16
17

*Fisher v. Acuson Corp.*,
    1995 WL 261439 (N.D. Cal. Apr. 26, 1995) .................................................................... 15

18

*Foman v. Davis*,
    371 U.S. 178 (1962).............................................................................................................. 6

19
20

*G.P.P., Inc. v. Guardian Prot. Prods.*,
    2016 WL 4041194 (E.D. Cal. Jul. 27, 2016) ..................................................................... 9

21
22

*In re Initial Pub. Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003)............................................................................... 14

23
24

*Johnson v. Buckley*,
    356 F.3d 1067 (9th Cir. 2004)............................................................................................. 7

25

*Johnson v. Hewlett–Packard Co.*,
    809 F. Supp. 2d 1114 (N.D. Cal. 2011), *aff'd*, 546 Fed. Appx. 613 (9th Cir. 2013) .............. 12

26
27

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604 (9th Cir. 1992)......................................................................................... 6, 12

28

*Lockheed Martin Corp. v. Network Sols., Inc.*,
    194 F.3d 980 (9th Cir. 1999)............................................................................ 10, 12

*M.H. v. Cty. of Alameda*,
    2012 WL 5835732 (N.D. Cal. Nov. 16, 2012)................................................. 9

*Macomb Cty. Employees' Ret. Sys. v. Align Tech., Inc.*,
    2022 WL 2525306 (9th Cir. Jul. 7, 2022) ...................................................... 13, 14

*Magtarget LLC v. Saldana*,
    2019 WL 1904205 (N.D. Cal. Apr. 29, 2019) ................................................ 8

*In re Mellanox Techs. Ltd. Sec. Litig.*,
    2014 WL 12650991 (N.D. Cal. Mar. 31, 2014)............................................. 13

*Ordaz Gonzalez v. Cty. of Fresno*,
    2020 WL 2539287 (E.D. Cal. May 19, 2020)................................................ 8, 9

*Parker v. Joe Lujan Enters., Inc.*,
    848 F.2d 118 (9th Cir. 1988).......................................................................... 12

*In re Pivotal Sec. Litig.*,
    2020 WL 4193384 (N.D. Cal. Jul. 21, 2020)................................................. 15

*Sako v. Wells Fargo Bank, Nat'l Ass'n*,
    2015 WL 5022326 (S.D. Cal. Aug. 24, 2015) ............................................... 8

*San Francisco Baykeeper v. City of Sunnyvale*,
    2022 WL 1914313 (N.D. Cal. Jun. 3, 2022) .................................................. 8

*Scheller v. Nutanix, Inc.*,
    450 F. Supp. 3d 1024 (N.D. Cal. 2020) ........................................................ 14

*Schwerdt v. Int'l Fidelity Ins. Co.*,
    28 Fed. App'x 715 (9th Cir. 2002)................................................................. 2, 8

*In re Silver Wheaton Corp. Sec. Litig.*,
    2018 WL 1517130 (C.D. Cal. Mar. 26, 2018) .............................................. 8

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
    2022 WL 1078460 (S.D.N.Y. Apr. 11, 2022)................................................ 8

*Solomon v. N. Am. Life and Cas. Ins. Co.*,
    151 F.3d 1132 (9th Cir. 1998)........................................................................ 10

*Zivkovic v. S. Cal. Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002)........................................................................ 6

OPPOSITION TO MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT
No. 4:19-cv-02033-YGR

**Rules**

Fed. R. Civ. P.
    Rule 12 ............................................................................................................... 10
    Rule 12(b)(6) ......................................................................................................... 2
    Rule 15 ........................................................................................................ *passim*
    Rule 16 ........................................................................................................ *passim*
    Rule 16(b)(4) .................................................................................................. 1, 6

1    I.    **INTRODUCTION**

2           Almost two years ago, the Court dismissed Plaintiff's claim that Mr. Cook made a

3    materially misleading statement when he said, less than one week after the iPhone XR landed on

4    shelves, that Apple had "very little data" about iPhone XR sales.  The Court found, correctly, that

5    this statement (the "Very Little Data Statement") "appears to be accurate," and was otherwise not

6    actionable because it was "the type of vague, hedging, hyper-specific statement[] that [is] not

7    likely to give investors an impression of a state of affairs one way or the other."  Dkt. No. 123 at

8    11.

9           Since that ruling, the parties have engaged in extensive litigation over Plaintiff's sole

10   remaining misstatement claim, which is based on a comment by Mr. Cook relating to China (the

11   "China Statement").  Apple produced hundreds of thousands of pages of documents, and

12   numerous Apple senior executives sat for deposition.  Fact discovery closed in March 2022.  The

13   parties briefed class certification and the Court certified a class.  Most recently, the parties

14   conducted expansive expert discovery, involving nine expert witnesses.  By the time briefing on

15   this motion is complete, Defendants will have filed a letter requesting a pre-motion conference in

16   advance of filing their motion for summary judgment.  Throughout all of these proceedings, the

17   case has involved only the China Statement.

18          Now, on the cusp of summary judgment briefing that will demonstrate the lack of a

19   factual basis for the China Statement claim, Plaintiff seeks to resurrect its previously-dismissed

20   allegations about the Very Little Data Statement.  Because the deadline set by the Court for

21   amended pleadings has long since expired, Plaintiff must show, as a threshold matter, that there is

22   good cause to modify the scheduling order under Federal Rule of Civil Procedure 16(b)(4).  The

23   focus of the Rule 16 "good cause" analysis is "whether the requesting party was diligent in

24   seeking the amendment."  *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978,

25   989 (9th Cir. 2017).  Plaintiff has not been diligent, and cannot show good cause.

26          Plaintiff contends that its Proposed Second Amended Complaint (the "PSAC") is based on

27   facts Plaintiff learned in fact discovery, and further argues that "the diligence requirement of Rule

28   16 affords a party time to collect and comprehend the importance of facts and evidence."  Mot. at

17.  But Rule 16 does not afford a party *unlimited* time to "comprehend" facts and evidence.  Fact discovery closed more than four months ago, and the internal Apple documents cited in the PSAC were produced long before that.  Of the 41 Apple documents relied upon by Plaintiff in the PSAC, more than *70%* had been produced by July 2021—*over a year ago*.  More than *90%* had been produced by October 2021.  *All* of the documents had been produced by February of this year.  Declaration of James N. Kramer ("Kramer Decl.") ¶¶ 5-6.

Moreover, Plaintiff's claim that it needed several *more* months to "comprehend" the contents of these documents before seeking leave to amend is belied by the fact that Plaintiff served interrogatory responses in March 2022—more than four months ago—in which Plaintiff articulated many of the same facts it now seeks leave to reference in the PSAC, and specifically cited *each* of the 41 Apple documents Plaintiff now references in the PSAC.  *Id.*, Ex. 2. Whatever "comprehending" Plaintiff needed to do had been done by March 2022 at the latest.

Instead of seeking to amend at the first reasonable opportunity, Plaintiff inexplicably chose to do nothing for *months*, waiting to drop its surprise motion for leave to amend until after the parties had conducted extensive expert discovery on the basis of the China Statement alone. Rule 16 requires far more to establish diligence and good cause.  *See, e.g.*, *Schwerdt v. Int'l Fidelity Ins. Co.*, 28 Fed. App'x 715, 719 (9th Cir. 2002) (delay of one month after learning new facts demonstrated lack of diligence sufficient to support denial of leave to amend).  Plaintiff's lack of diligence is reason enough for the Court to deny leave to amend under Rule 16.

Further, the Court should deny leave to amend under Federal Rule 15 for several important reasons.  First, amendment would cause substantial prejudice to Defendants.  While Plaintiff purports to disclaim any desire to conduct discovery on the proposed claim in the PSAC, Defendants, for their part, have proceeded through the case with the understanding that it involved only the China Statement.  Plaintiff now wants to proceed on an entirely different claim, which, should it survive a Rule 12(b)(6) motion, would require, at minimum, that Defendants be permitted to file supplemental expert reports on the subject and take further discovery of Plaintiff's experts on this topic so Defendants are allowed an adequate opportunity to prepare a defense.

1   Second, Plaintiff's unexplained and extended delay in seeking leave to amend, waiting

2 until many months after it undisputedly knew about the purported basis for its proposed

3 amendment, provides further reason for the Court to deny leave to amend under Rule 15.

4   Finally, Plaintiff's proposed amendment would be futile.  As noted above, the Court has

5 already determined that the Very Little Data Statement was not actionable because it "appears to

6 be accurate."  Dkt. No. 123 at 11.  There is no need to revisit that determination.  The Very Little

7 Data Statement *was* accurate.  As the PSAC itself acknowledges, the iPhone XR was not

8 available until October 26, 2018—less than one week before the Apple earnings call on which

9 Mr. Cook made the Very Little Data Statement.  *See* PSAC ¶ 9.  The Court additionally found

10 that the Very Little Data Statement was not actionable as a matter of law.  Dkt. No. 123 at 11.  No

11 amount of discovery could change that.

12   Defendants respectfully request that the Court deny Plaintiff leave to amend.

13 **II.**  **BACKGROUND**

14   **A.**  **Following Motion Practice, Plaintiff's Case is Narrowed to One Challenged**
      **Statement, and the Court Issues a Case Management Order Including a**
15      **Deadline for Motions for Leave to Amend the Pleadings.**

16   After the Court dismissed a substantial majority of the claims asserted in an earlier

17 complaint (*see* Dkt. No. 110), Plaintiff filed a Revised Consolidated Amended Complaint

18 ("RCAC") on June 23, 2020.  Dkt. No. 114.  In the RCAC, Plaintiff asserted claims based on both

19 the China Statement and the Very Little Data Statement.  *Id.*[1]  Defendants moved to dismiss.  On

20 November 4, 2020, the Court issued an order granting Defendants' motion to dismiss with respect

21 to the claims based on the Very Little Data Statement.  Dkt. No. 123.  The Court found that

22 Plaintiff failed to plead falsity as to that statement, both because it "appears to be accurate," and

23 because it was "the type of vague, hedging, hyper-specific statement[] that [is] not likely to give

24 investors an impression of a state of affairs one way or the other."  *Id.* at 11.

25   The Court denied Defendants' motion with respect to the China Statement, allowing

26

27 [1] Plaintiff also alleged in the RCAC that Mr. Cook's November 1, 2018 statement that the "XS
 and XS Max got off to a really great start" was a material misstatement.  Dkt. No. 114 ¶¶ 57, 66.
 The Court later dismissed Plaintiff's claims to the extent they were premised on that statement.
28 Dkt. No. 123 at 11.

1    Plaintiff's claim based on that statement to proceed to discovery.  *Id.* at 23.

2        The initial Case Management Conference took place on December 14, 2020.  While the

3    parties had largely reached agreement on a proposed case schedule, they disagreed on the

4    deadline for motions for leave to amend, with Plaintiff proposing a deadline of September 17,

5    2021, and Defendants suggesting an earlier date.  *See* Dkt. No. 126 at 10.  At the conference, the

6    Court expressed that Plaintiff's proposed deadline was too late, and instead set an earlier deadline

7    of May 5, 2021 for motions for leave to file amended pleadings, making clear that any motions

8    for leave to amend should be promptly filed.  *See* Kramer Decl., Ex. 1 (12/14/20 CMC Hrg. Tr.)

9    at 7:23-24 ("I don't want to see that motion [for leave to amend] after I've already had full

10   briefing on class cert.  So let's make that May 5th, 2021.").  The Court then issued a Case

11   Management Order confirming the May 5, 2021 deadline for motions for leave to amend.  Dkt.

12   No. 128.  The Court also set a deadline of January 14, 2022 for substantial completion of

13   document production, *see id.*, suggesting the likelihood that the parties would continue producing

14   documents well after the scheduling order deadline for seeking leave to amend.  *Id.*  The Court set

15   a fact discovery cutoff of March 16, 2022.  *Id.*

16       **B.    The Parties Complete Extensive Fact and Expert Discovery Relating to the
                 Single Challenged Statement.**
17

18       The parties proceeded to conduct extensive fact discovery relating to the China Statement.

19   Apple produced hundreds of thousands of pages of documents, with the substantial majority of

20   those documents produced to Plaintiff by October 2021.  Kramer Decl. ¶ 4.  Mr. Cook, Mr.

21   Maestri, and numerous other senior Apple executives were deposed before the fact discovery

22   cutoff in March 2022.  *Id.* ¶ 7.

23       While Plaintiff correctly states that Apple produced a number of documents after October

24   24, 2021, and a smaller number after January 13, 2022, *see* Mot. at 5, the statistics cited by

25   Plaintiff are entirely irrelevant to this motion.  Of the 41 Apple documents that Plaintiff cites in

26   the PSAC in connection with the Very Little Data Statement, 90% of them were produced on or

27   before October 25, 2021.  Only four of those 41 documents were produced after October 2021—

28

1    two of them in January 2022 and two in February 2022.  Kramer Decl. ¶¶ 5-6.[2]  In any event, the

2    Court already has addressed Plaintiff's unsubstantiated argument that Defendants' production was

3    "slow and incomplete," having previously held that Plaintiff had not shown good cause for its

4    requested extension of the discovery cutoff given Plaintiff's failure to dispute that "defendants

5    produced 'virtually all' of their documents by the agreed-upon date for substantial completion of

6    document discovery."  Dkt. No. 231.

7         Fact discovery closed, as scheduled, on March 16, 2022.[3]  On the last day of fact

8    discovery, Plaintiff served responses to Defendants' contention interrogatories.  Kramer Decl.,

9    Ex. 2.  In response to an interrogatory asking Plaintiff to identify all facts in support of its

10   allegation that Apple made misleading statements, Plaintiff stated, among other things, that

11   Defendants "claimed that . . . as of November 1, 2018, with respect to the iPhone XR, Defendants

12   had too little information to tell what was happening with early demand for the product."  *Id.* at 5.

13   Plaintiff's interrogatory responses specifically identified, as documents supporting the responses,

14   each of the 41 Apple documents that are now cited by Plaintiff in the PSAC.  Kramer Decl., Ex.

15   2.  Plaintiff did not, however, indicate at that time that it planned to seek leave to amend its

16   complaint to re-assert the claim based on the Very Little Data Statement.

17        The parties then conducted extensive expert discovery relating to the China Statement.

18   On April 27, 2022, Defendants served opening reports from four expert witnesses, and Plaintiff

19   served two opening reports.  The parties served rebuttal reports on June 10, 2022—five rebuttal

20   reports from Defendants, and one from Plaintiff.  All told, the parties designated a total of nine

21   separate merits-phase experts.  Kramer Decl. ¶ 9.  Depositions of Plaintiff's experts have taken

22   place over the last two weeks.[4]  With the exception of one remaining deposition scheduled to take

23

24   [2] The four documents produced in January and February 2022 are those referenced in paragraphs
     89, 110, 113, and 126 of the PSAC.  Kramer Decl. ¶ 5.  Even if Plaintiff could argue that these

25   four documents are the linchpin of the PSAC—they are not—Plaintiff does not explain why it
     needed five months to analyze four documents before moving for leave to amend.

26   [3] Plaintiff references an ongoing discovery dispute before Magistrate Judge Spero concerning
     Defendants' assertions of privilege.  Mot. at 5 n.6.  Fewer than 250 documents remain in dispute.

27   Kramer Decl. ¶ 8.  Plaintiff does not argue that any of those documents may be relevant to
     Plaintiff's motion for leave to amend.

28   [4] After requesting, and then confirming, deposition dates for all six of Defendants' expert
     witnesses, Plaintiff unilaterally cancelled each deposition without explanation, waiting until the

                                    5

1    place on July 27, 2022, expert discovery is complete. *Id.*

2            **C.**      **Plaintiff Seeks Leave to Re-Plead Allegations Previously Dismissed as a**

3                    **Matter of Law.**

4        On July 5, 2022, nearly a month after the parties exchanged rebuttal expert reports,

5    Plaintiff filed its motion for leave to amend, attaching the PSAC. Dkt. No. 250. The PSAC

6    would assert a claim that, just like the claim previously dismissed by the Court, is premised on the

7    Very Little Data Statement. Dkt. No. 123.

8   **III.**     <u>**ARGUMENT**</u>

9          **A.**      **Legal Standard**

10       "Where, as here, a party seeks leave to amend after the deadline set in the scheduling

11    order has passed, the party's request is judged under Federal Rule of Civil Procedure ('FRCP')

12    16's 'good cause' standard rather than the 'liberal amendment policy' of FRCP 15(a)." *DRK*

13    *Photo*, 870 F.3d at 989. In the Ninth Circuit, "the central inquiry under Fed. R. Civ. P. 16(b)(4) is

14    whether the requesting party was diligent in seeking the amendment." *Id.* The party seeking

15    leave to amend bears the burden to demonstrate its diligence in seeking leave to amend. *See*

16    *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609-10 (9th Cir. 1992). If the party

17    seeking leave to amend fails to show diligence under Rule 16, the inquiry ends and leave to

18    amend should be denied. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir.

19    2002); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) ("Because [plaintiffs]

20    have failed to show diligence, 'the inquiry should end'").

21       If the party seeking leave to amend shows diligence under Rule 16, courts then proceed to

22    weigh the factors relevant to a motion seeking leave to amend under Rule 15, including prejudice

23    to the opposing party, undue delay, and futility of the amendment. *See Foman v. Davis*, 371 U.S.

24

25    business day before each deposition (in one case, two days before) to do so. Kramer Decl. ¶ 10.
Defendants can only surmise that Plaintiff intends to argue that, because Plaintiff has not deposed

26    Defendants' experts, Defendants would not be prejudiced by a re-opening of expert discovery.
The Court should discount any such argument, which would not account for the prejudice

27    resulting from Defendants needing to prepare entirely new expert opinions on an entirely new
claim—a significant burden that will fall on Defendants irrespective of whether their experts are

28    ultimately deposed.

178, 182 (1962); *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).  Of the various Rule

15 factors, "the consideration of prejudice to the opposing party [] carries the greatest weight."

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

> **B.**     **Plaintiff Was Not Diligent in Seeking Leave to Amend and Thus Cannot Show Good Cause to Amend the Scheduling Order Under Rule 16.**

Plaintiff contends that amendment is warranted because "evidence obtained since the

November 4, 2020 Order" purportedly proves that the Very Little Data Statement was false.  *See*

Mot. at 2.  But the relevant inquiry is not whether Plaintiff has obtained documents that it believes

support its proposed amendment, but rather whether Plaintiff has shown good cause to amend the

scheduling order.  Plaintiff has not done so.  As shown above, the "evidence" underlying the

PSAC has been in Plaintiff's possession for many months, and in most cases since *last July*, a full

year ago.  *See supra* at 4-5.  The PSAC also cites deposition testimony from Mr. Cook and Mr.

Maestri, but those depositions were completed in February 2022, five months ago.  Kramer Decl.

¶ 7.  And whatever Plaintiff now says about needing time to "collect and comprehend" evidence

in support of the PSAC, *see* Mot. at 17, Plaintiff's March 16, 2022 interrogatory responses, where

Plaintiff articulated allegations relating to the Very Little Data Statement and cited to each of the

41 Apple documents that Plaintiff references in the PSAC, is unassailable proof that Plaintiff had

done all the "comprehending" it needed to do by March 2022 at the latest.

Nor is it clear that Plaintiff needed to do much "comprehending" before seeking leave to

file the PSAC.  This is not a case where Plaintiff needed time to review a voluminous factual

record in order to ascertain *new* theories.  To the contrary, the theory that Plaintiff is now seeking

to resurrect has been known to Plaintiff for more than two years.  Indeed, Plaintiff previously

alleged a claim based on the Very Little Data Statement before the Court dismissed it.

Beyond the notion that it needed more time to "comprehend" the evidence, Plaintiff offers

no explanation for its decision to wait until *after* the parties had completed extensive fact and

expert discovery on the single remaining misstatement claim before seeking leave to amend.  That

is reason enough to conclude that Plaintiff has not demonstrated the diligence required by Rule

16.  *See In re Apple iPhone Antitrust Litig.*, 2021 WL 5181862, at *4 (N.D. Cal. Nov. 8, 2021)

1   (finding lack of diligence under Rule 16 where party seeking leave to amend "utterly failed to

2   explain their delay").

3          Courts including the Ninth Circuit have held that far shorter delays than Plaintiff's here

4   are sufficient to demonstrate a lack of diligence under Rule 16, requiring denial of leave to

5   amend.  *See Schwerdt*, 28 Fed. App'x at 720 (where plaintiff waited three months to seek leave to

6   amend after learning of the basis for the amendment, the court had "no difficulty in concluding

7   that [plaintiff] did not diligently seek amendment of his complaint," and upheld denial of leave to

8   amend); *Sako v. Wells Fargo Bank, Nat'l Ass'n*, 2015 WL 5022326, at *2 (S.D. Cal. Aug. 24,

9   2015) (denying motion for leave to amend under Rule 16 where plaintiff waited two months after

10  discovering new facts to seek leave to amend); *Experexchange, Inc. v. Doculex, Inc.*, 2009 WL

11  3837275, at *29 (N.D. Cal. Nov. 16, 2009) (delay of two months after discovering new facts

12  constituted lack of diligence requiring denial of leave to amend under Rule 16); *Ordaz Gonzalez*

13  *v. Cty. of Fresno*, 2020 WL 2539287, at *3 (E.D. Cal. May 19, 2020) (unexplained two-month

14  delay in seeking leave to amend demonstrated lack of diligence requiring denial of leave to

15  amend under Rule 16).

16         Plaintiff's cited cases, far from justifying Plaintiff's extended delay, are inapposite and

17  only provide further reason to conclude that Plaintiff has failed to demonstrate diligence.  For

18  example, in *San Francisco Baykeeper v. City of Sunnyvale*, 2022 WL 1914313 (N.D. Cal. Jun. 3,

19  2022), the plaintiff sought leave to amend "*within weeks* of discovering facts" supporting the

20  proposed amendment.  *Id.* at *2 (emphasis added); *see also Paradigm BioDevices, Inc.*, 2013 WL

21  1830416, at *4 (S.D.N.Y. May 1, 2013) (plaintiff did not discover relevant facts "until the end of

22  discovery" and promptly sought leave to amend "approximately one month after the final

23  deposition upon which its . . . allegations rely"); *In re Silver Wheaton Corp. Sec. Litig.*, 2018 WL

24  1517130, at *2-*4 (C.D. Cal. Mar. 26, 2018) (plaintiffs sought leave to amend within a month

25  after production of documents allowing plaintiffs to plead allegations sufficient to state a claim);

26  *Magtarget LLC v. Saldana*, 2019 WL 1904205, at *2 (N.D. Cal. Apr. 29, 2019) (plaintiffs sought

27  leave to amend within two months of learning facts supporting amendment); *Sjunde AP-Fonden*

28  *v. Gen. Elec. Co.*, 2022 WL 1078460, at *6 (S.D.N.Y. Apr. 11, 2022) (amendment relied on

1 documents produced less than five months before plaintiffs sought amendment, and plaintiffs

2 sought leave to amend prior to close of discovery); *M.H. v. Cty. of Alameda*, 2012 WL 5835732,

3 at *3 (N.D. Cal. Nov. 16, 2012) (plaintiff sought leave to amend within two months of learning

4 facts supporting amendment).

5 Finally, Plaintiff argues that it was sufficiently diligent because "as of the May 5, 2021

6 deadline to amend the pleadings set by the Court, Plaintiff had not received the necessary

7 discovery to evaluate the facts and to seek leave to amend the pleadings." Mot. at 16. But the

8 passage of the May 5, 2021 deadline did not give Plaintiff *carte blanche* to then sit on its hands

9 and seek leave to amend only when it pleased. "In general, the focus of the diligence inquiry

10 under Rule 16 is the time between the moving party's discovery of new facts and its asking leave

11 of the court to file an amended pleading." *G.P.P., Inc. v. Guardian Prot. Prods.*, 2016 WL

12 4041194, at *5 (E.D. Cal. Jul. 27, 2016). Here, Plaintiff discovered the allegedly relevant new

13 facts beginning with Apple's document production in the summer of 2021. But Plaintiff did not

14 seek leave to amend in July 2021, when Apple had produced 70% of the documents that Plaintiff

15 ultimately referenced in the PSAC. It did not seek leave to amend in October 2021, when Apple

16 had produced 90% of the documents that Plaintiff later included in the PSAC. It did not seek

17 leave to amend in February 2022, after it deposed Mr. Cook and Mr. Maestri. And perhaps most

18 inexplicably, it did not seek leave to amend even in March 2022, after it had served interrogatory

19 responses articulating the very same allegations, and citing the very same documents, that it now

20 seeks to advance in the PSAC.

21 Plaintiff was not diligent, and has not shown good cause under Rule 16. "The inquiry

22 should end" and the Court should deny leave to amend without reaching the Rule 15 factors.

23 *Coleman*, 232 F.3d 1271, 1295 (9th Cir. 2000); *see also Ordaz Gonzalez*, 2020 WL 2539287, at

24 *3 ("Because the Rule 16 standard is not satisfied, the Court does not reach the Rule 15

25 analysis.").

26 **C.    Denial of Leave to Amend is Also Appropriate Under Rule 15.**

27 Although the Court need not consider the Rule 15 factors in light of Plaintiff's lack of

28 diligence under Rule 16, consideration of the Rule 15 factors—specifically, prejudice to the

1   opposing party, undue delay, and futility—would only further support denial of leave to amend.

2   Of the Rule 15 factors, "the consideration of prejudice to the opposing party [] carries the greatest

3   weight." *Eminence Capital*, 316 F.3d at 1052.

4                 **1.**      **Amendment at this late stage would prejudice Defendants.**

5         Defendants would be substantially prejudiced by the addition of an entirely different

6   misstatement theory at this advanced stage of the litigation.  As discussed above, the parties have

7   already completed extensive fact and expert discovery, all focused on the China Statement.

8   Summary judgment briefing is imminent, with pre-motion letters due on July 29, 2022 and

9   opening briefs due on September 9, 2022.  If leave to amend is granted, and if the PSAC were to

10   survive a Rule 12 motion, then at a minimum Defendants would need to supplement their expert

11   reports and take further discovery of Plaintiff's experts, at great expense and at the risk of

12   significant delay to summary judgment briefing and other pretrial proceedings.

13         "Prejudice is the touchstone of the inquiry under Rule 15(a)." *Eminence Capital*, 316

14   F.3d at 1052.  "A need to reopen discovery and therefore delay the proceedings supports a district

15   court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin*

16   *Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999); *see also Solomon v. N. Am. Life*

17   *and Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (upholding denial of motion for leave to

18   amend that was made "on the eve of the discovery deadline . . . [and] would have required

19   reopening discovery, thus delaying the proceedings").

20         Plaintiff's blithe assertion that "permitting filing of the PSAC will not require additional

21   discovery," Mot. at 21, should not be taken seriously.  The claim based on the Very Little Data

22   Statement was dismissed before discovery began.  Defendants conducted discovery with the

23   understanding that this case was about one alleged misstatement—the China Statement.  While

24   Plaintiff has forsworn any desire to take additional discovery relating to the Very Little Data

25   Statement, *see* Mot. at 22, Defendants should be permitted to make their own decision about the

26   necessity of further discovery, including the necessity of reviewing and producing additional

27   internal Apple documents that may support Apple's defenses and were not previously produced

28   because they were not relevant to the China Statement.

10

Further, expert discovery would need to be reopened and effectively begin again to permit Defendants to present expert testimony concerning issues specific to the Very Little Data Statement.  For example, Defendants' economist expert, who has opined on issues relevant to loss causation, has to date focused on the China Statement, and would need to offer additional opinions relating to the Very Little Data Statement.  Defendants have also provided expert reports from two experts who offer opinions relating to the market's reaction (or lack thereof) to the China Statement.  Those experts would be asked to consider similar opinions concerning the Very Little Data Statement.  Defendants' other experts may need to offer additional opinions as well, and Defendants may need to retain entirely new experts to offer opinions relating to issues specific to the Very Little Data Statement.  Defendants would need time to make those determinations, and then to proceed with related expert discovery.[5]

In addition, by the time briefing on this motion is complete, Defendants will have already filed a request for a pre-motion conference in connection with their anticipated motion for summary judgment on the China Statement claim, and will have already put substantial effort into the preparation of their summary judgment motion and supporting evidence.  If leave to amend is granted, the filing and resolution of Defendants' summary judgment motion will be put off for many months, or longer.  That delay, coupled with the delay inherent in re-opening discovery, would cause prejudice sufficient to justify denial of Plaintiff's motion for leave to amend.

## 2. Plaintiff unduly delayed in seeking leave to amend.

Plaintiff's unexplained delay in seeking leave to amend, discussed at length above, also constitutes undue delay, supporting denial of leave to amend under Rule 15.  "Although delay is not a dispositive factor in the amendment analysis, it is relevant . . . especially when no reason is

---

[5] Plaintiff's arguments that certain of Defendants' experts make mention of Apple's revenue guidance (Mot. at 19-20), or that Defendants' class certification opposition made reference to the dismissed statement about iPhone XS and iPhone XS Max sales being off to a "great start" (Mot. at 23), or that Defendants have shown "significant familiarity" with the Very Little Data Statement (*id.*), are all beside the point.  The Very Little Data Statement has been out of the case since before discovery began.  Plaintiff waited until after discovery ended to seek leave to reinsert the Very Little Data Statement into the case.  If leave to amend is granted, Defendants should be permitted to take discovery on, and to present expert testimony about, this new claim on which Plaintiff is seeking to recover billions of dollars.

1  given for the delay[.]" *Lockheed Martin Corp.*, 194 F.3d at 986 (internal citations omitted).

2  "A party unduly delays seeking amendment by failing to seek amendment reasonably

3  promptly after it 'knew or should have known' that amendment was called for." *Johnson v.*

4  *Hewlett–Packard Co.*, 809 F. Supp. 2d 1114, 1120 (N.D. Cal. 2011), *aff'd*, 546 Fed. Appx. 613,

5  (9th Cir. 2013), quoting *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th

6  Cir. 2006).  In *Johnson*, the court found that the plaintiff unduly delayed by failing to seek leave

7  to amend until two months after the "absolute latest" time when the plaintiff knew or should have

8  known of the need for amendment.  809 F. Supp. 2d at 1121.  Here, by contrast, Plaintiff should

9  have known of the purported need for amendment as early as July 2021, by which point

10 Defendants had produced over 70% of the documents that Plaintiff relies upon for the new

11 allegations in the PSAC.  Kramer Decl. ¶ 6.  And at the absolute latest, Plaintiff plainly knew

12 about the purported need for amendment by March 2022, when it served interrogatory responses

13 articulating the theory it now seeks to advance and pointing to the exact documents it now seeks

14 to cite in the PSAC.  *Id.*, Ex. 2.  That was four months ago.  The Ninth Circuit has held that a

15 delay of as little as *five weeks* between counsel's discovery of new facts and the filing of a motion

16 for leave to amend can constitute undue delay sufficient to uphold a trial court's denial of leave to

17 amend.  *See Parker v. Joe Lujan Enters., Inc.*, 848 F.2d 118, 120 (9th Cir. 1988); *see also Davis*

18 *v. Paramo*, 2018 WL 3532965, at *4 (S.D. Cal. Jul. 23, 2018) (finding that plaintiff unduly

19 delayed by waiting 5 ½ months after ascertaining relevant facts before moving for leave to

20 amend).

21 Plaintiff's undue delay in seeking leave to amend, coupled with the prejudice that would

22 result from amendment, provides ample reason for the Court to deny leave to amend under Rule

23 15.

24 **3.    Plaintiff's proposed amendment would be futile.**

25 Leave to amend also should be denied under Rule 15 because the proposed amendment

26 would be futile.  When Mr. Cook made the Very Little Data Statement on November 1, 2018, the

27 iPhone XR had been on store shelves for less than a week.  This was known to the market.

28 Indeed, Mr. Cook correctly said that "the XR, we've only got out there for, I guess, 5 – 5 days or

1  so at this point." PSAC ¶ 2. Plaintiff's proposed new claim hinges on its allegation that Mr.

2  Cook's statement that "we have very, very little data there" was nonetheless materially

3  misleading. *Id.* But the Court already once dismissed Plaintiff's claim based on this statement,

4  finding that: (1) it "appears to be accurate," and (2) it was incapable of objective verification.

5  Dkt. No. 123 at 11. No amount of discovery could change that determination.

6        First, the Court's previous finding that "[Mr.] Cook's statement that he has 'very, very

7  little data' regarding the iPhone XR launch appears to be accurate," *id.*, continues to be true. As

8  the chart in the PSAC demonstrates, the six days that the iPhone XR had been available as of

9  November 1, 2018 was far less than the 41 days that the iPhone XS and iPhone XS Max had been

10  available, the 363 days that the iPhone X had been available, and the 405 days that the iPhone 8

11  and iPhone 8 Plus had been available. *See* PSAC ¶ 9. In other words, Apple still had "very, very

12  little data" available about the sales performance of the iPhone XR.[6] The Very Little Data

13  Statement was accurate.

14        Second, the Court's previous ruling that the Very Little Data Statement is "the type of

15  vague, hedging, hyper-specific statement[] that [is] not likely to give investors an impression of a

16  state of affairs one way or the other," Dkt. No. 123 at 11, was correct and should not be revisited.

17  This is because it is "an opinion that is not capable of objective verification." *Macomb Cty.*

18  *Employees' Ret. Sys. v. Align Tech., Inc.*, __ F.4th __, 2022 WL 2525306, at *3 (9th Cir. Jul. 7,

19  2022) (internal quotation marks omitted); *see also In re Mellanox Techs. Ltd. Sec. Litig.*, 2014

20  WL 12650991, at *7 (N.D. Cal. Mar. 31, 2014) (statements found to be unactionable because they

21  "employ terms that are not measurable . . . [or] capable of objective verification and lack a

22  standard against which a reasonable investor could expect them to be pegged.") (citations and

23

24  ------------------
   [6] Plaintiff's own allegations further emphasize the unique nature of the iPhone XR launch, which
25  made the very limited data available about its performance even more difficult to judge. *See, e.g.,*
   PSAC ¶ 105 ████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████ (emphasis added); *id.*

27  ████████

28  ██████████████████████████████████████████████████████████████ (emphasis
   added).

1    internal quotation marks omitted); *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d

2    651, 671 (6th Cir. 2005) (same where the statements were "too squishy, too untethered to

3    anything measurable, to communicate anything that a reasonable person would deem important to

4    a securities investment decision") (citation omitted).  The Very Little Data Statement was exactly

5    the type of vague and indeterminate comment that is unactionable under this standard.  The nature

6    of the "data" that Mr. Cook referred to is not entirely clear from the statement itself.  Nor did Mr.

7    Cook reference any objective standard of measurement against which the "very little" descriptor

8    could be measured.  Nothing in the Very Little Data Statement was "capable of objective

9    verification," *Align Tech.*, 2022 WL 2525306, at *3, and therefore the Court appropriately

10   dismissed claims regarding it.  *See Scheller v. Nutanix, Inc.*, 450 F. Supp. 3d 1024, 1036 (N.D.

11   Cal. 2020) (corporation's statements that it was "big on hiring," and that "a lot of hiring" was

12   going on, were unactionable); *Cunha v. Hansen Nat. Corp.*, 2010 WL 11469534 at *11 (C.D. Cal.

13   Jul. 12, 2010) (same as to the statement "we do believe that Rumba has got a lot of legs").

14          Further, unlike "general statements of optimism" which "may form a basis for a securities

15   fraud claim when those statements address specific aspects of a company's operation that the

16   speaker knows to be performing poorly," Dkt. No. 123 at 10 (citing *In re Quality Sys., Inc. Sec.

17   Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017)), the "Very Little Data" Statement was hardly a "feel

18   good" statement that could have left reasonable investors with an impression of optimism.  This

19   was an immaterial and neutral observation—in Mr. Cook's opinion, there was very little data

20   available on the iPhone XR's performance, which had just launched *less than a week prior*.

21   While Plaintiff attempts to twist the Very Little Data Statement into a statement that "nothing

22   should be inferred from the disappointing guidance about [the iPhone XR's] performance to

23   date," *see* PSAC ¶ 66, Mr. Cook said nothing of the sort.

24          It is well-established that "not every securities fraud claim that is dismissed lends itself to

25   repleading," and, specifically, "where a claim is dismissed as a matter of law because it fails to

26   state a claim, repleading would be 'futile.'"  *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp.

27   2d 281, 397 (S.D.N.Y. 2003).  "Unlike an attack for failure to plead fraud with particularity,

28   which can be cured by amendment, *an attack based on immateriality cannot be cured*, as the

1   statements themselves are inactionable for reasons other than that they are false or misleading."

2   *Fisher v. Acuson Corp.*, 1995 WL 261439, at *3 (N.D. Cal. Apr. 26, 1995) (emphasis added); *see*

3   *also In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *8 (N.D. Cal. Jul. 21, 2020) (finding that

4   "amendment as to some of the challenged statements (e.g., corporate puffery) would be futile").

5   Plaintiff's proposed amendment would be futile.

6   **IV.**    **CONCLUSION**

7       For all of the foregoing reasons, Defendants respectfully request that the Court deny

8   Plaintiff's Motion.

9

10  Dated:  July 26, 2022                    Respectfully submitted,

11                                           ORRICK, HERRINGTON & SUTCLIFFE LLP

12
                                             */s/ James N. Kramer*
13                                           JAMES N. KRAMER

14                                           Attorneys for Defendants Apple Inc., Timothy
                                             D. Cook, and Luca Maestri
15

16

17

18

19

20

21

22

23

24

25

26

27

28