1
2
3
4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    CITY OF ROSEVILLE EMPLOYEES'
     RETIREMENT SYSTEM,                         Case No.  19-cv-02033-YGR   (JCS)

8                         Plaintiff,

9             v.                                **ORDER GRANTING IN PART AND
                                                DENYING IN PART MOTION TO
10   APPLE INC., et al.,                         COMPEL**

11                        Defendants.            Re: Dkt. No. 227

12

13   **I.      INTRODUCTION**

14           Plaintiff brings a Motion to Compel Production of Documents as Privileged ("Motion"),

15   asserting that Defendants have failed to justify their assertion of attorney-client privilege as to five

16   categories of documents listed in their privilege logs.  A hearing on the Motion was held on April

17   15, 2022 and after additional meet-and-confer efforts that reduced the number of documents in

18   dispute from 451 to 232, the parties submitted supplemental briefs. They also lodged the

19   documents that remained in dispute with the Court and the undersigned has reviewed *in camera* a

20   sample of those documents.   A second hearing was held on July 29, 2022.  The Court sets forth

21   below rulings on certain legal issues that bear on the dispute, and its rulings on certain sample

22   documents that the Court has reviewed.  Using this guidance, Apple is ordered to review the

23   remaining documents in dispute, produce all documents that are not privileged under the guidance

24   issued today, produce the supplemental declarations permitted below, and then meet and confer

25   with Plaintiff in an effort to resolve any remaining disputes.

26   **II.     BACKGROUND**

27           **A.      The Underlying Action**

28           In this case, Plaintiff brings securities claims against Defendants Apple, Inc. ("Apple"), its

United States District Court
Northern District of California

CEO, Tim Cook, and CFO Luca Maestri based on allegedly fraudulent and misleading statements Cook and Maestri made on November 1, 2018 describing Apple's performance in China with respect to the sale of iPhones. *See* Revised Consolidated Class Action Complaint for Violation of the Federal Securities laws (Dkt. 114) ("Complaint") ¶¶ 54-56.  The Complaint alleges that shortly after these statements were made, on November 5, 2018, the Nikkei Asian Review published an article ("the Nikkei article") reporting that Apple was cutting production of iPhones, contradicting these earlier statements about strong demand for iPhones in China. *Id.* ¶ 68.

Then, Plaintiff alleges, on January 2, 2019, "after the close of trading, Apple disclosed the true condition of its business, including the impact of deteriorating economic conditions in China, among its largest growth markets, and demand for the iPhone." *Id.* ¶ 33.  This preannouncement was made in the form of a "Letter from Tim Cook to Apple Investors" ("Investor Letter") and informed investors that "revenue for 1Q19 was expected to be $84 billion, far below the guidance range of $89 to $93 billion [Apple] had announced on November 1, 2018." *Id.* ¶ 34.  This shortfall was attributed, in part, to an unanticipated "economic deceleration, particularly in Greater China[,]" where iPhone sales had been "poor" in 2018. *Id.*  ¶¶ 34-35.

## B.    Meet-and-Confer Efforts Related to the Privilege Dispute Prior to April 15, 2022 Hearing

On April 16, 2021, the undersigned ordered the parties to agree on search terms in connection with Plaintiff's First Set of Requests for Production of Documents and for Defendants to complete production of all responsive non-privileged documents found through this search process by July 15, 2021. Dkt. 158. In part due to disputes about which custodians should be included in the search, Defendants' production of documents continued well beyond the July 15 deadline.  According to Plaintiff, while Apple had produced approximately 317,000 documents by that deadline, it produced another 192,241 documents between September 23, 2021 and October 25, 2021 and 90,042 additional documents between January 14, 2022 and February 21, 2022.  *See* Dkt. 228 at ECF p. 5.  Defendants admit that by the July 15, 2021 deadline, they had produced just a little over half of the documents that ultimately were produced.  Opposition at 2 (citing Winawer Decl., ¶ 2).  Under the Court's Case Management Order, the deadline for "substantial completion

of document discovery" was January 14, 2022. Dkt. 128,

On November 24, 2021, Defendants produced an initial privilege log, in PDF format, for documents withheld or redacted from this production. Black Decl. ¶ 4.  They produced the same privilege log in Excel format on December 21, 2021.  *Id.*  According to Plaintiff's counsel, these privilege logs did not list attachments to withheld documents.  *Id.*  Plaintiff's counsel met and conferred with Defendants' counsel by telephone on December 21, 2021 and objected to "the conclusory nature and lack of detail supporting Defendants' privilege assertions."  *Id.*  ¶ 5. This was followed on January 19, 2022 by a letter from Plaintiff's counsel with an itemized list of objections to the latest privilege log and, two days later, another telephone meet-and-confer between counsel.  *Id.* ¶ 6.

According to Plaintiff, on February 3, 2022, Defendants produced a new privilege log which "added a field for email subjects, a field that was absent from prior versions of the privilege log."  *Id.*  ¶ 7.  The February 3, 2022 privilege log also listed attachments to withheld documents, for the first time.  *Id.*

The parties met and conferred again on February 14, 2022.  *Id.* ¶ 9.  Although the parties were able to resolve their dispute as to two of Plaintiff's objections, many disputes remained and the parties agreed to file a joint discovery letter as to those.  *Id.*  Defendants produced an updated privilege log on February 23, 2022.  *Id.* ¶ 11.  The parties filed the joint discovery letter ("Joint Discovery Letter") the next day. Dkt. 227.  After reviewing the parties' Joint Discovery Letter, the undersigned requested full briefing of the parties' dispute.

## C.    The Motion

In the Motion, Plaintiff contends Defendants have improperly asserted attorney-client privilege as to the following five categories of documents: 1) documents related to the Investor Letter that Defendants claim are privileged because they were created at the behest of Apple in-house counsel (Black Decl., Ex. 1);  2) two documents related to the Nikkei article about supplier cuts that Defendants redacted, first asserting the redactions were of material concerning "contract issues" and subsequently claiming the redacted material reflected "legal advice from in-house counsel David Tom regarding response to" the Nikkei article (Black Decl., Ex. 2);  3) emails that

were received by groups whose individual members have not been identified (Black Decl., Ex. 3);
4) seven unsent documents in files of Tim Cook, Tejas Gala and Adam Talbot, who are not
lawyers, as to which Defendants claim privilege on the basis that they contain legal advice from
unidentified in-house counsel (Black Decl., Ex. 4); 5) 209 email attachments as to which Plaintiff
claims the assertion of privilege is either facially improper based on the description provided or do
not contain a sufficient description to determine if the document is privileged. (Black Decl., Exs.
5a & 5b).

Defendants opposed the Motion as to all five categories of documents and offered
declarations in support of their privilege assertions by Apple Discovery Manager Robin Goldberg
and Apple in-house counsel Sam Whittington. Dkt. 233.

**D.    The April 15, 2022 Hearing**

At the April 15, 2022 motion hearing, the Court found that the declarations supplied by
Defendants in support of their assertion of attorney-client privilege were insufficient. It ordered
Defendants to provide to Plaintiff "for each withheld document listed in the exhibits attached to
Plaintiff's motion: 1) if not already produced, a redacted version of the document that redacts out
any advice that was sought or given primarily for a legal purpose; and 2) a declaration by the
attorney whose advice was sought or given establishing that the redacted material was primarily
for a legal purpose." Dkt. 238. The Court further ordered that "[w]ith respect to attached
documents, the declaration should establish that disclosure of the redacted material will
necessarily reveal an attorney's legal advice or a request for legal advice or is otherwise
privileged." *Id.* The Court also set a schedule for additional meet and confer efforts and
supplemental briefing as to any remaining disputes following those efforts. *Id.*

**E.    Results of Meet and Confer and Supplemental Briefs Addressing Remaining
Disputes**

On May 13, 2022, Defendants supplied the following additional declarations in support of
their claims of privilege: 1) Declaration of Katherine Adams Regarding Documents Withheld as
Privileged (Black Supp. Decl., Ex. 9 (Adams Decl.)); 2) Declaration of David Tom Regarding
Documents Withheld as Privileged (Black Supp. Decl., Ex. 17 (Tom Decl.); and 3) Declaration of

1   Sam Whittington Regarding Documents Withheld as Privileged (Black Supp. Decl., Ex. 18

2   (Second Whittington Decl.). Black Supp. Decl. ¶ 2. The parties met and conferred and Defendants

3   supplied supplemental declarations by Whittington and Adams on June 15, 2022.  *See* Black Supp.

4   Decl., Exs. 10 (Adams Supp. Decl.)  & 19 (Whittington Supp. Decl.).  As a result of their post-

5   hearing meet and confer efforts, the parties reduced the number of documents in dispute from 451

6   documents to 232.  Black Supp. Decl. ¶ 15.   They have now filed supplemental briefs addressing

7   their remaining disputes.  *See* Dkt. 246-3, 248.

8   **III.    ANALYSIS**

9       **A.   Legal Standards**

10      "Issues concerning application of the attorney-client privilege in the adjudication of federal

11  law are governed by federal common law." *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir.

12  2009) (citations and internal quotations omitted).  The party asserting the privilege has the burden

13  of establishing the privileged nature of the communication.  *Id.* "Because it impedes full and free

14  discovery of the truth, the attorney-client privilege is strictly construed." *Id.* at 607 (internal

15  quotations and citation omitted).   "[A]ttorney declarations generally are necessary to support the

16  designating party's position in a dispute about attorney-client privilege."  *Dolby Lab'ys Licensing*

17  *Corp. v. Adobe Inc*., 402 F. Supp. 3d 855, 865 (N.D. Cal. 2019).

18      "The attorney-client privilege protects confidential communications between attorneys and

19  clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp*.,

20  968 F.3d 1107, 1116 (9th Cir. 2020).  Federal courts apply an eight-part test to determine if a

21  communication is subject to attorney-client privilege.  *Id.*  Under that test, attorney-client privilege

22  applies "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his

23  capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by

24  the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the

25  legal adviser, (8) unless the protection be waived."  *United States v. Ruehle*, 583 F.3d at 607

26  (internal quotations and citations omitted).

27      The Ninth Circuit has recognized that "some communications might have more than one

28  purpose."  *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021).  There are two potential tests

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1  courts have applied in that scenario to determine whether the communication is for the purpose of

2  seeking legal advice and thus may be privileged: "the 'primary purpose' test and the 'because of'

3  test." *Id.*  In *In re Grand Jury*, the Ninth Circuit decided, as a matter of first impression, that

4  where the purpose of a communication is to give or receive both legal advice and business advice,

5  the communication is protected by attorney-client privilege only where the "primary purpose" of

6  the communication is "to give or receive legal advice, as opposed to business . . . advice."  23

7  F.4th at 1091.  The court explained that a dual-purpose communication can only have a single

8  "primary" purpose and thus, the primary purpose test is narrower than the "because of" test, which

9  asks only if there is a causal connection.  *Id.*  The court reasoned that "[a]pplying a broader

10  'because of' test to attorney-client privilege might harm our adversarial system if parties try to

11  withhold key documents as privileged by claiming that they were created 'because of' litigation

12  concerns[,]" finding that this approach "would create perverse incentives for companies to add

13  layers of lawyers to every business decision in hopes of insulating themselves from scrutiny in any

14  future litigation." *Id.* at 1093-1094.

15      The party asserting the privilege must make a *prima facie* showing that the privilege

16  protects the material the party intends to withhold.  *In re Grand Jury Investigation*, 974 F.2d 1068,

17  1071 (9th Cir. 1992);  *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii) (providing that a party claiming

18  privilege must "describe the nature of the documents, communications, or tangible things not

19  produced or disclosed – and do so in a manner that, without revealing information itself privileged

20  or protected, will enable other parties to assess the claim.").  The Ninth Circuit has "recognized a

21  number of means of sufficiently establishing the privilege, one of which is the privilege log

22  approach."  974 F.2d at 1071 (citing *Dole v. Milonas*, 889 F.2d 885, 888 n. 3, 890 (9th Cir. 1989)).

23  In *In re Grand Jury Investigation,* for example, the Ninth Circuit found that a *prima facie* showing

24  of privilege had been made as to eleven documents that had been withheld based on a privilege log

25  and affidavits regarding the "confidential nature" of the documents.  *Id.*  In *Dole*, the court found

26  that a privilege log made a *prima facie*  showing of privilege by identifying "(a) the attorney and

27  client involved, (b) the nature of the document, (c) all persons or entities shown on the document

28  to have received or sent the document, (d) all persons or entities known to have been furnished the

1    document or informed of its substance, and (e) the date the document was generated, prepared, or

2    dated." 889 F.2d at 888 n. 3.

3         "[*I*]*n camera* review is [also] an acceptable means to determine whether disputed materials

4    fit within the privilege." *Id.* at 1074.  Because *in camera* review is "an intrusion[,]" it must be

5    justified, but the threshold is not high.  *Id.*  In particular, "[t]o empower the district court to review

6    the disputed materials *in camera*, the party opposing the privilege need only show a factual basis

7    sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence

8    that information in the materials is not privileged." *Id.* at 1075.  If that threshold is met, the

9    decision whether to conduct the review rests within the discretion of the district court.  *Id.*

10        **B.    Documents Related to the Investor Letter**

11             **1.   Background**

12        On November 18, 2021, before Defendants produced their first privilege log, Plaintiff's

13   counsel inquired regarding the apparent absence of documents related to the Investor Letter in

14   Defendants' document production.  Black Decl. ¶ 3.  He was told by Defendants' counsel that

15   these documents were "in large part, privileged" and that they would be "reflected on

16   [Defendants'] forthcoming privilege log." *Id.*  That privilege log was provided the following

17   week. *Id.* ¶ 5.

18        It is undisputed that the Investor Letter, which was filed with the SEC as an exhibit to a

19   Form 8-K, is not privileged.  Black Decl. ¶ 12 & Ex. 6 (Investor Letter).  Defendants claimed in

20   the Joint Discovery Letter, however, that drafts of that letter were privileged because "Apple

21   undertook a careful process for drafting the [Investor Letter] under the direction of in-house

22   counsel."  Joint Discovery Letter at 5.  Defendants further asserted that the Investor Letter's

23   "supporting documentation, created at the behest of Apple in-house counsel, is . . . protected by

24   the attorney-client privilege" because "[d]ocuments compiled by non-legal employees to serve as

25   support for the information contained in the [Investor Letter] were created for the express purpose

26   of enabling Apple's legal department to provide legal advice as to the contents of" that letter.  *Id.*

27   n. 7.

28        In the Motion, Plaintiff asserts the Investor Letter had a "plainly business, not legal,

United States District Court
Northern District of California

purpose" in that it "preannounced many of the same financial performance metrics that Defendants routinely compile and publicly report, and would do so in final form a few weeks later." Motion at 6. This is a business purpose, Plaintiff contends, which Defendants have improperly attempted to transform into a legal reason by adding "layers of lawyers." *Id.* at 6-7 (quoting *In re Grand Jury*, 23 F.4th at 1093-94). Plaintiff argues that even if the creation of the documents in this category that Defendants claim are privileged was overseen by counsel, Defendants have not substantiated their claim that the involvement of in-house counsel was for a legal purpose and was not simply an example of in-house counsel "operat[ing] in a purely or primarily business capacity." *Id.* at 7 (quoting *U.S. v. ChevronTexaco Corp.*, 241 F. Supp. 2d at 1076). To show that these documents were for a legal purposes, Plaintiff contends, it is not sufficient to state that their creation was directed by counsel; instead, Defendants must provide specific facts about the lawyers involved and the area of law that was the subject of the lawyers' advice to show "[h]ow or why . . . the process of 'revising our guidance' [was] a legal, rather than business, purpose, particularly when Apple routinely provides financial performance guidance as part of its ordinary business operations[.]" *Id.* at 7. Plaintiff asserts that "at a minimum, Defendants must substantiate this representation with a sworn declaration from individual(s) with personal knowledge" on these questions. *Id.* at 8.

Plaintiff further contends in the Motion that the privilege log entries as to this category of documents are "woefully insufficient[,]" failing to adhere to the requirement that a party claiming privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Id.* (quoting Fed. R. Civ. P. 26(b)(5)(a)(ii)). They pointy to Entry 33 as an example, which "does not describe the type of document, does not identify its author (though it states the document is from 'Tim Cook's files'), does not identify a single lawyer, nor the area of the law to which it relates." *Id.* (citing Black Decl., Ex. 1, Entry No. 33). The "Privilege Description" also is insufficient, Plaintiff contends, "compris[ing] the following: 'Document reflecting legal advice from in-house counsel regarding board of directors' call and pre-announcement of revenue guidance miss.'" *Id.* Likewise, Plaintiff

United States District Court
Northern District of California

8

United States District Court
Northern District of California

contends, Defendants "have several entries with no dates, no authors, no senders and no recipients" and that are described with the boilerplate statement "Attached document prepared by employee acting under the direction of in-house counsel sent for the purpose of obtaining legal advice regarding investor letter." *Id.* (citing Black Decl., Ex. 1, Entry Nos. 466-468). Plaintiff points to other entries that "are simply described as: 'Email requesting and reflecting legal advice from in-house counsel regarding draft investor letter.'" *Id.* (citing Black Decl., Ex. 1, Entries 368-375, 412-418). Plaintiff asserts that "for each entry, Defendants must provide a competent privilege log with information reflecting the type of document, its title, author(s), the areas of the law in which legal advice was sought or rendered, the lawyer(s) whose advice was sought or rendered, what lawyer(s) requested what specific information, and whether that specific information was gathered for this unique purpose or was . . . merely information Apple maintains in the ordinary course of its business." *Id.* at 9.

In their Opposition brief, Defendants argue these documents were properly withheld, citing a declaration by in-house counsel Sam Whittington that they contend "only bolsters the *prima facie* showing of privilege already made by Defendants in every individual log" relating to the Investor Letter. Opposition at 4. According to Defendants, the Whittington declaration establishes that the Investor Letter "was issued outside of Apple's normal financial reporting cycle, several weeks ahead of the Company's announcement of its fiscal 2019 first quarter financial results (which occurred on January 29, 2019), and ahead of the Company's filing of its Form 10-Q for the fiscal 2019 first quarter (which occurred on January 30, 2019)[;]" that "Mr. Whittington was closely involved in, and provided legal advice with respect to, Apple's decision of whether to release the [Investor Letter] [;]" that "Mr. Whittington also oversaw the process by which Apple prepared the [Investor Letter], seeking to ensure compliance with the Company's reporting requirements and to minimize legal risk[;]" and that "Mr. Whittington reviewed and commented on drafts of the [Investor Letter] as they were prepared, again with an eye towards ensuring compliance with reporting requirements and minimizing legal risk to the Company." *Id.* (citing Whittington Decl. ¶ 3). Defendants further contend Whittington "directed various Apple employees to prepare certain back-up documentation with respect to the assertions made in the

United States District Court
Northern District of California

[Investor Letter]."  *Id.*

Defendants reject Plaintiff's argument in the Motion that the privilege log entries are insufficient and amount to blanket assertions of privilege, pointing to the fact that they logged each document individually.  *Id.* at 5.  They argue that the additional detailed information sought by Plaintiff goes "far beyond" what is required under the Court's standing order or the case law. *Id.* at 5-6.

In its supplemental brief (dkt. 246-3) ("Plaintiff's Supp. Brief"), Plaintiff asserts that "[f]ollowing Defendants' May 14, 2022 production, and the Parties' agreements based on the declarations and Defendants' representations regarding the non-relevance of certain documents, Plaintiff's challenges to 159 documents relating to the pre-announcement remain fundamentally unaddressed."  Plaintiff's Supp. Brief at 7 (citing Black Supp. Decl., ¶15 at Bullet No. 1).[1] Because "Defendants have neither reconsidered nor provided support for their previous claim that they may withhold any documents related to a 'process' that in-house counsel 'oversaw[,]'" "Plaintiff's update to the Court concerning the remaining documents in this category . . . is limited to two issues: the noncompliance of Defendants' new declarations with the Court's Order; and Defendants' problematic practices of copying 'silent' attorneys and mislabeling documents 'Privileged and Confidential.'"  *Id.*

On the first issue, Plaintiff contends Defendants' supplemental declarations fall short because as to many of the challenged documents Defendants have not identified the relevant attorney or provided a declaration by that attorney to support their assertion of privilege.  *Id.*  They contend this shortcoming is particularly apparent with respect to the Whittington Supplemental Declaration, which Defendants offer to support their claims of privilege with respect to most of the documents in this category.[2]  *Id.*  Plaintiff does not dispute that Defendants have adequately

---

[1] According to Plaintiff, the following documents in this category remain in dispute:  31-32, 178-179, 285-291, 298-300, 329, 335, 361-366, 369-379, 382-389, 391, 395, 397-398, 400-411, 417-421, 449-452, 455, 459-464, 466, 469-472, 474, 478-480, 482-485, 488, 490-491, 497-498, 512-513, 515-520, 522, 524, 526, 532-534, 536-544, 571, 573-575, 577-578, 582-583, 587, 589, 594, 616-622, 625, 629, 630, 651, 653, 655-662, 670, 672-673, 682, 686, 688, 690-692, 951-953, 961, 965.  Black Supp. Decl. ¶ 15 at Bullet No. 1.
[2]Bullet Nos. Four and Six of Whittington Supp. Decl. ¶ 3 address documents in this category.  In

established attorney-client privilege as to explicit requests for legal advice that were sent to

Whittington.  As to the remaining communications, however, Plaintiff asserts that Whittington's

supplemental declaration is insufficient because it is vague about who each document was sent to

for legal advice, pointing to Whittington's statement that the documents were "forwarded to [him]

(*and/or [his] colleagues in the legal department*) for the purpose of soliciting legal advice" about

the draft Q&A document or the Investor Letter.  Whittington Supp. Decl. ¶ 3 Bullet Nos. Four and

Six (emphasis added).   In view of this vague claim, Plaintiff asserts, Defendants have not satisfied

the Court's Order requiring Defendants to supply a declaration for each document from the

attorney whose legal advice was solicited.  *Id.*  at 8.

Plaintiff further asserts that the Whittington supplemental declaration is insufficient as to

---

Bullet No. Four, Whittington states:

> Nos.273, 274,302 ,303, 314-26, 333, 334, 427, 428, 432, 433, 443, 444, 555-60, 566, 567, 600, 601, 623, 624, 644, 645, 647, 648, 668, 669, 684, and 685: This group of documents consists of internal emails concerning drafts of an internal "Q&A" reference document prepared in anticipation of inquiries from media representatives and others relating to the release of the Cook Letter, sometimes including attached drafts of the Q&A document. Some of the emails in this group include explicit requests to me for legal advice relating to the contents of the draft Q&A document (Nos. 302,318, and 324). Even where the request was not explicit, however, my understanding is that drafts of the Q&A document were forwarded to me (and/or my colleagues in the legal department) for the purpose of soliciting legal advice concerning the contents of the drafts.

Wittington Supp. Decl. ¶ 3, Bullet No. Four.   In Bullet No. Six, Whittington states:

> Nos. 363-66, 369-98, 400-21, 425, 426, 512-27, 531-41, 572, 575-82, 593, 594, 616-18, 629, 630, 651-62, 666, 681, 682, 698, 699, 952, 961, and 965-69: This group of documents consists of internal emails concerning drafts of the Cook Letter, sometimes including attached drafts of the Cook Letter. Some of the documents in this group include explicit requests to me for legal advice, or explicit provision of legal advice by me, relating to the contents of the draft Cook Letter (Nos. 380-82, 390, 392-94, 396, 412-16, 425, 514-16, 520-27, 531-36, 572, 575, 576, 579-82, 593, 594, 651-58, 666, 681, 682, and 965-69). Other documents in this group include detailed comments and edits provided by Ms. Adams (Nos. 365 and 366), and emails including extensive comments on the draft Cook Letter sent collectively by me, Ms. Adams, and Mr. Andeer (Nos. 389,391, and 400-10). Even where the request for legal advice was not explicit, my understanding is that drafts of the Cook Letter were forwarded to me (and/or my colleagues in the legal department) for the purpose of soliciting legal advice concerning the contents of the drafts.

*Id.*, Bullet No. Six.

United States District Court
Northern District of California

1    this category of documents because "Apple cannot put forward anyone to take responsibility for

2    the challenged documents."  *Id.*  It points to Whittington's statement that "[o]ther documents in

3    this group include detailed comments and edits provided by Ms. Adams (Nos. 365 and 366), and

4    emails including extensive comments on the draft [Investor Letter] sent collectively by me, Ms.

5    Adams, and Mr. Andeer (Nos. 389, 391, and 400-10)."  *Id.* (citing Whittington Supp. Decl. ¶3

6    Bullet No. 6).  According to Plaintiff, this statement is insufficient because Defendants did not

7    supply a declaration from Mr. Andeer and Ms. Adams' declaration did not address the "extensive

8    comments" Whittington attributed to her.  *Id.* Plaintiff also notes that as to these documents,

9    Defendants do not state that the advice was legal in nature.  *Id.*

10         Plaintiff also challenges the sufficiency of the Whittington Supplemental Declaration to the

11   extent he claims privilege based on "his role overseeing a sweeping process" of collecting backup

12   documentation to support factual assertions made in the Investor Letter.  *Id.* According to Plaintiff,

13   there are 57 documents in this category and the three rationales offered by Whittington in support

14   of attorney-client privilege[3] all fall short because they do not establish that the project of collecting

15   this information was primarily for a legal purpose.  *Id.* at 8-9. Plaintiff argues that as "the

16   information shared in [the Investor Letter] was purely related to business operations and financial

17   performance" there is "no reason to believe that [Whittington's] or anyone else's 'directions'

18   concerning such issues would be privileged."  *Id.* at 9.

19         With respect to the two new Adams declarations, Plaintiff concedes these declarations are

20   sufficient to establish that Entries 297, 367 and 368 are privileged.  *Id.* They argue, however, that

21   those declarations are insufficient as to Entry Nos. 285-291, and 298-300, which are emails that

22   Adams says "include[] communications in which Mr. Cook asked me and Mr. Maestri for

23   feedback relating to topics he planned to cover in an upcoming meeting of the Company's board

24   of directors."  *Id.* (quoting Adams Supp. Decl. ¶ 4).  Plaintiff questions why these documents

---

[3] The three reasons offered by Whittington that Plaintiff points to are: 1) the documents "contain[ ] my explicit instructions concerning this project"; 2) the documents "reflect efforts by others at Apple, primarily Nancy Paxton and Saori Casey, to gather this information at my behest"; and 3) Ms. Casey was undertaking these efforts at my behest."  *Id.* (citing Whittington Supp. Decl. ¶ 3, Bullet Nos. 1-2).  Plaintiff points out that Paxton and Casey are not attorneys.  *Id.*

could not have been produced with redactions (instead of withholding the documents in their entirety) and further observes that Adams does not address the three emails sent by Mr. Maestri, (Entry Nos. 298-300) or state that he was soliciting legal advice in them. *Id.* In addition, as to emails Cook sent, Entry Nos. 288, 291, and 298, Plaintiff argues the declarations are insufficient because Adams does not state that Cook intended to solicit legal advice or explain why his request for "feedback" from her and non-attorney Maestri is legal in nature. *Id.* According to Plaintiff, the same is true for Entry No. 953. *Id.* (citing Adams Supp. Decl., ¶¶ 4, 7). Plaintiff further notes that "though Ms. Adams declares that she provided advice concerning the 'legal implications of an announcement of lowered revenue guidance,' Ms. Adams only sent three of the seven emails in that set, Entry Nos. 285, 287, and 299, and she does not identify which of the communications reflected that advice." *Id.* (citing Adams Supp. Decl. ¶ 4).

Plaintiff also expresses concern that "Defendants' production evinces a consistent effort within Apple to mislabel communications in order to later shield them from discovery." *Id.* at 10. In support of this allegation, Plaintiff assert that 54 "of the 175 non-privileged documents Defendants produced in whole or with de minimis redactions on May 14, 2022, were improperly marked "Privileged and Confidential." *Id.* (citing Black Decl. (dkt. 246-4) ¶ 3). Plaintiff also discusses two examples of documents it contends illustrate Apple's practice of mislabeling communications as privileged. *Id.* at 10-11.

In their responsive supplemental brief, Defendants contend Plaintiff is unclear about the scope of its concession as to documents in this category sent to or from Whittington, noting that while Plaintiff apparently agrees that attorney-client privilege has been properly claimed as to these documents it has omitted 22 documents from its list of documents no longer in dispute that were listed in the Whittington Supplemental Declaration and were sent directly to Whittington. Defendants' Supplemental Brief at 5 n. 6.

Defendants further assert that Plaintiff's challenges to the sufficiency of their declarations have no merit. *Id.* First, they argue that as to documents sent to Whittington that did not explicitly request legal advice, it is sufficient that Whittington understood that the request was implicit, as he states in his declaration was the case for many of the documents that were sent to him. *Id.* at 3.

Defendants reject the argument that Whittington's supplemental declaration is insufficient as to 15 documents listed in Paragraph 3 Bullet No. 6 – document nos. 365 and 366, and emails nos. 389, 391, and 400-10. *Id.* at 5-6.[4]  According to Defendants, because these documents were created by a group of lawyers involved in giving or receiving legal advice, it was sufficient that only one of the lawyers addressed them in a declaration.  *Id.*

Defendants contend the Whittington supplemental declaration is also sufficient as to the remaining 41 documents addressed in Paragraph 3 Bullet No. Six of his supplemental declaration. *Id.* at 6.  As to these documents, they assert, there was an implicit request for legal advice, and even if the communications sought advice from other attorneys, Whittington had knowledge and was copied on them.  *Id.*

Defendants also reject Plaintiff's challenge related to 54 documents addressed in paragraph four of Whittington's supplemental declaration, describing "communications relating to an effort to gather back-up documentation for the factual assertions" in the Investor Letter.  *Id.*  According to Defendants, they sufficiently supported their claim of privilege as to these documents based on Whittington's statement that he "directed various Apple employees to prepare certain back-up documentation with respect to the factual assertions made in the Cook Letter, for the purpose of ensuring compliance reporting requirements and minimizing legal risk to the Company."  *Id.* at 7 (citing Whittington Supp. Decl. ¶ 4).

Defendants further assert that the Adams supplemental declaration is sufficient to support their claim of privilege as to the documents addressed in paragraph 4 of that declaration (Entries 285-91, 298, 299, and 300).   *Id.* at 7.  According to Defendants, Plaintiff's challenge as to these documents ignores the fact that Adams explains in her declaration "that these emails include communications from Mr. Cook, in which Ms. Adams understood Mr. Cook to be soliciting input from her 'with respect to the legal implications of the topics he planned to cover' at an upcoming meeting of the Company's board of directors."  *Id.* (quoting Adams Supp. Decl. ¶ 4).  Defendants

---

[4] In his supplemental declaration, Whittington states as to these documents:  "Other documents in this group include detailed comments and edits provided by Ms. Adams (Nos. 365 and 366), and emails including extensive comments on the draft Cook Letter sent collectively by me, Ms. Adams, and Mr. Andeer (Nos. 389,391, and 400-10)."  Whittington Supp. Decl. ¶ 3 Bullet No. 6.

14

also point to Adams' statement that she "responded to Mr. Cook's email to 'advise[] Mr. Cook and Mr. Maestri concerning legal implications of an announcement of lowered revenue guidance.'" *Id.* (quoting Adams Supp. Decl. ¶ 4).   Defendants argue that Adams was not required in her declaration to "break down, in painstaking detail, each component email of each version of the thread" as "the declaration plainly confirms that 'the communications in this group of emails were sent primarily for a legal purpose.'"  *Id.* (quoting Adams Supp. Decl. ¶ 4).

With respect to Plaintiff's allegation that Defendants consistently mislabel documents as privileged and confidential within Apple, Defendants argue there is no evidence to support this allegation.  *Id.* at 7-8. In any event, they assert, this argument has no bearing on the present dispute because they have not relied on such a label in support of a claim of privilege as to any disputed document.  *Id.* at 8.

### 2.  Legal Standards Governing the Applicability of Attorney-Client Privilege to Business Communications

As discussed above, it is Defendants' burden to establish that each document they claim is privileged has as its "primary or predominate purpose" the provision of "legal advice or assistance." *TCL Commc'n Tech. Holdings, Ltd. V. Telefonaktiebolaget LM Ericsson*, 2016 WL 6922075, at *2 (C.D. Cal. May 26, 2016).  Courts have recognized that where, as here, a communication involves in-house counsel and may have a business purpose, the burden of establishing that a document is privileged may be higher than it would be for outside counsel.   *See United States v. ChevronTexaco Corp*., 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002). This approach is based on a recognition that in-house counsel "frequently serve as integral players in business decisions or activities." *Id.*  As Judge Brazil explained in *United States v. ChevronTexaco Corp*:

> [C]ommunications between a corporation and its outside counsel are presumed to be made for the purpose of seeking legal advice. However, . . . unlike outside counsel, in-house attorneys can serve multiple functions within the corporation. In-house counsel may be involved intimately in the corporation's day to day business activities and frequently serve as integral players in business decisions or activities. Accordingly, communications involving in-house counsel might well pertain to business rather than legal matters. The privilege does not protect an attorney's business advice. Corporations may not

> conduct their business affairs in private simply by staffing a
> transaction with attorneys. . . Because in-house counsel may operate
> in a purely or primarily business capacity in connection with many
> corporate endeavors, the presumption that attaches to
> communications with outside counsel does not extend to
> communications with in-house counsel.

*Id.* (citations omitted). Thus, "[w]ith respect to internal communications involving in-house counsel, [the party claiming attorney-client privilege] must make a 'clear showing' that the 'speaker' made the communications for the purpose of obtaining or providing legal advice." *Id.* (quoting *In re Sealed Case*, 737 F.2d 94 (D.C. Cir. 1984)).

### 3.   Whether Communications Related to Regulatory Compliance Are for a Legal Purpose or a Business Purpose

As a preliminary matter, the Court addresses whether communications giving or seeking attorney advice related to regulatory compliance is for a business purpose or a legal purpose – an issue upon which there appears to be a disconnect between the parties' positions.  Plaintiff relies on *In re Grand Jury*, 23 F.4th at 1093-1094 to argue that advice related to regulatory compliance involves a business purpose. Motion at 6-7.  In *In re Grand Jury*, the court distinguished a D.C. Circuit case, *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014), stating as follows:

> Even though it theoretically sounds easy to isolate "the primary or
> predominant" purpose of a communication, the exercise can quickly
> become messy in practice. That was the case in *Kellogg* in which the
> company conducted an internal investigation for both legal (e.g., to
> obtain legal advice) and *business reasons (e.g., to comply with
> regulatory requirements and corporate policy)*.

23 F.4th at 1095 (emphasis added).  Plaintiff appears to interpret the highlighted language as announcing a bright-line rule that advice concerning regulatory compliance by in-house counsel is, per se, business advice rather than legal advice.

Defendants, on the other hand, have pointed to evidence that the withheld communications involved "advice regarding the Company's regulatory disclosure obligations[,]" to show that these communications involved *legal* advice.  Opposition at 7.  They cite two cases where courts have found that advice related to regulatory compliance was privileged as legal advice.  *See Smith v. Unilife Corp.*, No. CIV.A. 13-5101, 2015 WL 667432, at *2 (E.D. Pa. Feb. 13, 2015); *Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009).

United States District Court
Northern District of California

The Court concludes that Plaintiff likely places too much weight on the language in *In re Grand Jury*.  While the Ninth Circuit suggested in the language quoted above that advice concerning regulatory compliance may be business advice, the case itself involved services by in-house counsel related to tax advice rather than regulatory compliance.  In that context, the court noted that tax advice could serve "both a non-legal purpose (tax compliance considerations) as well as potentially a legal purpose (seeking advice on what to do if the IRS challenged the deduction)[,]" finding that the determination of a communication's purpose is governed by common law and citing, *inter alia*, the Restatement (Third) of the Law Governing Lawyers § 72 (Am. L. Inst. 2000).  *Id*. at 1091.  Section 72 provides, "A lawyer's assistance is legal in nature if the lawyer's professional skill and training would have value in the matter."  The illustrations offered in support of this section reflect that an attorney who provides tax assistance may or may not be providing legal advice, depending on the specific circumstances involved.  Restatement (Third) of the Law Governing Lawyers, § 72, Illustrations 2, 3.[5]  Read as a whole, then, the Court concludes that Ninth Circuit in *In re Grand Jury* did not intend to announce a bright-line rule that advice involving regulatory compliance is, per se, business advice but simply that it *may*  be business or legal advice under the same common law principles that govern tax advice, and that in *Kellogg* specifically, the circumstances indicated that the advice *was* primarily business-related.

---

[5] These illustrations are as follows:

Illustrations
2. As Lawyer has done in past years, Lawyer prepares Client's federal tax returns, using records, receipts, and other information supplied by Client and without discussing any issues with Client. Client's tax returns are not complex, nor do they require a knowledge of tax law beyond that possessed by nonlawyer preparers of tax returns. Client knows that Lawyer is admitted to practice law but has never discussed with Lawyer any legal question concerning taxes or return preparation, nor has Lawyer offered such advice. Client pays Lawyer on a per-form basis and in an amount comparable to what nonlawyer tax preparers charge. The trier of fact may, but need not, infer that Client's purpose was not that of obtaining legal assistance.
3. Client frequently has consulted Lawyer about legal matters relating to Client's growing business. Lawyer drafts documents and provides other legal assistance relating to a complicated transaction having important tax implications that Client and Lawyer identify and discuss. Client later asks Lawyer to prepare Client's federal income-tax return for the tax year in which the transaction occurs. The circumstances indicate that Lawyer is providing legal services in preparing the tax return.

Restatement (Third) of the Law Governing Lawyers, § 72, Illustrations 2, 3.

1    This reading of *In re Grand Jury* also appears to be consistent with discussion of attorney-

2  client privilege in *Upjohn Co. v. United States*, 449 U.S. 383 (1981).  In that case, the Court

3  rejected a "control group" test for determining whether communications are privileged because of

4  the implications of applying that test in the corporate context.  In particular, it observed that "[i]n

5  the corporate context, . . . it will frequently be employees beyond the control group as defined by

6  the court below–'officers and agents . . . responsible for directing [the company's] actions in

7  response to legal advice'–who will possess the information needed by the corporation's lawyers."

8  *Id.*  at 391.  It went on to note, "[i]n light of the vast and complicated array of regulatory

9  legislation confronting the modern corporation, corporations, unlike most individuals, "constantly

10  go to lawyers to find out how to obey the law," Burnham, The Attorney–Client Privilege in the

11  Corporate Arena, 24 Bus.Law. 901, 913 (1969), particularly since compliance with the law in this

12  area is hardly an instinctive matter[.]"  *Id.* at 392 (citations omitted).  A bright-line rule that advice

13  concerning regulatory compliance is, per se, business advice would thus appear to fly in the face

14  of the Court's discussion of attorney-client privilege in *Upjohn*.

15    Conversely, the cases cited by Defendants do not stand for the proposition that advice

16  relating to regulatory compliance is *always* legal advice. In *Roth v. Aon Corp.*, 254 F.R.D. 538,

17  541 (N.D. Ill. 2009), the court held that communications with in-house counsel in connection with

18  drafting of SEC Form 10-K were privileged based on the nature of the regulatory requirements

19  related to that form, explaining:

20      [T]here is certainly good reason to anticipate that corporations will
       consult with their attorneys over compliance with legally mandated
21      disclosures. In the case at hand, pursuant to Section 13 or Section
       15(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m or §
22      78o(d), publicly traded companies must submit reports on Form 10–
       K to the SEC annually. United States Securities and Exchange
23      Commission, Form 10–K, Annual Report Pursuant to Section 13 or
       15(d) of the Securities Exchange Act of 1934, General Instructions,
24      SEC 1673 (02–08). The report on Form 10–K presents an overview
       of the company's business and financial condition and includes
25      audited financial statements. *Id.*; United States Securities and
       Exchange Commission, Form 10–K, SEC 1673 (02–08). If a
26      shareholder requests a company's Form 10–K, the company must
       provide a copy. 17 C.F.R. § 240.14a–3(b)(10).

27

28      Form 10–K requires extremely detailed financial, legal, and structural
       information pertaining to the company. The required disclosures

18

range from its physical assets to submissions of matters for vote to security holders, from management's operations data and analysis to disclosures about market risk. Form 10–K also requires the disclosure of legal proceedings in which the company is involved. United States Securities and Exchange Commission, Form 10–K, SEC 1673 (02–08).

[The defendant's] involvement of legal counsel in the drafting of Form 10–K, and in decision-making in preparation for its submission is therefore unsurprising. Consultation as to the scope of the provisions of the Act, as to language, and as to how best to legally comply with SEC regulations, for instance, are precisely the type of day-to-day guidance for which a corporation would likely rely on counsel. Form 10–K mandates the disclosure of extensive corporate information. The determination of what information should be disclosed for compliance is not merely a business operation, but a legal concern. The Court finds that the communications contained in the Bolger e-mail did reasonably seek legal advice.

254 F.R.D. at 540–41.[6] The court in that case did not, however, hold generally that advice concerning regulatory compliance is privileged as legal advice and cautioned that the "'array of regulatory legislation confronting the modern corporation' . . . does not mean that corporations have a blank check to keep hidden any document through consultation with counsel." *Id.* at 540 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981)) (internal quotations and citation omitted).

In *Smith v. Unilife Corp.*, the court held that documents sent by non-attorneys to the defendant's in-house counsel "generally concerning the contents, style and 'wordsmithing' of drafts" of an SEC 10-K report were protected under attorney-client privilege. No. CIV.A. 13-5101, 2015 WL 667432, at *2 (E.D. Pa. Feb. 13, 2015). The court in that case relied on *Roth*, concluding that because the drafts had been the subject of communications with corporate counsel, they were subject to attorney-client privilege. *Id.* at *3. The *Smith* decision was limited to drafts of 10-K forms that had actually been the subject of attorney communications, however. Further, it did not address whether communications that did not directly involve the completion of legally required disclosure forms and that might have business purposes that go beyond regulatory compliance would also fall within the scope of attorney-client privilege.

---

[6] The court notes that to the extent that the *Roth* decision acknowledged that the advice related to both a "business operation" and a "legal concern" but did not address which was primary, the approach taken in that case may not be consistent with the primary purpose test adopted in *In re Grand Jury*.

United States District Court
Northern District of California

In sum, the Court finds that there is no bright-line rule that communications related to regulatory compliance are per se business or legal communications. Rather, the content and context of such communications must be considered in order to determine the primary purpose of the communication.

### 4. Discussion

Applying the principles discussed above, the Court finds that the descriptions offered in support of withholding this category of documents raise a significant possibility that these communications – or at least parts of them – were primarily for business purposes. In reaching this conclusion, the Court finds it significant that the subject of many of the communications was a preannouncement of Form 8-K financial metrics rather than the disclosure form itself. The fact that Defendants chose to release this information outside of the normal reporting cycle in a format aimed directly to investors indicates a business purpose that goes beyond regulatory compliance, namely, an attempt to mitigate fallout from the leaked information in the Nikkei Article. Therefore, to determine whether the disputed communications in this category satisfy the primary purpose test, the Court has reviewed *in camera* several of the documents Defendants have withheld as privileged. Based on its review, the Court finds that some of the communications withheld by Defendants appear to involve primarily business advice that does not fall within the attorney-client privilege.

According to Plaintiff, the following documents in this category remain in dispute: 31-32, 178-179, 285-291, 298-300, 329, 335, 361-366, 369-379, 382-389, 391, 395, 397-398, 400-411, 417-421, 449-452, 455, 459-464, 466, 469-472, 474, 478-480, 482-485, 488, 490-491, 497-498, 512-513, 515-520, 522, 524, 526, 532-534, 536-544, 571, 573-575, 577-578, 582-583, 587, 589, 594, 616-622, 625, 629, 630, 651, 653, 655-662, 670, 672-673, 682, 686, 688, 690-692, 951-953, 961, 965. Black Supp. Decl. ¶ 15 Bullet No. 1. The Court has identified six general subcategories of documents within this category and has reviewed the documents listed in square brackets: 1) documents that Whittington states were sent to him and included explicit requests for legal advice [382]; 2) documents that Whittington states were sent to him or to other members of the legal department that he understood to be implicitly requesting legal advice [363-364]; 3) documents

that Whittington says Adams made extensive comments and edits on (Entries 365 and 366) [365, 366]; 4) emails providing advice about the Investor Letter sent collectively by Whittington, Adams and Andeer (Entries 389, 391, and 400-10) [389]; 5) documents that Whittington states are related to the collection of back-up documentation to support factual assertions in the Investor Letter [329, 449];[7] and 6) the emails addressed in paragraph 4 of the Adams Supplemental Declaration described as a set of emails that "include[] communications in which Mr. Cook asked me and Mr. Maestri for feedback relating to topics he planned to cover in an upcoming meeting of the Company's board of directors." (Entry Nos. 285-291, and 298-300) [285, 287, 288, 290].

As to the first subcategory of documents, Plaintiff has stipulated in its supplemental brief that Whittington's supplemental declaration stating that these documents were sent to him and contained explicit requests for legal advice about the Investor Letter is sufficient to establish attorney-client privilege as to those requests. The Court agrees but finds that in Entry 382, the request for legal advice at the beginning of the document is the only privileged material in the document; the remainder of the document involves business advice. Therefore, the privilege log and declarations supplied by Defendants in support of withholding this document are sufficient only as to the message on the first page of the document containing a "question to the legal team," which may be redacted on the basis of privilege. The remainder of the document consists of communications between non-attorneys that are not primarily for a legal purpose and therefore are not protected by attorney-client privilege. That portion of the document should be produced. In addition, Defendants shall review the remaining documents in this category to ensure that only material that relates to the request for legal advice is withheld.

As to the second subcategory of documents, Whittington states in his supplemental declaration that these documents were sent to him or others in the Apple Legal Department for the purposes of obtaining legal advice about the Investor Letter or the Q&A document, though the request for legal advice was not explicit.

---

[7] According to Whittington, the following documents fall into this category:  Nos.329, 335, 436-437, 449-452, 455, 459-64, 466, 469-72, 474, 478-80, 482-85, 488, 490, 491, 497, 498, 542-544,571, 573,574, 583, 587, 589, 619-22, 625, 670, 672, 673, 675, 686, 688, 690-92, 951. Whittington Supp. Decl. ¶ 4.

United States District Court
Northern District of California

An implied request for legal advice is sufficient to support attorney-client privilege. *See California Inst. of Tech. v. Broadcom Ltd*., No. CV 16-3714-GW (AGRX), 2018 WL 1468371, at *3 (C.D. Cal. Mar. 19, 2018).  Further, Defendants have represented that even though some of these communications were addressed to other Apple attorneys, Whittington was copied on the emails and therefore has knowledge sufficient to establish the contents and purpose of these emails. The Court finds, however, that as to the two documents it reviewed in this category, Entries 363 and 364, Defendants have not established that the communications contained in them are privileged.  Entry 363 is a cover email from Apple Vice President of Communications, Steve Dowling, a non-attorney, to Luca Maestri (Apple's CFO) and Kate Adams (Apple's general counsel), copied to six other Apple employees, three of whom were not attorneys. Although the cover email seeks "feedback" it does not flag any particular legal issue and the request was directed to both a non-attorney and in-house counsel.  The Court finds nothing in this communication that establishes it was primarily aimed at seeking legal advice.  Likewise, the attached investor letter, Entry 364, includes comments on a draft investor letter from Dowling that primarily relate to business concerns, supporting the conclusion that the draft and cover email were not primarily for the purpose of soliciting legal advice.  The mere fact Kate Adams was one of the addressees on the cover email is not sufficient to establish that these communications are privileged.  Defendants will be permitted to file supplemental declarations of counsel to support their claim of privilege as to this subcategory of documents so long as the declarations are consistent with this Court's rulings and contain detailed facts relating to each specific document. Defendants shall review the remaining documents that have been withheld in this subcategory to ensure similar communications have not been improperly withheld on the basis of attorney-client privilege.

As to the third subcategory, Entries 365 and 366, it is not clear why Adams did not provide a supporting declaration, as required under the Court's Order. The Court's review of Entry 365 confirms that it contains extensive comments about the Investor Letter by Adams but it is not apparent from the face of the document that Entry 366 contains comments by Adams.  That document contains comments in blue from Dowling and notations in red that the Court assumes

1    are comments by Adams.  Even assuming the comments in both documents are by Adams,

2    however, they are entirely aimed at business concerns, focusing on how best to make *business*

3    points.  The comments offered by Adams do not flag or discuss any legal concerns.  Therefore, the

4    Court concludes Adams was not acting in a legal capacity with respect to these comments, which

5    do not fall within the attorney-client privilege. Defendants shall produce these documents.

6           The fourth subcategory of documents consists of emails from a group of in-house counsel

7    about drafts of the Investor Letter.  The Court has reviewed Entry 389 and finds that it is framed in

8    terms of Defendants' legal obligations and the bulk of the comments in the email address those

9    obligations even though the email includes isolated comments that are not legal in nature (*e.g.*, the

10   comment that it would be "great to find opportunities to shorten the length" of the Investor Letter.)

11   The Court concludes, therefore, that the primary purpose of the communication is to offer legal

12   advice.

13          The Court further finds that Whittington's supplemental declaration is sufficient to support

14   Defendants' privilege claims as to some but not all of the documents in the fifth subcategory,

15   containing "communications relating to an effort to gather back-up documentation for the factual

16   assertions" in the Investor Letter.  Whittington states that some of these documents "are emails

17   containing [his] explicit instructions" concerning the collection of this information and lists the

18   following documents: 449-52, 455, 459-64, 469-72, 474, 478-80, 482-85, 490, 491, 497, 498, and

19   573.  This statement is sufficient to establish that Whittington's advice would be disclosed if these

20   documents were produced.  The Court further finds based on its *in camera* review of Entry 449

21   that that communication is primarily for the purpose of providing legal advice to the extent that it

22   flags particular issues as to which in-house counsel determined factual support was needed.

23   Although the underlying facts are not privileged, communications *about* facts that relate to

24   potential legal liability may constitute legal advice.  *See Upjohn Co. v. United States*, 449 U.S.

25   383, 395-96 (1981) ("A fact is one thing and a communication concerning that fact is an entirely

26   different thing.").

27          On the other hand, Whittington's vague statement as to the remainder of the documents

28   listed in this paragraph that it was his "understanding" they were created for a legal purpose and

that they "reflect efforts by others at Apple, primarily Nancy Paxton and Saori Casey, to gather this information at [Whittington's] behest" fails to meet Defendants' burden as to these documents.  This declaration does not establish that disclosure of these communications, which appear to be between non-attorneys, will reveal any legal advice.  Moreover, the Court has reviewed one of these documents, Entry 329, and concludes that there is nothing in it that would reveal the type of information Defendants' in-house counsel advised was needed to support the Investor Letter as there is no mention of the purpose for which the information was being collected and it is not apparent from the face of the document that the communication even related to or was in response to the advice of in-house counsel. The possibility that the information discussed in a communication between non-attorneys might be related to advice by counsel that certain representations in the Investor Letter needed factual support is not sufficient. Therefore, the current record does not establish that this communication is privileged.

Defendants will be permitted to provide supplemental declarations consistent with the Court's rulings to establish, if they can, that the subset of documents in this subcategory that do not contain Whittington's explicit instructions but that he understood were created at his behest for a legal purpose, are protected by attorney-client privilege because they were created for the primary purpose of seeking legal advice or reflected Whittington's legal advice.

The sixth subcategory (Entry Nos. 285-291, and 298-300), contains the emails addressed in paragraph 4 of the Adams supplemental declaration, described as a set of emails that "includes communications in which Mr. Cook asked me and Mr. Maestri for feedback relating to topics he planned to cover in an upcoming meeting of the Company's board of directors."  The Court finds based on *in camera* review that Entry 288, a generic request for feedback from Cook to both Adams and Maestri that does not reference any specific legal concerns, is not primarily aimed at seeking legal advice and therefore is not privileged. This document should be produced. Entries 285 and 287 are privileged because they contain Adam's response to Cook's request for input from her and address legal topics, thus constituting legal advice.  The Court further finds based on its *in camera* review of Entry 290, which is an email exchange between Tim Cook and Luca Maestri on which Adams is copied, that that communication was not sent with the primary

1    purpose of obtaining legal advice and does not reveal any legal advice.  Merely copying in-house

2    counsel on an email exchange does not make a communication privileged. This document should

3    be produced.

4         **C.    Documents Related to the Nikkei Article**

5              **1.   Background**

6         Plaintiff argues that Defendants have not adequately justified the redaction of two

7    documents (Entries 1263 and 1264) related to the Nikkei article about supplier cuts.  Motion at 9-

8    10 (citing Black Decl., Ex. 2). These documents are described in Apple's privilege log as emails

9    from Priya Balasubrumaniam (Apple's Vice-President of Operations) to Jeff Williams (Apple's

10   COO); and the following individuals are copied on them: Sabih Khan (sabih@apple.com); Daniel

11   Rosckes (droscckes@apple.com); and David Tom (davidtom@apple.com).  Black Decl., Ex. 2.

12   The subject of the emails is described as "Re: Nikkei: Apple cancels production boost for budget

13   iPhone XR: sources" and the privilege description for both documents states: "Redacted email

14   communication reflecting legal advice from in-house counsel David Tom regarding response to

15   article."  *Id.* Plaintiff notes that in previous versions of their privilege log, Defendants described

16   the basis for asserting privilege as "contract issue" and contends this "dramatic change betrays the

17   contrived nature of Defendants' privilege assertions." Motion at 9. Plaintiff further asserts this

18   description is insufficient because it does not identify the area of law the legal advice concerned

19   and Defendants did not supply a supporting declaration.  *Id.* at 10.

20        Defendants counter that their description of the redactions is sufficient because they are

21   only required to "describe the nature of the documents . . . in a manner that, *without revealing*

22   *information itself privileged or protected*, will enable other parties to assess the claim." Opposition

23   at 6-7 (quoting Fed. R. Civ. P. 26(b)(5)(A)) (emphasis in Opposition brief).  The information

24   Plaintiff seeks would "eviscerate the entire purpose of the attorney-client privilege[,]" Defendants

25   claim.  *Id.*  at 6. According to Defendants, their privilege log adequately claims attorney-client

26   privilege as to these documents because it includes "the attorney and client involved," the "nature

27   of the document," the "persons or entities shown on the document to have received or sent the

28   document," "the date the document was generated, prepared, or dated," and "the subject matter of

United States District Court
Northern District of California

25

1   each document," it "has met its burden in demonstrating the applicability of the attorney-client

2   privilege." *Id.* (quoting *In re Grand Jury Investigation*, 974 F.2d at 1071).

3          In the supporting Winawer Declaration, however, Defendants acknowledge that the basis for

4   claiming privilege in the February 23, 2022 privilege log was incorrect:

> Defendants' privilege log Entry Nos. 1263-1264 reflect an explicit request for legal advice regarding Apple's response to an article published on November 5, 2018 in the *Nikkei Asian Review*. The name David Tom is mistakenly bolded in these entries. Although Mr. Tom is an attorney, and a member in good standing of the State Bar of California, it is now my understanding that he was not acting in a legal capacity at the time of the article's publication. The redacted portion of the email referenced in these entries is nonetheless privileged because it describes an explicit request by Mr. Tom for legal advice from the legal department.

11  Winawer Decl. ¶ 6.

12         In a declaration by David Tom supplied by Defendants following the April 15, 2022 hearing,

13  Tom states that he is Vice President of Global Sourcing & Supply Management at Apple and has held

14  that position during the time period relevant to this litigation.  Black Supp. Decl., Ex. 17 (Tom Decl.) ¶

15  1.  He explains that he is a member of the California bar and previously worked at Apple as in-house

16  counsel.  *Id.*  With respect to Entries 1263 and 1264, he states:

> These two documents, which I understand to be identical to one another, contain an email sent from Priya Balasubramaniam to Jeff Williams, with copies to me and others, on November 6, 2018. This email is a reply to an earlier email sent by Ms. Balasubramaniam on November 5, 2018. The redacted portions of these documents reflect information pertaining to my communications with Ms. Balasubramaniam, and related communications between me and Apple's legal department, pertaining to potential contractual remedies available under a contract with a supplier. To the best of my understanding, the redacted portions of these documents were sent primarily for a legal purpose.

23  Tom Decl. ¶ 3.

24         Plaintiff contends in its supplemental brief that this declaration is inconsistent with

25  Defendants' previous justifications for asserting these documents are privileged and argues that to the

26  extent the emails reflect advice given to Tom by Apple's legal department, Defendants were required

27  under the Court's Order to provide a declaration from the attorney who provided that advice or whose

28  advice was sought.  Plaintiff's Supplemental Brief at 12.  Plaintiff further asserts that the Tom

1  Declaration falls short because it does not establish that these documents are about business

2  operations, namely, the desire of Apple leadership to financially punish the companies that had leaked

3  information about its performance in China.  *Id.*

4  　　　Defendants argue in their supplemental brief that the description of the basis for their privilege

5  in the Winawer Declaration is consistent with Tom's description and that Tom is qualified to provide a

6  supporting declaration as he was involved in the email exchange and is himself an attorney.

7  Defendants' Supplemental Brief at 8-9.  They also reject Plaintiff's argument that these documents are

8  business communications, citing Tom's statement that the subject matter of the redacted text pertains

9  to "potential contractual remedies under a contract[,]" Tom Decl. ¶ 3, which is "a textbook legal

10  question."  *Id.*  at 9.

　　　　　　　　　　　**2.  Discussion**

12  　　　Defendants have offered a declaration attesting that these documents contain legal advice

13  relating to contractual remedies that Tom received from Apple's legal department. Further, the

14  Court's review of the documents supports the conclusion that the redacted material related

15  primarily to legal advice rather than business concerns, though both were clearly present.

16  Although Tom is not the attorney whose provided the advice or whose advice was requested, the

17  Court concludes that his declaration is sufficient to support the assertion of privilege given his

18  first-hand knowledge of the contents of the documents, even though Defendants did not strictly

19  comply with the Court's Order.

20  　　　**D.　　Groups Emails**

21  　　　　　　　**1.  Background**

22  　　　Defendants have asserted that the emails listed in Black Decl., Ex. 3, are protected by

23  attorney-client but have not identified the individuals who were in email groups whose members

24  were recipients of these emails.  According to Plaintiff, Defendants' refusal to provide this

25  information has made it impossible to determine "whether an attorney received each of these

26  group emails or whether such emails were limited in distribution solely to Apple employees."

27  Motion at 10.  While Plaintiff acknowledges that a communication may be privileged even if no

28  attorney is listed as a recipient, it argues that this information is, nonetheless, relevant to whether

United States District Court
Northern District of California

27

1    the communication is privileged.  It also argues that Defendants' statement in the Joint Discovery

2    Letter that "counsel 'identities are generally evident from the log' (ECF No. 227 at 6) means that

3    not all counsel identities are evident."  *Id.*

4            In their Opposition, Defendants emphasize that an email may be privileged even if an

5    attorney is not copied on it, as Plaintiff concedes.  Opposition at 7.  Defendants further assert that

6    the privilege has not been waived as to these emails, offering two declarations in support of their

7    position.  First, they have supplied a declaration by in-house counsel Sam Whittington stating he

8    was a member of the Disclosure Committee and that at all relevant times the email distribution list

9    for that group did not include anyone other than Apple employees.  Second, they have offered a

10   declaration by Apple Discovery Manager Robin Goldberg addressing the following groups listed

11   on the privilege log:  china_ga_group@group.apple.com; wwro@group.apple.com;

12   ac_ro_managers@group.apple.com; pac_ro_cim@group.apple.com; pac_sdm_

13   manager_only@group.apple.com; wsalesandopssupport leadership@group.apple.com;

14   golden_gate_program_status@group.apple.com; and two internal Apple email addresses:

15   pacro_reports@apple.com; nnpi@apple.com.  Goldberg Decl. ¶ 2.  According to Goldberg, "[t]o

16   [her] knowledge, "it is not feasible to obtain membership lists of internal Apple group distribution

17   email addresses as of a particular date in the past."  *Id.* ¶ 3. She states, however, that she has

18   "verified that the Apple group distribution email addresses listed above presently include only

19   recipients that are internal to Apple" and that "only those who are internal to Apple can

20   send emails from and receive emails sent to the two internal Apple email addresses listed

21   above[,]" pacro_reports@apple.com and nnpi@apple.com.  *Id.*  She further states, "[w]ith respect

22   to the internal Apple group distribution email address d3x_n84_weekly_distro@group.apple.com

23   also referenced in the Motion, I have verified that this group distribution email address is no

24   longer active. I am informed by individuals familiar with that list that, to the best of their

25   knowledge and recollection, this group distribution email address included only recipients that

26   were internal to Apple at all relevant times."  *Id.* ¶ 4.

27           In its Reply, Plaintiff notes that in her declaration, Goldberg states that only two of the

28   group email addresses are restricted to communications from or to Apple's internal personnel and

United States District Court
Northern District of California

28

further states that "the evidence obtained by Plaintiff from third parties shows that Apple did use group email addresses to communicate with a number of key third parties during the relevant period."  Reply at 8.  Plaintiff supplies an additional declaration in support of its Reply attesting that iPhone manufacturers Foxconn and Pegatron produced more than 6,000 documents between them, sent to or from an "@group.apple.com" email address. Black Reply Decl., ¶2.  In particular, Black states:

> On March 17, 2022, using Relativity software, I searched productions made by non-parties Hon Hai Precision Industry Co., Ltd. a/k/a Foxconn Technology Group ("Foxconn") and Pegatron Corporation and Pegatron USA, Inc. (collectively, "Pegatron") to Plaintiff for the term "@group.apple.com." That term yielded results for, or hit on, 5,539 message or email documents in the Foxconn production and 477 message or email documents in the Pegatron production.

Black Reply Decl. ¶ 2.

As a result of the parties' meet and confer efforts following the April 15, 2022 hearing, the parties have narrowed their disputes as to this category to thirteen documents: Entries 67, 81, 100, 141, 216, 271, 731, 734-735, 755, 775, 831 and 885.  Black Supp. Decl. ¶ 15 Bullet No. 3.  All of these documents were sent to the Disclosure Committee email group. Black Decl., Ex. 3. Whittington states in his supplemental declaration as to these documents:

> This group of documents consists of emails relating to requests for members of the Company's disclosure committee to review draft corporate disclosure materials-including press releases, SEC filings (including draft Forms 10-Q), earnings call scripts, etc. At all relevant times I was a member of the disclosure committee, along with other Apple in-house lawyers. My understanding is that these emails, and attached draft disclosure materials, were sent to me for the purpose of soliciting legal advice with respect to the content of the materials.

Whittington Supp. Decl. ¶ 5 Bullet No. 1.

In its supplemental brief, Plaintiff contends Defendants have not adequately supported their assertion of privilege as to these documents because: 1) Defendants have not identified the members of the Disclosure Committee email group as required to show the privilege has not been waived and to comply with the Court's Order; and 2) Whittington makes clear in his declaration that the emails had a dual purpose, namely, to seek guidance about disclosures from the non-attorneys on the Disclosure Committee and to seek legal advice from Whittington, but Whittington

does not distinguish in his declaration between the requests for legal advice from other content in the emails that did not seek legal advice.  Plaintiff's Supplemental Brief at 12-13.

Defendants respond that it is sufficient for Whittington to attest that these emails were sent to him primarily for a legal purpose even though they were also sent to non-attorneys. Defendants' Supplemental Brief at 9-10.  They also reject Plaintiff's argument that they cannot establish privilege because they are unable to identify the members of the Disclosure Committee email group, citing Whittington's statement in his earlier declaration, "based on personal knowledge, that at all relevant times the disclosure committee email list did not include anyone other than Apple employees." *Id.* at 10 (citing Declaration of Sam Whittington (Dkt. No. 233-5) ¶ 5).

### 2.  Discussion

"Communications between non-lawyer employees about matters which the parties intend to seek legal advice are . . . cloaked by attorney-client privilege." *AT&T Corp. v. Microsoft Corp.*, No. 02-0164 MHP (JL), 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003) (citation omitted). Nonetheless, where, as here, the communication involves in-house counsel the party claiming privilege must make a "clear showing" that the primary purpose of the communication or portion thereof that has been withheld is legal rather than business-related.  *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d at 1076.  As Judge Ryu has explained, "the number of recipients, and the fact that the attorney is merely CC'd on emails, suggests the possibility that the emails could be communications regarding business strategy that do not involve the communication or solicitation of legal advice." *Engurasoff v. Zayo Grp. LLC*, No. C-14-00689 DMR, 2015 WL 335793, at *3 (N.D. Cal. Jan. 23, 2015).  Similarly, the mere fact that an attorney is included in the email group to which the email is sent does not establish that the email is privileged. *See In re Chase Bank USA, N.A. "Check Loan" Contract Litigation*, No. 09–md–2032–MMC (JSC), 2011 WL 3268091, at *4 (N.D.Cal. July 28, 2011) ("Merely labeling a communication as an 'attorney-client privileged draft' . . . or adding an attorney as a recipient are insufficient to confer privilege when the communication is not otherwise for the purpose of facilitating legal advice or services.").

30

1      The Court has reviewed Entry 100 and finds that it contains a general request for the

2  Disclosure Committee members, most of whom apparently are not attorneys, to review draft

3  disclosures for accuracy.  While Whittington, an attorney, was a member of the committee, there

4  is nothing in the communication that identifies any specific legal issue or specifically requests

5  legal advice.  In contrast, in *Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009), cited by

6  Defendants, the communications at issue involved requests for guidance from counsel "as to the

7  scope of the provisions of the [Securities and Exchange] Act, as to language, and as to how best to

8  legally comply with SEC regulations."   Therefore, the Court finds that on the current record, the

9  purpose of this communication was not primarily to obtain legal advice and this document should

10  have been produced.

11      Defendants have requested that they be permitted to submit supplemental declarations as to

12  this subcategory of documents and the Court grants that request in part.  As discussed at the

13  hearing, the Court rejects Defendants' argument that communications that were sent to the entire

14  disclosure committee email group are primarily for the purpose of seeking legal advice merely

15  because of the regulatory requirements that govern these disclosures or the fact that Whittington

16  was a member of the disclosure committee.  However, to the extent supplemental declarations

17  might establish that a *particular* communication served a specific purpose that was primarily

18  legal, Defendants may file such declarations to support their claims of privilege as to this

19  subcategory of documents. To the extent Defendants are unable to provide such declarations as to

20  any document in this subcategory, that document should be produced.

21      **E.    Documents in Files of Non-Attorneys**

22          **1.  Background**

23      In the Motion, Plaintiff challenged the assertion of privilege as to seven documents that

24  were found in the custodial files of non-attorneys Tim Cook, Tejas Gala and Adam Talbot.  *See*

25  Motion at 10; Black Dec., Ex. 4, Entry Nos. 26-29, 31-33. Four of these are described in the

26  privilege log as being drafts of the Investor Letter "reflecting legal advice from in-house counsel."

27  Black Decl., Ex. 4 (Entries 26, 28, 31 and 32).  Another document is described as "[d]ocument

28  reflecting legal advice from in-house counsel regarding board of directors call and

preannouncement of revenue guidance miss." *Id.* (Entry 33).  Two others are described as "Draft Q1'19 Q&A reflecting legal advice from inhouse counsel." *Id.* (Entries 27, 29).  Plaintiff argued the assertion of privilege as to these documents was insufficient because Defendants failed to offer any details as to the nature of the advice or identify the attorney who gave the advice.  Motion at 10.

Defendants countered in their Opposition brief that "these documents are simply loose files of privileged drafts of the [Investor Letter] that do not contain a cover email."  Opposition at 8. They asserted that the drafts were privileged for the same reason they asserted that documents relevant to the Investor Letter were privileged.  Further, according to Defendants, they are not required to identify the specific attorney who gave the legal advice or the specific nature of the advice.  *Id.*

Following the April 15, 2022 hearing, Defendants produced five of the seven documents in this category, leaving only Entries 31 and 32 in dispute.  In his supplemental declaration, Whittington describes these documents as follows:

> These documents are internal drafts of the [Investor Letter], dated December 23, 2018 (No. 31) and December 26, 2018 (No. 32). Document No. 31 was distributed by email to a group that included me, Kate Adams, and Kyle Andeer (all Apple in-house lawyers). My understanding is that the draft was sent to me and the other Apple in-house lawyers to seek our legal advice with respect to the contents of the draft. Document No. 32 was sent by email to Mr. Cook, copying me, Ms. Adams, and Mr. Andeer (among others). That draft reflected feedback provided by Apple in-house lawyers with respect to earlier drafts of the [Investor Letter].

Whittington Supp. Decl. ¶ 3 Bullet Point No. 2.

Plaintiff asserts in its supplemental brief that Whittington's supplemental declaration is not adequate to support Defendants' privilege claim as to Entry 31 because "Whittington does not say that the draft itself reflected legal advice, or a request for legal advice – just that it was sent to lawyers, in an unidentified email."  Plaintiff's Supplemental Brief at 13.  Plaintiff challenges the assertion of privilege as to Entry 32 because while Whittington now describes it "as a draft that 'reflected feedback provided by Apple in-house lawyers[,]'" he does not "say which in-house lawyers, nor does [he] say the 'feedback' was legal in nature."  *Id.*  at 13.  Moreover, Plaintiff

32

points out that Whittington's supplemental declaration stating that these documents were sent in emails directly contradicts Defendants' earlier representations that, as they had "explained to Plaintiff on multiple occasions[,]" these documents were "simply loose files of privileged drafts of the [Investor] Letter that do not contain a cover email." *Id.* at 14 (quoting Opposition at 8).

Defendants argue in their supplemental brief that the Whittington supplemental declaration is sufficient to establish that both documents that are still in dispute were sent for the purpose of obtaining legal advice or contained legal advice. Defendants' Supplemental Brief at 10-11. They explain that they revised their description of the documents because, while they were originally "collected from individual custodians without an accompanying cover email[,]" "Counsel subsequently determined, in connection with the preparation of Mr. Whittington's supplemental declaration, that these two files are identical to files that had also been sent as attachments via email." *Id.* at 11.

### 2. Discussion

A draft of a document may be privileged even if the final version of that document is made public, so long as the draft meets the requirements for claiming attorney-client privilege at the outset. *See Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009) ("[U]nless the communication does not at the outset meet the elements of attorney-client privilege, then a draft of a document which becomes public record does not thereby lose that privilege."). As to the drafts of the Investor Letter here, however, Defendants have not provided specific facts establishing that each of the drafts that has been withheld actually reflects legal advice or a request for legal advice. There are many possible reasons why the Investor Letter went through multiple drafts, including business reasons related to mitigating the economic fallout that might occur when Apple filed SEC forms revealing the guidance miss for the previous year. As discussed above, to claim attorney-client privilege as to these drafts, Defendants were required to provide specific information showing that the provision of legal advice was the primary purpose for creating *each* document.

Here, the Court has reviewed the two documents in this category (Entries 31 and 32) *in camera* and concludes these communications were primarily for business purposes rather than to seek or provide legal advice. Although Entry 31 contains comments on the Investor Letter by

United States District Court
Northern District of California

Dowling (a non-attorney), the comments appear to relate to business matters and do not seek or reveal legal advice of any kind.  Entry 32 contains no comments or apparent edits.  As Defendants have not pointed any specific legal advice or request for legal advice in these communications, the Court finds that Defendants have not established that they are protected under attorney-client privilege.  Defendants will be permitted to file supplemental declarations of counsel to support their claim of privilege as to these documents so long as the declarations are consistent with this Court's rulings and contain detailed facts from the attorney whose advice was sought or given relating to each specific document.

### F.    Email Attachments

#### 1.    Background

In their February 3, 2022 privilege log, Defendants listed attachments to emails that had been withheld but not previously disclosed.  Black Decl. ¶ 7.  According to Plaintiff's counsel, Defendants' counsel stated in a February 14, 2022 meet-and-confer that these documents had been withheld based on "the presumption that non-privileged attachments reveal the privileged contents of parent emails." *Id.* ¶ 9. Defendants produced an updated privilege log on February 23, 2022 in which they provided privilege descriptions for the attachments. *Id.*  ¶¶ 9-11.  Many of the attachments were described as "Attached document prepared by employee acting under the direction of in-house counsel sent for the purpose of obtaining legal advice regarding investor letter."  *See generally* Black Decl., Exs. 5a, 5b.

In the Motion, Plaintiff challenged the assertion of attorney-client privilege as to 209 documents that were described as attachments to emails, consisting of 39 documents it asserted were facially non-privileged because they "clearly concern[ed] business topics[,]" and 170 documents as to which Plaintiff asserted Defendants had provided insufficient information in their privilege log to allow for a determination of whether the documents were privileged or if instead they were instances of counsel acting in a business capacity.  Motion at 11-12;  Black Decl., Exs. 5a and 5b.  Plaintiff further asserted that because Defendants had withheld all of the "parent" emails to which these documents were attached, it would be virtually impossible for the disclosure of the attachments to reveal any privileged information in those emails.  *Id.* at 11-12.

As to the attachments listed in Black Decl., Ex. 5b, Plaintiff pointed to the following examples of documents that appeared to have a business purpose: "Entry No. 95 is an Excel spreadsheet of a master product schedule. . . . ; Entry Nos. 168 and 169 are titled "President Trump – 09 August 2018 copy.pdf." . . . ; and Entry No. 736 is titled, "2. Q1'19 Earnings Release Financials v4.docx" . . . ." *Id.* Plaintiff emphasized that it was "*not* challenging attachments that objectively appear[ed] to have a legal purpose (e.g., ones that are described as relating to litigation Q&A's)" but argued "the documents set forth in Ex. 5b [did] not objectively appear to have a legal purpose." *Id.* (emphasis in original).

In their Opposition, Defendants asserted that they had not claimed that the attachments were privileged merely because the parent emails were privileged, noting that "an email attachment may be privileged if it independently satisfies the criteria for attorney-client privilege." Opposition at 9 (citing *AT&T Corp. v. Microsoft Corp.*, 2003 WL 2121614, at *4 (N.D. Cal. Apr. 18, 2003)). They further asserted their privilege log made "a *prima facie* showing that these attachments, many of which were created as part of the preparation of the [Investor Letter], [were] privileged." Opposition at 9. According to Defendants,

> Plaintiff's mere speculation that the documents must have been created for a non-legal "business" purpose is not sufficient to rebut that prima facie showing. In-house lawyers provide legal advice concerning "business topics" all the time. The fact that a privilege log entry references a "business topic" does not demonstrate that the withheld document does not relate to legal advice about the "business topic."

*Id.* Defendants also provide their own versions of Black Decl. Exs. 5a and 5b that include the entries for the parent documents for the withheld attachments, which Defendants assert provide "crucial context." Opposition at 9; Winawer Decl. Exs. 1A and 1B.

In its Reply, Plaintiff observed that Defendants' assertion that they had made a *prima facie* showing of privilege as to these documents was not supported by any explanation of how they had made such a showing. Reply at 10. In fact, it argued, "Plaintiff can and has sufficiently rebutted Defendants' purported *prima facie* privilege claims by 'not[ing] that numerous subject lines on logged emails appeared to reference business-related communications rather than the transmission of legal advice.'" *Id.* (quoting *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855,

1  864-865 (N.D. Cal. 2019)).  Plaintiff also argued that to the extent it was forced to speculate as to

2  whether this category of documents was privileged, it was because Defendants had provided

3  insufficient information in their privilege log.  *Id.*

4        After the April 15, 2022 hearing, Defendants produced some of the disputed documents in

5  this category, leaving "roughly half" of the documents in this category in dispute.  Plaintiff's

6  Supplemental Brief at 14 (citing Black Supp. Decl. ¶ 15 Bullet Point Nos. 5 and 6).[8]  These

7  documents are addressed in supplemental declarations by Whittington and Adams.  *See*

8  Whittington Supp. Decl. ¶¶ 3- 5; Adams Supp. Decl. ¶ 3.  In particular, with respect to Entries 142

9  and 218-220, which Plaintiff claims are facially non-privileged and remain in dispute, Whittington

10  states:

> This group of documents consists of emails relating to requests for
> members of the Company's disclosure committee to review draft
> corporate disclosure materials-including press releases, SEC filings
> (including draft Forms 10-Q), earnings call scripts, etc. At all relevant
> times I was a member of the disclosure committee, along  with other
> Apple in-house lawyers. My understanding is that these emails, and
> attached draft disclosure materials, were sent to me for the purpose of
> soliciting legal advice with respect to the content of the materials.

15  Whittington Supp. Decl. ¶ 5 Bullet Point No. 1.  With respect to Entry 488 – the remaining

16  attachment in dispute that Plaintiff claims is facially non-privileged – Whittington states it is one

17  of a group of documents that "reflect[ ] efforts made to gather back-up documentation with respect

18  to the factual assertions made in the [Investor] Letter."  *Id.*  ¶ 4 Bullet Point No. 1.

19        With respect to the attachments from Ex. 5b that remain in dispute, Whittington states in

20  his supplemental declaration that as to Entry 270 and the document to which it was attached

21  (Entry 269):

> These documents consist of an email sent by Tejas Gala to me and
> Matt Blake, dated December 12, 2018, and an Excel spreadsheet
> attached thereto. In the  email and attachment, Mr. Gala provides an
> analysis relating to Apple's EPS (earnings per share). To the best of
> my recollection, Mr. Gala provided this analysis following my request

---

[8] The documents that remain in dispute in Category 5a are: Entries 142, 218-220, and 488.  Black
Supp. Decl. ¶ 15 Bullet No. 5.  The documents that remain in dispute in Category 5b are:  85, 107,
109, 143-144, 151, 165, 175, 177, 212, 217, 221, 224, 270, 272, 274, 303, 315, 317, 319, 321, 323,
325-326, 334, 343, 364, 366, 376, 379, 384, 391, 402, 411, 419, 421, 426, 428, 433, 437, 444, 463,
466, 471, 519, 524, 532, 539, 541, 543, 556, 558, 560, 567, 574, 594, 601, 624, 630, 645, 648,
660, 669, 682, 685, 699, 732, 736, 756, 758, 776, 778, 832, 834, 883-884, and 886.  *Id.*  Bullet No.
6.

United States District Court
Northern District of California

for the information.

Whittington Supp. Decl. ¶ 3 Bullet Point No. 3.  With respect to disputed Entry Nos. 274, 303, 315, 317, 319, 321, 323, 325-326, 334, 428, 433,444, 556, 558, 560, 567, 600, 624, 645, 648, 669, and 685, Whittington states:

> This group of documents consists of internal emails concerning drafts of an internal "Q&A" reference document prepared in anticipation of inquiries from media representatives and others relating to the release of the [Investor] Letter, sometimes including attached drafts of the Q&A document. . . .  Even where the request was not explicit, however, my understanding is that drafts of the Q&A document were forwarded to me (and/or my colleagues in the legal department) for the purpose of soliciting legal advice concerning the contents of the drafts.

*Id.* ¶ 3 Bullet Point No. 4.  With respect to Entry 343, Whittington states:

> This document is an attachment to an email from Matt Blake to me and Adam Talbot, dated December 21, 2018. The email, which has been produced in this litigation as APL-SECLIT_00644786, was sent in the context of internal discussions concerning a draft Q&A document and press release. To the best of my recollection, Mr. Blake emailed this document to me in connection with privileged discussions concerning the content of these draft materials. I believe that producing this document would reveal part of the content of the privileged communications.

*Id.* Bullet Point No. 5. With respect to Entries 364, 366, 376, 379, 384, 391, 402, 411, 419, 421, 426, 519, 524, 532, 539, 541, 594, 630, 660, 682, and 699, Whittington states:

> This group of documents consists of internal emails concerning drafts of the [Investor] Letter, sometimes including attached drafts of the [Investor] Letter. . . Even where the request for legal advice was not explicit, my understanding is that drafts of the [Investor] Letter were forwarded to me (and/or my colleagues in the legal department) for the purpose of soliciting legal advice concerning the contents of the drafts.

*Id.* Bullet Point No. 6.

Adams states in her supplemental declaration as to Entries 174-177 (of which, 175 and 177 fall into this category and are disputed):

> These four documents include email communications, dated August 20, 2018, between Tim Cook (Apple's Chief Executive Officer), Lisa Jackson (Apple's Vice President of Environment, Policy, and Social Initiatives), and me. In these communications, Ms. Jackson shared a draft of presentation materials for a planned presentation to the Company's board of directors concerning foreign trade issues, and asked for comment from Mr. Cook and me. It is my understanding

1

2

3

4

> that Ms. Jackson sent the draft to me in order to solicit my input with respect to the legal implications of the foreign trade issues discussed in her draft presentation. Mr. Cook responded to Ms. Jackson's email with comments, copying me. It is my understanding that in copying me on the communication, Mr. Cook intended to solicit input from me with respect to the legal implications of the foreign trade issues as well. To the best of my understanding, the communications in this group of documents were sent primarily for a legal purpose.

5   Adams Supp. Decl. ¶ 3.

6          In its supplemental brief, Plaintiff asserts that the declarations offered by Defendants fall

7   short because Defendants have not produced "a declaration by the attorney whose advice was

8   sought or given" for each, or any, of the attachments, as the Court ordered."  Plaintiff's

9   Supplemental Brief at 14 (quoting Order). Plaintiff further asserts that the declarations do not

10   "'establish[]' – or even conclude – 'that disclosure of the redacted material will necessarily reveal

11   an attorney's legal advice or a request for legal advice or is otherwise privileged.'"  *Id.* (quoting

12   Order).  As to Entries 142, 218-220, and 488, for example, Plaintiff asserts that Whittington's

13   statement that these documents were sent to the Disclosure Committee to solicit legal advice does

14   not "say who on the Disclosure Committee was asked for or provided legal advice with respect to

15   each document[,]" "who created any of these documents or why they did so[,]" or "explain how[ ]

16   disclosure (or proper redaction) of these documents would reveal privileged communications."  *Id.*

17   at 15.   As to Entry 488, Plaintiff argues that Whittington's declaration is insufficient because the

18   attachment is described in the privilege log as an "Installed base commentary from [non-lawyer]

19   Alex Roman[,]" *id.*  at 15 (quoting Black Decl., Ex. 5a), and "Whittington does not say . . . legal

20   advice, or solicitation of legal advice, is reflected in the document itself, or that the same would be

21   revealed if the document was unredacted."  *Id.*

22          The Whittington supplemental declaration suffers the same shortcoming with respect to the

23   Exhibit 5b attachments that remain in dispute, Plaintiff contends.  *Id.*  Likewise, Plaintiff asserts,

24   the Adams supplemental declaration addressing Entries 175 and 177 is insufficient because the

25   statement in paragraph 3 (quoted above) "when she describes what Ms. Jackson 'asked' for and

26   how Mr. Cook responded" are "clearly describing the *emails*," (Entries 174 and 176) rather than

27   the attachments that Plaintiff challenges (Entries 175 and 177).  *Id.* at 16.  According to Plaintiff,

28   Adams "does not say that the attachments Plaintiff did challenge, Entries 175 and 177, reflect

United States District Court
Northern District of California

38

legal advice or a request for legal advice" and she does not "say their disclosure, or less-than-total redaction, would reveal privileged contents." *Id.*

In their supplemental brief, Defendants reject Plaintiff's challenges to the sufficiency of the Whittington and Adams supplemental declarations, asserting "Plaintiff's supplemental brief feigns ignorance about the nature of these attachments, referring to the file names for the attachments, but ignoring the privilege log's description of the attachments as *drafts*." Defendants' Supplemental Brief at 11 (emphasis in original).  According to Defendants, "There should be no serious dispute that these kinds of drafts, shared with counsel for legal review, are privileged." *Id.* at 12 (citing *Roth*, 254 F.R.D. at 541 (finding that drafts of SEC filings, circulated to counsel for review, were privileged); *In re Banc of California Sec. Litig.*, 2018 WL 6167907, at *2 (drafts shared with counsel for review were privileged); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 329 F.R.D. 656, 662 (D. Or. 2019)).

Defendants represent that "Plaintiff challenges only five attachments in this category that are not drafts – entry nos. 270, 463, 466, 471, and 48." *Id.*  at 12. As to Entry 270, Defendants point to Whittington's statement that it "is an Excel spreadsheet in which an Apple employee provided an analysis relating to Apple's EPS (earnings per share), following Mr. Whittington's request for the information." *Id.*  Defendants assert Plaintiff did not address this document and that is not relevant to their claims.  *Id.* As to Entries – Nos. 463, 466, 471, and 488 – Defendants contend  Whittington's supplemental declaration is adequate because he explains that these attachments were created in connection with the effort  to collect back-up documentation with respect to factual assertions in the Investor Letter, which he oversaw, "for the purpose of ensuring compliance reporting requirements and minimizing legal risk to the Company." *Id.* (citing Whittington Supp. Decl. ¶ 4.)

### 2.  Discussion

As discussed above, where, as here, the description of the document or surrounding circumstances suggests that a document was created for a business purpose, it is Defendants' burden to establish that the document meets all of the required elements for claiming attorney-client privilege, which includes making a "clear showing" that the document was created primarily

for a *legal* purpose. "'[A]ttachments which do not, by their content, fall within the realm of the [attorney-client] privilege cannot become privileged by merely attaching them to a communication with the attorney.'" *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv*., 85 F. Supp. 3d 1074, 1088 (N.D. Cal. 2015) (quoting *Pacamor Bearings, Inc. v. Minebea Co., Ltd*., 918 F.Supp. 491, 511 (D.N.H. 1996); *see also Hanson v. Wells Fargo Home Mortg., Inc*., No. C13–0939JLR, 2013 WL 5674997, at *4 (W.D. Wash. Oct. 17, 2013) ("Documents attached to or included in an attorney-client communication are not automatically privileged, and the party asserting privilege must prove that each attachment is protected by privilege.").

The Court has reviewed *in camera* a sample of documents in this category and finds as follows:

- Entry 85 (attached to entry 84): Entry 85 is a draft Q2'18 Earnings Release Form 8-K. It is attached to an email exchange between Greg Sandberg and a group of individuals, including Sam Whittington (in-house counsel). The cover email reflects comments from the non-attorneys about a change in the draft form that was attached on which the non-attorneys agreed but does not include any reference to legal advice or comments from Whittington. The mere fact that Whittington was copied on the cover email is not sufficient to give rise to privilege as to this attachment. Defendants may submit a supplemental declaration in support of their privilege claim to establish that this attachment (or other similar disputed documents in this category) reflects legal advice. Any supplemental declaration Defendants file must be consistent with the Court's rulings herein and contain detailed facts from the attorney whose advice was sought or given in support of the claimed privilege for each document at issue.

- Entry 107 (attached to entry 106): Entry 107 is a draft of risk for a 10-Q form. The cover email (entry 106) indicates that it was attached to an email from Nancy Paxton to in-house counsel Katerina Kousoula and that the draft reflects legal advice from counsel. Therefore, the Court finds that this draft is privileged.

- Entry 142 (attached to entry 141): Entry 142 is a draft of a Q3'18 external data

sheet that was attached to entry 141, a generic email sent to the entire Disclosure Committee for Review.  For the reasons discussed above, in connection with Entry 100, the Court finds that the mere fact that one of the members of the Disclosure Committee was an attorney is not sufficient to establish that this communication is privileged.  Therefore, the Court also finds that the attachment is not privileged. To the extent the Court has permitted Defendants to provide supplemental declarations to support their claims of privilege as to communications to the Disclosure Committee, they may also support their claim to privilege as to the corresponding attachments based on such declarations.  Where Defendants cannot supply a declaration for the cover email to the Disclosure Committee that meets the requirements set forth above, both the cover email and the attachment must be produced.

- Entries 174 and 175:  Entry 175 is a draft presentation for the Board of Directors that was prepared by Lisa Jackson (a non-attorney) for Tim Cook and addresses foreign trade issues; Entry 174 is an email from Tim Cook to Lisa Jackson with his comments on the presentation. Although the email was also addressed to Kate Adams, it does not reference any legal concerns and the content of both the email and the presentation are focused almost entirely on the international business environment and U.S. trade policy. Despite Adams' statement in her supplemental declaration that the documents were sent to her in order to solicit her input with respect to the legal implications of the foreign trade issues discussed in the draft presentation, the content of these documents indicates this was not the primary purpose of these communications.  Rather, the Court concludes these documents were primarily for a business purpose and therefore, they should not have been withheld as privileged. These documents must be produced to Plaintiff.

- Entry 270 (attached to entry 269): Entry 270 is a chart containing an EPS (earnings per share) calculation that was sent as an attachment to an email (entry 269) from Tejas Gala, a non-attorney, to Matt Blake (also a non-attorney) and Sam

Whittington.  Gala addresses "Matt" in the greeting line of the email but not Whittington. There is no mention in the email of any request by Blake or Whittington for the information contained in the attachment or any discussion of any legal advice related to the information.  Whittington states in his declaration that "[t]o the best of [his] recollection, Mr. Gala provided this analysis following [his] request for the information[,]" Whittington Supp. Decl. ¶ 3 Bullet Point No. 3, but he does not state that he sought the information in order to provide legal advice or that it was provided to him for that reason.  Therefore, the Court finds that on the current record this document is not privileged.  Defendants may file a supplemental declaration from Whittington that provides specific facts showing that his request for the information in this document was primarily for a legal purpose and that includes a description of the general nature of the legal issue.

- Entry 463 (attached to Entry 462): This document is attached to an email from in-house counsel Sam Whittington.  Both the email and the attachment reflect Whittington's legal advice about the Investor Letter and therefore are privileged.

- Entry 466:  This document is an email from Alejandro Roman to Sam Whittington and Nancy Paxton, copied to Kevan Pareck and Steve Dowling.  It addresses the time required to obtain an installed base measurement and the possibility of obtaining that measurement in time for an interview with Tim Cook on January 2, 2019.  Although Whittington states in his supplemental declaration that this document reflected efforts to collect back-up documentation to support the factual assertions in the Investor Letter, it is apparent from the email exchange that the primary purpose involved obtaining the data in time for the interview, which is a business purpose.  Therefore, the Court finds that this communication is not privileged and should be produced to Plaintiff.

- Entry 471:  This document is a draft of the Investor Letter reflecting Whittington's legal advice. The Court finds that this document is privileged.

IV.     **CONCLUSION**

No later than **August 5, 2022**, Defendants shall provide to Plaintiff all of the specific documents that the Court has reviewed *in camera* and found to be non-privileged except those as to which the Court has specifically permitted Defendants to supply supplemental declarations of counsel in support of their privilege claims.  No later than **August 12, 2022,** Defendants shall provide to Plaintiff: 1) all of the documents that Defendants find cannot be withheld on the basis of attorney-client privilege based on the rulings and guidance contained in this Order; and 2) the supplemental declarations discussed above (where permitted), along with an amended privilege log consistent with the Court's rulings reflecting any remaining disputed documents. To the extent the Court has permitted Defendants to submit supplemental declarations to support their claims of privilege, the Court cautions Defendants that any such declarations must be consistent with the Court's rulings and guidance herein.  The parties shall meet and confer as to the remaining disputed documents and file a joint letter, not to exceed five pages, that identifies the documents that remain in dispute, along with the supplemental declarations of counsel, no later than **August 19, 2022**.   Upon receipt of the letter and supporting materials, the Court will determine whether any further briefing or oral argument is necessary to decide the parties' remaining disputes.

**IT IS SO ORDERED.**

Dated:  August 3, 2022

_____
JOSEPH C. SPERO
Chief Magistrate Judge