JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
MICHAEL D. TORPEY (SBN 79424)
mtorpey@orrick.com
ALEXANDER K. TALARIDES (SBN 268068)
atalarides@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 (415) 773-5700
Facsimile:    +1 (415) 773-5759

Attorneys for Defendants Apple Inc.,
Timothy Cook, and Luca Maestri

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Civil Action No. 4:19-cv-02033-YGR<br><br>**DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>Judge:    Honorable Yvonne Gonzalez Rogers |

**I.    INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72-2, Defendants Apple Inc., Timothy Cook, and Luca Maestri (collectively, "Defendants") respectfully ask the Court to grant them relief from the Magistrate Judge's August 3, 2022 Order Granting in Part and Denying in Part Plaintiff's Motion to Compel (ECF No. 272, the "Order") because it was clearly erroneous and contrary to law as to the documents the Magistrate Judge deemed non-privileged, and therefore should be set aside in that respect.

In directing Defendants to produce certain communications about internal preparations for Apple's January 2019 announcement that it would miss its quarterly revenue guidance, the Order first violated established law in concluding that, absent some express reference to a specific legal issue, an in-house lawyer's advice regarding that miss is primarily "business advice," not "legal advice." To put it bluntly, this conclusion wholly undermines the foundational role of the attorney-client privilege. After all, every communication within a corporation has some "business purpose," and corporate personnel should be free to seek legal advice from their in-house counsel concerning those matters without fear that the attorney-client privilege will not protect their communications.

The second clearly erroneous departure from settled law was the Order's conclusion that certain internal communications about the announcement—even when they involved Apple's in-house counsel—were non-privileged because the communications primarily involved "business concerns." *Id.* at 21-25. The Order erred because it relies upon nothing more than the Magistrate Judge's own experience and ignores the sworn testimony to the contrary (*see* Dkt Nos. 246-6 and 246-13). Order at 20. Remarkably, the Order's holding extended to communications in which Apple's CEO, Mr. Cook, sought input and comments directly from Apple's General Counsel, Ms. Adams. *Id.* at 24-25.

Even if the Order had correctly determined that the January 2019 announcement had a business purpose, it clearly erred in a third critical respect by failing to assess whether the communications here had multiple purposes (including seeking legal advice) of equal significance, in which case they would be privileged. The Order cites the test adopted in *In re*

*Grand Jury*, 23 F.4th 1088 (9th Cir. 2022), under which communications with a dual purpose—both legal and business—are privileged if they are sent primarily to seek legal advice, *id.* at 1091. Stated differently, the attorney-client privilege protects a communication whose "primary purpose" is to seek legal advice. *Id.* at 1095. Importantly, the Ninth Circuit expressly "le[ft] open whether" a dual-purpose communication would be privileged if seeking legal advice was "<u>a</u> primary purpose" of the communication rather than "<u>the</u> primary purpose." *Id.* at 1094-95 (emphasis added).[1] The court did not decide that question because it was not necessary to resolve the dispute before it, but it noted that other cases might involve communications with a "legal purpose [that] is just as significant as a non-legal purpose," and observed that those communications could be protected under the attorney-client privilege. *Id.* at 1095. This is just such a case, and the Order should have examined whether seeking legal advice was "<u>a</u> primary purpose" of the communication before making a privilege determination, even if the communication also had a business purpose. *Id.* The Order clearly erred by not doing so.

## II.   ARGUMENT

### A.   The Order Adopted a Clearly Erroneous View of a "Legal Purpose"

The Order's view of the privilege was unduly narrow and contrary to established law in finding communications to not be privileged where they do not explicitly reference legal matters. The law, however, is clear that an implied request for legal advice suffices to support the attorney-client privilege. *See Cal. Inst. of Tech. v. Broadcom, Ltd.*, 2018 WL 1468371, at *3 (C.D. Cal. Mar. 19, 2018). The Order noted that precedent (*see* Order at 22), but then disregarded it to find that documents were not privileged because they did not expressly "reference any specific legal concerns." *Id.* at 24.

For example, Entry No. 288 is an email from Mr. Cook to Ms. Adams and Luca Maestri (Apple's CFO), in which Mr. Cook seeks feedback from Ms. Adams and Mr. Maestri on an outline for a call he was to have with Apple's Board of Directors concerning the January 2019 announcement. The Order concluded that this email is "a generic request for feedback from Cook

---

[1] *In re Grand Jury* is the subject of a petition for writ of certiorari currently pending before the Supreme Court. No. 21-1397 (U.S.).

to both Adams and Maestri that does not reference any specific legal concerns, is not primarily aimed at seeking legal advice and therefore is not privileged." *Id.* That conclusion was clear error. Were the Order's reasoning correct, it would require a layperson seeking legal advice to use certain magic "legal" words to ensure their communications with counsel fall within the privilege. As relevant here, a CEO should be able to seek privileged legal advice from his General Counsel without needing to spell out a precise "legal concern," even when the same email additionally requests feedback from other executives. What is more, if Ms. Adams's response to Mr. Cook was privileged, as the Order correctly concluded (at 24), then so must have been Mr. Cook's initial email. *Cf. United States v. Ruehle,* 583 F.3d 600, 607 (9th Cir. 2009) ("The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, ... as well as an attorney's advice in response to such disclosures."); *Dawe v. Corr. USA,* 263 F.R.D. 613, 621 (E.D. Cal. 2009) (holding that privileged response sweeps prior email within the privilege).

**B.     The Order Disregarded the Sworn Declarations of Apple's In-House Counsel**

The Order committed another clear error by ignoring sworn declarations from the percipient witnesses and reaching its own conclusions without any support from the record. The January 2, 2019 announcement was anything but an ordinary business communication. It was a concession that Apple would not achieve the quarterly revenue guidance it had announced two months earlier, and was made outside the company's normal reporting cycle. Of course, as demonstrated by this very suit, that concession had significant legal consequences and, therefore, it required *more* sophisticated and *more* robust legal advice, not less. Apple's in-house counsel provided a declaration explaining this. ECF No. 246-13 ¶ 3. Other than the announcement itself, the Order relies on no evidence to discern its purpose. This is clearly erroneous in light of the sworn declarations of Apple's General Counsel and other in-house counsel about the legal nature of their work on the January 2019 off-cycle announcement. *Id.*; ECF No. 246-6 ¶¶ 4-7.

The Order is replete with instances in which the Magistrate Judge substituted his own view about each document's "primary purpose" for the uncontroverted sworn statements of Apple's in-house counsel. That was clear error. After all, it was Apple's in-house counsel who

was involved in those communications, and who attested that each document at issue was sent primarily for a legal purpose. *See* ECF Nos. 246-6 and 246-13. For example, Entry No. 365 is an email string including detailed comments from Ms. Adams concerning a draft of the January 2, 2019 Letter from Mr. Cook to Apple Investors. Apple's in-house counsel explains in a sworn declaration that the communication was sent primarily for a legal purpose. ECF No. 246-13 at 3. Yet the Order decided that because Ms. Adams's comments were purportedly "entirely aimed at business concerns, focusing on how best to make *business* points"—a conclusion Defendants dispute—"Adams was not acting in a legal capacity with respect to these comments, which do not fall within the attorney-client privilege." Order at 23. If the Order stands, in-house counsel will be left to guess at just how explicitly "legal" their advice must be before the attorney-client privilege protects it, and which magic words and incantations they must resort to in their communications to make clear that their "professional skill and training would have value in the matter." Restatement (Third) of the Law Governing Lawyers, § 72. That is not the law, nor is it how legal advice is often sought and provided. *See Cal. Inst. of Tech.*, 2018 WL 1468371, at *3.

### C. The Order Clearly Erred In Failing To Consider Whether Legal Advice Was A Primary Purpose of the Communications And Thus Whether the Communications Were Privileged

As indicated above, the Order applied the test adopted in *In re Grand Jury* without considering whether the relevant communications were sent for "a primary purpose" of seeking legal advice and thus privileged. Based on the facts and tax context of that case, the Ninth Circuit did not find it necessary to resolve the question of whether its primary-purpose test means that seeking legal advice must be "the primary purpose" of the communication, as opposed to merely "a primary purpose." 23 F.4th at 1094-95. It noted, however, that "trying to find the one primary purpose for a communication motivated by two sometimes overlapping purposes (one legal and one business, for example) can be an inherently impossible task." *Id.* at 1094 (quoting *Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014)). That is the situation here. It is exceedingly difficult—if not impossible—to identify the singular "primary purpose" of an investor communication that counsel knew would have significant legal ramifications. *See* ECF No. 114 ¶ 105 (plaintiff in this case relying upon the Cook Letter to allege loss causation, a necessary

element of its claim).

The Order misapprehended *In re Grand Jury*'s holding, assuming without explanation that a dual-purpose communication can only have one "primary purpose," and that the purpose of seeking legal advice must be "<u>the</u> primary purpose" for the communication to fall within the attorney-client privilege. In doing so, the Order failed to acknowledge that the Ninth Circuit noted that "a" communication's "primary purpose" as seeking legal advice could be sufficient to "change the outcome of a privilege analysis" for those communications. 23 F.4th at 1095. At a minimum, the Magistrate Judge should have determined whether the communications at issue had more than one primary purpose, assessed whether seeking legal advice was "a primary purpose" of the communications, and then made the privilege determination. Failing to conduct this analysis was clear error.[2]

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant relief from the Magistrate's Order by entering an order denying Plaintiff's Motion to Compel with respect to the documents remaining in dispute.[3]

Dated: August 5, 2022                                ORRICK, HERRINGTON & SUTCLIFFE LLP

                                                                    */s/ James N. Kramer*
                                                                    JAMES N. KRAMER

                                                                    Attorneys for Defendants Apple Inc.,
                                                                    Timothy Cook, and Luca Maestri

---

[2] To the extent the Magistrate Judge faithfully applied Ninth Circuit precedent on this point, and *In re Grand Jury* stands for the proposition that a communication could only have one primary purpose, then Defendants argue that this is wrong as a matter of law and that the D.C. Circuit's opinion in *Kellogg*, which *In re Grand Jury* found persuasive, properly defines the scope and application of the attorney-client privilege under federal law.

[3] Defendants stand ready to provide, at the Court's request, an *in camera* submission of the documents remaining in dispute.