1  ROBBINS GELLER RUDMAN
   & DOWD LLP
2  SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
3  KENNETH J. BLACK (291871)
HADIYA K. DESHMUKH (328118)
4  Post Montgomery Center
One Montgomery Street, Suite 1800
5  San Francisco, CA  94104
Telephone:  415/288-4545
6  415/288-4534 (fax)
shawnw@rgrdlaw.com
7  dpfefferbaum@rgrdlaw.com
kennyb@rgrdlaw.com
8  hdeshmukh@rgrdlaw.com
     – and –
9  MARK SOLOMON (151949)
JASON A. FORGE (181542)
10  RAPHAELLA FRIEDMAN (323324)
655 West Broadway, Suite 1900
11  San Diego, CA  92101
Telephone:  619/231-1058
12  619/231-7423 (fax)
marks@rgrdlaw.com
13  jforge@rgrdlaw.com
rfriedman@rgrdlaw.com
14
Lead Counsel for Lead Plaintiff
15
[Additional counsel appear on signature page.]
16
          UNITED STATES DISTRICT COURT
17
         NORTHERN DISTRICT OF CALIFORNIA
18
             OAKLAND DIVISION
19

| In re APPLE INC. SECURITIES LITIGATION | ) ) ) | Case No. 4:19-cv-02033-YGR |
|---|---|---|
|  | ) | CLASS ACTION |
| This Document Relates To: | ) ) | LEAD PLAINTIFF'S NOTICE OF MOTION AND OMNIBUS MOTION TO EXCLUDE |
| ALL ACTIONS. | ) ) ) | OPINION TESTIMONY OF DEFENDANTS' PROPOSED EXPERTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |

DATE:      TBD
TIME:      2:00 p.m.
CTRM:    1, 4th floor
JUDGE:   Hon. Yvonne Gonzalez Rogers

4869-0699-4482.v1

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. LEGAL STANDARD ...........................................................................................3

III. ARGUMENT ........................................................................................................4

   A. Yang Appears Experienced and Qualified but Much of His Testimony Is Unreliable and Irrelevant and Must Be Excluded .....................................4

      1. Yang's Opinions Are Based Upon an Improper Re-Framing of Plaintiff's Allegations and Thus Should Be Excluded as Unreliable and Unduly Prejudicial .....................................................4

      2. Yang's Testimony that Cook's November 1, 2018 Statements Were "Accurate" Invades the Province of the Court and Jury ...................6

      3. Yang's Testimony Regarding the Impact of the Arrest of Huawei's CFO Is Irrelevant, Prejudicial, and Contradicts Apple Executives' Conclusions on the Topic.....................................8

      4. Yang's Opinion About Unexpected Changes in the Chinese Economy Lacks Foundation to Provide Testimony on Apple's State of Mind, Is Irrelevant, and Would Be Prejudicial.............................9

   B. Gauna's Opinions Are Not Based on Any Methodology, Are Inappropriate for Expert Testimony, Are Irrelevant and Prejudicial, and Should Be Excluded ......................................................................11

      1. Gauna's Opinions Regarding Disclosure Requirements Under the Securities Laws Invade the Province of the Court, Are Irrelevant and Misleading, and Must Be Excluded .....................................12

      2. Gauna's Opinions About Apple's Forecasting Process Are Irrelevant, Unhelpful, and Misleading .....................................13

      3. Gauna's Conclusions Based on Analyst Report Review Lack a Reliable Methodology and Should Be Excluded......................................14

      4. Gauna's Conclusion, that the "Market Did Not Hear Mr. Cook to Say or Imply There Was No Pressure or Risks Related to Apple's Business in China" Must Be Excluded ......................................15

         a. Gauna's Conclusion Distorts Plaintiff's Allegations, Is Irrelevant, and Must Be Excluded .................................................15

         b. Gauna's Conclusion Is Misleading and Prejudicial and Must Be Excluded.................................................16

         c. Gauna's Conclusion Is Not a Proper Subject for Expert Testimony .................................................17

LEAD PLAINTIFF'S NTC OF MOTION AND OMNIBUS MOTION TO EXCLUDE OPINION TESTIMONY OF DEFS' PROP. EXPERTS; MEM. OF P&A - 4:19-cv-02033-YGR    - i -

4869-0699-4482.v1

1

2                                                                              **Page**

3

      C.    Trueman's Opinions Are Unreliable, Prejudicial, and Should Be Excluded.........18

4

5             1.    Trueman's Opinions Are Not the Product of a Reliable
                    Methodology and Should Be Excluded .......................................................18

6             2.    Trueman's Opinions Regarding Analysts' Understandings Should
                    Be Excluded Because the Jury Can Review and Interpret Analyst

7                   Reports on Their Own...............................................................................20

8             3.    Trueman Distorts Plaintiff's Claims, which Risks Confusing the
                    Jury and Renders His Report Irrelevant and Excludable .........................22

9
              4.    Trueman's References to Apple's Gaming Applications and

10                  Foreign Currency Issues Are Irrelevant, Unreliable, and Likely to
                    Confuse the Jury .....................................................................................23

11
              5.    Section III of Trueman's Rebuttal Report Should be Excluded as

12                  Improper Rebuttal Testimony ....................................................................25

13     D.    Poer's Summary Witness and Expert Opinions Are Unreliable,
             Misleading, and Should Be Excluded..............................................................25

14
              1.    Poer Is Not Qualified to Offer Expert Opinions on Wide-Ranging,

15                  Largely Irrelevant Issues...........................................................................25

16            2.    Poer Should Be Excluded as a Summary Witness Under FRE 1006 ........27

17            3.    Poer's Opinions Are Based on Information Defendants Failed to
                    Disclose During Discovery.........................................................................27

18
              4.    Poer Does Not Disclose the Information He Learned from the

19                  Previously Undisclosed Apple Witnesses...................................................28

20            5.    Poer's Intermingled Expert and Summary Opinions Will Mislead
                    the Jury.......................................................................................................29

21
       E.    Grenadier's Rebuttal Report Should Be Excluded in Part as Irrelevant,

22           Unhelpful, Confusing, and Beyond the Scope of Rebuttal Opinion......................31

23            1.    Grenadier's Conditional Rebuttal Opinions 1 and 2 Regarding
                    Lack of Damages Are Irrelevant and Should Be Excluded .......................31

24
              2.    Grenadier's Rebuttal Opinion 3 Is Based Upon a Distortion of the

25                  Court's Class Cert. Order, Unsupported by Any Expert Analysis
                    and Should Be Excluded.............................................................................32

26
              3.    Grenadier's Opinion 4 on Loss Causation Is Contrary to Law,

27                  Distorts the Allegations and Should Be Excluded.....................................33

28

1

2                                                                                      **Page**

3
                      a.      Grenadier's Opinions Regarding Loss Causation on
4                             November 5 and 12, 2018 Should Be Excluded ...........................34

5                      b.      Grenadier's Opinions Regarding Loss Causation on
                              January 3, 2019 Should be Excluded ...............................................35
6
              4.      Grenadier's Opinion 5 Related to Damages Must Be Excluded in
7                     Part as Contrary to Law, Baseless, and Overly Prejudicial .....................36

8             5.      Grenadier's Opinions Concerning Options Damages Should be
                      Excluded in Part ..................................................................................38
9
      F.      Taylor's Rebuttal Report Must Be Excluded Because It Is Cumulative and
10            Outside the Scope of Shenkar's Report .........................................................38

11   IV.      CONCLUSION..............................................................................................40
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*ADT Sec. Servs. v. Sec. One Int'l, Inc.*,
    2013 WL 10542929 (N.D. Cal. Sept. 15, 2013) ............................................................ *passim*

*AngioScore, Inc. v. TriReme Med., Inc.*,
    2015 WL 5258786 (N.D. Cal. Sept. 8, 2015) ........................................................................14

*Apple v. Samsung Elecs. Co.*,
    2012 WL 3155574, (N.D. Cal. Aug. 2, 2012) ......................................................................27

*Apple, Inc. v. Samsung Elecs. Co.*,
    2012 WL 2571332 (N.D. Cal. June 30, 2012) ......................................................................33

*Beech Aircraft Corp. v. United States*,
    51 F.3d 834 (9th Cir. 1995) ................................................................................................17

*Biotechnology Value Fund, L.P. v. Celera Corp.*,
    2015 WL 138168 (N.D. Cal. Jan. 9, 2015) ....................................................................14, 24

*Biotechnology Valve Fund, L.P. v. Celera Corp.*,
    2015 U.S. Dist. LEXIS 3914 (N.D. Cal. Jan. 9, 2015) ................................................ *passim*

*BP Prods. N. Am., Inc. v. Grand Petroleum, Inc.*,
    2021 WL 4482138 (N.D. Cal. Sept. 30, 2021) ..............................................................6, 7, 13

*Chamberlain v. Hartog, Baer & Hand, APC*,
    2022 U.S. Dist. LEXIS 30956 (N.D. Cal. Feb. 22, 2020) ....................................................7, 8

*City & Cnty. of S.F. v. Purdue Pharma L.P.*,
    2022 U.S. Dist. LEXIS 73909 (N.D. Cal. Apr. 22, 2022) ......................................................39

*Clear-View Techs., Inc. v. Rasnick*,
    2015 WL 3509384 (N.D. Cal. June 3, 2015) ........................................................................25

*Creach v. Spokane Cnty.*,
    2013 WL 12177099 (E.D. Wash. May 2, 2013)........................................................................4

*CZ Servs., Inc. v. Express Scripts Holding Co.*,
    2020 WL 4518978 (N.D. Cal. Aug. 5, 2020) ....................................................................4, 18

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)........................................................................................................ *passim*

LEAD PLAINTIFF'S NTC OF MOTION AND OMNIBUS MOTION TO EXCLUDE OPINION
TESTIMONY OF DEFS' PROP. EXPERTS; MEM. OF P&A - 4:19-cv-02033-YGR
4869-0699-4482.v1

\- iv -

1

2                                                                                          **Page**

3

4   *Droplets, Inc. v. Yahoo! Inc.*,
        2022 WL 2670188 (N.D. Cal. Feb. 28, 2022) ..................................................................29

5   *Dura Pharms., Inc. v. Broudo*,
        544 U.S. 336 (2005).........................................................................................................33

6

7   *GE v. Joiner*,
        522 U.S. 136 (1997)...................................................................................................18, 22

8

9   *Glickenhaus & Co. v. Household Int'l, Inc.*,
        787 F.3d 408 (7th Cir. 2015) ...........................................................................................37

10  *Halliburton Co. v. Erica P. John Fund, Inc.*,
        573 U.S. 258 (2014).........................................................................................................37

11

12  *Huawei Techs., Co. v. Samsung Elecs. Co.*,
        340 F. Supp. 3d 934 (N.D. Cal. 2018) ...................................................................4, 6, 39

13

14  *In re Allstate Corp. Sec. Litig.*,
        2022 WL 842737 (N.D. Ill. Jan. 10, 2022) .....................................................................36

15  *In re Alphabet, Inc. Sec. Litig.*,
        1 F.4th 687 (9th Cir. 2021) ..............................................................................................12

16

17  *In re ConAgra Foods Inc.*,
        302 F.R.D. 537 (C.D. Cal. 2014) .......................................................................................7

18  *In re Daou Sys.*,
        411 F.3d 1006 (9th Cir. 2005) .........................................................................................33

19

20  *In re Macbook Keyboard Litig.*,
        2022 U.S. Dist. LEXIS 34597 (N.D. Cal. Jan. 22, 2022) ................................................39

21

22  *In re Novatel Wireless Sec. Litig.*,
        2013 WL 12144150 (S.D. Cal. Oct. 25, 2013) ................................................................35

23

24  *In re Rezulin Prods. Liab. Litig.*,
        309 F. Supp. 2d 531 (S.D.N.Y. 2004)..............................................................................21

25  *In re Stratosphere Corp. Sec. Litig.*,
        66 F. Supp. 2d 1182 (D. Nev. 1999)......................................................................17, 21, 22

26

27  *Khoja v. Orexigen Therapeutics, Inc.*,
        899 F.3d 988 (9th Cir. 2018) ...........................................................................................12

28

1

2                                                                                    **Page**

3

4   *Krouch v. Wal-Mart Stores, Inc.*,
        2014 WL 5463333 (N.D. Cal. Oct. 24, 2014)......................................................13, 15, 22, 26

5   *Lloyd v. CVB Fin. Corp.*,
        811 F.3d 1200 (9th Cir. 2016) ...........................................................................................34

6

7   *MediaTek Inc. v. Freescale Semiconductor, Inc.*,
        2014 WL 971765 (N.D. Cal. Mar. 5, 2014).......................................................................12

8

9   *Messick v. Novartis Pharms. Corp.*,
        747 F.3d 1193 (9th Cir. 2014) ...........................................................................................15

10  *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
        232 F. Supp. 3d 558 (S.D.N.Y. 2017)................................................................................20

11

12  *Microsoft Corp. v. Motorola, Inc.*,
        2013 U.S. Dist. LEXIS 109905 (W.D. Wash. Aug. 5, 2013) ..............................................7

13

14  *Mineworkers' Pension Scheme v. First Solar, Inc.*,
        881 F.3d 750 (9th Cir. 2018) .............................................................................................33

15  *Miranda v. U.S. Sec. Assocs., Inc.*,
        2019 WL 2929966 (N.D. Cal. July 8, 2019).....................................................................28

16

17  *Mulderrig v. Amyris, Inc.*,
        340 F.R.D. 575 (N.D. Cal. 2021)......................................................................................38

18

19  *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
        730 F.3d 1111 (9th Cir. 2013) ...........................................................................................33

20  *Otto v. LeMahieu*,
        2021 WL 1615311 (N.D. Cal. Apr. 26, 2021) .............................................................14, 26

21

22  *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
        845 F.3d 1268 (9th Cir. 2017) .............................................................................................7

23

24  *SA Music LLC v. Apple, Inc.*,
        2022 U.S. Dist. LEXIS 50427 (N.D. Cal. Mar. 21, 2022).....................................................8

25  *SEB Inv. Mgmt. AB v. Symantec Corp.*,
        335 F.R.D. 276 (N.D. Cal. 2020).......................................................................................37

26

27  *SEC v. BankAtlantic Bancorp, Inc.*,
        2013 WL 12009694 (S.D. Fla. Nov. 14, 2013)..............................................................28, 30

28

1

2                                                                              **Page**

3

4    *SEC v. Dunn*,
        2012 U.S. Dist. LEXIS 17796 (D. Nev. Feb. 14, 2012) ....................................................21

5    *SEC v. Leslie*,
6       2010 WL 2991038 (N.D. Cal. July 29, 2010)..............................................................7

7    *Shelton v. Air & Liquid Sys. Corp.*,
        2022 WL 2712381 (N.D. Cal. July 11, 2022)..............................................................4

8
     *Shirar v. Guerrero*,
9       2017 U.S. Dist. LEXIS 232684 (C.D. Cal. Aug. 2, 2017)......................................20

10   *Smilovits v. First Solar Inc.*,
11      2019 WL 7282026 (D. Ariz. Dec. 27, 2019) ........................................................5, 13

12   *Stathakos v. Columbia Sportswear Co.*,
        2017 WL 1957063 (N.D. Cal. May 11, 2017) ......................................................13

13
     *Trulove v. D'Amico*,
14      2018 WL 1090248 (N.D. Cal. Feb. 27, 2018) ......................................................26

15   *United States v. Baker*,
16      10 F.3d 1374 (9th Cir. 1993) ..................................................................................27

17   *United States v. Cervantes*,
        2015 WL 5569276 (N.D. Cal. Sept. 22, 2015) .....................................................3

18
     *United States v. Cervantes*,
19      2015 WL 7734281 (N.D. Cal. Dec. 1, 2015)...................................................15, 22

20   *United States v. Cervantes*,
        2016 WL 491599 (N.D. Cal. Feb. 9, 2016) .........................................................29

21
     *United States v. Holmes*,
22      2021 U.S. Dist. LEXIS 98060 (N.D. Cal. May 21, 2021) ....................................23

23
     *United States v. Leon-Reyes*,
24      177 F.3d 816 (9th Cir. 1999) ..................................................................................27

25   *United States v. Redlightning*,
        624 F.3d 1090 (9th Cir. 2010) ................................................................................15

26
     *United States v. Reyes Vera*,
27      770 F.3d 1232 (9th Cir. 2014) ................................................................................29

28

**Page**

*United States v. Spangler*,
  810 F.3d 702 (9th Cir. 2016) ................................................26

*Vizcarra v. Unilever United States, Inc.*,
  339 F.R.D. 530 (N.D. Cal. 2021).............................................16

*Waymo LLC v. Uber Techs., Inc.*,
  2017 WL 6887043 (N.D. Cal. Nov. 14, 2013) ....................................26

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(1) ..............................................................34
  §78u-4(b)(4) ..............................................................33

Federal Rules of Civil Procedure
  Rule 26(a)..................................................................1
  Rule 26(a)(2)(B)(i)-(ii)...................................................29
  Rule 26(a)(2)(D)(i)........................................................39
  Rule 26(a)(2)(D)(ii) ...................................................39, 40
  Rule 37.....................................................................1

Federal Rule of Evidence
  Rule 401 ...............................................................3, 15
  Rule 403 ............................................................... *passim*
  Rule 702 ............................................................... *passim*
  Rule 702(c)................................................................18
  Rule 704(a)..............................................................6, 7
  Rule 1006...........................................................1, 27, 31

**NOTICE OF MOTION AND MOTION**

TO:    ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on a date to be determined, at 2:00 p.m., before the Honorable Yvonne Gonzalez Rogers, United States District Judge, at the United States District Court, Northern District of California, Oakland Division, 1301 Clay Street, Courtroom 1, 4th Floor, Oakland, California 94612, Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund ("Plaintiff")[1] hereby brings this Motion pursuant to Pursuant to Federal Rules of Evidence 403, 702, and 1006 and Federal Rules of Civil Procedure 26(a) and 37 to exclude all, or portions of, the expert testimony of Eric Poer ("Poer"), Brett Trueman ("Trueman"), Dennis Yang ("Yang"), Alex Gauna ("Gauna"), Steven Grenadier ("Grenadier"), and Carlyn R. Taylor ("Taylor").  This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Shawn A. Williams ("Williams Decl.") and the exhibits thereto, and any additional materials and arguments that may be submitted by Plaintiff in further support of this Motion, the pleadings and filings herein and such other evidence, written or oral, as may be presented.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendants have engaged in a high risk gambit, apparently believing that the chance of their proposed experts being completely excluded is slim.  Despite this Court's prior rulings soundly rejecting their efforts to reframe Plaintiff's allegations, Defendants have proffered six different experts, with nine separate reports, none of which directly addresses Plaintiff's actual claims.[2]  Instead, each of them furthers Defendants' preferred, yet distorted, factual and legal narrative, which has resulted in opinions only loosely tethered to the claims actually alleged.

---

[1]    "Defendants" are Apple Inc. ("Apple" or the "Company") and "Individual Defendants" Chief Executive Officer ("CEO") Timothy D. Cook ("Cook"), and Chief Financial Officer ("CFO") Luca Maestri.

[2]    On April 27, 2022, Defendants disclosed reports by Poer, Trueman, Yang, and Gauna.  On May 9, 2022, Poer and Gauna disclosed corrected reports.  On June 10, 2022, Grenadier, Taylor,

1    Unable to defend the claims as alleged, Defendants aggressively endeavor to change them

2 and have retained "experts" to support this effort.  For example, nearly every one of the experts

3 offers some form of opinion that is rooted in the false premise that the reasonableness or robustness

4 of Apple's revenue forecasting process is central to Plaintiff's claims, or a defense thereto.  Most

5 glaringly, Gauna opines: "Apple's official guidance as of November 1st, 2018, was based on an

6 informed and objective assessment of its business prospects"; Poer opines: "Apple maintained a

7 robust and comprehensive forecasting process . . . [and] reasonably estimate[d] iPhone demand";

8 and Taylor opines: Apple's Forecasting Process Was Reliable."  But the reasonableness and

9 reliability of Apple's forecasting process has only marginal, if any, relevance to the issues in this

10 matter.   Plaintiff  does  not  allege  that  the  1Q19  revenue  guidance  was  an  actionable

11 misrepresentation, *i.e.*, knowingly false without reasonable basis, though it appears that may have

12 been the case.

13    Plaintiff has pled that, as of November 1, 2018, Defendants knew, but failed to disclose,

14 decelerating economic conditions in China were putting significant pressure on its business there,

15 including demand for the Company's newly-released iPhones, particularly the iPhone XR.  The

16 facts uncovered in discovery demonstrate Plaintiff can and will prove these allegations.  Prior to

17 November 1, 2018: (i) Apple's Chinese iPhone resellers told Apple that consumer demand for the

18 iPhone XR was weak and directed Apple to stop shipping the iPhones; (ii) Apple began drastically

19 cutting production for the iPhone XR by millions of units; (iii) Apple slashed its internal 1Q19

20 revenue outlook by nearly $6 billion; (iv) Apple reduced its internal 1Q19 iPhone sales outlook by

21 6 million units; and (v) Apple cut its 1Q19 internal growth outlook for Greater China from 4% to

22 -1%.  In light of these facts, the jury could find Apple's forecasting process reasonable, and

23 Defendants would ***still*** be liable for securities fraud.  And yet, Defendants have presented

24 voluminous expert testimony dedicated to bolstering their forecasting process in an effort to

25 mislead, and jury into believing, it is relevant to assessing Plaintiff's claims.

26

27

28

Poer, and Yang submitted rebuttal reports.  Apple has removed their confidentiality designations
for each of these reports.

1      But the focus on the forecast is just one of many instances detailed herein, where

2  Defendants employ the use of "experts" as vehicles for wholly improper purposes.  For example,

3  Defendants intend to have their experts usurp the role of the jury by testifying as to what Cook

4  ***meant*** by his words on November 1, 2018, and what analysts and investors ***understood*** them to

5  mean.  One of their proposed experts expects to testify that he has concluded Cook's alleged

6  misrepresentations on November 1, 2018, were actually true.  Another expert bases opinions on

7  interviews with Apple employees never identified in discovery as supporting their defenses and,

8  from those interviews, prepares argumentative and misleading "summaries" of evidence.

9      Ultimately, Defendants utilize their experts not to assist the jury in its fact-finding mission

10  rather to mislead, obfuscate, and confuse.  While the threshold for exclusion may be high, none of

11  the opinions offered rests on a sound foundation rooted in the facts or law of this case.  These

12  defects infect the entirety of the opinions offered, which are irrelevant, unhelpful, prejudicial, and

13  have no place in front of a jury.

## II.   LEGAL STANDARD

15      Under FRE 702, an expert may testify if: (a) the expert's scientific, technical, or other

16  specialized knowledge will help the trier of fact to understand the evidence or to determine a fact

17  in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of

18  reliable principles and methods; and (d) the expert has reliably applied the principles and methods

19  to the facts of the case.  FRE 702.  "Such evidence must also be relevant pursuant to Federal Rule

20  of Evidence 401 and may be excluded pursuant to Rule 403."  *United States v. Cervantes*, 2015

21  WL 5569276, at *1 (N.D. Cal. Sept. 22, 2015).  Under FRE 401, "[e]vidence is relevant if . . . the

22  fact is of consequence in determining the action."  FRE 401.  Under FRE 403, "[t]he court may

23  exclude relevant evidence if its probative value is substantially outweighed by a danger of one or

24  more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

25  wasting time, or needlessly presenting cumulative evidence."  FRE 403.

26      "Trial judges are charged with the responsibility of acting as gatekeepers to ensure that an

27  expert's testimony both rests on a reliable foundation and is relevant to the task at hand."

28  *Cervantes*, 2015 WL 5569276, at *1 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579

(1993)).  "Relevance is sometimes given less attention as a gatekeeping factor, but it is as much a precondition of admissibility as reliability . . . '[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'"  *CZ Servs., Inc. v. Express Scripts Holding Co.*, 2020 WL 4518978, at *1 (N.D. Cal. Aug. 5, 2020).[3]  "[T]estimony must 'fit' the case, and be tied to the claims and facts in a way that helps the jury decide the dispute between the parties."  *Id.*

Expert testimony is also properly excluded or limited where it is cumulative or redundant.  *See Shelton v. Air & Liquid Sys. Corp.*, 2022 WL 2712381, at *5 (N.D. Cal. July 11, 2022); *CZ Servs.*, 2020 WL 4518978, at *3 ("The parties are advised that duplicative expert testimony will not be permitted at trial.").  The Court should be especially vigilant where one expert seeks to "bolster the testimony of another expert."  *See Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 993-94 (N.D. Cal. 2018); *Creach v. Spokane Cnty.*, 2013 WL 12177099, at *3 (E.D. Wash. May 2, 2013) (same).

## III.   ARGUMENT

### A.   Yang Appears Experienced and Qualified but Much of His Testimony Is Unreliable and Irrelevant and Must Be Excluded

Plaintiff does not dispute that Yang is experienced and qualified to offer expert testimony concerning some issues related to the Chinese economy.  However, the opinions he seeks to offer here are either: (i) unreliable; (ii) invade the province of the court and the jury; or (iii) while marginally relevant, are so highly misleading and prejudicial, they must be excluded.

#### 1.   Yang's Opinions Are Based Upon an Improper Re-Framing of Plaintiff's Allegations and Thus Should Be Excluded as Unreliable and Unduly Prejudicial

Yang's entire report and proposed testimony – from his assignment, to his analysis, and ultimately his conclusions – are grounded in Defendants' chronic false framing of Plaintiff's allegations and are therefore unreliable, irrelevant, and highly prejudicial.  This false framing pretends that Plaintiff has alleged the Company's 1Q19 revenue guidance, a forward-looking statement published on November 1, 2018, was false and misleading in violation of the federal

---

[3]   Citations and footnotes are omitted and emphasis is added unless otherwise indicated.

securities laws.[4]  For example, Dr. Yang's "understanding" of the case is, as follows: "[P]laintiffs . . . are alleging that certain statements made by Timothy Cook . . . on November 1, 2018, were inaccurate *and that Apple knew or must have known that its revenues in China were going to decline in the fourth quarter of 2018*." Ex. 1, ¶7.[5]  Yang fundamentally misapprehends the claims. Plaintiff makes no claim for liability under §10b-5 that Apple knew or should have known that revenue would decline in China in calendar 4Q18 (*i.e.*, Apple's fiscal 1Q19).

"[T]he Court must look to Plaintiffs, not Defendants, for the nature of their liability case." *Smilovits v. First Solar Inc.*, 2019 WL 7282026, at *8 (D. Ariz. Dec. 27, 2019).[6]  Contrary to Defendants' aggressive efforts to reframe the case, Plaintiff alleges that Defendants knew, but failed to disclose, material facts as of November 1, 2018, concerning economic conditions in China and demand for iPhones – *not* that Apple's 1Q19 revenue guidance or forecast was false.  *See* (ECF 114) ("RCC"), ¶¶24, 66; ECF 123 at 8.  Defendants' "assignment" for Yang (Ex. 1, ¶10) asked him "to analyze . . . whether . . . macroeconomic conditions in China worsened unexpectedly in calendar Q4 2018 [*i.e.*, October through December 2018]." *Id.*, ¶10.  Thus, Defendants sought to elicit another irrelevant, highly prejudicial opinion.  Whether economic conditions in China worsened during the Class Period is not disputed.[7]  In fact, Plaintiff alleges, and Defendants admit,

---

[4]   This newly manufactured theory contradicts Defendants' attempts earlier in the litigation to reframe the November 1, 2018 statement as a historical, backward-looking true statement. *See, e.g.*, ECF 118 at 16 ("Mr. Cook began his answer by pointing to *historical results from the previous quarter* in other emerging markets where (unlike in China) results had been down or flat. . . . Read in context, Mr. Cook's statement plainly indicated that he did not put China – with its 16% growth in the previous quarter – in the same category as markets like Brazil or India that were down or flat in the previous quarter.") (emphasis in original).

[5]   All "Ex. _" citations herein are to the Williams Decl.

[6]   It is simply unclear what Defendants are trying to accomplish with their experts other than confuse the jury.  Their experts contradict evidence, Apple's pleadings, and one another.  Indeed, contrary to Yang and Trueman, another Apple expert opinion is that the "challenged statement" was *historic* and *not forward-looking*.  *See* Ex. 4, ¶27(c) ("All or nearly all of the analyst reports issued after the conference call and referencing the challenged statement reported the information in the statement as being historical for FQ42018 . . . in my opinion, the market did not understand Mr. Cook to be offering an intra-quarter update or forward-looking guidance, but rather that he was merely discussing the FQ42018 results that were the subject of the Conference Call.").

[7]   The "Class Period" is from November 2, 2018, through January 2, 2019, inclusive.

1   that macroeconomic conditions in China declined throughout the second half of calendar 2018,

2   *i.e.*, July through December 2018.  *See* RCC, ¶¶12-14, 83, 106; ECF 123 at 4, 9.  Much of Yang's

3   proposed "expert" testimony on this issue would only be relevant if the Court permits Defendants

4   to present a distortion of Plaintiff's allegations to align with Yang's "[mis]understanding" of the

5   claims.[8]   Because Yang's analysis and testimony is built upon a fundamental distortion of

6   Plaintiff's allegations, his analysis is unreliable as its reasoning cannot be applied to the actual

7   facts of ***this*** case.  FRE 702.  Even if the Court were to find his testimony reliable and relevant,

8   the Court should "exclude relevant evidence if its probative value is substantially outweighed by

9   a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading

10  the jury" as it does here.  FRE 403.

11  **2.      Yang's Testimony that Cook's November 1, 2018 Statements**
    **Were "Accurate" Invades the Province of the Court and Jury**

12           In general, "[a]n opinion is not objectionable just because it embraces an ultimate issue."

13  FRE 704(a).  However, an expert witness is prohibited from giving an opinion as to a legal

14  conclusion, *i.e.*, an opinion on an ultimate issue of law.  *See Huawei Techs.*, 340 F. Supp. 3d at

15  992; *BP Prods. N. Am., Inc. v. Grand Petroleum, Inc.*, 2021 WL 4482138, at *1-*2 (N.D. Cal.

16  Sept. 30, 2021).  Here, Yang expects to testify that Cook's alleged false and misleading statements

17  were in fact true:

18
            ***I have concluded that the statements made by Mr. Cook on November 1, 2018***
19          ***were accurate*** and Apple's sales of iPhones in China were significantly negatively
            affected during November and December of 2018 due to unexpected events and the
20          unexpected weakening of the Chinese economy.

21  Ex. 1, ¶99.  This proposed testimony does far more than "embrace[] an ultimate issue."  FRE

22  704(a).  Instead, Yang proposes to testify that he, as an "expert," has "concluded" that Cook's

23  alleged misrepresentation on November 1, 2018, was "accurate," thereby usurping the role of the

24  judge and the jury on the issue of falsity.[9]

25  _____

26  [8]    The undisputed evidence shows as of October 24, 2018, Defendants knew that for 1Q19, its
    revenue expectations for Greater China would decline by at least 1% year-over-year.  Ex. 10 at
27  141:22-150:3.  Yang did not consider this document in forming his opinion.

28  [9]    Yang's opinion that Cook's statement that Tukey, India, Brazil, and Russia are countries where
    currencies have weakened was "accurate" should be excluded for the same reasons.  Ex. 1, ¶¶10,

Such testimony is nearly identical to testimony excluded by the court in *In re ConAgra Foods Inc.*, 302 F.R.D. 537 (C.D. Cal. 2014). In that case, plaintiffs alleged ConAgra affixed a false and misleading label on cooking oil and proffered an expert opinion that ConAgra "falsely and deceptively labeled" its products. *Id.* at 557. The court excluded that testimony because "false" and "deceptive" are judicially defined terms and therefore the expert's use of these terms constituted the offering of an improper legal opinion that usurps the role of the jury. *Id.* at 558 (citing *SEC v. Leslie*, 2010 WL 2991038, at *9 (N.D. Cal. July 29, 2010) ("it is for the jury to determine whether [d]efendants' statements in fact were misleading")).

Here, the alleged "falsity" of Cook's November 1, 2018 statements is the first element Plaintiff must prove for its Rule 10b-5 claim.[10] "False and misleading" are also among those terms defined by judicial interpretations from which model jury instructions for securities actions have been developed. *See* United States Court of Appeals for the Ninth Circuit Manual of Model Civil Jury Instructions, 18. Securities Exchange Act 18.1 Securities – Definitions of Recurring Terms (defining "misrepresentation" and "omission" and citing cases). Accordingly, Yang's opinion that Cook's November 1, 2018 statements were "accurate," therefore "'constitutes the offering of an improper legal opinion that usurps the role of the court,'" and must be excluded. *BP*, 2021 WL 4482138, at *4; *Chamberlain v. Hartog, Baer & Hand, APC*, 2022 U.S. Dist. LEXIS 30956, at *31 (N.D. Cal. Feb. 22, 2020) (expert witness cannot give an opinion as to legal conclusions).

Even if the Court finds Yang's testimony permissible under FRE 704(a), his conclusion that Cook's statements were "accurate" will not assist the jury, which can make that assessment on its own. *Microsoft Corp. v. Motorola, Inc.*, 2013 U.S. Dist. LEXIS 109905 (W.D. Wash. Aug.

---

85, 98. Moreover, the "accuracy" of this statement is not at issue. This testimony is grounded in Defendants' very latest effort to buttress Cook's version of his story, which appears to be that when he distinguished China from the category of emerging markets experiencing deceleration and pressure, he was making a distinction in currency stability in emerging markets, not between China and markets like India, Russia, Brazil, and Turkey that "[we]re not growing in the way [Apple] would like to see,'" as he actually said. *Id.*, ¶8.

[10]   *See Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017) (listing elements of 10b-5 claim brought under the Securities Exchange Act of 1934 ("Exchange Act")).

5, 2013) (where the jury is capable of drawing its own inferences from the evidence, the expert's testimony on an ultimate issue testimony is not helpful and should be excluded); *SA Music LLC v. Apple, Inc.*, 2022 U.S. Dist. LEXIS 50427, at *74 n.22 (N.D. Cal. Mar. 21, 2022) (granting Apple's motion to exclude expert witness not for embracing an ultimate issue, but for being unhelpful and invading the province of the jury).

### 3. Yang's Testimony Regarding the Impact of the Arrest of Huawei's CFO Is Irrelevant, Prejudicial, and Contradicts Apple Executives' Conclusions on the Topic

Yang proposes to testify that "after the detention of Meng Wanzhou ["Wanzhou"], the CFO of [Chinese telecommunications conglomerate] Huawei, on **December 1, 2018**[,] Chinese consumers rallied around Huawei and its mobile phones and turned away from Apple's iPhone." Ex. 1, ¶98. According to Yang, "[t]his event had a significant negative impact on iPhone sales." *Id.* These opinions, however, are purely speculative, contradict internal Apple documents directly on the subject, and more importantly, are irrelevant and prejudicial. Yang provides no methodology, or analysis, or evidence supporting his opinion that Wanzhou's arrest had *any* actual impact on iPhone sales at all. Yang only cites to news articles which discuss the arrest and potential boycotts against Apple. *Id.*, ¶¶78-84; *Chamberlain*, 2022 U.S. Dist. LEXIS 30956, at *39-*40 (excluding a proposed expert for failing to disclose any explanation or reasons for his conclusions). Yang's citation to a purchase intent survey published more than two months after the arrest provides no actual sales analysis, and his conclusion that Apple is vulnerable to consumer sentiment is unremarkable and not in dispute. Ex. 1, ¶84.

More importantly, Yang does not even consider evidence that Apple sales executives *in China* contemporaneously rejected the very opinion he wants to present to the jury. Indeed, on January 9, 2019, a *week after* Apple's pre-announcement and a *month after* Wanzhou's arrest, YeeWee Koh ("Koh"), an Apple sales executive in China, emailed Greg Jozwiak, Apple's Vice President of Marketing, about a news article titled "Apple Faces 'Informal Boycott' From China Consumers, Says BAML." Ex. 11 at 170. Koh explained that the headline was purely "sensational" and there was no evidence that Wanzhou's arrest hurt iPhone sales. Instead, rather than any Chinese nationalistic pride or boycott of Apple products connected with the arrest of

1   Wanzhou, Koh attributed Huawei's success to their offering an equally capable and cheaper phone

2   in a softer economy:

3              The headline is sensational.  I don't believe there is any organized effort,
       formal or otherwise, to get Chinese consumers to boycott American or Apple.
4      ***Against a backdrop of a softer economy and a more pessimistic view of the future,
       I do think upgraders consider choices like Huawei and Xiaomi to be more value***
5      ***for money,*** especially if they don't see major reasons and innovation in the iPhone.
       ***There is a feeling that a flagship Huawei device at less than half the price of an***
6      ***iPhone XS Max, is good enough or just as good.***

7   *Id.* at 170. Yang's "expert" testimony is unreliable because it lacks a methodological or analytical

8   basis and contradicts the contemporaneous statements of Defendants' own employees.

9          Yang's testimony is not only without a proper basis, it is irrelevant and highly prejudicial

10  and therefore should be excluded.  Plaintiff alleges that ***as of November 1, 2018***, Defendants knew

11  but failed to disclose material facts concerning conditions in China and demand for iPhone there.

12  RCC, ¶66; ECF 123 at 14-15.  An unrelated arrest in ***December 2018***, to the extent it could have

13  negatively affected iPhone sales – even if true – is not a defense to what Defendants knew and

14  concealed from investors on ***November 1, 2018***.  This expert testimony only serves to confuse the

15  jury as to facts relevant to decide the claims.

16          **4.      Yang's Opinion About Unexpected Changes in the Chinese
                      Economy Lacks Foundation to Provide Testimony on Apple's**
17  **State of Mind, Is Irrelevant, and Would Be Prejudicial**

18          Yang's proposed testimony is that: (i) macroeconomic conditions in China; (ii) competitive

19  conditions in China; and (iii) automobile sales in China all changed "unexpectedly" or

20  "dramatically" in either the "calendar Q4" or in "November and December 2018."  Ex. 1, ¶¶10-

21  11; *id.*, §IV.B.-C., E.  Yang concludes that sales of iPhones in China were significantly negatively

22  affected during November and December 2018 due to "unexpected events" and the "unexpected

23  weakening" of the Chinese economy.  *See, e.g.*, *id.*, ¶¶10-11, 66, 98-99.  While Defendants asked

24  Yang to analyze whether the changes were "unexpected[]" (*id.*, ¶10), Yang provides no

25  methodology or analytical basis, much less a reliable one supporting his opinion that any changes

26  in the Chinese economy after the alleged misrepresentations were "unexpected."  And if they were

27  unexpected, how that could be at all relevant to Plaintiff's claims.

28

Yang provides no analysis of what ***was*** "expected" or "anticipated" from macroeconomic conditions in China during the period he reviews, versus what actually occurred, to support his conclusions. Yang's discussions of manufacturing activity and the Purchasing Managers Index merely point to news articles (including one that quotes Apple) as his evidence of purported surprise. *Id.*, ¶45. Nor does Yang explain, beyond conclusory statements, ***to whom*** changed conditions were unexpected. Economists? The investing community?[11] The absence of any method or baseline of what was expected or reasons why changes were unexpected is particularly problematic because, as the RCC alleges, the ongoing economic deceleration in China, including the risk of continuing tariffs imposed by the United States, was the very issue market observers identified as having ***already occurred,*** and were thus concerned about, ***before*** November 1, 2018. *See, e.g.*, RCC, ¶¶11-14.

What's worse is that Apple's other experts contradict Yang's claim that changes in China's economy were unexpected. For example, Grenadier opines at the beginning of the Class Period, "the market was aware of headwinds in China and their potential impact on Apple's business before November 1, 2018." ECF 197-2, ¶99. More pointedly, Grenadier relies on an ***October 15, 2018***, report stating "consumer demand for smartphones was declining and could impact Apple: '***The smartphone market in China is only going to slump further.***'" *Id.*, ¶100. Without any methodology or analysis (other than citing news articles) explaining what he believes were "unexpected" economic changes in China, and to whom they were unexpected, as well as contradicting Apple's other experts, Yang's opinion is unreliable, unhelpful, and must be excluded.

Similarly, Yang's opinion that the smartphone market weakened during "November and December" and in the quarter ending September 29, 2018, is unhelpful. *Id.*, ¶¶71-74. Yang concedes that which Plaintiff alleges, Apple's 4Q18 iPhone revenue was driven by price increases as opposed to volume sales. *Id.*, ¶¶71-73. He also concedes that on November 1, 2018, the

---

[11]   Yang in conclusory fashion states that changes were unexpected by quoting news articles regarding other companies, like Intel, Samsung, Caterpillar, and Nvidia, generally reporting that their sales were hurt by a slowing economy in China in ***January of 2019***. Ex. 1, ¶¶66-70.

1    smartphone market was difficult to predict.  *Id.*, ¶76.  And despite providing a table (specifically,

2    Table 5 (*id.*, ¶73)) which includes 19 months of data on changes in smartphone shipments, ***17 of***

3    ***which show negative growth***, Yang opines without analysis that declines in November and

4    December 2018, were "unexpected," which is not adequately unsupported.[12]  *Id.*   Ultimately,

5    testimony on whether changes in China's economy changed unexpectedly in November and

6    December 2018, would only serve to defend a claim Plaintiff has not alleged.   It must be

7    excluded.[13]

8         **B.      Gauna's Opinions Are Not Based on Any Methodology, Are**
              **Inappropriate for Expert Testimony, Are Irrelevant and Prejudicial,**
9             **and Should Be Excluded**

10        Defendants disclosed Gauna, a retired securities analyst and current teacher at "Archie

11   William High School" [sic] as an expert witness.  Ex. 3, ¶¶4, 7.  He offers numerous irrelevant,

12   inappropriate, and unjustified opinions about Apple's 1Q19 revenue guidance, unalleged

13   statements, and what the market "heard."  *Id.*, ¶65.  His testimony would be unhelpful and

14   misleading to a jury and should therefore be entirely excluded.

15   _____

16   [12]   Yang's opinion concerning the stability of the Chinese currency during the Class Period in
     comparison to currencies in other emerging markets is irrelevant and highly prejudicial to the
17   extent that proposed opinion is grounded in Defendants' latest effort to distort and reframe
     Plaintiff's allegations. Ex. 2, ¶¶90-95.  Indeed, his opinion that the Chinese currency was more
18   stable than currencies in other emerging markets is unconnected to his "understanding" of the
     claims or the questions he was asked to analyze. Ex. 1, ¶10.  Its purpose is only to buttress Cook's
19   most recent story – that when he distinguished China from the category of his November 1, 2018
     emerging markets statement, he ***meant*** a distinction in currency fluctuations, as opposed to markets
20   that "[were] not growing in the way [they] would like to see,'" which is what he actually said.  *See*
     *id.*, ¶8; *see also supra* n.3 (quoting Defendants' agreement that Cook was referring to markets
21   "'that [were] not growing'").

22   [13]   Unlike Taylor, discussed below, Yang's rebuttal of Dr. Oded Shenkar's ("Shenkar") report
23   (Ex. 15), does not attempt to launch a new opinion. In fact, Yang acknowledges agreement with
     Shenkar on many issues. *See, e.g.*, Ex. 2, ¶¶2, 6, 11.  However Yang criticizes Shenkar for not
24   doing irrelevant analyses, like comparing Apple's revenue in quarters or years prior to November
     1, 2018.  *Id.*, ¶¶3, 18-19.  But Yang reiterates the flawed opinions in his opening report.  For
25   example, Yang insists that "unexpected changes" in "November and December" of 2018 explain
     the decline in iPhone sales "in those [months]."  *Id.*, ¶23.  Just like the flaws in those opinions
26   (discussed *supra* §III.A.4.), they must be excluded.  Yang's rebuttal also reiterates that the arrest
     of Huawei's CFO in December 2018 explains why Apple missed its forecast – a forecast not
27   alleged to be false and misleading and an opinion based on a misunderstanding of the claims.  *See*
     *id.*, ¶25.  *See supra* §III.A.3.

28

1

### 1.    Gauna's Opinions Regarding Disclosure Requirements Under the Securities Laws Invade the Province of the Court, Are Irrelevant and Misleading, and Must Be Excluded

2

3       Gauna offers irrelevant and misleading opinions regarding the securities laws.   Ex. 3,

4   ¶¶12(d), 32, 35-36, 39, 41.   His legal opinions regarding SEC disclosure requirements are

5   excludable because "an expert [may not] opine on questions which are matters of law for the

6   court."   *MediaTek Inc. v. Freescale Semiconductor, Inc.*, 2014 WL 971765, at *1 (N.D. Cal. Mar.

7   5, 2014).  Gauna also does not explain how his "activities as an analyst," such as "hosting investor

8   visits," qualify him to opine on the legal obligations of public companies.  *Id.*, ¶6.

9       Gauna's proposed testimony also misleadingly suggests that Defendants can only violate

10  securities laws with respect to documents filed with the SEC when he asserts that Forms 8-K, 10-

11  Q, and 10-K contain "[t]he most significant information pertaining to any company," that "[t]hese

12  public filings are relied upon to be timely, correct, and appropriately audited," and that [t]here are

13  regulations surrounding what must be disclosed, and requirements that company officers review

14  and certify these filings."  *Id.*, ¶32.  Simultaneously, he emphasizes that any disclosures by public

15  companies beyond these SEC Forms, including specifically "[*c*]*onducting conference calls*," are

16  "beyond what is required by law" and "not a requirement for companies."  *Id.*, ¶32.  This is

17  obviously a misleading characterization of the applicable law, as Plaintiff is suing under §10(b) of

18  the Exchange Act and Rule 10b-5, promulgated thereunder, which "makes it unlawful . . . [t]o

19  make any untrue statement of a material fact or to omit to state a material fact in order to make the

20  statements made, in light of circumstances under which they were made, not misleading."  *In re*

21  *Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 699 (9th Cir. 2021); *see also Khoja v. Orexigen*

22  *Therapeutics, Inc.*, 899 F.3d 988, 1009 (9th Cir. 2018).  Defendants are well-aware Plaintiff does

23  not allege Defendants made misleading statements in their SEC filings.

24      The Court was presented with testimony about irrelevant law in *ADT Sec. Servs. v. Sec.*

25  *One Int'l, Inc.*, 2013 WL 10542929, at *2 (N.D. Cal. Sept. 15, 2013), and excluded it, holding the

26  opinion would be "substantially likely to result in jury confusion."  In that unfair competition case,

27  an expert sought to testify regarding "Do Not Call ('DNC')" and "wiretap laws," but the Court

28  prohibited the proposed testimony because "[r]eference to those laws is unlikely to help the trier

of fact decide the material issues in dispute in this case, which do not center on compliance with DNC or state wiretap laws." *Id.* Here, Plaintiff's claims do not "center on compliance" with Forms 8-K, 10-Q, or 10-K regulations, and Gauna's related opinions are "substantially likely to result in jury confusion."

### 2. Gauna's Opinions About Apple's Forecasting Process Are Irrelevant, Unhelpful, and Misleading

Like Defendants' other proposed experts, Gauna improperly seeks to opine on Apple's process of issuing 1Q19 guidance, which is irrelevant to this case.[14] This is a false framing of Plaintiff's claims, who does not allege the guidance was false and misleading.[15] As the Court has previously noted, a party cannot use an expert to "put forth an alternative theory of the case." *Krouch v. Wal-Mart Stores, Inc.*, 2014 WL 5463333, at *6 (N.D. Cal. Oct. 24, 2014); *see also Smilovits*, 2019 WL 7282026, at *8. Yet Gauna devotes an entire section of his report (*id.*, ¶¶51-58) to the opinion that "Apple's Official Guidance as of November 1st Reflected Risks Pertaining to China." *Id.*, ¶¶51-58. Such testimony will only confuse the issues, will not assist the trier of fact and should be excluded.[16] *Id.*, ¶¶12(e)-(f), 29, 38-39, 41-42, 45-58.

Gauna's opinion that Cook did not provide an "intra-quarter update" during the November 1, 2018 conference call is also excludable as irrelevant and misleading. Plaintiff does not allege

---

[14] Gauna did not review or cite any of the voluminous, contemporaneous internal documents Defendants produced regarding the 1Q19 guidance process to support his irrelevant and misleading opinion, which is based entirely on Apple's "historic performance projections" and "the atypically high level of forecasting accuracy it has achieved over time." Ex. 3, ¶51.

[15] Gauna's opinion that "Apple employed clear and non-misleading guidance metrics" in ¶50 is not only irrelevant, it is an impermissible legal conclusion. Ex. 2, ¶50. The Court recognized in *BP* that opining as to misleadingness "'constitutes the offering of an improper legal opinion that usurps the role of the court,'" and "'it is for the jury to determine whether [d]efendants' statements in fact were misleading.'" *BP*, 2021 WL 4482138, at *1. Similarly, Gauna's opinions regarding Defendants' intent vis-à-vis the 1Q19 guidance are inappropriate for expert testimony. *See Stathakos v. Columbia Sportswear Co.*, 2017 WL 1957063, at *5-*6 (N.D. Cal. May 11, 2017). Opinions excludable on this basis are found in ¶¶54, 57-58, and 62; *see, e.g., id.*, ¶62 ("the Company ***objectively articulated its concerns*** during the November 1, 2018 earnings call in the form of the official company guidance and via management's commentary").

[16] Gauna also misleadingly quotes Apple's boilerplate PSLRA safe harbor cautionary statements, which are not relevant to this case that involves no forward-looking statements. Ex. 3, ¶39 n.28.

1   that Apple provided intra-quarter results or an intra-quarter forecast, as Gauna seeks to characterize

2   it.  Plaintiff alleges that Apple misrepresented the current state of its business in Greater China

3   including demand for pricey new iPhones there.  Accordingly, ¶¶45, 61, 63, and 65 should be

4   excluded.

### 3.   Gauna's Conclusions Based on Analyst Report Review Lack a Reliable Methodology and Should Be Excluded

6           Gauna expresses numerous opinions based on his "review of other professional equity

7   analysts' reports in response to the November 1, 2018, earnings call," (Ex. 3, ¶¶59-65); however,

8   he explains no methodology he used to reach his conclusions – let alone a reliable one.[17]  "[W]here

9   the expert does little more than read" materials, such as analyst reports, "and then proposes to

10  render findings to the jury as to what happened, we should draw the line and bar such testimony."

11  *See Biotechnology Value Fund, L.P. v. Celera Corp.*, 2015 WL 138168, at *2 (N.D. Cal. Jan. 9,

12  2015).  In *Otto v. LeMahieu*, 2021 WL 1615311, at *5 (N.D. Cal. Apr. 26, 2021), the Court also

13  recognized that expert opinion based merely on publicly available information untethered to

14  methodology fails under the *Daubert* standard.  These opinions should be excluded.

16          As in *Otto*, Plaintiff has served an expert report, "which highlights that [Gauna] did not

17  employ any sound methodology in arriving at his conclusions or opinions."  *Otto*, 2021 WL

18  1615311 at *3.  Plaintiff's rebuttal expert, Professor Frank Partnoy ("Partnoy") explained that

19  Gauna (and Trueman) do "not describe any reliable methodology, or reliable principles and

20  methods, that they applied in forming their opinions and conclusions, or any principles and

21  methods that another expert could follow to test or replicate their opinions." Ex. 16, ¶9.  Partnoy

22  goes further and even provides an example of a testable method Gauna could have used to review

23  analyst reports – discounted cash flow analysis ("DCF") – which Gauna described using when he

24  was an analyst.  *Id.*, ¶¶9, 21 n.34; Ex. 3, ¶¶21-22.

---

[17]   Gauna cites fellow Defendants' experts Trueman and Yang opinions in interpreting analyst reports and concluding what the market understood.  Ex. 3, ¶¶60, 62, 65-66.  To the extent the relevant portions of those experts' proposed testimony are excluded, the opinions in Gauna's report which rely on them should also be excluded.  *See AngioScore, Inc. v. TriReme Med., Inc.*, 2015 WL 5258786, at *5 (N.D. Cal. Sept. 8, 2015).

1    Gauna's lack of methodology for interpreting analyst reports makes it impossible to

2 evaluate the basis for his resulting opinions.  For example, in ¶61, Gauna opines that "[s]imilar to

3 other analysts, I understood Mr. Cook's use of the present tense in Q&As "'*we're seeing pressure*

4 *in the markets*'" as referring to the prior quarter.  Ex. 3, ¶61; *see also id.*, ¶65 ("when management

5 uses the present tense, analysts know that such statements are referring to the prior quarter's

6 results").  It is entirely unclear which analysts Gauna is referring to or how he reached this

7 conclusion.  Gauna's bold assertion that Cook used the present tense to refer to the past "strains

8 credulity."  *Krouch*, 2014 WL 5463333, at *6.  Moreover, "[t]he plain meaning of [Cook's

9 statements during the conference call] is fully within the comprehension of the jury."  *Id.*

10 Paragraphs 59 to 65 of Gauna's report are replete with unjustified and unverifiable opinions based

11 on Gauna's unmethodological review of expert reports and should be excluded.

12              **4.    Gauna's Conclusion, that the "Market Did Not Hear Mr. Cook
                       to Say or Imply There Was No Pressure or Risks Related to
13                     Apple's Business in China" Must Be Excluded**

14    Irrelevant expert testimony is excludable under FRE 702 and 401.  "The relevancy bar is

15 low, demanding only that the evidence 'logically advances a material aspect of the proposed

16 party's case.'"  *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014).  "[E]xpert

17 testimony that is 'otherwise admissible may be excluded under Rule 403 if its probative value is

18 substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

19 the jury.'"  *United States v. Cervantes*, 2015 WL 7734281, at *4 (N.D. Cal. Dec. 1, 2015).

20              **a.    Gauna's Conclusion Distorts Plaintiff's Allegations, Is
                       Irrelevant, and Must Be Excluded**

21

22    Gauna's entire report builds to the conclusion that "the market did not hear Mr. Cook to

23 say or imply there was no pressure or risks related to Apple's business in China."  Ex. 3, ¶12(g).

24 This conclusion is excludable as irrelevant and misleading because Plaintiff does not allege Cook

25 said "there was *no* pressure or risks related to Apple's business in China."  *See United States v.*

26 *Redlightning*, 624 F.3d 1090, 1111 (9th Cir. 2010).  "It bears repeating what this case is about."

27 ECF 224 ("Class Cert. Order") at 13-14.  Specifically, Plaintiff alleges that Cook's discussion of

28 business and conditions for the Company in China during Apple's November 1, 2018 conference

1    call, including that "I would not put China in that category" of emerging markets experiencing

2    economic deceleration or pressure on its business, was materially false and misleading because

3    Cook failed to disclose the true facts: (1) U.S. -China trade tensions and economic conditions in

4    China were negatively impacting sales and demand for Apple products, particularly iPhones; (2)

5    the Company had already begun to see store traffic declining in Greater China, amid reports of an

6    overall contraction of the smartphone industry; and (3) the Company had already, or was preparing

7    to, cut iPhone production and reduce orders from its suppliers.  RCC, ¶¶18, 24.

8         The Court has recognized, at the class certification stage, when an expert did not conduct

9    a survey to test the effects of the allegedly misleading and deceptive statements, the expert's

10   opinions could not "resolve the question of whether a reasonable consumer was likely to be

11   deceived."  *Vizcarra v. Unilever United States, Inc.*, 339 F.R.D. 530, 547 (N.D. Cal. 2021).

12   Similarly, Gauna's testimony is not tied to the allegations in this case and should be excluded.

13            **b.    Gauna's Conclusion Is Misleading and Prejudicial and
                     Must Be Excluded**

14

15        Even if the Court finds that Gauna's conclusions, expressed in ¶¶12(g), 58, and 63-66, clear

16   the relevancy bar, they should be excluded under FRE 403.  In *ADT*, the Court confronted similarly

17   misleading proffered testimony and excluded portions of an expert's testimony that misconstrued

18   the plaintiff's misrepresentation allegations.  There, an expert sought to testify about survey data

19   "related to caller ID misrepresentations."  2013 WL 10542929, at *1.  However, the Court

20   excluded the testimony "[g]iven, however, that allegations of *actual* caller ID misrepresentation

21   are peripheral at best to [p]laintiff's case-in-chief, this . . . approach runs a substantial risk of

22   confusing the issues."  *Id.* (emphasis in original).  The same reasoning applies here, and Gauna's

23   testimony that "the market did not hear Mr. Cook to say or imply there was no pressure or risks

24   related to Apple's business in China" should be excluded because it misleadingly seeks to disprove

25   a statement that Plaintiff has never claimed Cook made.  Ex. 3, ¶12(g).

26        Gauna's entire report attacks a strawman.  First, Gauna states "[a]nalysts and investors

27   know very well that no markets exist that are free of risks or economic and political variables and

28   challenges, especially in a market emerging as rapidly as China."  *Id.*, ¶58.  He then posits, "and

no analyst would have heard Mr. Cook to tell them otherwise, or at the very least would have immediately asked him to clarify what he meant." *Id.*, ¶65. He also notes that there was no such reaction. *Id.*, ¶64. Thus, he concludes "the market did not hear Mr. Cook to say or imply there was no pressure or risks related to Apple's business in China." *Id.*, ¶12(g). This conclusion may very well be true, but it has absolutely nothing to do with this case or Plaintiff's allegations. It is irrelevant and misleading that there was no such response, as is Gauna's conclusion that no such statement was made. *Id.*, ¶64. Just as in *ADT*, Gauna's "expert" analysis of a misrepresentation Plaintiff does not allege would mislead a jury and confuse the issues. Gauna should be excluded.[18]

### c.    Gauna's Conclusion Is Not a Proper Subject for Expert Testimony

Paragraphs 12(g) and 59-66 are excludable as not only irrelevant but also for opining on a subject that is not "a proper subject for expert testimony." *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 841-42 (9th Cir. 1995). Discerning what the market heard or interpreting Cook's alleged misstatement do not require special skills. *See In re Stratosphere Corp. Sec. Litig.*, 66 F. Supp. 2d 1182, 1188 (D. Nev. 1999). Gauna's conclusions of what the market heard are based on his "review of other professional equity analysts' reports in response to the November 1, 2018, earnings call." Ex. 3, ¶59. The jury will hear that for themselves and simply reading such reports does not require an expert opinion, because, as even Gauna explains: "[c]lients, who may be institutional investors or buy-side analysts, are often very busy and ***need clear, succinct, and actionable information*** to leverage for investment decisions." *Id.*, ¶19. Based on Gauna's discussion of how securities analysts "distill the information in report sections such as investment summaries, earnings snapshots and portfolio manager summaries" (*id.*), reading and interpreting analyst reports "is hardly a matter of specialized analysis or inquiry. Nor are these opinions

---

[18]    Gauna's entire report should be excluded, even if certain basic or supporting opinions are not likely, on their own, to mislead. Gauna's opinions as to the role analysts play in understanding the value of a stock, how analysts and investors obtain information, how public companies disclose information, how Apple discloses information, and how analysts respond to inconsistent disclosures are relevant to this case but Gauna's unsupported and misleading conclusion that "[t]he market did not hear Mr. Cook to say or imply there was no pressure or risks related to Apple's business in China" is highly prejudicial. Ex. 3, ¶12(g).

1    directed to a subject matter beyond the ken of ordinary jurors." *CZ Servs.*, 2020 WL 4518978, at

2    *2. They should be excluded.

### C.  Trueman's Opinions Are Unreliable, Prejudicial, and Should Be Excluded

Trueman offers three overarching opinions concerning how Apple analysts, and by extension the market, purportedly interpreted Cook's alleged misstatement on November 1, 2018: (1) the market did not understand the statement to say there was no pressure on Apple's business in China (Ex. 4, §III); (2) the market understood that Apple continued to face pressure in China after the alleged misrepresentation (*id.*, §IV); and (3) the market did not believe Cook was offering an intra-quarter update or forward-looking guidance (*id.*, §V). Trueman's proposed testimony should be excluded as: (i) unreliable; (ii) unhelpful; and (iii) likely to mislead the jury. Trueman's purported expert analysis of analyst reports is also duplicative of Gauna's analysis of the same, and should be excluded for the same reasons. *See supra* §§III.B.3-4. Trueman also seeks to offer improper rebuttal testimony.

### 1.  Trueman's Opinions Are Not the Product of a Reliable Methodology and Should Be Excluded

Trueman's opinion regarding what the market understood Cook's statements to mean is not based on any reliable principles or methods, as is required by FRE 702(c). There is simply no analytical connection between the data, the methodology, and Trueman's conclusions, rendering his testimony unreliable. *GE v. Joiner*, 522 U.S. 136, 146 (1997). Trueman sets forth his purported methodology under his "Analysis Framework" Section, where he first explains the role security analysts play in interpreting corporate disclosures and informing the investing public and then claims that "based on this academic research and my own expertise, I have performed an analysis of analyst reports and other information before and after the Conference Call." Ex. 4, ¶¶23-25. Critically, Trueman does not explain what "analysis" he in fact "performed." He does not explain how he determined what analyst reports to consider.[19] He does not explain what tools he utilized

---

[19]   While Trueman states that he considered 38 analyst reports following the November 1, 2018 conference call through November 4, 2018, which he notes are listed in Exhibit 1 to his report, Exhibit 1 actually lists 44 reports from that time period, and his list of materials considered

1   to assess their content or how he determined what the analyst purportedly understood based on

2   what they wrote in the reports.[20]  As discussed in Partnoy's rebuttal, Trueman could have employed

3   accepted methodologies such as text analytics to compare analyst reactions to language used by

4   the same analyst – a method described in a source on which Trueman relies.  He also could have

5   used a "discounted cash flow" DCF analysis to assess the extent to which analyst estimates were

6   revised.  He did neither.

7          Trueman's entire opinion is based on nothing more than reading select analyst reports and

8   claiming their contents support Defendants' preferred construction of this litigation – this is

9   grounds for exclusion.  *See Biotechnology Valve Fund, L.P. v. Celera Corp.*, 2015 U.S. Dist.

10  LEXIS 3914, at *5 (N.D. Cal. Jan. 9, 2015).  Trueman's methodological failure is even more

11  dangerously prejudicial because he forms affirmative opinions based upon analysts' silence, not

12  "the carefully crafted language of their reports."  Ex. 4, ¶26.  Trueman draws conclusions about

13  analysts' purported and affirmative ***understandings*** based on what they ***did not say***, speculating

14  that failure to voice a belief means that belief must not have been held.[21]  *See* Ex. 4, ¶27 ("there

15

16  includes 47 reports from that time period.  *Compare* Ex. 4, ¶35 & n.27; *with* Ex. 4, Appendix II

17  (Materials Considered), and Ex. 4 (Trueman's Exhibit 1).  Trueman does not explain these
    discrepancies, nor does he confirm whether he reviewed a comprehensive set of ***all*** analyst reports

18  that were published during that time period, and, if not, how he chose the subset of analyst reports
    he reviewed.  Unlike the search parameters he describes in ¶35 n.27 for the news articles he

19  considered, Trueman sets forth no method for how he obtained the universe of analyst reports he
    considered.  For example, he did not include a November 1, 2018 Morgan Stanley Tech report that

20  discusses topics covered in the conference call, even though he considered other Morgan Stanley
    analyst coverage that was part of Apple's production.  *Compare* Ex. 12, *with* Ex. 4, Appendix II.

21  [20]  For example, Trueman draws an unfounded inference that if an analyst report repeats the

22  alleged misstatement but does not offer additional commentary about China, those analysts did not
    ***understand*** Cook's statement ***to mean*** that Apple's business in China was not experiencing any

23  pressure.  Ex. 4, ¶35 n.28.  But he does not explain why explicitly referencing the alleged
    misstatement does not shed light on what the analysts ***understood***.

24
    [21]  Trueman cites to literature to explain that if an analyst reports on a topic after an earnings

25  announcement, the analyst views it as important.  Ex. 4, ¶27.  But he does not offer support for the
    inference that if an analyst does not report on a topic then that means the analyst or the market at

26  large did not hear it or let it influence their investing behavior.  There is a glaring mismatch
    between Trueman's analytical framework and his conclusions: he does not seek to offer an opinion

27  on whether the analysts and the market thought the alleged misstatement were important.  Rather,
    he seeks to opine on whether the analysts and the market were misled.

28

would have been a mention of that interpretation in the reports"); *id.*, ¶34 (same); *id.*, ¶40 ("the absence of reports . . . leads to the conclusion that analysts did not interpret the Challenged Statement in this manner"); *id.*, ¶50 ("there would have been a mention of that interpretation in the reports"); *id.*, ¶52 ("I would have expected to see a discussion . . . in the analyst reports"); *id.*, ¶53 ("I found no analysts that softened their concerns"); *id.*, ¶61 ("there would have been a mention of that interpretation in the reports"); *id.*, ¶66 (same).  Trueman's "unspecific claim of 'knowledge and experience' cannot salvage an opinion that is the product of guesswork.  Otherwise, all an expert would need to do to circumvent *Daubert* is cite to his 'knowledge and experience.'"  *Shirar v. Guerrero*, 2017 U.S. Dist. LEXIS 232684, at *33-*34 (C.D. Cal. Aug. 2, 2017).  At a minimum, the Court should exclude ¶¶26-27, 34, 40, 50, 52-53, 61, and 66 as rank speculation untethered to any evidentiary support or research, and as an unreliable application of his purported methodology.

## 2. Trueman's Opinions Regarding Analysts' Understandings Should Be Excluded Because the Jury Can Review and Interpret Analyst Reports on Their Own

Trueman opines on what he "understood" the Apple analysts understood from the alleged misstatements, before imputing that understanding to the market at large. Ex. 4, ¶26.  An expert is not needed for this task.  "[O]ur jury system looks to the jury itself to make the critical evaluations as to what actually occurred and what the key actors were thinking or relying on.  Juries do this role well and they do not need retained advocates to testify on their respective slants on the evidence."  *Celera*, 2015 U.S. Dist. LEXIS 3914, at *5.  Experts like Trueman

> invariably try to tell the jury whose version is truthful.  This is usually done through artful use of the word 'understanding,' as in 'it is my understanding that there is no evidence that' followed by a point on trial.  The retained witness, of course, has no personal knowledge of what really occurred and should never be allowed to divine for the jury the truth of what actually occurred or what the mental state of an actor was.

*Id.* at *7.[22]

---

[22]  Although Trueman claims to not opine on the analyst's state of mind, he does not explain how opining on what the analysts "understood, heard, and interpreted Mr. Cook to mean" is not a commentary on their state of mind. Ex. 4, ¶26. Trueman has "no basis to testify as to what market participants did or did not 'understand.'  That would be impermissible speculation into those market participants' state of mind."  *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 577 (S.D.N.Y. 2017). Such "[i]nferences about the intent or motive of parties

1    Trueman's testimony will not assist the jury because it does not provide information

2  beyond the common knowledge of the jury. FRE 702. "It . . . does not take any special

3  competence, for example, to read pertinent public documents (e.g., prospectuses, press releases,

4  and recorded statements) to determine whether certain risks were conveyed to the public."

5  *Stratosphere*, 66 F. Supp. 2d at 1188. Trueman concedes that analysts draft their reports with the

6  expectation that investors will read them and use them as an aid in making their investments. Ex.

7  4, ¶¶23-24 (analysts "'help investors understand the implication of the earning announcements'").

8  No special skill is required.

9    Highlighting the danger of allowing Trueman to divine analysts' purported understandings,

10  many of his opinions conflict with the plain meaning of the reports he quotes, demonstrating why

11  the subjective task of interpreting the reports is best left to the jury. Some of the reports quoted in

12  ¶36 convey on their face that the analysts believed Apple was ***not*** facing business pressures in

13  China. For example, Trueman highlights a sentence in a November 2, 2018 DA Davidson analyst

14  report stating: "[W]e still see China as representing the single greatest risk to shares and will be

15  monitoring tariffs closely" while ignoring the preceding sentence indicating Apple was not

16  currently facing pressure: "The results suggest to us that Apple's management is doing an amazing

17  job of walking the tight rope – managing its supply chain , with a heavy usage of China for . . .

18  assembly and offering Chinese consumers products they desire." *Id.*, ¶36. Trueman does not

19  explain how the highlighted sentence negates the analyst's opinions about managements'

20  "amazing job," or how it leads him to the conclusion that the analyst believed "there was ongoing

21  pressure on Apple's business in China." *Id.*, ¶¶35-36. Because Trueman fails to provide any

22  explanation for his opinions regarding what analysts understood, his testimony will only "plac[e]

23  an 'expert stamp of approval on the [defendants'] theory'" and therefore poses the risk of

24  misleading the jury. *SEC v. Dunn*, 2012 U.S. Dist. LEXIS 17796, at *11 (D. Nev. Feb. 14, 2012).

25  Accordingly, ¶¶27, 34, 40, 44, 49, 51, 53, 60, 61, 66, 68, 69 should be excluded.

26

27

28  ***or others*** lie outside the bounds of expert testimony." *In re Rezulin Prods. Liab. Litig.*, 309 F.
Supp. 2d 531, 547 (S.D.N.Y. 2004).

### 3.       Trueman Distorts Plaintiff's Claims, which Risks Confusing the Jury and Renders His Report Irrelevant and Excludable

Trueman's ultimate conclusions, summarized in ¶27 and identified in each of the report's headings, mischaracterize Plaintiff's claims to such a degree that they pose a serious "'danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Cervantes*, 2015 WL 7734281, at *4.  He opines that: (i) the market did not understand Cook's alleged misstatement to say that there was no pressure on Apple's business in China; (ii) following the conference call, the market knew Apple faced pressure in China; and (iii) the market did not interpret Cook's statement as an intra-quarter update or forward-looking guidance.  Effectively, Trueman seeks to offer an opinion that the market was not misled by the alleged misstatements.[23]  But this determination invades the province of the jury.  "A district court should be especially cautious when experts comment upon the materiality or fraudulence of disputed misstatements in securities fraud actions." *Stratosphere*, 66 F. Supp. 2d at 1188.  Trueman then sets up a strawman: crafting his own (or Defendants') version of the alleged misstatements.  Defendants are not permitted, in the guise of expert testimony, to simply "put forth an alternative theory of the case" that is based "on an assumption for which the factual foundation is lacking." *Krouch*, 2014 WL 5463333, at *6.

Specifically, Trueman mischaracterizes what Plaintiff must prove to show Cook's statements were actionable and misleads the jury into believing that Plaintiff alleges Cook's statements constituted an "intra-quarter update" – which is an irrelevant and manufactured concept.  And, while the *Daubert* analysis generally focuses on the principles and methodology relied upon by an expert, an expert's conclusions and methodology are inter-related.  *See Joiner*, 522 U.S. 136.  By utilizing a flawed methodology (arguably, none at all), Trueman opines that analysts and therefore the market did not understand Cook's statement to say "there was no pressure on Apple's business in China" and that subsequent to the conference call, analysts

---

[23]   To the extent Trueman's seeks to offer expert opinions regarding the truth or falsity of Cook's statements made on the conference call, Trueman does not possess the qualifications to opine on those areas including economic conditions in emerging markets, U.S.-China trade policies, smartphone consumer behavior, Chinese regulations surrounding gaming applications, or foreign currency fluctuations.  *See* FRE 702; Ex. 4, ¶¶1-14; Ex. 4, Appendix 1 (Curriculum Vitae).

1   "understood that Apple faced pressure in China" and that Cook's statements did not assuage any

2   concerns analysts had about China.  Ex. 4, §§III-IV; *id.*, ¶60.

3       This framing of what analysts understood creates the impression that Plaintiff must prove

4   the market believed Apple was not facing business pressures in China and that Defendants are

5   absolved of liability if the statements were framed in the past tense.  This is false: Plaintiff alleges

6   that the market was concerned about economic deceleration and business pressure in China, and,

7   when asked about these issues, Cook assured investors he would not put China in the category of

8   emerging markets in which Apple was experiencing negative economic pressure.  RCC, ¶18.  Cook

9   alleviated the investors' concerns.  And as Plaintiff reiterated elsewhere, nowhere has Plaintiff

10  alleged Apple provided an intra-quarter update or that the Company was providing forward-

11  looking guidance.  *See* ECF 274-3 at 2 n.3.

12      The prejudice caused by Trueman's framing of the purported issues poses a real risk that

13  the jury will defer to his incorrect portrayal of what Plaintiff must prove.  *See United States v.*

14  *Holmes*, 2021 U.S. Dist. LEXIS 98060, at *9 (N.D. Cal. May 21, 2021) ("'Unfair prejudice can

15  result from evidence that makes it more likely for a juror "to defer to findings and determinations

16  relevant to credibility made by an authoritative, professional factfinder rather than determine those

17  issues for themselves."'").  Accordingly, all paragraphs presenting this distorted framing of

18  Plaintiff's allegations should be excluded (*i.e.*, Ex. 4, ¶¶27, 34, 39-40, 49-54, 57, 59-60, 69).

19      **4.**    **Trueman's References to Apple's Gaming Applications and**
                **Foreign Currency Issues Are Irrelevant, Unreliable, and**
20              **Likely to Confuse the Jury**

21      Trueman's opinions that reference Apple's gaming business in China (Ex. 4, ¶¶44-45, 47,

22  49) and foreign currency issues (*id.*, ¶¶41-43) should be excluded as irrelevant and likely to

23  confuse the jury.  FRE 403.  Trueman seeks to opine that Cook's comments regarding Apple's

24  gaming business in China constituted a disclosure of business pressures that Apple was facing in

25  China.  But had he considered the question, Trueman would understand Cook's statements

26  regarding gaming App issues are entirely distinct from his comments about emerging markets:

27          [Analyst:] Tim, there has been some real deceleration in some of these
               emerging markets, partly driven by some concerns around some of the rules the
28             administration is contemplating and partly driven by things that are more specific

1    to China, for instance, like some of the regulations around gaming. So can you talk
2    about how you see the trajectory there for the business and what you think of the
     initiatives of some companies like Netflix and Fortnite trying to bypass the App
     Store around subscriptions?

3    Ex. 17 at 8.  Cook responds "[s]tarting with emerging markets" and addresses the first part of the

4    analyst's question by making the alleged misstatements.  *Id.*  He then comments specifically on

5    the App Store issues and the Chinese regulations.  *Id.* at 8 ("The App Store in China, we have seen

6    a slowdown or a moratorium to be more accurate on new game approvals.  There is a new

7    regulatory setup in China, and there's – things are not moving the way they were moving

8    previously.").  Plaintiff has not alleged that Cook's statements in response to the second part of

9    the question was misleading.  By introducing those statements, Trueman conflates Cook's

10   statements regarding the App Store with the specific false and misleading statements alleged.

11        Trueman's opinions concerning foreign currency issues (Ex. 4, ¶¶41-43) are equally

12   misleading.  Trueman seeks to opine that analysts distinguished China from other emerging

13   markets with regard to currency issues, but whether China was distinguishable on that basis has

14   no bearing on whether Defendants misrepresented the current state of Apple's performance in

15   China during the Class Period and specifically as of November 1, 2018.  *See* Class Cert. Order at

16   13-14.  Applying his purported methodology, Trueman simply copies and pastes excerpts from a

17   limited set of analyst reports that discuss currency in emerging markets, many of which do not

18   even mention China, and makes the leap that because analysts did not discuss currency in China,

19   that "analysts distinguished China from other emerging markets due to foreign currency issues."

20   Ex. 4, ¶¶41-43.  More concerning is that Trueman seeks to opine that the analysts' purported

21   interpretation of Cook's statements was consistent with his own.  *Id.*, ¶41.  Though Trueman was

22   purportedly tasked with opining on how ***analysts*** perceived Cook's statements, he also seeks to

23   opine on how ***he*** interprets Cook's statements.  *Id.*, ¶27a ("My review of analyst reports finds that,

24   ***like my interpretation of the Challenged Statement***, many analysts distinguished China from other

25   emerging markets due to foreign currency issues."); *id.*, ¶41 ("This is consistent with ***my***

26   interpretation of how Mr. Cook distinguished China from other emerging markets . . . .").  This is

27   precisely the kind of expert testimony that the *Celera* court cautioned against as an improper

1   attempt to advocate for one version of the purported truth; the witness "should never be allowed

2   to divine for the jury the truth of what actually occurred or what the mental state of an actor was."

3   *Celera*, 2015 U.S. Dist. LEXIS 3914, at *7.  Accordingly, ¶¶27a, 41-43 should be excluded.

4           **5.**     **Section III of Trueman's Rebuttal Report Should be Excluded**
                   **as Improper Rebuttal Testimony**

5
           All opinions in Trueman's rebuttal report offered to "further buttress" his opening report

6   should be excluded as importer rebuttal testimony.  Ex. 5, §III, ¶6.  Proper rebuttal testimony

7   "'explain[s], repel[s], counteract[s] or disprove[s] evidence of the adverse party.'"  *Clear-View*

8   *Techs., Inc. v. Rasnick*, 2015 WL 3509384, at *2 (N.D. Cal. June 3, 2015).  Trueman's second

9   opinion set forth in his rebuttal report is "the public sources cited by Dr. Shenkar to show that there

10  was 'pressure' on Apple's business in China prior to the conference call ***further buttress my***

11  ***opinion*** that if analysts had heard Mr. Cook to say that there was 'no pressure' on Apple's business

12  in china, they would have discussed it in their reports."  Ex. 5, §III (heading).  This opinion does

13  not even attempt to counter Shenkar's report and affirmatively and explicitly seeks to only provide

14  additional support for Trueman's opening report.  Accordingly, the second bullet point in ¶¶6 and

15  9-11 in Trueman's rebuttal report should be excluded.

16          **D.**     **Poer's Summary Witness and Expert Opinions Are Unreliable,**
                   **Misleading, and Should Be Excluded**

17
           Poer is a Trojan Horse.  He claims to be both a summary and an expert witness but in truth

18
19  he is neither.  Defendants proffer Poer as a means to introduce evidence and testimony that should

20  come from percipient witnesses, including witnesses that Defendants never disclosed during fact

21  discovery, and to cloak argumentative summaries with a veneer of "expertise."

22          **1.**     **Poer Is Not Qualified to Offer Expert Opinions on Wide-**
                   **Ranging, Largely Irrelevant Issues**

23
           Poer claims expertise in accounting, finance, and in the undefined (and impossibly vague)

24  area of "complex data concepts."  Ex. 6, ¶5.  Yet Poer seeks to offer opinions as a "jack of all

25  trades" on issues as diverse as product forecasts, smartphone unbrickings, international currency

26  fluctuations, store traffic, and financial guidance and results, not to mention geographies from

27  Greater China to Brazil, India, Russia and Turkey.  *See id.*, ¶¶17-53; Ex. 7, ¶¶9-25.

28

1    Poer is not an expert in these areas; he is a litigation consultant and a mouthpiece.  In

2    addition to claiming to be an expert in "complex data concepts," Poer touts his experience in

3    "dispute consulting" in "various industries . . . mainly related to complex litigation matters

4    involving financial analysis and accounting."  Ex. 6, ¶5.  He is retained to do what his firm does,

5    and that is to "provide[] multidisciplinary solutions to complex challenges and opportunities." *Id.*,

6    ¶7.  Thus, by Poer's own description, his expertise is so vague as to be meaningless under *Daubert*.

7    *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 6887043, at *6 n.3 (N.D. Cal. Nov. 14, 2013)

8    (warning that "an 'expert' who is little more than a mouthpiece for presenting the argument of

9    counsel based on uncomplicated evidence already in the case" would be excluded).

10    Further, this case is not an accounting case, or a finance case, or a "complex data concepts"

11    case; therefore, there is no appropriate reason for Poer to seek to testify concerning, *e.g.*, iPhone

12    activations (Ex. 6, §V.B.-D.), Apple's guidance (*id.*, §V.C.-D.), international currency fluctuations

13    (*id.*, §V.E.), Apple's growth trends in Greater China (Ex. 7, §III.B.a.), store traffic (*id.*, §III.B.c.),

14    or Apple's internal "optimism" (*id.*, §III.B.d.).  These are improperly commingled summary and

15    expert opinions.  As the court explained in *Trulove v. D'Amico*, 2018 WL 1090248, at *2 (N.D.

16    Cal. Feb. 27, 2018), Poer "offers opinions which extend beyond simply turning the data he

17    reviewed into a visual form."  In fact, Poer's "opinions and illustrations require inferential leaps

18    from that evidence, and such leaps require greater expertise than he possesses." *Id.*  And that is

19    especially so here, where Defendants proffer Poer to "regurgitate[]" non-relevant theories

20    concerning the 1Q19 guidance and foreign currency.  *See Otto*, 2021 WL 1615311, at *5.

21    For these reasons, Poer is unqualified to proffer expert testimony and will only mislead the

22    jury and confuse the issues if not excluded.  *United States v. Spangler*, 810 F.3d 702, 708 (9th Cir.

23    2016) (district court properly barred expert testimony where not relevant to opposing party's

24    theory); *Krouch*, 2014 WL 5463333, at *6 (An expert "cannot base his opinion on an assumption

25    for which the factual foundation is lacking in order to put forth an alternative theory of the case

26    simply to avoid summary judgment.").  Poer should be excluded.

27

28

### 2.     Poer Should Be Excluded as a Summary Witness Under FRE 1006

Because Poer lacks any first-hand knowledge of the documents or underlying events in his report and rebuttal, including 21 "Summary Charts" and "Rebuttal Charts," he should be precluded from offering this material.  "[S]ummary witnesses should only be allowed in 'exceptional cases' because the credibility of summary witnesses may be substituted for the credibility of the evidence summarized."  *United States v. Leon-Reyes*, 177 F.3d 816, 819 n.4 (9th Cir. 1999).  Because "[t]he jury is entitled to hear testimony from individuals who have first-hand knowledge of the events that occurred," Poer should be excluded as a summary witness.  *Celera*, 2015 U.S. Dist. LEXIS 3914, at *13.  Apple has ample percipient witnesses and lawyers who may summarize whatever (admissible) data they care to present.[24]  *See, e.g.*, *United States v. Baker*, 10 F.3d 1374, 1412 (9th Cir. 1993) (lawyer, not summary witness, should have presented summary testimony at appropriate time), *overruled in part on other grounds by United States v. Norby*, 225 F.3d 1053 (9th Cir. 2000).

Here, Poer seeks to offer various charts presenting data on iPhone "unbrickings" in Greater China, Apple's forecasts for unbrickings, foreign currency fluctuations, Apple's revenue, average selling prices for iPhones, and retail store traffic.  There is no doubt that Poer has no firsthand information about the documents summarized or the events underlying them.  He should not be permitted to present summaries to the jury.

### 3.     Poer's Opinions Are Based on Information Defendants Failed to Disclose During Discovery

Poer's reliance on undisclosed information provided by witnesses not previously identified to Plaintiff is an independent ground to exclude him as both an expert and as a summary witness. *Apple v. Samsung Elecs. Co.*, 2012 WL 3155574, at *3-*4 (N.D. Cal. Aug. 2, 2012) (upholding under Rule 72 magistrate judge's partial grant of Apple's motion to "strike portions of expert reports based on evidence . . . not disclosed in discovery pursuant to" Fed. R. Civ. P. 26(a), (e) and 37(c)(1)).  Poer bases his commingled summary and expert opinions on three private interviews

---

[24]  A witness cannot avoid the rule against hearsay by flooding the record with charts purporting to evidence facts through an "expert" without establishing their admissibility.

1   with five purportedly percipient witnesses, none of whom were identified in Defendants' initial

2   disclosures.  *See* Decl., ¶2; Ex. 6, ¶18 & n.17; Ex. 7, ¶20, n.29.  Those witnesses are: Naznin Shroff

3   (Decision Support, Worldwide Operations); Tejas Galas (Director, Corporate Finance & Investor

4   Relations); Anish Patel (VP, Worldwide Supply Demand Management, Readiness, Reseller Ops);

5   Tina Tong (Sales Operations Manager – Greater China); and Karen Wang (Sales Support Analyst

6   – Greater China).  None of these individuals were identified as supporting Defendants' defenses

7   in either their December 18, 2020 initial disclosures, or their March 16, 2022 supplemental initial

8   disclosures (*i.e.* the last day of the discovery period).  The documents of only one of those

9   individuals, Patel, was searched and produced, and only at Plaintiff's insistence.[25]  Decl., ¶2.

10        Instead, Defendants repeatedly sought to limit discovery and custodians in this matter, and

11   Poer cannot circumvent these efforts with his own private interviews of percipient witnesses.  *See*

12   *Miranda v. U.S. Sec. Assocs., Inc.*, 2019 WL 2929966, at *6 (N.D. Cal. July 8, 2019) (recognizing

13   that "depriving a party of the opportunity to conduct discovery or depose untimely-deposed

14   witnesses demonstrates harm"); *see also SEC v. BankAtlantic Bancorp, Inc*., 2013 WL 12009694,

15   at *12 (S.D. Fla. Nov. 14, 2013) (excluding expert opinion where defendants improperly

16   "attempt[ed] to gain admissibility of the hearsay analysts' reports through Rule 703").  In fact,

17   Defendants told the Court that the six individuals listed on their Rule 26 initial disclosures, plus

18   one additional custodian, "will be more than sufficient to resolve the [relevant] question[s]" in the

19   case.  ECF 155.  Poer's report proves this was inaccurate.  Defendants chose not to develop any of

20   the supporting data in discovery and denied Plaintiff a fair opportunity to examine it.  Now that

21   such opportunity has passed, Defendants want to rely on undisclosed sources and data, via a

22   purported summary witness and expert.  These efforts should be rejected.

23        **4.   Poer Does Not Disclose the Information He Learned from the Previously Undisclosed Apple Witnesses**

24

25        Poer's proposed testimony violates Rule 26, which requires him to disclose in his reports

26   all "facts or data considered" as well as to provide "the basis and reasons for" each of the opinions

27   ─────────────

[25]   Plaintiff independently identified Patel and Gala, and deposed Patel. Notably, when Plaintiff

28   deposed Patel, Defendants did not question him.

1  he seeks to proffer.  Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii).  Here, Poer's reports say next to nothing

2  about what information the Apple witnesses he interviewed provided or how that information

3  contributed to his opinions.  For that reason, his opinion must be excluded.

4  And, even if these witnesses had been disclosed, or their custodial files produced, Poer's

5  reliance on them would taint the entirety of his proffered opinions.  That failure cannot be cured.

6  Plaintiff nevertheless subpoenaed all information related to the interviews of these witnesses,

7  including audio or video recordings, transcripts and notes.  Poer produced just two redacted

8  documents (3 total pages) appearing to be interview notes.  The notes (Exs. 13-14), sparse as they

9  are, confirm that Poer is opining on sources and data he does not understand.  For example, the

10 notes reflect that Tong and Wang were asked a series of questions about retail store traffic but had

11 no answer.  Ex. 13 ("A: Tina and Karen are not knowledgeable on retail data and were not familiar

12 with the data source.").  Yet, the fact that Apple's handpicked witnesses were uninformed about

13 the topic did not prevent Poer from opining on retail traffic at length.  *See, e.g.*, Ex. 7, ¶¶5(g)-(i),

14 19-24 & Charts 7A-7C.  If Apple's employees were not "knowledgeable on retail [traffic] data,"

15 how did Poer come to "understand the Greater China reseller traffic reports and data"?  Ex. 7, ¶20

16 n.29.  Poer's report does not say.  Poer's willingness to summarize and opine on data in an area

17 beyond his expertise, that he is unfamiliar with and that Apple's handpicked witnesses were

18 unfamiliar with, confirms that his opinions are unreliable.  *See Droplets, Inc. v. Yahoo! Inc.*, 2022

19 WL 2670188, at *2 (N.D. Cal. Feb. 28, 2022) ("[The expert] is not qualified to render such an

20 opinion; he bases that conclusion on an 'interview' of Yahoo's technical expert . . . the contents

21 of which are not before the Court.").

## 5.    Poer's Intermingled Expert and Summary Opinions Will Mislead the Jury

23

24 As the Court has recognized, in the context of "dual percipient and expert witness role

25 issues," there is an inherent risk of misleading the jury where an expert serves in non-expert roles,

26 and "precautions" must be taken to ensure the jury understands what testimony is proffered

27 pursuant to which role.  *United States v. Cervantes*, 2016 WL 491599, at *1, *9 (N.D. Cal. Feb. 9,

28 2016).  For example, in *United States v. Reyes Vera*, 770 F.3d 1232, 1241 (9th Cir. 2014), a law

1   enforcement officer's percipient testimony and expert testimony were split into separate phases.

2   The danger that a summary witness's credibility will be substituted for the evidence is especially

3   acute where, as here, the summary witness is also proffered as an expert, with no distinction made

4   between the two opinions.  Thus, to be admissible under FRE 702 or 1006, there must be some

5   way of clearly distinguishing the summary testimony from the expert testimony.

6          Here, Poer so intermixes his summaries with argument that there is no distinguishing the

7   two: his opinions are presented exactly as Defendants' lawyers hope to and will at trial, as

8   comingled charts and opinions on the data contained therein.  For example, Poer blends his

9   "utiliz[ation]" of "the Week 5 Weekly Unbrickings Report" (which he incorporates into "many"

10  of his summary charts) with his conclusion that "Apple's Q1 FY2019 revenue guidance shortfall

11  was due to lower than expected/forecasted levels of unbrickings during November and December,

12  not October."  Ex. 6, ¶¶35-36.

13         In truth, Poer is just a vehicle to introduce evidence Apple's lawyers (and other experts)

14  wish to rely on but know is inadmissible and will be unconvincing if presented by others.

15  Defendants' use of Poer resembles another securities case, in which the court excluded opinion

16  that "consists of nothing more than a summary of the analysts' reports" because "[d]efendants[]

17  attempt to gain admissibility of the hearsay analysts' reports through Rule 703."  *See BankAtlantic*

18  *Bancorp.*, 2013 WL 12009694, at *12.

19         Further, Poer's attempt to wear two 'hats' leads him into error.  For example, he does not

20  mention that Apple launched its flagship iPhones at different times in 1Q18 and 1Q19, making his

21  quarterly year-over-year comparison of "Greater China – iPhone All" unbrickings for those

22  quarters an apples-to-oranges comparison that an actual Apple percipient witness would have been

23  well-aware of.  *Contrast e.g.*, Ex. 6, ¶¶32-33, *with* RCC, ¶7 (showing launch dates for iPhones

24  from 2015 through 2018); ECF 250-2, ¶90 (Describing a document published at the beginning of

25  1Q19 Week 5 reporting: "Week 4 contains the launch last year of iPhone X, so ***we are now getting***

26  ***a more correct view of the business YoY***.").  Again, Poer not only purports to summarize that

27  mismatched data, he also uses it as the basis for argument in the same paragraph that "Apple . . .

28  performed well in Greater China."  Ex. 6, ¶33.

1    Poer's argumentative testimony presents a high risk of misleading a jury.  As the Court has

2   explained in a case involving argumentative summaries under Rule 1006, while "the content of

3   the charts is admissible, . . . [t]he principal problem with the charts is not the substance of the

4   material therein summarized but their argumentative wording." *ADT*, 2013 WL 10542929, at *2.

5   And, as Judge Alsup explained in similar circumstances: "[W]here the expert does little more than

6   read depositions and deposition exhibits and other such materials, and then proposes to render

7   findings to the jury as to what happened, we should draw the line and bar such testimony." *Celera*,

8   2015 U.S. Dist. LEXIS 3914, at *5.

9    Poer's proposed testimony should be excluded in its entirety because his combined,

10   argumentative "summary" and "expert" testimony presents a danger of misleading the jury which

11   will be unable to tell when Poer is testifying as a summary witness or as an expert.  *See id.* at *10

12   (partially excluding expert whose report was "littered with the expert's summaries of fact witness

13   testimony").

14    **E.    Grenadier's Rebuttal Report Should Be Excluded in Part as**
         **Irrelevant, Unhelpful, Confusing, and Beyond the Scope of Rebuttal**
15       **Opinion**

16    Grenadier purports to offer a rebuttal report encompassing six opinions responding to

17   Plaintiff's loss causation and damages expert, Dr. Steven P. Feinstein ("Feinstein").  *See* Ex. 8,

18   ¶¶12-16, 20, 27; Ex. 18.  While Grenadier may be qualified, the vast majority of his opinions

19   should be excluded as irrelevant and prejudicial because they serve only to advance Defendants'

20   efforts to confuse and distract the jury.  Indeed, Grenadier utilizes a framework that is contrary to

21   well-established Supreme Court and Ninth Circuit law and applies it to a distorted version of

22   Plaintiff's allegations that this Court has already rejected.

23    **1.    Grenadier's Conditional Rebuttal Opinions 1 and 2 Regarding**
              **Lack of Damages Are Irrelevant and Should Be Excluded**
24

25    Grenadier seeks to offer two conditional opinions regarding a lack of stock price inflation

26   "*[i]f* the Court" deems the alleged misrepresentation to be "factually correct" because it was about

27   either currency (Opinion 1) or historical performance (Opinion 2). Ex. 8, ¶¶13-14, 37-42.  Because

28   Grenadier seeks to offer these "conditional opinions" only after "the Court" deems Defendants'

1   statements "factually correct," they are not pertinent and he will have no opportunity to offer them.

2   A jury will determine falsity, and this matter has not been bifurcated for purposes of loss causation

3   or damages.   Moreover, if the jury finds the alleged misrepresentation is not actionable, the

4   question of loss causation or damages will not be reached.  Opinions 1 and 2 should be excluded.

5               **2.      Grenadier's Rebuttal Opinion 3 Is Based Upon a Distortion of
                         the Court's Class Cert. Order, Unsupported by Any Expert
6                        Analysis and Should Be Excluded**

7           Twisting the language of the Court's Class Cert. Order, Grenadier seeks to offer another

8   *conditional* opinion that:

9           **If** Plaintiff's theory of harm is that Apple allegedly misrepresented that it was not
            facing **any "pressure"** in Greater China as of November 1, 2018, and **if** the
10          November 5, 2018 disclosure revealed that Apple was facing "pressure," then Mr.
            Cook's statement could not have caused Plaintiff's alleged losses after November
11          5, 2018.

12  Ex. 8, ¶15; *see also id.*, ¶¶43-47.  This opinion should be excluded as confusing, irrelevant and

13  prejudicial because the condition precedent is not satisfied: "Plaintiff's theory of harm" is ***not*** "that

14  Apple allegedly misrepresented that it was not facing **any 'pressure'** in Greater China."  *See, e.g.*,

15  ECF 123 at 8-9 n.4.[26]  Plaintiff's theory is Defendants knew but failed to disclose facts rendering

16  Cook's statement concerning the Company's current performance in Greater China false and

17  misleading under the circumstances, including the impact of declining economic conditions, the

18  negative impact of trade tensions, and weak demand for its new iPhone.  RCC, ¶¶24, 66.

19          Furthermore, this opinion is an obvious distortion of the Class Cert. Order, which itself

20  was setting the record straight on a prior attempted "re-fram[ing]" by Defendants:

21          [D]efendants contend that what "purportedly 'shocked' analysts on January 2" was
            "'the magnitude and severity' of [Apple's] negative performance in China at
22          quarter's end."  Defendants argue that this information did not exist at the time the
            challenged statement was made and therefore "a resulting price effect cannot be
23          inferred."  ***Defendants again attempt to re-frame the misrepresentation,*** this time,
            by zeroing in on a single phrase in the complaint. ***However, they ignore the thrust***
24          ***of plaintiff's complaint, which is not merely that Cook misrepresented how poorly***
            ***Apple was performing in China, but that it was, in fact, performing poorly at all.***
25

26
    _____

27  [26]   Grenadier repeats this same opinion regarding full disclosure on November 5 and 12, 2018
    with respect to determining damages. Ex. 8, ¶¶132-133.  This opinion should be excluded for the
28  same reasons as the flawed loss causation opinion.

1  Class Cert. Order at 15 (alteration in original).  Indeed, the Court rejected Grenadier's opinion that

2  "***any***" disclosure of pressure would constitute full corrective disclosure of the alleged fraud:

3        ***Defendants imply that the November 5 disclosures regarding reduced iPhone***
   ***production completely cured the alleged misrepresentations*** that Apple's business
4  in China was thriving, such that the back-end price drop on January 2 cannot be
   attributed to the alleged fraud.  ***The Court is not convinced.  At face value, the***
5  ***January 2 disclosure reveals much more about the iPhone's performance in***
   ***China than the November 5 disclosures.***
6
   *Id.* at 14-15; *see also* RCC, ¶¶102, 104 (alleging Apple stock continued to trade at inflated prices
7
   after the November 5 and 12, 2018, disclosures).  Because Grenadier has not offered any analytical
8
   or statistical study supporting his conclusion (even if conditional), that the November 5, 2018
9
   disclosure was a fully corrective disclosure, Opinion 3 should be excluded.
10
   ### 3.   Grenadier's Opinion 4 on Loss Causation Is Contrary to Law,
11  Distorts the Allegations and Should Be Excluded

12       To establish loss causation, a plaintiff must show "proximate" or "legal" cause.  *Nuveen*

13  *Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1118 (9th Cir. 2013);

14  *see also* 15 U.S.C. §78u-4(b)(4).  "[A] plaintiff can satisfy loss causation by showing that 'the

15  defendant misrepresented or omitted the ***very*** facts that were a substantial factor in causing the

16  plaintiff's economic loss.'"  *Nuveen*, 730 F.3d at 1120 (emphasis in original).  "The 'ultimate

17  issue' . . . 'is whether the defendant's misstatement, as opposed to some other fact, foreseeably

18  caused the plaintiff's loss."  *Mineworkers' Pension Scheme v. First Solar, Inc.*, 881 F.3d 750, 754

19  (9th Cir. 2018).

20       Grenadier seeks to offer multiple opinions within an improper framework in which he

21  claims that to prove loss causation, Plaintiff must first define a truthful "but-for disclosure" that

22  Apple should have made on November 1, 2018.  *See, e.g.*, Ex. 8, ¶¶52, 55-59; *see also id.*, ¶¶50-

23  51, 60-63.  "Because [Grenadier's opinion] is contrary to law, it is unreliable under FRE 702 and

24  *Daubert* and unduly prejudicial under FRE 403."  *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL

25  2571332, at *6 (N.D. Cal. June 30, 2012).  Grenadier's unfounded opinion that Plaintiff must

26  redraft the alleged misrepresentation turns the law on its head and this requirement does not appear

27  in any analysis by the Supreme Court or Ninth Circuit.  *See, e.g.*, 15 U.S.C. §78u-4(b)(4); *Dura*

28  *Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005); *In re Daou Sys.*, 411 F.3d 1006, 1025-26 (9th

1   Cir. 2005).  There may be multiple non-fraudulent representations Defendants **could** have made,

2   but neither Plaintiff nor its expert must step into Defendants' shoes to craft compliant disclosures.

3   *See, e.g.*, Ex. 18, ¶¶43-45 (listing undisclosed negative information known to Defendants).

4          Grenadier further misstates the applicable law when he seeks to opine that loss causation

5   requires a "match[]" between his "but-for disclosure" and the later revelation of the truth.  Ex. 8,

6   ¶¶50, 52.  But, it is well established that "'[t]o be corrective, the disclosure need not precisely

7   mirror the earlier misrepresentation, but it must at least relate back to the misrepresentation and

8   not to some other negative information about the company.'"  *Lloyd v. CVB Fin. Corp.*, 811 F.3d

9   1200, 1210 (9th Cir. 2016).

10         Finally, Grenadier seeks to apply a formulation of his "but-for disclosure" based on a

11  distortion of the allegations:

12         The Court ruled that "the thrust of plaintiffs complaint [] is not merely that Cook
           misrepresented **how** poorly Apple was performing in China, but that it was, in fact,
13         performing poorly at all."  ***Therefore, I understand that according to Plaintiff's
           theory, the but-for disclosure that could and should have been made was that***
14         ***Apple was facing "pressure" in Greater China, not the severity of such***
           ***"pressure."***
15
16  Ex. 8, ¶¶17, 56 (some emphasis in original).  As discussed above, Grenadier mistakes Plaintiff's

17  claims.  Both Opinion 4, and all of those based upon this premise including ¶¶16-21, 23, 48-102,

    should be excluded as irrelevant, confusing, and prejudicial.
18

19                 a.      **Grenadier's Opinions Regarding Loss Causation on**
                           **November 5 and 12, 2018 Should Be Excluded**

20         In addition to the faulty framework requiring a "but-for disclosure," Grenadier's opinions

21  as to loss causation on November 5 and 12, 2018, should be excluded as contrary to law, unreliable

22  and prejudicial.  *Id.*, ¶¶67-81.  Grenadier seeks to testify that Plaintiff's proof of loss causation

23  must account for Apple's preference for historically withholding certain information from

24  investors by opining that "the but-for disclosure would not have included production cuts, because

25  it was not Apple's standard practice to disclose such information."  *Id.*, ¶¶69, 78; *see also id.*, ¶58.

26  The securities laws do not defer to Apple's preference to withhold material information.  15 U.S.C.

27  §78u-4(a)(1).  The Court recognized the disclosures of "cut production lines" on November 5 and

28

1   12, 2018, support allegations.  *See, e.g.*, ECF 123.  This opinion will only confuse and mislead the

2   jury.

3          Grenadier also seeks to offer the opinion that information related to iPhone XR cuts for

4   regions other than Greater China constituted confounding information on November 5 and 12,

5   2018, and that Feinstein should have allocate the price declines based on internal company

6   forecasts.  Ex. 8, ¶¶72-74, 79-80.  This opinion is not supported by any proper methodology, in

7   particular an event study, as one would expect.  *In re Novatel Wireless Sec. Litig.*, 2013 WL

8   12144150, at *5 (S.D. Cal. Oct. 25, 2013) ("Event studies are crucial to demonstrate loss causation,

9   and indeed some courts describe them as 'almost obligatory.'").  It is undisputed that there was

10  only one fraud-related corrective disclosure on November 5, 2018, when Apple's stock fell $5.89:

11  The *Nikkei Article* reported Apple cut iPhone XR production by up to 100,000 phones per day.

12  RCC, ¶¶68, 73.  It is also undisputed that there was only one fraud-related corrective disclosure on

13  November 12, 2018 when Apple stock fell $9.83: Wells Fargo reported a 30% reduction in iPhone

14  orders based on information from Apple supplier, Lumentum.  *Id.*, ¶¶74-75.  And, Grenadier

15  accepts that Feinstein conducted an event study to account for industry factors and confounding

16  information that could have contributed to these price declines and determined that there was no

17  other Apple-related information that entered the market on these days.  Ex. 8, ¶¶67, 76.  In contrast,

18  Grenadier does not perform his own event study that would identify any purported non-fraudulent

19  confounding information or provide any basis for his opinion that investors reacted to disclosures

20  about countries other than Greater China.[27]  Because Grenadier's opinions concerning loss

21  causation on November 5 and 12, 2018, lack any methodological basis they should be excluded.

**b.    Grenadier's Opinions Regarding Loss Causation on
January 3, 2019 Should be Excluded**

22

23          In addition to the faulty framework requiring a "but-for disclosure," Grenadier's specific

24  rebuttal to Feinstein's opinions as to loss causation analysis on January 3, 2019, should be excluded

25

---

26  [27]   To the extent Grenadier views information concerning iPhone XR cuts in countries other than
    Greater China to have caused Apple's stock price to decline on November 5 and 12, 2018, he
27  provides additional support for the materiality of Cook's statement that the Company had "very,
    very little data" concerning early demand for the iPhone XR.  ECF 250 at 23 n.21.
28

as contrary to law, unreliable and prejudicial.  Ex. 8, ¶¶82-102.  Plaintiff alleges – and supports with expert opinion – that if Defendants disclosed the truth on November 1, 2018, the stock price would have declined precipitously as it did on January 3, 2019.  *See, e.g.*, RCC, ¶111.  In his report, Grenadier seeks to opine that other unspecified events occurring after November 1, 2018, caused the January 3, 2019 price decline, as purportedly evidenced by Apple's "'surprise[]'" at missing its guidance.[28]  Ex. 8, ¶¶85-90.  But this is nothing more than naked argument unsupported by any recognized analysis identifying any material intervening events that purportedly caused the January 3, 2019 price decline.

Moreover, Grenadier's opinions depend on improperly redefining Plaintiff's allegations in precisely the same manner other courts have rejected.  Indeed, in *In re Allstate Corp. Sec. Litig.*, 2022 WL 842737 (N.D. Ill. Jan. 10, 2022), the court held defendants "misunderstand[] the nature of Plaintiffs' allegations."  *Id.* at *18.  "[A]lthough Allstate could not have disclosed claims frequency increases before they had happened, Allstate could have been truthful about and disclosed earlier in time *the underlying causes* of claims frequency increases."  *Id.*  "[The plaintiff's expert's] opinions thus do not rest on the impossible assumption Defendants claim . . . [but] track Plaintiffs' theory and are designed to measure the effect that Plaintiffs say the truth would have had on Allstate's stock price."  *Id.*  Paragraphs 82-95, 99 should be excluded.

### 4. Grenadier's Opinion 5 Related to Damages Must Be Excluded in Part as Contrary to Law, Baseless, and Overly Prejudicial

Grenadier's opinions on damages are based upon his flawed "but-for disclosure" analysis which alone mandates exclusion.  Ex. 8, ¶¶111-114.  Additionally, Grenadier improperly asserts that because the alleged misrepresentation was "purely a qualitative statement," that quantitative disclosures on January 3, 2019, regarding *how* poorly Apple was performing in China are unrelated to plaintiff's damages.  Ex. 8, ¶112.  This argument has already been rejected by the Court:

> [D]efendants submit that Cook's *qualitative* statement that he "would not put China in th[e same] category" as the underperforming emerging markets does not match the January 2 quantitative disclosure that earnings would miss guidance by five to nine billion dollars. *This is yet another distortion by defendants, this time, of the*

---

[28]  Grenadier feebly references "unexpected headwinds" that occurred during 1Q19 but he cites no evidence that these purported impacts were either new or unexpected.  Ex. 8, ¶¶92-94.

> ***allegedly corrective disclosure, which is not about the earnings shortfall but rather the true state of Apple's business in China.***

Class Cert. Order at 15 (some emphasis in original).

Grenadier should also be precluded from offering unfounded musings to the jury, such as demanding that Feinstein explain how the stock price was inflated "considering that analysts stated that Apple faced headwinds in Greater China both before and after the alleged misrepresentation, and that analyst consensus expectations were well within Apple's own guidance range and its range of internal forecasts." Ex. 8, ¶¶106-110. It is well accepted that material false statements impact the price of a stock in an efficient market. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 272 (2014). And "[t]he best way to determine the impact of a false statement is to observe what happens when the truth is finally disclosed and use that to work backward, on the assumption that the lie's positive effect on the share price is equal to the additive inverse of the truth's negative effect." *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 415 (7th Cir. 2015).

Finally, Grenadier offers an "example" damages calculation on January 3, 2019, based on a novel theory lacking any recognized basis in the statute, the academic literature or the relevant case law.[29] Grenadier claims that the price inflation attributable to the November 1, 2018 misrepresentation was the amount by which analysts' revenue consensus exceeded the Company's guidance range – or $213 million of what Grenadier describes as "the market's over-optimism." Ex. 8, ¶¶127-128. In addition to being wholly unsupported, this theory defies logic and common sense. If analysts' consensus perfectly aligned with a defendant's guidance range, there would be no possibility that a plaintiff could recover damages for securities fraud no matter how egregious defendants' fraud. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 288 (N.D. Cal. 2020) ("The [inflation] ribbon represents an estimate of the daily level of artificial inflation in the prices of . . . common stock caused by the alleged misrepresentations and omissions.").

---

[29] Grenadier's "examples" with respect to November 5 and 12, 2018 (Ex. 8, ¶¶121-124) embody the same analytical flaws as his loss causation analysis of the same dates, *see* §III.E.3.a.

5.      **Grenadier's Opinions Concerning Options Damages Should be Excluded in Part**

Feinstein sets forth a sound methodology for determining out-of-pocket damages for option investors based on the same inflationary ribbon determined for common stock investors.  Ex. 18, ¶¶161-186.  In response, Grenadier opines that buyers of calls and sellers of puts may have made different investment choices but for the alleged fraud. Ex. 8, ¶¶29, 139-143.  This argument is contrary to law and thus should be excluded.  *See Mulderrig v. Amyris, Inc*., 340 F.R.D. 575, 589 (N.D. Cal. 2021) (finding out-of-pocket damages theory is appropriately resolved on a class-wide basis without need to look to intent of investor).[30]

In an effort to confuse jurors, Grenadier also seeks to opine that Feinstein fails to account for implied volatility changes in his damages methodology.  Ex. 8, ¶¶30, 144-150.  But, the binomial model can account for changes in implied volatility.  ECF 289 at 15.  And, more importantly, Grenadier fails to demonstrate that changes in implied volatility have any material impact on damages given that in circumstances where small changes in stock price cause large implied volatility changes, the option price is largely insensitive to the implied volatility.[31]  As this opinion is confusing and irrelevant, it should be excluded.

F.      **Taylor's Rebuttal Report Must Be Excluded Because It Is Cumulative and Outside the Scope of Shenkar's Report**

Defendants have offered four separate rebuttals to Oded Shenkar's report.  Ex. 7; Ex. 5; Ex. 2; Ex. 9.  The unnecessary cumulative nature of these rebuttals alone should draw the intense scrutiny of the Court as to whether any or all of them should be excluded.  Taylor's rebuttal report should be excluded because it is far outside the scope of Shenkar's report and is another transparent effort to offer yet another "expert" to advance an irrelevant, misleading, and prejudicial theme that Apple's 1Q19 revenue guidance was reasonable, and therefore, a defense to Plaintiff's claims.

---

[30]   Grenadier should be precluded from offering opinions concerning a materialization of the risk damages analysis as plaintiff does not proceed under such a damages theory.  Ex. 8, ¶47 n.61.

[31]   In the example Grenadier presents where implied volatility rises from 27.47% on November 2, 2018, to 57.52% by January 3, 2019, the call option damages would be impacted by $0.01.  Ex. 8, ¶146.

1    Rebuttal disclosures under Fed. R. Civ. P. 26(a)(2)(D)(ii) are intended solely to contradict

2  or rebut evidence of the same subject matter identified by another party.  *In re Macbook Keyboard*

3  *Litig.*, 2022 U.S. Dist. LEXIS 34597, at *23 (N.D. Cal. Jan. 22, 2022) ("'Rebuttal testimony cannot

4  be used to advance new arguments or new evidence.'") (quoting *Huawei Techs.*, 340 F. Supp. 3d

5  at 995.  The test of whether an expert's opinion is rebuttal or a new opinion, is "'whether a rebuttal

6  attempts to put forward new theories outside the scope of the report it claims to rebut.'"  *Id.* at *26.

7    Shenkar provided a report concerning the history of economic growth in China and the

8  type of data foreign corporations typically rely on to assess consumer sentiment and preferences

9  in China.  Ex. 15, ¶¶14(a)-(h), 181.  Similarly, Shenkar also opined on whether Apple collected

10 and analyzed the type of data consistent with the data typically available to foreign corporations.

11 *Id.*  Shenkar ***does not*** provide any opinion whatsoever about the nature or reliability of Apple's

12 forecasting or guidance issuing process.  Taylor's rebuttal admits as much, solidifying the basis

13 for her exclusion.  *See* Ex. 9, ¶6 ("Dr. Shenkar does not describe or analyze Apple's forecasting

14 process, and he does not address whether the allegedly negative information he cites was already

15 incorporated into Apple's guidance.").

16    Taylor's rebuttal ***only*** provides analysis of Apple's guidance and criticizes Shenkar for not

17 doing the analysis she would have had done in a Fed. R. Civ. P. 26(a)(2)(D)(i) disclosure and

18 report.  But it is too late for that.  *See City & Cnty. of S.F. v. Purdue Pharma L.P.*, 2022 U.S. Dist.

19 LEXIS 73909, at *14 (N.D. Cal. Apr. 22, 2022) ("Nor is the late disclosure harmless.  Among

20 other forms of prejudice, the late [expert] disclosure deprived [the opposing parties] of the ability

21 to serve fact discovery related to the opinion and to address the opinion with their own experts.").

22    More importantly, the reliability and robustness of Apple's 1Q19 forecasting and guidance

23 process is not at issue in this case and more, not an opinion offered by Shenkar.  The overwhelming

24 thrust of the Taylor rebuttal is about Apple's forecasting process.  For example: Ex. 9, ¶7 ("Below

25 I describe Apple's forecast process and explain that it was extensive, robust, and has been

26 historically reliable."); *Id.* at 5 ("Apple Considered a Broad Range of Information in Arriving at

27 Its Revenue Guidance on November 1, 2018."); *Id.*, ¶10 ("Apple's forecasting process was used

28 to generate the guidance Apple provided to investors."); *Id.* at 6 ("Information Collected As Part

1  of the Forecasting Process Was Aggregated and Funneled."); *Id.*at 14 ("Apple Revised Its

2  Guidance Downwards to Reflect Information It Was Seeing in the Last Two Weeks of October");

3  *Id.* at 17 ("Apple's Forecasting Process Was Reliable.").

4        Taylor's "conclusion" makes clear her rebuttal is simply not "rebuttal" at all. Rather it is

5  a new[32] opinion Apple wished they had elicited on the disclosure date to further bolster their

6  misleading reframing of Plaintiff's claims to be that Apple's forecast/guidance was the alleged

7  misleading statement:

8          Apple's forecasting process was wide-ranging, robust, and historically
    reliable. The process involved forecasts from different divisions and, in accordance

9      with widely accepted practice, relied upon sales trends supplemented with a
    consideration of many additional factors. Dr. Shenkar cites certain trends leading

10      up to the earnings call on November 1, 2018, but he does not address the testimony
    of Apple witnesses who explained that Apple incorporated a broad range of

11      information in arriving at its forecasts and the guidance it provided to investors on
    November 1, 2018. Relatedly, Dr. Shenkar fails to address the revisions that Apple

12      made to its forecast in the two weeks leading up to the November 1, 2018 earnings
    call.

13  *Id.*, ¶71. Because Taylor does not attempt to contradict Shenkar's report but only criticizes him

14  for not doing an irrelevant, in depth analysis of Apple's forecasting process, it is not a proper

15  "rebuttal" under Rule 26(a)(2)(D)(ii) and her entire proposed testimony must be excluded.

16  **IV.**     **CONCLUSION**

17        Plaintiff respectfully requests that the Court grant the Motion and exclude the challenged

18  expert opinions.

19    DATED: September 9, 2022           Respectfully submitted,

20

21

22                              s/ Shawn A. Williams
                         SHAWN A. WILLIAMS

23

24

25

26

27  ---

  [32]   To the extent it is not "new," that is because it is needlessly duplicative of Poer's report. *See,*

28  *e.g.*, Ex. 6, §V.A. ("Apple maintained a robust and comprehensive forecasting process").

1

2                      ROBBINS GELLER RUDMAN
                        & DOWD LLP

3                      SHAWN A. WILLIAMS
                     DANIEL J. PFEFFERBAUM

4                      KENNETH J. BLACK
                     HADIYA K. DESHMUKH

5                      Post Montgomery Center
                     One Montgomery Street, Suite 1800

6                      San Francisco, CA  94104
                     Telephone:  415/288-4545

7                      415/288-4534 (fax)
                     shawnw@rgrdlaw.com

8                      dpfefferbaum@rgrdlaw.com
                     kennyb@rgrdlaw.com

9                      hdeshmukh@rgrdlaw.com

10                     ROBBINS GELLER RUDMAN
                     & DOWD LLP

11                      MARK SOLOMON
                     JASON A. FORGE

12                      RAPHAELLA FRIEDMAN
                     655 West Broadway, Suite 1900

13                      San Diego, CA  92101
                     Telephone:  619/231-1058

14                      619/231-7423 (fax)
                     marks@rgrdlaw.com

15                      jforge@rgrdlaw.com
                     rfriedman@rgrdlaw.com

16                     Lead Counsel for Lead Plaintiff

17                     LABATON SUCHAROW
                     CAROL C. VILLEGAS

18                     140 Broadway
                     New York, NY 10005

19                     Telephone: 212/907-0700
                     212/883-7524 (fax)

20                     cvillegas@labaton.com

21                     Counsel for Employees' Retirement System of the
                     State of Rhode Island

22

23

24

25

26

27

28

1

<u>CERTIFICATE OF SERVICE</u>

2       I hereby certify under penalty of perjury that on September 9, 2022, I authorized the

3 electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will

4 send notification of such filing to the email addresses on the attached Electronic Mail Notice List,

5 and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service

6 to the non-CM/ECF participants indicated on the attached Manual Notice List.

7                                         s/ Shawn A. Williams
                                         SHAWN A. WILLIAMS
8                                        ROBBINS GELLER RUDMAN
                                            & DOWD LLP
9                                        Post Montgomery Center
                                         One Montgomery Street, Suite 1800
10                                       San Francisco, CA  94104
                                         Telephone:  415/288-4545
11                                       415/288-4534 (fax)
                                         Email:  shawnw@rgrdlaw.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Mailing Information for a Case 4:19-cv-02033-YGR IN RE APPLE INC. SECURITIES LITIGATION

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Tristan Allen**
  tallen@orrick.com

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **Kevin Michael Askew**
  kaskew@orrick.com

- **Kenneth Joseph Black**
  KennyB@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com

- **Frank H. Busch**
  busch@wvbrlaw.com,abarca@wvbrlaw.com,pallister@wvbrlaw.com

- **Hadiya Khan Deshmukh**
  hdeshmukh@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **William Joseph Foley**
  wfoley@orrick.com

- **Jason A. Forge**
  jforge@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christine M. Fox**
  cfox@labaton.com,ndonlon@labaton.com,lpina@labaton.com,electroniccasefilings@labaton.com,6312349420@filings.docketbird.com

- **Raphaella Friedman**
  rfriedman@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Nicomedes Sy Herrera**
  nherrera@herrerakennedy.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Austin Thomas Jackson**
  ajackson@structurelaw.com,cford@structurelaw.com

- **James Neil Kramer**
  jkramer@orrick.com,lpatts@orrick.com,mwatkins@orrick.com,vmorse@orrick.com,tallen@orrick.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,fgravenson@pomlaw.com,ipareja@pomlaw.com

- **Francis P. McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle Suzanne Myers**
  shawnw@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,dmyers@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com,fgravenson@poml

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,jgeorge@rgrdlaw.com,dpfefferbaumRGRD@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,jgeorge@ecf.courtdrive.com,sbloyd@rgrdlaw.c

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Craig Wallace Smith**
  notice@robbinsllp.com,noticerobbinsllp@ecf.courtdrive.com,csmith@robbinsllp.com

- **Mark Solomon**
  marks@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Alexander K. Talarides**
  atalarides@orrick.com,lpatts@orrick.com,casestream@ecf.courtdrive.com,tallen@orrick.com

- **Michael David Torpey**
  mtorpey@orrick.com

- **Carol C. Villegas**
  cvillegas@labaton.com,ndonlon@labaton.com,lpina@labaton.com,5739893420@filings.docketbird.com,electroniccasefiling@labaton.com,dsaldamando@labaton.com

- **James Matthew Wagstaffe**
  wagstaffe@wvbrlaw.com,pallister@wvbrlaw.com

- **Steven Ray Wedeking , II**
  swedeking@robbinsllp.com,notice@robbinsllp.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,kennyb@rgrdlaw.com,jgelman@rgrdlaw.com,rfriedman@ecf.courtdrive.com,ShawnW@ecf.courtdrive.com,smorris@rgrdlaw.com,e_file_sd@rg

- **Ariel Brianna Winawer**
  awinawer@orrick.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)