1  JAMES N. KRAMER (SBN 154709)
   jkramer@orrick.com
2  MICHAEL D. TORPEY (SBN 79424)
   mtorpey@orrick.com
3  ALEXANDER K. TALARIDES (SBN 268068)
   atalarides@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
5  405 Howard Street
   San Francisco, CA  94105-2669
6  Telephone:    +1 (415) 773-5700
   Facsimile:    +1 (415) 773-5759
7
   Attorneys for Defendants Apple Inc.,
8  Timothy Cook, and Luca Maestri

9

10                 UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                      OAKLAND DIVISION

13

14  IN RE APPLE INC. SECURITIES          Lead Case No. 4:19-cv-02033-YGR
    LITIGATION
15                                        **DEFENDANTS' NOTICE OF MOTION
                                          AND MOTION TO CERTIFY ORDER
16                                        FOR INTERLOCUTORY APPEAL
    _____      UNDER 28 U.S.C. § 1292(B), AND FOR A
17                                        STAY OF PRODUCTION;
    This Document Relates To:            MEMORANDUM OF POINTS AND
18                                        AUTHORITIES IN SUPPORT THEREOF**
     ALL ACTIONS.
19                                        Hearing
                                          Date:   October 18, 2022
20                                        Time:   2:00 p.m.
                                          Ctrm:   1, 14th Floor
21                                        Judge:  Honorable Yvonne Gonzalez Rogers

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION FOR CERTIFICATION AND STAY**

TO THE COURT, THE PARTIES, AND ALL COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 18, 2022, at 2:00 p.m. before Judge Yvonne Gonzalez Rogers, of the United States District Court for the Northern District of California, Courtroom 1, 4th Floor, 1301 Clay Street, Oakland, California, Defendants Apple Inc., Tim Cook, and Luca Maestri ("Defendants") shall and hereby do move the Court for an order certifying an interlocutory appeal under 28 U.S.C. § 1292(b) from the Court's September 12, 2022 Order on Defendants' Motion for Relief From a Non-dispositive Pretrial Order (ECF No. 302) and the August 3, 2022 Order Granting in Part and Denying in Part Motion to Compel issued by Magistrate Judge Joseph C. Spero (ECF No. 276), and for an order staying the production orders  pending this Court's resolution of the certification motion and the Ninth Circuit's resolution of any interlocutory appeal.

This motion is based on this notice of motion and motion, the accompanying Memorandum of Points and Authorities, all papers and records on file in this case, oral argument, and such other matters as the Court may consider.

## STATEMENT OF RELIEF SOUGHT

Defendants seek an order certifying for interlocutory appeal under 28 U.S.C. § 1292(b) from this Court's September 12 Order and Judge Spero's August 3 Order (ECF No. 302 and 276, respectively), as well as a stay of the production orders pending review and resolution of the certification motion and any interlocutory appeal.

## STATEMENT OF ISSUES TO BE DECIDED

(1) Whether the Court should grant Defendants' request to certify for interlocutory appeal the rulings in ECF Nos. 302 & 276 ordering Defendants to produce certain documents concerning dual-purpose communications that, in part, had a primary purpose of obtaining and soliciting legal advice because, among other things, they implicate a legal question that the Ninth Circuit left unresolved and as to which other circuits are divided.

(a) The question to be certified on appeal is:  Whether the attorney-client privilege protects a dual-purpose communication, where obtaining or seeking legal advice was *a primary*

1    purpose of the communication, but perhaps not its single primary purpose.

2           (2) Whether the Court should grant Defendants' request to stay the production orders

3    pending review and resolution of this certification motion and ensuing appeal because the stay of

4    this limited dispute would protect Defendants' privilege from being lost if the communications at

5    issue were released prior to an appeal, would produce no countervailing harm to Plaintiff, and

6    would instead promote judicial economy and efficiency.

7

8    Dated: September 13, 2022                      ORRICK, HERRINGTON & SUTCLIFFE LLP

9

10                                               _____/s/ James N. Kramer_____
                                                     JAMES N. KRAMER

11                                               Attorneys for Defendants Apple Inc.,
12                                               Timothy Cook, and Luca Maestri

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................................. 1

II.  BACKGROUND ............................................................................................................. 4

III.  THIS COURT SHOULD CERTIFY THE PRIVILEGE ORDERS FOR
     INTERLOCUTORY APPEAL ........................................................................................ 5

     A.  The proper scope of the attorney-client privilege for dual-purpose
         communications is a controlling question of law. ................................................... 5

     B.  The privilege question presents substantial grounds for difference of
         opinion because it remains open in the Ninth Circuit and other circuits have
         split on the answer. .................................................................................................. 6

     C.  Prompt review of the privilege question could materially advance the
         termination of this case. .......................................................................................... 8

IV.  THIS COURT SHOULD STAY PRODUCTION PENDING CERTIFICATION
     AND APPEAL ................................................................................................................ 9

V.  CONCLUSION .............................................................................................................. 11

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                                       **Page(s)**

3

4
*Asis Internet Servs. v. Active Response Grp.*,
   2008 WL 4279695 (N.D. Cal. Sept. 16, 2008) ........................................................... 9

5
*Best Carpet Values, Inc. v. Google LLC*,
   No. 5:20-cv-04700-EJD, Slip Op. (N.D. Cal. May 2, 2022) ............................................ 3, 9

6

7
*Canela v. Costco Wholesale Corp.*,
   2018 WL 3008532 (N.D. Cal. June 15, 2018) ......................................................... 1

8

9
*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) .......................................................................................... 2

10
*Casas v. Victoria's Secret Stores, LLC*,
   2015 WL 13446989 (C.D. Cal. Apr. 9, 2015) ................................................... 3, 10

11

12
*In re Cement Antitrust Litig. (MDL No. 296)*,
   673 F.3d 1020 (9th Cir. 1981) .......................................................................... 1, 5, 6

13

14
*Connaught Labs., Inc. v. SmithKline Beecham PLC*,
   165 F.3d 1368 (Fed. Cir. 1999) ....................................................................... 10

15
*In re Cty. of Erie*,
   473 F.3d 413 (2d Cir. 2007) ............................................................................ 7

16

17
*Cummins v. EG & G Sealol, Inc.*,
   697 F. Supp. 64 (D.R.I. 1988) ......................................................................... 2

18

19
*Edwards v. Scripps Media, Inc.*,
   2019 WL 2448654 (E.D. Mich. June 10, 2019) .................................................. 7

20
*Garner v. Wolfinbarger*,
   430 F.2d 1093 (5th Cir. 1970) ......................................................................... 5

21

22
*In re Gen. Motors LLC Ignition Switch Litig.*,
   80 F. Supp. 3d 521 (S.D.N.Y. 2015) ................................................................ 7

23

24
*Hernandez v. Tanninen*,
   604 F.3d 1095 (9th Cir. 2010) ......................................................................... 10

25
*ICTSI Ore., Inc. v. Int'l Longshore & Warehouse Union*,
   22 F.4th 1125 (9th Cir. 2022) ..................................................................... 2, 3, 6, 8

26

27
*James v. Price Stern Sloan, Inc.*,
   283 F.3d 1064 (9th Cir. 2002) ......................................................................... 1

28

*Katz v. Carte Blanche Corp.*,
    496 F.2d 747 (3d Cir.) ................................................................................................ 2

*In re Kellogg Brown & Root, Inc.*,
    756 F.3d 754 (D.C. Cir. 2014) (Kavanaugh, J.) .............................................. *passim*

*LNC Invs., Inc. v. First Fid. Bank*,
    2000 WL 461612 (S.D.N.Y. Apr. 18, 2000) ............................................... 1, 2, 6

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009) ................................................................................................ 9

*Reese v. BP Expl. (Ala.) Inc.*,
    643 F.3d 681 (9th Cir. 2011) .......................................................................... 1, 7, 8

*Rollins v. Dignity Health*,
    2014 WL 6693891 (N.D. Cal. Nov. 6, 2014) ................................................ 3, 9, 10

*Senate Permanent Subcomm. on Investigations v. Ferrer*,
    856 F.3d 1080 (D.C. Cir. 2017) ........................................................................... 10

*Silbersher v. Allergan Inc.*,
    2021 WL 292244 (N.D. Cal. Jan. 28, 2021) ...................................................... 3, 9

*In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Prods. Liab. Litig.*,
    2019 WL 2330863 (D. Md. May 31, 2019) ........................................................... 7

*Sterk v. Redbox Automated Retail, LLC*,
    672 F.3d 535 (7th Cir. 2012) .................................................................................. 9

*Ex Parte Tokio Marine & Fire Ins. Co.*,
    322 F.2d 113 (5th Cir. 1963) .................................................................................. 1

*United States v. Frederick*,
    182 F.3d 496 (7th Cir. 1999) .................................................................................. 7

*United States v. Real Prop. & Improvements Located at 2441 Mission St., San Francisco, Cal.*,
    2014 WL 1350914 (N.D. Cal. Apr. 4, 2014) ..................................................... 1, 9

*Villareal v. Caremark LLC*,
    85 F. Supp. 3d 1063 (D. Ariz. 2015) ................................................................. 5, 6

**Statutes, Rules and Other Authorites**

28 U.S.C.
  § 1292(b) ................................................................................................ 1, 2, 3, 9

Fed. R. Civ. P.
  Rule 72 ............................................................................................................... 4

Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3930, *Criteria for Permissive
  Appeal* (3d ed.) ................................................................................................ 5, 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**     **INTRODUCTION**

        Courts in this circuit and the Supreme Court have been clear about one thing: Interlocutory appeals exist precisely for circumstances like this, where there is a "'pivotal and debatable'" ruling that implicates a novel legal question left unresolved by the circuit court that is of special consequence to one of the parties and similarly situated entities—here, Apple and all businesses needing legal advice. *Canela v. Costco Wholesale Corp.*, 2018 WL 3008532, at *1 (N.D. Cal. June 15, 2018) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 46 (1995); *see United States v. Real Prop. & Improvements Located at 2441 Mission St., San Francisco, Cal.*, 2014 WL 1350914, at *2 (N.D. Cal. Apr. 4, 2014) ("[D]istrict courts should not hesitate to certify an interlocutory appeal" when "a privilege ruling involves a new legal question or is of special consequence" (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009)); *cf. In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.3d 1020, 1023 (9th Cir. 1981) (acknowledging exceptions from the finality rule where "a rigid insistence on technical finality would [] conflict with the purposes of" § 1291, noting that "some orders by their nature require review at an earlier stage, because they will be effectively unreviewable upon appeal from a final judgment").

        The Ninth Circuit has also counseled that certification under § 1292(b) must be flexible and case-specific. *Reese v. BP Expl. (Ala.) Inc.*, 643 F.3d 681, 688 n.5 (9th Cir. 2011) (rejecting a "rigid approach towards § 1292(b), whose use has been wisely targeted to avoid [] undesirable consequences," such as waste of judicial resources); *see also Ex Parte Tokio Marine & Fire Ins. Co.*, 322 F.2d 113, 115 (5th Cir. 1963) (explaining that a court should make "very practical considerations" in allowing interlocutory appeals, for "each application is to be looked at [] in the light of the underlying purpose reflected in the statute"). In this specific circumstance, interlocutory appeal constitutes a powerful exception to the general "rule that only final judgments are appealable." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002). Not only does it cleanly present a significant novel legal question, but it also would advance the "judicial efficiency-enhancing purpose that underlies § 1292(b)." *LNC Invs., Inc. v.*

1   *First Fid. Bank*, 2000 WL 461612, at *2 (S.D.N.Y. Apr. 18, 2000).  Section 1292(b) was enacted

2   "to give the judiciary flexibility in ameliorating the sometimes harsh effects of the final judgment

3   rule."  *Cummins v. EG & G Sealol, Inc.*, 697 F. Supp. 64, 68 (D.R.I. 1988); *see also Katz v. Carte*

4   *Blanche Corp.*, 496 F.2d 747, 753 (3d Cir.) ("Section 1292(b) was the result of dissatisfaction

5   with the prolongation of litigation and with harm to litigants uncorrectable on appeal from a final

6   judgment which sometimes resulted from strict application of the federal final judgment rule.");

7   *cf. Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (emphasizing that purpose of 1292(a)(1)'s

8   exception for denial of injunctive relief is to "permit litigants to effectually challenge

9   interlocutory orders of serious, perhaps irreparable, consequence" where the order can only be

10  "effectually challenged" by immediate appeal (citation omitted)).

11       To certify an order for interlocutory appeal under 28 U.S.C. § 1292(b), a district court

12  "must determine that the order meets the three certification requirements": "(1) that there be a

13  controlling question of law, (2) that there be substantial grounds for difference of opinion as to

14  that question, and (3) that an immediate resolution of that question may materially advance the

15  ultimate termination of the litigation."  *ICTSI Ore., Inc. v. Int'l Longshore & Warehouse Union*,

16  22 F.4th 1125, 1130 (9th Cir. 2022) (citation omitted).

17       This Court's September 12 Order denying Defendants' motion for relief (ECF No. 302),

18  and the underlying August 3 Order by Magistrate Judge Spero compelling the production of

19  certain documents (ECF No. 272), satisfy the three preconditions for § 1292(b) review.

20       *First*, the Ninth Circuit has left open a "controlling question of law" that is central to the

21  litigation of this case.  *ICTSI*, 22 F.4th at 1130-31.  That question is whether the attorney-client

22  privilege protects a dual-purpose communication, where obtaining or seeking legal advice was *a*

23  primary purpose of the communication, but not its single primary purpose.  As this Court

24  correctly recognized, that controlling legal question remains unanswered in this circuit.  Order

25  Denying Motion, ECF No. 302, at 3 (stating that the Ninth Circuit "left open" whether the more

26  expansive "a primary purpose" test articulated by the D.C. Circuit … should ever be applied"

27

28

1  (quoting *Grand Jury*, 23 F.4th 1088, 1090 (9th Cir. 2021)).[1]

2  *Second*, there are "substantial grounds for difference of opinion" on the controlling legal

3  question.  *ICTSI*, 22 F.4th at 1130-31.  The Ninth Circuit acknowledged "the merits of the

4  reasoning" behind the test articulated by the D.C. Circuit.  *Grand Jury*, 23 F.4th at 1094-95.  And

5  as detailed below, the circuits are divided on the very question that the Ninth Circuit expressly

6  left open.  Indeed, absent appellate review and clarification of the law on this question, the orders

7  at issue will "generate[] substantial uncertainty about the scope of the attorney-client privilege in

8  the business setting."  *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 756 (D.C. Cir. 2014)

9  (Kavanaugh, J.), *cited with approval in Grand Jury*, 23 F.4th at 1090.

10  *Third*, certification of the privilege question would "materially advance the ultimate

11  termination of the litigation."  *ICTSI*, 22 F.4th at 1130-31.  To satisfy this requirement, § 1292(b)

12  requires only that certification would "save the courts and the litigants unnecessary trouble and

13  expense."  *Silbersher v. Allergan Inc.*, 2021 WL 292244, at *3 (N.D. Cal. Jan. 28, 2021) (internal

14  quotation marks omitted).  These orders easily meet this requirement.  The orders direct

15  Defendants to produce, among other things, emails from Apple's CEO to its CFO and General

16  Counsel asking for advice on topics he planned to address at an upcoming meeting of Apple's

17  board of directors.  *See, e.g.*, ECF No. 246-5.  Not only would review of these orders save this

18  Court and litigants the "trouble and expense" from a potential retrial, but also certification could

19  avoid the loss of the attorney-client privilege that once lost, can never be regained.

20  Certification is warranted.

21  Moreover, as discussed below, courts in this district routinely stay proceedings pending

22  certification of an interlocutory appeal.  *See, e.g.*, *Best Carpet Values, Inc. v. Google LLC*, No.

23  5:20-cv-04700-EJD, Slip Op. at 6 (N.D. Cal. May 2, 2022); *Silbersher*, 2021 WL 292244, at *3;

24  *Rollins v. Dignity Health*, 2014 WL 6693891, at *4 (N.D. Cal. Nov. 6, 2014); *cf. Casas v.

25  Victoria's Secret Stores, LLC*, 2015 WL 13446989, at *5 (C.D. Cal. Apr. 9, 2015).  A limited stay

26  of the production orders is warranted here as well.

27

28  [1] *Grand Jury* is the subject of a petition for writ of certiorari currently pending before the Supreme Court. No. 21-1397 (U.S.).

1    **II.    <u>BACKGROUND</u>**

2          As the Court's September 12 Order states, Judge Spero's August 3 order already provides

3    a detailed description of the relevant facts and procedural history in this case.

4          In brief, Plaintiff moved to compel several categories of documents as to which

5    Defendants asserted the attorney-client privilege.  On August 3, 2022, Judge Spero issued an

6    order granting in part and denying in part Plaintiff's motion.  The documents that Judge Spero

7    ordered Defendants to produce had a significant (and thus a primary) legal purpose—such as

8    receiving legal advice about compliance with the securities laws and related regulations—even

9    when they also had a significant business purpose of preparing to communicate information about

10   Apple's business to the market.  In ordering Defendants to produce these dual-purpose

11   communications, Judge Spero assumed that such "communication[s] can only have a single

12   'primary' purpose," and that the Ninth Circuit's *Grand Jury* decision required him to identify that

13   single predominant purpose.  Order, ECF No. 272, at 6.  As such, the fact that one of the

14   communications' significant purposes was legal in nature was insufficient to trigger the

15   privilege's protection because, according to Judge Spero and Plaintiff, *the* primary purpose of the

16   communications was non-legal.

17         Defendants filed a motion for relief from that order pursuant to Federal Rule of Civil

18   Procedure 72 and Civil Local Rule 72-2.  Among other things, Defendants argued that Judge

19   Spero applied the wrong legal standard based on a misreading of *Grand Jury*.  The Ninth Circuit

20   never held that dual-purpose communications must have a single primary purpose—one might

21   say, the predominant purpose—as Judge Spero assumed.  On the contrary, that case only held that

22   the attorney-client privilege protects dual-purpose communications whose "primary purpose" is

23   to give or solicit legal advice.  23 F.4th 1092-95.  It did not decide whether that means one

24   predominant purpose or one of various significant purposes, and thus "le[ft] open whether" to

25   "focus[] on *a* primary purpose instead of *the* primary purpose" of a communication. *Id.* at 1094

26   (emphasis in original).  Plaintiff opposed the motion.

27         On September 12, 2022, this Court denied Defendants' motion.  In relevant part, this

28   Court agreed with Defendants that Judge Spero made his privilege ruling based on what is "*the*

1    primary purpose" of the communications.  Order, ECF No. 302, at 3 (emphasis added).  It also

2    agreed with Defendants that the Ninth Circuit "'left' open whether the more expansive 'a primary

3    purpose' test articulated by the D.C. Circuit in *Kellogg* should ever be applied." *Id.* (quoting

4    *Grand Jury*, 23 F.4th at 1090 ).  This Court, however, denied the motion on the basis that

5    "*Kellogg* is not the standard in the Ninth Circuit and it was not clearly erroneous for Judge Spero

6    not to apply it."  *Id.*

7         This Court ordered Defendants to produce the documents by the next business day, on

8    which Defendants filed this motion.  *Id.*

9    **III.    THIS COURT SHOULD CERTIFY THE PRIVILEGE ORDERS FOR**
     **INTERLOCUTORY APPEAL**
10

11       **A.    The proper scope of the attorney-client privilege for dual-purpose**
              **communications is a controlling question of law.**

12        A legal "question is controlling, even though its disposition might not lead to reversal on

13   appeal, if interlocutory reversal might save time for the district court, and time and expense for

14   the litigants."  Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3930, *Criteria for Permissive*

15   *Appeal* (3d ed.) (collecting cases)).  Stated differently, a controlling question of law is one whose

16   resolution "could materially affect the outcome of litigation in the district court."  *Cement*

17   *Antitrust Litig.*, 673 F.3d at 1026 (citation omitted).  And "[i]t is well settled" that an "issue need

18   not be dispositive of the [entire] lawsuit in order to be regarded as controlling."  *Villareal v.*

19   *Caremark LLC*, 85 F. Supp. 3d 1063, 1068 (D. Ariz. 2015) (internal quotation marks omitted).

20   Thus, there can be, for example, an interlocutory appeal from an order "denying the attorney-

21   client privilege to [a] corporation" where a decision on the privilege issue "would affect the scope

22   of the evidence in a complex case."  *Garner v. Wolfinbarger*, 430 F.2d 1093, 1096-97 (5th Cir.

23   1970).

24        There is no denying that the scope of the attorney-client privilege is a legal question that

25   the Ninth Circuit reviews de novo.  *Grand Jury*, 23 F.4th at 1091.  The Ninth Circuit has

26   instructed courts to look for a communication's "primary purpose" when "assessing attorney-

27   client privilege for dual-purpose communications."  *Id.* at 1090.  It expressly did not decide,

28   however, whether courts should look to "*a* primary purpose instead of *the* primary purpose" of

the communication. *Id.* at 1094 (emphasis in original). The question of whether the "*a primary purpose test*" should apply here is a question of law.

The privilege question is also "controlling" because its immediate resolution "could materially affect the outcome of [this] litigation," and save party and judicial resources. *Cement Antitrust Litig.*, 673 F.3d at 1026. The disputed communications relate to matters Plaintiff has put at the center of its securities case. *See, e.g.*, ECF No. 114 ¶ 105 (relying on the Cook Letter to allege loss causation, a necessary element of the securities claim here). And, of course, the scope of the evidence that Plaintiff obtains (or doesn't) in discovery will shape the presentation of evidence at trial, and potentially even affects Plaintiff's willingness to settle the case. The privilege question is therefore a controlling issue because its resolution could materially affect the outcome of this litigation.

**B.**     **The privilege question presents substantial grounds for difference of opinion because it remains open in the Ninth Circuit and other circuits have split on the answer.**

The privilege question satisfies the substantial-grounds prong because the Ninth Circuit "has not spoken on the point" and "the circuits are in dispute on the question." *ICTSI*, 22 F.4th at 1130 (internal quotation marks omitted).

*First*, as discussed above and this Court acknowledged in its September 12 Order (at 3), *Grand Jury* expressly "le[ft] open whether the 'a primary purpose' test should apply" to dual-purpose communications. 23 F.4th at 1094 (capitalization omitted). It did so because the "facts" and the "tax context" of that case did not require taking a position on whether a dual-purpose communication with a "legal purpose just as significant as a non-legal purpose" is privileged. *Id.* at 1095. But the Ninth Circuit acknowledged "the merits of the reasoning" behind *Kellogg*'s "*a primary purpose*" test and recognized that applying it would "change the outcome of a privilege analysis" in some cases. *Id.* at 1094-95. That "*Kellogg* is not the standard in the Ninth Circuit and [therefore] it was not clearly erroneous for Judge Spero not to apply it," as this Court's Order stated (ECF No. 303, at 3), does not change the fact that this is a case involving dual-purpose communications with a primary legal purpose, and that a different standard (i.e., a primary-purpose test) may apply and render the communications privileged. Accordingly, this case

1   presents a perfect opportunity for the Ninth Circuit to answer the privilege question that *Grand*

2   *Jury* left unresolved because of the "facts" and "tax context" presented in that case.  23 F.4th at

3   1095.

4         *Second*, a circuit split exists as to the test for assessing whether the attorney-client

5   privilege protects a dual-purpose communication.  In the D.C. Circuit, a dual-purpose

6   communication is privileged if "obtaining or providing legal advice was *one* of the significant

7   purposes of the attorney-client communication."  *Kellogg*, 756 F.3d at 759-60.  In other words,

8   the D.C. Circuit applies the "a primary purpose" test, recognizing that "trying to find *the* one

9   primary purpose for a communication motivated by two sometimes overlapping purposes (one

10   legal and one business, for example) can be an inherently impossible task."  *Id.* at 759.  Other

11   district courts have found *Kellogg*'s reasoning persuasive and followed suit.  *See, e.g.*, *Edwards v.*

12   *Scripps Media, Inc.*, 2019 WL 2448654, at *1-2 (E.D. Mich. June 10, 2019); *In re Smith &*

13   *Nephew Birmingham Hip Resurfacing Hip Implant Prods. Liab. Litig.*, , 2019 WL 2330863, at *2

14   (D. Md. May 31, 2019); *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 530

15   (S.D.N.Y. 2015).  And the Ninth Circuit too "see[s] the merits of the [D.C. Circuit's] reasoning in

16   *Kellogg*," but has left the question open to be resolved another day, particularly in a case that did

17   not involve the tax context.  *Grand Jury*, 23 F.4th at 1094.

18         On the other side of the split is the Second Circuit, which has explained that a

19   communication is privileged only when its "predominant purpose … is to render or solicit legal

20   advice."  *In re Cty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007) (citation omitted).  And the Seventh

21   Circuit goes further, recognizing that the scope of the attorney-client privilege is narrower in the

22   tax context, in which *Grand Jury* arose: "[A] dual-purpose document—a document prepared for

23   use in preparing tax returns *and* for use in litigation—is not privileged."  *United States v.*

24   *Frederick*, 182 F.3d 496, 501 (7th Cir. 1999).  In short, this Court need not guess whether

25   "reasonable jurists might disagree on [the] issue's resolution"; they have already done so.  *Reese*,

26   643 F.3d at 688 ("hold[ing] that the order granting the interlocutory appeal need not be vacated"

27   because defendant satisfied the preconditions for interlocutory review).  *Id.*  And it is that

28   uncertainty and difference of opinion among courts, and the uncertainty in this circuit, which calls

1    for certification.  Because this case falls outside of the "tax context" presented in *Grand Jury*, it

2    presents a perfect opportunity to address the question that the Ninth Circuit left open in that case

3    and to do so in a way that recognizes the inherent reality presented in the business context

4    presented here:  That, "even though it theoretically sounds easy to isolate 'the primary or

5    predominant' purpose of a [dual-purpose] communication" that has significant legal *and* business

6    purposes, "the exercise can quickly become messy in practice."  *Grand Jury* 23 F.4th at 1094

7    (citing *Kellogg*, 756 F.3d at 759).  In that circumstance, courts can avoid that "inherently

8    impossible task" of "trying to find *the* one primary purpose for a communication motivated by

9    two sometimes overlapping purposes (one legal and one business, for example)," by instead

10   determining whether "obtaining or providing legal advice [was] a primary purpose of the

11   communication, meaning one of [its] significant purposes."  *Kellogg*, 756 F.3d at 759-60.

12   ## C.    Prompt review of the privilege question could materially advance the
13   termination of this case.

14       The privilege question also satisfies the materially-advance prong because an answer from

15   the Ninth Circuit "may appreciably shorten the time, effort, or expense of conducting the district

16   court proceedings."  *ICTSI*, 22 F.4th at 1131 (citation omitted); *see also* Wright & Miller, 16 Fed.

17   Prac. & Proc. Juris. § 3930, *Criteria for Permissive Appeal* (3d ed.) ("The requirement that an

18   appeal may materially advance the ultimate termination of the litigation is closely tied to the

19   requirement that the order involve a controlling question of law.").  That court's intervention now

20   could avoid the possibility of a costly trial do-over, conserving party and judicial resources.  Early

21   resolution of a controlling legal question could materially advance the termination of a case

22   where, as here, it would "at least curtail[] and simplify[] pretrial or trial" proceedings.  Wright &

23   Miller, 16 Fed. Prac. & Proc. Juris. § 3930, *Criteria for Permissive Appeal* (3d ed.).

24       To be sure, an interlocutory appeal from the order could not, by itself, end this case.  But

25   "neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal

26   have a final, dispositive effect on the litigation."  *Reese*, 643 F.3d at 688.  If Defendants are

27   forced to disclose the disputed communications and, while this litigation continues, the Ninth

28   Circuit joins the D.C. Circuit in adopting *Kellogg*'s "*a* primary purpose" test, Defendants would

1  have already disclosed privileged information that Apple's CEO and lawyers intended to remain

2  confidential.  Moreover, the parties here could spend months or years litigating this case to trial

3  only for the Ninth Circuit to "remedy the improper disclosure of privileged material" by

4  "vacating an adverse judgment and remanding for a new trial" that excludes the communications

5  from evidence.  *Mohawk*, 558 U.S. at 606-07.  Allowing an interlocutory appeal now would

6  eliminate these possibilities and the attendant waste of judicial and party resources.  *See*

7  *Silbersher*, 2021 WL 292244, at *3 ("resolution of a question materially advances the termination

8  of litigation if it facilitates disposition of the action by getting a final decision on a controlling

9  legal issue sooner, rather than later in order to save the courts and the litigants unnecessary

10  trouble and expense" (internal quotation marks omitted)).

11      Likewise, an interlocutory appeal could facilitate the prospect of settlement by giving the

12  parties a clear view of the scope of Plaintiff's claims and the evidence that will (or will not) be

13  available to prove those claims.  *See Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536

14  (7th Cir. 2012) (finding the third factor satisfied where "uncertainty about the status" of a claim

15  might have "delay[ed] settlement" and "further protract[ed] the litigation").

16 17  **IV.   THIS COURT SHOULD STAY PRODUCTION PENDING CERTIFICATION AND APPEAL**

18      This Court may enter a stay "both under § 1292(b) itself and the court's inherent authority

19  to manage its docket."  *Real Prop. & Improvements*, 2014 WL 1350914, at *4 n.3.  Such a stay

20  promises to "promote economy of time and effort for [the Court], for counsel, and for litigants."

21  *Asis Internet Servs. v. Active Response Grp.*, 2008 WL 4279695, at *4 (N.D. Cal. Sept. 16, 2008).

22  "When considering whether to stay proceedings, courts should consider the possible damage

23  which may result from the granting of a stay, the hardship or inequity which a party may suffer in

24  being required to go forward, and the orderly course of justice measured in terms of the

25  simplifying or complicating of issues, proof, and questions of law which could be expected to

26  result from a stay."  *Rollins*, 2014 WL 6693891, at *4 (internal quotation marks and citations

27  omitted).  And as discussed above, stays are routinely issued pending certification of an

28  interlocutory appeal.  *See, e.g.*, *Best Carpet*, slip Op. at 6; *Silbersher*, 2021 WL 292244, at *3;

1   *Rollins*, 2014 WL 6693891, at \*4; *cf. Casas*, 2015 WL 13446989, at \*5.

2          Here, the balance of hardships overwhelmingly favors a limited stay, and such a stay

3   would also advance judicial economy.  Defendants would suffer significant and irreversible harm

4   from complying with the Court's production orders before it can be reviewed by the Ninth

5   Circuit.  Once privileged documents are surrendered, confidentiality is forever lost.  *See*

6   *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010); *see also Senate Permanent*

7   *Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1088-89 (D.C. Cir. 2017) (finding

8   challenge to subpoena-enforcement order moot following disclosure of privileged documents).

9   The status quo could never be restored:  The "privilege[] … would be irreparably harmed if the

10  information in question were released prior to an appeal."  *Connaught Labs., Inc. v. SmithKline*

11  *Beecham PLC*, 165 F.3d 1368, 1370 (Fed. Cir. 1999) (cited by *Apple Inc. v. Samsung Elec. Co.*,

12  2015 WL 13711858, at \*1 (N.D. Cal. Apr. 7, 2015)).  This is a textbook example of irreparable

13  injury.

14          By contrast, there is no countervailing harm to Plaintiff.  The resulting injury of staying

15  production pending review is minimal to none.  If Defendants are successful in challenging the

16  production orders, Plaintiff will suffer no harm at all; Plaintiff simply will never receive

17  privileged material to which it has no right.  *See Samsung*, 2015 WL 13711858, at \*1; *see also*

18  Stipulation and [Proposed] Order Regarding Briefing Schedules, ECF No. 303, at 1 (providing

19  that Plaintiff will file opposition to the summary-judgment motion by October 20).  And if

20  Defendants lose their appeal, Plaintiff's only burden would be a delay that is more than offset by

21  both the significant harm to Defendants from moving forward and the judicial economy gains

22  from waiting for the Ninth Circuit to resolve the weighty issue of the scope of attorney-client

23  privilege.

24          Finally, the orderly course of justice would be served by staying this privilege dispute

25  pending certification and review by the Ninth Circuit.  As explained above, appellate guidance

26  will materially advance resolution of this matter by potentially averting a costly second trial and

27  motivating settlement, all without delaying the final resolution of this case.  A stay would thus

28  conserve the resources of the parties and this Court.  Indeed, only by a limited stay of the

1    production orders can the Court maximize the benefits of immediate appellate review.

2    **V.    <u>CONCLUSION</u>**

3          Defendants respectfully request that this Court certify its orders for interlocutory appeal

4    and stay the production orders of September 12 and August 3 pending review and resolution of

5    the certification motion and a decision from the Ninth Circuit.

6

7    Dated: September 13, 2022                    ORRICK, HERRINGTON & SUTCLIFFE LLP

8

9                                                    */s/ James N. Kramer*
                                                    JAMES N. KRAMER

10                                               Attorneys for Defendants Apple Inc.,
11                                               Timothy Cook, and Luca Maestri

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28