1  JAMES N. KRAMER (SBN 154709)
   jkramer@orrick.com
2  MICHAEL D. TORPEY (SBN 79424)
   mtorpey@orrick.com
3  ALEXANDER K. TALARIDES (SBN 268068)
   atalarides@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
5  405 Howard Street
   San Francisco, CA  94105-2669
6  Telephone:    +1 (415) 773-5700
   Facsimile:    +1 (415) 773-5759
7
   Attorneys for Defendants Apple Inc.,
8  Timothy Cook, and Luca Maestri

9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                            OAKLAND DIVISION

13

| 14 | IN RE APPLE INC. SECURITIES LITIGATION | Lead Case No. 4:19-cv-02033-YGR |
|---|---|---|
| 15 | | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B) AND FOR STAY OF PRODUCTION** |
| 16 | This Document Relates To: | |
| 17 | ALL ACTIONS. | |
| 18 | | Hearing |
| 19 | | Date:  October 18, 2022 |
| 20 | | Time:  2:00 p.m. |
|    | | Ctrm:  1, 4th Floor |
|    | | Judge: Honorable Yvonne Gonzalez Rogers |

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................... 3

    A. The question presented for interlocutory appeal is a controlling question of law. .................................................................................................................... 3

    B. There are substantial grounds for difference of opinion with respect to the question presented for interlocutory appeal. ............................................................ 7

    C. Prompt review and resolution of the question presented may materially advance the ultimate termination of the litigation. ................................................. 11

    D. Plaintiff does not dispute that, if certification is warranted, a stay should be entered. .................................................................................................................. 12

III. CONCLUSION ............................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                      Page(s)

*Adams v. Corr. Corp. of Am.*,
   264 P.3d 640 (Colo. App. 2011) ....................................................................................... 6

*Aetna Inc. v. Mednax, Inc.*,
   2019 WL 6467349 (E.D. Pa. Dec. 2, 2019) ..................................................................... 10

*United States ex rel. Bibby v. Wells Fargo Bank, N.A.*,
   165 F. Supp. 3d 1319 (N.D. Ga. 2015) ............................................................................ 10

*In re Cement Antitrust Litig. (MDL NO. 296)*,
   673 F.2d 1020 (9th Cir. 1981)......................................................................................... 4, 5

*In re Cty. of Erie*,
   473 F.3d 413 (2d Cir. 2007) ............................................................................................... 9

*Edwards v. Scripps Media, Inc.*,
   2019 WL 2448654 (E.D. Mich. June 10, 2019)............................................................... 10

*Garner v. Wolfinbarger*,
   430 F.2d 1093 (5th Cir. 1970)............................................................................................ 5

*In re Gen. Motors LLC Ignition Switch Litig.*,
   80 F. Supp. 3d 521 (S.D.N.Y. 2015)................................................................................ 10

*In re Grand Jury*,
   23 F.4th 1088 (9th Cir. 2021) ....................................................................................*passim*

*In re Grand Jury*,
   No. 21-1397 (U.S.)........................................................................................................... 10

*In re Grand Jury Proc.*,
   220 F.3d 568 (7th Cir. 2000)............................................................................................. 9

*ICTSI Ore., Inc. v. Int'l Longshore & Warehouse Union*,
   22 F.4th 1125 (9th Cir. 2022) .......................................................................................... 11

*In re Kellogg Brown & Root, Inc.*,
   756 F.3d 754 (D.C. Cir. 2014) ........................................................................... 1, 3, 10, 12

*Kimberly–Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
   407 F. App'x 431 (Fed. Cir. 2011) .................................................................................... 5

*L.D. v. United Behavioral Health*,
   2022 WL 3139520 (N.D. Cal. Aug. 5, 2022).................................................................... 10

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009) .................................................................................................. 3, 11

*Pitkin v. Corizon Health, Inc.*,
   2017 WL 6496565 (D. Or. Dec. 18, 2017) ....................................................................... 10

*Ramb v. Paramatma*,
   2021 WL 5038756 (N.D. Ga. Sept. 22, 2021) .................................................................. 10

*Reese v. BP Exp. (Ala.) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ............................................................................................ 10

*Silbersher v. Allergan Inc.*,
   2021 WL 292244 (N.D. Cal. Jan. 28, 2021) .................................................................... 11

*In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Prods. Liab. Litig.*,
   2019 WL 2330863 (D. Md. May 31, 2019) ..................................................................... 10

*Smith-Brown v. Ulta Beauty, Inc.*,
   2019 WL 2644243 (N.D. Ill. June 27, 2019) ................................................................... 10

*United States v. Acad. Mortg. Corp.*,
   2018 WL 6592782 ............................................................................................................ 6

*United States v. ChevronTexaco Corp.*,
   241 F. Supp. 2d 1065 (N.D. Cal. 2002) ........................................................................... 12

*United States v. Frederick*,
   182 F.3d 496 (7th Cir. 1999) ............................................................................................. 9

*United States v. Real Prop. & Improvements Located at 2441 Mission St., S.F., Cal.*,
   2014 WL 1350914 (N.D. Cal. Apr. 4, 2014) ........................................................... 4, 5, 6, 12

*United States v. Sanmina Corp.*,
   968 F.3d 1107 (9th Cir. 2020) ................................................................................. 1, 2, 8, 9

*United States v. Woodbury*,
   263 F.2d 784 (9th Cir. 1959) .......................................................................................... 5, 6

*Valero Energy Corp. v. United States*,
   569 F.3d 626 (7th Cir. 2009) ............................................................................................. 9

**Statutes and Other Authorities**

28 U.S.C. § 1292(b), 88 Harv. L. Rev. 607, 609-11 (1975) ........................................................ 6

Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3930, *Criteria for Permissive
   Appeal* (3d ed.) ............................................................................................................ 5, 11

## I. INTRODUCTION

The question of law presented for certification is the question expressly left open by the Ninth Circuit in *In re Grand Jury*, 23 F.4th 1088, 1094 (9th Cir. 2021)—whether to adopt "'*a* primary purpose' as the test instead of '*the* primary purpose,' relying on the D.C. Circuit's decision in *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014)." Early resolution of that open question could affect the scope of the evidence and the way the parties litigate the claims in this case—all while averting the introduction of serious error that would come with the improper disclosure of privileged material, and saving everyone from unnecessary trouble and expense.

Plaintiff's opposition to certification is premised on mischaracterizations of the question presented, the Ninth Circuit's *Grand Jury* decision, and the law on interlocutory appeals.

First, Plaintiff argues that the question presented is not a "controlling question of law" because: (1) Defendants are challenging Judge Spero's application of a legal standard to documents, which is a mixed question of fact and law that is improper for certification; and (2) its resolution would not be dispositive of the entire case. Plaintiff is mistaken. As to the first argument, the question presented in this motion is not whether Judge Spero applied "*the* primary purpose test" correctly, but whether he was right in applying it at all. That is a pure question of law. As to the second point, Plaintiff misstates the law. It is well settled that a certified question is "controlling" if it could materially affect the outcome of the case; it need not be dispositive of the entire action. A question of law concerning denial of a privilege is controlling and appropriate for certification if it could affect the scope of evidence in a complex case, and the way the parties litigate the claim at issue. And here, Plaintiff does not deny that the potentially privileged communications relate to the Tim Cook Letter, which Plaintiff has relied on to allege facts surrounding the elements of its securities claim. Therefore, far from being a collateral issue to the case, the privilege question presented in this motion relates to matters that Plaintiff has put front and center.

Second, Plaintiff argues that the Ninth Circuit already addressed the question presented here when it resolved the intra-circuit split identified in *United States v. Sanmina Corp.*, 968 F.3d

1107, 1116 (9th Cir. 2020). Plaintiff is again mistaken. The *Sanmina* question was a different one: Whether to adopt "some version of the 'primary purpose' test instead of the 'because of' test." *Grand Jury*, 23 F.4th at 1094. The Ninth Circuit adopted the first test and left open the question of whether courts should always look for "*the* primary purpose" or "*a* primary purpose," which "would save courts the trouble of having to identify a predominate purpose among two (or more) potentially equal purposes." *Id.* Courts across the country and within this Circuit have already disagreed on what formulation of that primary-purpose test should be applied. That uncertainty calls for certification in this case.

Third, Plaintiff rehashes many of the same objections as to why resolution of the question presented would not materially advance the termination of the case. But Plaintiff does not deny that answering the question will determine whether Defendants' privileged material concerning matters that Plaintiff deems important should remain confidential or become a part of the record. Should Defendants be forced to disclose the material, and the Ninth Circuit were to later determine that Judge Spero should have applied "*a* primary purpose test" to Defendants' communications, then there is a considerable risk that the improper disclosure would be remedied with vacatur of any adverse judgment and a remand for a new trial. Answering that question now will delineate the scope of the evidence in a way that is respectful of Defendants' privilege and potentially averts a reversal on appeal, saving this Court and the parties unnecessary trouble and expense.

Finally, the elephant in the room—one Plaintiff has done its best to ignore—is that there is a cert petition in *In re Grand Jury* pending before the U.S. Supreme Court (Case No. 21-1397 (U.S.)), asking the Supreme Court to resolve the question presented here for certification. That petition, which alleges a split among the circuits on a highly important question, is supported by various amici (i.e., the U.S. Chamber of Commerce, the Washington Legal Foundation, and the California Lawyers Association)—demonstrating the consequential nature of this issue to the public and corporations like Apple. The Supreme Court's decision on whether to take up the case is imminent—with the conference distribution date being next week, and the certiorari decision likely to follow in early October. *See id.* (setting distribution date for conference of September

28, 2022), *available* at https://tinyurl.com/3uadcjhh.  Plaintiff asks this Court to deny the certification motion, without regard to the Supreme Court's impending decision of whether to review the Ninth Circuit's judgment in *Grand Jury* and, as argued by the petitioner in that case, adopt the "a primary purpose test" advanced by then-Judge Kavanaugh in *Kellogg*.  Faced with this predicament, this Court could either wait for the Supreme Court's certiorari decision early next month, or follow the Supreme Court's admonition of "not hesitat[ing] to certify an interlocutory appeal" on "a privilege ruling [that] involves a new legal question or is of special consequence."  *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009).

## II.     ARGUMENT

### A.     The question presented for interlocutory appeal is a controlling question of law.

Defendants' motion demonstrated that the question presented for certification is a "controlling question of law."  Mot. at 5-6.  The question is the one that the Ninth Circuit expressly left open in *Grand Jury*, and whose resolution here might determine whether certain communications that relate to matters that Plaintiff has put at the center of its case are privileged or not.  The production orders, if allowed to stand without the benefit of the Ninth Circuit's interlocutory review, would force Defendants to disclose privileged material from Apple's CEO to its General Counsel that Plaintiff might then use to litigate the securities claim at issue.  *See, e.g.*, ECF No. 246-5; Mot. at 3.  Avoiding such serious error at this juncture—before the attorney-client privilege is forever lost—while promoting judicial efficiency and clarifying the metes and bounds of the evidence—is precisely what interlocutory review is for.  *See* Mot. at 1-2.

Plaintiff responds that the question presented here is neither a pure question of law nor controlling.  That response, however, rests on a mischaracterization of the question for which certification is sought and, in any event, gets the law wrong.

**1.  *The question presented is a question of law.***  Plaintiff mischaracterizes the question presented when it says that certification is improper because the question turns on an application of law to facts—namely, how the attorney-client privilege's legal standard is applied to specific documents, which is a mixed question of law and fact.  Opp. at 4.  But that is not the question

presented. The question presented in this motion for certification is *which* legal test should be applied to determine if the specific documents are privileged—or, as *Grand Jury* explained, what form the Ninth Circuit's primary-purpose test should take where, as here, there are dual-purpose communications in a business setting outside of the tax context. Mot. at 2-3; *see also id.* at i-ii (containing "Statement of Issues to be Decided, including question of "[w]hether the attorney-client privilege protects a dual-purpose communication, where obtaining or seeking legal advice was *a* primary purpose of the communication, but perhaps not its single primary purpose"). That is a pure question of law that is perfectly appropriate for certification.

As *Grand Jury* explained, "*legal* rulings about the scope of the privilege" and the "choice of the applicable legal standard" are questions of law "reviewed de novo." 23 F.4th at 1091 (emphasis added); *cf. United States v. Real Prop. & Improvements Located at 2441 Mission St., S.F., Cal.,* 2014 WL 1350914, at *1-2 (N.D. Cal. Apr. 4, 2014) (granting motion for interlocutory appeal from discovery ruling because it presented an unresolved question of law concerning the choice of "the correct legal standard in determining whether to grant a protective order"). Defendants' current motion for certification is about whether Judge Spero applied the correct legal standard—not whether he applied the standard correctly to the facts. That is why Plaintiff's defense of Judge Spero's "fact-based" determinations and *in camera* review, *see* Opp. at 4, is misplaced, as it is irrelevant to the pure legal question now presented. After all, the "careful[] review[] of 27 documents *in camera*" means very little if the wrong legal standard was applied. *Id.*

**2. The legal question presented is "controlling."** Next, Plaintiff suggests that the question presented is not "controlling" because it would not resolve the entire case. *See id.* at 3-5. According to Plaintiff, certification is only proper if the whole case turns on the answer to the certified question. *See id.* at 3. Binding precedent squarely forecloses that argument. Of course, the question of law is "controlling" where certification involves a dispositive issue. *See In re Cement Antitrust Litig. (MDL NO. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981) ("[A]*t the very least*, a controlling question of law must encompass 'every order which, if erroneous, would be reversible error on final appeal.'" (citation omitted and emphasis added)). But that is not the only

1  situation. A legal question is "controlling" if it "could materially affect the outcome of [the]
2  litigation," which is not the same as requiring the entire action to turn on the answer to the
3  question presented. *Id.* As this Circuit's leading case on certification explained, a question of
4  law need not be "dispositive of the lawsuit in order to be regarded as controlling." *United States*
5  *v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959); *accord* Mot. at 5 (citing *Villareal v. Caremark*
6  *LLC*, 85 F. Supp. 3d 1063, 1068 (D. Ariz. 2015)). Other circuits are in accord. Wright & Miller,
7  16 Fed. Prac. & Proc. Juris. § 3930, *Criteria for Permissive Appeal* (3d ed.) (collecting cases)).

That is why, even in the discovery context, interlocutory appeals are permitted when
resolution of legal questions could affect the parties' litigation—whether it is the ability to defend
oneself, prove a claim, or clarify the scope of the evidence available in a complex case. *See*
*Garner v. Wolfinbarger*, 430 F.2d 1093, 1096-97 (5th Cir. 1970) (holding, in case involving
securities and common-law fraud claims, that "appeal from the order denying the attorney-client
privilege to the corporation is proper under § 1292(b)" because "decision on an issue would affect
the scope of the evidence in a complex case, even short of requiring complete dismissal")[1]; *see*
*also Kimberly–Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 407 F. App'x 431, 431
(Fed. Cir. 2011) (granting petition for § 1292(b) review of the district court's "discovery ruling"
that documents arising from "mediation" proceedings but not "arbitration" proceedings were
privileged under the "federal mediation privilege"); *Real Prop. & Improvements,* 2014 WL
1350914, at *1-2 (granting interlocutory review where assertion of self-incrimination privilege by
company's principals could hinder the company's "ability to effectively defend[] itself" in
forfeiture action).

That the question concerns a privilege ruling does not make it less worthy of the Ninth
Circuit's interlocutory review. On the contrary, "district courts should not hesitate to certify an
interlocutory appeal" when "a privilege ruling involves a new legal question or is of special

---

[1] Plaintiff criticizes Defendants' reliance on *Garner* on the basis that it is an old, out-of-circuit decision, and that, "unlike here, the question presented in *Garner* was a question of law." Opp. at 5. Whereas the first criticism is really an observation and no response at all, the second one is wrong for the reasons already stated above. *Supra* at 3-4 (explaining that Plaintiff conflates the scope of the attorney-client privilege (which is a legal issue) with the application of the legal standard to the documents (which is a mixed issue of fact and law)).

consequence." *Real Prop. & Improvements*, 2014 WL 1350914, at *2 (quoting *Mohawk Indus.*, 558 U.S. at 110-11). Or, as one state appellate court stated in the context of that state's certification statute while relying on federal caselaw construing § 1292(b): "Where the appeal would address only whether the trial court had abused its discretion in a discovery matter, interlocutory review is generally not allowed." *Adams v. Corr. Corp. of Am.*, 264 P.3d 640, 644 (Colo. App. 2011) (collecting federal authorities). Such review is entirely appropriate, however, "where a discovery order presents a question of law, such as the availability of a corporation's attorney-client privilege in litigation against its shareholders"—or as here, the choice of the applicable legal standard for dual-purpose communications of that corporation. *Id*.

As discussed, the law does not require that appellate resolution of the question presented dictates the final judgment of the case. It suffices that the communications implicated by the production orders are not "collateral to the basic issues of [the] case," *Woodbury*, 263 F.2d at 788—in other words, that they are not too ancillary to the claims in the case. As Defendants' motion explained (at 6) and Plaintiff did not dispute, the question presented here concerns the production of communications about the Cook Letter, which Plaintiff has relied on to allege loss causation, one of the elements of its securities claim. *See, e.g.*, ECF No. 114 ¶ 105.

Plaintiff also misrepresents the law when it argues that "preservation of judicial and party resources has no bearing on whether a question is controlling." Opp. at 4. That is wrong, as demonstrated by the case that Plaintiff cites. Avoiding the waste of judicial resources is the entire purpose of § 1292(b). *See* Mot. at 1-2; *accord* Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b), 88 Harv. L. Rev. 607, 609-11 (1975). The law merely says that a legal question is not *automatically* "controlling" simply because its resolution would affect the litigation's "time, effort or expense." *United States v. Acad. Mortg. Corp.*, 2018 WL 6592782, at *5 (citations omitted). For example, that "discovery will be expensive and time consuming" is not a reason for taking an interlocutory appeal of a discretionary discovery ruling. *Id*. But that is not the argument here.

Early appellate resolution of the privilege question will save time, effort, and expense in ways that could materially affect the litigation. Not only would interlocutory review protect

1  Defendants from the irreparable harm of forever losing privilege over these documents, but it also
2  would delineate the scope of the evidence available to litigate the case.  It could affect, for
3  example, the way the parties sharpen their trial presentation and how Plaintiff attempts to prove
4  the securities claim.  And ultimately, it would prevent the introduction of serious error and
5  perhaps even avert a costly second trial.  To ensure those efficiencies in the litigation, this Court
6  can decide whether to stay the production orders or the summary judgment proceedings pending
7  resolution of the appeal.  *See* Opp. at 5 (anticipating that certification might delay resolution of
8  summary judgment motion); Mot. 9-10 (arguing for stay pending appeal).

9  Plaintiff's last objection (at 4 n.4)—that Defendants' arguments should not be taken
10 seriously because Plaintiff has not seen the documents—fares no better.  It is necessarily the case
11 that a party challenging a privilege assertion has not seen the documents that it wants disclosed.
12 Instead, that party must argue, based on the documents' descriptions and sworn affidavits, that §
13 1292(b) review is improper because the discovery ruling is completely collateral to their claim.
14 Plaintiff has not done so, presumably because it knows that the communications relate to the
15 Cook Letter, which Plaintiff made front and center in its case.

16  **B.  There are substantial grounds for difference of opinion with respect to the question presented for interlocutory appeal.**
17

18  The parties agree that this second requirement is satisfied where "the circuits are in
19 dispute on the question [presented] and the court of appeals of the circuit has not spoken on the
20 point … or if novel and difficult questions of first impression are presented."  Opp. at 5 (quoting
21 *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)); Mot. at 6 (citing *ICTSI Ore., Inc. v.*
22 *Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022)).  Defendants' motion
23 explained why that is true here:  The Ninth Circuit has not spoken on the question presented
24 because *Grand Jury* said it was leaving the question open for resolution in some other case.  Mot.
25 at 6-8.  Nonetheless, Plaintiff argues that there are no substantial grounds for difference of
26 opinion, arguing instead that the Ninth Circuit already answered the question presented.  Opp. at
27 5-7. As discussed below, that assertion stems from a distorted misreading of *Grand Jury*—one
28 that plucks quotations out of context and omits critical detail regarding its holding.

**1. *The question presented is an open and novel question in this Circuit.*** Contrary to Plaintiff's assertion (at 6), "the Ninth Circuit has [not] settled the question" presented for certification. To be clear, the question presented is about *which* version of the primary-purpose test should be adopted—"*the* primary purpose test" or "*a* primary purpose test." *See supra* at 1, 3-4. Indeed, there is an entire section in *Grand Jury* entitled: "We Leave Open Whether the 'A Primary Purpose Test' Should Apply." 23 F.4th at 1094-95. If anything, substantial grounds for difference of opinion exist for the simple reason that the Ninth Circuit "s[aw] the merits of the reasoning" behind the D.C. Circuit's adoption of the "a primary purpose test." *Id.* at 1094. And as Defendants explained in their motion (at 6), and Plaintiff failed to dispute, the Ninth Circuit did not adopt that formulation in *Grand Jury* in large part because the D.C. Circuit's persuasive "reasoning does not apply with equal force in the tax context" that was presented in *Grand Jury*. 23 F.4th at 1094-95. Because this is not a tax case, the question that remains unresolved is highly relevant to the dispute at issue here.

Plaintiff says that "the Ninth Circuit has resolved any intra-circuit split." Opp. at 5. But the *only* question that *Grand Jury* resolved—the "intra-circuit split" that *Sanmina* left open—is not the question presented here for certification. The question left open in *Sanmina* was which "test applies to dual-purpose communications": either "some version of the 'primary purpose' test" *or* "the 'because of' test." *Grand Jury*, 23 F.4th at 1094. *Grand Jury* held that the primary-purpose test applies, but did not resolve which "version" would govern. *Id.* at 1094-96.

The Ninth Circuit panel carefully drafted *Grand Jury* to avoid the confusion that Plaintiff's opposition intends to sow when it says that the opinion adopted "*the* primary-purpose test." Opp. at 7 n.8 (emphasis in original). When *Grand Jury* refers to the more restrictive version of the primary-purpose test, the Ninth Circuit invariably included the article "the" in the quoted term (and sometimes used italics). More specifically, when describing the restrictive version, it would refer to "*the* primary purpose test," as opposed to the "primary purpose test" or the "primary-purpose test." *See Grand Jury*, 23 F.4th at 1094 ("Even if the 'primary purpose test' applies here, Appellants argue that we should adopt '*a* primary purpose' as the test instead of '*the* primary purpose' …." (emphasis in original)); *see also id.* at 1091 ("When dual purpose

1  communications are involved, there are two potential tests that courts have adopted: the 'primary
2  purpose' test and the 'because of' test."); *id.* at 1092 ("As the *Sanmina* court recently noted, the
3  Ninth Circuit has not explicitly adopted either the 'primary purpose' test or the 'because of' test
4  in determining whether dual-purpose communications are entitled to attorney-client privilege.").
5  So, when *Grand Jury* wrote that it was holding "that the 'primary purpose' test applies to dual-
6  purpose communications," *id.* at 1094, the Ninth Circuit made it unmistakably clear that it was
7  not deciding that "*the* primary purpose test" applies to all dual-purpose communications, *id.* at
8  1094-95 (declining to decide which "formulation of the primary-purpose test" applies in non-tax
9  cases). All it held was that courts must apply "some version of the 'primary purpose' test instead
10 of the 'because of' test," and which version of that primary-purpose test should be applied would
11 be a decision for later. *Id.* at 1094-95.[2]

12     **2.  *The question presented involves disagreement among the circuits.*** Plaintiff also
13 argues that there is no split among the circuits on what test should apply. That argument is
14 meritless. The Second Circuit has articulated a different formulation of the test, one that focuses
15 on a communication's "predominant purpose." *In re Cty. of Erie*, 473 F.3d 413, 420 (2d Cir.
16 2007); *see Grand Jury*, 23 F.4th at 1094-95 (discussing how looking for "'the primary or
17 predominant' purpose" of a communication is different from "focus[ing] on *a* primary purpose").
18 And the Seventh Circuit adopted an even more restrictive test than *Grand Jury*'s primary-purpose
19 test, concluding that dual-purpose documents concerning tax returns can *never* be privileged. *See*
20 *United States v. Frederick*, 182 F.3d 496, 501 (7th Cir. 1999); *accord Valero Energy Corp. v.*
21 *United States*, 569 F.3d 626, 630 (7th Cir. 2009); *In re Grand Jury Proc.*, 220 F.3d 568, 571 (7th
22 Cir. 2000). Therefore, Plaintiff does not and cannot dispute that, at least in the tax context, the
23 law in the Ninth and Seventh Circuits is not the same.

24     Moreover, Plaintiff ignores the fact that there is a cert petition arising from the Ninth
25 Circuit's decision in *Grand Jury* that is currently pending in the Supreme Court and that will be

---

[2] Plaintiff accuses Defendants of supposedly reversing direction after receiving Judge Spero's unfavorable ruling. Opp. at 6. But that new accusation has no basis, which is why Plaintiff did not make this argument earlier when Defendants' Rule 72 motion for relief explained that Judge Spero applied the wrong standard based on a misreading of *Grand Jury*.

distributed for conference next week. *See* Mot. at 3 n.1. That cert petition—which is supported by reputable amici such as the U.S. Chamber of Commerce, the Washington Legal Foundation, and the California Lawyers Association—alleges a circuit split. *See In re Grand Jury*, No. 21-1397 (U.S.). Even if there were no formal split, the confusion that exists among courts with respect to a question that the Ninth Circuit has left open is compelling evidence of substantial grounds for difference of opinion. *Reese v. BP Exp. (Ala.) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

One last point: Plaintiff is also wrong when it suggests (at Opp. 6-7) that the weight of authority is against the adoption of "*a* primary purpose test." On the contrary, other than the production order at issue, and *one* other order also by Judge Spero, Defendants are not aware of any other court that has adopted "*the* primary purpose test," while foreclosing the possibility of a broader test on the basis "that a dual-purpose communication can only have a single 'primary' purpose." *L.D. v. United Behavioral Health*, 2022 WL 3139520, at *12 (N.D. Cal. Aug. 5, 2022) (Judge Spero applying "*the* primary purpose test"). And Plaintiff cited none. If anything, the support for the "*a* primary purpose test" is overwhelming. It's not just the D.C. Circuit in *Kellogg* (Kavanaugh, Griffith, Srinivasan), but also *many* district courts—not a "handful," as Plaintiff contends, Opp.at 6-7—that have applied this formulation (including in the Ninth Circuit). *See* 1 Restatement (Third) of the Law Governing Lawyers § 72, Reporter's Note, at 554 ("American decisions [generally] agree that the privilege applies if *one* of the significant purposes of a client in communicating with a lawyer is that of obtaining legal assistance." (emphasis added)).[3]

---

[3] *See, e.g.*, *Ramb v. Paramatma*, 2021 WL 5038756, at *3 (N.D. Ga. Sept. 22, 2021); *Aetna Inc. v. Mednax, Inc.*, 2019 WL 6467349, at *1 (E.D. Pa. Dec. 2, 2019); *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 2644243, at *2-3 (N.D. Ill. June 27, 2019); *Edwards v. Scripps Media, Inc.*, 2019 WL 2448654, at *1-2 (E.D. Mich. June 10, 2019); *In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Prods. Liab. Litig.*, 2019 WL 2330863, at *2 (D. Md. May 31, 2019); *Pitkin v. Corizon Health, Inc.*, 2017 WL 6496565 (D. Or. Dec. 18, 2017); *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319, 1329 (N.D. Ga. 2015); *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 530 (S.D.N.Y. 2015).

### C. Prompt review and resolution of the question presented may materially advance the ultimate termination of the litigation.

Defendants' motion explained (at 8-9), and Plaintiff did not dispute, that this third factor is satisfied if the question's resolution *could* "save the courts and the litigants unnecessary trouble and expense." *Silbersher v. Allergan Inc.*, 2021 WL 292244, at *3 (N.D. Cal. Jan. 28, 2021) (citation and quotation marks omitted). A "final, dispositive effect on the litigation" is not required. Mot. at 8 (quoting *Reese*, 643 F.3d at 688). Nor does Plaintiff deny that the Ninth Circuit may "remedy the improper disclosure of privileged material" by "vacating an adverse judgment and remanding for a new trial" that excludes the communications from evidence. *Mohawk*, 558 U.S. at 606-07. Plaintiff's only response is that no one can know for sure if the prong is met since only Defendants have seen the documents. Opp. at 8-9. But as discussed above, that is true of every case involving privileged material. And certainty also is not required. *See ICTSI*, 22 F.4th at 1130 (requiring that "immediate resolution of that question *may* materially advance the ultimate termination of the litigation" (emphasis added and citation omitted)). As relevant here, early appellate resolution of the question presented may avoid (or perhaps reduce) the risk of a possible re-trial and the attendant waste of judicial resources that comes with litigating a claim with improperly disclosed privileged material.

Moreover, Plaintiff principally rehashes many of the same objections made with respect to the first criterion for § 1292(b) review. Opp. 7-9. After all, these two requirements are closely tied. *See* Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3930, Criteria for Permissive Appeal (3d ed.). But that simply means that Plaintiff's arguments largely fail for the reasons stated above in Part II.A.2.

Separately, Plaintiff argues that "there is no indication" in Judge Spero's order that his "conclusions would change under a slightly different test." Opp. at 8. But that argument misses the point, since Judge Spero did not consider the possibility that a less restrictive legal standard may apply to the documents at issue. And *how* that less restrictive standard is applied to the documents is not the question presented for certification.

1    Lastly, Plaintiff suggests that certification will not make much of a difference because, in
2    one instance, Judge Spero ordered "documents redacted where they effectively contained 'a' legal
3    purpose" (i.e., such as when there is a question to the legal team), while ordering the rest of the
4    communication to be produced on the basis that it "involve[d] business advice" and was "not
5    primarily for a legal purpose." Opp. at 8.  But this argument misses the point, since that example
6    does not involve an actual dual-purpose communication—where one communication serves both
7    a business and a legal purpose, as opposed to a document reflecting legal advice separately from
8    business advice.  It is with respect to dual-purpose communications that Judge Spero's efforts "to
9    try to determine whether the purpose was A or B when the purpose was A and B" is neither
10   "useful" nor "feasible."  *Kellogg*, 756 F.3d at 759; *see also United States v. ChevronTexaco*
11   *Corp.*, 241 F. Supp. 2d 1065, 1069 (N.D. Cal. 2002).  In short, certification is necessary to clarify
12   whether judges must undertake that difficult, if not inherently impossible, task—and, if so, when.

### D. **Plaintiff does not dispute that, if certification is warranted, a stay should be entered.**

Plaintiff's only argument against the requested stay is that it should be denied because the criteria for § 1292(b) review have not been met.  Opp. at 9.  That is wrong for all of the reasons discussed above.  Ultimately, Plaintiff's opposition makes clear that its position as to the stay rises and falls with the certification issue.  Accordingly, Plaintiff does not dispute that, if certification is granted, the requested stay should automatically follow for the reasons explained in Defendants' motion.  And this Court can exercise its inherent authority to determine the scope and duration of that stay, including whether to stay just the production orders or stay the summary judgment proceedings pending appeal.  *See Real Prop. & Improvements*, 2014 WL 1350914, at *4 n.3.

### III. CONCLUSION

Defendants respectfully request that this Court certify its orders for interlocutory appeal and issue a stay pending the Ninth Circuit's review and resolution of the appeal.

| | | |
|---|---|---|
| 1 | Dated: September 19, 2022 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| 2 | | |
| 3 | | */s/ James N. Kramer*<br>JAMES N. KRAMER |
| 4 | | Attorneys for Defendants Apple Inc., Timothy Cook, and Luca Maestri |