# EXHIBIT D

| | |
|---|---|
| 1 | JAMES N. KRAMER (SBN 154709) |
| | jkramer@orrick.com |
| 2 | MICHAEL D. TORPEY (SBN 79424) |
| | mtorpey@orrick.com |
| 3 | ALEXANDER K. TALARIDES (SBN 268068) |
| | atalarides@orrick.com |
| 4 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | The Orrick Building |
| 5 | 405 Howard Street |
| | San Francisco, CA  94105-2669 |
| 6 | Telephone:     (415) 773-5700 |
| | Facsimile:      (415) 773-5759 |
| 7 | |
| | Attorneys for Defendants Apple Inc., |
| 8 | Timothy Cook, and Luca Maestri |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | Civil Action No. 4:19-cv-02033-YGR |
| | **DECLARATION OF ERIC B. POER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S *DAUBERT* MOTION** |
| This Document Relates To: | |
| ALL ACTIONS. | <u>Hearing</u> |
| | Date:   TBD |
| | Time:   2:00 p.m. |
| | Ctrm:   1, 14th Floor |
| | Judge:  Honorable Yvonne Gonzalez Rogers |

I, Eric B. Poer, declare as follows:

1. I have reviewed Lead Plaintiff's Notice of Motion and Omnibus Motion to Exclude Opinion Testimony of Defendants' Proposed Experts; Memorandum of Points and Authorities in Support Thereof filed on September 9, 2022 (the "*Daubert* Motion").

2. Counsel has asked me to submit a declaration in response to Plaintiff's *Daubert* Motion, specifically sections D.3. and D.4., which relate to information obtained from Apple employees during three separate videoconference interviews as discussed in my initial report dated April 27, 2022 (Corrected May 9, 2022) ("Poer Opening Report") and my Rebuttal Summary and Expert Report dated June 10, 2022 ("Poer Rebuttal Report").

**Interview Objectives**

3. In connection with my assignment, I was provided with several types of system generated reports from Apple, many of which span hundreds of pages and contain dozens of different data fields. For example, a Daily Unbrickings Report will often contain well over 100 pages of data with approximately 40 columns of data on each page.[1] The scope of my work in this matter involved the analysis of the data contained in these reports, therefore, at my request, Counsel arranged interviews with Apple employees with whom I could confirm my understanding of the data and fields in these reports, as well as learn the systems involved in generating these reports and how these reports may have been distributed throughout the organization. As discussed herein, I conducted these interviews to confirm my understanding of the data, and the opinions I reached in this matter are based on the data contained in Apple's reports, not the interviews I conducted with Apple employees about the reports.

4. The first interview I conducted was on April 19, 2022, with Anish Patel (Vice President, WW Supply Demand Management, Readiness, and Reseller Operations) and Naznin Shroff (Decision Support, WW Operations). The interview was conducted via videoconference and lasted approximately 45 minutes. I interviewed these individuals to validate that the reports I was using to analyze trends in Apple's iPhone business, all of which I understand were produced

---

[1] *See, e.g.*, the October 31, 2018 Daily Unbrickings Report (APL-SECLIT_00057742 – 899).

in this matter prior to my report submissions, were the best sources of information to analyze such trends. Mr. Patel validated that the Daily Unbrickings Reports and Weekly Unbrickings Reports I relied on were routinely distributed to senior finance managers and used frequently by the finance and forecasting teams to gauge end-user product demand.[2] I also learned from Ms. Shroff that the iPhone unbrickings data was housed in Apple's Enterprise Data Warehouse and subject to annual independent audits. I also used the interview as an opportunity to validate what I learned about Apple's forecasting process from my review of various deposition transcripts.[3] Mr. Patel reiterated that the two main teams involved in forecasting were the Supply Demand Management and the Sales & Marketing Finance teams.

5. The second interview I conducted was on April 22, 2022, with Tejas Gala (Director, Corporate Finance & Investor Relations). The interview was conducted via videoconference and lasted less than 30 minutes. I interviewed Mr. Gala to confirm my understanding of Apple's currency adjusted financial metrics that were contained in documents I had analyzed. Mr. Gala and I discussed that Apple obtains foreign currency exchange rates from Bloomberg and Apple's internal systems containing these rates are subject to external audit and internal controls testing.[4]

6. The third interview was conducted by my team under my direction on June 7, 2022, with Tina Tong (Sales Operation Manager – Greater China) and Karen Wang (Sales Support Analyst – Greater China). The interview was conducted via videoconference and lasted less than 30 minutes. Mses. Tong and Wang were interviewed to validate the traffic data spreadsheets my team and I had reviewed. While we learned Mses. Tong and Wang were not part of the team that works with the "Retail" traffic data, they do work with similar data for the "Reseller" channel in Greater China, and they confirmed the spreadsheet data I was working with and relying on for my opinions was derived from the same reports they used to analyze Reseller store traffic.

---

[2] *See* Poer Opening Report, Section IV, where I specifically reference these data sources.
[3] *Id.*, Section V.A.
[4] *Id.*, footnote 45.

**Best Practices and Professional Standards**

7. In my professional experience, complex litigation matters often involve the analysis of voluminous reports and data. The general professional standards of the American Institute of Certified Public Accountants (AICPA) include the following:[5]

> *Due professional care.* Exercise due professional care in the performance of professional services.
>
> *Sufficient relevant data.* Obtain sufficient relevant data to afford a reasonable basis for conclusions or recommendations in relation to any professional services performed.

8. In this matter, I conducted these three interviews to confirm my understanding of and validate the reports on which my analyses and opinions are based. The reports I relied on for my analyses were not independently audited financial statements; rather they were internal reports that included information Apple uses to manage the organization.[6] Accordingly, these interviews were conducted to ensure that I was analyzing the best sources of information and that the information contained in such sources was reliable based on Apple's internal control systems.

**Reliance on Interviews**

9. Contrary to Plaintiff's assertion that, "Defendants want to rely on undisclosed sources and data,"[7] no additional files or data were shown to me during these three interviews, and I have not gained access to any un-produced documents or data since these interviews. Furthermore, I did not rely on these interviews to reach any of my opinions. My opinions are based solely on the data contained in the reports, all of which I understand have been produced in this matter. The interviews merely confirmed my usage of the data reports as the best available information sources for my analyses and I was able to validate my understanding of the

---

[5] AICPA Statement on Standards for Forensic Services No. 1, ¶ 6.

[6] "Internal Financial and Non-Financial Reporting Objectives—Internal reporting to management and the board of directors includes information deemed necessary to manage the organization. It supports decision making and assessment of the entity's activities and performance. Internal reporting objectives are based on preferences and judgments of management and the board. Internal reporting objectives vary among entities because different organizations have different strategic directions, operating plans, and expectations." COSO Internal Control - Integrated Framework – 2013, Chapter 2: Objectives, Components, and Principles.

[7] Plaintiff's *Daubert* Motion, Section D.3, p. 28, line 21.

1 | underlying data components and forecasting processes.  I did not obtain any independent or
2 | substantive information as a result of the interviews that was not already discussed during fact
3 | witness depositions or contained in documents that have been produced in this matter.
4 |     I declare under penalty of perjury under the laws of California and the United States of
5 | America that the foregoing is true and correct.  Executed in Las Vegas, Nevada on October 19,
6 | 2022.

*/s/ Eric B. Poer*

ERIC B. POER