1    JAMES N. KRAMER (SBN 154709)
     jkramer@orrick.com
2    MICHAEL D. TORPEY (SBN 79424)
     mtorpey@orrick.com
3    ALEXANDER K. TALARIDES (SBN 268068)
     atalarides@orrick.com
4    ORRICK, HERRINGTON & SUTCLIFFE LLP
     The Orrick Building
5    405 Howard Street
     San Francisco, CA  94105-2669
6    Telephone:      +1 (415) 773-5700
     Facsimile:       +1 (415) 773-5759
7
     Attorneys for Defendants Apple Inc.,
8    Timothy Cook, and Luca Maestri

9

10                   UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                        OAKLAND DIVISION

13

14   IN RE APPLE INC. SECURITIES          Lead Case No. 4:19-cv-02033-YGR
     LITIGATION
15                                         **REPLY IN SUPPORT OF
                                           DEFENDANTS' MOTION FOR
16   _____        SUMMARY JUDGMENT**

17   This Document Relates To:             <u>Hearing</u>
                                           Date:    TBD
18   ALL ACTIONS.                          Time:   2:00 p.m.
                                           Ctrm:   1, 14th Floor
19                                         Judge:  Honorable Yvonne Gonzalez Rogers

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

GLOSSARY OF TERMS USED ................................................................................................. iv

I.      INTRODUCTION ........................................................................................................ 1

II.     THERE IS NO GENUINE DISPUTE OVER ANY *MATERIAL* FACT ........................... 3

III.    ARGUMENT ................................................................................................................ 5

        A.      There Is No Triable Issue Regarding Falsity ...................................................... 5

                1.      The Challenged Statement Was An Objectively Accurate And
                        Honestly Held Opinion Supported By Undisputed Historical Facts .......... 5

                2.      Analyst Reports Independently Establish The Absence Of Falsity ........... 8

                3.      The Undisputed Fact That Apple's FQ1 2019 Guidance Was
                        Accurate As Of November 1, 2018 Further Confirms The Absence
                        Of Falsity ................................................................................................. 10

        B.      There Is No Triable Issue Regarding Scienter ..................................................... 11

        C.      There Is No Triable Issue Regarding Loss Causation .......................................... 14

        D.      Mr. Maestri Is Independently Entitled To Summary Judgment ........................... 15

IV.     CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Computer Sec. Litig.*,
   886 F.2d 1109 (9th Cir. 1989)............................................................................ 13, 14

*Brody v. Transitional Hosp. Corp.*,
   280 F.3d 997 (9th Cir. 2002)..................................................................................... 11

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017)........................................................................... 7, 12, 13

*In re Convergent Techs. Sec. Litig.*,
   948 F.2d 507 (9th Cir. 1991)................................................................................. 4, 11

*In re Cypress Semiconductor Sec. Litig.*,
   891 F. Supp. 1369 (N.D. Cal. 1995), *aff'd*, 113 F.3d 1240 (9th Cir. 1997)...................... 4, 11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011) .................................................................................................... 15

*Far Out Prods., Inc. v. Oskar*,
   247 F.3d 986 (9th Cir. 2001)........................................................................................ 6

*Fecht v. Price Co.*,
   70 F.3d 1078 (9th Cir. 1995)...................................................................................... 10

*Josef K. v. Cal. Physicians' Serv.*,
   477 F. Supp. 3d 886 (N.D. Cal. 2020) ........................................................................ 5

*Kaplan v. Rose*,
   49 F.3d 1363 (9th Cir. 1994)................................................................................ 14, 15

*In re Leapfrog Enters., Inc. Sec. Litig.*,
   200 F. Supp. 3d 987 (N.D. Cal. 2016) ...................................................................... 10

*Mass. Ret. Sys. v. CVS Caremark*,
   716 F.3d 229 (1st Cir. 2013) ..................................................................................... 10

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015) ........................................................................................... 7, 8, 10

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010)............................................................................... 4, 8, 9

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996)...................................................................................... 9

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001)................................................................................................. 11

*S.E.C. v. Todd*,
642 F.3d 1207 (9th Cir. 2011)............................................................................................... 15

*Schlifke v. Seafirst Corp.*,
866 F.2d 935 (7th Cir. 1989)................................................................................................ 13

*Schuster v. Symmetricom, Inc.*,
2000 WL 33115909 (N.D. Cal. Aug. 1, 2000), *aff'd*, 35 F. App'x 705 (9th Cir.
2002) ...................................................................................................................................... 13

*In re Tesla, Inc. Sec. Litig.*,
2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) ........................................................................ 12

*Wong v. Wells Fargo Bank, N.A.*,
2021 WL 4243398 (N.D. Cal. Sept. 17, 2021) ..................................................................... 15

**Rules**

Fed. R. Civ. P. 56(d) ................................................................................................................. 15

## GLOSSARY OF TERMS USED

| | |
|---|---|
| Apple: | Apple Inc. |
| BofA: | Bank of America, Merrill Lynch |
| Challenged Statement: | The sole alleged misstatement at issue in this lawsuit, as fully set forth on page 8 of Defendants' Motion for Summary Judgment |
| China: | Apple's "Greater China" region of China, Hong Kong, and Taiwan |
| Company: | Apple Inc. |
| Cook Decl.: | Declaration of Timothy Cook in Support of Defendants' Motion for Summary Judgment, Dkt. No. 294 |
| Defs.' Opp. to PRJN: | Defendants' Opposition to Plaintiff's Request for Judicial Notice in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment |
| Ex.: | Exhibits attached to the declarations filed in support of Defendants' Motion for Summary Judgment.  A sequential list of Defendants' exhibits, which shows where each may be found, is attached as Appendix A to the Declaration of James N. Kramer in support of Defendants' Motion for Summary Judgment, Dkt. No. 297 |
| FY 2017: | Apple's Fiscal Year of 2017, ended September 30, 2017 |
| FQ3 2018: | Apple's Third Fiscal Quarter of 2018, ended June 30, 2018 |
| FQ4 2018: | Apple's Fourth Fiscal Quarter of 2018, ended September 29, 2018 |
| FQ4 2018 Call: | Apple's FQ4 2018 Earnings Conference Call, held on November 1, 2018 |
| FY 2018: | Apple's Fiscal Year of 2018, ended September 29, 2018 |
| FQ1 2019: | Apple's First Fiscal Quarter of 2019, ended December 29, 2018 |
| FX: | Foreign Exchange, a shorthand for the effects of currency exchange rates |
| Goldberg Decl.: | Declaration of Robin Goldberg Regarding Defendant Apple Inc.'s Business Records, Dkt. No. 298 |
| Maestri Decl.: | Declaration of Luca Maestri in Support of Defendants' Motion for Summary Judgment, Dkt. No. 295 |
| MSJ or Motion: | Defendants' Motion for Summary Judgment, Dkt. No. 293 |
| MTD Order: | Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the Revised Consolidated Complaint, Dkt. No. 123 |
| Opp. or Opposition: | Plaintiff's   Opposition   to   Defendants'   Motion   for   Summary |

| | |
|---|---|
| | Judgment, Dkt. No. 322-3 |
| PAF: | Additional Fact listed in Plaintiff's Response to Separate Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment, Dkt. No. 323-3 |
| Parekh Decl.: | Declaration of Kevan Parekh in Support of Defendants' Motion for Summary Judgment, Dkt. No. 296 |
| PEx.: | Exhibits attached to the Declaration of Shawn A. Williams in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment, Dkt. No. 322-4 |
| Q&A Prep Document: | A document with detailed information about Apple's FQ4 2018 financial results (and forward-looking guidance), as well as talking points for potential questions from analysts on the FQ4 2018 Call. Attached as Exhibit 2 to the Declarations of Timothy Cook and Luca Maestri in Support of Defendants' Motion for Summary Judgment |
| Reply ISO RJN: | Reply in Support of Defendants' Request for Judicial Notice in Support of Defendants' Motion for Summary Judgment |
| RJN: | Request for Judicial Notice in Support of Defendants' Motion for Summary Judgment, Dkt. No. 293-2 |
| UF: | Undisputed Fact listed in the Separate Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment, Dkt. No. 293-1 |
| YoY: | Year-over-Year |

1   **I.      INTRODUCTION**

2          Plaintiff's Opposition confirms that Defendants are entitled to summary judgment.   Mr.

3   Cook did not make a false or misleading statement, and there is zero evidence that he intended or

4   had any motive to mislead investors, or that he was deliberately reckless.

5          The undisputed evidence proves that Mr. Cook's Challenged Statement was an honestly

6   held and objectively true opinion about Apple's emerging market performance in FQ4 2018.   Mr.

7   Cook made the statement on Apple's FQ4 2018 Call, the purpose of which was to discuss Apple's

8   FQ4 2018 results; the statement specifically cited and discussed historical FQ4 2018 data, which

9   Mr. Cook had before him on the call; and Mr. Cook's uncontroverted testimony is that he was

10  discussing FQ4 2018 results.   Plaintiff does not rebut any of that evidence.   Instead, Plaintiff

11  insists that Mr. Cook's informal use of present tense language by itself creates a triable issue as to

12  whether Mr. Cook was giving an interim update on Apple's business in China in FQ1 2019.   At

13  this stage of the case, however, Plaintiff must do more than argue its interpretation of the

14  Challenged Statement—it must present *evidence* to support its position, which Plaintiff has not

15  done.   As the Motion explains, none of the analysts who issued reports in the days after the

16  Challenged Statement reported Mr. Cook as giving an intra-quarter update on Apple's business in

17  China in FQ1 2019.   To the contrary, the analysts who referenced the Challenged Statement

18  interpreted it as Mr. Cook intended—as concerning Apple's FQ4 2018 results.

19         Plaintiff also argues that lower-than-expected initial iPhone XR demand in October 2018

20  caused Mr. Cook's comments to be misleading, but the Court has now twice rejected Plaintiff's

21  attempt to premise liability on statements regarding the XR, *see* MTD Order at 11; Dkt. No. 310,

22  and the Challenged Statement had nothing to do with the XR or XR demand.   Furthermore, the

23  undisputed evidence proves that the XR initially underperformed *globally* (not only in China)—

24  and so Mr. Cook's alleged omission of that underperformance could not have misrepresented "the

25  impact of slowing economic conditions in China."  Opp. at 1.  And, in any event, Plaintiff *admits*

26  that the lower-than-expected initial XR demand was fully incorporated into the FQ1 2019 revenue

27  guidance that Apple provided on the FQ4 2018 Call, *id.* at 1, 19; Dkt. No. 323-3 at 13 (PAF #57).

28         Plaintiff's assertion that Mr. Cook acted with scienter, or an intent to mislead investors, is

simply false.  Indeed, the Opposition effectively concedes that there is no evidence that Mr. Cook did anything to purposefully mislead anyone.  Unable to point to any stock sales or other motive to mislead, Plaintiff argues that because Mr. Cook knew of certain allegedly omitted facts (*e.g.*, the XR's initial underperformance), the Challenged Statement was deliberately reckless.  But the allegedly omitted facts did not contradict or undermine the accuracy of the Challenged Statement.  Moreover, the standard for scienter is *not* whether Mr. Cook merely knew of certain undisclosed facts, but whether he also knew that there was a *danger of misleading investors*, or whether that danger was "*so obvious*" he must have known it.  There is nothing in the record to establish such a showing, and the fact that analysts did not interpret the Challenged Statement in the way that Plaintiff claims means that the danger of misleading investors was *not* "so obvious."  And Ninth Circuit law is clear that an uncontroverted declaration of good faith like Mr. Cook's is enough to grant summary judgment on the issue of scienter, and that Plaintiff cannot avoid summary judgment simply by questioning Mr. Cook's credibility.

Importantly, the Court recognized at the pleading stage that Plaintiff would be unable to prove its case if the evidence ultimately showed that "the risks did not materialize until November and December [2018]"—that is, until after Mr. Cook made the Challenged Statement—"and defendants simply underestimated their eventual impact."  MTD Order at 21.  That is precisely what the undisputed evidence shows, *see*, *e.g.*, Ex. 94 at 23 (Chart 4), and what is established by Plaintiff's repeated concessions that Apple's FQ1 2019 revenue guidance was accurate when it was issued on November 1, 2018.  Despite Plaintiff's belated attempt to retract those prior concessions, there is no genuine dispute that: (i) Apple's guidance incorporated all available, relevant information about its performance through October 2018, and presented an accurate, up-to-date view of its forecast as of November 1, 2018; (ii) the guidance was consistent with contemporaneous internal data and projections; (iii) Apple was on pace to meet the guidance as of November 1, 2018, notwithstanding whatever pressure its business may have been experiencing in China at the time; and (iv) the dramatic deceleration in Apple's business in China that ultimately caused the guidance miss and precipitated this lawsuit arose *after* Mr. Cook made the Challenged Statement.  These undisputed facts entitle Defendants to summary judgment.

1

## II.     THERE IS NO GENUINE DISPUTE OVER ANY *MATERIAL* FACT

2

3

Defendants' separate statement of undisputed facts sets forth the material facts that entitle them to summary judgment. *See* Dkt. No. 293-1.[1]  Plaintiff purports to dispute nearly all of those facts in its responsive separate statement, *see* Dkt. No. 323-3, but fails to cite *material evidence* that actually controverts them.  At most, Plaintiff offers a litany of improper arguments and immaterial facts, which stretch for *22 pages*, in violation of the Court's Standing Order.

4

5

6

7

Most prominently, Plaintiff cites the lower-than-expected initial iPhone XR demand in October 2018 in an effort to create an issue of material fact. *See* Opp. at II.A-D & H.  But as discussed, the Challenged Statement only concerns whether Apple's business in China was "in the same category" as its business in Turkey, India, Russia, and Brazil, where weakened currencies caused Apple's FQ4 2018 revenue to decelerate, *see* MSJ at 8.  That statement is not about the XR or XR demand, nor could it have been, given that the XR had not even launched in Turkey and Brazil when Mr. Cook made the statement. *See* Parekh Decl. ¶ 7.  As noted, the XR initially underperformed *globally*—not only in China, *see* Cook Decl. ¶ 31—and so that underperformance cannot be used to show that Mr. Cook misrepresented "the impact of slowing economic conditions in China," Opp. at 1.  Rather, it confirms that the XR's initial underperformance was "a product-specific issue, not a region-specific issue." Parekh Decl. ¶ 11.  And, in any event, Plaintiff *admits* that the lower initial XR demand was fully incorporated into Apple's FQ1 2019 revenue guidance. *See* Opp. at 1, 19; Dkt. No. 323-3 at 13 (PAF #57).

8

9

10

11

12

13

14

15

16

17

18

19

20

Plaintiff also attempts to manufacture a dispute as to the accuracy of the guidance when issued. *See* Dkt. No. 323-3 at 13-15.  But Plaintiff has conceded that it does not allege that the guidance was "actionable, materially false, or misleading," Dkt. No. 279 at 9, and has even filed a *Daubert* motion that seeks to exclude evidence about the guidance because "Plaintiff does not

21

22

23

24

---

[1] Plaintiff's conclusory objections to Defendants' exhibits are without merit. *See* Opp. at 12 n.9. Defendants' judicially noticeable exhibits are admissible for the purposes requested, *see* RJN; Reply ISO RJN, and Defendants' expert opinions are admissible in their entirety, *see* Dkt. No. 318.  Defendants' internal document exhibits are admissible as business records, *see* Goldberg Decl. ¶¶ 3-4.  Without waiving any additional objections, Defendants object to the following exhibits: PEx. 38 is hearsay as wrongly attributed to Mr. Cook, *see* PEx. 86 at 197:9-16; PExs. 126, 133 are hearsay as news articles offered for the truth of the matters asserted; PEx. 51 is irrelevant and likely to mislead a jury, *see infra* at 5; and PExs. 63, 94, 124-25, 128, 130-31 are hearsay, irrelevant, and unduly prejudicial, *see* Defs.' Opp. to PRJN.

25

26

27

28

REPLY ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 4:19-CV-02033-YGR

allege that the 1Q19 revenue guidance was … false [or] without reasonable basis," Dkt. No. 301 at 3; *id.* at 4 (Plaintiff does "***not*** [allege] that Apple's 1Q19 revenue guidance or forecast was false." (emphasis in original)).  Given those concessions and Defendants' undisputed evidence about the guidance, there can be no genuine dispute that the guidance was accurate when issued.

In any event, Plaintiff's insistence that the guidance was "not accurate" because Apple missed its projections two months later, *see* Dkt. No. 323-3 at 13, fails as a matter of law, *see In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 389 (9th Cir. 2010) ("[T]he fact that Oracle's forecast turned out to be incorrect does not retroactively make it a misrepresentation.").  Plaintiff cannot, as it must, cite any *contemporaneous* evidence to show that the guidance was false, misleading, or without reasonable basis *when issued*.  Nor does Plaintiff dispute the evidence establishing that the dramatic deceleration in Apple's business in China that ultimately caused the revenue shortfall arose *after* the guidance was issued.  *See* UF #21-23, 26; MSJ at 10-12; Ex. 91 ¶¶ 13-84; Ex. 94 ¶¶ 17-26, 34-46; Ex. 100 ¶¶ 51-58; Ex. 106 ¶¶ 9-42; PEx. 86 at 224:23-25, 225:3-5; PEx. 88 at 149:6-150:7, 238:18-239:1.  Moreover, while Plaintiff complains that the guidance failed to "disclose critical, adverse facts," Dkt. No. 323-3 at 13, Plaintiff simultaneously concedes (and Defendants agree) that the guidance *incorporated* those same adverse facts, and was reduced prior to November 1, 2018 *because of* them, *id.* at 21 (PAF #57); Opp. at 1, 19.  Plaintiff may have wanted more detail, but Apple "had no duty to disclose every problem, challenge and frustration its officers encountered in preparing the forecasts," *In re Cypress Semiconductor Sec. Litig.*, 891 F. Supp. 1369, 1376 (N.D. Cal. 1995), *aff'd*, 113 F.3d 1240 (9th Cir. 1997), or "every [] event, current or prospective," that might have an effect on the accuracy of the forecast, *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 516 (9th Cir. 1991).

Similarly, Plaintiff purports to dispute whether Apple was on track to meet the concededly accurate FQ1 2019 guidance on the day it was issued, November 1, 2018.  *See* Dkt. No. 323-3 at 14.  Beyond unsupported argument,[2] Plaintiff's only "evidence" for its position is an October 31,

---

[2] Plaintiff's argument that Apple was 21% below its China forecast by "*mid-November*" 2018, *see* Opp. at 20 n.16, is unavailing.  First, Apple's performance in China as of "mid-November" 2018 is not indicative of whether Apple was on pace to meet its guidance as of *November 1*, 2018, the date it was issued.  Second, Plaintiff's argument is based on the unsupported premise that Apple's "internal forecast as of November 1, 2018 was Apple's Week 4 forecast, revised on or around

2018 email from an "Apple executive" that purportedly shows guidance was still in flux, *id.* (citing PEx. 51), but Plaintiff misrepresents the email, which was about cost reductions, not revenue, *see* PEx. 88 at 201:2-202:1, 207:10-15.  In any event, the guidance was finalized after further revisions on November 1, 2018, so any purported evidence of "inaccuracy" before then is not relevant.  *See* Opp. at 6 (citing PExs. 56, 57).  Bottom line, Plaintiff does not challenge or dispute the evidence that Apple's internal forecasts on November 1, 2018 were entirely consistent with—and well within—the $89 to $93 billion revenue guidance range that Apple disclosed to the public that day.  *See* Ex. 7 at 5; Maestri Decl. ¶ 11-13; MSJ at 10-11.

In sum, Plaintiff's attempt to manufacture triable issues with unsupported arguments and immaterial facts is unavailing.  There is no *genuine* dispute of any *material* fact.

## III.  ARGUMENT

### A.  There Is No Triable Issue Regarding Falsity

#### 1.  The Challenged Statement Was An Objectively Accurate And Honestly Held Opinion Supported By Undisputed Historical Facts

As Defendants' Motion shows, there is no triable issue with respect to falsity because the undisputed evidence establishes that Mr. Cook's Challenged Statement was an objectively true and honestly held opinion that was supported by undisputed historical facts.  *See* MSJ at 13-15.[3]  Specifically, that evidence shows that Mr. Cook gave his "informed opinion that currency pressures set China apart from [the] other emerging markets in terms of [Apple's] revenue growth in FQ4 2018."  UF #2; Cook Decl. ¶ 24.  He knew that Wamsi Mohan of BofA had recently published "concerns" about "China deceleration and FX issues," noting that during "the past cycle of a strengthening dollar," Apple's "China sales declined 24%," UF #1; Cook Decl. ¶¶ 5-6,

---

October 28-October 30, 2018."  *Id.*  But this is contradicted by Plaintiff's own assertion that "Defendants *again* cut Apple's companywide revenue outlook by another $2.6 billion" on November 1, 2018. *Id.* at 6.  Indeed, the undisputed *evidence* shows Apple used its Week 5 (*not* Week 4) forecast for guidance, *see* Parekh Decl. ¶ 20 (citing Ex. 16), Ex. 94 ¶ 35, and so *that* is the relevant forecast against which to measure Apple's post-November 1 performance.  And the undisputed *evidence* shows that iPhone demand in China *exceeded* expectations as of early- to mid-November 2018 before underperforming in December 2018.  Parekh Decl. ¶¶ 20-31.
[3] Contrary to Plaintiff's suggestion, *see* Opp. at 15, the Court did not rule on this question at the pleading stage, but even if it did, "the Court is not bound by th[at] decision on th[is] motion," *Josef K. v. Cal. Physicians' Serv.*, 477 F. Supp. 3d 886, 902 (N.D. Cal. 2020).

1    so when Mr. Mohan asked about deceleration in emerging markets, including China, Mr. Cook:

2    (i) first discussed the "currency headwind data" in his Q&A Prep Document, which showed that

3    in FQ4 2018 Apple's revenue growth had slowed in Turkey, Russia, India, and Brazil because

4    their "currencies ha[d] weakened" against the dollar; and (ii) then opined that he "would not put

5    China in that category" of markets because the renminbi had remained flat against the dollar, and

6    Apple's revenue in China grew 16% YoY in FQ4 2018, UF #2, #4; Cook Decl. ¶¶ 12-14, 22-25.

7            Plaintiff responds that Mr. Cook's partial use of the present tense *alone* "evidences that he

8    … was talking about Apple's current business conditions."  Opp. at 13.   But Mr. Cook's

9    uncontroverted testimony is that because "the purpose of the FQ4 2018 Call was to discuss

10   Apple's results for FQ4 2018 and fiscal 2018 year-end," his answer to Mr. Mohan was "about

11   Apple's business in FQ4 2018 and the year that ended on September 29, 2018."   Cook Decl.

12   ¶ 25.[4]   Plaintiff has admitted that the "accuracy" of what Mr. Cook intended to convey "is not at

13   issue," Dkt. No. 301 at 6-7 n.9, and also fails to offer any evidence to dispute Mr. Cook's

14   testimony about what his Challenged Statement was meant to be about.  At most, Plaintiff calls

15   Mr. Cook's testimony "unpersuasive" because "[d]uring Cook's seven-hour deposition, he never

16   referenced the purported comparison among emerging markets on the basis of currency."  Opp. at

17   13-14.  But the reason for that is remarkably simple: *Plaintiff's counsel never asked Mr. Cook*

18   *about the Challenged Statement.   See generally* PEx. 86.   Indeed, even when Mr. Cook

19   volunteered that his Challenged Statement "was made in regards to China's performance in Q4,"

20   Plaintiff's counsel *did not ask a single follow-up question.  Id.* at 13-14.   Having not even

21   bothered to ask Mr. Cook anything about the Challenged Statement, Plaintiff cannot now, without

22   *any* evidence, attempt to impugn his sworn testimony about the statement as "shifting" and "self-

23   serving."  Opp. at 13-14; *see Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001)

24   ("A party opposing summary judgment may not simply question the credibility of the movant").[5]

---

25   [4] Plaintiff's claim that "Mohan asked Cook to discuss the current state … of Apple's business in
     China," Opp. at 13, is false, *see* Ex. 3 at 7.

26   [5] Plaintiff calls Mr. Cook's testimony "absurd" because Mr. Mohan asked about Apple's

27   "trajectory," which Plaintiff claims is defined as a "current path or progression."  Opp. at 14
     (citing https://www.merriam-webster.com/dictionary/trajectory).  In fact, the dictionary does *not*

28   use the word "current," because "trajectory" can readily refer to the past, *e.g.*, "the dollar was on
     an upward trajectory last year."

Simply put, Plaintiff has offered nothing to dispute Mr. Cook's testimony that the Challenged Statement was his honestly held opinion.  And the language that he used makes clear that he was providing his informed *belief* about the categories of Apple's emerging market business in FQ4 2018.  *See* Ex. 3 at 7 ("*the way that I see these*[]"; "*I don't see it as*"; "*I would not put*" (emphases added)).  Because there is no evidence that Mr. Cook did not honestly hold that belief (*e.g.*, that he *would have* put China "in that category" of emerging markets that were materially decelerated in FQ4 2018 by currency fluctuations), or that his belief was objectively untrue (*e.g.*, that China in fact belonged in that category of FQ4 2018 emerging markets), his Challenged Statement is legally inactionable.  *See* MSJ at 15 (citing *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017)).  Moreover, as the Motion shows, even if Mr. Cook's statement concerned Apple's business as of November 1, 2018 (and it did not), it would still be true, because China's currency remained flat against the dollar through October 2018.  *See* MSJ at 18.  Plaintiff responds that *other* emerging markets' currencies had shifted against the dollar by that point, *see* Opp. at 14, but that is beside the point, as Mr. Cook is not alleged to have misrepresented Apple's business in those markets.

To the extent Plaintiff asserts that Mr. Cook's opinion was misleading by omission, *see* Opp. at 16, Plaintiff must present evidence calling into question "*the basis* for [Mr. Cook's] opinion … *whose omission* makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context," *Align*, 856 F.3d at 615 (emphases added) (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 194 (2015)).  Plaintiff offers no evidence on this point because Mr. Cook *did* provide the basis for his opinion.  Indeed, he discussed his "perspective in [] some detail," explaining how weakened currencies had affected Apple's revenue growth in emerging markets other than China negatively, such that "India in Q4 was flat," and "Brazil was down somewhat compared to the previous year," whereas "business in China was very strong last quarter."  Ex. 3 at 7.  "[T]o avoid exposure for omissions … [a defendant] need only divulge an opinion's basis," *Omnicare*, 575 U.S. at 195, and so, even under an omission theory, the Challenged Statement is not actionable.

Furthermore, the undisputed evidence establishes that Mr. Cook's opinion "fairly

1   align[ed] with the information in [his] possession at the time" of Apple's FQ4 2018 Call, *see id.*

2   at 189, which was the accurate historical data contained in his Q&A Prep Document, *see* MSJ at

3   8-9; Cook Decl. ¶ 10.   Because Mr. Cook's opinion that he "would not put China in that

4   category" had a reasonable basis and was consistent with the data available to him, Defendants

5   are entitled to summary judgment.  *See* MSJ at 13-14; *In re Oracle*, 627 F.3d at 390-91.

6          Finally, Plaintiff offers no viable response to Defendants' separate points that: (i) accurate

7   statements about past performance (such as the Challenged Statement) are not actionable even if

8   the past performance is unrepresentative of what was actually occurring at the company, because

9   companies are not required to provide intra-quarter updates, disclose internal forecasts, or caution

10  that future performance may not be as bright as past performance; and (ii) the alleged omissions

11  about which Plaintiff complains regarding the iPhone XR's initial demand, lowered production

12  targets for the XR, or lower internal forecasts for China sales in FQ1 2019, do not render the

13  Challenged Statement misleading because they do not contradict, nor are they inconsistent with,

14  Mr. Cook's opinion about the impact of currency fluctuations on Apple's revenue growth in

15  China and other emerging markets in FQ4 2018.  *See* MSJ at 14-15.

16                **2.**      **Analyst Reports Independently Establish The Absence Of Falsity**

17         The undisputed evidence also demonstrates that professional market analysts—and by

18  extension, investors—were not misled by the Challenged Statement into thinking that, as of

19  November 1, 2018, Apple's business in China was doing great and was not experiencing any

20  pressure or headwinds, as Plaintiff claims.  *See* MSJ at 16-19.  Plaintiff responds that, because

21  Mr. Cook's answer to Mr. Mohan was partially couched in the present tense, "market analysts

22  digested Cook's misrepresentations as concerning Apple's current business condition, just as

23  Plaintiff has alleged."  Opp. at 2.  But the *evidence* proves otherwise.

24         As Defendants' Motion shows: (i) none of the analyst reports published from November

25  1-4, 2018 reported Mr. Cook as having given an intra-quarter update on Apple's performance in

26  China in FQ1 2019; and (ii) the analysts who referenced the Challenged Statement reported it (in

27  word or context) as concerning Apple's FQ4 2018.  *See* MSJ at 9-10, 16-20; Ex. 97 ¶¶ 61-69;

28  Exs. 46-83; UF #10-11.   Plaintiff cites a handful of sources that purportedly dispute those

1  conclusions, *see* Opp. at 16, but as Dr. Brett Trueman notes, *see* Exs. 97 ¶¶ 61-66, Plaintiff's cited

2  sources simply use the present tense when discussing Apple's *FQ4 2018* results, *see* PExs. 64, 67,

3  70, 117, or are not analyst reports at all, *see* PExs. 63 ("sales commentary" that "should not be

4  regarded as a research report"),[6] 116.  In any event, even if Plaintiff can cite a handful of sources

5  that arguably support its position, "these reports would not allow a jury reasonably to render a

6  verdict in [its] favor in light of the agglomeration of evidence supporting a contrary conclusion."

7  *In re Oracle*, 627 F.3d at 393.  The "overwhelming evidence renders unjustifiable an inference

8  that Plaintiff['s] [handful of] reports reflect the market's consensus."  *Id.* (affirming summary

9  judgment even though "Plaintiffs did find two analyst reports" supporting their position).

10  　　　Plaintiff's assertion that analysts misunderstood Mr. Cook to say that there is no pressure

11  on Apple's business in China, *see* Opp. at 16, fares even worse.  Nearly half of the analysts who

12  published reports in the days after the FQ4 2018 Call, including Mr. Mohan himself, reported

13  ongoing pressure on Apple's business in China, UF #14, and *not one* of them reported Mr. Cook

14  as saying anything like "there is no pressure on Apple's business in China," *see* UF #13, which

15  would have been newsworthy if he had, *see* Ex. 96 ¶¶ 9-11; Ex. 97 ¶ 27.   Citing *Provenz v.*

16  *Miller*, 102 F.3d 1478 (9th Cir. 1996), Plaintiff argues that the Court cannot draw inferences in

17  Defendants' favor from what analysts "do not say."  *See* Opp. at 16.  But *Provenz* is a case about

18  the "truth-on-the-market" affirmative defense, where the Ninth Circuit found that the analyst

19  reports relied on by the defendants to prove the defense did not "'effectively counterbalance[]'

20  defendants' false and misleading statements," because there was "no mention in the reports of"

21  the allegedly omitted adverse facts.  102 F.3d at 1493.  Defendants here are not relying on analyst

22  reports to prove a "truth on the market" defense; they are relying on a voluminous body of

23  contemporaneous analyst reports to show that analysts (and thus the market) did not interpret the

24  Challenged Statement in the way that Plaintiff alleges.  And courts, including the Ninth Circuit,

25  have held that analyst reports may be used for this very purpose.  *See* MSJ at 16 (citing cases).[7]

---

26  [6] Notably, even this "sales commentary" interpreted the Challenged Statement just as Mr. Cook

27  intended it, reporting that "AAPL would \*not\* put China in the weaker EM bucket above *given very strong growth +16% last Q*."  PEx. 63 at 557 (emphasis added).

28  [7] Plaintiff also wrongly claims that Defendants cite Apple's "risk factors section of its FY 2018 Form 10-K as an adequate disclosure of the truth." Opp. at 17 n.12.  In fact, Defendants cite the

1   Plaintiff also argues that several articles published after the Class Period, in January 2019,

2   purportedly "confirm[] that Cook's November 1 statement created a false impression."  Opp. at

3   16 (citing PEx. 94, 124, 128, 130, 135).  But these after-the-fact articles do not evidence "the

4   market's *contemporaneous* response to the [Challenged Statement]."  *Mass. Ret. Sys. v. CVS*

5   *Caremark*, 716 F.3d 229, 243 (1st Cir. 2013) (emphasis added).  Because these articles were

6   issued *after* Apple disclosed its guidance miss, they effectively "judg[e] [Mr. Cook's] statements

7   on how things actually turned out subsequently."  *In re Leapfrog Enters., Inc. Sec. Litig.*, 200 F.

8   Supp. 3d 987, 1005 (N.D. Cal. 2016).  Tellingly, not one of Plaintiff's post-Class Period sources

9   reported a mistaken impression from Mr. Cook's statement at the time he made it months earlier.

10   Lastly, relying on *Fecht v. Price Co.*, 70 F.3d 1078 (9th Cir. 1995), Plaintiff argues that

11   regardless of Defendants' overwhelming analyst evidence, "Defendants' concession that 'Cook

12   used a combination of past- and present-tense language' in responding to Mohan is sufficient on

13   its own to deny the MSJ as to falsity."  Opp. at 13.  But *Fecht* merely stands for the unremarkable

14   proposition that "only if the adequacy of [a] disclosure or the materiality of the [challenged]

15   statement is 'so obvious that reasonable minds [could] not differ' are these issues 'appropriately

16   resolved as a matter of law.'"  70 F.3d at 1081.  Again, Defendants are *not* making a truth-on-the-

17   market argument, nor are they disputing at this stage the "materiality" of the Challenged

18   Statement.  Rather, Defendants have presented overwhelming, unrebutted evidence showing that

19   analysts—and thus the market—did not interpret the Challenged Statement as Plaintiff alleges.

20   ### 3.   The Undisputed Fact That Apple's FQ1 2019 Guidance Was Accurate
21   As Of November 1, 2018 Further Confirms The Absence Of Falsity

22   Though Plaintiff now tries to retract its prior concessions regarding Apple's FQ1 2019

23   revenue guidance, as discussed above and demonstrated in Defendants' Motion, there is no

24   genuine dispute that: (i) the guidance incorporated all available, relevant information about

25   Apple's performance through October 2018 and presented an accurate, up-to-date view of its

26   ───────────────
risk factors to show that Apple warned, both before and during the FQ4 2018 Call, that its
27   business faced pressures in emerging markets. *See* MSJ to 20; Dkt. No. 92-1, Ex. 20 (FY 2017
Form 10-K) at 8 (same risk warning); Dkt. No. 92-1, Ex. 19 (FQ3 2018 Form 10-Q) at 37 (same).
28   The FQ4 2018 Call incorporated those risk factors, *see* Ex. 3 at 1, and the Challenged Statement
must be evaluated in light of those "hedges [and] disclaimers," *Omnicare*, 575 U.S. at 190.

1   forecast as of November 1, 2018; (ii) the guidance was consistent with contemporaneous internal

2   data and projections; (iii) Apple was on pace to meet the guidance as of November 1, 2018,

3   notwithstanding whatever pressure its business may have been experiencing in China at the time;

4   and (iv) the dramatic deceleration in Apple's business in China that ultimately caused the

5   guidance miss arose after November 1, 2018. *See supra* at 3-5; MSJ at 10-13, 17-19. Indeed,

6   Plaintiff's Opposition concedes that the guidance incorporated the allegedly omitted internal

7   adverse data. For example, it admits that, "[b]y November 1, 2018," Apple had "cut its 1Q19

8   China revenue outlook from 4% growth to -1% decline," and "cut production for the iPhone XR

9   by 34 million units," Opp. at 1, and that it was *those "negative trends … [that] caused* Apple to

10  materially reduce its 1Q19 overall companywide revenue outlook by $5.9 billion," *id.* at 19

11  (emphases added); *see also* Dkt. No. 323-3 (PAF #57).

12      These undisputed facts doom Plaintiff's lawsuit.  For a statement to be actionably

13  misleading, "it must affirmatively create an impression of a state of affairs that differs in a

14  material way from the one that actually exists." *Brody v. Transitional Hosp. Corp.*, 280 F.3d 997,

15  1006 (9th Cir. 2002).  The FQ1 2019 guidance accurately disclosed Apple's state of affairs as of

16  November 1, 2018.  The Challenged Statement was not inconsistent with the guidance and, as

17  noted above, Apple "had no duty to disclose every problem, challenge and frustration its officers

18  encountered in preparing the forecast[,]" *In re Cypress*, 891 F. Supp. at 1376, or "every corporate

19  event, current or prospective," that might have some effect on the forecast, *In re Convergent*, 948

20  F.2d at 516.  Thus, the Challenged Statement could not have affirmatively created an impression

21  of a state of affairs that differed in a material way from the one that actually existed at the time.

22  *See* MSJ at 17-19; *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) (statements were not

23  misleading because the underlying "circumstances [were] not inconsistent with the statements").

24      **B.      There Is No Triable Issue Regarding Scienter**

25      Defendants' Motion also demonstrates that there is no evidence from which to conclude

26  that Mr. Cook (and by extension Apple) acted with scienter.  There is no evidence of an intent or

27  motive to mislead investors, particularly when the alleged "truth" would be revealed two months

28  later.  *See* MSJ at 21-24.  Mr. Cook did not sell any Apple stock during the Class Period, and

1  Apple itself repurchased nearly $2 billion of its own stock at allegedly inflated prices and lowered

2  its guidance range (which disappointed investors) *because of* the business pressures that Plaintiff

3  claims were concealed.  *Id.*  These actions are the antithesis of fraud.

4   Plaintiff's only response is that Mr. Cook's knowledge of certain allegedly undisclosed

5  adverse facts about Apple's business in October 2018, *alone*, establishes his scienter.  *See* Opp. at

6  21-22.[8]  Plaintiff is wrong.  Even putting aside the fact that those adverse facts did not contradict

7  or undermine the accuracy of the Challenged Statement, Plaintiff misconstrues the relevant

8  standard for scienter.  Plaintiff's argument is founded on the following quotation from *In re Tesla,*

9  *Inc. Securities Litigation*: "When the defendant is aware of the facts that made the statement

10  misleading, 'he cannot ignore the facts and plead ignorance of the risk.'"  2022 WL 1497559, at

11  *15 (N.D. Cal. Apr. 1, 2022) (citations omitted).  But Plaintiff ignores the very next sentence that

12  follows that quotation: "Stated another way, *if no reasonable person could deny that the*

13  *statement was materially misleading*, a defendant with knowledge of the relevant facts cannot

14  manufacture a genuine issue of material fact merely by denying (or intentionally disregarding)

15  what any reasonable person would have known."  *Id.* (emphasis added, citation omitted).  Thus,

16  Plaintiff's own cited authority makes clear that a defendant's mere knowledge of the facts at issue

17  establishes scienter *only* "if no reasonable person could deny that the [challenged] statement was

18  materially misleading."  *Id.*  That is patently not the case here—to the contrary, the record here

19  overwhelmingly establishes that the Challenged Statement was *not* materially misleading.

20   To prove "deliberate recklessness," a plaintiff must present evidence showing that the

21  defendant knew of the danger of misleading investors, or that the danger of misleading investors

22  was "so *obvious*" that any reasonable person would have been aware of it; and that the alleged

23  omissions were highly unreasonable and involved "an extreme departure from the standards of

24  ordinary care."  *Align*, 856 F.3d at 619.  Thus, Plaintiff's argument that Mr. Cook's mere

25  "knowledge of the facts withheld amply establishes the necessary degree of scienter …

26  misconstrues the relevant inquiry.  The question is not merely whether [Mr. Cook] had

27 ─────
28  [8] Plaintiff notes that scienter should "[g]enerally" not be resolved by summary judgment, Opp. at 21 (citations omitted), but, of course, in appropriate cases like this one the Court can and should grant summary judgment on the issue of scienter, *see* MSJ at 21-24.

1  knowledge of the undisclosed facts; rather, it is the '*danger of misleading buyers* [that] must be
2  actually known or *so obvious* that any reasonable man would be legally bound as knowing."
3  *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 946 (7th Cir. 1989) (second emphasis added).  And
4  "[t]he record [here] does not contain any such showing of scienter."  *Id.* (affirming summary
5  judgment for defendant where the plaintiff made the same argument that Plaintiff makes here).

6       Plaintiff also claims that Mr. Cook's lack of insider trading (which means that he suffered
7  substantial losses when Apple's stock price declined) and Apple's massive stock buybacks at
8  allegedly inflated prices "simply do[] not negate scienter at summary judgment."  Opp. at 22 n.17.
9  But as multiple Ninth Circuit decisions confirm, "undisputed evidence [like the kind here] that
10  defendants were actually *harmed* by their alleged fraud often negates an inference of scienter and
11  supports entry of summary judgment for defendants."  *Schuster v. Symmetricom, Inc.*, 2000 WL
12  33115909, at *7 (N.D. Cal. Aug. 1, 2000), *aff'd*, 35 F. App'x 705 (9th Cir. 2002); MSJ at 21.
13  Moreover, Plaintiff fails to acknowledge the fact that Mr. Cook and Apple disclosed a guidance
14  range on November 1, 2018 that they knew would disappoint the market and cause Apple's stock
15  price to drop.  *See* MSJ at 21.  Nor does Plaintiff acknowledge the fact that Mr. Cook and Apple
16  did not wait until the release of Apple's FQ1 2019 financial results on January 29, 2019 to inform
17  the market about Apple's guidance miss, as they were permitted to do under SEC rules, but
18  instead proactively informed the market about the revenue shortfall almost a month early.  *Id.*
19  Simply put, Mr. Cook's and Apple's conduct was entirely inconsistent with scienter, which under
20  Ninth Circuit precedent, "completely dispel[s]" "[a]ny remote inference of bad faith."  *In re*
21  *Apple Computer Sec. Litig.*, 886 F.2d 1109, 1118 (9th Cir. 1989).

22       At bottom, there is zero evidence in the record that Mr. Cook intended or had any motive
23  to defraud investors, that he subjectively appreciated any danger of misleading investors and
24  consciously disregarded that danger, or that his Challenged Statement was the product of an
25  "extreme departure from the standards of ordinary care" and presented "a danger of misleading"
26  investors that was "so obvious" that he must have been aware of it.  *See Align*, 856 F.3d at 619;
27  MSJ at 21-23.  How could the Challenged Statement constitute an "extreme departure from the
28  standards of ordinary care" and present a danger of misleading that was "so obvious," if the

1    undisputed evidence establishes that the statement was an objectively true and honestly held

2    opinion that was interpreted by the analyst community as Mr. Cook intended it? Indeed, even

3    ignoring that overwhelming evidence, and even if there were a triable issue on falsity (and there is

4    not), how could the danger of misleading investors be "so obvious" if, *at worst*, the Challenged

5    Statement is merely subject to competing plausible interpretations and reasonable minds could

6    differ about whether the statement was misleading?  The question answers itself.

7         Critically, the Court recognized at the pleading stage that Plaintiff would be unable to

8    prove scienter if the evidence ultimately showed that "the risks did not materialize until

9    November and December [2018], and defendants simply underestimated their eventual impact."

10   MTD Order at 21.  That is precisely what the undisputed evidence shows, and what is established

11   by Plaintiff's repeated tacit concessions that Apple's FQ1 2019 revenue guidance was accurate as

12   of November 1, 2018.  *See supra* at 3-5; MSJ at 23.  Since there is no genuine dispute that the

13   dramatic deceleration in Apple's business in China that ultimately caused Apple's revenue

14   shortfall in FQ1 2019 arose *after* November 1, 2018, there is no basis from which to conclude that

15   Mr. Cook acted with deliberate recklessness when he made the Challenged Statement.

16        Lastly, Plaintiff contends that Mr. Cook's "credibility" must be "assessed at trial," Opp. at

17   22, but Ninth Circuit law is clear that an uncontroverted affidavit of good faith like Mr. Cook's is

18   sufficient to grant summary judgment on the issue of scienter, *see Kaplan v. Rose*, 49 F.3d 1363,

19   1380 (9th Cir. 1994) ("[T]hese affidavits, uncontradicted by any evidence of insider trading or

20   other evidence of scienter, are enough to justify granting … summary judgment on the issue of

21   their scienter."); *In re Apple*, 886 F.2d at 1117-18 (affirming summary judgment where "[e]ach of

22   Apple's officers filed an affidavit stating that he acted in good faith belief that his optimistic

23   statements were accurate and not misleading" and they "retained the great bulk of their Apple

24   holdings").  Given the absence of obvious falsity, or any evidence of an intent or motive to

25   defraud, Plaintiff cannot avoid summary judgment by questioning Mr. Cook's credibility.

26        **C.    There Is No Triable Issue Regarding Loss Causation**

27        The Opposition talks past Defendants' loss causation argument.  *See* Opp. at 22-23.

28   Defendants do not argue that the alleged January 2, 2019 corrective disclosure does not "relate to

1  the same subject matter as the alleged misrepresentation." *Id.* at 23.  Rather, Defendants argue

2  that the revenue shortfall that caused the stock price drop underpinning this lawsuit was due to

3  intervening causes unrelated to fraud.  *See* MSJ at 24.  Plaintiff cannot prove loss causation if that

4  stock price drop was due to other intervening causes, such as changed economic circumstances or

5  new facts, conditions, or other events.  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804,

6  812-13 (2011).  Because there is no genuine dispute that Apple was on pace to meet its FQ1 2019

7  revenue guidance as of November 1, 2018, *see supra* at 3-5; MSJ at 10-13, 24, the revenue

8  shortfall announced on January 2, 2019 was *necessarily* due to intervening causes, not fraud.[9]

9  **D.   Mr. Maestri Is Independently Entitled To Summary Judgment**

10  Plaintiff offers no viable response to Defendants' showing that Mr. Maestri is entitled to

11  summary judgment on Plaintiff's Section 20(a) claim.  *See* MSJ at 25; Opp. at 24-25.  Mr.

12  Maestri's testimony is that he understood Mr. Cook to be distinguishing Apple's FQ4 2018

13  performance in China from Apple's FQ4 2018 performance in other emerging markets, and that

14  he believes the Challenged Statement was supported by facts, true, and not misleading.  *See*

15  Maestri Decl. ¶¶ 6, 8.  Plaintiff offers no evidence to contradict that testimony, or Mr. Maestri's

16  testimony that he "never induced, directly or indirectly, Mr. Cook's Challenged Statement." *Id.*

17  ¶ 9.  While Mr. Maestri prepared for Apple's FQ4 2018 Call with Mr. Cook, there is no evidence

18  that he "authorized [the allegedly] misleading … statements to the press that were allegedly

19  fraudulent."  *S.E.C. v. Todd*, 642 F.3d 1207, 1224 (9th Cir. 2011).  Under Ninth Circuit precedent,

20  Mr. Maestri's "uncontroverted statement that he never directed anyone to make statements that he

21  knew to be misleading, and that to his knowledge all the information made public was true, is

22  enough to shield him from secondary liability." *Kaplan*, 49 F.3d at 1383.

23  **IV.   CONCLUSION**

24  The Court should grant Defendants' Motion.[10]

---

[9] Because Plaintiff "does not proceed under [a materialization of the risk] theory," Dkt. 301 at 38 n.30, it cannot argue that October "conditions" materialized to cause the miss, *see* Opp. at 24.

[10] The Court should reject Plaintiff's conclusory request under Fed. R. Civ. P. 56(d).  *See* Opp. at 25 n.19; Dkt. No. 322-18 ¶ 28.  Plaintiff fails to identify "the specific facts that [the disputed documents] would reveal, and explain why those facts would preclude summary judgment.'" *Wong v. Wells Fargo Bank, N.A.*, 2021 WL 4243398, at *4 (N.D. Cal. Sept. 17, 2021).

1

Dated:  November 17, 2022

2

Respectfully submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP

3

_/s/ James N. Kramer_

4

JAMES N. KRAMER
Attorneys for Defendants Apple Inc., Timothy
D. Cook, and Luca Maestri

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28