ROBBINS GELLER RUDMAN
    & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
KENNETH J. BLACK (291871)
HADIYA K. DESHMUKH (328118)
JACOB G. GELMAN (344819)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com
jgelman@rgrdlaw.com
        – and –
MARK SOLOMON (151949)
JASON A. FORGE (181542)
RAPHAELLA FRIEDMAN (323324)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
jforge@rgrdlaw.com
rfriedman@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re APPLE INC. SECURITIES LITIGATION | Case No. 4:19-cv-02033-YGR |
| | CLASS ACTION |
| This Document Relates To: | REPLY IN SUPPORT OF LEAD PLAINTIFF'S OMNIBUS MOTION TO EXCLUDE OPINION TESTIMONY OF DEFENDANTS' PROPOSED EXPERTS |
| ALL ACTIONS. | |
| | DATE:        TBD<br>TIME:        2:00 p.m.<br>CTRM:        1, 4th floor<br>JUDGE:      Hon. Yvonne Gonzalez Rogers |

1

## TABLE OF CONTENTS

2
**Page**

3 I.      INTRODUCTION ................................................................................................................1

4 II.     ARGUMENT ......................................................................................................................1

5       A.   Yang's Opinions Are Not Relevant and Unreliable, Impermissibly Invade
             the Province of the Jury, and Should Be Excluded...................................................1

6
7            1.   Yang's False Formulation of Plaintiff's Allegations Fails to Yield
                  Admissible Opinions..........................................................................................1

8            2.   The Law Does Not Permit Expert Opinions on Whether the
                  Alleged Misrepresentation Was True or Accurate.............................................2
9

10           3.   Yang's Proposed Testimony that the December 1, 2018 Arrest of
                  Huawei's CFO Hurt Sales Is Irrelevant and Has No Analytical or
                  Evidentiary Basis ..............................................................................................3
11

12           4.   Yang's Opinion that Changes to Chinese Macroeconomic
                  Conditions Were Unexpected Fails to Meet Rule 702......................................4

13      B.   Gauna's Opinions Are Irrelevant, Unfairly Prejudicial, Misleading, and
             Not Based on Any Reliable Methodology .................................................................5
14

15           1.   Gauna's Opinions Regarding Disclosure Requirements Are
                  Irrelevant and Constitute Improper Expert Legal Testimony ...........................5

16           2.   Gauna's Opinions Regarding Apple's Forecasting Process Are
                  Irrelevant, Misleading, and Confuse the Issues ...............................................5
17

18           3.   Defendants Agree Gauna Did Not Apply Any Methodology in
                  Forming His Opinions........................................................................................6

19           4.   Defendants Have Not Shown Gauna's Opinions About What He
                  Understood Cook to Say and What the Market Heard Cook Say
20                Are Proper Subjects of Expert Testimony .........................................................7

21           5.   Since Plaintiff Has Not Alleged Cook Stated "There Was No
                  Pressure or Risks Related to Apple's Business in China," Gauna's
22                Opinions Are Irrelevant and Misleading............................................................8

23      C.   Trueman Offers No Expertise that Would Help the Jury and Seeks to Offer
             Irrelevant Testimony Based on a Flawed Methodology ...........................................9
24

25           1.   Trueman's Perception of What Analysts Understood Is Improper,
                  Irrelevant, and Unhelpful ..................................................................................9

26           2.   Defendants' Continued Mischaracterization of Plaintiff's Claims
                  Does Not Cure the Flaws in Trueman's Report...............................................10
27

28           3.   Trueman's Purported Methodology Is so Flawed It Fails Under
                  FRE 702 and Must be Excluded .......................................................................11

1

2                                                                          **Page**

3

    D.   Poer's Comingled Summary Witness and Expert Opinions Should Be
         Excluded as Irrelevant, Unhelpful, and Misleading................................................12

         1.   Poer Should Be Excluded as a Summary Witness Because His
              Credibility Will Be Substituted for that of the Evidence..........................12

         2.   Poer's Failure to Separate His Summary Witness Testimony from
              His Expert Opinions Will Confuse and Mislead the Jury..........................13

         3.   Poer's Failure to Disclose His Sources or to Describe How They
              Inform His Reports Requires Exclusion ....................................................14

         4.   Poer's Expert Opinions, Even Were They Distinct from His
              Summary Witness Testimony, Contradict the Facts and Relevant
              Theories of the Case and Will Mislead the Jury .......................................15

    E.   Grenadier's Rebuttal Should Be Excluded in Part as Irrelevant, Unhelpful,
         and Confusing ........................................................................................................17

         1.   Grenadier's Conditional Opinion Nos. 1-3 Should Be Excluded as
              Irrelevant, Unhelpful, and Confusing .......................................................17

         2.   Grenadier's Loss Causation Opinions Should Be Excluded as
              Irrelevant, Confusing, and Prejudicial ......................................................18

         3.   Grenadier's Damages Opinions Must Be Excluded as Irrelevant,
              Confusing, and Prejudicial.........................................................................19

    F.   Taylor's Report and Testimony Is Not Permissible Rebuttal ...............................19

    G.   The Court Should Strike the Trueman and Poer Declarations as Untimely
         Expert Testimony and as Over-Length Briefing...................................................20

III.   CONCLUSION.................................................................................................................20

1

## TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
  2020 WL 2553181 (S.D. Cal. May 20, 2020)......................................................9, 10

*Baker v. Chevron U.S.A. Inc.*,
  533 F. App'x 509 (6th Cir. 2013) ............................................................................20

*Baker v. Seaworld Ent. Inc.*,
  423 F. Supp. 3d 878 (S.D. Cal. 2019)......................................................................10

*Biotechnology Value Fund, L.P. v. Celera Corp.*,
  2015 WL 138168 (N.D. Cal. Jan. 9, 2015) ..............................................................12

*Buffin v. City & Cnty. of S.F.*,
  2019 WL 1017537 (N.D. Cal. Mar. 4, 2019)............................................................13

*Cisco Sys. v. Arista Networks*,
  2016 U.S. Dist. LEXIS 203865 (N.D. Cal. Nov. 16, 2016).......................................9

*Crow Tribe of Indians v. Racicot*,
  87 F.3d 1039 (9th Cir. 1996) .....................................................................................5

*CZ Servs., Inc. v. Express Scripts Holding Co.*,
  2020 WL 4518978 (N.D. Cal. Aug. 5, 2020) .....................................................15, 20

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)........................................................................................5, 11, 20

*Droplets, Inc. v. Yahoo! Inc.*,
  2022 WL 2670188 (N.D. Cal. Feb. 28, 2022) ..........................................................15

*Ferrari Club of Am., Inc. v. Bourdage*,
  2017 WL 1498080 (W.D.N.Y. Apr. 25, 2017)...................................................13, 14

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)................................................................................................4, 6

*Graystone Funding Co., LLC v. Network Funding, L.P.*,
  2022 WL 1063734 (D. Utah Apr. 8, 2022)...............................................................19

*Horman v. Sunbelt Rentals, Inc.*,
  2021 WL 5770271 (W.D. Wash. Dec. 6, 2021) .........................................................6

1

2                                                                                                    **Page**

3

4  *Huawei Techs., Co. v. Samsung Elecs. Co.,*
      340 F. Supp. 3d 934 (N.D. Cal. 2018) ...........................................................................2

5  *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.,*
      87 F. Supp. 3d 928 (N.D. Cal. Mar. 31, 2015) ...........................................................14

6

7  *In re Adobe Sys., Inc. Sec. Litig.,*
      787 F. Supp. 912 (N.D. Cal. 1992) .............................................................................10

8  *In re Alphabet, Inc. Sec. Litig.,*
      1 F.4th 687 (9th Cir. 2021) ...........................................................................................7

9

10 *In re Cryolife Inc. Sec. Litig.,*
      2005 WL 8155579 (N.D. Ga. June 17, 2005) ...............................................................3

11

12 *In re Leap Wireless Int'l. Inc.,*
      301 B.R. 80 (Bankr. S.D. Cal. Oct. 16, 2003) ...........................................................14

13 *In re Macbook Keyboard Litig.,*
      2022 U.S. Dist. LEXIS 34597 (N.D. Cal. Jan. 25, 2022) ..........................................19

14

15 *In re Robinhood Order Flow Litig.,*
      2022 WL 9765563 (N.D. Cal. Oct. 13, 2022) ...............................................................6

16

17 *In re Twitter, Inc. Sec. Litig.,*
      2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) ...............................................5, 6, 7, 10

18 *Krouch v. Wal-Mart Stores, Inc.,*
      2014 WL 5463333 (N.D. Cal. Oct. 28, 2014) ...............................................................7

19

20 *Lightfoot v. Georgia-Pacific Wood Prods., LLC,*
      2018 WL 4517616 (E.D.N.C. Sept. 20, 2018) ...........................................................20

21

22 *Lust By & Through Lust v. Merrell Dow Pharms. Inc.,*
      89 F.3d 594 (9th Cir. 1996) .....................................................................................4, 7

23 *Messick v. Novartis Pharms. Corp.,*
      747 F.3d 1193 (9th Cir. 2014) ......................................................................................6

24

25 *MicroStrategy Inc. v. Bus. Objects, S.A.,*
      429 F.3d 1344 (Fed. Cir. 2005) ....................................................................................4

26

27 *Nature's Plus Nordic A/S v. Nat. Organics, Inc.,*
      982 F. Supp. 2d 237 (E.D.N.Y. 2013) .......................................................................20

28

**Page**

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  2018 WL 6511146 (N.D. Cal. Dec. 11, 2018)................................................................8

*Otto v. LeMahieu*,
  2021 WL 1615311 (N.D. Cal. Apr. 26, 2021) .............................................................7

*S.E.C. v. Manouchehr Moshayedi*,
  2013 WL 12129282 (C.D. Cal. Nov. 20, 2013)........................................................7, 10

*Sanchez v. Jiles*,
  2012 WL 13005996 (C.D. Cal. June 14, 2012) ......................................................14, 15

*Shelton v. Air & Liquid Sys. Corp.*,
  2022 WL 2712381 (N.D. Cal. July 11, 2022)...............................................................20

*Smilovits v. First Solar, Inc.*,
  2019 WL 6875492 (D. Ariz. Dec. 17, 2019) ..........................................................7, 10

*Smilovits v. First Solar, Inc.*,
  2019 WL 7282026 (D. Ariz. Dec. 27, 2019) .......................................................2, 5, 8, 10

*Terhune v. Cooksey*,
  2022 WL 1644620 (W.D. Ky. May 24, 2022).................................................................15

*Trulove v. D'Amico*,
  2018 WL 1090248 (N.D. Cal. Feb. 27, 2018) ..............................................................13

*United States v. Cervantes*,
  2015 WL 7734281 (N.D. Cal. Dec. 1, 2015)..................................................................5

*United States v. Hanna*,
  293 F.3d 1080 (9th Cir. 2002) ......................................................................................9

*United States v. Leon-Reyes*,
  177 F.3d 816 (9th Cir. 1999) ......................................................................................12

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-5 ............................................................................................................................8

1

2                                                                                          **Page**

3

Federal Rules of Civil Procedure
   Rule 26 ..................................................................................................14, 20
   Rule 26(a)(2)(D) ...........................................................................................20
   Rule 26(a)(2)(D)(ii) .......................................................................................19
   Rule 30(b)(6) .................................................................................................13

Federal Rules of Evidence
   Rule 403 ...............................................................................................1, 5, 6
   Rule 702 ........................................................................................... *passim*
   Rule 702(b)-(d) .....................................................................................1, 6, 14

# I.      INTRODUCTION[1]

As set forth in Plaintiff's Motion, Defendants have failed to show that their experts, in whole or in part, are appropriately qualified and offer relevant and reliable opinions that will assist the jury.  Defendants' Opposition (ECF 318) ("Opposition" or "Opp.") demonstrates they view these foundational requirements as optional, and they make little effort to rebut Plaintiff's arguments.  For the reasons set forth in the Motion and this Reply, the Motion should be granted.

# II.      ARGUMENT

### A.      Yang's Opinions Are Not Relevant and Unreliable, Impermissibly Invade the Province of the Jury, and Should Be Excluded

#### 1.      Yang's False Formulation of Plaintiff's Allegations Fails to Yield Admissible Opinions

Defendants fail to substantively address Plaintiff's key challenge to Yang's "expert" opinions: that his "understanding" of the allegations are objectively flawed and thus result in opinions not tethered to the facts of *this case*.  FRE 702(d).  Yang incorrectly states Plaintiff's claim is Defendants made false and misleading statements on November 1, 2018, and Defendants "knew or must have known that its revenues in China were going to decline in the fourth quarter of 2018."  Ex. 1, ¶7.  Yang's report therefore focuses on factors that occurred *after* November 1, 2018, to support his position that Defendants did not know 1Q19 revenue in China would decline until after November 1, 2018.  But whether conditions in China deteriorated in the last two months of 2018 has no bearing on Defendants' liability for the misrepresentations and omissions made on November 1, 2018.  Yang's failure to analyze the facts of this case means that his opinions fail FRE 702(d) and should be excluded as prejudicial under FRE 403.

Defendants' Opposition nakedly asserts that Yang's opinions are relevant "to Defendants' defense" that business conditions "drastically deteriorated *after*" Cook made the November 1, 2018 statement.  Opp. at 18.  But that is not a defense to this case, since the basis of Plaintiff's

---

[1]      All terms not defined herein have the same meaning as in Lead Plaintiff's Omnibus Motion to Exclude Opinion Testimony of Defendants' Proposed Experts (ECF 301) ("Motion" or "Mot."). All "Ex. _" citations herein are to the Declaration of Shawn A. Williams in Support of the Motion (ECF 301-1) unless otherwise indicated.

1   claims has never been Apple "knew or must have known that its revenues in China were going to

2   decline in" calendar 4Q18.  *See Smilovits v. First Solar, Inc.*, 2019 WL 7282026, at *8 (D. Ariz.

3   Dec. 27, 2019) ("the Court must look to Plaintiff[], not Defendants, for the nature of their liability

4   case");[2] *see also* ECF 123 ("MTD Order") at 18-19 (scienter analysis).

5        Similarly, Defendants argue that "Yang's opinions on the accuracy of Mr. Cook's

6   statements regarding currencies in emerging markets are also probative of the objective

7   truthfulness of Mr. Cook's opinion that China did not belong in the category of other emerging

8   markets."  Opp. at 18.  First, the truth or accuracy of the existence of actual currency stability or

9   fluctuation in China is not relevant to Plaintiff's claims.[3]  Second, the only purpose these opinions

10   could serve is to improperly bolster the credibility of Cook's trial testimony about what he "meant"

11   by his November 1 statements, which is inappropriate.  If a jury finds Cook meant or intended to

12   convey a message about currency stability rather than economic conditions, there would be no

13   need to assess whether currency in China was in fact stable or fluctuating to determine liability.

14           **2.**       **The Law Does Not Permit Expert Opinions on Whether the Alleged Misrepresentation Was True or Accurate**

15        An expert is prohibited from giving an opinion as to the legal conclusion, *i.e.*, an opinion

16   on an ultimate issue of law, since that would not be helpful to the trier of fact, who must make that

17   determination.  FRE 702; *Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 992

18   (N.D. Cal. 2018).  Yang explains his assignment from Apple as follows: "I was asked whether Mr.

19   Cook's statements on November 1, 2018, in relation to emerging market countries and their

20   currencies were accurate."  Yang proposes to testify: "I have concluded that the statements made

21   by Mr. Cook on November 1, 2018 were accurate."  Ex. 1, ¶99.  Defendants also agree "'false and

22   deceptive'" are legal terms that define an element of Plaintiff's Exchange Act claims (Opp. at 19),

23

24

25   [2]    All citations and footnotes omitted and emphasis added unless otherwise indicated.

26   [3]    Cook himself may wish to testify he intended to convey an opinion about the stability of China's currency during 4Q18.  Of course, that testimony would contradict what Cook and his lawyers previously argued to the Court: "Read in context, Mr. Cook's statement plainly indicated that he did not put China – with its 16% growth in the previous quarter – in the same category as markets like Brazil or India that were down or flat in the previous quarter."  ECF 118 at 10.

27

28

1    however, they assert because the term "'accurate'" is not judicially defined Yang may testify as

2    such so long as he does not opine that: "Mr. Cook's statement was not 'false and misleading *under*

3    *the federal securities laws*.'" *Id.*  This contention is absurd and fails to acknowledge the obvious:

4    The opposite of "accurate" is "false" or "untrue."  *See* https://tinyurl.com/ybwmbysv.  It also fails

5    to recognize that Yang himself uses "accurate" as a synonym for "false and misleading under the

6    securities laws" when he explains: "I understand that plaintiffs in this matter . . . are alleging that

7    certain statements made by Timothy Cook, CEO of Apple Inc. ("Apple"), on November 1, 2018,

8    were *inaccurate*."  Ex. 1, ¶7.  By Yang's own reasoning, his opinion that Tim Cook's November

9    1, 2018 "statements were accurate" (*id.*, ¶86) is an improper legal conclusion and usurps the role

10   of the jury.

11       Defendants also mischaracterize *In re Cryolife Inc. Sec. Litig.*, 2005 WL 8155579, at *7

12   (N.D. Ga. June 17, 2005), where the court held it permissible for an expert to testify about the truth

13   or falsity of whether swabbing organ donors might produce false positives and thus limit the usage

14   of donated tissue samples.  That court made clear the expert was "not seeking to (and will not be

15   permitted to) testify" as to whether Defendants made statements that are "'false and

16   misleading under the federal securities laws,'" which, as explained above, Yang effectively seeks

17   to do here.  Yang's proposed testimony also does not have any scientific or specialized basis that

18   informed the court's decision in *Cryolife*.  *Id.* at *8 ("find[ing] that [expert] can assist the jury by

19   explaining exactly why Defendants' statement might be misleading *as a matter of science*").

20          **3.    Yang's Proposed Testimony that the December 1, 2018 Arrest**
               **of Huawei's CFO Hurt Sales Is Irrelevant and Has No**
21             **Analytical or Evidentiary Basis**

22       Defendants' Opposition does not breathe life into Yang's impermissible testimony

23   regarding the impact of the December 2018 arrest of Huawei's CFO on 1Q19 iPhone sales.  The

24   absence of any evidence to support Yang's *conclusion* that the December 2018 arrest had *any*

25   impact on actual sales, much less a "significant impact" requires exclusion under FRE 702.  Ex. 1,

26   ¶78.  The contemporaneous evidence from a percipient witness *in China* explicitly rejected that

27   conclusion, explaining: "*Against a backdrop of a softer economy and a more pessimistic view of*

28   *the future, I do think upgraders consider choices like Huawei and Xiaomi to be more value for*

1    ***money*.**  *See* Ex. 11 at APL-SECLIT_00163170; *see also Lust By & Through Lust v. Merrell Dow*

2    *Pharms. Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) ("the district court can exclude the opinion if the

3    expert fails to identify and defend the reasons that his conclusions are anomalous").

4        These deficiencies go to the admissibility Yang's testimony not just weight.  Opp. at 20

5    n.13.  While "an expert need not consider every possible factor[, a]t the same time, the district

6    court has the responsibility to exclude an expert opinion that overlooks factors that render the

7    testimony unreliable and/or speculative." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344,

8    1355-56 (Fed. Cir. 2005); *see also* Committee Note to Pending FRE 702 (pending amendment to

9    Rule 702 emphasizing that failure to provide sufficient evidentiary basis to support expert opinions

10   is highly relevant to their admissibility as opposed to just weight).

11       **4.**    **Yang's Opinion that Changes to Chinese Macroeconomic Conditions Were Unexpected Fails to Meet Rule 702**

12       Defendants do not cure the inadmissibility of Yang's testimony that macroeconomic

13   changes in China were "unexpected[]."  Ex. 1, ¶¶10-11.  His report provides no analysis on what

14   economic conditions were "expected" for calendar 4Q18 in China and how conditions in

15   November and December 2018 compared to those expectations, which the Opposition essentially

16   acknowledges. *See* Mot. at 9.  Even the data Yang purportedly relies on to illustrate what he calls

17   worsening conditions, (automobile sales for example), shows declining trends in China

18   ***throughout 2018***, and specifically from June 2018 forward – with November and December 2018

19   following the continuing declining trends. *See* Ex. 1, ¶37.  Even assuming *arguendo* that changes

20   in economic conditions in China during November and December 2018 were unexpected or even

21   relevant, Yang's report does not identify ***to whom*** these changes were unexpected, *i.e.*, Apple,

22   stock analysts, reasonable investors?  Defendants' Opposition admits that this information is

23   absent from the report, claiming it is obvious that Yang himself did not expect the changes in the

24   Chinese macroeconomic conditions in November and December 2018.  Opp. at 21 n.14.  But

25   whether Yang personally found deteriorating conditions in China unexpected has no bearing on

26   the alleged claims or defenses and is not helpful to the trier of fact.  These deficiencies are not

27   cured by Yang's "'experience.'"  Opp. at 21; *see Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146

28

1  (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to

2  admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

3       Further, Defendants do not even attempt to reconcile the contradictions Plaintiff exposed

4  between Yang's opinion and Grenadier's, who seeks to testify that declining conditions in the

5  smartphone market in China during November and December were not a surprise at all.  Mot. at

6  10 (citing ECF 197-2, ¶99) (discussing Grenadier's reference to October 2018 reports that the

7  smartphone market in China was declining and only going to slump further the rest of the year).

8      **B.**    **Gauna's Opinions Are Irrelevant, Unfairly Prejudicial, Misleading,**
        **and Not Based on Any Reliable Methodology**

9

10         **1.**    **Gauna's Opinions Regarding Disclosure Requirements Are**
            **Irrelevant and Constitute Improper Expert Legal Testimony**

11      Defendants admit that "the public company disclosure obligations [Gauna] discusses are

12 not at issue in this case."  Opp. at 17.  Thus, Gauna's opinions regarding SEC disclosure

13 requirements do not "'fit'" this case and are inadmissible.  *Daubert v. Merrell Dow Pharms., Inc.*,

14 509 U.S. 579, 591 (1993).  These opinions are inadmissible under FRE 403 as unfairly prejudicial,

15 confusing, and misleading.  *See United States v. Cervantes*, 2015 WL 7734281, at *4 (N.D. Cal.

16 Dec. 1, 2015).  Defendants' reliance on *In re Twitter, Inc. Sec. Litig.*, 2020 WL 9073168, at *9

17 (N.D. Cal. Apr. 20, 2020) (*see* Opp. at 8-9, 15-16), is misplaced; there the court excluded similar

18 testimony recognizing its minimal probative value where the SEC disclosure requirements opined

19 on "differ from the standards for disclosures under §10(b)."  *Twitter*, 2020 WL 9073168, at *9.

20 Defendants' claim that Gauna can testify as to law so long as that law is "not at issue in this case,"

21 is not persuasive.  Opp. at 17.  "'Experts "interpret and analyze factual evidence.  They do not

22 testify about the law."'"  *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996).

23         **2.**    **Gauna's Opinions Regarding Apple's Forecasting Process Are**
            **Irrelevant, Misleading, and Confuse the Issues**

24

25      Defendants' contention that the purported accuracy of Apple's revenue guidance – which

26 they missed by up to $9 billion – is central to their defense because they argued as much in their

27 motion for summary judgment (ECF 293) does not make it so.  *Smilovits*, 2019 WL 7282026, at

28 *8.  Plaintiff does not allege Apple's 1Q19 forecast was false, and it is not a defense to the claims

alleged.  Defendants have not shown that Gauna's testimony regarding Apple's forecasting process "'logically advances a material aspect of'" their case.  *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014).  Just as defendants in *In re Robinhood Order Flow Litig.*, 2022 WL 9765563, at *8 (N.D. Cal. Oct. 13, 2022), could not point to other purportedly accurate disclosures to render an omission non-actionable, Defendants cannot point to the guidance here.  Finally, Defendants do not attempt to explain how Gauna's opinions regarding Apple's forecasting survive FRE 403, which permits the Court to exclude misleading and confusing relevant evidence.

Defendants have not established that Apple's forecasting process is a proper subject of expert testimony.  *See* Mot. at 13 n.15.  "To the extent that [the expert's] opinions . . . simply repeat facts about which percipient witnesses will testify," they should be excluded.  *Horman v. Sunbelt Rentals, Inc.*, 2021 WL 5770271, at *1 (W.D. Wash. Dec. 6, 2021).  Defendants have introduced the same evidence in the form of declarations by percipient witnesses Cook, Maestri, and Kevan Parekh.  ECF 294, ¶31 (Cook); ECF 295, ¶¶10-14 (Maestri); ECF 296, ¶¶15-17 (Parekh).  For example, Gauna opines Apple's 1Q19 revenue guidance was "informed" and signaled risk via wide range.  Ex. 3, ¶¶51, 55.[4]  Maestri testified to the same facts.  ECF 295, ¶¶10, 12.

### 3. Defendants Agree Gauna Did Not Apply Any Methodology in Forming His Opinions

Despite conceding that Gauna did not apply any methodology in forming his opinions, Defendants nonetheless argue that his testimony is reliable because of his experience as a retired securities analyst.  This response ignores the plain text of FRE 702, which mandates an expert be qualified, ***as well as*** that "the testimony is the product of reliable principles and methods" and "the expert has reliably applied the principles and methods to the facts of the case."  FRE 702(c)-(d).  The Court is not required to take Gauna at his word that his conclusions are "connected to existing data."  *Joiner*, 522 U.S. at 146.  Excluding Gauna for failing to explain how he reached his

---

[4]   Defendants defend Gauna's opinion that Apple's guidance was "objective[]" by incomprehensibly claiming this testimony was "from his perspective as a seasoned securities analyst."  Opp. at 15 n.12.  Gauna's testimony that "Apple employed clear and non-misleading guidance metrics that were consistent with broader industry practices" (Ex. 3, ¶50) is excludable as a "determination [that] is reserved for the jury."  *Twitter*, 2020 WL 9073168, at *11.

1   conclusions about analyst understandings based on his review of their reports is not judging his

2   testimony by the "standards of 'scientific' testimony." Opp. at 16.

3     Gauna's lack of methodology or explanation for his conclusions requires exclusion.  As

4   noted above, "the district court can exclude the opinion if the expert fails to identify and defend

5   the reasons that his conclusions are anomalous." *Lust*, 89 F.3d at 598.  For example, Gauna

6   interprets Cook's present tense statement as referring to the past: "I understood Mr. Cook's use of

7   the present tense in the Q&As '. . . ***we're seeing pressure in the markets*** . . .' as referring to the

8   prior quarter." Ex. 3, ¶61.  This implausible opinion, lacking any methodology, is unreliable.

9     *Smilovits v. First Solar, Inc.*, 2019 WL 6875492, at *4-*5 (D. Ariz. Dec. 17, 2019) does

10  not help Defendants.  There, the expert approached her analysis as if she were an analyst covering

11  the company, and that methodology, in addition to her experience, assured the reliability of her

12  opinions. *Id.* Here, Defendants have not attempted to show Gauna "'employ[ed] in the courtroom

13  the same level of intellectual rigor that characterizes the practice of an expert in the relevant field'"

14  in reaching his conclusions. *Otto v. LeMahieu*, 2021 WL 1615311, at *4 (N.D. Cal. Apr. 26, 2021).

15      **4.**  **Defendants Have Not Shown Gauna's Opinions About What**
             **He Understood Cook to Say and What the Market Heard Cook**

16           **Say Are Proper Subjects of Expert Testimony**

17    Gauna inappropriately seeks to testify as to how ***he*** understood Cook's statements.  Mot.

18  at 15; *see also* Ex. 3, ¶58 ("***I did not interpret***").  But "[t]he plain meaning of [what Cook said on

19  a public conference call] is fully within the comprehension of the jury."  *Krouch v. Wal-Mart*

20  *Stores, Inc.*, 2014 WL 5463333, at *6 (N.D. Cal. Oct. 28, 2014).

21    Defendants also have not shown that Gauna's conclusions about how analysts

22  "understood" Defendants' statements is proper expert testimony.  Ex. 3, ¶63.  *S.E.C. v.*

23  *Manouchehr Moshayedi*, 2013 WL 12129282, at *3 (C.D. Cal. Nov. 20, 2013), is distinguishable,

24  as that testimony involved an accountant's application of "generally accepted accounting

25  principles, or 'GAAP,'" which are "not within the knowledge of the typical lay juror."  Both *First*

26  *Solar*, 2019 WL 6875492, at *2, and *Twitter*, 2020 WL 9073168, at *3, concerned materiality, not

27  falsity, as here.  Undoubtedly, the falsity and materiality inquiries are related.  *See In re Alphabet,*

28  *Inc. Sec. Litig.*, 1 F.4th 687, 700-01 (9th Cir. 2021), *cert. denied sub nom. Alphabet Inc. v. R.I.*, _

1    U.S. _, 142 S. Ct. 1227 (2022).  But Gauna cannot testify to the "understanding" of securities

2    analysts because those opinions would not be helpful to a jury, who can review the reports Gauna

3    did and draw its own inferences about the analysts' states of mind.  Ex. 3, ¶59; *see Oracle Am.,*

4    *Inc. v. Hewlett Packard Enter. Co.*, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018).

5            **5.      Since Plaintiff Has Not Alleged Cook Stated "There Was No
                        Pressure or Risks Related to Apple's Business in China,"
6                       Gauna's Opinions Are Irrelevant and Misleading**

7            Gauna's opinion is based on the false assumption that Plaintiff alleged Cook stated "there

8    was no pressure or risks related to Apple's business in China." Ex. 3, ¶12(g).[5]  Unlike Defendants,

9    Plaintiff's allegations have been consistent throughout this securities fraud suit.  *See, e.g.*, RCC,

10   ¶¶18, 24.[6]  Defendants' citations do not support Gauna's false construction.  Opp. at 5-6.  The

11   MTD Order recognized that Plaintiff's claims focused on "emerging market pressure."  MTD

12   Order at 9.  Similarly, the Class Cert. Order observed Plaintiff's claims concerned ***both*** "that Cook

13   misrepresented ***how*** poorly Apple was performing in China" ***and also*** "that it was, in fact,

14   performing poorly at all." Class Cert. Order at 15.  Plaintiff also specified that Defendants denied

15   Apple was experiencing deceleration or pressure in China "***like it was experiencing in other***

16   ***emerging markets*** which were flat, declining or not growing due to poor economic conditions."

17   ECF 318-2 at 5.  Defendants concede that the relevance of Gauna's testimony is a product of "the

18   statement that Plaintiff claims Mr. Cook made" (Opp. at 17; *see* Ex. 3, ¶¶12(g), 58, 63-66), and

19   because Plaintiff does not allege the statement, so Gauna seeks to testify about all of Gauna's

20   opinions are excludable as irrelevant, confusing, and likely to mislead a jury.  *See* Mot. at 17 n.18.

21

22

---

23   [5]   To the extent Gauna mischaracterizes Plaintiff's claims as concerning intra-quarter results or
     intra-quarter forecasts, Plaintiff also rejects that construction.  *See Smilovits*, 2019 WL 7282026,
24   at *8.  Nevertheless, Maestri testified, as it relates to mid-quarter updates: "***It's possible that***
     ***during a specific question during the earnings call there may be a question that we may decide***
25   ***to answer or not at that point in time.***" ECF 322-4, Ex. 88 at 234-35.

26   [6]   The Opposition suggests Cook's November 1, 2018 statements regarding business conditions
     in China are forward looking.  *See* Opp. at 14 n.11.  But Defendants know this is not true, as
27   evidenced by the lack of any argument that Plaintiff's claims fail due to the PSLRA safe harbor.
     15 U.S.C. §78u-5; *cf.* ECF 108 at 52-53 (Mr. Kramer: "[O]n the guidance piece, that's protected
28   as forward looking.").

C.   **Trueman Offers No Expertise that Would Help the Jury and Seeks to Offer Irrelevant Testimony Based on a Flawed Methodology**

1.   **Trueman's Perception of What Analysts Understood Is Improper, Irrelevant, and Unhelpful**

Defendants' Opposition confirms Trueman's report contains no analysis the jury cannot do itself.  In seeking to refute Plaintiff's argument that Trueman is improperly trying to read the minds of analysts.  Trueman essentially admits he is merely parroting "the actual ***words*** that were used in [the analyst] reports."  ECF 318-4, ¶17.  Even according to Trueman, the reports' intended audience is the public and investing community (Ex. 4, ¶¶23-24) and through those reports, analysts themselves conveyed their ***own*** understanding of Cook's statements, Trueman's opinion as to how ***he*** interprets ***the analysts'*** interpretation of Cook's statements has zero probative value.  *See United States v. Hanna*, 293 F.3d 1080, 1086-87 (9th Cir. 2002).  Accordingly, Trueman's "testimony intrudes on the province of the jury, who is capable of evaluating the same evidence and drawing conclusions without [the expert's] proffered testimony" and should be excluded.  *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 2020 WL 2553181, at *6 (S.D. Cal. May 20, 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021).

Any effort by Trueman to deduce or infer subtext conveyed, but not written, by analysts through their reports constitutes improper testimony.[7]   Experts simply cannot opine on the "subjective beliefs of others."  *Cisco Sys. v. Arista Networks*, 2016 U.S. Dist. LEXIS 203865, at *10-*11 (N.D. Cal. Nov. 16, 2016); *Aya*, 2020 WL 2553181, at *6 ("an expert may not testify regarding the states of mind of third parties.").  Contrary to his protestations, Trueman is reading the analysts' minds when he draws conclusions about what analysts purportedly "'understood,'" "'heard,'" or "'interpreted'" based upon their coverage of Cook's statement.  ECF 318-4, ¶16; Ex.

---

[7]   Plaintiff and its rebuttal expert Partnoy, identified text analytics and discounted cash flow (DCF) analysis as examples of methods experts can use that could conceivably help the jury.  Mot. at 19.  Here, Trueman exercises no expert skill or methodology through his parroting of the reports.  Also, Trueman's response that he could not apply a DCF analysis here does not support the admissibility of his opinions.  In any case, as addressed *infra* §II.G., he raised his response regarding the DCF analysis in his improper declaration (ECF 318-4), which the Court should exclude.

4, ¶26.  The jury can read analyst reports and draw their own conclusions.  *Aya*, 2020 WL 2553181, at *6. [8]

### 2.  Defendants' Continued Mischaracterization of Plaintiff's Claims Does Not Cure the Flaws in Trueman's Report

Trueman's gross mischaracterization of Plaintiff's allegations renders his entire opinion irrelevant and unreliable.  Mot. at §III.C.3.  Like Defendants, Trueman omitted the context Defendants repeatedly claimed necessary to evaluate the statement, and improperly reduced the "challenged statement" to just: "In relation to China specifically, I would not put China in that category," excluding the question and Cook's own response where he explained China was not currently experiencing pressure like those in other emerging markets, as evidenced by the 16% growth that had occurred the previous quarter. Ex. 4, ¶16; ECF 118 at 10.  By similarly selectively quoting Plaintiff's interrogatory responses, the Opposition continues to exclude important context. Opp. at 11-12. [9]  Defendants ignore that Plaintiff did not allege Cook failed to disclose just "any pressure," rather he excluded China from the emerging markets where it was experiencing pressure and "not growing the way [they] would like to see." Ex. 17 at 8.  Because Trueman's opinions are inseparable from his tortured construction of Plaintiff's claims, they must be excluded.

---

[8]    Unlike here, experts in Defendants' cited cases did not seek to opine on how to interpret the alleged fraudulent statement.  In *Twitter* and *First Solar*, the experts were asked to opine on whether and to what extent the concealed information would have influenced the analysts' evaluation of the companies' stock values and whether they were worthy investments.  *Twitter*, 2020 WL 9073168, at *4; *First Solar*, 2019 WL 6875492, at *2.  In *Baker v. Seaworld Ent. Inc.*, 423 F. Supp. 3d 878, 901-02 (S.D. Cal. 2019), the expert analyzed analyst reports to determine the date of the corrective disclosure in an attempt to "assist the trier of fact in determining *loss causation*."  And this case does not involve the more complex accounting principles at issue in *Moshayedi*.  Any reliance on *In re Adobe Sys., Inc. Sec. Litig.*, 787 F. Supp. 912, 916 (N.D. Cal. 1992), *aff'd sub nom. Cloutier v. Adobe Sys., Inc.*, 5 F.3d 535 (9th Cir. 1993), the only cited case in which an expert was asked to opine on his understanding of the statement, is a pre-*Daubert* and pre-PSLRA case and is distinguishable as the expert testimony there was used to show whether the alleged fraudulent statement motivated analysts to alter their earnings estimates – which is not at issue here.

[9]    While highlighting Plaintiff used the phrase Apple was experiencing "any deceleration or pressure on its business in China," Defendants ignore the rest of the response, which states that the deceleration to which Plaintiff is referring is "like it was experiencing in other emerging markets which were flat, declining or not growing due to poor economic conditions."  ECF 318-2 at 5. Plaintiff responded: "Defendants pointed directly to 16% growth in China in 4Q18 as evidence that Greater China was not in the same category of those other emerging markets."  *Id.*

### 3.   Trueman's Purported Methodology Is so Flawed It Fails Under FRE 702 and Must be Excluded

Trueman's purported "Analysis Framework" is so transparently biased, it renders his opinion entirely unreliable and excludable. Ex. 4, §D.  When evaluating the reliability of an expert's opinion, the "focus, of course, must be solely on principles and methodology." *Daubert*, 509 U.S. at 595.  And "[w]hile the relevant factors for determining reliability will vary from expertise to expertise, the [FRE 702] rejects the premise that an expert's testimony should be treated more permissively simply because it is outside the realm of science."  FRE 702 advisory committee's note to 2000 amendment.  An expert who is relying "solely . . . on experience . . . must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  *Id.*

Here, instead of considering most or all the available analyst reports discussing Cook's November 1 statement, Trueman arbitrarily limited his inquiry to just November 1-4, 2018 – *i.e.*, before the truth was revealed, if, notably, only partially.  *See* Mot., §III.C.1.  But analyst reports both predating the conference call and post-dating the corrective disclosures, in particular the final January 2, 2019 disclosure, speak directly to how the market perceived Cook's November 1 statements.  *See* ECF 322-3, §IV.A.2. (citing articles and reports excluded from Trueman's Ex. 1). Indeed, reports issued on or around January 2, 2019 state Cook misled the market on November 1.  *See, e.g.*, ECF 322-4, Ex. 94 (January 6, 2019 RBC report), Ex. 127 (January 3, 2019 Wedbush report).   That there was a corrective disclosure on November 5 does not resolve this fatal methodological failure.  Trueman deliberately ignored numerous reports that directly bore upon his inquiry – including those following later corrective disclosures, including many alleged in the RCC.  Ex. 4, ¶35 n.27; ECF 318-4, ¶6 at 2.

Trueman's opinion is also unreliable because he ignored relevant media or analyst coverage by arbitrarily defining "analyst report."  His refusal to consider what he calls "research reports" (Ex. 4, ¶4) like the November 1, 2018 Morgan Stanley MS Tech Report (ECF 322-4, Ex. 63) (interpreting Cook's statement as "AAPL would *not* put China in the weaker EM bucket"), further indicates he selectively chose reports to support Defendants' demonstrably false contention

1   that "no one but Plaintiff seems to have heard" Cook's statement in that way.   Opp. at 12.

2   Defendants' faux outrage is absurd.   *Yahoo! Finance* specifically quoted that very alleged

3   misstatement in excoriating Cook for misleading investors about the state of the Company's

4   business on November 1: "***They failed to keep it real with investors on what they were seeing in***

5   ***iPhone demand data late in 2018***." RCC, ¶56; ECF 322-4, Ex. 128.   Indeed, Trueman

6   acknowledges, but dismisses, analysts which perceived Cook's statements exactly as alleged (*see,*

7   *e.g.*, Ex. 4, ¶¶58 n.82, 64).   By deliberately restricting the time period and sources considered, the

8   methodology Trueman used to deduce market perception of Cook's statements yields an unreliable

9   and inadmissible opinion.[10]   *Biotechnology Value Fund, L.P. v. Celera Corp.*, 2015 WL 138168,

10   at *2 (N.D. Cal. Jan. 9, 2015) (such experts "really are just advocates dressed up like sworn

11   specialists").

12   **D.   Poer's Comingled Summary Witness and Expert Opinions Should Be Excluded as Irrelevant, Unhelpful, and Misleading**

13   Poer is a litigation "consultant" proffered as both a summary witness and expert in "data."

14   Poer's testimony is unhelpful, unreliable, and thus inadmissible because Defendants have failed to

15   show he meets the standards for either an expert witness or summary data presentation.[11]

16   **1.   Poer Should Be Excluded as a Summary Witness Because His Credibility Will Be Substituted for that of the Evidence**

17

18   A "summary witness[] should only be allowed in '***exceptional cases***' because the

19   credibility of summary witnesses may be substituted for the credibility of the evidence

20   summarized." *See United States v. Leon-Reyes*, 177 F.3d 816, 819 n.4 (9th Cir. 1999).   Poer does

21   not have firsthand experience with Apple's data or sources, and this is not an exceptional case

22

23   [10]   Trueman's rebuttal report attempts to use Plaintiff's expert Shenkar's reliance on other sources
24   to "further buttress" his own report, conceding that other sources "would have been considered by
     analysts in forming their opinions on Apple's stock."   Ex. 5, ¶¶6, 11.   Defendants'
     mischaracterization of Shenkar's recitation of Plaintiff's claims as an "assumption" does not
25   provide a basis for Trueman's rebuttal.   Opp. at 13.   Because Trueman's rebuttal is offered not to
     challenge but to further support Trueman's own opinions, his rebuttal should be excluded.

26   [11]   The intermingled summaries and expert opinions make it impracticable to specify the
27   excludable paragraphs or portions of Poer's report and rebuttal.   To the extent the reports allow,
     Plaintiff identifies Ex. 6, ¶¶17-53; and Ex. 7, ¶¶6-26, Appx. B, as excludable, and, for the reasons
28   explained in the Motion and herein, Poer should not be permitted to testify at trial.

1   requiring an outside consultant to serve as a summary witness.  Indeed, Apple has numerous

2   executives and employees who were percipient witness to the events, sources, and data that Poer

3   attempts to "summarize," including people designated as Rule 30(b)(6) deponents in this case and

4   the employees Poer says he interviewed to inform his opinions.

5      Contrary to the Opposition, neither *Buffin v. City & Cnty. of S.F.*, 2019 WL 1017537, at *5

6   n.20 (N.D. Cal. Mar. 4, 2019), nor *Ferrari Club of Am., Inc. v. Bourdage*, 2017 WL 1498080, at

7   *4 (W.D.N.Y. Apr. 25, 2017), support admissibility as both required the proposed summary

8   witness to have personal "experience" with the data sources ***before the litigation commenced***.

9       **2.**  **Poer's Failure to Separate His Summary Witness Testimony**
      **from His Expert Opinions Will Confuse and Mislead the Jury**

10     There is an inherent danger that the intermingled testimony and opinions of a dual role

11  expert and witness will mislead or confuse a jury, which may substitute the credibility of the expert

12  for that of the facts, or mistake opinion as fact.  *See Trulove v. D'Amico*, 2018 WL 1090248, at *2

13  (N.D. Cal. Feb. 27, 2018).  For example, in *Buffin*, this Court found a summary witness admissible,

14  *inter alia*, because he "was not proffered as an expert, nor d[id] he provide expert opinions."  2019

15  WL 1017537, at *5 n.20; *see also Ferrari*, 2017 WL 1498080, at *4 (summary testimony

16  "impermissible" where it "crosse[d] into expert territory").  Such concerns are particularly acute

17  here where Poer does not limit his testimony to summarizing complex data, but rather seeks to

18  present nearly every element of Defendants' case – as a purported expert.  *See* Mot. 25-26, 29-31.

19     The Opposition does not dispute that a dual role expert and summary witness requires strict

20  review from the Court in its role as gatekeeper.  But it asserts that "Mr. Poer carefully and clearly

21  delineates these two functions in his reports," for example, by claiming Poer's "opening summary

22  charts" appear in §IV of his report.  Opp. at 25.  That claim is demonstrably false.  Poer's

23  summaries, including charts, are commingled with opinions in §V, labeled "OPINIONS."  Ex. 6,

24  §V; *see also* Ex. 7, §III ("REBUTTAL OPINIONS").  For example, it is unclear whether Poer is

25  summarizing the data or offering an opinion when he writes that, notwithstanding "peaks and

26  valleys," Apple was experiencing a "positive" unbrickings trend.  Ex. 6, ¶28.  With a dual witness

27

28

like Poer, who has no experience with the data, it is impossible to tell where the summary ends and the expert opinion begins.

### 3. Poer's Failure to Disclose His Sources or to Describe How They Inform His Reports Requires Exclusion

Expert testimony must be "based on sufficient facts or data" and must be "the product of reliable principles and methods."  FRE 702(b)-(c).  "Rule 26 requires a sufficiently detailed description of the expert's opinions and the basis for those opinions . . . courts apply this rule strictly and ***require*** exclusion of the undisclosed evidence absent harmless error or substantial justification." *Sanchez v. Jiles*, 2012 WL 13005996, at \*19-\*20 (C.D. Cal. June 14, 2012).

"'Summary evidence is admissible [only so] long as the underlying documents also constitute admissible evidence and are made available to the adverse party.'" *Ferrari*, 2017 WL 1498080, at \*6.  Under both standards Poer's testimony should be excluded.  Defendants do not dispute that during discovery they failed to disclose Poer's interview sources as people who might have relevant information under Rule 26.  Instead, the Opposition contends Poer's disclosure of their names in his report is sufficient.  Opp. at 27.  Not so.  As explained in the Motion, "depriving a party of the opportunity to conduct discovery or depose untimely-deposed witnesses demonstrates harm," and Defendants' attempt to introduce undisclosed sources or evidence through an expert is proper grounds to exclude expert testimony.  Mot. at 27-28.  Moreover, Poer claims to have conducted three interviews of five Apple employees.  However, Poer only produced interview notes for two of those three interviews.  Exs. 13-14.  In addition, those notes contain redactions for privilege, and one set of notes lists only questions, not answers (if any were given). *Id.*  Poer's reliance on unproduced ***and privileged*** information renders his opinions inadmissible. *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 949 (N.D. Cal. Mar. 31, 2015) (undisclosed conversations); *In re Leap Wireless Int'l. Inc.*, 301 B.R. 80, 85 (Bankr. S.D. Cal. Oct. 16, 2003) (privilege).

While Poer's report and opinion identify and rely upon sources of information (Poer's and his team's interviews with Apple employees), he does not explain how those sources or interviews informed his stated opinions, in addition to not providing them to Plaintiff.  The entirety of his

1    opinions must be excluded for that reason alone.  *See Droplets, Inc. v. Yahoo! Inc.*, 2022 WL

2    2670188, at \*2 (N.D. Cal. Feb. 28, 2022).  In fact, Defendants concede Poer's report failed to

3    disclose his sources or what he learned from them, yet assert that failure is unimportant.  Opp. at

4    27.  But such information "connected" to his report is critical to understanding Poer's methodology

5    under FRE 702.  *See Sanchez*, 2012 WL 13005996, at \*19-\*20.  Further, his claim that the

6    information is unimportant is wrong.  For example, the documents Poer later produced show he

7    apparently asked these witnesses who received the reports he reviewed, evidence that is relevant

8    to scienter.  Ex. 14 at POER_0002.

9          In an attempt to cure his and Defendants' failures to disclose, Poer now contradicts himself.

10   In his late-filed declaration, Poer and the Opposition both now claim Poer interviewed previously

11   undisclosed Apple employees only to "validate" data sources.  ECF 318-5, ¶6; Opp. at 27.  But

12   these new assertions are incompatible with Poer's notes, which state: "Tina [Tong] and Karen

13   [Wang] are ***not knowledgeable*** on retail data and were ***not familiar with the data source***."  Ex.

14   13.  The Opposition's attempt to walk back this reversal contradicts Poer and misrepresents

15   Plaintiff's Motion.  Poer summarizes and opines on retail (traffic) data. Ex. 7, ¶¶22-23.  And Poer's

16   notes are clear that it was concerning retail data with which "Tina and Karen [we]re not

17   knowledgeable."  Ex. 13.  Yet Defendants now claim Poer seeks only to summarize and opine on

18   reseller traffic data, which they assert, without basis, Tong and Wang were familiar with.  Opp. at

19   28, n.18.   Because Poer's "affidavit contradict[s] rather than clarifie[s] his testimony, it

20   constitute[s] a new opinion . . . and is therefore untimely." *Terhune v. Cooksey*, 2022 WL 1644620,

21   at \*2-\*3 (W.D. Ky. May 24, 2022).  Both Defendants' and Poer's inconsistent descriptions of

22   Poer's sources further demonstrate that Poer's opinions and summaries are unreliable.

23              **4.    Poer's Expert Opinions, Even Were They Distinct from His
                       Summary Witness Testimony, Contradict the Facts and**
24                     **Relevant Theories of the Case and Will Mislead the Jury**

25          Poer's purported expertise, and his expert opinions, do not "'fit' the case" and will not

26   "help[] the jury decide the dispute between the parties." *CZ Servs., Inc. v. Express Scripts Holding*

27   *Co.*, 2020 WL 4518978, at \*1 (N.D. Cal. Aug. 5, 2020).  He is not qualified to testify on the array

28   of subject areas on which he seeks to opine.  He is a "finance" consultant.  Mot. at 25-27; Opp. at

21-22.  But this is not an accounting or finance case, and Poer has no expertise in foreign currency (which is also irrelevant), iPhone activations, retail traffic, or Apple's internal processes.  *Id.*  Defendants respond: "*At core*, Mr. Poer is opining on matters of finance and accounting" – as if anything expressed as a number is a matter of "internal financial data."  Opp. at 23.  This is wrong, and the Opposition makes no attempt to explain how the issues Poer opines on are "financial."  For example, Poer opines on Apple's purported "optimism surrounding the iPhone XR" without reference to any data.  Ex. 7 at 23.  And even iPhone "unbrickings" data are a "demand signal," not a financial metric.  Ex. 6, ¶14.

Poer's "expert" opinions concern non-relevant topics and theories that ignore Plaintiff's allegations and contradict the facts, leading Poer into significant errors that will mislead the jury.  *See* Mot. at 1-3, 29-31.  Poer's apples-to-oranges comparison of year-over-year results is one such error.  *Id.* at 30-31.  Indeed, Cook and his top lieutenants universally utilized launch-over-launch data in their contemporaneous assessments of iPhone performance.  *E.g.*, ECF 322-3 at 5.  Similarly, Poer concludes Apple's performance in Greater China was positive leading up to the November 1, 2018 conference call.  Ex. 6, ¶¶27-33.  But Poer's basis is his cursory look at *all* iPhone unbrickings, which fails to account for the facts that: (i) by looking at total unbrickings he failed to account for cheaper, legacy iPhones cannibalizing sales of the pricier XS, XS Max, and XR; and, relatedly, (ii) that "[t]he weak response to iPhone XR has left Greater China *down -$1.4B Q[uarter ]T[o ]D[ate]*."  ECF 322-3 at 5(citing Ex. 36).  Poer's use of Apple's Week 5 (October 28 – November 2, 2018) internal forecast as "[t]he November 1, 2018 . . . forecast," despite the fact that it was not issued until on or around November 4, 2018, is another error.  *Contrast e.g.*, Ex. 6, ¶15(b) n.11, ¶36, *with* ECF 322-3 at 20 n.16.

The Opposition does not address these arguments.  Instead, Defendants cite dubious foundations for the relevance of Poer's testimony.  For example, relevance cannot be conjured out of a self-serving, same-party declaration.  Nevertheless, Defendants argue that because Cook has recently declared he was opining on foreign currency, Poer, who has no expertise in that subject, may summarize and opine on whatever foreign currency data or topics Defendants wish him to.  Opp. at 22.  In another example, Defendants cite Poer's own report as evidence that Poer's

1    testimony is relevant.  Opp. at 22 (arguing "it is relevant that Apple's performance in October was

2    incorporated into its FQ1 2019 revenue guidance," citing the Poer report, §V.C.).[12]  This circular

3    argument does not support admissibility.  Poer's opinions should be excluded.

4         **E.    Grenadier's Rebuttal Should Be Excluded in Part as Irrelevant, Unhelpful, and Confusing**

5            **1.    Grenadier's Conditional Opinion Nos. 1-3 Should Be Excluded as Irrelevant, Unhelpful, and Confusing**

6

7           In Opinion Nos. 1 and 2, Grenadier seeks to offer the wholly unnecessary opinion that

8    Apple's stock price was not inflated by fraud if the alleged misrepresentation is found to be a

9    "'factually correct'" statement.  Mot at 31-32.  The jury will not address stock price inflation if it

10   finds falsity not established.  Defendants' suggestion that the opinion is relevant where a "true"

11   statement  nevertheless  gives  a  "'misleading impression'"  or  Grenadier  was  just  making

12   "assumptions" (Opp. at 29), are both distortions of the opinion proffered.

13          In Opinion No. 3, Grenadier opines that November 5 or 12 might constitute full disclosures

14   "*[i]f* Plaintiff's theory of harm is that Apple allegedly misrepresented that it was not facing any

15   'pressure' in Greater China as of November 1, 2018."  Mot. at 32.  As discussed throughout,

16   "Plaintiff's theory of harm" is that Cook misled investors concerning the Company's current

17   performance in Greater China, including the impact of declining economic conditions, the negative

18   impact of trade tensions, and weak demand for its new iPhones.  Mot at 32; Class Cert. Order at

19   15 ("[P]laintiff's complaint . . . is **not merely** that Cook misrepresented **how** poorly Apple was

20   performing in China, but that it was, in fact, performing poorly at all.").  Opinion No. 3 is excluded

21   by its own terms.

22

23

24

---

25   [12]   Plaintiff also notes that Ex. 6, §V.C. is based on Poer's **speculation** that he was analyzing the correct reports: "*[I]t appears* the forecasts contained in the Week 5 Weekly Unbrickings Report

26   were available and utilized" by Defendants.  Ex. 6, ¶35.  His opinions based on these reports are highly unreliable and must be excluded.  Poer had access to Defendants and Apple employees that

27   could have confirmed whether he was looking at the correct reports but chose not to get that confirmation.  In fact, the Week 5 reports did **not** have the forecasts utilized by Defendants on the

28   November 1, 2018 call.  ECF 322-3 at 20, n.16.  His opinions must be excluded.

### 2. Grenadier's Loss Causation Opinions Should Be Excluded as Irrelevant, Confusing, and Prejudicial

The Motion lays out in detail the substantial legal, factual and analytical flaws that plague Opinion No. 4 concerning loss causation generally (§III.E.3.) and specifically with respect to November 5 and 12, 2018 (§III.E.3.a.) and January 2, 2019 (§III.E.3.b.).   Mot. at 33-36. Defendants' superficial response does nothing to refute these criticisms.   Grenadier's loss causation opinions are premised upon the same misconstruction of Plaintiff's claim that plague all of his opinions.   Mot. at 33-34.   Grenadier's footnoted disclaimer that his analysis does not "depend" on this improper construction (Opp. at 31 (citing Ex. 8, ¶17 n.29)) is refuted by his opinions. *See, e.g.*, Ex. 8, ¶55 (seeking to separate the "existence" of pressure from its "severity").

Second, Defendants double down on Grenadier's opinion that Feinstein must step into Apple's shoes to draft a truthful "'but-for'" disclosure that the Company "'could and should'" have made on November 1, 2018.   Opp. at 30.   Worse yet, Defendants contend that proof of loss causation must accommodate Apple's "'standard [disclosure] practice[s]'" including its preference for not providing "intra-quarter forecasts" or disclosing particular product results.   Opp. at 30, n.19; Ex. 8, ¶58.   Neither the case law, this Court's opinions, nor Feinstein's report supports such an approach.[13]   *See* Mot. at 33-34; MTD Order at 8-10, 12-21.

Third, Grenadier's opinions regarding confounding information purportedly in the market on November 5 and November 12, 2018, are contrary to the law of the case and should be excluded. Mot. at 34-35.   Defendants convinced the Court that Cook's November 1, 2018 statements regarding iPhone XR demand were immaterial puffery.   ECF 310 at 2.   Now, Grenadier opines that information concealed by Cook related to poor iPhone XR demand in places other than China, and resulting manufacturing cuts, caused Apple's stock price declines days later.   Opp. at 31. Defendants cannot have it both ways.   If this withheld information caused Apple's stock price to

---

[13]   Grenadier's citation to a single reference in Feinstein's Class Certification Reply Report to "the but-for full disclosure scenario" concerns the amount of stock price inflation attributable to Defendants' fraud under the out-of-pocket methodology, not Grenadier's fabricated requirement that an alternative truthful disclosure be drafted by Feinstein.   Ex. 8, ¶52 n.72 (citing Feinstein Class Certification Reply Report).

1   decline, then Cook's November 1, 2018 statement concerning global iPhone XR demand must be

2   deemed material and actionable.  Mot. at 31, 35 n.27.

3           **3.      Grenadier's Damages Opinions Must Be Excluded as
                       Irrelevant, Confusing, and Prejudicial**
4

5           The Motion sets forth multiple methodological defects in Grenadier's damages opinions

6   that go unaddressed.  *See* Mot. at 36-37.  Defendants also fail to rehabilitate Grenadier's unfounded

7   theory that damages are measured by the difference between Apple's earnings guidance and

8   analyst consensus.  Opp. at 32.  Defendants do not cite any case law or economic theory supporting

9   Grenadier's newly-invented methodology which, as noted in the Motion, would have the absurd

10  consequence that if a company lied while issuing guidance, and if analysts' expectations reflected

11  that guidance, a plaintiff could not recover for fraud.[14]  Mot. at 37.  With respect to options

12  damages, again Defendants do not address the merits of the criticisms made, but simply parrot

13  Grenadier's irrelevant, confusing, and unhelpful opinions.  *Id.* at 38.

14          **F.     Taylor's Report and Testimony Is Not Permissible Rebuttal**

15          Plaintiff's Motion to exclude Taylor's testimony is simple.  Taylor, on rebuttal, intends to

16  advance impermissible new theories that are outside the scope of Shenkar's report.  *In re Macbook*

17  *Keyboard Litig.*, 2022 U.S. Dist. LEXIS 34597, at *23 (N.D. Cal. Jan. 25, 2022)  Defendants'

18  Opposition makes crystal clear that Taylor seeks to "rebut" what she admits is ***not*** in Shenkar's

19  report – an analysis of Apple's forecasting process.  Opp. at 33.  But Shenkar does not discuss

20  Apple's forecasting process because it is simply not relevant to his opinions.  Therefore, Taylor's

21  proposed testimony that seeks to "'describe Apple's forecast[ing] process and explain that it was

22  extensive'" does not rebut anything in Shenkar's report.  Opp. at 33.  Accordingly, that is a new

23  report, not a rebuttal, and violates Rule 26(a)(2)(D)(ii).  Defendants' reliance on *Graystone*

24  *Funding Co., LLC v. Network Funding, L.P.*, 2022 WL 1063734 (D. Utah Apr. 8, 2022) is

25  misplaced, as there the court permitted a rebuttal witness to testify about economic assumptions

26  ─────────────────────────
    [14]   Defendants' suggestion that Plaintiff is proceeding under a materialization of the risk theory
27  of damages approach (Opp. at 32, n.21), because Plaintiff mentions, among many negative facts
    concealed from investors, the risk that the ongoing pressure in China was having on the business,
28  does not entitle Grenadier to offer opinions about irrelevant damages theories.

1   underlying the opposing party's damages analysis.  Here, Shenkar does not make any assumptions

2   and did not provide mathematical calculations to reach his opinions.  *Nature's Plus Nordic A/S v.*

3   *Nat. Organics, Inc.*, 982 F. Supp. 2d 237, 239 (E.D.N.Y. 2013), is inapt for the same reasons.

4       Defendants also concede that Taylor's "rebuttal" is cumulative of Poer's report, warranting

5   its exclusion.  Opp. at 34.  *See Shelton v. Air & Liquid Sys. Corp.*, 2022 WL 2712381, at *5 (N.D.

6   Cal. July 11, 2022); *CZ Servs.*, 2020 WL 4518978, at *3.  Defendants' promise to not put on

7   duplicative evidence at trial does not make it admissible.  Taylor's rebuttal should be excluded.

8       **G.   The Court Should Strike the Trueman and Poer Declarations as**
            **Untimely Expert Testimony and as Over-Length Briefing**

9

10      Trueman's and Poer's supplemental declarations – submitted more than six months after

    the April 27, 2022 Rule 26 expert deadline – are untimely under Rule 26(a)(2)(D), which requires
11

12  that "[a] party must make these disclosures at the times and in the sequence that the court orders."

13  Fed. R. Civ. P. 26(a)(2)(D).  The Court has "'broad discretion'" to exclude these declarations that

14  were only introduced "'after the weaknesses in the expert's prior testimony have been revealed.'"

15  *See Baker v. Chevron U.S.A. Inc.*, 533 F. App'x 509, 520 (6th Cir. 2013); *see also Lightfoot v.*

16  *Georgia-Pacific Wood Prods., LLC*, 2018 WL 4517616, at *8 (E.D.N.C. Sept. 20, 2018) (expert

    declarations "that are new, improved, or expanded in response to . . . arguments
17

18  in *Daubert* motions" are untimely).  Here, both the Trueman and Poer supplemental declarations

19  improperly attempt to cure deficiencies identified in the Motion.  *E.g.*, ECF 318-4, ¶2 (Trueman:

20  "I disagree with the criticisms in the Motion and have prepared this Declaration to explain why.");

    318-5, ¶9 (Poer: "Contrary to Plaintiff's assertion [in the Motion] . . . .").  This is not only untimely,
21

22  new, and redundant testimony, but collectively constitutes 13 pages of over-length briefing.  The

23  Court should strike the declarations.

24  **III.   CONCLUSION**

25      For the reasons set forth in the Motion and this Reply, the Motion should be granted.

     DATED:  November 17, 2022
26
                                                 s/ Shawn A. Williams
27                                      _____
                                                 SHAWN A. WILLIAMS
28

1

2      ROBBINS GELLER RUDMAN
         & DOWD LLP
3      SHAWN A. WILLIAMS
       DANIEL J. PFEFFERBAUM
4      KENNETH J. BLACK
       HADIYA K. DESHMUKH
5      JACOB G. GELMAN
       Post Montgomery Center
6      One Montgomery Street, Suite 1800
       San Francisco, CA  94104
7      Telephone:  415/288-4545
       415/288-4534 (fax)
8      shawnw@rgrdlaw.com
       dpfefferbaum@rgrdlaw.com
9      kennyb@rgrdlaw.com
       hdeshmukh@rgrdlaw.com
10     jgelman@rgrdlaw.com

11     ROBBINS GELLER RUDMAN
         & DOWD LLP
12     MARK SOLOMON
       JASON A. FORGE
13     RAPHAELLA FRIEDMAN
       655 West Broadway, Suite 1900
14     San Diego, CA  92101
       Telephone:  619/231-1058
15     619/231-7423 (fax)
       marks@rgrdlaw.com
16     jforge@rgrdlaw.com
       rfriedman@rgrdlaw.com

17     Lead Counsel for Lead Plaintiff

18     LABATON SUCHAROW
       CAROL C. VILLEGAS
19     140 Broadway
       New York, NY 10005
20     Telephone: 212/907-0700
       212/883-7524 (fax)
21     cvillegas@labaton.com

22     Counsel for Employees' Retirement System of the
       State of Rhode Island
23
       VANOVERBEKE, MICHAUD & TIMMONY,
24     P.C.
       THOMAS C. MICHAUD
25     79 Alfred Street
       Detroit, MI  48201
26     Telephone: 313/578-1200
       313/578-1201 (fax)
27     tmichaud@vmtlaw.com

28     Additional Counsel

1

<u>CERTIFICATE OF SERVICE</u>

2        I hereby certify under penalty of perjury that on November 17, 2022, I authorized the

3   electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will

4   send notification of such filing to the email addresses on the attached Electronic Mail Notice List,

5   and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service

6   to the non-CM/ECF participants indicated on the attached Manual Notice List.

7                                                 s/ Shawn A. Williams
                                            SHAWN A. WILLIAMS
8
                                            ROBBINS GELLER RUDMAN
9                                                & DOWD LLP
                                            Post Montgomery Center
10                                          One Montgomery Street, Suite 1800
                                            San Francisco, CA  94104
11                                          Telephone:  415/288-4545
                                            415/288-4534 (fax)
12                                          Email:  shawnw@rgrdlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Mailing Information for a Case 4:19-cv-02033-YGR IN RE APPLE INC. SECURITIES LITIGATION

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Tristan Allen**
  tallen@orrick.com

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **Kevin Michael Askew**
  kaskew@orrick.com

- **Kenneth Joseph Black**
  KennyB@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com

- **Frank H. Busch**
  busch@wvbrlaw.com,abarca@wvbrlaw.com,myers@wvbrlaw.com,pallister@wvbrlaw.com

- **Hadiya Khan Deshmukh**
  hdeshmukh@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **William Joseph Foley**
  wfoley@orrick.com

- **Jason A. Forge**
  jforge@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christine M. Fox**
  cfox@labaton.com,ndonlon@labaton.com,lpina@labaton.com,electroniccasefilings@labaton.com,6312349420@filings.docketbird.com

- **Raphaella Friedman**
  rfriedman@rgrdlaw.com

- **Jacob G. Gelman**
  jgelman@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Nicomedes Sy Herrera**
  nherrera@herrerakennedy.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Austin Thomas Jackson**
  ajackson@structurelaw.com,cford@structurelaw.com

- **James Neil Kramer**
  jkramer@orrick.com,lpatts@orrick.com,mwatkins@orrick.com,vmorse@orrick.com,tallen@orrick.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,fgravenson@pomlaw.com,ipareja@pomlaw.com

- **Francis P. McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle Suzanne Myers**
  shawnw@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,dmyers@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com,fgravenson@poml

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,jgeorge@rgrdlaw.com,dpfefferbaumRGRD@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,jgeorge@ecf.courtdrive.com,sbloyd@rgrdlaw.co

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Craig Wallace Smith**
  notice@robbinsllp.com,noticerobbinsllp@ecf.courtdrive.com,csmith@robbinsllp.com

- **Mark Solomon**
  marks@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Alexander K. Talarides**
  atalarides@orrick.com,lpatts@orrick.com,casestream@ecf.courtdrive.com,tallen@orrick.com

- **Michael David Torpey**
  mtorpey@orrick.com

- **Carol C. Villegas**
  cvillegas@labaton.com,ndonlon@labaton.com,lpina@labaton.com,5739893420@filings.docketbird.com,kjudd@labaton.com,electroniccasefiling@labaton.com,dsalda

- **James Matthew Wagstaffe**
  wagstaffe@wvbrlaw.com,Myers@WVBRlaw.com,pallister@wvbrlaw.com

- **Steven Ray Wedeking , II**
  swedeking@robbinsllp.com,notice@robbinsllp.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,kennyb@rgrdlaw.com,jgelman@rgrdlaw.com,rfriedman@ecf.courtdrive.com,ShawnW@ecf.courtdrive.com,smorris@rgrdlaw.com,e_file_sd@r

- **Ariel Brianna Winawer**
  awinawer@orrick.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)