ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
KENNETH J. BLACK (291871)
HADIYA K. DESHMUKH (328118)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com
         – and –
MARK SOLOMON (151949)
TOR GRONBORG (179109)
JASON A. FORGE (181542)
RAPHAELLA FRIEDMAN (323324)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
torg@rgrdlaw.com
jforge@rgrdlaw.com
rfriedman@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re APPLE INC. SECURITIES LITIGATION | Case No. 4:19-cv-02033-YGR |
| | CLASS ACTION |
| This Document Relates To: | SUPPLEMENTAL BRIEF IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO COMPEL DOCUMENTS WITHHELD AS PRIVILEGED |
| ALL ACTIONS. | |

DATE:      April 15, 2022
TIME:      9:30 a.m.
CTRM:    F, 15th Floor
JUDGE:   Hon. Joseph C. Spero

**[FILED UNDER SEAL]**

4893-2618-1157.v1

1

# TABLE OF CONTENTS

2

**Page**

3

4

I.      INTRODUCTION ........................................................................................................1

II.     PROCEDURAL HISTORY.........................................................................................3

5

III.    LEGAL STANDARD..................................................................................................5

6

IV.     SUBJECT AREAS OF OUTSTANDING DISPUTE ................................................6

7

8

       A.      Documents Related to the January 2, 2019 Preannouncement of 1Q19
               Earnings .............................................................................................................7

9

       B.      Documents Relating to *Nikkei* Article About Supplier Cuts ................................11

10

       C.      Members of Group Emails........................................................................................12

11

       D.      Unsent Documents in Non-Lawyers' Custodial Files ...........................................13

12

       E.      Non-Privileged Email Attachments ........................................................................14

13

V.      CONCLUSION.............................................................................................................17

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

5

*Engurasoff v. Zayo Grp. LLC,*
  2015 WL 335793 (N.D. Cal. Jan. 23, 2015) ...............................................................6

6

*In re Chase Bank USA, N.A. "Check Loan" Conts. Litig.,*
  2011 WL 3268091 (N.D. Cal. July 28, 2011) .........................................................5, 11

7

8

*In re Domestic Airline Travel Antitrust Litig.,*
  2020 WL 3496748 (D.D.C. Feb. 25, 2020)
  *report and recommendation adopted,*
  2020 WL 3496448 (D.D.C. May 11, 2020) ...............................................................5

9

10

*In re Grand Jury,*
  23 F.4th 1088 (9th Cir. 2021) ...................................................................................5

11

*Minebea Co. v. Papst,*
  228 F.R.D. 13 (D.D.C. 2005) ...................................................................................11

12

13

*Pacamor Bearings, Inc. v. Minebea Co.,*
  918 F. Supp. 491 (D.N.H. 1996) ..............................................................................6

14

15

*U. S. ex rel. Barko v. Halliburton Co.,*
  74 F. Supp. 3d 183 (D.D.C. 2014) ............................................................................6

16

*U. S. v. ChevronTexaco Corp.,*
  241 F. Supp. 2d 1065 (N.D. Cal. 2002) ....................................................................8

17

18

19

20

21

22

23

24

25

26

27

28

1     Pursuant to the Court's Order (ECF 238) ("Order"), Lead Plaintiff Norfolk County Council

2  as Administering Authority of the Norfolk Pension Fund ("Plaintiff") hereby submits this

3  Supplemental Brief in support of its Motion to Compel Documents Withheld as Privileged (ECF

4  232-3) ("Motion" or "Mot."), identifying disputes remaining between the Parties following the Order

5  and the Parties' efforts since the Order.[1]

6  **MEMORANDUM OF POINTS AND AUTHORITIES**

7  **I.    INTRODUCTION**

8     In a privilege dispute, the withholding party can rely on *prima facie* assertions for only so

9  long; when credible challenges are brought to the sufficiency of a privilege assertion, someone needs

10  to take responsibility and say *I* wrote this, or *I* provided this legal advice.  *See* ECF 234-3 at 2

11  ("Reply") (collecting caselaw).  This is precisely what the Court required when it Ordered

12  Defendants to produce "each" challenged document with only the legal advice redacted, and to

13  produce for each document "a declaration **by the attorney whose advice was sought or given**."

14  Order.  Once this production was complete, the Court directed the parties to meet and confer and

15  seek to resolve any remaining differences, if possible.  *Id.*  If there were remaining disputes at the

16  end of that process, the Court provided the Parties an opportunity for additional briefing.  *Id.*

17     In response to the Court's Order, the Parties have narrowed the number of documents in

18  dispute from 451 unique documents to 232.  *See* Black Decl., ¶15.[2]  The Parties, however, have been

19  unable to resolve the nature of their dispute as to the remaining challenged documents because

20  Defendants have failed to comply with the explicit terms of the Court's Order and persist in asserting

21  blanket claims of privilege over hundreds of challenged documents.  The largest remaining area of

22  dispute is Defendants' continued withholding of the contents of documents related to Apple's

---

[1]   The "Parties" are collectively, Plaintiff and "Defendants" Apple Inc. ("Apple" or the "Company"), Timothy D. Cook and Luca Maestri.  All terms not defined herein have the same meaning as defined in the Motion.

[2]   All "Black Decl., ¶__" references herein are to the Declaration of Kenneth J. Black in Support of Supplemental Brief in Support of Lead Plaintiff's Motion to Compel Documents Withheld as Privileged, filed concurrently herewith.

SUPPLEMENTAL BRIEF IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO COMPEL
DOCUMENTS WITHHELD AS PRIVILEGED - 4:19-cv-02033-YGR        - 1 -

preannounced miss of billions of dollars in revenue under sweeping assertions that Defendants may cloak the process leading to the preannouncement in a claim of privilege.

First, the Order's plain language required Defendants to produce "for each withheld document. . . a redacted version of the document that redacts out any advice that was sought or given primarily for a legal purpose." Order. Despite this clear Order to redact only the legal advice, Defendants have produced the significant majority of the challenged documents redacted in their entirety. *See* Black Decl., ¶9.

Second, Apple is unable to find anyone who will take responsibility for all but a handful of the documents Plaintiff has challenged. Since the Parties were before the Court, Defendants have produced five new declarations by three declarants.[3] None completely complies with the Order. The Tom Decl. concedes Mr. Tom is not the attorney whose advice was sought or given, and does not identify the attorney(s) from whom legal advice was purportedly sought. The Adams Supp., similarly, describes non-lawyers' requests for "feedback" or "comment" from groups including non-attorneys. With just three exceptions (described herein), Ms. Adams does not say that she provided legal advice or that anyone sought legal advice from her in the challenged documents covered by her declarations. And the Whittington Supp. purports to support the blanket withholding of hundreds of documents by category on vague pretexts, such as non-explicit requests for legal advice to his "colleagues in the legal department." Further, Mr. Whittington now declares that the "loose" files that Defendants insisted in prior briefing had not been sent to anyone, were in fact emailed to various counsel and executives. And while his latest declaration provides some additional superficial detail, in substance the Whittington Supp. and Whittington Decl. are largely near-verbatim repetitions of Mr. Whittington's March 11, 2022 declaration (ECF 233-5), which the Court has already described as "woefully inadequate." *See* ECF 241 at 6:1-3.

---

[3]   On May 13, 2022, Defendants produced declarations from Katherine Adams (Ex. 9, or the "Adams Decl."), David Tom (Ex. 17, or the "Tom Decl."), and Sam Whittington (Ex. 18, or the "Whittington Decl."). On June 15, 2022, Defendants produced supplemental declarations from Ms. Adams (Ex. 10, or the "Adams Supp.") and Mr. Whittington (Ex. 19, or the "Whittington Supp."). All "Ex. _" citations herein are to ECF 232-4 (Exs. 1-6), ECF 234-4 (Exs. 7-8), and the Black Decl. (Exs. 9-19), unless otherwise indicated.

1    Further, Defendants made no effort to comply with another of the Court's instructions, that

2    "[w]ith respect to attached documents, the declaration should establish that disclosure of the redacted

3    material will necessarily reveal an attorney's legal advice or a request for legal advice or is otherwise

4    privileged." Order. For example, as described below, Ms. Adams declares that two attachments are

5    entitled to protection because their parent emails contained requests for legal advice. But Plaintiff

6    did not challenge those parent emails, and Ms. Adams does not say that the attachments themselves

7    reflect requests for legal advice, or that disclosure of the contents of the attachments would reveal

8    anything related to the nature of the legal advice sought.

9    Defendants' production may indicate why no one from Apple has taken responsibility for

10   these documents. As discussed below, many of the documents Defendants have produced in whole

11   or in redacted form indicate that Apple instructed non-attorney employees to copy "silent" in-house

12   counsel on ordinary business emails and to write "Privileged and Confidential" at the top of emails

13   that were not privileged in an effort to improperly shield these documents from future discovery.

14   Defendants have been given every opportunity to comply with their discovery obligations

15   and the Court's Order, yet have denied Plaintiff the documents or declarations that might have

16   formed a basis for resolution of the dispute. Thus, the nature of Parties' dispute remains

17   fundamentally the same, notwithstanding that the Parties have significantly narrowed the number of

18   documents in dispute. With summary judgment and other deadlines approaching, and in light of

19   Defendants' repeated inability to put forward individuals who will take responsibility for

20   Defendants' privilege assertions, Plaintiff asks the Court for an order requiring production of all the

21   challenged documents that remain in dispute.

22   **II.    PROCEDURAL HISTORY**

23   The Court is familiar with the nature of the Parties' dispute: Plaintiff challenged 451

24   documents Defendants had withheld or redacted as protected attorney-client communications, which

25   Plaintiff challenged on five distinct grounds. *See* Motion at 2-3; Exs. 1-5b. The Parties' dispute

26   resulted in the Order requiring Defendants to produce with redactions "each" document challenged

27   by Plaintiff and for each "a declaration by the attorney whose advice was sought or given

28   establishing that the redacted material was primarily for a legal purpose." Order.

1    In response to the Order, on May 13, 2022, Defendants produced declarations from Katherine

2    Adams, David Tom, and Sam Whittington.  Also in response to the Order, on May 14, 2022,

3    Defendants produced 175 documents.  Black Decl., ¶3.[4]

4    Following Defendants' production, the Parties met and conferred in an attempt to resolve

5    their outstanding disputes over Defendants' privilege assertions.  At the first meet and confer, on

6    May 26, 2022, the Parties discussed whether or not Defendants' production of fewer than the 451

7    total challenged documents complied with the Court's Order to produce "each" challenged document

8    in redacted form.  The Parties also discussed the extent to which the May 13, 2022 declarations

9    satisfied the instructions in the Order.  Further, Plaintiff's counsel noted that numerous documents

10   produced by Defendants on May 14, 2022, showed that non-attorneys wrote "Privileged and

11   Confidential" on non-privileged emails that often copied silent in-house counsel, suggesting a

12   practice of applying an inapplicable legal marker to later shield non-privileged materials.  The

13   Parties also discussed removal of non-relevant documents from the dispute.  *See* Black Decl., ¶¶4-5.

14   On June 2, 2022, the Parties met and conferred again.  During this meet and confer,

15   Defendants requested from Plaintiff a time extension to comply with the Court's Order by producing

16   the challenged documents, in wholly or near-wholly redacted form, that they had not produced on

17   May 14, 2022, and to provide new or supplemented declarations that would narrow or resolve the

18   Parties' outstanding disputes.  Black Decl., ¶6.

19   As a result of these meet and confers, on June 3, 2022, the Parties stipulated to an extension

20   of the Order's production and briefing deadlines (ECF 244), which the Court granted on June 6,

21   2022 (ECF 245).  Black Decl., ¶7.

22   On June 6, 2022, Defendants produced the remainder of the challenged documents.[5]  Non-

23   email documents were produced redacted in their entirety.  Emails were produced with everything

24   but the headers (*i.e.*, including the "To:," "From:," and "Subject:" lines) redacted.  Black Decl., ¶9.

25

26   [4]   Note that Defendants' productions and declarations include and address documents that were not
     challenged by Plaintiff in the Motion, such that there may be a mismatch between the numbers of
27   documents challenged and the numbers produced or declared as to.  *See generally* Black Decl.

28   [5]   Two challenged documents were produced at a later date.  *See* Black Decl., ¶12.

SUPPLEMENTAL BRIEF IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO COMPEL
DOCUMENTS WITHHELD AS PRIVILEGED - 4:19-cv-02033-YGR                                    - 4 -
4893-2618-1157.v1

1   On June 15, 2022, Defendants produced the Adams Supp. and Whittington Supp.  Black

2   Decl., ¶10.

3   On June 21, 2022, the Parties met and conferred.  During the meet and confer, the Parties

4   discussed Defendants' failure to produce more than 300 documents with redactions only for

5   attorney-client communications, and the declarations' failure to state which specific attorney

6   provided legal advice, or from whom legal advice was solicited (and limited exceptions where the

7   declarants had done so), and to declare that production of attachments, in whole or in part, would

8   necessarily reveal attorney-client communications.  The Parties again discussed improper copying of

9   "silent" attorneys and mis-designation of documents as "Privileged and Confidential" by non-

10  attorneys.  The Parties were unable to resolve the dispute at the time.  *See* Black Decl., ¶11.

11  This Supplemental Brief followed.

12  **III.    LEGAL STANDARD**

13  In the Ninth Circuit, for a dual-purpose business and legal communication to be protected as

14  an attorney-client communication, the "'primary purpose'" of the communication must be the

15  solicitation or provision of legal advice.  *In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. 2021) ("the

16  'client must consult the lawyer for the purpose of obtaining legal assistance and not predominantly

17  for another purpose'").[6]

18  Consistent with the Ninth Circuit's "primary purpose" standard, a corporation cannot shield

19  documents as privileged merely by instructing employees to label all documents related to a process

20  or project "Privileged and Confidential," or instructing employees to carbon copy (or "Cc:") in-

21  house counsel when discussing that process or project.  *See In re Chase Bank USA, N.A. "Check*

22  *Loan" Conts. Litig.*, 2011 WL 3268091, at *4 (N.D. Cal. July 28, 2011) ("Merely labeling a

23  communication as an 'attorney-client privileged draft' . . . or adding an attorney as a recipient are

24  insufficient to confer privilege when the communication is not otherwise for the purpose of

25  facilitating legal advice or services."); *see also In re Domestic Airline Travel Antitrust Litig.*, 2020

26  WL 3496748, at *6, *15 (D.D.C. Feb. 25, 2020), *report and recommendation adopted*, 2020 WL

27

28  ───────────────

[6]    All citations and footnotes omitted and emphasis added unless otherwise indicated.

SUPPLEMENTAL BRIEF IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO COMPEL
DOCUMENTS WITHHELD AS PRIVILEGED - 4:19-cv-02033-YGR                              - 5 -
4893-2618-1157.v1

3496448 (D.D.C. May 11, 2020) ("Here, many claims of attorney-client privilege involve a situation where a communication was sent to or from an attorney and/or the document was marked as confidential/privileged or attorney-client privileged.  As the law makes clear, however, such designations are not dispositive as to whether or not the attorney-client privilege applies.").[7]

## IV.    SUBJECT AREAS OF OUTSTANDING DISPUTE

On April 15, 2022, the Court Ordered "[i]f the parties are not able to resolve all of their disputes through these efforts, Plaintiff shall file a supplemental brief . . . identifying the remaining disputes."  Order.  Unfortunately, while the Parties have narrowed the number of documents in dispute, the nature of the dispute remains the same.  Defendants continue to assert privilege over documents in their entirety, without having addressed Plaintiff's objections that Defendants have: (1) asserted blanket claims of privilege over an entire process concerning Apple's preannounced revenue miss; (2) redacted non-privileged discussion about punishing iPhone manufacturers Foxconn and Pegatron for leaks about supply cuts, without identifying any lawyers from whom legal advice was purportedly sought; (3) withheld group emails Defendants cannot or will not identify the senders or recipients of; (4) withheld documents from custodial files that Defendants cannot or will not identify the relevant authors, attorneys, or recipients of; and (5) improperly withheld attachments that are either apparently non-privileged or for which Defendants do not provide information establishing an attorney-client relationship.[8]  Additionally, the documents Defendants have produced to date only further demonstrate the merit of Plaintiff's objections.  The Parties' remaining disputes, including those new materials, are set forth below.

---

[7]    *See also Engurasoff v. Zayo Grp. LLC*, 2015 WL 335793, at *3 (N.D. Cal. Jan. 23, 2015) ("the number of recipients, and the fact that the attorney is merely cc'd on emails, suggests the possibility that the emails could be communications regarding business strategy that do not involve the communication or solicitation of legal advice"); *U. S. ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 188 (D.D.C. 2014) (A party "may not shield otherwise discoverable documents from disclosure by including an attorney on a distribution list."); *Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491, 511 (D.N.H. 1996) ("[D]ocuments prepared by non-attorneys and addressed to non-attorneys with copies routed to counsel are generally not privileged since they are not communications made 'primarily for legal advice.'").

[8]    For ease of comparison, Plaintiff uses the same headings used in the Motion and Reply for the following five categories.

**A.      Documents Related to the January 2, 2019 Preannouncement of 1Q19 Earnings**

In the Motion, Plaintiff challenged improperly withheld documents related to Apple's January 2, 2019 pre-announcement of 1Q19 earnings and the "Letter from Tim Cook to Apple Investors," disclosing that poor iPhone sales in China had resulted in a revenue shortfall of up to $9 billion. *See* Mot. at 6-9; Ex. 1. Following Defendants' May 14, 2022 production, and the Parties' agreements based on the declarations and Defendants' representations regarding the non-relevance of certain documents, Plaintiff's challenges to 159 documents relating to the pre-announcement remain fundamentally unaddressed. *See* Black Decl., ¶15 at Bullet No. 1.

Defendants have neither reconsidered nor provided support for their previous claim that they may withhold any documents related to a "process" that in-house counsel "oversaw." *See* Reply at 3-4 (collecting Defendants' and their declarants' own statements admitting to withholding documents related to general oversight of a process). Plaintiff's update to the Court concerning the remaining documents in this category, therefore, is limited to two issues: the noncompliance of Defendants' new declarations with the Court's Order; and Defendants' problematic practices of copying "silent" attorneys and mislabeling documents "Privileged and Confidential."

Defendants' new declarations do not comply with the Order, with certain exceptions that prove by example why the remaining attestations fall short. To start, in most cases the declarations do not identify the relevant attorney**,** let alone provide a "declaration *by* the attorney whose advice was sought or given." Order. This is especially true of the Whittington Supp., which addresses the significant majority of the challenged documents.[9]

In the Whittington Supp., Bullet Nos. 4 and 6 to ¶3 describe some 170 documents as "relating to release of the Cook Letter," and Mr. Whittington admits that only a small minority "include explicit requests to me for legal advice,"[10] while the remainder "were forwarded to me

---

[9]    The Whittington Supp. addresses 179 documents related to the preannouncement, and all but 13 of the 159 that remain in dispute. The Adams Supp. addresses 14 (11 still in dispute), and the Tom Decl. addresses none of the documents related to the pre-announcement. Two challenged documents, Entry Nos. 361 and 362, were not addressed in declarations. *See* Black Decl., ¶12.

[10]    Bullet No. 4 to ¶3 lists Entry Nos. 302, 318, and 324 (Ex. 19, ¶3 at Bullet No. 4), none of which Plaintiff challenged. *See* Ex. 1. Plaintiff is no longer challenging the documents in Bullet No. 6 to

1   (*and/or my colleagues* in the legal department) for the purpose of soliciting legal advice."  Ex. 19,

2   ¶3 at Bullet Nos. 4, 6.  Mr. Whittington's nonspecific assertion that 170 documents were forwarded

3   to him *or* his colleagues constitutes a failure by Defendants to provide a declaration by the attorney

4   from whom legal advice was sought and fails to carry Defendants' burden to establish that the

5   communications are privileged.

6        Moreover, the specific identities of attorneys Mr. Whittington does provide merely confirm

7   that Apple cannot put forward anyone to take responsibility for the challenged documents.   Mr.

8   Whittington, for example, declares, "[o]ther documents in this group include detailed comments and

9   edits provided by Ms. Adams (Nos. 365 and 366), and emails including extensive comments on the

10  draft Cook Letter sent collectively by me, Ms. Adams, and Mr. Andeer (Nos. 389, 391, and 400-

11  10)."  Ex. 19, ¶3 at Bullet No. 6.  Mr. Whittington does not say that these comments or edits were

12  legal in nature.  *See U. S. v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002)

13  ("With respect to internal communications involving in-house counsel, Chevron must make a 'clear

14  showing' that the 'speaker' made the communications for the purpose of obtaining or providing legal

15  advice.").   In any event, Mr. Andeer did not submit a declaration and Ms. Adams, who did, is

16  notably silent on the "extensive comments" Mr. Whittington would attribute to her.

17       Further, where Mr. Whittington's supplemental declaration properly identifies himself as the

18  attorney involved, it normally does so only by reference to his role overseeing a sweeping process.

19  For example, in Whittington Supp., ¶4 Mr. Whittington identifies 57 documents related to "back-up

20  documentation with respect to the factual assertions made in the Cook Letter."  Ex. 19, ¶4.  But Mr.

21  Whittington says only that the documents "contain[] my explicit instructions concerning this

22  project," "reflect efforts by others at Apple, primarily [non-attorneys] Nancy Paxton and Saori

23  Casey, to gather this information at my behest," or that "Ms. Casey was undertaking these efforts

24  pursuant to my directions."  *Id.*, ¶4 at Bullet Nos. 1-2.  Nothing in the declaration supports Mr.

25  Whittington's conclusion that the communications and documents sent pursuant to a "project" to

26

27  ¶3 that were in fact sent directly to Mr. Whittington, and thus plausibly sought his legal advice, *i.e.*,
    Entry Nos. 382, 390, 392-394, 396, 412-416, 514, 521, 523, 525, 527, 531, 572, 576, 579-581, 593,
28  652, 654, 666, 681, 966-969 (Ex. 19, ¶3 at Bullet No. 6).  *See* Ex. 1.

1    collect back-up documentation were sent "primarily for a legal purpose."  *See id.*, ¶4.  And, the

2    information shared in Cook's letter to investors was purely related to business operations and

3    financial performance.  Mr. Whittington provides no reason to believe that his or anyone else's

4    "directions" concerning such issues would be privileged.  *Id.*, ¶4 at Bullet No. 2.

5            The Whittington Decl. and Whittington Supp. make clear that Defendants still feel entitled to

6    withhold documents on blanket claims of privilege asserted over an entire process related to Apple's

7    preannouncement.  Plaintiff thus maintains its challenge to each document that Mr. Whittington does

8    not claim contained a request for legal advice sent to him, or in which he says he himself provided

9    legal advice.

10           Meanwhile, the Adams Decl. and Adams Supp. also fall short in many ways, though they

11   address the basis for privilege specifically enough for Plaintiff to drop its challenge to three

12   documents.  Thus, Plaintiff is no longer challenging Entry No. 297, because the Adams Supp. states

13   exactly who provided legal advice and why: Ms. Adams sent the email, which concerned "various

14   legal considerations relating to a potential update of the Company's revenue guidance." Ex. 10, ¶5.

15   The same is true for Entry Nos. 367 and 368: In the latter, according to Ms. Adams, an Apple

16   employee sought legal advice from Ms. Adams, and in the former, she herself provided "comments

17   on the draft of the letter . . . sent in the context of my efforts to ensure that the Company was both

18   complying with this legal disclose obligations and minimizing legal risk."  *Id.*, ¶6.

19           However, the Adams Decl. and Adams Supp. fall short with respect to other documents

20   related to Apple's preannounced miss.  Plaintiff challenged Entry Nos. 285-291, and 298-300, a set

21   of emails that "include[] communications in which Mr. Cook asked me and Mr. Maestri for feedback

22   relating to topics he planned to cover in an upcoming meeting of the Company's board of directors."

23   *Id.*, ¶4.  To start, it is unclear why ten documents that "include communications . . . relating to

24   topics" could not be produced without redacting the entirety of the contents.  Further, Maestri sent

25   three of the emails, Entry Nos. 298-300, yet Ms. Adams does not say that Maestri solicited legal

26   advice; indeed, she does not address those Maestri emails.[11]  Nor does she say that in each of the

27

28   ───────────────
     [11]   Notably, Plaintiff discovered that Entry Nos. 289-290 were each sent with one or more
     attachments when the documents were produced with everything but the headers removed, but Ms.

1    emails Cook sent, Entry Nos. 288, 291, and 298, that Cook intended to solicit legal advice.  Nor does

2    she explain why Cook's request for "feedback" from her and non-attorney Maestri is legal in nature

3    (the same is true for Entry No. 953).  *Id.*, ¶¶4, 7.  And, though Ms. Adams declares that she provided

4    advice concerning the "legal implications of an announcement of lowered revenue guidance," Ms.

5    Adams only sent three of the seven emails in that set, Entry Nos. 285, 287, and 299, and she does not

6    identify which of the communications reflected that advice.  *Id.*, ¶4.  Ms. Adams' declaration is thus

7    far too generalized concerning a clearly dual purpose (business and legal) thread to warrant redacting

8    each document in its entirety.

9            Concerningly, in light of Defendants' failure to put forth attorneys to take responsibility for

10   the documents they have now redacted in whole, Defendants' production evinces a consistent effort

11   within Apple to mislabel communications in order to later shield them from discovery.  Fifty-four of

12   the 175 non-privileged documents Defendants produced in whole or with *de minimis* redactions on

13   May 14, 2022, were improperly marked "Privileged and Confidential."  *See* Black Decl., ¶3.  For

14   example, one such mislabeled document is an email from Matt Blake, a vice president of finance and

15   investor relations, to Saori Casey, a finance executive, copying Nancy Paxton, head of investor

16   relations, and Mr. Whittington.  That email reads in its entirety:

17           Privileged and confidential

18           Hi Saori,

19           During our meeting earlier this afternoon, Tim asked if we can say anything about
             channel inventory ending lower in Q1'19 than we expected when we provided
20           guidance.
             Can you help us pull together the data on this?

21
             Thanks,
22           Matt

23   Ex. 12.  In this instance, a non-lawyer, Mr. Blake, requests non-legal inventory information from

24   another non-lawyer, Ms. Casey, in order to respond to a request from a third non-lawyer, Cook.  Yet

25   Mr. Blake copies Mr. Whittington and affixes "Privileged and Confidential" to the request.  *See*

26

27   Adams does not address the attachments, and it is unclear whether the attachments have ever been
     produced by Defendants as Defendants have not produced the metadata linking Entry Nos. 289-290
     to their attachments.  *See* Exs. 15-16.

28

1   *Minebea Co. v. Papst*, 228 F.R.D. 13, 21 (D.D.C. 2005) ("'A corporation cannot be permitted to

2   insulate its files from discovery simply by sending a 'cc' to in-house counsel.'").  Nothing in the

3   email itself, nor in Defendants' privilege logs, nor in the Mr. Whittington's March 11, 2022

4   declaration (ECF 233-5), lends any support to Defendants' long-maintained improper legal

5   conclusion that this is a privileged communication.  *See Check Loan*, 2011 WL 3268091, at *4.

6   Additionally, the content of the email, which shows that Mr. Blake was acting under orders from

7   Cook, demonstrates the misleading nature of the description of the document in Defendants'

8   privilege log, *i.e.*, that it was an "[e]mail prepared by employees acting under the direction of in-

9   house counsel regarding guidance."  Ex. 1 (Entry No. 348).

10          In a very similar example, Ms. Paxton starts an email thread marked "Privileged and

11   confidential."  Ex. 11 at APL-SECLIT_00644791.  That email, sent to fellow non-attorney Nick

12   Severino, starts "Hi Nick, Tim has asked us to chase down some data on China retail traffic during

13   Q1."  *Id.*  At some point in the thread – it is unclear from the document as produced – Mr.

14   Whittington was copied on the email.  Again, it was Cook, not an attorney, who requested the non-

15   legal information.  Yet non-lawyers decided to label the emails "Privileged and Confidential" and to

16   copy silent in-house counsel.

17          Defendants are unwilling or unable to put forward someone who will take responsibility for

18   these documents on an individual basis, and many of these documents have been withheld based on

19   improper labeling of privilege by non-lawyers back in 2018 and 2019.  The Court should order the

20   159 documents related to Apple's $9 billion revenue miss that remain in dispute be produced without

21   redaction.

22          **B.**     **Documents Relating to *Nikkei* Article About Supplier Cuts**

23          Defendants have not produced more narrowly redacted versions of, nor modified their

24   position with respect to, the two challenged emails concerning the *Nikkei* Article about iPhone

25   supplier cuts.  Ex. 2; *see also* Ex. 8.  What they have done, in response to Plaintiff's challenge that

26   the emails apparently only concern a "business threat to suppliers who dared to tell the truth about

27   Apple's ongoing woes in China" (Mot. at 9), is modified their story for a third time, via the Tom

28   Decl., as illustrated below:

| Source & Date | Privilege Description |
|---|---|
| Defendants' Privilege Log November 24, 2021 and February 3, 2022 (*see* Mot. at 9) | Redacted email communication reflecting legal advice from in-house counsel ***regarding contract issue***. |
| Defendants' Privilege Log February 23, 2022 (*see* Mot. at 9) | Redacted email communication reflecting legal advice ***from*** in-house counsel ***David Tom regarding response to article***. |
| Winawer Declaration (ECF 233-1), ¶6 March 11, 2022 | Although ***Mr. Tom*** is an attorney, and a member in good standing of the State Bar of California, it is now my understanding that he ***was not acting in a legal capacity*** at the time of the article's publication. The redacted portion of the email referenced in these entries is nonetheless privileged because it describes an ***explicit request by Mr. Tom for legal advice from the legal department***. |
| Tom Decl. (Ex. 17), ¶3 May 20, 2022 | The redacted portions of these documents reflect information pertaining to my communications with Ms. Balasubramaniam, and ***related communications between me and Apple's legal department***, pertaining to potential contractual remedies available under a contract with a supplier. |

The Tom Decl. clearly violates the Court's instruction to provide "a declaration by the attorney whose advice was sought or given." Order. Mr. Tom's declaration attempts to justify the redaction of another Apple employee's email, Priya Balasubramaniam, Vice President of Operations, who sent the email to Jeff Williams, Chief Operating Officer, Cc:ing Mr. Tom, who was not working in a legal capacity, and other non-lawyers. And the Tom Decl. only generally describes "related communications" with unidentified in-house lawyers. Ex. 17, ¶3. Nothing in the Tom Decl. qualifies as a declaration by the attorney whose advice was sought or given.

Further, even if the Tom Decl. complied with the Order, it does nothing to rebut Plaintiff's arguments that these are emails about business operations: "The evidence shows that Cook and his team were furious about this leaked information and, despite confirming its accuracy, sought to financially punish Apple suppliers for the leak." Reply at 5 (citing Exs. 7-8). Defendants should be ordered to produce these two documents without redaction.

### C. Members of Group Emails

Plaintiff continues to challenge 13 documents for which Defendants still cannot or will not identify the members of the Disclosure Committee email group, as required to meet their burden of

1   establishing that the privilege applies and has not been waived, as well as to comply with the Order.

2   *See* Black Decl., ¶15 at Bullet No. 3; Mot. at 10; Reply at 6-8.  According to the Whittington Supp.,

3   each of the documents requests advice from both the Disclosure Committee writ large ("emails

4   relating to ***requests for members of the Company's disclosure committee*** to review draft corporate

5   disclosures"), but also from Mr. Whittington personally ("[m]y understanding is that these emails,

6   and attached draft disclosure materials, were ***sent to me*** for the purpose of soliciting legal advice") –

7   quintessential dual purpose communications that are being withheld in their entirety with no effort to

8   distinguish the privileged legal advice or requests.  Ex. 19, ¶5 at Bullet No. 1; *see also id.*, ¶5

9   ("documents that reflect legal advice from ***me or my colleagues*** in Apple's in-house legal

10  department").  Thus, Defendants again blatantly disregard the Order's instruction to produce "a

11  declaration by the attorney whose advice was sought or given establishing that the redacted material

12  was primarily for a legal purpose."  Order.  The remaining challenged documents must be produced.

13              **D.      Unsent Documents in Non-Lawyers' Custodial Files**

14          Plaintiff challenged seven documents from non-lawyers' custodial files on the ground that

15  Defendants "provide nothing of substance to justify their assertion of privilege: They identify no

16  lawyers, no drafters, no recipients, and no attorney-client communications."  Reply at 9.  Defendants

17  have now produced five of the seven documents Plaintiff challenged, confirming they were never

18  privileged.

19          But Defendants have provided little information of substance for the two remaining files,

20  Entry Nos. 31 and 32.  Ex. 4.  Entry No. 31 is from non-lawyer Tejas Gala's files.  Entry No. 32 is

21  from non-lawyer Adam Talbot's.  Both documents are described in the privilege log as a "[d]raft

22  investor letter reflecting legal advice from in-house counsel."  *Id.*  The Whittington Supp. now

23  describes Entry No. 31 as a draft of the "Cook Letter" sent to Whittington and other lawyers "to seek

24  our legal advice with respect to the contents of the draft."  Ex. 19, ¶3 at Bullet No. 2.  Notably, Mr.

25  Whittington does not say that the draft itself reflected legal advice, or a request for legal advice – just

26  that it was sent to lawyers, in an unidentified email.  And the Whittington Supp. now describes Entry

27  No. 32 as a draft that "reflected feedback provided by Apple in-house lawyers."  *Id.*  Notably, it does

28  not say which in-house lawyers, nor does it say the "feedback" was legal in nature.  Thus, Entry

SUPPLEMENTAL BRIEF IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO COMPEL
DOCUMENTS WITHHELD AS PRIVILEGED - 4:19-cv-02033-YGR                                    - 13 -

1   31 does not reflect legal advice or a request for legal advice, and Defendants do not say which

2   lawyer provided the advice Mr. Whittington says is reflected in Entry No 32.  Again, the declaration

3   does not satisfy the Order.

4        Worse, the Whittington Supp. contradicts Defendants' briefing and representations to

5   Plaintiff.  The Whittington Supp. claims both challenged documents were sent by email: "Document

6   No. 31 was distributed by email . . . Document No. 32 was sent by email."  Ex. 19, ¶3 at Bullet No.

7   2; *see also* Ex. 18, ¶3 (describing both documents as among "the communications identified below,"

8   which "were sent primarily for a legal purpose").  But this directly contradicts what Defendants said

9   in their briefing: "Defendants have explained to Plaintiff on multiple occasions, these documents are

10  simply loose files of privileged drafts of the Cook Letter that do not contain a cover email."  ECF

11  233 at 8.[12]

12       Thus, Defendants fail to provide redacted versions of these custodial file documents as

13  ordered by the Court – a task that should have been straightforward, given the non-legal subject

14  matter of the investor letter preannouncing Apple's revenue miss, and the unlikelihood that an

15  attorney provided legal advice on every line of each draft.  Further, the Whittington Supp.

16  Defendants have now provided contradicts their own briefing.  Entry Nos. 31 and 32 should be

17  produced without redaction.

18       **E.    Non-Privileged Email Attachments**

19       Plaintiff challenged 209 email attachments on the ground that they were facially non-

20  privileged, and that the privilege had not been demonstrated to apply to each attachment.  Mot. at 11-

21  12.  Following Defendants' May 14, 2022 production, Plaintiff's challenges remain as to roughly

22  half of the challenged attachments.  *See* Black Decl., ¶15 at Bullet Nos. 5-6.

23       Defendants provide no proper basis for continuing to withhold the remaining attachments, for

24  two reasons.  First, Defendants have not produced "a declaration by the attorney whose advice was

25  sought or given" for each, or any, of the attachments.  Order.  Second, none of Defendants'

26

27  ───────────────
    [12]   If these documents were in fact sent as attachments, contrary to Defendants' privilege logs, then
    Plaintiff also raises the same objections as made below to the attachments in Exs. 5a-5b.  *Infra*
28  §IV.E.

1   declarations "establish[]" – or even conclude – "that disclosure of the redacted material will

2   ***necessarily reveal*** an attorney's legal advice or a request for legal advice or is otherwise privileged."

3   *Id.*

4          For example, the Whittington Decl., lists the five remaining facially non-privileged

5   attachments, Entry Nos. 142, 218-220, and 488.  Ex. 18, ¶¶4-5.  Entry Nos. 142 and 218-220, titled

6   "Q3'18 External Data Sheet," "Attached Q4'18 external data sheet," "Return of Capital Timeline,"

7   and "Net Sales by Category," respectively, are all attachments purportedly "sent for the purpose of

8   obtaining legal advice regarding earnings materials."  Ex. 5a.  Mr. Whittington, as described *supra*

9   §IV.C., describes each document as simply sent to the Disclosure Committee.  Ex. 19, ¶5.  Mr.

10  Whittington does not say who on the Disclosure Committee was asked for or provided legal advice

11  with respect to each document.  He does not say who created any of these documents or why they

12  did so.  Nor does he state that, let alone explain how, disclosure (or proper redaction) of these

13  documents would reveal privileged communications.

14         Entry No. 488, meanwhile, is an "Installed base commentary from [non-lawyer] Alex

15  Roman."  Ex. 5a.  Mr. Whittington describes that document as among a "group of documents

16  reflect[ing] efforts made to gather back-up documentation with respect to the factual assertions made

17  in the Cook Letter."  Ex. 19, ¶4 at Bullet No. 1.  But Mr. Whittington does not say whether that legal

18  advice, or solicitation of legal advice, is reflected in the document itself, or that the same would be

19  revealed if the document was unredacted.

20         The same deficiencies apply to the Whittington Supp. with respect to the attachments

21  Plaintiff challenged in Ex. 5b, as insufficiently justified.  Entry Nos. 463 (titled "BACKUP

22  VERSION Letter 26 December 200pm.pages"), 466 (no title), 471 ("BACKUP VERSION Letter 26

23  December 200pm.pages"), and 574 ("12_31 edits 615pm.pages) (Ex. 5b), for example, are described

24  in identical fashion as Entry No. 488.  Ex. 19, ¶4.  Nothing in the Whittington Supp. distinguishes

25  these documents, all of which are lumped into his general description of back-up documentation, and

26  which lack any description for why their selective redaction or disclosure would reveal any

27  privileged contents.

28

SUPPLEMENTAL BRIEF IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO COMPEL
DOCUMENTS WITHHELD AS PRIVILEGED - 4:19-cv-02033-YGR                          - 15 -

Nor does the Adams Decl. justify entire redaction of the two attachments it addresses, Entry Nos. 175 and 177 (Ex. 5b).  As Ms. Adams states regarding Entry Nos. 174-177 (concerning two emails and the two challenged attachments thereto):

> Lisa Jackson (Apple's Vice President of Environment, Policy, and Social Initiatives) . . . shared a draft of presentation materials for a planned presentation to the Company's board of directors concerning foreign trade issues, and asked for comment from Mr. Cook and me.  Mr. Cook responded with comments, copying me.

Ex. 9, ¶3.  Significantly, Ms. Adams is clearly describing the *emails*, Entry Nos. 174 and 176, when she describes what Ms. Jackson "asked" for and how "Mr. Cook responded."  But Plaintiff did not challenge Entry Nos. 174 and 176, and Ms. Adams does not describe any privilege that would apply to the *attachments* Plaintiff did challenge, Entry Nos. 175 and 177.  This is clear from the Adams Supp., where Ms. Adams adds a statement that both Jackson and Cook solicited legal advice.  As she stated for Cook: "It is my understanding that in copying me on the communication, Mr. Cook intended to solicit input from me with respect to legal implications." Ex. 10, ¶3.[13]  Thus, Ms. Adams does not say that the attachments Plaintiff did challenge, Entry Nos. 175 and 177, reflect legal advice or a request for legal advice.  Nor does she say their disclosure, or less-than-total redaction, would reveal privileged contents.

Defendants have had months to address Plaintiff's objections to attachments.  Because they have not done so for the remaining challenged attachments, in particular by entirely failing to heed the Court's instruction to "establish that disclosure of the redacted material will necessarily reveal an attorney's legal advice," the Court should order the remaining attachments in dispute produced.

---

[13]   Nor, for that matter, does Ms. Adams state why she apparently ignored Ms. Jackson's and her boss, Cook's, requests for legal advice, or neglected to include descriptions of their requests for legal advice in her first declaration.  *Contrast* Ex. 9, ¶3; *with* Ex. 10, ¶3.

# V.      CONCLUSION

For the foregoing reasons, the Court should order the remaining challenged documents produced without redactions.

DATED:  June 22, 2022                    Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
SHAWN A. WILLIAMS
DANIEL J. PFEFFERBAUM
KENNETH J. BLACK
HADIYA K. DESHMUKH


                                    s/ Kenneth J. Black
                              KENNETH J. BLACK

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com

ROBBINS GELLER RUDMAN
 & DOWD LLP
MARK SOLOMON
TOR GRONBORG
JASON A. FORGE
RAPHAELLA FRIEDMAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
torg@rgrdlaw.com
jforge@rgrdlaw.com
rfriedman@rgrdlaw.com

Lead Counsel for Lead Plaintiff

LABATON SUCHAROW
CAROL C. VILLEGAS
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/883-7524 (fax)
cvillegas@labaton.com

SUPPLEMENTAL BRIEF IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO COMPEL
DOCUMENTS WITHHELD AS PRIVILEGED - 4:19-cv-02033-YGR                    - 17 -
4893-2618-1157.v1

1

2                                       Counsel for Employees' Retirement System of the
State of Rhode Island

3                                       VANOVERBEKE, MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD

4                                       79 Alfred Street
Detroit, MI  48201

5                                       Telephone:  313/578-1200
313/578-1201 (fax)

6                                       tmichaud@vmtlaw.com

7                                       Additional Counsel

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on June 22, 22022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

<u>s/ Kenneth J. Black</u>
KENNETH J. BLACK

ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
Email:  kennyb@rgrdlaw.com

## Mailing Information for a Case 4:19-cv-02033-YGR IN RE APPLE INC. SECURITIES LITIGATION

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Tristan Allen**
  tallen@orrick.com

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **Kevin Michael Askew**
  kaskew@orrick.com

- **Kenneth Joseph Black**
  KennyB@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com

- **Frank H. Busch**
  busch@wvbrlaw.com,abarca@wvbrlaw.com,pallister@wvbrlaw.com

- **Hadiya Khan Deshmukh**
  hdeshmukh@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **William Joseph Foley**
  wfoley@orrick.com

- **Jason A. Forge**
  jforge@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christine M. Fox**
  cfox@labaton.com,ndonlon@labaton.com,lpina@labaton.com,electroniccasefilings@labaton.com,6312349420@filings.docketbird.com

- **Raphaella Friedman**
  rfriedman@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Nicomedes Sy Herrera**
  nherrera@herrerakennedy.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Austin Thomas Jackson**
  ajackson@structurelaw.com,cford@structurelaw.com

- **James Neil Kramer**
  jkramer@orrick.com,lpatts@orrick.com,mwatkins@orrick.com,vmorse@orrick.com,tallen@orrick.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,fgravenson@pomlaw.com,ipareja@pomlaw.com

- **Francis P. McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle Suzanne Myers**
  dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,dmyers@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,jalieberman@pomlaw.com,lobas@pomlaw.com,abarbosa@pomlaw.co

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,jgeorge@rgrdlaw.com,dpfefferbaumRGRD@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,jgeorge@ecf.courtdrive.com,sbloyd@rgrdlaw.c

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Craig Wallace Smith**
  notice@robbinsllp.com,noticerobbinsllp@ecf.courtdrive.com,csmith@robbinsllp.com

- **Mark Solomon**
  marks@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Alexander K. Talarides**
  atalarides@orrick.com,lpatts@orrick.com,casestream@ecf.courtdrive.com,tallen@orrick.com

- **Carol C. Villegas**
  cvillegas@labaton.com,ndonlon@labaton.com,lpina@labaton.com,5739893420@filings.docketbird.com,acoquin@labaton.com,electroniccasefiling@labaton.com,dsal

- **James Matthew Wagstaffe**
  wagstaffe@wvbrlaw.com,abarca@wvbrlaw.com,johnson@wvbrlaw.com

- **Steven Ray Wedeking , II**
  swedeking@robbinsllp.com,notice@robbinsllp.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,kennyb@rgrdlaw.com,jgelman@rgrdlaw.com,rfriedman@ecf.courtdrive.com,ShawnW@ecf.courtdrive.com,smorris@rgrdlaw.com,e_file_sd@i

- **Ariel Brianna Winawer**
  awinawer@orrick.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)