ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
KENNETH J. BLACK (291871)
HADIYA K. DESHMUKH (328118)
JACOB G. GELMAN (344819)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com
jgelman@rgrdlaw.com
         – and –
MARK SOLOMON (151949)
JASON A. FORGE (181542)
RAPHAELLA FRIEDMAN (323324)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
jforge@rgrdlaw.com
rfriedman@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re APPLE INC. SECURITIES LITIGATION | Case No. 4:19-cv-02033-YGR |
| | CLASS ACTION |
| This Document Relates To: | LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL RECONSIDERATION OF INTERLOCUTORY ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| ALL ACTIONS. | |
| | DATE:      TBD |
| | TIME:      2:00 p.m. |
| | CTRM:      1, 4th Floor |
| | JUDGE:    Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .......................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

I.      INTRODUCTION ................................................................................................................1

II.     RELEVANT PROCEDURAL HISTORY ..........................................................................4

III.    ARGUMENT ........................................................................................................................5

        A.      The Ninth Circuit's Decision in *Forescout* Represents a Change of Law in
                Assessing the Context of Certain Alleged False or Misleading Statements ...........5

        B.      *Forescout* Warrants Reconsideration of the Court's Prior Holding that the
                XR Demand Statement Was Inactionable Puffery...................................................7

                1.      Evidence in the Record Confirms the XR Demand Statement Was
                        Material .........................................................................................................8

                2.      Defendants' Proffered Defense Further Supports a Finding that the
                        XR Demand Statement Is Material ...............................................................9

        C.      Evidence in the Record Demonstrates that the XR Demand Statement Was
                False and Misleading ...............................................................................................11

                1.      As of November 1, 2018, Defendants Possessed Significant
                        Negative Data Concerning iPhone XR Demand.........................................11

                2.      Apple Cut the 1Q19 Revenue Forecast by $5.9 Billion Before
                        November 1, 2018 Because of Weak Demand for the iPhone XR ...........12

                3.      Defendants' Purported Defense Confirms the Falsity of the XR
                        Demand Statement ......................................................................................13

IV.     CONCLUSION....................................................................................................................14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ................................................................................13

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
  63 F.4th 747 (9th Cir. 2023) ...................................................................... *passim*

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021),
  *cert denied*, _ U.S. _, 142 S. Ct. 1227 (2022) ........................................................10

*In re Grand Jury*,
  23 4th 1088 (9th Cir. 2021),
  *cert. dismissed*, 598 U.S._, 143 S. Ct. 543 (U.S. 2023) .........................................5

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) .................................................................................9

*Miller v. Thane Int'l, Inc.*,
  519 F.3d 879 (9th Cir. 2008) ...............................................................................13

*No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
  320 F.3d 920 (9th Cir. 2003) ...............................................................................10

*Sepehry-Fard v. Bank of New York Mellon, N.A.*,
  2014 WL 460895 (N.D. Cal. Feb. 3, 2014),
  *aff'd*, 588 F. App'x 685 (9th Cir. 2014).................................................................6

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976) ................................................................................................8

*United States v. Acad. Mortg. Corp.*,
  2018 WL 4852377 (N.D. Cal. Oct. 3, 2018).........................................................6

*United States v. Harding*,
  2015 WL 7734211 (N.D. Cal. Dec. 1, 2015) .........................................................8

*United States v. Martin*,
  226 F.3d 1042 (9th Cir. 2000) ...............................................................................6

**STATUTES, RULES AND REGULATIONS**

28 U.S.C.
  §1292(b) .................................................................................................................5

**NOTICE OF MOTION AND MOTION**

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on a date to be determined, at 2:00 p.m., before the Honorable Yvonne Gonzalez Rogers, United States District Judge, at the United States District Court, Northern District of California, Oakland Division, 1301 Clay Street, Courtroom 1, 4th Floor, Oakland, California 94612, Lead Plaintiff and Class Representative Norfolk County Council as Administering Authority of the Norfolk Pension Fund ("Plaintiff"), hereby brings this Motion, pursuant to Rule 7-9 of the United States District Court for the Northern District of California Civil Local Rules ("L.R."), for an order granting partial reconsideration of the Court's November 4, 2020 Order Granting in Part and Denying in Part Defendants'[1] Motion to Dismiss the Revised Consolidated Class Action Complaint (ECF 123) (the "November 4, 2020 Order").  This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Daniel J. Pfefferbaum ("Pfefferbaum Decl.") and the exhibits thereto, all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Pursuant to L.R. 7-9, and based on the Ninth Circuit's recent decision in *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747 (9th Cir. 2023), Plaintiff respectfully requests partial reconsideration of the Court's November 4, 2020 Order granting in part Defendants' motion to dismiss, specifically the Court's dismissal of an alleged false and misleading statement by Cook as inactionable puffery.[2]

---

[1]     "Defendants" are Apple Inc. ("Apple" or the "Company"), Chief Executive Officer ("CEO") Timothy D. Cook ("Cook"), and Chief Financial Officer ("CFO") Luca Maestri ("Maestri").

[2]     Plaintiff recently submitted the *Forescout* opinion, dated March 16, 2023, for the Court's consideration.  ECF 357-1.  A copy of the Mandate, issued on May 3, 2023, was attached as an exhibit to Plaintiff's Motion for Leave.  ECF 358-2.  Leave was granted to file the instant Motion. ECF 362.

1    In *Forescout*, the Ninth Circuit recently reversed the dismissal of alleged false statements

2  ruled to be inactionable puffery by the district court because of the context in which those statements

3  were made.  In that case, defendants, CEO, and CFO of Forescout Technologies, Inc., ("Forescout")

4  made allegedly false and misleading statements which facially might have been considered vague or

5  immaterial.  But because those alleged false and misleading statements were made during earnings

6  conference calls during which Forescout announced negative information and/or disappointing

7  financial guidance and the alleged false statements were made in response to specific questions from

8  financial analysts – including questions about the basis for Forescout's guidance – the Ninth Circuit

9  reversed the district court's dismissal because "*[g]iven this context, the statements cannot be*

10 *discounted as mere '**puffery**.'*"  *Id.* at 771.[3]

11    The factual circumstances presented in this case are nearly identical to *Forescout*.  On

12 November 1, 2018, Apple held an earnings conference call during which Defendants announced

13 Apple would no longer report iPhone unit sales (a negative surprise to the investment community)

14 and provided 1Q19 revenue guidance substantially below market expectations.  One analyst asked

15 Defendants whether the decision to stop disclosing iPhone unit sales was because the Company

16 expected unit sales to decline.  Another analyst asked Cook and Maestri whether the lower-than-

17 expected 1Q19 revenue guidance was a result of weak demand for the newly launched iPhone XR:

18 "[W]hat, if anything, can we take away from the December quarter guidance related to what you're

19 seeing for early demand on the XR? " ¶57.  Cook responded: "The XR, we've only got out there for,

20 I guess, 5 – 5 days or so at this point and so that it's – we have very, very little data there."  ¶57

21 ("XR Demand Statement").[4]  By claiming that Apple lacked data on the iPhone XR, Cook denied

22 any connection between the disappointing revenue guidance and demand for the new iPhone XR.

23    At the motion to dismiss stage – despite crediting allegations that as of November 1, 2018,

24 Apple had already cut or planned to cut millions of units of iPhone XR production – the Court held

25 the XR Demand Statement appeared to be "accurate" and was "the type of vague, hedging, hyper-

---

26 [3]    All citations and footnotes omitted and emphasis added unless otherwise indicated.

27 [4]    All "¶_" citations herein are to the Revised Consolidated Class Action Complaint for
28 Violation of the Federal Securities Laws (ECF 114) ("Complaint").

1   specific statement[] that [is] not likely to give investors an impression of a state of affairs one way or

2   the other" and is "puffery."  November 4, 2020 Order at 11.

3       Following discovery, Plaintiff sought leave to file an amended complaint with evidence that

4   the XR Demand Statement was both false and material.  The evidence demonstrated that as of

5   November 1, 2018, Apple had significant data showing weak demand for the iPhone XR particularly

6   in Greater China and, because of that data, Apple cut its guidance by $6 billion in the days and hours

7   prior to the earnings conference call.  These facts are not in dispute.  On September 19, 2022, the

8   Court denied Plaintiff's motion for leave to amend, holding that it had previously "found as a matter

9   of law that the [XR Demand Statement] is puffery and therefore non-actionable, regardless of its

10  truth or falsity."  ECF 310 at 2.

11      In light of the recent Ninth Circuit opinion in *Forescout* and the Court's grant of leave,

12  Plaintiff now moves for reconsideration of the Court's November 4, 2020 Order.  While the Court

13  previously assessed the context of the XR Demand Statement, it did so without the benefit of the

14  Ninth Circuit's analysis in another securities fraud claim brought under nearly identical factual

15  circumstances and without the evidence now in the record.  Like *Forescout*, the XR Demand

16  Statement was alleged to be actionable under §10(b) the Securities Exchange Act of 1934

17  ("Exchange Act") and Rule 10-b5 promulgated thereunder.  Like *Forescout*, the alleged false

18  statement was made by CEO Cook on an earnings conference call during which Apple provided both

19  disappointing revenue guidance and additional negative information to investors.  Like *Forescout*,

20  Cook was responding to a direct question from an analyst about the basis for Apple's lower-than-

21  expected guidance.  And, like in *Forescout*, the evidence in the record demonstrates that Cook

22  provided a false and misleading response.  Under the analysis set forth in *Forescout*, the context of

23  the XR Demand Statement establishes that it "cannot be discounted as mere 'puffery.'"  63 F.4th at

24  771.

25      The Ninth Circuit's opinion in *Forescout* constitutes a change of law that requires

26  reconsideration and supports denial of Defendants' motion to dismiss the XR Demand Statement.

27

28

1  **II.      RELEVANT PROCEDURAL HISTORY**

2         On June 23, 2020, Plaintiff filed the operative Complaint alleging that the XR Demand

3  Statement was materially false and misleading:

4              [Analyst:] With the staggered iPhone launch, were you able to discern any
           impact on the Xs and Xs Max from buyers potentially waiting for the XR?  And
5          ***what, if anything, can we take away from the December quarter guidance related
           to what you're seeing for early demand on the XR*** ? . . .

6
                   . . . [Cook:] The ***Xs and Xs Max got off to a really great start***, and we've
7          only been selling for a few weeks.  ***The XR, we've only got out there for, I guess, 5
           – 5 days or so at this point and so that it's – we have very, very little data there***.

8
   ¶57.  Defendants moved to dismiss the XR Demand Statement, arguing it was accurate and Plaintiff
9
   failed to allege scienter, but not on the basis of puffery.  ECF 118 at 1, 9, 12-19.[5]  In its November 4,
10
   2020 Order, the Court granted Defendants' motion with respect to the XR Demand Statement:
11
              Cook's statement that he has "very, very little data" regarding the iPhone XR launch
12         appears to be accurate.  ***In short, these are the type of vague, hedging, hyper-
           specific statements that are not likely to give investors an impression of a state of
13         affairs one way or the other***.

14                 Accordingly, the Court finds that plaintiff fails to allege that the iPhone
           demand statements were false or misleading because ***they are puffery*** and do not
15         address the specific areas that defendants allegedly knew to be doing poorly.

16  November 4, 2020 Order at 11 (emphasis omitted).  The Court denied Defendants' motion with

17  respect to Cook's statement about business conditions and pressure in Greater China, and weak

18  demand for iPhones there (the "Greater China Statement"), and the parties proceeded to discovery.

19         On July 5, 2022, Plaintiff sought leave to file the [Proposed] Second Amended Class Action

20  Complaint for Violation of the Federal Securities Laws (ECF 250-2) to conform to the evidence

21  obtained in discovery, including evidence demonstrating that, by November 1, 2018, Apple had

22  nearly a month of data (not just five days) on extremely weak iPhone XR demand and that the XR

23  Demand Statement created a materially misleading impression by concealing that low demand for

24

25

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [5]      While the Court did not specifically address the falsity of the XR Demand Statement, in
    assessing the prior Corrected Consolidated and Amended Class Action Complaint for Violation of
27  the Federal Securities Laws (ECF 98), the Court generally rejected Defendants' puffery arguments
    because "a party cannot affirmatively create a positive impression of an area it knows to be doing
28  poorly."  ECF 110 at 24.

the iPhone XR was a primary driver of the lower-than-expected guidance. ECFs 250, 279. These facts are now part of the summary judgment record. *See* ECF 322-3.

The Court rejected Plaintiff's request to amend the Complaint, holding that as a matter of law, the XR Demand Statement was inactionable puffery and thus did not analyze the impact of the new evidence:

> ***This Court found as a matter of law that the Data Misrepresentation is puffery and therefore non-actionable, regardless of its truth or falsity.*** (Dkt. No. 123 at 11). Additional facts going to the falsity of the misrepresentation will not make the misrepresentation actionable. The proposed amendments are therefore futile.

ECF 310 at 2. The Court further held: "To the extent plaintiffs disagree with the Court's legal conclusions, the proper motion would have been one for reconsideration." *Id.*[6]

On May 8, 2023, immediately following the issuance of the Mandate in *Forescout*, Plaintiff filed its Motion for Leave to File Motion for Partial Reconsideration of Interlocutory Order (ECF 358) ("Motion for Leave"), on the basis that *Forescout* represented a change of law on puffery. On May 12, 2023, the Court granted Plaintiff's Motion for Leave and set briefing on the instant Motion. ECF 362.

## III.   ARGUMENT

### A.   The Ninth Circuit's Decision in *Forescout* Represents a Change of Law in Assessing the Context of Certain Alleged False or Misleading Statements

L.R. 7-9(b) provides that reconsideration of an interlocutory order of a district court is justified by "a change of law occurring after the . . . order." L.R. 7-9(b)(2). "The relevant question,

---

[6]   While the Court found Plaintiff's motion for leave to amend to be untimely (ECF 310 at 2-3), the XR Demand Statement is already in the operative Complaint and no further amendment should be necessary. While the timing of the instant Motion is based upon the recent issuance of *Forescout*, Plaintiff reiterates it is not seeking further fact discovery in the event that the XR Demand Statement is found actionable. Additionally, there remains no concern of significant delay as summary judgment remains outstanding and no trial date has been set. Indeed, Defendants have continued producing documents as recently as April 14, 2023 – more than a year after the March 16, 2022 discovery cutoff. And, the parties' privilege dispute remains ongoing before both the Court and the Magistrate Judge with respect to different disputes. *See* ECFs 348-349, 351, 353. Notably, Defendants repeatedly sought to delay this action where they believed it could benefit them. *See, e.g.*, ECF 304 (Defendants' motion to certify interlocutory appeal under 28 U.S.C. §1292(b) and for a stay of production); ECF 313 (Defendants' motion for stay pending resolution of petition for writ of mandamus); ECF 319 (Defendants' motion for stay pending *In re Grand Jury*, 23 4th 1088 (9th Cir. 2021), *cert. dismissed*, 598 U.S.\_, 143 S. Ct. 543 (U.S. 2023)).

1   however, is whether [the new authority] changes the falsity analysis under the [applicable] fraud

2   theory." *United States v. Acad. Mortg. Corp.*, 2018 WL 4852377, at *2 (N.D. Cal. Oct. 3, 2018) (in

3   context of False Claims Act *qui tam* suit); *see also Sepehry-Fard v. Bank of New York Mellon, N.A.*,

4   2014 WL 460895, at *2 (N.D. Cal. Feb. 3, 2014), *aff'd*, 588 F. App'x 685 (9th Cir. 2014) (change of

5   law supporting reconsideration should "cite, apply, or consider the federal statutes that were the

6   subject of this Court's . . . orders").  "The authority of district courts to reconsider their own orders

7   before they become final, absent some applicable rule or statute to the contrary, allows them to

8   correct not only simple mistakes, but also decisions based on shifting precedent, rather than waiting

9   for the time-consuming, costly process of appeal." *United States v. Martin*, 226 F.3d 1042, 1049

10  (9th Cir. 2000).  There is no dispute that *Forescout* was issued after the November 4, 2020 Order and

11  directly addressed the analysis of the context of alleged false and misleading statements in securities

12  fraud actions under virtually identical factual circumstances, and instructed that statements like those

13  *Forescout* analyzed cannot be dismissed as puffery at the pleading stage.[7]

14      Like this case, *Forescout* is a securities class action brought under §10(b) of the Exchange

15  Act against Forescout, its CEO, and CFO, for making materially false and misleading statements.  63

16  F.4th at 755, 764.  In *Forescout*, defendants sought to dismiss certain statements on the basis of

17  puffery.  For example, on May 9, 2019, Forescout announced that it exceeded 1Q19 revenue

18  guidance but its 2Q19 projected revenue growth disappointed analysts and investors; it nonetheless

19  raised full-year guidance.  *Id.* at 758.  During Forescout's earnings conference call, an analyst asked:

20  "'Why are you increasing the guidance for the year? . . .  I just want to understand on what basis

21  you're increasing the guidance?'"  *Id.* at 758-59.  The defendant CEO referenced, *inter alia*: "'We

22  have a very large pipeline [of deals].'"  *Id.* at 759.  Similarly, during an August 7, 2019 earnings

23  conference call addressing the percentage of "'ramped up'" (*i.e.*, experienced) sales representatives,

24

---

25  [7]      There can be no dispute that Plaintiff diligently brings the instant Motion.  *See* L.R. 7-9.
    *Forescout* was recently decided and the petition for *en banc* rehearing was denied by the Ninth
26  Circuit fewer than two weeks before Plaintiff filed the Motion for Leave.  *Glazer Cap. Mgmt. v.*
    *Forescout Techs., Inc.*, No. 21-16876, Order (9th Cir. Apr. 25, 2023).  The Mandate in the case was
27  issued on May 3, 2023.  *See Glazer Cap. Mgmt. v. Forescout Techs., Inc.*, No. 21-16876, Mandate
    (9th Cir. May 3, 2023); ECF 358-2.
28

1  the defendant CEO stated: "[T]he percentage of 'ramped-up' sales representatives [is] 'tracking very

2  well for us.'"  *Id.* at 762.

3      In *Forescout*, the Ninth Circuit rejected defendants' argument that phrases such as "'tracking

4  very well'" or "'very large pipeline'" are nonactionable puffery.  The Ninth Circuit held "that the

5  challenged statements 'contravened the unflattering facts in [Forescout's] possession,'" and further,

6  based on their context, could not be dismissed as puffery:

7          [M]any of the challenged statements were made during earnings conference calls
           after Forescout announced disappointing financial predictions or results, and most of
8          the challenged statements were made in response to specific questions asked by
           financial analysts.  ***Given this context, the statements cannot be discounted as mere***
9          "***puffery***."

10  *Id.* at 770-71 (some alteration in original).  *Forescout* dictates how courts in the Ninth Circuit must

11  analyze statements made in similar contexts.

12      **B.      *Forescout* Warrants Reconsideration of the Court's Prior Holding
                 that the XR Demand Statement Was Inactionable Puffery**

13

14      *Forescout* addresses not only the same type of claim as asserted by Plaintiff here, but also the

15  same puffery defense, and does so in a virtually identical factual scenario as presented by the XR

16  Demand Statement.  First, like this action, *Forescout* is an investor class action brought under §10(b)

17  of the Exchange Act, and Rule 10b-5 promulgated thereunder, alleging that Defendants violated the

18  statute by making materially false and misleading statements.

19      Second, in *Forescout*, the alleged false and misleading statements were made by corporate

20  executive defendants on quarterly earnings conference calls attended by analysts and investors.

21  Here, the XR Demand Statement was made by Defendant CEO Cook on Apple's November 1, 2018

22  earnings conference call addressing 4Q18 results and 1Q19 guidance, attended by analysts and

23  investors.

24      Third, the alleged misrepresentations in *Forescout* were made in the context of multiple

25  earnings conference calls during which Forescout disclosed negative results or provided a negative

26  earnings outlook.  For example, in *Forescout*, the May 9, 2019 statement found not to be puffery was

27  made when Forescout exceeded the previous quarter's expectations but provided disappointing

28  guidance for the next quarter.  63 F.4th at 758.  Here, on November 1, 2018, Apple exceeded its

4Q18 earnings guidance but provided 1Q19 earnings guidance that was below consensus expectations (and that Apple internally expected would cause its share price to decline). ECF 294-4. Apple also announced it would no longer report unit sales for the iPhone, which commentators believed was an effort to conceal declining iPhone sales.  ¶¶58-59.

Fourth, *Forescout* addresses alleged misrepresentations that were made in response to questions from financial analysts, including an analyst asking a question specifically to "'understand'" the "'basis'" for Forescout's guidance on the May 9, 2019 earnings call.  63 F.4th at 759.  Here, the XR Demand Statement was made in response to an analyst's question seeking information about the connection (if any) between Apple's disappointing 1Q19 revenue guidance and whether it was driven by weak early demand for the iPhone XR: "[W]hat, if anything, can we take away from the December quarter guidance related to what you're seeing for early demand on the XR?"  ¶57.

Fifth, *Forescout* addresses allegedly false and misleading statements that the district court initially held were vague or otherwise inactionable.  Here, the Court previously held that the XR Demand Statement was immaterial puffery.  But, this holding was not informed by the analysis of context as dictated by *Forescout* or the evidence now in the record.  *Forescout* analyzes statements made in the same context, and the Ninth Circuit held that statements just like the XR Demand Statement "cannot be discounted as mere 'puffery'" because they are material to investors.  As another court in this district recognized in circumstances similar to this one, where the Ninth Circuit issues a decision "that is on all fours with this one, [the court is] bound to follow that decision." *United States v. Harding*, 2015 WL 7734211, at *1 (N.D. Cal. Dec. 1, 2015).

Reconsideration is warranted in light of *Forescout*, as is a finding that the XR Demand Statement was material in the context in which it was made.

### 1.   Evidence in the Record Confirms the XR Demand Statement Was Material

A statement or omission is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449

(1976).  Here, demonstrating its materiality to the market (in addition to the dispositive *Forescout* analysis) multiple analyst reports commented on the XR Demand Statement.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1004 (9th Cir. 2018).  For example, on November 1, 2018, Morgan Stanley Tech parroted Cook's response: "That said, it's too early for XR demand color." Ex. 63.[8]  A November 2, 2018 Bernstein analyst report quoted Cook's response to the analyst in full, including the XR Demand Statement, contrasting it to statements Cook made in prior years regarding previous iPhone launches.  Ex. 65 at 2004.  And Cook's failure to disclose the true state of affairs resulted in other analysts publishing reports expressing optimism for the iPhone XR that was in direct contrast to the true facts known to Defendants.  For example, a November 1, 2018 Guggenheim Report stated "we expect [Apple] to beat a conservative Dec-qtr guide again *on strong demand for the new XR*." Ex. 64 at 2121.  A November 1, 2018 Goldman Sachs report stated: "We believe Golden week smartphone sales in early October were down about 20% Y/Y . . . but this was before *the popular XR launched*."  ECF 297-36 at 1870.  A November 2, 2018 Piper Jaffray report commented "the company appears to be optimistic around launches of . . . the wider array of 'X-gen' iPhones." ECF 297-51 at 1954.  Notably, not a single analyst reported the truth that Defendants had concealed:  XR demand was weak globally; the XR sales forecast was reduced 10 million units in 1Q19; or that the XR was the primary cause for the Company's issuance of guidance below consensus.

### 2. Defendants' Proffered Defense Further Supports a Finding that the XR Demand Statement Is Material

In a (misguided) defense of the Greater China Statement, Defendants have taken positions supporting the materiality, as well as falsity and scienter, of the XR Demand Statement.[9]  First, in seeking to refute liability for the Greater China Statement, Cook testified repeatedly to the

---

[8]    All "Ex. _" citations herein are to the Declaration of Shawn A. Williams in Support of Lead Plaintiff's Opposition to Defendants' Motion for Summary Judgment (ECF 322-4) unless otherwise indicated.

[9]    As Plaintiff previously raised, Defendants seek to utilize the Court's puffery ruling on the XR Demand Statement as both a sword and shield by arguing that the already-held-to-be-actionable Greater China Statement was not false and misleading because the undisclosed poor XR sales were factored into the disappointing 1Q19 revenue guidance.  While this purported "defense" does not absolve Defendants of liability on the Greater China Statement, it does clearly implicate the XR Demand Statement as false, misleading, and material.  ECF 250 at 19.

1   importance of the forecast to investors.  Cook described the guidance as "***the material thing***" to

2   investors and that "***it's the guidance that people . . . are weighing***."  Ex. 86 at 229:22-25; *id.* at

3   231:18-19.  He went on to explain how the guidance was the means by which Apple purportedly

4   communicated information to investors.  For example, when asked whether Apple disclosed that it

5   had "already begun to reduce production plans for the XR" during the November 1, 2018 earnings

6   conference call (which it had not disclosed to investors), Cook immediately pivoted to the guidance:

7           What we did was reduce our forecast and our guidance ***because of all that we
        knew in those first few days of selling of the XR*** . . . .  So ***we lowered the forecast***

8       ***substantially*** because of that to incorporate everything that we knew prior to the call.

9   Ex. 86 at 224:19-225:5; *see also* Ex. 88 at 233:24-234:2 (Maestri: "[W]e incorporated the muted

10  launch of the XR . . . in our revenue guidance . . . .").  Defendants' reliance on the theory that the

11  forecast was ***the*** means to communicate important current information to investors demonstrates the

12  materiality of the XR Demand Statement, which misled investors about the drivers of the guidance

13  and its connection to demand for the iPhone XR.

14          Second, Defendants have repeatedly argued that stock price declines on November 5 and

15  November 12, 2018, were causally related to the XR Demand Statement – thus refuting the

16  immateriality of the XR Demand Statement.  *No. 84 Employer-Teamster Joint Council Pension Tr.*

17  *Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 935 (9th Cir. 2003) ("This [stock price decline], even

18  if slightly delayed, further supports a finding of materiality."); *see In re Alphabet, Inc. Sec. Litig.*, 1

19  F.4th 687, 705 (9th Cir. 2021), *cert denied*, _ U.S. _, 142 S. Ct. 1227 (2022) (investor reaction to

20  disclosure, including 13% price decline, supports materiality of the alleged misrepresentation).  On

21  November 5, 2018, the *Nikkei Asian Review* published an article that Apple was cutting iPhone XR

22  manufacturing by up to 100,000 units per day, or 20%-25%.  On November 12, 2018, an analyst

23  report concerning an Apple supplier cast further doubt on iPhone sales.  ¶¶29-30.  These partial

24  disclosures of the truth immediately caused Apple's stock price to decline by $5.89 on November 5,

25  2018 (¶72), and then by $10.30 on November 12, 2018 (¶75).  In opposing class certification,

26  Defendants argued it was not the Greater China Statement that caused the price decline but the

27  previously-dismissed XR Demand Statement (and the truth about poor iPhone XR demand that it

28  concealed).  ECF 196 at 8 n.5, 17 n.9.  While Plaintiff flagged the incongruence in Defendants'

1   positions (ECF 202 at 8 n.8), Defendants nonetheless submitted the rebuttal expert report of Steven

2   Grenadier opining that Apple's stock price declined on November 5 and 12, 2018, due to

3   information about weak demand for the iPhone XR "*globally*, not just in *Greater China*" and that

4   Plaintiff must "account for confounding information" on November 5 and 12, 2018.  ECF 301-9,

5   ¶¶19(a)-(b) (emphasis in original); ECF 301 at 35 n.27.  These positions regarding causation clearly

6   indicate that Apple views the XR Demand Statement, and the information which it concealed, as

7   material to investors.

8       **C.**    **Evidence in the Record Demonstrates that the XR Demand Statement
    Was False and Misleading**

9           While the Court held that the XR Demand Statement "appears to be accurate" at the motion

10  to dismiss stage, the evidence developed in discovery – and already before the Court in connection

11  with Defendants' motion for summary judgment and Plaintiff's opposition thereto – confirms that it

12  was false and misleading.  November 4, 2020 Order at 11.  The Court previously declined to assess

13  this evidence when Plaintiff sought leave to amend the Complaint, finding the puffery issue

14  dispositive.  ECF 310 at 2 ("Additional facts going to the falsity of the misrepresentation will not

15  make the misrepresentation actionable.").  Because *Forescout*'s analysis makes the

16  misrepresentation actionable, confirmed by the evidence surveyed above, the Court may now

17  consider evidence supporting Plaintiff's allegations that the XR Demand Statement was false and

18  misleading.

19      **1.**    **As of November 1, 2018, Defendants Possessed Significant
    Negative Data Concerning iPhone XR Demand**

20

21          Contrary to Cook's claim of "very, very little data" (¶57), by November 1, 2018, Defendants

22  possessed at least three weeks of alarming data that demand for the iPhone XR was extremely weak.

23  In early October, Apple's iPhone "resellers" – such as major Chinese telecoms – were placing lower

24  than expected orders for the iPhone XR.  Exs. 2, 87 at 79-80.  By October 16, 2018, Cook was

25  already reportedly "concerned about demand risk."  Exs. 8 at 918, 87 at 107-108, 86 at 111-113.

26  Customer pre-orders, which began on October 19, 2018 were "softer than expectations across all

27  reporting partners" and a whopping -79% below pre-orders for the iPhone 8/8+ launch the prior year.

28  Exs. 15-16.  On launch day, October 26, 2018, iPhone XR unbrickings (or activations) were down -

1  62% compared to the iPhone X and down -59% versus the iPhone 8/8+.  Ex. 42 at 818; *see also* Exs.

2  21, 23-24, 30.  By October 27, 2018, due to poor demand, Apple's reseller partners were threatening

3  to reject shipments or refusing to pay for shipments of the iPhone XR.  Exs. 37, 47.  On October 29,

4  2018, Apple V.P. Kevan Parekh wrote that initial iPhone XR sales indicated quarterly sales "lower

5  than anything we have seen in the past 4 years."  Exs. 42, 90 at 201-202.

6  　　　　Because of this weak demand, Apple materially reduced production of the iPhone XR.  On

7  October 29, 2018, Apple told manufacturer Wistron it would not receive any iPhone XR orders.  Ex.

8  74.  On October 31, 2018, Apple directed its largest iPhone manufacturer, Foxconn, to cut or convert

9  iPhone XR production lines.  Ex. 143.  Also on October 31, Apple prepared to cut production for the

10  iPhone XR by 11 million units in 1Q19, and by 32 million units over the next three quarters.  Exs.

11  55, 66, 87 at 41-43, 142.

12  　　　　**2.    Apple Cut the 1Q19 Revenue Forecast by $5.9 Billion Before**
    　　　　　**November 1, 2018 Because of Weak Demand for the iPhone**
13  　　　　　**XR**

14  　　　　Contrary to the XR Demand Statement, which denied that there was a connection between

15  the disappointing guidance and early demand for the iPhone XR, the evidence shows that weak

16  demand for the iPhone XR (particularly in China) was the "primary driver" of the Company's

17  disappointing guidance.  Ex. 88 at 230-231.[10]  On October 27, 2018, the iPhone XR sales forecast

18  was reduced by as much as -7.9 million units sold, causing Conroy to tell Cook: "Obviously these

19  numbers are an ***extreme problem and mainly hinge on the Xr performance***."  Exs. 30, 87 at 183-

20  184.  The same day, Apple cut its 1Q19 revenue forecast from $96.6 to $93.3 billion.  Exs. 25-26.

21  Cook described the situation as "***obviously a disaster***."  Exs. 32, 86 at 141:18-142:15.  Maestri told

22  Cook "[t]he ***whole issue is of course XR***."  Ex. 34.  On November 1, 2018, in the hours before the

23  4Q18 conference call, Defendants again cut Apple's companywide revenue outlook by another $2.6

24  billion, to $90.7 billion in revenue and 70.6 million iPhone units sold.  Exs. 56, 57.  Yet when asked

25

26  ---
    [10]    Questions about the connection between guidance and demand for the iPhone XR were not
27  unanticipated by Defendants.  On the morning of November 1, 2018, prior to the conference call,
    Nancy Paxton ("Paxton"), Apple's then-Head of Investor Relations, sent a list of expected questions,
28  in the order they were expected to be asked, including from Katy Huberty of Morgan Stanley: "Does
    your revenue guidance imply weak demand for XR?"  Ex. 59 at 489.

1    about early demand for the iPhone XR, Defendants did not reveal any of these negative facts.  These

2    facts are more than sufficient to "affirmatively create an impression of a state of affairs that differs in

3    a material way from the one that actually exists."  *Brody v. Transitional Hosps. Corp.,* 280 F.3d 997,

4    1006 (9th Cir. 2002).

5            **3.     Defendants' Purported Defense Confirms the Falsity of the XR
                     Demand Statement**

6

7            In seeking to avoid liability for the Greater China Statement, Defendants admit (and

8    embrace) that they possessed, and took action upon, significant negative information about iPhone

9    XR demand prior to November 1, 2018.  For example, Defendants' summary judgment motion

10   concedes:

11            Early indicators of the XR's performance were below Apple's expectations across
              the globe and taking this and other available data into account, ***Apple lowered its
              FQ1 2019 revenue guidance range from $93-$97 billion to $89-$93 billion*** in the

12            days ahead of the FQ4 2018 Call.  Because Apple lowered its internal sales forecasts
              (and public revenue guidance) for FQ1 2019, it also cut its supply forecasts.  Ex. 85

13            at 232:10-17. . . .  ***These "production cuts" were fully incorporated and factored
              into the revenue guidance*** that was disclosed to investors on November 1, 2018.

14   ECF 293 at 11.[11]

15           Defendants' presentation at oral argument on their motion for summary judgment even

16   included a slide titled "Guidance Reflected Apple's State Of Affairs As Of Nov. 1, Including The

17   XR Launch," which highlighted the substantial weight Defendants placed on early iPhone XR sales:

18            "Between October 23 to November 1, 2018, ***the Company cut its company-
              wide revenue forecast for 1Q19 by $5.9 billion and its expected iPhone sales by 6
              million units***, and Apple and Cook knew that the iPhone XR launch got off to a

19            slower start than expected and **that the forecast was revised downward because of
              it**."

20

21            FQ1 2019 guidance was $89-$93 billion, announced on November 1, 2018.

22
                     - Lowered guidance range to incorporate relevant data from October.

23
     ────────────────────────

24   [11]    Defendants' previous contention that the XR Demand Statement was literally accurate is
     legally insufficient and factually wrong.  ECF 267 at 13; *Miller v. Thane Int'l, Inc.,* 519 F.3d 879,

25   886 (9th Cir. 2008) (statements that are "literally true" may still be actionably misleading due to
     "'"their context and manner of presentation."'").  First, it disregards the context of the statement,

26   which was in response to an analyst question about any connection between Apple's disappointing
     guidance and early demand for the iPhone XR.  Second, as Defendants' arguments make clear, it

27   was not even literally true:  Apple had weeks of data about weak demand for the XR that was severe
     enough to warrant reducing the revenue forecast by $6 billion and forecasted iPhone XR sales by 10

28   million units.

1     - Lowered forecast for XR by ~10 million units.

2   Pfefferbaum Decl., Ex. 1 at 4; *see also* Pfefferbaum Decl., Ex. 2 at 10:2-3; 31:14-20; 60:11-15

3   (Apple had enough information "as it relates to the XR" to "lower[] its unit sales forecast by 9.9

4   million units.").   These arguments illustrate the falsity of the XR Demand Statement as: (i)

5   Defendants possessed – and acted upon – substantial data on the iPhone XR; and (ii) there was a

6   direct connection between the weak guidance and early demand for the iPhone XR.

7   **IV.     CONCLUSION**

8          For the foregoing reasons, Plaintiff respectfully requests that the Court reconsider in part its

9   November 4, 2020 Order and deny Defendants' motion to dismiss with respect to the XR Demand

10  Statement.

11  DATED:  May 19, 2023              Respectfully submitted,

12                                    ROBBINS GELLER RUDMAN
                                        & DOWD LLP
13                                    SHAWN A. WILLIAMS
                                      DANIEL J. PFEFFERBAUM
14                                    KENNETH J. BLACK
                                      HADIYA K. DESHMUKH
15                                    JACOB G. GELMAN

16

17                                          s/ Daniel J. Pfefferbaum
                                      DANIEL J. PFEFFERBAUM
18
                                      Post Montgomery Center
19                                    One Montgomery Street, Suite 1800
                                      San Francisco, CA  94104
20                                    Telephone:  415/288-4545
                                      415/288-4534 (fax)
21                                    shawnw@rgrdlaw.com
                                      dpfefferbaum@rgrdlaw.com
22                                    kennyb@rgrdlaw.com
                                      hdeshmukh@rgrdlaw.com
23                                    jgelman@rgrdlaw.com

24

25

26

27

28

ROBBINS GELLER RUDMAN
  & DOWD LLP
MARK SOLOMON
JASON A. FORGE
RAPHAELLA FRIEDMAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
jforge@rgrdlaw.com
rfriedman@rgrdlaw.com

Lead Counsel for Lead Plaintiff

LABATON SUCHAROW
CAROL C. VILLEGAS
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/883-7524 (fax)
cvillegas@labaton.com

Counsel for Employees' Retirement System of the
State of Rhode Island

VANOVERBEKE, MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify under penalty of perjury that on May 19, 2023, I authorized the electronic

3

filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

4

notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I

5

hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the

6

non-CM/ECF participants indicated on the attached Manual Notice List.

7

 s/ Daniel J. Pfefferbaum

8

DANIEL J. PFEFFERBAUM
ROBBINS GELLER RUDMAN
    & DOWD LLP

9

Post Montgomery Center

10

One Montgomery Street, Suite 1800
San Francisco, CA  94104

11

Telephone:  415/288-4545
415/288-4534 (fax)

12

Email:  dpfefferbaum@rgrdlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4874-0245-9749.v1

## Mailing Information for a Case 4:19-cv-02033-YGR IN RE APPLE INC. SECURITIES LITIGATION

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Tristan Allen**
  tallen@orrick.com

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **Kevin Michael Askew**
  kaskew@orrick.com

- **Kenneth Joseph Black**
  KennyB@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com

- **Frank H. Busch**
  busch@wvbrlaw.com,abarca@wvbrlaw.com,myers@wvbrlaw.com,pallister@wvbrlaw.com

- **Hadiya Khan Deshmukh**
  hdeshmukh@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **William Joseph Foley**
  wfoley@orrick.com

- **Jason A. Forge**
  jforge@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christine M. Fox**
  cfox@labaton.com,lpina@labaton.com,electroniccasefilings@labaton.com,6312349420@filings.docketbird.com,RRamphul@labaton.com

- **Raphaella Friedman**
  rfriedman@rgrdlaw.com

- **Jacob G. Gelman**
  jgelman@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Nicomedes Sy Herrera**
  nherrera@herrerakennedy.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Austin Thomas Jackson**
  ajackson@structurelaw.com,cford@structurelaw.com,cgrady@structurelaw.com

- **James Neil Kramer**
  jkramer@orrick.com,lpatts@orrick.com,mwatkins@orrick.com,vmorse@orrick.com,tallen@orrick.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,fgravenson@pomlaw.com,ipareja@pomlaw.com

- **Francis P. McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle Suzanne Myers**
  shawnw@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,dmyers@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,kperez@pomlaw.com,ahood@pomlaw.com,egoodman@pomlaw.com,jlopiano@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,jgeorge@rgrdlaw.com,dpfefferbaumRGRD@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,jgeorge@ecf.courtdrive.com,sbloyd@rgrdlaw.com

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Craig Wallace Smith**
  notice@robbinsllp.com,noticerobbinsllp@ecf.courtdrive.com,csmith@robbinsllp.com

- **Mark Solomon**
  marks@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Alexander K. Talarides**
  atalarides@orrick.com,lpatts@orrick.com,casestream@ecf.courtdrive.com,tallen@orrick.com

- **Michael David Torpey**
  mtorpey@orrick.com

- **Carol C. Villegas**
  cvillegas@labaton.com,ndonlon@labaton.com,5739893420@filings.docketbird.com,dsaldamando@labaton.com,lpina@labaton.com,kjudd@labaton.com,agreenbaum

- **James Matthew Wagstaffe**
  wagstaffe@wvbrlaw.com,Myers@WVBRlaw.com,pallister@wvbrlaw.com

- **Steven Ray Wedeking , II**
  swedeking@robbinsllp.com,notice@robbinsllp.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,kennyb@rgrdlaw.com,jgelman@rgrdlaw.com,rfriedman@ecf.courtdrive.com,ShawnW@ecf.courtdrive.com,smorris@rgrdlaw.com,e_file_sd@r

- **Ariel Brianna Winawer**
  awinawer@orrick.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)