JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
MICHAEL D. TORPEY (SBN 79424)
mtorpey@orrick.com
ALEXANDER K. TALARIDES (SBN 268068)
atalarides@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     +1 (415) 773-5700
Facsimile:     +1 (415) 773-5759

Attorneys for Defendants Apple Inc.,
Timothy Cook, and Luca Maestri

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Lead Case No. 4:19-cv-02033-YGR<br><br>**DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION OF INTERLOCUTORY ORDER (DKT. NO. 364)**<br><br><u>Hearing</u><br>Date:   None Set<br>Ctrm:   1, 14th Floor<br>Judge:  Honorable Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

                                                                             **Page**

I. INTRODUCTION .......................................................................................................... 1

II. BACKGROUND ........................................................................................................... 2

III. ARGUMENT ................................................................................................................. 3

    A. *Forescout* Does Not Constitute A Change In Law And Does Not Present A Basis For Reconsideration ................................................................................... 4

    B. Plaintiff's "Evidence" Is Improper And Does Not Require The Court To Revisit Its Holding That The Data Statement Is Inactionable As A Matter Of Law ................................................................................................................. 8

IV. CONCLUSION ........................................................................................................... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Asturias v. Borders*,
  2018 WL 1811967 (N.D. Cal. Apr. 17, 2018) ........................................................................ 3

*Carroll v. Nakatani*,
  342 F.3d 934 (9th Cir. 2003) .............................................................................................. 3, 4

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
  399 F.3d 651 (6th Cir. 2005) .................................................................................................. 7

*Costello v. U.S. Gov't*,
  765 F. Supp. 1003 (C.D. Cal. 1991) ....................................................................................... 6

*Dillingham v. Johnson*,
  2017 WL 2404946 (N.D. Cal. June 2, 2017), *aff'd*, 724 F. App'x 608 (9th Cir.
  2018) ...................................................................................................................................... 6

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
  63 F.4th 747 (9th Cir. 2023) ......................................................................................... *passim*

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
  No. 21-16876 (9th Cir. Mar. 30, 2023) .................................................................................. 5

*Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.*,
  2010 WL 11583374 (N.D. Cal. May 5, 2010) ........................................................................ 5

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) .............................................................................................. 1, 8

*Macomb Cnty. Emps' Ret. Sys. v. Align Tech., Inc.*,
  39 F.4th 1092 (9th Cir. 2022) ................................................................................................. 7

*In re Mellanox Techs. Ltd. Sec. Litig.*,
  2014 WL 12650991 (N.D. Cal. Mar. 31, 2014) ..................................................................... 7

*Miller v. Thane Int'l, Inc.*,
  519 F.3d 879 (9th Cir. 2008) .................................................................................................. 2

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ................................................................................................ 4

*Poris v. Novellus Sys., Inc.*,
  2012 WL 13069774 (N.D. Cal. Sept. 14, 2012) ..................................................................... 5

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) ............................................................................................ 4, 5

*United States v. Iron Mountain Mines, Inc.*,
    2010 WL 1854118 (E.D. Cal. May 6, 2010) ............................................................................ 5

*Warshaw v. Xoma Corp.*,
    74 F.3d 955 (9th Cir. 1996) ................................................................................................ 4, 5

**Rules**

Civil L.R. 7-9(b) ................................................................................................................................ 4

Civil L.R. 7-9(c) ............................................................................................................................ 4, 6

## I.   INTRODUCTION

Two-and-a-half years ago, the Court dismissed Plaintiff's claim that Mr. Cook made a materially misleading statement when he said—less than one week after the iPhone XR first landed in stores—that Apple had "very little data" about iPhone XR sales. The Court found that this statement (the "Data Statement") was "puffery" and thus was not actionable because it was "the type of vague, hedging, hyper-specific statement[] that [is] not likely to give investors an impression of a state of affairs one way or the other." Dkt. No. 123 (the "MTD Order") at 11.

Almost one year ago, Plaintiff attempted to resurrect its previously-dismissed allegations about the Data Statement by filing a motion for leave to file a second amended complaint. The Court denied that motion, finding, among other things, that the proposed amendment would be futile because the Data Statement was "puffery and therefore non-actionable, regardless of its truth or falsity." Dkt. No. 310 at 2. The Court also found that "sufficient grounds do not exist to reconsider" its prior ruling dismissing the Data Statement allegations from the case. *Id.*

Despite that finding, Plaintiff is now back for a third attempt, restyling its previously-denied motion for leave to amend as a motion for reconsideration on the purported grounds that a recent Ninth Circuit decision, *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747 (9th Cir. 2023) ("*Forescout*"), "changed the law" concerning puffery statements. But *Forescout* did not change the law. Rather, it merely applied the long-settled legal principle that a court should consider the "context" of a statement in determining whether it is actionable or not. Indeed, the Court's original ruling concerning the Data Statement cited this exact principle in dismissing Plaintiff's claim. MTD Order at 10. *Forescout* breaks no new legal ground and does not present a basis for Plaintiff to seek reconsideration.

Finally, the Court should disregard Plaintiff's attempt to urge the Court to consider evidence in the record on Defendants' pending summary judgment motion in determining the sufficiency of Plaintiff's pleading. Even if these evidentiary arguments were appropriate in connection with a motion to dismiss—and they are not, *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)—they are irrelevant here. The Court previously found that the

Data Statement was inactionable *as a matter of law*, holding that "[a]dditional facts going to the falsity of the misrepresentation will not make the misrepresentation actionable." Dkt. No. 310 at 2. And in any event, Plaintiff's purported evidence does not undermine the Court's previous determination that the Data Statement was "not likely to give investors an impression of a state of affairs one way or the other." MTD Order at 11.

Defendants respectfully request that the Court deny Plaintiff's Motion.

## II. BACKGROUND

After the Court dismissed the majority of the allegations asserted in an earlier complaint, *see* Dkt. No. 110, Plaintiff filed a Revised Consolidated Amended Complaint ("RCAC") on June 23, 2020, *see* Dkt. No. 114. In the RCAC, Plaintiff asserted claims based on statements by Mr. Cook on Apple's FQ4 2018 Earnings Call on November 1, 2018: a statement related to China—"I would not put China in that category" (the "China Statement")—and a statement related to the newly-launched iPhone XR—"we have very, very little data there" (the "Data Statement"). *Id.*[1]

Defendants moved to dismiss. Dkt. No. 118. In opposition, among other arguments, Plaintiff contended that its claims should be allowed to proceed because "[s]tatements that are 'literally true' may still be actionably misleading due to 'their context and manner of presentation.'" Dkt. No. 120 at 6 (citing *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008)). On November 4, 2020, the Court denied Defendants' motion with respect to the China Statement but granted it with respect to the Data Statement. The Court took judicial notice of the entire transcript of the FQ4 2018 Earnings Call, noting "[i]t is only appropriate to consider the full context of the challenged statements." MTD Order at 7; *see also id.* at 2 & n.1. Then, after "examin[ing] the context of [the Data Statement] in detail," the Court concluded that it was "the type of vague, hedging, hyper-specific statement[] that [is] not likely to give investors an impression of a state of affairs one way or the other." *Id.* at 11. Accordingly, the Court found

---

[1] Plaintiff also alleged in the RCAC that Mr. Cook's statement that the earlier-launched iPhone "XS and XS Max got off to a really great start" was a material misstatement. Dkt. No. 114 ¶¶ 57, 66. The Court later dismissed Plaintiff's claims to the extent they were premised on that statement, *see* MTD Order at 11, and Plaintiff does not move for reconsideration of that holding.

that the Data Statement constituted inactionable puffery. *Id.*

On July 5, 2022, after the completion of discovery related to the China Statement, and shortly before the parties were scheduled to begin summary judgment briefing on that claim, Plaintiff moved for leave to file a second amended complaint. Dkt. No. 250. In its proposed second amended complaint, Plaintiff sought to add allegations that purportedly undermined the accuracy of the Data Statement. Dkt. No. 250-2. Defendants opposed that motion. Dkt. No. 267. In its reply, Plaintiff again argued that the Data Statement must be "viewed in context" of an analyst's question on the FQ4 2018 Earnings Call. Dkt. No. 279 at 14-15.

On September 19, 2022, the Court denied Plaintiff's motion. Dkt. No. 310. The Court reiterated that it had previously "found as a matter of law that the [Data Statement] is puffery and therefore non-actionable, regardless of its truth or falsity." *Id.* at 2 (citing MTD Order at 11). Accordingly, the Court held that "[a]dditional facts going to the falsity of the misrepresentation will not make the misrepresentation actionable." *Id.* The Court further noted that to the extent that Plaintiff disagreed with its legal conclusion, "the proper motion would have been one for reconsideration. That said, *sufficient grounds do not exist to reconsider*." *Id.* (emphasis added).

On May 8, 2023, just two days before the hearing on Defendants' Motion for Summary Judgment, Plaintiff moved for leave to file a motion for reconsideration of the Court's Order dismissing the Data Statement. Dkt. No. 358. In its motion, Plaintiff argued that the Ninth Circuit's recent *Forescout* decision "represent[ed] a change of law in assessing the context" of certain statements deemed to be puffery. *Id.* at 5-7.

On May 12, 2023, the Court granted Plaintiff's motion for leave. Dkt. No. 362. Plaintiff filed its motion for reconsideration on May 19, 2023. Dkt. No. 364 (the "Motion" or "Mot.").

### III. ARGUMENT

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted). It is not "a substitute for appeal or a means of attacking some perceived error of the court." *Asturias v. Borders*, 2018 WL 1811967, at *1 (N.D. Cal. Apr. 17, 2018).

1  "Indeed, a motion for reconsideration should not be granted, absent highly unusual
2  circumstances[.]" *Carroll*, 342 F.3d at 945 (internal quotations and citation omitted). A party
3  seeking reconsideration of an interlocutory order must show reasonable diligence and one of the
4  following: (1) "a material difference in fact or law exists from that which was presented to the
5  Court before entry of the interlocutory order for which reconsideration is sought"; (2) "[t]he
6  emergence of new material facts or a change of law occurring after the time of such order"; or (3)
7  "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which
8  were presented to the Court before such interlocutory order." Civil L.R. 7-9(b). A party may not
9  repeat any oral or written argument previously made in relation to the order for which it seeks
10 reconsideration. Civil L.R. 7-9(c).

As discussed below, Plaintiff fails to meet these stringent standards for reconsideration.

### A.  *Forescout* Does Not Constitute A Change In Law And Does Not Present A Basis For Reconsideration

Plaintiff's Motion is premised on the argument that *Forescout* represents a "change of law" by directing courts to examine statements "in context" in determining if they constitute inactionable puffery. *See* Mot. at 5-8. That premise is false. In reaching its conclusion that "[g]iven th[e] context, the statements [at issue] cannot be discounted as mere 'puffery,'" 63 F.4d at 771, the *Forescout* court applied *decades-old* precedent to the particular facts of the case. Specifically, the *Forescout* court quoted and applied a Ninth Circuit decision from 1996 that held that "'general statements of optimism, *when taken in context*, may form a basis for a securities fraud claim.'" *Id.* at 770 (emphasis added) (quoting *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996)).

That the "context" of a statement should be considered in determining whether the statement is inactionable puffery is not novel in the Ninth Circuit. *See, e.g.*, *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (noting "the *uncontroversial proposition* that 'general statements of optimism, *when taken in context*, may form a basis for a securities fraud claim'" (emphases added) (quoting *Warshaw*, 74 F.3d at 959)); *In re Quality Sys.,*

1  *Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017) ("But even 'general statements of optimism, *when taken in context*, may form a basis for a securities fraud claim' when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly." (emphasis added) (quoting *Warshaw*, 74 F.3d at 959)). Indeed, the Court cited these same authorities in its Order on Defendants' Motion to Dismiss. *See* MTD Order at 10 (citing *Quality Sys.*, 865 F.3d at 1143; *Warshaw*, 74 F.3d at 959).

In short, *Forescout* does not make new law—it merely reiterates existing, decades-old precedent and applies that precedent to the facts of that case.[2] There has been no "change in law" that would make it appropriate for the Court to reconsider its previous holdings. *See, e.g.*, *Poris v. Novellus Sys., Inc.*, 2012 WL 13069774, at *2 (N.D. Cal. Sept. 14, 2012) ("The reiteration of law which requires such a contextual analysis does not create . . . a change in law sufficient to merit reconsideration of the Court's claim construction."); *Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.*, 2010 WL 11583374, at *2 (N.D. Cal. May 5, 2010) (no change in law meriting reconsideration where new authority merely "cited well-established Second Circuit case law for the proposition that underlies Plaintiff's present Motion"); *United States v. Iron Mountain Mines, Inc.*, 2010 WL 1854118, at *3 (E.D. Cal. May 6, 2010) (no change in law meriting reconsideration where new authority "simply reiterated the law as established in 1983 by *Chem–Dyne*, and then examined the record to resolve a factual question of whether the record supported apportionment").

Further, in urging the Court to consider the "context" of the Data Statement, Plaintiff is recycling arguments it already made twice previously. *See* Dkt. No. 120 at 6 (Plaintiff arguing in 2020 that "[s]tatements that are literally true may still be actionably misleading due to their context and manner of presentation" (internal quotations omitted)); Dkt. No. 279 at 14 (Plaintiff arguing in 2022 that "Defendants contend that the [Data Statement] was not material by limiting

---

[2] Of note, in their petition for panel rehearing or rehearing *en banc*, the defendants in *Forescout* did not even mention the panel's puffery ruling, much less argue that the panel's ruling changed in any way the Ninth Circuit's well-settled law regarding puffery statements. *See* Appellees' Petition for Rehearing or Rehearing En Banc, *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, No. 21-16876, (9th Cir. Mar. 30, 2023), Dkt. No. 57.

their analysis to the words 'very, very little data' while ignoring the context of the statement, which was in response to an analyst's question about what investors could take away from the disappointing guidance about early iPhone XR demand"). On both occasions, the Court rejected Plaintiff's arguments. In its Motion to Dismiss Order, after "examin[ing] the context of the statement in detail," the Court concluded that the Data Statement was inactionable puffery. MTD Order at 11. Then, in denying Plaintiff's motion for leave to amend its complaint, the Court reiterated its legal conclusion that the Data Statement was puffery "as a matter of law," and further found that "sufficient grounds do not exist to reconsider" that holding. Dkt. No. 310 at 2. "The repetition of arguments that the Court already considered and rejected is not a proper basis for reconsideration." *Dillingham v. Johnson*, 2017 WL 2404946, at *2 (N.D. Cal. June 2, 2017), *aff'd*, 724 F. App'x 608 (9th Cir. 2018); *see also Costello v. U.S. Gov't*, 765 F. Supp. 1003, 1009 (C.D. Cal. 1991) (noting that a motion to reconsider is not a vehicle permitting "either repetitive contentions of matters which were before the court on its prior consideration or contentions which might have been raised prior to the challenged judgment"). The Local Rules explicitly "prohibit[] against [the] repetition of argument." *See* L.R. 7-9(c) ("No motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered.").

Even if *Forescout* did make new law—and it did not—there is nothing in *Forescout* to suggest that the Court's earlier rulings about the Data Statement were erroneous. The statements at issue in *Forescout* were statements of optimism that "contravened the unflattering facts in [Forescout's] possession," *e.g.*, "we have a very large pipeline [of deals]." 63 F.4th at 759, 770 (citation omitted). In fact, the Ninth Circuit held that the statements in *Forescout* "went *beyond* mere optimism by 'provid[ing] a *concrete description* of the past and present state of the pipeline.'" *Id.* (emphasis added; alteration in original; citation omitted); *see also id.* at 759 (Forescout executive stating, "I feel our pipeline is large enough where we can still achieve our capacity expectations without those deals closing in the second quarter.").

By contrast, Mr. Cook's Data Statement did not provide "a concrete description of the past and present state" of Apple's business, nor was it even optimistic, let alone go "beyond mere optimism." Rather, the Data Statement was a neutral observation that there was very little sales data available on the iPhone XR given that the XR had just launched less than a week prior. This Court correctly ruled that "these are the type of vague, hedging, hyper-specific statements that are not likely to give investors an impression of a state of affairs one way or the other." MTD Order at 11.[3]

Moreover, while Plaintiff focuses on the fact that Forescout had provided disappointing guidance for the next quarter on the same call, *see* Mot. at 7-8, the question that the Forescout executive answered was actually about Forescout's full-year guidance, which the company had *increased*. *See Forescout*, 63 F.4th at 758-59 (Analyst asking, "You missed [the second quarter] guidance, but you are raising [the yearly guidance]. You're not keeping … the guidance for the year[;] you're raising the guidance for the year. . . Why are you increasing the guidance for the year?" (alterations in original; second ellipsis added)). Thus, whereas *Forescout* involved an optimistic answer about the company's forecasts in the context of positive guidance, the Data Statement here involved a neutral answer (that did not address Apple's guidance at all) in the context of negative guidance.

Tellingly, Plaintiff's Motion barely addresses the actual language of the statements at issue in *Forescout*, instead focusing on comparatively inconsequential details such as the fact that the statements "were made during earnings conference calls during which Forescout announced negative information" and "were made in response to specific questions from financial analysts."

---

[3] Further, unlike the statements in *Forescout* about the company's sales "pipeline"—a plain reference to *anticipated* sales volume—Mr. Cook's Data Statement is "an opinion" about *actual* sales data for the iPhone XR "that is not capable of objective verification." *See Macomb Cnty. Emps' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1098-99 (9th Cir. 2022) (internal quotations and citation omitted); *see also In re Mellanox Techs. Ltd. Sec. Litig.*, 2014 WL 12650991, at *7 (N.D. Cal. Mar. 31, 2014) (statements found to be unactionable because they "employ terms that are not measurable" or "capable of objective verification and lack a standard against which a reasonable investor could expect them to be pegged" (internal quotations omitted)); *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 671 (6th Cir. 2005) (same where the statements were "too squishy, too untethered to anything measurable, to communicate anything that a reasonable person would deem important to a securities investment decision").

1  *See* Mot. at 2. But the Ninth Circuit in *Forescout* did not announce a rule that no statement can ever be puffery if it was made on an earnings call in which negative information was conveyed, or made in response to an analyst question. To the contrary, *Forescout* merely reiterates long-standing precedent allowing courts to consider each alleged misstatement in its full context. That is precisely what this Court has done, twice before, in connection with the Data Statement. There is no basis for the Court to revisit those earlier rulings.

### B. Plaintiff's "Evidence" Is Improper And Does Not Require The Court To Revisit Its Holding That The Data Statement Is Inactionable As A Matter Of Law

Plaintiff's Motion also urges the Court to "consider evidence supporting Plaintiff's allegations that the [Data Statement] was false and misleading," *see* Mot. at 11, and cites numerous exhibits submitted to the Court in connection with Defendants' pending Motion for Summary Judgment, *see id.* at 11-14. But Plaintiff fails to explain the relevance of this evidence to the Court's determination of the sufficiency of Plaintiff's *pleading*. It is black-letter law that the Court generally *cannot* consider "material outside the pleadings" in connection with a decision on a motion to dismiss. *Khoja*, 899 F.3d at 998.[4] For that reason alone, the Court should disregard Plaintiff's efforts to go beyond the pleadings.

In any event, the Court already has held twice that the Data Statement is puffery as a matter of law, and therefore is inactionable regardless of its truth or falsity. *See* Dkt. No. 310 at 2. Accordingly, no "new evidence" could disturb this legal conclusion. *Id.* ("Additional facts going to the falsity of the misrepresentation will not make the misrepresentation actionable."). This was true when this Court ruled on Defendants' Motion to Dismiss, it was true when this Court denied Plaintiff's motion for leave to amend its complaint, and it is true now.

Even if the Court were inclined to consider Plaintiff's proffered evidence—largely the same evidence Plaintiff cited in support of its motion for leave to amend its complaint, which the

---

[4] Plaintiff does not, and could not, argue that the voluminous evidentiary material referenced in its Motion is subject to judicial notice. Moreover, the Court denied Plaintiff's motion for leave to amend, Dkt. No. 310, and thus the additional factual allegations about the iPhone XR that Plaintiff now relies upon are not contained within the four corners of the operative complaint. Plaintiff's attempt to circumvent the Court's order denying leave to amend is entirely improper.

1   Court denied—this evidence does not render the Data Statement actionably false or misleading.
2   Plaintiff points to its proffered evidence in support of the uncontroversial proposition that Apple
3   had *some* data about the iPhone XR as of November 1, 2018.  But as of that date, the iPhone XR
4   had been on store shelves for only *six days*, which was far less than the 41 days that the iPhone
5   XS and iPhone XS Max had been available, the 363 days that the iPhone X had been available,
6   and the 405 days that the iPhone 8 and iPhone 8 Plus had been available.  Dkt. No. 267 at 13.
7   Further, Mr. Cook's statement was inherently comparative in nature:  he first noted that the XS
8   and XS Max had been "selling for a few weeks," before drawing a contrast with the XR, which
9   "we've only got out there for, I guess, five days or so at this point."  Dkt. No. 114 ¶ 57.  Apple in
10  fact had "very little data" available about the sales performance of the iPhone XR relative to other
11  models and other launch cycles.  And at the time of the earnings call, the iPhone XR had not yet
12  launched in all geographic markets, including Turkey, Brazil, South Korea, and Indonesia.  *See*
13  Dkt. No. 296 ¶ 17.

14          Despite Plaintiff's continued attempts to twist the Data Statement into a statement that
15  "denied any connection between the disappointing revenue guidance and demand for the new
16  iPhone XR," Mot. at 2, Mr. Cook said nothing of the sort.  While focusing entirely on the second
17  half of the analyst's two-part question, Plaintiff overlooks relevant context.  The first question
18  posed to Mr. Cook was whether "[w]ith the staggered iPhone launch, [Apple was] able to discern
19  any impact on the XS and XS Max from buyers potentially waiting for the XR[?]"  Dkt. No. 114
20  ¶ 57.  After noting that the XS and XS Max were off to a "great start," and that there was "very
21  little data" on the XR, Mr. Cook continued his response that "[u]sually, there is some amount of
22  wait until . . . another product shows up[, but in] looking at the data, on the sales data for XS and
23  XS Max, there's not obvious evidence of that in the data as I see it."  *Id.*  When read in its full
24  context, Mr. Cook's entire answer related to the sales mix between the newly-launched iPhone
25  models, and did not address Apple's guidance at all.

26          Plaintiff's purported analyst reports only confirm this point.  *See* Mot. at 9.  In the Morgan
27  Stanley Tech email that Plaintiff cites, beyond correctly noting that "it's too early for XR demand
28

9

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR RECONSIDERATION
CASE NO. 4:19-CV-02033-YGR

color," the analyst did not state or otherwise suggest that Mr. Cook implied no connection between the iPhone XR and Apple's revenue guidance. Dkt. No. 322-7, Exhibit 63 at 7557. In other words, Mr. Cook's "vague, hedging, hyper-specific statement[] [did not] give investors an impression of a state of affairs one way or the other." MTD Order at 11. If anything, the Data Statement actually left investors with a more *negative* impression of Apple's state of affairs. As noted in the Bernstein report that Plaintiff also cites, "executives' comments about new iPhones this quarter was *decidedly more muted* than on previous Q4 conference calls," which resulted in the analyst *lowering* its estimates around iPhone sales. Dkt. No. 322-7, Exhibit 65 at 1995 (emphasis added). That is the opposite reaction one would expect from an actionably misleading statement of optimism.

## IV.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Reconsideration.

Dated:  May 26, 2023

Respectfully submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ James Kramer*
JAMES N. KRAMER

Attorneys for Defendants Apple Inc., Timothy D. Cook, and Luca Maestri