UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | Case No. 4:19-cv-02033-YGR<br><br>ORDER DENYING SUMMARY JUDGMENT<br><br>Dkt. No.: 293 |

Before the Court is defendants' motion for summary judgment. Defendants[1] move to dismiss plaintiff's Section 10(b) claim for failure to show: (1) that the Challenged Statement (*see, infra,* Section I) was false or misleading, (2) that defendant Tim Cook acted with scienter, or (3) that the Challenged Statement caused plaintiff's losses. Defendants argue that the Section 20(a) claim should be dismissed as to all defendants because it is derivative of the Section 10(b) claim and additionally, as to defendant Luca Maestri, because he did not have control over or induce Cook to make the Challenged Statement and acted in good faith. Based on the briefing and with the benefit of oral argument on May 10, 2023, the Court denies the motion.

I. BACKGROUND

The Court assumes the parties' familiarity with the facts of this case and therefore discusses them only as necessary to explain its decision. For ease of reference, the Court includes the question leading to the Challenged Statement made by Cook during Apple's November 1, 2018 call ("the November 1 Call") and the answer containing the Challenged Statement. Wamsi

---

[1] Defendants are Apple Inc. ("Apple" or the "Company"), Timothy D. Cook (Chief Executive Officer, or "CEO," of Apple), and Luca Maestri (Chief Financial Officer, or "CFO," of Apple). "Plaintiff" refers to lead plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund.

Mohan of Bank of America asked:

> "Tim, there has been some real deceleration in some of these emerging markets, partly driven by some concerns around some of the rules the administration is contemplating and partly driven by things that are more specific to China, for instance, like some of the regulations around gaming. So can you talk about how you see the trajectory there for the business and what you think of the initiatives of some companies like Netflix and Fortnite trying to bypass the App Store around subscriptions? And I have a follow-up."

Cook responded, in relevant part:

> "Sure. Great question. Starting with emerging markets. The emerging markets that we're seeing pressure in are markets like Turkey, India, Brazil, Russia, these are markets where currencies have weakened over the recent period. In some cases, that resulted in us raising prices, and those markets are not growing the way we would like to see. To give you a perspective in -- at some detail, our business at India in Q4 was flat. Obviously, we would like to see that be a huge growth. Brazil was down somewhat compared to the previous year. And so I think -- or at least the way that I see these is each one of the emerging markets has a bit of a different story. And I don't see it as some sort of issue that is common between those for the most part. **In relation to China specifically, I would not put China in that category.** Our business in China was very strong last quarter. We grew 16%, which we're very happy with. iPhone, in particular, was very strong double-digit growth there. Our other products category was also stronger, in fact, a bit stronger than even the company -- overall company number. The App Store in China, we have seen a slowdown or a moratorium to be more accurate on new game approvals. There is a new regulatory setup in China, and there's -- things are not moving the way they were moving previously. We did see a few games approved recently, but it's very far below the historic pace. And as you're probably seeing, some of the larger companies there that are public have talked about this as they've announced their earnings as well. We don't know exactly when this will -- the approvals will sort of return to a normal pace. So I would not want to predict that. I do not view, just to try -- for avoidance of doubt here, I don't view that, that issue has anything to do with the trade-related discussions between the countries. I think that is strictly a domestic issue in China . . ."

(Dkt. No. 294-3, Cook Decl. Ex. 3, "Call Transcript" at 7.)

II.  **JUDICIAL NOTICE**

The Court first addresses the parties' requests for judicial notice. (Dkt. No. 293-2; 323-4). Judicial notice "permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute,'" which means the fact is "'generally known,' or 'can be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). A court can, for example, take notice of a matter of public record. *Id.* Courts have discretion in taking judicial notice. *Id.*

Not every fact within a noticed document is judicially noticeable for its truth. *Id.* Relevant here, courts may take judicial notice of documents not for the truth of the matter asserted, but for the purpose of showing that particular information was available to the stock market. *Helitrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) ("We take judicial notice that the market was aware of the information contained in news articles submitted by the defendants.").

### A. DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

Defendants request judicial notice of various publicly available documents including Security and Exchange Commission ("SEC") filings, public statements by Apple, news articles, and analyst reports. (Dkt. No. 293-2.) Plaintiff does not dispute that these documents are appropriate for judicial notice. The majority of its opposition is directed at defendants' interpretations of the facts in these documents. Such arguments are not relevant to whether the documents are judicially noticeable. *See City of Miami Gen. Emps. & Sanitation Emps. Ret. Tr. v. RH, Inc.*, 302 F. Supp. 3d 1028, 1033 n.1 (N.D. Cal. 2018) ("To the extent plaintiffs take issue with the statements in these documents and defendants' arguments based thereon, such argument belongs in plaintiffs' opposition to defendants' motion to dismiss and thus does not persuade on the question of whether judicial notice is proper.").

Plaintiff argues that Exhibit 15 to defendants' request for judicial notice, an article published on 9to5Mac.com about iPhone XR, should not be judicially noticed because it is not cited in defendants' memorandum in support of summary judgment, rather, it is only cited in the declaration of Kevan Parekh. Plaintiff provides no authority indicating that a document must be directly cited in the underlying motion to be judicially noticed. Accordingly, this argument fails. Second, plaintiff argues that the article "does not appear to be a reliable source for the data cited"

3

and that Parekh's declaration does not confirm that the data is accurate. Again, plaintiff provides no authority in support of this argument. The Court **GRANTS** judicial notice of this article for the purpose of determining what information was available to the market.

Plaintiff objects to Exhibits 84, 87, 88, and 89 which are news articles that defendants seek to admit to show "historical stock prices and related publicly available financial information" regarding Apple. (Dkt. No. 293-2 at 2.) Plaintiff responds that these articles are in fact being presented as impermissible and irrelevant character evidence to show that defendants are "admired." (Dkt. No. 323-05 at 4.) In reply, defendants appear to concede that, contrary to their initial request, they have submitted these articles as evidence of defendants' character, but that such evidence may be permissible where "'a party is alleged to have committed essentially criminal acts.'" (Dkt. No. 330 at 2 (quoting *S.E.C. v. Saul*, 1991 WL 218061, at *2 (N.D. Ill. Oct. 16, 1991)).) Defendants assert that these articles indicate that the market held defendants in high regard before and after the alleged fraud, undermining plaintiff's allegations. The Court finds these articles are not relevant or helpful to its analysis and **DENIES** the request for judicial notice as to those exhibits.

Plaintiff opposes judicial notice of Exhibit 92, an article reporting on Chinese gaming regulations on the basis that the Court cannot take notice of the truth of the facts asserted in the article (i.e., that China had tightened gaming regulations). Defendants respond that they seek notice of this document to show what information regarding gaming, and its potential impact on Apple's performance in China, was available to the market, not the actual truth of that information. The Court agrees with defendants and **GRANTS** judicial notice of Exhibit 92.

Plaintiff opposes judicial notice of Exhibit 86, a news article reporting Apple's market cap on September 7, 2022 as "in no way relevant to this case." (Dkt. No. 323-5.) Defendants maintain it shows "Cook has grown Apple's market value by over a trillion dollars during his tenure as CEO" to the benefit of shareholders, which disproves his intent to defraud shareholders. Defendants provide no authority in support of their position. This appears to be another attempt to obtain notice of general and irrelevant character evidence. The Court **DENIES** judicial notice of

Exhibit 86.

Unless otherwise noted above, defendants' request for judicial notice is **GRANTED**. The Court affords the noticed documents their proper evidentiary weight.

### B. Plaintiff's Request for Judicial Notice

Plaintiff seeks judicial notice of various documents "for the limited purpose of showing that the information contained . . . was available to the market on the dates of their dissemination." (Dkt. No. 323-4 at 1.) Defendants oppose judicial notice of Exhibits 63, 94, 124-125, 128, and 130-31. The Court takes plaintiff's failure to file a reply addressing this opposition as a concession to defendants' arguments. The Court **DENIES** judicial notice of Exhibits 63, 94, 124-125, 128, and 130-31. It **GRANTS** judicial notice of the remaining documents. Absent another basis for exclusion, documents in the public record are proper subjects of judicial notice. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). The Court affords them their proper evidentiary weight.

## III. LEGAL FRAMEWORK

### A. Summary Judgment

The standard for summary judgment, including its burdens and inferences is well known and not in dispute.

### B. Section 10(B)

Section 10(b) of the Securities Exchange Act of 1934 prohibits the use of "any manipulative or deceptive device or contrivance" related to the purchase or sale of securities when the use violates the regulations promulgated by the SEC. 15 U.S.C. § 78j(b). Under the operative regulation, Rule 10b–5, it is unlawful for any person "[t]o make any untrue statement of fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b).

"To be viable, a claim brought under § 10(b) and Rule 10b–5 must contain six essential elements: '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4)

reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017) (citation and internal quotation marks omitted).

 **C.** **Section 20(a)**

"[U]nder Section 20(a), a defendant may be liable for securities violations if (1) there is a violation of the Act and (2) the defendant directly or indirectly controls any person liable for the violation." *S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011) (citations omitted). However, "there is no liability if 'the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation.'" *Id.* (quoting 15 U.S.C. § 78t(a)). "The burden is on the defendant to show that both requirements of the good-faith exception are met." *Id.* (citation omitted).

**IV.** **ANALYSIS**

 **A.** **Section 10(b)**

  **1.** **False and Misleading**

Defendants raise three arguments for why the Challenged Statement is not false or misleading: (1) it was a non-actionable opinion, (2) plaintiff's interpretation is untenable, and (3) even assuming plaintiff's interpretation, the Challenged Statement was accurate.

"A false statement is one that is not true. Even if a statement is literally true, it can still be misleading." *In re Tesla, Inc. Sec. Litig.*, No. 18-CV-04865-EMC, 2022 WL 1497559, at *14 (N.D. Cal. Apr. 1, 2022). "[A] statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Retail Wholesale,* 845 F.3d at 1275 (internal quotation marks omitted).

First, defendants argue that because Cook used the words "I would not" when stating "*I would not* put China in that category," the Challenged Statement is an opinion, and thus non-actionable short of a showing that he did not hold the belief he professed, and it is objectively untrue. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017) (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Industry*

6

*Pension Fund*, 575 U.S. 175, 186 (2015)). The Court already rejected this theory on motion to dismiss. Defendants' briefing here does not present new argument or compel a different result.

Defendants' second argument is that the Challenged Statement cannot be understood as plaintiff presents it, that is, as a statement about future rather than past performance, and as a statement about performance in China generally rather than specific to the impact of currency devaluation. There is sufficient evidence from which a jury could find the Challenged Statement was about future performance including that there were numerous other statements by defendants on the call about future performance[2] and that Mohan's question was about the "trajectory" of Apple's performance. Indeed, though defendants offer alternative interpretations of Cook's response, they have offered no alternative interpretation of Mohan's question. Given that Cook was asked a question about the future, a reasonable fact finder could find Cook's response was also about the future.[3] Based on a plain reading of the statement, which was responding to a question about deceleration generally in emerging markets, a fact finder could reasonably interpret the Challenged Statement broadly and in line with plaintiff's position and not as a statement about currency specifically. (*See also* Dkt. No. 341-5 at 5.)

Finally, defendants argue that even if the challenged statement can be understood to mean that Apple was not seeing deceleration in China (including in iPhone sales), that statement was not untrue or misleading because the Guidance released the same day as the Challenged Statement took data about reductions in iPhone demand into consideration and reflected such trends.

---

[2] For example, Maestri said, "I'd like to review our outlook, which includes the types of forward-looking information that Nancy referred to . . ." and then addressed Apple's expected performance. (Call Transcript at 6.) Cook stated "we could not be more bullish about Apple's future." (*Id.* at 4.)

[3] Cook's declaration stating that he was talking about the past does not change this result. (Dkt. No. 294 at ¶¶ 25-30.) It is the role of the fact finder to weigh such evidence. *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1095 (9th Cir. 2010) ("[i]f such a self-serving assertion could be viewed as controlling, there would never be a successful prosecution or claim for fraud"). Similarly, defendants' argument that analyst reports on the November 1 call support their position is not dispositive. *Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir. 1996) ("We do not think that these reports 'effectively counterbalance[d]' defendants' false and misleading statements.").

Through the Guidance, defendants reason, Apple provided the full picture of expected performance in China in 2019, based on existing knowledge, even if Cook did not mention the reduction in iPhone production and orders during the November 1 call. This argument fails to persuade. Defendants provide no authority indicating that disclosure in one context (the Guidance) ameliorates misrepresentation in another (the November 1 Call). Further, incorporating data regarding the iPhone into its overall forecast is different than disclosing that Apple was seeing reductions in demand for iPhone.

In conclusion, defendants have not shown the Challenged Statement false or misleading.

### 2. Scienter

Plaintiff's theory of scienter is that Cook (whose scienter is attributable to Apple) knew facts that made the Challenged Statement false when made. Defendants do not dispute that Cook knew about the production and demand cuts in China when he made the Challenged Statement, they argue that facts indicating that he otherwise acted in good faith prove that he did not have the requisite scienter.

"Scienter may be established [] by showing that the defendants knew their statements were false." *Gebhart v. S.E.C.*, 595 F.3d 1034, 1041 (9th Cir. 2010). "The most direct way to show both that a statement was false when made and that the party making the statement knew that it was false is via contemporaneous reports or data, available to the party, which contradict the statement." *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004). A jury could find plaintiff has done so here. Though defendants are correct that evidence of good faith, including that Cook did not sell any of his Apple stock during the class period, can cut against a finding of scienter, such evidence is to be weighed by the jury. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1060 (9th Cir. 2000) (stating scienter is a "fact-specific" issue which should ordinarily be left to the trier of fact); *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003) ("Scienter can be established even if the officers who made the misleading statements did not sell stock during the class period") (citing *Hanon v. Dataprods. Corp.,* 976 F.2d 497, 507 (9th Cir.1992)).

Accordingly, defendants' scienter argument fails.

### 3. Loss Causation

Defendants next argue that plaintiff cannot show loss causation, that is, that the misrepresentation was a substantial cause of plaintiff's financial loss because the reduction in stock price during the class period had to have been the result of factors that occurred after November 1.

"To prove loss causation, plaintiffs need only show a causal connection between the fraud and the loss [citation] by tracing the loss back to the very facts about which the defendant lied." *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (cleaned up).

Defendants maintain that because the November 1 Guidance was accurate until mid-November, the eventual diversion from its projections after mid-November must have been due to alternative, unforeseen causes. This argument fails for at least two reasons. First, there are material disputes of fact regarding the reliability of the Guidance. Just because the accounted for all available data as of November 1 does not mean that the predictions it made based on that data accurately predicted how Apple would perform under conditions known as of November 1. Indeed, there were concerns at Apple that prior product performance had not provided an accurate model for predicting XR performance. (Dkt. No. 323-3, Plaintiff's Response to Defendants' Statement of Facts, Nos. 22, 59.) Further, the Guidance's short-term accuracy is not dispositive of its long-term accuracy.

Second, in his January 2, 2019 public letter, Cook explicitly attributed the decrease in stock value at least in part to decreased sales in China in November due to a slowing economy. (Dkt. No. 322-12, Ex. 123 ("most of our revenue shortfall to our guidance, and over 100 percent of our year-over-year worldwide revenue decline, occurred in Greater China across iPhone, Mac and iPad. China's economy began to slow in the second half of 2018").) The record shows that defendants knew about these potential risks to iPhone sales before November 1. A reasonable jury could find that failure to disclose these risks caused plaintiff's harm.

### B. Section 20[4]

Defendants argue that Maestri is entitled to summary judgment on the Section 20(a) claim because he does not control Cook and is therefore not responsible for any violation caused by Cook's statement. The Court already addressed and rejected this argument on motion to dismiss. (Dkt. No. 123 at 22.) Plaintiff's claim is based on Maestri's role as a control person for *Apple* not Cook. Apple is also a person liable for the Challenged Statement.[5]

Defendants further fail to prove Maestri is entitled to the good-faith exception. Facts going to Maestri's good faith, such as that he did not sell stock during the class period, are for the fact finder to weigh. Similarly, defendants have not shown Maestri, who prepared for the call with Cook, did not "directly or indirectly induce" the statement. Additionally, defendants did not respond to plaintiff's argument that under the indirect participation rule articulated in *Flood v. Miller*, Maestri may be liable for his failure to correct the Challenged Statement. *Flood v. Miller*, 35 F. App'x 701, 703 (9th Cir. 2002) (stating "inaction in the form of a failure to supervise can ... result in secondary liability") (citation and internal quotation marks omitted). The Court deems that silence as a concession.

The Court denies the motion for summary judgment on this claim.

### V. CONCLUSION

In conclusion, the motion for summary judgment is **DENIED**.

This terminates docket number 293.

**IT IS SO ORDERED.**

Dated: June 26, 2023

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE

---

[4] Defendants also argue that because the Section 20(a) claim is derivative of the Section 10(b) claim, all defendants are entitled to judgment on the 20(a) claim if judgment is granted based on Section 10(b). Given the denial of summary judgment on Section 10(b), this argument is moot.

[5] As addressed on dismissal, the "definition of 'person' under the Act encompasses a 'company.'" *S.E.C. v. Todd*, 642 F.3d 1223 (quoting 15 U.S.C. § 78c(a)(9)).