UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | Case No.  4:19-cv-02033-YGR<br><br>ORDER ON MOTIONS TO EXCLUDE<br><br>Dkt. Nos.: 292, 301 |

Before the Court are the parties' motions to exclude expert opinions.  (Dkt. Nos. 292, 301.) For the reasons given herein defendants' motion is denied and plaintiff's motion is granted in part and denied in part.

I. **LEGAL FRAMEWORK**

Federal Rule of Evidence 702 permits expert opinion testimony by a witness who is qualified and offers a relevant and reliable opinion.  An expert witness may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.  The proponent of expert testimony has the burden of proving admissibility.  Fed. R. Evid. 702, Advisory Committee Notes (2000 amendments).  "An expert should be permitted to testify if the proponent demonstrates that: (i) the expert is qualified; (ii) the evidence is relevant to the suit; and (iii) the evidence is reliable."  *Perez v. Rash Curtis & Assocs.*, No. 16-cv-03396-YGR, 2019 WL 1491694, at *3 (N.D. Cal. Apr. 4, 2019) (referencing *Thompson v. Whirlpool Corp.*, No. C06-1804-JCC, 2008 WL 2063549, at *3 (W.D. Wash. 2008) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90 (1993) ("*Daubert I*")).

Trial judges have discretion to determine reasonable measures of reliability.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999).  *Daubert I* and Rule 702 also require that expert testimony be "relevant to the task at hand" and "fit" the facts of the case.  *Daubert I*, 509 U.S. at

591, 597. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id*. at 591. The "test of reliability is flexible and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case" rather the "list of factors was meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on "the particular circumstances of the particular case." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), as amended (Apr. 27, 2010) (internal quotation omitted).

Additionally, Paragraph 11 of this Court's standing order for civil cases reads:

> **Daubert Motions.** Each side is limited to three Daubert motions throughout the entire case absent leave of court. Daubert motions *must clearly specify the paragraphs or portions of the report that the party seeks to exclude*. Parties are reminded that issues going to the weight and credibility to be given to a report are not proper bases to bring a Daubert motion.

(Emphasis supplied.)

Here, the Court allowed the parties to submit omnibus orders challenging more than three experts. (Dkt. No. 288.) It did not relieve the parties from the requirement that they clearly identify the opinions being challenged.

## II.   DEFENDANTS' MOTION TO EXCLUDE

Defendants move to exclude opinions of two of plaintiff's experts: Frank Partnoy and Dr. Oded Shenkar. (Dkt. No. 292; Dkt. No. 292-2, Partnoy Rebuttal; Dkt. No. 292-6, Shenkar Report.) The Court addresses each in turn.

### A.   Frank Partnoy

Defendants first argue the opinions referenced in paragraphs 9-21 of the Partnoy Rebuttal should be excluded as improper legal opinions because Partnoy opines that the experts he is rebutting, Alex Gauna and Brett Trueman, do not rely on any reliable methodology or principles. (Dkt. No. 292 at 2.) Though a few sentences in the challenged opinions use language from Federal Rule of Evidence 702, they are not legal opinions. (*See, e.g.,* Partnoy Rebuttal at ¶ 9 (stating Gauna and Trueman "do not describe any reliable methodology, or reliable principles and methods, that they applied in forming their opinions and conclusions, or any principles and

2

methods that another expert could follow to test or replicate their opinions").) The challenged opinions include detailed analysis of what he sees as the shortcomings of the other experts' opinions. Partnoy is making a substantive critique of the methods employed by the other experts, which is often the central role of a rebuttal expert. He is not simply stating as a matter of law that they are inadmissible under *Daubert*.

Defendants additionally seek exclusion of the opinions in paragraphs 25-26 and 28-31 because they go beyond rebuttal of defendants' experts. Defendants argue that Partnoy improperly refers to media articles and reports about the November 1, 2018 call that were not referenced by defendants' experts. This is not improper. Partnoy refers to these sources as a critique of defendants' experts' methodology. Defendants' experts only looked at a certain kind of analyst report during a specific period of time after the call as a basis for their opinions on how the public perceived the Challenged Statement. Partnoy argues that these limitations were arbitrary and that a broader view undermines their findings regarding how the Challenged Statement was understood. Thus, his references to other sources is directly responsive to their opinions.

Accordingly, the motion is **DENIED** as to Partnoy.

**B.   ODED SHENKAR**

Defendants argue that Shenkar's opinions include improper assertions about defendants' subjective knowledge.[1] "Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind." *Lanard Toys Ltd. v. Anker Play Prod., LLC*, No. CV 19-4350-RSWL-AFMX, 2020 WL 6873647, at *7 (C.D. Cal. Nov. 12, 2020) (citation and internal quotation marks omitted) (collecting cases). However, ["g]enerally, 'state of mind' and 'intent' objections are better ruled on at trial: the context of the testimony and the purposes for which it is offered are critical." *In re Juul Labs, Inc. Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 19-MD-02913-WHO, 2022 WL 1814440, at *14 (N.D. Cal. June 2, 2022). Opinions premised on what a defendant

---

[1] Defendants only identify paragraphs 75, 91, 103, 116, 123, 129, and 172, but purport to challenge any paragraphs in which Dr. Shenkar makes improper assertions regarding knowledge or state of mind. The motion is denied as to any opinions not specifically identified. It is not the role of the Court to scour the report *sua sponte* for potential problems.

knew at a certain time may be appropriate where reasonably based on admissible evidence. *Id.* (leaving until trial determination of whether expert could opine regarding what defendant knew regarding health effects).

The opinions defendants identified do not go to intent or motive, they are statements regarding what Apple must have known at certain times based on the evidentiary record. Accordingly, the Court does not find exclusion at this time appropriate and denies the motion on this basis.

Defendants also move to exclude opinions in paragraphs 4, 14, and 52-63.[2] They argue Shenkar may not opine on certain economic issues in China as he is a sociologist and not an economist. Specifically, they challenge his expertise on "economic trends, and in particular, their impact on the Chinese smartphone market." (Dkt. No. 292 at 7.)

Shenkar is qualified to give the challenged opinions. He is an expert in Chinese sociology with a focus on business. His background and experience sufficiently prepare him to make the challenged opinions, which are his opinion regarding what studies and other sources say about the general economic climate in China. Shenkar grounds these opinions in citations to various sources, none of which defendants challenge. Accordingly, the Court finds the opinions adequately supported and within Shenkar's expertise.

Accordingly, the motions is **DENIED** as to Shenkar.

Defendants' motion to exclude is therefore **DENIED** in its entirety.

### III.    PLAINTIFF'S MOTION

The Court first addresses three issues relevant to multiple experts. First, to the extent plaintiff seeks to exclude experts based on relevance because they opine on the accuracy of the November 1, 2018, 1Q19 Guidance ("Guidance"), the motion is denied. The accuracy of the Guidance and the extent to which it accounted for factors that plaintiff alleges were not adequately disclosed through the Challenged Statement are relevant to various of defendants' defenses,

---

[2] Again, though defendants request the Court strike all opinions in which Dr. Shenkar opines improperly on the Chinese economy, the Court only addresses those paragraphs which defendants specifically identify and denies any other as procedurally not properly raised.

including that defendants did not act with knowledge or intent, which is relevant to scienter. Similarly, the Court rejects plaintiff's argument that opinions regarding whether factors and events subsequent to the Challenged Statement are irrelevant and prejudicial. Though plaintiff is correct that such opinions are not relevant to determination of what defendants knew when the Challenged Statement was made, they are relevant to issues such as loss causation. Plaintiff must show that the Challenged Statement caused its loss. Whether other events subsequent to November 1 and before the end of the class period impacted changes in the value of Apple's securities is relevant.

Second, plaintiff appears to seek to exclude any opinions on the accuracy of the Challenged Statement as interpreted by defendants (that is, that the Challenged Statement was retrospective and/or about countries experiencing currency value fluctuation). While plaintiff is correct that experts may not opine on Cook's *intent* in making the statement, or what he thought the statement meant, they may opine on whether a given interpretation of the statement is factually supported.

Third, to the extent plaintiff seeks to exclude opinions without adequately identifying the specific paragraphs at issue, the motion is denied. In line with this Court's standing order, the Court limits its review of plaintiff's motion to opinions that are clearly identified.

### A.    DENNIS YANG

Dennis Yang, Ph.D. was hired by defendants to opine on macroeconomic conditions in China during the second half of 2018. (Dkt. No. 301-2, "Yang Report.")

Plaintiff does not clearly identify the portions of the Yang Report it seeks to exclude. (*See, e.g.,* Dkt. No. 301 at 3 (stating at one point that "much of" the testimony is unreliable and irrelevant and later that the entire report is unreliable and irrelevant).) The Court has considered whether each argument raised is a basis for excluding the entire report or, if identified, the specific paragraphs. As with the defendants, the Court will not scour the record to identify objectionable opinions not specified by plaintiff. While plaintiff raises numerous objections to Yang's proffered testimony, his qualifications as an expert on the Chinese economy is not one of them.

// //

### 1. Opinions Framing Plaintiff's Claims

Plaintiff argues that Yang's statement of plaintiff's theory of the case as reflected in paragraph 7 is false and misleading. (*See* Yang Report at ¶ 7.) The Court agrees. Yang is excluded from testifying as to his articulation of plaintiff's case as it is misleading. The motion is **GRANTED** as to the second sentence of paragraph 7. Plaintiff has not identified any other opinions it seeks to exclude on this basis.

### 2. Opinions Regarding Accuracy of the Challenged Statement

Plaintiff seeks to exclude the opinion in paragraph 99 from the "Conclusion" Section on the ground that it makes a determination of fact that is to be decided by the jury. This opinion states:

> 99. Based on the evidence I have described above, I have concluded that the statements made by Mr. Cook on November 1, 2018 were accurate and Apple's sales of iPhones in China were significantly negatively affected during November and December of 2018 due to unexpected events and the unexpected weakening of the Chinese economy.

The Court agrees. Whether the Statement was accurate depends on the Statement's meaning, which is disputed. The opinion goes too far in addressing an ultimate issue of fact which is the province of the jury. It is for the jury to determine both the meaning of the Statement and whether the facts indicate it was accurate. Accordingly, the motion is **GRANTED** as to the opinion in paragraph 99.

### 3. Opinions Regarding Huawei Chief Financial Officer ("CFO")

Plaintiff identifies several grounds to exclude opinions regarding the impact on iPhone sales resulting from the arrest of Huawei's CFO. (Dkt. No. 301 at 8, identifying Yang Opinions 78-84 and 98.) Huawei is a competitor of Apple. First, plaintiff argues these opinions are irrelevant because the arrest took place in December, after the Challenged Statement.

While the arrest of the CFO of Apple's competitor after November 1 is not relevant to a determination of what Apple knew as of November 1, it is relevant to other elements of plaintiff's claims and defendants' defenses. Plaintiff must show that the Challenged Statement caused its loss. Whether events after November 1 and before the end of the class period impacted changes in

the value of Apple's securities is therefore relevant.

Second, plaintiff argues that Yang's opinions are unreliable because he does not consider evidence that certain Apple executives did not think the arrest impacted iPhone sales. Experts are not required to consider all evidence in the record. *In re Korean Ramen*, 281 F.Supp.3d 892, 931 (N.D.Cal. 2017) ("That [expert] did not address (or review) deposition testimony where defendants' employees testified to matters that purportedly undermine some of his opinions or assumptions does not make his testimony excludable. Those are grounds for cross-examination."). The topic is one for cross-examination, not exclusion.

Third, plaintiff argues that Yang provides no methodology, analysis, or evidence supporting his opinion (stated at paragraphs 84 and 98) that the arrest had actual impact on iPhone sales. Plaintiff misunderstands the basis for his opinions. Yang has been working in this area for decades. It is based upon that wealth of experience that he opines on the impact of the arrest. In this arena scientific modeling is not required. That Yang made reference to articles stating that consumers were less likely to buy iPhones after the arrest as well as a survey regarding consumer intent to buy Apple products, merely contributes to his overall opinion; they cannot be viewed in a vacuum from his overall expertise. Again, the issue is one of weight, not admissibility. The motion is denied as to the opinions reflected in paragraphs 84 and 98.

4.  Opinions Regarding Unexpected Changes in the Chinese Economy

Plaintiff moves to exclude opinions regarding unexpected changes to the Chinese economy and identifies paragraphs 10-11, 45, 66, 71-74, and 98-99.

First, plaintiff argues these opinions are contrary to the opinions of defendants' other experts and that the data he relies on could support a different conclusion. These arguments go to weight not admissibility.

Second, plaintiff argues that Yang does not have a valid methodology for concluding that changes to the Chinese economy were unexpected. The Court disagrees. Yang explains that he relied on various sources including articles and publicly available statements from various companies operating in China in the relevant period. The critiques raised by plaintiff, such as that

1    Yang does not clearly define what the expected macroeconomic conductions were for the relevant
2    period or to whom exactly the economy's performance was unexpected (e.g., consumers,
3    economics, investors) are relevant to weight and are properly raised in a rebuttal report. Plaintiff
4    may cross-examine. The motion is denied as to these opinions.

### 5. Opinions Regarding Stability of Chinese Currency

Plaintiff argues that Yang's opinions regarding stability of the Chinese currency during the class period are irrelevant and prejudicial. The Court disagrees. The stability of the currency is relevant to defendants' defense that the Challenged Statement was related to changes in currency and accurately represented Apple's knowledge at the time regarding same. The motion is denied as to these opinions.

Accordingly, as stated herein, the motion is **GRANTED IN PART** in part and **DENIED IN PART** at to Yang.

### B. ALEX GAUNA

Alex Gauna, MBA, opines on various topics related to sources of information on the value of a stock, including analyst reports and corporate disclosures. (Dkt. No. 301-4, "Gauna Report.") In plaintiff's introduction to this part of its motion, it asserts that Guana's "testimony would be unhelpful and misleading to a jury and should therefore *be entirely excluded*." (Dkt. No. 301 at 11 (emphasis supplied).) However, plaintiff's arguments are only relevant to certain of Guana's opinions. Accordingly, the motion is denied to the extent it seeks to exclude the entire report.

### 1. Opinions Regarding Disclosure Requirements

Plaintiff objects to the opinions reflected in paragraphs 12(d), 32, 35-36, 39, and 41 on two main grounds. The Court addresses each in turn.

First, plaintiff asserts that these opinions are irrelevant and misleading as SEC disclosure laws are not at issue. As defendants note in their opposition, understanding what information is provided in SEC disclosures may help the jury understand what information was available to the market. SEC disclosures are not irrelevant simply because they are not the basis for plaintiff's claims.

Second, plaintiff argues that these opinions impermissibly opine on what the law requires. They are therefore excludable as legal conclusions and as outside Gauna's expertise. The Court agrees that parts of these opinions impermissibly opine on what the law requires, are outside Gauna's expertiece, and further, do so in a vague manner likely to confuse or mislead a jury. The motion is **GRANTED** as to the first sentence of paragraph 35 to the extent it opines on what companies are "required" to do ("Public companies *are not required to* — and generally do not — provide their disclosures in a uniform and standardized fashion."), the first two sentences of paragraph 39 ("It is not a regulatory requirement for management to provide any guidance . . . no guidance at all."), the first sentence of paragraph 41 ("There are no specific parameters or formats required by any regulatory body providing guidance . . . .") and all of paragraph 32 except for the first and last sentences on this basis.

If these are jury issues, and a proper statement of law, a party may request a jury instruction.

The motion on this basis is otherwise denied. The remaining challenged opinions address certain industry norms, the direct and indirect benefits of conducting conference calls, norms in addressing disclosure requirements, and the competitive value and risk to companies of disclosing certain information. They do not construe the law or its requirements.

        2.        Opinions Regarding "Intra-quarter Updates"

Plaintiff argues that the opinions reflected in paragraphs 45, 61, 63, and 65 should be excluded as irrelevant and misleading because they characterize the Challenged Statement as "intra-quarter results or an intra-quarter forecast." (Dkt. No. 301 at 13-14.) Plaintiff states that it does not allege the Challenged Statement is an intra-quarter update, but rather that "Apple misrepresented the current state of its business in Greater China including demand for pricy new iPhones there." (*Id.* at 14.) Plaintiff does not explain how a statement made regarding the status quo in the midst of a quarter is substantively different from an "intra-quarter update." The difference appears semantic, which is an inadequate basis for exclusion. The motion is denied as to those opinions.

### 3. Opinions Regarding Views of the November 1 Call

Plaintiff moves to exclude the opinions in paragraphs 12(g), 59 to 66 because they are not based on a reliable methodology and make factual determinations that should be made by the jury. The Court agrees.

In short, Gauna merely serves as a conduit for attorney argument. Here, Gauna purports to summarize "other professional equity analysts' reports in response to the November 1, 2018, earnings call" (paragraph 59) and quotes past earnings calls to provide context regarding how Apple has handled such calls in the past. He does not explain how he chose which reports or calls to consider or how they are representative of reports on the call generally. As such, they do not appear to provide any reliable context for a jury and appear to substitute his own judgment for theirs. Further, these opinions do not address technical statements in the calls or reports or otherwise require expert opinion. "It . . . does not take any special competence, for example, to read pertinent public documents (e.g., prospectuses, press releases, and recorded statements) to determine whether certain risks were conveyed to the public." *In re Stratosphere Corp. Sec. Litig.*, 66 F. Supp. 2d 1182, 1188 (D. Nev. 1999) (citing *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1116 (9th Cir.1989)).

Paragraph 66 similarly lacks any methodology. Gauna merely states that his conclusions are supported by "statistical realities" presented in Professor Trueman's report without any explanation of how they do so.

Paragraph 12(g) is the summary of plaintiff's opinions regarding how Cook's statement of the call was understood by the market. As the underlying opinions are excluded, this opinion is also excluded. The motion is **GRANTED** as to the opinions reflected in paragraphs 12(g), and 59 to 66.

Accordingly, as stated herein, the motion is **GRANTED IN PART** in part and **DENIED IN PART** at to Gauna.

### C. BRETT TRUEMAN

Brett Trueman, Ph.D., was hired to opine on how investors and the market understood the

November 1 call and Challenged Statement. (Dkt. No. 301-5, "Trueman Report.") He did so by reviewing analyst reports and other publicly available information. (*Id.* at ¶¶ 21-25.)

### 1. Methodology

Plaintiff asserts that Trueman's opinions are not based on any reliable principles or methods as required by FRE 702(c). Trueman states that his analysis "is based on the statements that analysts made with respect to Apple's business in China . . ." and other sources, which he conducted "[b]ased on [] academic research and my own expertise." (*Id.* at ¶ 25.) Plaintiff alleges that this inadequately discloses the "analysis" Trueman performed. The Court disagrees.

To support his opinions, Trueman read the sources, applied his knowledge, and reached his conclusions. That is a sufficiently clear methodology in this context. The remainder of plaintiff's arguments regarding methodology, including that Trueman did not consider all analyst reports and did not perform other more exacting methodologies such as text analytics to compare analyst reactions to the call go to the weight that should be given to his opinions, not their admissibility. Indeed, as plaintiff's motion states, plaintiff's rebuttal expert makes these exact points. The motion on this basis is denied.

### 2. Opinions Regarding Analyst Understanding of Call

Plaintiff argues that Trueman's opinions regarding what Apple analysts understood from the alleged misstatements is not based on expertise and invades the province of the jury. Specifically, they move to exclude paragraphs 27, 34, 40, 44, 49, 51, 53, 60, 61, 66, 68, and 69. As addressed with regard to Gauna's report, the jury is capable of reading and understanding the reports themselves. Indeed, as Trueman opines, analysts draft their reports for use by investors not for a more esoteric or professionalized audience. (Trueman Report at ¶¶23-24 (analysts "'help investors understand the implication of the earning announcements'").)

Unlike the Gauna opinions, the Court finds the Trueman opinions plaintiff challenges do not invade the province of the jury. They do not repeat, or purport to repeat what the reports say, they include Trueman's interpretation of those reports. For example, he opines that had the

11

Challenged Statement been interpreted as plaintiff alleges, he would expect such significant information to be included in the analyst reports. That goes beyond merely stating what is in the reports. The motion is denied on this ground.

### 3. Distortion of Plaintiff's Claims

Plaintiff alleges Trueman's conclusions, as summarized in Opinion 27 and in the report's headings, mischaracterize plaintiff's claims such that they pose a danger of unfair prejudice and confusion. The Court disagrees.

As previously addressed, plaintiff has not convinced the Court that defendants' use of the short-hand "intra-quarter update" is prejudicial. To the extent Trueman uses it to describe plaintiff's allegations, the motion is denied.

Plaintiff also argues Trueman's opinion that the market did not come away from the November 1 call thinking that Apple was "not experiencing pressure in China" is prejudicial because it "creates the impression that Plaintiff must prove the market believed Apple was not facing business pressure in China." (Dkt. No. 301.) Trueman does not indicate that this is the standard plaintiff must prove, rather he is opining on what he believes is the reasonable spectrum of interpretations that can be given to the Challenged Statement. This argument fails. The motion is denied on this ground.

### 4. Gaming Applications and Foreign Currency Issues

Plaintiff argues that Trueman's opinions that reference Apple's gaming business in China (specifically, ¶¶ 44-45, 47, and 49) and foreign currency issues (*id.* at ¶¶ 41-43) should be excluded as irrelevant and likely to confuse the jury. The Court disagrees.

One of defendants' defenses is that the Challenged Statement was differentiating China from emerging countries experiencing fluctuations in currency value. It is therefore relevant to whether analysts understood Cook's statement to mean that China was not experiencing the kinds of currency fluctuations seen in other countries. Opinions regarding gaming, which Cook admitted during the call was facing headwinds in China, could be relevant to several determinations including loss causation. The motion is denied on this ground.

#### 5. Improper Rebuttal Opinions

Plaintiff argues Section III of Trueman's 8-page rebuttal report, Dkt. No. 301-6, "Trueman Rebuttal," is improper rebuttal testimony as it does not respond to the adverse party. This argument fails. This section directly responds to sources relied upon by Shenkar, the expert Trueman is rebutting. Trueman opines that not only do these sources not support Shenkar's perspective they support his own.

Accordingly, the motion is **DENIED** as to Trueman.

### D. CARLYN TAYLOR

Plaintiff moves to exclude the entire rebuttal report of Carlyn Taylor as cumulative and outside the scope of Shenkar's report. (Dkt. No. 301-10, "Taylor Rebuttal.") The Court disagrees.

Parties will be facing time limits at trial. Cumulative evidence wastes time. However, the parties' trial strategy allows for multiple experts and decisions made later with respect to which expert will testify as to which issues at trial. The objection thus is premature and denied.

Regarding the issue of scope, plaintiff alleges that the report is focused on the process through which Apple created its Guidance, which is not the subject of Shenkar's report. Plaintiff overreaches. It ignores that much of Taylor's rebuttal explicitly and directly responds to Shenkar's report. (*See, e.g.,* Taylor Rebuttal at ¶ 6 ("But the Shenkar Report contains no organizing framework for understanding the evidence that Dr. Shenkar cites."); ¶ 40 ("Dr. Shenkar refers to various emails and other documents discussing problems with the iPhone XR launch but does not mention any of these downward revisions . . . ."); ¶ 44 (critiquing Shenkar's reliance on store traffic and other measurements of demand).) Exclusion of the entire reports is thus inappropriate. The motion is **DENIED** as to Taylor.

### E. ERIC POER

Plaintiff moves to exclude the opinions of Eric Poer, CPA, CFF, ABV, CFE. (Dkt. No. 301-7, Report of Eric Poer, "Poer Report.")

#### 1. Scope of Expertise

Plaintiff argues Poer does not have expertise to support his various opinions. Again,

13

plaintiff does not identify the opinions it challenges or even the topics that Poer is unqualified to opine on. Indeed, it seems to agree that he is qualified to opine on accounting and finance, though it argues that "this case is not an accounting case, or a finance case." (Dkt. No. 301 at 26.) This argument fails.

### 2. Relevance of Opinions

Plaintiff asserts that opinions regarding numerous topics are irrelevant and should be stricken. However, plaintiff does not explain why these topics are not relevant. The Court has already found some of the topics, including the Guidance and currency fluctuations, are not irrelevant. The other topics, including "iPhone activations," "growth trends in Greater China," and "store traffic" are also not obviously irrelevant. This argument fails.

### 3. Summary Opinions

Plaintiff argues that Poer should be excluded as a summary expert under Federal Rule of Evidence 1006. As defendants correctly note, plaintiff again fails to identify in its motion the opinions it seeks to exclude, which alone is a basis to reject this argument.[3] Defendants further proffer that as Poer's summary opinions are not expert opinions they are not the proper subject of a *Daubert* motion and are premature at this juncture. Plaintiff fails to respond to this argument in reply. The Court takes this as a concession to defendants' position. *Reyes v. Wells Fargo Bank*, No. EDCV 17-909-JFW(KKX), 2017 WL 11568871, at *4 (C.D. Cal. Aug. 17, 2017) (collecting cases finding same).

### 4. Intermingling of Expert and Summary Opinions

Plaintiff argues that the report should be excluded in its entirety because Poer's "combined argumentative 'summary' and 'expert' testimony presents a danger of misleading the jury which

---

[3] In reply, plaintiff contends that because Poer intermingles his expert and summary opinions it is "impractical to specify the excludable paragraphs or portions of Poer's report and rebuttal." (Dkt. No. 334 at 12 n. 11.) If the moving party cannot practically identify the opinions it claims to challenge, it is unclear how the Court is expected to do so. Further, plaintiff's attempt to identify opinions excludable on this basis in the reply is impermissible. *See Tovar v. U.S. Postal Serv.,* 3 F.3d 1271, 1273 n. 2 (9th Cir.1993) (presenting new information in a reply is improper and deprives the opposing party of an opportunity to respond).

will be unable to tell when Poer is testifying as a summary witness or as an expert. Having reviewed the report and found that there are opinions that do not mix summary and expert testimony, this argument fails. It also fails as to the few opinions specifically identified by plaintiff. (*Id.* at ¶¶ 33, 35, and 36.) Poer refers to data in support of his opinions, not in an attempt to introduce new facts. Said differently, the underlying facts and data upon which his opinions are based will need to be introduced separately. He likely does not have the capacity to do so. Once entered, he can opine thereon.

Plaintiff's argument regarding why this is impermissible is vague and unconvincing. Plaintiff is on notice of the basis of the opinions and may cross-examine.

Accordingly, all of plaintiff's arguments fail and the motion is **DENIED** as to Poer.

### F.  STEVEN GRENADIER

Plaintiff moves to exclude portions of Professor Steven Grenadier, Ph.D.'s rebuttal report. (Dkt. No. 301-9, "Grenadier Rebuttal.")

#### 1.  Damages Opinions

Plaintiff argues that the opinions reflected in paragraphs 1 and 2 should be dismissed as irrelevant. (*Id.* at ¶¶ 13-14, 37-42.[4]) These opinions address whether plaintiff could prove damages under different factual scenarios. Experts may provide opinions addressing various factual scenarios and are permissible here. That said, the Court acknowledges that the opinions are confusingly worded as they imply the Court, rather than the jury, will determine what Cook's statement meant and whether it was misleading. The Court **EXCLUDES** the phrase "[i]f the Court determines . . ." from paragraphs 13 and 14. Defendants are directed to ensure that questioning will not elicit the testimony containing an incorrect process.

Plaintiff contends Grenadier's damages opinions reflected in paragraph 5 and those concerning options damages must be excluded as contrary to law, baseless, and overly prejudicial. It argues Grenadier improperly asserts that because the alleged misrepresentation was qualitative that quantitative disclosures on January 3, 2019 regarding how poorly Apple was performing in

---

[4] These are the paragraphs identified by plaintiff.

China are unrelated to plaintiff's damages. However, the paragraph identified by plaintiff, paragraph 112, does not state that qualitative and quantitative disclosures are unrelated, Grenadier merely argues that Dr. Feinstein failed "to account for the impact of the quantitative information disclosed on the alleged corrective disclosure dates." (*Id.* at ¶ 112.) The remaining arguments, while not entirely clear in plaintiff's briefing, appear to the weight of Grenadier's opinions rather than to their admissibility. The motion is denied on this basis.

### 2. Opinions Describing Plaintiff's Claims

Plaintiff moves to exclude Opinion 3, (¶¶ 15, 132-133) on the basis that this opinion misrepresents plaintiff's allegations and is irrelevant. This opinion addresses whether plaintiff can show damages if its "theory of harm is that Apple allegedly misrepresented that it was not facing any 'pressure' in Greater China as of November 1, 2018." (*Id.* at ¶ 15.) As this Court has addressed, that is not an accurate description of plaintiff's theory. Accordingly, the opinion offers no helpful guidance and is likely to confuse the jury. The motion is **GRANTED** as to Opinion 3 as reflected in paragraphs 15, 43-47, 132, and 133.

### 3. Opinions Regarding Loss Causation

Plaintiff argues multiple opinions regarding loss causation should be excluded because they assert that to show loss causation plaintiff must prove that the Challenged Statement is a "but-for" cause of their loss, when the law requires only that they show it was the proximate or legal cause of their loss. Defendants do not contest that plaintiff does not need to show but-for causation. They argue that Grenadier does not indicate that but-for causation is the legal standard, rather, he is responding to Feinstein's report which uses a but-for causation framework. Plaintiff does not respond to this argument.

Having reviewed the report, the Court makes two overarching findings. First, Feinstein does indeed opine on the but-for value of Apple's securities. (*See, e.g.,* Dkt. No. 301-19, Feinstein Report at ¶ 174.) As such, the Court finds that Grenadier properly opines on but-for causation. The motion in this regard is denied. However, the first sentence of paragraph 51, which states "[a] key step in assessing loss causation is to determine the but-for disclosure . . .," misleadingly

16

implies that but-for causation is the legal standard. Accordingly, the first sentence of paragraph 51 is **EXCLUDED**. No expert shall testify on the wrong legal standard. Defendants are ordered to ensure, in this instance, that such testimony is not elicited at trial.

Second, plaintiff argues that Grenadier opines in paragraphs 50 through 52 that the law requires a match between the but-for disclosure and the actual disclosure. This misrepresents Grenadier's opinion. He does not state that a perfect match must exist to show loss causation, he opines that Feinstein "fails to assess *the extent to which* the but-for disclosure that could and should have been made matches the actual alleged corrective disclosures." (*Id.* at ¶ 50.) That is, he is asserting only that Feinstein should have made some comparison of the two disclosures, not that plaintiff must show they are identical. The motion is denied on this ground.

Third, plaintiff asserts that Grenadier's loss-causation opinions are not based on a valid methodology and should have been supported by an event study. (Dkt. No. 301 at 35.) Plaintiff only shows that it disagrees with the methods Grenadier used, not that he did not use a method. Accordingly, this is an argument about the weight of his opinions, not their admissibility.

Finally, plaintiff argues that Grenadier's opinions as to Feinstein's loss causation analysis on January 3, 2019 should be excluded as contrary to law, unreliable, and prejudicial. However, the paragraphs identified by plaintiff (Grenadier Report at ¶¶ 85-90) do not render such an opinion. At most, Grenadier asserts that Feinstein did not sufficiently show that the change in price after January 2 was "at least partially reflecting new, confounding information learned between November 1, 2018 and January 2, 2019." (*Id.* at ¶ 85.) The motion is denied in this regard.

The motion as to Grenadier is **GRANTED IN PART** and **DENIED IN PART** as stated herein.

## IV.   CONCLUSION

Defendants' motion to exclude the opinions of Frank Partnoy and Dr. Oded Shenkar is **DENIED** in its entirety.

Plaintiff's motion to exclude is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to the following:

17

- Dennis Yang: The first sentence of paragraph 7, and paragraph 99.
- Alex Gauna: Paragraphs 12(g), 59-66, the first sentence of paragraph 35 to the extent it opines on what companies are "required" to do, the first two sentences of paragraph 39, the first sentence of paragraph 41, and all of paragraph 32 except for the first and last sentences.
- Steven Grenadier: Paragraphs 15, 43-47, 132 and 133, the phrase "[i]f the Court determines . . ." in paragraphs 13 and 14, and the first sentence of paragraph 51.

The motion is otherwise **DENIED**.

As a final note, it is not lost on this Court that numerous motions brought by the law firm representing plaintiff lacked merit and the attorneys should have operated within the three-motion limit of this Court's standing order so as not to overburden. Given the lack of judgment exercised, and its impact on limited judicial resources, the Court will not be so accommodating in the future.

This terminates docket numbers 292 and 301.

**IT IS SO ORDERED.**

Dated: July 17, 2023

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**