UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, | Case No.  19-cv-02033-YGR   (JCS) |
| Plaintiff, | |
| v. | **ORDER RE DOCKET NOS. 372 AND 374** |
| APPLE INC., et al., | Re: Dkt. Nos. 372, 374 |
| Defendants. | |

## I.      INTRODUCTION

        This Order addresses the parties' ongoing dispute relating to Defendants' withholding of documents on the basis of attorney-client privilege.  There are two parts to the dispute.  First, the district judge has instructed the undersigned to reconsider the question of whether Defendants should be compelled to re-review for privilege *all* of the documents they have withheld as attorney-client privileged because of the Supreme Court's dismissal of the writ of certiorari in *In re Grand Jury,* 143 S. Ct. 543 (2023), despite the fact that the parties had already narrowed the scope of their discovery dispute to a subset of withheld documents.  Dkt. no. 372.   Second, Plaintiff continues to challenge the withholding of 55 documents, winnowed down from over 500 disputed documents through the parties' meet and confer efforts, that Apple contends it has properly withheld based on the Court's August 3, 2022 discovery order (dkt. no. 272) ("August 3 Order").  The parties have briefed the first issue and supplied a joint discovery letter addressing the second issue.  The Court held a hearing on both issues on August 18, 2023. The Court's rulings are set forth below.

## II.     WHETHER RULE 26 OBLIGATES APPLE TO RE-REVIEW ALL WITHHELD DOCUMENTS

### A.     Background

This dispute relates to 1,630 documents that Apple designated as privileged in connection with its original review of the documents and refuses to produce.  Motion at 1; Black Decl., Ex. 1 (excerpt of February 23, 2022 privilege log listing documents that are the subject of this dispute). During the briefing that led up to the Court's August 3 Order, Apple represented to Plaintiffs and to the Court that in conducting its initial privilege review it applied *In re Grand Jury*'s "the primary purpose" test.  *See*, *e.g.*, dkt. no. 233 at 3-4 (citing *In re Grand Jury* and asserting "[p]rivilege applies if 'the primary or predominate purpose of the communication is to seek legal advice or assistance'"); dkt. no. 248 at 2, 6-7, 10, 12 (claiming the disputed documents were created or sent "primarily for a legal purpose").

It was not until after the Court issued its August 3 Order – and after the parties had narrowed the documents in dispute through meet and confer efforts to 232 documents – that Apple made clear that as to documents with both legal and business purposes it had *not*, in fact, applied "the primary purpose" test set forth in *In re Grand Jury* when it conducted its original document review but instead, had applied a different test, asking whether seeking legal advice was "*a* primary purpose" of the communication.  *See* dkt. no. 276 (Defendants' Motion for Relief from Pretrial Order of Magistrate Judge) at 2.[1]  In challenging the August 3 Order, Apple insisted that it had applied the correct test and that the undersigned had erred in following the test in *In re Grand Jury*.  The district judge found, however, that Apple's approach did not comport with the law in the Ninth Circuit:

> [D]efendants argue that Judge Spero erred by applying "the" primary purpose test for determining if documents with multiple purposes are privileged rather than the more expansive "a" primary purpose test, as articulated by the D.C. Circuit *in In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014)). The Ninth Circuit in *In re Grand Jury* affirmed "that the primary-purpose test governs in assessing attorney-client privilege for dual-purpose communications" and "left open" whether the more expansive "a primary purpose" test articulated by the D.C. Circuit in *Kellogg* should ever be applied. *In*

---

[1] At oral argument, Apple conceded that it did not disclose this fact to Plaintiff when the parties were meeting and conferring prior to issuance of the Court's August 3, 2022 Order.

*re Grand Jury*, 23 F.4th 1088, 1090 (9th Cir. 2021). *Kellogg* is not the standard in the Ninth Circuit and it was not clearly erroneous for Judge Spero not to apply it.

Dkt. no. 302 (September 12, 2022 Order).

Apple continued to assert that the correct test was the D.C. Circuit's "more expansive 'a primary purpose' test" in its motion to certify the September 12, 2022 order for interlocutory appeal. Dkt. no. 304 at 2.  The district court denied that motion but stayed production, first pending resolution of Apple's petition for writ of mandamus filed in the Ninth Circuit and then pending the Supreme Court's review of *In re Grand Jury*, as to which it had granted certiorari.  Dkt. nos. 317, 335. When the Supreme Court' dismissed *In re Grand Jury* in January 2023, leaving the standards articulated in that case in place, Defendants went forward with production as to the documents that were at issue in the August 3 Order.  They maintained, though, that they were not required to re-review the remaining documents on their privilege log because the parties had already narrowed the dispute through their meet-and-confer efforts. *See* dkt. no. 348 (March 7, 2023 joint discovery letter).  The undersigned agreed, denying Plaintiff's request that Apple be compelled to re-review all of the remaining documents on the privilege log based on the parties' previous agreements narrowing the documents in dispute.  Dkt. no. 349 (March 8, 2023 Order).

Plaintiffs sought relief from the Court's March 8, 2023 Order, arguing before the district judge that Apple was obligated to conduct a new review of the documents on the privilege log under Rule 26(e) of the Federal Rules of Civil Procedure once the Supreme Court dismissed *In re Grand Jury*.  The district court granted relief as to that ruling, returning the issue to the undersigned for "further consideration and guidance on how his decision intersects with defendants' Rule 26 obligations."  Dkt. no. 372 (June 30, 2023 Order) at 4.

In the Motion, Plaintiff asserts Apple should be compelled to re-review the remaining documents on its privilege log (other than the 232 documents addressed in the Court's August 3 Order) and produce those that are non-privileged because: 1) Apple does not dispute that in conducting its initial review it applied a more expansive test than the one required under *In re Grand Jury*, which is the applicable standard; 2) it has represented that "most or all of the

1   documents it continues to withhold have at least some business purpose and thus would be subject

2   to the 'the primary-purpose test[;]'" and 3) "based on the descriptions of the withheld

3   documents on Apple's privilege log, and informed by the documents already turned over, there is

4   strong evidence indicating that Apple continues to improperly withhold non-privileged

5   documents." Motion at 2.

6       Plaintiff makes several arguments in support of its assertion that if Apple re-reviewed the

7   documents under the correct standard some would have to be produced. First, Plaintiff argues that

8   "Apple continues to withhold documents concerning the same business processes that the Court

9   found did not justify Apple's blanket withholding of all related communications, such as the

10  critical 'Q&A' process related to Apple's earnings preannouncement." *Id.* at 7.

11      Second, "Apple did not review the 'family' documents (*i.e.,* attachments or parent emails)

12  to non-privileged documents if they were not listed among the 232 challenged documents, despite

13  this clear indicator of potential error." *Id.* Plaintiff notes that "Apple refuses to review the parent

14  email to the extremely relevant 'Q&A' draft Plaintiff submitted as supplemental evidence in

15  opposition to Defendants' motion for summary judgment." *Id.*

16      Third, "hundreds of documents remain on Apple's log that are described in the same or

17  similar manner as now-produced, non-privileged documents." *Id.* at 8. As one example, Plaintiff

18  points to "978 still-withheld documents [that] purportedly 'reflect[] legal advice from in-house

19  counsel'– [which is] the same inaccurate description of dual-purpose documents as 58 non-

20  privileged documents now produced." *Id.*

21      Fourth, Plaintiff asserts that "Apple has not carried through the results of the initial

22  challenge to the remainder of the documents withheld." *Id.* "Thus, Apple has produced certain

23  instances of documents (or portions thereof) that it continues to withhold in similar or related

24  documents." *Id.*

25      Finally, Plaintiff notes that documents that remain on the privilege log include "more than

26  500 documents [that] are dated within the Class Period" and "91 reference [to] 'Interview prep'

27  [that] may be related to the highly-relevant January 2, 2019 interview Cook gave to CNBC about

28  Apple's $9 billion revenue miss and its causes, or the Company's end-of-quarter conference call

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    just 27 days after the end of the Class Period." *Id.* at 10.

2         Apple counters that Plaintiff's reliance on Rule 26(e) to "undo the parties' prior

3    agreement" is improper, especially at this stage of the case, when the discovery cut-off has passed

4    and a trial date has been set.  Opposition at 1, 3-5.  It further contends that even if the parties had

5    not narrowed their dispute, Rule 26(e) would not impose a duty on Apple to revisit its entire

6    privilege log because Rule 26(e) "does not impose a duty to check the accuracy of prior

7    responses" and only "prevents knowing concealment by a party or attorney" where the party has

8    "actual knowledge" that its responses are incorrect or incomplete.  *Id.* at 5 (citing Fed. R. Civ. P.

9    26, Advisory Committee's Notes to 1970 Amendments).  There is no such "actual knowledge"

10   here, Apple asserts, as Plaintiff only contends it is "likely" that re-review would result in

11   additional document production.  *Id.* at 6. In fact, Apple argues, Plaintiff overstates the evidence

12   that re-review would result in production of additional documents.  *Id.* at 6-9.

13        **B.    Discussion**

14             **1.  Legal Standards**

15        Under Rule 26(e), "[a] party who has made a disclosure under Rule 26(a)  – or who has

16   responded to an interrogatory, request for production, or request for admission  – must supplement

17   or correct its disclosure or response . . . in a timely manner if the party learns that in some material

18   respect the disclosure or response is incomplete or incorrect, and if the additional or corrective

19   information has not otherwise been made known to the other parties during the discovery process

20   or in writing."  Fed. R. Civ. P. 26(e)(1)(A). The 1970 Advisory Committee notes explain that

21   under this provision, there is a duty to supplement when "a party, or more frequently his lawyer,

22   obtains actual knowledge that a prior response is incorrect"; it "does not impose a duty to check

23   the accuracy of prior responses, but it prevents knowing concealment by a party or attorney."

24             **2.  Whether Rule 26(e) Imposes a Duty to Supplement**

25        Apple contends this provision does not require it to re-review the documents on its

26   privilege log because it does not have "actual knowledge" that any of its privilege determinations

27   were incorrect or that if it were to re-review the documents it would find that any specific

28   withheld document is non-privileged.  The Court finds no authority that supports this reading of

United States District Court
Northern District of California

Rule 26(e) or Apple's assertion that it may withhold as privileged documents that it reviewed under the wrong legal standard.  Apple's position is particularly troubling because it has repeatedly represented to the Court that many of the documents on its privilege log have both a legal and a business purpose and thus, it *matters* which test was applied. *See, e.g.*  dkt. no. 286 (Defendants' Reply in Support of Motion for Relief from Pretrial Order of Magistrate Judge) at 2 ("After all, *Grand Jury* explained that applying *Kellogg*'s test would 'change the outcome of a privilege analysis' in some cases. 23 F.4th at 1094-95. This is one such case.").

Apple has cited only a single case in support of its position regarding the "actual knowledge requirement," *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004).  In that case, the court addressed whether the plaintiff was entitled to an adverse inference instruction or other sanction because the defendant had deleted relevant emails, partly due to counsel's failure to ensure that they were preserved.  In evaluating whether the destruction of emails should be considered willful, the Court looked to Rule 26(e) to determine the scope of counsel's ongoing obligation to ensure that a client preserves discoverable information.  There is simply nothing in that case that has any bearing on whether a party who applied the wrong legal standard in conducting its privilege review has actual knowledge that its disclosures are in some "material" respect "incorrect" – and therefore has a duty to review the documents under the correct standard – when it becomes clear that the legal theory it has relied upon to justify that approach is not consistent with applicable law.

The Court concludes that on its face, the language of Rule 26(e) imposes an obligation on Apple to conduct a review that applies the correct legal standard once it becomes clear that counsel applied the wrong standard in conducting the original review.  This question might be more difficult if the test that Apple applied when it conducted its original review was consistent with governing law at the time and the test was later modified as a result of a change in the case law.  Here, however, *In re Grand Jury* was good law when Apple conducted its initial review and it continues to be good law.  At best, Apple had a good faith belief that the Supreme Court *might* adopt a more expansive test for dual purpose documents that would justify its approach to conducting its privilege review.  To find that Rule 26(e) permits Apple to continue to rely on its

faulty privilege review under these circumstances would confer an improper benefit on Apple.

The Court also finds that Apple's reliance on the 1970 Advisory Committee Note is misplaced. In addressing the requirements imposed under subsection e, the Advisory Committee's focus is on the scenario where "new information renders substantially incomplete or inaccurate an answer which *was complete and accurate when made*." Fed. R. Civ. P. 26(e), 1970 Advisory Committee Note (emphasis added). Here, the privilege log was incomplete and inaccurate when made because Apple applied a test from another circuit that had not been (and still has not been) adopted by the Ninth Circuit. Therefore, the Court concludes that absent some binding agreement between the parties that waived Plaintiffs' right to seek production (or at least, review under the correct legal standard) of the documents that Apple continues to withhold as privileged, Rule 26(e) requires that Apple re-review the documents it has withheld as privileged under the correct legal standard.

### 3. Whether the Parties' Agreements Narrowing the Scope of the Privilege Dispute Through Meet-and-Confer Excuse Apple's Failure to Supplement its Disclosures under Rule 26(e)

Apple asserts that even if Rule 26(e) would otherwise require that it supplement its disclosures by re-reviewing the documents on its privilege log, it does not apply here because the parties agreed to limit their dispute to a subset of the documents on the privilege log. Apple points to two cases in support of its position, *In re High Fructose Corn Syrup Antitrust Litigation*, 2000 WL 33180835 (C.D. Ill. Jul. 19, 2000) and *Arconic Inc. v. Novelis Inc*., 2022 WL 2669201 (W.D. Pa. Apr. 1, 2022). In both, the court rejected arguments that new information or expert opinions triggered a duty to supplement under Rule 26(e) to produce documents responsive to prior discovery requests beyond the end date to which the parties had previously agreed. But neither court ruled out the possibility that there might be circumstances under which a party would have a duty to supplement under Rule 26(e) despite a prior agreement limiting discovery. *See In re High Fructose Corn Syrup Antitrust Litig*., 2000 WL 33180835, at *2 ("This Court fully expects all parties to this action to honor their agreements and will not permit any party, *absent a proper showing*, to break such agreements"); *Arconic Inc. v. Novelis Inc*., 2022 WL 2669201, at *3 (distinguishing *Rodriguez v. IBP, Inc*., 243 F.3d 1221, 1230 (10th Cir. 2001) on the basis that in

7

United States District Court
Northern District of California

1    that case, "the party had failed to comply with its discovery obligations in the first instance—a

2    contention Arconic does not make here.").

3         While these cases stand for the general proposition that an agreement to limit the scope of

4    discovery can relieve a party of its responsibility to supplement its discovery responses under Rule

5    26(e) in some respect,  Apple's reliance on the parties' agreement is misplaced under the specific

6    facts of this case for the following reason:  at the time the parties were engaged in narrowing the

7    scope of the dispute through meet and confer efforts it was not clear to Plaintiff *or the Court* that

8    Apple had applied the test in *Kellogg* to dual purpose documents in conducting its original

9    privilege review.  It was only after Plaintiff had agreed to limit the scope of the dispute that Apple

10   spelled out that it had applied a more expansive test than is called for under *In re Grand Jury*.

11   Because Plaintiff reasonably believed, based on Apple's representations, that Apple had applied

12   the standard set forth in *In re Grand Jury* when it conducted its initial review, its agreement to

13   narrow the dispute to 232 documents was based, at least in part, on a misunderstanding of the facts

14   related to Apple's privilege determinations.

15        Under those circumstances, enforcing the parties' agreement to limit the documents in

16   dispute would be unfair to Plaintiff – except as to documents as to which Plaintiff agreed to drop

17   its challenge for reasons that had nothing to do with whether the documents were privileged.  For

18   example, Apple points to evidence that Plaintiff agreed to drop its challenges to a number of

19   documents on the privilege log based on representations from Apple that the documents were not

20   relevant.  *See* dkt. no. 246-4 (Black Decl. iso Supp. Brief) ¶ 8.[2]  Plaintiff conceded at the hearing

21   that its misunderstanding of the standard Apple applied in conducting its privilege review was not

22   material to its agreement to narrow the dispute as to those documents.   In addition, at oral

23   argument the parties agreed to limit the scope of re-review to exclude documents on Apple's

24   privilege log created before September 15, 2018 or after January 30, 2019.  Aside from those

25   documents, the Court concludes that the agreement to limit the scope of the parties' privilege

26

27   [2] The privilege log entries Plaintiff agreed were non-relevant and therefore not in dispute are: 34-
     36, 94-96, 155-159, 244-248, 251-254, 259, 786-790, 795-798, 800-802, 829-830, 900-901, 928-
28   929, 1030-1031, 1086, 1142, 1166, 1169, 1858, and 1860-1863.  Dkt. no. 246-4 (Black Decl. iso
     Supp. Brief) ¶ 8.

dispute cannot be enforced and does not excuse Apple from its obligations under Rule 26(e).

## III.   WHETHER APPLE HAS PROPERLY WITHHELD THE REMAINING 55 DISPUTED DOCUMENTS

### A.   Background

With respect to the documents that were the subject of the Court's August 3 Order, the parties report that they have narrowed their disputes to 55 documents, which are the subject of the parties' joint discovery letter.  Dkt. no. 374 ("Joint Discovery Letter") & Ex. C (excerpted privilege log listing disputed documents).   According to the parties, "just 26 documents need to be reviewed to determine the privilege status of all 55 remaining documents."  Joint Discovery Letter at 4-5.  They are entry nos. 286, 391, 400, 402, 403, 404, 417, 515, 517, 522, 524, 526, 532, 536, 539, 544, 574, 583, 594, 618, 619, 622, 651, 673, 682, and 692.[3]  In light of the large percentage of documents the Court previously found to be non-privileged upon conducting an *in camera* review of a sample of withheld documents, as well as the fact that the parties have been attempting to resolve their disputes about the remaining documents for over a year and trial is scheduled to commence in only nine months, the Court finds that there is good cause to review *in camera* all of the 26 remaining documents that the parties have identified.  It is the Court's expectation that its rulings will dispose of all of the remaining disputes related to implementation of the August 3 Order.

### B.   Discussion

The Court's *in camera* review of the remaining disputed documents, like its review of the sample documents, is guided by the legal standards set forth in its August 3 Order, which are incorporated herein.

---

[3] In the Joint Discovery Letter, the parties appear to agree that the Court would need to review only 26 documents to resolve their privilege disputes and do not suggest that the Court would need to review any documents other than the 26 that are specifically identified in the letter.  At oral argument, Plaintiff suggested that the parties' disputes might be resolved by *in camera* review of only 19 of those documents but did not elaborate.  As neither side has asked the Court to review any additional documents beyond the 26 identified in the Joint Discovery Letter, the Court concludes that its *in camera* review of those 26 documents will be sufficient to resolve the parties' remaining privilege disputes related to the August 3 Order.

United States District Court
Northern District of California

### 1. Entry No. 286 (withheld)

According to Apple's privilege log, this document is an email from Luca Maestri (a non-attorney) to Kate Adams (counsel for Apple), with Tim Cook cc'ed. Ex. C. It is described as "Email requesting legal advice from in-house counsel regarding board of directors call and pre-announcement of revenue guidance miss." *Id.* The privilege log reflects that the entire document was withheld. In the Joint Discovery Letter, Apple justifies its withholding of this document on the basis that Entry No. 286, "includes only emails that were part of the chain in Entry No. 285, which this Court reviewed in camera and held to be privileged. *Id.* (citing August 3 Order at 24).

The portion of the August 3 Order that is relevant to whether this document was properly withheld states as follows:

> The sixth subcategory (Entry Nos. 285-291, and 298-300), contains the emails addressed in paragraph 4 of the Adams supplemental declaration, described as a set of emails that "includes communications in which Mr. Cook asked me and Mr. Maestri for feedback relating to topics he planned to cover in an upcoming meeting of the Company's board of directors." The Court finds based on in camera review that Entry 288, a generic request for feedback from Cook to both Adams and Maestri that does not reference any specific legal concerns, is not primarily aimed at seeking legal advice and therefore is not privileged. This document should be produced. Entries 285 and 287 are privileged because they contain Adam's response to Cook's request for input from her and address legal topics, thus constituting legal advice. The Court further finds based on its in camera review of Entry 290, which is an email exchange between Tim Cook and Luca Maestri on which Adams is copied, that that communication was not sent with the primary purpose of obtaining legal advice and does not reveal any legal advice. Merely copying in-house counsel on an email exchange does not make a communication privileged. This document should be produced.

August 3 Order at 24-25.

Based on its review of Entry No. 286, the Court finds that Apple improperly withheld portions of the document that were already found to be non-privileged by this Court. In particular, the message from Tim Cook to Kate Adams dated December 16, 2018 that is part of the email chain in Entry No. 286 is identical to the email in Entry No. 288 that the Court found to be non-privileged because it was a "generic request for feedback." The first two messages in the chain, on the other hand, are a request for legal advice and Kate Adams's response providing legal

United States District Court
Northern District of California

advice.  These are identical to messages that the Court found privileged in Entry No. 285 and are clearly privileged.  The Court may have caused confusion by allowing Apple to withhold in its entirety Entry No. 285 – even though that document also included the non-privileged communication from Tim Cook that is in Entry No. 288; given that the Court had concluded that 288 was non-privileged, Entry No. 285 should have been produced in redacted form.  Instead, the Court suggested in its August 3 Order that it could be withheld in its entirety.  The reasoning of the August 3 Order, however, makes clear that part of Entry No. 285 (the part that is found in Entry No. 288) is non-privileged.  The same is true of Entry No. 286.  Therefore, Apple is ordered to produce a redacted version of Entry Nos. 285 and 286.

### 2.   Entry Nos. 391, 402, 515, 522, 524, 526, 532, 539, 574, 594, 682

All of these documents are drafts of the Investor Letter that include comments and proposed edits by both in-house counsel and non-attorneys. In particular, the drafts include comments and edits by in-house counsel Sam Whittington and by non-attorneys Adam Talbot and Steve Dowling, with the comments and edits of each individual reflected in different colors. Although Apple's privilege log describes these documents as being attached to emails, the emails themselves are not identified and it is unclear who sent or received any of these documents.  No sender or recipient is listed on the privilege log.  Apple withheld all of these documents in their entirety.

All of these documents except Entry No. 574[4] are described in paragraph three of the Supplemental Declaration of Sam Whittington Regarding Documents Withheld as Privileged (dkt. no. 246-13) ("Whittington Supp. Decl."), entitled "Documents Relating to the Preparation of the Cook Letter."[5] As to these documents, Whittington states, "In my role as Director, Corporate Law,

---

[4] In the Whittington Supplemental Declaration (dkt. no. 246-13), this document was included in the paragraph addressing documents for which privilege was claimed on the basis that the communication involved counsel's efforts to collect information in support of statements in the Investor Letter.  Whittington Supp. Decl. ¶ 4. _Based on the Joint Discovery Letter, however, it appears that Apple now claims this document is privileged on the basis that it – like the other disputed Investor Letter drafts – involved requests or provision of legal advice in connection with the Investor Letter.  Having reviewed the document *in camera*, the Court agrees that this is the more appropriate category for this document.  Therefore, the Court's discussion of the documents in this grouping covers Entry No. 574.

[5] Consistent with its August 3 Order, the Court refers to this letter as "the Investor Letter."

I was closely involved in, and provided legal advice with respect to, the Company's decision of whether to release the Cook Letter, as well as the process by which the Cook Letter was prepared and released. I also provided legal advice regarding the contents of the Cook Letter, reviewing and commenting on drafts of the Cook Letter as they were prepared, with an eye towards ensuring compliance with reporting requirements and minimizing legal risk to the Company."  Whittington Supp. Decl. ¶ 3.

In the Joint Discovery Letter and attached privilege log (Joint Discovery Letter, Letter Ex. C), Apple claims that these documents are privileged because they contain legal advice or requests for legal advice.  It points to the Court's conclusion that Entry No. 471 is privileged because it contains legal advice from Apple attorney Sam Whittington.  Joint Discovery Letter at 6 (citing August 3 Order at 42) ("This document is a draft of the Investor Letter reflecting Whittington's legal advice. The Court finds that this document is privileged.").   It also points to the Court's discussion of subcategory one in its August 3 Order.  Subcategory one contained "documents that Whittington states were sent to him and included explicit requests for legal advice."  August 3 Order at 20.

In its discussion of subcategory one, the Court stated as follows:

> As to the first subcategory of documents, Plaintiff has stipulated in its supplemental brief that Whittington's supplemental declaration stating that these documents were sent to him and contained explicit requests for legal advice about the Investor Letter is sufficient to establish attorney-client privilege as to those requests. The Court agrees but finds that in Entry 382, the request for legal advice at the beginning of the document is the only privileged material in the document; the remainder of the document involves business advice. Therefore, the privilege log and declarations supplied by Defendants in support of withholding this document are sufficient only as to the message on the first page of the document containing a "question to the legal team," which may be redacted on the basis of privilege. The remainder of the document consists of communications between non-attorneys that are not primarily for a legal purpose and therefore are not protected by attorney-client privilege. That portion of the document should be produced. In addition, Defendants shall review the remaining documents in this category to ensure that only material that relates to the request for legal advice is withheld.

August 3 Order at 21.

Finally, as to Entries 391 and 402 specifically, Apple states that these documents were

withheld based on "this Court's analysis of documents in subcategory four (see Dkt. no. 272 at 23) in that these particular drafts highlight comments and input from a group of in-house counsel." Joint Discovery Letter at 6 n. 7.  The cited portion of the August 3 Order states:

> The fourth subcategory of documents consists of emails from a group of in-house counsel about drafts of the Investor Letter. The Court has reviewed Entry 389 and finds that it is framed in terms of Defendants' legal obligations and the bulk of the comments in the email address those obligations even though the email includes isolated comments that are not legal in nature (e.g., the comment that it would be "great to find opportunities to shorten the length" of the Investor Letter.)
> The Court concludes, therefore, that the primary purpose of the communication is to offer legal advice.

August 3 Order at 23.   Apple further states that "[b]ecause the Court did not review an identical document, Defendants analogized these documents to the documents in subcategory four based on the reasoning provided in the Order with respect to advice and comment from this same group of in-house counsel." *Id.*

The Court's general conclusions based on its *in camera* review of these documents are as follows.  First, none of the comments by non-attorneys in these documents contains an explicit request for legal advice – in contrast to the single comment in Entry No. 389 that the Court found constituted a request for legal advice and therefore could be redacted.  Nor has Apple provided facts about the circumstances of the communications sufficient to show that these comments and edits were implicit requests for legal advice.  In particular, Apple has not provided evidence that these comments and edits were sent *exclusively* to in-house counsel (in fact, it appears to be undisputed that these comments and edits were shared with non-attorneys as well); nor has it provided or pointed to any email communications that might have shown that the non-attorneys were specifically requesting legal advice from in-house counsel.  Therefore, on the current record, the comments and proposed edits by Talbot and Dowling in these documents do not appear to be privileged.

On the other hand, some of the drafts contain comments and proposed edits from Whittington that may constitute legal advice.  In determining whether these comments and proposed edits constitute legal advice or are instead primarily business-related, the Court is faced with a difficult task because the declarations supplied by Apple address the legal advice that is

United States District Court
Northern District of California

purportedly contained in these documents at a very general level.  Moreover, the factual record that has been presented to the undersigned relating to the potential business and/or legal purposes of the communications is quite limited.  Under these circumstances, the undersigned places significant weight on the sworn declarations of Apple's counsel as to comments and proposed edits that do not unambiguously fall into the category of legal advice vs. business communication.  As to the documents in this group of privilege log entries, the Court concludes that all of Whittington's comments (and the text associated with those comments, which is highlighted and numbered), as well as any sentence that contains a proposed edit by Whittington, may properly be treated as legal advice and redacted.[6]

The Court's specific conclusions as to these documents are set forth below.

**Entry No. 391**:  This document is described in the privilege log as "[a]ttached draft investor letter reflecting legal advice from in-house counsel."  The document contains comments by Adam Talbot and Steve Dowling, neither of whom are attorneys.  Several comments by Adam Talbot state: "Flagging Sam/Kyle/Kate's comment here," presumably referring to in-house counsel Sam Whittington, Kyle Andeer and Kate Adams, although the comments being flagged are not reflected in the document.  Whittington described this document, along with Entry Nos 389 and 400-410, as "emails including extensive comments on the draft Cook Letter sent collectively by me, Ms. Adams, and Mr. Andeer.  Whittington Supp. Decl. ¶ 3.  The document does not appear to be an email, however, but rather, an attachment; and it does not reveal any comments by in-house counsel.  The Court finds, however, that disclosure of Talbot's comments explicitly flagging comments by counsel would reveal the portions of the Investor Letter as to which counsel offered legal advice even if it would not reveal the content of that advice.  Therefore, these comments by Talbot fall within the scope of attorney-client privilege and may be redacted, along with any color-coding that would reveal the portion of the Investor Letter to which the comments apply.  Other than these comments, the Court finds no material in this document that reflects legal advice or a

---

[6] As discussed at the hearing, the parties shall meet and confer to devise a method of production that will allow for the redaction of the comments of counsel as well as the removal any color-coding linking the comment to a specific portion of the Investor Letter that would reveal which sections of the letter counsel's comments relate to.

14

United States District Court
Northern District of California

request for legal advice.  Therefore, on the current record, it appears that this document is not privileged except as stated above.

**Entry 402**: This document is described in the privilege log as "[d]raft investor letter reflecting legal advice from in-house counsel attached to email providing legal advice from in-house counsel."  Joint Discovery Letter, Ex. C. This is another one of the documents Whittington describes as an "email[ ] including extensive comments on the draft Cook Letter sent collectively by me, Ms. Adams, and Mr. Andeer."  Dkt. no. 246-13 ¶ 3.  But the document is not an email and the comments on the email are by Dowling and Talbot, who are not attorneys.  Moreover, the comments do not appear to seek or reveal legal advice, with the exception of two notes by Talbot "flagging" comments by in-house counsel.  For the reasons discussed above, the Court finds those comments to be privileged.  Otherwise, on the current record the Court finds no privileged material in this document.

**Entry No. 515**:  This document is described on the privilege log as "Draft investor letter reflecting legal advice from in-house counsel sent for the purpose of obtaining legal advice."  Whittington stated in his supplemental declaration that this is one of a group of documents that contain "explicit requests to [him] for legal advice, or explicit provision of legal advice by [him], relating to the contents of the draft Cook Letter."  Whittington Supp. Decl. ¶ 3.  Although this draft was apparently attached to an email, the privilege log does not identify the document to which it was attached; nor does it list any sender or recipient.  The letter contains comments by Talbot, Dowling and Whittington as well as numerous sentences, words and phrases in blue that the Court understands to be edits by Whittington. The Court finds that the edits and comments by Talbot and Dowling do not appear to be privileged but that those offered by Whittington – along with any color coding that would reveal the portions of the document to which Whittington's comments pertain – are privileged.

**Entry No. 522**: This document is described on the privilege log as "Draft investor letter reflecting legal advice from in-house counsel sent for the purpose of obtaining legal advice." The letter contains comments by Talbot and Whittington, as well as edits by both.  The edits by Talbot do not appear to be a request for any specific legal advice and therefore,  on the current record

these edits do not appear to be protected by attorney-client privilege.

**Entry No. 524**: This document is described in the privilege log as "Draft investor letter reflecting legal advice from in-house counsel attached to email providing legal advice from in-house counsel regarding investor letter." According to Whittington, this is one of the documents that contains an "explicit request[] to [him] for legal advice, or explicit provision of legal advice by [him], relating to the contents of the draft Cook Letter." Whittington Supp. Decl. ¶ 3. The document contains two comments and some edits by Whittington. These may be redacted. The remainder of the letter should be produced.

**Entry No. 526**: This document is described on the privilege log as "Draft investor letter reflecting legal advice from in-house counsel sent for the purpose of obtaining legal advice." According to Whittington, this is one of the documents that contains an "explicit request[] to [him] for legal advice, or explicit provision of legal advice by [him], relating to the contents of the draft Cook Letter." Whittington Supp. Decl. ¶ 3. It contains comments and edits by Dowling, Talbot and Whittington. The edits by Talbot and Dowling do not appear to be requests for any specific legal advice and therefore, on the current record it appears that these edits are not protected by attorney-client privilege. The sentences containing edits and comments by Whittington appear to constitute legal advice and may be redacted.

**Entry No. 532:** This document is described on the privilege log as "Attached draft investor letter reflecting legal advice from in-house counsel sent for the purpose of obtaining legal advice." According to Whittington, this is one of the documents that contains an "explicit request[] to [him] for legal advice, or explicit provision of legal advice by [him], relating to the contents of the draft Cook Letter." Whittington Supp. Decl. ¶ 3. It contains comments and edits by Dowling, Talbot and Whittington. The edits by Talbot and Dowling do not appear to be requests for any specific legal advice and therefore, on the current record the Court concludes that these edits are not protected by attorney-client privilege. The sentences containing edits and comments by Whittington appear to constitute legal advice and may be redacted.

**Entry No. 539**: This document is described on the privilege log as "Attached draft investor letter reflecting legal advice from in-house counsel." It contains comments and edits by Talbot and

Whittington. The edits by Talbot do not appear to be requests for any specific legal advice and therefore, on the current record the Court finds these edits are not protected by attorney-client privilege.   The sentences containing edits and comments by Whittington appear to constitute legal advice and may be redacted.

Entry No. 574: This document is described on the privilege log as "Draft investor letter reflecting legal advice from in-house counsel attached to email providing legal advice from in-house counsel regarding investor letter." It contains comments and edits by Dowling, Talbot and Whittington. The edits by Talbot and Dowling do not appear to be requests for any specific legal advice and therefore, on the current record these edits do not appear to be protected by attorney-client privilege.   The sentences containing edits and comments by Whittington appear to constitute legal advice and may be redacted.

Entry No. 594: This document is described on the privilege log as "Attached draft investor letter reflecting legal advice from in-house counsel." It contains comments and edits by Dowling, Talbot and Whittington. The edits by Talbot and Dowling do not appear to be requests for any specific legal advice and therefore, on the current record these edits do not appear to be protected by attorney-client privilege.   The sentences containing edits and comments by Whittington appear to constitute legal advice and may be redacted.

Entry No. 682: This document is described on the privilege log as "Draft investor letter reflecting legal advice from in-house counsel attached to email providing legal advice from in-house counsel regarding investor letter."  It contains a single comment and one edit by Whittington.  These may be redacted on the basis of privilege; the remainder of the document should be produced.

### 3.   Entry Nos. 544 (withheld), 583 (redacted)

In its privilege log, Apple describes Entry No. 544 as an email from Saori Casey to Sam Whittington and Kyle Andeer on the subject of "Q1 FX impact." It has been withheld in its entirety. Entry No. 583 is an email from Saori Casey to Sam Whittington and copying Nancy Paxton and Matt Blake.  The subject matter of the email is "Fwd: Customer Activations Week 14 (FQ1 week 12)" and it is described as "Redacted email from employee acting under the direction

of in-house counsel regarding investor letter."

In his most recent declaration, Whittington describes these documents as follows:

> As Apple finalized and prepared to issue the January 2, 2019 letter from Apple CEO Tim Cook to Apple investors (the "Cook Letter"), I directed various Apple employees, including Saori Casey, to prepare certain back-up documentation with respect to the factual assertions made in the Cook Letter, for the purpose of ensuring compliance with reporting requirements and minimizing legal risk to the Company. Entry No. 544 is a December 31, 2018 email from Ms. Casey to me and Kyle Andeer (also an Apple in-house lawyer). The redacted portion of Entry No. 583 is a January 1, 2019 email from Ms. Casey to me. In both of these emails, Ms. Casey forwards information directly responsive to my request for back-up documentation in connection with the Cook Letter. These two emails were sent primarily for a legal purpose, and they reflect the nature of my explicit instructions regarding the gathering of back-up documentation.

Joint Discovery Letter, Ex. A (Second Supplemental Declaration of Sam Whittington Regarding Documents Withheld as Privileged) (Dkt. no. 374-1) ("Second Supp. Whittington Decl.") ¶ 3.

In addition to Whittington's detailed declaration stating that these communications were in direct response to requests for information made by Whittington in the course of providing legal advice, the Court has reviewed these documents *in camera* and concludes that the emails Apple has withheld reflect the nature of counsel's instructions.

Plaintiff is concerned that Apple has "not explain[ed] how documents about "FX impact" (Entry No. 544 (Ex. C at 3)) or iPhone activations (Entry No. 583 (*id.*)) reflect legal advice, when other documents also collecting back-up data (*e.g.*, Entry No. 329 re: installed base (Order at 24)) did not." The reason the Court found that Entry No. 329 was not privileged however, was because it was a communication between non-attorneys and did not contain any statements that expressly disclosed the nature of any requests from counsel to obtain supporting documentation – or even that the communications were in response to such a request. *See* August 3 Order at 24. In particular, the Court explained:

> [T]here is nothing in [Entry 329] that would reveal the type of information Defendants' in-house counsel advised was needed to support the Investor Letter as there is no mention of the purpose for which the information was being collected and it is not apparent from the face of the document that the communication even related to or was in response to the advice of in-house counsel. The possibility that the information discussed in a communication between non-attorneys

> might be related to advice by counsel that certain representations in
> the Investor Letter needed factual support is not sufficient.

*Id.*  Notably, the Court gave Apple the opportunity to support its assertion of privilege as to Entry

329 with a supplemental declaration of counsel "consistent with the Court's rulings to establish, if

they can, that the subset of documents in this subcategory that do not contain Whittington's

explicit instructions but that he understood were created at his behest for a legal purpose, are

protected by attorney-client privilege because they were created for the primary purpose of

seeking legal advice or reflected Whittington's legal advice."[7] *Id.*  Here, on the other hand, Apple

has supplied a detailed declaration of counsel that specifically addresses Entry Nos. 544 and the

redacted email in Entry No. 583 establishing that they were sent in response to his requests for

information in the course of providing legal advice.

Therefore, Entry No. 544 and the redacted portion of Entry No. 583 may be withheld on

the basis of attorney-client privilege.

### 4. Entry Nos. 400 (withheld), 403-404 (redacted), 417 (redacted), 517 (redacted), 536 (redacted), 618 (withheld), 619 (withheld), 622 (withheld), 651 (redacted), 673 (withheld), and 692 (withheld)

According to Apple, these documents contain email exchanges that include the email in

Entry No. 389 that the Court found to be privileged and/or emails that "follow up on the

comments about 'legal obligations' reviewed by the Court in Entry No. 389."  Joint Discovery

Letter at 7 (citing August 3 Order at 23). Plaintiff questions the withholding of these documents,

asserting that "[t]he record indicates the documents in dispute are likely non-privileged under the

controlling *In re Grand Jury* test for purportedly 'dual-purpose' business and legal documents

because '[m]any documents . . . request input from non-lawyers[,]' pointing to Entry Nos. 517 and

536, which "begin with Cook 'giv[ing] the pen back to Adam [Talbot],' a non-lawyer, to revise

the investor letter."  *Id.* at 3.  Plaintiff also points out that Entry No. 651 begins with "one

employee emailing three in-house attorneys 'I'll start a separate chain for your review process,'

suggesting Apple kept its legal review distinct from the disputed documents."  *Id.*

---

[7] To the extent Apple did not accept the Court's invitation as to Entry no. 329, the time for
supplying such a declaration is now long past and therefore, Entry 329 should be produced.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The Court finds that while some of the emails in these threads are communications

2    requesting or providing legal advice, many others do not on their face request or provide legal

3    advice.  As to these documents, it may be possible for Apple to establish through a detailed

4    declaration of counsel that the communications are, in fact, legal advice or requests for legal

5    advice even though that is not apparent on the face of the documents.  Because the parties'

6    disputes were set forth only in a joint discovery letter and the parties have not had an opportunity

7    to offer full briefing as to the remaining documents in dispute, Apple will be permitted to supply

8    such a declaration as to those documents, as set forth further below.

9    As a preliminary matter, the Court revisits its previous guidance as to Entry No. 389.  In its

10   August 3 Order, the Court stated:

11       The fourth subcategory of documents consists of emails from a group of in-house counsel
         about drafts of the Investor Letter.  The Court has reviewed Entry 389 and finds that it is
12       framed in terms of Defendants' legal obligations and the bulk of the comments in the email
         address those obligations even though the email includes isolated comments that are not
13       legal in nature (e.g., the comment that it would be "great to find opportunities to shorten the
         length" of the Investor Letter.)  The Court concludes, therefore, that the primary purpose of
14       the communication is to offer legal advice

15   August 3 Order at 23.  Regrettably, the Court's analysis addressed only a single email – an email

16   from Whittington sent on December 24, 2018 at 12:37 (a.m. or p.m. not stated) with "combined

17   comments" from Whittington, Adams and Andeer, all Apple attorneys.  As stated in the Court's

18   August 3 Order, that email is privileged.  Entry No. 389 also contains three other emails, however,

19   namely an email from Dowling sent at 10:12 pm on December 23, 2018, an email sent by Maestri

20   on December 24, 2018 at 10:14 a.m. and an email from Talbot sent on December 24, 2018 at

21   10:46 (a.m. or p.m. not stated).  The Court now clarifies that the *only* email in Entry No. 389 that

22   is privileged is the December 24, 2018 email sent at 12:37 pm by Whittington.  The remaining

23   emails do not expressly seek legal advice and do not reveal any specific legal advice.   Therefore,

24   they are not privileged.

25   **Entry 400:** This thread overlaps with the thread in Entry No. 389.  In particular, the thread

26   contains the same email from Whittington, sent on December 24, 2018 at 12:37 (a.m. or p.m. not

27   stated) that the Court found to be privileged in connection with Entry No. 389.   Therefore, that

28   email was properly withheld.  The thread also contains an email from Adam Talbot "elevat[ing]"

questions from Whittington's email "for Luca's attention" (sent on December 26, 2018 at 10:53 a.m.); an email from Whittington to Maestri referencing Talbot's email and asking Luca Maestri to respond (sent on December 26, 2018 at 10:26, a.m. or p.m. not stated); and an email, from Luca Maestri, responding to the questions from counsel (sent on December 26, 2018 at 11:10, a.m. or p.m. not stated). All of these emails disclose legal advice from Apple's attorneys and therefore may be withheld on the basis of attorney-client privilege. The last three emails in the thread, however, are the emails that were also included in Entry No. 389, namely, the email from Dowling sent at 10:12 pm on December 23, 2018, the email sent by Maestri on December 24, 2018 at 10:14 a.m. and the email from Talbot sent on December 24, 2018 at 10:46 (a.m. or p.m. not stated). As discussed above, these emails are not privileged and should be produced.

**Entry No. 403**: This thread contains the three emails discussed above, in connection with Entry Nos. 389 and 400, that the Court finds are non-privileged (the email from Dowling sent at 10:12 pm on December 23, 2018, the email sent by Maestri on December 24, 2018 at 10:14 a.m. and the email from Talbot sent on December 24, 2018 at 10:46, a.m. or p.m. not stated). The Court notes that Apple (properly) did not redact these emails from Entry No. 403. The thread also contains the Whittington emails sent on December 24, 2018 at 12:37 and on December 26, 2018 at 10:26, both of which the Court finds constitute legal advice and therefore are privileged, as discussed above. Similarly, another Whittington email in the thread, sent on December 26, 2018 at 9:03 a.m. is privileged. Finally, the thread contains an email from Jeff Williams, Apple's COO and a non-attorney, sent on December 26 at 6:50 pm. This email was sent to Whittington, Casey, and Adams and copies six individuals, only one of whom (Andeer) is an attorney. The email appears to be in response to an email from Whittington asking generally for feedback. It is not clear from the face of this document whether or not it specifically responds to any particular question from Apple's counsel or seeks advice on any particular legal issue. Therefore, in order to establish that this communication, which is by a non-lawyer and was addressed to both lawyers and non-lawyers, is privileged Apple needs to supply a declaration from the attorney from whom legal advice was being sought establishing that this email included a request for legal advice or

United States District Court
Northern District of California

would reveal legal advice.[8]

**Entry No. 404**: This thread contains many of the emails discussed above.  The emails in this document that the Court has already found are privileged are the Whittington emails sent on December 26, 2018 at 10:26 (a.m. or p.m. not stated) and 9:03 a.m. and the email from Whittington sent on December 24, 2018 at 12:37 (a.m. or p.m. not stated) with "combined comments" from in-house counsel.  The emails in this thread that the Court has found are not privileged are the three emails in Entries 389 and 400, from Dowling, Talbot and Maestri.  The thread also contains three emails from Maestri (sent December 26, 2018 at 10:53 a.m.; December 26, 2018 at 12:59, a.m. or p.m. not stated; and December 26, 2018 at 2:11 p.m.), an email sent by in-house counsel Kate Adams on December 26, 2018 at 12:02 p.m., an email sent by Adam Talbot on December 26, 2018 at 2:38 p.m. and an email sent by Nancy Paxton on December 26, 2018 at 10:57 a.m.  Apart from the December 26 email from Adams, which constitutes legal advice and therefore is privileged, these emails are by non-attorneys who do not appear to be seeking legal advice; they also do not appear to raise any legal issues.  Rather, these communications appear to be primarily business-related.  Therefore, in order to establish that these emails are privileged, Apple needs to supply a declaration from the attorney from whom legal advice was being sought establishing that these emails requested legal advice or would reveal specific legal advice if disclosed. [9]

**Entry No. 417:** This email thread contains three emails; none is included in the threads discussed above.  First, there is an email from Saori Casey to Whittington, sent on December 30, 2018 at 9:49 (a.m. or p.m. not stated) that provides information that may reveal legal advice from Whittington. Therefore, the Court finds this email is privileged.  Second, there is an email from Whittington sent on December 30, 2018 at 8:55 a.m. addressing the timing for a revised draft of

---

[8]Apple should supply this declaration to Plaintiff but need not file the declaration unless the parties, after meeting and conferring, are unable to resolve their dispute as to whether the Williams email has been properly withheld.

[9]Apple should supply this declaration to Plaintiff but need not file the declaration unless the parties, after meeting and conferring, are unable to resolve their dispute as to whether these emails have been properly withheld.

United States District Court
Northern District of California

the investor letter that could be shared with the Disclosure Committee.  While this email falls into a gray area, broadly construed it constitutes legal advice and therefore the Court finds that it may be withheld as privileged.  The third email is from Adam Talbot to Cook, Maestri, Adams, Williams, Dowling, Paxton, Whittington, Casey, Blake, and Andeer, sent on December 26, 2018 at 1:52 p.m.  The Court finds that this is not a request for legal advice; nor does it contain legal advice.  Therefore, the Talbot email is not privileged.  The redacted version of this document that Apple produced to Plaintiff is consistent with the Court's conclusions.

Entry No. 517:  The first email in this thread (found at the end of the document) is an email from Tim Cook sent on December 31, 10:26 (a.m. or p.m. not stated) to a group that includes both lawyers (Andeer, Whittington and Adams) and non-lawyers (Dowling, Paxton, Maestri, Talbot,  Casey and Williams) and includes a line at the end, "giving the pen back to Adam."  That email does not explicitly request legal advice or disclose legal advice.  The Court therefore finds that the Cook email is not privileged.  The remaining emails in this thread are between Whittington and Saori Casey.  The Court finds that they relate to Whittington's efforts to obtain factual support for statements in the Investor Letter and their disclosure would reveal the nature of legal advice provided by Whittington.  Therefore, these emails are privileged.    The redacted version of this document that Apple produced to Plaintiff is consistent with the Court's conclusions.

Entry No. 536:  The first email in this thread is the email sent by Tim Cook on December 31, 2018 at 10:26 (a.m. or p.m. not stated) also included in Entry No. 517.  For the reasons stated above, the Court finds that this email is not privileged. The email that follows the Cook email, sent by Sam Whittington on December 31, 2018 at 3:38 p.m., contains legal advice from Whittington. Therefore, that email is privileged. The email after that, from Adam Talbot, sent on December 31, 2018 at 4:49 p.m., does not contain any request for legal advice and does not disclose any legal advice.  Therefore, that email does not appear to be privileged on the current record. The email sent by Saori Casey on December 31, 2018 at 5:51 pm suggests changes to the Investor Letter "[b]ased on the latest P&L flash [she] just published."  It does not seek or disclose legal advice. Therefore, this email does not appear to be privileged on the current record.  The email from

United States District Court
Northern District of California

1   Adam Talbot sent on December 31, 2018 at 6:22 p.m. contains no legal advice or request for legal

2   advice and therefore does not appear to be privileged on the current record. The emails from

3   Whittington to Talbot sent on January 1, 2019 at 9:23 a.m., 9:32 (a.m. or p.m. not stated) and 6:04

4   p.m. constitute legal advice and may be withheld as privileged.  The email from Talbot to

5   Whittington on January 1, 2018 at 9:31, a.m. or p.m. not stated, is in response to an email from

6   Whittington and may reveal legal advice.  Therefore, that email is privileged. The redacted version

7   of this document that Apple produced to Plaintiff is consistent with the Court's conclusions.

8       **Entry No. 618:**  This document contains a series of emails sent on January 1, 2019 from

9   Sam Whittington (sent at 5 p.m., 5:02 p.m. and 10:09 p.m.), Kate Adams (sent at 7:14 p.m.) and

10  Luca Maestri (sent at 7:16 p.m.).  All of them relate to the timing as to the sharing of the draft

11  Investor Letter with the Disclosure Committee.  Although these communications fall into a gray

12  area, as discussed above, the Court concludes that Whittington and Adams were offering legal

13  advice in their communications related to coordinating this timing and that the response by

14  Maestri might disclose this advice.  Therefore, this document was properly withheld.

15      **Entry No. 619:**  The first email in this thread is a request from Whittington sent on

16  January 1, 2019 at 9:26 a.m. for information to back up certain statements in the draft Investor

17  Letter.  This is followed by an email from Whittington sent the next day, January 2, 2019, at 12:28

18  p.m., asking for the same information.  These are followed by an email response to Whittington's

19  question by Nancy Paxton (sent January 2, 2019 at 12:34 p.m.), a response to Paxton's email sent

20  by Whittington at 12:35 p.m. with a follow-up request for information from Casey, a response

21  from Casey to Whittington sent at 1 p.m., and two emails from Casey to Kevan Parekh (sent at

22  1:07 p.m. and 5:54 p.m.)., as well as response from Parekh (sent at 4:24 p.m.), that follow up on

23  Whittington's request to Casey for additional information.  The Court finds that because all of

24  these emails are in response to Whittington's requests, which are themselves legal advice and

25  therefore privileged, the responses to Whittington's email (and the exchange between Parekh and

26  Casey) are also privileged because they reveal the nature of Whittington's advice.  Therefore, this

27  document was properly withheld.

28      **Entry No. 622:**  This thread overlaps with the thread in Entry No. 619.  It begins with the

United States District Court
Northern District of California

1  same two emails from Whittington requesting information to back up certain assertions in the draft

2  Investor Letter, as well as the responses from Paxton and Casey.  It differs from Entry No. 619

3  only in that the exchange between Saori Casey and Kevan Prebakh is not included in Entry No.

4  622, which includes instead a response from Tim Billups to the same question from Casey that

5  Prebakh responded to in Entry No. 619.  For the same reasons the Court finds all of the emails in

6  Entry No. 619 to be privileged, it also finds that the emails in Entry No. 622 are privileged and

7  were properly withheld.

8       **Entry No. 651:** This thread begins with an email from Adam Talbot sent on January 1,

9  2019 at 4:07 p.m. stating that the attached Investor Letter draft contained edits from Tim Cook.

10  This email ends with the statement, "Luca, Kate and Sam, I'll start a separate chain for your

11  review process."   There is nothing in this email that expressly requests legal advice and it also

12  does not disclose legal advice.  Therefore, it does not appear to be privileged on the current record.

13  Likewise, responses from Saori Casey sent at 4:13 p.m. and 4:17 p.m., a response from Luca

14  Maestri sent at 4:15 p.m. and a response from Adam Talbot sent at 4:32 p.m. do not disclose or

15  request legal advice but are, instead, simply communications between non-attorneys primarily for

16  a business purpose.  These also do not appear to be privileged on the current record.  At 4:36 p.m.,

17  in-house counsel Sam Whittington sent an email response with various comments that the Court

18  construes as legal advice.  Therefore, this email is privileged. Another email from Whittington

19  sent at 5:03 p.m. is also privileged.  The remaining emails in this thread are directly responding to

20  Whittington's comments and include at least one reference to his advice.  These are the emails

21  from Adam Talbot sent at 4:48 p.m. and 5:56 p.m.; the emails from Luca Maestri sent at 5:35

22  p.m., 5:49 p.m. and 8:29 p.m.; and the email sent by Steve Dowling at 5:48 p.m.  These emails are

23  privileged.

24       **Entry No 673:** The first email in this thread is a request from Whittington sent on January

25  1, 2019 at 9:26 a.m. for information to back up certain statements in the draft Investor Letter.  This

26  is followed by an email from Whittington sent the next day, January 2, 2019, at 12:28 p.m., asking

27  for the same information.  These are the same two emails that started the thread in Entry No. 619,

28  which the Court finds to be privileged, as discussed above.  These emails are followed by the

email by Paxton sent on January 2, 2019 at 12:34 (also found in Entry No. 619), which the Court finds to be privileged for the reasons discussed above. Next, there is a series of emails between Casey and Nate Barton discussing information directly related to Whittington's request for information to back up statements in the Investor Letter. In particular, Casey sent emails to Barton at 12:41 and 12:51 p.m. on January 2, 2019 and Barton sent responses at 12:53 p.m. and 1:08 p.m. that day. Like the emails between Casey and Parekh in Entry No. 619, the Court finds that these emails between Casey and Baron are privileged because they are in response to Whittington's requests and reveal the nature of Whittington's advice. Therefore, the Court finds that this document was properly withheld.

**Entry No. 692:** All of the emails in this chain except one are found in the entries discussed above. In particular, the thread begins with the two Whittington emails, sent on January 1, 2019 at 9:26 a.m. and January 2, 2019 at 12:28 p.m., the response from Paxton sent on January 2, 2019 at 12:34 p.m., the response from Whittington sent at 12:35 p.m. that day, the response from Casey to Whittington sent at 1:00 p.m., and the email from Casey to Parekh sent on January 2, 2019 at 7:27 p.m. For the reasons discussed above, the Court finds these emails to be privileged. The only email that is not found in the entries discussed above is an email from Casey to Nate Barton sent on January 2, 2019 at 1:10 p.m. that appears to be a response to the email from Barton to Casey sent earlier that day (found in Entry No. 673 but not included in Entry No. 692). This email expressly references legal advice and the Court therefore finds that this email is privileged. Therefore, this document was properly withheld.

## IV.   CONCLUSION

For the reasons stated above, no later than **September 11, 2023,** Apple shall re-review the documents on its privilege log – other than the 232 documents that were the subject of the Court's August 3 Order, the documents listed in footnote 2 of this Order, and documents that fall outside of the time period stipulated by the parties at oral argument – and produce to Plaintiff: 1) any documents it finds to be non-privileged; 2) a detailed privilege log setting forth the grounds for the assertion of privilege; and 3) supporting declarations of counsel as required, consistent with the guidance set forth in the Court's August 3, 2023 Order and this Order.

United States District Court
Northern District of California

1        With respect to the 55 documents that remain in dispute and were the subject of the parties'

2  Joint Discovery Letter, Apple shall produce by **September 11, 2023** any documents or portions

3  thereof that the Court has ordered produced herein.  By the same date, Apple shall supply to

4  Plaintiff evidence, including declarations of counsel, to support its continued withholding on the

5  basis of privilege of any material that the Court has found based on the current record to be non-

6  privileged and has not specifically ordered produced.  While Apple need not disclose the specific

7  content of the communications it contends are privileged, declarations of counsel should be as

8  detailed as possible and in the case of documents containing email threads, should address the

9  specific email messages in the thread rather than (or in addition to) providing general statements

10  about the document as a whole.

11        Following Apple's re-review and production of the materials listed above, the parties

12  shall meet and confer to resolve any remaining disputes.

13        **IT IS SO ORDERED.**

15  Dated:  August 25, 2023

16

17  JOSEPH C. SPERO
United States Magistrate Judge