Pages 1 - 27

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Joseph C. Spero, Judge

IN RE:  APPLE INC. SECURITIES    )
LITIGATION,                       )
                                  )
                                  )    **NO. C 19-2033**
_____ )

San Francisco, California
Friday, August 18, 2023

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES** (Via Zoom videoconference):

For Plaintiffs:
                      ROBBINS, GELLER, RUDMAN & DOWD LLP
                      Post-Montgomery Center
                      One Montgomery Street - Suite 1800
                      San Francisco, California  94104
             BY:  **SHAUN A. WILLIAMS, ATTORNEY AT LAW**
                  **DANIEL J. PFEFFERBAUM, ATTORNEY AT LAW**
                  **KENNETH J. BLACK, ATTORNEY AT LAW**

     (Appearances cont'd next page.)

Reported By:      Jennifer Coulthard, CSR No. 14457, RMR CRR
                  Official U.S.D.C. Stenographic Reporter

**APPEARANCES (Cont'd):**

For Defendants:

                    ORRICK, HERRINGTON & SUTCLIFFE LLP
                    The Orrick Building
                    405 Howard Street
                    San Francisco, California  94105
        BY:  **JAMES N. KRAMER, ATTORNEY AT LAW**

                    ORRICK, HERRINGTON & SUTCLIFFE LLP
                    777 South Figueroa Street, Suite 3200
                    Los Angeles, California 90017
        BY:  **KEVIN M. ASKEW, ATTORNEY AT LAW**

                    PAUL WEISS RIFKIND WHARTON GARRISON LLP
                    535 Mission Street, 24th Floor
                    San Francisco, California 94105
        BY:  **MELINDA HAAG, ATTORNEY AT LAW**

PROCEEDINGS

| | |
|---|---|
| 1 | **<u>Friday - August 18, 2023</u>**                          **<u>9:38 a.m.</u>** |
| 2 | **P R O C E E D I N G S** |
| 3 | --oOo-- |
| 4 | **THE CLERK:**  We are calling case No. 19-CV-2033 in Re: |
| 5 | Apple, Inc. Securities Litigation, and they've already got |
| 6 | their hands raised. |
| 7 | Okay.  Judge, the last one should be coming.  Okay. |
| 8 | That's everybody who's raised their hands. |
| 9 | Good morning, everyone.  So let's take appearances, I |
| 10 | guess from the plaintiff and then the defendants. |
| 11 | **MR. WILLIAMS:**  Sure.  Good morning, Your Honor, Shaun |
| 12 | Williams, Robbins Geller Rudman & Dowd on behalf of the |
| 13 | plaintiffs. |
| 14 | **THE COURT:**  Good morning. |
| 15 | **MR. PFEFFERBAUM:**  Good morning, Your Honor; Dan |
| 16 | Pfefferbaum, also on behalf of plaintiffs. |
| 17 | **THE COURT:**  Good morning. |
| 18 | Good morning, Your Honor; Kenneth Black, Robbins Geller |
| 19 | Rudman & Dowd, also on behalf of the plaintiffs. |
| 20 | **THE COURT:**  Good morning. |
| 21 | **MR. KRAMER:**  Good morning, Your Honor; James Kramer, |
| 22 | Orrick Herrington & Sutcliffe.  And with me is my partner, |
| 23 | Kevin Askew, on behalf of defendants. |
| 24 | **THE COURT:**  Good morning. |
| 25 | **MS. HAAG:**  And good morning, Your Honor; Melinda Haag, |

**PROCEEDINGS**

1   Paul Weiss on behalf of the defendants.

2        **THE COURT:**  Good morning.

3        **THE CLERK:**  Before we get started, let me just make sure

4   that Jennifer can hear.  Can you hear okay, Jennifer?

5        **COURT STENOGRAPHER:**  Yes.  Thank you.

6        **THE COURT:**  So I don't -- we've been here before.  I know

7   your views on lots of things, basically on everything that

8   we're discussing today, so I just have a few questions that I

9   wanted answered.  Of course, if you want to make other

10  argument, it's up to you.

11       The question on the motion, the 26(e) motion is whether

12  26(e) would require rereview for privilege based on the -- it

13  seems to be undisputed that Apple, in the first instance,

14  applied the -- a primary purpose test.

15       Ultimately, I found that the in Re: Grand Jury standard of

16  the primary purpose test had to be applied.  And the question

17  is whether, by limiting our review through agreement at 232

18  documents, somehow the Rule 26(e) or, for other reasons, the

19  Rule 26(e) obligation to correct the rereview was excused or

20  whether or not there is any such obligation, because it doesn't

21  fall under 26(e).

22       I'm not -- I think I understand the arguments as to that,

23  and I could tell you I'm going to find that 26(e) does require

24  rereview, because it does seem to be undisputed that Apple

25  applied the wrong test or what I found to be the wrong test,

**PROCEEDINGS**

 1   and I think that's sufficient to trigger the obligation, except

 2   for the following question, which is this:  Is there any

 3   evidence that Apple disclosed before my August 3rd order that

 4   it had applied the -- a primary purpose test?

 5         The reason I ask that question is, the linchpin for me

 6   about ultimately whether it would require rereview, not

 7   withstanding the parties' agreements, you know, what I felt

 8   about the parties' agreement is the parties' understanding of

 9   that agreement.

10         And if Apple had disclosed before I ultimately ruled on

11   the question on the 232 documents that as to all of the

12   documents in that review and the other -- and the documents

13   that were not part of those 232 documents it had applied what

14   I'll now call the wrong test, that would be significant to me.

15         Going through the materials, it seemed obvious to me that

16   Apple has not, prior to August 3rd, made any such disclosures;

17   to the contrary.

18         The implication, just by reading the motion to -- original

19   motion to compel was, I think Apple said that it had to apply

20   the in Re: Grand Jury test and specifically called out "the"

21   primary purpose, not "a" primary purpose in that motion.

22         So I think, by implication at least, it's obvious that

23   Apple did not disclose that it had applied the wrong test in

24   the first instance.  But that's my question.

25         And why don't I give Apple a chance to respond to whether

1   or not there's any evidence that they disclosed before August

2   3rd, before my order or at least before the argument on the

3   order, actually, that it applied the "a primary purpose" test.

4        I wrote this down wrong.

5        Yes, go ahead.

6        **MR. KRAMER:**  Thank you, Your Honor.

7        **THE COURT:**  Yes, Mr. Kramer.

8        **MR. KRAMER:**  Jim Kramer.  We did not disclose that to

9   plaintiffs.  Putting aside whether it's the right or the wrong

10  test, I want to answer directly that we did not disclose that

11  to plaintiffs.

12       **THE COURT:**  Okay.  Understood.  I assumed that.  And

13  it's -- it's right or wrong -- wrong for purposes of this

14  litigation, at least.

15       **MR. KRAMER:**  Fair enough, Your Honor.

16       **THE COURT:**  Agree on that for now until some court of

17  appeals decides.

18       **MR. KRAMER:**  Your Honor, with regard to the issue of

19  scope, I understand Your Honor's starting point.  Can I just

20  speak to the scope of any additional review briefly?

21       **THE COURT:**  Sure.  Yeah.  Of course.

22       **MR. KRAMER:**  I appreciate that.  So, Your Honor, the

23  plaintiffs, of course, have had our privilege logs since

24  November of '21 through the course of -- as you referred to at

25  the start of the hearing various -- lots of efforts to

1   compromise or narrow.  The plaintiffs and the defendants

2   narrowed the documents in dispute to 232.  Those are the

3   documents plaintiffs were most focused on.

4        A number of the documents that were carved out of the

5   dispute were carved out for reasons unrelated to privilege;

6   relevance, time period, things like that, based on a

7   description of the privilege log.

8        Documents still in dispute, there's 274, 274 that are

9   dated within the class period.  And given where we are today,

10  we think the right place for Your Honor to go, if you are going

11  to order rereview, should be in the documents for the class at

12  274.  It shouldn't be a situation where we go back to the

13  beginning where we were in November of 2021.

14       You know, it just shouldn't be the case because plaintiffs

15  have already narrowed the dispute significantly, and we made

16  great concessions along the way, so we think that's fair under

17  the situation.

18       We're, quite honestly, also concerned, Your Honor, that --

19  and you can probably see this from the dispute we have over the

20  55 remaining documents, per the joint letter brief, that

21  whatever happens with our rereview of documents, we're going to

22  be in a situation where we continue to have a dispute.

23       Touching briefly on 55, we did not address the substance,

24  but on thematic issues, as you see in Exhibit C, we provided as

25  part of the meet and confer a very detailed supplemented

1  privilege log, which tracks directly to your order of August

2  3rd and how we analyze documents continuing to be withheld.

3  We've literally cited to paragraphs of the 43-page order, and

4  the plaintiffs still believe we did it wrong.

5      And basically, the theme I take out of their briefing is,

6  we don't trust Apple, double check it.

7      We really need to get this done, of course we're eager in

8  finality.  That's why we compromised hard at your urgings along

9  the way.

10     So if we're in a situation where we need to rereview 1,400

11 documents, there's going to be much more opportunities for

12 disputes.  We think the right place to go is the 274 documents

13 that are dated during the class period.

14     **THE COURT:**  I don't -- so let me just respond to that

15 briefly, and then I'll ask Mr. Williams or someone to respond

16 to it.

17     I don't disagree with the notion that documents that were

18 excluded in the first instance from review by agreement for

19 reasons other than -- for relevance reasons largely, and I

20 think at some point there's a declaration from plaintiffs

21 counsel which describes those in the original motion to compel,

22 and I can just draw straight out of that some -- a list of

23 documents that were excluded for relevance.  It's -- number

24 one.

25     Number two, as to whether or not it should be a further

1    refinement that just anything has to be within the class

2    period, I'll let Mr. Williams respond to that.  But I can tell

3    you this:  There's no way I don't have to have a lot of -- rule

4    on a lot of disputes in this case.

5        As I've said to you before, the parties in this case on

6    both sides have routinely taken extreme positions.  You

7    continue to take extreme positions.

8        I don't have any faith in your ability to do this other

9    than narrow the disputes somewhat, but there's going to be a

10   lot of things to rule on, so it doesn't -- it doesn't impact me

11   in any material way when you say, well, we'll have 50 or a

12   hundred less -- fewer disputes.  You're going to have so many

13   disputes.  I've just -- I've given up on it.

14       You're -- the way you all have decided to litigate these

15   privilege issues -- and maybe there's substantive reasons why

16   you have, like there's really important documents in there that

17   will be damaging.  Maybe there's a good reason for it, but

18   whatever the reason is, it's intolerably broad on both sides.

19   And that's fine, but I don't have any faith that I'm going

20   to -- I'm certainly not going to decide this motion on the

21   basis that I'll have somewhat fewer disputes to rule on next

22   time, because you say it's the plaintiff; I say it's you and

23   the plaintiff that have caused these disputes.  It's not just

24   one side.

25       But, in any event, let me turn to Mr. Williams and ask him

**PROCEEDINGS**

1   to respond to your motion limiting the review of documents

2   within the class period.  That may be sufficient, I don't know.

3   It may be the ones that you really want.

4       **MR. WILLIAMS:**  Good morning, Your Honor.  Mr. Black is

5   going to address the Court on this issue.

6       **THE COURT:**  Oh, sure.

7       **MR. WILLIAMS:**  And so go ahead, Kenny.

8       **MR. BLACK:**  Yeah.  Thank you.

9   Good morning, Your Honor.

10      **THE COURT:**  Uh-huh.

11      **MR. BLACK:**  We're just hearing this proposal for the first

12  time.

13      We agree with Your Honor that we have previously narrowed

14  on grounds unrelated to this dispute -- you mentioned the

15  documents -- on the basis of relevance.  We would agree.  We're

16  prepared to, you know, to work out an appropriate way to narrow

17  documents still in dispute with defendants.

18      I would suggest that there are documents outside of the

19  narrow class period, which, after all, is just the two-month

20  period, but that doesn't mean that we need everything on the

21  privilege log.

22      **THE COURT:**  So what you're saying is if I -- well, I want

23  to get this done fast, Mr. Black.  And so what you're saying is

24  if I rule yes, you've got to do a rereview except for these

25  documents are excluded because plaintiff has already identified

PROCEEDINGS

1    them as excluded for reasons other than privilege, you think

2    you can further narrow by having a limited scope or limited

3    number of documents outside of the class period; is that what

4    you're saying?

5        **MR. BLACK:**  Yes, Your Honor.  I would agree that time

6    period might be one relevant way or appropriate way to -- to

7    make sure the documents for rereview, but I would suggest they

8    would be longer than just the class period.

9        **THE COURT:**  Yeah?  How much longer?

10       **MR. BLACK:**  So just responding now?

11       **THE COURT:**  Yes, just responding now.

12       **MR. BLACK:**  Yes.  A couple hundred documents that are --

13   you know, a couple dozen documents from before 2018.  There's a

14   couple hundred that would occur before, say, June of 2018.  And

15   I don't know if you want specific dates now.

16       **THE COURT:**  Well, if we can work it out at this second,

17   that would be most efficient.  So you're talking -- you're

18   saying there's documents before June of 2018?

19       **MR. BLACK:**  I know there's a couple hundred.  I don't have

20   an exact number.  If you want, I can calculate the number from

21   the spreadsheet now.

22       **THE COURT:**  Well, what -- so is this bound by time, or is

23   it bound by something else?

24       **MR. BLACK:**  So this would be a -- to narrow by time.  And

25   I'm trying to give you at least some sense of how much it would

**PROCEEDINGS**

1   narrow.

2       **THE COURT:**  Okay.  So how much -- so what's your start

3   date?

4       **MR. BLACK:**  Okay.  So say July 1st, 2018.

5       **THE COURT:**  So wait.  I don't understand.  I thought you

6   were talking about -- tell me -- remind me of the class period.

7       **MR. BLACK:**  So the class period starts November 1st, 2018

8   and goes until January 2nd of 2019.

9       **THE COURT:**  And you want to start July 1?

10      **MR. BLACK:**  Of 2018.

11      **THE COURT:**  2018.

12      **MR. KRAMER:**  Your Honor, if I may just respond briefly.

13      **THE COURT:**  That's five months before the class period,

14  and you're -- and there's a couple hundred documents in that

15  group?

16      **MR. BLACK:**  Yes.

17      **THE COURT:**  Okay.  But you -- the end date January 2nd,

18  2019?

19      **MR. BLACK:**  And then I would ask that we get at least a

20  month at the end of that period.

21      And I'll note Apple reports -- so Apple preannounces its

22  earnings for that quarter on January 2nd, 2019, and then it

23  issues its formal regularly scheduled earnings report at the

24  end of the month.

25      **THE COURT:**  Yes.  Mr. Kramer?

1        **MR. KRAMER:**  Yes.  Thanks, Your Honor.

2        Your Honor, the starting point for the class period, as

3   the Court may recall, is when a company reports its results for

4   the quarter, and it ended September 29th.  And that statement

5   is on November 1.

6        The company began preparing for that earnings call and

7   rolling up its results for the fourth quarter in October.

8   Obviously the results came in, in September.  They began

9   preparing for the earnings call in October and there were

10  documents on a privilege log that relate to the question and

11  answer that the parties were -- that Apple was preparing for

12  and the earnings announcement, which ultimately started the

13  class period.

14       Obviously we would be happy to meet and confer any way --

15  I'm sorry -- can narrow this any way we can, but I think

16  logically, the right place to start is October 1, because

17  that's when the work starts to prepare for that November 1

18  statement, which starts the class period.

19       If plaintiffs aren't willing to agree -- I understand this

20  is not a moment of compromise -- we think that logic works.

21       **THE COURT:**  It could be.

22       **MR. KRAMER:**  But if not --

23       **THE COURT:**  I'm trying to see whether it's a moment of

24  compromise.

25       **MR. KRAMER:**  Yeah.

**PROCEEDINGS**

1      **THE COURT:**  How about some time period afterwards?

2      **MR. KRAMER:**  And we're happy to go past the January 2nd

3  announcement.  If they want until the last day of January,

4  that's fine, Your Honor, we'll do that; again, as a moment of

5  compromise.  It's just this stuff prior to the Q4 results being

6  done, you know.  By definition there's a lot of -- there's a

7  lot of materials in there that won't bear on, I don't believe,

8  any of the issues in the case.  That's why we're -- I'd push

9  back on that.

10     **THE COURT:**  How's that sound, Mr. Black?

11     **MR. BLACK:**  What I would suggest is a counter-compromise.

12  Apple releases its two new flagships or the two top-of-the-line

13  flagship phones in September of 2018, the iPhone 10S, the

14  iPhone 10S Max.  So if we're going to pull up, I'd want to

15  include September at least of 2018.

16     **THE COURT:**  Okay.  Mr. Kramer?

17     **MR. KRAMER:**  Your Honor, if -- it's fair enough.  We

18  can -- Mr. Askew, remind me when were those phones launched.

19  Were they at the end of September?

20     **MR. ASKEW:**  I think that's correct.

21     **MR. KRAMER:**  Yeah.  I think it was September 27th.  What

22  if we do September 15th to January 30?

23     **THE COURT:**  Mr. Black?

24     **MR. BLACK:**  That is acceptable to us.

25     **THE COURT:**  Okay.  So the review that I will order -- I'll

**PROCEEDINGS**

1  get out an actual order on this, but will be limited to

2  September -- let me just write this down -- 15th --

3      **MR. KRAMER:**  2018, Your Honor.

4      **THE COURT:**  -- 2018 through January 30, 2019.

5      Okay.  All right.

6      Okay.  Any other comments anyone wants to make on the

7  26(e) motion?

8      Okay.  On the discovery letter I just have a -- you know,

9  my -- what I think the way to do this is, I'll review the 26

10  documents in camera that you've discussed in the joint letter.

11  I have them, by and large.  I have some or a request from you,

12  but do you all agree that if I make rulings on those 26

13  documents, discussion of joint letter, that will be sufficient

14  to resolve the privilege issues as to the 55 documents that

15  remain in dispute out of the 232 original documents that were

16  addressed in the August 3rd order?

17      **MR. KRAMER:**  We do, Your Honor.  Defendants do, Your

18  Honor.

19      **MR. BLACK:**  Yes, Your Honor.

20      **THE COURT:**  Great.

21      **MR. BLACK:**  I believe it's 19 documents.

22      **THE COURT:**  Not 26?  Maybe I'm reviewing documents I

23  shouldn't or may be some duplication.

24      Second is, for the documents that are the investor letter

25  comments documents, they have comments by counsel, and they

**PROCEEDINGS**

```
 1   have comments by someone identified as Adam, which I need

 2   confirmation is Adam Talbot, who is not an attorney, and by

 3   Dowling, which I think is Steve Dowling, also a non-attorney.

 4   Am I right so far?

 5        MR. KRAMER:  That's correct, Your Honor.

 6        THE COURT:  Okay.  And the text of those comments in

 7   addition to the non-text -- in addition to the text of the

 8   comments, there's associated highlights, and that raises a

 9   couple of things.  One is, I think I'm right that the comment

10   text and the highlight text are in different colors for each of

11   them.  I've got, you know, a lighter blue or a brighter blue

12   for Dowling, a darker blue for Whittington, and then I think

13   some brownish color for Talbot.

14        Am I reading that correctly?

15        MR. ASKEW:  I believe that's correct, Your Honor.

16        THE COURT:  Okay.  And the question that comes up with

17   that particular set of problems is -- what I'm likely to find

18   is that some of them are privileged and some of them aren't.

19        You know, it's very likely that Mr. Whittington's comments

20   are privileged, for example, and less likely that Mr. Talbot's

21   comments are privileged, et cetera.

22        I wanted to have a little bit of a discussion about how

23   one does the redaction if some are privileged and some are not.

24   So, for example, if Mr. Whittington has a comment and

25   associated highlighting, thinking through how you do the
```

 1   redaction of that.  You're redacting the comments easily

 2   enough, and you can say "Redacted."

 3       The highlighting I think is connected to his privileged

 4   comment, and so is there a way that you can produce this

 5   without the highlighting?  You can show -- I mean, you could

 6   say on the document something like "The comments redacted as

 7   well as associated highlighting" or something.

 8       Is that a physically possible thing you can do with these

 9   documents?

10       MR. ASKEW:  So it's something we'd have to look into, Your

11   Honor.  And I'm sorry not to have a precise answer for you.  My

12   concern is that doing that would -- it would be difficult to do

13   that in a way that would preserve the integrity of the

14   document.

15       THE COURT:  Right.

16       MR. ASKEW:  But it's certainly something we can look into

17   because I -- our position on this and the reason we withheld

18   the entire document is precisely for that reason, that we think

19   the items that are being highlighted are items that are being

20   flagged as things that an attorney has flagged for legal

21   reasons.

22       THE COURT:  No.  I -- and I don't -- I understand the

23   reasoning.  I just hoped for a different conclusion, but -- so

24   I'll just leave it to you.  You've got to figure out a way to

25   leave the text in and remove -- but have what the lawyer added

1    or the -- what I decide is the privileged portion, which in

2    this case discussing the hypotheticals is what the lawyer added

3    in the way of highlighting.  There may be words that the lawyer

4    added, and that would be something that could be redacted, but

5    if it's -- if it's highlighting, you need to figure out a way

6    to produce a document in a way that shows the text but not what

7    the lawyer added.

8         And it may be that -- and again, you can work with the

9    plaintiff on this sort of an agreed-upon method of doing this

10   so that the document integrity is not a problem -- not an issue

11   in terms of ultimate use of the document.  But I wanted to

12   highlight that.

13        Let's see.  Oh.  So a number of the documents that are

14   still in dispute were produced in a redacted form, and I only

15   have the unredacted version, so I can't tell what was redacted.

16   In order to complete the in camera review -- and I've got some

17   numbers, documents 403, 404, 417, 517, 536, 583, and 651.

18   Should I say that again?  Do you have those?

19        **MR. ASKEW:**  We have those.

20        **THE COURT:**  Okay.  All right.  So I'm going to need -- and

21   maybe work with Karen to figure out how to submit them

22   electronically, but I'm going to need the redacted versions of

23   those documents.  And maybe I've got them, but I couldn't find

24   them in the record.

25        So we've done that.

**PROCEEDINGS**

 1       **MR. WILLIAMS:**  Your Honor, I just want to make sure that

 2  our team got those numbers.  Did you get those numbers, Kenny?

 3       **MR. BLACK:**  I'm sorry, no.  I --

 4       **THE COURT:**  Here.  I can do them again.  It's 403, 404,

 5  417, 517, 536, 583, 651.

 6       **MR. WILLIAMS:**  Thank you, Your Honor.

 7       **MR. BLACK:**  Thank you, Your Honor.

 8       **THE COURT:**  And the other thing I want to talk to you

 9  about is -- maybe I shouldn't open this can of worms -- is

10  email strings.

11       I've struggled a lot over the last several days about what

12  to do with email strings and -- because, you know, some of them

13  overlap in part with other email strings.  Some of them have,

14  you know, what appear to be completely unrelated stuff stuck in

15  the middle of email strings, which is fine -- people do that in

16  emails; not complaining about it -- but it makes it more

17  challenging.

18       The thing I'm wrestling with right now is slightly more

19  substantive, and that is, there are some email strings --

20  emails between non-attorneys discussing information related to

21  financial results that don't -- that don't, on their face,

22  contain any information from which I can conclude they are

23  related to a -- they are in answer to a question that's been

24  posed by the general counsel for answer.

25       He goes out and he says, I need this, this and this to

1   give you legal advice, and there's an argument, of course, that

2   those communications back and forth are privileged between the

3   counsel and the non-lawyers who go off and do this stuff and

4   then -- and I -- especially where it's explicitly referencing

5   counsel's instructions or that it's done in response to

6   counsel's instructions, I think that's what I said last time.

7   What's more difficult for me is the ones where they don't make

8   any mention of it, you know, it is -- it's -- I guess my

9   question is, what sort of a record do I need?

10      I think I need to have -- you know, maybe -- maybe the

11  answer is in the -- you know, in the counsel's declaration, the

12  general counsel's declaration.

13      If I have a general counsel's declaration saying that this

14  particular communication in this particular part of the email

15  string is -- was these two people in finance discussing getting

16  the information that I requested in order to give advice on

17  whether the disclosure complied with the securities laws, I

18  guess that would be sufficient with respect to that particular

19  email -- part of an email.

20      But the problem is, they're email strings and they go all

21  over the place, and they change directions and they talk about

22  something else and then they do something different, and I'm

23  wondering whether -- how refined it has to be.

24      One, I assume the question is do I need this, you know.

25  If I don't have something on the face of a document which

1   indicates that it's done in response to their request by

2   counsel regarding their provision of legal advice, my tentative

3   conclusion is, I've got to have something from the lawyer or

4   from the actual participants that says this was done because,

5   you know, Whittington asked us to figure out whether this was

6   accurate.  That's question number one.  I think I need that.

7   Do you agree or disagree?

8       This question number two is, when counsel, general

9   counsel, does that, doesn't it have to be email piece by email

10  piece?  I mean, you know, it's -- and maybe there are

11  collections that make sense, but, you know, the problem I had

12  with some of the record in this case is that the declarations

13  are never that refined.  They never say this communication --

14  because the email strings are long, they overlap, they flow

15  into each other in various ways.  People go off on tangents and

16  start another email string.

17      Is it enough for someone -- for the general counsel to

18  say, well, it's the -- everything in these documents was them

19  trying to gather information, or does it have to be email date

20  by email date or email date and time by email date and time?

21  And I'm not sure what the answer to that is.  That's why I

22  asked the question.  So I'll be interested in your thoughts on

23  that.

24      **MR. ASKEW:**  I can respond to that, Your Honor.

25      So on your first question -- I think this informations is

1   in the record.  I think it's in the declaration that we

2   submitted from Mr. Whittington.  Or there are certain documents

3   in dispute, and it's hard to talk about specifics without

4   knowing which documents Your Honor is looking at, but there are

5   a number of documents where we think it's obvious from the face

6   of the document that, you know, some of the document starts

7   with an email chain from Mr. Whittington and then you can see

8   that request get forwarded maybe involving non-lawyers, but we

9   think it's all infused with the original request from

10  Mr. Whittington.

11       For documents that aren't in that category, we do think

12  it's covered by his declaration.

13       **THE COURT:**  So which declaration are you talking about?

14  He's got a number of declarations.

15       **MR. ASKEW:**  There's -- so there's a couple.  There's the

16  second supplemental declaration, which covered a couple of

17  additional documents, and then there's the original

18  supplemental declaration, which was filed with the earlier

19  briefing.

20       I will say to Your Honor's second question about parsing

21  through various emails in the chain, we -- I mean, we

22  absolutely agree that it's appropriate to look at the

23  communications on an email-by-email basis.

24       **THE COURT:**  So can I just --

25       **MR. ASKEW:**  Sure.

1    **THE COURT:**  -- push back a little bit?  Because I'm -- on

2   the second -- the declaration that was filed with the original

3   briefing I think I already found was insufficient, and that's

4   part of why we're in this suit.

5    So what you're really talking about is just the new second

6   supplemental declaration that -- where -- which was filed when

7   in connection -- weren't they both filed in connection with the

8   August 3rd order?

9    **MR. ASKEW:**  The second supplemental declaration is

10   something that we provided after your August order, so it's

11   docket No. 374-1.  It was filed on June 30th of this year.

12    **MR. KRAMER:**  And, Your Honor, if I might just add

13   something to that briefly.

14    **THE COURT:**  Hang on one second.  Hang on a second.  Let me

15   just look at what you're talking about.

16    Just reading what I wrote.

17    (Brief pause.)

18    **THE COURT:**  I see.  So what happened was, we -- in the

19   August 3rd order, we permitted an additional supplemental

20   declaration, and it was filed?

21    **MR. KRAMER:**  That's correct, Your Honor.

22    **THE COURT:**  Got it.

23    **MR. KRAMER:**  And, Your Honor, the only other thing I was

24   going to add, apropos to your earlier question, is, we know,

25   from going through this process, there's a number of situations

**PROCEEDINGS**

1    where attorneys were originally asked orally about advice and

2    then emails followed.  So going email by email is, I think,

3    difficult to do because of the fact that there were some oral

4    communications that were part of the overall process.

5        **THE COURT:**  Well, I can appreciate that, but all I have to

6    go on is what Mr. Whittington said, most of which I've already

7    made rulings on whether it was sufficient or not sufficient,

8    so . . .

9        **MR. KRAMER:**  Which, again, Your Honor, is why we provided

10   the supplemental declaration, and we appreciated the

11   opportunity to do that.

12       **THE COURT:**  Yes.  And that was back then and I can't

13   remember -- well, I'll take a look at it.  I'll see what it

14   says.  I don't want to get ahead of my knowledge here.

15       Okay.  Understood.  It's either sufficient or not

16   sufficient, but that's the basis for the request by Apple to

17   exclude things that aren't obviously, included on their face,

18   materials that are being gathered at the request of counsel in

19   response to some request from counsel.

20       **MR. KRAMER:**  And, Your Honor, if it's helpful, we, of

21   course -- if you, as you go through the process, identify

22   documents that you think, you know, taking into account Apple's

23   declaration, their supplemental declaration, if there are

24   documents where you want additional information from Apple,

25   we'd be prepared to provide that information to you.

1    **THE COURT:**  Yeah.  You know, I'm not going to do that.

2    **MR. KRAMER:**  Okay.  I just want to make the offer, Your

3    Honor.

4    **THE COURT:**  No, I appreciate the offer.  It's more than an

5    offer.  It's something in the record that you have now said you

6    would like to do.  I'm not willing to do that.

7    We're getting -- this case is getting a little old in the

8    teeth, and I'm going to make a decision based on the records

9    you put before me, and you'll just have to live with the record

10    that's before me, some of which will be sufficient, some of

11    which won't, but I'm not going to -- you've had plenty of time

12    to put in things and haven't done it, and I appreciate that,

13    and it will be sufficient or it won't be.

14    Okay.  Any other discussion anyone would like to make on

15    any point on either of these two matters?

16    **MR. BLACK:**  I have one question, Your Honor.

17    **THE COURT:**  Yes.

18    **MR. BLACK:**  There are approximately 400 documents on the

19    privilege log that do not contain a date.

20    You can determine from the log, in most cases at least,

21    that those documents were attached to emails and, therefore,

22    what the date is, and I'd just like to confirm that just

23    because a document is -- has a blank space under "Date" on the

24    privilege log, it won't be excluded from defendant's rereview

25    if it does fall within the period we just agreed to.

PROCEEDINGS

1    THE COURT:  Mr. Kramer?

2    MR. KRAMER:  I'm sorry.  I didn't understand what

3  Mr. Black was suggesting, how we factor that into the

4  compromise we've agreed to, and I want to make sure I

5  understand it before I respond.

6    THE COURT:  Go ahead, Mr. --

7    MR. BLACK:  A number of the privilege log entries do not

8  contain a date for the specifics documents, and I would like to

9  confirm that our agreement as to the date period will include

10 documents that are undated on the log but for which you can

11 otherwise determine that the date falls between the dates we

12 agreed to.

13   MR. KRAMER:  Yes.  What we will do is for the undated

14 documents, we will endeavor, in good faith, to determine if

15 they fall within the September 15th, '98 -- I'm sorry -- 2018

16 to the January 30, 2019 time period.  And if they do, we will

17 include those in the agreed compromise.

18   THE COURT:  And I guess if there are attachments, undated

19 attachments but they're attached to emails within that time

20 period, those would be included, right?

21   MR. KRAMER:  Absolutely, Your Honor.

22   THE COURT:  All right.

23   MR. KRAMER:  That's correct.  Absolutely.

24   MR. BLACK:  Thank you.

25   THE COURT:  Okay.

**PROCEEDINGS**

1          All right.  Anything further?  Otherwise we'll submit it.

2     **MR. BLACK:**  Nothing.  Thank you.

3     **THE COURT:**  Okay.  Thank you all.

4     **MR. KRAMER:**  Thank you, Your Honor.  Take care.

5     **MS. HAAG:**  Thank you, Your Honor.

6     **THE COURT:**  Thanks.

7     **THE CLERK:**  Court stands in recess.

8          (Concluded at 10:16 a.m.)

9                          --oOo--

1

2

3 <u>**CERTIFICATE OF REPORTER**</u>

4          I certify that the foregoing is a correct transcript

5 from the record of proceedings in the above-entitled matter.

6

7

8 _____          <u>September 3, 2023</u>
  JENNIFER L. COULTHARD, RMR, CRR                    DATE
9 Official Court Reporter
  CA CSR#14457
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25