ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
KENNETH J. BLACK (291871)
HADIYA K. DESHMUKH (328118)
JACOB G. GELMAN (344819)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com
jgelman@rgrdlaw.com
           – and –
MARK SOLOMON (151949)
JASON A. FORGE (181542)
RAPHAELLA FRIEDMAN (323324)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
jforge@rgrdlaw.com
rfriedman@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re APPLE INC. SECURITIES LITIGATION | Case No. 4:19-cv-02033-YGR |
| | CLASS ACTION |
| This Document Relates To: | LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY |
| ALL ACTIONS. | |
| | DATE:          TBD |
| | TIME:          2:00 p.m. |
| | CTRM:        1, 4th Floor |
| | JUDGE:       Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...........................................................................................................1

II.  ARGUMENT .................................................................................................................2

    A.  Dr. Shenkar Is Highly Qualified to Offer Opinions on Chinese Economic
        Issues, and His Proffered Testimony Will Assist the Jury.....................................2

        1.  Dr. Shenkar Is Qualified by Knowledge, Experience, and
              Education to Testify Regarding Chinese Economic Issues .........................3

        2.  Dr. Shenkar's Opinions Regarding What Types of Information
              About the Chinese Market Were Available to Apple and Its Senior
              Leadership Is Proper Expert Testimony .....................................................6

    B.  Partnoy's Proffered Testimony Will Assist the Court and Jury and Is
        Proper Rebuttal Testimony ...................................................................................9

        1.  Partnoy's Opinion that Trueman's and Gauna's Expert Reports
              Lacked a Reliable Methodology Is Proper Expert Testimony...................10

        2.  Partnoy's Opinion that Trueman and Gauna Did Not Address
              Certain Facts Inconsistent with Their Opinions Is Proper Rebuttal
              Testimony .................................................................................................12

III.  CONCLUSION.............................................................................................................13

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
   738 F.3d 960 (9th Cir. 2013) ................................................................................7

*City of Pomona v. SQM N. Am. Corp.*,
   750 F.3d 1036 (9th Cir. 2014) ..............................................................................5

*Daubert v. Merrell Dow Pharms., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ................................................................................6

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)..................................................................................... *passim*

*Elosu v. Middlefork Ranch Inc.*,
   26 F.4th 1017 (9th Cir. 2022) ...............................................................................6

*Graystone Funding Co., v. Network Funding, L.P.*,
   2022 WL 1063734 (D. Utah Apr. 8, 2022).....................................................11, 12

*Hangarter v. Provident Life & Accident Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ...............................................................................11

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
   340 F. Supp. 3d 934 (N.D. Cal. 2018) ...................................................................9

*In re Juul Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   2022 WL 1814440 (N.D. Cal. June 2, 2022) .......................................................8, 9

*In re Korean Ramen Antitrust Litig.*,
   281 F. Supp. 3d 892 (N.D. Cal. 2017) ...................................................................8

*In re MacBook Keyboard Litig.*,
   2022 WL 1604753 (N.D. Cal. Jan. 25, 2022) .......................................................12

*In re Packaged Seafood Prods. Antitrust Litig.*,
   2020 WL 5739316 (S.D. Cal. Sept. 24, 2020)........................................................8

*In re Silicone Gel Breast Implants Prods. Liab. Litig.*,
   318 F. Supp. 2d 879 (C.D. Cal. 2004) ...................................................................5

*Kirola v. City & Cnty. of S.F.*,
   2010 WL 373817 (N.D. Cal. Jan. 29, 2010) .........................................................12

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2                                                                                                          **Page**

3

*Laflamme v. Safeway, Inc.*,
    2010 WL 3522378 (D. Nev. Sept. 2, 2010) ............................................................10

*Otto v. LeMahieu*,
    2021 WL 1615311 (N.D. Cal. Apr. 26, 2021) ........................................................11

*Plexxikon Inc. v. Novartis Pharms. Corp.*,
    2021 WL 2340144 (N.D. Cal. June 8, 2021) ...........................................................4

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) ...................................................................................3

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
    752 F.3d 807 (9th Cir. 2014) ...............................................................................2, 3

*Sandoval v. Cnty. of San Diego*,
    985 F.3d 657 (9th Cir. 2021),
    *cert denied*, __U.S. __, 142 S. Ct. 711 (2021) ...................................................3, 4

*Sumotext Corp. v. Zoove, Inc.*,
    2020 WL 264701 (N.D. Cal. Jan. 17, 2020) ...........................................................10

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 26(a)(2)(D)(ii) .....................................................................................9, 12, 13

Federal Rules of Evidence
    Rule 702 ............................................................................................... *passim*
    Rule 702(a).................................................................................................3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1       Lead Plaintiff and Class Representative Norfolk County Council as Administering

2  Authority of the Norfolk Pension Fund ("Plaintiff") hereby submits this Opposition to

3  Defendants'[1] Motion to Exclude Expert Testimony ("Motion" or "Mot.") (ECF 292).

4  **I.     INTRODUCTION**

5       Plaintiff intends to call Dr. Oded Shenkar ("Dr. Shenkar"), a renowned scholar and

6  professor of management at The Ohio State University, in support of its affirmative case.  Dr.

7  Shenkar has nearly 50 years of academic and practical experience in matters relating to the Chinese

8  economy and how foreign corporations operate within it.  Based on this experience and his

9  extensive review of both contemporaneous internal Apple documents and external sources, Dr.

10  Shenkar's testimony provides compelling evidence that Apple closely monitored economic

11  developments affecting the smartphone market in China, that this information was conveyed to

12  Cook and Maestri, and that Defendants acted on the data they had on November 1, 2018, by cutting

13  iPhone production.  Defendants have moved to partially exclude Dr. Shenkar's testimony as

14  inadmissible under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579

15  (1993),[2] on the bases that he is not qualified to offer opinions on economic issues and that he seeks

16  to offer inappropriate state of mind testimony.  These arguments are without merit.  As explained

17  below, Dr. Shenkar is a prominent expert on the Chinese economy – having published and been

18  publicly recognized as an authority on the subject.  Dr. Shenkar's opinions regarding how Apple

19  monitored and transmitted information about the Chinese market to its senior leadership is helpful,

20  well grounded, and the proper subject of expert testimony.

21       In rebuttal to Defendants' proposed experts Dr. Brett Trueman ("Trueman") and Mr. Alex

22  Gauna ("Gauna"), Plaintiff proposes the testimony of Mr. Frank Partnoy ("Partnoy"), a professor

23  at Berkeley Law.  If Trueman and Gauna testify, Partnoy seeks to critique the methodology they

24  employed to reach their conclusions regarding the investing public's understanding of Cook's

25

---

26  [1]   "Defendants" are Apple Inc. ("Apple" or the "Company"), Timothy D. Cook, and Luca Maestri.

27

28  [2]   All citations are omitted and emphasis is added unless otherwise noted.

LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT
TESTIMONY - 4:19-cv-02033-YGR
4879-3356-0378.v1

- 1 -

1   November 1, 2018 statement that he "would not put China in [the] category" of emerging markets

2   where Apple's business was facing economic deceleration and related pressures.  He also

3   highlights Trueman's and Gauna's failure to address research showing that securities analysts,

4   whose reports constitute the primary basis for their conclusions, tend to be biased towards the

5   companies they cover.  Finally, Partnoy identifies and discusses available evidence inconsistent

6   with Trueman's and Gauna's conclusions that Cook was commenting on Apple's historical

7   performance and not current conditions in China on November 1, 2018.  Defendants seek to

8   exclude portions of Partnoy's testimony under Rule 702, *Daubert*, and Fed. R. Civ. P.

9   26(a)(2)(D)(ii)'s limits on proper rebuttal testimony.[3]  These arguments fail because it is useful

10  and appropriate for a rebuttal witness to opine that an opposing party's expert lacks a methodology,

11  as well as to offer evidence that contradicts an opposing party's expert.

12      As detailed herein, Defendants' Motion distorts Plaintiff's experts' testimony,

13  misconstrues the applicable law, and presents contradictory and irreconcilable arguments.  The

14  Motion should be denied.

15  **II.   ARGUMENT**

16      **A.   Dr. Shenkar Is Highly Qualified to Offer Opinions on Chinese
             Economic Issues, and His Proffered Testimony Will Assist the Jury**

17      Dr. Shenkar is qualified, perhaps uniquely so, by knowledge, education, and nearly 50

18  years of experience to opine on issues related to business in China and China's economy.  Fed. R.

19  Evid. 702; *see Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014)

20  (finding that an expert's "many relevant certifications and decades of relevant experience render

21  him qualified to issue his expert opinion").  His assignment was to provide opinions regarding

22  economic conditions and trends in China, as well as the type and sources of information that a

23  foreign corporation – like Apple – would typically rely on to assess the Chinese market.  Shenkar

24  Expert Report ("Shenkar Rpt.") (ECF 292-6), ¶1.  Dr. Shenkar was also asked to compare the data

25

26  _____

27  [3]   Defendants do not challenge Partnoy's qualifications, and they do not seek to exclude or
    otherwise limit the testimony of the only other expert disclosed by Plaintiff, loss causation and
28  damages expert Dr. Steven P. Feinstein.  *See* Mot.

1  that Apple collected and analyzed to the data typically available to foreign companies doing

2  significant business in China and whether that information was accessible to senior Company

3  executives.  *Id.*  He applied his knowledge of, and experience in, Chinese economics, sociology,

4  and politics, as well as carefully reviewed contemporaneous internal documents and external

5  sources, to reach his conclusions.  *Id.*  His proffered testimony regarding the types of information

6  about the Chinese market and economy that would have been accessible to Apple and its senior

7  leaders (*i.e.*, Defendants) will be helpful to the trier of fact in assessing Defendants' alleged

8  misstatements and omissions concerning business conditions there.  *See* Fed. R. Evid. 702(a).

9  Defendants' Motion to exclude Dr. Shenkar's expert testimony as contained in ¶¶4, 14, 52-63, 75,

10 91, 103, 116, 123, 129, 150, and 172 of his report should be denied.

### 1. Dr. Shenkar Is Qualified by Knowledge, Experience, and Education to Testify Regarding Chinese Economic Issues

13       The Motion is wholly undermined by Defendants' own reliance on the Shenkar Expert

14 Report.  While Defendants seek to exclude certain of Dr. Shenkar's opinions regarding economic

15 conditions in China, and their impact on the Chinese smartphone market (¶¶4, 14, 52-63), due to

16 his purported lack of qualifications, their Motion for Summary Judgment ("MSJ") (ECF 293),

17 relies upon some of these same paragraphs to support the proposition that "[t]he market was well-

18 aware of . . . headwinds" facing Apple in China due to macroeconomics and trade tensions,

19 including specifically with respect to the smartphone market.  MSJ at 6 (citing Shenkar Rpt., ¶¶52-

20 53).[4]  Of course, the Court may only rely on evidence that can be presented in a form that is

21 admissible at trial in ruling on a motion for summary judgment – here, expert testimony that "meets

22 the threshold established by Rule 702 as explained in *Daubert*."  *Primiano v. Cook*, 598 F.3d 558,

23 565 (9th Cir. 2010); *see Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021), *cert*

24 *denied*, __U.S. __, 142 S. Ct. 711 (2021).  Thus, the MSJ indicates that not even Defendants are

25 convinced by their own challenges to Dr. Shenkar's qualifications.

---

[4]  Defendants' MSJ also cites opinions by Dr. Shenkar that they do not claim he is unqualified to offer, specifically those at ¶¶73-74, 80-83, 91, to support their contentions about both macroeconomic conditions in China and the smartphone industry.  MSJ at 6.

1    The position adopted by Defendants' MSJ is the correct one – Dr. Shenkar is qualified to

2    offer opinions regarding economic conditions in China and their impact on the Chinese smartphone

3    market.  He earned M. Phil and Ph.D. degrees in Sociology from Columbia University, where his

4    dissertation on the Chinese bureaucracy was supervised by faculty from the Department of

5    Sociology, the Graduate School of Business, and the East-Asian Institute.  Shenkar Rpt., ¶9.  He

6    received a B.A. in East Asian (Chinese) Studies and a MSc.soc in Sociology (with business and

7    modernization studies) from the Hebrew University of Jerusalem.  *Id.*  He is the inaugural and

8    current Ford Motor Company Chair in Global Business Management at the Fisher College of

9    Business, The Ohio State University, where he is also a member of the China Institute and the

10   East-Asian Studies Center. *Id.*, ¶10.  He has published over 130 scholarly articles in major journals

11   in international business, strategy, and related fields, including finance, in addition to ten books on

12   topics including international business and the Chinese economy.  *Id.*  His work has also been

13   featured in major popular outlets across the world, such as the New York Times, the Financial

14   Times, the Economist, the China Daily, the BBC, CNN, and China Global Television, including

15   on topics related to the Chinese economy.  *Id.*[5]

16       Defendants' only argument that these opinions should be excluded is that Dr. Shenkar's

17   Ph.D. is in sociology, and thus he cannot expertly opine about economics.  Mot. at 7.  But the

18   argument that an expert needs a specific academic credential has been repeatedly rejected.  "Rule

19   702 explicitly anticipates that an expert may be qualified through his 'knowledge, skill, experience,

20   training, *or* education.'"  *Plexxikon Inc. v. Novartis Pharms. Corp.*, 2021 WL 2340144, at *2 (N.D.

21   Cal. June 8, 2021) (emphasis in original).  Moreover, Dr. Shenkar's sociology background is

22   directly relevant to the opinions on the Chinese economy he seeks to offer in this case.  For

23   example, as Dr. Shenkar explains in his report, and Defendants do not dispute: "[V]alues of

24   Chinese culture have a profound impact on consumer behavior, among other business features.

25   They imply, for instance, that status and status display are of great importance, and explain, for

26

27   [5]   *See, e.g.*, CGTN America, "Oded Shenkar explains China's economic plans through the
28   decades," https://www.youtube.com/watch?v=lqQ38UqHE0I (last visited October 20, 2022).

1  instance, **why China strikes above its per capita economic weight in purchasing luxury**

2  **products**." Shenkar Rpt., ¶30.[6]

3  Regardless of the merits of Defendants' educational argument, Dr. Shenkar is clearly

4  qualified as an expert on Chinese economic issues by knowledge and experience.  He has published

5  widely on the Chinese economy.  For example, he is the author of a book, *The Chinese Century:*

6  *The Rising Chinese Economy and Its Impact on the Global Economy, the Balance of Power, and*

7  *Your Job*, published by Wharton School Publishing in 2004.  Shenkar Rpt., Ex. 1 ("Shenkar CV"),

8  at 9; Ex. C.[7]  In fact, Dr. Shenkar cited *The Chinese Century* in his report in this case in the course

9  of his discussion of the growth of the Chinese economy.  Shenkar Rpt., ¶23 & n.17-18.  Defendants

10  do not seek to exclude those opinions offered by Dr. Shenkar on Chinese economic issues.  He has

11  appeared multiple times before the US-China Economic & Security Review Commission of the

12  United States Congress.  Shenkar CV at 3.  He was interviewed by the Wall Street Journal for an

13  article on how "China May Be on Course To Overtake U.S. Economy," and described features of

14  the Chinese economy that contributed to its growth and growth rate.  Ex. E.

15  Defendants' claim that Dr. Shenkar is particularly unqualified to opine on the smartphone

16  market in China is also unfounded.[8]  In his 2010 book *Copycats: How Smart Companies Use*

17  *Imitation to Gain a Strategic Edge*, published by Harvard Business Review Press, Dr. Shenkar

18  discusses the advantages local competitors have in the Chinese smartphone market.  Ex. F at 48.

19  

20  [6]    Defendants' litigation position suggesting that training in sociology precludes Dr. Shenkar from expertly opining on Chinese economic issues and markets is inconsistent with Apple's own reliance on sociologists for economic and business analysis.  For example, as Dr. Shenkar

21  discusses in his report, around the time of the events at issue in this case, an Apple-employed sociologist named Dr. Doug Guthrie co-wrote a report titled: "Consumption in the Age of Xi:

22  Understanding China's Evolving Consumer Markets," which "proposed a political economy framework" for understanding Chinese consumer behavior.  Shenkar Rpt., ¶¶31-32 & n.37 (citing

23  Ex. A at 67); *see* Ex. B.

24  [7]    The Economist's review of *The Chinese Century* called it a "succinct and thoughtful book" that focused on features of "China's huge domestic market" and described Dr. Shenkar as "a

25  management professor with a long interest in China."  Ex. D.

26  [8]    Whether Dr. Shenkar's prior work focused on the Chinese smartphone market "affects the weight of the expert's testimony, not its admissibility."  *In re Silicone Gel Breast Implants Prods.*

27  *Liab. Litig.*, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004); *see also City of Pomona v. SQM N. Am.*

28  *Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014).

He discussed these precise issues in his report and cited *Copycats* in support.  *See* Shenkar Rpt., ¶¶84 & n.152, 154; 92 & n.176-177.  In fact, Defendants appear to give great weight to Dr. Shenkar's analysis and framework, citing his expert report in support of their argument that "[c]ompetition from Chinese smartphone manufacturers was intense, with companies like Huawei and Xiaomi introducing *copycat* products at lower price points."  MSJ at 6 (citing Shenkar Rpt., ¶91).  *Copycats* even specifically discusses how the iPhone is the subject of copying.  Ex. F at 102-03.

In fact, Defendants do not seek to exclude much of Dr. Shenkar's discussion of the Chinese economy, including opinions relating to its smartphone market.  *See, e.g.*, Shenkar Rpt., ¶¶17-26, 34-51, 70-74, 76-90, 92-93.  Defendants' selective picking and choosing of which *economic* opinions they believe Dr. Shenkar is qualified to present to the jury in the Motion suggests that their problem is with his conclusions and not his qualifications.  It is well-established that "the test under *Daubert* is not the correctness of the expert's conclusions."  *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995).

As Defendants recognize in their MSJ and at times in the Motion, Dr. Shenkar is qualified to opine on economic trends and their impact on the smartphone market in China.  Accordingly, the Motion to exclude ¶¶4, 14, and 52-63 of the Shenkar Expert Report should be denied.

**2.   Dr. Shenkar's Opinions Regarding What Types of Information About the Chinese Market Were Available to Apple and Its Senior Leadership Is Proper Expert Testimony**

Dr. Shenkar's opinions concerning the types of data that a foreign corporation doing business in China would have had access to about consumer preferences and economic trends, as well as how that information would be conveyed to leadership, is highly relevant and will be helpful to the jury.  Such opinions are not beyond the scope of proper expert testimony.

Dr. Shenkar has significant academic and practical experience on how foreign companies operate in China.  *See Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (recognizing "[a]n expert's specialized knowledge and experience can serve as the requisite 'facts or data' on which they render an opinion").  He holds a chair in global business management and has written on "Management with Chinese Characteristics."  CV at 2, 13.  He has published in

academic journals on the experience of foreign businesses in China.  *Id.* at 24.  He also has real-world experience consulting major companies in China.  Shenkar Rpt., ¶11.  He applied these experiences in reaching his conclusions, such as:

- "Apple's high level of dependence on China, for both manufacturing and sales, as well as the emergence of local competitors with global ambitions, would have caused Apple to closely monitor competition, consumer behavior, and demand trends in China." *Id.*, ¶14(c).

- "Apple's organizational structure and executive staffing, especially the changes undertaken just prior to 2018, are indicators of the Company's strong attention to the China market and are consistent with Apple's public statements and internal documents." *Id.*, ¶14(d).

- "Frequent trips to China by Tim Cook and his personal meetings with President Trump and Chinese leadership indicate that Cook was well versed in contemporary events, including rising trade tensions, impacting the China market." *Id.*, ¶14(e).

- "Leading up to Apple's 1Q19 earnings announcement on November 1, 2018, a multitude of warning signs concerning a deterioration of China's smartphone market were apparent to Apple and its top executives, with some translated into tangible corporate actions including reduction of iPhone production levels." *Id.*, ¶14(f)

- "Internal documents confirm that Apple systematically monitored and reviewed the state of the Chinese economy in general and the smartphone market in particular, as well as the local competitive landscape, and that it triangulated in-house sources with those of outside analysts, research organizations, and the media to obtain a comprehensive and accurate picture of Apple's overall business." *Id.*, ¶14(h).

It is beyond dispute that Dr. Shenkar's testimony and opinions concerning Apple's monitoring of market trends in China, as well as the information to which Apple and its senior leadership had access, "would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969-70 (9th Cir. 2013).  Plaintiff alleges that Defendants knew of, but did not disclose, economic pressure on Apple's business in China as of November 1, 2018.  Revised Consolidated Class Action Complaint for Violation of the Federal Securities Laws ("Complaint" or "Compl.") (ECF 114), ¶24.  Instead, Cook explicitly excluded China from the emerging markets where Apple was currently experiencing economic deceleration and related pressures. *Id.*, ¶18. Dr. Shenkar's testimony about the type of information a major foreign corporation would gather –

1  and in fact that Apple did gather – about the Chinese market and how that information was

2  transmitted through the Company to its senior executives is directly relevant to those allegations.

3      Courts frequently reject efforts to exclude relevant testimony like Dr. Shenkar's, which

4  explains business operations in a foreign context, when the expert is qualified and has a sufficient

5  basis for his opinions.  For example, in *In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d 892

6  (N.D. Cal. 2017), the court declined to exclude an expert who "based his opinions on his extensive

7  personal study of Korean chaebols and academic and business publications regarding the same as

8  well as numerous documents produced in this case."  *Id.* at 931-32; *see also In re Packaged*

9  *Seafood Prods. Antitrust Litig.*, 2020 WL 5739316, at *5 (S.D. Cal. Sept. 24, 2020) (same).

10     Dr. Shenkar's occasional use of language of "awareness" and "knowledge" is not presented

11 to opine on a culpable state of mind, and his conclusions offer no such opinion.  Therefore, the

12 usage of such words alone does not justify the exclusion of his highly relevant and helpful

13 testimony, as Defendants urge.  Moreover, other courts have held that testimony about corporate

14 and individual defendants' knowledge "is likely relevant and admissible," where, as here, "there

15 is a basis in the record for those experts to testify, *e.g.*, from their review of defendants' documents

16 or deposition testimony."  *In re Juul Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2022

17 WL 1814440, at *14 (N.D. Cal. June 2, 2022); *see also id.* at *19.  Defendants do not dispute that

18 all of Dr. Shenkar's opinions they seek to exclude are based on his review of voluminous

19 documents, including contemporaneous emails by Defendants and their employees.[9]  *See, e.g.*,

20 Shenkar Rpt., ¶¶75, 91, 103, 116, 123, 150, 172.

21     Dr. Shenkar's opinions are proper, and Defendants do not dispute that they closely

22 monitored the market for their products in China or that they had access to the data and information

23

24

25 ───────────────
   [9]    In contrast, as Plaintiff pointed out in its *Daubert* motion, Defendants' China expert, Dr.
26 Dennis T. Yang, devotes a more significant portion of his testimony to state of mind testimony,
   opining that certain post-statement events were "unexpected," but he provides no methodology or
27 basis for this conclusion, nor does he explain to whom such events were unexpected.  Omnibus
   Motion to Exclude Opinion Testimony of Defendants' Proposed Experts ("Plaintiff's *Daubert*")
28 (ECF 301) at 9-11.

1    Plaintiff alleges they failed to disclose as of November 1, 2018.  The motion to exclude ¶¶75, 91,

2    103, 116, 123, 129, 150, and 172 or otherwise limit Dr. Shenkar's testimony should be denied.[10]

3        **B.    Partnoy's Proffered Testimony Will Assist the Court and Jury and Is
              Proper Rebuttal Testimony**

4

5        Partnoy was retained to review and respond to the expert reports of Trueman and Gauna.

6    Partnoy Rebuttal Expert Report ("Partnoy Rbtl.") (ECF 292-2), ¶7; Ex. G at 15:22-24.  Partnoy

7    offers quintessential Fed. R. Civ. P. 26(a)(2)(D)(ii) testimony rebutting or contradicting two of

8    Defendants' proposed experts, both of whom seek to testify as to what the investing public heard

9    or understood Cook to say about pressures and risks to Apple's business in China on the November

10   1, 2018 conference call.  *See Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 996

11   (N.D. Cal. 2018) ("'The proper function of rebuttal evidence is to contradict, impeach or defuse

12   the impact of the evidence offered by an adverse party.'").

13       First, Partnoy opines on both Trueman's and Gauna's methodologies, or lack thereof.

14   Partnoy Rbtl., ¶¶9-21.  Second, and in a portion of the rebuttal report that Defendants do not move

15   to exclude, Partnoy discusses how a line of academic literature, to which Trueman has contributed

16   but which he did not mention in his report, describes how securities analysts tend to be biased

17   toward the companies they cover.  *Id.*, ¶¶22-24.  Gauna is a retired securities analyst who used to

18   cover Apple and also did not address any potential bias issues.  *Id.*, ¶23.  Third, Partnoy identifies

19   a number of facts not addressed by Trueman and Gauna that are inconsistent with their respective

20   opinions that the November 1, 2018 statement concerned Apple's historical performance in China,

21   rather than current pressure and deceleration there.  *Id.*, ¶¶25-40.  Among the additional facts

22   discussed by Partnoy are analyst reports tending to show that the market understood Cook's

23   statement to be about current conditions in China – curiously, those reports did not meet Trueman's

24

25

26

---

27   [10]   Moreover, "[g]enerally, 'state of mind' and 'intent' objections are better ruled on at trial: the
     context of the testimony and the purposes for which it is offered are critical."  *Juul*, 2022 WL
28   1814440, at *14.

1    and, by extension, Gauna's strict definition of analyst report, or were not published within their

2    arbitrary four-day window following the November 1, 2018 conference call.  *Id.*, ¶¶25-26, 28-31.[11]

3          Partnoy's analysis "[c]ontradicting expert opinions, questioning methodology, and opining

4    on methods and facts [Defendants'] experts did not consider are precisely the type of rebuttal

5    testimony the court would expect."  *Laflamme v. Safeway, Inc.*, 2010 WL 3522378, at *3 (D. Nev.

6    Sept. 2, 2010).  Defendants' motion to exclude ¶¶9-21, 25-26, and 28-31 of Partnoy's Rebuttal

7    Expert Report should be denied.

8          **1.      Partnoy's Opinion that Trueman's and Gauna's Expert
              Reports Lacked a Reliable Methodology Is Proper Expert**

9          **Testimony**

10          Partnoy's opinion that Trueman and Gauna failed to apply any recognizable methodology

11   or analysis underpinning their conclusions about the mental states of securities analysts is

12   appropriate expert testimony.  One of the primary functions of a rebuttal expert is to examine and

13   critique the methodology of an opposing party's expert, including, as here, pointing out flaws in

14   methodology and analyzing the facts considered (or not considered) in the formation of an expert's

15   opinion.  *See Sumotext Corp. v. Zoove, Inc.*, 2020 WL 264701, at *3 (N.D. Cal. Jan. 17, 2020).

16   Defendants' attempt to exclude ¶¶9-21 of Partnoy's Rebuttal Expert Report should be denied.

17          Here, Partnoy explained that neither Gauna nor Trueman employed ***any*** recognizable

18   methodology that could be identified or replicated to reach their conclusions about the mental

19   states of securities analysts, investors, and the "market."  Partnoy Rbtl., ¶¶9-15.[12]  Moreover, to

20   the extent Trueman and Gauna utilized a methodology, Partnoy critiques it.  Partnoy Rbtl., ¶¶16-

21   20.  For example, both Trueman and Gauna conclude that Cook's November 1, 2018 statement

22   about deceleration and pressure on Apple's business in China was "historical" and did not relate

23

24   ---

     [11]   As Partnoy points out, Gauna relies on Trueman's analysis of analyst reports in an important,
25   yet vague manner.  Partnoy Rbtl., ¶7 n.5; *see also* Gauna Expert Report ("Gauna Rpt.") (ECF 292-
     4), ¶¶60 n.7, 66.

26
     [12]   In its *Daubert* motion, Plaintiff explained that Trueman's and Gauna's opinions relating to
27   what the market understood Cook to say, based on their reading of analyst reports, was improper
     expert testimony and excludable because the opinions invaded the province of the jury.  *See*
28   Plaintiff's *Daubert* at 17-18 (Gauna) and 20-21 (Trueman).

1   to the current quarter, despite Cook's explicit use of the present tense in describing the conditions.

2   Trueman Expert Report ("Trueman Rpt.") (ECF 292-3), ¶27(c); Gauna Rpt., ¶66. ***How*** Trueman

3   and Gauna reached the same conclusion directly contradicting the plain language of Cook's

4   statement is unexplained.   Partnoy notes, for example, that "[i]n reaching their respective

5   conclusions . . . neither expert analyzes the ***question*** that prompted Mr. Cook's alleged false

6   statement," which sought current, not historical information.   Partnoy Rbtl., ¶16.   That question,

7   by Bank of America's Wamsi Mohan, and which Cook recognized as a "[g]reat question," called

8   for Cook to: "talk about how you see the trajectory [in China] for the business." *Id.*, ¶¶16-17.

9   Additionally, Partnoy identified recognized methodologies that Trueman and Gauna could have

10  employed, but did not, to evaluate the relationship between Cook's statement and analyst reports.

11  *Id.*, ¶21.

12          Defendants argue that Partnoy's critique of Trueman's and Gauna's lack of methodology,

13  namely that they failed to "describe any reliable methodology, or reliable principles and methods,"

14  is an improper legal conclusion.   Mot. at 2.   This argument fails.   Partnoy, a lawyer and law

15  professor, testified that "I don't intend to offer any legal opinions including opinions related to

16  Rule 702." Ex. G at 15:4-6.   Moreover, the terms he used in forming his opinions have ordinary

17  non-legal meanings.   Additionally, it is well-established that an expert's simple use of "legal

18  terms," to the extent that Partnoy even did so, is not inappropriate and does "not improperly invade

19  the province of the jury or the court." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d

20  998, 1017 (9th Cir. 2004).   In fact, as the Court recognized in *Otto v. LeMahieu*, 2021 WL 1615311

21  (N.D. Cal. Apr. 26, 2021), a rebuttal expert's opinion that an affirmative witness lacked a

22  methodology can be useful in determining whether an expert's testimony is admissible. *Id.* at *3-

23  *4 & n.8.

24          Defendants' heavy reliance on *Graystone Funding Co., v. Network Funding, L.P.*, 2022

25  WL 1063734 (D. Utah Apr. 8, 2022), is unpersuasive.   In *Graystone*, as Defendants recognize, the

26  rebuttal expert sought to opine that the opposing party's expert's "'report and testimony will not

27  "***assist the trier of fact***" because they are unreliable.'"   Mot. at 3.   As is clear from the context of

28  the quoted passage in the *Graystone* opinion, the impermissible "legal conclusion" proffered there

1  was that the opposing party's expert would not "'assist the trier of fact,'" which was for the court

2  to determine.  *Graystone*, 2022 WL 1063734, at \*13 n.10.  Partnoy's testimony is not similar to

3  that.

4         The Court should deny Defendants' motion to exclude ¶¶9-21 of Partnoy's Rebuttal Expert

5  Report.

6         **2.**    **Partnoy's Opinion that Trueman and Gauna Did Not Address Certain Facts Inconsistent with Their Opinions Is Proper**

7                  **Rebuttal Testimony**

8         Defendants claim that because Trueman and Gauna limited their analyses of Defendants'

9  statements to certain, specific types of reports published during a narrow time frame that Partnoy's

10  rebuttal report must be similarly limited.  Mot. at 4.  Thus, they appear to argue that Partnoy, a

11  rebuttal expert, cannot consider materials that Trueman and Gauna did not consider.  This

12  contention has no basis in Rule 26(a)(2)(D)(ii), which limits the scope of rebuttal testimony to

13  evidence "intended solely to contradict or rebut evidence ***on the same subject matter identified by***

14  ***another party***."  *Id.*  It is well-established that "[a] rebuttal expert may cite new evidence and data

15  or introduce new methods of analysis in a rebuttal report so long as the new evidence, data, or

16  method is offered to contradict or rebut the opposing party's expert."  *In re MacBook Keyboard*

17  *Litig.*, 2022 WL 1604753, at \*8 (N.D. Cal. Jan. 25, 2022).  Defendants' argument to exclude ¶¶25-

18  26 and ¶¶28-31 of Partnoy's Rebuttal Expert Report for being outside the scope of a proper rebuttal

19  report fails on its face.

20         In his rebuttal report, Partnoy points to evidence inconsistent with Trueman's and Gauna's

21  opinions – *i.e.*, the market in fact understood Cook's statements as relating to current business

22  conditions in China.  Under Rule 26, the "subject matter" addressed by Trueman and Gauna was

23  how the market heard or understood Cook's statements about China on November 1, 2018.  *See*

24  Trueman Rpt., ¶27(a); Gauna Rpt., ¶12(g); *see also Kirola v. City & Cnty. of S.F.*, 2010 WL

25  373817, at \*2 (N.D. Cal. Jan. 29, 2010).  In the Motion, Defendants do not dispute that the reports

26  published by investment banks and financial news media outlets which are discussed by Partnoy

27  in ¶¶25-26 and ¶¶28-31 of his rebuttal expert bear on that subject matter.  The same evidence was

28  available to both Trueman and Gauna, but they inexplicably chose not to examine it.  In fact,

1   Partnoy opines that Trueman's, and, by extension, Gauna's, consideration only of reports
2   published "fewer than four days following the November 1, 2018 conference" "introduc[ed] a
3   temporal bias to his analysis that he does not explain in his report," and also that, "[a]lthough his
4   'Materials Considered' section lists many additional reports over a longer time period, he does not
5   discuss them in his report and provides no basis for failing to do so." Partnoy Rbtl., ¶25 n.44

6       The reports Partnoy presents appropriately "contradict or rebut" Trueman's and Gauna's
7   conclusions. Fed. R. Civ. P. 26(a)(2)(D)(ii). For example, Partnoy discusses November 1, 2018
8   Morgan Stanley commentary that "[s]urprisingly, AAPL blamed Turkey, India, Brazil and Russia,
9   but *not* China" for Emerging Market Weakness," suggesting "another shoe to drop." Partnoy
10  Rbtl., ¶26. He also cites January 2, 2019 *Bloomberg* and January 3, 2019 *Yahoo! Finance* articles,
11  both of which were quoted in the Complaint (¶¶86, 89), that accused Defendants of not "being
12  honest with investors," and of "fail[ing] to keep it real with investors," respectively, because of
13  Cook's failure to disclose pressures on the Company's business in China as of November 1, 2018.
14  *Id.*, ¶¶29-30. Partnoy also points to analyst reports by J.P. Morgan and RBC that interpreted
15  Cook's statements as affirming the strength of the current business in China, but were outside the
16  restrictive temporal range Trueman imposed on his analysis. *Id.*, ¶¶28, 31.

17      Partnoy's discussion of these reports, like the rest of his proposed testimony, "is intended
18  solely to contradict or rebut evidence on the same subject matter" offered by Trueman and Gauna.
19  Fed. R. Civ. P. 26(a)(2)(D)(ii). It is proper rebuttal testimony, and Defendants' effort to exclude
20  ¶¶25-26 and ¶¶28-31 of the Partnoy Rebuttal Expert Report should be denied.

21  **III.    CONCLUSION**

22      For the reasons stated above, the Court should deny Defendants' motion to exclude (1) ¶¶4,
23  14, 52-63, 75, 91, 103, 116, 123, 129, 150, and 172 of the Shenkar Expert Report; and (2) ¶¶9-21,
24  25-26, and 28-31 of the Partnoy Rebuttal Expert Report.

25   DATED: October 20, 2022              ROBBINS GELLER RUDMAN
                                              & DOWD LLP
26

27                                            s/ Shawn A. Williams
                                          SHAWN A. WILLIAMS
28

1                                 SHAWN A. WILLIAMS
2                                 DANIEL J. PFEFFERBAUM
                                 KENNETH J. BLACK
3                                 HADIYA K. DESHMUKH
                                 JACOB G. GELMAN
4                                 Post Montgomery Center
                                 One Montgomery Street, Suite 1800
5                                 San Francisco, CA  94104
                                 Telephone:  415/288-4545
6                                 415/288-4534 (fax)
                                 shawnw@rgrdlaw.com
7                                 dpfefferbaum@rgrdlaw.com
                                 kennyb@rgrdlaw.com
8                                 hdeshmukh@rgrdlaw.com
                                 jgelman@rgrdlaw.com
9

10                                 ROBBINS GELLER RUDMAN
                                   & DOWD LLP
11                                 MARK SOLOMON
                                 JASON A. FORGE
12                                 RAPHAELLA FRIEDMAN
                                 655 West Broadway, Suite 1900
13                                 San Diego, CA  92101
                                 Telephone:  619/231-1058
14                                 619/231-7423 (fax)
                                 marks@rgrdlaw.com
15                                 jforge@rgrdlaw.com
                                 rfriedman@rgrdlaw.com
16                                 Lead Counsel for Lead Plaintiff

17                                 LABATON SUCHAROW
                                 CAROL C. VILLEGAS
18                                 140 Broadway
                                 New York, NY 10005
19                                 Telephone: 212/907-0700
                                 212/883-7524 (fax)
20                                 cvillegas@labaton.com

21                                 Counsel for Employees' Retirement System of the
                               State of Rhode Island
22

23                                 VANOVERBEKE, MICHAUD & TIMMONY,
                               P.C.
                               THOMAS C. MICHAUD
24                                 79 Alfred Street
                               Detroit, MI  48201
25                                 Telephone:  313/578-1200
                               313/578-1201 (fax)
26                                 tmichaud@vmtlaw.com

27                                 Additional Counsel

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on October 20, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Shawn A. Williams
SHAWN A. WILLIAMS

ROBBINS GELLER RUDMAN
   & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
Email:  swilliams@rgrdlaw.com

4879-3356-0378.v1

## Mailing Information for a Case 4:19-cv-02033-YGR IN RE APPLE INC. SECURITIES LITIGATION

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Tristan Allen**
  tallen@orrick.com

- **Adam Marc Apton**
  aapton@zlk.com,Files@zlk.com

- **Kevin Michael Askew**
  kaskew@orrick.com

- **Kenneth Joseph Black**
  KennyB@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com

- **Frank H. Busch**
  busch@wvbrlaw.com,abarca@wvbrlaw.com,myers@wvbrlaw.com,pallister@wvbrlaw.com

- **Hadiya Khan Deshmukh**
  hdeshmukh@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **William Joseph Foley**
  wfoley@orrick.com

- **Jason A. Forge**
  jforge@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christine M. Fox**
  cfox@labaton.com,ndonlon@labaton.com,lpina@labaton.com,electroniccasefilings@labaton.com,6312349420@filings.docketbird.com

- **Raphaella Friedman**
  rfriedman@rgrdlaw.com

- **Jacob G. Gelman**
  jgelman@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Nicomedes Sy Herrera**
  nherrera@herrerakennedy.com

- **J Alexander Hood , II**
  ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Austin Thomas Jackson**
  ajackson@structurelaw.com,cford@structurelaw.com

- **James Neil Kramer**
  jkramer@orrick.com,lpatts@orrick.com,mwatkins@orrick.com,vmorse@orrick.com,tallen@orrick.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,fgravenson@pomlaw.com,ipareja@pomlaw.com

- **Francis P. McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle Suzanne Myers**
  shawnw@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,dmyers@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com,fgravenson@poml

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@rgrdlaw.com,jgeorge@rgrdlaw.com,dpfefferbaumRGRD@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,jgeorge@ecf.courtdrive.com,sbloyd@rgrdlaw.c

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Craig Wallace Smith**
  notice@robbinsllp.com,noticerobbinsllp@ecf.courtdrive.com,csmith@robbinsllp.com

- **Mark Solomon**
  marks@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Alexander K. Talarides**
  atalarides@orrick.com,lpatts@orrick.com,casestream@ecf.courtdrive.com,tallen@orrick.com

- **Michael David Torpey**
  mtorpey@orrick.com

- **Carol C. Villegas**
  cvillegas@labaton.com,ndonlon@labaton.com,lpina@labaton.com,5739893420@filings.docketbird.com,electroniccasefiling@labaton.com,dsaldamando@labaton.com

- **James Matthew Wagstaffe**
  wagstaffe@wvbrlaw.com,Myers@WVBRlaw.com,pallister@wvbrlaw.com

- **Steven Ray Wedeking , II**
  swedeking@robbinsllp.com,notice@robbinsllp.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,kennyb@rgrdlaw.com,jgelman@rgrdlaw.com,rfriedman@ecf.courtdrive.com,ShawnW@ecf.courtdrive.com,smorris@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Ariel Brianna Winawer**
  awinawer@orrick.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)