ROBBINS GELLER RUDMAN
 & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
KENNETH J. BLACK (291871)
HADIYA K. DESHMUKH (328118)
JACOB G. GELMAN (344819)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com
jgelman@rgrdlaw.com
         – and –
MARK SOLOMON (151949)
ELLEN GUSIKOFF STEWART (144892)
JASON A. FORGE (181542)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
elleng@rgrdlaw.com
jforge@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re APPLE INC. SECURITIES LITIGATION | Case No. 4:19-cv-02033-YGR |
| | CLASS ACTION |
| This Document Relates To: | LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| ALL ACTIONS. | |
| | DATE:      April 30, 2024 |
| | TIME:      2:00 p.m. |
| | JUDGE:    Hon. Yvonne Gonzalez Rogers |
| | CTRM:     1, 4th floor |

**TABLE OF CONTENTS**

                                                                                                    **Page**

NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR
   PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT ....................................1

STATEMENT OF ISSUES TO BE DECIDED ..................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................2

I.      INTRODUCTION ....................................................................................................2

II.     OVERVIEW OF THE LITIGATION ......................................................................4

III.    THE SETTLEMENT TERMS..................................................................................6

IV.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............8

        A.      Lead Plaintiff and Its Counsel Have Adequately Represented the Class ................9

        B.      The Proposed Settlement Is the Result of Good Faith, Arm's-Length
                Negotiations by Informed, Experienced Counsel Who Were Aware of the
                Risks of the Action................................................................................................11

        C.      The Relief Provided to the Class Is Adequate .....................................................12

                1.      The Substantial Benefits for the Class, Weighed Against the Costs,
                        Risks, and Delay of Further Litigation, Support Preliminary
                        Approval ....................................................................................................12

                2.      The Proposed Method for Distributing Relief Is Effective.......................15

                3.      Attorneys' Fees .........................................................................................16

                4.      Other Agreements Between the Parties .....................................................17

                5.      The Proposed Plan of Allocation Is Designed to Treat Class
                        Members Equitably.....................................................................................17

        D.      The Remaining Ninth Circuit Factors Are Satisfied............................................18

                1.      Risk of Maintaining Class Action Status Through Trial ...........................18

                2.      Experience and Views of Counsel ............................................................19

V.      THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE
        CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE
        PSLRA, AND DUE PROCESS ...............................................................................19

VI.     NORTHERN DISTRICT OF CALIFORNIA PROCEDURAL GUIDANCE.................20

VII.    CONCLUSION......................................................................................................21

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP
SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR       - i -

4871-3297-7579.v2

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Abadilla v. Precigen, Inc.*,
   2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ........................................................11

*Ciuffitelli v. Deloitte & Touche LLP*,
   2019 WL 1441634 (D. Or. Mar. 19, 2019)............................................................18

*Fleming v. Impax Lab'ys Inc.*,
   2022 WL 2789496 (N.D. Cal. July 15, 2022).............................................15, 16, 18

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989) .................................................................................8

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..............................................................9, 10, 12, 16

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ..........................................................7

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................................*passim*

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ...................................................................................8

*In re Atmel Corp. Deriv. Litig.*,
   2010 WL 9525643 (N.D. Cal. Mar. 31, 2010).......................................................11

*In re Celera Corp. Sec. Litig.*,
   2015 WL 1482303 (N.D. Cal. Mar. 31, 2015)........................................................12

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ..................................................................................8

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007)..................................................................13

*In re MGM Mirage Sec. Litig.*,
   708 F. App'x 894 (9th Cir. 2017) ..........................................................................20

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................19

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP
SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR     - ii -

4871-3297-7579.v2

**Page**

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ...............................................................17

*In re Resistors Antitrust Litig.*,
2020 WL 2791922 (N.D. Cal. Mar. 24, 2020)........................................18

*In re Tesla, Inc. Sec. Litig.*,
No. 3:18-cv-04865-EMC (N.D. Cal. 2023) ............................................13

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015) ...................................................14

*In re Vocera Commc'ns, Inc. Sec. Litig.*,
2016 WL 8201593 (N.D. Cal. July 29, 2016)........................................16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2018 WL 6198311 (N.D. Cal. Nov. 28, 2018) ............................8, 11, 19

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2019 WL 2077847 (N.D. Cal. May 10, 2019)....................10, 11, 14, 15

*In re Zynga Inc. Sec. Litig.*,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)...................................13, 17

*Low v. Trump Univ., LLC*,
246 F. Supp. 3d 1295 (S.D. Cal. 2017) ..................................................14

*Luna v. Marvell Tech. Grp.*,
2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) .......................................13

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 (C.D. Cal. July 25, 2019) ........................................10

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)...............................................................................20

*Norris v. Mazzola*,
2017 WL 6493091 (N.D. Cal. Dec. 19, 2017) .......................................19

*Redwen v. Sino Clean Energy, Inc.*,
2013 WL 12129279 (C.D. Cal. Mar. 13, 2013)......................................12

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .......................................................8, 14, 19

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP
SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR      - iii

4871-3297-7579.v2

Page

*Salazar v. Midwest Servicing Grp., Inc.*,
   2018 WL 3031503 (C.D. Cal. June 4, 2018) ........................................................................12

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ..........................................................................................17

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ...................................................................................................14

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ...................................................................................................8

*Vataj v. Johnson*,
   2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ..........................................................15, 17, 18

*Weeks v. Kellogg Co.*,
   2013 WL 6531177 (C.D. Cal. Nov. 23, 2013)........................................................................13

*Wong v. Arlo Techs., Inc.*,
   2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ..........................................................................9

*Young v. LG Chem Ltd.*,
   2019 WL 4187396 (9th Cir. Sept. 4, 2019) ..............................................................................8

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §78u-4.........................................................................................................................................3
   §78u-4(a)(4) .....................................................................................................................2, 7, 16

Federal Rules of Civil Procedure
   Rule 23 .................................................................................................................................9, 20
   Rule 23(c)(2)(B).......................................................................................................................19
   Rule 23(e)..........................................................................................................................3, 8, 9
   Rule 23(e)(1).....................................................................................................................8, 9, 19
   Rule 23(e)(2)........................................................................................................2, 9, 10, 19
   Rule 23(e)(2)(A) ......................................................................................................................10
   Rule 23(e)(2)(B).......................................................................................................................11
   Rule 23(e)(2)(C)(i)....................................................................................................................12
   Rule 23(e)(2)(C)(ii)..................................................................................................................15
   Rule 23(e)(2)(C)(iii)..................................................................................................................16
   Rule 23(e)(2)(D).......................................................................................................................17
   Rule 23(h)(1)............................................................................................................................20

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP
SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR       - iv -

4871-3297-7579.v2

1

2                                                                                                **Page**

3

**SECONDARY AUTHORITIES**

Laarni T. Bulan and Laura E. Simmons,
    *Securities Class Action Settlements – 2023 Review and Analysis*
    (Cornerstone Research 2024)...................................................................................................14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP
SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR          - v -

4871-3297-7579.v2

**NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 30, 2024, at 2:00 p.m., before the Honorable Yvonne Gonzalez Rogers, at the United States District Court, Northern District of California, Ronald V. Dellums Federal Building & United States Courthouse, Courtroom 1 – 4th Floor, 1301 Clay Street, Oakland, CA 94612, lead plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund ("Norfolk" or "Lead Plaintiff") will and hereby does move for an Order pursuant to Federal Rule of Civil Procedure ("Rule") 23: (1) granting preliminary approval of the Settlement of the above-captioned action (the "Action") on the terms set forth in the Stipulation[1]; (2) authorizing the retention of Gilardi & Co. LLC ("Gilardi") as the administrator for the Settlement ("Claims Administrator"); (3) approving the form and manner of notice of the Settlement to the Class; and (4) setting a hearing date for final approval of the Settlement ("Final Approval Hearing"), as well as the schedule for various deadlines in connection with the Settlement.

This unopposed motion is supported by the below memorandum of points and authorities and Appendix A thereto, the Stipulation and exhibits thereto (attached to the Williams Declaration), and the Declaration of Peter Crudo Regarding Notice and Administration Plan ("Crudo Declaration" or "Crudo Decl."), filed herewith.

A proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") with annexed exhibits is also submitted herewith.

---

[1]   Unless otherwise defined herein, capitalized terms shall have the meaning ascribed in the Stipulation of Settlement dated March 14, 2024 ("Stipulation"), a true and correct copy of which is attached as Exhibit 1 to the Declaration of Shawn A. Williams in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Settlement (the "Williams Declaration"), submitted herewith.  Emphasis is added and citations are omitted throughout unless otherwise noted.

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR     - 1 -

4871-3297-7579.v2

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court will likely be able to approve the proposed $490 million Settlement of the Action under Rule 23(e)(2) so that notice of the Settlement's terms and conditions may be provided to members of the Class ("Class Members").

2.      Whether the proposed form and content of the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), Proof of Claim and Release form ("Proof of Claim" or "Claim Form"), and Summary Notice of Proposed Settlement of Class Action ("Summary Notice"), and the plan for disseminating these materials to Class Members, should be approved.

3.      Whether the Court should schedule a Final Approval Hearing in connection with the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses and awards to the Representative Parties pursuant to 15 U.S.C. §78u-4(a)(4).[2]

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

The Settling Parties have reached a proposed Settlement of this securities class action in exchange for a payment of $490 million.  Lead Plaintiff now requests the Court to preliminarily approve this proposed Settlement, which would represent the third-largest securities class action recovery in this District's history.

As set forth below, the Settlement is the product of good-faith, arm's-length negotiations between experienced counsel, under the supervision of the Hon. Layn R. Phillips (Ret.) of Phillips ADR ("Judge Phillips"), a highly respected mediator with extensive experience in complex securities litigation.  Lead Plaintiff reached the Settlement only after it had a thorough appreciation of the strengths and weaknesses of the case.  The Settlement is a tremendous result for the Class. As detailed herein, this case has been pending for over four years, throughout which the parties'

---

[2]      The "Representative Parties" are Lead Plaintiff Norfolk, former Lead Plaintiff the Employees' Retirement System of the State of Rhode Island, and City of Roseville Employees' Retirement System.

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR     - 2 -

4871-3297-7579.v2

1   litigation efforts have been extensive, including, *inter alia*, motions to dismiss, fact and expert

2   discovery, numerous discovery disputes, two rounds of class certification briefing, and summary

3   judgment.  Settlement of this case  was not reached until Lead Counsel had: (i) drafted and filed a

4   detailed Complaint; (ii) successfully overcame in part Defendants' motions to dismiss; (iii) filed

5   and fully briefed motions for class certification on two separate occasions supported by four expert

6   reports; (iv) engaged in extensive written discovery; (v) took or defended 23 fact and expert

7   depositions; (vi) litigated multiple discovery disputes; (vii) engaged experts to provide three

8   opinion reports; (viii) successfully opposed Defendants' motion for summary judgment; (ix)

9   successfully excluded Defendants' expert testimony in part; (x) negotiated pretrial orders with

10  Defendants; and (xi) participated in a lengthy mediation process with Judge Phillips which

11  extended over more than two years, culminating in a mediator's proposal that both sides accepted.

12  Defendants have expressly denied and continue to deny that they have violated the federal

13  securities laws or any other laws, or have otherwise misled investors as alleged in this Action, but

14  in recognition that further litigation will be protracted, overly burdensome, expensive, and

15  distracting, have determined that it is desirable and beneficial for them to resolve the Action.

16      Lead Plaintiff also seeks approval of the Notice, Proof of Claim, and Summary Notice,

17  appended as Exhibits A-1, A-2, and A-3, respectively, to the Stipulation.  Lead Plaintiff also seeks

18  the Court's approval of Gilardi as Claims Administrator and the means and methods for

19  disseminating notice of the Settlement, and a finding that such notice comports with due process,

20  the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995

21  (the "PSLRA"), 15 U.S.C. §78u-4, *et seq*.

22      The Settlement meets the standards for preliminary approval because it is likely this Court

23  will be able to find that the Settlement is fair, reasonable, and adequate under Rule 23(e).  By

24  granting preliminary approval, Lead Plaintiff will be able to notify the Class and solicit claims,

25  requests for exclusion, and objections, at which point the Court will be able to consider whether

26  to finally approve the Settlement.

27

28

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP
SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR    - 3 -

4871-3297-7579.v2

## II.     OVERVIEW OF THE LITIGATION

On April 16, 2019, the first complaint in this action was filed in the United States District Court for the Northern District of California under the caption *City of Roseville Employees' Retirement System v. Apple Inc.*, No. 4:19-cv-02033.   ECF 1.   On August 14, 2019, the Court appointed the Employees' Retirement System of the State of Rhode Island ("Rhode Island") as lead plaintiff.   ECF 72.   On October 15, 2019, Rhode Island filed a Consolidated and Amended Class Action Complaint for Violation of the Federal Securities Laws.   ECF 85.   On December 16, 2019, Defendants moved to dismiss that complaint.   ECF 91.   On June 2, 2020, the Court issued an Order granting in part and denying in part Defendants' motion to dismiss and ordering the transition of lead plaintiff from Rhode Island to Norfolk.   ECF 110.   On June 19, 2020, the Court issued an order appointing Norfolk as lead plaintiff and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel.   ECF 113.   On June 23, 2020, Norfolk filed its Revised Consolidated Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint").   ECF 114.   The Complaint alleged, *inter alia*, that on November 1, 2018, Defendants made materially false and misleading statements and omissions about demand for the newly-released iPhones and Apple's business in China, in violation of §§10(b) and 20(a) of the Securities Exchange Act of 1934.   The Complaint further alleged that the false and misleading statements and omissions caused Apple's stock to trade at artificially inflated prices, and that, when the true facts were disclosed, Apple's stock price declined.

Defendants moved to dismiss the Complaint on July 13, 2020.   ECF 118.   Norfolk opposed the motion on July 27, 2020.   ECF 120.   On November 4, 2020, the Court issued an Order granting in part and denying in part Defendants' motion to dismiss.   ECF 123.

On May 5, 2021, Norfolk filed its motion for class certification.   ECF 165.   On February 4, 2022, the Court issued an Order granting the motion in part, certifying a Class of purchasers or acquirers of Apple common stock, and denying (without prejudice) the motion with respect to the proposed class of Apple options investors.   ECF 224.   The Court appointed Norfolk as the Class Representative, and Robbins Geller as Class Counsel.   On April 15, 2022, Norfolk filed a

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR     - 4 -

4871-3297-7579.v2

supplemental motion seeking certification of a class of Apple options investors.  ECF 239.  On March 28, 2023, the Court issued an Order Modifying Class, which granted Norfolk's motion to certify call option buyers and put option sellers as part of the Class.  ECF 352.

On September 9, 2022, Defendants filed a Motion for Summary Judgment and Motion to Exclude Expert Testimony.  ECF 292, 293.  On September 9, 2022, Lead Plaintiff filed an Omnibus Motion to Exclude Opinion Testimony of Defendants' Proposed Experts.  ECF 301.  On June 26, 2023, the Court issued an Order Denying Summary Judgment.  ECF 369.  On July 17, 2023, the Court issued an Order denying Defendants' Motion to Exclude and granting in part and denying in part Lead Plaintiff's Motion to Exclude.  ECF 384.

On February 27, 2024, the Court issued an Amended Pretrial Scheduling Order setting deadlines for the parties to exchange and submit witness lists, motions *in limine*, proposed jury instructions, and other pretrial materials, as well as setting a trial date of September 9, 2024.  ECF 420.

In late 2021, the Parties first engaged the services of the Hon. Layn R. Phillips (Ret.), a nationally recognized mediator, to facilitate settlement negotiations.  On January 31, 2022, the Parties attended a mediation session with Judge Philips held remotely via videoconference.  The January 31, 2022 mediation was preceded by submission of voluminous mediation statements, including exhibits.  The mediation did not result in a settlement.

On May 25, 2022, the Parties attended a second mediation session with Judge Phillips, this time in person.  The May 25, 2022, mediation was also preceded by the submission of supplemental mediation statements with additional exhibits and excerpts of deposition testimony by each of the Parties.  Again, the Parties did not reach an agreement at that mediation and litigation continued.

Following the May 25, 2022 mediation and concurrent with the ongoing litigation, Judge Phillips continued to correspond with the Parties to explore the potential for resolution of the case.  On January 10, 2024, the Parties engaged in another in-person mediation session with Judge Phillips, but again the Parties were unable to reach a settlement.  On February 14, 2024, Judge

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR      - 5 -

4871-3297-7579.v2

1    Phillips issued a mediator's proposal to resolve all claims alleged in the Complaint and on March

2    1, 2024, the Parties accepted the Mediator's proposal.

3          The agreement to accept the Mediator's proposal included, among other things, the Settling

4    Parties' agreement to settle and release all claims that were asserted or could have been asserted

5    in the Action in return for a cash payment of $490 million for the benefit of the Class, subject to

6    the execution of a Stipulation of Settlement and approval by the Court.  The Stipulation (together

7    with the Exhibits thereto) reflects the final and binding agreement between the Settling Parties.

8    **III.    THE SETTLEMENT TERMS**

9          This Settlement requires Defendants to pay, or cause to be paid, $490 million into the

10   Escrow Account, which amount, plus interest, comprises the Settlement Fund.  Stipulation, ¶2.1.[3]

11   Notice to the Class and the cost of settlement administration ("Notice and Administration

12   Expenses") will be funded by the Settlement Fund.  *Id.*, ¶2.8.  Lead Plaintiff proposes a nationally

13   recognized class action settlement administrator to be retained subject to the Court's approval.

14   Gilardi was chosen because of its experience and the quality of its work in prior engagements for

15   Lead Counsel.[4]  Lead Counsel respectfully requests that the Court approve its selection.  Based on

16   the estimates provided by the proposed Claims Administrator, and assuming that no unexpected

17   or extraordinary issues arise, Gilardi expects notice and claims administration costs to be

18   approximately $3.6 million through the initial distribution of the Net Settlement Fund.  *See, e.g.*,

19   Crudo Decl., ¶32.  The proposed notice plan and plan for claims processing are discussed below

20   in §§IV.C.5 and V and in the Crudo Declaration.

21         The Notice and Summary Notice provide that Lead Counsel will move for final approval

22   of the Settlement and: (a) an award of attorneys' fees in the amount of no more than 25% of the

23   Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the

24

25   [3]    The first $120 million of the Settlement Amount was deposited into the Escrow Account on
26   March 12, 2024.  The remainder shall be funded no later than 15 calendar days from entry of the
     Preliminary Approval Order.

27   [4]    Lead Counsel retained Gilardi to provide notice of the pendency of this Action.  ECF 394.

28   LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP
     SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR        - 6 -

     4871-3297-7579.v2

1   Action not in excess of $3 million; (c) interest on such fees and expenses at the same rate and for

2   the same period as is earned by the Settlement Fund; and (d) may request an award to the

3   Representative Parties pursuant to 15 U.S.C. §78u-4(a)(4).  The Notice explains that such fees and

4   expenses shall be paid from the Settlement Fund.

5          Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved

6   attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount, the

7   Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation (set

8   forth in the Notice) to Authorized Claimants who are entitled to a distribution of at least $10.00.

9   Any amount remaining following the distribution shall be redistributed in an economically feasible

10  manner.  The Plan of Allocation treats all Class Members equitably based on the type of Apple

11  publicly traded securities transacted and the timing and amount of such purchases, acquisitions,

12  and any sales.

13         The Settling Parties have also entered into a Supplemental Agreement, which provides that

14  if prior to the Final Approval Hearing, requests for exclusion from the Class by Persons who would

15  otherwise be Class Members, but who timely and validly request exclusion from the Class, exceed

16  a certain threshold, Defendants shall have the option (but not the obligation) to terminate the

17  Settlement.  Stipulation, ¶7.3.  This type of agreement is standard in securities class actions and

18  has no negative impact on the fairness of the Settlement.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*,

19  2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option

20  triggered by the number of class members who opt out of the Settlement does not by itself render

21  the Settlement unfair.").

22         Next, in exchange for the benefits provided under the Stipulation, Class Members will

23  release "any and all claims, demands, losses, rights, and causes of action of every nature and

24  description, including both known and Unknown Claims, whether arising under federal, state,

25  common, or foreign law, that Lead Plaintiff or any other member of the Class (i) asserted in any

26  complaint filed in the Action, or could have asserted or could in the future assert in any court or

27  forum that arise out of or relate to any of the allegations, transactions, facts, matters or occurrences,

28

representations or omissions involved, set forth, or referred to in any complaint filed in the Action and (ii) that relate in any way, directly or indirectly, to the purchase, acquisition, holding (by those who purchased or otherwise acquired Apple securities during the Class Period), sale or disposition of Apple securities during the Class Period." Stipulation, ¶1.27.[5]  This release "is limited to claims that relate to both the complaint's factual allegations and to the purchase or ownership of" Apple securities and therefore "ensure[s] that 'the released claim[s] [are] based on the identical factual predicate as that underlying the claims in the settled class action.'"  *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2018 WL 6198311, at *5 (N.D. Cal. Nov. 28, 2018) ("*Volkswagen I*") (alterations in original) (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)).

Lastly, under the terms of the Stipulation, Defendants have no right to the return of the Settlement Fund for any reason upon the occurrence of the Effective Date.  Stipulation, ¶5.12.  *See also* N.D. Cal. Guid. 1(g) (requiring the disclosure of any reversions).

## IV.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Courts recognize that public policy strongly favors settlements to resolve disputes, "'particularly where complex class action litigation is concerned.'"  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *Young v. LG Chem Ltd.*, 2019 WL 4187396, at *1 (9th Cir. Sept. 4, 2019) (same).  Moreover, courts should defer to "the private consensual decision of the parties" to settle and advance the "'overriding public interest in settling and quieting litigation.'"  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (quoting *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)).

Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of claims brought as a class action.  Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on

---

[5]  "Released Claims" does not include claims relating to the enforcement of the Settlement, derivative claims, or any claims of any Person that submits a request for exclusion from the Class that is accepted by the Court.

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR      - 8 -

4871-3297-7579.v2

whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1).[6] Rule 23(e)(2) provides that a proposed class settlement may be approved "after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this assessment, the Court must consider whether Lead Plaintiff and Lead Counsel: (i) "have adequately represented the [C]lass;" (ii) "the proposal was negotiated at arm's length;" (iii) "the relief provided for the [C]lass is adequate;" and (iv) "the proposal treats [C]lass [M]embers equitably relative to each other." *Id.* While these Rule 23(e) factors focus on core concerns of procedure and substance of a settlement, they are not intended to fully displace factors previously adopted by courts to evaluate settlements. *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *5 (N.D. Cal. Apr. 19, 2021) ("[T]he Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent . . . ."). In this respect, the Ninth Circuit has long considered the following factors when evaluating a class settlement, several of which overlap with Rule 23(e)(2):

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

As discussed below, the proposed Settlement easily satisfies each of the factors identified under Rule 23(e)(2), as well as the applicable Ninth Circuit factors, such that notice of the proposed Settlement should be sent to the Class in advance of the Final Approval Hearing.

### A. Lead Plaintiff and Its Counsel Have Adequately Represented the Class

Rule 23(e)(2)'s first two factors look "to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Rule 23(e)(2) Advisory Committee notes to 2018

---

[6] As to the latter requirement, the Court need not determine whether it could certify a Class here because it already has certified the Class. ECF 224, 352.

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR        - 9 -

4871-3297-7579.v2

1    amendment.  This Settlement bears all of the hallmarks of a procedurally fair resolution under Rule

2    23(e)(2).

3           Rule 23(e)(2)(A) asks whether the plaintiff and its counsel have adequately represented the

4    class.  This factor overlaps with the Ninth Circuit's factor regarding "the extent of discovery

5    completed and the stage of the proceedings."  *Hanlon*, 150 F.3d at 1026.  As explained above,

6    Lead Plaintiff and its counsel satisfy this factor as they have diligently prosecuted this Action for

7    over four years.  *See supra*, §§I-II.  Given Lead Plaintiff's and Lead Counsel's demonstrated

8    prosecution of the Action, it is without question that they have adequately represented the Class.

9    *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL

10   2077847, at *1 (N.D. Cal. May 10, 2019) ("*Volkswagen II*") (finding securities class settlement to

11   be procedurally fair where "Lead Counsel vigorously litigated this action during motion practice

12   and discovery, and the record supports the continuation of that effort during settlement

13   negotiations"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018),

14   *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (granting final approval and

15   stating that at preliminary approval "the Court found that Class Counsel had vigorously prosecuted

16   this action through dispositive motion practice, extensive initial discovery, and formal mediation"

17   and that "given this prosecution of the action, counsel 'possessed "sufficient information to make

18   an informed decision about settlement"'").

19          Similarly, the Ninth Circuit tasks trial courts with resolving two questions to determine

20   "legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with

21   other class members and (2) will the named plaintiffs and their counsel prosecute the action

22   vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.  The Court previously found Lead

23   Plaintiff Norfolk and Lead Counsel adequate to represent the Class, and no evidence to the contrary

24   has since emerged.  ECF 224 at 21.  Moreover, Lead Plaintiff and Lead Counsel have no interests

25   antagonistic to other Class Members; Lead Plaintiff's claims are typical of the Class's claims; and

26   their interest in obtaining the largest possible recovery is aligned with that of the Class.  *Mild v.*

27   *PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims

28

1  are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the

2  largest possible recovery is aligned with the interests of the rest of the Settlement Class

3  members.").   Finally, the substantial monetary recovery obtained after four years of litigation

4  preceding the Settlement speaks for itself and is an excellent result for Lead Plaintiff and the Class.

5      **B.**    **The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of**

6             **the Risks of the Action**

7          The Rule 23(e)(2)(B) factor asks whether "the [settlement] proposal was negotiated at

8  arm's length."   Fed. R. Civ. P. 23(e)(2)(B).   As noted above, the proposed Settlement follows

9  extensive litigation over the course of over four years, and trial is scheduled to begin in September

10  2024. ECF 420.   *See Volkswagen I*, 2018 WL 6198311, at *5 ("Having used discovery and motion

11  practice to obtain information about the case, Plaintiffs were able to assess the merits of the claims

12  and to determine whether Defendants' settlement offers were reasonable.").   The Settlement was

13  achieved only after the parties engaged in a protracted mediation process before Judge Phillips,

14  which included both remote and in person mediation and conferences over the course of more than

15  two years, resulting in a $490 million mediator's proposal.   As part of the settlement discussions,

16  Lead Counsel and Defendants' Counsel prepared and presented submissions concerning their

17  respective views on the merits of the Action.   *See Volkswagen II*, 2019 WL 2077847, at *1 ("Lead

18  Counsel also attests that both sides engaged in a series of intensive, arm's-length negotiations

19  before they reached an agreement in principle to settle. . . .   There is no reason to doubt the veracity

20  of Lead Counsel's representations.").   The foregoing evinces that the Settlement is "the product of

21  serious, informed, and noncollusive negotiations."   *Volkswagen I*, 2018 WL 6198311, at *4-*5.

22  *See also Hefler*, 2018 WL 6619983, at *6 ("[T]he Settlement was the product of arm's length

23  negotiations through two full-day mediation sessions and multiple follow-up calls supervised by

24  former U.S. District Judge Layn Phillips."); *In re Atmel Corp. Deriv. Litig.*, 2010 WL 9525643, at

25  *13 (N.D. Cal. Mar. 31, 2010) ("Judge Phillips' participation weighs considerably against any

26  inference of a collusive settlement."); *Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *3 (N.D.

27  Cal. Nov. 6, 2023) (noting that preliminary approval granted because, *inter alia*, "the [Settlement

28

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR   - 11 -

4871-3297-7579.v2

1  Agreement] resulted from good faith, arm's length negotiations conducted under the auspices of

2  an independent mediator, the Hon. Layn Phillips (U.S.D.J., ret.), who has extensive experience in

3  mediating class action litigations of this type").

4        **C.**     **The Relief Provided to the Class Is Adequate**

5            **1.**     **The Substantial Benefits for the Class, Weighed Against the**

6                      **Costs, Risks, and Delay of Further Litigation, Support Preliminary Approval**

7        Rule 23(e)(2)(C)(i) and the Ninth Circuit's factors concerning the "strength of the

8  plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation"; and "the

9  amount offered in settlement" (*Hanlon*, 150 F.3d at 1026) are also satisfied because the $490

10  million recovery provides a significant and immediate benefit to the Class, especially in light of

11  the costs, risks, and delay posed by continued litigation.  Securities cases, like the present one,

12  "'are highly complex and . . . securities class litigation is notably difficult and notoriously

13  uncertain.'"  *Hefler*, 2018 WL 6619983, at *13.

14        While Lead Plaintiff remains confident in its ability to ultimately prove the alleged claims

15  on a level playing field, further litigation – including a trial – is always a risky proposition.  *See,*

16  *e.g.*, *Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018)

17  (A "[s]ettlement [a]greement's elimination of risk, delay, and further expenses weighs in favor of

18  approval.").  Further, complex securities fraud class actions such as this one present myriad risks

19  that a plaintiff must overcome in order to ultimately secure a recovery.  *See, e.g.*, *Redwen v. Sino*

20  *Clean Energy, Inc.*, 2013 WL 12129279, at *5 (C.D. Cal. Mar. 13, 2013) ("Courts experienced

21  with securities fraud litigation '"routinely recognize that securities class actions present hurdles to

22  proving liability that are difficult for plaintiffs to clear."'").

23        While Lead Plaintiff would be required to prove all elements of its claims to prevail,

24  Defendants need only succeed on one defense to potentially defeat the entire Action.  Risks of

25  proving falsity, materiality, scienter, and recoverable damages present significant obstacles to

26  Lead Plaintiff's success at trial.  *See, e.g.*, *In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *5

27  (N.D. Cal. Mar. 31, 2015) ("As with any securities litigation case, it would be difficult for Lead

28  LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR   - 12 -

4871-3297-7579.v2

1   Plaintiff to prove loss causation and damages at trial. . . .   Lead Plaintiff would risk recovering

2   nothing without a settlement."); *Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *3 (N.D. Cal.

3   Apr. 20, 2018) (noting the risks of proving scienter, loss causation, and damages at trial).   The

4   risks are significant and real.  *See, e.g.*, *In re Tesla, Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC (N.D.

5   Cal. 2023) (jury finding defendants not liable for securities fraud notwithstanding district judge

6   granting plaintiffs' offensive motion for summary judgment on falsity and knowledge elements).

7   Here, Defendants advanced several arguments disputing both liability and damages.  For example,

8   Defendants vigorously disputed that Defendant Cook's alleged false statement conveyed

9   information about the current state of Apple's business in China, as opposed to historical

10  information.   And, even if Defendant Cook had not disclosed information concerning negative

11  performance in China, the incorporation of that same information into Apple's guidance negated

12  an inference of scienter.  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D.

13  Cal. 2007) ("[T]he issue[] of scienter . . . [is] complex and difficult to establish at trial.").

14  Defendants also challenged Lead Plaintiff's theory of loss causation and damages.   Defendants

15  and their experts argued that the price declines in Apple stock were not caused by revelations

16  concerning previously undisclosed conditions in China as plaintiffs alleged, but instead the key

17  price decline was caused by the fact that Apple missed its Q1'19 revenue guidance.  *See In re*

18  *Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) ("[I]n 'any securities

19  litigation case, it [is] difficult for [plaintiff] to prove loss causation and damages at trial.'").

20  Moreover, the fact that Defendants engaged competing expert witnesses to testify in support of

21  Defendants' major defenses, was a substantial obstacle to Lead Plaintiff's potential for success at

22  trial.  *See, e.g.*, *Weeks v. Kellogg Co.*, 2013 WL 6531177, at *13 (C.D. Cal. Nov. 23, 2013) ("The

23  fact that this issue, which is at the heart of plaintiffs' case, would have been the subject of

24  competing expert testimony suggests that plaintiffs' ability to prove liability was somewhat

25  unclear; this favors a finding that the settlement is fair.").

26          Barring the Settlement, this case would require the expenditure of substantial additional

27  sums of time and money at trial and beyond, with no guarantee that any additional benefit would

28  LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP
SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR   - 13 -

4871-3297-7579.v2

1   be provided to the Class.  Even if Lead Plaintiff prevailed at the liability and damages phases of

2   the trial, Defendants would almost certainly file an appeal after either or both phases of the case –

3   a process that would further extend the litigation for several additional years and risk reversal of

4   any verdict in favor of the Class.  Conversely, the Settlement confers a substantial and immediate

5   benefit on the Class, and avoids the risks of no recovery at all associated with attempting to obtain

6   a wholly speculative (though potentially larger) sum in the future.

7          In sum, Defendants had "plausible defenses that could have ultimately left class members

8   with a reduced or non-existent recovery," which weighs in favor of approving the Settlement.  *In*

9   *re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015).  Defendants

10  have denied any wrongdoing, and would have presented a multi-pronged defense to Lead

11  Plaintiff's claims at trial and in subsequent appeals.  Although Defendants' arguments regarding

12  falsity, scienter, and loss causation were rejected by the Court at summary judgment, Defendants

13  would undoubtedly raise them again before the jury, creating a risk that a lesser recovery – or no

14  recovery at all – would be obtained at trial.  Settlement is favored where, as here, the case is

15  "'complex and likely to be expensive and lengthy to try,'" and presents numerous risks beyond the

16  "'inherent risks of litigation.'"  *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal.

17  2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018) (quoting *Rodriguez*, 563 F.3d at 966, and *Torrisi v.*

18  *Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)); *Volkswagen II*, 2019 WL 2077847,

19  at *2 ("[E]ven if Plaintiffs had prevailed, their recovery – after class certification, trial, and appeals

20  – would have come years in the future.  Taking $48 million now, instead of holding out for the

21  chance of $147 million at some point in the future, is a sensible decision.").

22         The $490 million Settlement balances the risks, costs, and delay inherent in complex cases

23  evenly with respect to all parties.  Lead Plaintiff secured the third-largest securities class action

24  settlement in the history of this District.  The recovery represents more than 20% of estimated

25  recoverable common stock damages as calculated by Lead Plaintiff's expert.  This far exceeds the

26  median percentage recovery for cases settled in 2023 (and between 2014 and 2022) with estimated

27  damages of $1 billion or more.  Laarni T. Bulan and Laura E. Simmons, *Securities Class Action*

28

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP
SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR      - 14 -

4871-3297-7579.v2

*Settlements – 2023 Review and Analysis*, at 6, fig. 5 (Cornerstone Research 2024) (finding median settlement as a percentage of damages was for Rule 10b-5 cases involving cases involving over $1 billion in estimated damages was 2.0% in 2023, and 2.6% between 2014 and 2022). *See Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *6 (N.D. Cal. July 15, 2022) ("'the median settlement recovery from 2009 to 2017 was only five percent of damages in securities class actions'") (quoting *Volkswagen II*, 2019 WL 2077847, at *2 n.2); *see also Hefler*, 2018 WL 6619983, at *6 ("[C]ounsel's preliminary approval motion included information regarding the settlement outcomes of similar cases, further indicating that counsel 'had an adequate information base' when negotiating the settlement.").

Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through trial, the $490 million Settlement is an outstanding recovery that is in the Class's best interests.

### 2.    The Proposed Method for Distributing Relief Is Effective

As demonstrated below in §V and in the Crudo Declaration, the methods of proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective. The notice plan includes direct mail notice to all those who can be identified with reasonable effort, supplemented by publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service. In addition, a Settlement-specific website will be created where key documents will be posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. Crudo Decl., ¶¶6-21. This is similar to the notice plan proposed and approved in *Vataj v. Johnson*, 2021 WL 1550478, at *3, *11-*12 (N.D. Cal. Apr. 20, 2021).

The claims process is also effective and includes a standard Proof of Claim form that requests the information necessary to calculate a Claimant's claim amount pursuant to the Plan of Allocation ("Plan"). The Plan will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan was prepared with the assistance of Lead Plaintiff's damages expert and is based primarily on the expert's estimation

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR      - 15 -

4871-3297-7579.v2

1   of the amount of artificial inflation in the prices of Apple common stock and call options, and

2   artificial deflation in Apple put options during the Class Period.  A thorough claim review process,

3   including how deficiencies are addressed, is also explained in the Crudo Declaration.  *Id.*, ¶¶28-

4   30.

5        **3.  Attorneys' Fees**

6      Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees,

7   including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  As discussed above (*supra* §III),

8   Lead Counsel intends to seek an award of attorneys' fees on behalf of all Plaintiffs' Counsel not

9   to exceed 25% of the Settlement Amount and expenses in an amount not to exceed $3 million, plus

10  interest on both amounts.[7]  This fee request reflects the successful result achieved for the Class,

11  and falls within the 25% "benchmark award for attorney fees."  *Hanlon*, 150 F.3d at 1029.  In

12  addition, Lead Counsel will request that any award of fees and expenses be paid at the time the

13  Court makes its award.  *See In re Vocera Commc'ns, Inc. Sec. Litig.*, 2016 WL 8201593, at *1

14  (N.D. Cal. July 29, 2016) (fees to be paid "immediately upon entry of this Order").  Plaintiffs'

15  Counsel's lodestar to date is approximately $27 million, further reaffirming the reasonableness of

16  the requested attorney's fees.

17     Finally, the Representative Parties may seek an award of no more than $73,000 in the

18  aggregate pursuant to 15 U.S.C. §78u-4(a)(4), as reimbursement for their costs and expenses or

19  lost wages related to their efforts on behalf of the Class.  "Under the PSLRA, a class representative

20  may seek an award of reasonable costs and expenses, including lost wages, directly relating to the

21  representation of the class."  *Fleming*, 2022 WL 2789496, at *10.  This amount is fully supported

22  by the effort and time expended by Representative Parties throughout the Action, which will be

23  set forth in greater detail in connection with Lead Counsel's fee and expense motion.

24

25

---

26  [7]   If preliminary approval is granted, Plaintiffs' Counsel will present their total lodestar in
    connection with their fee application at the final approval stage, after further detailed review and

27  adjustment of their contemporaneous daily time entries to account for billing judgment.

28   LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP
    SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR  - 16 -

Approval of the requested attorneys' fee and expense application is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  Stipulation, ¶6.3.

### 4.        Other Agreements Between the Parties

The Parties have entered into a standard supplemental agreement which provides that if Class Members opt out of the Settlement such that the requests for exclusion from the Class equals or exceeds an agreed-upon threshold, Defendants shall have the option to terminate the Settlement. Stipulation, ¶7.3.  Such agreements are common and do not undermine the propriety of the Settlement.  *See, e.g.*, *Hefler*, 2018 WL 6619983, at *7 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").  While the Supplemental Agreement is identified in the Stipulation, ¶7.3, and the nature of the agreement is explained in the Stipulation and here, the terms are properly kept confidential.[8]

### 5.        The Proposed Plan of Allocation Is Designed to Treat Class Members Equitably

Rule 23(e)(2)(D) asks whether the proposal, here the Plan of Allocation, treats Class Members equitably relative to each other.  Drafted with the assistance of Lead Plaintiff's damages expert, the Plan is fair, reasonable, and adequate because it does not treat Lead Plaintiff or any other Class Member preferentially.  *See Vataj*, 2021 WL 1550478, at *10; *Zynga*, 2015 WL 6471171, at *10.

The Plan, set forth in the Notice (Stipulation, Ex. A-1 at 12-18), is designed to equitably distribute the Net Settlement Fund (*see* Stipulation, ¶1.19) to those Class Members who suffered economic losses as a proximate result of the alleged wrongdoing.  In developing the Plan, Lead Counsel, along with Lead Plaintiff's damages expert, calculated the potential amount of estimated

---

[8]     *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (finding settlement was not rendered unfair by the inclusion of an opt-out provision where "[o]nly the exact threshold, for practical reasons, was kept confidential"); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 329-30 (C.D. Cal. 2016) (considering confidential supplemental agreement).

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR                - 17 -

4871-3297-7579.v2

alleged artificial inflation (or deflation, in the case of Apple put options) in Apple publicly traded securities proximately caused by Defendants' alleged false and misleading statements and material omissions.  Based on the formula in the Plan, a "Recognized Loss Amount" will be calculated for each transaction in Apple publicly traded securities.  The Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on the type of security transacted and the relative size of their Recognized Claims.  The amount of the payment will depend on, among other factors, how many Class Members file valid claims and the aggregate value of the Recognized Claims represented by valid and acceptable Proofs of Claim.

Lead Plaintiff, just like all other Class Members, will be subject to the same formula for distribution of the Settlement.  *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) (finding "[t]he Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a *pro rata* distribution of the Settlement Fund based on their net losses").  Courts have previously found plans that award *pro rata* shares to each class member to be fair and reasonable.  *See, e.g.*, *Vataj*, 2021 WL 1550478, at *10 ("The Settlement Fund will thus be distributed on a *pro rata* basis according to each class member's recognized loss."); *In re Resistors Antitrust Litig.*, 2020 WL 2791922, at *2 (N.D. Cal. Mar. 24, 2020) (approving plan of allocation using *pro rata* basis of distribution).  Accordingly, the Plan is fair, reasonable, and applies in an equitable manner to all Class Members.

**D.    The Remaining Ninth Circuit Factors Are Satisfied**

**1.    Risk of Maintaining Class Action Status Through Trial**

Although Lead Plaintiff obtained class certification, it nonetheless faced the risk of decertification prior to trial.  *See, e.g.*, *Fleming*, 2022 WL 2789496, at *6 ("[T]here is always a risk of decertification – especially when, as here, Plaintiffs must overcome causation and damages defenses.").  Accordingly, this factor supports preliminary approval.

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR     - 18 -

4871-3297-7579.v2

## 2.   Experience and Views of Counsel

The opinion of experienced counsel supporting a class settlement after arm's-length negotiations is entitled to considerable weight. *Norris v. Mazzola*, 2017 WL 6493091, at *8 (N.D. Cal. Dec. 19, 2017).   "[I]ndeed a presumption of fairness is usually appropriate if class counsel recommends the settlement after arm's-length bargaining." *Volkswagen I*, 2018 WL 6198311, at *5.   Lead Counsel here has significant experience prosecuting and resolving significant securities and other complex class-action litigation. *See* www.rgrdlaw.com.   And by the time settlement discussions began, Lead Counsel had a firm understanding of the strengths and weaknesses of the claims, both factually and legally. *Supra*, §§I-II.   "There is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

In sum, each factor identified under Rule 23(e)(2) and by the Ninth Circuit is satisfied. Given the litigation risks involved, the complexity of the underlying issues, and the skill of defense counsel, the $490 million recovery is significant.   It could not have been achieved without the full commitment by Lead Plaintiff and its counsel.   The Settlement is fair, adequate, and reasonable, such that notice should be sent to the Class.

## V.   THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Fed. R. Civ. P. 23(e)(1).   Courts evaluating proposed notice documents have held that "'[n]otice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"" *Rodriguez*, 563 F.3d at 962.

Here, the Settling Parties propose to send, by email or first class mail, postage prepaid, individual copies of the Summary Notice to all potential Class Members who can reasonably be identified and located.   Crudo Decl., ¶8; Preliminary Approval Order, ¶7.   In addition, the

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR   - 19 -

4871-3297-7579.v2

Summary Notice will be published in *The Wall Street Journal* and over a national newswire service.  Preliminary Approval Order, ¶8.  The proposed methods of providing notice satisfy the requirements of Rule 23, the PSLRA, and due process.  *See In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017).  The proposed full-length Notice, which will be placed on the Settlement website, and will be available from the Claims Administrator upon request, provides detailed information in plain English.[9]  The content of the proposed Notice and Summary Notice are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Also, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."  Fed. R. Civ. P. 23(h)(1).  The proposed Notice and Summary Notice satisfy this requirement, as they notify Class Members that Lead Counsel will apply to the Court for an award of attorneys' fees not to exceed 25% of the Settlement Amount and litigation expenses not to exceed $3 million to be paid from the Settlement Fund.

In sum, the notice program proposed in connection with the Settlement and the form and content of the Notice and Summary Notice satisfy all applicable requirements of both the Federal Rules of Civil Procedure and the PSLRA.  Accordingly, the Court should also approve the proposed form and method of giving notice to the Class.

## VI.   NORTHERN DISTRICT OF CALIFORNIA PROCEDURAL GUIDANCE

The *Procedural Guidance* for class action settlements has been satisfied and weighs in favor of approving the Settlement.  *See* Appendix A.

---

[9]    The Notice describes the proposed Settlement and sets forth, among other things: (i) the nature, history, and status of the Action; (ii) the definition of the Class and who is excluded; (iii) the reasons the parties have proposed the Settlement; (iv) the amount of the Settlement Fund; (v) the estimated average distribution per damaged security; (vi) the Class's claims and issues; (vii) the parties' disagreement over damages and liability; (viii) the maximum amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final Settlement approval; (ix) the plan for allocating the Settlement proceeds to the Class; and (x) the date, time, and place of the Final Approval Hearing.

LEAD PLTF'S NOTICE OF UNOPP'D MOT AND MOTION FOR PRELIM APPROVAL OF PROP SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR                    - 20 -

4871-3297-7579.v2

1

## VII.    CONCLUSION

2          For each of the foregoing reasons, the Court should enter the [Proposed] Order

3   Preliminarily Approving Settlement and Providing for Notice, which: (i) preliminarily approves

4   the Settlement; (ii) approves the form and manner of providing notice of pendency and Settlement

5   to the Class; and (iii) sets a Final Approval Hearing date to consider final approval of the

6   Settlement and related matters.

7    DATED:  March 15, 2024                    Respectfully submitted,

8                                              ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
9                                              SHAWN A. WILLIAMS
                                               DANIEL J. PFEFFERBAUM
10                                             KENNETH J. BLACK
                                               HADIYA K. DESHMUKH
11                                             JACOB G. GELMAN

12

13                                                      s/ Shawn A. Williams
                                                     SHAWN A. WILLIAMS
14
                                               Post Montgomery Center
15                                             One Montgomery Street, Suite 1800
                                               San Francisco, CA  94104
16                                             Telephone:  415/288-4545
                                               415/288-4534 (fax)
17                                             shawnw@rgrdlaw.com
                                               dpfefferbaum@rgrdlaw.com
18                                             kennyb@rgrdlaw.com
                                               hdeshmukh@rgrdlaw.com
19                                             jgelman@rgrdlaw.com

20                                             ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
21                                             MARK SOLOMON
                                               ELLEN GUSIKOFF STEWART
22                                             JASON A. FORGE
                                               655 West Broadway, Suite 1900
23                                             San Diego, CA  92101
                                               Telephone:  619/231-1058
24                                             619/231-7423 (fax)
                                               marks@rgrdlaw.com
25                                             elleng@rgrdlaw.com
                                               jforge@rgrdlaw.com
26
                                               Lead Counsel for Lead Plaintiff
27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LABATON KELLER SUCHAROW
CAROL C. VILLEGAS
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/883-7524 (fax)
cvillegas@labaton.com

Counsel for Employees' Retirement System of the
State of Rhode Island

VANOVERBEKE, MICHAUD & TIMMONY,
P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel

## APPENDIX A

### (Compliance with *Procedural Guidance* of Northern District of California)

**A.     Guidance 1: Information about the Settlement**

> **1.     Guidance 1(a): Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate.**

N/A

> **2.     Guidance 1(b): Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate.**

The claims being released closely track the claims alleged.  The Complaint alleges federal securities law claims based on material misrepresentations and omissions by Defendants in connection with the purchase or acquisition of Apple publicly traded securities.  The definition of "Released Claims" is properly limited to claims, demands, losses, rights, and causes of action of every nature and description, including both known and Unknown Claims, whether arising under federal, state, common, or foreign law, that Lead Plaintiff or any other member of the Class (i) asserted in any complaint filed in the Action, or could have asserted or could in the future asset in any court or forum that arise out of or relate to any of the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in any complaint filed in the Action and (ii) that relate in any way, directly or indirectly, to the purchase, acquisition, holding (by those who purchased or otherwise acquired Apple securities during the Class Period), sale or disposition of Apple securities during the Class Period.  Stipulation, ¶1.27.

> **3.     Guidance 1(c): The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims.**

The Class will receive $490 million in cash, less approved fees and expenses, through the Settlement.  As set forth in the attached supporting memorandum ("Preliminary Approval Memorandum"), had Lead Plaintiff fully prevailed on its claims, common stock damages would be approximately $2.1 billion.  There are many factors that contributed to Lead Plaintiff's

acceptance of a discount to that damages value, which are more fully explained in §IV.C.1 of the Preliminary Approval Memorandum.

    **4.**    **Guidance 1(d): Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval. If there are no such cases, counsel should so state.**

Counsel believes there are no other cases that will be affected by the Settlement.

    **5.**    **Guidance 1(e): The proposed allocation plan for the settlement fund.**

The proposed allocation plan is set forth in detail in the Notice of Pendency and Proposed Settlement of Class Action ("Notice") (Stipulation, Ex. A-1 at 12-18).

    **6.**    **Guidance 1(f): If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples.**

This is a non-reversionary settlement in which the entire Settlement Fund will be paid out. Stipulation, ¶5.12. Once the Settlement becomes final, nothing is returned to Defendants. With respect to the number of class members, as well as their identities, these are unknown in securities cases. *See Vataj v. Johnson*, 2021 WL 1550478, at *11 (N.D. Cal. Apr. 20, 2021) ("The Court understands that the majority of class members are likely beneficial purchasers whose securities were purchased by brokerage firms, banks, institutions, and other third-party nominees in the name of the nominee, on behalf of the beneficial purchaser."). Because the number and identity of class members is unknown, both the number and percentage of class members expected to file claims is unknown. Indeed, the number of claims varies widely from case to case as does the size of each claim. In a securities class action settlement, class member participation is determined by the number of damaged shares (shares affected by the inflation caused by the alleged omissions and scheme) represented by the claims submitted. This more accurately reflects how much of the Class

APPENDIX A to LP'S NOTICE OF UNOPP'D MOT AND MOT FOR PRELIM APPROVAL OF PROP SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR
4855-9485-1499.v3

- 2 -

is seeking to participate in the Settlement.  Consistent with its experience in securities class actions, and based on the effectiveness of the proposed notice plan, Lead Counsel anticipates that the vast majority of damaged shares will be represented by the claims submitted in this Action.

      **7.**    **Guidance 1(g): In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate.**

The Settlement is non-reversionary; there will be no reversions.  Stipulation, ¶5.12.

**B.**    **Guidance 2: Settlement Administration**

      **a.**    **Guidance 2(a): Identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administrator over the last two years.**

Lead Plaintiff's request to appoint Gilardi to serve as the Claims Administrator, including the reasons for Lead Counsel's selection of Gilardi, is addressed in §III of the Preliminary Approval Memorandum.  Lead Counsel states that Gilardi has been appointed as the notice or claims administrator in 49 matters where Robbins Geller was lead or co-lead counsel in the past two years.  Crudo Decl., ¶7.  The proposed methods of notice are addressed in §IV.C.2 of the Preliminary Approval Memorandum.

      **b.**    **Guidance 2(b): Address the settlement administrator's procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs.**

Gilardi's Information Security Policy Framework is aligned to ISO/IEC 27002:2013 which is reviewed on an annual basis and communicated to all employees through a comprehensive training program.  Crudo Decl., ¶35.  Gilardi maintains a number of corporate governance policies that reflect the manner in which it does business, including an employee Code of Conduct that

outlines the professional, responsible, and ethical guidelines that govern employee conduct. These policies are available on Gilardi's website. *Id.*, ¶36.

### C.  Guidance 3: The Proposed Notices to the Class Are Adequate

As set forth in §IV.C.2 of the Preliminary Approval Memorandum, Lead Counsel believes that both the form of notice, which incorporates the substance of the suggested language from the *Procedural Guidance*, and the plan for disseminating the notice, satisfy Rule 23, the PSLRA, and due process.

### D.  Guidance 4 and 5: Opt-Outs and Objections

The proposed Notice complies with Rule 23(e)(5) in that it discusses the rights Class Members have concerning the Settlement. The proposed Notice includes information on a Class Member's right to: (i) request exclusion and the manner for submitting such a request; (ii) object to the Settlement, or any aspect thereof, and the manner for filing an objection; and (iii) participate in the Settlement and instructions on how to complete and submit a Proof of Claim form to the Claims Administrator. With respect to exclusion requests, the Notice requires only the information needed to opt out – the securities purchased, acquired, or sold during the Class Period. The Notice also provides contact information for Lead Counsel, as well as the postal address for the Court. Finally, the Notice incorporates the substance of the suggested language regarding objections from the *Procedural Guidance*.

### E.  Guidance 6: Attorneys' Fees and Expenses

Lead Counsel's intended request for attorneys' fees and expenses is set forth in §IV.C.3 of the Preliminary Approval Memorandum.

### F.  Guidance 7: Service Awards

Representative Parties may seek an award not to exceed $73,000 in the aggregate for reimbursement of their time and expenses, including lost wages, pursuant to the provisions of 15 U.S.C. §78u-4(a)(4).

### G.     Guidance 8: *Cy Pres* Awardees

The Settling Parties have chosen the Investor Protection Trust as the designated recipient for any *de minimis* balance remaining after all reallocations are completed.  *See* Stipulation, ¶5.12.[1]

### H.     Guidance 9: Proposed Timeline

Lead Plaintiff proposes the following schedule for notice, Final Approval Hearing, and related dates:

| Event | Deadline for Compliance |
|---|---|
| Deadline to commence mailing the Summary Notice to potential Class Members and posting of the Notice and Proof of Claim (the "Notice Date") | No later than 21 calendar days following entry of the Preliminary Approval Order (Preliminary Approval Order, ¶7) |
| Publication of the Summary Notice | No later than 7 calendar days following the Notice Date (Preliminary Approval Order, ¶8) |
| Deadline for filing papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 35 calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶21) |
| Deadline for requests for exclusion | 24 calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶16) |
| Deadline for objections | 21 calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶18) |
| Deadline for submission of reply papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 7 calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶21) |
| Proof of Claim submission deadline | 90 calendar days after the Notice Date (Preliminary Approval Order, ¶13) |
| Date for the Final Approval Hearing | At least 100 days after entry of the Preliminary Approval Order (Preliminary Approval Order, ¶2) |

---

[1]    Founded in 1993, the Investor Protection Trust serves as an independent source of non-commercial investor education.  *See* www.investorprotection.org.  Pursuant to Guideline §8, the Investor Protection Trust is an appropriate *cy pres* designee here.  *See, e.g., In re Capstone Turbine Corp. Sec. Litig.*, 2020 WL 7889062, at *2 (C.D. Cal. Aug. 26, 2020) (approving distribution plan and ordering that "[a]t such time as Lead Counsel, in consultation with the Claims Administrator, determines that no additional distributions are cost-effective, then the funds will be donated to Investor Protection Trust"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *11 (N.D. Cal. Dec. 18, 2018)("[T]he Court concludes that the Investor Protection Trust's mission of educating investors makes it an appropriate *cy pres* beneficiary."), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x. 285 (9th Cir. 2020).

I.      **Guidance 10: Class Action Fairness Act**

Although the CAFA statute is unclear whether notice is required in a securities class action settlement, Defendants shall provide such notice in accordance with 28 U.S.C. §1715 at their own cost.

J.      **Guidance 11: Comparable Outcomes**

| HCA 11 | |
|---|---|
| *Karsten Schuh v. HCA Holdings, Inc., et al.* No. 3:11-cv-01033 (M.D. Tennessee, Nashville Division) | |
| | |
| Total Settlement Amount | $215,000,000.00 |
| Total Interest Income | $853,900.48 |
| Notice and Claim Packets Mailed/Remailed | 98,305 |
| Number of Packets Returned Undeliverable/Unable to Forward | 2,220 2.273% |
| Total Claims Submitted | 87,071 89.147% |
| Total Valid Claims | 31,528 36.210% |
| Opt-Outs Received | 4 0.004% |
| Objections Received | 1 0.001% |
| Mean Recovery per Claimant | $4,728.91 |
| Median Recovery per Claimant | $49.65 |
| Largest Recovery per Claimant Smallest Recovery per Claimant | $4,986,673.51 $10.05 |
| Method of Notice | Direct Mail; Published in Investor's Business Daily and PR Newswire; DTC Legal Notice System |
| Number of Checks Not Cashed | 3,506 |
| Value of Checks Not Cashed and Included in Supplemental Distribution | $1,173,909.03 |
| Administrative Costs (including taxes, tax prep., etc.) | $684,847.39 |
| Attorney Costs | $2,016,508.52 |
| Expert Fees | $1,159,395.07 |
| Attorney Fees | $64,500,000.00 |
| % of Settlement Amount | 30% |
| Multiplier | 4.32 |
| Initial Distribution Date | 04/17/2017 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| Residual Distribution Dates | 11/08/2017; 12/21/2021 |
| Cy Pres Distribution | $0.00 |
| Charity | N/A |
| Distribution Completed | 08/08/2022 |
| Total Amount Distributed | $148,541,045.97 |
| Percentage of Distribution Factor | 20.299% |
| Number of Payments | 33,746 |
| Method of Payments | Checks and Wires |
| Reverter to Defendants | $0.00 |

APPENDIX A to LP'S NOTICE OF UNOPP'D MOT AND MOT FOR PRELIM APPROVAL OF PROP SETTLEMENT, AND MEMO OF POINTS & AUTH IN SUPPORT THEREOF - 4:19-cv-02033-YGR

4855-9485-1499.v3

- 7 -