ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
KENNETH J. BLACK (291871)
HADIYA K. DESHMUKH (328118)
JACOB G. GELMAN (344819)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com
jgelman@rgrdlaw.com
        – and –
MARK SOLOMON (151949)
ELLEN GUSIKOFF STEWART (144892)
JASON A. FORGE (181542)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
elleng@rgrdlaw.com
jforge@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re APPLE INC. SECURITIES LITIGATION | ) Case No. 4:19-cv-02033-YGR )<br>) <u>CLASS ACTION</u> ) |
| This Document Relates To:<br><br>    ALL ACTIONS. | ) DECLARATION OF PETER CRUDO<br>) REGARDING NOTICE AND<br>) ADMINISTRATION PLAN )<br>) |
| | DATE:     April 30, 2024<br>TIME:     2:00 p.m.<br>JUDGE:    Hon. Yvonne Gonzalez Rogers<br>CTRM:     1, 4th floor |

I, PETER CRUDO, declare and state as follows:

1. I am an Executive Vice President at Gilardi & Co. LLC ("Gilardi"), located at One McInnis Parkway, Suite 250, San Rafael, California 94903. I make this declaration based on personal knowledge, and if called to testify, I could and would do so competently.

2. At the request of Lead Counsel Robbins Geller Rudman & Dowd LLP, I am providing this declaration to give the Court and the parties to the above-captioned action further information about the procedures and methods that will be used to provide notice of the proposed Settlement to the investors who make up the Class, and the subsequent administration of the claims process.

3. Gilardi was previously retained in this matter by Lead Counsel, subject to Court approval and prior to the proposed Settlement, to provide notice administration services to the Class. ECF 394. As part of that engagement, Gilardi secured a toll-free number by which claimants could obtain answers for any questions regarding the then notice (or now proposed Settlement), secured Post Office Box for Class Member communication, secured a case-specific website and separate possible URL addresses, and performed extensive research regarding the Class and relevant affected Class Members.

4. Gilardi has also been retained by Defendants' Counsel and has begun the work necessary to provide the notice required under the Class Action Fairness Act of 2005 ("CAFA") for this Settlement.

5. With regard to the notice services to be provided under the proposed Settlement, Gilardi understands that the Class consists of all persons that purchased or otherwise acquired the publicly traded securities of Apple Inc. ("Apple"), including purchasers of Apple call options and sellers of Apple put options, during the period from November 2, 2018 through January 2, 2019, inclusive (the "Class Period"), and who suffered damages by Defendants' alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Excluded from the Class are: (i) Apple and the Individual Defendants; (ii) members of the families of each Individual Defendant; (iii) officers and directors of Apple; and (iv) the legal representatives, heirs, successors, or assigns

of any such excluded party.  Also excluded from the Class will be any person or entity that timely and validly requests exclusion in accordance with the requirements set by the Court.

6. Over its history, Gilardi has implemented successful notice and claims administration programs in more than a thousand securities class actions during our four decades as a notice and claims administrator.  Our experience includes many of the largest and most complex administrations of both private litigation matters and of actions brought by government securities regulators.

7. Gilardi and affiliated entities have been appointed as the notice or claims administrator in some 350 notice or settlement administrations over the past two years.  Gilardi has been appointed as the notice or claims administrator in 49 matters where Robbins Geller was lead or co-lead counsel in the past two years.  More information on Gilardi's experience can be found in the Firm Qualifications attached hereto as Exhibit A.

8. The proposed Notice Plan in this matter uses procedures that have been designed to provide effective direct mail or email notification to investors who are members of the Class and who can be identified with reasonable effort.  By itself, the proposed direct mail and email notification will reach a high percentage of the Class.  All persons and entities identified as potential Class Members will be mailed or emailed the summary notice (the "Summary Notice"), which will direct potential Class Members to the Settlement website to access the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release form (the "Proof of Claim"), which will include instructions for claim submission, objecting to any aspect of the Settlement, and requesting exclusion from the Class.  The Notice and Proof of Claim will also be mailed or emailed upon request. The proposed Notice Plan also calls for publication of the Summary Notice in a national newspaper read by securities investors, as well as placement of the Summary Notice on a national business newswire service.  Details of the complete proposed notice plan are outlined below.

9. If Gilardi is appointed by the Court as Claims Administrator, and subject to the Court's approval of the Notice Plan set forth in the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order"), Gilardi will initially send a copy of the

1. Summary Notice via USPS First-Class Mail (or email, where such email addresses are provided) to all persons and entities identified as potential Class Members by Apple's stock transfer agent. The stock transfer agent will only have the contact information for the small number of investors that hold their securities in their own names. These investors typically make up a very small percentage of a class, as the vast majority of investors hold their securities through a broker, bank, or other financial institution, and do so in what is known colloquially as "street name." Under the system of street name ownership, institutions act as the record holders for investors who are the beneficial owners of the securities. In Gilardi's experience, the class members who hold their securities in their own name, and are therefore known to the stock transfer agent, typically make up less than 5% of a class in a typical securities action.

10. In order to obtain the contact information for investors that hold their securities in street name, Gilardi and other administrators use a procedure designed to obtain that information from the brokers, banks, and other institutions (the "Nominee Holders") that actually hold the securities for the benefit of their clients. In the more than 40 years that Gilardi has been notifying class members of actions involving publicly traded securities, Gilardi has found the majority of potential class members hold their securities in street name and are reached through the Nominee Holders.

11. For this matter, Gilardi will send a Summary Notice and appropriate cover letter to each entity included on a proprietary list of approximately 280 Nominee Holders. This list also includes a group of firms and institutions who have requested notification on every case involving publicly traded securities and is contained in a database created, maintained, and updated as necessary by Gilardi. In Gilardi's experience, the institutions included in this database represent a significant majority of the beneficial holders of the securities of publicly traded companies.

12. Gilardi will also send a Summary Notice and appropriate cover letter to each financial institution registered with the United States Securities and Exchange Commission ("SEC") as a potential Nominee Holder. There are approximately 4,450 institutions on that list, which changes from time to time and is, therefore, periodically updated. The cover letter accompanying the Summary Notice will notify the Nominee Holders of the pendency of this action

as a class action and of the proposed Settlement, and inform the institution of its obligation to either: (i) provide to Gilardi the names and addresses and email addresses of its clients who may be Class Members; or (ii) request copies of the Summary Notice to provide directly to its customers and clients.

13. Gilardi has long-standing relationships with all of the primary Nominee Holders, and they are accustomed to providing us with information regarding their clients from their records and obtaining reimbursement for doing so. Gilardi will provide several supplemental notification letters to any Nominee Holder who does not respond to the initial request for potential Class Member names and addresses and email addresses.

14. Gilardi will promptly mail (or email, where such email addresses are provided) the Summary Notice to all potential Class Members identified by Nominee Holders. Gilardi will also send copies of the Summary Notice directly to Nominee Holders who indicate that they will directly forward the documents to their customers and clients who may be Class Members. In the event of an email bounce back, Gilardi will send a Summary Notice to any Class Member for which it can determine a physical address, either by working through the relevant broker or by additional internal research.

15. All name and address data obtained by Gilardi will be reviewed to identify and eliminate exact duplicates and incomplete data prior to mailing. Addresses will be checked against the USPS's National Change of Address database to identify address changes and obtain current mailing addresses where available. Any Summary Notices that are returned as undeliverable mail will be reviewed to determine if an alternative or updated address is available from the USPS, and will be re-mailed to the updated or alternative address. In cases where no address is available from the USPS, Gilardi will attempt to obtain updated or alternative address information from private databases, and will re-mail the Summary Notice if such information is available.

16. Gilardi will supplement the direct mailing program described above by publishing the Summary Notice in *The Wall Street Journal*. The Summary Notice will also be posted with *PR Newswire*, an online newswire service, where it will be available for one (1) month. News outlets often use posted notices as the basis for their own stories about litigations involving

1 publicly traded companies, thereby creating added awareness of the pendency of the litigation among investors.

17. Gilardi will also cause the Summary Notice, the Notice, and the Proof of Claim to be published by the Depository Trust Corporation ("DTC") on the DTC Legal Notice System ("LENS"). LENS enables participating banks and brokers to review the Summary Notice and Notice and directly contact the Claims Administrator to obtain copies of the Summary Notice or Notice and Claim Form for their clients who may be Class Members.

18. The Summary Notice will also be provided electronically to approximately 390 institutions that monitor securities class actions for their investor clients and regularly act on their behalf in these matters.

19. In compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. Section 1715, Gilardi will compile a CD-ROM containing, at minimum, the initial complaint, any subsequent complaints (if they exist), any answers to complaints (if they exist), the motion for preliminary approval, and the settlement agreement, accompanied by a cover letter (collectively, the "CAFA Notice Packet"). Gilardi will mail the CAFA Notice Packets, via Priority Mail, to the U.S. Attorney General, the Attorneys General of individual states and the District of Columbia, and the five recognized U.S. Territories, as well as any parties of interest to this Action as directed by Counsel.

20. Throughout the notification and claims processing period, Gilardi will maintain a toll-free number to accommodate potential Class Members' inquiries. As noted above, we have already secured this number.

21. As administrator, Gilardi will also establish and maintain a case-specific website where key documents will be posted, including the Notice, the Proof of Claim, the Stipulation of Settlement, and the executed Notice Order. Upon filing, the motion for final approval of the proposed Settlement and motion for attorneys' fees and expenses, those filings will be posted to the website. The website will also provide summary information regarding the case settlement and highlight important dates, including the deadline for requesting exclusion, the date of the Settlement Hearing, and the claims filing deadline. All posted documents will be available for

downloading from the website. As noted above, Gilardi has already secured three possible URLs for use in this case (www.applesecuritiesligation.com, www.2019applesecuritiesligation.com, and www.2019applesecuritiessettlement.com).

22. The Summary Notice, Notice, Proof of Claim, website, and key documents will be provided in English, which is the language used for most company SEC filings and proxy materials. In our experience, the typical demographic of most securities-related classes is English-speaking, and as such the costs and extra work associated with translation of documents is generally not required unless there is specific evidence that the majority of the class would only speak another language. In addition, telephone and email support will be available to Class Members in English, Spanish and French, with additional language options available to be added as necessary or desired.

23. Based on our experience, we estimate that the combined direct mail and publication program proposed will provide notice to more than 95% of the investors that are potential Class Members. Because the Summary Notice directs the cooperation of Nominee Holders and provides for the reimbursement of their costs of doing so, we anticipate a high level of compliance from those institutions, many of which have developed regular systems for providing the required information. In addition, the proposed publication will create additional awareness of the pendency of this litigation, and we expect to receive a number of additional requests for the Notice and Proof of Claim (collectively, the "Claim Package") through the designated toll-free number and via email as a direct result of publication.[1]

24. The procedures proposed here have proven extremely effective at compiling a very comprehensive list of potential class members and providing notice to those potential class members in thousands of securities class action matters prior to this case. Substantially similar

---

[1] As part of the outreach process described above, Nominee Holders will be advised that they may seek reimbursement of their reasonable out-of-pocket expenses actually incurred in connection with the foregoing up to $0.03 per record for providing names, addresses, and email addresses to the Claims Administrator; up to a maximum of $0.03 per Summary Notice mailed, plus postage at the rate used by the Claims Administrator; or $0.03 per notice sent by email, by providing the Administrator with proper documentation supporting the expenses for which reimbursement is sought.

DECLARATION OF PETER CRUDO REGARDING NOTICE AND ADMINISTRATION PLAN - 4:19-cv-02033-YGR                                                                                                        - 6 -
4856-7228-3250.v1

notice plans have been approved by numerous courts as being the best notice practicable under the circumstances.  Gilardi will, of course, provide a reporting declaration outlining the results of the implemented notice plan and the number of Summary Notices and Claim Packages that are ultimately delivered, and will do so in accordance with the schedule approved by the Court.

25.     Because of the street name system under which most securities are held, even defendant Apple does not know the identity of the vast majority of its shareholders, and it is usually not possible to meaningfully project the total number of class members prior to implementing the notice plan.  However, by taking certain information regarding the number of outstanding Apple shares during the proposed Class Period and comparing that to similar information collected in other cases Gilardi has administered, we estimate that we will send approximately 1,500,000 Summary Notices to potential Class Members and other Nominees.

26.     Because this matter involves the purchase and sale of securities, which is protected and private financial information held by a large number of different brokerages, custodians, and other financial institutions, a claims process follows the notice period.  This process is necessary to gather the required information regarding each claimant's purchases, acquisitions, sales, and holdings of Apple securities during the periods relevant to the proposed Plan of Allocation.  This transaction information will then be used to evaluate the eligibility of each claim to receive any distribution from the Settlement.

27.     There are three typical ways that a claim may be submitted to Gilardi in securities settlements such as this: a claimant may submit a Proof of Claim and supporting documents by mail, a claimant may submit a Proof of Claim and supporting documents via an interactive service provided on the Settlement website, or a financial institution or other third party who has the authority to do so may file claims on behalf of its clients in electronic spreadsheet format.  In our experience, the vast majority of claims, typically at least 80%, are filed by institutions or third-party services which submit claims on behalf of their clients who may be Class Members, removing the burden from those claimants to file on their own behalf.

28.     A claim may be determined ineligible for recovery for various reasons related to the overall completeness of the claim and the claimant or transaction information as presented.

DECLARATION OF PETER CRUDO REGARDING NOTICE AND ADMINISTRATION PLAN - 4:19-cv-02033-YGR - 7 -
4856-7228-3250.v1

1  For example, where the Proof of Claim did not include any purchases, acquisitions or sales of
2  Apple securities during the relevant period, where calculation of the claim under the Plan of
3  Allocation did not result in a net loss, or where the beneficial owner as presented was determined
4  to be insufficient or otherwise ineligible, the claim will be deemed ineligible for recovery and
5  claimants are so advised.

6        29.    In addition to making these determinations, Gilardi also reviews claims for
7  deficiencies related to specific missing or incorrect information which may be resolved with
8  further information; for example, where a claim is missing supporting documentation, lacking a
9  signature, appears to be missing information regarding transactions or holdings, or presents
10 transaction information which does not match the known history of the security.  If those
11 deficiencies can be corrected by an analyst on review, some of these claims may result in a different
12 loss determination and move into eligible status.  Furthermore, Gilardi will typically waive
13 deficiencies deemed to be insignificant, which may include, but are not limited to, deficiencies
14 which impact only the portion of the claim which calculates no recognized loss, and partially or
15 undocumented claims, partial or missing signatures, and other immaterial deficiencies where the
16 loss of the claim falls below certain recognized loss amount thresholds.

17       30.    Deficiencies will be addressed during the normal course of the administration and
18 claimants with deficient Proofs of Claim will be provided an opportunity to cure these deficiencies
19 prior to distribution of the Settlement proceeds.  In addition, rejected claimants will be notified of
20 the rejection of their claim and will be provided an opportunity to furnish additional information
21 which may validate the claim or request more information about the reason why the claim is
22 rejected prior to distribution of the Settlement proceeds.  Claimants who furnish additional
23 information which remains insufficient or who request further review by the Claims Administrator
24 of their rejected claim and who remain dissatisfied with the determination made by the Claims
25 Administrator will also be given instructions for further appealing adverse determinations to the
26 Court to obtain a final determination for the claim.

27       31.    In our experience, not all class members submit claims, and some of the claims
28 submitted are not valid or eligible to receive distributions according to the plan of allocation.  As

a result of this robust notice and claims process, we would expect to see some 90% of the estimated damaged shares claimed through the claims administration process.

32. Based on our experience with securities settlements of similar size and involving companies with similar market capitalizations and numbers of shareholders, we would estimate administering the notice, claims processing, and settlement distribution aspects of this proposed Settlement will generate professional services fees and expenses of approximately $3,631,250, of which approximately $1,475,000 is notice costs and approximately $2,156,250 is claims processing, administration fees, and expenses through the initial distribution of the Net Settlement Fund. This proposed cost estimate includes third-party expenses related to printing and mailing the Summary Notice and publication expenses. Assuming appropriate support is provided, the expenses incurred by the Nominee Holders in complying with the request for client information or disseminating the Summary Notice to clients as allowed by law shall be passed along as invoiced and are not included in the estimated costs above. As part of the outreach process described in paragraphs 6-16, Nominee Holders will be advised that they may seek reimbursement of their reasonable expenses actually incurred in gathering and forwarding the names and addresses or email addresses of beneficial owners to the Claims Administrator, or forwarding the Summary Notice to beneficial owners, up to a maximum of $0.03 per record, plus postage (if applicable) at the rate used by the Claims Administrator, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought. In our experience, the notice process and claims process outlined above are consistent with those undertaken in other securities settlements of similar size and complexity, and are extremely effective in administering settlements of securities class actions.

33. The estimate above is based on those assumptions, as well as certain other projections based on our experience. The actual fees and costs required to complete the administration may be higher or lower, depending on how many Class Members are identified, how many claims are filed, how many claims are valid, and how many claims require additional communication with the filer.

34. Gilardi maintains a robust and comprehensive security program designed to ensure the protection and secure handling of client data. Gilardi acts as a data processor and will receive class member data through secure means. All data provided to Gilardi will be used for purposes of the Settlement as directed by the Stipulation of Settlement and the parties and will be used solely for settlement implementation and no other purpose.

35. Gilardi's Information Security Policy Framework is aligned to ISO/IEC 27002:2013 which is reviewed on an annual basis and communicated to all employees through a comprehensive training program.

36. Gilardi maintains a number of corporate governance policies that reflect the manner in which it does business, including an employee Code of Conduct that outlines the professional, responsible, and ethical guidelines that govern employee conduct. These policies are available on our website.

37. In our experience, the outlined notice process outlined above is reasonable, and consistent with those implemented in other securities actions of similar size and complexity.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed this 14th day of March, 2024, at San Rafael, California.

_____
PETER CRUDO

# EXHIBIT A



For more than forty years, Gilardi has been among the nation's leading experts in legal settlements and claims administration. We are proud in this history to have served countless private law firms, from both the plaintiff and defense bars, and numerous government entities, including the Department of Justice, Securities & Exchange Commission, FINRA, CFTC and numerous state, local and county offices. We have unmatched knowledge and experience with unequaled scale, security and technology.

At Gilardi we are solely dedicated to our service and seek always to ensure that the principles of due process and the needs of our clients and claimants are served. We have administered thousands of matters, processed millions of claims and distributed billions of dollars. Our work has involved both simple matters and some of the largest and most complex settlements in history.

In all of these instances, we have had only one goal in mind – to earn your trust and become your primary partner.

As noted by the sampling of cases below, Gilardi has served as the administrator on the largest and most complex of settlements. Notably, the executive and management team that has managed these cases over the last decade plus remains intact.

| Settlement Value | |
| --- | --- |
| Case | Value |
| Enron Securities Litigation | $7,200,000,000 |
| AOL Time Warner Securities Litigation | $2,500,000,000 |
| Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation | $1,600,000,000 |
| Household International, Inc. Securities Litigation | $1,575,000,000 |
| Fortis Settlement | $1,572,690,000 |
| In re American International Group, Inc. 2008 Securities Litigation | $975,500,000 |
| UnitedHealth Group Securities Litigation | $925,000,000 |
| U.S.A. v. The Western Union Company | $586,000,000 |
| Xerox Securities Litigation | $750,000,000 |
| Cardinal Health Securities Litigation and SEC Fair Fund | $600,000,000 |
| In re Facebook Biometric Info. Privacy Litig. | $550,000,000 |
| Qwest Communications International Securities Litigation and SEC Fair Fund | $445,000,000 |
| Steinhoff International Holdings N.V. Securities Class Litigation | € 1,200,000,000 |
| Smilovits v. First Solar, Inc. et al. | $350,000,000 |
| Charles Schwab Corporation Securities Litigation | $235,000,000 |
| FTC v. Countrywide Home Loans, Inc. | $128,000,000 |
| Peregrine Systems Securities Litigation | $117,000,000 |
| In re Ethylene Propylene Diene Monomer Antitrust Litigation | $106,000,000* |
| In re Synthroid Marketing Litigation | $98,000,000 |
| Monroe County Employees Retirement System v. The Southern Company, et al. | $87,500,000 |
| In re McKesson Governmental Entities Average Wholesale Price Litigation | $82,000,000 |
| In re Static Random Access Memory Antitrust Litigation | $80,500,000 |
| Villella v. Chemical and Mining Company of Chile Inc. | $62,500,000 |
| Steck v. Santander Consumer USA Holdings Inc., et al. | $47,000,000 |
| In Re BRF S.A. Securities Litigation | $40,000,000 |
| In re New Motor Vehicles Canadian Export Antitrust Litigation | $35,000,000 |
| Deutsche Bank MBS Securities Litigation | $32,500,000 |
| ADT Inc Shareholder Litigation | $30,000,000 |

* Waiting for final approval