ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
KENNETH J. BLACK (291871)
HADIYA K. DESHMUKH (328118)
JACOB G. GELMAN (344819)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com
jgelman@rgrdlaw.com
        – and –
MARK SOLOMON (151949)
ELLEN GUSIKOFF STEWART (144892)
JASON A. FORGE (181542)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
elleng@rgrdlaw.com
jforge@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re APPLE INC. SECURITIES LITIGATION | Case No. 4:19-cv-02033-YGR |
| | CLASS ACTION |
| This Document Relates To: | LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| ALL ACTIONS. | |
| | DATE:    September 17, 2024<br>TIME:    2:00 p.m.<br>CTRM:    1, 4th Floor<br>JUDGE:  Honorable Yvonne Gonzalez Rogers |

4873-0067-4254.v2

1

**TABLE OF CONTENTS**

2

**Page**

3

I.    INTRODUCTION ...................................................................................................3

II.    PROCEDURAL AND FACTUAL BACKGROUND.........................................5

III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENTS...................................................................................................9

A.    The Settlement Warrants Final Approval ...............................................9

B.    The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)................10

1.    Rule 23(e)(2)(A): Lead Plaintiff and Lead Counsel Have
Adequately Represented the Class............................................10

2.    Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at
Arm's Length After Mediation with an Experienced Mediator................11

3.    Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate
Considering the Costs, Risk, and Delay of Trial and Appeal ...................12

4.    Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief
Is Effective ................................................................................15

5.    Rule 23(e)(2)(C)(iii): Attorneys' Fees .....................................15

6.    Rule 23(e)(2)(C)(iv): Other Agreements .................................16

7.    Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class
Members Equitably...................................................................16

C.    The Remaining Ninth Circuit Factors Are Satisfied............................17

1.    Discovery Completed and Stage of the Proceedings ................17

2.    Counsel Views This Good-Faith Settlement as Fair, Reasonable,
and Adequate ............................................................................18

3.    The Positive Reaction of Class Members to the Settlement .....18

4.    The Settlement Amount ............................................................19

5.    The Risk of Maintaining Class Certification ............................19

IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION...........20

V.    NOTICE TO THE CLASS SATISFIES DUE PROCESS ...............................20

VI.    CONCLUSION...................................................................................................22

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page**

3

4

## CASES

5

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ...................................................................................9

6

7

*Cheng Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)..........................................................11

8

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ..............................................................................10, 12

9

10

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ...................................................................................20

11

*Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC*,
  533 F. Supp. 3d 881 (N.D. Cal. 2020) .....................................................................11

12

13

*Davis v. Yelp, Inc.*,
  2022 WL 21748777 (N.D. Cal. Aug. 1, 2022) .........................................................14

14

15

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)..................................................................................................13

16

*Fleming v. Impax Laby's, Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022)......................................................15, 21

17

18

*Foster v. Adams & Assocs., Inc.*,
  2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ............................................................17

19

20

*Hampton v. Aqua Metals, Inc.*,
  2021 WL 4553578 (N.D. Cal. Oct. 5, 2021)............................................................16

21

*Hayes v. MagnaChip Semiconductor Corp.*,
  2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) .........................................................21

22

23

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
  *aff'd sub nom., Hefler v. Pekoc*,
  802 F. App'x 285 (9th Cir. 2020) .............................................................................12

24

25

26

*Hessefort v. Super Micro Comput., Inc.*,
  2023 WL 7185778 (N.D. Cal. May 5, 2023) ............................................................17

27

28

**Page**

*Hsu v. Puma Biotechnology, Inc.*,
  No. 8:15-cv-00865, ECF 913 (C.D. Cal. Aug. 3, 2022) ........................................14

*In re Apple Inc. Sec. Litig.*,
  2024 WL 3297079 (N.D. Cal. June 3, 2024) ................................................. *passim*

*In re Aqua Metals, Inc. Sec. Litig.*,
  2022 WL 612804 (N.D. Cal. Mar. 2, 2022) ........................................................20

*In re Atmel Corp. Derivative Litig.*,
  2010 WL 9525643 (N.D. Cal. Mar. 31, 2010) ....................................................12

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg.*,
  *Sales Pracs., & Prods. Liab. Litig.*,
  2019 WL 2554232 (N.D. Cal. May 3, 2019) ......................................................10

*In re Google Location Hist. Litig.*,
  2024 WL 1975462 (N.D. Cal. May 3, 2024) .............................................9, 17, 19

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ............................................................................11

*In re Lyft, Inc. Sec. Litig.*,
  2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) ..................................................16

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................16

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ............................................................................16

*In re Tesla, Inc. Sec. Litig.*,
  No. 3:18-cv-04865-EMC (N.D. Cal.) .................................................................14

*In re Veritas Software Corp. Sec. Litig.*,
  496 F.3d 962 (9th Cir. 2007) ............................................................................21

*In re Volkswagen "Clean Diesel" Mktg.*,
  *Sales Pracs., & Prods. Liab. Litig.*,
  895 F.3d 597 (9th Cir. 2018) ..............................................................................9

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 4212811 (N.D. Cal. July 22, 2020),
  *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022)..............................................14

**Page**

*Kastler v. Oh My Green, Inc.*,
  2022 WL 1157491 (N.D. Cal. Apr. 19, 2022) ...........................................................................9

*Longo v. OSI Sys., Inc.*,
  2022 U.S. Dist. LEXIS 158606 (C.D. Cal. Aug. 31, 2022)................................................12, 17

*Low v. Trump Univ., LLC*,
  881 F.3d 1111 (9th Cir. 2018) .............................................................................................21

*Luna v. Marvell Tech. Grp.*,
  2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ......................................................................14

*Mauss v. NuVasive, Inc.*,
  2018 WL 6421623 (S.D. Cal. Dec. 6, 2018)....................................................................11, 20

*Mendoza v. Hyundai Motor Co.*,
  2017 WL 342059 (N.D. Cal. Jan. 23, 2017) .........................................................................10

*Morrison v. Ross Stores*,
  2022 WL 17592437 (N.D. Cal. Feb. 16, 2022) ...................................................9, 12, 18, 21

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950).............................................................................................................21

*Officers for Just. v. Civ. Serv.*
  *Comm'n of City & Cnty. of S.F.*,
  688 F.2d 615 (9th Cir. 1982) ...........................................................................................9, 12

*Redwen v. Sino Clean Energy, Inc.*,
  2013 WL 12303367 (C.D. Cal. July 9, 2013) .......................................................................13

*Rodriguez v. Nike Retail Servs., Inc.*,
  2022 WL 254349 (N.D. Cal. Jan. 27, 2022) .........................................................................18

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...................................................................................11, 18, 21

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) .................................................................................................15

*Vataj v. Johnson*,
  2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ......................................................................20

**Page**

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78j(b)................................................................................................................7, 13
    §78t(a)........................................................................................................................7
    §78u-4(a)(4)...........................................................................................................1, 15
    §78u-4(a)(6)...............................................................................................................16

Federal Rules of Civil Procedure
    Rule 23.......................................................................................................................21
    Rule 23(c)(1)..............................................................................................................19
    Rule 23(c)(2)(B).........................................................................................................20
    Rule 23(e)................................................................................................................1, 9
    Rule 23(e)(1)(B).........................................................................................................20
    Rule 23(e)(2)....................................................................................................9, 10, 12
    Rule 23(e)(2)(A).........................................................................................................10
    Rule 23(e)(2)(B).........................................................................................................11
    Rule 23(e)(2)(C).........................................................................................................12
    Rule 23(e)(2)(C)(i)......................................................................................................12
    Rule 23(e)(2)(C)(ii).....................................................................................................15
    Rule 23(e)(2)(C)(iii)....................................................................................................15
    Rule 23(e)(2)(C)(iv)....................................................................................................16
    Rule 23(e)(2)(D).........................................................................................................16
    Rule 23(e)(3)..............................................................................................................10

**SECONDARY AUTHORITIES**

Edward Flores and Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation:*
    *2023 Full-Year Review* (NERA Jan. 23, 2024)........................................................19

Laarni T. Bulan & Laura E. Simmons,
    *Securities Class Action Settlements:*
    *2023 Review and Analysis* (Cornerstone Research 2024).......................................19

**NOTICE OF MOTION AND MOTION**

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE at 2:00 p.m. on September 17, 2024, in the Courtroom of the Honorable Yvonne Gonzalez Rogers, at the United States District Court, Northern District of California, Ronald V. Dellums Federal Building and United States Courthouse, Courtroom 1 – 4th Floor, 1301 Clay Street, Oakland, CA 94612, Lead Plaintiff and Class Representative Norfolk County Council as Administering Authority of the Norfolk Pension Fund ("Lead Plaintiff" or "Norfolk") will and hereby does respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of a judgment granting final approval of the proposed Settlement and entry of an order granting approval of the proposed Plan of Allocation.

This Motion is based on the following Memorandum of Points and Authorities, as well as the accompanying Declaration of Shawn A. Williams in Support of Final Approval of Class Action Settlement; Approval of Plan of Allocation; and an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Williams Declaration" or "Williams Decl."), with attached exhibits, all prior pleadings and papers in this Action, the arguments of counsel, and such additional information or argument as may be required by the Court.

A proposed Final Judgment and Order of Dismissal with Prejudice and proposed Order granting approval of the proposed Plan of Allocation will be submitted with Lead Plaintiff's reply submission on September 3, 2024, after the August 18, 2024 deadline for Class Members to object to the Settlement or Plan of Allocation has passed.

1

2                        **STATEMENT OF ISSUES TO BE DECIDED**

3       1.      Whether the Court should grant final approval of the Settlement.

4       2.      Whether the Court should approve the Plan of Allocation.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

The $490 million all-cash Settlement, which was achieved after over four years of hard-

4

fought litigation, represents a tremendous result for the Class.[1]  The Settlement is the third largest

5

recovery in a securities class action ever obtained in this District, and many multiples above the

6

median recovery for recent securities class action settlements.  It is more than a fair, reasonable,

7

and adequate result, and should be approved by the Court.

8

The Settlement was reached only after the proceedings had reached a stage where a careful

9

evaluation of the Action and the propriety of Settlement could be (and was) made.  For example,

10

Lead Plaintiff had, among other things: (i) successfully opposed Defendants' motion to dismiss

11

concerning allegations of weak iPhone demand in China prior to being appointed Lead Plaintiff;

12

(ii) upon being appointed Lead Plaintiff, filed a detailed Revised Consolidated Class Action

13

Complaint (the "Complaint"), streamlining the facts and re-alleging the statements found

14

actionable by the Court; (iii) successfully overcame in part Defendants' second motion to dismiss

15

the Complaint; (iv) filed and fully briefed class certification on two separate occasions, supported

16

by four expert reports, ultimately resulting in the certification of the case on behalf of investors in

17

both Apple common stock and options; (v) engaged in extensive written discovery, resulting in

18

the production of over 874,000 pages of documents by Defendants and third parties; (vi) took or

19

defended 21 depositions; (vii) litigated over a dozen discovery disputes; (viii) engaged experts to

20

provide three opinion reports; (ix) defeated Defendants' motion for summary judgment; (x)

21

successfully moved to exclude Defendants' expert testimony in part; (xi) successfully opposed in

22

their entirety Defendants' motions to exclude Lead Plaintiff's experts; (xii) negotiated pre-trial

23

documents with Defendants; (xiii) reviewed and designated Lead Plaintiff's trial exhibits and

24

drafted objections to Defendants' designated trial exhibits; (xiv) designated deposition testimony

25

---

26

[1]    The terms of the Settlement are set forth in the Amended Stipulation of Settlement, dated
May 21, 2024 (ECF 433-2) (the "Stipulation").  All capitalized terms not defined herein shall have

27

the same meaning set forth in the Stipulation and in Lead Plaintiff's Notice of Unopposed Motion
and Unopposed Motion for Preliminary Approval of Proposed Settlement, and Memorandum of

28

Points and Authorities in Support Thereof (ECF 421).

1   for use at trial; (xv) prepared and exchanged motions *in limine*; (xvi) conducted other trial

2   preparation; and (xvii) participated in a lengthy mediation process with the Honorable Layn R.

3   Phillips (ret.), which extended over more than two years, culminating in a mediator's proposal that

4   both sides accepted.  *See* Williams Decl., ¶¶11-12.  There is no question that as a result of these

5   extensive efforts, Lead Plaintiff and Lead Counsel had a thorough understanding of the relative

6   strengths and weaknesses of the Class's claims and the propriety of settlement.

7       While Lead Plaintiff believes the Class's claims have significant merit, from the outset and

8   throughout the Action, Defendants adamantly denied liability and asserted they possessed absolute

9   defenses to the Class's claims.  For example, Defendants "dispute that defendant Cook's alleged

10  false statement conveyed information about the current state of Apple's business in China, as

11  opposed to historical information, and that the information negated an inference of scienter."  *See*

12  *In re Apple Inc. Sec. Litig.*, 2024 WL 3297079, at *3 (N.D. Cal. June 3, 2024) ("Preliminary

13  Approval Order").  Defendants and their experts also "argued that the price declines in Apple stock

14  were not caused by revelations concerning previously undisclosed conditions in China, but by the

15  fact that Apple missed its Q1'19 revenue guidance."  *Id.*  During lengthy settlement negotiations,

16  Lead Counsel made it clear that while it was prepared to fairly assess the strengths and weaknesses

17  of this case, it would continue to litigate rather than settle for less than fair value.  Lead Plaintiff

18  and Lead Counsel persisted for nearly two years following the initial mediation until Judge Phillips

19  issued a "mediator's proposal" on February 14, 2024, which was accepted by the Parties.  The

20  Settlement is an exceptional result and is in the Class's best interest.

21      Moreover, Lead Plaintiff – the type of institutional investor Congress envisioned serving

22  in that role when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA") – fully

23  supports the Settlement.  *See* Declaration of Alexander Younger ("Younger Decl."), attached as

24  Exhibit A to the Williams Declaration.  The Class's reaction to date similarly reflects approval of

25  the Settlement.  Notice was provided to potential Class Members pursuant to the Preliminary

26  Approval Order, commencing June 26, 2024.  *See* Declaration of Ross D. Murray Regarding

27  Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray

28  Decl."), ¶¶5-8, attached as Ex. B to the Williams Declaration.  While the August 18, 2024, deadline

1    to object to the Settlement and Plan of Allocation has not yet passed, to date no objections have

2    been received.[2]

3        Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation, which

4    was detailed in the Class Action Settlement Notice ("Notice") made available to Class Members.

5    The Plan of Allocation governs how claims will be calculated and how Settlement proceeds will

6    be distributed among Authorized Claimants.  The Plan of Allocation was developed with

7    assistance from Lead Plaintiff's damages expert and subjects all Class Members to the same

8    formulas for calculating damages.

9        In short, the $490 million Settlement and the Plan of Allocation are fair and reasonable.

10    The Settlement is an exceptional result for the Class, and should be approved.

11    **II.    PROCEDURAL AND FACTUAL BACKGROUND[3]**

12        On April 16, 2019, Lead Counsel filed the first complaint in this Action in the United States

13    District Court for the Northern District of California under the caption *City of Roseville Emps.'*

14    *Ret. Sys. v. Apple Inc.*, No. 19-cv-02033, alleging violations of the Securities Exchange Act of

15    1934 ("Exchange Act") with a class period spanning November 2, 2018, through January 2, 2019.

16    ECF 1.  On May 24, 2019, Steamfitters Local 449 Pension Plan filed a complaint against the

17    Defendants that encompassed a class period of August 1, 2017, through January 2, 2019.

18    *Steamfitters Loc. 449 Pension Plan v. Apple, Inc.*, No. 19-cv-02891, Complaint for Violation of the

19    Federal Securities Laws (N.D. Cal. May 24, 2019).

20        On June 17, 2019, Norfolk filed a motion for the appointment as lead plaintiff and approval of

21    its selection of lead counsel to prosecute the claims asserted in the *City of Roseville* complaint.  ECF

22    36.  On the same day, Employees' Retirement System for the State of Rhode Island ("Rhode Island")

23

24

25

---

26    [2]    Lead Counsel will address any timely objections in its reply brief, which is due on September 3, 2024.

27    [3]    The full procedural history of the Action is set out in the accompanying Williams

28    Declaration.  What follows is a summary overview of the major case highlights.

1    sought appointment as lead plaintiff and lead counsel based on the class period alleged in the

2    *Steamfitters*' complaint.  ECF 26.[4]

3            On August 14, 2019, the Court issued an Order appointing Rhode Island as lead plaintiff

4    and approving its choice of lead counsel, and set a briefing schedule for Apple's motion to dismiss,

5    which provided that Norfolk could "request to file a brief supplementing the arguments made in

6    [the appointed] Lead Plaintiff's [motion to dismiss] opposition," limited to five pages.  ECF 72 at

7    ¶10.

8            On October 15, 2019, Rhode Island filed a Consolidated and Amended Class Action

9    Complaint for Violation of the Federal Securities Laws with the class period alleged in the

10   *Steamfitters*' complaint.  ECF 85.  On December 16, 2019, Defendants moved to dismiss that

11   complaint.  ECF 91.

12           On February 7, 2020, with the Court's permission, Norfolk filed its Request to Submit

13   Additional Briefing in Connection with Defendant Apple's Motion to Dismiss the Corrected

14   Consolidated Complaint and Lead Plaintiff's Opposition Thereto, which opposed Defendants'

15   motion to dismiss with respect to two alleged false and misleading statements made on November

16   1, 2018.  ECF 101.  Plaintiff argued, among other things, that allegations of the temporal proximity

17   of Defendants' November 1 misrepresentations, the subsequent November 5 and 12, 2018

18   disclosures of production cancellations, and the Company's January 2, 2019 disclosures of

19   admitted knowledge of business and traffic declines during the quarter satisfied the PSLRA

20   pleading requirements.  *Id.*

21           On June 2, 2020, the Court issued an Order upholding only the fraud alleged from

22   November 1, 2018, to January 2, 2019, and ordering the transition of lead plaintiff from Rhode

23   Island to Norfolk.  ECF 110.  On June 19, 2020, the Court issued an Order appointing Norfolk as

24   lead plaintiff and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel.

25   ECF 113.

26

27   _____
     [4]     Several other investors filed motions for appointment of lead plaintiff which were later
28   withdrawn.  *See, e.g.*, ECFs 50, 63.

On June 23, 2020, as directed by the Court, Norfolk filed the Complaint, which alleged misrepresentations and omissions consistent with the Court's June 2, 2020 Order. Specifically, the Complaint alleged that on November 1, 2018, Defendants made materially false and misleading statements and omissions about demand for the newly-released iPhones and Apple's business conditions in China, in violation of §§10(b) and 20(a) of the Exchange Act. The Complaint further alleged that the false and misleading statements and omissions caused Apple's securities to trade at artificially inflated prices, and that when the true facts were disclosed, Apple's stock price plummeted.

On July 13, 2020, Defendants moved again to dismiss the Complaint. ECF 118. Norfolk opposed the motion on July 27, 2020. ECF 120. On November 4, 2020, the Court issued an Order granting in part and denying in part Defendants' motion to dismiss, leaving only a single statement in the action concerning the Company's performance in Greater China. ECF 123.

On May 5, 2021, Norfolk filed its motion for class certification, supported by expert opinion. ECF 165. Defendants took related discovery from all plaintiffs and opposed the motion. ECF 196. On February 4, 2022, the Court issued an Order granting the motion in part, certifying a Class of purchasers or acquirers of Apple common stock, and denying (without prejudice) the motion with respect to the proposed certification of Apple options investors. ECF 224. The Court appointed Norfolk as the Class Representative, and Robbins Geller as Class Counsel.

On April 15, 2022, Norfolk filed a supplemental motion, supported by additional expert opinion, seeking certification of a class of Apple options investors. ECF 239. After further discovery, Defendants opposed the motion (ECF 247), and on March 28, 2023, the Court issued its Order Modifying Class, which granted Norfolk's motion to certify call option buyers and put option sellers as part of the Class. ECF 352.

On July 5, 2022, Lead Plaintiff filed a motion for leave to modify the scheduling order and file the [Proposed] Second Amended Class Action Complaint for Violation of the Federal Securities Laws ("PSAC"), which alleged that a previously-dismissed statement was false and misleading, as supported by evidence obtained in discovery. ECFs 249, 250. On July 26, 2022, Defendants opposed the motion, arguing that it was untimely and would be prejudicial. ECFs 266,

267.  On August 5, 2022, Lead Plaintiff filed a reply.  ECFs 278, 279.  On September 19, 2022, the Court denied the motion, concluding Lead Plaintiff had not met its burden to show good cause under Fed. R. Civ. P. 16 to amend the scheduling order to allow the filing of the PSAC.  ECF 310.

On September 9, 2022, Defendants filed a Motion for Summary Judgment and Motion to Exclude Expert Testimony.  ECFs 292, 293.  Also on September 9, 2022, Lead Plaintiff filed an Omnibus Motion to Exclude Opinion Testimony of Defendants' Proposed Experts.  ECF 301. Lead Plaintiff filed its opposition to the Motion for Summary Judgment on October 20, 2022. ECFs 322-324.  On June 26, 2023, the Court issued an Order Denying Summary Judgment.  ECF 369.  On July 17, 2023, the Court issued an Order denying Defendants' Motion to Exclude and granting in part and denying in part Lead Plaintiff's Motion to Exclude with respect to portions of three of Defendants' experts.  ECF 384.

On November 2, 2023, the Court set a trial date of May 6, 2024, along with related pre-trial deadlines.  ECF 414 ("Trial Scheduling Order").  In compliance with the Trial Scheduling Order, the Parties exchanged preliminary exhibit and witness lists, deposition designations, related objections and counter-designations, and draft motions *in limine*.  On February 27, 2024, the Court issued an Amended Pretrial Scheduling Order setting new deadlines for the Parties to exchange and submit witness lists, motions *in limine*, proposed jury instructions, and other pre-trial materials, as well as setting a trial date of September 9, 2024.  ECF 420.

During the course of the Action, the Settling Parties engaged a neutral third-party mediator, the Honorable Layn R. Phillips (Ret.) of Phillips ADR.  Judge Phillips held direct settlement discussions with the Parties on multiple occasions starting in January 2022, and convened various teleconferences and meetings regarding a potential resolution of the Action.  On February 14, 2024, Judge Phillips issued a "mediator's proposal," which the Parties accepted on March 1, 2024.

On March 15, 2024, Lead Plaintiff moved for preliminary approval of the Settlement.  ECF 421.  The Court heard oral argument on May 7, 2024, and following the submission of supplemental materials, the Court granted Lead Plaintiff's motion for preliminary approval of the Settlement on June 3, 2024.  ECF 435.  Notice was sent to the Class beginning on June 26, 2024. *See* Murray Decl.

III.    **STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS**

A.    **The Settlement Warrants Final Approval**

The Ninth Circuit recognizes a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020).[5] *See also In re Google Location Hist. Litig.*, 2024 WL 1975462, at *5 (N.D. Cal. May 3, 2024) ("Considering Plaintiffs' evidentiary burden and the intricacies of class actions of this magnitude, the Court finds that the judicial policy favoring compromise and settlement of class action suits is applicable here."). "Deciding whether a settlement is fair is . . . best left to the district judge." *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018). Courts, however, should not convert settlement approval into an inquiry into the merits, as "'the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties.'" *Kastler v. Oh My Green, Inc.*, 2022 WL 1157491, at *3 (N.D. Cal. Apr. 19, 2022) (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)). Likewise, "[i]n reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class." *Morrison v. Ross Stores*, 2022 WL 17592437, at *3 (N.D. Cal. Feb. 16, 2022) (Gonzalez Rogers, J.).

Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of class action claims and provides "the court may approve [a proposed settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement is "fair, reasonable, and adequate," the Court must

> consider[] whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay

---
[5]    Citations are omitted and emphasis is added throughout unless otherwise indicated.

1
2
3

of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

4    *Id.*

5

6

In addition to the Rule 23(e)(2) considerations, courts in the Ninth Circuit consider the

following factors when examining whether a proposed settlement is fair, reasonable, and adequate:

7
8
9
10

(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[6]

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

11
12
13
14
15
16
17
18

The Court's Preliminary Approval Order considered each of the Rule 23(e)(2) and Ninth Circuit factors when assessing the Settlement and found that it was fair, reasonable, and adequate, subject to further consideration at the Settlement Hearing. *See* ECF 435 at 6. The Court's conclusion on preliminary approval is equally true now, as nothing has changed between June 3, 2024, and the present. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand and counsel equally in favor of final approval now.").

19
20

**B.    The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)**

**1.    Rule 23(e)(2)(A): Lead Plaintiff and Lead Counsel Have Adequately Represented the Class**

21
22
23
24
25
26

Lead Plaintiff and Lead Counsel have more than adequately represented the Class as required by Rule 23(e)(2)(A). Lead Counsel is highly qualified and experienced in securities litigation, *see* accompanying Declaration of Shawn A. Williams Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, Exhibit H, relentlessly pursued the claims of Apple investors in this Court, zealously advocated

27
28

[6]    "Because there is no governmental entity involved in this litigation, this [seventh] factor is inapplicable." *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).

1   for the Class's best interests throughout the litigation, and was fully prepared to try this case to a

2   jury.  *See generally* Williams Decl.; *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5

3   (C.D. Cal. Oct. 10, 2019) (finding this factor satisfied where lead counsel "has significant

4   experience in securities class action lawsuits").  The Settlement is the result of Lead Counsel's

5   diligent prosecution of this Action for over four years, through trial preparation, and included the

6   filing of a critical supplemental submission at the pleading stage even prior to selection as Lead

7   Counsel.  *See, e.g.*, *Cheng Jiangchen*, 2019 WL 5173771, at *5 (finding this factor satisfied where

8   lead counsel vigorously pursued plaintiff's claims through multiple rounds of motions to dismiss

9   and amended complaints); ECF 101.

10         In addition, Lead Plaintiff and Lead Counsel have no interests antagonistic to those of other

11  Class Members; rather, Lead Plaintiff's claims "arise from the same alleged conduct: the purchase

12  of [Apple securities] at inflated prices based on Defendants' alleged . . . misstatements."  *Cheng*

13  *Jiangchen*, 2019 WL 5173771, at *5.  Accordingly, Lead Plaintiff shares the common interest in

14  obtaining the largest possible recovery for Lead Plaintiff and the Class.  *See In re Hyundai & Kia*

15  *Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) ("To determine legal adequacy, we resolve

16  two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with

17  other class members and (2) will the named plaintiffs and their counsel prosecute the action

18  vigorously on behalf of the class?'").  This factor weighs in favor of final approval.

19              **2.     Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at**
                **Arm's Length After Mediation with an Experienced Mediator**
20
         Rule 23(e)(2)(B) asks whether "the proposal was negotiated at arm's length."  Fed. R. Civ.
21
    P. 23(e)(2)(B).  "[The Ninth Circuit] put[s] a good deal of stock in the product of an arms-length,
22
    non-collusive, negotiated resolution."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.
23
    2009); *accord Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC*, 533 F. Supp. 3d 881,
24
    889 (N.D. Cal. 2020).   There is no question that this proposed Settlement satisfies Rule
25
    23(e)(2)(B).  The Settlement follows extensive litigation over the course of more than four years.
26
    *See generally* Williams Decl.; *see also Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *4 (S.D.
27
    Cal. Dec. 6, 2018) ("The agreement comes in the wake of over four years of extensive
28

investigation, discovery, and motion practice, after which the parties engaged in arms'-length negotiations before a mediator.").  The Settlement was achieved only after multiple mediation sessions with Judge Phillips starting in January 2022, while litigation continued towards trial.  As part of the settlement discussions, Lead Counsel and Defendants' Counsel prepared and presented submissions concerning their respective views on the merits of the litigation.  Ultimately, the case was resolved only after all parties accepted Judge Phillips' "mediator's proposal."  *See* Williams Decl., ¶120.  *See In re Atmel Corp. Derivative Litig.*, 2010 WL 9525643, at *13 (N.D. Cal. Mar. 31, 2010) ("Judge Phillips' participation weighs considerably against any inference of a collusive settlement.").  Given the Parties' efforts over the last four years, there can be no question that counsel "'had a sound basis for measuring the terms of the [S]ettlement.'" *Longo v. OSI Sys., Inc.*, 2022 U.S. Dist. LEXIS 158606, at *11 (C.D. Cal. Aug. 31, 2022).  These facts demonstrate that the Settlement is the result of arm's-length negotiations and "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Just.*, 688 F.2d at 625. *See also Morrison*, 2022 WL 17592437, at *5 (settlement reached after three mediation sessions "demonstrates that the settlement reached by the parties was a result of serious, informed, non-collusive, and arms-length negotiation").

### 3.  Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate Considering the Costs, Risk, and Delay of Trial and Appeal

In evaluating compliance with Rule 23(e)(2)(C), the Court considers "the costs, risks, and delay of trial and appeal," and the relevant overlapping Ninth Circuit factors address "the strength of the plaintiffs' case" and "the risk, expense, complexity, and likely duration of further litigation." Fed. R. Civ. P. 23(e)(2); *Churchill*, 361 F.3d at 575.  While Lead Plaintiff believes its claims have merit and that the Class would prevail at trial, it nevertheless recognizes the numerous risks and uncertainties it would face at trial.  Indeed, securities class actions "'are highly complex and [litigating] securities class litigation is notably difficult and notoriously uncertain.'"  *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom.*, *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).  As discussed below, the benefits conferred on Class

Members by the $490 million Settlement far outweigh the costs, risks, and delay of further litigation, and confirm the adequacy and reasonableness of the Settlement.

**a.    The Costs and Risks of Trial and Appeal Support Approval of the Settlement**

To prove liability under §10(b) of the Exchange Act, a plaintiff must establish all elements of the claim, including that the defendants knowingly or recklessly made materially false and misleading statements and that the material misrepresentations caused investors' losses.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).  Lead Plaintiff would be required to prove each of these elements to prevail, whereas Defendants needed only to succeed on one defense to defeat the entire Action.  In addition, Lead Plaintiff would have to defeat ***all*** of Defendants' affirmative defenses.  If Defendants prevailed on any of them, the case would end.  Although Lead Plaintiff is confident in the strength of the evidence and Lead Counsel's abilities to prove its case, the risk of loss was still real.  *See Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation '"routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear."'"); *see also* Preliminary Approval Order, 2024 WL 3297079, at *3 (same).

Defendants advanced several plausible arguments disputing both liability and damages.  Lead Counsel anticipated that Defendants would have continued to make these arguments at trial.  Defendants maintained that the sole alleged misstatement was a truthful statement about historical performance or foreign currency impacts, that the adverse market conditions in China had all been disclosed to investors, and that regardless of the truth or falsity of the sole remaining alleged misstatement, Cook did not act with the requisite intent to defraud investors as evidenced by the Company simultaneously issuing disappointing financial guidance.  Williams Decl., ¶¶147-148.  Defendants also contended that Class Members' losses were not the result of any concealed weak demand for iPhones in China but resulted from the guidance miss and/or negative events that occurred during the quarter.  *Id.*, ¶149.

In addition, not only were Defendants poised to challenge the admissibility of a significant quantity of the evidence Lead Plaintiff intended to rely on at trial, but they were also prepared to

1    move to exclude a number of statements Defendants made about demand for iPhones, as well as

2    any reports or statements by financial analysts that were not made within a handful of days of the

3    challenged statement.  *Id.*, ¶146.  Even if this evidence survived Defendants' objections, Lead

4    Plaintiff would have to rely on Apple employees and former employees to authenticate the

5    majority of such evidence, and these witnesses were likely to be hostile to Lead Plaintiff.  In fact,

6    multiple Apple employees submitted declarations disputing Lead Plaintiff's allegations in support

7    of Defendants' motion for summary judgment.

8         Finally, Lead Plaintiff faced the risk that the jury would not credit the testimony of its

9    experts or would unduly credit the testimony of Defendants' six experts.  The winner of such a

10   "'battle of [the] experts'" cannot be predicted.  *Davis v. Yelp, Inc.*, 2022 WL 21748777, at *4 (N.D.

11   Cal. Aug. 1, 2022).  This risk was particularly significant here as Lead Plaintiff was not successful

12   in precluding Defendants from using an expert witness as a summary witness to present Apple's

13   internal sales data or from having an expert testify as to how analysts interpreted certain statements

14   by the Defendants.  Settlement at this stage eliminates this risk.

15              **b.    The Proposed Settlement Eliminates the Additional
                        Cost and Delay of Continued Litigation**

16
17        Although this case was approaching trial, much work remained and even if Lead Plaintiff

18   prevailed at trial it would have taken potentially years to resolve any resulting appeals.  *See, e.g.*,

19   *Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865, ECF 913 (C.D. Cal. Aug. 3, 2022) (granting

20   final approval of securities class action settlement 2.5 years after a February 4, 2019 jury verdict

21   in plaintiff's favor).

22        "By contrast, the Settlement provides . . . timely and certain recovery."  *In re Yahoo! Inc.*

23   *Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020), *aff'd*, 2022

24   WL 2304236 (9th Cir. June 27, 2022); *see Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *3

25   (N.D. Cal. Apr. 20, 2018) (noting the risks of proving scienter, loss causation, and damages at

26   trial); *cf. In re Tesla, Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC (N.D. Cal.) (securities class action

27   defendants obtaining jury verdict notwithstanding district judge granting plaintiffs' motion for

28   summary judgment on falsity element).  The Settlement at this juncture results in an immediate,

1    substantial, and tangible recovery, without "the cost, complexity and time of fully litigating the

2    case" – key factors in evaluating the reasonableness of a settlement.  *Torrisi v. Tucson Elec. Power*

3    *Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  The Settlement is a far better option for the Class.

4         **4.    Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing
                   Relief Is Effective**

5

6         Lead Plaintiff and Lead Counsel have also made substantial efforts to notify the Class about

7    the proposed Settlement under Rule 23(e)(2)(C)(ii).  Pursuant to the Preliminary Approval Order,

8    more than 27,900 copies of the Summary Notice were mailed or emailed to potential Class

9    Members and nominees; the Summary Notice was also published in *The Wall Street Journal* and

10   transmitted    over    *Business    Wire*;    and    the    website    created    for    this    Action

11   (www.2019AppleSecuritiesSettlement.com) contains key documents, including the Stipulation,

12   Notice, Proof of Claim, and Preliminary Approval Order.  *See generally* Murray Decl.

13        The claims process here is identical to those commonly and effectively used in connection

14   with other securities class action settlements.  The standard claim form requests the information

15   necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.  The Plan of

16   Allocation, discussed further in §IV below, will govern how claims will be calculated and,

17   ultimately, how funds will be distributed to claimants.[7]

18        **5.    Rule 23(e)(2)(C)(iii): Attorneys' Fees**

19        Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees,

20   including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  As discussed in Lead Counsel's

21   Memorandum of Points and Authorities in Support of an Award of Attorneys' Fees and Expenses,

22   and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Fee Memorandum"), submitted

23

24   _____

     [7]      Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved
     attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount will
25   be distributed pursuant to the Plan of Allocation.  *See* Stipulation, ¶5.5. These distributions shall
     be repeated until the balance remaining in the Net Settlement Fund is *de minimis*.  *Id.*, ¶5.12.  If
26   there are any *de minimis* residual funds that are not feasible or economical to reallocate, Lead
     Plaintiff proposes that such funds be donated to the Investor Protection Trust, a 501(c)(3) non-
27   profit dedicated to investor education and protection.  *See, e.g.*, *Fleming v. Impax Laby's, Inc.*,
     2022 WL 2789496, at *2 (N.D. Cal. July 15, 2022) (approving Investor Protection Trust as *cy pres*
28   recipient in securities settlement).

1   herewith, Lead Counsel seeks an award of attorneys' fees of 25% of the Settlement Amount and

2   expenses of Plaintiffs' Counsel of $2,651,465.53, plus interest actually earned on both amounts

3   since funding.  This fee request was fully disclosed in the Notice (Murray Decl., Ex. B, Notice at

4   4), approved by Lead Plaintiff (Younger Decl., ¶7), is consistent with the benchmark for attorneys'

5   fee awards in this Circuit (*see* Fee Memorandum, §III.B), and is reasonable under the

6   circumstances.  15 U.S.C. §78u-4(a)(6).

7               **6.      Rule 23(e)(2)(C)(iv): Other Agreements**

8           As noted in Lead Plaintiff's motion for preliminary approval (ECF 421 at 17), the Parties

9   have entered into a standard supplemental agreement which provides that if Class Member opt

10  outs of the Settlement exceed a certain threshold, Defendants shall have the option to terminate

11  the Settlement.  Stipulation, ¶7.3.  Again, such agreements are common and do not undermine the

12  propriety of the Settlement.  *See, e.g.*, *In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302, at *6 (N.D.

13  Cal. Dec. 16, 2022) ("The existence of a termination option triggered by the number of class

14  members who opt out of the settlement does not by itself render the settlement unfair."); *Hampton

15  v. Aqua Metals, Inc.*, 2021 WL 4553578, at *10 (N.D. Cal. Oct. 5, 2021) (same).  While the

16  Supplemental Agreement is identified in the Stipulation (¶7.3), and the nature of the agreement is

17  explained in the Stipulation and here, the terms are properly kept confidential.[8]

18              **7.      Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class
                          Members Equitably**

19

20          The Plan of Allocation must "treat[] class members equitably relative to each other."  Fed.

21  R. Civ. P. 23(e)(2)(D).  Assessment of the Settlement's Plan of Allocation "'is governed by the

22  same standards of review applicable to approval of the settlement as a whole: the plan must be fair,

23  reasonable and adequate.'"  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal.

24  2008).  The Plan of Allocation details how the Settlement proceeds will be distributed among

25  Authorized Claimants and provides formulas for calculating the recognized claim of each Class

26

27  ---
    [8]      *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (finding that
28  settlement was not rendered unfair by the inclusion of an opt-out provision where "[o]nly the exact
    threshold, for practical reasons, was kept confidential").

1   Member based on each such Person's transactions in Apple common stock and options during the

2   Class Period.  *See* Notice at 10-14.  It is fair, reasonable, and adequate because all eligible Class

3   Members (including Lead Plaintiff) will be subject to the same formulas for distribution of the

4   Settlement and each Authorized Claimant will receive his, her, their, or its *pro rata* share of the

5   distribution.  *See, e.g.*, *Longo*, 2022 U.S. Dist. LEXIS 158606, at *18 ("Specifically, each

6   authorized claimant's share of the net settlement amount will be based on when the claimant

7   acquired and sold the subject securities.  Accordingly, this factor also weighs in favor of final

8   approval.").

9       **C.    The Remaining Ninth Circuit Factors Are Satisfied**

10          **1.    Discovery Completed and Stage of the Proceedings**

11          The Parties reached the Settlement at an advanced stage of the Action, after all fact and

12   expert discovery was complete, with summary judgment resolved, and while the Parties were

13   intensively preparing for trial.  *See generally* Williams Decl.  Discovery provided significant

14   insight into the strengths and challenges of the case, and the Parties had a thorough understanding

15   of the arguments, evidence, and potential witnesses that would inform the trial.  *See id.*  There can

16   be no question that Lead Plaintiff and Lead Counsel had sufficient information to evaluate the case

17   and the merits of the Settlement by the time it was reached.  *See In re Google Location Hist.*, 2024

18   WL 1975462, at *8 (finding "the amount of investigation and discovery conducted shows that the

19   Parties had adequately developed a perspective on the strengths and weaknesses of their respective

20   cases to 'make an informed decision about settlement'"); *Foster v. Adams & Assocs., Inc.*, 2022

21   WL 425559, at *6 (N.D. Cal. Feb. 11, 2022) (finding "[p]laintiffs were 'armed with sufficient

22   information about the case' to broker a fair settlement" given extensive discovery, years of

23   litigation, and multiple settlement conferences); *Hessefort v. Super Micro Comput., Inc.*, 2023 WL

24   7185778, at *6 (N.D. Cal. May 5, 2023) (finding "the parties conducted sufficient discovery to

25   make an informed decision about the adequacy of the settlement" given exchange of written

26   discovery, deposition of the plaintiff's market efficiency expert, briefing class certification and

27   multiple motions to dismiss, and "a full-day mediation and subsequent settlement negotiations").

28          Given the advanced stage of the litigation, Lead Plaintiff and Lead Counsel were in a position to

1  make a well-informed evaluation of the potential outcomes of the case.  This factor strongly weighs

2  in favor of final approval of the Settlement.

3           **2.      Counsel Views This Good-Faith Settlement as Fair,
                      Reasonable, and Adequate**

4

5          The Ninth Circuit recognizes that parties "'represented by competent counsel are better

6  positioned than courts to produce a settlement that fairly reflects each party's expected outcome

7  in litigation.'"   *Rodriguez*, 563 F.3d at 967.    Thus, courts accord great weight to the

8  recommendations and opinions of experienced counsel.  *See Rodriguez v. Nike Retail Servs., Inc.*,

9  2022 WL 254349, at *4 (N.D. Cal. Jan. 27, 2022) (noting "the experience and views of counsel . . .

10 favors approving the settlement" and highlighting counsel's "thorough understanding of the

11 strengths and weaknesses of th[e] case and their extensive experience litigating prior . . . class

   action cases").

12

13         Lead Counsel has extensive experience representing plaintiffs in securities and other

14 complex class action litigation and has negotiated numerous substantial class action settlements

15 across the country, including cases like this one that were quickly approaching trial.  Williams

16 Decl., ¶168.  As a result of this experience, and with the assistance of sophisticated consultants

17 and experts when appropriate, Lead Counsel possessed a firm understanding of the strengths and

18 weaknesses of the claims by the time the Settlement was reached, and based thereon, Lead Counsel

19 concluded that the Settlement is an outstanding result for the Class.  Lead Plaintiff, which was

20 active in the litigation, authorized Lead Counsel to settle it and supports the reasonableness of the

   Settlement.  Younger Decl., ¶6.

21

22         **3.      The Positive Reaction of Class Members to the Settlement**

23         While the deadline to object to the Settlement is August 18, 2024, to date, no objections

24 have been received.  Lead Plaintiff will address objections by Class Members, if any, in its reply

25 papers.  Nor have any Class Members opted out of the Class.  The Class's overwhelmingly positive

   reaction to the Settlement to date supports final approval.  *See Morrison*, 2022 WL 17592437, at

26

27 *5 (finding the "'absence of a large number of objections to a proposed class action settlement

28

1   raises a strong presumption that the terms of a proposed class settlement action are favorable to

2   the class members'"").

3                              **4.    The Settlement Amount**

4           The $490 million Settlement far exceeds the median securities settlement in terms of both

5   dollar amount and as a percentage of estimated damages.  As noted previously, the Settlement

6   represents approximately 20% of the estimate of damages recoverable at trial.  This recovery, in

7   percentage terms, is exceptional.  It is ten times the 2023 median percentage recovery for cases,

8   like this one, with estimated damages of over $1 billion (2%), and more than quadruples the median

9   settlement as a percentage of estimated damages in the Ninth Circuit from 2014 through 2023

10  (4.4%).  *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2023*

11  *Review and Analysis* (Cornerstone Research 2024) ("Cornerstone Report") at 6, 20.   The

12  Settlement also far exceeds the average settlement value, in absolute terms, for securities class

13  actions of $46 million in 2023.  *See* Edward Flores and Svetlana Starykh, *Recent Trends in*

14  *Securities Class Action Litigation: 2023 Full-Year Review*, at 18, Fig. 17 (NERA Jan. 23, 2024)

15  ("NERA Report").  Both the Cornerstone Report and the NERA Report are attached as Exs. C and

16  D, respectively, to the Williams Declaration.

17                       **5.    The Risk of Maintaining Class Certification**

18          Although the Court certified a litigation Class on February 4, 2022 (ECF 224), and later

19  modified the Class to include buyers of call options and sellers of put options (ECF 352),

20  Defendants may later have moved to decertify the Class or seek to shorten the Class Period.  Rule

21  23(c)(1) provides that a class certification order may be altered or amended at any time before a

22  decision on the merits, which is "an inescapable and weighty risk that weighs in favor of a

23  settlement."  *In re Google Location Hist.*, 2024 WL 1975462, at *6.  Indeed, Defendants' loss

24  causation and damages expert opined that the Class Period should have ended on November 5 or

25  November 12, 2018.  ECF 301-9 (Expert Report of Professor Steven Grenadier).  This factor

26  weighs in favor of approval.

27                                   *        *        *

28

1   In sum, Lead Plaintiff and Lead Counsel attained an excellent result for the Class.  The

2   Court should find that the Settlement is fair, reasonable, and adequate, and should grant final

3   approval.

4   **IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION**

5   In addition to seeking final approval of the Settlement, Lead Plaintiff seeks final approval

6   of the Plan of Allocation that the Court preliminarily approved on June 3, 2024.  ECF 435 at 8.

7   The Plan of Allocation is considered separately from the fairness of the Settlement but is

8   nevertheless governed by the same legal standards: the plan must be fair and reasonable.  *See Class*

9   *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *see also Vataj v. Johnson*, 2021

10  WL 1550478, at *10 (N.D. Cal. Apr. 20, 2021) ("'[C]ourts recognize that an allocation formula

11  need only have a reasonable, rational basis, particularly if recommended by experienced and

12  competent counsel.'") (alteration in original).  As noted, the Plan of Allocation here provides an

13  equitable basis to allocate the Net Settlement Fund among all Authorized Claimants (Class

14  Members who submit an acceptable Proof of Claim and who have a recognized loss under the Plan

15  of Allocation).  Individual claimants' recoveries will depend on when they transacted in Apple

16  securities during the Class Period, what security they transacted in, and whether and when they

17  sold those securities.  All Authorized Claimants will recover their proportional "*pro rata*" amount

18  of the Net Settlement Fund as calculated for the type of Apple security transacted in.  This is the

19  traditional and reasonable approach to allocating securities settlements.  *See, e.g.*, *NuVasive*, 2018

20  WL 6421623, at *4 ("'A plan of allocation that reimburses class members based on the extent of

21  their injuries is generally reasonable.'").  To date there has been no objection to the Plan of

22  Allocation.  As a result, the Plan of Allocation is fair and reasonable and should be approved.

23  **V.    NOTICE TO THE CLASS SATISFIES DUE PROCESS**

24  A district court "must direct notice in a reasonable manner to all class members who would

25  be bound by the proposal," Fed. R. Civ. P. 23(e)(1)(B), and "must direct to class members the best

26  notice that is practicable under the circumstances, including individual notice to all members who

27  can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B).  *See also In re Aqua*

28  *Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *5 (N.D. Cal. Mar. 2, 2022).  The notice also must

1   describe "'''the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

2   investigate and to come forward and be heard.'''"  *Rodriguez*, 563 F.3d at 962; *see also Morrison*,

3   2022 WL 17592437, at *4 (stating notice is adequate if "'reasonably calculated, under all the

4   circumstances, to apprise interested parties of the pendency of the action and afford them an

5   opportunity to present their objections'") (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339

6   U.S. 306, 314 (1950)); *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018) ("'The

7   yardstick against which we measure the sufficiency of notices in class action proceedings is one

8   of reasonableness.'").  The PSLRA further requires that the settlement notice include a statement

9   explaining a plaintiff's recovery "to allow class members to evaluate a proposed settlement."  *In

10  re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007).

11      Notice here satisfied the Court-approved notice process, which the Court preliminarily

12  found to be "constitutionally sound."  ECF 435 at 7.  The Claims Administrator has mailed or

13  emailed over 27,900 copies of the Court-approved Summary Notice to potential Class Members

14  and their nominees who could be identified with reasonable effort.  *See* Murray Decl., ¶9.  In

15  addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over

16  *Business Wire*.  *Id.*, ¶10.  The Claims Administrator also provided all information regarding the

17  Settlement online through the Settlement website.  *Id.*, ¶12.  The Notice provides the necessary

18  information for Class Members to make an informed decision regarding the proposed Settlement,

19  as required by the PSLRA.  The Notice further explains that the Net Settlement Fund will be

20  distributed to eligible Class Members who submit valid and timely Proofs of Claim under the Plan

21  as described in the Notice.  The notice program here fairly apprises Class Members of their rights

22  with respect to the Settlement, is the best notice practicable under the circumstances, and complies

23  with the Court's Preliminary Approval Order, Rule 23, the PSLRA, and due process.  *See, e.g.*,

24  *Fleming*, 2022 WL 2789496, at *5-*6; *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL

25  6902856, at *4 (N.D. Cal. Nov. 21, 2016).

26

27

28

1

## VI.    CONCLUSION

2          For the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve the

3    Settlement and Plan of Allocation.

4     DATED:  July 14, 2024                    Respectfully submitted,

5                                              ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
6                                             SHAWN A. WILLIAMS
                                              DANIEL J. PFEFFERBAUM
7                                             KENNETH J. BLACK
                                              HADIYA K. DESHMUKH
8                                             JACOB G. GELMAN

9

10                                                      s/ Shawn A. Williams
                                                    SHAWN A. WILLIAMS
11
                                              Post Montgomery Center
12                                            One Montgomery Street, Suite 1800
                                              San Francisco, CA  94104
13                                            Telephone:  415/288-4545
                                              415/288-4534 (fax)
14                                            shawnw@rgrdlaw.com
                                              dpfefferbaum@rgrdlaw.com
15                                            kennyb@rgrdlaw.com
                                              hdeshmukh@rgrdlaw.com
16                                            jgelman@rgrdlaw.com

17                                            ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
18                                            MARK SOLOMON
                                              ELLEN GUSIKOFF STEWART
19                                            JASON A. FORGE
                                              655 West Broadway, Suite 1900
20                                            San Diego, CA  92101
                                              Telephone:  619/231-1058
21                                            619/231-7423 (fax)
                                              marks@rgrdlaw.com
22                                            elleng@rgrdlaw.com
                                              jforge@rgrdlaw.com
23
                                              Lead Counsel for Lead Plaintiff
24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LABATON KELLER SUCHAROW
CAROL C. VILLEGAS
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/883-7524 (fax)
cvillegas@labaton.com

Counsel for Employees' Retirement System of the
State of Rhode Island

VANOVERBEKE, MICHAUD & TIMMONY,
P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel