ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
KENNETH J. BLACK (291871)
HADIYA K. DESHMUKH (328118)
JACOB G. GELMAN (344819)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com
jgelman@rgrdlaw.com
        – and –
MARK SOLOMON (151949)
ELLEN GUSIKOFF STEWART (144892)
JASON A. FORGE (181542)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
elleng@rgrdlaw.com
jforge@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re APPLE INC. SECURITIES LITIGATION | Case No. 4:19-cv-02033-YGR |
| | CLASS ACTION |
| This Document Relates To: | LEAD COUNSEL'S NOTICE OF MOTION, MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4), AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| ALL ACTIONS. | |
| | DATE:  September 17, 2024 |
| | TIME:   2:00 p.m. |
| | CTRM: 1, 4th Floor |
| | JUDGE: Honorable Yvonne Gonzalez Rogers |

4879-4273-3774.v1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................3

II.     PROCEDURAL AND FACTUAL BACKGROUND...........................................5

III.    THE REQUESTED FEE IS FAIR AND REASONABLE....................................6

      A.      A Reasonable Percentage of the Settlement Fund Is the Appropriate
            Method for Awarding Attorneys' Fees in Common Fund Cases ..........................6

      B.      The Requested Fee Is Consistent with the Benchmark in the Ninth Circuit
            and Warrants Approval .......................................................................................8

            1.      Lead Counsel Achieved an Excellent Result for the Class........................9

            2.      The Litigation Was Uncertain and Highly Complex ................................10

            3.      The Skill Required and Quality of Work ..................................................12

            4.      The Contingent Nature of the Fee and the Financial Burden
               Carried by Lead Counsel .......................................................................13

            5.      Awards Made in Similar Cases Support the Fee Request.........................14

            6.      The Class's Reaction to Date Supports the Fee Request ..........................14

            7.      A Lodestar Crosscheck Confirms that the Requested Fee Is
               Reasonable ...........................................................................................15

IV.     PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD
      BE APPROVED .................................................................................................18

V.      LEAD PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C.
      §78u-4(a)(4) IS REASONABLE ........................................................................19

VI.     CONCLUSION...................................................................................................19

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

**CASES**

5
*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ...................................................................10

6

7
*Andrews v. Plains All Am. Pipeline L.P.*,
    2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) .........................................8, 14, 15

8

9
*Baird v. BlackRock Institutional Tr. Co.*,
    2021 WL 5113030 (N.D. Cal. Nov. 3, 2021) .............................................7

10
*Barbosa v. Cargill Meat Sols. Corp.*,
    297 F.R.D. 431 (E.D. Cal. 2013) ..............................................................18

11

12
*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).................................................................................6

13
*Cheng Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)...........................................10, 16

14

15
*Evanston Police Pension Fund v. McKesson Corp.*,
    No. 3:18-cv-06525, ECF 291 (N.D. Cal. July 14, 2023) ..........................8

16

17
*Farrell v. Bank of Am. Corp., N.A.*,
    827 F. App'x 628 (9th Cir. 2020) .............................................................15

18

19
*Fleming v. Impax Laby's Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022)...........................................16, 19

20
*Franco v. Ruiz Food Prods., Inc.*,
    2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ..........................................18

21

22
*Hatamian v. Advanced Micro Devices, Inc.*,
    2018 WL 8950656 (N.D. Cal. Mar. 2, 2018).............................................15, 19

23
*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),

24
    *aff'd sub nom., Hefler v. Pekoc*,

25
    802 F. App'x 285 (9th Cir. 2020) .................................................... *passim*

26
*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)..................................................................................9

27

28

LEAD COUNSEL'S NOT OF MOT, MOT FOR AN AWARD OF ATTYS' FEES & EXPS, & AWARD TO LEAD
PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4), & MEMO OF POINTS & AUTH - 4:19-cv-02033-YGR
4879-4273-3774.v1

- ii -

1

2                                                                                    **Page**

3

4    *In re Am. Apparel, Inc. S'holder Litig.*,
        2014 WL 10212865 (C.D. Cal. July 28, 2014) ...........................................................7

5    *In re Amgen Inc. Sec. Litig.*,
6        2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ..........................................................15

7    *In re Amkor Tech. Inc. Sec. Litig.*,
        2009 WL 10708030 (D. Ariz. Nov. 19, 2009) ........................................................7, 12

8    *In re Apollo Grp., Inc. Sec. Litig.*,
9        2008 WL 3072731 (D. Ariz. Aug. 4, 2008),
        *rev'd & remanded*, 2010 WL 5927988 (9th Cir. June 23, 2010)..........................12
10

11   *In re Apple Inc. Device Performance Litig.*,
        2023 WL 2090981 (N.D. Cal. Feb 17, 2023) ...........................................................8

12   *In re Bluetooth Headset Prods. Liab. Litig.*,
13       654 F.3d 935 (9th Cir. 2011) ...........................................................................6, 7

14   *In re Broiler Chicken Antitrust Litig.*,
        2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) ...........................................................10
15

16   *In re Broiler Chicken Antitrust Litig.*,
        2024 WL 3292794 (N.D. Ill. July 3, 2024)..............................................................9

17   *In re Capacitors Antitrust Litig.*,
18       2017 WL 9613950 (N.D. Cal. June 27, 2017) .............................................6, 7, 8, 17

19   *In re Capacitors Antitrust Litig.*,
        2023 WL 2396782 (N.D. Cal. Mar. 6, 2023) ...........................................................8
20

21   *In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
        2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) ...........................................................9

22   *In re Facebook Biometric Info. Priv. Litig.*,
23       522 F. Supp. 3d 617 (N.D. Cal. 2021),
        *aff'd*, 2022 WL 822923 (9th Cir. Mar. 17, 2022) .................................................17

24   *In re HP Inkjet Printer Litig.*,
25       716 F.3d 1173 (9th Cir. 2013) ...........................................................................7

26   *In re Immune Response Sec. Litig.*,
        497 F. Supp. 2d 1166 (S.D. Cal. 2007)..................................................................11
27

28

1

2                                                                                                    **Page**

3

*In re JDS Uniphase Corp. Sec. Litig.*,
    2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ...................................................................14

*In re Korean Air Lines Co. Antitrust Litig.*,
    2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ......................................................................6

*In re Lidoderm Antitrust Litig.*,
    2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) .....................................................................9

*In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,
    768 F. App'x. 651 (9th Cir. 2019) ........................................................................................6

*In re Nutanix Inc. Sec. Litig.*,
    No. 3:19-cv-01651, ECF 326 (N.D. Cal. Oct. 6, 2023) ........................................................8

*In re Omnivision Techs. Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..........................................................................8, 11

*In re Oracle Corp. Sec. Litig.*,
    2009 WL 1709050 (N.D. Cal. June 19, 2009),
    *aff'd*, 627 F.3d 376 (9th Cir. 2010) ...................................................................................13

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................................................10

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) .................................................................................................7

*In re Tesla, Inc. Sec. Litig.*,
    2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) ................................................................11, 14

*In re Tesla, Inc. Sec. Litig.*,
    No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023) ...........................................11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ........................................................................9

*In re Twitter Inc. Sec. Litig.*,
    2022 WL 17248115 (N.D. Cal. Nov. 21, 2022) .............................................................9, 17

*In re Twitter Inc. Sec. Litig.*,
    No. 4:16-cv-05314, ECF 661 (N.D. Cal. Oct. 13, 2022) ...................................................17

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) ....................................................................................16

**Page**

*In re Verifone Holdings, Inc. Sec. Litig.*,
    2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) ....................................................................17

*In re Volkswagen "Clean Diesel" Mktg.,*
    *Sales Pracs., & Prods. Liab. Litig.*,
    2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)................................................................ *passim*

*In re Wash. Mut., Inc. Sec. Litig*,
    2011 WL 8190466 (W.D. Wash. Nov. 4, 2011) ....................................................................15

*Kang v. Wells Fargo Bank, N.A.*,
    2021 WL 5826230 (N.D. Cal. Dec. 8, 2021) ........................................................................17

*Lopez v. Youngblood*,
    2011 WL 10483569 (E.D. Cal. Sept. 2, 2011)........................................................................7

*McKnight v. Uber Techs., Inc.*,
    2021 WL 4205055 (N.D. Cal. Sept. 2, 2021),
    *aff'd sub nom.*, *McKnight v. Hinojosa*,
    54 F.4th 1069 (9th Cir. 2022) ..............................................................................................17

*McPhail v. First Command Fin. Plan., Inc.*,
    2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ........................................................................19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................................15

*Ontiveros v. Zamora*,
    303 F.R.D. 356 (E.D. Cal. 2014) ........................................................................................18

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ..............................................................................................16

*Perez v. Rash Curtis & Assocs.*,
    2021 WL 4503314 (N.D. Cal. Oct. 1, 2021)........................................................................17

*Purple Mountain Tr. v. Wells Fargo Co.*,
    No. 3:18-cv-03948, ECF 243 (N.D. Cal. Sept. 26, 2023)................................................8, 16

*Redwen v. Sino Clean Energy, Inc.*,
    2013 WL 12303367 (C.D. Cal. July 9, 2013) ......................................................................18

*Savani v. URS Pro. Sols. LLC*,
    2014 WL 172503 (D.S.C. Jan. 15, 2014)..............................................................................13

LEAD COUNSEL'S NOT OF MOT, MOT FOR AN AWARD OF ATTYS' FEES & EXPS, & AWARD TO LEAD
PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4), & MEMO OF POINTS & AUTH - 4:19-cv-02033-YGR
4879-4273-3774.v1

- v -

**Page**

*Stanger v. China Elec. Motor, Inc.*,
  812 F.3d 734 (9th Cir. 2016) ...............................................................13

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...............................................................19

*Thompson v. Transamerica Life Ins. Co.*,
  2020 WL 6145104 (C.D. Cal. Sept. 16, 2020) ....................................17

*Vataj v. Johnson*,
  2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ..........................................7

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977) .................................................................6

*Vincent v. Reser*,
  2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ........................................18

*Vinh Nguyen v. Radient Pharms. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................11

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ..............................................6, 7, 8, 10

*Wing v. Asarco Inc.*,
  114 F.3d 986 (9th Cir. 1997) ...............................................................13

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(4) ...............................................................1, 2, 5, 19
  §78u-4(a)(6) ...........................................................................7

**SECONDARY AUTHORITIES**

Laarni T. Bulan & Laura E. Simmons,
  *Securities Class Action Settlements:*
  *2023 Review and Analysis* (Cornerstone Research 2024).......................10

LEAD COUNSEL'S NOT OF MOT, MOT FOR AN AWARD OF ATTYS' FEES & EXPS, & AWARD TO LEAD
PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4), & MEMO OF POINTS & AUTH - 4:19-cv-02033-YGR
4879-4273-3774.v1

- vi -

**NOTICE OF MOTION AND MOTION**

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that at 2:00 p.m. on September 17, 2024, in the Courtroom of the Honorable Yvonne Gonzalez Rogers, at the United States District Court, Northern District of California, Ronald V. Dellums Federal Building & United States Courthouse, Courtroom 1 – 4th Floor, 1301 Clay Street, Oakland, CA 94612, Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") will and hereby does respectfully move the Court on behalf of Plaintiffs' Counsel for an order awarding attorneys' fees and providing for payment of litigation expenses and an award pursuant to 15 U.S.C. §78u-4(a)(4) to Lead Plaintiff and Class Representative Norfolk County Council as Administering Authority of the Norfolk Pension Fund ("Lead Plaintiff" or "Norfolk").

This Motion is based on the following Memorandum of Points and Authorities, as well as the accompanying Declaration of Shawn A. Williams in Support of Final Approval of Class Action Settlement; Approval of Plan of Allocation; and an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Williams Declaration" or "Williams Decl."), with attached exhibits, the Declaration of Shawn A. Williams Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Lead Counsel Decl."), the Declaration of Christine M. Fox Filed on Behalf of Labaton Keller Sucharow LLP in Support of Lead Counsel's Application for an Award of Attorneys' Fees and Labaton Keller Sucharow's Expenses ("Labaton Decl."), all prior pleadings and papers in this Action, the arguments of counsel, and such additional information or argument as may be required by the Court.

A proposed Order will be submitted with Lead Counsel's reply submission on September 3, 2024, after the August 18, 2024 deadline for Class Members to object to the motion for fees and expenses has passed.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should approve as fair and reasonable Lead Counsel's application for an attorneys' fee award in the amount of 25% of the Settlement Amount, plus interest accrued thereon.

2.      Whether the Court should approve Lead Counsel's request for payment of $2,651,465.53 in litigation expenses and charges incurred by Plaintiffs' Counsel in the Action, plus interest accrued thereon.

3.      Whether the Court should award Lead Plaintiff Norfolk $29,946.40, pursuant to 15 U.S.C. §78u-4(a)(4), for its time and expenses incurred in its representation of the Class.

LEAD COUNSEL'S NOT OF MOT, MOT FOR AN AWARD OF ATTYS' FEES & EXPS, & AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4), & MEMO OF POINTS & AUTH - 4:19-cv-02033-YGR
4879-4273-3774.v1

- 2 -

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

After more than four years of hard-fought litigation, and with a trial on the horizon, Lead Counsel secured a remarkable settlement of $490,000,000 on behalf of the Class (the "Settlement").  The all-cash Settlement represents an exceptional recovery: It ranks as the third largest Private Securities Litigation Reform Act of 1995 ("PSLRA") settlement ever in this District; it ranks within the top 40 largest settlements obtained in a securities fraud class action; and it is many times greater than the average and median recoveries generally obtained in securities class action cases.[1]

At all times, Lead Counsel remained dedicated to achieving a result in the Class's best interest – and the Settlement would not have been achieved without Lead Counsel's tireless pursuit, skill, and relentless advocacy on behalf of the Class.[2]  In litigating this case, Plaintiffs' Counsel expended substantial resources – over 39,500 hours in professional time and over $2.6 million in expenses – all without any assurance of recovery.[3]  As compensation for its efforts, Lead Counsel requests that the Court award Plaintiffs' Counsel attorneys' fees consistent with the Ninth Circuit's benchmark of 25% of the Settlement Amount, plus interest earned thereon.

Lead Counsel's fee request is reasonable, particularly considering the extent of its efforts and the *ex-ante* risks of this case brought against the largest – and arguably one of the most powerful – companies on the planet.  *See generally* Williams Decl.  In particular, Lead Counsel conducted a thorough investigation, drafted the Complaint, and ultimately defeated, in part, Defendants' motion to dismiss, paving the way for nearly three years of exhaustive fact discovery

---

[1]   As measured by ISS Securities Class Action Services.  *See* Williams Decl., Ex. E (The Top 100 U.S. Class Action Settlements of All Time (as of December 31, 2023) (ISS Sec. Class Action Servs. 2024).

[2]   All capitalized terms not defined herein shall have the same meaning set forth in the Amended Stipulation of Settlement, dated May 21, 2024 (ECF 433-2) and in Lead Plaintiff's Memorandum of Points and Authorities in Support of Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Final Approval Memorandum"), filed herewith.

[3]   Prior Court-appointed lead counsel, Labaton Keller Sucharow LLP, committed over 6,800 hours and incurred costs and expenses of over $307,900.  *See* Labaton Decl., submitted herewith.

efforts, including numerous fiercely contested discovery disputes which were often litigated in parallel with substantive and dispositive motions.  Lead Counsel, among other things, obtained, reviewed, and analyzed more than 645,000 pages of documents from over 20 Apple custodians; issued over 20 subpoenas to third-parties, which culminated in the receipt and review of over 225,000 pages of documents; and conducted 12 full day depositions of current or former Apple employees.  Lead Counsel successfully moved for certification of a class of common stock investors, and later successfully expanded the class to include options investors.  Lead Counsel also conducted complex expert discovery on a variety of issues, including market efficiency, loss causation, damages, the Chinese economy, and analyst industry practices, retaining four experts, as well as investigating and challenging six experts retained by Defendants.  Lead Counsel successfully opposed Defendants' motion for summary judgment and motions to exclude or strike the opinions of Lead Plaintiff's experts, and successfully moved to strike portions of Defendants' expert opinions.

Lead Counsel was prepared to try this case to a jury, and trial preparation was well underway at the time the Settlement was reached.  In anticipation of trial, Lead Counsel, *inter alia*: (i) analyzed thousands of documents in order to select hundreds of trial exhibits; (ii) reviewed thousands of documents to identify those for use in demonstrative Fed. R. Evid. 1006 summaries; (iii) prepared deposition designations; (iv) identified Lead Counsel's trial witnesses; (v) analyzed and drafted objections to Defendants' preliminary exhibit list; (vi) researched and drafted proposed jury instructions and a verdict form; (vii) compiled witness files; (viii) held a mock trial; and (ix) researched and drafted five motions *in limine*.  At all stages of the Action, Lead Counsel exhibited diligence, hard work, and skill.

Lead Counsel's request for a fee award that is consistent with the Ninth Circuit's 25% fee benchmark in common-fund litigation is warranted here because of the outstanding recovery obtained for the Class, particularly in light of the risks that Lead Plaintiff and the Class faced in the Action.  *See generally* Williams Decl.  And, should the Court choose to conduct one, a lodestar cross-check also confirms the reasonableness of the requested fee.  The lodestar multiplier of approximately 4.4 of Plaintiffs' Counsel's time falls within the range of multipliers awarded in the

LEAD COUNSEL'S NOT OF MOT, MOT FOR AN AWARD OF ATTYS' FEES & EXPS, & AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4), & MEMO OF POINTS & AUTH - 4:19-cv-02033-YGR
4879-4273-3774.v1

- 4 -

1   Ninth Circuit.  The fee request is also supported by Lead Plaintiff, a sophisticated institution, a

2   fact that is afforded significant weight in the analysis.  *See* §III.B.6, *infra*; Declaration of Alexander

3   Younger ("Younger Decl."), ¶7, attached as Ex. A to the Williams Declaration.   Likewise,

4   Plaintiffs' Counsel's litigation expenses and charges of $2,651,465.53 (plus interest accrued

5   thereon) should be awarded in full, as they were reasonably and necessarily incurred in the

6   prosecution of the Action.  Lead Counsel Decl., Ex. C; Labaton Decl, Ex. C.  Finally, Lead Plaintiff

7   should also be awarded its time and expenses of $29,946.40 as provided by the PSLRA in

8   connection with its representation of the Class and its significant contribution to the result.  15

9   U.S.C. §78u-4(a)(4).

10          In accordance with the preliminary approval order, an estimated 27,900 Summary Notices

11  have been sent to potential Class Members and nominees.  *See* Declaration of Ross D. Murray

12  Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date

13  ("Murray Decl."), ¶9, attached as Ex. B to the Williams Declaration.  The Summary Notice advised

14  potential Class Members that Lead Counsel would apply for an award of attorneys' fees in an

15  amount not to exceed 25% of the Settlement Amount, and payment of litigation expenses in an

16  amount not to exceed $3,000,000, plus interest earned thereon, and PSLRA awards to the

17  Representative Parties not to exceed $73,000.  *See* Murray Decl., Ex. A, Summary Notice.  The

18  deadline set by the Court to object to the requested attorneys' fees and expenses has not yet passed,

19  but to date, no objections have been received.[4]   Lead Counsel respectfully submits that the

20  requested fee is fair and reasonable and that it should therefore be granted.

21  **II.      PROCEDURAL AND FACTUAL BACKGROUND**

22          Lead Counsel has invested substantial time and resources in the prosecution of the Action,

23  all in furtherance of, and resulting in, the Settlement now before this Court.  Consistent with this

24  District's Procedural Guidance for Class Action Settlements ("Northern District Guidelines"), the

25  relevant history and facts are set out in Lead Plaintiff's Final Approval Memorandum and the

26

27  ───────────────
    [4]    The deadline for the filing of objections is August 18, 2024.  Should any objections be received,
28  Lead Counsel will address them in its reply papers, due on September 3, 2024.

Williams Declaration and are not repeated here.  *See* Northern District Guidelines, Final Approval, §2 ("If the plaintiffs choose to file two separate motions, they should not repeat the case history and background facts in both motions.  The motion for attorneys' fees should refer to the history and facts set out in the motion for final approval.").

## III.    THE REQUESTED FEE IS FAIR AND REASONABLE

### A.    A Reasonable Percentage of the Settlement Fund Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[5]  Under the common fund doctrine, "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees."  *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *accord In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x. 651, 653 (9th Cir. 2019).   "'The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel.'"  *In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *2 (N.D. Cal. June 27, 2017).

Although courts have discretion to employ either the percentage of recovery or lodestar method (*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)), the Ninth Circuit has expressly and consistently approved the use of the percentage method in common-fund cases.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002); *see also In re Korean Air Lines Co. Antitrust Litig.*, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013) ("The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund

---

[5]    Citations are omitted and emphasis is added throughout unless otherwise indicated.

1   conferring benefits on a class was created through the efforts of plaintiffs' counsel."); *In re*

2   *Capacitors Antitrust Litig.*, 2017 WL 9613950, at *2 ("The percentage-of-the-fund method is

3   preferred when counsel's efforts have created a common fund for the benefit of the class."); *see*

4   *also In re Amkor Tech. Inc. Sec. Litig.*, 2009 WL 10708030, at *1 (D. Ariz. Nov. 19, 2009) (stating

5   percentage-of-recovery method most appropriate to award attorneys' fees in securities class

6   action).

7   　　　The PSLRA also contemplates that fees be awarded on a percentage basis, authorizing

8   attorneys' fees and expenses with interest to counsel that do not exceed "a reasonable percentage

9   of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C.

10   §78u-4(a)(6); *see also In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *20 (C.D.

11   Cal. July 28, 2014) ("'Congress plainly contemplated that percentage-of-recovery would be the

12   primary measure of attorneys' fees awards in federal securities class actions.'"); *In re Rite Aid*

13   *Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("[T]he percentage-of-recovery method was

14   incorporated in the [PSLRA].").

15   　　　The rationale for compensating counsel on a percentage basis in common fund cases is

16   sound.  "[C]ourts try to . . . [tie] together the interests of class members and class counsel" by

17   "tether[ing] the value of an attorneys' fees award to the value of the class recovery. . . .  The more

18   valuable the class recovery, the greater the fees award. . . .  And vice versa."  *In re HP Inkjet*

19   *Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013).

20   　　　Use of the percentage-of-recovery method is particularly appropriate in common fund

21   cases like this because "the benefit to the class is easily quantified."  *Bluetooth*, 654 F.3d at 942;

22   *Baird v. BlackRock Institutional Tr. Co.*, 2021 WL 5113030, at *6-*7 (N.D. Cal. Nov. 3, 2021)

23   (applying percentage of the fund method and lodestar crosscheck); *Vataj v. Johnson*, 2021 WL

24   5161927, at *8 (N.D. Cal. Nov. 5, 2021) (same).  Conversely, the Ninth Circuit has recognized

25   that the lodestar method creates the perverse incentive for counsel to "expend more hours than

26   may be necessary on litigating a case."  *Vizcaino*, 290 F.3d at 1050 n.5; *see also Bluetooth*, 654

27   F.3d at 942; *Lopez v. Youngblood*, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011) ("'[I]n

28

practice, the lodestar method is difficult to apply [and] time consuming to administer.'") (quoting *Manual for Complex Litigation (Fourth)* §14.121 (2004)).

## B. The Requested Fee Is Consistent with the Benchmark in the Ninth Circuit and Warrants Approval

Consistent with the Ninth Circuit's "benchmark" in common fund cases, Lead Counsel seeks a fee of 25% of the Settlement Fund.  *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *1 (N.D. Cal. Mar. 17, 2017) ("*Volkswagen* Fee Order"); *see also In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *3 ("Courts in the Ninth Circuit applying the 'percentage of the fund' approach use a twenty-five percent benchmark."). Adjustments to the Ninth Circuit benchmark may be made upon consideration of the following factors:

> (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check.

*Volkswagen* Fee Order, 2017 WL 1047834, at *1 (citing *Vizcaino*, 290 F.3d at 1048-52).

Though the benchmark 25% is the starting point, in fact, "in most common fund cases, the award exceeds that benchmark."  *In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008).  Lead Counsel's 25% fee request is well within the range of (or indeed, below) percentage fees that courts in this Circuit have awarded in other complex class actions.  *See, e.g., Purple Mountain Tr. v. Wells Fargo Co.*, No. 3:18-cv-03948, ECF 243 at 7 (N.D. Cal. Sept. 26, 2023) (approving fee of 25% of $300 million settlement); *Evanston Police Pension Fund v. McKesson Corp.*, No. 3:18-cv-06525, ECF 291 at 1 (N.D. Cal. July 14, 2023) (approving 25% fee of approximately $140,000,000 net Settlement Amount); *In re Nutanix Inc. Sec. Litig.*, No. 3:19-cv-01651, ECF 326 at 7 (N.D. Cal. Oct. 6, 2023) (approving 25% fee of $71,000,000 fund); *In re Capacitors Antitrust Litig.*, 2023 WL 2396782, at *1-*2 (N.D. Cal. Mar. 6, 2023) (approving cumulative 31% award of total $604,550,000 settlement); *In re Apple Inc. Device Performance Litig.*, 2023 WL 2090981, at *16 (N.D. Cal. Feb 17, 2023) (awarding 26% fee in $310 million settlement); *Andrews v. Plains All Am. Pipeline L.P.*, 2022 WL 4453864, at *4 (C.D. Cal. Sept.

20, 2022) (awarding 32% of $230 million settlement); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *1-*3 (N.D. Cal. Sept. 20, 2018) (awarding one-third of $104.75 million settlement); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533, at *1 (N.D. Cal. Aug. 3, 2016) (awarding 27.5% of $576,750,000 settlement); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *8 (N.D. Cal. Apr. 3, 2013) (awarding 28.6% on $1.08 billion settlement); *see also In re Twitter Inc. Sec. Litig.*, 2022 WL 17248115, at *2 (N.D. Cal. Nov. 21, 2022) (awarding 22.5% fee on $809.5 million securities settlement).

A comparison to other cases, however, is merely the starting point. In setting a fee award here, the most important facts for this Court are the results and risks of this case, which exceed other cases in almost all respects. The monetary result speaks for itself: This is the third largest PSLRA recovery ever in this District and in the top 40 securities class action recoveries of all time. As for the risks, Lead Counsel here did not have the luxury of piggybacking on a prior admitted fraud, financial restatement, or parallel governmental investigation. To the contrary, Lead Counsel successfully litigated this case on a single actionable false statement against the most valuable company on the planet, notwithstanding the serious risk of no recovery at all. This supports an award at the higher end of the range of awarded fee percentages. *In re Broiler Chicken Antitrust Litig.*, 2024 WL 3292794, at *2 (N.D. Ill. July 3, 2024) (awarding 30% fee of $181 million settlement and recognizing that a case "without the benefit of a prior government investigation increases the amount of work necessary to litigate the case and decreases the chance of success").

As discussed below, the various factors to be considered by the Court, including the outstanding result achieved and the substantial risks, support the reasonableness of the requested 25% benchmark fee award in this case.

### 1.     Lead Counsel Achieved an Excellent Result for the Class

Courts have consistently recognized that the result achieved is "the most critical factor" to consider in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom.*, *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). In fact, clients care most about results and would willingly pay, and are financially better off paying, a larger fee for a great result than a lower fee

1   for a poor outcome.  *See In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *3 (N.D. Ill.

2   Dec. 1, 2021) ("Clients generally want to incentivize their counsel to pursue every last settlement

3   dollar . . . .").

4          Here, against substantial risks, Lead Counsel obtained an excellent recovery for the Class,

5   both in terms of overall amount ($490,000,000) and as a percentage of the estimated recoverable

6   damages at trial (approximately 20%).   While "[a] 10% recovery of estimated damages is a

7   favorable outcome in light of the challenging nature of securities class action cases," *Cheng*

8   *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019), so this Settlement,

9   representing approximately 20% of the potentially recoverable damages, goes well beyond that.

10  Indeed, this recovery is 10 times the median percentage recovery for cases settled with estimated

11  damages of over $1 billion.[6]  The outstanding result obtained for the Class here strongly supports

12  Lead Counsel's fee request and merits an appropriate fee that encourages counsel to seek excellent

13  results.

14                 **2.       The Litigation Was Uncertain and Highly Complex**

15         The "complexity of the issues and the risks" undertaken are also important factors in

16  determining a fee award.  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *see also*

17  *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance.").  "'[I]n general, securities actions

18  are  highly  complex  and . . .  securities  class  litigation  is  notably  difficult  and  notoriously

19  uncertain.'"  *Hefler*, 2018 WL 6619983, at *13; *Rentech, Inc.*, 2019 WL 5173771, at *6 ("In

20  general, securities fraud class actions are complex cases that are time-consuming and difficult to

21  prove.").  Indeed, "[t]o be successful, a securities class-action plaintiff must thread the eye of a

22  needle made smaller and smaller over the years by judicial decree and congressional action."

23  *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).  For these

24

25

---

26  [6]    *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2023 Review*
     *and Analysis* (Cornerstone Research 2024) at 6 (finding median settlements as a percentage of
27  estimated damages was 2.0% in 2023 for cases involving estimated damages of over $1 billion),
     attached as Exhibit C to the Williams Decl.
28

1    reasons, in securities class actions, fee awards often exceed the 25% benchmark recognized in the

2    Ninth Circuit.  *Omnivision*, 559 F. Supp. 2d at 1047.

3            Despite the ultimate success, counsel assumed significant risk at every procedural step of

4    the litigation.  *See generally* Williams Decl.  Twice Defendants sought outright dismissal of the

5    Action.  Lead Plaintiff prevailed on only one of multiple false statements alleged which set the

6    stage for discovery and subsequent certification of the Class.  Defendants urged the Court to

7    dismiss the case at summary judgment, proffering novel defenses, challenging Lead Plaintiff's

8    theory of the case and their experts' analyses, as well as presenting contrary evidence (supported

9    by their own expert declarations).  Together with their motion for summary judgment, Defendants

10   also moved to exclude or strike the testimony of two of Lead Plaintiff's experts.

11           At trial, the case would have turned largely on the credibility of Cook, one of the world's

12   most respected business figures, and other witnesses who remained employed by Apple, retained

13   relationships with Defendants, were represented by Defendants' Counsel, or were Defendants

14   themselves.  Trial would also have included dueling expert testimony concerning highly technical

15   issues of materiality, loss causation, and damages with highly accredited experts on both sides.

16   Defendants needed to only defeat one element of Lead Plaintiff's claims to prevail, and there was

17   a significant risk the jury would agree with Defendants' experts and find no liability, no damages,

18   or award far less than Lead Plaintiff sought to recover.  *See, e.g.*, *Vinh Nguyen v. Radient Pharms.*

19   *Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (noting, in securities class action, that

20   "[p]roving and calculating damages required a complex analysis, requiring the jury to parse

21   divergent positions of expert witnesses in a complex area of the law.  The outcome of that analysis

22   is inherently difficult to predict and risky."); *see also In re Tesla, Inc. Sec. Litig.*, 2022 WL

23   1497559 (N.D. Cal. Apr. 1, 2022) and *In re Tesla, Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC, ECF

24   671 (N.D. Cal. Feb. 3, 2023) (jury verdict in favor of securities fraud defendants where court had

25   previously granted summary judgment in favor of plaintiffs on falsity and recklessness).

26           Throughout the duration of the litigation, Defendants raised numerous challenges disputing

27   the falsity of their alleged misstatements and their scienter.  *See In re Immune Response Sec. Litig.*,

28   497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("[T]he issue[] of scienter . . . [is] complex and

1    difficult to establish at trial.").  Indeed, Defendants were expected to argue that even if Cook failed

2    to disclose known information about weak demand in Greater China, the same information was

3    incorporated into the Company's disappointing guidance – and thus investors could not have been

4    misled nor did Cook have the requisite scienter.

5           And even if Lead Plaintiff obtained a favorable verdict at trial, it would ***still*** have faced the

6    risk of partial or complete reversal in post-trial proceedings.  *See, e.g.*, *In re Apollo Grp., Inc. Sec.*

7    *Litig.*, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) (granting motion for a judgment as a matter of

8    law, overturning $277 million verdict in favor of plaintiffs based on insufficient evidence of loss

9    causation), *rev'd & remanded*, 2010 WL 5927988 (9th Cir. June 23, 2010).

10          There existed a significant risk that class-wide recoverable damages would have been far

11   less than $490 million, including the risk of ***no*** recovery at all.  *Volkswagen* Fee Order, 2017 WL

12   1047834, at *2 ("Class Counsel 'recognize there are always uncertainties in litigation.'  It is

13   possible that 'a litigation Class would receive less or nothing at all, despite the compelling merit

14   of its claims . . . .'").  And any recovery absent the Settlement "'would come years in the future

15   and at far greater expense to the . . . Class.'"  *Id.*  The $490 million Settlement, achieved in the

16   face of these significant risks, amply supports the requested 25% fee award.  *See, e.g.*, *Amkor*,

17   2009 WL 10708030, at *2 (approving fee award of 25% where class counsel had "borne all the

18   ensuing risk – including the risk of affirmance on Plaintiffs' appeal, surviving dispositive motions,

19   obtaining class certification, proving liability, causation and damages, prevailing in a 'battle of the

20   experts,' and litigating the Action through trial and possible appeals").

21                   **3.      The Skill Required and Quality of Work**

22          The quality of Lead Counsel's representation further supports the reasonableness of the

23   requested fee.  As detailed in the Williams Declaration, Lead Counsel successfully litigated the

24   case through several potentially dispositive motions.  Robbins Geller is a nationally recognized

25   leader in securities class actions and complex litigation.  *See* Williams Decl., ¶160; Lead Counsel

26   Decl., Ex. H.  The firm also has a track record of trying cases, or settling cases at a premium.

27   Clients retain Lead Counsel to benefit from its experience and resources in order to obtain the

28

1   largest possible recovery for the class in question.  Here, Lead Counsel's skill and experience

2   brought about an exceptional result, further supporting the requested fee award.

3           The standing of opposing counsel should also be weighed because such standing reflects

4   the challenge faced by Lead Counsel.  *See, e.g.*, *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir.

5   1997).  Defendants chose well-known and highly capable representation by a team of experienced

6   attorneys from well-regarded defense firms Orrick, Herrington & Sutcliffe LLP and Paul, Weiss,

7   Rifkind, Wharton & Garrison LLP.   These firms spared no effort or expense on behalf of

8   Defendants in their zealous defense.  Lead Counsel's ability to obtain a favorable result for the

9   Class while litigating against these formidable defense firms and their well-financed clients further

10  evidences the quality of Lead Counsel's work and weighs in favor of awarding the requested fee.

11              **4.      The Contingent Nature of the Fee and the Financial Burden
                          Carried by Lead Counsel**

12          "It is an established practice to reward attorneys who assume representation on a contingent

13  basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all."

14  *Volkswagen* Fee Order, 2017 WL 1047834, at *3.  This "practice encourages the legal profession

15  to assume such a risk and promotes competent representation for plaintiffs who could not

16  otherwise hire an attorney."  *Id.*   "This incentive is especially important in securities cases."

17  *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016).

18          "The risk of no recovery in complex cases of this sort is not merely hypothetical."  *Savani*

19  *v. URS Pro. Sols. LLC*, 2014 WL 172503, at *5 (D.S.C. Jan. 15, 2014).  There have been many

20  class actions in which counsel for the plaintiffs took on the risk of pursuing claims on a

21  contingency basis, expended thousands of hours and dollars, yet received no remuneration

22  whatsoever despite their diligence and expertise.  *Supra*, §III.B.2.  For example, in *In re Oracle*

23  *Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010),

24  a case that Robbins Geller prosecuted, the court granted summary judgment to defendants after

25  eight years of litigation, during which plaintiff's counsel incurred over $7 million in out-of-pocket

26  expenses and worked over 100,000 hours, representing a lodestar of approximately $40 million (in

27  2010 dollars).  In another Ninth Circuit PSLRA case, after a lengthy trial involving securities

28

1    claims against Tesla, the jury reached a verdict in Elon Musk's favor – despite the Court previously

2    granting plaintiffs summary judgment on the issue of whether Musk recklessly made false

3    statements, evincing the strength of the claims.  *See Tesla*, 2022 WL 1497559, and *Tesla*, No.

4    3:18-cv-04865-EMC, ECF 671; *see also In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556

5    (N.D. Cal. Nov. 27, 2007) (same).

6           Here, counsel have received no compensation during the course of the Action, and

7    Plaintiffs' Counsel have invested over 39,500 hours for a total lodestar of $27,783,481.50 and

8    incurred substantial expenses in prosecuting this case to successful resolution.   Additional

9    (uncompensated) work in connection with the Settlement and claims administration already has

10   been undertaken and will be required going forward.  Any fee award has always been contingent

11   on the result achieved and on this Court's discretion.  Indeed, the only certainty was that there

12   would be no fee without a successful result.  Lead Counsel committed significant resources of both

13   time and money to vigorously prosecute this Action, and successfully brought it to a highly

14   favorable conclusion for the Class's benefit.  *See generally* Williams Decl.  The contingent nature

15   of counsel's representation thus supports approval of the requested fee.  *See Plains All Am.*, 2022

16   WL 4453864, at *3 (in awarding 32% fee on $230 million settlement in case "litigated . . . to the

17   point of trial," court found "the substantial risks borne by Class Counsel in pursuing this class

18   action for seven years with no guarantee of recovering fees or litigation expenses also militates in

19   favor of finding the requested fee award reasonable").

20              **5.      Awards Made in Similar Cases Support the Fee Request**

21          Lead Counsel's fee request is also supported by awards made in similar cases.  As discussed

22   at length in §III.B, *supra* with numerous examples, the 25% benchmark fee request is within the

23   range of fee percentages awarded in comparable settlements.

24              **6.      The Class's Reaction to Date Supports the Fee Request**

25          Courts within the Ninth Circuit also consider the reaction of the class when deciding

26   whether to award the requested fee.  *See, e.g.*, *Volkswagen* Fee Order, 2017 WL 1047834, at *4

27   (considering that "[o]nly four Class Members out of a class of approximately 475,000 objected to

28   the proposed fee award" to be "a strong, positive response from the class, supporting Class

1   Counsel's requested fees"); *In re Wash. Mut., Inc. Sec. Litig*, 2011 WL 8190466, at \*2 (W.D.

2   Wash. Nov. 4, 2011) (noting, in approving fee request, that "no substantive objections to the

3   amount of fees and expenses requested were filed").  While some objections are to be expected in

4   a large class action such as this, "the absence of a large number of objections to a proposed class

5   action settlement raises a strong presumption that the terms of a proposed class settlement action

6   are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D.

7   523, 529 (C.D. Cal. 2004); *Hefler*, 2018 WL 6619983, at \*15 ("As with the Settlement itself, the

8   lack of objections from institutional investors 'who presumably had the means, the motive, and

9   the sophistication to raise objections' [to the attorneys' fee] weighs in favor of approval.").

10        Class Members were informed that Lead Counsel would move the Court for an award of

11   attorneys' fees in an amount not to exceed 25% of the Settlement Amount and for payment of

12   litigation expenses not to exceed $3,000,000.  Class Members were also advised of their right to

13   object to the fee and expense request, and that such objections are to be filed with the Court no

14   later than August 18, 2024.  While this deadline has not yet passed, to date, not a single objection

15   has been received.  Should any objections be received, Lead Counsel will address them in its reply

16   papers.  Finally, Lead Plaintiff negotiated the 25% fee at the outset of its leadership and has

17   approved the percentage sought here.  Younger Decl., ¶7.  Lead Plaintiff's approval supports

18   granting the requested fee.  *See Hatamian v. Advanced Micro Devices, Inc.*, 2018 WL 8950656, at

19   \*2 (N.D. Cal. Mar. 2, 2018) (approving fee where request "reviewed and approved as fair and

20   reasonable by Class Representatives, sophisticated institutional investors").

21        **7.    A Lodestar Crosscheck Confirms that the Requested Fee Is Reasonable**

22

23        To assess the reasonableness of a fee awarded under the percentage-of-the-fund method,

24   courts may (but are not required to) cross check the proposed award against counsel's lodestar.

     *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (refusing to mandate "a

25   [cross-check] requirement"); *Plains All Am.*, 2022 WL 4453864, at \*2 (finding cross check

26   unnecessary, given the circumstances); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at \*9

27   (C.D. Cal. Oct. 25, 2016) (noting that "analysis of the lodestar is not required for an award of

28

attorneys' fees in the Ninth Circuit").  When the lodestar is used as a cross check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys."  *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *accord Volkswagen* Fee Order, 2017 WL 1047834, at *5 n.5 (overruling objection that "the information provided in support of Class Counsel's lodestar amount as inadequate" because "'it is well established that "[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records"'") (alterations and ellipsis in original); *Hefler*, 2018 WL 6619983, at *14 (confirming that "'trial courts need not, and indeed should not, become green-eyeshade accountants'" in context of lodestar cross check, and noting that "the Court seeks to 'do rough justice, not to achieve auditing perfection'").

"[C]ourts 'calculate[] the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation.'"  *Rentech, Inc.*, 2019 WL 5173771, at *10 (second alteration in original) (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). In this case, the lodestar method demonstrates the reasonableness of the requested fee.  As detailed here and in the accompanying counsel declarations, over 39,500 hours of attorney and paraprofessional time were expended prosecuting the Action for the benefit of the Class.  The hours spent to obtain the results are more than reasonable.  As detailed in the Williams Declaration, there is no question that the hours expended were necessary.[7]

Counsel's hourly rates, too, are reasonable.  In fact, Lead Counsel's rates have recent judicial approval in this District.  *See Purple Mountain Tr.*, No. 3:18-cv-03948, ECF 243 (approving attorneys' fee with Robbins Geller's prevailing hourly rates); *Fleming v. Impax Laby's*

---

[7]    The actual realized multiplier has already, and will continue to decline as Lead Counsel devotes additional attorney time to preparing final approval materials as well as overseeing the processing of claims and the distribution of the Net Settlement Fund to Class Members with valid claims.  No additional counsel fees will be sought for such work.

*Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (finding Robbins Geller's "billing rates in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation"); *see also Volkswagen* Fee Order, 2017 WL 1047834, at *6 (approving hourly rates of $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals in 2017). Counsel's lodestar, derived by multiplying the hours spent on the Action by each attorney and litigation professional by their current hourly rates, is $27,783,481.50.

The requested fee of 25% represents a multiplier of 4.4 on Plaintiffs' Counsel's lodestar, which is comfortably within the range of lodestar multipliers that courts in this Circuit regularly approve. *See, e.g.*, *Perez v. Rash Curtis & Assocs.*, 2021 WL 4503314, at *5 (N.D. Cal. Oct. 1, 2021) (approving a multiplier of 4.8). *In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *6 (noting, "[i]n the Ninth Circuit, a lodestar multiplier of around 4 times has frequently been awarded in common fund cases"); *see In re Twitter Inc. Sec. Litig.*, No. 4:16-cv-05314, ECF 661 at 2 (N.D. Cal. Oct. 13, 2022), and *Twitter*, ECF 670 (N.D. Cal. Nov. 21, 2022) (awarding fee representing a 4.14 multiplier); *Hefler*, 2018 WL 6619983, at *14 (awarding fee representing a 3.22 multiplier); *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021) (awarding fee in $650 million common fund settlement representing 4.71 multiplier finding that "the results obtained and the risks at trial warrant a higher-end multiplier"), *aff'd*, 2022 WL 822923 (9th Cir. Mar. 17, 2022); *McKnight v. Uber Techs., Inc.*, 2021 WL 4205055, at *7 (N.D. Cal. Sept. 2, 2021) (noting that a "fee award [that] results in a multiplier of 4.14" is not "remarkable" when "the settlement represented an 'excellent result' for the class"), *aff'd sub nom.*, *McKnight v. Hinojosa*, 54 F.4th 1069 (9th Cir. 2022); *Kang v. Wells Fargo Bank, N.A.*, 2021 WL 5826230, at *18 (N.D. Cal. Dec. 8, 2021) (awarding class counsel fee representing multiplier of 5.2); *Thompson v. Transamerica Life Ins. Co.*, 2020 WL 6145104, at *4 (C.D. Cal. Sept. 16, 2020) ("The Court's lodestar cross-check analysis of the fee award yields a current multiplier of 4.2, which is within the range of appropriate multipliers recognized by this Court and by other courts within the Ninth Circuit."); *In re Verifone Holdings, Inc. Sec. Litig.*, 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014) ("[A]lthough the lodestar cross-check . . . reveals a high multiplier – 4.3 . . . the Court finds that the multiplier here is acceptable in light of the very substantial risks involved."). As more

1    fully explained in the Williams Declaration, given the risk undertaken by Lead Counsel and the

2    results achieved for the Class, a multiplier of 4.4 is reasonable here.

3         Each of the relevant factors supports the award of attorneys' fees of 25% of the Settlement

4    Fund.  Accordingly, this fee request is reasonable and should be approved.

5    **IV.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND
           SHOULD BE APPROVED**

6

7         Plaintiffs' Counsel further requests an award in the amount of $2,651,465.53 from the

8    common fund for litigation expenses incurred in prosecuting and resolving the Action on behalf

9    of the Class.[8]  *Vincent v. Reser*, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013) ("Attorneys

10   who create a common fund are entitled to the reimbursement of expenses they advanced for the

11   benefit of the class.").  The expenses are detailed in the accompanying counsel declarations.  The

12   amount sought is less than the $3 million amount published in the Summary Notice, to which no

13   Class Member has objected to date.  *See* Murray Decl., Ex. A, Summary Notice.  The expenses

14   sought are also of the type that are routinely charged to hourly paying clients and, therefore, are

15   properly paid out of the common fund.  *Hefler*, 2018 WL 6619983, at *16 ("An attorney is entitled

16   to 'recover as part of the award of attorney's fees those out-of-pocket expenses that would

17   normally be charged to a fee paying client.'"); *Vincent*, 2013 WL 621865, at *5 (granting award

18   of costs and expenses for "'three experts and the mediator, photocopying and mailing expenses,

19   travel expenses, and other reasonable litigation related expenses'"); *see also Redwen v. Sino Clean

20   Energy, Inc.*, 2013 WL 12303367, at *9-*10 (C.D. Cal. July 9, 2013); *Barbosa v. Cargill Meat

21   Sols. Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013).

22

23

---

24   [8]    These include expenses associated with, among other things, experts and consultants, service
     of process, online legal and factual research, travel, and mediation.  A large component of
25   Plaintiffs' Counsel's expenses is for the costs of experts and consultants, all of whom were
     qualified and necessary to litigate this Action.  Courts in this Circuit regularly approve
26   reimbursements for expert fees.  *See, e.g.*, *Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801,
     at *22 (E.D. Cal. Nov. 27, 2012) (noting expert fees are among the "types of fees . . . routinely
27   reimbursed"); *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (granting expense
     reimbursement to class counsel and noting "itemized costs relating to . . . expert fees" were
28   "reasonable litigation expenses").

1

2

**V.     LEAD PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE**

3

4

5

6

7

8

9

10

11

Lead Plaintiff Norfolk seeks an award of $29,946.40 pursuant to 15 U.S.C. §78u-4(a)(4), in connection with its representation of the Class, as detailed in the Younger Declaration.  Under the PSLRA, a class representative may seek an award of reasonable costs and expenses directly relating to the representation of the class.  *See* 15 U.S.C. §78u-4(a)(4); *see also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (holding that named plaintiffs are eligible for "reasonable" payments as part of a class action settlement).  Factors to consider include, "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation'" among others.  *Id.* (ellipse in original).

12

13

14

15

16

17

18

19

20

21

22

23

24

Consistent with the Northern District Guidelines, Lead Plaintiff has submitted a declaration herewith setting forth the time and effort it spent monitoring the Action and directing Lead Counsel, including discussing litigation strategy, collecting and reviewing materials for discovery, providing deposition testimony, and discussing settlement negotiations and case filings with Lead Counsel.  *See* Younger Decl., ¶¶3-5.  Lead Plaintiff was actively involved through every step of the Action, and accordingly, requests an award of $29,946.40 pursuant to 15 U.S.C. §78u-4(a)(4), in connection with its representation of the Class.  *Impax*, 2022 WL 2789496, at *10 (approving awards for time spent working with counsel "reviewing documents, providing input into the case's prosecution, and engaging in meetings, phone conferences, and correspondence with Lead Counsel"); *McPhail v. First Command Fin. Plan., Inc.*, 2009 WL 839841, at *8 (S.D. Cal. Mar. 30, 2009) (noting "requested reimbursement is consistent with payments in similar securities cases"); *see also Hatamian*, 2018 WL 8950656, at *4 (granting PSLRA award of $14,875.00 to KBC for approximately 106 hours devoted to the litigation).

25

**VI.     CONCLUSION**

26

27

28

Lead Counsel obtained an exceptional result for the Class.  Based on the foregoing, Lead Plaintiff and Lead Counsel respectfully request that the Court: (i) award Plaintiffs' Counsel attorneys' fees of 25% of the Settlement Amount and payment of $2,651,465.53 in litigation

LEAD COUNSEL'S NOT OF MOT, MOT FOR AN AWARD OF ATTYS' FEES & EXPS, & AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4), & MEMO OF POINTS & AUTH - 4:19-cv-02033-YGR
4879-4273-3774.v1

- 19 -

1  expenses, plus interest on both amounts at the same rate as earned by the Settlement Fund, and

2  (ii) an award to Lead Plaintiff of $29,946.40, as permitted by the PSLRA.

3  DATED:  July 14, 2024                   Respectfully submitted,

4                                          ROBBINS GELLER RUDMAN
                                             & DOWD LLP
5                                          SHAWN A. WILLIAMS
                                           DANIEL J. PFEFFERBAUM
6                                          KENNETH J. BLACK
                                           HADIYA K. DESHMUKH
7                                          JACOB G. GELMAN

8

9                                                  s/ Shawn A. Williams
                                           SHAWN A. WILLIAMS
10

11                                         Post Montgomery Center
                                           One Montgomery Street, Suite 1800
12                                         San Francisco, CA  94104
                                           Telephone:  415/288-4545
13                                         415/288-4534 (fax)
                                           shawnw@rgrdlaw.com
14                                         dpfefferbaum@rgrdlaw.com
                                           kennyb@rgrdlaw.com
15                                         hdeshmukh@rgrdlaw.com
                                           jgelman@rgrdlaw.com

16                                         ROBBINS GELLER RUDMAN
                                             & DOWD LLP
17                                         MARK SOLOMON
                                           ELLEN GUSIKOFF STEWART
18                                         JASON A. FORGE
                                           655 West Broadway, Suite 1900
19                                         San Diego, CA  92101
                                           Telephone:  619/231-1058
20                                         619/231-7423 (fax)
                                           marks@rgrdlaw.com
21                                         elleng@rgrdlaw.com
                                           jforge@rgrdlaw.com

22                                         Lead Counsel for Lead Plaintiff

23                                         LABATON KELLER SUCHAROW
24                                         CAROL C. VILLEGAS
                                           140 Broadway
25                                         New York, NY 10005
                                           Telephone: 212/907-0700
26                                         212/883-7524 (fax)
                                           cvillegas@labaton.com

27
                                           Counsel for Employees' Retirement System of the
28                                         State of Rhode Island

LEAD COUNSEL'S NOT OF MOT, MOT FOR AN AWARD OF ATTYS' FEES & EXPS, & AWARD TO LEAD
PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4), & MEMO OF POINTS & AUTH - 4:19-cv-02033-YGR                - 20 -
4879-4273-3774.v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VANOVERBEKE, MICHAUD & TIMMONY,
P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel