ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
KENNETH J. BLACK (291871)
HADIYA K. DESHMUKH (328118)
JACOB G. GELMAN (344819)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
kennyb@rgrdlaw.com
hdeshmukh@rgrdlaw.com
jgelman@rgrdlaw.com
     – and –
MARK SOLOMON (151949)
ELLEN GUSIKOFF STEWART (144892)
JASON A. FORGE (181542)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
elleng@rgrdlaw.com
jforge@rgrdlaw.com

Lead Counsel for Lead Plaintiff
[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re APPLE INC. SECURITIES LITIGATION | Case No. 4:19-cv-02033-YGR |
| | CLASS ACTION |
| This Document Relates To: | REPLY MEMORANDUM IN FURTHER SUPPORT OF: (1) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, AND (2) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4) |
|     ALL ACTIONS. | |
| | DATE:    September 17, 2024 |
| | TIME:    2:00 p.m. |
| | CTRM:  1, 4th Floor |
| | JUDGE:  Hon. Yvonne Gonzalez Rogers |

4860-4709-4240.v6

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT .........................................................................................................2

        A.      The Notice Provided to the Class Met All Due Process Requirements..................2

        B.      The Reaction of the Class Strongly Supports Approval of the Settlement
                and Plan of Allocation ............................................................................................2

        C.      The Reaction of the Class Strongly Supports Approval of the Requested
                Attorneys' Fees and Expenses .................................................................................5

III.    THE SOLE OBJECTION TO COUNSEL'S FEE SHOULD BE OVERRULED ............6

        A.      The Objection Does Not Comply with the Court Ordered Notice
                Requirements ............................................................................................................6

        B.      The Objection Conflates Market Losses with Fraud Related Damages and
                in Doing so Mischaracterizes the Extraordinary Recovery Obtained Here ............7

        C.      The Objection Mischaracterizes Lead Plaintiff's and Class Counsel's Role
                in Defeating Apple's Motion to Dismiss .................................................................9

        D.      The Objection Distorts Lead Counsel's Staffing of the Litigation and
                Attorney Billing Rates ...........................................................................................11

        E.      The Objection Provides No Persuasive Basis to Depart from the Ninth
                Circuit Benchmark .................................................................................................13

IV.     CONCLUSION....................................................................................................14

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

5

*AdTrader, Inc. v. Google LLC,*
   2022 WL 16579324 (N.D. Cal. Nov. 1, 2022) ...................................................................4

6

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.,*
7
   77 F.4th 74 (2nd Cir. 2023) ...........................................................................................11

8

*Chun-Hoon v. McKee Foods Corp.,*
   716 F. Supp. 2d 848 (N.D. Cal. 2010) .............................................................................4
9

*Churchill Vill. LLC v. Gen. Elec.,*
10
   361 F.3d 566 (9th Cir. 2004) ...........................................................................................4

11

*DeMira v. Heartland Empl. Serv.,*
12
   2014 WL 1026282 (N.D. Cal. Mar. 13, 2014)...............................................................13

13

*Destefano v. Zynga, Inc.,*
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ..........................................................2, 4, 5
14

*Dura Pharms., Inc. v. Broudo,*
15
   544 U.S. 336 (2005)..........................................................................................................8

16

*Evanston Police Pension Fund v. McKesson Corp.,*
17
   No. 3:18-cv-06525 (N.D. Cal. July 14, 2023) ..........................................................2, 14

18

*Fleming v. Impax Lab'ys Inc.,*
   2022 WL 2789496 (N.D. Cal. July 15, 2022)..........................................................2, 12
19

*Foster v. Adams & Assocs., Inc.,*
20
   2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ...................................................................4

21

*Hanlon v. Chrysler Corp.,*
22
   150 F.3d 1011 (9th Cir. 1998) ......................................................................................2, 3

23

*Hensley v. Eckert,*
   461 U.S. 424 (1983)..........................................................................................................8

24

*In re Anthem, Inc. Data Breach Litig.,*
25
   2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ......................................................8, 11, 13

26

*In re Celera Corp. Sec. Litig.,*
   2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ...............................................................13
27

28

**Page**

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3rd Cir. 2001) ...........................................................................................8

*In re Envision Healthcare Corp. Sec. Litig.*,
  2024 WL 1270007 (M.D. Tenn. Mar. 21, 2024) .............................................................14

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  999 F.3d 1247 (11th Cir. 2021) .......................................................................................7

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) .................................................................4

*In re Nat'l Collegiate Athletic Ass'n Antitrust Litig.*,
  2017 WL 6040065 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019)....10, 13

*In re NFL "Sunday Ticket" Antitrust Litig.*,
  2024 WL 3628118 (C.D. Cal. Aug. 1, 2024)...................................................................11

*In re Nuvelo, Inc. Sec. Litig.*,
  2011 WL 2650592 (N.D. Cal. July 6, 2011) ....................................................................6

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................................3

*In re PFA Insurance Marketing Litig.*,
  2024 WL 1145209 (N.D. Cal. Feb. 5, 2024) .................................................................6, 7

*In re Rambus Inc. Derivative Litig.*,
  2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ....................................................................1

*In re Regulus Therapeutics Inc. Sec. Litig.*,
  2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ..................................................................5

*In re Tesla, Inc. Sec. Litig.*,
  No. 3:18-cv-04865-EMC (N.D. Cal. 2023) ...................................................................11

*In re Twitter Inc. Sec. Litig.*,
  2022 WL 17248115 (N.D. Cal. Nov. 21, 2022) ..............................................................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)................................................................12

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2017 WL 2212780 (N.D. Cal. May 17, 2017)..................................................................4

Page

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2019 WL 2077847 (N.D. Cal. May 10, 2019) ..................................................................5

*In re Wells Fargo S'holder Derivative Litig.*,
2019 WL 5458022 (N.D. Cal. Oct. 24, 2019) .................................................................13

*Mo. v. Jenkins*,
491 U.S. 274 (1989) .......................................................................................................12

*Moore v. Verizon Commc'ns Inc.*,
2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) .............................................................6, 7

*Morrison v. Ross Stores, Inc.*,
2022 WL 17592437 (N.D. Cal. Feb. 16, 2022) ...............................................................3

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................................3

*Nevarez v. Forty Niners Football Co.*,
474 F. Supp. 3d 1041 (N.D. Cal. 2020) .........................................................................11

*Pearlstein v. BlackBerry Ltd.*,
2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ..............................................................14

*Perez v. Cate*,
632 F.3d 553 (9th Cir. 2011) .........................................................................................13

*Purple Mountain Tr. v. Wells Fargo & Co.*,
2023 WL 11872699 (N.D. Cal. Sept. 26, 2023) ..................................................2, 12, 14

*Rodman v. Safeway Inc.*,
2018 WL 4030558 (N.D. Cal. Aug. 23, 2018) ................................................................8

*Schuchardt v. Law Off. of Rory W. Clark*,
314 F.R.D. 673 (N.D. Cal. 2016) ..................................................................................12

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .......................................................................................13

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78u-4(a)(4) ......................................................................................1, 5, 8, 14

1

2                                                                                                **Page**

3

Federal Rules of Civil Procedure

4        Rule 23 ...........................................................................................................................2

         Rule 23(c)(2)(B)............................................................................................................2

5        Rule 23(e)(2) .................................................................................................................2

6    **SECONDARY AUTHORITIES**

7
Laarni T. Bulan and Laura E. Simmons,

8        *Securities Class Action Settlements – 2023 Review and Analysis*,

         (Cornerstone Research 2024)........................................................................................9

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1       Lead Plaintiff and Class Representative Norfolk County Council as Administering

2 Authority of the Norfolk Pension Fund ("Lead Plaintiff" or "Norfolk") and Lead Counsel Robbins

3 Geller Rudman & Dowd LLP ("Robbins Geller") respectfully submit this reply memorandum in

4 further support of: (1) Final Approval of the Class Action Settlement and Approval of the Plan of

5 Allocation (ECF 437) ("Final Approval Motion"); and (2) an Award of Attorneys' Fees and

6 Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Attorneys' Fees

7 Motion") (ECF 438).[1]

8 **I.     INTRODUCTION**

9       The August 18, 2024 deadline for objections to the $490,000,000 all-cash Settlement has

10 passed.  ECF 435 at 10.  More than ***one million*** notices have been distributed to members of the

11 Class.  Not a single one has lodged an objection to the Settlement, or the Plan of Allocation, or to

12 Plaintiffs' Counsel's expense application, or to an award to Lead Plaintiff pursuant to 15 U.S.C.

13 §78u-4(a)(4).  Four valid requests for exclusion from the Class have been received, representing

14 just 3,200 shares (or less than 0.0001% of Apple common stock's public float).  A single deficient

15 objection concerning Plaintiffs' Counsel's fee request was filed by a putative Class Member who

16 purports to have purchased 100 common shares.  That objection is premised on a fundamental

17 misapprehension of the securities laws, as discussed below.  The lack of significant objections "'is

18 perhaps the most significant factor to be weighed in considering [the Settlement's] adequacy,'" *In*

19 *re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009)[2]; is a testament

20 to the fairness, adequacy, and reasonableness of the proposed Settlement, the proposed Plan of

21 Allocation, and Lead Counsel's fee and expense application; and further underscores why each

22 warrants the Court's approval.

23

24

25

26 ───────────────
[1]   Unless otherwise noted, all capitalized terms not defined herein have the same meaning set
27 forth in the Amended Stipulation of Settlement dated May 21, 2024 (ECF 433-2).

[2]   Citations are omitted and emphasis is added throughout unless otherwise indicated.
28

1   **II.     ARGUMENT**

2       **A.     The Notice Provided to the Class Met All Due Process Requirements**

3           The comprehensive notice program implemented here was "the best notice that [was]

4   practicable under the circumstances, including individual notice to all members who [could] be

5   identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see* ECF 437, §V.  This notice

6   program, which was approved by the Court and found to be "constitutionally sound," ECF 435 at

7   7, is very similar to those approved and employed in other securities class actions in this District.

8   *See, e.g.*, *Purple Mountain Tr. v. Wells Fargo & Co.*, 2023 WL 11872699, at *3 (N.D. Cal. Sept.

9   26, 2023); *Evanston Police Pension Fund v. McKesson Corp.*, No. 3:18-cv-06525-CRB, ECF 290,

10  ¶12 (N.D. Cal. July 14, 2023); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *3 (N.D. Cal.

11  July 15, 2022).

12          To date, the Claims Administrator has mailed or emailed more than ***one million*** Summary

13  Notices and 351 Claim Packages to potential Class Members and nominees; the Summary Notice

14  was published in *The Wall Street Journal* and transmitted over *Business Wire*; and all pertinent

15  information has been posted and made generally available on the website dedicated to the

16  Settlement.  *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and

17  Requests for Exclusion Received to Date ("Murray Decl.") (ECF 439-2), ¶¶5-12, and

18  Supplemental Declaration of Ross D. Murray Regarding Notice Dissemination and Requests for

19  Exclusion Received to Date ("Murray Suppl. Decl."), ¶4, submitted herewith.

20          Based upon these factors, the Court should conclude that Rule 23 and due process have

21  been satisfied as the notice provided was "'the best notice that [was] practicable,'" as Rule 23

22  requires and due process demands.  *See also, e.g.*, *Destefano v. Zynga, Inc.*, 2016 WL 537946, at

23  *6-*7 (N.D. Cal. Feb. 11, 2016) (finding individual notice mailed to class members combined with

24  summary publication constituted "the best form of notice available under the circumstances").

25      **B.     The Reaction of the Class Strongly Supports Approval of the
              Settlement and Plan of Allocation**

26

27          Federal Rule of Civil Procedure 23(e)(2) and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011

28  (9th Cir. 1998), provide factors district courts are to consider when assessing a class action

settlement.   As explained in both Lead Plaintiff's Final Approval Motion (ECF 437), and Unopposed Motion for Preliminary Approval of Proposed Settlement ("Preliminary Approval Motion") (ECF 421), the proposed Settlement readily satisfies the relevant factors, as the Settlement resulted from Lead Plaintiff's and Lead Counsel's diligent representation of the Class throughout this years-long litigation; the Settlement was negotiated at arm's length while the parties were preparing for trial and with the assistance of an experienced mediator; and the Settlement provides an excellent recovery considering the complexity of the case, the costs, risk, and delay of further litigation.  *See* ECF 421, §IV; ECF 437, §III.C.; *see also* ECF 435 at 4-6 (evaluating *Hanlon* factors and finding "they indicate the settlement here is fair and reasonable").

Similarly, Lead Plaintiff's Preliminary Approval Motion and Final Approval Motion explained that the Plan of Allocation ("Plan") provides for an equitable allocation of the Net Settlement Fund among all Authorized Claimants.  *See* ECF 421, §IV.C.5.; ECF 437, §IV.  Under the Plan, each Class Member will receive a proportional share of the Net Settlement Fund depending on the amount and type of Apple Securities purchased or sold, as well as when such transactions took place.

In determining whether to approve the Settlement and Plan, the Court may now assess the final *Hanlon* factor as the August 18, 2024 objection deadline has passed: "the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.  That reaction – as measured by objections and requests for exclusion –further supports final approval of the Settlement.  *See id.* at 1027 ("[T]hat the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.").

Not a single Class Member has objected to the Settlement.  This "unanimous, positive reaction to the Proposed Settlement is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  Simply stated, this absence of objections "'raises a strong presumption that the terms of [the] proposed class settlement action are favorable to the class members.'" *Morrison v. Ross Stores, Inc.*, 2022 WL 17592437, at *5 (N.D. Cal. Feb. 16, 2022) (Gonzalez Rogers, J.) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)).  In fact,

"'[c]ourts have repeatedly recognized that the absence of a large number of objections [much less any objections] to a proposed class action settlement raises a strong presumption that the terms of a proposed class [action] settlement . . . are favorable to the class members.'" *Foster v. Adams & Assocs., Inc.*, 2022 WL 425559, at *6 (N.D. Cal. Feb. 11, 2022); *accord AdTrader, Inc. v. Google LLC*, 2022 WL 16579324, at *5 (N.D. Cal. Nov. 1, 2022) ("'A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.'"). Similarly, the lack of objections to the proposed Plan of Allocation provides firm support for its approval. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005) ("The fact that there has been no objection to this plan of allocation favors approval of the Settlement.").

In addition, Lead Counsel received only 19 requests for exclusion from the Settlement, none of which explained why the putative Class Members chose not to participate and only four of which provide the identifying and trading information required by the Preliminary Approval Order.[3] Such a low number of exclusions –representing an approximately 0.0019% opt out rate – likewise supports the presumption that the Settlement is favorable to Class Members. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 2212780, at *10 (N.D. Cal. May 17, 2017) (finding that 640 putative class members representing 0.11% opting out "strongly favors final approval"), *aff'd*, 746 F. App'x 655 (9th Cir. 2018); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (holding a 4.86% opt-out rate "strongly support[ed]" approval); *see also Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (approving a settlement with 500 opt-outs from a 90,000-person class). Further, "a low number of exclusions representing a small fraction of shares in the public float also supports the reasonableness" of the Settlement. *Destefano*, 2016 WL 537946, at *14. The four valid requests for exclusion amount to only approximately 3,200 shares out of a float of over ***4.73 billion*** (as

---

[3]   15 of the 19 requests for exclusion received either fail to provide the necessary trading data to establish the sender's membership in the Class, as required by the Preliminary Approval Order, or were sent by individuals explicitly stating that they had no relevant class period transactions – making their submission unnecessary.  ECF 435 at 9.

measured on January 2, 2019, the last day of the Class Period), or a mere 0.0001% of the public float.  Finally, the fact that **none** of the requests for exclusion came from an institutional investor is persuasive evidence that the Settlement is fair.  *See In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) ("Many potential class members are sophisticated institutional investors; the lack of objections from such institutions indicates that the settlement is fair and reasonable.").

In short, "[t]he small number of objections" (**zero**) "and opt outs" (four) "supports that the settlement and plan of allocation are fair, reasonable, and adequate." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *3 (N.D. Cal. May 10, 2019) (approving securities fraud class action settlement where "[o]nly one class member objected to the settlement and only 16 potential class members opted out of the settlement").  The Court should therefore approve the Settlement and Plan of Allocation here.

### C.     The Reaction of the Class Strongly Supports Approval of the Requested Attorneys' Fees and Expenses

The Summary Notice (ECF 439-2, Ex. A) and the Class Action Settlement Notice ("Notice") (ECF 439-2, Ex. B) informed Class Members that Lead Counsel intended to seek a benchmark fee of 25% of the Settlement Fund and payment of litigation expenses not to exceed $3,000,000.  As explained in Lead Counsel's Attorneys' Fees Motion (ECF 438), the $490,000,000 all-cash Settlement is an excellent result given the highly complex and uncertain nature of this securities fraud class action and the potential for years of additional litigation absent the Settlement, and it required skill and high quality work to attain.

Only one individual – who has failed to even demonstrate his membership in the Class or submit a valid objection – has objected to Lead Counsel's request for attorneys' fees.  Notably, no Class Member who has confirmed its standing or complied with the Court's June 3, 2024 Preliminary Approval Order has objected to Lead Counsel's expense application or for an award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4).  Again, the lack of any objection from any individual or institution that has evidenced their status as a class member weighs strongly in favor of both approval and granting of the requested attorneys' fees and expenses.  *See Destefano*, 2016

WL 537946, at *18 ("[T]he lack of objection by any Class Members also supports the 25 percent fee award."); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011) (finding only one objection to fee request to be "a strong, positive response from the class").

## III.   THE SOLE OBJECTION TO COUNSEL'S FEE SHOULD BE OVERRULED

There have been no objections to the Settlement, the Plan of Allocation, counsel's litigation expenses and costs, or the request for an award to the Lead Plaintiff.  Lead Counsel has received a single objection to the request for attorneys' fees.  ECF 440.  It should be overruled.  First, it fails to comply with the Court-ordered requirements for filing a valid objection.  Second, it fails to establish that the objector is even a member of the Class.  Third, the objection is devoid of merit.  The objection acknowledges that attorneys' fees of 25% of the common fund is the benchmark in the Ninth Circuit (Obj. at 5) but its arguments for departure from the benchmark are not supported by law or fact.  Indeed, the objection is riddled with material errors of fact and law, which only confirms the objection's lack of merit.

### A.   The Objection Does Not Comply with the Court Ordered Notice Requirements

The one objection to the request for attorneys' fees lacks the information necessary to identify the objector or comply with this Court's order.  The Notice requires that any objection to the Settlement must include the objector's "name, address, email address, telephone number, and your signature (even if you are represented by counsel)."  *See* Notice at §16.  The objection fails to provide any personally identifying information of the objector other than his name and city.  It does not include the objector's street address, email address, telephone number, or even a signature.  Because of these defects, and the objector's apparent desire to remain essentially anonymous, the Court should overrule the objection for failing to meet the Notice requirements. *See In re PFA Insurance Marketing Litig.*, 2024 WL 1145209, at *19-*21 (N.D. Cal. Feb. 5, 2024) (Gonzalez Rogers, J.) (overruling objections for failing to follow the procedures in the notice for establishing class membership) (citing *Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *9 (N.D. Cal. Aug. 28, 2013) (overruling objections for failure to comply with notice requirements, including name, address, and phone number)).  Indeed, such identification requirements have been

considered effective in "expos[ing] objections that are lawyer driven and filed with ulterior motives." *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1265 (11th Cir. 2021) (the court has discretion to impose requirement on objectors, including requiring objector's name, address, and signature).

The objector also fails to establish that he is even a member of the Class. *PFA*, 2024 WL 1145209, at *19 ("Because Li failed to establish that he is a class member, he lacks standing to object to the SA."); *Moore*, 2013 WL 4610764, at *9 ("[A] court need not consider the objections of non-class members because they lack standing."). Only individuals who purchased Apple common stock during the Class Period and suffered damages are members of the Class. *See* Notice at §4. Here, the objector submitted a single trading confirmation indicating a purchase of 100 shares of Apple stock at $168.00 on December 10, 2018. ECF at 440, ECF Page 12 of 33. Under the Plan of Allocation, in order to show damages, the objector must have held those shares beyond January 2, 2019, and then sold them at a loss prior to April 2, 2019.[4] If the objector held those shares past April 2, 2019, in accordance with the PSLRA 90-day statutory look back, he would not have been damaged under the Plan and would lack standing to object. *See* Notice at 10. The failure to provide the necessary trading documents precludes a finding that the objector is a member of the Class.

**B.** **The Objection Conflates Market Losses with Fraud Related Damages and in Doing so Mischaracterizes the Extraordinary Recovery Obtained Here**

As one purported basis for objecting to Lead Counsel's request for compensation, the objection conflates a $75 billion loss in Apple's market capitalization on January 2, 2019, with potentially recoverable damages in this securities fraud action, thus mischaracterizing the $490 million settlement as miniscule. Obj. at 3-4 (counsel "fail[ed] to recover even 1% of the alleged

---

[4]   The average closing price of Apple stock was below $168.00 on only 21 days during the look-back period. *See* Notice at 14 (average closing price above $168 from February 4 to April 2, 2019).

1    damages").[5] This characterization is not just wrong, it is misguided.  This argument is presumably

2    an attack on the "first and 'most critical factor [in determining attorneys' fees is the degree of

3    success obtained]'" *i.e.*, the results achieved.  *Rodman v. Safeway Inc.*, 2018 WL 4030558, at *3

4    (N.D. Cal. Aug. 23, 2018) (quoting *Hensley v. Eckert*, 461 U.S. 424, 436 (1983)); *see also In re*

5    *Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *9 (N.D. Cal. Aug. 17, 2018).

6          But the conflation of market capitalization losses and fraud-related damages represents a

7    fundamental misunderstanding of applicable law and economic principles, and must be rejected.

8    *See In re Cendant Corp. Litig.*, 264 F.3d 201, 242 (3rd Cir. 2001) (rejecting an objector's

9    overstated calculation of damages finding that "[a] stock's drop in market capitalization is not a

10   proper measure of damages in securities cases under the statutory scheme laid out in §10(b) or

11   §11").  First, market capitalization losses on January 2, 2019 have no relation to the damages in

12   this case, but rather represent the decline in value of **all** Apple common stock held by all Apple

13   shareholders on that day, the vast majority of whom are not even Class Members.  This action

14   involves only Apple common stock purchases during an approximately two month Class Period

15   (*i.e.*, from November 2, 2018 to January 2, 2019), which represents just a fraction of the total

16   shares in the market.  *See* ¶¶102, 117, 119, 166.[6]  Second, the securities laws permit recovery only

17   of economic harm causally linked to the alleged misrepresentation – here concerning Apple's

18   iPhone business in China – not the entire drop in the stock price.  *See Dura Pharms., Inc. v. Broudo*,

19   544 U.S. 336, 345 (2005) (the securities laws do "not . . . provide investors with broad insurance

20   against market losses, but . . . protect[s] them against those economic losses that misrepresentations

21   actually cause").  Thus, the objection ignores issues of loss causation and damages which were

22

23

---

24   [5]   Arguing that the settlement fund of $490 million is small in comparison to Apple's trillion

25   dollar market cap is akin to saying Mark Zuckerberg's wealth pales in comparison to the United
States national debt.

26   [6]   All "¶_" and "¶¶__" references are to the Declaration of Shawn A. Williams in Support of

27   Final Approval of Class Action Settlement; Approval of Plan of Allocation; and an Award of
Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4)

28   ("Williams Decl.") (ECF 439).

1  particularly significant in this case where portions of the market loss were related to non-fraud

2  factors and not the alleged misrepresentations.  Williams Decl., ¶¶16-17, 19, 149.[7]

3       The recovery here represents approximately 20% of potentially recoverable damages of

4  just over $2 billion and far exceeds (**by a factor of 10**) median recovery rates in other securities

5  class action settlements with potential damages over $1 billion.  Laarni T. Bulan and Laura E.

6  Simmons, *Securities Class Action Settlements – 2023 Review and Analysis*, at 6, fig. 5

7  (Cornerstone Research 2024).  *See* ECF 439-3.  In the three decades since the passage of the

8  PSLRA, the $490 million recovered in this case is the third largest securities class action recovery

9  in the Northern District of California, and the fifth largest in the entire Ninth Circuit.  *See* ECF

10  439-5.  Notably, according to the Stanford Law School Securities Class Action Clearinghouse,

11  since the passage of the PSLRA, the Ninth Circuit has the most PSLRA cases (1,568, *see*

12  https://bit.ly/3TgjLov) second only to the Second Circuit (1,942, *see* https://bit.ly/4dTVblB).

13  **C.    The Objection Mischaracterizes Lead Plaintiff's and Class Counsel's Role in Defeating Apple's Motion to Dismiss**

14

15       The objection erroneously asserts that "all of the work by class counsel came after the case

16  had already survived a motion to dismiss."  *See* Obj. at 2, 4-5, 8.  According to the objection,

17  because Robbins Geller was appointed Lead Counsel "AFTER" the motion to dismiss was

18  decided, Robbins Geller assumed "very little risk" and the $490 million recovery was "a bird in

19  the hand," essentially "a gust of wind [that] blew a golden apple into their lap."  *Id.* at 2, 4.  While

20  the risk associated with the litigation is a factor in assessing the reasonableness of attorneys' fees,

21  these contentions are demonstrably incorrect.  First, in April 2019, on behalf of City of Roseville,

22  Robbins Geller investigated and filed the initial complaint (alleging the appropriate class period)

23  giving rise to the Action.  ¶25.  Second, in June 2019, Robbins Geller, on behalf of Norfolk,

24  researched and filed a motion for the appointment of Norfolk as lead plaintiff, arguing that the

25  claims and class period alleged by the City of Roseville that had been thoughtfully and carefully

26  _____

27  [7]   Defendants' damages expert testified that a large portion of the price decline on January 3, 2019, was the result of "losses not casually linked to the alleged misrepresentation by Mr. Cook" regarding China.  Expert Report of Professor Steven Grenadier dated June 10, 2022.  ECF 301-9

28  at 11.

1   researched and prepared were the appropriate claims, as opposed to those in a later filed action

2   alleging a much longer class period and more wide-ranging claims.  ¶27.  Third, that analysis by

3   Robbins Geller precipitated the Court's August 2019 Order allowing Norfolk, despite not being

4   appointed lead plaintiff, to submit briefing in connection with Defendants' motion to dismiss, an

5   unprecedented, but prescient ruling.  That effort occurred more than *a year before* the June 2020

6   appointment of Norfolk as the lead plaintiff and Robbins Geller as Lead Counsel.  ¶¶28, 31.

7          Similarly, the objection incorrectly asserts that the initial lead plaintiff was replaced due to

8   a "lack of standing."  Obj. at 4.  That too is wrong.  In fact, Norfolk and Robbins Geller were

9   appointed because they had skillfully identified the claims, the Class Period, the theory of fraud,

10   and presented the legal arguments which the Court found to be sufficient to meet the standards of

11   the PSLRA.  ¶¶33-35.  To be sure, the Court found that it was based on the procedural history of

12   the case prior to the issuance of the order on motion to dismiss, including Norfolk's motion for

13   appointment as lead plaintiff and Norfolk's and Robbins Geller's theory that survived the motion

14   to dismiss that led to the transition of leadership.  *See* Williams Decl., ¶33; June 2020 Order at 46.

15          The objection's material factual errors unsurprisingly result in the faulty conclusion that

16   "class counsel assumed very little risk" after being appointed lead counsel (Obj. at 2, 5), and fails

17   to acknowledge the significant risk assumed by Lead Counsel in prosecuting this Action through

18   highly contentious discovery, two motions for class certification, summary judgment and *Daubert*

19   motions, and up to the brink of trial.  ¶¶113-153.[8]  The objection says nothing of the risks and out

20   of pocket costs attendant with pursuing this Action for more than four years against one of the

21   largest companies in the world with unlimited resources at its disposal – on a contingency basis.

22   *In re Nat'l Collegiate Athletic Ass'n Antitrust Litig.*, 2017 WL 6040065, at *5 (N.D. Cal. Dec. 6,

23   2017) (recognizing the burden of pursuing litigation "[with] no money . . . coming in [and] pay[ing]

24   . . . salaries [and] cover[ing] . . . expenses . . . while assuming the risk that there might never be

25

26   ─────────────────────
[8]    The objection demonstrates that the objector simply did not carefully review or consider the
27   publicly available Settlement documents.  The facts it simply gets wrong or overlooks altogether
     are all detailed in the Notice and Settlement documents – the purpose of which is to inform the
28   Class of the scope and benefits of the Settlement.

*any* []payment") (emphasis in original), *aff'd*, 768 F. App'x 651 (9th Cir. 2019).[9]   The objection says nothing of the trial risk avoided in the achievement of nearly half a billion dollar recovery. *In re Tesla, Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC (N.D. Cal. 2023) (defendants Elon Musk and Tesla defeat securities class action claim after jury trial); *see also In re NFL "Sunday Ticket" Antitrust Litig.*, 2024 WL 3628118 (C.D. Cal. Aug. 1, 2024) (granting defendants' motion for judgment as a matter of law following $4 billion jury verdict).   Nor does the objection credit the high caliber of counsel representing Apple.   Orrick Herrington and Paul Weiss are two of the most accomplished firms in the world, not to mention Apple's in-house legal department of reportedly over 900 professionals.[10]   Accordingly, far from being gifted a "bird in the hand," it was Lead Counsel's tenacious effort that saw this Action from commencement through resolution.

### D.   The Objection Distorts Lead Counsel's Staffing of the Litigation and Attorney Billing Rates

The objection accuses Lead Counsel of inflating its lodestar with the billing rates of two staff attorneys.   Obj. at 10.   The objection takes issue with staff attorneys being billed at $470 per hour and speculates that they are actually paid only $60 per hour and their billings may be marked up by 1,000%.   These assertions are both baseless and wrong.[11]   *Id.* at 10.   The two staff attorneys who worked on this matter are both full-time, salaried, and benefitted lawyers at Robbins Geller.[12]   Supplemental Williams Decl., ¶2.   This is not like *Anthem*, 2018 WL 3960068, at *15 and *Nevarez*

---

[9]   *See also Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.,* 77 F.4th 74 (2nd Cir. 2023) (class decertified following more than 12 years of litigation and three trips to the Second Circuit and argument before the Supreme Court, after plaintiffs' counsel incurred many millions in expenses, and worked over 100,000 hours, representing a greater than $60 million lodestar).

[10]   https://www.cnbc.com/2019/06/10/apple-ex-counsel-bruce-sewell-describes-negotiations-with-google.html.   Notably, Apple's in-house counsel appeared at nearly every Court hearing, company deposition, and settlement conference.

[11]   A generous reading of the objection would indicate that Mr. Ramirez has confused the staff attorneys here for "contract attorneys," the latter often referring to attorneys hired through outside vendors at an hourly rate.

[12]   The two staff attorneys are both seasoned lawyers who contributed to prosecution of the claims. Both Timothy Coleman and Amy Francisco are graduates of Fordham University School of Law, 1987 and 2006, respectively.   *See* accompanying Supplemental Declaration of Shawn A. Williams ("Supplemental Williams Decl."), ¶2.

1  *v. Forty Niners Football Co.*, 474 F. Supp. 3d 1041 (N.D. Cal. 2020) (where the plaintiffs billed

2  contract lawyers out at substantial markup to their actual hourly cost).  Notably, the staff attorney

3  billing rates here are consistent with such rates approved in similar actions in the District.  *See*

4  *Wells Fargo & Co.*, 2023 WL 11872699, at *5 (approving rates up to $450 per hour for staff

5  attorneys) (*See Purple Mountain Trust v. Wells Fargo & Co.*, ECF 232-1 at 10).

6        The objection further complains that counsel inflated its lodestar with a 13:3 ratio of

7  partners to associates, which suffers from an equally flawed analysis.  *See* Obj. at 10.  As depicted

8  in Exhibit A to the Declaration of Shawn A. Williams Filed on Behalf of Robbins Geller in Support

9  of Application for Award of Attorneys' Fees and Expenses (ECF 438-1), nearly three-quarters

10  (72%) of Lead Counsel's total hours (32,659) were performed by only ***three*** partners (Williams,

11  Pfefferbaum and Black totaling 15,076 hours), two associates (Gelman and Deshmukh totaling

12  5,700 hours), and two staff attorneys, Coleman and Francisco (totaling 2,650 hours).  The ten other

13  partners who billed on the case combined for fewer than 2,500 hours and four of those ten partners

14  had virtually *de minimis* time (Bays, Daley, Gronborg, and Sanchez totaling 84 hours).  Thus, far

15  from inflating the lodestar with an outsized ratio of partners to associates, the reality is that the

16  lion's share of the work was done by just three partners supported by four attorneys at lower billing

17  rates.  *See id.*[13]

18        The objection suggests, again without authority, that non attorneys should not be included

19  in the lodestar.  Obj. at 10.  Yet, the Supreme Court and numerous cases say otherwise.  *See Mo.*

20  *v. Jenkins*, 491 U.S. 274, 285 (1989) ("Clearly, a 'reasonable attorney's fee' cannot have been

21  meant to compensate only work performed personally by members of the bar.  Rather, the term

22  must refer to a reasonable fee for the work product of an[y] attorney.  Thus, the fee must take into

---

23

24  [13]   The billing rates for partners and associates in the case are also in line with the market rates in the Northern District of California.  The submission of "'evidence of prevailing market rates may

25  include . . . examples of rates awarded to counsel in previous cases.'"  *Fleming*, 2022 WL 2789496, at *8 (quoting *Schuchardt v. Law Off. of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016)).

26  In *Fleming*, Judge Gilliam found rates of $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates to be in line with prevailing rates in the district.  2022 WL 2789496, at *8-

27  *9 (citing *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving even higher rates of $275 to $1,600 for

28  partners, $150 to $790 for associates, and $80 to $490 for paralegals as reasonable)).

1  account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and

2  others whose labor contributes to the work product for which an attorney bills her client . . . .”);

3  *see also Perez v. Cate*, 632 F.3d 553, 557 (9th Cir. 2011) (interpreting attorney's fees to include

4  paralegal services); *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *10 (N.D. Cal. Nov. 20,

5  2015) (including approving the hours from document clerks and economic analysts in the lodestar

6  calculation).

7       Finally, in a footnote copied wholesale from an article, the objection compounds its other

8  inaccuracies by interjecting rank speculation about the role of one of the counsel in the case,

9  VanOverbeke, Michaud & Timmony, P.C. (“VMO”).   ECF 440 at 9 n.2.   Throughout this

10  litigation, VMO has served as counsel to named plaintiff, City of Roseville.  VMO worked closely

11  with City of Roseville by, among other things, filing the initial complaint in this case in

12  2019 (ECF 1), reviewing case filings, fulfilling its document discovery obligations, and attending

13  City of Roseville's deposition as counsel to the fund.

14     **E.    The Objection Provides No Persuasive Basis to Depart from the Ninth
              Circuit Benchmark**

15

16       As discussed above, this Court has discretion to employ the percentage of recovery method

17  to determine the reasonableness of attorneys' fees.  *In re Wells Fargo S'holder Derivative Litig.*,

18  2019 WL 5458022 (N.D. Cal. Oct. 24, 2019).  When applying the percentage method, 25% is the

19  “starting point.”  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).  The Ninth

20  Circuit has rejected the argument that fee award percentages must decrease as the fund increases.

21  *See Anthem*, 2018 WL 3960068, at *15 (highlighting the perverse incentive of such a rule) (citing

22  *Vizcaino*, 290 F.3d at 1047).  “‘[A] percentage award in a megafund case can be 25% or even as

23  high as 30%-40%.’”  *Anthem*, 2018 WL 3960068, at *15.  Here, the objection cites no basis other

24  than its own erroneous assessment of Lead Counsel's work in the case.  It ignores that the risk,

25  contingent nature, and complexity of this case and others resulting in large recovery can warrant

26  20%-25% attorneys' fees awards.  *See NCAA Antitrust Litig.*, 2017 WL 6040065, at *2 (wherein

27  Judge Claudia Wilkin acknowledged that “‘in most common fund cases the award exceeds the

28  [25%] benchmark’”) (quoting *DeMira v. Heartland Empl. Serv.*, 2014 WL 1026282, at *1 (N.D.

1   Cal. Mar. 13, 2014) (comparing fee awards in common funds of comparable size)).  As detailed in

2   the Attorneys' Fee Motion at 8-9, courts in this District (and others) have more recently awarded

3   between 20%-25% in large common fund cases.  *See Wells Fargo & Co.*, 2023 WL 11872699, at

4   *4 (awarding "attorneys' fees of 25% of the [$300 million] Settlement Amount . . . is fair and

5   reasonable under the 'percentage-of-recovery' method given the substantial risks of non-recovery,

6   the contingent nature of the representation, awards in similar cases, the time and effort involved,

7   and the result obtained for the Class"); *In re Twitter Inc. Sec. Litig.*, 2022 WL 17248115, at *1

8   (N.D. Cal. Nov. 21, 2022) (finding 22.5% fee award in $809.5 million securities settlement "is

9   appropriate, fair, and reasonable under the 'percentage-of-recovery' method given the substantial

10  risks of non-recovery, the contingent nature of the representation, awards in similar cases, and the

11  time and effort involved"); *Evanston Police Pension Fund v. McKesson Corp.*, No. 3:18-cv-06525,

12  ECF 291 at 1 (N.D. Cal. July 14, 2023) (approving 25% fee of approximately $140,000,000 net

13  Settlement Amount); *see also In re Envision Healthcare Corp. Sec. Litig.*, 2024 WL 1270007, at

14  *1 (M.D. Tenn. Mar. 21, 2024) (awarding Class Counsel attorneys' fees of 30% of the $177.5

15  million Settlement Amount and finding "the amount of fees awarded is fair and reasonable under

16  the 'percentage-of-recovery' method considering . . . the . . . result achieved . . .; the contingent

17  nature of Class Counsel's representation; . . . [and] the quality of legal services . . . [in support of

18  the plaintiffs] appointed by the Court to represent the Class"); *Pearlstein v. BlackBerry Ltd.*, 2022

19  WL 4554858, at *10 (S.D.N.Y. Sept. 29, 2022) (finding attorneys' fee of 33-1/3% of $165 million

20  recovery reasonable under the circumstances).

21  **IV.      CONCLUSION**

22          Lead Counsel obtained an extraordinary result for the Class, and the Class agrees.  For the

23  reasons set forth above and in their previously filed briefs and declarations, Lead Plaintiff and

24  Lead Counsel respectfully request that the Court approve the proposed Settlement and Plan of

25  Allocation, as well as the request for attorneys' fees and payment of expenses, including the award

26  to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4), and overrule the objection filed by Oscar

27  Ramirez.  Proposed orders are submitted herewith.

28

1   DATED:  September 3, 2024                 Respectfully submitted,

2                                            ROBBINS GELLER RUDMAN
                                               & DOWD LLP
3                                            SHAWN A. WILLIAMS
                                             DANIEL J. PFEFFERBAUM
4                                            KENNETH J. BLACK
                                             HADIYA K. DESHMUKH
5                                            JACOB G. GELMAN

6

7                                                    s/ Shawn A. Williams
                                                   SHAWN A. WILLIAMS
8
                                             Post Montgomery Center
9                                            One Montgomery Street, Suite 1800
                                             San Francisco, CA  94104
10                                           Telephone:  415/288-4545
                                             415/288-4534 (fax)
11                                           shawnw@rgrdlaw.com
                                             dpfefferbaum@rgrdlaw.com
12                                           kennyb@rgrdlaw.com
                                             hdeshmukh@rgrdlaw.com
13                                           jgelman@rgrdlaw.com

14                                           ROBBINS GELLER RUDMAN
                                               & DOWD LLP
15                                           MARK SOLOMON
                                             ELLEN GUSIKOFF STEWART
16                                           JASON A. FORGE
                                             655 West Broadway, Suite 1900
17                                           San Diego, CA  92101
                                             Telephone:  619/231-1058
18                                           619/231-7423 (fax)
                                             marks@rgrdlaw.com
19                                           elleng@rgrdlaw.com
                                             jforge@rgrdlaw.com
20
                                             Lead Counsel for Lead Plaintiff
21
                                             LABATON KELLER SUCHAROW
22                                           CAROL C. VILLEGAS
                                             140 Broadway
23                                           New York, NY 10005
                                             Telephone: 212/907-0700
24                                           212/883-7524 (fax)
                                             cvillegas@labaton.com
25
                                             Counsel for Employees' Retirement System of the
26                                           State of Rhode Island

27

28

REPLY MEMO (1) LP'S MTN FOR FINAL APPROVAL OF CLASS ACTION STMT & PLAN OF
ALLOC, & (2) MTN FOR AWARD OF ATTYS' FEES & EXPS & TO LP - 4:19-cv-02033-YGR        - 15 -
4860-4709-4240.v6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VANOVERBEKE, MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel

REPLY MEMO (1) LP'S MTN FOR FINAL APPROVAL OF CLASS ACTION STMT & PLAN OF
ALLOC, & (2) MTN FOR AWARD OF ATTYS' FEES & EXPS & TO LP - 4:19-cv-02033-YGR
4860-4709-4240.v6

- 16 -