1

2

3

4

## UNITED STATES DISTRICT COURT

5

## NORTHERN DISTRICT OF CALIFORNIA

6

7

IN RE APPLE INC. SECURITIES LITIGATION

CASE NO.  4:19-CV-02033-YGR

8

ORDER
GRANTING MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT;

9

10

GRANTING MOTION FOR ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS; AND

11

12

JUDGMENT

Dkt. Nos. 437, 438

13

The Court previously granted a motion for preliminary approval of the Class Action

14

Settlement between lead plaintiff Norfolk County Council as Administering Authority of the Norfolk

15

Pension Fund and defendants Apple Inc., Timothy Cook, and Luca Maestri on June 3, 2024.  (Dkt.

16

No. 435.)  As directed by the Court's preliminary approval order, on July 14, 2024, plaintiffs filed

17

their motion for attorneys' fees, costs, and service awards.  (Dkt. No. 438.)  Plaintiffs also filed their

18

motion for final settlement approval on July 14, 2024.  (Dkt. No. 437.)  The Court held a hearing and

19

took arguments from the parties on September 17, 2024.

20

Having considered the motion briefing, the terms of the Settlement Agreement, the

21

objections and response thereto, the arguments of counsel, and the other matters on file in this

22

action, the Court **GRANTS** the motion for final approval.  The Court finds the settlement fair,

23

adequate, and reasonable.  The provisional appointments of the class representative and class

24

counsel are confirmed.

25

The Motion for Attorneys' Fees, Costs, and Incentive Awards is **GRANTED** with slight

26

modification.  The Court **ORDERS** that class counsel shall be paid $107,800,000 in attorneys' fees, or

27

22% of the settlement fund, and $2,651,465.53 in litigation costs, plus interest actually earned on

28

both amounts since funding.[1]  Also, lead plaintiff shall be paid $29,946.40 incentive award.

## I.   BACKGROUND

### A.   Procedural History

Plaintiffs filed the putative class action complaint on April 16, 2019 against defendants Apple Inc., Timothy Cook, and Luca Maestri alleging defendants made materially false and misleading statements and omissions about demand for the newly released iPhone and Apple's business in China.  (Dkt. No. 1.)  On June 19, 2020, the Court issued an order appointing Norfolk County Council as Administering Authority of the Norfolk Pension Fund as lead plaintiff ("Lead Plaintiff") and Robbins Geller Rudman & Dowd LLP as lead counsel ("Lead Counsel").  (Dkt. No. 113.)  On June 23, 2020, plaintiffs filed the operative complaint, a revised consolidated class action complaint, alleging claims for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934. (Dkt. No. 114.)

On February 4, 2022, the Court issued an order certifying a class of purchasers or acquirers of Apple common stock and denying without prejudice the motion with respect to a proposed class of options investors.  (Dkt. No. 224.)  On March 28, 2023, the Court issued an order modifying class, granting plaintiff's motion to certify call option buyers and put option sellers as part of the class.  (Dkt. No. 352.)  After more motion practice, the parties eventually reached a settlement to resolve all claims in the operative complaint, with the assistance of an experienced mediator, Hon. Layn R. Phillips (Ret.) of Phillips ADR ("Judge Phillips").  (Dkt. No. 421 at 3.)

On March 15, 2024, Lead Plaintiff moved for preliminary approval on its settlement agreement with defendants.  The Court heard argument on the motion on May 7, 2024.  (Dkt. No. 429.)  At the hearing, the Court noted several issues with the initial settlement agreement, including an overly complex summary notice, overly broad claim release language, insufficient explanation for plaintiff's attorneys' fees request, and procedural concerns regarding the timeline for fund reallocation and the selection of plaintiff's claims administrator.  (*Id.*).  On May 21, 2024, plaintiff

---

[1] The award on interest will be limited to the interest generated on those amounts during the time in which they are held in escrow during the settlement process. (Dkt. No. 433-2, ¶ 6.1.)

1  submitted a supplemental brief addressing each of these issues.  The Court reviewed the

2  supplemental brief and subsequently granted preliminary approval on June 3, 2024.  (Dkt. No. 435.)

3  **B.     Terms of the Settlement Agreement**

4  Under the terms of the Settlement Agreement, defendants will pay $490 million into a

5  common settlement fund, without admitting liability.  (Dkt. No. 433-2 at 3.) This amount includes

6  attorneys' fees and costs, the cost of class notice and settlement administration, and the class

7  representative's service award.  (*Id*. at ¶¶ 1.19, 1.34, 1.35, 2.)

8  *1.     Attorneys' Fees and Costs*

9  Under the Settlement Agreement, plaintiff's counsel agreed to seek up to 25% of the

10  Settlement Amount ($122,500,000) in attorneys' fees and no more than $3 million in litigation costs,

11  plus interest on its fees and expenses generated during the time in which the amounts are held in

12  escrow during the settlement process.  (Dkt. No. 433 at 6.)  The common settlement fund also

13  includes a provision for $3.6 million in settlement administration costs; and up to $73,000 to be paid

14  to Lead Plaintiff, former lead plaintiff the Employees' Retirement System of the State of Rhode

15  Island, and City of Roseville Employees' Retirement System as an incentive award in exchange for a

16  general release of all claims against defendants.  (Dkt. No. 421 at 16.)

17  *2.     Class Relief*

18  After deductions from the common fund for fees, costs, and service incentive awards, the

19  remaining amount will remain to be distributed among the participating class members.  Class

20  members will be paid according to the following plan: Lead Counsel, along with plaintiffs' damages

21  expert, calculated the potential amount of estimated alleged artificial inflation (or deflation, in the

22  case of Apple put options) in Apple publicly traded securities proximately caused by defendants'

23  alleged false and misleading statements and material omissions. Based on the formula in the plan, a

24  "Recognized Loss Amount" will be calculated for each transaction in Apple publicly traded

25  securities.  (*Id*. at 17-18; Dkt. No. 433-2 at ¶ 1.23.)  The net settlement fund will be distributed to

26  authorized claimants on a pro rata basis based on the type of security transacted and the relative size

27  of their claims. (Dkt. No. 433-2 at ¶5.11.)  The amount of the payment will depend on, among other

28  factors, how many class members file valid claims and the aggregate value of the claims represented

United States District Court
Northern District of California

by valid and acceptable proofs of claim.  (Dkt. No. 433-2 at ¶ 2.9.)  Once notice and administration expenses, taxes, tax expenses, and Court-approved attorneys' fees and expenses have been paid from the settlement fund, the remaining amount will be distributed pursuant to the Court-approved plan of allocation to claimants who are entitled to a distribution of at least $10.00.  (*Id*. at ¶ 5.11.)  The Settlement Agreement provides that no amount will revert to defendants.  (Dkt. No. 433-2 at ¶ 5.12.)

### 3.    *Cy Pres/Remainder*

If there is any balance remaining in the settlement fund after at least six months from the initial date of distribution, Lead Counsel will reallocate the balance among claimants who negotiated the checks sent to them in the initial distribution and who would receive at least $10.00.  These reallocations shall be repeated until the balance remaining in the settlement fund is *de minimis* and such remaining balance shall then be donated to the Investor Protection Trust. (*Id.*)

### C.    Class Notice and Claims Administration

The Settlement Agreement is being administered by Gilardi & Co. LLC. (Dkt. No. 435 at 8.) The Claims Administrator has mailed or emailed 1,014,368 copies of the Court-approved Summary Notice to potential Class Members and their nominees who could be identified with reasonable effort.  (Dkt. No. 441-2 at 20.)  In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over Business Wire.  (*Id*.)  The Claims Administrator also provided all information regarding the Settlement online through the Settlement website at www.2019AppleSecuritiesSettlement.com, including the settlement notices, the procedures for class members to submit claims or exclude themselves, a contact information page that includes address and telephone numbers for the claim administrator and the parties, the Settlement Agreement, the signed order of preliminary approval, the claim form, and the opt-out form.  In addition, the motion for final approval and the application for attorneys' fees, costs, and incentive awards were uploaded to the website after they were filed.  The Class Administrator also operated a toll-free number for class member inquiries.

Class members were given until August 18, 2024, to object to or exclude themselves from the Settlement Agreement.  (Dkt. No. 435 at 9.)  A total of 351 claim packages were sent to potential class members and nominees by the administrator.  (Dkt. No. 439-2 at ¶¶5-12.)  Four valid requests

United States District Court
Northern District of California

1   were timely filed to opt out of the Settlement Class representing 3,200 shares.[2]  (Dkt. No. 441 at 1.)

2   **II.**    **FINAL APPROVAL OF SETTLEMENT**

3        **A.**    **Legal Standard**

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification.  Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.  *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027.  The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement.  *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

        **B.**    **Analysis**

            **1.**    ***The Settlement Class Meets the Prerequisites for Certification***

The Court previously approved a certified class on February 4, 2022, and modified the class to include options holders on March 28, 2023.  (Dkt. Nos. 224, 352.)  The Court affirmed that class in its preliminary approval order on June 3, 2024.  (Dkt. No. 435 at 4-5.)

            **2.**    ***Adequacy of Notice***

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without

United States District Court
Northern District of California

---

[2] Lead counsel received a total of 19 requests, however 15 such requests either stated that they did not hold shares sufficient for class-member status, or did not provide the information necessary to determine the class-member status, as required in this Court's previous order preliminarily approving settlement.  (Dkt. No. 441 at 4 n.3.)

notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).  Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court found the parties' proposed notice procedures provided the best notice practicable and reasonably calculated to apprise Class members of the settlement and their rights to object or exclude themselves.  (Dkt. No. 435 at 7-8.)  Pursuant to those procedures, the Class Administrator carried out that program .  (*Id.* at 21.)  The Class Administrator reports that 1,014,368 summary notices have been sent out.  (Dkt. No. 441-2 at 1.)

Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice.

### 3. *The Settlement Is Fair And Reasonable*

As the Court previously found in its order granting preliminary approval, the *Hanlon* factors indicate the settlement here is fair and reasonable and treats class members equitably relative to one another.  (Dkt. No. 435 at 5-7.)_

The reaction of the class was overwhelmingly positive. The Court received only one objection and four opt-outs as of the August 18, 2024 deadline.  (Dkt. No. 441 at 1.)  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was

proper).

In its preliminary approval order, the Court approved the proposed plan of allocation. (Dkt. No. 435 at 8.)  That plan involves disseminating a Proof of Claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the agreed-to plan of allocation.  (See Dkt. No. 421-2 at 12.)  When developing the plan, Lead Counsel, along with Lead Plaintiff's damages expert, calculated the potential amount of estimated alleged artificial inflation (or deflation, in the case of Apple put options) in Apple publicly traded securities proximately caused by defendants' alleged false and misleading statements and material omissions.  (Dkt. No. 421 at 19.)  Based on the formula in the plan, a "Recognized Loss Amount" was calculated for each transaction in Apple publicly traded securities.  (*Id*.)  The Net Settlement Fund was then distributed to Authorized Claimants on a pro rata basis based on the type of security transacted and the relative size of their Recognized Claims.  (*Id*.)  The Court finds the plan of allocation to be fair and reasonable and to treat class members equitably and therefore approves that plan of allocation.

### 4.   *Objections*

There are no objections to the settlement.  There is one objection to attorneys' fees, which the court analyzes below in Part III.

### 5.   *Certification Is Granted and the Settlement Is Approved*

After reviewing all of the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper.  Excluded from the class are Apple and the individual defendants; members of the families of each individual defendant; officers and directors of Apple; the legal representatives, heirs, successors or assigns of any such excluded party; and all persons who timely excluded themselves from the Settlement Class, as identified in **Exhibit A** hereto.

The *cy pres* recipient, Investor Protection Trust, is **APPROVED**.

## III.   **MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS**

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h).  Such fees must be found "fair, reasonable, and adequate" in order to be

approved.  Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963.  "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

Class counsel requests an attorneys' fee award of 25% of the settlement agreement, or $122,500,000.  Based on the detailed time records submitted by counsel, the settlement amount is approximately 4.4 times its lodestar.  Defendants do not take a position on the fee request.

The Court analyzes an attorneys' fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  The Ninth Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45 (citing *Vizcaino,* 290 F.3d at 1050–51.)

Under the percentage-of-the-fund method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.  When using the percentage-of-fund method, courts consider a number of factors, including whether class counsel "'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino*, 290 F.3d at 1047-50.

8

United States District Court
Northern District of California

1  "[T]he most critical factor [in determining appropriate attorney's fee awards] is the degree of

2  success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

3          Under the lodestar approach, a court multiplies the number of hours reasonably expended

4  by the reasonable hourly rate.  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court

5  calculates the lodestar figure by multiplying the number of hours reasonably expended on a case

6  by a reasonable hourly rate.  A reasonable hourly rate is ordinarily the 'prevailing market rate [] in

7  the relevant community.'").

8          Using the percentage-of-the-fund approach, with a lodestar cross-check, the Court finds it

9  fair to both the class and counsel to award a reduced amount of fees than that requested.  *See Six*

10  *(6) Mexican Workers*, 904 F.2d at 1311.

11          Here, the parties estimated the total settlement value to be $490,000,000.  The attorneys'

12  fees requested are 25% of this total.  From an alternative view, the amount requested is 4.4 times

13  the lodestar.  Plaintiffs' counsel claims over 39,500 hours of attorney and paraprofessional time.

14  (Dkt. No. 438 at 16; Dkt. No. 438-1 at ¶ 4; Dkt. No. 438-2 at ¶ 4.)[3]  On the basis of these

15  reasonable hourly rates and amounts, Lead Counsel calculate the lodestar to be $27,783,481.50.

16  (*Id.*)

17          A multiplier of 4.4 is extraordinarily high; the Court does not recall ever authorizing fees

18  in that amount.  Given the size of this settlement, the Court balances the windfall by reducing the

19  award percentage to 22% or approximately 3.88 times the lodestar, which itself remains

20  extraordinarily high.  This approach maintains a high award, $107,800,000, that accounts for the

21  skill and strategic vision, as well as the risk taken by plaintiffs' counsel, while balancing the

22  interests of the class members to obtain a larger share of the settlement.[4]

23  _____

24          [3] The lodestar hours for the two firms, respectively, are 32,659.20 for Robbins Geller and
    6,863.7 for Labaton Keller. (Dkt. No. 438-1 at ¶ 4; Dkt. No. 438-2 at ¶ 4.)  The Court finds that the
25  hours claimed were reasonably incurred and that the rates charged are reasonable and
    commensurate with those charged by attorneys with similar experience in the market.  The Court
26  also finds that Class Counsel represented their clients with skill and diligence and obtained an
    excellent result for the class, taking into account the possible outcomes and risks of proceeding
27  trial.

28          [4] The 3.88 lodestar multiplier is still very high, and is justified by Lead Counsel's strong

One individual submitted an objection – Oscar Ramirez.[56] (Dkt. Nos. 440.) Objector argues that plaintiffs' requested 25% benchmark for their fees is too high because the settlement amount in this case is significant. (*Id.* at 1.) Objector also argues that the settlement recovery amount is too small to warrant a large fee award. (*Id.* at 1-2.) Finally, the objector argues that plaintiffs' lodestar appears inflated due to a high partner to associate ratio and the presence of non-attorneys on the billing sheets. (*Id.* at 2.) As noted above, the Court reduces Lead Counsel's 25% request to 22%, so the objection is moot. To the extent the objection might apply to the new 22% award, however, the Court addresses it below.

First, objector argues that the 25% benchmark is inappropriate here because this is a "megafund" case. (*Id.* at 1, 4-5.) The Ninth Circuit, however, has rejected the argument that "megafund" cases require a decreased amount of attorneys' fees, instead holding that it "did not adopt" the so-called "increase-decrease rule" and that "fund size is one relevant circumstance to which courts must refer." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Lead Counsel significantly litigated this case on a contingency basis against sophisticated counsel. (Dkt. No. 441 at 9-10.) Further, victory at trial was far from certain for plaintiffs. As this Court detailed in its order above and in its preliminarily granting approval of the class settlement, plaintiffs faced significant hurdles in establishing scienter, disproving alternative causes of the stock price drop, and

_____

representation in this case. Portions of this case were uniquely complex. The Court recognizes that Lead Counsel managed the complexity efficiently. Further, Lead Counsel supplanted prior counsel after their strategic approach was found by the Court to be more viable. It significantly narrowed the class period and the alleged misrepresentation to one small set of claims, but was plausible while the other's approach was not. (Dkt. Nos. 72; 101; 113; 441.) Lead Counsel also provided additional analysis, at this Court's request, to sufficiently certify a class of options-holders, in addition to the more standard class of stockholders. (Dkt. No. 352.) Lead Counsel survived class certification and a highly contested motion for summary judgment. (*Id.*; Dkt. No. 369.) Further, Lead Counsel undertook significant risks to prosecute this case, taking the case on a contingent basis and litigating against highly sophisticated and experienced counsel and defendants. (Dkt. No. 441 at 9-10.) The Court agrees that Apple and Tim Cook are formidable opponents and the risks substantial.

[5] The Court notes that Ramirez has not demonstrated class-member status at this juncture but assumes for the purposes of this analysis that he is.

[6] Objector Ramirez was not present when the Court asked to hear objections at the September 17, 2024 hearing.

10

United States District Court
Northern District of California

1    overcoming expert economic testimony from defendants' experts.  (Dkt. No. 435 at 5-6.)  Therefore,

2    awarding attorneys' fees of 22% "is fair and reasonable under the 'percentage-of-recovery' method

3    given the substantial risks of non-recovery, the contingent nature of the representation, awards in

4    similar cases, the time and effort involved, and the result obtained for the Class."  *In re Wells Fargo*

5    *S'holder Derivative Litig*., 2019 WL 5458022, at \*4 (N.D. Cal. Oct. 24, 2019.

6         Regarding objector's second argument regarding the settlement recovery amount, objector

7    overstates the potentially recoverable damages at issue.  Objector argues that the total recoverable

8    damages in this case are $75 billion due to Apple's loss in market capitalization on January 2, 2019.

9    (Dkt. No. 440 at 3-4.)  Apple's total market capitalization drop does not encompass the recoverable

10   damages here, however, because the class includes purchases during the period from November 2,

11   2018 to January 2, 2019.  (Dkt. No. 439 at ¶¶ 102, 117, 119, 166.)  Further, securities laws protect

12   investors with "economic losses that misrepresentations actually cause." *See Dura Pharms., Inc. v.*

13   *Broudo*, 544 U.S. 336, 345 (2005).  Therefore, the potentially recoverable damages include damages

14   stemming from statements regarding Apple's iPhone business in China, and not the entire loss of

15   market capitalization on January 2, 2019.

16        Finally, objector raises issues with Lead Counsel's lodestar calculations, taking issue with

17   staff attorney billing rates of $470 per hour, and the partner to associate ratio of 13:3.  The Court

18   finds that the two staff attorneys' rates are reasonable given their experience.  (Dkt. No. 441-1 ¶ 2.)

19   The Court does not share objector's concern about the ratio of partners to associates.  Lead Counsel

20   has established that 72% of the total hours billed were performed by three partners, two associates,

21   and two staff attorneys.  Such is not evidence of artificially inflating a lodestar.  (Dkt. No. 441 at 12;

22   Dkt. No. 438-1, Ex. A.)

23        Based on the foregoing, the Court finds an award of attorneys' fees in the amount of

24   $107,800,000 to be fair, reasonable, and adequate.

25        **B.    Costs Award**

26        Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses.  Fed. R.

27   Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may

28   recover reasonable expenses that would typically be billed to paying clients in non-contingency

11

matters).  Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Here, class counsel seeks reimbursement for litigation expenses, and provides records documenting those expenses, in the amount of $2,651,465.53.  The Court finds this amount reasonable, fair, and adequate.

### C.    Incentive Award

The district court must evaluate named plaintiff's requested award using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation."  *Staton*, 327 F.3d at 977.  "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009).  The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives."  *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, the plaintiff Norfolk Pension Fund came forward to represent the interests of several others, and expended significant resources that would otherwise have been dedicated to the daily operation of the fund.  (Dkt. No. 439-1 at ¶ 8.) Plaintiff reviewed pleadings, attended court hearings, produced documents, responded to interrogatories, regularly discussed strategy with counsel, was deposed, responded to discovery, and took the substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other side's costs.  (*Id.* at ¶¶ 4-5.)  Lead Plaintiff provides a summary of the time it spent, via its Head of Funding & Investment and accountants, of 415 hours.  (*Id.* at ¶ 8.)  Based on that time commitment, Lead Plaintiff requests $29,946.40, which represents an average rate of $72.16 per hour for the 415 hours expended on this matter.  Because the laws are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others.  Thus, the Court approves the requested incentive award

1   payment for plaintiff $29,946.40.

2   **IV.   CONCLUSION**

3       Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**.

4   The motion for attorneys' fees, costs, and service awards is **GRANTED** as follows: Class Counsel is

5   awarded $107,800,000 in attorneys' fees and $2,651,465.53 in litigation costs.  Lead Plaintiff

6   Norfolk County Council as Administering Authority of the Norfolk Pension Fund is granted an

7   incentive award of $29,946.40.

8       Without affecting the finality of this order in any way, the Court retains jurisdiction of all

9   matters relating to the interpretation, administration, implementation, effectuation and enforcement

10  of this order and the Settlement.

11      **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in

12  accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class

13  Action Settlement filed on June 3, 2024, and this order.  This document will constitute a final

14  judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal

15  Rules of Civil Procedure.

16      The parties shall file a post-distribution accounting in accordance with this District's

17  Procedural Guidance for Class Action Settlements no later than September 19, 2025.  The Court

18  **SETS** a compliance deadline on **September 26, 2025** on the Court's 9:01 a.m. calendar to verify

19  timely filing of the post-distribution accounting.

20      **IT IS SO ORDERED.**

21  This terminates Docket Nos. 437 and 438.

22
    Dated: September 18, 2024
23                                                      _____
                                                        **YVONNE GONZALEZ ROGERS**
24                                                      **UNITED STATES DISTRICT COURT JUDGE**

25

26

27

28

**EXHIBIT A**

| |
|---|
| Safiya Yunaeva |
| Atsuko H. Morse |
| Linda R. Michlin IRA |
| Dorado Ridgell |